Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240 / Fax: (858) 678-5099

Adam R. Shartzer *(admitted pro hac vice)*
shartzer@fr.com
Ruffin B. Cordell *(admitted pro hac vice)*
cordell@fr.com
Richard A. Sterba *(admitted pro hac vice)*
sterba@fr.com
Ralph A. Phillips *(admitted pro hac vice)*
rphillips@fr.com
Michael J. Ballanco *(admitted pro hac vice)*
ballanco@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave., SW, Suite 1000
Washington, DC 20024
Tel: (202) 783-5070 / Fax: (202) 783-2331

*Additional Counsel Listed on Signature Page*

Attorneys for Defendants
DISH Network Corporation, et al.

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION; DISH NETWORK LLC; DISH NETWORK SERVICE, LLC; AND DISH NETWORK CALIFORNIA SERVICE CORPORATION,<br><br>Defendants. | Case No. 2:23-cv-01043-JWH-KES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DISH NETWORK CORPORATION, ET AL.'S RULE 12(b)(6) MOTION TO DISMISS UNDER 35 U.S.C. § 101**<br><br>Hearing Date: June 9, 2023<br>Hearing Time: 9:00 a.m.<br>Courtroom: 9D<br>Judge: Hon. John W. Holcomb |

1

# **TABLE OF CONTENTS**

2

**Page**

3

4   I.     INTRODUCTION ..................................................................................6

II.    BACKGROUND ...................................................................................6

5           A.    The '566 Patent ..........................................................................6

6           B.    The '910 Patent ..........................................................................9

7   III.   LEGAL STANDARD .........................................................................11

8           A.    Motions To Dismiss Under Rule 12(b)(6) ..............................11

9           B.    Patent-Ineligibility Under 35 U.S.C. § 101.............................11

10                 1.    *Alice* Step One .............................................................12

11                 2.    *Alice* Step Two .............................................................12

12   IV.   ARGUMENT.......................................................................................13

13          A.    The '566 Patent's Claims Are Patent Ineligible ....................13

14                 1.    Step One: The Claims Are Directed to an Abstract Idea...........13

15                 2.    Step Two: The Claims Lack an Inventive Concept ....................16

16          B.    The '910 Patent's Claims Are Patent Ineligible ....................19

17                 1.    Step One: The Claims Are Directed to an Abstract Idea...........19

18                 2.    Step Two: The Claims Lack an Inventive Concept ....................21

V.    CONCLUSION ...................................................................................24

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ...................................................................15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014).................................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ...................................................................16

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) .............................................................13, 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................11

*Bilski v. Kappos*,
561 U.S. 593 (2010)................................................................................11, 13

*Bridge & Post Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) ...............................................................22

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ...................................................................16

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) .....................................................................8

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ...................................................................13

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) ...................................................................11

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020) ...................................................................22

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ...................................................................12

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ................................................. 12, 19

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016) ............................................. 11

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) ......................................... 11, 18

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ........................................... 13

*Intell. Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) .......................................21, 23

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ........................................... 18

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*,
    566 U.S. 66 (2012) ...................................................13, 22

*NetSoc, LLC v. Match Group, LLC*,
    838 F. App'x 544 (Fed. Cir. 2020) ....................................... 18

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8,
    2017) ...................................................................... 8

*Prism Technologies LLC v. T-Mobile USA, Inc.*
    696 F. App'x 1014 (Fed. Cir. 2017) ...................................... 14

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ...........................................20

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ........................................... 13

*Smart Authentication IP, LLC v. Electronic Arts Inc.*
    402 F. Supp. 3d 842 (N.D. Cal. 2019) ................................14, 15

*SmartFlash LLC v. Apple Inc.*
    680 F. App'x 977 (Fed. Cir. 2017) ....................................... 14

*Strikeforce Technologies, Inc. v. SecureAuth Corp.*
No. LA CV17-04314 JAK (SKx), 2017 WL 8808122 (C.D. Cal.
Dec. 1, 2017), *aff'd,* 753 F. App'x 914 (Fed. Cir. 2019) ................................... 14

*Two-Way Media Ltd. v. Comcast Cable Communications, LLC.*
874 F.3d 1329 (Fed. Cir. 2017) ............................................................ 20, 23, 24

*Ultramercial, Inc. v. Hulu, LLC,*
772 F.3d 709 (Fed. Cir. 2014) ............................................................ 16

*Voip-Pal.Com, Inc. v. Apple Inc.*
375 F. Supp. 3d 1110 (N.D. Cal. 2019) ............................................... 23

*Weisner v. Google LLC,*
51 F.4th 1073 (Fed. Cir. 2022) ............................................................ 17

**Statutes**

35 U.S.C. § 101 ...............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................ 6, 11

U.S. Patent No. 8,228,910 .................................................................*passim*

