1        **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3        **HONORABLE JOHN W. HOLCOMB, U.S. DISTRICT JUDGE**

4

ENTROPIC COMMUNICATIONS, LLC,        )

5                                     ) Case No.
                    Plaintiff,        ) 2:22-cv-07775-JWH-JEM
6                                     ) Related Cases:
            vs.                       ) 2:23-cv-01043-JWH-KES
7                                     ) 2:23-cv-01049-JWH-KES
DISH NETWORK CORPORATION, et al.,     ) 2:23-cv-01048-JWH-KES
8                                     ) 2:23-cv-01050-JWH-KES
                    Defendants.       ) 2:23-cv-01047-JWH-KES
9  _____  )

10

11

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS
            ORDER TO SHOW CAUSE RE CONSOLIDATION
                   FRIDAY, APRIL 21, 2023
14                      8:59 A.M.
                  SANTA ANA, CALIFORNIA
15

16

17

18

19

20

21

22  _____

23              **DEBBIE HINO-SPAAN, CSR 7953, CRR**
                FEDERAL OFFICIAL COURT REPORTER
24              411 WEST 4TH STREET, ROOM 1-053
                   SANTA ANA, CA 92701
25                 dhinospaan@yahoo.com


                    **UNITED STATES DISTRICT COURT**

1                      APPEARANCES OF COUNSEL:

2

3    FOR PLAINTIFF:

4            K&L Gates LLP
             BY:  JAMES A. SHIMOTA, ESQ.
5            70 West Madison Street
             Suite 3100
6            Chicago, Illinois 60602
             312-807-4299
7            jim.shimota@klgates.com

8            K&L Gates LLP
             BY:  CHRISTINA N. GOODRICH, ATTORNEY AT LAW
9            10100 Santa Monica Boulevard
             8th Floor
10           Los Angeles, California 90067
             310-552-5000
11           christina.goodrich@klgates.com

12   FOR DEFENDANT COX COMMUNICATIONS (CV-23-1047-JWH):

13           KILPATRICK TOWNSEND & STOCKTON LLP
             BY:  APRIL ELIZABETH ISAACSON, ATTORNEY AT LAW
14           2 Embarcadero Center
             Suite 1900
15           San Francisco, California 94111
             415-273-8306
16           Aisaacson@kilpatricktownsend.com

17   FOR DEFENDANT COMCAST CORPORATION (CV-23-1048-JWH):

18           WINSTON & STRAWN LLP
             BY:  KRISHNAN PADMANABHAN, ESQ.
19           200 Park Avenue
             New York, New York 10166
20           212-294-3564
             kpadmanabhan@wiinston.com
21
             WINSTON & STRAWN LLP
22           BY:  SARANYA RAGHAVAN, ATTORNEY AT LAW
             35 West Wacker Drive
23           Chicago, Illinois 60601
             312-558-5600
24           sraghavan@winston.com

25

```
 1                         APPEARANCES OF COUNSEL
                                (Continued:)
 2

 3   FOR DEFENDANT DIRECTV, LLC, and AT&T INC. (CV-22-7775-JWH):

 4            GIBSON DUNN & CRUTCHER LLP
              BY:  JASON C. LO, ESQ.
 5            333 South Grand Avenue
              Los Angeles, California 90071-3197
 6            213-229-7153
              jlo@gibsondunn.com
 7
     FOR DEFENDANT DISH NETWORK CORPORATION (CV-22-7775-JWH):
 8
              PERKINS COIE LLP
 9            BY:  AMANDA TESSAR, ATTORNEY AT LAW
              1900 Sixteenth Street
10            Suite 1400
              Denver, Colorado 80202
11            303-291-2300
              atessar@perkinscoie.com
12
     FOR DEFENDANT DISH NETWORK CORPORATION (CV-23-1043-JWH):
13
              FISH & RICHARDSON PC
14            BY:  CHRISTOPHER S. MARCHESE, ESQ.
              633 West 5th Street
15            26th Floor
              Los Angeles, California 90071
16            213-533-4240
              marchese@fr.com
17
              FISH & RICHARDSON PC
18            BY:  ADAM R. SHARTZER, ESQ.
              1000 Maine Avenue, SW
19            Suite 1000
              Washington, D.C. 20024
20            202-783-5070
              shartzer@fr.com
21

22

23

24

25
```

UNITED STATES DISTRICT COURT

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | **SANTA ANA, CALIFORNIA; FRIDAY, APRIL 21, 2023**                        |
| 2  | **8:59 A.M.**                                                            |
| 3  | **- - -**                                                                |
| 4  |                                                                          |
| 5  | THE COURTROOM DEPUTY:  Calling Entropic                                   |
| 6  | Communications, LLC vs. DISH Network Corporation, et al., vs.             |
| 7  | Comcast Corporation, et al., vs. Cox Communications, Inc.,                |
| 8  | et al., vs. DIRECTV, LLC, et al.                                          |
| 9  | Calling Item Number 1, Case Number                                       |
| 10 | LACV-23-01047-JWH.                                                        |
| 11 | Calling Case Number LACV-23-01048-JWH.                                    |
| 12 | Calling Case Number LACV-23-1043-JWH.                                     |
| 13 | Calling Case Number LACV-23-1050-JWH.                                     |
| 14 | Calling Case Number LACV-23-01049-JWH.                                    |
| 15 | Calling Case Number LACV-22-07775-JWH.                                    |
| 16 | Starting with plaintiffs, state your appearances for                     |
| 17 | the record.                                                              |
| 18 | THE COURT:  I'm sorry, Madam Clerk.  Did we get                           |
| 19 | 22-7959?  Oh, that's consolidated with 7775.  That's fine.                |
| 20 | Sorry to interrupt.                                                       |
| 21 | Go ahead, Counsel, state your appearances.                               |
| 22 | MR. SHIMOTA:  James Shimota of K&L Gates, appearing                       |
| 23 | on behalf of all Plaintiff Entropic.                                      |
| 24 | MS. GOODRICH:  Good morning, Your Honor.  Christina                       |
| 25 | Goodrich, also of K&L Gates, on behalf of plaintiff.                      |

