Christopher S. Marchese (SBN 170239)
marchese@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240 / Fax: (858) 678-5099

Adam R. Shartzer *(admitted *pro hac vice*)*
shartzer@fr.com
Ruffin B. Cordell *(admitted *pro hac vice*)*
cordell@fr.com
Richard A. Sterba *(admitted *pro hac vice*)*
sterba@fr.com
Ralph A. Phillips *(admitted *pro hac vice*))*
rphillips@fr.com
Michael J. Ballanco *(admitted *pro hac vice*)*
ballanco@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave., SW, Suite 1000
Washington, DC 20024
Tel: (202) 783-5070 / Fax: (202) 783-2331

*Additional Counsel Listed on Signature Page*

Attorneys for Defendant
DISH Network Corporation, et al.

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>            Plaintiff,<br><br>    v.<br><br>DISH NETWORK CORPORATION; DISH NETWORK LLC; DISH NETWORK SERVICE, LLC; AND DISH NETWORK CALIFORNIA SERVICE CORPORATION,<br><br>            Defendants. | Case No. 2:23-cv-1043-JWH-KES<br><br>**REPLY IN SUPPORT OF DEFENDANTS DISH NETWORK CORPORATION, ET AL.'S RULE 12(b)(6) MOTION TO DISMISS UNDER 35 U.S.C. § 101**<br><br>Hearing Date:   June 9, 2023<br>Hearing Time:  11:00 a.m.<br>Courtroom:    9D<br>Judge:        Hon. John W. Holcomb |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................... 5

II.   ARGUMENT................................................................................................. 5

  A.    The '566 Patent's Claims Are Patent Ineligible...................................... 5

      1.    Step One: The Claims Are Directed to an Abstract
            Idea............................................................................................. 5

      2.    Step Two: The Claims Lack an Inventive Concept .................... 8

  B.    The '910 Patent's Claims Are Patent Ineligible....................................10

      1.    Step One: The Claims Are Directed to an Abstract
            Idea...........................................................................................10

      2.    Step Two: The Claims Lack an Inventive Concept ..................14

  C.    Dismissal with Prejudice Is Warranted ................................................16

III.  CONCLUSION ...........................................................................................16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADASA Inc. v. Avery Dennison Corp.*,
  55 F.4th 900 (Fed. Cir. 2022)......................................................14, 15

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ...........................................................8

*Angel Techs. Grp. LLC v. Facebook Inc.*,
  No. CV 21-8459-CBM, 2022 WL 3093232 (C.D. Cal. June 30, 2022) ...........17

*Bancorp Services, L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) ..........................................................12

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ..........................................................10

*Cellspin Soft Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) ............................................................9

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
  859 F.3d 1352 (Fed. Cir. 2017) ..........................................................12

*Cosmokey Sols. GmbH & Co. KG v. Duo Security LLC*,
  15 F.4th 1091 (Fed. Cir. 2021) .............................................................9

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  958 F.3d 1178 (Fed. Cir. 2020) ..........................................................14

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ............................................................8

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016) ..........................................................10

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023)...................................................7, 9, 10

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
  967 F.3d 1319 (Fed. Cir. 2020) ............................................................9

*Intell. Ventures I LLC v. Symantec Corp.*,
      838 F.3d 1307 (Fed. Cir. 2016) ................................................................. 13, 16

*Internet Patents Corp. v. Active Network, Inc.*,
      790 F.3d 1343 (Fed. Cir. 2015) ........................................................................ 10

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
      607 F. Supp. 3d 464 (D. Del. 2022) ............................................................ 9, 10

*Pure Parlay, LLC v. Stadium Tech. Grp., Inc.*,
      No. 2:19-cv-00834-CDS-BNW, 2023 WL 349641 (D. Nev. Jan. 20, 2023) ..... 17

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
      855 F.3d 1322 (Fed. Cir. 2017) ................................................................. 13, 14

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
      65 F.4th 698 (Fed. Cir. 2023) ........................................................................ 6, 12

*Simio, LLC v. Flexsim Software Prods.*,
      983 F.3d 1353 (Fed. Cir. 2020) ........................................................................ 11

*TecSec, Inc. v. Adobe, Inc.*,
      978 F.3d 1278 (Fed. Cir. 2020) ................................................................. 14, 15

*Two-Way Media Ltd. v. Comcast Cable Comm'ns, LLC.*
      874 F.3d 1329 (Fed. Cir. 2017) ............................................................ 12, 13, 16

