
1  Christopher S. Marchese (SBN 170239)
   marchese@fr.com
2  FISH & RICHARDSON P.C.
   633 West Fifth Street, 26th Floor
3  Los Angeles, CA 90071
   Tel: (213) 533-4240 / Fax: (858) 678-5099
4
5  Adam R. Shartzer *(admitted pro hac vice)*
   shartzer@fr.com
6  Ruffin B. Cordell *(admitted pro hac vice)*
   cordell@fr.com
7  Richard A. Sterba *(admitted pro hac vice)*
   sterba@fr.com
8  Ralph A. Phillips *(admitted pro hac vice))*
   rphillips@fr.com
9  Michael J. Ballanco *(admitted pro hac vice)*
   ballanco@fr.com
10 FISH & RICHARDSON P.C.
11 1000 Maine Ave., SW, Suite 1000
   Washington, DC 20024
12 Tel: (202) 783-5070 / Fax: (202) 783-2331
13
14 *Additional Counsel Listed on Signature Page*

15 Attorneys for Defendant
   DISH Network Corporation, et al.

16
IN THE UNITED STATES DISTRICT COURT
17
CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION
18

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION; DISH NETWORK L.L.C.; DISH NETWORK SERVICE, L.L.C.; AND DISH NETWORK CALIFORNIA SERVICE CORPORATION,<br><br>Defendants. | Case No. 2:23-cv-1043-JWH-KES<br><br>**DEFENDANT DISH NETWORK CORPORATION, ET AL.'S RESPONSIVE BRIEF TO PLAINTIFF'S SUPPLEMENTAL PROPOSED CONSTRUCTIONS REGARDING MOTION TO DISMISS § 101 ELIGIBILITY ANALYSIS**<br><br>Hearing Date:  July 21, 2023<br>Hearing Time:  11:00 a.m.<br>Courtroom:     9D<br>Judge:         Hon. John W. Holcomb |

# TABLE OF CONTENTS

**Page(s)**

I. Introduction ...................................................................................................... 5

II. The '566 Patent ................................................................................................ 5

    A. Unclaimed Details from the Specification Are Unavailing for § 101 .................................................................................................. 5

    B. Implausible Constructions Foretell the '566 Patent's Ineligibility ............................................................................................ 7

        1. The '566 Patent Claims Are Directed to an Abstract Idea ...................................................................................................... 8

        2. The '566 Patent Claims Lack an Inventive Concept .................. 11

III. The '910 Patent .............................................................................................. 12

    A. Entropic Fails to Explain How Its Proposed Constructions Affect the § 101 Eligibility Analysis ..................................................... 12

    B. Entropic's Proposed Constructions Do Not Avoid Ineligibility ........................................................................................... 15

IV. Dismissal with Prejudice Is Warranted ......................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) .................................................................................10

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)..........................................................................................*passim*

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ...................................................................................8

*Bilski v. Kappos*,
  561 U.S. 593 (2010)...................................................................................................13

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) .................................................................................10

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) ...................................................................................9

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019) ..........................................................................6, 9, 12

*Compression Tech. Sols. LLC v. EMC Corp*
  No. C-12-01746 RMW, 2013 WL 2368039 (N.D. Cal. May 29,
  2013), aff'd, 557 F. App'x 1001 (Fed. Cir. 2014)..........................................16, 17

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) .................................................................................10

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023) .............................................................................10, 11

*Immersion Corp. v. Fitbit, Inc.*,
  313 F. Supp. 3d 1005 (N.D. Cal. 2018)....................................................................10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012).....................................................................................................13

*Power Analytics Corp. v. Oper. Tech., Inc.*,
  No. SA CV16-01955 JAK, 2017 WL 5468179 (C.D. Cal. Jul. 13,
  2017) ..........................................................................................................................13

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
   696 F. App'x 1014 (Fed. Cir. 2017) ............................................................................ 9

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
   65 F.4th 698 (Fed. Cir. 2023) ..................................................................................... 8

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) ............................................................................ 5, 13

*Trading Techs. Int'l, Inc. v. IBG, LLC*,
   921 F.3d 1378 (Fed. Cir. 2019) ................................................................................ 13

*Trinity Info Media, LLC v. Covalent, Inc.*,
   562 F. Supp. 3d 770 (C.D. Cal. 2021) ......................................................... 10, 12, 16