U.S. Patent No. 8,320,566 ........................................................................ 6

U.S. Patent No. 10,257,566 ..............................................................*passim*

## I.     INTRODUCTION

The claims challenged in this motion mirror those that courts have repeatedly invalidated for claiming patent-ineligible subject matter.  Many district courts have recognized, and the Federal Circuit has confirmed, that claims such as these are ripe for resolution at the Rule 12 stage, and the same result should follow here.  Save for the bare legal conclusion that these patents are "directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101," Entropic fails to plead any facts supporting the supposed eligibility of its patents.  Dkt. 1 at ¶¶ 246, 382.  Nor could it.  These patents cover the abstract ideas of authenticating and admitting devices into a network (U.S. Patent No. 10,257,566 ("'566 patent")) and receiving, aggregating and transmitting data (U.S. Patent No. 8,228,910 ("'910 patent")).  Further, the specification of each patent evinces the conventionality of the claimed components, and no factual determinations preclude invalidating the patents at this stage.

The challenged claims of the '566 and '910 patents are invalid as a matter of law under the Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 227 (2014).  Defendants thus respectfully move this Court to dismiss Counts VI and X of Plaintiff's Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.    BACKGROUND

Entropic filed suit against four DISH defendants on February 10, 2023, alleging infringement of twelve patents, including the '566 and '910 patents.  *See* Dkt. 1.

### A.     The '566 Patent

The '566 patent[1] is titled "Broadband Local Area Network" and purports to address the need for a system that can connect multiple pieces of customer premise equipment ("CPEs") via existing coaxial cables in a building, thereby allowing

---

[1] Entropic has asserted two patents ending in '566, and refers to U.S. Patent No. 10,257,566 as the "'7,566 patent" in its Complaint.  Because the other '566 patent (U.S. Patent No. 8,320,566) is not subject to this motion, DISH uses the standard three-digit naming convention ('566) for the '7,566 patent throughout this motion.

communication across the CPEs. Dkt. 1-11, '566 patent at 4:11-16. The '566 patent's alleged solution to this problem is a "Broadband Coaxial Network ('BCN') network formed by a plurality of common coaxial network elements that may include passive splitters and coaxial network nodes." *Id.* at 4:23-29.

Each node has a modem, allowing communications with other modems on the network. *Id.* at 4:23-29. One node assumes the role of a Network Controller ("NC"), either by assignment or by dynamic determination according to network rules. *Id.* at 11:27-34. The NC adds other nodes to the network and "establishes the best modulation and other transmission parameters that [are] optimized and periodically adapted to the channel between each pair" of modems. *Id.* at 4:35-42.

Notably, the alleged invention of the '566 patent does not require any specialized hardware. The independent claims of the '566 patent recite only generic components, all of which were conventional at the time of filing: "communication circuit," "transceiver," "controller," and a "node," which the '566 patent explains are existing devices such as "cable converter boxes, televisions, video monitors, cable modems, cable phones, audio video receivers, set-top boxes (STBs) and video game consoles." *Id.* at 1:48-52.[2]

The '566 patent recites 20 claims, of which claims 1, 11, and 19 are independent. Entropic asserts only claim 11 in its Complaint, but all independent claims of the '566 patent recite similar limitations and claim the same abstract idea. DISH lists the independent claims of the '566 patent in the table below, arranged to

---

[2] A "BCN" modem, while not claimed, is not special hardware either. It is simply described as "a device that communicates across one or more of multiple RF channels where the communications over each RF channel by the various devices is divided by time, where each device transmits in a different time slot, typically referred to as a time division multiple access (TDMA) communication." '566 patent at 6:38-45.

MPA ISO DEFENDANTS' 12(b)(6) MOT. TO DISMISS UNDER 35 U.S.C. § 101
Case No. 2:23-cv-01043-JWH-KES

place similar limitations in the same row.  For purposes of this motion, claim 11 is representative of the independent claims in the '566 patent.[3]

| Claim 1 | Claim 11 | Claim 19 |
| --- | --- | --- |
| 1. A communication circuit comprising: | 11. A communication circuit comprising: | 19. A communication circuit comprising: |
| a transceiver operable to communicate in a coaxial cable network (CCN); | | |
| a controller that is operable to, at least: | a controller that is operable to, at least: | a controller that is operable to, at least: |
| transmit first information on the CCN, the first information comprising information indicating when admission messages for requesting admission to the CCN may be transmitted on the CCN; | transmit first information on a Coaxial Cable Network (CCN), the first information comprising information indicating when admission messages may be transmitted on the CCN; | transmit first information on a Coaxial Cable Network (CCN) in a general beacon packet for the CCN, the first information comprising information indicating when admission messages may be transmitted on the CCN for admission to the CCN; |
| receive an admission request message from a new node for admission to the CCN; | receive an admission message from a new node; | receive an admission message from a new node; |
| if the received admission request message is correctly received and the new node is authorized to join the CCN, then perform an admission procedure with the new node; | if the received admission message is correctly received and the new node is authorized to join the CNN, then perform an admission procedure with the new node by, at least in part, operating to: | if the received admission message is correctly received and the new node is authorized to join the CNN, then perform an admission procedure with the new node; and |