Timestamps: 08:59AM (line 5), 09:00AM (line 10), 09:00AM (line 15), 09:01AM (line 20), 09:01AM (line 25)

```
 1              THE COURT:  All right.  Mr. Shimota and
 2   Ms. Goodrich, good morning.
 3              MR. SHIMOTA:  Good morning, Your Honor.  Thank you.
 4              MS. ISAACSON:  Good morning, Your Honor.  April
09:01AM  5   Isaacson on behalf of Cox.
 6              THE COURT:  Okay.  Hold on one second.  Let me make
 7   sure my score sheet is updated here.
 8              Ms. Isaacson.
 9              MS. ISAACSON:  Yes.
09:01AM 10              THE COURT:  Okay.  Good morning, Ms. Isaacson.
11              MR. PADMANABHAN:  Good morning, Your Honor.
12   Krishnan Padmanabhan on behalf of the Comcast defendants.
13              THE COURT:  Okay.  Hold on one second.  Help me with
14   your pronunciation again.
09:02AM 15              MR. PADMANABHAN:  Padmanabhan.
16              THE COURT:  Mr. Padmanabhan?
17              MR. PADMANABHAN:  That's perfect.
18              THE COURT:  Good morning.  Forgive me if I
19   mispronounce your name.  I'm trying to get it right.
09:02AM 20              MR. PADMANABHAN:  No, that's great.
21              MS. RAGHAVAN:  Saranya Raghavan, also on behalf of
22   Comcast.
23              THE COURT:  Again, forgive me if I mispronounce your
24   name.  Welcome and good morning.
09:02AM 25              MR. LO:  Good morning, Your Honor.  Jason Lo,
```

```
 1   Gibson, Dunn & Crutcher, on behalf of DIRECTV and AT&T.

 2            THE COURT:  Okay.  Mr. Lo?

 3            MR. LO:  Yes.

 4            THE COURT:  Good morning, Mr. Lo.

 5            MR. LO:  Good morning.

 6            MS. TESSAR:  Good morning, Your Honor Amanda Tessar

 7   from Perkins Coie, on behalf of the DISH defendants in the 2022

 8   case.

 9            THE COURT:  Got it.  Ms. Tessar, good morning to

10   you.

11            MR. MARCHESE:  Chris Marchese from Fish &

12   Richardson, on behalf of the DISH defendants.

13            THE COURT:  Mr. -- hold on one second.  Oh,

14   Mr. Marchese.  Got you.

15            MR. MARCHESE:  I have another tricky name to

16   pronounce.

17            THE COURT:  Well, I've got a lot of -- there are

18   seven cases.  So Mr. Marchese, good morning.

19            MR. MARCHESE:  Thank you, Your Honor.

20            MR. SHARTZER:  Good morning, Your Honor.  Adam

21   Shartzer of Fish & Richardson, also on behalf of the DISH

22   entities in the 2023 case.

23            THE COURT:  And Mr. Shartzer, good morning to you.

24            Okay.  Counsel, thank you all for being here on this

25   consolidated hearing.  We had a number of things to take up and
```

1    discuss.  Let's start with consolidation.

2         Here's the way I see these seven cases, and please

3    correct me if anybody disagrees.  I see three groups of cases.

4    The first group I've already consolidated:  22-7775 against

09:04AM  5    DIRECTV, and 7959 against DISH.  Those were consolidated into

6    the lower numbered case.  And, in fact, we have a case

7    schedule, at least for the first piece of the case, culminating

8    in a Markman hearing currently set for, I believe, July 11 at

9    10:00 a.m.

09:04AM 10         Ms. Goodrich, Mr. Shimota --

11         MR. SHIMOTA:  That's correct, Your Honor.

12         THE COURT:  -- correct so far?

13         MR. SHIMOTA:  That's correct, Your Honor.

14         THE COURT:  Okay.  And anybody from DIRECTV or DISH,

09:04AM 15    jump up and let me know if you disagree.

16         The way I see it, there's a second group of cases,

17    three cases:  The 1043, 1047, and 1048, against DISH, Cox

18    Communications and Comcast.  I know there are a number of

19    defendants.  I'm grouping them into those names.  I think you

09:05AM 20    understand what I mean.  If you don't, please let me know.

21         In any event, I see those three grouped together,

22    and I think that was clear from my OSC re consolidation, and I

23    got your responses.  Anyway that's the second group.

24         And then the third group, 1049 and 1050, against

09:05AM 25    Comcast and Cox Communications respectively.  And again, my OSC

1   re consolidation dealt with that.

2           Ms. Goodrich, Mr. Shimota, concur so far?

3           MR. SHIMOTA:  Yes.  I was just checking the numbers.

4   That's exactly right, Your Honor.

09:05AM 5           THE COURT:  Okay.  Let's talk about the

6   consolidation piece.  As I said, we've already -- let me talk

7   about Group A, Group B, and Group C.  Group A we've dealt with:

8   22-7779 and -7959.

9           Group B:  1043, 1047, 1048.  I received your

09:06AM 10  respective responses on consolidation, and it's my

11  understanding that Entropic favors consolidation in general.

12  Defendants do not oppose pretrial consolidation but want

13  separate written discovery, separate depositions, and separate

14  Markman and summary judgment briefs.

09:06AM 15          So my inclination would be to issue an order

16  consolidating the three cases in what I'm calling Group B

17  through the Markman -- through claim construction.  But it

18  sounds like at least defendants want some bells and whistles.