*Voip-Pal.Com, Inc. v. Apple Inc.*,
      375 F. Supp. 3d 1110 (N.D. Cal. 2019) ...................................................... 16, 17

*Weisner v. Google LLC*,
      51 F.4th 1073 (Fed. Cir. 2022) ..................................................................... 7, 10

**Statutes**

35 U.S.C. § 101 ................................................................................... 6, 11, 12, 17

**Other Authorities**

Fed. R. Civ. P. Rule 12 ................................................................................. 6, 12

## I.   INTRODUCTION

Entropic's Opposition plods a familiar path in § 101 proceedings. Entropic argues that DISH over-simplifies the inventions in the '566 and '910 patents and then attempts to rewrite its claims as solving technical problems. Entropic also argues that claim construction and fact issues prevent ineligibility at the Rule 12 stage, even though Entropic fails to specifically identify any proposed constructions or legitimate fact issues. But Entropic's arguments cannot rewrite the **actual** claim language, and an ineligibility finding is appropriate. Entropic also did not amend its Complaint to plead factual allegations related to the instant Motion. With scant evidence from the patent specifications to save the claims at Step Two, this is no surprise. Thus, the Court should grant DISH's Motion and dismiss Claims VI and X with prejudice.

## II.   ARGUMENT

### A.   The '566 Patent's Claims Are Patent Ineligible

#### 1.   Step One: The Claims Are Directed to an Abstract Idea

Entropic sets forth two alleged reasons why the claims of the '566 patent are not directed to an abstract idea: 1) the claim term "adapt transmission parameters" requires construction, and 2) DISH's characterization of the claims omits that the invention is in the context of a coaxial cable network, and that the claims require a "communication link probe that results in adapting transmission parameters – a feature that allows for the optimization of link communications in such a network." Opp. at 9. Neither prevents a finding that the '566 patent claims are ineligible.

First, "[c]laim construction is not an inviolable prerequisite to a validity determination under § 101," particularly where "claims are directed to ineligible . . . subject matter under all plausible constructions." *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023). Entropic tellingly offers no proposed construction for the term "adapt transmission parameters," and that fact alone shows that claim construction is not required here. *See id.* (affirming disposition of § 101 issues at motion to dismiss stage where patentee "failed to provide constructions" and "failed

to explain . . . how its constructions would make any difference to the *Alice* analysis"). Even if Entropic could offer a construction, the two specification portions Entropic cites simply confirm that claim construction would not change the outcome.  It first cites a discussion of "modulation and other transmission parameters."  Opp. at 5; '566 patent at 4:23-39.[1]  But the **claims** only broadly recite "adapt[ing] transmission parameters."  Modulation—or any other adaptation of transmission parameters—is not claimed.  Unclaimed matter is insufficient to survive Step One.  *See Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) ("The analysis at step one must focus on the claim language." (citing *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019)).  Even if the claims recited modulation, the specification confirms that modulation is itself generic and conventional.  It explains that any one of an unspecified number of modulation methods may be used, including "OFDM," "Tomlinson precoding," "or others."  '566 patent at 7:8-28; *see also*, *e.g.*, *Hawk Tech.*, 60 F.4th at 1357 ("[E]ncoding and decoding image data and converting formats, including when data is received from one medium and sent along through another, are by themselves abstract ideas." (internal quotations omitted)).  "Simply appending conventional steps, specified at a high level of generality, to abstract ideas," as the claims do here, "cannot make those ideas patentable."  *Weisner v. Google LLC*, 51 F.4th 1073, 1083 (Fed. Cir. 2022).  Entropic then cites the disclosure of a "probe . . . used for calibrating the I/Q amplitude and phase Quadrature balance of the up and down conversion process."  Opp. at 5.  But Entropic conveniently leaves out the preceding line, which clarifies that the cited portion describes a probe for "hardware calibration," not "link optimization" or adaptation, as the claims require.  *Compare* '566 patent at 8:37-44 *with id.* at 8:45-57.  Moreover, the **claims** recite nothing about hardware calibration.  Thus, no plausible construction rooted in the claim language would change the outcome here.