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ................................................................................ 10

*Virtual Immersion Techs. LLC v. Safran S.A.*,
   22-cv-1248, Order (C.D. Cal. June 5, 2023) .............................................................. 8

*Weisner v. Google LLC*,
   51 F.4th 1073 (Fed. Cir. 2022) ................................................................................... 7

*Wonderland Nurserygoods Co., Ltd. v. Baby Trend, Inc.*,
   5:14-cv-01153, 2020 WL13680678 (C.D. Cal. Dec. 30, 2020) .................................. 7

**Statutes**

35 U.S.C. § 101 ........................................................................................................... *passim*

35 U.S.C. § 102 .................................................................................................................. 13

## I. INTRODUCTION

Entropic's supplemental brief merely retreads arguments made in its opposition and ignores the Court's clear direction in ordering supplemental briefing. Though Entropic failed to propose constructions for terms that it contended required construction under a § 101 analysis, the Court offered Entropic a second chance. That second chance came with an obligation: Entropic was ordered to "explain how the proposed constructions affect the § 101 eligibility analysis." Dkt. 66 at 2. Entropic's supplemental brief, however, fails to connect the newly proposed constructions with its arguments opposing patent ineligibility. Instead, Entropic ignores the claim language and shifts the focus to unclaimed elements from the specification, seeking to salvage its claims from abstractness. This reliance on the specification is neither appropriate within a § 101 analysis, nor responsive to the Court's direction to focus on the construed claims. As such, the Court should find the *claimed inventions* recited in the '566 and '901 Patents to be directed to patent-ineligible subject matter.

## II. THE '566 PATENT

Entropic's supplemental brief—which should have explained *how* its proposed constructions affect the § 101 analysis—uses the first six pages to provide a "summary" and "details" of the "intrinsic record." That discussion merely highlights components and concepts from the specification that are *not in the claims*. *See generally,* Supp. Br. at 1-6. Entropic first introduces its proposed constructions for the '566 patent halfway through its brief. And only at the final two pages of the '566 patent section does Entropic address "the impact of claim construction on patent eligibility." But even there, Entropic disregards its own constructions and instead relies further on unclaimed components from the specification. *Id.* at 8:8-10:14.

### A. Unclaimed Details from the Specification Are Unavailing for § 101

"The § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). And thus "the specification cannot be used to import details from the

1  specification if those details are not claimed." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). Entropic does not adhere to these principles, and instead tries to support the '566 patent with references to unclaimed details from the specification.

First, Entropic imports unrecited network and physical components from the specification into the claims. It explains that "the claims of the '566 patent relate to a communication circuit including a controller," but then stretches to add that "[t]he controller is placed in charge of establishing and maintaining a new local area network (LAN) on top of a pre-existing coaxial cable network or 'CCN.'" Supp. Br. at 1:1-6. While the claims recite a generic communication circuit and controller, nowhere do they include a "local area network" or a "pre-existing" network. Worse still, Entropic then suggests that the '566 patent "claim[s] a new network architecture designed to use the physical elements of a pre-existing coaxial cable network, includ[ing] a multitude of cabling, splitters and other elements." *Id.* at 1:15-17. Again, the claims do not require any of these "physical elements," including "cabling, splitters and other elements" (assuming Entropic's undefined reference to "other elements" is more of the same). Entropic also cites additional unclaimed structures: "existing topology," "wiring, splitters, etc.," and "new BCN modems." *Id.* at 1:19-28. None of this unclaimed subject matter is relevant to the § 101 inquiry.

Second, Entropic attempts to import unrecited *functional* limitations into the claims. Although the claims broadly recite "an admission procedure," Entropic suggests that the "subject matter of the '566 patent" is that the admission procedure "occurs at the communication link level (as opposed to a mere physical connection to the coaxial cable) . . . ." *Id.* at 2:10-12. But the claims do not discuss, much less distinguish, a "communication link level" from a "physical connection to the coaxial cable." Nor do the claims require that a particular device "is assigned as a controller" and "placed in charge of admitting new nodes." *Id.* at 2:7-12. That function, Entropic admits, is derived only from the specification. *Id.* at 9:27-10:10. Finally, Entropic

1 frequently refers to the controller being used to "optimize" communications. The
2 claims, however, contain no optimization steps or recitations.
3      In short, Entropic repeats the same error from its opposition brief. It focuses
4 on unclaimed features because the claims recite an abstract idea. Not only are these
5 features absent from the claim language, even Entropic's proposed constructions,
6 discussed below, fail to recite these features.