---

[3] Where claims are "substantially similar and linked to the same abstract idea," courts may look to representative claims in a § 101 analysis.  *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *see also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea").

| Claim 1 | Claim 11 | Claim 19 |
|---|---|---|
| probe a communication link of the CCN connecting the communication circuit to the new node; and | probe a communication link of the CCN connecting the communication circuit to the new node; and | |
| adapt transmission parameters for the communication link based, at least in part, on the probe. | adapt transmission parameters for the communication link based, at least in part, on the probe. | |
| | | if the received admission message comprises errors, then transmit second information on the CNN, the second information comprising information indicating when a next admission message may be transmitted on the CNN. |

## B.    The '910 Patent

The '910 patent describes a purported improvement in transmitting data packets.  Transmitting data in packets was known in the prior art, and the patent recognizes that each packet has its own "overhead information, including identifiers, source and destination addresses, and error control fields," which "reduces the availability of network bandwidth for user data."  Dkt. 1-19, '910 patent at 1:30-37.

The '910 patent purports to reduce this overhead information.  When a network node receives two or more packets with the same "aggregation identifier," the node aggregates those packets together and transmits the aggregated packet to a common destination node.  *Id.* at 1:41-47.  Transmitting an aggregated packet instead of each original packet requires less overhead information.  *Id.* at 2:1-3.

The '910 patent also describes two known error-checking features.  *Id.* at 6:1-4.  The first is a checksum, where the receiving node "calculates the checksum of [the]

received aggregation header and compares it to the value of the checksum in the received header." *Id.* at 6:5-8. "If the checksums do not match, the packet is dropped." *Id.* at 6:8-9. The second feature is a frame check sequence, which is included in packets formatted under the conventional Ethernet standard. *Id.* at 3:49-52. The '910 patent describes how to forward the original frame check sequence bits from each packet without modification, allowing each received packet to be checked for errors "instead of dropping the entire set of aggregated packets." *Id.* at 6:10-16.

The '910 patent has three claims, and all three are independent claims and require: (1) receiving packets, (2) identifying packets with the same aggregation identifier, (3) forming an aggregate packet, and (4) transmitting the aggregate packet to a destination. *Id.* at Claims 1-3. System claim 3 is representative:

> 3. A system for transmitting digital data over a network comprising:
> a transceiver adapted to receive a plurality of packet data units; and
> a packet aggregation module for identifying at least two of the plurality of packet data units that have a same destination node and for forming an aggregate packet from the at least two of the plurality of packet data units;
> wherein the transceiver is adapted to transmit the aggregate packet to at least one destination node; and
> wherein the packet aggregation module identifies the same destination node by identifying a same aggregation identifier.

Claims 1 and 2 are method and computer readable media counterparts of claim 3, and each adds limitations related to the known error checking features described above.

The specification indicates that all claimed components are conventional. The transceiver "can be any device that transmits and receives digital data." *Id.* at 3:14-15. The "packet data units" can be Ethernet packets or "any type of data packet." *Id.* at 5:46-50. And the "functionality of these modules . . . can be implemented by any combination of hardware and software," where the processor "may be any type of general or specific purpose processor" and the memory may be "any [] type of computer readable medium." *Id.* at 3:13-20, 3:29-35.

MPA ISO DEFENDANTS' 12(b)(6) MOT. TO DISMISS UNDER 35 U.S.C. § 101

1    ## III.   LEGAL STANDARD

2    ### A.   Motions To Dismiss Under Rule 12(b)(6)

3    Under Fed. R. Civ. P. 12(b)(6), a district court must dismiss a complaint if it

4    fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6)

5    motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that

6    is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The

7    Federal Circuit has "repeatedly recognized that in many cases it is possible and proper

8    to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."

9    *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *Hawk*

10   *Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023).