19          So what I'm inclined to do is ask you to meet and

09:07AM 20  confer, Entropic on the one hand, and DISH, Cox Communications,

21  and Comcast on the other hand, and come up with a proposed

22  order that -- that incorporates what I'm calling the bells and

23  whistles, but most importantly, from my perspective,

24  consolidates the cases through the claim construction phase.

09:07AM 25          Now, how does everybody feel about that?  Let me

1    start with Entropic.

2            MR. SHIMOTA:  That would be fine, Your Honor.  The

3    parties haven't -- in those cases haven't even -- excuse me --

4    the parties haven't even answered yet.  And under the

09:07AM  5    circumstances, we'd like to see what their defenses are.  And

6    we can try to work with them to try to put together a

7    scheduling order where we can accommodate everyone's concerns.

8            THE COURT:  I didn't realize that they had not

9    answered.  I should have checked that.  There was an order --

09:07AM 10    stipulation and order that I extended somebody's deadline to

11    answer.  I guess I was thinking that was the last one, but it

12    was not.

13            MR. SHIMOTA:  That's correct, Your Honor.  I can't

14    recall, but it's the -- they haven't answered or otherwise

09:08AM 15    responded.  That will come shortly but my point is that we can

16    work together on this.  And, you know, on the issues such as

17    depositions, you know, we think that everyone should be

18    courteous to the witnesses.  But if there are particular

19    concerns, for example, we'll work on that.  And we think we can

09:08AM 20    discuss it in the context of the initial scheduling conference.

21            THE COURT:  Okay.  Thank you.  Let me hear from the

22    respective defendant.

23            MS. ISAACSON:  First, Your Honor, the date for the

24    responsive pleading is May 8.  I believe that's for all of the

09:08AM 25    defendants at this point.

**UNITED STATES DISTRICT COURT**

1          MR. PADMANABHAN:  That's correct, Your Honor.

2          THE COURT:  Okay.

3          MS. ISAACSON:  And then with regard to the

4    consolidation and working together and meeting and conferring,

09:08AM  5    that completely makes sense from my perspective.  And I let my

6    other colleagues speak for themselves on that.

7          MR. PADMANABHAN:  Sure.  First off, Your Honor,

8    meeting and conferring always sounds good.  So, yeah, we're

9    happy to meet and confer and see where we can get some

09:09AM 10    agreement.  I think what Mr. Shimota was expressing is that

11    with respect to something like depositions, we expect to ask

12    for particularized issues.  We don't necessarily need maybe

13    three days.  With a given witness, we can find less than three

14    days.  But I don't think we'd do one day with three parties,

09:09AM 15    for example.

16          So we can talk amongst ourselves, I think, and

17    probably figure this out and build some flexibility into it to

18    accommodate the different issues that we all want to try and

19    litigate.

09:09AM 20          THE COURT:  Okay.

21          MR. SHARTZER:  Your Honor, Adam Shartzer on behalf

22    of DISH.

23          DISH also agrees that it would make sense to have

24    the parties go and meet and confer together.  With respect to

09:09AM 25    these issues, I'll take up Mr. Shimota's point that we are

        going to have some defenses to bring at a point in this case.
        And it probably makes sense to see what those defenses are,
        understand the full scope of this case before we go off and
        create schedules for the case.  But as for creating the order
09:10AM for consolidation includes bells and whistles, we can meet and
        confer on that and get to Your Honor quickly.

                  THE COURT:  That sounds good.

                  Okay.  Again, I did not appreciate that answers had
        not yet been filed.  So after they are filed and you each set
09:10AM the defenses fully in this case, please meet and confer and
        submit to me, if you would, a proposed order pertaining to
        consolidation.  Do your best, please, to agree on the form of
        that.  And if you really can't, then, you know, reach out to my
        clerk and let us know.  But I will hope and expect that you'll
09:10AM have a consensual order pertaining to consolidation.

                  And again, just through the Markman phase.  We'll
        revisit this at that point and see what the world looks like.

                  Okay.  And then Group C, my thoughts are the same.
        When are the answers due for the Comcast parties and the Cox
09:11AM parties and what I'm calling Group C?

                  MS. ISAACSON:  Same date, May 8.

                  MR. PADMANABHAN:  Yes, Your Honor.  We've managed to
        at least align ourselves on one thing, and that is the date on
        which we will respond.

09:11AM          THE COURT:  Well, that's good.

**UNITED STATES DISTRICT COURT**

1          Yes, Mr. Shimota.

2          MR. SHIMOTA:  I was standing up just to address this

3     issue.  I would say that I think my guess, unless you disagree,

4     is that we would probably adopt a similar procedure for -- the

09:11AM 5     first group of cases I would call the MOCA cases.  And these

6     are the -- we call them the nonstandard essential cases.

7          THE COURT:  Slow down.  What do you call -- what do

8     you call Group A?

9          MR. SHIMOTA:  Group A would be the MOCA cases.  It's

09:12AM 10    the multimedia -- oh, excuse me.  That's not the other case.

11    I'm sorry, the Group B cases.  I would call Group A satellite

12    nonstandard essential.

13         THE COURT:  Satellite nonstandard essential.

14         MR. SHIMOTA:  Correct.

09:12AM 15    THE COURT:  Could you get a longer, more confusing

16    title?

17         MR. SHIMOTA:  If you gave me time.  We're lawyers;

18    right?  I could come up with a lot of words.

19         THE COURT:  And then what do you call Group B,

09:12AM 20    please?

21         MR. SHIMOTA:  MOCA.  That's simple.

22         THE COURT:  Like the chocolate?

23         MR. SHIMOTA:  I think that's probably what they were

24    thinking of, but it's M-O-C-A.  It's an acronym for the

09:12AM 25    multimedia over coaxial cable lines.