As to Entropic's second argument, the claims do not become non-abstract just

[1] In its complaint, Entropic also points to "modulation" as the only specific example of a transmission parameter that can be "optimized."  Dkt. No. 1 at ¶ 245.

because they recite 1) probing a communication link and adapting parameters for the link, and 2) a coaxial cable network.  The goal of *Alice* Step One is not to incorporate each and every claim limitation into the abstract idea articulation, but rather to capture the claim's "focus" or "character as a whole."  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  Here, the focus of the '566 patent claims is authentication and admission of a node into a network.  Indeed, independent claim 19 does not even recite the "probe" and "adapt" limitations.  DISH's summary of the '566 patent's claims captures the claims' character **as a whole**.

Further, the claims are directed to an abstract idea even considering the "probe" and "adapt" limitations.  The claims recite "prob[ing] a communication link of the CCN . . . ."  The specification describes three types of "probe packets," which are already "prevalent" in the art, and only one of which is used for "link optimization." '539 patent at 8:15-20, 8:37-44.  But the "probe packet" (or what it is used for) is **not claimed**.  Even if it were, the described use of the probe packet—gathering information about the "distance between nodes" and "calculat[ing] a cyclic prefix," *id.*—amounts to collecting information and analyzing it through a mathematical algorithm, "essentially mental processes within the abstract-idea category." *Elec. Power*, 830 F.3d at 1354.  And as explained above, the claimed "adapt[ing] transmission parameters," like modulation, is generic and abstract.

Entropic does not dispute that "merely limiting the field of use of the abstract idea to a particular existing technological environment"—here, coaxial cable networks—"does not render the claims any less abstract." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016).  Instead, it argues that the "claimed invention contributes to the conversion of [an existing . . . uni-directional coaxial cable] into a point-to-point network by optimizing communications over such network through adaptive transmission parameters."  Opp. at 12.  However, as the '566 patent explains, existing coaxial cables were not "uni-directional." *E.g.*, '566 patent at 3:60-65 (describing upstream communications).  And again, the focus of

*Alice* Step One is on the **claims**.  The claims do not recite conversion of a coaxial cable network into a "point-to-point network," "optimizing communications," or **how** "transmission parameters" would be "adapted" to "optimize" anything.  *Hawk Tech.*, 60 F.4th at 1357 ("Nor . . . do the claims (or the specification) explain 'what th[e] [claimed] **parameters** are or **how** they should be manipulated.'" (emphasis added)).

Further, most of the case law Entropic cites for support either (1) does not address the abstract idea analysis, or (2) held claims directed to abstract ideas. *Cosmokey Sols. GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021) (declining to reach whether claims were directed to abstract idea); *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, 967 F.3d 1319, 1328-29 (Fed. Cir. 2020) (addressing claims directed to **natural phenomena**, not abstract ideas); *Cellspin Soft Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (finding claims directed to abstract idea).

In the one exception—a single non-binding case from Delaware—the claims at issue satisfied Step One because they were directed to "particular hardware components that have particular features and are arranged in a particular manner." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 485 (D. Del. 2022). That court's inquiry was not whether the claims specified how certain functionality was achieved, as Entropic suggests, but on the particular arrangement of claimed components.  *Id.* at 486.  By contrast, as DISH's motion established, the '566 patent claims simply recite generic, functional limitations in a conventional arrangement, which—unlike those in *IOENGINE*—are directed to "an end result rather than the process or machinery employed to achieve that result."  *See id.* at 487; *see also* Mot. at 17-18.  Though Entropic argues that the '566 patent's "point-to-point architecture for a coaxial cable network" is analogous to *IOENGINE*, Opp. at 12-13, the '566 patent claims do not recite a "point-to-point architecture," for a coaxial cable network or otherwise.  The '566 patent claims are thus directed to an abstract idea.

## 2.   Step Two: The Claims Lack an Inventive Concept

At Step Two, Entropic does not dispute that the components and functions

claimed in the '566 patent are routine and conventional.  Instead, Entropic alleges an "issue of fact as to whether transmission parameter probes and transmission parameters used to optimize coaxial cable network communications via link optimization are novel (unconventional)."  Opp. at 13.  But these claims do not recite "transmission parameter probes," using transmission parameters "to optimize coaxial cable network communications," or "link optimization."  Instead, they merely recite general-purpose components used for generic, commonplace functions, without any special arrangement.  Mot. at 16-19; *see Weisner*, 51 F.4th at 1083-84 (claims held ineligible where "the specification describe[d] the components and features listed in the claims generically").  Regardless, "it is irrelevant whether [the abstract idea] may have been non-routine or unconventional as a factual matter."  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018); *see also Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1376 (Fed. Cir. 2016) ("[A] claim directed to a newly discovered . . . abstract idea . . . cannot rely on the novelty of that discovery for the inventive concept").  No factual dispute precludes adjudicating patentability here.