### B. Implausible Constructions Foretell the '566 Patent's Ineligibility

Entropic relies on *Wonderland Nurserygoods Co., Ltd. v. Baby Trend, Inc.*, 5:14-cv-01153, 2020 WL13680678 (C.D. Cal. Dec. 30, 2020), for the unremarkable idea that the specification can inform a claim construction analysis. What is remarkable, however, is that Entropic fails to offer a patent eligibility opinion stating the same. In fact, *Wonderland* never mentions a § 101 analysis. And it certainly does not suggest that the specification can substitute for the claim language when evaluating patent eligibility. Similarly, Entropic's citation to *Weisner v. Google LLC*, 51 F.4th 1073 (Fed. Cir. 2022), does not permit the importation of unclaimed elements from the specification into the claims. In fact, the *Weisner* court held the opposite, rendering ineligible two patents at issue and rejecting the patent owner's arguments as "not [being] linked to the claims." *Id.* at 1084.

Entropic proposes the following constructions for three claim terms:

| Term | Proposed Construction |
|---|---|
| perform an admission procedure | Establishing a logical communication link between the controller node and the new node over existing CCN physical connections. |
| probe a communication link | Evaluating characteristics of the signal pathway from controller node to the newly admitted node, using one or more probes. |
| adapt transmission parameters | Selecting transmission parameters for the signal pathway from controller node to the newly admitted node, based in part on the evaluation of the prior probing step. |

Though the correctness of Entropic's proposed constructions is not at issue, Dkt. 66 at 2, the implausibility of the construction for the term "perform an admission

procedure" deserves the Court's attention. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 704 (Fed. Cir. 2023) ("If claims are directed to ineligible (or eligible) subject matter under all ***plausible*** constructions, then the court need not engage in claim construction before resolving a Section 101 motion.").[1] Entropic's construction can be broken into two parts: "establishing [(1)] a logical communication link between the controller node and the new node [(2)] over existing CCN physical connections." But this construction is not plausible. Entropic tries to rewrite the claims to import a "logical" link overlaid on existing "coax cable network physical connections," hoping that this overlay and these structural components will avoid ineligibility. Nothing in the claims, however, supports adding this previously unrecited combination of a "logical communication link" on top of "physical connections." Nevertheless, Entropic adds brand-new *physical* component limitations to a *functional* step. The focus should remain on just the plausible portion of this construction: "establishing a communication link between the controller node and the new node." But, even accepting Entropic's proposed constructions, the '566 patent remains ineligible.

### 1. The '566 Patent Claims Are Directed to an Abstract Idea

Attempting to address the *Alice* Step One inquiry whether the claims are directed to an abstract idea, Entropic cites *Virtual Immersion Techs. LLC v. Safran S.A.*, 22-cv-1248, Order (C.D. Cal. June 5, 2023), to evaluate "[w]hether something is well understood, routine, and conventional to a skilled artisan at the time of the patent." Supp. Br. at 8:11-12. But Entropic conflates *Alice* Step One with Step Two's inventive concept analysis, which evaluates whether the claims recite "well understood, routine, and conventional" elements. Ultimately, *Virtual Immersion* relies on *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), which cabins this analysis to *Alice* Step Two.

---

[1] Unless otherwise noted, all emphasis added.

By misapplying the law, Entropic effectively skips *Alice* Step One. It seeks to refute that the claims cover a generic "admission process" by relying on a collection of unclaimed structural elements. In doing so, Entropic ignores that the claims recite just "a communication link" between "a controller" and "a new node." Entropic's unclaimed elements include "a new connection in a new peer-to-peer network" allegedly overlaid on "a pre-existing CCN," including its "physical elements." Supp. Br. at 8:22-25. Here again, Entropic stretches its implausible construction for the term "perform an admission procedure" to add connections and network elements absent from both its construction and the claims.

Entropic next injects unclaimed functional aspects of an unclaimed "peer-to-peer network." Those unclaimed functions include "separately adapting" links between nodes (implicating multiple links) "to account for differing qualities of the physical components." *Id.* at 9:6-7. This again departs from the construction and claim language, which require one "communication link" between one "controller" and one "new node." The '566 patent claims never recite multiple links between pairs of nodes being "separately adapted" or accounting for "different qualities." Thus, Entropic's functional arguments are untethered from the claim language.