11   ### B.   Patent-Ineligibility Under 35 U.S.C. § 101

12   To be patentable under § 101, a claim must be directed to one of four eligible

13   subject matter categories: "new and useful process, machine, manufacture, or

14   composition of matter."  35 U.S.C. § 101.  "Claims that fall within one of the four

15   subject matter categories may nevertheless be ineligible if they encompass laws of

16   nature, physical phenomena, or abstract ideas."  *Digitech Image Techs., LLC v. Elecs.*

17   *for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (citing *Diamond v.*

18   *Chakrabarty*, 447 U.S. 303, 309 (1980)).  Abstract ideas are patent ineligible because

19   a monopoly over these ideas would preempt their use in all fields.  *See Bilski v.*

20   *Kappos*, 561 U.S. 593, 611-12 (2010).  In other words, "abstract intellectual concepts

21   are not patentable as they are the basic tools of scientific and technological work." *Id.*

22   at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

23   Determining whether a patent claim is impermissibly directed to an abstract

24   idea involves two steps.  First, the court determines "whether the claims at issue are

25   directed to a patent-ineligible concept."  *Alice*, 573 U.S. at 208.  Second, if the claim

26   contains an abstract idea, the court evaluates whether there is "an 'inventive

27   concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that

28

the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217 (internal quotations and citations omitted).

### 1. *Alice* Step One

At the first step of the *Alice* framework, courts look to the claim's "character as a whole" and determine its "focus" to determine whether it is directed to an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351, 1353 (Fed. Cir. 2016) (internal quotation marks omitted). The abstract idea identified at step one need not account for every claim limitation; otherwise, there would be no need for step two. *See Alice*, 573 U.S. at 217 (explaining that courts consider whether "additional elements" transform the abstract idea).

The Federal Circuit has further explained that "[i]nformation as such is an intangible. Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas." *Elec. Power*, 830 F.3d at 1353 (internal citations omitted). Similarly, "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more," are "mental processes within the abstract-idea category." *Id.* at 1354 (collecting cases). Further, claims that invoke generic computer components instead of reciting specific improvements in computer capabilities are abstract under this first step. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).

### 2. *Alice* Step Two

Transformation of an abstract idea into a patent-eligible application under the second step of the *Alice* framework "requires 'more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Alice*, 573 U.S. at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 72 (2012)) (modifications in original). A patent-eligible claim must contain an inventive concept, meaning it must recite a technology-specific solution to a technology-specific problem. *E.g.*,

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1351 (Fed. Cir. 2016).

On the other hand, claim limitations that implement an abstract idea using "generic computer components" or "well-understood, routine, conventional activities" are not sufficient. *Alice*, 573 U.S. at 225; *see also Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) ("Steps that do nothing more than spell out what it means to 'apply it on a computer' cannot confer patent-eligibility."). Further, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). A claim is also not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 566 U.S. at 77-78; *Bilski*, 561 U.S. at 610.

## IV.   ARGUMENT

### A.   The '566 Patent's Claims Are Patent Ineligible

The claims of the '566 patent at issue here fail at both steps in the *Alice* framework. The claims are directed to the abstract idea of authentication and admission of a device (or node) into a network. None contain an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 573 U.S. at 225-26.

#### 1.   <u>Step One: The Claims Are Directed to an Abstract Idea</u>

Step one of the *Alice* framework requires an examination of the "focus" of the claim, or its "character as a whole" to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). As indicated by the full text of the three independent claims 1, 11, and 19 of the '566 patent set forth *supra* in section II, the patent purports to claim the following basic process: (1) sending out a schedule for when new devices may send admission messages; (2) receiving admission messages from new devices; (3) determining

whether the new device is authorized to join the network (i.e., authentication); and (4) performing an "admission procedure" to admit the new device to the network. The "focus" of these claims is unambiguously the abstract idea of authentication and admission of authorized devices into a network.

The Federal Circuit has repeatedly invalidated claims directed to a similar idea—the idea of authenticating and then permitting access to information or resources. In *Prism Technologies LLC v. T-Mobile USA, Inc.*, for instance, the Federal Circuit found that claims directed to "(1) receiving identity data from a device with a request for access to resources; (2) confirming the authenticity of the identity data associated with that device; (3) determining whether the device identified is authorized to access the resources requested; and (4) if authorized, permitting access to the requested resources" were directed to an abstract idea. 696 F. App'x 1014, 1017 (Fed. Cir. 2017). Similarly, in *SmartFlash LLC v. Apple Inc.*, the Federal Circuit found claims for restricting access to data pending payment validation or other "access/use rules" to be directed to the abstract idea of "conditioning and controlling access to data based on payment." 680 F. App'x 977, 982-83 (Fed. Cir. 2017).