1          THE COURT:  Okay.  Madam Court Reporter, did you get

2     all that?

3          THE REPORTER:  I did.

4          THE COURT:  So MOCA, Group B.

09:12AM 5          And Group C, what do you call it?

6          MR. SHIMOTA:  So we'll call it cable NONSEP or cable

7     nonstandard essential patents.

8          THE COURT:  Cable non -- did you say "non sat"?

9          MR. SHIMOTA:  NONSEP.  Nonstandard essential patent.

09:13AM 10    I was trying to abbreviate there.

11          MR. PADMANABHAN:  Your Honor, if I might.  I don't

12    want to impose on Mr. Shimota's naming conventions.  But we're

13    probably going to have some disputes about standard

14    essentiality.  So why don't we just call it the "cable case,"

09:13AM 15    if that's okay.

16          MR. SHIMOTA:  Well, I just called it MOCA, but

17    that's what we call it.

18          THE COURT:  Okay.  C, cable; B, MOCA; A, satellite?

19          MR. SHIMOTA:  Yeah.  That's right.  That's fair

09:13AM 20    enough.

21          THE COURT:  Let's go with that.

22          MR. PADMANABHAN:  Thank you, Your Honor.

23          THE COURT:  Anybody disagree strongly?

24          Okay.  Thank you very much.

09:13AM 25          So I think I said it.  But again, in the cable cases

```
 1   what I originally was thinking of is Group C.  Please, also,
 2   after defendants file their respective answers, meet and confer
 3   and see if you can come up with a proposed order to consolidate
 4   those two through the Markman process.
 5           Okay.  I see everybody nodding.  Good.
 6           So that's step -- that's the first thing on my
 7   agenda.
 8           There was an issue about reduction in number of
 9   asserted claims.  So again, my -- what I would -- as opposed to
10   decide this now, what I prefer that you do, after the answers
11   are filed, is meet and confer and see if you can come up with a
12   process for doing that.  If you cannot, then if some defendant
13   wants to file a motion, then I'll certainly consider that.  But
14   do your best to arrive at something by consent that makes sense
15   for everybody.  Because if you ask me to impose something on
16   you, it may not be the -- it may be a drastically suboptimal
17   solution.
18           All right.  Special master.  I received the --
19   forget what you called it.  I think it was in the satellite
20   cases -- request for guidance on scope of discovery.
21           That was in the satellite cases, right, Group A?
22           MS. TESSAR:  Yes.  Are you talking about the request
23   for clarification?
24           THE COURT:  Yes.
25           MS. TESSAR:  I think at this point, it's largely
```

09:13AM   5
09:14AM  10
09:14AM  15
09:14AM  20
09:15AM  25

1   moot.

2          THE COURT:  Okay.  Well, I love to hear that.  Tell

3   me more about why it's moot, please.

4          MS. TESSAR:  Yes.  So we had a few weeks of fairly

09:15AM 5   contentious discussion about depositions and when they should

6   happen.  It's tied up in some document production issues.  Both

7   parties have made some further productions.  We have agreed

8   that we'll start scheduling technical depositions.  We don't

9   agree, but my understanding is that Entropic is no longer

09:15AM 10   insisting that all discovery has to be completed before the

11   Markman.  I think that's unrealistic for the size and scope of

12   this case.  But we're going to start getting those depositions

13   scheduled.

14          THE COURT:  Okay.  Mr. Shimota?

09:15AM 15          MR. SHIMOTA:  May I speak, Your Honor?  It was

16   never -- just to be clear, we never insisted that all discovery

17   needed to be completed by Markman.  We just meant we'd like to

18   take discovery expeditiously.  We'd like to get at least one

19   deposition scheduled.

09:16AM 20          I think we'll have a dispute as to whether or not we

21   can take depositions concerning financial issues in the case,

22   but very timely a point, we're going to be discussing a special

23   master now.  And it sounds like if we can't resolve that, I

24   guess that's something that could potentially be a first issue

09:16AM 25   for him or her.

```
 1              THE COURT:  I think that's right.  I liked the very
 2   beginning of that, which was this issue is moot.  But to the
 3   extent that it's not, I don't think it's something for me to
 4   decide today in any event; correct?
09:16AM  5        MS. TESSAR:  Yeah, I don't think we need anything
 6   else from Your Honor.
 7              THE COURT:  Okay.  Thank you.
 8              Let's turn to the special master issue.  It didn't
 9   seem like anybody strongly opposed that notion.  There were
09:16AM 10   some proposals for particular individuals.  And as I'm sure you
11   all know, Rule 53 calls upon me to obtain your input on special
12   masters on the identity.
13              David Keyzer, is he based in Texas?
14              MR. SHIMOTA:  I believe he's here in California.
09:17AM 15        MS. ISAACSON:  Not anymore.  I believe he's in
16   Sacramento.
17              THE COURT:  So he's not the person I was thinking
18   of.  I have heard his name.  I confess, I did not look him up
19   and research him.
09:17AM 20        MS. ISAACSON:  He used to be in Texas, which is
21   maybe why you're thinking about him.  He used to clerk for
22   Folsom and did tech advisory work for Judge Folsom and some of
23   the other ED Texas judges.
24              THE COURT:  Then he probably is the person I'm
09:17AM 25   thinking of.  Judge Carter pretty regularly appoints him.
```

```
 1              MS. ISAACSON:  He does indeed.

 2              THE COURT:  Okay.  This is the person I'm thinking

 3  of.  I know him.  Okay.  I could tell you I think highly of

 4  him.  So that's -- that was plaintiff's suggestion.

 5              MR. SHIMOTA:  Yes, Your Honor.

 6              THE COURT:  Then DIRECTV, I think, suggested

 7  Judge -- retired Judge Segal or retired Judge Laporte.  I know

 8  Judge Segal well.  I know of Judge Laporte, but I haven't used

 9  her as a special master or appointed her as special master but

10  think highly of her.

11              Were there other candidates that anybody kicked

12  around?

13              MS. ISAACSON:  We met with plaintiff's counsel just

14  before you came in, Your Honor.  And for Cox, at least I can

15  speak for our client, that we think very highly of Judge Keyzer

16  as well.

17              THE COURT:  Am I mispronouncing --

18              MS. ISAACSON:  No.  I think it's Keyzer.  He says it

19  "Keyzer."  But I think very highly of him as a special master

20  candidate and agree with plaintiff with that recommendation.

21              THE COURT:  So that's Cox.  And --

22              MS. ISAACSON:  Yes, Your Honor.

23              THE COURT:  Cox and plaintiff like David Keyzer.

24              MR. PADMANABHAN:  Comcast can also agree to

25  Mr. Keyzer.
```