Entropic otherwise argues nothing new at Step Two, simply parroting its Step One argument that the claims are directed to "a specific improvement to network admission, *i.e.*, communication **probing** to set **transmission parameters** on a **coaxial cable network**."  Opp. at 14 (emphasis added).  But the "probe" limitation is generic and conventional, *see* '566 patent at 8:18-20 (admitting "probe packets" are one of the "most prevalent packet types"); the "transmission parameters" limitation "fail[s] to specify precisely what the parameters are," or how they are "adapted," *Hawk Tech.*, 60 F.4th at 1358; and the coaxial cable network is simply "siting the ineligible concept in a particular technological environment," *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015).

The three affirmative cases Entropic cites are easily distinguished.  Entropic again attempts to analogize to *IOENGINE*, but the *IOENGINE* claims survived because they—unlike the '566 patent claims here—recited particular arrangements of

particular components in an unconventional manner.  *See* 604 F. Supp. 3d at 485.  Entropic next relies on *Enfish, LLC v. Microsoft Corp.*, where the claims were "directed to a specific improvement to computer functionality" because they taught a "self-referential table" that functioned differently from "conventional database structures" and offered benefits over those conventional structures.  822 F.3d 1327, 1337-38 (Fed. Cir. 2016).  Similarly, *Maxell, Ltd. v. Fandango Media, LLC* involved actual improvements to existing technology.  No. 17-cv-07534, 2018 WL 5085141, at *6 (C.D. Cal. Mar. 21, 2018).  But the '566 patent claims do not offer improvements to functionality; they simply recite conventional probing and transmission parameters in a coaxial cable network.  The purported improvement Entropic articulates—"enhancing the experience of a coaxial cable network user by allowing for the direct communication between diverse devices that are connected to such network," Opp. at 15—is missing from the claims.  The '566 patent claims thus fail at *Alice* Step Two.

### B.    The '910 Patent's Claims Are Patent Ineligible

#### 1.    Step One: The Claims Are Directed to an Abstract Idea

DISH's Motion establishes three reasons why the '910 patent's claims are directed to the abstract idea of receiving, aggregating, and transmitting data.  (Mot. at 19-21.)  Rather than rebut DISH's showing, Entropic focuses on distinguishing DISH's cited case law.  (Opp. at 15-19.)  But each of these purported distinctions fails when analyzed relative to the language of the '910 patent claims.

Like the '566 patent, Entropic asserts there are "obvious claim construction issues" regarding the claims of the '910 Patent, including "'packet aggregation module' and 'aggregate packet'" that make ruling on Section 101 patentability inappropriate at this point.  *Id.* at 9, 15-16.  Yet Entropic fails to (1) identify or explain these purportedly "obvious" claim construction issues, or (2) offer any proposed constructions that would supposedly change the analysis.  *See Simio, LLC v. Flexsim Software Prods.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("The main problem with th[e] argument [that claim construction is required] is that Simio has not explained how it

1    might benefit from any particular term's construction under an *Alice* § 101 analysis.");

2    *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352,

3    1360 (Fed. Cir. 2017) (affirming grant of § 101 motion to dismiss because plaintiff

4    proposed no claim construction that would have changed the analysis).  Even if claim

5    construction were necessary—it is not—it would not preclude a § 101 analysis,

6    despite Entropic's misplaced reliance on *Bancorp Services, L.L.C. v. Sun Life Assur.*

7    *Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012), as precluding dismissal prior

8    to claim construction.  To the contrary, at the Rule 12(b)(6) stage, the Court must

9    either adopt Entropic's constructions, which Entropic fails to propose, or resolve the

10   claim construction dispute to the extent necessary to conduct the § 101 analysis.  *See*

11   *Sanderling*, 65 F.4th 704, n.3 ("the court must proceed by adopting the non-moving

12   party's constructions, or the court must resolve the disputes") (quoting *Aatrix*

13   *Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

14          Entropic further argues that "DISH oversimplifies the claims of the '910

15   Patent" because it "entirely ignores the packet aggregation module and aggregate

16   packet limitations."  Opp. at 16.  Not so.  After first addressing these terms in the

17   Background section (Mot. at 9-10), DISH's Motion explains how "each claim

18   describes the purported invention in broad, generic, functional terms but fails to

19   identify how those ends are achieved" and quotes the patent specification to show that

20   "the claimed method of '**aggregating packets**' using a '**packet aggregation module**'

21   'can be performed by hardware, or any combination of hardware and software,'

22   including a generic processor and memory."  *Id.* at 20-21 (quoting '910 patent at 5:38-

23   45) (emphasis added).    DISH's mail carrier analogy also explained how the

24   "aggregate packet" was akin to "a bundle of mail," further evincing why the patent's

25   claims were directed to an abstract idea.  *Id.* at 21.