Entropic's construction, which advances the idea of "establishing a logical communication link between the controller node and the new node," is *no less abstract* than the originally claimed "admission procedure." DISH's Motion to Dismiss cites many cases holding that the concept of an admission procedure is directed toward an abstract idea. *See, e.g.*, *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017). Entropic's construction, which requires "establishing a logical communication link," is just a functional result of the claimed admission procedure and is abstract under the same cases. The Federal Circuit has held patent claims ineligible that are "directed to the abstract idea of communicating over a network." *ChargePoint*, 920 F.3d at 771; *see also Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019).

   Even the latter portion of Entropic's construction, "over existing CCN physical connections," does not save the claims from abstractness.  The Federal Circuit often reenforces that "a claim directed to an abstract idea" is not saved "by 'merely requir[ing] generic computer implementation.'"  *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1354 (Fed. Cir. 2014) (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 221 (2014)) (modification in original).  Here, the undefined existing connections are just generic computer components, which Entropic admits are "existing."  Limiting an abstract idea to one field of use—here, for example, a coaxial cable network (CCN)—does not avoid patent-ineligibility.  *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013); *Trinity Info Media, LLC v. Covalent, Inc.*, 562 F. Supp. 3d 770, 782 (C.D. Cal. 2021).

   For the remaining two claim terms of the '566 patent, Entropic does not argue that its constructions avoid abstractness.  "Using one or more probes" to "evaluat[e] characteristics of the signal pathway" and "selecting transmission parameters for the signal pathway" add nothing concrete or non-abstract to the claims.  Courts have consistently held that collecting (i.e., probing), analyzing (i.e., evaluating), and outputting (i.e., transmitting) signals are all abstract ideas.  *See Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005, 1028 (N.D. Cal. 2018); *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016).  Further, the Federal Circuit warns against "result-based functional language" that "does not sufficiently describe ***how*** to achieve these results in a non-abstract way."  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).  Here, Entropic's proposed constructions offer little guidance for how to achieve the results (namely, evaluating signal characteristics and selecting transmission parameters) in a non-abstract way.  Because Entropic's constructions fail to offer a specific way to achieve these results-based functions—such as ***how*** "signal characteristics" are evaluated and ***what*** "transmission parameters" are selected—they do not imbue anything non-abstract to the claims.  *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60

F.4th 1349, 1357-58 (Fed. Cir. 2023) (holding ineligible claims that failed to explain "*what* the claimed parameters are or *how* they should be manipulated.") (modifications omitted).

### 2. The '566 Patent Claims Lack an Inventive Concept

Turning to Step Two, Entropic's proposed constructions do not impart an inventive concept on the claims. Entropic sidesteps both the claim language and its constructions to focus on unclaimed portions of the specification. Entropic argues that "the claimed optimization" or "improved/optimal use of the physical links" add an inventive concept. Supp. Br. at 9:21-23; 10:2-4. Not so. Neither the claims nor Entropic's proposed constructions recites "optimization" or "improved/optimal use of the physical links." In fact, nothing in the claims excludes suboptimal performance. Even if the claims required optimization, they contain no explanation for how to achieve this results-based "optimization." *See Hawk Tech.*, 60 F.4th at 1357-58. Nor do the claims require (1) varying topologies, (2) peer-to-peer links, or (3) individually addressing and adapting each link, which Entropic now emphasizes. Supp. Br. at 10:4-8. Even adopting Entropic's proposed constructions, the claims require only a single "communication link" established during admission between a "controller" and a "new node." This is a far cry from Entropic's annotated Fig. 8, purporting to show a peer-to-peer network of four equivalent (peer) nodes with multiple links between each pair of nodes. *See id.* at 4:14-25. Nor does construing the claims to require "existing CCN physical connections" provide an inventive concept. Such "existing" components would be well understood, routine, and conventional in the art.