District courts have followed suit. In *Strikeforce Technologies, Inc. v. SecureAuth Corp.*, this Court found—and the Federal Circuit affirmed—that claims reciting authentication of a request for sensitive information via a separate "authentication channel" were similarly directed to the abstract idea of permitting restricted access to resources. No. LA CV17-04314 JAK (SKx), 2017 WL 8808122, at *4-5 (C.D. Cal. Dec. 1, 2017), *aff'd*, 753 F. App'x 914 (Fed. Cir. 2019). In *Smart Authentication IP, LLC v. Electronic Arts Inc.*, the Northern District of California held that a claim was directed to an abstract idea when reciting a method for "authenticating a user in more than one way over multiple electronic mediums but does not provide any 'unconventional, patentable combination.'" 402 F. Supp. 3d 842, 852-53 (N.D. Cal. 2019) (citing *Cal. Inst. of Tech. v. Hughes Commc'ns, Inc.*, 59 F. Supp. 3d 974, 980 (C.D. Cal. Nov. 2014)).

The "focus" of the '566 patent's claims is not meaningfully distinct from the claims in these cases. The claims recite receiving requests for access (the "admission request message") to a network whose access is restricted (the CCN network), authenticating whether the requesting device is authorized to access the network ("if . . . the new node is authorized to join the CNN [*sic*]"); and granting the device access if it is so authorized ("perform an admission procedure"). Further, "merely limiting the field of use of the abstract idea to a particular existing technological environment"—here, coaxial cable networks—does not "render the claims any less abstract." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258-59 (Fed. Cir. 2016). Thus, at their core, these claims encompass little more than an abstract idea that courts have found invalid time and time again.

The claim elements "lack[] specificity and amount[] to generalized steps using generic computer functionality," which confirms the claims are directed to an abstract idea. *Smart Authentication*, 402 F. Supp. 3d at 852. Claims 1, 11, and 19 each recite that a "controller" must determine that a new device is "authorized to join the CNN [*sic*]," but do not specify how the recited controller determines that a device is authorized. Similarly, the claims each recite that the controller is to "perform an admission procedure with the new node" if the controller determines that the new node is authorized, but do not specify how such an admission procedure is performed. Claims 1 and 11 appear to include a ***part*** of the recited admission procedure,[4] reciting "prob[ing] a communication link" between the controller and the new node and "adapt[ing] transmission parameters for the communication link based, at least in part, on the probe." But the claims fail to specify how the link is "probed," what "transmission parameters"[5] are "adapted," or how that adaptation is done. Claim 19

---

[4] The specification also states that probing a communication link may be part of an admission procedure. '566 Patent at 11:59-12:20.

[5] The specification fails to provide any definition or description of the term "transmission parameters," such that the term could broadly encompass almost anything related to transmissions between the two devices.

1  also lacks those details about the admission procedure, and simply recites re-
2  attempting communications with the new node if the first attempt fails.

3         Because the '566 patent's claims are directed to authentication and admission
4  of authorized devices, and because the patent does not claim a "particular way of
5  programming or designing the software . . . but instead merely claim[s] the resulting
6  systems," the claims are directed to an abstract idea.  *See Apple, Inc. v. Ameranth,*
7  *Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016).

8              **2.      Step Two: The Claims Lack an Inventive Concept**

9         Where, as here, the claims are directed to an abstract idea under step one, the
10  second step of the *Alice* inquiry becomes whether the elements of the claims,
11  considered "both individually and as an ordered combination," "transform the nature
12  of the claim into a patent-eligible application."  *Alice*, 573 U.S. at 217 (citation
13  omitted).  This step searches for an "inventive concept . . . sufficient to ensure that the
14  patent in practice amounts to significantly more than a patent upon the ineligible
15  concept itself."  *Id.* at 217-18 (citation omitted).  The question for the court is, "[w]hat
16  else is there in the claims before us?"  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d
17  1281, 1290 (Fed. Cir. 2018).

18         The answer here is—not much—and certainly not enough to confer an
19  inventive concept upon the claims.  The claim limitations do not render them
20  "significantly more" than a claim on granting admission to authorized devices.  The
21  claims seek only to take that abstract idea and apply it with generic components such
22  as a "communication circuit," a "controller," and "nodes."  But "[w]holly generic
23  computer implementation is not generally the sort of additional feature that provides
24  any practical assurance that the process is more than a drafting effort designed to
25  monopolize the abstract idea itself."  *Alice*, 573 U.S. at 224 (internal quotation marks
26  and modifications omitted).  Claims tied to general purpose computing equipment and
27  not to novel hardware cannot satisfy *Alice* Step 2 because such equipment lacks the
28  required inventive characteristics.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709,

716 (Fed. Cir. 2014) (finding claims patent ineligible where they were "not tied to any particular novel machine or apparatus, only a general purpose computer.").  That is exactly the case here:

- The claimed "communication circuit" is just that—a generic circuit for communication.  The specification does not further describe a "communication circuit."