09:17AM   5
09:18AM  10
09:18AM  15
09:18AM  20
09:18AM  25

```
 1              THE COURT:  Comcast.  Okay.  DISH and DIRECTV?

 2              MR. SHARTZER:  For DISH, in the '23 case, DISH would

 3    consent to David Keyzer as well.

 4              THE COURT:  Okay.  DISH in the satellite cases.

 5              MS. TESSAR:  We'll consent as well, Your Honor.

 6              MR. LO:  If possible, Your Honor, we'd like to do a

 7    little bit more diligence on Mr. Keyzer.  I have not used him

 8    before.  So we're running the traps with the client and my

 9    colleagues.  But we -- obviously we have suggested

10    Judge Laporte and Judge Segal as well.

11              THE COURT:  Okay.  Well, it looks like there's close

12    to -- close to consent to Mr. Keyzer.  Again, why don't you all

13    meet and confer.  And this is on behalf of DIRECTV; correct?

14              MR. LO:  This is on behalf of DIRECTV.

15              And I'll pose the question -- I suspect I know the

16    answer -- is it Your Honor's preference that we use the same

17    master in all of the cases?

18              THE COURT:  It is, yes.  That was my thought.  I

19    think it would be inefficient to have somebody different in one

20    of the groups of cases.

21              MR. LO:  All right.  Understood, Your Honor.

22              THE COURT:  That having been said, if you have

23    objection to Mr. Keyzer, you should raise it and, you know,

24    I'll take a look at it.  What I would prefer again is that all

25    parties coalesce and agree on the identity of a special master.
```

09:19AM (line 5)
09:19AM (line 10)
09:19AM (line 15)
09:20AM (line 20)
09:20AM (line 25)

1        Now, has anybody contacted Mr. Keyzer to make sure
2   he doesn't have any conflicts?  Would this come as a surprise
3   and shock to him to learn that his name was being bandied about
4   here?
09:20AM 5        MR. PADMANABHAN:  From the defendant's perspective,
6   the first we saw the name was when we got plaintiff's exchange.
7   So I think I can speak on behalf of all the defendants, we have
8   not contacted Mr. Keyzer.
9        MR. SHIMOTA:  We have not reached out to him yet.
09:20AM 10  We just suggested him as a possibility, that we've been
11  discussing this.  Obviously that would be an important step to
12  make sure of that as well.
13       THE COURT:  So I'm going to foist this back on the
14  parties collectively.
09:21AM 15       Please -- DIRECTV, please consider whether you'll
16  consent to Mr. Keyzer.  I'm not twisting your arm.  If you've
17  got some reason not to, that's fine.  But in any event, all of
18  you meet and confer.  If it is Mr. Keyzer or if it's somebody
19  else, obviously contact him or her, make sure that person
09:21AM 20  obviously doesn't have a conflict, and we'll consent to the
21  appointment.  And preferably then provide to me a proposed
22  order appointing the special master.
23       If you want to look at the form of order that I
24  like, *FIGS* case -- I appointed retired Judge Segal as a special
09:22AM 25  master in a case I had, *SPI v. FIGS*.  *FIGS*, the apparel

1   company.  And if you want the case number, I'll have that to

2   you momentarily.  We'll come back to that.  *FIGS* -- you can

3   look at a case -- well, look at that one as a -- as an example

4   of what I've used in the past.

09:22AM 5       MR. PADMANABHAN:  Your Honor, I think we'll find it

6   on PACER.  That shouldn't be a problem.

7       THE COURT:  19-2286.  19-2286.

8       So again, hopefully you'll present to me a

9   stipulation and a proposed order that I would enter in all

09:22AM 10  three cases after -- well, before or after consolidating.  I

11  don't know that it matters.  Good.

12      And again, if it's not Mr. Keyzer, that's fine.  If

13  you've got somebody else in mind, again, see if you can

14  coalesce around him or her and submit that.  And if it's okay

09:23AM 15  with me, then I'll probably approve that.

16      That may run through everything I had on my agenda.

17  It made it easier with the request for guidance hopefully

18  mooted.  So tell me what else you all would like to discuss

19  after having traveled all this way -- which I appreciate.

09:23AM 20      MS. TESSAR:  For DISH, we had one other thing that

21  we wanted to raise to get the Court's guidance on.  You may

22  have noticed that Entropic filed earlier this week amended

23  Rule 7.1-1 statements.  And they did that at our request

24  because the rules in this district require every party to

09:24AM 25  disclose anyone who has a pecuniary interest in the outcome of

1    the case.

2          In their disclosures, their updated disclosures,

3    they identify Fortress Investment Group as a company that acts

4    as an investment advisor to investment funds but have an

09:24AM 5    interest in the outcome of this case, but they didn't identify

6    the funds.  We've asked them to supplement to include that

7    information, and they have refused and said they're not

8    required to.