26          Entropic attempts to import limitations into the '910 patent claims to

27   distinguish DISH's case law.  It asserts that "[u]nlike the claim in" *Two-Way Media*

28   *Ltd. v. Comcast Cable Comm'ns, LLC*. 874 F.3d 1329 (Fed. Cir. 2017), "the claims

of the '910 Patent specify the manner in which network overhead is reduced through the use of packet aggregation by a packet aggregation module, *i.e.*, the 'how' that the court found missing in *Two-Way Media*."  Opp. at 17.  But Entropic fails to identify any such details in the '910 patent's **claims**.  Indeed, Entropic's only citation regarding this "how" comes from the **specification**, which asserts that "[t]he transmitted packet overhead of the network can then be reduced by eliminating interframe gaps, preamble information, and extra headers."  *Id.* at 8 (quoting '910 patent at 2:1-3).  Critically, these "requirements" are not recited in the claims, each of which merely requires (1) receiving packets, (2) identifying packets with the same aggregation identifier, (3) forming an aggregate packet, and (4) transmitting (*i.e.*, forwarding) the aggregated packet to a destination.

Entropic's take on *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017), also fails.  To distinguish *RecogniCorp*, Entropic attempts to align itself with the patentee in *California Institute of Technology v. Broadcom Ltd.* ("*Caltech*").  Opp. at 18.  In *Caltech*, this Court recognized that "[t]he claims of *Recognicorp* did not relate to a specific method of encoding."  2019 WL 11828211, at *15 (C.D. Cal. Jan. 18, 2019).  This Court found *Recognicorp* inapposite because the *Caltech* claims "focused on claiming encoding/decoding methods/means that are new and improved compared to standard methods/means."  *Id.*  Entropic argues that *Recognicorp* cannot control because "data packet aggregation performed by the packet aggregation module" is required by the '910 patent.  Opp. at 18.  But instead of claiming a specific data packet aggregation method, the '910 patent claims recite "forming an aggregate packet from [] at least two packet data units," simply because the packet data units "have a same aggregation identifier."[2]  Here, the claims lack

___
[2] Entropic's differentiation of *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016), fails for the same reason.  Entropic argues that the claims there "did not specify any particular business rule, which is contrasted with the claims of the '910 Patent, which provides specifically for aggregating packets by the packet aggregation module when multiple PDUs are destined for the same location."  (Opp. at 18.)  But as explained above and in DISH's Motion, there is nothing particular or specific about these claims, which are all akin to the long-standing human activity of mail sorting and delivery through the post office.

1  specificity in the same way as *Recognicorp*, where the Federal Circuit recognized that
2  "[g]eneralized steps to be performed on a computer using conventional computer
3  activity are abstract."  855 F.3d at 1326.

4        Entropic faults DISH for "characteriz[ing] the patent as teaching that [packet]
5  aggregation '"can be performed by hardware, or any combination of hardware and
6  software," ***including a generic processor and memory***'" because "the word 'generic'
7  appears nowhere in the '910 Patent."  Opp. at 17 (emphasis in original).  But the patent
8  makes clear that the claimed aggregation may be implemented using a "general," *i.e.*,
9  generic, computer.  The patent explains that "Node 21 includes a processor 20, a
10  transceiver 27, and memory 22" ('910 patent at 3:12-13), and "memory 22 stores
11  software modules that provide functionality when executed by processor 20,"
12  including the "packet aggregation module 25 [that] aggregates packets that are to be
13  transmitted to the same destination node."  *Id.* at 3:29-30, 3:39-40.  The patent states
14  that "Processor 20 may be **any type of general or specific purpose processor**,"
15  "Transceiver 27 can be **any device** that transmits and receives digital data," and
16  "Memory 22 can be comprised of **any combination** of . . . **any [] type of computer**
17  **readable medium**."  *Id.* at 3:13-20 (emphasis added).  The patent thus confirms that
18  the claims require only conventional computer hardware and activity.  *See Elec.*
19  *Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir.
20  2020) (finding failure at Step Two where claim "merely invokes well-understood,
21  routine, conventional components and activity to apply the abstract idea").