Entropic does not identify an inventive concept "sufficient to 'transform' the claimed abstract idea into a patent-eligible application," as required with *Alice* Step Two. *Alice*, 573 U.S. at 221. Entropic's opposition originally focused on the "probing" and "adapting" steps as adding the required inventive concept. *See* Opp. at 13:5-15:23. However, in trying to explain how its constructions impact the '566 patent claims' eligibility, Entropic makes *no mention of its proposed constructions*

*for those terms*. As DISH has already explained, the recited probing and adapting steps do not add an inventive concept to the claims. Mot. at 17:25-19:17; Reply at 9:16-10:13; *see Trinity*, 562 F. Supp. 3d at 787 ("[A] claimed invention's use of the ineligible concept to which it is directed **cannot** supply the inventive concept . . . ") (quoting *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2021) (emphasis added). Entropic's failure to argue its proposed constructions for probing and adapting confirms this conclusion.

Simply put, Entropic eschews the claim language and even its own proposed constructions, instead emphasizing disclosures in the specification. But "[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims" that monopolize "nothing more than the broad law or abstract idea underlying the claims." *ChargePoint*, 920 F.3d at 769. Entropic has not demonstrated that its proposed constructions add enough to the *claims* to save them from abstractness. The '566 patent claims are therefore ineligible under § 101.

## III. THE '910 PATENT

### A. Entropic Fails to Explain How Its Proposed Constructions Affect the § 101 Eligibility Analysis

Rather than explain how its proposed constructions affect the eligibility analysis, Entropic strays toward concepts of validity over the prior art. Specifically, Entropic focuses on the *Rajan* prior art reference, which was considered during prosecution. Supp. Br. at 14:10-15:21. Entropic argues that "[t]he use of [] destination information for aggregation purposes was not well understood, routine, or conventional" because "the Examiner agreed that claim 3 of the patent was allowable over *Rajan* based on the function of the packet aggregation module using the aggregation IDs to identify packets that have the same destination node." *Id.* Setting aside that Entropic's newly-proposed constructions were never before the Examiner, Entropic's conclusion fails for several reasons.

First, this district has previously found that the "[n]ovelty of a claim's abstract idea does not defeat invalidity under § 101" because "[n]ew abstract ideas are no more valid than old ones." *Power Analytics Corp. v. Oper. Tech., Inc.*, No. SA CV16-01955 JAK (FFMx), 2017 WL 5468179, at *4 (C.D. Cal. Jul. 13, 2017); *see also Synopsys*, 839 F.3d at 1151 ("[A] claim for a new abstract idea is still an abstract idea. The search for a § 101 inventive concept is thus distinct from demonstrating § 102 novelty."). Here, at *Alice* Step One, the '910 patent claims cover the abstract idea of receiving, aggregating, and transmitting data. Merely using destination information for aggregation purposes, as set forth in Entropic's constructions, is no more than an application of the abstract idea. *See Trading Techs. Int'l, Inc. v. IBG, LLC*, 921 F.3d 1378, 1385 (Fed. Cir. 2019) ("The abstract idea itself cannot supply the inventive concept, no matter how groundbreaking the advance.") (internal quotation marks omitted). Using destination information to practice the abstract idea does not change this result because a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012); *Bilski v. Kappos*, 561 U.S. 593, 610 (2010).

Second, for *Alice* Step Two, Entropic's brief undermines its conclusion that "[t]he use of [] destination information for aggregation purposes was not well understood, routine, or conventional." Supp. Br. at 15:20-21. Entropic admits that "aggregat[ing] individual PDUs transmitted to the same destination node . . . is analogous to putting two letters destined for the same address in the same envelope." *Id.* at 11:14-18. If this analogy sounds familiar, that is because it was presented in DISH's opening brief as one of many reasons why the patent was ineligible. Mot. at 21:6-17. Rather than contest that the patent's claims are akin to the long-standing human activity of mail delivery, Entropic admits as much by adopting DISH's proposed analogy.

Third, Entropic's argument that the "prior art[] is in no position to aggregate PDUs based upon a common destination" is undercut by its own description of the *Rajan* reference. Supp. Br. at 14:8-9. Entropic admits that "[i]n *Rajan*, 'the destination addresses of packets 1-1 are extracted from respective headers'" and "are sent along with the concatenated packet inside the payload." *Id.* at 15:1-7. Since there is no substantive difference between a concatenated packet and aggregated packet, Entropic's characterization of *Rajan* supports the conclusion that using destination information when aggregating packets was conventional at the time of the '910 patent.