- The claimed "transceiver" is simply a transceiver, which is a piece of well-known communications equipment.  The specification does not describe any specialized transceiver used for the invention.

- The claimed "controller" is also generic. The only mention of a controller in the specification describes it as any "network processor/CPU," "such as a host microprocessor, digital signal processor, or other known digital controllers." '566 patent at 22:30-35.

- The claimed "new node" is any generic coaxial equipment, including "cable converter boxes, televisions, video monitors, cable modems, cable phones, audio video receivers, set-top boxes (STBs), and video game consoles." *Id.* at 1:48-52.

Indeed, nearly any computer device in the coaxial technological environment can be a "node," which contains a "communication circuit," "transceiver," and "controller." *See*, *e.g.*, *Alice*, 573 F.3d at 226 (describing "communications controller" as "purely functional and generic"); *see also Weisner v. Google LLC*, 51 F.4th 1073, 1083-84 (Fed. Cir. 2022) (stating that "the specification describes the components and features listed in the claims generically, supporting the conclusion that these components and features are conventional, not inventive concepts in the patents.").

Further, these general-purpose components are used for generic, commonplace functions.  The specification explains that the goal of the invention is to have a network where a controller controls admission of new nodes, each node can communicate with each other node, and the nodes periodically adjust modulation and

other transmission parameters between each other.  '566 patent at 4:23-42.  Yet the challenged claims recite none of these features.  Instead, the claims recite mere functional limitations of (1) transmitting and receiving messages; (2) performing an "admission procedure" if new devices are authorized; (3) probing the communication link to the new device; and (4) adapting transmission parameters.  *E.g.*, *id.* at claim 11.  But transmitting and receiving messages between nodes in a network is simply "siting the ineligible concept in a particular technological environment."  *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015).  The recited "admission procedure" also contains no details about how the admission procedure is performed.  Likewise, the recited "probing" element is generic and contains no explanation of how the communication link is probed.  And though the claims recite adapting "transmission parameters," they "fail to specify precisely what the parameters are," or how they are "adapted."  *See Hawk Tech.*, 60 F.4th at 1358.

In fact, the "probing" and "adapting" claim elements are analogous to those of a claim that the Federal Circuit held invalid in *NetSoc, LLC v. Match Group, LLC*, 838 F. App'x 544, 549 (Fed. Cir. 2020).  In *NetSoc*, the Federal Circuit held that claims directed to a social networking system that (1) tracked a "response time" of participants who received a message from a user and (2) updated the rating associated with the participants based on the tracked response time did not represent a technological improvement rendering the claims non-abstract.  *Id.* at 548-49.  Similarly, the claim elements here simply "probe" the communication link between two nodes and use the result to "adapt" parameters associated with that link.

And examining the claims in an ordered combination does not add an inventive concept.  Even when viewed as a whole, the additional elements "add nothing that is not already present when the steps are considered separately."  *Alice*, 573 U.S. at 225 (citation omitted).  Instead, the claims recite a generic process for authorization and admission of new devices into a CCN network without any restriction on how such authorization and admission is performed, and no novel requirement on the type of

components used.  Even when considering the "probing" and "adapting" elements as part of the admission procedure, these, too, are generic.  Probing communication links to determine characteristics of the link and adjusting transmission parameters accordingly are well-known, generic functions performed by any generic communication equipment.  Indeed, the specification describes the "probe packet" used for the probing function as a "prevalent packet type," and the claimed invention simply applies this concept to the CCN technological field.  '566 patent at 8:18-44. And the only specific "transmission parameter" discussed in the specification—pre-coding modulation—is also just a generic term with multiple known solutions.  *Id.* at 7:8-28 (describing OFDM and other known pre-coding techniques).  The fact that these well-known communication techniques are used with a CCN does not change the result—"the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment." *Alice*, 573 U.S. at 222-23 (citing *Bilski*, 561 U.S. at 610-611).

Accordingly, Entropic fails to state a claim upon which relief can be granted, and DISH respectfully requests that the Court grant its motion and dismiss Count VI of Entropic's Complaint with prejudice.

### B.     The '910 Patent's Claims Are Patent Ineligible

The claims of the '910 patent are also patent ineligible under § 101 for being directed to an abstract idea (receiving, aggregating, and transmitting data) and lack any inventive concepts that take them beyond the abstract idea itself.

### 1.     Step One: The Claims Are Directed to an Abstract Idea

The claims of the '910 patent are directed to the abstract idea of receiving, aggregating, and transmitting data, for at least three reasons.  First, the claims are analogous to claims previously held invalid for being directed to an abstract idea. *Enfish*, 822 F.3d at 1334 (courts begin *Alice* Step 1 by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases."). Second, the claims describe the purported invention in broad, generic, functional

terms, but fail to identify how those ends are achieved, with the specification being no clearer. And third, the claims are akin to a long-standing human activity—mail delivery through the post office. Each reason is addressed below.