9          We think the rule is pretty clear here, and we'd

09:24AM 10   just like the Court's guidance on how to proceed because, you

11   know, our concern obviously is if there's investors or

12   investment funds out there that have a pecuniary interest,

13   we're all entitled to know who those are, and particularly the

14   Court and Mr. Keyzer is going to need to know later and for

09:24AM 15   purposes of the jury as well.

16         THE COURT:  Is this the issue that Judge Connolly

17   has been facing and dealing with in Delaware?

18         MS. TESSAR:  It's precisely the issue.  And one of

19   the other Fortress affiliates, when faced with that rule,

09:25AM 20   decided to drop their cases rather than comply and identify the

21   interested investors.

22         THE COURT:  You wouldn't want that to happen.

23         MS. TESSAR:  I mean, it would be a tragedy.  But we

24   do very much want to know who's behind this, and we think the

09:25AM 25   Court needs to know that information, and that's clearly what's

1    required by the Local Rules.

2              THE COURT:  Okay.  Mr. Shimota, do you want to

3    respond?

4              MR. SHIMOTA:  I do.

09:25AM 5              So, you know, Rule 71 is concerning conflicts of

6    interest by you, Your Honor.  You know, so -- and you know who

7    the parties are in this case.  We updated our disclosure to

8    identify that Fortress is the parent of Entropic, the plaintiff

9    in this lawsuit.

09:25AM 10              What DISH is talking about is what they want and

11   it's information that we simply don't have actually.  It's who

12   are the investors in Fortress?  Who were the pension funds?

13   Who were the teachers' retirement funds who were the -- you

14   know, the teachers' retirement funds who put money into

09:26AM 15   Fortress?  And I don't know of any case in the land which would

16   suggest that because of that, information like that, that you

17   would need to recuse yourself.  But, you know, we feel like

18   we've complied with the rule and provided you information which

19   is sufficient for you to make a determination.

09:26AM 20              I'm not going to ask you about your personal

21   financial holdings for you to make a determination as to

22   whether or not, you know, there's need -- you need more.  But I

23   don't -- I simply don't know who is invested in Fortress,

24   right?  They're not my client in this matter.  And so we've

09:26AM 25   provided what we can in this matter.  And to the extent there's

1    more, we'll obviously do what we can.

2           But, you know, that's -- and I just would note as

3    well -- I mean, I think that Rule 71, there's reasonableness to

4    it, right?  DIRECTV is owned by a private equity fund, for

09:26AM  5    example.  They've identified that private equity fund.  They

6    haven't taken a step in this matter to identify all the

7    investors in that private equity fund.  What they've done

8    instead is to provide the level of reasonable information which

9    is necessary for you to be able to determine whether or not you

09:27AM 10    have a conflict of interest in this matter.

11           I mean, the only case I'm aware of is the

12    *Cisco/Centripetal Networks* case, and that is one in which the

13    judge's wife held some shares in Cisco, direct owner.  What

14    DISH is talking about is going steps and steps in the chain of

09:27AM 15    investors that we don't know about for some conflict.  And so

16    it doesn't seem necessary to us.  We believe we've complied.

17    But if Your Honor thinks more is necessary, we'll do whatever

18    we can.

19           THE COURT:  So two questions.  I'm having to decide

09:27AM 20    this issue.  I'm not going to decide this issue now, but you

21    say you don't know the information about Fortress that DIRECTV

22    apparently presently seeks.  But that information is knowable;

23    right?  Fortress presumably knows?

24           MR. SHIMOTA:  Right.  They can solve that issue

09:28AM 25    right now.

```
 1              THE COURT:  Who's "they"?
 2              MR. SHIMOTA:  DISH could.  They can serve discovery.
 3              THE COURT:  On Fortress and ask for that information
 4      and then --
 5              MR. SHIMOTA:  If they believe it's relevant and
 6      important to the case, they can do that.  But Entropic -- I
 7      can't give Your Honor something that I don't have.
 8              THE COURT:  And then the issue is -- and the issue
 9      in what I'm calling the Judge Connolly cases is control over
10      the litigation; is that correct?
11              MS. TESSAR:  I think that's part of the issue, but I
12      don't think that's the only issue by any means.  I think it's
13      also important for the Court to understand, you know, who is
14      benefiting from the litigation so that they can evaluate
15      conflicts as Mr. Shimota identified.  I'd also say the way he
16      described the relationship with Fortress is not the same way
17      that is described in their notice of interested parties.
18      Rather than saying here that Fortress is the ultimate parent,
19      it's that Fortress is the investment advisor for funds that
20      control Entropic.
21              THE COURT:  You're going to double-team?
22              MS. GOODRICH:  If I may, Your Honor.  Precisely it
23      says:
24              "FIGS LLC and/or its wholly owned
25          subsidiaries or investment advisors to private
```

UNITED STATES DISTRICT COURT

```
  1            investment funds that own Entropic holdings and may

  2            have an interest in the outcome of the action."

  3            THE COURT:  Okay.  Well, as I said, I'm not going to

  4       decide this today.  If DIRECTV wants -- if DISH wants this

09:29AM 5  information, file an appropriate motion or serve discovery,

  6       whatever you deem the best way to go, and I'll -- I'll take

  7       full briefing and decide it.

  8            MS. TESSAR:  Okay.  So just for clarity, because we

  9       did seek discovery on this and they stiffed us, to be frank,

09:30AM 10 but I'm not envisioning that this would be a discovery motion

  11      that would go to the special master.  This is instead a motion

  12      about compliance with the Local Rules.

  13           THE COURT:  Then file an appropriate motion.  Not

  14      going to decide it today.  I appreciate learning of the

09:30AM 15 dispute.

  16           MS. TESSAR:  Okay.

  17           THE COURT:  If you can't work it out, Local

  18      Rule 7-3, then file an appropriate motion, and I'll deal with

  19      it after full briefing.

09:30AM 20           MS. TESSAR:  That sounds good.  Thank you for that

  21      guidance.

  22           THE COURT:  Thank you.

  23           What else?  This is a chance -- I mean you all --

  24      clients have spent a lot of money having you here, and I'm very

09:30AM 25 happy to see you.  What else can we accomplish here today ?
```