22        Finally, Entropic relies on two cases that are a poor match for the claims at
23  issue here, *ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900 (Fed. Cir. 2022), and
24  *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278 (Fed. Cir. 2020).  In *ADASA*, the claim was
25  "directed to a **specific**, **hardware-based** RFID serial number **data structure**
26  designed to enable technological improvements to the commissioning process."  *Id.*
27  at 908 (emphasis added).  "[T]his serial number comprise[d] two components: (1) a
28  limited number of MSBs, i.e., a limited, predefined sequence of higher order bits at

the leading end of the serial number and (2) remaining bits of lesser significance." *Id.* Moreover, "the claimed MSBs function as an additional data field within the serial number space that uniquely identifies the allocated block from which it came," and as a result, the Federal Circuit held this was "**not a mere mental process**, but a **hardware-based data structure** focused on improvements to the technological process by which that data is encoded." 55 F.4th at 909 (emphasis added).

Unlike the *ADASA* claims, the claims here do not require a specific, hardware-based data structure. Rather, as discussed above, the claims broadly recite "forming an aggregate packet from [] at least two packet data units" simply because the packet data units "have a same aggregation identifier." Moreover, as Entropic admits, "the packet aggregation module can be either hardware, or software, or a combination of both" (Opp. at 18), so there is no requirement for a hardware-based data structure.

As to *TecSec*, the defendant's proposed abstract idea ignored that the claim "expressly requires . . . accessing an 'object-oriented key manager' and specified uses of a 'label' as well as encryption for the access management." 978 F.3d at 1295. Thus, the Federal Circuit was "not persuaded [] that the claims fail" to "provide a 'specific' solution in the way [its] cases discuss." *Id.* at 1296. Without explaining why, Entropic argues that "[t]his is analogous to the detail regarding the use of the packet aggregation module to aggregate packets of PDUs in the claims of the '910 Patent." Opp. at 19. But no such detail exists in the patent's claims. And unlike the *TecSec* defendant, DISH addresses the claim element Entropic highlights. Mot. at 9-10, 20-21. The claims thus encompass an abstract idea.

## 2.    Step Two: The Claims Lack an Inventive Concept

Turning to *Alice* Step Two, Entropic's Opposition again ignores the substance of DISH's Motion and relies on limitations that are absent from the patent claims.

Entropic first argues that, "[a]s explained above, there is an issue of fact as to whether the 'packet aggregation module' and 'aggregate packet' limitations of the '910 Patent are unconventional, warranting denial of the instant motion." Opp. at 19.

14

But Entropic's brief does not explain an "issue of fact" anywhere "above."  Nor does its Complaint plead any facts in support of these claim elements being inventive.  *See* Dkt. 1.  Although Entropic relies on *Berkheimer*, that case holds that "improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." 881 F.3d at 1369.  As shown below, **the specification here confirms that the claim elements are conventional**, so no issues of fact exist.

Entropic claims that "DISH offers no evidence that the packet aggregation module and aggregated packets are conventional" except for "the decisions in *Two-Way Media* and *Intell. Ventures*."  Opp. at 19.  Yet DISH quotes directly from the patent specification to show that "System claim 3, which is representative of all three claims, requires only two generic components, each performing two generic functions."  Mot. at 22 (quoting '910 patent at 3:13-20, 3:29-35).  DISH finds further support in *Voip-Pal.Com, Inc. v. Apple Inc.*, 375 F. Supp. 3d 1110 (N.D. Cal. 2019), which concerned similar ineligible claims that "facilitate communication by receiving data, determining if that data has certain characteristics (*i.e.*, a same aggregation identifier), and outputting data based on that determination (*i.e.*, outputting an aggregate packet to a destination node)."  *Id.* at 23.  Entropic does not attempt to differentiate *Voip-Pal.com*, nor could it.