Entropic's only other argument does not relate to its proposed constructions or otherwise affect the § 101 analysis. Entropic argues that "the claims satisfy *Alice* step 2 because the **specification** explains how the claimed system improves upon a communication network, *i.e.*, the claimed system reduces the packet overhead information by, eliminating overhead information that otherwise would be required for each and every PDU sent separately (compare bottom Fig. 3 showing separate MoCA packets to the aggregate packet of Fig. 4)." Supp. Br. at 15:22-27. As Entropic admits, this is simply what "the specification explains," and neither the claims nor Entropic's proposed constructions requires "eliminating overhead information."[2] Moreover, DISH's reply brief explained that Entropic's comparison of the MoCA frames in Figure 3 and the aggregate packet in Figure 4 was irrelevant because "Figure 4 aggregates 'the data from Ethernet frames 32 and 36,' which are different than the MoCA frames" and because "Figure 4 depicts merely a single embodiment of the claimed 'aggregate packet' and does not limit the claims." Reply at 16:4-11. Rather than respond to these points or propose a construction that alters the analysis, Entropic repeats the same flawed argument from its opposition brief.

---

[2] Entropic's proposed construction requiring "a single header" does not necessarily require "eliminating overhead information" because a single header could contain all of the overhead information that was previously in multiple headers.

The Court ordered Entropic to "explain how the proposed constructions affect the § 101 eligibility analysis." Dkt. 66 at 2. Entropic failed to do so. The claims of the '910 Patent should thus be deemed patent ineligible.

### B. Entropic's Proposed Constructions Do Not Avoid Ineligibility

Entropic was unable to explain how its proposed constructions affect the § 101 analysis because its constructions do not. Remarkably, Entropic's proposal for the claim 3 term "packet aggregation module" is no more than a rephrasing of the same claim limitations, as shown by the color highlighting below:

| Claim 3 | Proposed Construction |
|---|---|
| a packet aggregation module for identifying at least two of the plurality of packet data units that have a same destination node and for forming an aggregate packet from the at least two of the plurality of packet data units; . . . wherein the packet aggregation module identifies the same destination node by identifying a same aggregation identifier. | a module that forms aggregate packets from individual packet data units based upon those individual packet data units having the final destination,[3] indicated by having the same aggregation identifier |

DISH's prior briefs already explained why each of these limitations fails to provide patent eligibility for representative claim 3.[4]

Entropic's proposed construction of "forming an aggregate packet" also does not affect eligibility. Unlike its proposal for the "module" term, Entropic seeks to import two requirements that are absent from the patent's claims. Specifically, Entropic adds the requirements that "the aggregated packet [(1)] comprises a single header, and [(2)] an aggregated payload that is formed from the plurality of packet

---

[3] While unclear, Entropic may have meant to refer to "the same final destination."
[4] DISH's reply brief highlighted how Entropic did not dispute the representativeness of claim 3 because "Entropic's arguments repeatedly rely on the claimed 'packet aggregation module,' which is only recited in claim 3." Reply at 16, n.3. Rather than challenge this conclusion, Entropic spends the majority of its supplemental brief explaining why "claim 3 of the patent was allowable over *Rajan* based on the function of the packet aggregation module." Supp. Br. at 15:13-15. Entropic does not discuss how or why the limitations appearing only in claims 1 and 2, would change the representativeness analysis. *See* Mot. at 10:8-21, 21, n.6.

data units." Supp. Br. at 13:18-21. But neither of these requirements affects the analysis.

The proposed construction's requirement of "a single header" contradicts the limitations of claims 1 and 2, which require two headers: "a media access control header" and "an aggregation header." But even if the proposed construction were proper, it would not affect the analysis. The prior art Ethernet packet shown in Figure 3 has a single header, indicating that the use of a single header is not an inventive concept. *See* '910 Pat. at Fig. 3. The specification also explains that "[t]he transmitted packet overhead of the network can [] be reduced by eliminating . . . extra headers." *Id.* at 2:1-3. And Entropic admits that when "a single set of overhead data is transmitted for an aggregated packet," it is akin to the long-standing, conventional activity of placing "multiple letters in a single envelope, rather than an envelope for each letter," with the single header akin to the single address on the envelope. Supp. Brief at 12:2-6. In other words, both the patent and Entropic's brief indicate that the use of a single header is conventional and not inventive.