First, the claims challenged here are analogous to a claim found to be directed to an abstract idea in *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). There, the claim recited a "method for forwarding [] information" in a "communications network" that required "processing one or more streams of audio or visual information into one or more streams of packets for forwarding over the communications network" and "forwarding the digital packets to the users in response to information selection signals received from the users," along with additional steps for monitoring and logging the receipt of the packets. *Id.* at 1335. The Federal Circuit agreed that the claim was directed to the abstract idea of "(1) sending information, (2) directing the sent information, (3) monitoring the receipt of the sent information, and (4) accumulating records about receipt of the sent information." *Id.* at 1337. Here, the claims of the '910 patent similarly recite processing, forwarding, and accumulating information. And, like the claim in *Two-Way Media*, forwarding occurs in response to specific signals (*i.e.*, the "same aggregation identifier").

The second reason the claims of the '910 patent are directed to an abstract idea is because each claim describes the purported invention in broad, generic, functional terms but fails to identify how those ends are achieved. The specification is no clearer. *See RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("Generalized steps to be performed on a computer using conventional computer activity are abstract."). The preambles make clear that each claim is directed to "transmitting digital data over a network," and each claim recites the result-based functions of (1) receiving packets, (2) identifying packets with the same aggregation identifier, (3) forming an aggregate packet, and (4) transmitting (*i.e.*, forwarding) the aggregated packet to a destination. Moreover, the specification explains that

"[t]ransceiver 27 can be any device that transmits and receives digital data" ('910 patent at 3:14–15), the "packet data units" are simply "Ethernet packets" (*id.* at 3:44–45), and the claimed method of "aggregating packets" using a "packet aggregation module" "can be performed by hardware, or any combination of hardware and software," including a generic processor and memory (*id.* at 5:38–45).

Finally, the third reason the claims of the '910 patent are directed to an abstract idea is because each is akin to a long-standing human activity—namely, mail delivery through the post office. *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (finding an email processing software program to be abstract through comparison to a "brick-and-mortar" post office). Just as the claims here require receiving a plurality of packet data units, a mail carrier receives a plurality of mail pieces. And just as the claims here require aggregating based on identifying the same aggregation identifier, a mail carrier aggregates several pieces of mail destined for the same location by identifying the same address on each. A postal worker then forms an aggregate packet (a bundle of mail) by grouping the mail that is addressed with the same aggregation identifier (the address) before delivering that packet to the destination (the specific location).[6] The claims are thus directed to an abstract idea.

## 2.   Step Two: The Claims Lack an Inventive Concept

Nothing in the '910 patent claims adds any inventive concept, nor does Entropic's complaint attempt to plead any facts to the contrary. *See* Dkt. 1, ¶ 403. Because the claims of the '910 patent are directed to the abstract idea of receiving, aggregating, and transmitting data, the claims are ineligible unless they add an "inventive concept" such that the patent amounts to significantly more than a patent on the ineligible idea itself. *Alice*, 573 U.S. at 222. Transformation of an abstract

---

[6] The limitations in claims 1 and 2 regarding comparing checksums do not change the analysis. As discussed, the use of a checksum (*i.e.*, a value representing the sum of the correct digits in a piece of transmitted data) was known in the art, and comparing checksums to ensure data integrity is akin to a postal worker comparing the cities and/or zip codes written on each piece of mail to ensure the aggregated bundle was delivered to the right location.

idea into a patent-eligible claim "requires more than simply stating the abstract idea while adding the words 'apply it.'" *Bridge & Post Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 891 (Fed. Cir. 2019) (citing *Alice*, 573 U.S. at 222). Instead, the claim "must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Alice*, 573 U.S. at 221 (citing *Mayo*, 566 U.S. at 77-78). The additional features must be more than an industry-known "well-understood, routine, conventional activity." *Mayo*, 566 U.S. at 79.

The '910 patent claims fail under *Alice* Step 2 because they "merely invoke[] well-understood, routine, conventional components and activity to apply the abstract idea identified previously." *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020). System claim 3, which is representative of all three claims, requires only two generic components, each performing two generic functions. The first component is "a transceiver adapted to [1] receive a plurality of packet data units" and [2] "transmit the aggregate packet to at least one destination node." This claimed system simply invokes a conventional transceiver for its conventional purpose. As the patent explains, "[t]ransceiver 27 can be any device that transmits and receives digital data." '910 patent at 3:14-15. The second claimed component is "a packet aggregation module for [1] identifying at least two of the plurality of packet data units that have a same destination node . . . by identifying a same aggregation identifier" and [2] "forming an aggregate packet from the at least two of the plurality of packet data units." At best, the specification confirms the module's conventionality. It states that the "functionality of these modules . . . can be implemented by any combination of hardware and software," that could include a processor that "may be any type of general or specific purpose processor" and memory that may be "any [] type of computer readable medium." *Id.* at 3:13-20, 3:29-35.

Other courts have found that similarly claimed functionality is not an inventive concept. In *Intell. Ventures I LLC v. Symantec Corp.*, the abstract claim called for receiving data, determining whether the received data matched certain characteristics, and outputting data based on the determining step. 838 F.3d at 1313. None of these steps provided an inventive concept because the claim performed "generic computer functions." *Id.* at 1315. The *Voip-Pal.Com, Inc. v. Apple Inc.* court followed this same logic for a claim involving call routing, which facilitated communication in a system having multiple nodes. 375 F. Supp. 3d 1110, 1137. The claims here fail for the same reasons. They also facilitate communication by receiving data, determining if that data has certain characteristics (*i.e.*, a same aggregation identifier), and outputting data based on that determination (*i.e.*, outputting an aggregate packet to a destination node).

The ordered combination of the claimed elements also does not yield an inventive concept. In *BASCOM*, the Federal Circuit held that "an inventive concept can be found in the nonconventional and non-generic arrangement of known, conventional pieces." 827 F.3d at 1350. But here, the arrangement of the claim elements is conventional, as evidenced by a similar claim invalidated in *Two-Way Media*. The claim there was directed to "transmitting message packets over a communications network" and contained the three ordered steps of "first processing the data, then routing it, [and] controlling it . . . ." 874 F.3d at 1334, 39. In finding this claim failed *Alice* Step 2, the Federal Circuit referred to this claim as a "conventional ordering of steps . . . with conventional technology to achieve its desired result." *Id.*

The claims here recite the same three ordered steps. First, data is processed by receiving a plurality of packet data units and identifying at least two of the plurality of packet data units that have a same destination node. Second, the data is routed by forming an aggregate packet from the at least two of the plurality of packet data units by identifying the same aggregation identifier. Third, the data is controlled by

transmitting the aggregate packet to at least one destination node.  This conventional ordering of steps thus fails just like the claim in *Two-Way Media*.

All three claims of the '910 patent thus fail *Alice* Step 2 and should be deemed ineligible.  Accordingly, Entropic fails to state a claim upon which relief can be granted, and DISH respectfully requests that the Court grant its motion and dismiss Count X of Entropic's Complaint with prejudice.

## V. CONCLUSION

For the foregoing reasons, DISH respectfully requests that the Court find the '566 and '910 patents invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter and dismiss Counts VI and X of the Complaint with prejudice.

MPA ISO DEFENDANTS' 12(b)(6) MOT. TO DISMISS UNDER 35 U.S.C. § 101
Case No. 2:23-cv-01043-JWH-KES

1      Dated:  May 8, 2023             FISH & RICHARDSON P.C.

2

3                            By: */s/ Christopher S. Marchese*

4                                Christopher S. Marchese (SBN 170239)
                               marchese@fr.com

5                                633 West Fifth Street, 26th Floor
                               Los Angeles, CA 90071

6                                Tel: (213) 533-4240

7                                Adam R. Shartzer (*pro hac vice*)
                               shartzer@fr.com

8                                Ruffin B. Cordell (*pro hac vice*)
                               cordell@fr.com

9                                Richard A. Sterba (*pro hac vice*)
                               sterba@fr.com

10                               Ralph A. Phillips (*pro hac vice*)
                              rphillips@fr.com

11                               Michael J. Ballanco (*pro hac vice*)
                              ballanco@fr.com

12                               FISH & RICHARDSON P.C.
                              1000 Maine Ave., SW, Suite 1000

13                               Washington, DC 20024
                              Tel: (202) 783-5070

14

15                               David M. Barkan (SBN 160825)
                              barkan@fr.com

16                               FISH & RICHARDSON P.C.
                              500 Arguello Street, Suite 400

17                               Redwood City, CA 94063
                              Tel: (650) 839-5070

18

19                               Ashley A. Bolt (*pro hac vice*)
                              bolt@fr.com

20                               FISH & RICHARDSON P.C.
                              1180 Peachtree Street NE, 21st Floor

21                               Atlanta, GA 30309
                              Tel: (404) 892-5005

22

23                            Attorneys for Defendants
                           DISH Network Corporation, et al.

24

25

26

27

28

MPA ISO DEFENDANTS' 12(b)(6) MOT. TO DISMISS UNDER 35 U.S.C. § 101
Case No. 2:23-cv-01043-JWH-KES