**UNITED STATES DISTRICT COURT**

```
 1              Oh, wait.  There's more.
 2              MS. TESSAR:  There's just one other thing.  I just
 3      wanted to let the Court know we are not of like mind with
 4      Entropic in terms of the format and presentation of the
 5      technical tutorial.  So I'm not asking you to resolve that
 6      today, but we are planning to submit a joint report, hopefully
 7      in the next few days, laying out each parties' proposal on
 8      that.
 9              THE COURT:  Was that a part of my schedule?
10              MS. TESSAR:  At the status conference in December, I
11      think you told us to confer, and if we couldn't agree, to come
12      back to you.
13              THE COURT:  Okay.  So you're come -- well, you're
14      giving me a heads-up about coming back to me?
15              MS. TESSAR:  Exactly.  DISH's proposal is that we
16      would have an in-person technical tutorial in June before you
17      dive into the Markman briefing so that you would have that in
18      front of you, which also has the advantage of making the day
19      when we'll have the Markman hearing not quite so long.
20      Entropic, I think, wants to have the technical tutorial
21      immediately before the Markman.  I believe that's July 17.
22              THE COURT:  Isn't the Markman set for July 11?
23              MR. SHIMOTA:  July 11.
24              MS. TESSAR:  July 11th.  My apologies.
25              MR. SHIMOTA:  Your Honor, I mean, you know, it's
```

09:30AM (line 5)
09:31AM (line 10)
09:31AM (line 15)
09:31AM (line 20)
09:31AM (line 25)

```
 1    really your preference.  In my view, having a discrete
 2    technical tutorial where we tell you something, like, we sit
 3    there and have a professor come in and say "This is a
 4    satellite, and satellites send signals down," it's just -- it's
 5    not particularly helpful.  And it's kind of divorced from the
 6    hearing.  And we think it's more useful to talk about the
 7    technology in the context of the presentation in the context of
 8    the claims.  But if you would like to have a separate tutorial,
 9    we don't have a problem with that.  But rather our feeling is
10    that it's just most effective to present everything to you at
11    one time and to discuss the technology in the context of both
12    the patent and -- itself and extrinsic record in the claim.
13    But it's your preference, Your Honor.
14              THE COURT:  If there's a tutorial, are you
15    anticipating it be each side would spend -- would have somebody
16    come in and talk about the technology, Mr. Shimota?
17              MR. SHIMOTA:  Well, DISH would like to have live
18    testimony.  We don't think that that's necessary to have
19    professors come in and talk about this.  It's not -- but
20    again --
21              THE COURT:  Hold on.  So your preference would be at
22    the Markman hearing people would actually testify --
23              MR. SHIMOTA:  No.
24              THE COURT:  -- and take evidence?
25              MR. SHIMOTA:  No.  We submitted expert reports which
```

would be provided to Your Honor in advance of the hearing which

you'll be able to review, and then we can discuss with you what

the experts have said and have -- you know, and present the

technology to you in the context of discussion, the particular

09:33AM 5   claim elements in dispute.

I just -- if instead you want to have -- well, two

things:  If you want, at the hearing, to have experts come and

testify live for you, we can do that.  That would be fine.  I

just don't think that having a separate tutorial that is

09:33AM 10  divorced from the patent claims itself, kind of the objective

just talking about just the technology, what's a channel,

what's frequency, is going to be that helpful in this instance,

and that's why we're proposing to just have the hearing and

potentially have some expert time for the discussion of the

09:33AM 15  technology.

But I would simply say that whatever Your Honor

thinks is most helpful, we're fine with doing.  So there's not

a dispute per se, it's just we think that what we're suggesting

would be more effective.

09:34AM 20  MS. TESSAR:  I think everyone's confirmed they are

not planning live testimony at the Markman, although there will

be some declarations submitted with the briefing.

For DISH, we do hope to have our expert who is a

gentleman by the name of Dr. Paul Steffes, who used to work for

09:34AM 25  NASA, there to present the technical tutorial.  And Dr. Steffes

is out of the country.  He has a project for the Italian Space

Agency in July.  So for that reason as well, we would be able

to have him live to present the technical tutorial, if we can

do that in June.

09:34AM  THE COURT:  And if we did that, Mr. Shimota,

Entropic would have its own person?

MR. SHIMOTA:  Yeah, we -- our expert, Dr. Akl, would

come and talk about the technology too.  It's conceivable I've

seen -- well, sometimes I've seen in the past for these types

09:34AM of tutorials, the parties can jointly work on, you know, a

PowerPoint with talking on it type thing to present.

If we're going to have live witnesses, presumably it

would just be a situation where each side would have their

witness come in and teach Your Honor.

09:35AM  THE COURT:  Well, if you're asking for high-level

guidance, I think I would like a tech tutorial ahead of time.

June-ish does sound good.  And however you can agree on doing

it would be fine, whether it's one person who hopefully, in an

unbiased way, discusses and teaches me -- teaches us the

09:35AM technology.

Or, if you cannot, which is probably more likely,

each of you has your own person who comes in and does that.  I

think that would be helpful.  So if you could confer and talk

about what that looks like.

09:35AM  I know Judge Selna does these tech tutorials on

```
 1  Saturdays.  That's -- keep that in mind.  I'm not saying

 2  definitely do that, but keep that in mind.  That might work.

 3             MS. TESSAR:  Okay.  And once we've conferred, we'll

 4  submit something, and you'll give us a date that's good for

 5  you, and if it's a Saturday that's good for you and your staff?

 6             THE COURT:  And you can reach out to my -- as

 7  opposed to the formality of filing something, you can jointly

 8  reach out to my clerk, courtroom deputy about dates.  That's

 9  fine.  If it's purely procedural scheduling related, that works

10  fine.

11             MS. TESSAR:  Sounds great.  Will do.

12             THE COURT:  So I hope that's some guidance.

13             MS. TESSAR:  Very helpful.

14             THE COURT:  Good.  What else can we accomplish?

15             MS. TESSAR:  That's all for me.

16             MR. SHIMOTA:  There are other issues from our side,

17  but they're more very in-the-weeds discovery issues, which I

18  assume you don't want to talk about today.

19             THE COURT:  I appreciate heads-ups, but I'm not

20  likely to decide anything like that today.

21             MR. SHIMOTA:  Well, I guess, you know, DISH filed

22  its request for clarification on discovery, and our view is

23  that they basically asked for clarification that, in their

24  view, that there was no discovery which should take place but

25  for anything that wouldn't intrude on work towards the claim
```

1    construction briefing.

2         Subsequent to Your Honor's ruling on their motion to

3    stay, they appear to have shifted gears a bit and are now

4    willing to at least start the process of scheduling witnesses

09:37AM  5    on technical issues, i.e., for infringement.

6         We still can't get discovery concerning financial

7    topics, you know, the damages in the case.  Could you please

8    clarify whether discovery is opened concerning financial

9    issues?  I mean, in our view, there was no -- in Texas, at

09:37AM 10    least, there was no limitations on discovery at all.  And we

11    had a scheduling conference, and we think it's important to the

12    case.  So if you could, if you could clarify that, Your Honor,

13    that would be helpful.

14         MS. TESSAR:  We don't dispute that discovery is open

09:38AM 15    there.  We're working towards producing documents.  I think to

16    the extent there's a dispute at all, the question is does it

17    make sense to have a deposition of a financial witness before

18    we produce the sales data.  Obviously, that doesn't make any

19    sense.  So I think that this is one that will naturally work

09:38AM 20    itself out and logic will prevail.

21         MR. SHIMOTA:  Well, the case has been pending for a

22    year.  We would hope that we can get the sales data soon.

23    There's certain granular data, but it seems there is a dispute.

24    So we can meet and confer and work on that.

09:38AM 25         THE COURT:  Okay.  Continue working on that, please.

**UNITED STATES DISTRICT COURT**

There's a proportionality doctrine that's built into Rule 26
and all the discovery rules.  So I'm not going to rule on what
you've given me here, plus I'd rather see a special master in
place who can appreciate the entire scope of the cases, all the
cases and kind of see it from that perspective.  So keep
working on it.

                MR. SHIMOTA:  Okay.

                THE COURT:  If you absolutely need a decision on
something, if there's a discovery -- discrete discovery dispute
that exists, there's a process for getting that resolved.  That
said, I appreciate hearing the heads-up.

                MR. SHIMOTA:  Thank you, Your Honor.  I have nothing
else.

                THE COURT:  Okay.  Anybody else?  So where did you
all come in from?

                MS. TESSAR:  I came from Denver where DISH is
headquartered.  I was not supposed to be here.  My partner last
night, who's in San Diego, got COVID.  So...

                THE COURT:  Sorry to hear that.

                MS. TESSAR:  I came in quite late, but I'm glad to
be here with you.

                THE COURT:  Glad to have you.

                Okay.  Where else?

                MR. SHIMOTA:  I'm from Chicago.  If you want to have
a tutorial on a Saturday, my mom and dad live up north of here.

1    So I'm more than happy to.  But I'm from Chicago.

2              MS. ISAACSON:  I only came from San Francisco.  So

3    not too far.

4              MR. PADMANABHAN:  From New York, but I'm here

09:40AM 5    regularly.

6              MS. RAGHAVAN:  Chicago.

7              MR. SHARTZER:  Washington, D.C.

8              MR. MARCHESE:  I'm a Southern California person.

9    San Diego.

09:40AM 10             MR. LO:  I'm about as local as it gets, Los Angeles.

11             THE COURT:  Thank you all for coming in from all

12   those places.  I appreciate it.  I thought this might be a

13   longer hearing.  I'm sorry to bring you all in for a relatively

14   short proceeding, but I think we got a lot accomplished, and it

09:41AM 15   was nice for me to see you all here together.

16             Anything else?

17             Okay.  Hearing nothing, have a great rest of the

18   day, great weekend.  Hopefully you can enjoy Southern

19   California for a little while longer, those of you who are out

09:41AM 20   of town, and I'll see you next time.  Thank you.

21             THE COURTROOM DEPUTY:  All rise.

22             **(Proceedings conclude at 9:41 a.m.)**

23                         **--oOo--**

24

25

1      *CERTIFICATE OF OFFICIAL REPORTER*

2

3      COUNTY OF LOS ANGELES   )
                                )
4      STATE OF CALIFORNIA     )

5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6      COURT REPORTER, in and for the United States District Court for

7      the Central District of California, do hereby certify that

8      pursuant to Section 753, Title 28, United States Code that the

9      foregoing is a true and correct transcript of the

10     stenographically reported proceedings held in the

11     above-entitled matter and that the transcript page format is in

12     conformance with the regulations of the Judicial Conference of

13     the United States.

14

15     *Date:  May 4, 2023*

16

17

18

19                              */S/ DEBBIE HINO-SPAAN*

20                              *Debbie Hino-Spaan, CSR No. 7953*
                                *Federal Official Court Reporter*

21

22

23

24

25

**UNITED STATES DISTRICT COURT**