Entropic further requests automatic denial "because DISH failed entirely to address claims 1 and 2 of the '910 Patent."  Opp. at 20.  Not so.  DISH explains at length that "System claim 3 is representative" because "[c]laims 1 and 2 are method and computer readable media counterparts of claim 3 and each adds limitations related to the known error checking features described."  Mot. at 10.  DISH elaborates for *Alice* Step Two that "[t]he limitations in claims 1 and 2 regarding comparing checksums do not change the analysis" because "the use of a checksum (*i.e.*, a value representing the sum of the correct digits in a piece of transmitted data) was known in the art, and comparing checksums to ensure data integrity is akin to a postal worker

comparing the cities and/or zip codes written on each piece of mail to ensure the aggregated bundle was delivered to the right location." *Id.* at 21, n.6. Just as Entropic does not distinguish *Voip-Pal.Com*, it does not challenge this analogy.[3]

Last, Entropic relies on a characterization of the patent's Figures 3 and 4 that is untethered to the claims. Entropic crops Figure 3 to show only the MoCA frames 42 and 43, even though the specification states that Figure 4 aggregates "the data from Ethernet frames 32 and 36," which are different than the MoCA frames but also in the uncropped figure. *Id.* at 20; '910 Patent at 4:15-16. Worse, Figure 4 depicts merely a single embodiment of the claimed "aggregate packet" and does not limit the claims. *Id.* at 4:12:13. Entropic's failure to tie the patent claims to any unconventional structure or solution thus fails Step Two and the claims should be deemed ineligible.

### C.   Dismissal with Prejudice Is Warranted

Entropic does not request leave to amend or identify any additional facts it would plead in support of the *Alice* inquiry. Instead, Entropic points to the existing allegations in its Complaint, implicitly conceding that no amendments would change the outcome. *See* Opp. at 1, 3-4, 6, 8 (citing Dkt. 1). This Court should thus dismiss Counts VI and X with prejudice. *See Pure Parlay, LLC v. Stadium Tech. Grp., Inc.*, No. 2:19-cv-00834-CDS-BNW, 2023 WL 349641, at *8 (D. Nev. Jan. 20, 2023) (denying leave to amend because "amendment would be futile"); *Angel Techs. Grp. LLC v. Facebook Inc.*, No. CV 21-8459-CBM (JPRx), 2022 WL 3093232, at *4 (C.D. Cal. June 30, 2022) (same).

## III.   CONCLUSION

For the foregoing reasons, DISH respectfully requests that the Court find the '566 and '910 patents invalid under 35 U.S.C. § 101 for claiming patent-ineligible subject matter and dismiss Counts VI and X of the Complaint with prejudice.

---

[3] Rather than dispute that system claim 3—the only '910 patent claim asserted in the Complaint—is representative of all three claims, Entropic's arguments repeatedly rely on the claimed "packet aggregation module," which is only recited in claim 3 and not in claim 1 or claim 2. (*See* Opp. at 7, 9, 15, 16, 17, 18, 19 (relying on the "packet aggregation module").)

Dated:  May 26, 2023                    FISH & RICHARDSON P.C.


                                        By: */s/ Christopher S. Marchese*
                                             Christopher S. Marchese (SBN 170239)
                                             marchese@fr.com
                                             633 West Fifth Street, 26th Floor
                                             Los Angeles, CA 90071
                                             Tel: (213) 533-4240

                                             Adam R. Shartzer *(pro hac vice)*
                                             Ruffin B. Cordell *(pro hac vice)*
                                             cordell@fr.com
                                             Richard A. Sterba *(pro hac vice)*
                                             sterba@fr.com
                                             Ralph A. Phillips *(pro hac vice)*
                                             rphillips@fr.com
                                             shartzer@fr.com
                                             Michael J. Ballanco *(pro hac vice)*
                                             ballanco@fr.com
                                             FISH & RICHARDSON P.C.
                                             1000 Maine Ave., SW, Suite 1000
                                             Washington, DC 20024
                                             Tel: (202) 783-5070

                                             David M. Barkan (SBN 160825)
                                             barkan@fr.com
                                             FISH & RICHARDSON P.C.
                                             500 Arguello Street, Suite 400
                                             Redwood City, CA 94063
                                             Tel: (650) 839-5070

                                             Ashley A. Bolt *(pro hac vice)*
                                             bolt@fr.com
                                             FISH & RICHARDSON P.C.
                                             1180 Peachtree Street NE, 21st Floor
                                             Atlanta, GA 30309
                                             Tel: (404) 892-5005

                                        Attorneys for Defendants
                                        DISH Network Corporation, et al.