The requirement of "an aggregated payload that is formed from the plurality of packet data units" fares no better. Entropic admits that "a PDU[5] is like a physical letter . . . and the contents of the letter corresponds to the payload." *Id.* at 11:10-12. As discussed above, Entropic further admits that the purported invention of the '910 patent "is analogous to putting two letters destined for the same address in the same envelope." *Id.* at 11:17-18. The requirement of "an aggregated payload that is formed from the plurality of packet data units" is thus akin to putting the contents of two letters in the same envelope. This admittedly conventional activity to which the claims are directed "do[es] not recite an inventive concept." *Trinity*, 562 F. Supp. 3d at 787.

Even if Entropic had not admitted that these requirements were conventional, the same result would hold based on analogous cases. In *Compression Tech. Sols.*

---

[5] A "PDU" is a "packet data unit."

*LLC v. EMC Corp.*, the challenged claims "cover[ed] taking an input broken into packets, parsing the input by some unspecified criteria, and then outputting the input as packets of equal or larger sizes." No. C-12-01746 RMW, 2013 WL 2368039, at *7 (N.D. Cal. May 29, 2013), *aff'd*, 557 F. App'x 1001 (Fed. Cir. 2014). There, the court found the patent "is no more than an abstract idea: all of the claimed limitations can be performed as mental processes." *Id.* at *5. And because the "claims require nothing more than a general-purpose computer that speeds the calculations," the court held the claims patent ineligible at *Alice* Step Two. *Id.* at *8. The claims here are similarly directed to taking an input broken into packets and outputting the input as packets of different sizes, and as described in DISH's prior briefs, the specification indicates that the claims require nothing more than a general-purpose computer. *See* Mot. at 20:19-23:12; Reply at 15:8-19.

Entropic could not explain how its proposed constructions affect the § 101 eligibility analysis because its constructions have no impact on this analysis. Instead, Entropic's constructions demonstrate why the claims of the '910 Patent are patent ineligible. DISH respectfully requests that the Court grant its motion and dismiss Count X of Entropic's Complaint with prejudice.

## IV.   DISMISSAL WITH PREJUDICE IS WARRANTED

DISH's reply brief notes how "Entropic does not request leave to amend or identify any additional facts it would plead in support of the *Alice* inquiry" and "[t]his Court should thus dismiss Counts VI and X with prejudice." Reply at 16:13-17. Faced with another opportunity to say otherwise, Entropic remains silent, tacitly admitting that its best arguments have already been presented. As a result, DISH respectfully requests that dismissal be with prejudice.

| | | |
|---|---|---|
| 1 | Dated: July 7, 2023 | FISH & RICHARDSON P.C. |
| 2 | | |
| 3 | | By: */s/ Christopher S. Marchese* |
| | | Christopher S. Marchese (SBN 170239) |
| 4 | | marchese@fr.com |
| | | 633 West Fifth Street, 26th Floor |
| 5 | | Los Angeles, CA 90071 |
| | | Tel: (213) 533-4240 |
| 6 | | |
| 7 | | Adam R. Shartzer *(pro hac vice)* |
| | | Ruffin B. Cordell *(pro hac vice)* |
| 8 | | cordell@fr.com |
| | | Richard A. Sterba *(pro hac vice)* |
| 9 | | sterba@fr.com |
| | | Ralph A. Phillips *(pro hac vice)* |
| 10 | | rphillips@fr.com |
| | | shartzer@fr.com |
| 11 | | Michael J. Ballanco *(pro hac vice)* |
| 12 | | ballanco@fr.com |
| | | FISH & RICHARDSON P.C. |
| 13 | | 1000 Maine Ave., SW, Suite 1000 |
| | | Washington, DC 20024 |
| 14 | | Tel: (202) 783-5070 |
| 15 | | |
| 16 | | David M. Barkan (SBN 160825) |
| | | barkan@fr.com |
| 17 | | FISH & RICHARDSON P.C. |
| | | 500 Arguello Street, Suite 400 |
| 18 | | Redwood City, CA 94063 |
| | | Tel: (650) 839-5070 |
| 19 | | |
| 20 | | Ashley A. Bolt *(pro hac vice)* |
| | | bolt@fr.com |
| 21 | | FISH & RICHARDSON P.C. |
| | | 1180 Peachtree Street NE, 21st Floor |
| 22 | | Atlanta, GA 30309 |
| | | Tel: (404) 892-5005 |
| 23 | | |
| 24 | | Attorneys for Defendants |
| | | DISH Network Corporation, et al. |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |