1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3            HONORABLE JOHN W. HOLCOMB, DISTRICT JUDGE

4   ENTROPIC COMMUNICATIONS, LLC,      )
                                       )
5                                      )
                         Plaintiff,    )
6                                      )
                                       )
7            Vs.                       )
                                       )
8                                      )  No. LACV23-01043-JWH
    DISH NETWORK CORPORATION, ET AL.;  )      LACV23-01050-JWH
9   COMCAST CORPORATION, ET AL.;       )      LACV23-01049-JWH
    COX COMMUNICATIONS, INC., ET AL;   )      LACV23-01048-JWH
10                                     )
                                       )
11                       Defendants.   )
                                       )
12                                     )
                                       )
13  _____   )

14

15

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17        MOTION HEARING AND SCHEDULING CONFERENCE

18                SANTA ANA, CALIFORNIA

19             WEDNESDAY, AUGUST 9, 2023

20

21

22

23            MIRIAM V. BAIRD, CSR 11893, CCRA
         OFFICIAL U.S. DISTRICT COURT REPORTER
24                350 WEST FIRST STREET
                     FOURTH FLOOR
25          LOS ANGELES, CALIFORNIA 90012
                  MVB11893@aol.com

1                          **A P P E A R A N C E S**

2


3      **ON BEHALF OF THE PLAINTIFF,**          CHRISTINA N. GOODRICH
       **ENTROPIC COMMUNICATIONS, LLC:**        K & L GATES LLP
4                                               10100 SANTA MONICA
                                                BOULEVARD, 8TH FLOOR
5                                               LOS ANGELES, CA 90067

6                                               GEORGE C. SUMMERFIELD
                                                JAMES SHIMOTA
7                                               K & L GATES LLP
                                                70 WEST MADISON STREET,
8                                               SUITE 3100
                                                CHICAGO, IL 60602
9
                                                KENNETH BRIDGES
10                                              BRIDGES IP CONSULTING
                                                2113 19TH AVENUE S
11                                              NASHVILLE, TN 37212

12


13


14


15     **ON BEHALF OF THE DEFENDANT,**          CHRISTOPHER S. MARCHESE
       **DISH NETWORK CORPORATION, ET.**        FISH AND RICHARDSON PC
16     **AL.:**                                 633 WEST 5TH STREET, 26TH
                                                FLOOR
17                                              LOS ANGELES, CA 90071

18                                              ADAM R. SHARTZER
                                                FISH AND RICHARDSON PC
19                                              1000 MAINE AVENUE, SW,
                                                SUITE 1000
20                                              WASHINGTON, DC 20024

21

22     **ON BEHALF OF THE DEFENDANT,**          KRISHNAN PADMANABHAN
       **COMCAST CORPORATION, ET AL.:**         BRIAN FERGUSON
                                                WINSTON AND STRAWN LLP
23                                              200 PARK AVENUE
                                                NEW YORK, NY 10166
24


25

1 **ON BEHALF OF THE DEFENDANT,** APRIL ELIZABETH ISAACSON
  **COX COMMUNICATIONS, INC., ET** KILPATRICK TOWNSEND AND
2 **AL:** STOCKTON LLP
   2 EMBARCADERO CENTER, SUITE
3  1900
   SAN FRANCISCO, CA 94111
4

5

6

7 **ALSO APPEARING:** SPECIAL MASTER DAVID KEYZER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|  |  |
|--|--|
| 1 | SANTA ANA, CALIFORNIA; WEDNESDAY, AUGUST 9, 2023; 10:09 A.M. |
| 2 | --- |
| 3 | THE CLERK:  Calling item number one, Entropic case |
| 4 | versus DISH Network, 23-01043. |
| 10:09AM  5 | Calling item number two, Entropic Communications |
| 6 | versus Cox Communications, Inc., et al.  Case number |
| 7 | LACV-23-01047. |
| 8 | Calling item number three, Entropic Communications, |
| 9 | LLC, versus Comcast Corporation, et al.  Case number |
| 10:09AM 10 | 23-01048. |
| 11 | Calling item number four, Entropic Communications |
| 12 | versus Cox Communications, Inc., et al.  Case number |
| 13 | 23-01049. |
| 14 | Calling item number five, case number 23-01050, |
| 10:09AM 15 | Entropic Communications, LLC, versus Comcast Corporation, |
| 16 | et al. |
| 17 | Counsel, if you would please state your appearance |
| 18 | for the record, beginning with plaintiff. |
| 19 | MR. SHIMOTA:  Jim Shimota appearing on behalf of |
| 10:10AM 20 | plaintiff Entropic, LLC. |
| 21 | MS. GOODRICH:  Christina Goodrich from K&L Gates on |
| 22 | behalf of plaintiff Entropic, LLC.  I'm joined today by my |
| 23 | colleagues Ken Bridges and Nick Lenning, Cassidy Young, and |
| 24 | Kelsi Robinson, all on behalf of plaintiff. |
| 10:10AM 25 | I know Your Honor may be asking who is arguing |

```
 1    which motions.  Mr. Bridges will be arguing the Comcast
 2    motions.  Mr. Shimota will be arguing the 101 motions.  I'll
 3    be handling the scheduling conference.
 4         THE COURT:  Got it.  Okay.  Good morning.  Good to
 5    see all of you.
 6         Who wants to go next?
 7         MR. MARCHESE:  Good morning, Your Honor.  Chris
 8    Marchese from Fish & Richardson on behalf of the DISH
 9    defendants.
10         THE COURT:  Mr. Marchese, good morning.
11         MR. SHARTZER:  Your Honor, Adam Shartzer of Fish &
12    Richardson also on behalf of the DISH defendants.  With
13    respect to the argument today, Chris will argue the '566
14    patent for DISH.  Then the '910 patent, I'll be arguing that
15    one today for DISH.
16         THE COURT:  Got it.  Okay.  Good morning,
17    Mr. Shartzer.
18         MR. SHARTZER:  Good morning, Your Honor.
19         MS. ISAACSON:  Good morning, Your Honor.  April
20    Isaacson from Kilpatrick Townsend on behalf of the Cox
21    defendants.  Along with me is my colleague Chris Leah as well
22    as Michael Turton.
23         THE COURT:  All right.  Good morning, counsel.
24         MR. PADMANABHAN:  Good morning, Your Honor.
25    Krishnan Padmanabhan, Winston & Strawn, on behalf of the
```

```
 1    Comcast defendants.
 2              THE COURT:  Mr. Padmanabhan, talk into the
 3    microphone and say that again.
 4              MR. PADMANABHAN:  I apologize.
 5              THE COURT:  That's okay.  We just want to make sure
 6    the record is complete.
 7              MR. PADMANABHAN:  Good morning, Your Honor.
 8              THE COURT:  Good morning.
 9              Mr. PADMANABHAN:  Krishnan Padmanabhan on behalf of
10    the Comcast -- now it's on.
11              Good morning, Your Honor.  Krishnan Padmanabhan of
12    Winston & Strawn on behalf of the Comcast defendants.  With
13    me I have Diana Leiden and Saranya Raghavan also of Winston &
14    Strawn.  And we have a corporate representative, Mr. Kevin
15    Chung of Comcast.
16              THE COURT:  All right.  Good morning to all of you.
17    Thank you.
18              MR. SHARTZER:  Your Honor, one moment, please.  I
19    neglected to also introduce our corporate representative for
20    DISH as well.  His name Mr. James Hanft.  He's in the back
21    there.
22              THE COURT:  All right.  Welcome, sir.  Good to see
23    you.
24              All right.  I've got about two hours this
25    morning -- well, bleeding now into the afternoon, to deal
```

1    with all these matters.  Here's what I'd like to do.  Let's

2    spend about a half an hour on each motion, 15 minutes per

3    side arguing it.

4         Then in the time remaining we'll deal with the

10:12AM    5    scheduling conferences and set -- my hope is to set schedule

6    for the claim construction processes in each of the sets of

7    cases, the MoCA cases and the cable cases.

8         All right.  Let's start, please, with the 101

9    motion in the 1043 case involving DISH.  I have provided

10:13AM   10    counsel with tentatives on all three of these motions.

11    Anybody did not get the tentative or did not have time to

12    review it?  Okay.

13        I'm looking for -- nobody is saying that he or she

14    did not receive it and did not have time to review it, so I'm

10:13AM   15    going to assume that you all received them and you've had

16    sufficient time to process them.

17        I know there are, well, 17 pages, 17 pages, and 13

18    pages.  So they're not hideously long, but they're also not

19    -- they have some detail in them.  I hope they're helpful.

10:14AM   20        I'll say what I always say when I have tentatives,

21    and that is that it's truly a tentative.  Please push back

22    respectfully and tell me where I got it dead wrong.  I want

23    to hear that.  It's my object.  It's my goal to get it right.

24        I think it makes sense on probably all of these

10:14AM   25    motions to start with the plaintiff.  I think the plaintiff

1   is on the negative side of each tentative, at least in some

2   sense, so let me hear from plaintiff first.  And as I said,

3   let's go -- let's plan to go about 15 minutes.  I think you

4   can go pretty fast.

10:14AM   5        MR. SHIMOTA:  I can, Your Honor.

6        THE COURT:  Okay.  In terms of my knowledge and

7   understanding of the patents, I think I have a pretty good

8   grasp, so you don't need to deal with kind of the big issues.

9        I didn't state that in a very clear way.  You don't

10:15AM   10   need to start at ground zero, okay?  Go ahead, please.

11   Mr. Shimota, you're going to --

12        MR. SHIMOTA:  We provided you with our slide

13   presentation, Your Honor.  I think we're having a little

14   trouble with the audiovisual equipment, so if I could hand

10:15AM   15   that up to you so I could just have some things you could

16   refer to.

17        THE COURT:  Sure.  I prefer the hard copy anyway.

18   What do I have here so far?  I've got a Cox -- let's see.

19   K&L Gates has provided me with a couple of packets.  I've got

10:15AM   20   Entropic's argument in opposition to Comcast's motion.  Do I

21   have two copies of the same thing?

22        MS. GOODRICH:  Your Honor, those are two separate

23   packets.  I'll let Mr. Bridges explain when he argues that

24   motion.

10:15AM   25        THE COURT:  Okay.  I have four packets.  They're

| | |
|---|---|
| 1 | all different things.  Mr. Shimota, you have something in |
| 2 | addition to all of that, correct? |
| 3 | MR. SHIMOTA:  Yes.  I have a slide presentation for |
| 4 | the DISH 101 motions. |
| 10:16AM 5 | THE COURT:  Great.  Can you hand that up, please. |
| 6 | MR. SHIMOTA:  Your Honor, you have that. |
| 7 | THE COURT:  It's one of these? |
| 8 | MR. SHIMOTA:  Yes.  If you want me to hand another |
| 9 | up, I can. |
| 10:16AM 10 | MR. MARCHESE:  Your Honor, Chris Marchese for DISH. |
| 11 | We have our slides.  May I bring them up? |
| 12 | THE COURT:  Do I already have them? |
| 13 | MR. MARCHESE:  No, you do not. |
| 14 | THE COURT:  All right.  My clerk will come get |
| 10:16AM 15 | them.  And do you have a copy for my law clerk? |
| 16 | MR. MARCHESE:  I do.  I don't think I have |
| 17 | Entropic's on the 1043. |
| 18 | MR. SHIMOTA:  I can just hand you a copy of mine. |
| 19 | MR. MARCHESE:  Sorry about that, Your Honor. |
| 10:17AM 20 | THE COURT:  That's okay.  And give one to -- are |
| 21 | these the same, or these are different? |
| 22 | MR. SHIMOTA:  Those are different, so you have the |
| 23 | DISH and the 1043 and the 1047, Your Honor. |
| 24 | THE COURT:  Okay. |
| 10:17AM 25 | MR. SHIMOTA:  And I believe opposing counsel has |

1     copies as well.

2           THE COURT:  Do you have a copy for my law clerk?

3           He's got it.  Okay.  All right.  I'm looking at the

4     packet, the 1043.  Is this what I'm supposed to have?

10:17AM  5           MR. SHIMOTA:  Yes.  Yes, you are, Your Honor.

6           THE COURT:  Okay.  I'm ready.  Go ahead.

7           MR. SHIMOTA:  Okay.  So let's start with the 7'566

8     patent, Your Honor.  I think in your opinion you do, you

9     know, fundamentally understand what's happening here.  I

10:18AM  10    mean, this is one of the earlier MoCA patents, and you have

11    to put this into the frame of reference of what was being

12    done and what was Entropic, the original Entropic, working

13    on.

14          What did they come to when they invented and

10:18AM  15    pioneered MoCA?  What they came to was what was a coaxial

16    cable network.  We all had these in our homes.  It's where

17    you got the original cable.  You see that.

18          You can see, you know, a graphical, a picture of

19    that in Fig. 2 from 7'566.  That's what is referred to in the

10:18AM  20    patent as the coaxial cable network.  It's abbreviated as a

21    CCN.  But what I think is important to keep in mind -- if you

22    can turn to slide three, Your Honor -- is, you know, it's not

23    just -- the patent just shows boxes, right?

24          What Entropic confronted at that time was basically

10:19AM  25    -- this is what a coaxial cable network was and is.  It's a

        1    messy, specific type of communication network.  It's the

        2    rat's nest that you see here.  This is what kind of is in my

        3    house behind my TV in a box.  And there's splitters, and so

        4    it's not an ideal communication medium.

10:19AM  5            As such, at the time people used it in a very

        6    limited way for unidirectional communication to single boxes

        7    which would be shown on television.  This is the specific

        8    network that Entropic encountered.  And when they were

        9    working to make a bidirectional network where you could have,

10:19AM 10    you know, communication, high-speed communication that would

       11    enable whole home DVRs, they had to work with this.

       12            Where I think your opinion gets -- well, at slides

       13    4 and 5, just before I get to that, I think it's important,

       14    too, to set the table in the patent in the complaint

10:20AM 15    particularly at the Rule 12 stage, and we lay this out in

       16    detail.

       17            And all the facts need to be found as true that

       18    people recognize that MoCA, the industry recognized that MoCA

       19    was a huge technological advance that enabled a large number

10:20AM 20    of, you know, things to be done that they didn't think that

       21    could be done before.  We have some quotes from the

       22    defendants here, DISH and Cox, regarding that.

       23            I think you need to -- you know, this is important

       24    for you to set the table to understand what people thought

10:20AM 25    about what Entropic did to, you know, make MoCA in the

```
 1    context of the '566 patent.
 2            Why that context is important is -- if you could
 3    turn to slide 7.  This is frankly where I, you know --
 4    respectfully, Your Honor, I do respect your opinion.  But
 5    where I do think that you got it wrong is that you didn't
 6    focus -- you focused on the steps of the procedure, the
 7    admission procedure into this network.
 8            We're not stating that creating a network in and of
 9    itself is something novel or new.  What was important here
10    was that what was done and what was set up here was done in
11    the context of that rat's nest I showed you, the coaxial
12    cable network.
13            What these cases I point you to here on this slide,
14    the Uniloc opinion, the Maxell opinion, is that the Federal
15    Circuit and District Courts have repeatedly recognized where
16    there is a foundational improvement on an existing
17    communication network, that's all you need, Your Honor.  That
18    takes it out of the realm of an abstract idea to a specific
19    idea.
20            And that's what we have here.  If you focus simply
21    on that rat's nest that I showed you in the first picture,
22    that's enough to move on and say this is a -- you know, this
23    is a patentable invention.  This is a specific, not-abstract,
24    invention, and I can move on.  Then, you know, we can argue
25    about novelty and things like that.
```

1          That's what I want you to focus on here,

2    Your Honor.  We don't even need to get to claim construction.

3    We have addressed that.  But I think if you focus on that,

4    the inquiry is very simple, and I think that's a part that is

10:22AM  5    lacking from your opinion.

6          THE COURT:  You mentioned -- what were the words

7    that you used?  A foundational?  It sounded like you were

8    quoting or paraphrasing a case.

9          MR. SHIMOTA:  Well, that's my terminology.  But if

10:22AM  10   you look in the Uniloc opinion, for example, what the Federal

11   Circuit specifically says there, is the claimed invention

12   changed the normal operation of the communication itself to

13   overcome a problem specifically arising in the realm of

14   computer networks.

10:22AM  15        So here the problem was, again, that there was the

16   rat's nest, right, of this coaxial cable network.  So

17   you couldn't have the type -- the problem was you didn't have

18   the type of -- the ability to have the type of high-speed

19   communication, bidirectional communication, of that network.

10:23AM  20   You only had the rigid/flexible network communication.

21        What this patent does is it solves that problem in

22   a very specific way directed to that network, and that's

23   enough.  You know, the Marble VOIP, VoiceOver IP, Partners

24   case that's from Kansas, that's a very similar decision where

10:23AM  25   there was an invention that was directed to an SIP-based VOIP

1    network.

2          There, too, the Court held that that -- that the

3    specific invention used in the context of that, that was

4    enough to hold that the patents were inventive and not

10:23AM  5    abstract.  And they stopped there.

6          THE COURT:  Okay.  I understand your argument.

7          MR. SHIMOTA:  And just moving ahead, in terms of

8    our -- you know, even if you move past that, Your Honor, our

9    claim constructions all take into account the fact that

10:24AM  10   you've got this existing CCN, and the point is that this

11   admission procedure which is set forth in the claims, all of

12   them are directed towards creating logical links between the

13   nodes in the coaxial cable network.

14         What we mean by logical links -- and you can see

10:24AM  15   that, for example, in slide 11 of our presentation, is that

16   there is a network, and that's going to be set forth in the

17   software, the Maclear software will set this up where you've

18   got the existing physical interconnections.

19         But the physical interconnections don't matter.

10:24AM  20   That's the existing infrastructure.  Rather, these machines,

21   the controller itself will be setting up logical links.  What

22   we mean by logical links, it's a mesh network then where the

23   presence doesn't matter, but then it's setting that up.  And

24   that -- that logical link, that logical mesh which is

10:25AM  25   existing over the -- overlaying the physical infrastructure,

1    that too makes the invention even more specific.  Right?

2            I mean, the logical links, that's going to be code

3    which is programmed into the controller, right.  A computer

4    is just a machine with a processor, and it becomes specific.

10:25AM  5    This is where in the briefing you see some of this where they

6    keep talking about generic components, right.

7            Well, all computers are generic in the sense of

8    just being a computing device.  They become specific when you

9    architect the software in a particular way.  Once they're

10:25AM  10   programmed with particular software, then they become

11   specific machines.  They're no longer just generic

12   components -- a transmitter, receiver, or processor.  That's

13   what the case law means by generic components.

14           Once you talk about programming those components in

10:25AM  15   a very specific way, they become specific machines, else all

16   computer patents would be invalid and unpatentable, right,

17   because they're just processors that have code running on

18   them.  And that's not the law.  Obviously software patents

19   don't all go away.

10:26AM  20           So I think, you know, those are the points that I

21   want you to take with you, Your Honor.  I don't want to

22   rehash the briefing.  I want to keep -- be mindful of your

23   time.  So I think if you focus on the fact that, again, that

24   rat's nest which was fundamentally transformed or, you know,

10:26AM  25   it solved -- what they've done here is solved a problem,

1    existing problem specific to CCNs.  That's what's necessary

2    to hold that this claim is not abstract and is patentable.

3         You know, that, however -- you know, if you were to

4    even, you know, have doubt about this, I think then if you

10:26AM  5    looked, for example, to -- I can put it up on the elmo for

6    you -- some of the dependent claims of the patent.

7         THE COURT:  I've got them right here in front of

8    me.

9         MR. SHIMOTA:  Okay.  Thank you -- to make it easy

10:27AM  10    on me.

11         If you looked at claim 2, for example, Your Honor,

12    claim 2 --

13         THE COURT:  Okay.

14         MR. SHIMOTA:  So claim 2 of the patent provides --

10:27AM  15    this would be asserted.  You know, our complaint identified a

16    representative claim.  The parties are going to talk today

17    about when infringement contentions come.  But claim 2, for

18    example, recites:  The communication circuit of claim 1 --

19         THE COURT:  Slowly, please.

10:27AM  20         MR. SHIMOTA:  Thank you -- wherein the controller

21    is operable to selectively operate as a network controller

22    node of the CCN or a non-network controller node of the CCN.

23    What you see there, Your Honor, is it's making more specific

24    this mesh network that we're talking about.

10:27AM  25         The fact that in this network the specific devices

have software in them that enables oftentimes it's the first node connected in the CCN, but it can be others as necessary to optimize the network where you can have a different set-top box, for example, acting as the controller in that network, in the CCN.  This is what we see there on the screen, that mesh sitting on top of the physical CCN.

So that is another -- you know, even if you had any doubts about claim 1, claim 2 as an example is one where it gets very specifically at the innovation and the invention of this patent, and that's one, too, where I think you should, you know, just hold that the claims frankly reverse your tentative ruling and issue a final ruling that these claims are patentable and let this claim move forward.

THE COURT:  The Fig. 8, the concepts that are displayed pictorially there, how are they fleshed out in claim 1?

MR. SHIMOTA:  Uh-huh.  Well, I mean, our constructions provide for the fact that, you know, what's going on there is, you know, that our constructions refer to a logical link.  But again, I mean, what is fleshed out in claim 1 --

THE COURT:  Hold on.  Let me look at your construction.

MR. SHIMOTA:  Now if I could direct your attention to page 13 of our presentation, Your Honor.

1    THE COURT:  Should I look there instead of your

2  supplemental brief?

3    MR. SHIMOTA:  Either one is fine, but that's, you

4  know, where -- as an example.

10:29AM  5    THE COURT:  I'm on your page 13 of your

6  demonstrative.

7    MR. SHIMOTA:  Sure.  So for this limitation, if the

8  received admission request message is correctly received and

9  the new node is authorized to join the CCN, perform an

10:30AM 10  admission procedure with the new node.

11    So what we've proposed as a construction for that

12  element -- and our briefing lays out why the intrinsic record

13  supports it -- is establishing a logical communication link

14  between the controller node and the new node over the

10:30AM 15  existing CCN physical connections.

16    Again, when we're talking about the logical

17  communication link, that is the mesh network that overlays

18  the existing network, that rat's nest, right.  So all these

19  set-top boxes are now able to communicate bidirectionally

10:30AM 20  with each other in this logical mesh network over that

21  existing CCN in a way that could not be done before.

22    That was a problem, right?  Many people -- that was

23  a problem.  The patent lays out there was a problem

24  recognized by the industry.  Our complaint specifies that

10:30AM 25  problem in great factual detail, and that's why looking at

1    the Uniloc case and others like it, we think that the '566

2    patent clearly passes muster as patent eligible subject

3    matter.

4           THE COURT:  Okay.  Thank you.  I'm going to think

10:31AM  5    about all those things.

6           MR. SHIMOTA:  Would you like me to move on to the

7    '910 patent?  I know that DISH has -- they're splitting up

8    the argument.  So I don't know if you'd prefer to hear from

9    DISH on the '566 or have me keep rolling.

10:31AM 10           THE COURT:  No.  Keep rolling, please.

11           MR. SHIMOTA:  Okay.  Thank you, Your Honor.

12           So turning next to the '910 patent.  On our slide

13    presentation it starts at page 19.

14           THE COURT:  Okay.  I'm there.

10:31AM 15           MR. SHIMOTA:  On page 20 you see the claim which

16    DISH has chosen to focus on.  This is the one that we

17    identified in our complaint as a representative claim,

18    although at the end I will discuss for you why I don't think

19    your ruling appropriately holds that claims 1 and 2 are

10:32AM 20    representative -- or that claim 3 is representative of

21    claims 1 and 2.  But I'll start with claim 3 first because

22    that's how the briefing proceeded.

23           The -- I think your opinion understands this, too,

24    as well, you know, what's happening here.  So where just

10:32AM 25    getting to, you know, the meat of it, I think where your

opinion goes wrong again is that it says that, you know, the

patent doesn't describe the how of what is inventive.

Respectfully we disagree.  The result of the patent

is increased bandwidth, right.  You can see that.  I'll

10:32AM  direct you to -- so slide 30 of the patent, you know,

provides a quote from the specification.  It describes how

that, you know, when you needed to have headers, which

included, you know, information such as the destination

addresses for packets, doing that on a packet-by-packet basis

10:33AM  -- and let me direct you to -- I'm sorry.  Our slide

neglected to include the precise pin cite, Your Honor, but

I'll direct you to that.

That quotation comes from column one, starting at

line 30 through line 37.  So the result of the invention here

10:33AM  is increased bandwidth, right.  You're not -- you know,

rather it's saying that in the prior art there would have

been headers which included for each packet a destination

address for it.

The way that this problem, that this patent solves

10:33AM  this, is with a specific way.  The how.  There is a specific

how, and it's using packet aggregation where there's an

aggregation header which includes the destination address.

That allows packets to be aggregated based on the

destination address such that they can then be transmitted

10:34AM  and there can be increased bandwidth.  That's the specific

how.  And that's contrasted with -- you see in our briefing where you have got the Rajan reference, which was cited in the prior art.

That was -- that was concatenation, which we're not suggesting that we invented.  Concatenation, that existed before I won -- I was a Mr. Grand Rapids spelling bee once.

THE COURT:  I was impressed with the -- I don't think I could have spelled that one.

MR. SHIMOTA:  I'll pat myself on the back for that one.

But we don't suggest that we've invented aggregation or concatenation.  What was happening there is the difference in those patents is that what's going on is you're aggregating based on the type of data.  Is it a realtime?  Is it streaming data, or is it a file transfer?

So if it's a high-priority data, you're -- you're aggregating or concatenating on the basis of that.  But what that reference is very clear on -- and you can turn to page 25 of our slide presentation, for example.  And we point to this in our briefing.

What was happening in Rajan is it's aggregation done at a different layer of the OSI model.  It's, you know, it's above layer two.  It's the internet protocol, which is probably typically layer three.  What's being done there is so there isn't -- at that point, at that layer of the

1    software protocol stack, there's no knowledge about the

2    destination address.  Rather, they can only look at it in

3    terms of the type of data.

4              So, you know, it just shows that here and in that

5    example, too, the patent -- the Rajan reference is very clear

6    that the destination addresses need to be reprocessed later.

7    They're stored and then they're later extracted to show where

8    these packets need to go.  So this prior art is not solving

9    the problem addressed by our patent.

10             So again, the how here is a layer two.  It's

11   basically something done at the MoCA, the MAC layer where the

12   destination of packets are relevant.  It's aggregation done

13   at that level, and layer two again is -- something programmed

14   at layer two makes it a specific machine such that -- and

15   that's the advance, right, that's done in a very specific way

16   which takes it out of the -- you know, makes it an inventive

17   or, excuse me, a not-abstract idea.

18             The case that I would direct you to would be the --

19   this is at slide 32 -- Adasa, Inc., versus Avery Dennison

20   Corp. case at 55 F.4th, 900, pin cite 908 to 909.  In that

21   case the Federal Circuit found that if there was a data

22   structure that yielded important technological consequences,

23   then that's not an abstract idea.

24             Here this is a specific data structure.  It's one

25   that identifies, you know, allows the data structure in which

10:38AM 1   a particular header includes a destination address which is
2   used for aggregation of MoCA or MAC packets, which are
3   ultimately sent to the same address.  The technological
4   advance there is increased bandwidth data.  The pipe flows
5   faster.

6          So again if you look to that case and look to what
7   we've shown, that again this is a patent that is -- again
8   easily passes muster as patentable.

9          The last point I wanted to make is that, you know,
10:38AM 10  even if there was any doubt, with due respect if you could
11  just look at the patent claims 1 and 2 versus 3, and we have
12  claim 1 at slide 33.  That's easier to reference.

13         THE COURT:  Okay.

14         MR. SHIMOTA:  What you see in claim 1 in contrast
10:38AM 15  to claim 3 is that claim 1 has two parts.  The first part
16  refers to the packet aggregation module and aggregation and
17  the process we've talked about.

18         As DISH acknowledges, I believe, the second part,
19  there's a whole second part after where it says further
10:39AM 20  comprising in claim 1 that talks about the use of checksums
21  for error correction.

22         In its briefing DISH says, well, checksums were
23  well known.  There's a well-known method of error correction.
24  Perhaps that's true, but if you look at claim 1, it's a very
10:39AM 25  specific use of checksums.

10:39AM

1          For example, there's a checksum bit which is kept

2    in the MAC header.  It could be in the aggregation header,

3    but it's specifically put in the MAC header in this

4    situation, and it's used in a specific way for error

5    correction.

6          So the only thing that DISH says in its briefing is

7    that checksums were known, so just sort of poo-poo and push

8    aside claims 1 and 2.  They've got the burden of proof here,

9    right?  There's no analysis in their briefing whatsoever

10   going through element by element and showing that the

11   specific use of checksums in these claims and the specific

12   way it's done for error correction is an abstract idea and

13   it's lacking an inventive concept.

14         They just basically say checksums were known, so

15   that's enough.  It's not.  They need to prove that by clear

16   and convincing evidence.

17         So I think you should hold that claim 3 is

18   patentable.  But even if you have any doubt, respectfully I

19   think you should change your opinion as to claims 1 and 2,

20   Your Honor.

21              THE COURT:  Okay.  I think I understand your

22   argument.

23              MR. SHIMOTA:  Thank you very much for your time,

24   Your Honor.

25              THE COURT:  Thank you very much.

1          All right.  Mr. Marchese.

2          MR. MARCHESE:  Yes, Your Honor.  Good morning once

3     again.

4          THE COURT:  Yes.

10:40AM     5          MR. MARCHESE:  First I just want to say that I'm

6     here to argue on the '566 patent.  I'll call it that instead

7     of 7'566, I think, for simplicity.  We agree with

8     Your Honor's tentative.  We believe you got it right, but I

9     would like to respond to some of the points that Mr. Shimota

10:41AM    10     made.

11          The first thing he said is that the order focused

12     on the steps, but we would respectfully disagree with that.

13     The steps, true, there was no rebuttal by Mr. Shimota that

14     the steps and the functions in the claims of this '566 patent

10:41AM    15     are generic and routine.

16          We have things like admission, authentication,

17     probing, and adapting.  They're all done -- this is critical.

18     They're all performed by generic computer components, things

19     like a node, a communication circuit.

10:41AM    20          Now, he mentioned something about how you couldn't

21     have a patentable computer patent.  I think he backed away

22     from that a little bit and said that, you know, they need to

23     be programmed in a specific way.  The Federal Circuit has

24     recognized that.

10:41AM    25          We don't have that here.  The most we have in a

1    specific way, we don't have an implementation that's recited

2    in these claim that is an improvement or non-convention.

3    What we have is, like I said before, generalized steps like

4    authentication, admission, probing, and adapting.  And

5    they're all performed on these very generic computer

6    components that are not programmed in a specific way.

7          This is not like the IOENGINE case that you

8    distinguished in the tentative order.  This is not a case

9    where you have a set of memories arranged in a particular way

10   that performs specific things and are programmed in a

11   specific way.  This is very generic material both at the

12   functional and structural level.

13         Now, Mr. Shimota mentioned something about

14   foundational improvements in existing networks.  What I would

15   like to point the Court to would be the last slide in our

16   slide deck, which is slide number 53.  There's a case cited

17   there.  It's the Trading Technologies, the IBG case from the

18   Federal Circuit in 2019.

19         THE COURT:  Hold on.  One second.  Let me get

20   there.

21         MR. MARCHESE:  Okay.

22         THE COURT:  The last slide in your deck?

23         MR. MARCHESE:  The very last one, Your Honor.

24         THE COURT:  53?

25         MR. MARCHESE:  Correct.

1          THE COURT:  Okay.  I'm there.

2          MR. MARCHESE:  That case says -- and we have the

3    quote in the slide:  The abstract idea itself cannot supply

4    the inventive concept no matter how groundbreaking the

10:43AM   5    advance.

6          To the extent that Entropic argues that this laying

7    the logical link on top of the physical network is

8    groundbreaking, that's up to them to prove.  It doesn't

9    matter here because these are abstract concepts.  You're

10:43AM   10   laying a logical link on top of a physical network, which is

11   admittedly old.  The cable coaxial network, the rat's nest

12   that was shown, that is old.  We all agree on that.

13         Now, I'd like to just briefly give you a little

14   overview of why we think your ruling is correct as it makes

10:44AM   15   some important points along the way.  The key point here,

16   Your Honor, is that the -- and the Federal Circuit has said

17   this again and again -- that Section 101 has to be measured

18   against the claims.

19         Now, we see from Entropic arguing in their briefing

10:44AM   20   and we heard some argument about this today that there's all

21   these wonderful things that are going on with this particular

22   MoCA network.  It's described in great detail in the patent.

23   It's 25 columns.  There's, like, 18 pages' worth of figures.

24         The problem is it's not claimed.  This patent

10:44AM   25   claims an abstract idea.  You have only two nodes.  We heard

1    -- we see in the briefing a lot of argument about

2    peer-to-peer networks and how you can have the transmission

3    parameters adapt so you can kind of customize the connection.

4         Mr. Shimota argued about the various physical

10:44AM  5    components along the lines that degrade the splitters.

6    There's argument about a multitude of cables.  None of that

7    is in the claim.  None of that is in the claim.

8         THE COURT:  So there are, what, 12 patents in suit

9    in these cases?

10:45AM 10    MR. MARCHESE:  Yes, Your Honor.

11         THE COURT:  Are those concepts claimed in one of

12    the subsequent patents?

13         MR. MARCHESE:  I don't know that I can make that

14    representation, but I do know that this patent, the '566

10:45AM 15    patent, stems from a long line of patents.  In fact, Entropic

16    submitted with its supplemental briefing a set of office

17    action responses that were made in prior patents in this

18    chain.

19         If you look on the first page on the '566 patent,

10:45AM 20    you'll see that it stemmed from a long line of patent

21    applications.  You've got four patents issued before it.

22    It's quite possible that those patents recite the sorts of

23    things that Entropic would like to have here in the '566

24    patent, but the problem is they're just not there.

10:45AM 25         So what we have to be cognizant of is that the

specification -- the Federal Circuit has instructed on this -- cannot be used to import details into the claims if they're not claimed.

So all of these features, all of these benefits that are purported and alleged, they're just not there. We have the controller, which is part of a communication circuit. It communicates with a new node. That's one node on one side and one on the other. That's not a mesh network. There's nothing in the claims about splitters and all these other features of the coaxial network. There's no rat's nest recited that they're overcoming. None of that is there.

What we see, as the Federal Circuit said in the ChargePoint case, even if the specification is full of details about the physical invention, it may still conclude with claims that are nothing more than the abstract idea underlying the claims.

That's the case here. As I've said, lots of pages of specification, lots of figures, none of it -- well, very little of it made it into the claims, what made it as abstract.

THE COURT: Okay. I think I understand your argument.

MR. MARCHESE: Okay. Thank you, Your Honor.

If I may briefly respond to a couple points. I think one of the problems that we specified in our briefing

1    was that the first construction about the adapting -- excuse

2    me.  Not the adapting.  Let me just go to the claim

3    constructions here.

4         If you look at slide number 5, these are the three

10:47AM  5    constructions.

6         THE COURT:  Yes.

7         MR. MARCHESE:  The perform and admission procedure

8    is a function.  The Court in Sanderling, the Federal Circuit,

9    said that constructions must be plausible.  We submit this is

10:47AM  10    an implausible construction because it imports structural

11    limitations to a pure functional feature.  It should be

12    disregarded.

13         But even if it's not, it is reciting very abstract

14    principles between two nodes, logical link on top of physical

10:48AM  15    connections.  It's abstract, and the abstract feature cannot

16    supply the inventive concept.

17         Similarly, if you take the other two constructions

18    and you plug them into the claim, they don't fit.  If you

19    went through that exercise and you substituted their

10:48AM  20    construction for probe or communication link, adapt

21    transmission parameters, they don't fit.  They become

22    circular.  So their constructions are not plausible.  But in

23    any case, they are truly abstract.  There's no inventive

24    concept.

10:48AM  25         And last I wanted to -- well, two things.  Excuse

me.  As to the dependent claims, we agree with Your Honor.
We believe that they just add bells and whistles to the
general abstract concept, including claim 2.

        I would like to just direct the Court to Fig. 8
that Mr. Shimota showed.  It is reproduced in our slides at
slide 19.  Slide 19 shows Fig. 8.  There's all these --
there's four nodes there, the red lines having been drawn on
there by Entropic in its briefing.  There's a lot of argument
about how they're creating a peer-to-peer network.  It's a
mesh and you've got -- it overcomes all these problems.
That's not in the claim.

        The claim is just a node A and a node B.  So all of
the considerations around these particular mesh networks as
shown in Fig. 8 are just not present in this claim.

        I think what we have here is a situation where
Entropic laid claim to a very generic, very abstract system.
It does not include a lot of the features that they would
like it to include now, and they're trying to revise history
and build a much narrower, much more detailed claim, and it
just doesn't work.

        With that, Your Honor, I'll close, unless you have
any questions.

        THE COURT:  No, not right now.  Thank you.  I
understand your argument.

        MR. MARCHESE:  Thank you.

```
 1                    THE COURT:  Okay.  Mr. Shartzer, you want to cover

 2        '910?

 3                    MR. SHARTZER:  Yes, Your Honor.

 4                    Good morning, Your Honor.  I'll take you to

 5        slide 44 in our slide deck to start.

 6                    THE COURT:  I'm there.

 7                    MR. SHARTZER:  Okay.  All right.

 8                    We obviously agree with the conclusions,

 9        Your Honor, in your tentative with respect to the '910

10        patent.  I did however want to at least point the Court to

11        one area where I would expect that if there were an appeal on

12        the '910 patent on this decision, that Entropic and

13        Mr. Shimota would take to the Federal Circuit, it would be

14        that the second to last sentence above subsection C which

15        states:  The Court need not separately address step two --

16                    THE COURT:  Hold on a second.  You're talking about

17        my tentative?

18                    MR. SHARTZER:  Yes, your tentative at page 17.

19                    THE COURT:  I'm there.  Okay.

20                    MR. SHARTZER:  Okay.  About the middle of the page,

21        it's the second to last sentence before subsection C.

22                    THE COURT:  I see it.

23                    MR. SHARTZER:  It says:  The Court need not

24        separately address step two given that the claims fail to

25        explain how to accomplish the claimed result.
```

1   I would expect that Entropic would appeal on that

2   statement alone, arguing that Your Honor had not performed a

3   proper step-two analysis, certainly the question of how and

4   whether how to achieve the claimed function is part of the

5   step-two analysis.

6   Then, of course, there are aspects of the step-two

7   analysis that go into whether or not the claims also require

8   or claim an inventive concept or something more that saves

9   the claims from abstractness at step one.

10   So with that, I'd like to then point you to -- I'm

11   sorry, slide 44.  Actually we can go to slide 45, because I

12   think much of whatever Entropic might appeal on this point is

13   addressed by its admissions in its own briefing where it

14   stated that its claim satisfy Alice step two because the

15   specification explains how the claim system improves upon a

16   communication network.

17   Obviously we can't rely on the specification to

18   import the claims or import limitations into the claims for

19   purposes of satisfying step two.  The focus still remains

20   upon the claims, and the claim language or the specification

21   must yield to the claim language whenever we're doing that

22   step-two analysis.

23   If I turn you to slide 46, Your Honor, there were

24   arguments in Entropic's briefing that they're aggregating

25   MoCA patents.  They point to Fig. 3.  In their specification

Fig. 3 is a prior-art figure, and the word MoCA or phrase MoCA packets doesn't appear in the claims themselves.

They point to Fig. 4.  They point to an embodiment of an aggregated payload, but that specific structure is neither in the claims nor in the proposed constructions here as well at step two.

Turning to slide 47.  Another argument that Entropic raises is that the use of destination information for aggregation purposes is a particular technological improvement.  Your Honor, the use of destination information is part of the aggregation step.  That destination information is just being used as part of the abstract concept of aggregation.  Right.

THE COURT:  Say that one more time.  Sorry.

MR. SHARTZER:  So destination information as it's being used in the concept for aggregation is simply using destination information for purposes of the aggregation step, which is the abstract idea.  That destination information is part of the abstract idea.

It's also part of the abstract idea of sending or transmitting data.  You need a destination information in order to transmit.  So you cannot use the abstract idea to supply the inventive concept at step two, and the Federal Circuit's cases are fairly clear and resolute on that point.

Mr. Shimota mentioned in his argument that the

claims result in increased bandwidth through aggregation. The idea of increasing bandwidth or making available more bandwidth in the system is also abstract.

It doesn't appear in the Court's tentative, but I would point the Court to the Hawk Technology case from the Federal Circuit.  The pin cite is 60 F.4th, 1349.  And specifically the pin cite would go to page 1358 of that decision.  In that decision the Federal Circuit says that the data manipulation is an abstract concept.  It's an abstract idea.  And simply, data manipulation for purposes of preserving bandwidth is also abstract and not a patent eligible concept.

So I think in the context of Mr. Shimota's argument today, that is certainly an important case that the Court can also rely upon.

Mr. Shimota also talked about aggregating, and he mentioned high-priority packets, aggregating based upon high-priority packets or aggregating based upon different layers of the OSI model.  I'm sure the Court is aware those concepts of high-priority data packets and aggregating based upon different layers of the OSI model are not in the actual representative claim 3, so they cannot supply the unconventional aspect of the claims that we're looking for at step two.

I'll next turn the Court to slide 49, which

1    addresses the claim construction.  The tentative adequately

2    captures the fact that the claim construction of packet

3    aggregation module is just a reformulation of the surrounding

4    claim language, but it doesn't really add anything to the

10:56AM    5    claim itself or define the claim in any other way than the

6    claim language itself.

7           At slide 50 I'll point the Court to Entropic's

8    construction of forming an aggregate packet.  In forming an

9    aggregate packet, there's essentially two requirements

10:56AM    10    imposed there.  One is that there be a single header.  The

11    second is that the aggregate payload is formed from the

12    plurality of packet data units.

13          The concept of a single header is obviously

14    conventional.  It's admitted in the patent specification

10:57AM    15    itself.  If you turn to slide 51, there at Fig. 3 we snip

16    from the patent the full figure which actually shows the

17    Ethernet packets as well, including a single header in each

18    of the Ethernet packets.  And the specification admits that

19    at column 3, lines 49 through 52.

10:57AM    20          The other problem with this claim construction,

21    Your Honor, is that it is inconsistent with the claim

22    language in claim 1.  So while the claim construction -- if

23    you turn to slide 52, this is where we show this.  If you

24    turn -- the claim construction requires that the aggregated

10:57AM    25    packet comprises a single header.

1          In claim 1 we have two different kinds of headers

2     that are required, both an aggregation header as well as a

3     media access control header.  So it's not even a plausible

4     construction that has been raised here.

10:58AM  5          Turning to slide 53, there is also an argument by

6     Entropic that the second requirement of forming an aggregate

7     packet is somehow inventive.  But again, having an

8     aggregating multiple packets, that's inherent in the word

9     itself essentially, Your Honor.  Aggregation necessarily

10:58AM 10    implies that there is going to be more packets, and

11    aggregation is part of the abstract concept.  Again, the

12    abstract concept cannot supply the inventiveness required at

13    step two.

14          There were arguments about Adasa.  I could turn the

10:58AM 15    Court to slide 34 in our deck, but that's a very different

16    case, Your Honor.  With that particular case the claim there

17    requires actual structure.  So it's an apparatus claim as

18    opposed to a system claim here or method claims -- for

19    example, claim 1.

10:59AM 20          The RFID transponder is hard apparatus and it has

21    various structures included, but then it also has a very

22    unconventional data structure that was being used in an

23    unconventional way.  The problem there was that RFID tags

24    need to be commissioned one by one with a connection to a

10:59AM 25    server.

1    The Adasa inventors found a way to avoid needing

2    that connection where they could commission up to

3    16.8 million individual RFID transponders without ever

4    connecting to the commissioning central server.

10:59AM   5    That was the ultimate point of Adasa, that this was

6    doing something very different and it was not abstract idea.

7    The invention and the unconventional nature of that invention

8    was included in the claims itself in contrast to

9    representative claim here.

10:59AM   10    Then lastly, Your Honor, I want to address the

11    checksum point of Mr. Shimota's argument.  He blames DISH for

12    having not met its burden.  It's true that DISH has the

13    burden here, but DISH opened its brief addressing also the

14    checksums issue.

11:00AM   15    It's in one of the footnotes of our brief, and I

16    can point the Court if the Court needs the exact pin cite

17    there.  Essentially what we pointed out is the use of

18    checksums to ensure accurate data, was not using checksums in

19    any unconventional way.

11:00AM   20    THE COURT:  Where do you -- I'm looking at your

21    corrected opposition.  ECF 58, I believe, 58-1.

22    MR. SHARTZER:  We are at -- let me find the right

23    footnote, Your Honor.  It's footnote six.  It's at ECF 50-1.

24    THE COURT:  Okay.  So what I printed out was the

11:01AM   25    corrected opposition is 50, the --

|       |                                                             |
|-------|-------------------------------------------------------------|
| 1     | MR. SHARTZER:  50 was DISH's moving brief.  It was          |
| 2     | the original motion to dismiss.                             |
| 3     | THE COURT:  Oh, oh, oh.  I'm sorry.  I'm on the             |
| 4     | wrong -- I'm on the opposition.  My mistake.  Okay.  Footnote |

11:01AM

| 5  | six.  What page?                                            |
| 6  | MR. SHARTZER:  Page 21 of that brief.                      |
| 7  | THE COURT:  I'm there.  Okay.                              |
| 8  | MR. SHARTZER:  So --                                       |
| 9  | THE COURT:  Now I'm with you.                              |

11:01AM

| 10 | MR. SHARTZER:  -- footnote six is where we really         |
| 11 | engage with respect to the checksums, claims 1 and 2 and   |
| 12 | their use, and that they don't add anything more or take   |
| 13 | claims 1 and 2 out of this idea of being anything but      |
| 14 | representative.                                            |

11:01AM

| 15 | If we were to engage further -- and Entropic did          |
| 16 | not.  When Entropic opposed, it put the claims into its    |
| 17 | brief, but it didn't say substantively why the differences in |
| 18 | the claims matter to the representativeness analysis.  So  |
| 19 | essentially the briefing on the record ends there, and then |

11:02AM

| 20 | we had Mr. Shimota's argument today.                       |
| 21 | So I do want to address it, but using checksums to        |
| 22 | perform some sort of data integrity function is itself an  |
| 23 | abstract idea.  It essentially says do some math.  There's |
| 24 | nothing about the use of a checksum here at step two, which |

11:02AM

| 25 | would be unconventional in terms of its use in the context of |

1      these claims.

2              I'll point the Court to a case that is relevant on

3      the point in the issue of using checksums and being abstract.

4      It's the Intellectual Ventures case, Intellectual Ventures

11:02AM  5      versus Erie.  The pin cite is 711, Fed. App'x 1012.

6              Of course, that is a non-precedential decision, but

7      if the Court looks at -- let me give you the issue date as

8      well.  That issued from the Federal Circuit on November 3rd,

9      2017.

11:03AM  10             If the Court looks to footnote two of the

11     Intellectual Ventures decision, that's where the Court deals

12     with what were dependent claims at the time that introduce

13     the idea of checksums.  The Court says that doesn't change

14     the analysis with respect to abstractness.

11:03AM  15             The Court also cites a precedential decision, and

16     certainly we want to make sure we get your precedential

17     decision to cite, and that's the BuySafe, Inc., versus Google

18     decision, which is found at 765 F.3d 1350.  The pin cite is

19     1355.  That was issued by the Federal Circuit in 2014.

11:03AM  20             So unless there are further questions from the

21     Court...

22             THE COURT:  Just as a quick aside, who represented

23     Intellectual Ventures in that Federal Appendix case that you

24     cited?

11:04AM  25             MR. SHARTZER:  Your Honor, I have it up on my

```
 1    computer.  I could find it for you.

 2             THE COURT:  I'm just curious.  It doesn't matter

 3    for the purposes of what we're doing here today.

 4             MR. SHARTZER:  Well, let's make sure we get a

 5    complete record.  How about that?

 6             (Brief pause in proceedings)

 7             MR. SHARTZER:  Sometimes my own firm doesn't want

 8    to let me log in to my laptop.

 9             THE COURT:  Well, I can get it later.

10             Does Entropic want to have a really quick minute?

11             MR. SHIMOTA:  Two minutes.  I can do it in a

12    minute, Your Honor, and then I'll move on to the Cox issues.

13    Is that okay, Your Honor?

14             THE COURT:  Yeah -- a little slower.

15             MR. SHIMOTA:  So I'll go in reverse order so it's

16    fresh in your mind.  I think you probably have handy DISH's

17    motion papers on the '101 and the '910.

18             THE COURT:  I do.

19             MR. SHIMOTA:  And footnote six at page 50.

20             THE COURT:  I'm there.  Page 21?

21             MR. SHIMOTA:  That's right, Your Honor.

22    Mr. Shartzer directed you and said if you don't get to step

23    two, you're going to get reversed on appeal by the Federal

24    Circuit.  It's nice of him.

25             If you look at footnote six, that's directed to
```

1     Alice step one, right.  We disagree with the analysis there

2     and the fact that -- you know, the checksums.  But that's

3     dealing with Alice step one.

4           There's absolutely zero, zero analysis at Alice

11:05AM  5     step two for claims 1 and 2.  You can see it right there.  So

6     just based on that -- I thank Mr. Shartzer for that -- you

7     should just deny the motion as a matter of course on claims 1

8     and 2.  We don't think they're representative.

9           Turning to the '566 patent, Mr. Marchese said

11:05AM  10    there's no rat's nest at all in claim 1.  Well, yes, there

11    is.  It's the CCN, the coaxial cable network.  That's the

12    picture I showed you.  That's the rat's nest, and that's

13    where the unique solution was applied to that.

14          And he said there's no mesh network?  Well, we

11:06AM  15    think there is, but it's in our claim construction.  But even

16    if there's any doubt, it's certainly in claim 2.  It's

17    certainly in claim 2, Your Honor.  And they seem to concede

18    that the mesh network is -- you know, takes it out of the

19    realm of being an abstract idea.  So at a minimum I think

11:06AM  20    your opinion should hold that.

21          I think that was a minute, so...

22          THE COURT:  Good.  Thank you.  That -- I think I

23    understand your argument.

24          MR. SHIMOTA:  Okay.  Thank you, Your Honor.

11:06AM  25          MR. SHARTZER:  Your Honor, would you like that firm

1   name?

2          THE COURT:  Yes.

3          MR. SHARTZER:  That was Nix Patterson & Roach who

4   represented Intellectual Ventures in that case.

11:06AM  5          THE COURT:  Okay.  Thank you.

6          All right.  We're a little bit behind where I hoped

7   that we would be.  Let's move on to the 1047 case, Cox's

8   motion under Rule 12(c).  And likewise, let me hear from

9   Entropic first.

11:07AM  10          MR. SHIMOTA:  I'll try to keep this one even faster

11   so we get back on track, Your Honor.

12          We start the presentation but I won't go back

13   through it again.  I think just laying the table for you that

14   there are some quotes from Cox regarding the inventiveness of

11:07AM  15   MoCA as a whole.  And I think you should take that --

16          THE COURT:  Forgive me --

17          MR. SHIMOTA:  -- we've already talked about that.

18          THE COURT:  Forgive me for interrupting you.  This

19   presentation?

11:07AM  20          MR. SHIMOTA:  My eyes are terrible.

21          THE COURT:  Well, does it look like this?

22          MR. SHIMOTA:  Yeah, it looks like this, but, I

23   mean, the other one looked like it, too.  So...

24          THE COURT:  I've got it.

11:07AM  25          MR. SHIMOTA:  Sorry for my old eyes.  I'll do the

| | |
|---|---|
| 1 | best I can. |
| 2 | So these are two related patents, so we can handle |
| 3 | them together.  And, you know, the concept here is quality of |
| 4 | service as in the MoCA network.  At this point MoCA had |
| 11:08AM  5 | already been invented.  The patent is very clear about that. |
| 6 | The standard -- you know, earlier versions of it had already |
| 7 | been promulgated.  So the concept here is a -- if you can |
| 8 | turn to slide 7 -- is what's described in the patent as a |
| 9 | smart network coordinator that operates as a peer at layer |
| 11:08AM  10 | two.  That's where MoCA lives, at layer two, and layer one |
| 11 | and its managing quality of service. |
| 12 | Specifically, if you turn next to slide 6 of the |
| 13 | presentation, we have the claims.  You see there the claims. |
| 14 | And what's happening with the claims is that there is, you |
| 11:08AM  15 | know, it's not just -- |
| 16 | THE COURT:  Sorry.  Slide? |
| 17 | MR. SHIMOTA:  Sorry.  It's slide 8.  I'm sorry. |
| 18 | THE COURT:  Okay.  I went backwards to 6. |
| 19 | MR. SHIMOTA:  I apologize, Your Honor. |
| 11:08AM  20 | THE COURT:  I'm on 8.  Go ahead. |
| 21 | MR. SHIMOTA:  So here are the claims.  And what |
| 22 | you've got here is, I mean, these are very long, detailed |
| 23 | claims.  So what's described there just even before we turn |
| 24 | to claim construction, which respectfully I'll get to and I |
| 11:09AM  25 | think this is where you erred in your opinion, your tentative |

order, Your Honor.

Nevertheless, even if you don't get to the claim construction, there's a very specific method here described in both apparatus and system claims for managing QoS by the network coordinator.  So it's not -- so your opinion, you know, points out that we make a point that these patents arose from a very, very lengthy prosecution history.  You said that we missed the mark because the prosecution history doesn't tie to our claim construction.

You know, perhaps that was a problem in our briefing, so I want to be very clear of what we're arguing there.  The claim construction flows from the fact that the patentee acted as its own lexicographer.

It's a separate argument for the prosecution history.  The prosecution history and the length of it is to point you to that the -- it may well have been -- it is the fact that QoS is an abstract idea in and of itself, but the length of the prosecution history shows that the examiner put Entropic to -- really put it to Entropic.  They made them get very, very narrow and specific in terms of the way in which the QoS is performed.  It's tied very closely to the preferred embodiment in the patent.

If you turn to slide 11, I just want to make the point clear here that Cox points to Judge Kronstadt's opinion in the Virtual Immersion Technologies case and said that, you

1    know, the prosecution history doesn't matter.

2         I think we're talking past each other there.  In

3    the Virtual Immersion case it was simply just basically

4    presenting real and virtual data on a TV.  And he cited

5    that -- what Judge Kronstadt said is there is no description

6    of the particular way that this, you know, benefit is being

7    achieved.

8         Well, the benefit is improved quality of service,

9    right, and the claims do describe in a very particular way

10   how that is achieved.  So that's the distinction, and that's

11   what came about in the prosecution history is that these

12   claims are very specific in the way that the QoS is performed

13   such that it's not abstract at all.  And that's the

14   difference.

15        So we're not relying upon the prosecution history

16   for our claim construction.  We agree the prosecution history

17   is sort of orthogonal to the claim construction.  Instead

18   where -- but we think, you know, just even looking to the

19   claims themselves even before getting the claim construction,

20   that's enough.  You should just find the claims are not

21   abstract at all.

22        In fact, you know, the length of the prosecution

23   history does bear on the inventive step two, you don't even

24   really need to get there.  It's a very specific description

25   of how QoS is performed.  So that is enough.

1        However, if you -- the place where we think we very

2   much disagree with your opinion, respectfully, is that you

3   held that the patentee did not act as its own lexicographer

4   and that we were reading in the preferred embodiment of the

11:12AM  5   patent.

6        If you could direct your attention to slide 15 of

7   our presentation.

8        THE COURT:  Okay.  I'm there.

9        MR. SHIMOTA:  Starting at the end, we've got the

11:12AM  10   AIP Acquisition, LLC, v. Cisco Systems, Inc., case.  In that

11   case the Federal Circuit held that where you've got

12   capitalized terms and abbreviated terms in a claim, that

13   strongly suggests that there is probably a definition.

14        It's like a contract, right?  You capitalize a term

11:13AM  15   in a contract and you think, okay, this is probably

16   definitions.  You look above and the parties do define the

17   term.

18        Well, you look to the patent, and your -- the

19   Court's opinion cites to this.  But in the '213 patent at

11:13AM  20   column 1, lines 55 to 62, and the '422 patent at lines 60 to

21   67, you see there it reads:  The emerging multimedia over

22   coaxial lines MoCA standard architecture impacts --

23        THE COURT:  Slow down just a bit, please.

24        MR. SHIMOTA:  Okay.  Gotcha -- impacts this problem

11:13AM  25   in that, one, network behaviors dynamically assign a device

-- and this is the important part; we bolded it -- quote, unquote, the network coordinator NC rule in order to optimize performance; two, only the device in the NC role is known to be able to schedule traffic for all other nodes in the network; three, form a full mesh architecture between any device and its peers.

The fact that the network coordinator is -- has the quotation marks around it, particularly coupled with the fact that the claim language recites a network coordinator abbreviated NC, to us, particularly at this stage, in the Sunderland case we think it's at least plausible.  In fact, we think it's dispositive that this --

THE COURT:  What case did you say?

MR. SHIMOTA:  It was the Sunderland case that came out recently that said that, you know, at the pleading stage a claim construction needs to at least be plausible.  We think that it's not only plausible, but this is dispositive, that this is a situation where the patentee has acted as its own lexicographer and the claim should be construed as this.

So, I mean, we -- the definition here is a little cumbersome, so we in our construction, we shorthanded a little bit.  But if you wanted to adopt a construction which just quoted from the patent where we got there, that would be fine.

If you see on slide 14, our construction follows

1   precisely from the definition.  You know, it's a node that

2   manages and coordinates QoS of service blows by layer two

3   messages.  So MoCA, you know, what's there, what's talked

4   about is the network controller MoCA.  MoCA exists at layer

11:15AM   5   two, at least in terms of a network, the management and

6   coordination function.  So that's where layer two comes from.

7          Next part, among peer nodes of the flows.  The fact

8   that the network controller is a peer of other nodes in the

9   network is the fact that it's a mesh.  That's where that

11:15AM   10   comes from.

11          THE COURT:  Say that one more time.

12          MR. SHIMOTA:  The fact that -- the definition

13   provides that the network coordinator is in a mesh network.

14   Our construction says that insofar as we're referring to the

11:16AM   15   fact that the network coordinator is a peer node.

16          That is to say that it can be any -- in this

17   network where you've got, for example, a bunch of set-top

18   boxes which are communicating with one another, any node, any

19   peer, they're all the same.  They're all peers of one

11:16AM   20   another.  Any one of them can be assigned the role of being

21   the network coordinator.

22          There's not some special box that manages

23   everything like a gateway.  It's all the same thing, and

24   that's where it comes from our construction.  That's why we

11:16AM   25   believe that if you look at the claims, particularly in light

1   of the definition which we provided to you -- if you could

2   turn to slide 18, Entropic's construction.  You know, this is

3   why we think this is frankly a very easy case.

4        We pointed you to the claim language itself, if you

5   don't even get to construction, is a very specific way of

6   doing QoS, right.  That should be enough.  But then when you

7   get to the definition provided for network coordinator,

8   first, this network coordinator is a computer that its

9   functionality exists at layer two in the machine.

10        So it is a specific machine.  The layers in the OSI

11   model are important.  They're meant to be building blocks

12   which can be taken in and out.  So that makes it a specific

13   machine.

14        The fact that it's a peer-to-peer network, a mesh,

15   means that it's a specific network.  So this claim, this

16   patent has a specific way of doing QoS.  It's got a specific

17   machine which is programmed at a particular layer, and it's

18   done in a specific network.

19        I would submit to you that this is as far as you

20   can get from an abstract idea, Your Honor.  So it's one where

21   we think it should be an easy case and you should hold that

22   it's patentable.

23        Lastly, your opinion points out that in claim 16 of

24   the '422 patent -- are you there?

25        THE COURT:  Claim 16 of the '422, yes.

1         MR. SHIMOTA:  Yes.  So in that patent your opinion

2    points out, you say, that our claim construction is in

3    conflict with claim 16 of the '422 patent.  And that's

4    because --

11:18AM  5         THE COURT:  Hold on one second.  I had a note on

6    this.

7         MR. SHIMOTA:  Okay.

8         THE COURT:  Okay.  And what specifically are you

9    looking at in my tentative?

11:19AM 10         MR. SHIMOTA:  Just a second, Your Honor.

11         So if you look at footnote 28 on page 12 of your

12    tentative.

13         THE COURT:  Hold on one second.  Yes.  Okay.  I'm

14    with you.

11:19AM 15         MR. SHIMOTA:  So you note there:  The applicant

16    did, however, expressly disclose Layer 2 Management Entity,

17    L2ME, messages in claim 16 of the '422 patent.  This drafting

18    choice further suggests that the scope of claim 1 is not so

19    limited and supports the Court's decision to disregard

11:19AM 20    Entropic's proposed construction.

21         And you see that at the last element of claim 16

22    there.  So I would respectfully disagree with Your Honor.

23    The L2ME Management Entity messages are a specific type of

24    layer two message.

11:20AM 25         It doesn't mean at all that -- that doesn't

11:20AM

conflict with the definition which is provided in the patent

that the network coordinator exists at the layer two.  It

just says this adds further to that, that there is a specific

type.  These L2ME messages are used in connection with the

QoS process.

So I think respectfully your tentative order is

incorrect insofar as it holds that there is not a definition

there.  But I'd also say that even if you disagree with me,

then given your opinion in claim 16 and the recitation of

11:20AM

these L2ME messages, at a minimum claim 16 should be held to

be not abstract and patentable.  But I still think this is an

easy case.

THE COURT:  So are you saying that claim 1 is not a

representative claim because claim 16 is substantially

11:21AM

different?

MR. SHIMOTA:  Well, I think they're representative

insofar as they use the same network coordinator.  I don't

think that you necessarily need to use L2ME messages.  So

it's a further reason -- I think you should adopt our

11:21AM

construction.  I think that the network coordinator is in all

the claims and should be adopted, and it's representative

insofar as that.

I do think it's not -- and frankly Cox says this,

that the '213 and '422 describe there are differences in

11:21AM

terms of the QoS flows.  I think both of them are specific

enough that, you know, each of them on their own, even

without claim construction, are easily not abstract and

specific.

        But even in that regard, I don't think that claim 1

11:22AM  is representative of all the claims in the patents.  There

are differences.  But I don't think you really need to get

there.  I think this is frankly an easy enough case, so I

don't want to focus on that.

        THE COURT:  Okay.  I understand.

11:22AM         MR. SHIMOTA:  Unless you have any other further

questions, I'm --

        THE COURT:  No.  That's very helpful.  Thank you.

        MR. SHIMOTA:  Thank you for your time, Your Honor.

        THE COURT:  Okay.  Let me hear from Cox, please.

11:22AM  Thank you.

        MS. ISAACSON:  Good morning once again, Your Honor.

April Isaacson on behalf of the Cox defendants.

        Your Honor, as you will probably not be surprised,

we were very pleased with your tentative order and agreed

11:23AM  with everything that's written therein, but I will go through

some of my presentation, and you will see that it very much

aligns with what Your Honor put in the tentative.

        I think we can skip through to the ninth slide.

The original slides, you talked about the fact that you

11:23AM  already know, you know, the basics of the claims, et cetera,

and we don't need to go through the case law.

I will start with the '422 first because that's the way we did it in our briefing.  In terms of step one, as you correctly stated in the tentative, it's directed to the abstract idea of forming an aggregated data traffic list by requesting and receiving information from nodes within a network about scheduling data transmissions.  Nothing special.

THE COURT:  Slow down just a bit.  Thank you.  Okay.

MS. ISAACSON:  One of the things I want to point out is in the opposition brief, Entropic did not dispute any of the analogous case law that we set forth.  If you turn to the second slide, it's just going through the -- slide 10, it's going through step one, again very much in line with what Your Honor put in the tentative.

It's purely functional.  It doesn't have the how.  Making an abstract idea.  What they're claiming here, maybe they aspire to claim something else, as Mr. Shimota said, with a specification and a long file history, but the reality is they didn't claim it.

What's claimed here is talking about requesting, communicating, receiving, forming an aggregate list, communicating to a fourth message.  Entropic admits that the file history focused on particular functional limitations.

```
 1    Again, we're not getting into the how.  We're getting into
 2    the function.
 3              If you turn --
 4              THE COURT:  This is kind of an aside.  Let me ask
 5    you the same question I asked DISH's counsel.  So is there
 6    some -- there are a lot patents in suit here.  Is there some
 7    subsequent patent that actually did claim -- solve the
 8    problem that you're identifying as why the '422 patent does
 9    not meet 101?
10              MS. ISAACSON:  I'll give you the same answer that
11    my colleague did.  I really couldn't represent that at the
12    time -- at this time, unfortunately.  So I'm not quite sure
13    of the answer to that.
14              If you go to the next slide, Your Honor, slide 11,
15    this shows how the Electric Power Group case that you cited
16    in the tentative is incredibly instructive.  We've done a
17    side-by-side analysis, and again this was in our opening
18    brief and was not distinguished in plaintiff's opposition
19    brief.
20              So if you look here, it's analogous in the terms of
21    there's receiving, sending, receiving, forming, sending.
22    It's the same thing with Electric Power Group where it's
23    talking about collecting data, receiving, detecting,
24    displaying, things of the like.
25              One of the other things that was pointed out I
```

1    believe in Your Honor's tentative and it goes to this case

2    here is although the claims are lengthy and numerous, they

3    don't go beyond requiring collecting analysis and displaying

4    of information as set forth in the Electric Power Group case.

11:26AM   5         If you turn to slide 12, Your Honor, the

6    claireLOGIC case is also instructive.  Once again this case

7    was cited in our opening brief and was not distinguished by

8    opposing counsel in their opposition.  Same thing here with

9    claireLOGIC.  If you look at it side by side with patent

11:26AM   10   claim 1 of the '422, we've got receiving, sending, receiving,

11   forming, sending.  Same sort of thing over here, it's about

12   electronically collecting information, transforming the data,

13   validating the data, analyzing.

14        I will point out as well there's not an analyzing

11:27AM   15   step that's in actually the claims of the '422, the

16   representative claims 1 of the '422 or the '213.

17        If you turn to the next slide, Your Honor, in terms

18   of step two.  So we've already set forth and agree, of

19   course, with Your Honor's tentative that there is no -- it's

11:27AM   20   an abstract idea, what they've tried to claim.  So then you

21   go to step two, of course, and here they haven't shown

22   anything about -- anything that's specific architecture or

23   structure of the like.

24        They talk about computer code that's implemented by

11:27AM   25   a general-purpose processor.  These are all things that would

be known in the field.  Nothing special or specific about how they're implementing what they purport to be their invention.

The '422 patent claims recite the abstract process that can be accomplished by a general-process type of equipment for networking, including nothing more than nodes. You know, we have this networking node that they talk about, but it's just one of several types of nodes that are in this purported invention that they talk about, and it's dynamic. So it's not a specific node.  It can move around and be a different node.

The nodes, we also point out if you look at the Alice case that the nodes are similar to a communications controller, and that's very much talking about a function of something that's generic such as in the Alice case.

Turning to the next slide, slide 14, Your Honor, this shows once again that the steps that occur here are very generic, and there's nothing about them in terms of the order of them whatsoever that takes them within the inventive concept.  There's nothing special about them that they've claimed.  It's only functional in terms of just various steps that can be done by generic computer equipment.

If you next turn to slide 15, we'll turn to the '213 patent, step one.  Again we agree with Your Honor's tentative on this, that this is directed to an abstract idea. It's requesting and receiving information again within these

|   |   |
|---|---|
| 1 | nodes within a network that are generic nodes in order to |
| 2 | verify the availability of resources -- |
| 3 | THE COURT:  Slow down just a bit. |
| 4 | MS. ISAACSON:  Yes, Your Honor -- the availability |
| 11:29AM  5 | of resources for transmitting data within a network, within a |
| 6 | generic network.  And then if there's not availability, |
| 7 | they'll calculate and figure out the maximum transmission |
| 8 | rates that can be used. |
| 9 | Once again in the opposition brief from plaintiff, |
| 11:30AM  10 | they did not dispute any of the analogous case law. |
| 11 | If you turn to the next slide, Your Honor, talking |
| 12 | more about step one of the '213 patent, you can see that |
| 13 | these are purely functional.  There's not the how, as you put |
| 14 | forth in your tentative.  There's not a how here.  They're |
| 11:30AM  15 | only talking about broadcasting, receiving, receiving, |
| 16 | allocating, denying, determining, without saying how that |
| 17 | would be performed. |
| 18 | Entropic admits in their briefing that in the file |
| 19 | history, it was focusing -- when it was doing the examination |
| 11:30AM  20 | that they talked about that was extremely lengthy -- on |
| 21 | functional limitations, not anything about any specific |
| 22 | architecture. |
| 23 | If you turn to slide 17, Your Honor, same thing. |
| 24 | Not only did they not distinguish it, distinguish the |
| 11:30AM  25 | Electric Power Group in the other patent, but here as well. |

1    Like I said before, you've got on the left claim 1 that both

2    sides, by the way, have agreed is the representative claim.

3    They put that in their briefing.

4           There's the broadcasting step, a receiving step,

11:31AM  5    receiving, allocating, and then nodes of being unavailable

6    due to bandwidth.  Then they'll make the data rate

7    functionality and they'll figure that out.

8           In terms of the Electric Power Group, it's the same

9    thing we talked before about.  You might have lengthy claims

11:31AM 10   with lots of things in there, but it doesn't mean that

11   there's anything there that is showing you the how in terms

12   of anything beyond just claiming functionality of common

13   general computer equipment or potentially software.

14          If you turn to the next slide, Your Honor, once

11:31AM 15   again a case that was in our opening brief that was not

16   distinguished by opposing counsel, the Prism Technologies.

17          You can see that you have the broadcasting and all

18   the different steps that are in claim 1 that's the

19   representative claim.  In the Prism Technologies case, very

11:32AM 20   similar steps, and that case, you know, was found to be an

21   abstract idea.

22          Turning now to the next slide, Your Honor, slide

23   19, step two, so getting into the inventive concept.  It's --

24   the present disclosure is method and apparatus that can be

11:32AM 25   embodied in the form of generalized computer code or

|       | 1  | general-purpose processor.  Nothing specific.  Nothing |
|       | 2  | special about it in terms of any architecture or structure. |
|       | 3  | They talk about this node coordinator, source node, |
|       | 4  | egress node.  Again the network coordinating node can be any |
| 11:32AM | 5  | node.  It's dynamic.  Once again these are similar to the |
|       | 6  | communications controller that is purely functional and |
|       | 7  | generic as we have in the Alice case. |
|       | 8  | Turning to slide 20, Your Honor, the '213 patent |
|       | 9  | doesn't present an inventive concept as you put forth in your |
| 11:33AM | 10 | tentative.  The steps occur in a very generic order.  There's |
|       | 11 | nothing special about them.  It's just sending information, |
|       | 12 | talking about functions of things without getting into the |
|       | 13 | how. |
|       | 14 | I'll turn you now to slide 22 because these are |
| 11:33AM | 15 | some of the things that Your Honor had in the tentative that |
|       | 16 | talked about the layer two and how they're importing that |
|       | 17 | limitation in. |
|       | 18 | Of course, we don't believe that any claim |
|       | 19 | construction is necessary, as was set forth in our briefing. |
| 11:33AM | 20 | I know Your Honor said that even if you were to kind of take |
|       | 21 | them at their word that they need to import this in, it still |
|       | 22 | doesn't save them.  We agree with that and also agree that, |
|       | 23 | you know, it would be improper to do so. |
|       | 24 | In terms of the claim 16, that point would really |
| 11:33AM | 25 | go to claim differentiation as opposed to necessarily -- I |

think he was kind of mucking it up of it being a representative claim.  Both parties had agreed that claim 1 was going to be the representative claim for both of these.

As Your Honor put in the tentative, they also ignore the very important principles of patent law.  If you turn to slide 23, it talks about importing the embodiments from the specification into the claims themselves.  Of course, when we're at the 101 stage, then we're dealing with looking at the asserted claims themselves as opposed to trying to import from the specification.

THE COURT:  This is probably a question for Mr. Shimota.  Is claim 16 asserted?

MS. ISAACSON:  No, Your Honor.  We have at this point -- and he can correct me if I'm wrong, of course -- but it would be -- it was claim 1 of each of the patents that was set forth in terms of -- in the complaint.

MR. SHIMOTA:  Your Honor, I don't want to cut into her argument.

THE COURT:  Just that quick sort of rifle-shot question.

MR. SHIMOTA:  Claim 16, in our complaint we identified representative claims, but claim 16 will be asserted if you rule --

THE COURT:  That's a yes?

MR. SHIMOTA:  Yes.

```
 1              THE COURT:  Okay.

 2              Go ahead, Ms. Isaacson.  Thank you.

 3              MS. ISAACSON:  The other thing that Your Honor

 4      pointed out and I think Mr. Shimota tried to argue but, of

 5      course, we disagree with that, is that they're conflating

 6      patent eligibility with novelty.  They talk a lot about the

 7      file history 102, 103, but that's really not at issue here,

 8      as Your Honor knows.

 9              They ignore the principles of claim construction.

10      Like I said, it's really here about function, is all we're

11      getting.  We're not getting the how.  Of course, as I said

12      before, too, we don't believe that any claim construction is

13      necessary.

14              I want to address, before I forget, some of the

15      arguments that were made by Mr. Shimota.  He talked about the

16      fact that they were their own lexicographer and pointed very

17      specifically to the specification.  Needless to say, we

18      disagree with that.

19              Actually, if you look at another portion of the

20      specification where they're talking about network

21      coordinator, it's on column 4, and it starts at line 2.  It

22      says:  In some embodiments --

23              THE COURT:  Hold on.

24              MS. ISAACSON:  Sorry, Your Honor.

25              THE COURT:  '213?
```

11:35AM
11:35AM
11:35AM
11:36AM
11:36AM

| | |
|---|---|
| | 1 |

          MS. ISAACSON:  Yes, Your Honor, column 4, line 2.

          THE COURT:  I'm there.  Go slowly, please.

          MS. ISAACSON:  Will do, Your Honor.

          In some embodiments the network is a coordinated
network having a network coordinator, NC, that coordinates
the communication between the several devices connected in
the network.

          I would argue that's not being a lexicographer.
It's basically saying a network coordinator is coordinating a
network.  It is not giving any kind of special definition
whatsoever.  I don't agree with their read of column 1 that
he talked about before in terms of what network coordinator
means.

          He also cited to the AIP Acquisition case, but that
was actually a PTAB case where they were talking about
internet protocol and whether it's a capital IP, internet
protocol.  I think we can all agree that that's a well-known
term of art within the field.

          I also wanted to point out that in their briefing
when they claim that they're their own lexicographer,
noticeably absent from that was any citation to the
specification whatsoever, although today Mr. Shimota brought
it up during argument.

          Going back to the network coordinator, they
admitted in their brief that it's not different or unique in

|     |     |
| --- | --- |
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 11:38AM | 5 |

1    terms of the device.  That goes to that idea I talked about

2    before of it being dynamic and random of what is actually the

3    network coordinator.

4                THE COURT:  Where is that admission?

5                MS. ISAACSON:  In their brief at 14, and it's

6    citing the '213 patent.  It's line -- sorry, column 1,

7    lines 57 through 59.

8                THE COURT:  Sorry.  You said in their brief they

9    admitted --

10                MS. ISAACSON:  In their brief at 14, Your Honor.

11                THE COURT:  What line on 14?

12                MS. ISAACSON:  Oh, sorry.  I'm citing to the brief.

13    If you're in the patent, the '213, it's column 1, lines 57

14    through 59.

15                THE COURT:  Okay.

16                MS. ISAACSON:  Also, as Your Honor noted in the

17    tentative, the complaint itself gave a very cursory statement

18    just saying this is -- this patent is directed to patent

19    eligible subject matter pursuant to 101.  Nothing more.

20                The layer two idea I know that you addressed as

21    well.  I mean, I think that it's very clear that maybe they

22    wanted to include that.  Perhaps that was aspirational in

23    terms of what they thought was an improvement, but they

24    didn't actually claim it even after a very lengthy

25    prosecution.

1          They also pointed to the fact that Cox purportedly

2     talked about inventiveness of MoCA as a whole.  Well, that

3     may be the case, assuming arguendo it is the case.  That

4     doesn't mean that they didn't claim something that's an

11:39AM   5     abstract idea under Alice Mayo.  Just because MoCA as a

6     concept itself may be something that's inventive doesn't mean

7     that that's actually -- that they've actually claimed

8     something that is not abstract here in these two patents that

9     we're talking about.

11:40AM   10          Unless Your Honor has any further questions for me,

11     I have nothing more.

12          THE COURT:  No, I don't think so.  Thank you very

13     much.  I appreciate it.

14          MR. SHIMOTA:  May I have 30 seconds?

11:40AM   15          THE COURT:  You may.

16          While you're getting arranged, Madam Court

17     Reporter, would you like a short break?  We have one more

18     tentative to talk about after Mr. Shimota's --

19          MR. SHIMOTA:  Just 30 seconds.

11:40AM   20          THE COURT:  So we'll do it after.

21          Yes, I definitely want to hear your --

22          MR. SHIMOTA:  Yeah.  So I was actually surprised

23     and very happy that counsel said over and over and over again

24     that the network coordinator is dynamic, that it can be any

11:41AM   25     node.  I think there's, like, five or six times they said

```
    1    this, over and over.

    2            That's our point, Your Honor, I mean, as part of

    3    our construction.  That's why it's a mesh network.  This is a

    4    specific network.  So I am surprised and happy, and I think

11:41AM    5    that's why you should -- this is an easy opinion for you,

    6    that this is a very specific network and that you should hold

    7    the claims are patentable.  We also think that it's a layer

    8    two for the parts of our construction, but it's --

    9            THE COURT:  Slow down.

11:41AM   10            MR. SHIMOTA:  Thank you.

   11            It's -- I believe all the parties agree that this

   12    is -- this is a mesh network.  It's a situation where the

   13    network coordinator in this network can be any node.  It can

   14    be any set-top box in your house that's different and

11:41AM   15    specific.

   16            And so for those reasons we think that you should

   17    respectfully change your tentative order.  Thank you,

   18    Your Honor.

   19            THE COURT:  Got it.  Thank you.  That was very

11:41AM   20    helpful.  You both have given me a lot to think about.

   21            Let's take a short break.  Let's really try to keep

   22    it to five minutes.

   23            MR. PADMANABHAN:  Your Honor, I apologize.  Before

   24    we take the break, we just have one housekeeping for the next

11:42AM   25    presentation.  We thought we would just address it now.
```

1          Comcast expects that it will discuss some

2     confidential information.  Accordingly, we think that there

3     are some folks in the gallery that aren't permitted to hear

4     that confidential information, including potentially a

5     representative of Fortress.

6          So we would like to just make sure that we have the

7     gallery clear.

8          THE COURT:  Is it impossible for you to make your

9     argument without addressing confidential information?

10         MR. PADMANABHAN:  I can make an attempt,

11    Your Honor.  Yeah, I can make an attempt.

12         THE COURT:  Is there anything in the tentative that

13    you regard as confidential?

14         MR. PADMANABHAN:  No, Your Honor.  The tentative is

15    fine.

16         THE COURT:  Let's try not to.  If you get to a

17    point where you absolutely -- where you feel you cannot make

18    a substantive argument because of confidentiality issues,

19    raise it at that point.

20         MR. PADMANABHAN:  I appreciate that, Your Honor.

21    We'll do our best to navigate.

22         THE COURT:  Okay.  Thank you.

23         So let's try to keep it to five minutes.  Come back

24    and we'll talk about the third tentative.  Thank you.

25         (Recess taken from 11:42 a.m. until 11:52 a.m.)

1      THE COURT:  Good morning again.  Please have a

2  seat.  We do not need to recall the cases.

3      Before we start tentative three dealing with

4  Comcast and its standing and the 12(b)(6) motion, quick

11:52AM  5  question for Mr. Shimota.  The MoCA standard-setting

6  documentation, does that define network coordinator?

7      MR. SHIMOTA:  I believe it does, Your Honor.

8      THE COURT:  And how does it define it?

9      MR. SHIMOTA:  I believe it would be -- I would have

11:52AM  10  to pull it out.  I can get it to submit it.  I don't want to

11  misrepresent it to the Court.  The network coordinator would

12  be a layer two entity that operates in the fashion described,

13  that we've described today.

14      But I need -- I don't -- off the top of my head.  I

11:53AM  15  can get you MoCA, but I don't want to misrepresent to the

16  Court the precise verbiage of it.

17      THE COURT:  Is that presently in the record

18  anywhere?

19      MR. SHIMOTA:  I don't believe so, but -- do we

11:53AM  20  know?  I don't believe that -- there are aspects of the MoCA

21  in our claim charts, the standard itself.  I -- the

22  definitions I'm not certain, but I can get that.  We can

23  submit that to Your Honor if you would like.

24      THE COURT:  Okay.  Let's talk about that at the

11:53AM  25  end.  Remind me if I forget.

|     |     |                                                              |
| --- | --- | ------------------------------------------------------------ |
|         | 1   | MR. SHIMOTA:  I will, Your Honor.  Thank you. |
|         | 2   | THE COURT:  Okay.  In the interest of time, let's |
|         | 3   | move to Comcast's motion.  I think Entropic probably ought to |
|         | 4   | go first again, so that's Mr. Bridges, right? |
| 11:54AM | 5   | MR. BRIDGES:  Yes, Your Honor. |
|         | 6   | THE COURT:  Okay. |
|         | 7   | MR. BRIDGES:  Good morning.  It's good to see you |
|         | 8   | again.  I feel like I was here just last month. |
|         | 9   | To start off, I would ask my colleagues from |
| 11:54AM | 10  | Comcast if in my argument I stray into anything that you |
|         | 11  | might think is confidential information, if you will stop me |
|         | 12  | as quickly as possible.  I'll try to be mindful of that. |
|         | 13  | First of all, Your Honor, with respect to the |
|         | 14  | tentative, there are parts we agree with and parts we don't |
| 11:54AM | 15  | agree with, unsurprisingly for what seems to be such a |
|         | 16  | complicated issue -- or is it a complicated issue? |
|         | 17  | The parties' briefing so far certainly made it seem |
|         | 18  | that way, but I'm here to tell Your Honor that it's actually |
|         | 19  | a much, much simpler issue when Your Honor looks at what he's |
| 11:55AM | 20  | actually being asked to decide. |
|         | 21  | So this is relevant.  First of all, if you go to |
|         | 22  | your tentative at page 13 and the disposition. |
|         | 23  | THE COURT:  Yes. |
|         | 24  | MR. BRIDGES:  I just want to be very clear about |
| 11:55AM | 25  | what it is that Your Honor is being moved to do and what |

1   Your Honor is considering doing.

2          So you note here that Comcast's instant motion to

3   dismiss is granted with leave to amend, but the only motion

4   before Your Honor where Comcast is asking for you to dismiss

11:55AM   5   the case, the whole case, is Rule 12(b)(1).

6          THE COURT:  So that -- so I'm -- that should say

7   denied in part and granted in part, because I'm denying -- if

8   I stick with the tentative, which is what we're here to

9   discuss --

11:55AM   10          MR. BRIDGES:  Correct.

11          THE COURT:  If I stick with the tentative, I'm

12   denying the motion with respect to 12(b)(1).

13          MR. BRIDGES:  You're denying the Rule 12(b)(1)

14   motion.

11:55AM   15          THE COURT:  Yeah, and granting 12(b)(6) but with

16   leave to amend.

17          MR. BRIDGES:  Yes.  And then we have to talk about

18   Rule 12(b)(6), what Your Honor is actually being asked to do

19   under rule Rule 12(b)(6).  And I made this mistake,

11:56AM   20   Your Honor.  I thought that at one point Comcast was asking

21   for the case, for the patent infringement claims to be

22   dismissed under Rule 12(b)(6), but that's not in fact what

23   Comcast is asking for.

24          Your Honor can take a look at --

11:56AM   25          THE COURT:  I understood Comcast's -- maybe I

| | |
|---|---|
| 1 | should have started with Comcast.  I understood Comcast's |
| 2 | fallback position to be if you disagree with Comcast, that |
| 3 | Entropic does not have standing.  Then -- |
| 4 | MR. BRIDGES:  Well, we could clarify, Your Honor, |
| 5 | in their briefing if you'd like.  There's actually a fairly |
| 6 | clear statement of this in the opening brief at page 2. |
| 7 | THE COURT:  Hold on one second.  I want to eyeball |
| 8 | it myself.  Okay. |
| 9 | MR. BRIDGES:  And I would use the elmo, but I'm |
| 10 | afraid, Your Honor, of switching between the different |
| 11 | channels. |
| 12 | THE COURT:  It wouldn't be helpful. |
| 13 | Okay.  I have the briefing.  Where should I look? |
| 14 | MR. BRIDGES:  If you go to page 2, which is the |
| 15 | unique -- |
| 16 | THE COURT:  Page 2 of what? |
| 17 | MR. BRIDGES:  Page 2 of the opening brief.  The |
| 18 | unique page ID at the top is 3078.  The page is titled Notice |
| 19 | of Motion and Motion to Dismiss. |
| 20 | THE COURT:  Okay.  I'm at the Notice of Motion and |
| 21 | Motion. |
| 22 | MR. BRIDGES:  Okay.  If you go down to line 22, |
| 23 | Your Honor. |
| 24 | THE COURT:  Go. |
| 25 | MR. BRIDGES:  Here we have the sentence: |

Timestamps:
11:56AM (line 5)
11:57AM (line 10)
11:57AM (line 15)
11:57AM (line 20)
11:57AM (line 25)

1    Accordingly, even if the Court finds some basis for subject

2    matter jurisdiction, Comcast moves to dismiss Entropic's

3    willfulness claims pursuant to Rule 12(b)(6).

4            THE COURT:  Okay.

11:58AM   5         MR. BRIDGES:  And if you go on -- it's repeated at

6    the end, Your Honor, at page 37 of the brief, the unique page

7    ID 3113, the last sentence of the conclusion starting on

8    line 13.

9            THE COURT:  Okay.

11:58AM   10        MR. BRIDGES:  The same thing.

11            So the point here, Your Honor, is just that there

12   is two different motions with two different forms of relief

13   that are being asked for.  Only one is to dismiss the case on

14   12(b)(1) grounds.

11:58AM   15        THE COURT:  Okay.  So in the interest of time, if I

16   stick with the tentative, what should I be saying in the

17   disposition?

18            MR. BRIDGES:  I think what Your Honor had said

19   earlier is proper.  I think Your Honor should probably say

11:58AM   20   that you're denying the Rule 12(b)(1) motion and that you're

21   retaining subject matter jurisdiction, which, of course,

22   Your Honor would have to do in order to do what is

23   contemplated in item two, which is eventually dismiss with

24   prejudice because, of course, you can't do that if you don't

11:59AM   25   have subject matter jurisdiction.

|        | 1  | So for consistency purposes, I would just urge |
|        | 2  | that -- |
|        | 3  | THE COURT:  I understand. |
|        | 4  | MR. BRIDGES:  -- you work on the disposition. |
| 11:59AM | 5 | But this actually implicates the bigger issue, |
|        | 6  | Your Honor, of what exactly are you being asked to do. |
|        | 7  | You're only being asked to dismiss this case for lack of |
|        | 8  | subject matter jurisdiction.  The parties, in the interest of |
|        | 9  | time -- |
| 11:59AM | 10 | THE COURT:  In the tentative I'm not doing that. |
|        | 11 | MR. BRIDGES:  In the tentative you're not, but what |
|        | 12 | I want to be clear about in the tentative is how Your Honor |
|        | 13 | gets there. |
|        | 14 | So what happens is that in the tentative Your Honor |
| 11:59AM | 15 | pursues the path the parties have laid out for you in |
|        | 16 | briefing.  The path that the parties laid out for you in |
|        | 17 | briefing is to do this by trying to interpret the VSA and try |
|        | 18 | to look at all of these complicated provisions. |
|        | 19 | But what happened, Your Honor -- if you have our |
| 11:59AM | 20 | slide deck -- |
|        | 21 | THE COURT:  Yes. |
|        | 22 | MR. BRIDGES:  -- I think it would be instructive to |
|        | 23 | turn to slide 13. |
|        | 24 | THE COURT:  Hold on one second. |
| 12:00PM | 25 | MR. BRIDGES:  So apologies, Your Honor.  Because of |

1    the fact we weren't sure about tentative, you will have two

2    slide decks for this motion because there were an awful lot

3    of slides.  They are -- the numbers --

4         THE COURT:  Hold on.

12:00PM  5         MR. BRIDGES:  -- page numbers are consecutive.

6         THE COURT:  Hold on.  I'm not sure I have your

7    slide deck here.  Entropic's --

8         MR. BRIDGES:  It is titled, Your Honor, Entropic's

9    argument in opposition to Comcast's motion to dismiss.  It

12:00PM  10   looks like this, Your Honor (indicating).

11        THE COURT:  Okay.  I have it.

12        MR. BRIDGES:  So if you will go forward to slide

13   13, I just wanted to highlight something Comcast pointed

14   out --

12:00PM  15        THE COURT:  I'm there.

16        MR. BRIDGES:  -- in reply.  So Comcast says, well,

17   you're only relying on declaratory judgment cases.  They're

18   inapplicable.  They're declaratory judgment.  And this got us

19   to asking the question, well, wait a minute.  What cases is

12:00PM  20   Comcast citing in its briefing for the proposition that a

21   covenant can possibly deprive the Court of subject matter

22   jurisdiction?

23        And the answer is all of those are DJ cases.  The

24   reason, Your Honor, is because it turns out that in a case

12:01PM  25   where the patent owner maintains a case for infringement, the

1    subject matter jurisdiction question is done.  There's

2    nothing more to do.

3         There is a case or controversy because there is a

4    case or controversy.  The Federal Circuit has actually

12:01PM    5    decided this issue in a line of cases which we discovered in

6    preparing for oral argument, and we sent these over to

7    Comcast last night when we recognized the importance of this.

8         I mean, obviously the Court wants to get it right

9    exactly, in particular for subject matter jurisdiction.  So

12:01PM    10    if Your Honor will take a look at slide 14, this is the

11    implication.

12         The analysis of case or controversy which the

13    parties have spent a lot of time fighting about actually

14    doesn't in this case need to turn on the VSA at all because

12:02PM    15    it is so simplified, it's automatic.

16         As a matter of law where there is a properly pled

17    complaint for patent infringement, meaning we asked for

18    relief under the Patent Act, whatever covenants or licenses

19    may exist, Your Honor, those are defenses.

12:02PM    20         Your Honor has jurisdiction over claims, not

21    issues.  The claim that Your Honor has jurisdiction over is a

22    patent infringement claim.  That's federal question.  No one

23    doubts it.  Your Honor's jurisdiction.  End of story.  And

24    that is what Air Products says.

12:02PM    25         THE COURT:  Let's take a hypothetical where

plaintiff purported patentee sues alleged infringer, like a one patent that has one claim in it, to make it simple.  When one assigns a patent, one has to assign the right to not merely the patent but the right to sue for infringement.

12:03PM    So let's say that the plaintiff was assigned the patent but didn't have an express assignment of the right to sue for infringement.  The defense that the defendant usually raises in those circumstances is a 12(b)(1) type standing defense.

12:03PM    MR. BRIDGES:  Uh-huh, but that's not what's being raised here, Your Honor.  That's not what King Pharmaceuticals and those cases are about.  The question isn't standing.  The question is whether there's a case or controversy that the Court can hear.

12:03PM    All of those cases like King Pharmaceuticals, the question there is the patent owner doesn't want a case.  The patent owner either never brought a patent infringement case or brought one and then changed its mind.

    Then in those cases what's happening is that the
12:04PM patent owner is saying we don't want any invalidity or non-infringement counterclaims to have to face.  So here's what we'll do.  We'll provide you a covenant or a license and represent to the Court that we are never going to sue you for patent infringement.

12:04PM    That has the effect of removing reasonable

1    apprehension of suit, so therefore the Court has no

2    jurisdiction.  The reason, Your Honor, is jurisdiction over

3    what?  In those cases the jurisdiction question is over the

4    counterclaims, the DJ-styled counterclaims -- or affirmative

12:04PM  5    DJ claims, as the case may be.

6         Those claims rest on the Declaratory Judgment Act

7    for jurisdiction.  It must meet those requirements, or

8    otherwise there is no case or controversy to be had.

9         THE COURT:  So what's the therefore, what?

12:05PM  10   Therefore, what in this case?

11        MR. BRIDGES:  Exactly.  So in this case the point

12   of this, Your Honor, is simply that instead of issuing a

13   final ruling that attempts to go through the VSA and

14   determine what it means, Your Honor can simply follow the

12:05PM  15   binding authority of Air Products, which is on slide 15, and

16   deny the motion out of hand.

17        In fact, if Your Honor will take a look at

18   slide 15, can you see that -- which is also in our binder at

19   tab one, the Air Products case -- this is a case where we

12:05PM  20   have an unquestioned really, unquestioned license in terms of

21   scope, and the question was just termination.

22        So was the termination of the license effective?

23   And in Air Products the Federal Circuit had quite a lot of

24   analysis here and looked at some old Supreme Court cases and

12:06PM  25   said what you can see on the slide, Your Honor, that the

1   resolution of state law questions that may even render a

2   federal question moot, even if that happens, it does not

3   deprive Your Honor of subject matter jurisdiction where we

4   have made out a properly pled claim of patent infringement.

12:06PM   5        THE COURT:  So does that mean we would kick the

6   issue of whether the covenant not to sue runs with the patent

7   to Entropic, do we kick that issue down the road?  I mean, it

8   doesn't go away for all time.

9        MR. BRIDGES:  It absolutely does not, and that's

12:06PM   10   precisely the point, Your Honor, that Your Honor shouldn't at

11   the Rule 12 stage be in the business of deciding the contract

12   issue for all time.

13        That's the thing that's a little bit concerning is

14   that if Your Honor had to do that, you would have to do that.

12:07PM   15   But if as a matter of judicial restraint you don't have to do

16   that, then you shouldn't do that.

17        The denial in this case can be as simple,

18   Your Honor, as the Pixton case, which is in tab four, where

19   the Federal Circuit in one paragraph decided jurisdiction

12:07PM   20   applies.

21        So if Your Honor goes to the very end of the Pixton

22   case -- it's very short -- the Federal Circuit in one

23   paragraph simply says that these facts are like Air Products.

24   There's a question about the applicability of a license or

12:07PM   25   covenant defense, and as such we have jurisdiction.

1          THE COURT:  Okay.  Couple things.  So it's kind of

2     kicking the can down the road, and then I adjudicate this

3     issue on a summary judgment motion?

4          MR. BRIDGES:  Yes.  I would expect that to be true,

12:07PM  5     Your Honor.  The reason I want to urge that upon the Court is

6     the other part of my argument, the part of my argument which

7     is that in fact there are an awful lot of issues here which I

8     believe does require some detailed analysis of the VSA and

9     what it means.

12:08PM  10          And there is where we would depart with Your

11     Honor's tentative.  We don't necessarily agree with all of

12     the conclusions that Your Honor draws, right, about various

13     aspects of the VSA.

14          For instance, we don't -- let me give you an

12:08PM  15     example.  Your Honor in the tentative concludes that the VSA

16     is on a patent by patent or, since trademarks, copyrights,

17     and trade secrets are also involved, I suppose on a

18     trademark-by-trademark basis, a copyright-by-copyright basis,

19     et cetera.

12:08PM  20          But there's a perfectly plausible explanation.  I

21     mean, if I allow someone into my home and say, you know, you

22     can come in and use my things but don't steal anything, and

23     they steal one item, it's quite plausible that I might revoke

24     the authorization for everything because they're acting

12:09PM  25     inconsistently with the bargain.  And that's our position on

the VSA.

         Our position on the VSA is that if Comcast is
willfully infringing even on one patent, that's acting
inconsistently with the business relationship the VSA
establishes.  Remember, Your Honor, the VSA is not a license.
It's not about this particular section.  The VSA is a vendor
support agreement.  It's about a bigger business relationship
between the parties.

         So I'm sure that Comcast will dispute hotly the
particular meanings.  They do, and Your Honor has seen this
in the briefing.  Our point is there's an awful lot of
material here where the Court would benefit tremendously from
having information from discovery to make this decision
ultimately.  For example --

         THE COURT:  But these are kind of new issues that
you didn't raise in the briefing.

         MR. BRIDGES:  No.  We've raised all these issues in
terms of interpretation and in terms of what the VSA should
mean.

         THE COURT:  But not these cases and not your --

         MR. BRIDGES:  No, not -- yes, Your Honor.  We did
not -- in this sense we did not do Your Honor a service
because what happened, I think honestly, we took the Comcast
cases on subject matter jurisdiction, and we were eager to
answer all of the challenges that they made to what this

1    covenant means and the representations, et cetera.  And we

2    were concerned that Your Honor might actually on a 12(b)(1)

3    motion think that you had to decide these issues and do it.

4            Once they identified for us the fact that, wait,

12:10PM  5    these are all DJ cases, then it became apparent that we

6    should make sure that we're not giving the Court the wrong

7    authority.  At that point we realized, oh, the 12(b)(1)

8    motion is easy.  It can be just dismissed almost immediately.

9            Then at that stage the only thing that's left for

12:11PM  10   Your Honor to decide is the 12(b)(6) motion, and the 12(b)(6)

11   motion is only limited to the particular willfulness

12   allegations.

13           THE COURT:  So let's go to that.  If I stick with

14   the tentative at least in that aspect, that willfulness has

12:11PM  15   not been pleaded sufficiently --

16           MR. BRIDGES:  Yes.

17           THE COURT:  -- Entropic can fix that?

18           MR. BRIDGES:  Yes.  Entropic can fix that.  And

19   that's not a problem, Your Honor.  We don't have a problem

12:11PM  20   with that part, saying, hey, you know, you can amend.  What I

21   would say, I would just point out one thing, because I don't

22   want to mislead Your Honor about how this may play out.

23           This case is unique in procedural posture from most

24   cases that have willful infringement as a part of the case.

12:11PM  25           THE COURT:  Because?

1      MR. BRIDGES:  Because willful infringement here is

2  an integrated part of Comcast's license or covenant defense.

3  So what we have, Your Honor, is we have an affirmative patent

4  infringement claim.

12:12PM  5      Assume for a moment that Entropic hadn't pled

6  willful infringement at all, didn't plead it.  What would

7  happen?  Comcast has a defense to that claim of patent

8  infringement.  We have a contract.  There is, then, of

9  course, a defense to the defense.  That would implicate the

12:12PM  10  willful infringement issue.  Right?

11      That's going to come in no matter what.  It comes

12  in because it is part and parcel of the contract defense.

13      THE COURT:  You're saying it doesn't need to be

14  pleaded.

12:12PM  15      MR. BRIDGES:  I'm saying that it doesn't need to be

16  pleaded.  In fact, it doesn't as a technical matter -- not

17  that we wouldn't.  We're happy to because we're happy to

18  engage with that issue.  I'm saying that as a technical

19  matter, it doesn't need to be pleaded for purposes of the

12:13PM  20  motions that are in front of Your Honor.

21      If there's a future motion down the road where

22  Your Honor has decided, for example, perhaps at the summary

23  judgment stage that without a showing of willful

24  infringement, there is no claim here, if that happened, I

12:13PM  25  would even at that stage say that we do not have to plead a

defense to a defense.  We have to plead an affirmative claim. We will have.  We will have pled the willful infringement issue, Your Honor.

I'm just warning you ahead of time that I don't want to mislead Your Honor so that in a future dispute you say, well, but at the first hearing you agree that you would amend these things and you would put in willfulness allegations and that everything turns on that.  I just want to observe the unique posture here because with willfulness is pulled in as part of the defense.

THE COURT:  Okay.  I appreciate that.  I think I understand your point, and I need to think through the implications here.

And another point that you made that I don't want to miss is I think you made the point that if you, even under my tentative, if you successfully plead willful infringement with respect to any patent or any claim of any patent, you can proceed with your infringement case with respect to all patents in suit.

MR. BRIDGES:  Yes.  And the reason for that, Your Honor, is that actually both parties seem to agree -- they may turn out to say they don't agree, but certainly from their opening brief both parties had agreed that that is exactly what would happen.

The reason that they argued that is they wanted

1    Your Honor to find certain things about the timing of when

2    you would measure willful infringement.  They wanted it to

3    only apply to before the VSA was signed, and Your Honor's

4    tentative does not find that.  That's why they -- I believe

12:15PM  5    that's why they took the position that what happens is

6    willful infringement negates the covenant.  It's gone --

7    which means it was never there.  It didn't forbid anything.

8         So all of the patent infringement claims which are

9    being held in abeyance in this covenant like a giant dam

12:15PM  10   holding back the wall, willful infringement breaks the dam.

11   At that point, in our view, because willfulness acts

12   inconsistently with the business relationship MaxLinear and

13   Comcast expected to establish, all bets are off with respect

14   then to claims of infringement.  The covenant is negated.

12:15PM  15        As a result of that, right, it would unwind all of

16   that material, which -- and I believe that I'm giving

17   Your Honor a lot to think about, so I don't want to hit too

18   many issues in a row, but I would say that's another point

19   where we feel like your tentative does not engage fully with

12:16PM  20   our arguments of contract interpretation because, for

21   example, that also has a serious effect with respect to

22   whether or not this could authorize acts of infringement.

23        It seemed in places that Your Honor might be

24   suggesting, yeah, this looks like it authorizes Comcast to

12:16PM  25   infringe, but that can't be, Your Honor, because you cannot

          1   de-authorize an act that you've authorized.  We made these

          2   points in the brief and you -- you cannot do that.

          3        So what you're not allowed to do is give someone a

          4   license for a past act and then later say I'm going to take

12:16PM   5   that back and reconvert that authorized act into an

          6   infringing act.

          7        You cannot, in other words, perform a Lazarus-type

          8   of miracle, Your Honor, on claims that you've surrendered.

          9   The Courts don't allow that.  That's a no-no because we don't

12:17PM  10   want the chaos that could ensue.

         11        Now, you may be able to terminate a license, change

         12   things going forward.  But going backward you can't.  So what

         13   that means is if you can retroactively take it back, which is

         14   absolutely what the covenant is meant to do and what the

12:17PM  15   parties seem to agree on, it can't be an authorization in the

         16   first place.

         17        THE COURT:  So worst case scenario for Entropic, if

         18   SDNY says -- now I've forgotten your licensor.

         19        MR. BRIDGES:  Oh, the party that originally owned

12:17PM  20   the patents, Your Honor?

         21        THE COURT:  Yes.

         22        MR. BRIDGES:  MaxLinear.

         23        THE COURT:  MaxLinear -- not licensor but your

         24   assignor, I guess.  SDNY says:  MaxLinear, you win.  The

12:17PM  25   patents revert to you.  I guess that would be the remedy,

1    right?  What's the remedy -- if MaxLinear wins in the

2    Southern District of New York, what happens?

3            MR. BRIDGES:  Oh.  Well, what's at issue in the

4    Southern District of New York actually, Your Honor, is

12:18PM   5    different than what's at issue here, because there what's at

6    issue is Comcast is saying that you have breached this

7    statement of work that's attached to the VSA.  So you've

8    breached the VSA because you're not providing us services.

9            THE COURT:  Okay.  Just stick with my question.

12:18PM   10    MaxLinear wins in SDNY.  What's the remedy?

11           MR. BRIDGES:  If MaxLinear wins, then in

12    MaxLinear's view I believe there is no remedy because they

13    simply are seeking to have nothing happen, that they can end

14    their work under the VSA and that's it.  According to, as far

12:18PM   15    as I understand -- I'm sure this is in contention -- they

16    believe that that work has ended, and so nothing happens.

17           MaxLinear is not asking, nor is Comcast, for the

18    New York Court to do anything to affect whether or not

19    Entropic can do something.  It can't.  Entropic is not a

12:19PM   20    party to that case.  This is a covenant.  It's not what's

21    being asked for.

22           So that is why Your Honor is faced with that issue

23    here.

24           THE COURT:  Okay.  I need to move on.

12:19PM   25           MR. BRIDGES:  Absolutely.  I understand,

```
 1      Your Honor.
 2              THE COURT:  Let me hear, please, from Comcast,
 3      Mr. Padmanabhan.
 4              MR. PADMANABHAN:  Perfect, Your Honor.  I think, as
 5      Mr. Bridges admitted, we received new cases yesterday evening
 6      at 4:30.  We promptly read those cases.
 7              THE COURT:  And what do you want to do about them?
 8              MR. PADMANABHAN:  They have nothing to do with this
 9      case, Your Honor.  Okay?  That's what I'm going to start
10      with.
11              THE COURT:  Okay.
12              MR. PADMANABHAN:  What those cases say -- I'm going
13      to start with Air Products.  You can look at Pixton.  What
14      they say is that if there are state law questions that
15      doesn't rob a Federal Court of subject matter jurisdiction if
16      there are also patent issues.  That's what those cases stand
17      for.
18              This is a completely different issue.  Remember, we
19      need to start with the framework that this is a covenant not
20      to sue.  They can't pass go, okay, because there's -- there's
21      a restriction at the outset.  They cannot sue Comcast.
22              One of the things that they said, that Mr. Bridges
23      said, is that, well, we're not required to plead willfulness
24      or show willfulness.  That would make the entire covenant
25      empty.
```

12:19PM (line 5)
12:19PM (line 10)
12:20PM (line 15)
12:20PM (line 20)
12:20PM (line 25)

1       The only exemption in that covenant not to sue is

2  if a -- with respect to a particular patent if that

3  particular patent is willfully infringed, then they can sue

4  on that.  But this idea that they could just say, well, you

12:21PM  5  infringed patents, that would make the entire covenant empty.

6  That's contrary to New York law which says you can't have a

7  contract provision be illusory.

8       So they haven't addressed that.  Actually they

9  don't address that at all in their opposition brief, the fact

12:21PM  10  that their reading of the VSA would render the entire

11  covenant illusory.

12       So I'm not sure what their intention is or what

13  their thinking is in saying the Court would retain subject

14  matter jurisdiction even if they can't plausibly plead

12:21PM  15  willfulness.

16       I think what Your Honor certainly found, correctly,

17  is that given two chances, an original complaint and a first

18  amended complaint, and 60 some odd allegations on

19  willfulness, they were not able to plausibly allege

12:21PM  20  willfulness.

21       So the question, what more is there to do, for them

22  to do?  They've had two bites.  They've had these patents for

23  years.

24       THE COURT:  You're urging me to, if I stick with

12:22PM  25  the tentative, not grant leave to amend because they've

1    already amended?

2           MR. PADMANABHAN:  Well, Your Honor, they have

3    already amended.  And I don't think --

4           THE COURT:  Is that what you're doing?

12:22PM  5           MR. BRIDGES:  Your Honor, I would respectfully

6    request that, yeah.

7           THE COURT:  Okay.  I understand that point.

8           MR. PADMANABHAN:  Yeah.  So maybe we can take a

9    step back, because Mr. Brings spoke a lot about the

12:22PM  10   relationship between Comcast and MaxLinear and tried to

11   characterize this as some sort of, you know, noncentral part

12   of this agreement.

13          So let's just take a second and talk about who

14   MaxLinear is and who Comcast is, because I think this is

12:22PM  15   worthwhile.  This is slide 2, Your Honor.  So MaxLinear is --

16          THE COURT:  Hold on one second.

17          MR. PADMANABHAN:  Yes.  Absolutely.

18          THE COURT:  Do I have that up here someplace?  I

19   have about 400 different documents up here.

12:23PM  20          Okay.  Sorry.  I have it in front of me.  What

21   page?

22          MR. PADMANABHAN:  Slide 2, Your Honor.

23          THE COURT:  I'm there.

24          MR. PADMANABHAN:  Okay.  So MaxLinear is one of two

12:23PM  25   major providers of semiconductors in the cable industry.

1    Okay.  The other one is Broadcom.  And just by way of

2    reference, Your Honor, what's at issue in this lawsuit is

3    they're suing all of these companies over their use of

4    Broadcom chips.  Okay.  Let's just not have any

12:23PM  5    misconceptions about that.

6         So MaxLinear's semiconductors power devices like

7    these cable gateways and cable modems that go into millions

8    of devices that Comcast deploys in their network and that

9    Comcast relies upon to provide internet service, to provide

12:24PM  10    television service.  Okay.

11         And it's only natural -- go to the next slide --

12    that they would come to an agreement where Comcast has

13    assurances that their vendor is going to stand by them, that

14    the vendor is going to stand by their product and do what's

12:24PM  15    necessary to make sure that those products will deliver those

16    high-quality services.

17         Conversely, MaxLinear knows that their industry,

18    their reputation in the industry is going to be upheld, that

19    they're going to stand by their customer.  That's the nature

12:24PM  20    of the vendor support agreement.

21         Part of that relationship is this covenant not to

22    sue, right?  It's natural a customer wouldn't expect their

23    vendor to sue them, right?

24         If you look at the VSA -- let's go to the next

12:24PM  25    slide -- what it says pretty clearly, Your Honor, is that

| | |
|---|---|
| 1 | during the term MaxLinear will not sue Comcast with respect |
| 2 | to patent infringement and keeps -- it has this exemption for |
| 3 | willfulness. |
| 4 | We talked about the timing, and Mr. Bridges said, |
| 12:25PM 5 | well, we think that, you know, if you -- he used an analogy. |
| 6 | It doesn't have any root in any case law, but he used the |
| 7 | analogy:  Well, if I let someone come into my house and they |
| 8 | steal one thing, well, then, I wouldn't let them come in at |
| 9 | all. |
| 12:25PM 10 | As Your Honor recognizes in the tentative, willful |
| 11 | infringement requires at least two things:  knowledge of the |
| 12 | patent and knowledge that you're infringing.  It's a |
| 13 | patent-by-patent analysis.  Okay.  That -- it only makes |
| 14 | sense that this willfulness exemption would apply on a |
| 12:25PM 15 | patent-by-patent basis. |
| 16 | There is an additional piece of this, okay, which |
| 17 | is that -- if we can go to the slide with -- yes, exactly. |
| 18 | Go up a little bit to the second part of the covenant. |
| 19 | There's an additional piece of this.  And, |
| 12:26PM 20 | Your Honor, I think in your deck this is going to be -- I |
| 21 | apologize.  We rearranged these in anticipation.  So it's |
| 22 | going to be slide 31 of your deck, Your Honor. |
| 23 | THE COURT:  Okay.  I'm there. |
| 24 | MR. PADMANABHAN:  Yeah.  So the second part of the |
| 12:26PM 25 | covenant not to sue does allow MaxLinear to pursue other |

vendors.  So they have relief.  What they don't have and why

this is a subject matter question, they don't have relief

against Comcast.  They can't sue Comcast.  They could go sue

Broadcom.  They've chosen not to do that, and there's nothing

12:26PM  they can do to get around that.

So if Entropic were to go back and try to formulate

a complaint just alleging infringement without willfulness,

that would make the covenant not to sue empty.  That's

contrary to New York law.  They've tried to plead

12:27PM  willfulness.  They've been unable to do that in two attempts.

Okay.

So it's not clear what they would replead at this

point.  They've had the patents for years.  And by the way,

they have access to MaxLinear's information because

12:27PM  MaxLinear, as Your Honor has heard at length in previous

lawsuits -- I'm sorry, previous hearings with respect to the

Rule 71 issue, MaxLinear is a financial beneficiary in these

cases.

MaxLinear is working with Entropic.  Entropic has

12:27PM  access to MaxLinear's information.  If there was an

allegation of infringement against Comcast, MaxLinear would

know; Entropic would know.  They could have pled it in any of

those two instances, the original complaint and the first

amended complaint.  They haven't done it.

12:27PM  At this point they haven't been able to show the

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 12:28PM | 5 |

exemption is invoked.  There's no basis to allege

infringement.  They don't have subject matter jurisdiction to

allege infringement without a willfulness allegation.  We're

not sure that there's much left to decide, Your Honor.

THE COURT:  I'm -- even if I stick with the

tentative, I'm not likely to say no leave to amend.  I think

the law on Rule 15 is pretty clear that Courts should bend

over backwards when problems with pleadings are pointed out,

bend over backwards to allow a party to replead and try to

fix the problem.

So I hear you, but that is -- but you may not want

to push that point much more.

MR. PADMANABHAN:  Fully understand, Your Honor.

With respect to the tentative, obviously the result

that there is no plausible allegation of willfulness, that

makes a lot of sense.  The fact that, as Your Honor --

Your Honor, I think, essentially changed the conclusion in

that allowing them to amend denied without prejudice

Comcast's 12(b)(1) motion.

THE COURT:  I can tell you that the disposition is

the last thing that I did.  And even if I stick with the

concepts in the tentative, I'm going to redo that.

MR. PADMANABHAN:  Understood, Your Honor.

THE COURT:  And by the way, I know the caption is

wrong, too, because it's -- the 1050 case is also against

```
 1    Comcast entities.

 2            In any event --

 3            MR. PADMANABHAN:  Understood, Your Honor.  I guess

 4    my point is that -- we understand that.  It makes sense to

 5    us.

 6            With respect to the rest of the tentative, I think

 7    there is this idea that the timing could be at any time does

 8    not make sense.

 9            So, for example, could MaxLinear, after entering

10    the VSA, send Comcast a letter saying we think you infringed

11    these patents; the covenant is no longer applicable.  That

12    would render it illusory.  That's contrary to New York law,

13    which we've cited in our briefing.

14            We've got it up here, Your Honor.  And my eyes are

15    going to fail me.  I can't read off the prompter, but we

16    cited a number of cases that would say that you couldn't --

17            THE COURT:  What page are you on?

18            MR. PADMANABHAN:  Let me find it, Your Honor.  Give

19    me one moment.  So it's page 18, Your Honor, of the slide

20    deck.  So this idea -- yes, that one.  Correct.

21            So this idea that Entropic could send us a letter

22    or MaxLinear could send Comcast a letter and say, well,

23    you're infringing this patent; the covenant no longer

24    applies, would hold the covenant as being empty, being an

25    illusory promise.
```

1       That would mean that they never intended to honor

2  the covenant in the first place.  That's contrary to New York

3  law.  There's no response citing New York law from Entropic

4  on this point.

12:31PM  5       Secondly, a number of their allegations -- and I

6  think Your Honor recognizes this in the tentative -- rely on

7  information that was in their possession at the time they

8  entered the VSA.  For example, Comcast's involvement in the

9  MoCA alliance or investment in the legacy Entropic entity in

12:31PM 10  2003 and 2006, those are things that they knew when they

11  entered the VSA.

12       If they expected those things to invoke the

13  exemption, that means that they never intended to honor the

14  covenant to begin with.  That's contrary to New York law.

12:31PM 15       The one thing that's really missing, Your Honor,

16  from Entropic's opposition -- and maybe that's why

17  Mr. Bridges wants to sidestep it altogether and, just trying

18  to, you know, give us a lesson on civil procedure as opposed

19  to dealing with the VSA, wants to kick the can on that is

12:32PM 20  because they haven't cited New York law.

21       They haven't addressed the law which would hold

22  that the covenant must have force; it must have been entered

23  with intention.  And the only way that they can make it apply

24  -- I'm sorry, that they can get past it is if they can show

12:32PM 25  that the exemption is applicable with respect to a particular

            1      patent.

            2              They haven't done that.

            3              THE COURT:  It's got to be done on a

            4      patent-by-patent basis.

12:32PM     5              MR. PADMANABHAN:  Absolutely, Your Honor.

            6      Otherwise it would make no sense.  They could submarine an

            7      entity.  There could be some subsidiary of MaxLinear that

            8      we've never heard of that sends us some letter, sends Comcast

            9      some letter, and they could, you know, allege infringement on

12:32PM    10      that.  And we wouldn't know that this would be even impacting

           11      the VSA.

           12              What they're saying is that essentially they could

           13      hide the information.  They could hide the fact that there's

           14      an allegation of infringement that impacts the force of this

12:33PM    15      covenant.  That can't be right.

           16              It's -- the two parties have got to be on all

           17      fours.  They've got to say, well, look, you're infringing

           18      this patent, so the VSA is not applicable.  As Your Honor's

           19      tentative recognizes, that information should be in

12:33PM    20      MaxLinear's possession.  It should be pretty straightforward.

           21      And as such, it should be in Entropic's possession.

           22              THE COURT:  Let me move to a slightly different

           23      question.  The New York case, does the outcome of the

           24      New York case affect this case in any way?

12:33PM    25              MR. PADMANABHAN:  So, Your Honor, I don't want to

speak for a district court judge in New York, just as I

wouldn't presume to speak for any judge.  What I'll say is

that it appears that the parties in New York are discussing

the issue of whether the vendor support agreement continues

to be enforced, whether or not Entropic -- sorry.  MaxLinear

provided a termination letter that we received on May 23rd --

whether that termination is actually effective.

Now, this Court obviously does not need to decide

those issues because there's no subject matter jurisdiction

at the outset, and they would need subject matter

jurisdiction at the outset in order for this case to

continue.

That being said, for context the only case that

Entropic cites regarding the issue of termination would say

that the termination could not be effective for two years and

three months.

So in New York -- and that is because if you send a

termination preemptively or early, under New York law what

occurs is that the termination will be effective as of the

earliest date allowed under the contract.  And under the

contract there's a requirement essentially that there be a

year notice before the statement of work is canceled or

terminated and then a further one year and three months of

notice from the termination of the last statement of work

before the VSA can be terminated.

1          So that totals two years and three months.

2          THE COURT:  So let's say MaxLinear prevails in

3     New York and gets a judgment in its favor.  Are you saying

4     there's no effect on this case because that judgment would

12:35PM  5     essentially provide that the VSA is not terminated until two

6     years and three months from the date of the initiation of the

7     SDNY lawsuit?

8          MR. PADMANABHAN:  So let me break it down,

9     Your Honor.  I apologize.  We've been trying to go very

12:36PM  10    quickly.  So --

11         THE COURT:  My question is pretty simple.

12         MR. PADMANABHAN:  Right.

13         THE COURT:  Say MaxLinear wins in New York.

14         MR. PADMANABHAN:  Right.

12:36PM  15    THE COURT:  What does that do to this case, if

16    anything?

17         MR. PADMANABHAN:  I'm getting there, Your Honor.

18    My apologies.

19         So it appears that MaxLinear's view of what

12:36PM  20    constitutes winning in New York would be termination sometime

21    before that two years and three months.

22         When that is, is subject to the Court in the

23    Southern District of New York.  What we would submit, what

24    Comcast would submit is that in the meantime there's no basis

12:36PM  25    for Entropic to hold Comcast hostage in this litigation where

1    what Comcast has as of today is a covenant not to sue that's

2    in force, that's in effect.  That keeps them from passing go.

3    It keeps them from starting the case because we can't be

4    sued.

12:36PM    5         THE COURT:  I understand you're saying that, but

6    put that aside for a moment.  Again, MaxLinear wins in

7    New York on MaxLinear's theories, which I guess necessarily

8    does not include your two-year, three-month issue.  MaxLinear

9    wins --

12:37PM    10        MR. PADMANABHAN:  Right.

11        THE COURT:  -- on all its theories.

12        MR. PADMANABHAN:  Right.  Your Honor, at that point

13   we would say that Entropic would come back.  At that point if

14   they were to win and the vendor support agreement is

12:37PM    15   terminated, then the covenant not to sue is not in place and

16   then Entropic has a basis to file a lawsuit against Comcast.

17   But that's not today.  That's what I'm trying to say.  I hope

18   that's clear.

19        THE COURT:  And if that happens, what is affected

12:37PM    20   is the period of infringement, the period that damages would

21   accrue, again assuming Entropic prevails on its patent

22   infringement?

23        MR. PADMANABHAN:  I want to be careful here, Your

24   Honor.  I want to answer your question, but I also want to

12:38PM    25   make I'm not -- that it's not taken out of context later.  So

we would say that Entropic does not -- does not have subject

matter jurisdiction until that vendor support agreement is

terminated.  So that's step one.

But, yes, that would also impact the damages

period.  But they don't get to even file a case against us

until that termination is effected.

THE COURT:  I understand your position.  That's

helpful.

Okay.  I kind of took us aside.  What else?  I

really need to wrap this up.

MR. PADMANABHAN:  Absolutely, Your Honor.  I

actually think that -- you know, before we close out, let's

just talk about the issue of -- if we can go to the Dobrova

case.  So this idea -- and I want to just make sure our

record is clear on this because the briefing is very clear.

Mr. Bridges got up and he said that -- and this

actually, Your Honor, is not in the deck.  We added it in

response to your tentative this morning, but the cases are

cited in our briefing.

So Mr. Bridges got up and he said, without citing

any case law, he said, well, you know, we think you could --

the timing of when a willfulness allegation doesn't matter.

But that's not what the present perfect tense means.  We

found New York case law dead on point.  They have no

response.  They haven't responded with any case law

```
         1    interpreting contract language under New York law.

         2          So the case law says that this phrase means it's

         3    got to be an allegation of willful infringement before the

         4    VSA was entered.  That makes sense, because the whole point

12:39PM  5    of the vendor support agreement is a vendor and its customer

         6    coming together and saying we're going to work together and

         7    we'd like to keep the peace.

         8          So it's consistent with both the law and it's

         9    consistent with the pragmatic consideration that Mr. Bridges

12:40PM 10    raised, although not discussing the specificity of the two

        11    parties.

        12          So with that, Your Honor, I'll take my seat.

        13          THE COURT:  Okay.  Thank you very much.  You've

        14    given me a lot to think about.

12:40PM 15          Do you want to -- does Comcast want to file a

        16    supplemental brief in response to all these new cases that

        17    Entropic has now called to my attention?  I mean, I need to

        18    get this right.  If there's -- if there are -- if there is

        19    case law that points us, points me in the right direction, I

12:41PM 20    need to consider them.

        21          MR. PADMANABHAN:  Yeah, exactly.

        22          THE COURT:  Do you want to file a brief in

        23    response?

        24          MR. PADMANABHAN:  You know, Your Honor, let me make

12:41PM 25    a comment which I probably should have done at the lectern.
```

I'll return to the lectern for a moment, because one thing

that Mr. Bridges said, he said, well, they talk about DJ

cases, and then we realized the DJ cases are wrong as well.

No.  What we said about the declaratory judgment

cases was that their characterization of those cases was

wrong.  They read the declaratory judgment cases as saying

that unless a covenant has no exceptions, it does not take

away subject matter jurisdiction.  That is not what those

cases say.

What those cases say in each of those instances, as

Mr. Bridges noted, a patentholder who's a declaratory

judgment defendant gave a covenant not to sue in order to try

and get out of the litigation.  Then that covenant not to sue

had a gaping hole in it.  Okay.  It did not apply.

In this case there's no reasonable argument that

this covenant not to sue does not apply to each of the 20

patents in this case.  The only way that they would not apply

is if Entropic could plausibly allege willfulness with

respect to one of those patents, which they cannot.

THE COURT:  You're not answering my question.

MR. PADMANABHAN:  Yeah.

THE COURT:  Do you want to file a supplemental

brief?

MR. PADMANABHAN:  I apologize, Your Honor.  We

don't know what they actually have said about those cases.

| | |
|---|---|
| 1 | We heard Mr. Bridges, but they haven't actually sought leave |
| 2 | or explained why those cases -- |
| 3 | THE COURT:  Is that a no? |
| 4 | MR. PADMANABHAN:  I just don't know what I would be |
| 5 | filing a supplemental brief on, Your Honor. |
| 6 | THE COURT:  Let me ask Entropic. |
| 7 | Do you want to file a supplemental brief now that |
| 8 | you've found these cases? |
| 9 | MR. BRIDGES:  I mean, if it's helpful to |
| 10 | Your Honor, particularly with subject matter jurisdiction, |
| 11 | the Court has to get it right.  I would prefer Your Honor to |
| 12 | be in possession of more information than less, so we're |
| 13 | happy to do that. |
| 14 | If Comcast is absolutely against it, it seems to me |
| 15 | that perhaps the most rational thing to do, Your Honor, would |
| 16 | be to say to the parties:  You can have a couple of pages.  I |
| 17 | mean, this should be fairly short and to the point, and then |
| 18 | maybe they respond to what we said. |
| 19 | THE COURT:  Yes.  So this is an important issue. |
| 20 | It's a constitutional issue of standing.  It's kind of how I |
| 21 | view it.  Well, it's how Comcast has teed it up.  So I need |
| 22 | to get it right, so why don't -- why doesn't Entropic file a |
| 23 | five-page -- is five pages sufficient? |
| 24 | MR. BRIDGES:  I think that's absolutely adequate, |
| 25 | Your Honor. |

Time stamps in left margin: 12:42PM (line 5), 12:42PM (line 10), 12:43PM (line 15), 12:43PM (line 20), 12:43PM (line 25)

|  | 1 | THE COURT:  Five-page supplemental brief by -- how |
|---|---|---|
|  | 2 | quickly can you get it?  A week from Friday? |
|  | 3 | MR. BRIDGES:  That's no problem at all, Your Honor. |
|  | 4 | THE COURT:  So deadline of August 18th for |
| 12:44PM | 5 | Entropic's supplemental brief hopefully explaining these |
|  | 6 | eight cases and why you think they're relevant. |
|  | 7 | And then is two weeks sufficient, Mr. Padmanabhan? |
|  | 8 | MR. PADMANABHAN:  Absolutely, Your Honor. |
|  | 9 | THE COURT:  So that's September 1st, deadline for |
| 12:44PM | 10 | response of supplemental brief.  I'll call it that.  And then |
|  | 11 | that's it. |
|  | 12 | MR. PADMANABHAN:  That would be great, Your Honor. |
|  | 13 | THE COURT:  So I'll refrain from deciding this |
|  | 14 | motion until I get those supplemental briefs.  Okay. |
| 12:44PM | 15 | MR. PADMANABHAN:  Thank you, Your Honor. |
|  | 16 | THE COURT:  Thank you.  Now I'm not going to take |
|  | 17 | any more argument this. |
|  | 18 | Let's move to the scheduling conferences.  I need |
|  | 19 | to set a claim construction schedule.  I'm thinking of it as |
| 12:44PM | 20 | the MoCA cases on the one hand and the cable cases on the |
|  | 21 | other hand.  I think you have provided me with Rule 26(f) |
|  | 22 | reports along those lines. |
|  | 23 | Let me talk about the MoCA cases first.  I'm |
|  | 24 | looking at ECF 106 filed in the 1048 case.  I'm not sure why |
| 12:45PM | 25 | I'm looking at this particular one. |

1    MR. BRIDGES:  Yes.  I'm sorry to -- I just want to

2    make sure that the date -- because your tentative has a date

3    in it of August 25th --

4    THE COURT:  To amend.

12:45PM    5    MR. BRIDGES:  To amend.  That's not in effect until

6    Your Honor gets these new cases and issues an order; is that

7    correct?

8    THE COURT:  Of course.

9    MR. BRIDGES:  Okay.  I just wanted to confirm,

12:45PM   10    Your Honor.  Thank you.

11    THE COURT:  If -- let's say for the sake of

12    argument I'm inclined to stick with the concept of the

13    tentative.  As you've heard, I'm almost certainly going to

14    give Entropic leave to amend, to fix what I have perceived in

12:45PM   15    the tentative as a pleading problem with respect to

16    willfulness.

17    I'll give you a couple weeks to fix it, and I'll

18    give Comcast probably three weeks to file its response,

19    either an answer or whatever.

12:46PM   20    Okay.  So claim construction.  You've provided me

21    with a schedule in both cases.  In both cases you've given me

22    the same schedule.  I mean, Entropic wants a relatively

23    quicker schedule and defendants want a more relaxed schedule.

24    I think something in the middle makes sense.  You

12:46PM   25    know what?  This is what I'm going to do.  Something in the

1    middle makes sense.  I'm looking at the last date.  Claim

2    construction hearing, plaintiff wants February 27th of next

3    year and defendants want October 22nd of next year.

4            I'm going to turn this back to you.  Meet and

12:46PM  5    confer and pick dates that are in between those two that you

6    can agree to for all of these events.  I do not want the MoCA

7    and cable cases to proceed on exactly the same dates.  Have

8    at least a six-week, if not two-month, delta between them.  I

9    don't really care.

12:47PM  10           I don't think I care which one goes first, MoCA or

11   cable, but meet and confer and give me agreed-upon dates for

12   all these activities.  You have enough guidance?

13           MS. GOODRICH:  Yes, Your Honor.  I think the one

14   point that we would like to make on behalf of Entropic is

12:47PM  15   that the MoCA cases be the trailing cases since there is that

16   new DirecTV case that we'd like to consolidate in.  I know

17   Your Honor has moved that status conference, which we will be

18   addressing.

19           THE COURT:  When is that status conference?

12:47PM  20           MS. GOODRICH:  I think it's September 8th,

21   Your Honor.

22           THE COURT:  Okay.  Who is the defendant again?

23           MS. GOODRICH:  DirecTV, among others.  That's the

24   lead defendant, and they're still retaining outside counsel.

12:48PM  25           THE COURT:  Just go to the lectern.

|   |   |
|---|---|
| 1 | That was going to be my next question.  To |
| 2 | Entropic's knowledge, has DirecTV retained counsel for that |
| 3 | case?  Yes or no? |
| 4 | MS. GOODRICH:  No. |
| 12:48PM 5 | THE COURT:  Okay.  Do defendants in the MoCA cases |
| 6 | have any objection to the cable cases going first for claim |
| 7 | construction?  That's a yes-or-no question. |
| 8 | MR. PADMANABHAN:  Your Honor, so I'll speak on |
| 9 | behalf of Comcast. |
| 12:48PM 10 | THE COURT:  I understand. |
| 11 | MR. PADMANABHAN:  We actually would prefer for the |
| 12 | MoCA cases to go first.  I know that's the exact opposite of |
| 13 | what Your Honor was hoping to hear.  Let me -- let me explain |
| 14 | why, which is, the cable cases -- look, a lot of this is |
| 12:48PM 15 | going to be discovery spats and such.  Cable cases have a |
| 16 | fewer number of folks involved, Cox and Comcast. |
| 17 | We just don't want the tail wagging the dog a |
| 18 | little bit if MoCA is sort of the major show.  So our thought |
| 19 | is that the cable cases would go second. |
| 12:49PM 20 | THE COURT:  Okay. |
| 21 | MR. SHARTZER:  Your Honor, may I address on behalf |
| 22 | of DISH? |
| 23 | THE COURT:  Yes, please. |
| 24 | MR. SHARTZER:  DISH would prefer that the MoCA |
| 12:49PM 25 | cases go after the cable cases.  In particular, we would like |

1   to see DirecTV have enough time to catch up so that all the

2   cases are consolidated together.

3          MS. ISAACSON:  Your Honor, if I may on behalf of

4   Cox, we agree with the position that was just set forth by

12:49PM  5   DISH, that the MoCA cases go second.

6          THE COURT:  Okay.

7          MR. PADMANABHAN:  Your Honor, I think I've been

8   overruled by my brethren.

9          THE COURT:  Well, the issue that Ms. Goodrich

12:49PM  10  raised, I agree with.  If at all possible, I'd like these

11  cases to travel together.  So please meet and confer, pick a

12  claim construction schedule with all of these events

13  somewhere in between -- that yields a claim construction

14  hearing in between February 27th of next year and

12:50PM  15  October 22nd of next year.

16         Cable cases will go first.  MoCA cases will trail

17  by, like I said, six weeks, two-months "ish."  Hopefully --

18  what is DirecTV's deadline to respond to the complaint?

19         MS. GOODRICH:  August 28th.

12:50PM  20  THE COURT:  And I'm talking about the newest case.

21         MS. GOODRICH:  Yes, Your Honor.

22         THE COURT:  August 28th?

23         MS. GOODRICH:  Yes, Your Honor.

24         THE COURT:  And September what is the scheduling

12:50PM  25  conference?

1        MS. GOODRICH:  I believe it's September 8th,

2   Your Honor.

3        THE COURT:  All right.  Well, hopefully DirecTV

4   will retain counsel soon so DirecTV can meaningfully

12:51PM   5   participate in the discussion about case schedules.

6        How soon can you file a stipulation in the cable

7   cases for a claim construction schedule?

8        Everybody is here; that is, everybody is before the

9   Court.

12:51PM   10        MS. GOODRICH:  I would say within a week, if not

11   less.

12        MR. PADMANABHAN:  That should be fine.  I mean,

13   we're just deciding a schedule, so it should be fine.

14        THE COURT:  Deadline of August 18th for the parties

12:51PM   15   in the cable cases to file a stipulation for a claim

16   construction schedule.  Like I said, the events that you've

17   identified are fine.  The relative time between events in

18   general is fine.  Just pick a final date that's between that

19   February 27th and October 22nd date.

12:52PM   20        MS. ISAACSON:  Yes, Your Honor.  Thank you.

21        THE COURT:  Okay.  And then I will see -- everybody

22   involved in the MoCA cases, are you all coming to the

23   September 8th scheduling conference, or is that just Entropic

24   and DirecTV?  I have forgotten where we are.

12:52PM   25        MS. GOODRICH:  It's just Entropic and DirecTV,

UNITED STATES DISTRICT COURT

1    Your Honor.

2              THE COURT:  Okay.  Well, my hope is when we have

3    that scheduling conference, those two sets of parties can

4    represent on behalf of everybody in the MoCA cases that

12:52PM    5    you've reached a consensus on a case schedule that will trail

6    the cable cases case schedule.

7              MS. GOODRICH:  Understood, Your Honor.

8              THE COURT:  All right.  I really need to get going.

9    What else do we need to accomplish here today?

12:53PM    10             MR. PADMANABHAN:  We had one point of

11   clarification, Your Honor.  So based on your tentative and

12   the posture of the Comcast case, we understood that there is

13   no discovery in that case pending resolution of the 12(b)(1)

14   issue.

12:53PM    15             THE COURT:  There's no jurisdictional discovery.

16             MR. PADMANABHAN:  Okay.  Understood, Your Honor.

17             THE COURT:  Well, that's what the tentative said.

18             MS. GOODRICH:  If I may, Your Honor, discovery has

19   been open for weeks now.  We did serve discovery on Comcast

12:53PM    20   that is directed to some of the issues raised in the motion

21   to dismiss.

22             Those responses are also due on August 28th.  We're

23   hoping that we get responses and documents which might inform

24   the supplemental briefing.  If not, amendment if that's

12:53PM    25   necessary.

1      MR. PADMANABHAN:  Your Honor, as you can guess, our

2  position is that they're fishing for some basis to allege

3  willfulness, which they should have put in the original

4  complaint.

12:54PM  5      THE COURT:  Okay.  Well, I'm not going to rule on

6  that.  The status quo is what it is in terms of discovery.

7  I'm not ruling -- I don't think I need to say any more than

8  that.  If you refuse to respond and there's a discovery

9  dispute, I'm sure that that will bubble up through the

12:54PM  10  Special Master.

11      Is the Special Master here?  Yes.  Mr. Kaiser, good

12  to see you.  So you got say two words.  That's good.  On the

13  record.  It's good to see you here, though.  I appreciate it.

14      So that's an issue for you to deal with if that

12:54PM  15  happens.  Mr. Kaiser, do you want any more guidance on that

16  right now?

17      MR. KAISER:  No, Your Honor.

18      THE COURT:  Okay.  That's three more words.

19      And again I'm teasing Mr. Kaiser.  I'm very happy

12:55PM  20  that he's involved in this case, and I appreciate his

21  service.

22      Okay.  What else do we have to deal with today?

23      MS. GOODRICH:  Your Honor, just to circle back to

24  something we deal with at the end.  You asked if the MoCA

12:55PM  25  standard was in the record.  It is attached to the claim

1    charts to the MoCA complaints at Exhibit 4, P and R.

2         THE COURT:  Exhibit 4 P --

3         MS. GOODRICH:  Excuse me.  Exhibits B, P as in

4    Paul, and R to the complaints.

12:55PM   5         THE COURT:  Exhibits Bravo, Papa, and Romeo?

6         MS. GOODRICH:  Yes.

7         THE COURT:  To the complaints in the MoCA cases?

8         MS. GOODRICH:  Correct, with claim charts with

9    definitions of the network coordinator citing the MoCA

12:55PM  10    standard.

11         THE COURT:  Got it.  Okay.  Good.  Thank you.  That

12    answers that question.

13         What else do we need to accomplish today?

14         MS. GOODRICH:  Nothing from plaintiff, Your Honor.

12:56PM  15         MS. ISAACSON:  Nothing from Cox, Your Honor.

16         MR. PADMANABHAN:  Nothing from Comcast, Your Honor.

17         MR. SHARTZER:  Nothing from DISH, Your Honor.

18         THE COURT:  Okay.

19         Counsel, thank you all very much.  I enjoy this

12:56PM  20    case.  I will take, of course, all the motions that are

21    pending under submission.  I've made -- my minute order

22    memorializing this hearing will reflect the briefing schedule

23    that we talked about and reflect my request that you file

24    those stipulations for the claim construction schedules.

12:56PM  25         I appreciate all of the briefing.  Oh, I think --

UNITED STATES DISTRICT COURT

1    unless I get pushback, I think that each of you should lodge

2    your slides that you've provided to me with the Court.  Any

3    objection to that?

4         MS. GOODRICH:  No, Your Honor.

12:57PM   5         MR. PADMANABHAN:  Your Honor, we'll lodge our

6    slides.  There may be a couple of additions, but they're what

7    we presented, just because between your tentative and this

8    morning and the cases we got last night.  So we added some

9    slides beyond what we handed to you.

12:57PM  10         THE COURT:  Were these slides -- I know there was

11   one slide that was displayed to me that was added.

12         MR. PADMANABHAN:  I think there's one or two slides

13   that were displayed to you.

14         THE COURT:  Okay.  If it was displayed to me, you

12:57PM  15   may lodge that.  If it wasn't displayed to me, don't lodge

16   that, but you can -- that pertains to the supplemental

17   briefing, right?  So you can include it with your

18   supplemental briefing.

19         MR. PADMANABHAN:  Thank you, Your Honor.

12:57PM  20         THE COURT:  Okay.  Any other pushback on lodging

21   slides?

22         MS. ISAACSON:  Not from Cox, Your Honor.

23         MR. SHARTZER:  Not from DISH, Your Honor.

24         THE COURT:  Okay.

12:57PM  25         Mr. Kaiser, anything that you wanted to -- anything

|       |                                                             |
|-------|-------------------------------------------------------------|
| 1     | we need to cover?                                           |
| 2     | MR. KAISER:  No.  Thank you.  I do note --                  |
| 3     | THE COURT:  Why don't you step up to the lectern.           |
| 4     | MR. KAISER:  Your Honor, I don't think this needs           |
| 5     | to be resolved today, but I did note in the 26(f) reports   |
| 6     | there were some disagreements about the number of hours for |
| 7     | depositions, interrogatories, and so forth.  So I will await|
| 8     | guidance from the Court, assuming that no issue comes up in  |
| 9     | the meantime.                                               |
| 10    | THE COURT:  I think disputes -- I'm not going to            |
| 11    | rule on any of that.  I think disputes over those issues can |
| 12    | go to you first.                                            |
| 13    | MR. KAISER:  Understood.                                    |
| 14    | THE COURT:  And then if the parties don't like your        |
| 15    | decision, there's a mechanism for getting my attention on   |
| 16    | that.  Thank you for raising that.                          |
| 17    | There was one other question I had.  The number of         |
| 18    | limitations that will be in dispute on the cable cases and on|
| 19    | the MoCA cases, we didn't talk about that.                  |
| 20    | I didn't see it in your Rule 26(f) reports, but            |
| 21    | maybe I missed it.                                          |
| 22    | MR. PADMANABHAN:  Your Honor said the number of            |
| 23    | limitations.  You mean the number of claims?                |
| 24    | THE COURT:  Well, number of limitations to be              |
| 25    | construed --                                                |

12:58PM (lines 5, 10, 15)
12:59PM (lines 20, 25)

1            MR. PADMANABHAN:  Oh, I see.

2            THE COURT:  -- is what I mean.  I think we started

3    out with about ten in the previous iteration, and we were

4    down to seven or eight or so.  That was workable from my

12:59PM    5    perspective.

6            Do you have any idea at this point?  I mean, there

7    are a lot patents in suit in the MoCA cases and in the cable

8    cases.  I -- so I'm not going to make a decision now.  I'm

9    throwing that out to you.  In your stipulation that you

12:59PM   10    submit to me with a schedule, please include a limit on the

11    number of limitations to be construed.

12            MR. SHARTZER:  Your Honor, if I may address that

13    point on behalf of DISH.

14            THE COURT:  Please.

01:00PM   15            MR. SHARTZER:  We have not received a list of

16    asserted claims from Entropic, so it makes that exercise

17    quite difficult without the context of just how large this

18    case is going to be, starting with 12 asserted patents.

19            So if there were a procedure whereby Entropic could

01:00PM   20    provide its list of asserted claims in the MoCA case, that

21    would certainly be helpful to the defendants.  At least I'll

22    represent that on behalf of DISH.

23            MR. PADMANABHAN:  I think that's the same for

24    Comcast as well.

01:00PM   25            MS. ISAACSON:  Agree for Cox as well.

1   MS. GOODRICH:  Your Honor, I believe that we had

2   proposed dates as part of our schedule, so I would just wrap

3   that into the meet and confer that the parties are going to

4   have with respect to the revised schedule, and we would

01:00PM  5   include a date for that.

6   MR. SHARTZER:  And, Your Honor, I think the point

7   here is that just simply having to make a guess at how many

8   claims should be construed, the defendants are in no position

9   to make that guess or reach an agreement without at least an

01:00PM  10   identification of the asserted claims in this case.

11   Entropic represents in its 26(f) briefing that it's

12   ready to serve its contentions and its list of asserted

13   claims this Friday.  So we believe that Entropic does that

14   information, that it is ready to go, and it could be provided

01:01PM  15   to both the defendants and the Court in the process for

16   establishing the procedures and the size of the claim

17   construction hearing.

18   THE COURT:  Okay.  Well, meet and confer over it.

19   Hopefully you can reach a consensus on the number of

01:01PM  20   limitations that will be in dispute.  If it turns out by the

21   time you file your stipulation with me that you cannot from

22   the defendant's perspective commit to any -- to limit the

23   number of limitations, say that.

24   MR. SHARTZER:  Thank you, Your Honor.

01:01PM  25   THE COURT:  I'll deal with it, you know, as it

1    comes.

2            MR. SHARTZER:  Right.  Thank you.

3            THE COURT:  Okay.  Anything else?

4            All right.  Counsel, thank you very much.  Special

01:01PM  5    Master, thank you very much.  I'll see some of you on

6    September 8th, and I look forward to receiving all the

7    documents that we talked about you filing with me.

8            Thank you.

9        (Proceedings concluded at 1:02 p.m.)

10                    CERTIFICATE

11    I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

12    TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

13    THE ABOVE MATTER.

14    FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

15    REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

16    REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

17

18    /s/ Miriam V. Baird          08/17/2023

19    MIRIAM V. BAIRD                      DATE
      OFFICIAL REPORTER
20

21

22

23

24

25

**'**

**'101** [1] - 41:17
**'213** [9] - 47:19, 52:24, 56:16, 57:23, 58:12, 60:8, 62:25, 64:6, 64:13
**'422** [12] - 47:20, 50:24, 50:25, 51:3, 51:17, 52:24, 54:2, 55:8, 56:10, 56:15, 56:16, 57:3
**'566** [10] - 5:13, 12:1, 19:1, 19:9, 25:6, 25:14, 28:14, 28:19, 28:23, 42:9
**'910** [7] - 5:14, 19:7, 19:12, 32:2, 32:9, 32:12, 41:17

**/**

**/s** [1] - 117:18

**0**

**08/17/2023** [1] - 117:18

**1**

**1** [35] - 16:18, 17:8, 17:16, 17:21, 19:19, 19:21, 23:11, 23:12, 23:14, 23:15, 23:20, 23:24, 24:8, 24:19, 36:22, 37:1, 37:19, 39:11, 39:13, 42:5, 42:7, 42:10, 47:20, 51:18, 52:13, 53:4, 56:10, 56:16, 59:1, 59:18, 61:2, 61:15, 63:11, 64:6, 64:13
**10** [1] - 54:14
**1000** [2] - 2:19, 2:19
**101** [7] - 5:2, 7:8, 9:4, 27:17, 55:9, 61:8, 64:19
**10100** [1] - 2:4
**1012** [1] - 40:5
**10166** [1] - 2:23
**102** [1] - 62:7
**103** [1] - 62:7
**1043** [4] - 7:9, 9:17, 9:23, 10:4
**1047** [2] - 9:23, 43:7
**1048** [1] - 104:24
**1050** [1] - 93:25
**106** [1] - 104:24
**10:09** [1] - 4:1
**11** [3] - 14:15, 45:23, 55:14
**11893** [1] - 1:23
**11:42** [1] - 67:25
**11:52** [1] - 67:25
**12** [6] - 11:15, 28:8, 51:11, 56:5, 78:11, 115:18
**12(b)(1** [8] - 70:13, 72:14, 72:20, 76:8, 81:2, 81:7, 93:19, 110:13

**12(b)(1)** [2] - 70:5, 70:12
**12(b)(6** [6] - 68:4, 70:15, 70:18, 70:22, 81:10
**12(b)(6)** [2] - 70:19, 72:3
**12(c)** [1] - 43:8
**13** [7] - 7:17, 17:25, 18:5, 69:22, 72:8, 73:23, 74:13
**1349** [1] - 35:6
**1350** [1] - 40:18
**1355** [1] - 40:19
**1358** [1] - 35:7
**14** [6] - 48:25, 57:15, 64:5, 64:10, 64:11, 75:10
**15** [7] - 7:2, 8:3, 47:6, 57:22, 77:15, 77:18, 93:7
**16** [12] - 50:23, 50:25, 51:3, 51:17, 51:21, 52:9, 52:10, 52:14, 60:24, 61:12, 61:21, 61:22
**16.8** [1] - 38:3
**17** [4] - 7:17, 32:18, 58:23
**18** [3] - 27:23, 50:2, 94:19
**18th** [2] - 104:4, 109:14
**19** [4] - 19:13, 31:6, 59:23
**1900** [1] - 3:3
**19TH** [1] - 2:10
**1:02** [1] - 117:9
**1st** [1] - 104:9

**2**

**2** [28] - 3:2, 10:19, 16:11, 16:12, 16:14, 16:17, 17:8, 19:19, 19:21, 23:11, 24:8, 24:19, 31:3, 39:11, 39:13, 42:5, 42:8, 42:16, 42:17, 51:16, 62:21, 63:1, 71:6, 71:14, 71:16, 71:17, 89:15, 89:22
**20** [3] - 19:15, 60:8, 102:16
**200** [1] - 2:23
**20024** [1] - 2:20
**2003** [1] - 95:10
**2006** [1] - 95:10
**2014** [1] - 40:19
**2017** [1] - 40:9
**2019** [1] - 26:18
**2023** [2] - 1:19, 4:1
**21** [2] - 39:6, 41:20
**2113** [1] - 2:10
**22** [2] - 60:14, 71:22
**22nd** [3] - 106:3, 108:15, 109:19
**23** [1] - 61:6
**23-01043** [1] - 4:4
**23-01048** [1] - 4:10
**23-01049** [1] - 4:13
**23-01050** [1] - 4:14
**23rd** [1] - 97:6
**25** [2] - 21:19, 27:23

**25th** [1] - 105:3
**26(f** [4] - 104:21, 114:5, 114:20, 116:11
**26TH** [1] - 2:16
**27th** [3] - 106:2, 108:14, 109:19
**28** [1] - 51:11
**28th** [3] - 108:19, 108:22, 110:22

**3**

**3** [10] - 19:20, 19:21, 23:11, 23:15, 24:17, 33:25, 34:1, 35:22, 36:15, 36:19
**30** [2] - 20:5, 20:14, 65:14, 65:19
**3078** [1] - 71:18
**31** [1] - 91:22
**3100** [1] - 2:8
**3113** [1] - 72:7
**32** [1] - 22:19
**33** [1] - 23:12
**34** [1] - 37:15
**350** [1] - 1:24
**37** [2] - 20:14, 72:6
**37212** [1] - 2:11
**3rd** [1] - 40:8

**4**

**4** [6] - 11:13, 34:3, 62:21, 63:1, 112:1, 112:2
**400** [1] - 89:19
**44** [2] - 32:5, 33:11
**45** [1] - 33:11
**46** [1] - 33:23
**47** [1] - 34:7
**49** [2] - 35:25, 36:19
**4:30** [1] - 87:6

**5**

**5** [2] - 11:13, 30:4
**50** [4] - 36:7, 38:25, 39:1, 41:19
**50-1** [1] - 38:23
**51** [1] - 36:15
**52** [2] - 36:19, 36:23
**53** [3] - 26:16, 26:24, 37:5
**55** [2] - 22:20, 47:20
**57** [2] - 64:7, 64:13
**58** [1] - 38:21
**58-1** [1] - 38:21
**59** [2] - 64:7, 64:14
**5TH** [1] - 2:16

**6**

**6** [2] - 44:12, 44:18

**60** [3] - 35:6, 47:20, 88:18
**60602** [1] - 2:8
**62** [1] - 47:20
**633** [1] - 2:16
**67** [1] - 47:21

**7**

**7** [2] - 12:3, 44:8
**7'566** [3] - 10:7, 10:19, 25:7
**70** [1] - 2:7
**71** [1] - 92:17
**711** [1] - 40:5
**765** [1] - 40:18

**8**

**8** [6] - 17:14, 31:4, 31:6, 31:14, 44:17, 44:20
**8th** [4] - 106:20, 109:1, 109:23, 117:6
**8TH** [1] - 2:4

**9**

**9** [2] - 1:19, 4:1
**900** [1] - 22:20
**90012** [1] - 1:25
**90067** [1] - 2:5
**90071** [1] - 2:17
**908** [1] - 22:20
**909** [1] - 22:20
**94111** [1] - 3:3

**A**

**a.m** [2] - 67:25
**A.M** [1] - 4:1
**abbreviated** [3] - 10:20, 47:12, 48:10
**abeyance** [1] - 84:9
**ability** [1] - 13:18
**able** [5] - 18:19, 48:4, 85:11, 88:19, 92:25
**ABOVE** [1] - 117:13
**absent** [1] - 63:21
**absolutely** [11] - 42:4, 67:17, 78:9, 85:14, 86:25, 89:17, 96:5, 100:11, 103:14, 103:24, 104:8
**abstract** [47] - 12:18, 12:23, 14:5, 16:2, 22:17, 22:23, 24:12, 27:3, 27:9, 27:25, 29:15, 29:20, 30:13, 30:15, 30:23, 31:3, 31:16, 34:12, 34:18, 34:19, 34:20, 34:22, 35:3, 35:9, 35:11, 37:11, 37:12, 38:6, 39:23, 40:3, 42:19, 45:17, 46:13, 46:21, 50:20, 52:11, 53:2, 54:5,

54:18, 56:20, 57:3, 57:24, 59:21, 65:5, 65:8
**abstractness** [2] - 33:9, 40:14
**access** [3] - 37:3, 92:14, 92:20
**accomplish** [3] - 32:25, 110:9, 112:13
**accomplished** [1] - 57:4
**according** [1] - 86:14
**accordingly** [2] - 67:2, 72:1
**account** [1] - 14:9
**accrue** [1] - 99:21
**accurate** [1] - 38:18
**achieve** [1] - 33:4
**achieved** [2] - 46:7, 46:10
**acknowledges** [1] - 23:18
**Acquisition** [2] - 47:10, 63:14
**Act** [2] - 75:18, 77:6
**act** [5] - 47:3, 85:1, 85:4, 85:5, 85:6
**acted** [2] - 45:13, 48:18
**acting** [3] - 17:4, 79:24, 80:3
**action** [1] - 28:17
**activities** [1] - 106:12
**acts** [2] - 84:11, 84:22
**actual** [2] - 35:21, 37:17
**Adam** [1] - 5:11
**ADAM** [1] - 2:18
**adapt** [2] - 28:3, 30:20
**adapting** [4] - 25:17, 26:4, 30:1, 30:2
**Adasa** [4] - 22:19, 37:14, 38:1, 38:5
**add** [3] - 31:2, 36:4, 39:12
**added** [3] - 100:17, 113:8, 113:11
**addition** [1] - 9:2
**additional** [2] - 91:16, 91:19
**additions** [1] - 113:6
**address** [15] - 20:18, 20:22, 20:24, 22:2, 23:1, 23:3, 32:15, 32:24, 38:10, 39:21, 62:14, 66:25, 88:9, 107:21, 115:12
**addressed** [6] - 13:3, 22:9, 33:13, 64:20, 88:8, 95:21
**addresses** [3] - 20:9, 22:6, 36:1
**addressing** [3] - 38:13, 67:9, 106:18
**adds** [1] - 52:3
**adequate** [1] - 103:24
**adequately** [1] - 36:1
**adjudicate** [1] - 79:2
**admission** [8] - 12:7, 14:11, 18:8, 18:10, 25:16, 26:4, 30:7, 64:4

**admissions** [1] - 33:13
**admits** [3] - 36:18, 54:24, 58:18
**admitted** [4] - 36:14, 63:25, 64:9, 87:5
**admittedly** [1] - 27:11
**adopt** [4] - 48:22, 52:19
**adopted** [1] - 52:21
**advance** [4] - 11:19, 22:15, 23:4, 27:5
**affect** [2] - 86:18, 96:24
**affected** [1] - 99:19
**afraid** [1] - 71:10
**afternoon** [1] - 6:25
**aggregate** [5] - 36:8, 36:9, 36:11, 37:6, 54:23
**aggregated** [4] - 20:23, 34:4, 36:24, 54:5
**aggregating** [8] - 21:14, 21:17, 33:24, 35:16, 35:17, 35:18, 35:20, 37:8
**aggregation** [19] - 20:21, 20:22, 21:12, 21:21, 22:12, 23:2, 23:16, 24:2, 34:9, 34:11, 34:13, 34:16, 34:17, 35:1, 36:3, 37:2, 37:9, 37:11
**agree** [23] - 25:7, 27:12, 31:1, 32:8, 46:16, 56:18, 57:23, 60:22, 63:11, 63:17, 66:11, 69:14, 69:15, 79:11, 83:6, 83:21, 83:22, 85:15, 106:6, 108:4, 108:10, 115:25
**agreed** [5] - 53:19, 59:2, 61:2, 83:23, 106:11
**agreed-upon** [1] - 106:11
**agreement** [9] - 80:7, 89:12, 90:12, 90:20, 97:4, 99:14, 100:2, 101:5, 116:9
**ahead** [6] - 8:10, 10:6, 14:7, 44:20, 62:2, 83:4
**AIP** [2] - 47:10, 63:14
**Air** [6] - 75:24, 77:15, 77:19, 77:23, 78:23, 87:13
**al** [4] - 4:6, 4:9, 4:12, 4:16
**AL** [6] - 1:8, 1:9, 1:9, 2:16, 2:22, 3:2
**Alice** [8] - 33:14, 42:1, 42:3, 42:4, 57:12, 57:14, 60:7, 65:5
**aligns** [1] - 53:22
**allegation** [6] - 92:21, 93:3, 93:15, 96:14, 100:22, 101:3
**allegations** [4] - 81:12, 83:8, 88:18, 95:5
**allege** [6] - 88:19, 93:1, 93:3, 96:9, 102:18, 111:2
**alleged** [2] - 29:5, 76:1
**alleging** [1] - 92:7

**alliance** [1] - 95:9
**allocating** [2] - 58:16, 59:5
**allow** [4] - 79:21, 85:9, 91:25, 93:9
**allowed** [2] - 85:3, 97:20
**allowing** [1] - 93:18
**allows** [2] - 20:23, 22:25
**almost** [2] - 81:8, 105:13
**alone** [1] - 33:2
**ALSO** [1] - 3:7
**altogether** [1] - 95:17
**amend** [10] - 70:3, 70:16, 81:20, 83:7, 88:25, 93:6, 93:18, 105:4, 105:5, 105:14
**amended** [4] - 88:18, 89:1, 89:3, 92:24
**amendment** [1] - 110:24
**ANA** [2] - 1:18, 4:1
**analogous** [3] - 54:13, 55:20, 58:10
**analogy** [1] - 91:5, 91:7
**analysis** [15] - 24:9, 33:3, 33:5, 33:7, 33:22, 39:18, 40:14, 42:1, 42:4, 55:17, 56:3, 75:12, 77:24, 79:8, 91:13
**analyzing** [2] - 56:13, 56:14
**AND** [6] - 1:17, 2:15, 2:18, 2:22, 3:1, 117:11
**AND/OR** [1] - 117:15
**ANGELES** [3] - 1:25, 2:5, 2:17
**answer** [6] - 55:10, 55:13, 74:23, 80:25, 99:24, 105:19
**answering** [1] - 102:20
**answers** [1] - 112:12
**anticipation** [1] - 91:21
**ANY** [1] - 117:14
**anyway** [1] - 8:17
**apologies** [2] - 73:25, 98:18
**apologize** [6] - 6:4, 44:19, 66:23, 91:21, 98:9, 102:24
**App'x** [1] - 40:5
**apparatus** [4] - 37:17, 37:20, 45:4, 59:24
**apparent** [1] - 81:5
**appeal** [4] - 32:11, 33:1, 33:12, 41:23
**appear** [2] - 34:2, 35:4
**appearance** [1] - 4:17
**APPEARING** [1] - 3:7
**appearing** [1] - 4:19
**Appendix** [1] - 40:23
**applicability** [1] - 78:24
**applicable** [3] - 94:11, 95:25, 96:18
**applicant** [1] - 51:15

**applications** [1] - 28:21
**applied** [1] - 42:13
**applies** [2] - 78:20, 94:24
**apply** [6] - 84:3, 91:14, 95:23, 102:14, 102:16, 102:17
**appreciate** [6] - 65:13, 67:20, 83:11, 111:13, 111:20, 112:25
**apprehension** [1] - 77:1
**appropriately** [1] - 19:19
**APRIL** [1] - 3:1
**April** [2] - 5:19, 53:17
**architect** [1] - 15:9
**architecture** [5] - 47:22, 48:5, 56:22, 58:22, 60:2
**ARE** [1] - 117:15
**area** [1] - 32:11
**argue** [5] - 5:13, 12:24, 25:6, 62:4, 63:8
**argued** [2] - 28:4, 83:25
**arguendo** [1] - 65:3
**argues** [2] - 8:23, 27:6
**arguing** [8] - 4:25, 5:1, 5:2, 5:14, 7:3, 27:19, 33:2, 45:11
**argument** [31] - 5:13, 8:20, 14:6, 19:8, 24:22, 27:20, 28:1, 28:6, 29:22, 31:8, 31:24, 34:7, 34:25, 35:13, 37:5, 38:11, 39:20, 42:23, 45:14, 61:18, 63:23, 67:9, 67:18, 69:10, 74:9, 75:6, 79:6, 102:15, 104:17, 105:12
**arguments** [4] - 33:24, 37:14, 62:15, 84:20
**arising** [1] - 13:13
**arose** [1] - 45:7
**arranged** [2] - 26:9, 65:16
**art** [5] - 20:16, 21:3, 22:8, 34:1, 63:18
**aside** [5] - 24:8, 40:22, 55:4, 99:6, 100:9
**aspect** [2] - 35:23, 81:14
**aspects** [3] - 33:6, 68:20, 79:13
**aspirational** [1] - 64:22
**aspire** [1] - 54:19
**asserted** [9] - 16:15, 61:9, 61:12, 61:23, 115:16, 115:18, 115:20, 116:10, 116:12
**assign** [2] - 47:25, 76:3
**assigned** [2] - 49:20, 76:5
**assignment** [1] - 76:6
**assignor** [1] - 85:24
**assigns** [1] - 76:3
**assume** [2] - 7:15, 82:5
**assuming** [3] - 65:3, 99:21,

114:8
assurances [1] - 90:13
attached [2] - 86:7, 111:25
attempt [2] - 67:10, 67:11
attempts [2] - 77:13, 92:10
attention [4] - 17:24, 47:6, 101:17, 114:15
audiovisual [1] - 8:14
August [5] - 104:4, 105:3, 108:19, 109:14, 110:22
august [1] - 108:22
AUGUST [2] - 1:19, 4:1
authentication [2] - 25:16, 26:4
authority [2] - 77:15, 81:7
authorization [2] - 79:24, 85:15
authorize [2] - 84:22, 85:1
authorized [3] - 18:9, 85:1, 85:5
authorizes [1] - 84:24
automatic [1] - 75:15
availability [3] - 58:2, 58:4, 58:6
available [1] - 35:2
AVENUE [3] - 2:10, 2:19, 2:23
Avery [1] - 22:19
avoid [1] - 38:1
await [1] - 114:7
aware [1] - 35:19
awful [3] - 74:2, 79:7, 80:11

**B**

backed [1] - 25:21
backward [1] - 85:12
backwards [3] - 44:18, 93:8, 93:9
Baird [1] - 117:18
BAIRD [2] - 1:23, 117:19
bandwidth [9] - 20:4, 20:15, 20:25, 23:4, 35:1, 35:2, 35:3, 35:11, 59:6
bargain [1] - 79:25
based [8] - 13:25, 20:23, 21:14, 35:17, 35:18, 35:20, 42:6, 110:11
basics [1] - 53:25
basis [11] - 20:9, 21:17, 72:1, 79:18, 91:15, 93:1, 96:4, 98:24, 99:16, 111:2
bear [1] - 46:23
became [1] - 81:5
become [4] - 15:8, 15:10, 15:15, 30:21
becomes [1] - 15:4
bee [1] - 21:6
begin [1] - 95:14
beginning [1] - 4:18

BEHALF [4] - 2:3, 2:15, 2:21, 3:1
behalf [17] - 4:19, 4:22, 4:24, 5:8, 5:12, 5:20, 5:25, 6:9, 6:12, 53:17, 106:14, 107:9, 107:21, 108:3, 110:4, 115:13, 115:22
behaviors [1] - 47:25
behind [2] - 11:3, 43:6
bells [1] - 31:2
bend [2] - 93:7, 93:9
beneficiary [1] - 92:17
benefit [3] - 46:6, 46:8, 80:12
benefits [1] - 29:4
best [2] - 44:1, 67:21
bets [1] - 84:13
between [15] - 14:12, 18:14, 30:14, 48:5, 63:6, 71:10, 80:8, 89:10, 106:5, 106:8, 108:13, 108:14, 109:17, 109:18, 113:7
beyond [2] - 56:3, 59:12, 113:9
bidirectional [2] - 11:9, 13:19
bidirectionally [1] - 18:19
big [1] - 8:8
bigger [2] - 73:5, 80:7
binder [1] - 77:18
binding [1] - 77:15
bit [10] - 24:1, 25:22, 43:6, 47:23, 48:22, 54:9, 58:3, 78:13, 91:18, 107:18
bites [1] - 88:22
blames [1] - 38:11
bleeding [1] - 6:25
blocks [1] - 50:11
blows [1] - 49:2
bolded [1] - 48:1
BOULEVARD [1] - 2:4
box [4] - 11:3, 17:4, 49:22, 66:14
boxes [4] - 10:23, 11:6, 18:19, 49:18
Bravo [1] - 112:5
breached [2] - 86:6, 86:8
break [4] - 65:17, 66:21, 66:24, 98:8
breaks [1] - 84:10
brethren [1] - 108:8
BRIAN [1] - 2:22
bridges [3] - 87:5, 91:4, 95:17
BRIDGES [48] - 2:9, 2:10, 69:5, 69:7, 69:24, 70:10, 70:13, 70:17, 71:4, 71:9, 71:14, 71:17, 71:22, 71:25, 72:5, 72:10, 72:18, 73:4, 73:11, 73:22, 73:25, 74:5, 74:8, 74:12, 74:16, 76:10,

77:11, 78:9, 79:4, 80:17, 80:21, 81:16, 81:18, 82:1, 82:15, 83:20, 85:19, 85:22, 86:3, 86:11, 86:25, 89:5, 103:9, 103:24, 104:3, 105:1, 105:5, 105:9
Bridges [11] - 4:23, 5:1, 8:23, 69:4, 87:22, 100:16, 100:20, 101:9, 102:2, 102:11, 103:1
Brief [1] - 41:6
brief [31] - 18:2, 38:13, 38:15, 39:1, 39:6, 39:17, 54:12, 55:18, 55:19, 56:7, 58:9, 59:15, 63:25, 64:5, 64:8, 64:10, 64:12, 71:6, 71:17, 72:6, 83:23, 85:2, 88:9, 101:16, 101:22, 102:23, 103:5, 103:7, 104:1, 104:5, 104:10
briefing [40] - 15:5, 15:22, 18:12, 19:22, 21:1, 21:20, 23:22, 24:6, 24:9, 27:19, 28:1, 28:16, 29:25, 31:8, 33:13, 33:24, 39:19, 45:11, 54:3, 58:18, 59:3, 60:19, 63:19, 69:17, 71:5, 71:13, 73:16, 73:17, 74:20, 80:11, 80:16, 94:13, 100:15, 100:19, 110:24, 112:22, 112:25, 113:17, 113:18, 116:11
briefly [2] - 27:13, 29:24
briefs [1] - 104:14
bring [1] - 9:11
brings [1] - 89:9
broadcasting [3] - 58:15, 59:4, 59:17
Broadcom [3] - 90:1, 90:4, 92:4
brought [3] - 63:22, 76:17, 76:18
bubble [1] - 111:9
build [1] - 31:19
building [1] - 50:11
bunch [1] - 49:17
burden [3] - 24:8, 38:12, 38:13
business [4] - 78:11, 80:4, 80:7, 84:12
BuySafe [1] - 40:17

**C**

CA [3] - 2:5, 2:17, 3:3
cable [27] - 7:7, 10:16, 10:17, 10:20, 10:25, 12:12, 13:16, 14:13, 27:11, 42:11, 89:25, 90:7, 104:20, 106:7, 106:11, 107:6, 107:14,

107:15, 107:19, 107:25, 108:16, 109:6, 109:15, 110:6, 114:18, 115:7
cables [1] - 28:6
calculate [1] - 58:7
CALIFORNIA [4] - 1:2, 1:18, 1:25, 4:1
canceled [1] - 97:22
cannot [13] - 27:3, 29:2, 30:15, 34:22, 35:22, 37:12, 67:17, 84:25, 85:2, 85:7, 87:21, 102:19, 116:21
capital [1] - 63:16
capitalize [1] - 47:14
capitalized [1] - 47:12
caption [1] - 93:24
captures [1] - 36:2
care [2] - 106:9, 106:10
careful [1] - 99:23
case [122] - 4:3, 4:6, 4:9, 4:12, 4:14, 7:9, 13:8, 13:24, 15:13, 19:1, 22:18, 22:20, 22:21, 23:6, 26:7, 26:8, 26:16, 26:17, 27:2, 29:13, 29:17, 30:23, 35:5, 35:14, 37:16, 40:2, 40:4, 40:23, 43:4, 43:7, 45:25, 46:3, 47:10, 47:11, 48:11, 48:13, 48:14, 50:3, 50:21, 52:12, 53:7, 54:1, 54:13, 55:15, 56:1, 56:4, 56:6, 57:12, 57:14, 58:10, 59:15, 59:19, 59:20, 60:7, 63:14, 63:15, 65:3, 70:5, 70:21, 72:13, 73:7, 74:24, 74:25, 75:3, 75:4, 75:12, 75:14, 76:13, 76:16, 76:17, 77:5, 77:8, 77:10, 77:11, 77:19, 78:17, 78:18, 78:22, 81:23, 81:24, 83:18, 85:17, 86:20, 87:9, 91:6, 93:25, 96:23, 96:24, 97:11, 97:13, 98:4, 98:15, 99:3, 100:5, 100:14, 100:21, 100:24, 100:25, 101:2, 101:19, 102:15, 102:17, 104:24, 106:16, 107:3, 108:20, 109:5, 110:5, 110:6, 110:12, 110:13, 111:20, 112:20, 115:18, 115:20, 116:10
cases [72] - 7:7, 12:13, 28:9, 34:24, 68:2, 74:17, 74:19, 74:23, 75:5, 76:12, 76:15, 76:19, 77:3, 77:24, 80:20, 80:24, 81:5, 81:24, 87:5, 87:6, 87:12, 87:16, 92:18, 94:16, 100:18, 101:16, 102:3, 102:5, 102:6, 102:9, 102:10, 102:25, 103:2, 103:8, 104:6, 104:20,

104:23, 105:6, 105:21,
106:7, 106:15, 107:5,
107:6, 107:12, 107:14,
107:15, 107:19, 107:25,
108:2, 108:5, 108:11,
108:16, 109:7, 109:15,
109:22, 110:4, 110:6,
112:7, 113:8, 114:18,
114:19, 115:7, 115:8
**Cassidy** [1] - 4:23
**catch** [1] - 108:1
**CCN** [11] - 10:21, 14:10,
16:22, 17:2, 17:5, 17:6,
18:9, 18:15, 18:21, 42:11
**CCNs** [1] - 16:1
**CCRA** [1] - 1:23
**CENTER** [1] - 3:2
**central** [1] - 38:4
**CENTRAL** [1] - 1:2
**certain** [2] - 68:22, 84:1
**certainly** [10] - 33:3, 35:14,
40:16, 42:16, 42:17, 69:17,
83:22, 88:16, 105:13,
115:21
**CERTIFICATE** [1] - 117:10
**CERTIFY** [1] - 117:11
**cetera** [3] - 53:25, 79:19,
81:1
**chain** [1] - 28:18
**challenges** [1] - 80:25
**chances** [1] - 88:17
**change** [4] - 24:19, 40:13,
66:17, 85:11
**changed** [3] - 13:12, 76:18,
93:17
**channels** [1] - 71:11
**chaos** [1] - 85:10
**characterization** [1] - 102:5
**characterize** [1] - 89:11
**CHARGED** [1] - 117:14
**ChargePoint** [1] - 29:13
**charts** [3] - 68:21, 112:1,
112:8
**checksum** [3] - 24:1, 38:11,
39:24
**checksums** [14] - 23:20,
23:22, 23:25, 24:7, 24:11,
24:14, 38:14, 38:18, 39:11,
39:21, 40:3, 40:13, 42:2
**CHICAGO** [1] - 2:8
**chips** [1] - 90:4
**choice** [1] - 51:18
**chosen** [2] - 19:16, 92:4
**Chris** [4] - 5:7, 5:13, 5:21,
9:10
**christina** [1] - 4:21
**CHRISTINA** [1] - 2:3
**CHRISTOPHER** [1] - 2:15
**Chung** [1] - 6:15
**circle** [1] - 111:23

**Circuit** [20] - 12:15, 13:11,
22:21, 25:23, 26:18, 27:16,
29:1, 29:12, 30:8, 32:13,
35:6, 35:8, 40:8, 40:19,
41:24, 47:11, 75:4, 77:23,
78:19, 78:22
**circuit** [3] - 16:18, 25:19,
29:7
**CIRCUIT** [1] - 117:14
**Circuit's** [1] - 34:24
**circular** [1] - 30:22
**circumstances** [1] - 76:8
**Cisco** [1] - 47:10
**citation** [1] - 63:21
**cite** [8] - 20:11, 22:20, 35:6,
35:7, 38:16, 40:5, 40:17,
40:18
**cited** [11] - 21:2, 26:16,
40:24, 46:4, 55:15, 56:7,
63:14, 94:13, 94:16, 95:20,
100:19
**cites** [3] - 40:15, 47:19,
97:14
**citing** [6] - 64:6, 64:12,
74:20, 95:3, 100:20, 112:9
**civil** [1] - 95:18
**claim** [137] - 7:6, 13:2, 14:9,
16:2, 16:11, 16:12, 16:14,
16:16, 16:17, 16:18, 17:8,
17:13, 17:16, 17:21, 19:15,
19:17, 19:20, 19:21, 23:12,
23:14, 23:15, 23:20, 23:24,
24:17, 26:2, 28:7, 30:2,
30:18, 31:3, 31:11, 31:12,
31:14, 31:16, 31:19, 33:8,
33:14, 33:15, 33:20, 33:21,
35:22, 36:1, 36:2, 36:4,
36:5, 36:6, 36:20, 36:21,
36:22, 36:24, 37:1, 37:16,
37:17, 37:18, 37:19, 38:9,
42:10, 42:15, 42:16, 42:17,
44:24, 45:2, 45:9, 45:12,
46:16, 46:17, 46:19, 47:12,
48:9, 48:16, 48:19, 50:4,
50:15, 50:23, 50:25, 51:2,
51:3, 51:17, 51:18, 51:21,
52:9, 52:10, 52:13, 52:14,
53:2, 53:4, 54:19, 54:21,
55:7, 56:10, 56:20, 59:1,
59:2, 59:18, 59:19, 60:18,
60:24, 60:25, 61:2, 61:3,
61:12, 61:15, 61:21, 61:22,
62:9, 62:12, 63:20, 64:24,
65:4, 68:21, 75:21, 75:22,
76:2, 78:4, 82:4, 82:7,
82:24, 83:1, 83:17, 104:19,
105:20, 106:1, 107:6,
108:12, 108:13, 109:7,
109:15, 111:25, 112:8,
112:24, 116:16

**claimed** [9] - 13:11, 27:24,
28:11, 29:3, 32:25, 33:4,
54:22, 57:20, 65:7
**claiming** [1] - 54:18, 59:12
**claims** [76] - 14:11, 16:6,
17:11, 17:12, 19:19, 19:21,
23:11, 24:8, 24:11, 24:19,
25:14, 27:18, 27:25, 29:2,
29:9, 29:15, 29:16, 29:19,
31:1, 32:24, 33:7, 33:9,
33:18, 33:20, 34:2, 34:5,
35:1, 35:23, 37:18, 38:8,
39:11, 39:13, 39:16, 39:18,
40:1, 40:12, 42:5, 42:7,
44:13, 44:14, 44:21, 44:23,
45:4, 46:9, 46:12, 46:19,
46:20, 49:25, 52:21, 53:5,
53:25, 56:2, 56:15, 56:16,
57:3, 59:9, 61:7, 61:9,
61:22, 66:7, 70:21, 72:3,
75:20, 77:5, 77:6, 84:8,
84:14, 85:8, 114:23,
115:16, 115:20, 116:8,
116:10, 116:13
**claireLOGIC** [2] - 56:6, 56:9
**clarification** [1] - 110:11
**clarify** [1] - 71:4
**clear** [18] - 8:9, 21:18, 22:5,
24:15, 34:24, 44:5, 45:11,
45:24, 64:21, 67:7, 69:24,
71:6, 73:12, 92:12, 93:7,
99:18, 100:15
**clearly** [2] - 19:2, 90:25
**clerk** [3] - 9:14, 9:15, 10:2
**CLERK** [1] - 4:3
**close** [2] - 31:21, 100:12
**closely** [1] - 45:21
**coaxial** [10] - 10:15, 10:20,
10:25, 12:11, 13:16, 14:13,
27:11, 29:10, 42:11, 47:22
**code** [4] - 15:2, 15:17, 56:24,
59:25
**cognizant** [1] - 28:25
**colleague** [2] - 5:21, 55:11
**colleagues** [2] - 4:23, 69:9
**collecting** [3] - 55:23, 56:3,
56:12
**column** [8] - 20:13, 36:19,
47:20, 62:21, 63:1, 63:11,
64:6, 64:13
**columns** [1] - 27:23
**Comcast** [57] - 4:9, 4:15, 5:1,
6:1, 6:10, 6:12, 6:15, 67:1,
68:4, 69:10, 70:4, 70:20,
70:23, 71:1, 71:2, 72:2,
74:13, 74:16, 74:20, 75:7,
80:2, 80:9, 80:23, 82:7,
84:13, 84:24, 86:6, 86:17,
87:2, 87:21, 89:10, 89:14,
90:8, 90:9, 90:12, 91:1,

92:3, 92:21, 94:1, 94:10,
94:22, 96:8, 98:24, 98:25,
99:1, 99:16, 101:15,
103:14, 103:21, 105:18,
107:9, 107:16, 110:12,
110:19, 112:16, 115:24
**COMCAST** [2] - 1:9, 2:22
**Comcast's** [9] - 8:20, 69:3,
70:2, 70:25, 71:1, 74:9,
82:2, 93:19, 95:8
**coming** [2] - 101:6, 109:22
**comment** [1] - 101:25
**commission** [1] - 38:2
**commissioned** [1] - 37:24
**commissioning** [1] - 38:4
**commit** [1] - 116:22
**common** [1] - 59:12
**communicate** [1] - 18:19
**communicates** [1] - 29:7
**communicating** [3] - 49:18,
54:23, 54:24
**communication** [18] - 11:1,
11:4, 11:6, 11:10, 12:17,
13:12, 13:19, 13:20, 16:18,
18:13, 18:17, 25:19, 29:6,
30:20, 33:16, 63:6
**COMMUNICATIONS** [4] -
1:4, 1:9, 2:3, 3:1
**communications** [2] - 57:12,
60:6
**Communications** [6] - 4:5,
4:6, 4:8, 4:11, 4:12, 4:15
**companies** [1] - 90:3
**complaint** [15] - 11:14,
16:15, 18:24, 19:17, 61:16,
61:21, 64:17, 75:17, 88:17,
88:18, 92:7, 92:23, 92:24,
108:18, 111:4
**complaints** [3] - 112:1,
112:4, 112:7
**complete** [2] - 6:6, 41:5
**completely** [1] - 87:18
**complicated** [3] - 69:16,
73:18
**components** [7] - 15:6,
15:12, 15:13, 15:14, 25:18,
26:6, 28:5
**comprises** [1] - 36:25
**comprising** [1] - 23:20
**computer** [12] - 13:14, 15:3,
15:16, 25:18, 25:21, 26:5,
41:1, 50:8, 56:24, 57:21,
59:13, 59:25
**computers** [1] - 15:7
**computing** [1] - 15:8
**concatenating** [1] - 21:17
**concatenation** [3] - 21:4,
21:5, 21:12
**concede** [1] - 42:17
**concept** [21] - 24:13, 27:4,

30:16, 30:24, 31:3, 33:8, 34:13, 34:16, 34:23, 35:9, 35:12, 36:13, 37:11, 37:12, 44:3, 44:7, 57:19, 59:23, 60:9, 65:6, 105:12
**concepts** [5] - 17:14, 27:9, 28:11, 35:20, 93:22
**concerned** [1] - 81:2
**concerning** [1] - 78:13
**conclude** [1] - 29:14
**concluded** [1] - 117:9
**concludes** [1] - 79:15
**conclusion** [2] - 72:7, 93:17
**conclusions** [2] - 32:8, 79:12
**confer** [5] - 106:5, 106:11, 108:11, 116:3, 116:18
**conference** [6] - 5:3, 106:17, 106:19, 108:25, 109:23, 110:3
**CONFERENCE** [2] - 1:17, 117:16
**conferences** [2] - 7:5, 104:18
**confidential** [5] - 67:2, 67:4, 67:9, 67:13, 69:11
**confidentiality** [1] - 67:18
**confirm** [1] - 105:9
**conflating** [1] - 62:5
**conflict** [2] - 51:3, 52:1
**CONFORMANCE** [1] - 117:15
**confronted** [1] - 10:24
**connected** [2] - 17:2, 63:6
**connecting** [1] - 38:4
**connection** [4] - 28:3, 37:24, 38:2, 52:4
**connections** [2] - 18:15, 30:15
**consecutive** [1] - 74:5
**consensus** [2] - 110:5, 116:19
**consequences** [1] - 22:22
**consider** [1] - 101:20
**consideration** [1] - 101:9
**considerations** [1] - 31:13
**considering** [1] - 70:1
**consistency** [1] - 73:1
**consistent** [2] - 101:8, 101:9
**consolidate** [1] - 106:16
**consolidated** [1] - 108:2
**constitutes** [1] - 98:20
**constitutional** [1] - 103:20
**construction** [49] - 7:6, 13:2, 17:23, 18:11, 30:1, 30:10, 30:20, 36:1, 36:2, 36:8, 36:20, 36:22, 36:24, 37:4, 42:15, 44:24, 45:3, 45:9, 45:12, 46:16, 46:17, 46:19, 48:16, 48:21, 48:22, 48:25, 49:14, 49:24, 50:2, 50:5,

51:2, 51:20, 52:20, 53:2, 60:19, 62:9, 62:12, 66:3, 66:8, 104:19, 105:20, 106:2, 107:7, 108:12, 108:13, 109:7, 109:16, 112:24, 116:17
**constructions** [9] - 14:9, 17:18, 17:19, 30:3, 30:5, 30:9, 30:17, 30:22, 34:5
**construed** [4] - 48:19, 114:25, 115:11, 116:8
**CONSULTING** [1] - 2:10
**contemplated** [1] - 72:23
**contention** [1] - 86:15
**contentions** [2] - 16:17, 116:12
**context** [9] - 12:1, 12:2, 12:11, 14:3, 35:13, 39:25, 97:13, 99:25, 115:17
**continue** [1] - 97:12
**continues** [1] - 97:4
**contract** [10] - 47:14, 47:15, 78:11, 82:8, 82:12, 84:20, 88:7, 97:20, 97:21, 101:1
**contrary** [5] - 88:6, 92:9, 94:12, 95:2, 95:14
**contrast** [2] - 23:14, 38:8
**contrasted** [1] - 21:1
**control** [1] - 37:3
**controller** [12] - 14:21, 15:3, 16:20, 16:21, 16:22, 17:4, 18:14, 29:6, 49:4, 49:8, 57:13, 60:6
**controversy** [5] - 75:3, 75:4, 75:12, 76:14, 77:8
**convention** [1] - 26:2
**conventional** [1] - 36:14
**conversely** [1] - 90:17
**convincing** [1] - 24:16
**coordinated** [1] - 63:4
**coordinates** [2] - 49:2, 63:5
**coordinating** [2] - 60:4, 63:9
**coordination** [1] - 49:6
**coordinator** [25] - 44:9, 45:5, 48:2, 48:7, 48:9, 49:13, 49:15, 49:21, 50:7, 50:8, 52:2, 52:17, 52:20, 60:3, 62:21, 63:5, 63:9, 63:12, 63:24, 64:3, 65:24, 66:13, 68:6, 68:11, 112:9
**copies** [2] - 8:21, 10:1
**copy** [4] - 8:17, 9:15, 9:18, 10:2
**copyright** [2] - 79:18
**copyright-by-copyright** [1] - 79:18
**copyrights** [1] - 79:16
**Corp** [1] - 22:20
**corporate** [2] - 6:14, 6:19
**Corporation** [2] - 4:9, 4:15

**CORPORATION** [4] - 1:8, 1:9, 2:15, 2:22
**correct** [8] - 9:2, 26:25, 27:14, 61:14, 70:10, 94:20, 105:7, 112:8
**CORRECT** [1] - 117:11
**corrected** [2] - 38:21, 38:25
**correction** [4] - 23:21, 23:23, 24:5, 24:12
**correctly** [3] - 18:8, 54:4, 88:16
**counsel** [13] - 4:17, 5:23, 7:10, 9:25, 55:5, 56:8, 59:16, 65:23, 106:24, 107:2, 109:4, 112:19, 117:4
**counterclaims** [3] - 76:21, 77:4
**couple** [6] - 8:19, 29:24, 79:1, 103:16, 105:17, 113:6
**coupled** [1] - 48:8
**course** [15] - 33:6, 40:6, 42:7, 56:19, 56:21, 60:18, 61:8, 61:14, 62:5, 62:11, 72:21, 72:24, 82:9, 105:8, 112:20
**court** [1] - 97:1
**COURT** [231] - 1:1, 1:23, 5:4, 5:10, 5:16, 5:23, 6:2, 6:5, 6:8, 6:16, 6:22, 8:6, 8:17, 8:25, 9:5, 9:7, 9:12, 9:14, 9:20, 9:24, 10:2, 10:6, 13:6, 14:6, 16:7, 16:13, 16:19, 17:14, 17:22, 18:1, 18:5, 19:4, 19:10, 19:14, 21:7, 23:13, 24:21, 24:25, 25:4, 26:19, 26:22, 26:24, 27:1, 28:8, 28:11, 29:21, 30:6, 31:23, 32:1, 32:6, 32:16, 32:19, 32:22, 34:14, 38:20, 38:24, 39:3, 39:7, 39:9, 40:22, 41:2, 41:9, 41:14, 41:18, 41:20, 42:22, 43:2, 43:5, 43:16, 43:18, 43:21, 43:24, 44:16, 44:18, 44:20, 47:8, 47:23, 48:13, 49:11, 50:25, 51:5, 51:8, 51:13, 52:13, 53:9, 53:12, 53:14, 54:9, 55:4, 58:3, 61:11, 61:19, 61:24, 62:1, 62:23, 62:25, 63:2, 64:4, 64:8, 64:11, 64:15, 65:12, 65:15, 65:20, 66:9, 66:19, 67:8, 67:12, 67:16, 67:22, 68:1, 68:8, 68:17, 68:24, 69:2, 69:6, 69:23, 70:6, 70:11, 70:15, 70:25, 71:7, 71:12, 71:16, 71:20, 71:24, 72:4, 72:9, 72:15, 73:3,

73:10, 73:21, 73:24, 74:4, 74:6, 74:11, 74:15, 75:25, 77:9, 78:5, 79:1, 80:15, 80:20, 81:13, 81:17, 81:25, 82:13, 83:11, 85:17, 85:21, 85:23, 86:9, 86:24, 87:2, 87:7, 87:11, 88:24, 89:4, 89:7, 89:16, 89:18, 89:23, 91:23, 93:5, 93:20, 93:24, 94:17, 96:3, 96:22, 98:2, 98:11, 98:13, 98:15, 99:5, 99:11, 99:19, 100:7, 101:13, 101:22, 102:20, 102:22, 103:3, 103:6, 103:19, 104:1, 104:4, 104:9, 104:13, 104:16, 105:4, 105:8, 105:11, 106:19, 106:22, 106:25, 107:5, 107:10, 107:20, 107:23, 108:6, 108:9, 108:20, 108:22, 108:24, 109:3, 109:14, 109:21, 110:2, 110:8, 110:15, 110:17, 111:5, 111:18, 112:2, 112:5, 112:7, 112:11, 112:18, 113:10, 113:14, 113:20, 113:24, 114:3, 114:10, 114:14, 114:24, 115:2, 115:14, 116:18, 116:25, 117:3
**Court** [44] - 14:2, 26:15, 30:8, 31:4, 32:10, 32:15, 32:23, 35:5, 35:14, 35:19, 35:25, 36:7, 37:15, 38:16, 40:2, 40:7, 40:10, 40:11, 40:13, 40:15, 65:16, 68:11, 68:16, 72:1, 74:21, 75:8, 76:14, 76:23, 77:1, 77:24, 79:5, 80:12, 81:6, 86:18, 87:15, 88:13, 97:8, 98:22, 103:11, 109:9, 113:2, 114:8, 116:15
**Court's** [3] - 35:4, 47:19, 51:19
**Court..** [1] - 40:21
**Courts** [3] - 12:15, 85:9, 93:7
**covenant** [33] - 74:21, 76:22, 78:6, 78:25, 81:1, 82:2, 84:6, 84:9, 84:14, 85:14, 86:20, 87:19, 87:24, 88:1, 88:5, 88:11, 90:21, 91:18, 91:25, 92:8, 94:11, 94:23, 94:24, 95:2, 95:14, 95:22, 96:15, 99:1, 99:15, 102:7, 102:12, 102:13, 102:16
**covenants** [1] - 75:18
**cover** [2] - 32:1, 114:1
**COX** [2] - 1:9, 3:1
**Cox** [17] - 4:6, 4:12, 5:20, 8:18, 11:22, 41:12, 43:14,

45:24, 52:23, 53:14, 53:17, 65:1, 107:16, 108:4, 112:15, 113:22, 115:25
**Cox's** [1] - 43:7
**creating** [3] - 12:8, 14:12, 31:9
**critical** [1] - 25:17
**CSR** [1] - 1:23
**cumbersome** [1] - 48:21
**curious** [1] - 41:2
**cursory** [1] - 64:17
**customer** [3] - 90:19, 90:22, 101:5
**customize** [1] - 28:3
**cut** [1] - 61:17

**D**

**dam** [2] - 84:9, 84:10
**damages** [2] - 99:20, 100:4
**data** [24] - 21:14, 21:15, 21:16, 22:3, 22:21, 22:24, 22:25, 23:4, 34:21, 35:9, 35:10, 35:20, 36:12, 37:22, 38:18, 39:22, 46:4, 54:5, 54:7, 55:23, 56:12, 56:13, 58:5, 59:6
**date** [9] - 40:7, 97:20, 98:6, 105:2, 106:1, 109:18, 109:19, 116:5
**DATE** [1] - 117:19
**dates** [4] - 106:5, 106:7, 106:11, 116:2
**DAVID** [1] - 3:7
**DC** [1] - 2:20
**de** [1] - 85:1
**de-authorize** [1] - 85:1
**dead** [2] - 7:22, 100:24
**deadline** [4] - 104:4, 104:9, 108:18, 109:14
**deal** [7] - 6:25, 7:4, 8:8, 111:14, 111:22, 111:24, 116:25
**dealing** [4] - 42:3, 61:8, 68:3, 95:19
**deals** [1] - 40:11
**decide** [5] - 69:20, 81:3, 81:10, 93:4, 97:8
**decided** [3] - 75:5, 78:19, 82:22
**deciding** [3] - 78:11, 104:13, 109:13
**decision** [13] - 13:24, 32:12, 35:8, 40:6, 40:11, 40:15, 40:17, 40:18, 51:19, 80:13, 114:15, 115:8
**deck** [10] - 26:16, 26:22, 32:5, 37:15, 73:20, 74:7, 91:20, 91:22, 94:20, 100:17

**decks** [1] - 74:2
**Declaratory** [1] - 77:6
**declaratory** [5] - 74:17, 74:18, 102:4, 102:6, 102:11
**DEFENDANT** [3] - 2:15, 2:21, 3:1
**defendant** [4] - 76:7, 102:12, 106:22, 106:24
**defendant's** [1] - 116:22
**defendants** [14] - 1:11, 5:9, 5:12, 5:21, 6:1, 6:12, 11:22, 53:17, 105:23, 106:3, 107:5, 115:21, 116:8, 116:15
**defense** [11] - 76:7, 76:9, 78:25, 82:2, 82:7, 82:9, 82:12, 83:1, 83:10
**defenses** [1] - 75:19
**define** [4] - 36:5, 47:16, 68:6, 68:8
**definitely** [1] - 65:21
**definition** [9] - 47:13, 48:20, 49:1, 49:12, 50:1, 50:7, 52:1, 52:7, 63:10
**definitions** [3] - 47:16, 68:22, 112:9
**degrade** [1] - 28:5
**deliver** [1] - 90:15
**delta** [1] - 106:8
**demonstrative** [1] - 18:6
**denial** [1] - 78:17
**denied** [2] - 70:7, 93:18
**Dennison** [1] - 22:19
**deny** [2] - 42:7, 77:16
**denying** [5] - 58:16, 70:7, 70:12, 70:13, 72:20
**depart** [1] - 79:10
**dependent** [3] - 16:6, 31:1, 40:12
**deploys** [1] - 90:8
**DEPOSIT** [1] - 117:15
**depositions** [1] - 114:7
**deprive** [2] - 74:21, 78:3
**describe** [3] - 20:2, 46:9, 52:24
**described** [6] - 27:22, 44:8, 44:23, 45:3, 68:12, 68:13
**describes** [1] - 20:6
**description** [2] - 46:5, 46:24
**destination** [15] - 20:8, 20:17, 20:22, 20:24, 22:2, 22:6, 22:12, 23:1, 34:8, 34:10, 34:11, 34:15, 34:17, 34:18, 34:21
**detail** [4] - 7:19, 11:16, 18:25, 27:22
**detailed** [3] - 31:19, 44:22, 79:8
**details** [2] - 29:2, 29:14

**detecting** [1] - 55:23
**determine** [1] - 77:14
**determining** [1] - 58:16
**device** [5] - 15:8, 47:25, 48:3, 48:6, 64:1
**devices** [4] - 16:25, 63:6, 90:6, 90:8
**Diana** [1] - 6:13
**difference** [2] - 21:13, 46:14
**differences** [3] - 39:17, 52:24, 53:6
**different** [22] - 9:1, 9:21, 9:22, 17:3, 21:22, 35:18, 35:21, 37:1, 37:15, 38:6, 52:15, 57:10, 59:18, 63:25, 66:14, 71:10, 72:12, 86:5, 87:18, 89:19, 96:22
**differentiation** [1] - 60:25
**difficult** [1] - 115:17
**direct** [7] - 17:24, 20:5, 20:10, 20:12, 22:18, 31:4, 47:6
**directed** [5] - 13:22, 13:25, 14:12, 41:22, 41:25, 54:4, 57:24, 64:18, 110:20
**direction** [1] - 101:19
**DirecTV** [8] - 106:16, 106:23, 107:2, 108:1, 109:3, 109:4, 109:24, 109:25
**DirecTV's** [1] - 108:18
**disagree** [9] - 20:3, 25:12, 42:1, 47:2, 51:22, 52:8, 62:5, 62:18, 71:2
**disagreements** [1] - 114:6
**disclose** [1] - 51:16
**disclosure** [1] - 59:24
**discovered** [1] - 75:5
**discovery** [8] - 80:13, 107:15, 110:13, 110:15, 110:18, 110:19, 111:6, 111:8
**discuss** [3] - 19:18, 67:1, 70:9
**discussing** [2] - 97:3, 101:10
**discussion** [1] - 109:5
**DISH** [29] - 1:8, 2:15, 4:4, 5:8, 5:12, 5:14, 5:15, 6:20, 7:9, 9:4, 9:10, 9:23, 11:22, 19:7, 19:9, 19:16, 23:18, 23:22, 24:6, 38:11, 38:12, 38:13, 107:22, 107:24, 108:5, 112:17, 113:23, 115:13, 115:22
**DISH's** [3] - 39:1, 41:16, 55:5
**Dismiss** [1] - 71:19
**dismiss** [9] - 39:2, 70:3, 70:4, 72:2, 72:13, 72:23, 73:7, 74:9, 110:21
**dismissed** [2] - 70:22, 81:8
**displayed** [5] - 17:15,

113:11, 113:13, 113:14, 113:15
**displaying** [2] - 55:24, 56:3
**disposition** [4] - 69:22, 72:17, 73:4, 93:20
**dispositive** [2] - 48:12, 48:17
**dispute** [7] - 54:12, 58:10, 80:9, 83:5, 111:9, 114:18, 116:20
**disputes** [2] - 114:10, 114:11
**disregard** [1] - 51:19
**disregarded** [1] - 30:12
**distinction** [1] - 46:10
**distinguish** [2] - 58:24
**distinguished** [4] - 26:8, 55:18, 56:7, 59:16
**district** [1] - 97:1
**District** [4] - 12:15, 86:2, 86:4, 98:23
**DISTRICT** [4] - 1:1, 1:2, 1:3, 1:23
**DJ** [6] - 74:23, 77:4, 77:5, 81:5, 102:2, 102:3
**DJ-styled** [1] - 77:4
**Dobrova** [1] - 100:13
**documentation** [1] - 68:6
**documents** [3] - 89:19, 110:23, 117:7
**dog** [1] - 107:17
**done** [22] - 10:12, 11:20, 11:21, 12:10, 15:25, 18:21, 21:22, 21:24, 22:11, 22:12, 22:15, 24:12, 25:17, 50:18, 55:16, 57:21, 75:1, 92:24, 96:2, 96:3, 101:25
**doubt** [4] - 16:4, 23:10, 24:18, 42:16
**doubts** [2] - 17:8, 75:23
**down** [10] - 47:23, 54:9, 58:3, 66:9, 71:22, 78:7, 79:2, 82:21, 98:8, 115:4
**drafting** [1] - 51:17
**drawn** [1] - 31:7
**draws** [1] - 79:12
**due** [3] - 23:10, 59:6, 110:22
**during** [2] - 63:23, 91:1
**DVRs** [1] - 11:11
**dynamic** [4] - 57:8, 60:5, 64:2, 65:24
**dynamically** [1] - 47:25

**E**

**eager** [1] - 80:24
**earliest** [1] - 97:20
**early** [1] - 97:18
**easier** [1] - 23:12
**easily** [2] - 23:8, 53:2
**easy** [7] - 16:9, 50:3, 50:21, 52:12, 53:7, 66:5, 81:8

**ECF** [3] - 38:21, 38:23, 104:24
**effect** [5] - 76:25, 84:21, 98:4, 99:2, 105:5
**effected** [1] - 100:6
**effective** [4] - 77:22, 97:7, 97:15, 97:19
**egress** [1] - 60:4
**eight** [2] - 104:6, 115:4
**either** [3] - 18:3, 76:17, 105:19
**Electric** [5] - 55:15, 55:22, 56:4, 58:25, 59:8
**electronically** [1] - 56:12
**element** [4] - 18:12, 24:10, 51:21
**eligibility** [1] - 62:6
**eligible** [3] - 19:2, 35:12, 64:19
**ELIZABETH** [1] - 3:1
**elmo** [2] - 16:5, 71:9
**EMBARCADERO** [1] - 3:2
**embodied** [1] - 59:25
**embodiment** [3] - 34:3, 45:22, 47:4
**embodiments** [3] - 61:6, 62:22, 63:4
**emerging** [1] - 47:21
**empty** [4] - 87:25, 88:5, 92:8, 94:24
**enable** [1] - 11:11
**enabled** [1] - 11:19
**enables** [1] - 17:1
**encountered** [1] - 11:8
**end** [8] - 19:18, 47:9, 68:25, 72:6, 75:23, 78:21, 86:13, 111:24
**ended** [1] - 86:16
**ends** [1] - 39:19
**enforced** [1] - 97:5
**engage** [4] - 39:11, 39:15, 82:18, 84:19
**enjoy** [1] - 112:19
**ensue** [1] - 85:10
**ensure** [1] - 38:18
**entered** [4] - 95:8, 95:11, 95:22, 101:4
**entering** [1] - 94:9
**entire** [3] - 87:24, 88:5, 88:10
**entities** [1] - 94:1
**entity** [3] - 68:12, 95:9, 96:7
**Entity** [2] - 51:16, 51:23
**Entropic** [68] - 4:3, 4:5, 4:8, 4:11, 4:15, 4:20, 4:22, 10:12, 10:24, 11:8, 11:25, 27:6, 27:19, 28:15, 28:23, 31:8, 31:16, 32:12, 33:1, 33:12, 34:8, 37:6, 39:15, 39:16, 41:10, 43:9, 45:19, 54:12, 54:24, 58:18, 69:3,

71:3, 78:7, 81:17, 81:18, 82:5, 85:17, 86:19, 92:6, 92:19, 92:22, 94:21, 95:3, 95:9, 97:5, 97:14, 98:25, 99:13, 99:16, 99:21, 100:1, 101:17, 102:18, 103:6, 103:22, 105:14, 105:22, 106:14, 109:23, 109:25, 115:16, 115:19, 116:11, 116:13
**ENTROPIC** [2] - 1:4, 2:3
**Entropic's** [13] - 8:20, 9:17, 33:24, 36:7, 50:2, 51:20, 72:2, 74:7, 74:8, 95:16, 96:21, 104:5, 107:2
**equipment** [4] - 8:14, 57:5, 57:21, 59:13
**Erie** [1] - 40:5
**erred** [1] - 44:25
**error** [4] - 23:21, 23:23, 24:4, 24:12
**essentially** [9] - 36:9, 37:9, 38:17, 39:19, 39:23, 93:17, 96:12, 97:21, 98:5
**establish** [1] - 84:13
**establishes** [1] - 80:5
**establishing** [2] - 18:13, 116:16
**ET** [6] - 1:8, 1:9, 1:9, 2:15, 2:22, 3:1
**et** [7] - 4:6, 4:9, 4:12, 4:16, 53:25, 79:19, 81:1
**Ethernet** [2] - 36:17, 36:18
**evening** [1] - 87:5
**event** [1] - 94:2
**events** [4] - 106:6, 108:12, 109:16, 109:17
**eventually** [1] - 72:23
**evidence** [1] - 24:16
**exact** [2] - 38:16, 107:12
**exactly** [7] - 73:6, 75:9, 77:11, 83:24, 91:17, 101:21, 106:7
**examination** [1] - 58:19
**examiner** [1] - 45:18
**example** [19] - 13:10, 14:15, 16:5, 16:11, 16:18, 17:4, 17:8, 18:4, 21:19, 22:5, 24:1, 37:19, 49:17, 79:15, 80:14, 82:22, 84:21, 94:9, 95:8
**exceptions** [1] - 102:7
**excuse** [4] - 22:17, 30:1, 30:25, 112:3
**exemption** [6] - 88:1, 91:2, 91:14, 93:1, 95:13, 95:25
**exercise** [2] - 30:19, 115:16
**Exhibit** [2] - 112:1, 112:2
**Exhibits** [2] - 112:3, 112:5
**exist** [1] - 75:19

**existed** [1] - 21:5
**existing** [10] - 12:16, 14:10, 14:18, 14:20, 14:25, 16:1, 18:15, 18:18, 18:21, 26:14
**exists** [3] - 49:4, 50:9, 52:2
**expect** [4] - 32:11, 33:1, 79:4, 90:22
**expected** [2] - 84:13, 95:12
**expects** [1] - 67:1
**explain** [3] - 8:23, 32:25, 107:13
**explained** [1] - 103:2
**explaining** [1] - 104:5
**explains** [1] - 33:15
**explanation** [1] - 79:20
**express** [1] - 76:6
**expressly** [1] - 51:16
**extent** [1] - 27:6
**extracted** [1] - 22:7
**extremely** [1] - 58:20
**eyeball** [1] - 71:7
**eyes** [3] - 43:20, 43:25, 94:14

## F

**F.3d** [1] - 40:18
**F.4th** [2] - 22:20, 35:6
**face** [1] - 76:21
**faced** [1] - 86:22
**fact** [30] - 14:9, 15:23, 16:25, 17:18, 28:15, 36:2, 42:2, 45:12, 45:17, 46:22, 48:7, 48:8, 48:11, 49:7, 49:9, 49:12, 49:15, 50:14, 53:24, 62:16, 65:1, 70:22, 74:1, 77:17, 79:7, 81:4, 82:16, 88:9, 93:16, 96:13
**facts** [2] - 11:17, 78:23
**factual** [1] - 18:25
**fail** [2] - 32:24, 94:15
**fairly** [3] - 34:24, 71:5, 103:17
**fallback** [1] - 71:2
**far** [4] - 8:18, 50:19, 69:17, 86:14
**fashion** [1] - 68:12
**fast** [1] - 8:4
**faster** [2] - 23:5, 43:10
**favor** [1] - 98:3
**feature** [2] - 30:11, 30:15
**features** [3] - 29:4, 29:10, 31:17
**February** [3] - 106:2, 108:14, 109:19
**Fed** [1] - 40:5
**Federal** [23] - 12:14, 13:10, 22:21, 25:23, 26:18, 27:16, 29:1, 29:12, 30:8, 32:13, 34:23, 35:6, 35:8, 40:8, 40:19, 40:23, 41:23, 47:11,

75:4, 77:23, 78:19, 78:22, 87:15
**federal** [2] - 75:22, 78:2
**FEE** [1] - 117:14
**FEES** [1] - 117:14
**FERGUSON** [1] - 2:22
**fewer** [1] - 107:16
**field** [2] - 57:1, 63:18
**Fig** [9] - 10:19, 17:14, 31:4, 31:6, 31:14, 33:25, 34:1, 34:3, 36:15
**fighting** [1] - 75:13
**figure** [4] - 34:1, 36:16, 58:7, 59:7
**figures** [2] - 27:23, 29:18
**file** [17] - 21:15, 54:20, 54:25, 58:18, 62:7, 99:16, 100:5, 101:15, 101:22, 102:22, 103:7, 103:22, 105:18, 109:6, 109:15, 112:23, 116:21
**filed** [1] - 104:24
**filing** [2] - 103:5, 117:7
**final** [3] - 17:12, 77:13, 109:18
**financial** [1] - 92:17
**fine** [7] - 18:3, 48:24, 67:15, 109:12, 109:13, 109:17, 109:18
**firm** [2] - 41:7, 42:25
**first** [26] - 8:2, 12:21, 17:1, 19:21, 23:15, 25:5, 25:11, 28:19, 30:1, 43:9, 50:8, 54:2, 69:4, 69:13, 69:21, 83:6, 85:16, 88:17, 92:23, 95:2, 104:23, 106:10, 107:6, 107:12, 108:16, 114:12
**FIRST** [1] - 1:24
**Fish** [2] - 5:8, 5:11
**FISH** [2] - 2:15, 2:18
**fishing** [1] - 111:2
**fit** [2] - 30:18, 30:21
**five** [7] - 4:14, 65:25, 66:22, 67:23, 103:23, 104:1
**five-page** [2] - 103:23, 104:1
**fix** [5] - 81:17, 81:18, 93:10, 105:14, 105:17
**fleshed** [2] - 17:15, 17:20
**FLOOR** [3] - 1:24, 2:4, 2:16
**flows** [4] - 23:4, 45:12, 49:7, 52:25
**focus** [8] - 12:6, 12:20, 13:1, 13:3, 15:23, 19:16, 33:19, 53:8
**focused** [2] - 12:6, 25:11, 54:25
**focusing** [1] - 58:19
**folks** [2] - 67:3, 107:16
**follow** [1] - 77:14

**follows** [1] - 48:25
**footnote** [8] - 38:23, 39:4,
39:10, 40:10, 41:19, 41:25,
51:11
**footnotes** [1] - 38:15
**FOR** [1] - 117:14
**forbid** [1] - 84:7
**force** [3] - 95:22, 96:14, 99:2
**FOREGOING** [1] - 117:11
**forget** [1] - 62:14, 68:25
**forgive** [2] - 43:16, 43:18
**forgotten** [2] - 85:18, 109:24
**form** [2] - 48:5, 59:25
**formed** [1] - 36:11
**forming** [7] - 36:8, 37:6,
54:5, 54:23, 55:21, 56:11
**forms** [1] - 72:12
**formulate** [1] - 92:6
**forth** [11] - 14:11, 14:16,
54:13, 56:4, 56:18, 58:14,
60:9, 60:19, 61:16, 108:4,
114:7
**Fortress** [1] - 67:5
**forward** [4] - 17:13, 74:12,
85:12, 117:6
**foundational** [3] - 12:16,
13:7, 26:14
**four** [5] - 4:11, 8:25, 28:21,
31:7, 78:18
**fours** [1] - 96:17
**fourth** [1] - 54:24
**FOURTH** [1] - 1:24
**frame** [1] - 10:11
**framework** [1] - 87:19
**FRANCISCO** [1] - 3:3
**frankly** [5] - 12:3, 17:11,
50:3, 52:23, 53:7
**fresh** [1] - 41:16
**Friday** [2] - 104:2, 116:13
**front** [3] - 16:7, 82:20, 89:20
**full** [3] - 29:13, 36:16, 48:5
**fully** [2] - 84:19, 93:13
**function** [7] - 30:8, 33:4,
39:22, 49:6, 55:2, 57:13,
62:10
**functional** [8] - 26:12, 30:11,
54:17, 54:25, 57:20, 58:13,
58:21, 60:6
**functionality** [3] - 50:9, 59:7,
59:12
**functions** [2] - 25:14, 60:12
**fundamentally** [2] - 10:9,
15:24
**future** [2] - 82:21, 83:5

### G

**gallery** [2] - 67:3, 67:7
**gaping** [1] - 102:14
**GATES** [2] - 2:3, 2:7

**Gates** [2] - 4:21, 8:19
**gateway** [1] - 49:23
**gateways** [1] - 90:7
**general** [6] - 31:3, 56:25,
57:4, 59:13, 60:1, 109:18
**general-process** [1] - 57:4
**general-purpose** [2] - 56:25,
60:1
**generalized** [2] - 26:3, 59:25
**generic** [16] - 15:6, 15:7,
15:11, 15:13, 25:15, 25:18,
26:5, 26:11, 31:16, 57:14,
57:17, 57:21, 58:1, 58:6,
60:7, 60:10
**GEORGE** [1] - 2:6
**giant** [1] - 84:9
**given** [6] - 32:24, 52:9,
66:20, 88:17, 101:14,
105:21
**goal** [1] - 7:23
**Goodrich** [2] - 4:21, 108:9
**GOODRICH** [22] - 2:3, 4:21,
8:22, 106:13, 106:20,
106:23, 107:4, 108:19,
108:21, 108:23, 109:1,
109:10, 109:25, 110:7,
110:18, 111:23, 112:3,
112:6, 112:8, 112:14,
113:4, 116:1
**Google** [1] - 40:17
**gotcha** [1] - 47:24
**grand** [1] - 21:6
**grant** [1] - 88:25
**granted** [2] - 70:3, 70:7
**granting** [1] - 70:15
**graphical** [1] - 10:18
**grasp** [1] - 8:8
**great** [4] - 9:5, 18:25, 27:22,
104:12
**ground** [1] - 8:10
**groundbreaking** [2] - 27:4,
27:8
**grounds** [1] - 72:14
**Group** [5] - 55:15, 55:22,
56:4, 58:25, 59:8
**guess** [7] - 85:24, 85:25,
94:3, 99:7, 111:1, 116:7,
116:9
**guidance** [3] - 106:12,
111:15, 114:8

### H

**half** [1] - 7:2
**hand** [7] - 8:14, 9:5, 9:8,
9:18, 77:16, 104:20,
104:21
**handed** [1] - 113:9
**handle** [1] - 44:2
**handling** [1] - 5:3

**handy** [1] - 41:16
**Hanft** [1] - 6:20
**happy** [6] - 65:23, 66:4,
82:17, 103:13, 111:19
**hard** [2] - 8:17, 37:20
**Hawk** [1] - 35:5
**head** [1] - 68:14
**header** [11] - 20:22, 23:1,
24:2, 24:3, 36:10, 36:13,
36:17, 36:25, 37:2, 37:3
**headers** [3] - 20:7, 20:17,
37:1
**hear** [11] - 7:23, 8:2, 19:8,
43:8, 53:14, 65:21, 67:3,
76:14, 87:2, 93:11, 107:13
**heard** [6] - 27:20, 27:25,
92:15, 96:8, 103:1, 105:13
**HEARING** [1] - 1:17
**hearing** [5] - 83:6, 106:2,
108:14, 112:22, 116:17
**hearings** [1] - 92:16
**held** [5] - 14:2, 47:3, 47:11,
52:10, 84:9
**helpful** [7] - 7:19, 53:12,
66:20, 71:12, 100:8, 103:9,
115:21
**HEREBY** [1] - 117:11
**hide** [2] - 96:13
**hideously** [1] - 7:18
**high** [7] - 11:10, 13:18,
21:16, 35:17, 35:18, 35:20,
90:16
**high-priority** [4] - 21:16,
35:17, 35:18, 35:20
**high-quality** [1] - 90:16
**high-speed** [2] - 11:10,
13:18
**highlight** [1] - 74:13
**history** [15] - 31:18, 45:7,
45:8, 45:15, 45:18, 46:1,
46:11, 46:15, 46:16, 46:23,
54:20, 54:25, 58:19, 62:7
**hit** [1] - 84:17
**HOLCOMB** [1] - 1:3
**hold** [21] - 14:4, 16:2, 17:11,
17:22, 24:17, 26:19, 32:16,
42:20, 50:21, 51:5, 51:13,
62:23, 66:6, 71:7, 73:24,
74:4, 74:6, 89:16, 94:24,
95:21, 98:25
**holding** [1] - 84:10
**holds** [2] - 19:19, 52:7
**hole** [1] - 102:14
**home** [2] - 11:11, 79:21
**homes** [1] - 10:16
**honestly** [1] - 80:23
**honor** [2] - 95:1, 95:13
**Honor** [248] - 4:25, 5:7, 5:11,
5:18, 5:19, 5:24, 6:7, 6:11,
6:18, 8:5, 8:13, 8:22, 9:6,

9:10, 9:19, 9:23, 10:5,
10:8, 10:22, 12:4, 12:17,
13:2, 14:8, 15:21, 16:11,
16:23, 17:25, 19:11, 20:11,
24:20, 24:24, 25:2, 26:23,
27:16, 28:10, 29:23, 31:1,
31:21, 32:3, 32:4, 32:9,
33:2, 33:23, 34:10, 36:21,
37:9, 37:16, 38:10, 38:23,
40:25, 41:12, 41:13, 41:21,
42:17, 42:24, 42:25, 43:11,
44:19, 45:1, 50:20, 51:10,
51:22, 53:13, 53:16, 53:18,
53:22, 54:16, 55:14, 56:5,
56:17, 57:15, 58:4, 58:11,
58:23, 59:14, 59:22, 60:8,
60:15, 60:20, 61:4, 61:13,
61:17, 62:3, 62:8, 62:24,
63:1, 63:3, 64:10, 64:16,
65:10, 66:2, 66:18, 66:23,
67:11, 67:14, 67:20, 68:7,
68:23, 69:1, 69:5, 69:13,
69:18, 69:19, 69:25, 70:1,
70:4, 70:18, 70:20, 70:24,
71:4, 71:10, 71:23, 72:6,
72:11, 72:18, 72:19, 72:22,
73:6, 73:12, 73:14, 73:19,
73:25, 74:8, 74:10, 74:24,
75:10, 75:19, 75:20, 75:21,
76:11, 77:2, 77:12, 77:14,
77:17, 77:25, 78:3, 78:10,
78:14, 78:18, 78:21, 79:5,
79:12, 79:15, 80:5, 80:10,
80:21, 80:22, 81:2, 81:10,
81:19, 81:22, 82:3, 82:20,
82:22, 83:3, 83:5, 83:21,
84:1, 84:17, 84:23, 84:25,
85:8, 85:20, 86:4, 86:22,
87:1, 87:4, 87:9, 88:16,
89:2, 89:5, 89:15, 89:22,
90:2, 90:25, 91:10, 91:20,
91:22, 92:15, 93:4, 93:13,
93:16, 93:17, 93:23, 94:3,
94:14, 94:18, 94:19, 95:6,
95:15, 96:5, 96:25, 98:9,
98:17, 99:12, 99:24,
100:11, 100:17, 101:12,
101:24, 102:24, 103:5,
103:10, 103:11, 103:15,
103:25, 104:3, 104:8,
104:12, 104:15, 105:6,
105:10, 106:13, 106:17,
106:21, 107:8, 107:13,
107:21, 108:3, 108:7,
108:21, 108:23, 109:2,
109:20, 110:1, 110:7,
110:11, 110:16, 110:18,
111:1, 111:17, 111:23,
112:14, 112:15, 112:16,
112:17, 113:4, 113:5,
113:19, 113:22, 113:23,

114:4, 114:22, 115:12, 116:1, 116:6, 116:24
**Honor's** [8] - 25:8, 56:1, 56:19, 57:23, 75:23, 79:11, 84:3, 96:18
**HONORABLE** [1] - 1:3
**hope** [4] - 7:5, 7:19, 99:17, 110:2
**hoped** [1] - 43:6
**hopefully** [4] - 104:5, 108:17, 109:3, 116:19
**hoping** [2] - 107:13, 110:23
**hostage** [1] - 98:25
**hotly** [1] - 80:9
**hour** [1] - 7:2
**hours** [2] - 6:24, 114:6
**house** [3] - 11:3, 66:14, 91:7
**housekeeping** [1] - 66:24
**huge** [1] - 11:19
**hypothetical** [1] - 75:25

**I**

**IBG** [1] - 26:17
**ID** [2] - 71:18, 72:7
**idea** [35] - 12:18, 12:19, 22:17, 22:23, 24:12, 27:3, 27:25, 29:15, 34:18, 34:19, 34:20, 34:22, 35:2, 35:10, 38:6, 39:13, 39:23, 40:13, 42:19, 45:17, 50:20, 54:5, 54:18, 56:20, 57:24, 59:21, 64:1, 64:20, 65:5, 88:4, 94:7, 94:20, 94:21, 100:14, 115:6
**ideal** [1] - 11:4
**identification** [1] - 116:10
**identified** [5] - 16:15, 19:17, 61:22, 81:4, 109:17
**identifies** [1] - 22:25
**identifying** [1] - 55:8
**ignore** [2] - 61:5, 62:9
**IL** [1] - 2:8
**illusory** [4] - 88:7, 88:11, 94:12, 94:25
**immediately** [1] - 81:8
**Immersion** [2] - 45:25, 46:3
**impact** [1] - 100:4
**impacting** [1] - 96:10
**impacts** [3] - 47:22, 47:24, 96:14
**implausible** [1] - 30:10
**implementation** [1] - 26:1
**implemented** [1] - 56:24
**implementing** [1] - 57:2
**implicate** [1] - 82:9
**implicates** [1] - 73:5
**implication** [1] - 75:11
**implications** [1] - 83:13
**implies** [1] - 37:10

**import** [5] - 29:2, 33:18, 60:21, 61:10
**importance** [1] - 75:7
**important** [12] - 10:21, 11:13, 11:23, 12:2, 12:9, 22:22, 27:15, 35:14, 48:1, 50:11, 61:5, 103:19
**importing** [2] - 60:16, 61:6
**imports** [1] - 30:10
**imposed** [1] - 36:10
**impossible** [1] - 67:8
**impressed** [1] - 21:7
**improper** [1] - 60:23
**improved** [1] - 46:8
**improvement** [4] - 12:16, 26:2, 34:10, 64:23
**improvements** [1] - 26:14
**improves** [1] - 33:15
**IN** [2] - 117:12, 117:15
**inapplicable** [1] - 74:18
**Inc** [5] - 4:6, 4:12, 22:19, 40:17, 47:10
**INC** [2] - 1:9, 3:1
**inclined** [1] - 105:12
**include** [8] - 20:11, 31:17, 31:18, 64:22, 99:8, 113:17, 115:10, 116:5
**included** [4] - 20:8, 20:17, 37:21, 38:8
**includes** [2] - 20:22, 23:1
**including** [4] - 31:3, 36:17, 57:5, 67:4
**inconsistent** [1] - 36:21
**inconsistently** [3] - 79:25, 80:4, 84:12
**incorrect** [1] - 52:7
**increased** [5] - 20:4, 20:15, 20:25, 23:4, 35:1
**increasing** [1] - 35:2
**incredibly** [1] - 55:16
**indicating)** [1] - 74:10
**individual** [1] - 38:3
**industry** [5] - 11:18, 18:24, 89:25, 90:17, 90:18
**inform** [1] - 110:23
**information** [25] - 20:8, 34:8, 34:10, 34:12, 34:15, 34:17, 34:18, 34:21, 54:6, 56:4, 56:12, 57:25, 60:11, 67:2, 67:4, 67:9, 69:11, 80:13, 92:14, 92:20, 95:7, 96:13, 96:19, 103:12, 116:14
**infrastructure** [2] - 14:20, 14:25
**infringe** [1] - 84:25
**infringed** [1] - 88:3, 88:5, 94:10
**infringement** [38] - 16:17, 70:21, 74:25, 75:17, 75:22, 76:4, 76:7, 76:17, 76:21,

76:24, 78:4, 81:24, 82:1, 82:4, 82:6, 82:8, 82:10, 82:24, 83:2, 83:16, 83:18, 84:2, 84:6, 84:8, 84:10, 84:14, 84:22, 91:2, 91:11, 92:7, 92:21, 93:2, 93:3, 96:9, 96:14, 99:20, 99:22, 101:3
**infringer** [1] - 76:1
**infringing** [5] - 80:3, 85:6, 91:12, 94:23, 96:17
**inherent** [1] - 37:8
**initiation** [1] - 98:6
**innovation** [1] - 17:9
**inquiry** [1] - 13:4
**insofar** [4] - 49:14, 52:7, 52:17, 52:22
**instance** [1] - 79:14
**instances** [2] - 92:23, 102:10
**instant** [1] - 70:2
**instead** [4] - 18:1, 25:6, 46:17, 77:12
**instructed** [1] - 29:1
**instructive** [3] - 55:16, 56:6, 73:22
**integrated** [1] - 82:2
**integrity** [1] - 39:22
**Intellectual** [5] - 40:4, 40:11, 40:23, 43:4
**intended** [1] - 95:1, 95:13
**intention** [1] - 88:12, 95:23
**interconnections** [2] - 14:18, 14:19
**interest** [3] - 69:2, 72:15, 73:8
**internet** [4] - 21:23, 63:16, 90:9
**interpret** [1] - 73:17
**interpretation** [2] - 80:18, 84:20
**interpreting** [1] - 101:1
**interrogatories** [1] - 114:7
**interrupting** [1] - 43:18
**intrinsic** [1] - 18:12
**introduce** [2] - 6:19, 40:12
**invalid** [1] - 15:16
**invalidity** [1] - 76:20
**invented** [4] - 10:14, 21:5, 21:11, 44:5
**invention** [13] - 12:23, 12:24, 13:11, 13:25, 14:3, 15:1, 17:9, 20:14, 29:14, 38:7, 57:2, 57:8
**inventive** [15] - 14:4, 20:2, 22:16, 24:13, 27:4, 30:16, 30:23, 33:8, 34:23, 37:7, 46:23, 57:18, 59:23, 60:9, 65:6
**inventiveness** [3] - 37:12, 43:14, 65:2

**inventors** [1] - 38:1
**investment** [1] - 95:9
**invoke** [1] - 95:12
**invoked** [1] - 93:1
**involved** [4] - 79:17, 107:16, 109:22, 111:20
**involvement** [1] - 95:8
**involving** [1] - 7:9
**IOENGINE** [1] - 26:7
**IP** [3] - 2:10, 13:23, 63:16
**IS** [1] - 117:11
**Isaacson** [3] - 5:20, 53:17, 62:2
**ISAACSON** [20] - 3:1, 5:19, 53:16, 54:11, 55:10, 58:4, 61:13, 62:3, 62:24, 63:1, 63:3, 64:5, 64:10, 64:12, 64:16, 108:3, 109:20, 112:15, 113:22, 115:25
**ish** [1] - 108:17
**issue** [34] - 17:12, 38:14, 40:3, 40:7, 62:7, 69:16, 69:19, 73:5, 75:5, 78:6, 78:7, 78:12, 79:3, 82:10, 82:18, 83:3, 86:3, 86:5, 86:6, 86:22, 87:18, 90:2, 92:17, 97:4, 97:14, 99:8, 100:13, 103:19, 103:20, 108:9, 110:14, 111:14, 114:8
**issued** [3] - 28:21, 40:8, 40:19
**issues** [14] - 8:8, 41:12, 67:18, 75:21, 79:7, 80:15, 80:17, 81:3, 84:18, 87:16, 97:9, 105:6, 110:20, 114:11
**issuing** [1] - 77:12
**item** [7] - 4:3, 4:5, 4:8, 4:11, 4:14, 72:23, 79:23
**iteration** [1] - 115:3
**itself** [15] - 12:9, 13:12, 14:21, 27:3, 36:5, 36:6, 36:15, 37:9, 38:8, 39:22, 45:17, 50:4, 64:17, 65:6, 68:21

**J**

**JAMES** [1] - 2:6
**James** [1] - 6:20
**Jim** [1] - 4:19
**JOHN** [1] - 1:3
**join** [1] - 18:9
**joined** [1] - 4:22
**JUDGE** [1] - 1:3
**judge** [2] - 97:1, 97:2
**Judge** [2] - 45:24, 46:5
**Judgment** [1] - 77:6
**judgment** [9] - 74:17, 74:18,

79:3, 82:23, 98:3, 98:4, 102:4, 102:6, 102:12
**judicial** [1] - 78:15
**JUDICIAL** [1] - 117:16
**jurisdiction** [26] - 72:2, 72:21, 72:25, 73:8, 74:22, 75:1, 75:9, 75:20, 75:21, 75:23, 77:2, 77:3, 77:7, 78:3, 78:19, 78:25, 80:24, 87:15, 88:14, 93:2, 97:9, 97:11, 100:2, 102:8, 103:10
**jurisdictional** [1] - 110:15

## K

**K&L** [2] - 4:21, 8:19
**kaiser** [4] - 111:11, 111:15, 111:19, 113:25
**KAISER** [4] - 111:17, 114:2, 114:4, 114:13
**Kansas** [1] - 13:24
**keep** [9] - 10:21, 15:6, 15:22, 19:9, 19:10, 43:10, 66:21, 67:23, 101:7
**keeps** [3] - 91:2, 99:2, 99:3
**Kelsi** [1] - 4:24
**Ken** [1] - 4:23
**KENNETH** [1] - 2:9
**kept** [1] - 24:1
**Kevin** [1] - 6:14
**key** [1] - 27:15
**KEYZER** [1] - 3:7
**kick** [3] - 78:5, 78:7, 95:19
**kicking** [1] - 79:2
**Kilpatrick** [1] - 5:20
**KILPATRICK** [1] - 3:1
**kind** [11] - 8:8, 11:2, 28:3, 55:4, 60:20, 61:1, 63:10, 79:1, 80:15, 100:9, 103:20
**kinds** [1] - 37:1
**King** [2] - 76:11, 76:15
**knowledge** [5] - 8:6, 22:1, 91:11, 91:12, 107:2
**known** [7] - 23:23, 24:7, 24:14, 48:3, 57:1, 63:17
**knows** [2] - 62:8, 90:17
**KRISHNAN** [1] - 2:21
**Krishnan** [3] - 5:25, 6:9, 6:11
**Kronstadt** [1] - 46:5
**Kronstadt's** [1] - 45:24

## L

**L2ME** [5] - 51:17, 51:23, 52:4, 52:10, 52:18
**lack** [1] - 73:7
**lacking** [2] - 13:5, 24:13
**LACV-23-01047** [1] - 4:7
**LACV23-01043-JWH** [1] - 1:8

**LACV23-01048-JWH** [1] - 1:9
**LACV23-01049-JWH** [1] - 1:9
**LACV23-01050-JWH** [1] - 1:8
**laid** [3] - 31:16, 73:15, 73:16
**language** [8] - 33:20, 33:21, 36:4, 36:6, 36:22, 48:9, 50:4, 101:1
**laptop** [1] - 41:8
**large** [2] - 11:19, 115:17
**last** [15] - 23:9, 26:15, 26:22, 26:23, 30:25, 32:14, 32:21, 51:21, 69:8, 72:7, 75:7, 93:21, 97:24, 106:1, 113:8
**lastly** [2] - 38:10, 50:23
**law** [29] - 9:15, 10:2, 15:13, 15:18, 54:1, 54:13, 58:10, 61:5, 75:16, 78:1, 87:14, 88:6, 91:6, 92:9, 93:7, 94:12, 95:3, 95:14, 95:20, 95:21, 97:18, 100:21, 100:24, 100:25, 101:1, 101:2, 101:8, 101:19
**lawsuit** [3] - 90:2, 98:7, 99:16
**lawsuits** [1] - 92:16
**lay** [1] - 11:15
**Layer** [1] - 51:16
**layer** [22] - 21:22, 21:23, 21:24, 21:25, 22:10, 22:11, 22:13, 22:14, 44:9, 44:10, 49:2, 49:4, 49:6, 50:9, 50:17, 51:24, 52:2, 60:16, 64:20, 66:7, 68:12
**layers** [3] - 35:19, 35:21, 50:10
**laying** [3] - 27:6, 27:10, 43:13
**lays** [2] - 18:12, 18:23
**Lazarus** [1] - 85:7
**Lazarus-type** [1] - 85:7
**lead** [1] - 106:24
**Leah** [1] - 5:21
**least** [10] - 8:1, 32:10, 48:11, 48:16, 49:5, 81:14, 91:11, 106:8, 115:21, 116:9
**leave** [6] - 70:3, 70:16, 88:25, 93:6, 103:1, 105:14
**lectern** [4] - 101:25, 102:1, 106:25, 114:3
**left** [3] - 59:1, 81:9, 93:4
**legacy** [1] - 95:9
**Leiden** [1] - 6:13
**length** [4] - 45:15, 45:18, 46:22, 92:15
**lengthy** [5] - 45:7, 56:2, 58:20, 59:9, 64:24
**Lenning** [1] - 4:23
**less** [2] - 103:12, 109:11
**LESS** [1] - 117:14
**lesson** [1] - 95:18

**letter** [6] - 94:10, 94:21, 94:22, 96:8, 96:9, 97:6
**level** [2] - 22:13, 26:12
**lexicographer** [6] - 45:13, 47:3, 48:19, 62:16, 63:8, 63:20
**license** [8] - 76:22, 77:20, 77:22, 78:24, 80:5, 82:2, 85:4, 85:11
**licenses** [1] - 75:18
**licensor** [2] - 85:18, 85:23
**light** [1] - 49:25
**likely** [1] - 93:6
**likewise** [1] - 43:8
**limit** [2] - 115:10, 116:22
**limitation** [2] - 18:7, 60:17
**limitations** [10] - 30:11, 33:18, 54:25, 58:21, 114:18, 114:23, 114:24, 115:11, 116:20, 116:23
**limited** [3] - 11:6, 51:19, 81:11
**line** [12] - 20:14, 28:15, 28:20, 54:15, 62:21, 63:1, 64:6, 64:11, 71:22, 72:8, 75:5
**lines** [9] - 28:5, 31:7, 36:19, 47:20, 47:22, 64:7, 64:13, 104:22
**link** [8] - 14:24, 17:20, 18:13, 18:17, 27:7, 27:10, 30:14, 30:20
**links** [5] - 14:12, 14:14, 14:21, 14:22, 15:2
**list** [5] - 54:5, 54:23, 115:15, 115:20, 116:12
**litigation** [2] - 98:25, 102:13
**lives** [1] - 44:10
**LLC** [7] - 1:4, 2:3, 4:9, 4:15, 4:20, 4:22, 47:10
**LLP** [4] - 2:3, 2:7, 2:22, 3:2
**lodge** [4] - 113:1, 113:5, 113:15
**lodging** [1] - 113:20
**log** [1] - 41:8
**logical** [14] - 14:12, 14:14, 14:21, 14:22, 14:24, 15:2, 17:20, 18:13, 18:16, 18:20, 27:7, 27:10, 30:14
**look** [30] - 13:10, 17:22, 18:1, 22:2, 23:6, 23:11, 23:24, 28:19, 30:4, 41:25, 43:21, 47:16, 47:18, 49:25, 51:11, 55:20, 56:9, 57:11, 62:19, 70:24, 71:13, 73:18, 75:10, 77:17, 87:13, 90:24, 96:17, 107:14, 117:6
**looked** [6] - 16:5, 16:11, 43:23, 77:24
**looking** [11] - 7:13, 10:3,

18:25, 35:23, 38:20, 46:18, 51:9, 61:9, 104:24, 104:25, 106:1
**looks** [6] - 40:7, 40:10, 43:22, 69:19, 74:10, 84:24
**LOS** [3] - 1:25, 2:5, 2:17

## M

**MAC** [4] - 22:11, 23:2, 24:2, 24:3
**machine** [6] - 15:4, 22:14, 50:9, 50:10, 50:13, 50:17
**machines** [3] - 14:20, 15:11, 15:15
**Maclear** [1] - 14:17
**Madam** [1] - 65:16
**MADISON** [1] - 2:7
**MAINE** [1] - 2:19
**maintains** [1] - 74:25
**major** [2] - 89:25, 107:18
**management** [1] - 49:5
**Management** [2] - 51:16, 51:23
**manages** [2] - 49:2, 49:22
**managing** [2] - 44:11, 45:4
**manipulation** [2] - 35:9, 35:10
**Marble** [1] - 13:23
**Marchese** [5] - 5:8, 5:10, 9:10, 25:1, 42:9
**MARCHESE** [17] - 2:15, 5:7, 9:10, 9:13, 9:16, 9:19, 25:2, 25:5, 26:21, 26:23, 26:25, 27:2, 28:10, 28:13, 29:23, 30:7, 31:25
**mark** [1] - 45:8
**marks** [1] - 48:8
**Master** [3] - 111:10, 111:11, 117:5
**MASTER** [1] - 3:7
**material** [3] - 26:11, 80:12, 84:16
**math** [1] - 39:23
**MATTER** [1] - 117:13
**matter** [34] - 14:19, 14:23, 19:3, 27:4, 27:9, 39:18, 41:2, 42:7, 46:1, 64:19, 72:2, 72:21, 72:25, 73:8, 74:21, 75:1, 75:9, 75:16, 78:3, 78:15, 80:24, 82:11, 82:16, 82:19, 87:15, 88:14, 92:2, 93:2, 97:9, 97:10, 100:2, 100:22, 102:8, 103:10
**matters** [1] - 7:1
**Maxell** [1] - 12:14
**maximum** [1] - 58:7
**MaxLinear** [24] - 84:12, 85:22, 85:23, 85:24, 86:1,

86:11, 89:10, 89:14, 89:15, 89:24, 90:17, 91:1, 91:25, 92:15, 92:17, 92:21, 94:9, 94:22, 96:7, 97:5, 98:2, 98:13, 99:6, 99:8

**maxLinear** [3] - 86:10, 86:17, 92:19

**MaxLinear's** [7] - 86:12, 90:6, 92:14, 92:20, 96:20, 98:19, 99:7

**Mayo** [1] - 65:5

**mean** [29] - 10:10, 14:14, 14:22, 15:2, 17:17, 17:20, 43:23, 44:22, 48:20, 51:25, 59:10, 64:21, 65:4, 65:6, 66:2, 75:8, 78:5, 78:7, 79:21, 80:19, 95:1, 101:17, 103:9, 103:17, 105:22, 109:12, 114:23, 115:2, 115:6

**meaning** [1] - 75:17

**meaningfully** [1] - 109:4

**meanings** [1] - 80:10

**means** [11] - 15:13, 50:15, 63:13, 77:14, 79:9, 81:1, 84:7, 85:13, 95:13, 100:23, 101:2

**meant** [2] - 50:11, 85:14

**meantime** [2] - 98:24, 114:9

**measure** [1] - 84:2

**measured** [1] - 27:17

**meat** [1] - 19:25

**mechanism** [1] - 114:15

**media** [1] - 37:3

**medium** [1] - 11:4

**meet** [7] - 55:9, 77:7, 106:4, 106:11, 108:11, 116:3, 116:18

**memorializing** [1] - 112:22

**memories** [1] - 26:9

**mentioned** [5] - 13:6, 25:20, 26:13, 34:25, 35:17

**merely** [1] - 76:4

**mesh** [17] - 14:22, 14:24, 16:24, 17:6, 18:17, 18:20, 29:8, 31:10, 31:13, 42:14, 42:18, 48:5, 49:9, 49:13, 50:14, 66:3, 66:12

**message** [3] - 18:8, 51:24, 54:24

**messages** [6] - 49:3, 51:17, 51:23, 52:4, 52:10, 52:18

**messy** [1] - 11:1

**met** [1] - 38:12

**method** [4] - 23:23, 37:18, 45:3, 59:24

**Michael** [1] - 5:22

**microphone** [1] - 6:3

**middle** [3] - 32:20, 105:24, 106:1

**might** [7] - 33:12, 59:9, 69:11, 79:23, 81:2, 84:23, 110:23

**million** [1] - 38:3

**millions** [1] - 90:7

**mind** [3] - 10:21, 41:16, 76:18

**mindful** [2] - 15:22, 69:12

**mine** [1] - 9:18

**minimum** [2] - 42:19, 52:10

**minute** [5] - 41:10, 41:12, 42:21, 74:19, 112:21

**minutes** [5] - 7:2, 8:3, 41:11, 66:22, 67:23

**miracle** [1] - 85:8

**MIRIAM** [2] - 1:23, 117:19

**Miriam** [1] - 117:18

**misconceptions** [1] - 90:5

**mislead** [2] - 81:22, 83:5

**misrepresent** [2] - 68:11, 68:15

**miss** [1] - 83:15

**missed** [2] - 45:8, 114:21

**missing** [1] - 95:15

**mistake** [2] - 39:4, 70:19

**MoCA** [46] - 7:7, 10:10, 10:15, 11:18, 11:25, 22:11, 23:2, 27:22, 33:25, 34:1, 34:2, 43:15, 44:4, 44:10, 47:22, 49:3, 49:4, 65:2, 65:5, 68:5, 68:15, 68:20, 95:9, 104:20, 104:23, 106:6, 106:10, 106:15, 107:5, 107:12, 107:18, 107:24, 108:5, 108:16, 109:22, 110:4, 111:24, 112:1, 112:7, 112:9, 114:19, 115:7, 115:20

**model** [4] - 21:22, 35:19, 35:21, 50:11

**modems** [1] - 90:7

**module** [2] - 23:16, 36:3

**moment** [5] - 6:18, 82:5, 94:19, 99:6, 102:1

**MONICA** [1] - 2:4

**month** [3] - 69:8, 99:8, 106:8

**months** [6] - 97:16, 97:23, 98:1, 98:6, 98:21, 108:17

**moot** [1] - 78:2

**morning** [20] - 5:4, 5:7, 5:10, 5:16, 5:18, 5:19, 5:23, 5:24, 6:7, 6:8, 6:11, 6:16, 6:25, 25:2, 32:4, 53:16, 68:1, 69:7, 100:18, 113:8

**most** [3] - 25:25, 81:23, 103:15

**motion** [27] - 7:2, 7:9, 8:20, 8:24, 39:2, 41:17, 42:7, 43:8, 68:4, 69:3, 70:2, 70:3, 70:12, 70:14, 72:20,

74:2, 74:9, 77:16, 79:3, 81:3, 81:8, 81:10, 81:11, 82:21, 93:19, 104:14, 110:20

**MOTION** [1] - 1:17

**Motion** [4] - 71:19, 71:20, 71:21

**motions** [9] - 5:1, 5:2, 7:10, 7:25, 9:4, 72:12, 82:20, 112:20

**move** [12] - 12:22, 12:24, 14:8, 17:13, 19:6, 41:12, 43:7, 57:9, 69:3, 86:24, 96:22, 104:18

**moved** [2] - 69:25, 106:17

**moves** [1] - 72:2

**moving** [2] - 14:7, 39:1

**MR** [207] - 4:19, 5:7, 5:11, 5:18, 5:24, 6:4, 6:7, 6:18, 8:5, 8:12, 9:3, 9:6, 9:8, 9:10, 9:13, 9:16, 9:18, 9:19, 9:22, 9:25, 10:5, 10:7, 13:9, 14:7, 16:9, 16:14, 16:20, 17:17, 17:24, 18:3, 18:7, 19:6, 19:11, 19:15, 21:9, 23:14, 24:23, 25:2, 25:5, 26:21, 26:23, 26:25, 27:2, 28:10, 28:13, 29:23, 30:7, 31:25, 32:3, 32:7, 32:18, 32:20, 32:23, 34:15, 38:22, 39:1, 39:6, 39:8, 39:10, 40:25, 41:4, 41:7, 41:11, 41:15, 41:19, 41:21, 42:24, 42:25, 43:3, 43:10, 43:17, 43:20, 43:22, 43:25, 44:17, 44:19, 44:21, 47:9, 47:24, 48:14, 49:12, 51:1, 51:7, 51:10, 51:15, 52:16, 53:10, 53:13, 61:17, 61:21, 61:25, 65:14, 65:19, 65:22, 66:10, 66:23, 67:10, 67:14, 67:20, 68:7, 68:9, 68:19, 69:1, 69:5, 69:7, 69:24, 70:10, 70:13, 70:17, 71:4, 71:9, 71:14, 71:17, 71:22, 71:25, 72:5, 72:10, 72:18, 73:4, 73:11, 73:22, 73:25, 74:5, 74:8, 74:12, 74:16, 76:10, 77:11, 78:9, 79:4, 80:17, 80:21, 81:16, 81:18, 82:1, 82:15, 83:20, 85:19, 85:22, 86:3, 86:11, 86:25, 87:4, 87:8, 87:12, 89:2, 89:5, 89:8, 89:17, 89:22, 89:24, 91:24, 93:13, 93:23, 94:3, 94:18, 96:5, 96:25, 98:8, 98:12, 98:14, 98:17, 99:10, 99:12, 99:23, 100:11, 101:21, 101:24, 102:21, 102:24, 103:4,

103:9, 103:24, 104:3, 104:8, 104:12, 104:15, 105:1, 105:5, 105:9, 107:8, 107:11, 107:21, 107:24, 108:7, 109:12, 110:10, 110:16, 111:1, 111:17, 112:16, 112:17, 113:5, 113:12, 113:19, 113:23, 114:2, 114:4, 114:13, 114:22, 115:1, 115:12, 115:15, 115:23, 116:6, 116:24, 117:2

**MS** [40] - 4:21, 5:19, 8:22, 53:16, 54:11, 55:10, 58:4, 61:13, 62:3, 62:24, 63:1, 63:3, 64:5, 64:10, 64:12, 64:16, 106:13, 106:20, 106:23, 107:4, 108:3, 108:19, 108:21, 108:23, 109:1, 109:10, 109:20, 109:25, 110:7, 110:18, 111:23, 112:3, 112:6, 112:8, 112:14, 112:15, 113:4, 113:22, 115:25, 116:1

**mucking** [1] - 61:1

**multimedia** [1] - 47:21

**multiple** [1] - 37:8

**multitude** [1] - 28:6

**must** [5] - 30:9, 33:21, 77:7, 95:22

**muster** [2] - 19:2, 23:8

**MVB11893@aol.com** [1] - 1:25

## N

**name** [2] - 6:20, 43:1

**narrow** [1] - 45:20

**narrower** [1] - 31:19

**NASHVILLE** [1] - 2:11

**natural** [2] - 90:11, 90:22

**nature** [2] - 38:7, 90:19

**navigate** [1] - 67:21

**NC** [4] - 48:2, 48:3, 48:10, 63:5

**necessarily** [5] - 37:9, 52:18, 60:25, 79:11, 99:7

**necessary** [6] - 16:1, 17:2, 60:19, 62:13, 90:15, 110:25

**need** [40] - 8:8, 8:10, 11:17, 11:23, 12:17, 13:2, 22:6, 22:8, 24:15, 25:22, 32:15, 32:23, 34:21, 37:24, 46:24, 52:18, 53:6, 54:1, 60:21, 68:2, 68:14, 75:14, 82:13, 82:15, 82:19, 83:12, 86:24, 87:19, 97:8, 97:10, 100:10, 101:17, 101:20, 103:21,

104:18, 110:8, 110:9, 111:7, 112:13, 114:1
**needed** [1] - 20:7
**needing** [1] - 38:1
**needless** [1] - 62:17
**needs** [3] - 38:16, 48:16, 114:4
**negated** [1] - 84:14
**negates** [1] - 84:6
**negative** [1] - 8:1
**neglected** [2] - 6:19, 20:11
**nest** [10] - 11:2, 12:11, 12:21, 13:16, 15:24, 18:18, 27:11, 29:10, 42:10, 42:12
**NETWORK** [2] - 1:8, 2:15
**network** [89] - 10:16, 10:20, 10:25, 11:1, 11:8, 11:9, 12:7, 12:8, 12:12, 12:17, 13:16, 13:19, 13:20, 13:22, 14:1, 14:13, 14:16, 14:22, 16:21, 16:22, 16:24, 16:25, 17:3, 17:5, 18:17, 18:18, 18:20, 27:7, 27:10, 27:11, 27:22, 29:8, 29:10, 31:9, 33:16, 42:11, 42:14, 42:18, 44:4, 44:9, 45:5, 47:25, 48:2, 48:5, 48:7, 48:9, 49:4, 49:5, 49:8, 49:9, 49:13, 49:15, 49:17, 49:21, 50:7, 50:8, 50:14, 50:15, 50:18, 52:2, 52:17, 52:20, 54:7, 58:1, 58:5, 58:6, 60:4, 62:20, 63:4, 63:5, 63:7, 63:9, 63:10, 63:12, 63:24, 64:3, 65:24, 66:3, 66:4, 66:6, 66:12, 66:13, 68:6, 68:11, 90:8, 112:9
**Network** [1] - 4:4
**networking** [2] - 57:5, 57:6
**networks** [4] - 13:14, 26:14, 28:2, 31:13
**never** [6] - 76:17, 76:23, 84:7, 95:1, 95:13, 96:8
**nevertheless** [1] - 45:2
**NEW** [1] - 2:23
**new** [10] - 12:9, 18:9, 18:10, 18:14, 29:7, 80:15, 87:5, 101:16, 105:6, 106:16
**New** [23] - 86:2, 86:4, 86:18, 88:6, 92:9, 94:12, 95:2, 95:3, 95:14, 95:20, 96:23, 96:24, 97:1, 97:3, 97:17, 97:18, 98:3, 98:13, 98:20, 98:23, 99:7, 100:24, 101:1
**newest** [1] - 108:20
**next** [20] - 5:6, 19:12, 35:25, 44:12, 49:7, 55:14, 56:17, 57:15, 57:22, 58:11, 59:14, 59:22, 66:24, 90:11, 90:24, 106:2, 106:3, 107:1,

108:14, 108:15
**nice** [1] - 41:24
**Nick** [1] - 4:23
**night** [2] - 75:7, 113:8
**ninth** [1] - 53:23
**Nix** [1] - 43:3
**nobody** [1] - 7:13
**node** [25] - 16:22, 17:2, 18:9, 18:10, 18:14, 25:19, 29:7, 31:12, 49:1, 49:15, 49:18, 57:6, 57:9, 57:10, 60:3, 60:4, 60:5, 65:25, 66:13
**nodes** [15] - 14:13, 27:25, 30:14, 31:7, 48:4, 49:7, 49:8, 54:6, 57:5, 57:7, 57:11, 57:12, 58:1, 59:5
**non** [4] - 16:22, 26:2, 40:6, 76:21
**non-convention** [1] - 26:2
**non-infringement** [1] - 76:21
**non-network** [1] - 16:22
**non-precedential** [1] - 40:6
**noncentral** [1] - 89:11
**none** [3] - 28:6, 29:11, 29:18
**None** [1] - 28:7
**normal** [1] - 13:12
**not-abstract** [2] - 12:23, 22:17
**note** [5] - 51:5, 51:15, 70:2, 114:2, 114:5
**noted** [2] - 64:16, 102:11
**nothing** [22] - 29:9, 29:15, 39:24, 54:7, 57:1, 57:5, 57:17, 57:19, 60:1, 60:11, 64:19, 65:11, 75:2, 86:13, 86:16, 87:8, 92:4, 112:14, 112:15, 112:16, 112:17
**Notice** [2] - 71:18, 71:20
**notice** [2] - 97:22, 97:24
**noticeably** [1] - 63:21
**novel** [1] - 12:9
**novelty** [2] - 12:25, 62:6
**November** [1] - 4:6
**number** [23] - 4:3, 4:5, 4:6, 4:8, 4:9, 4:11, 4:12, 4:14, 11:19, 26:16, 30:4, 94:16, 95:5, 107:16, 114:6, 114:17, 114:22, 114:23, 114:24, 115:11, 116:19, 116:23
**numbers** [2] - 74:3, 74:5
**numerous** [1] - 56:2
**NY** [1] - 2:23

33:17, 36:13, 75:8, 93:14, 97:8
**occur** [2] - 57:16, 60:10
**occurs** [1] - 97:19
**October** [3] - 106:3, 108:15, 109:19
**odd** [1] - 88:18
**OF** [9] - 1:2, 1:16, 2:3, 2:15, 2:21, 3:1, 117:12, 117:16
**office** [1] - 28:16
**OFFICIAL** [2] - 1:23, 117:19
**oftentimes** [1] - 17:1
**old** [4] - 27:11, 27:12, 43:25, 77:24
**ON** [4] - 2:3, 2:15, 2:21, 3:1
**once** [11] - 15:9, 15:14, 21:6, 25:2, 53:16, 56:6, 57:16, 58:9, 59:14, 60:5, 81:4
**one** [86] - 4:3, 5:15, 6:18, 9:7, 9:20, 10:10, 17:8, 17:10, 18:3, 19:16, 20:13, 21:8, 21:10, 22:24, 26:19, 26:23, 28:11, 29:7, 29:8, 29:25, 32:11, 33:9, 34:14, 36:10, 37:24, 38:15, 42:1, 42:3, 43:10, 43:23, 44:10, 47:25, 49:11, 49:18, 49:19, 49:20, 50:20, 51:5, 51:13, 54:3, 54:11, 54:15, 55:25, 57:7, 57:23, 58:12, 65:17, 66:24, 70:20, 71:7, 72:13, 73:24, 75:22, 76:2, 76:3, 76:18, 77:19, 78:19, 78:22, 79:23, 80:3, 81:21, 87:22, 89:16, 89:24, 90:1, 91:8, 94:19, 94:20, 95:15, 97:23, 100:3, 102:1, 102:19, 104:20, 104:25, 106:10, 106:13, 110:10, 113:11, 113:12, 114:17
**open** [1] - 110:19
**opened** [1] - 38:13
**opening** [6] - 55:17, 56:7, 59:15, 71:6, 71:17, 83:23
**operable** [1] - 16:21
**operate** [1] - 16:21
**operates** [2] - 44:9, 68:12
**operation** [1] - 13:12
**opinion** [20] - 10:8, 11:12, 12:4, 12:14, 13:5, 13:10, 19:23, 20:1, 24:19, 42:20, 44:25, 45:5, 45:24, 47:2, 47:19, 50:23, 51:1, 52:9, 66:5
**opposed** [5] - 37:18, 39:16, 60:25, 61:9, 95:18
**opposing** [3] - 9:25, 56:8, 59:16
**opposite** [1] - 107:12
**opposition** [11] - 8:20, 38:21,

38:25, 39:4, 54:12, 55:18, 56:8, 58:9, 74:9, 88:9, 95:16
**optimize** [2] - 17:3, 48:2
**oral** [1] - 75:6
**order** [17] - 25:11, 26:8, 34:22, 41:15, 45:1, 48:2, 52:6, 53:19, 57:17, 58:1, 60:10, 66:17, 72:22, 97:11, 102:12, 105:6, 112:21
**original** [7] - 10:12, 10:17, 39:2, 53:24, 88:17, 92:23, 111:3
**originally** [1] - 85:19
**orthogonal** [1] - 46:17
**OSI** [4] - 21:22, 35:19, 35:21, 50:10
**otherwise** [2] - 77:8, 96:6
**ought** [1] - 69:3
**outcome** [1] - 96:23
**outset** [3] - 87:21, 97:10, 97:11
**outside** [1] - 106:24
**overcome** [1] - 13:13
**overcomes** [1] - 31:10
**overcoming** [1] - 29:11
**overlaying** [1] - 14:25
**overlays** [1] - 18:17
**overruled** [1] - 108:8
**overview** [1] - 27:14
**own** [8] - 33:13, 41:7, 45:13, 47:3, 48:19, 53:1, 62:16, 63:20
**owned** [1] - 85:19
**owner** [4] - 74:25, 76:16, 76:17, 76:20

## P

**p.m** [1] - 117:9
**packet** [12] - 10:4, 20:9, 20:17, 20:21, 23:16, 36:2, 36:8, 36:9, 36:12, 36:25, 37:7
**packet-by-packet** [1] - 20:9
**packets** [16] - 8:19, 8:23, 8:25, 20:9, 20:23, 22:8, 22:12, 23:2, 34:2, 35:17, 35:18, 35:20, 36:17, 36:18, 37:8, 37:10
**Padmanabhan** [6] - 5:25, 6:2, 6:9, 6:11, 87:3, 104:7
**PADMANABHAN** [53] - 2:21, 5:24, 6:4, 6:7, 66:23, 67:10, 67:14, 67:20, 87:4, 87:8, 87:12, 89:2, 89:8, 89:17, 89:22, 89:24, 91:24, 93:13, 93:23, 94:3, 94:18, 96:5, 96:25, 98:8, 98:12, 98:14, 98:17, 99:10, 99:12,

## O

**object** [1] - 7:23
**objection** [2] - 107:6, 113:3
**observe** [1] - 83:9
**obviously** [7] - 15:18, 32:8,

99:23, 100:11, 101:21, 101:24, 102:21, 102:24, 103:4, 104:8, 104:12, 104:15, 107:8, 107:11, 108:7, 109:12, 110:10, 110:16, 111:1, 112:16, 113:5, 113:12, 113:19, 114:22, 115:1, 115:23

**pADMANABHAN** [1] - 6:9

**page** [29] - 17:25, 18:5, 19:13, 19:15, 21:19, 28:19, 32:18, 32:20, 35:7, 39:5, 39:6, 41:19, 41:20, 51:11, 69:22, 71:6, 71:14, 71:16, 71:17, 71:18, 72:6, 74:5, 89:21, 94:17, 94:19, 103:23, 104:1

**pages** [6] - 7:17, 7:18, 29:17, 103:16, 103:23

**pages'** [1] - 27:23

**Papa** [1] - 112:5

**papers** [1] - 41:17

**paragraph** [2] - 78:19, 78:23

**parameters** [2] - 28:3, 30:21

**paraphrasing** [1] - 13:8

**parcel** [1] - 82:12

**PARK** [1] - 2:23

**part** [28] - 13:4, 23:15, 23:18, 23:19, 29:6, 33:4, 34:11, 34:12, 34:19, 34:20, 37:11, 48:1, 49:7, 66:2, 70:7, 79:6, 81:20, 81:24, 82:2, 82:12, 83:10, 89:11, 90:21, 91:18, 91:24, 116:2

**participate** [1] - 109:5

**particular** [21] - 15:9, 15:10, 23:1, 26:9, 27:21, 31:13, 34:9, 37:16, 46:6, 46:9, 50:17, 54:25, 75:9, 80:6, 80:10, 81:11, 88:2, 88:3, 95:25, 104:25, 107:25

**particularly** [5] - 11:15, 48:8, 48:10, 49:25, 103:10

**parties** [20] - 16:16, 47:16, 61:2, 66:11, 73:8, 73:15, 73:16, 75:13, 80:8, 83:21, 83:23, 85:15, 96:16, 97:3, 101:11, 103:16, 109:14, 110:3, 114:14, 116:3

**parties'** [1] - 69:17

**Partners** [1] - 13:23

**parts** [4] - 23:15, 66:8, 69:14

**party** [3] - 85:19, 86:20, 93:9

**pass** [1] - 87:20

**passes** [2] - 19:2, 23:8

**passing** [1] - 99:2

**past** [4] - 14:8, 46:2, 85:4, 95:24

**pat** [1] - 21:9

**patent** [106] - 5:14, 10:8,

10:20, 10:23, 11:14, 12:1, 13:21, 16:6, 16:14, 17:10, 18:23, 19:2, 19:7, 19:12, 20:2, 20:3, 20:5, 20:19, 22:5, 22:9, 23:7, 23:11, 25:6, 25:14, 25:21, 27:22, 27:24, 28:14, 28:15, 28:19, 28:20, 28:24, 32:10, 32:12, 35:11, 36:14, 36:16, 42:9, 44:5, 44:8, 45:22, 47:5, 47:18, 47:19, 47:20, 48:23, 50:16, 50:24, 51:1, 51:3, 51:17, 52:1, 55:7, 55:8, 56:9, 57:3, 57:23, 58:12, 58:25, 60:8, 61:5, 62:6, 64:6, 64:13, 64:18, 70:21, 74:25, 75:17, 75:22, 76:2, 76:3, 76:4, 76:6, 76:16, 76:17, 76:20, 76:24, 78:4, 78:6, 79:16, 80:3, 82:3, 82:7, 83:17, 84:8, 87:16, 88:2, 88:3, 91:2, 91:12, 91:13, 91:15, 94:23, 96:1, 96:4, 96:18, 99:21

**Patent** [1] - 75:18

**patent-by-patent** [3] - 91:13, 91:15, 96:4

**patentable** [9] - 12:23, 16:2, 17:13, 23:8, 24:18, 25:21, 50:22, 52:11, 66:7

**patentee** [4] - 45:13, 47:3, 48:18, 76:1

**patentholder** [1] - 102:11

**patents** [30] - 8:7, 10:10, 14:4, 15:16, 15:18, 21:13, 28:8, 28:12, 28:15, 28:17, 28:21, 28:22, 33:25, 44:2, 45:6, 53:5, 55:6, 61:15, 65:8, 83:19, 85:20, 85:25, 88:5, 88:22, 92:13, 94:11, 102:17, 102:19, 115:7, 115:18

**path** [2] - 73:15, 73:16

**Patterson** [1] - 43:3

**Paul** [1] - 112:4

**pause** [1] - 41:6

**payload** [2] - 34:4, 36:11

**PC** [2] - 2:15, 2:18

**peace** [1] - 101:7

**peer** [11] - 28:2, 31:9, 44:9, 49:7, 49:8, 49:15, 49:19, 50:14

**peer-to-peer** [3] - 28:2, 31:9, 50:14

**peers** [2] - 48:6, 49:19

**pending** [2] - 110:13, 112:21

**people** [4] - 11:5, 11:18, 11:24, 18:22

**per** [1] - 7:2

**perceived** [1] - 105:14

**perfect** [2] - 87:4, 100:23

**perfectly** [1] - 79:20

**perform** [4] - 18:9, 30:7, 39:22, 85:7

**performance** [1] - 48:3

**performed** [7] - 25:18, 26:5, 33:2, 45:21, 46:12, 46:25, 58:17

**performs** [1] - 26:10

**perhaps** [5] - 23:24, 45:10, 64:22, 82:22, 103:15

**period** [3] - 99:20, 100:5

**permitted** [1] - 67:3

**perspective** [2] - 115:5, 116:22

**pertains** [1] - 113:16

**Pharmaceuticals** [2] - 76:12, 76:15

**phrase** [2] - 34:1, 101:2

**physical** [10] - 14:18, 14:19, 14:25, 17:6, 18:15, 27:7, 27:10, 28:4, 29:14, 30:14

**pick** [3] - 106:5, 108:11, 109:18

**pictorially** [1] - 17:15

**picture** [3] - 10:18, 12:21, 42:12

**piece** [2] - 91:16, 91:19

**pin** [7] - 20:11, 22:20, 35:6, 35:7, 38:16, 40:5, 40:18

**pioneered** [1] - 10:15

**pipe** [1] - 23:4

**Pixton** [3] - 78:18, 78:21, 87:13

**place** [4] - 47:1, 85:16, 95:2, 99:15

**places** [1] - 84:23

**PLAINTIFF** [1] - 2:3

**plaintiff** [12] - 4:18, 4:20, 4:22, 4:24, 7:25, 8:2, 58:9, 76:1, 76:5, 106:2, 112:14

**Plaintiff** [1] - 1:5

**plaintiff's** [1] - 55:18

**plan** [1] - 8:3

**plausible** [5] - 30:9, 30:22, 37:3, 48:11, 48:16, 48:17, 79:20, 79:23, 93:15

**plausibly** [3] - 88:14, 88:19, 102:18

**play** [1] - 81:22

**plead** [7] - 82:6, 82:25, 83:1, 83:16, 87:23, 88:14, 92:9

**pleaded** [4] - 81:15, 82:14, 82:16, 82:19

**pleading** [2] - 48:15, 105:15

**pleadings** [1] - 93:8

**pleased** [1] - 53:19

**pled** [5] - 75:16, 78:4, 82:5, 83:2, 92:22

**plug** [1] - 30:18

**plurality** [1] - 36:12

**point** [62] - 12:13, 14:10, 21:19, 21:25, 23:9, 26:15, 27:15, 32:10, 33:10, 33:12, 33:25, 34:3, 34:24, 35:5, 36:7, 38:5, 38:11, 38:16, 40:2, 40:3, 44:4, 45:6, 45:16, 45:24, 54:11, 56:14, 57:11, 60:24, 61:14, 63:19, 66:2, 67:17, 67:19, 70:20, 72:11, 77:11, 78:10, 80:11, 81:7, 81:21, 83:12, 83:14, 83:15, 84:11, 84:18, 89:7, 92:13, 92:25, 93:12, 94:4, 95:4, 99:12, 99:13, 100:24, 101:4, 103:17, 106:14, 110:10, 115:6, 115:13, 116:6

**pointed** [8] - 38:17, 50:4, 55:25, 62:4, 62:16, 65:1, 74:13, 93:8

**points** [11] - 15:20, 25:9, 27:15, 29:24, 45:6, 45:24, 50:23, 51:2, 85:2, 101:19

**poo** [1] - 24:7

**poo-poo** [1] - 24:7

**portion** [1] - 62:19

**position** [8] - 71:2, 79:25, 80:2, 84:5, 100:7, 108:4, 111:2, 116:8

**possession** [4] - 95:7, 96:20, 96:21, 103:12

**possible** [3] - 28:22, 69:12, 108:10

**possibly** [1] - 74:21

**posture** [3] - 81:23, 83:9, 110:12

**potentially** [2] - 59:13, 67:4

**power** [1] - 90:6

**Power** [5] - 55:15, 55:22, 56:4, 58:25, 59:8

**pragmatic** [1] - 101:9

**precedential** [3] - 40:6, 40:15, 40:16

**precise** [2] - 20:11, 68:16

**precisely** [2] - 49:1, 78:10

**preemptively** [1] - 97:18

**prefer** [5] - 8:17, 19:8, 103:11, 107:11, 107:24

**preferred** [2] - 45:22, 47:4

**prejudice** [2] - 72:24, 93:18

**preparing** [1] - 75:6

**presence** [1] - 14:23

**present** [4] - 31:14, 59:24, 60:9, 100:23

**presentation** [12] - 8:13, 9:3, 14:15, 17:25, 19:13, 21:19, 43:12, 43:19, 44:13, 47:7, 53:21, 66:25

**presented** [1] - 113:7

**presenting** [1] - 46:4
**presently** [1] - 68:17
**preserving** [1] - 35:11
**presume** [1] - 97:2
**pretty** [6] - 8:4, 8:7, 90:25, 93:7, 96:20, 98:11
**prevails** [2] - 98:2, 99:21
**previous** [3] - 92:15, 92:16, 115:3
**principles** [3] - 30:14, 61:5, 62:9
**printed** [1] - 38:24
**prior-art** [1] - 34:1
**priority** [4] - 21:16, 35:17, 35:18, 35:20
**Prism** [2] - 59:16, 59:19
**probe** [1] - 30:20
**probing** [2] - 25:17, 26:4
**problem** [24] - 13:13, 13:15, 13:17, 13:21, 15:25, 16:1, 18:22, 18:23, 18:25, 20:19, 22:9, 27:24, 28:24, 36:20, 37:23, 45:10, 47:24, 55:8, 81:19, 93:10, 104:3, 105:15
**problems** [3] - 29:25, 31:10, 93:8
**procedural** [1] - 81:23
**procedure** [7] - 12:6, 12:7, 14:11, 18:10, 30:7, 95:18, 115:19
**procedures** [1] - 116:16
**proceed** [2] - 83:18, 106:7
**proceeded** [1] - 19:22
**proceedings** [2] - 41:6, 117:9
**PROCEEDINGS** [2] - 1:16, 117:12
**process** [6] - 7:16, 23:17, 52:5, 57:3, 57:4, 116:15
**processes** [1] - 7:6
**processor** [4] - 15:4, 15:12, 56:25, 60:1
**processors** [1] - 15:17
**product** [1] - 90:14
**Products** [6] - 75:24, 77:15, 77:19, 77:23, 78:23, 87:13
**products** [1] - 90:15
**programmed** [7] - 15:3, 15:10, 22:13, 25:23, 26:6, 26:10, 50:17
**programming** [1] - 15:14
**promise** [1] - 94:25
**prompter** [1] - 94:15
**promptly** [1] - 87:6
**promulgated** [1] - 44:7
**proof** [1] - 24:8
**proper** [2] - 33:3, 72:19
**properly** [2] - 75:16, 78:4
**proposed** [4] - 18:11, 34:5,

51:20, 116:2
**proposition** [1] - 74:20
**prosecution** [11] - 45:7, 45:8, 45:14, 45:15, 45:18, 46:1, 46:11, 46:15, 46:16, 46:22, 64:25
**protocol** [4] - 21:23, 22:1, 63:16, 63:17
**prove** [2] - 24:15, 27:8
**provide** [6] - 17:18, 76:22, 90:9, 98:5, 115:20
**provided** [11] - 7:9, 8:12, 8:19, 50:1, 50:7, 52:1, 97:6, 104:21, 105:20, 113:2, 116:14
**providers** [1] - 89:25
**provides** [3] - 16:14, 20:6, 49:13
**providing** [1] - 86:8
**provision** [1] - 88:7
**provisions** [1] - 73:18
**PTAB** [1] - 63:15
**pull** [1] - 68:10
**pulled** [1] - 83:10
**pure** [1] - 30:11
**purely** [3] - 54:17, 58:13, 60:6
**purport** [1] - 57:2
**purported** [3] - 29:5, 57:8, 76:1
**purportedly** [1] - 65:1
**purpose** [2] - 56:25, 60:1
**purposes** [7] - 33:19, 34:9, 34:17, 35:10, 41:3, 73:1, 82:19
**pursuant** [2] - 64:19, 72:3
**pursue** [1] - 91:25
**pursues** [1] - 73:15
**push** [3] - 7:21, 24:7, 93:12
**pushback** [2] - 113:1, 113:20
**put** [15] - 10:11, 16:5, 24:3, 39:16, 45:18, 45:19, 53:22, 54:16, 58:13, 59:3, 60:9, 61:4, 83:7, 99:6, 111:3

## Q

**QoS** [10] - 45:4, 45:17, 45:21, 46:12, 46:25, 49:2, 50:6, 50:16, 52:5, 52:25
**quality** [4] - 44:3, 44:11, 46:8, 90:16
**questions** [6] - 31:22, 40:20, 53:11, 65:10, 78:1, 87:14
**quick** [4] - 40:22, 41:10, 61:19, 68:4
**quicker** [1] - 105:23
**quickly** [3] - 69:12, 98:10, 104:2
**quite** [5] - 28:22, 55:12,

77:23, 79:23, 115:17
**quo** [1] - 111:6
**quotation** [2] - 20:13, 48:8
**quote** [3] - 20:6, 27:3, 48:1
**quoted** [1] - 48:23
**quotes** [2] - 11:21, 43:14
**quoting** [1] - 13:8

## R

**Raghavan** [1] - 6:13
**raise** [2] - 67:19, 80:16
**raised** [6] - 37:4, 76:11, 80:17, 101:10, 108:10, 110:20
**raises** [2] - 34:8, 76:8
**raising** [1] - 114:16
**Rajan** [3] - 21:2, 21:21, 22:5
**random** [1] - 64:2
**Rapids** [1] - 21:6
**rat's** [10] - 11:2, 12:11, 12:21, 13:16, 15:24, 18:18, 27:11, 29:10, 42:10, 42:12
**rate** [1] - 59:6
**rates** [1] - 58:8
**rather** [3] - 14:20, 20:16, 22:2
**rational** [1] - 103:15
**reach** [2] - 116:9, 116:19
**reached** [1] - 110:5
**read** [4] - 63:11, 87:6, 94:15, 102:6
**reading** [2] - 47:4, 88:10
**reads** [1] - 47:21
**ready** [3] - 10:6, 116:12, 116:14
**real** [1] - 46:4
**reality** [1] - 54:20
**realized** [2] - 81:7, 102:3
**really** [16] - 36:4, 39:10, 41:10, 45:19, 46:24, 53:6, 55:11, 60:24, 62:7, 62:10, 66:21, 77:20, 95:15, 100:10, 106:9, 110:8
**realm** [3] - 12:18, 13:13, 42:19
**realtime** [1] - 21:15
**rearranged** [1] - 91:21
**reason** [6] - 52:19, 74:24, 77:2, 79:5, 83:20, 83:25
**reasonable** [2] - 76:25, 102:15
**reasons** [1] - 66:16
**rebuttal** [1] - 25:13
**receive** [1] - 7:14
**received** [6] - 7:15, 18:8, 87:5, 97:6, 115:15
**receiver** [1] - 15:12
**receiving** [13] - 54:6, 54:23, 55:21, 55:23, 56:10, 57:25,

58:15, 59:4, 59:5, 117:6
**recently** [1] - 48:15
**Recess** [1] - 67:25
**recitation** [1] - 52:9
**recite** [2] - 28:22, 57:3
**recited** [2] - 26:1, 29:11
**recites** [2] - 16:18, 48:9
**reciting** [1] - 30:13
**recognize** [1] - 11:18
**recognized** [5] - 11:18, 12:15, 18:24, 25:24, 75:7
**recognizes** [3] - 91:10, 95:6, 96:19
**reconvert** [1] - 85:5
**record** [9] - 4:18, 6:6, 18:12, 39:19, 41:5, 68:17, 100:15, 111:13, 111:25
**RECORDED** [1] - 117:12
**red** [1] - 31:7
**redo** [1] - 93:22
**REDUCTION** [1] - 117:15
**refer** [2] - 8:16, 17:19
**reference** [6] - 10:11, 21:2, 21:18, 22:5, 23:12, 90:2
**referred** [1] - 10:19
**referring** [1] - 49:14
**refers** [1] - 23:16
**reflect** [2] - 112:22, 112:23
**reformulation** [1] - 36:3
**refrain** [1] - 104:13
**refuse** [1] - 111:8
**regard** [2] - 53:4, 67:13
**regarding** [3] - 11:22, 43:14, 97:14
**REGULATIONS** [1] - 117:16
**rehash** [1] - 15:22
**related** [1] - 44:2
**relationship** [5] - 80:4, 80:7, 84:12, 89:10, 90:21
**relative** [1] - 109:17
**relatively** [1] - 105:22
**relaxed** [1] - 105:23
**relevant** [4] - 22:12, 40:2, 69:21, 104:6
**relief** [4] - 72:12, 75:18, 92:1, 92:2
**relies** [1] - 90:9
**rely** [3] - 33:17, 35:15, 95:6
**relying** [2] - 46:15, 74:17
**remaining** [1] - 7:4
**remains** [1] - 33:19
**remedy** [4] - 85:25, 86:1, 86:10, 86:12
**remember** [2] - 80:5, 87:18
**remind** [1] - 68:25
**removing** [1] - 76:25
**render** [3] - 78:1, 88:10, 94:12
**repeated** [1] - 72:5

**repeatedly** [1] - 12:15
**replead** [2] - 92:12, 93:9
**reply** [1] - 74:16
**Reporter** [1] - 65:17
**REPORTER** [2] - 1:23, 117:19
**REPORTER'S** [1] - 1:16
**reports** [3] - 104:22, 114:5, 114:20
**represent** [4] - 55:11, 76:23, 110:4, 115:22
**representation** [1] - 28:14
**representations** [1] - 81:1
**representative** [21] - 6:14, 6:19, 16:16, 19:17, 19:20, 35:22, 38:9, 39:14, 42:8, 52:14, 52:16, 52:21, 53:5, 56:16, 59:2, 59:19, 61:2, 61:3, 61:22, 67:5
**representativeness** [1] - 39:18
**represented** [2] - 40:22, 43:4
**represents** [1] - 116:11
**reprocessed** [1] - 22:6
**reproduced** [1] - 31:5
**reputation** [1] - 90:18
**request** [3] - 18:8, 89:6, 112:23
**requesting** [3] - 54:6, 54:22, 57:25
**require** [2] - 33:7, 79:8
**required** [3] - 37:2, 37:12, 87:23
**requirement** [2] - 37:6, 97:21
**requirements** [2] - 36:9, 77:7
**requires** [3] - 36:24, 37:17, 91:11
**requiring** [1] - 56:3
**resolute** [1] - 34:24
**resolution** [2] - 78:1, 110:13
**resolved** [1] - 114:5
**resources** [2] - 58:2, 58:5
**respect** [21] - 5:13, 12:4, 23:10, 32:9, 39:11, 40:14, 69:13, 70:12, 83:17, 83:18, 84:13, 84:21, 88:2, 91:1, 92:16, 93:14, 94:6, 95:25, 102:19, 105:15, 116:4
**respectfully** [11] - 7:22, 12:4, 20:3, 24:18, 25:12, 44:24, 47:2, 51:22, 52:6, 66:17, 89:5
**respond** [5] - 25:9, 29:24, 103:18, 108:18, 111:8
**responded** [1] - 100:25
**response** [7] - 95:3, 100:18, 100:25, 101:16, 101:23, 104:10, 105:18
**responses** [3] - 28:17, 110:22, 110:23

**rest** [2] - 77:6, 94:6
**restraint** [1] - 78:15
**restriction** [1] - 87:21
**result** [6] - 20:3, 20:14, 32:25, 35:1, 84:15, 93:14
**retain** [2] - 88:13, 109:4
**retained** [1] - 107:2
**retaining** [2] - 72:21, 106:24
**retroactively** [1] - 85:13
**return** [1] - 102:1
**reverse** [2] - 17:11, 41:15
**reversed** [1] - 41:23
**revert** [1] - 85:25
**review** [2] - 7:12, 7:14
**revise** [1] - 31:18
**revised** [1] - 116:4
**revoke** [1] - 79:23
**RFID** [3] - 37:20, 37:23, 38:3
**RICHARDSON** [2] - 2:15, 2:18
**Richardson** [2] - 5:8, 5:12
**rifle** [1] - 61:19
**rifle-shot** [1] - 61:19
**rigid/flexible** [1] - 13:20
**Roach** [1] - 43:3
**road** [3] - 78:7, 79:2, 82:21
**rob** [1] - 87:15
**Robinson** [1] - 4:24
**role** [2] - 48:3, 49:20
**rolling** [2] - 19:9, 19:10
**Romeo** [1] - 112:5
**root** [1] - 91:6
**routine** [1] - 25:15
**row** [1] - 84:18
**rule** [5] - 48:2, 61:23, 70:19, 111:5, 114:11
**Rule** [14] - 11:15, 43:8, 70:5, 70:13, 70:18, 70:19, 70:22, 72:3, 72:20, 78:11, 92:17, 93:7, 104:21, 114:20
**ruling** [6] - 17:12, 19:19, 27:14, 77:13, 111:7
**running** [1] - 15:17
**runs** [1] - 78:6

# S

**sake** [1] - 105:11
**SAN** [1] - 3:3
**Sanderling** [1] - 30:8
**SANTA** [3] - 1:18, 2:4, 4:1
**Saranya** [1] - 6:13
**satisfy** [1] - 33:14
**satisfying** [1] - 33:19
**save** [1] - 60:22
**saves** [1] - 33:8
**scenario** [1] - 85:17
**schedule** [7] - 7:5, 48:4, 104:19, 105:21, 105:22,

105:23, 108:12, 109:7, 109:13, 109:16, 110:5, 110:6, 112:22, 115:10, 116:2, 116:4
**schedules** [2] - 109:5, 112:24
**SCHEDULING** [1] - 1:17
**scheduling** [7] - 5:3, 7:5, 54:7, 104:18, 108:24, 109:23, 110:3
**scope** [2] - 51:18, 77:21
**screen** [1] - 17:6
**SDNY** [4] - 85:18, 85:24, 86:10, 98:7
**seat** [2] - 68:2, 101:12
**second** [20] - 23:18, 23:19, 26:19, 32:14, 32:16, 32:21, 36:11, 37:6, 51:5, 51:10, 51:13, 54:14, 71:7, 73:24, 89:13, 89:16, 91:18, 91:24, 107:19, 108:5
**secondly** [1] - 95:5
**seconds** [2] - 65:14, 65:19
**secrets** [1] - 79:17
**Section** [1] - 27:17
**section** [1] - 80:6
**see** [37] - 5:5, 6:22, 8:18, 10:17, 10:18, 11:2, 14:14, 15:5, 16:23, 17:5, 19:15, 20:4, 21:1, 23:14, 27:19, 28:1, 28:20, 29:12, 32:22, 42:5, 44:13, 47:21, 48:25, 51:21, 53:21, 58:12, 59:17, 69:7, 77:18, 77:25, 108:1, 109:21, 111:12, 111:13, 114:20, 115:1, 117:5
**seeking** [1] - 86:13
**seem** [4] - 42:17, 69:17, 83:21, 85:15
**selectively** [1] - 16:21
**semiconductors** [2] - 89:25, 90:6
**send** [4] - 94:10, 94:21, 94:22, 97:17
**sending** [6] - 34:20, 55:21, 56:10, 56:11, 60:11
**sends** [2] - 96:8
**sense** [12] - 7:24, 8:2, 15:7, 80:22, 91:14, 93:16, 94:4, 94:8, 96:6, 101:4, 105:24, 106:1
**sent** [2] - 23:3, 75:6
**sentence** [4] - 32:14, 32:21, 71:25, 72:7
**separate** [2] - 8:22, 45:14
**separately** [2] - 32:15, 32:24
**September** [6] - 104:9, 106:20, 108:24, 109:1, 109:23, 117:6
**serious** [1] - 84:21

**serve** [2] - 110:19, 116:12
**server** [2] - 37:25, 38:4
**service** [8] - 44:4, 44:11, 46:8, 49:2, 80:22, 90:9, 90:10, 111:21
**services** [2] - 86:8, 90:16
**set** [21] - 7:5, 11:14, 11:24, 12:10, 14:11, 14:16, 14:17, 17:4, 18:19, 26:9, 28:16, 49:17, 54:13, 56:4, 56:18, 60:19, 61:16, 66:14, 104:19, 108:4
**set-top** [4] - 17:4, 18:19, 49:17, 66:14
**sets** [2] - 7:6, 110:3
**setting** [3] - 14:21, 14:23, 68:5
**seven** [1] - 115:4
**several** [2] - 57:7, 63:6
**SHARTZER** [29] - 2:18, 5:11, 5:18, 6:18, 32:3, 32:7, 32:18, 32:20, 32:23, 34:15, 38:22, 39:1, 39:6, 39:8, 39:10, 40:25, 41:4, 41:7, 42:25, 43:3, 107:21, 107:24, 112:17, 113:23, 115:12, 115:15, 116:6, 116:24, 117:2
**Shartzer** [5] - 5:11, 5:17, 32:1, 41:22, 42:6
**Shimota** [18] - 4:19, 5:2, 8:11, 9:1, 25:9, 25:13, 26:13, 28:4, 31:5, 32:13, 34:25, 35:16, 54:19, 61:12, 62:4, 62:15, 63:22, 68:5
**SHIMOTA** [62] - 2:6, 4:19, 8:5, 8:12, 9:3, 9:6, 9:8, 9:18, 9:22, 9:25, 10:5, 10:7, 13:9, 14:7, 16:9, 16:14, 16:20, 17:17, 17:24, 18:3, 18:7, 19:6, 19:11, 19:15, 21:9, 23:14, 24:23, 41:11, 41:15, 41:19, 41:21, 42:24, 43:10, 43:17, 43:20, 43:22, 43:25, 44:17, 44:19, 44:21, 47:9, 47:24, 48:14, 49:12, 51:1, 51:7, 51:10, 51:15, 52:16, 53:10, 53:13, 61:17, 61:21, 61:25, 65:14, 65:19, 65:22, 66:10, 68:7, 68:9, 68:19, 69:1
**Shimota's** [4] - 35:13, 38:11, 39:20, 65:18
**short** [4] - 65:17, 66:21, 78:22, 103:17
**shorthanded** [1] - 48:21
**shot** [1] - 61:19
**show** [6] - 22:7, 36:23, 87:24, 92:25, 95:24, 107:18

**showed** [4] - 12:11, 12:21, 31:5, 42:12
**showing** [3] - 24:10, 59:11, 82:23
**shown** [5] - 11:7, 23:7, 27:12, 31:14, 56:21
**shows** [7] - 10:23, 22:4, 31:6, 36:16, 45:18, 55:15, 57:16
**side** [7] - 7:3, 8:1, 29:8, 55:17, 56:9
**side-by-side** [1] - 55:17
**sides** [1] - 59:2
**sidestep** [1] - 95:17
**signed** [1] - 84:3
**similar** [4] - 13:24, 57:12, 59:20, 60:5
**similarly** [1] - 30:17
**simple** [4] - 13:4, 76:2, 78:17, 98:11
**simpler** [1] - 69:19
**simplicity** [1] - 25:7
**simplified** [1] - 75:15
**simply** [9] - 12:20, 34:16, 35:10, 46:3, 77:12, 77:14, 78:23, 86:13, 116:7
**single** [5] - 11:6, 36:10, 36:13, 36:17, 36:25
**SIP** [1] - 13:25
**SIP-based** [1] - 13:25
**sitting** [1] - 17:6
**situation** [4] - 24:4, 31:15, 48:18, 66:12
**six** [8] - 38:23, 39:5, 39:10, 41:19, 41:25, 65:25, 106:8, 108:17
**six-week** [1] - 106:8
**size** [1] - 116:16
**skip** [1] - 53:23
**slide** [75] - 8:12, 9:3, 10:22, 12:3, 12:13, 14:15, 19:12, 20:5, 20:10, 21:19, 22:19, 23:12, 26:15, 26:16, 26:22, 27:3, 30:4, 31:6, 32:5, 33:11, 33:23, 34:7, 35:25, 36:7, 36:15, 36:23, 37:5, 37:15, 44:8, 44:12, 44:16, 44:17, 45:23, 47:6, 48:25, 50:2, 53:23, 54:14, 55:14, 56:5, 56:17, 57:15, 57:22, 58:11, 58:23, 59:14, 59:22, 60:8, 60:14, 61:6, 73:20, 72:23, 74:2, 74:7, 74:12, 75:10, 77:15, 77:18, 77:25, 89:15, 89:22, 90:11, 90:25, 91:17, 91:22, 94:19, 113:11
**slides** [11] - 9:11, 11:12, 31:5, 53:24, 74:3, 113:2, 113:6, 113:9, 113:10,

113:12, 113:21
**slightly** [1] - 96:22
**slow** [4] - 47:23, 54:9, 58:3, 66:9
**slower** [1] - 41:14
**slowly** [2] - 16:19, 63:2
**smart** [1] - 44:9
**snip** [1] - 36:15
**so..** [2] - 42:21, 43:23
**software** [8] - 14:17, 15:9, 15:10, 15:18, 17:1, 22:1, 59:13
**solution** [1] - 42:13
**solve** [1] - 55:7
**solved** [2] - 15:25
**solves** [2] - 13:21, 20:19
**solving** [1] - 22:8
**someone** [3] - 79:21, 85:3, 91:7
**someplace** [1] - 89:18
**sometime** [1] - 98:20
**sometimes** [1] - 41:7
**somewhere** [1] - 108:13
**soon** [2] - 109:4, 109:6
**sorry** [18] - 9:19, 20:10, 33:11, 34:14, 39:3, 43:25, 44:16, 44:17, 62:24, 64:6, 64:8, 64:12, 89:20, 92:16, 95:24, 97:5, 105:1
**sort** [7] - 24:7, 39:22, 46:17, 56:11, 61:19, 89:11, 107:18
**sorts** [1] - 28:22
**sought** [1] - 103:1
**sounded** [1] - 13:7
**source** [1] - 60:3
**Southern** [3] - 86:2, 86:4, 98:23
**spats** [1] - 107:15
**special** [8] - 49:22, 54:8, 57:1, 57:19, 60:2, 60:11, 63:10, 117:4
**Special** [2] - 111:10, 111:11
**SPECIAL** [1] - 3:7
**specific** [54] - 11:1, 11:7, 12:18, 12:23, 13:22, 14:3, 15:1, 15:4, 15:8, 15:11, 15:15, 16:1, 16:23, 16:25, 20:20, 20:25, 22:14, 22:15, 22:24, 23:25, 24:4, 24:11, 25:23, 26:1, 26:6, 26:10, 26:11, 34:4, 45:3, 45:20, 46:12, 46:24, 50:5, 50:10, 50:12, 50:15, 50:16, 50:18, 51:23, 52:3, 52:25, 53:3, 56:22, 57:1, 57:9, 58:21, 60:1, 66:4, 66:6, 66:15
**specifically** [4] - 13:11, 13:13, 17:9, 24:3, 35:7, 44:12, 51:8, 62:17

**specification** [16] - 20:6, 29:1, 29:13, 29:18, 33:15, 33:17, 33:20, 33:25, 36:14, 36:18, 54:20, 61:7, 61:10, 62:17, 62:20, 63:22
**specificity** [1] - 101:10
**specified** [1] - 29:25
**specifies** [1] - 18:24
**speed** [2] - 11:10, 13:18
**spelled** [1] - 21:8
**spelling** [1] - 21:6
**spend** [1] - 7:2
**spent** [1] - 75:13
**splitters** [3] - 11:3, 28:5, 29:9
**splitting** [1] - 19:7
**stack** [1] - 12:10
**stage** [8] - 11:15, 48:10, 48:15, 61:8, 78:11, 81:9, 82:23, 82:25
**stand** [4] - 87:16, 90:13, 90:14, 90:19
**standard** [4] - 44:6, 47:22, 68:5, 68:21, 111:25, 112:10
**standard-setting** [1] - 68:5
**standing** [5] - 68:4, 71:3, 76:8, 76:13, 103:20
**start** [13] - 7:8, 7:25, 8:10, 10:7, 19:21, 32:5, 43:12, 54:2, 68:3, 69:9, 87:9, 87:13, 87:19
**started** [2] - 71:1, 115:2
**starting** [5] - 20:13, 47:9, 72:7, 99:3, 115:18
**starts** [2] - 19:13, 62:21
**state** [4] - 4:17, 8:9, 78:1, 87:14
**statement** [6] - 33:2, 64:17, 71:6, 86:7, 97:22, 97:24
**STATES** [2] - 1:1, 117:16
**states** [1] - 32:15
**stating** [1] - 12:8
**status** [3] - 106:17, 106:19, 111:6
**steal** [3] - 79:22, 79:23, 91:8
**stemmed** [1] - 28:20
**stems** [1] - 28:15
**STENOGRAPHICALLY** [1] - 117:12
**step** [34] - 32:15, 32:24, 33:3, 33:5, 33:6, 33:9, 33:14, 33:19, 33:22, 34:6, 34:11, 34:17, 34:23, 35:24, 37:13, 39:24, 41:22, 42:1, 42:3, 42:5, 46:23, 54:3, 54:15, 56:15, 56:18, 56:21, 57:23, 58:12, 59:4, 59:23, 89:9, 100:3, 114:3
**step-two** [4] - 33:3, 33:5, 33:6, 33:22

**steps** [10] - 12:6, 25:12, 25:13, 25:14, 26:3, 57:16, 57:20, 59:18, 59:20, 60:10
**stick** [9] - 70:8, 70:11, 72:16, 81:13, 86:9, 88:24, 93:5, 93:21, 105:12
**still** [5] - 29:14, 33:19, 52:11, 60:21, 106:24
**stipulation** [4] - 109:6, 109:15, 115:9, 116:21
**stipulations** [1] - 112:24
**STOCKTON** [1] - 3:2
**stop** [1] - 69:11
**stopped** [1] - 14:5
**stored** [1] - 22:7
**story** [1] - 75:23
**straightforward** [1] - 96:20
**STRAWN** [1] - 2:22
**Strawn** [3] - 5:25, 6:12, 6:14
**stray** [1] - 69:10
**streaming** [1] - 21:15
**STREET** [3] - 1:24, 2:7, 2:16
**strongly** [1] - 47:13
**structural** [2] - 26:12, 30:10
**structure** [8] - 22:22, 22:24, 22:25, 34:4, 37:17, 37:22, 56:23, 60:2
**structures** [1] - 37:21
**styled** [1] - 77:4
**subject** [21] - 19:2, 64:19, 72:1, 72:21, 72:25, 73:8, 74:21, 75:1, 75:9, 78:3, 80:24, 87:15, 88:13, 92:2, 93:2, 97:9, 97:10, 98:22, 100:1, 102:8, 103:10
**submarine** [1] - 96:6
**submission** [1] - 112:21
**submit** [7] - 30:9, 50:19, 68:10, 68:23, 98:23, 98:24, 115:10
**submitted** [1] - 28:16
**subsection** [2] - 32:14, 32:21
**subsequent** [2] - 28:12, 55:7
**subsidiary** [1] - 96:7
**substantially** [1] - 52:14
**substantive** [1] - 67:18
**substantively** [1] - 39:17
**substituted** [1] - 30:19
**successfully** [1] - 83:16
**sue** [20] - 76:4, 76:7, 76:23, 78:6, 87:20, 87:21, 88:1, 88:3, 90:22, 90:23, 91:1, 91:25, 92:3, 92:8, 99:1, 99:15, 102:12, 102:13, 102:16
**sued** [1] - 99:4
**sues** [1] - 76:1
**sufficient** [3] - 7:16, 103:23, 104:7
**sufficiently** [1] - 81:15

**suggest** [1] - 21:11
**suggesting** [2] - 21:5, 84:24
**suggests** [2] - 47:13, 51:18
**suing** [1] - 90:3
**suit** [5] - 28:8, 55:6, 77:1, 83:19, 115:7
**SUITE** [3] - 2:8, 2:19, 3:2
**summary** [2] - 79:3, 82:22
**SUMMERFIELD** [1] - 2:6
**Sunderland** [2] - 48:11, 48:14
**supplemental** [13] - 18:2, 28:16, 101:16, 102:22, 103:5, 103:7, 104:1, 104:5, 104:10, 104:14, 110:24, 113:16, 113:18
**supply** [5] - 27:3, 30:16, 34:23, 35:22, 37:12
**support** [6] - 80:7, 90:20, 97:4, 99:14, 100:2, 101:5
**supports** [2] - 18:13, 51:19
**suppose** [1] - 79:17
**supposed** [1] - 10:4
**Supreme** [1] - 77:24
**surprised** [3] - 53:18, 65:22, 66:4
**surrendered** [1] - 85:8
**surrounding** [1] - 36:3
**SW** [1] - 2:19
**switching** [1] - 71:10
**system** [5] - 31:16, 33:15, 35:3, 37:18, 45:4
**Systems** [1] - 47:10

## T

**tab** [2] - 77:19, 78:18
**table** [3] - 11:14, 11:24, 43:13
**tags** [1] - 37:23
**tail** [1] - 107:17
**talks** [2] - 23:20, 61:6
**teasing** [1] - 111:19
**technical** [2] - 82:16, 82:18
**technological** [4] - 11:19, 22:22, 23:3, 34:9
**Technologies** [4] - 26:17, 45:25, 59:16, 59:19
**Technology** [1] - 35:5
**teed** [1] - 103:21
**television** [2] - 11:7, 90:10
**ten** [1] - 115:3
**tense** [1] - 100:23
**tentative** [65] - 7:11, 7:21, 8:1, 17:12, 25:8, 26:8, 32:9, 32:17, 32:18, 35:4, 36:1, 44:25, 51:9, 51:12, 52:6, 53:19, 53:22, 54:4, 54:16, 55:16, 56:1, 56:19, 57:24, 58:14, 60:10, 60:15,

61:4, 64:17, 65:18, 66:17, 67:12, 67:14, 67:24, 68:3, 69:14, 69:22, 70:8, 70:11, 72:16, 73:10, 73:11, 73:12, 73:14, 74:1, 79:11, 79:15, 81:14, 83:16, 84:4, 84:19, 88:25, 91:10, 93:6, 93:14, 93:22, 94:6, 95:6, 96:19, 100:18, 105:2, 105:13, 105:15, 110:11, 110:17, 113:7
**tentatives** [2] - 7:10, 7:20
**term** [4] - 47:14, 47:17, 63:18, 91:1
**terminate** [1] - 85:11
**terminated** [2] - 97:23, 97:25, 98:5, 99:15, 100:3
**termination** [11] - 77:21, 77:22, 97:6, 97:7, 97:14, 97:15, 97:18, 97:19, 97:24, 98:20, 100:6
**terminology** [1] - 13:9
**terms** [26] - 8:6, 14:7, 22:3, 39:25, 45:20, 47:12, 49:5, 52:25, 54:3, 55:20, 56:17, 57:17, 57:20, 59:8, 59:11, 60:2, 60:24, 61:16, 63:12, 64:1, 64:23, 77:20, 80:18, 111:6
**terrible** [1] - 43:20
**THAT** [1] - 117:11
**THE** [240] - 2:3, 2:15, 2:21, 3:1, 4:3, 5:4, 5:10, 5:16, 5:23, 6:2, 6:5, 6:8, 6:16, 6:22, 8:6, 8:17, 8:25, 9:5, 9:7, 9:12, 9:14, 9:20, 9:24, 10:2, 10:6, 13:6, 14:6, 16:7, 16:13, 16:19, 17:14, 17:22, 18:1, 18:5, 19:4, 19:10, 19:14, 21:7, 23:13, 24:21, 24:25, 25:4, 26:19, 26:22, 26:24, 27:1, 28:8, 28:11, 29:21, 30:6, 31:23, 32:1, 32:6, 32:16, 32:19, 32:22, 34:14, 38:20, 38:24, 39:3, 39:7, 39:9, 40:22, 41:2, 41:9, 41:14, 41:18, 41:20, 42:22, 43:2, 43:5, 43:16, 43:18, 43:21, 43:24, 44:16, 44:18, 44:20, 47:8, 47:23, 48:13, 49:11, 50:25, 51:5, 51:8, 51:13, 52:13, 53:9, 53:12, 53:14, 54:9, 55:4, 58:3, 61:11, 61:19, 61:24, 62:1, 62:23, 62:25, 63:2, 64:4, 64:8, 64:11, 64:15, 65:12, 65:15, 65:20, 66:9, 66:19, 67:8, 67:12, 67:16, 67:22, 68:1, 68:8, 68:17, 68:24, 69:2, 69:6,

69:23, 70:6, 70:11, 70:15, 70:25, 71:7, 71:12, 71:16, 71:20, 71:24, 72:4, 72:9, 72:15, 73:3, 73:10, 73:21, 73:24, 74:4, 74:6, 74:11, 74:15, 75:25, 77:9, 78:5, 79:1, 80:15, 80:20, 81:13, 81:17, 81:25, 82:13, 83:11, 85:17, 85:21, 85:23, 86:9, 86:24, 87:2, 87:7, 87:11, 88:24, 89:4, 89:7, 89:16, 89:18, 89:23, 91:23, 93:5, 93:20, 93:24, 94:17, 96:3, 96:22, 98:2, 98:11, 98:13, 98:15, 99:5, 99:11, 99:19, 100:7, 101:13, 101:22, 102:20, 102:22, 103:3, 103:6, 103:19, 104:1, 104:4, 104:9, 104:13, 104:16, 105:4, 105:8, 105:11, 106:19, 106:22, 106:25, 107:5, 107:10, 107:20, 107:23, 108:6, 108:9, 108:20, 108:22, 108:24, 109:3, 109:14, 109:21, 110:2, 110:8, 110:15, 110:17, 111:5, 111:18, 112:2, 112:5, 112:7, 112:11, 112:18, 113:10, 113:14, 113:20, 113:24, 114:3, 114:10, 114:14, 114:24, 115:2, 115:14, 116:18, 116:25, 117:3, 117:11, 117:12, 117:13, 117:15, 117:16
**themselves** [4] - 34:2, 46:19, 61:7, 61:9
**theories** [2] - 99:7, 99:11
**therefore** [3] - 77:1, 77:9, 77:10
**therein** [1] - 53:20
**they've** [13] - 15:25, 24:8, 56:20, 57:19, 65:7, 88:22, 88:25, 92:4, 92:9, 92:10, 92:13, 96:17
**thinking** [2] - 88:13, 104:19
**third** [1] - 67:24
**THIS** [1] - 117:14
**three** [15] - 4:8, 7:10, 10:22, 21:24, 30:4, 48:5, 68:3, 97:16, 97:23, 98:1, 98:6, 98:21, 99:8, 105:18, 111:18
**three-month** [1] - 99:8
**throwing** [1] - 115:9
**tie** [1] - 45:9
**tied** [1] - 45:21
**timing** [4] - 84:1, 91:4, 94:7, 100:22
**titled** [2] - 71:18, 74:8

**TN** [1] - 2:11
**today** [16] - 4:22, 5:13, 5:15, 16:16, 27:20, 35:14, 39:20, 41:3, 63:22, 68:13, 99:1, 99:17, 110:9, 111:22, 112:13, 114:5
**together** [5] - 44:3, 101:6, 108:2, 108:11
**took** [3] - 80:23, 84:5, 100:9
**top** [10] - 17:4, 17:6, 18:19, 27:7, 27:10, 30:14, 49:17, 66:14, 68:14, 71:18
**totals** [1] - 98:1
**towards** [1] - 14:12
**TOWNSEND** [1] - 3:1
**Townsend** [1] - 5:20
**track** [1] - 43:11
**trade** [1] - 79:17
**trademark** [2] - 79:18
**trademark-by-trademark** [1] - 79:18
**trademarks** [1] - 79:16
**Trading** [1] - 26:17
**traffic** [2] - 48:4, 54:5
**trail** [2] - 108:16, 110:5
**trailing** [1] - 106:15
**TRANSCRIPT** [3] - 1:16, 117:12, 117:14
**transfer** [1] - 21:15
**transformed** [1] - 15:24
**transforming** [1] - 56:12
**transmission** [3] - 28:2, 30:21, 58:7
**transmissions** [1] - 54:7
**transmit** [1] - 34:22
**transmitted** [1] - 20:24
**transmitter** [1] - 15:12
**transmitting** [2] - 34:21, 58:5
**transponder** [1] - 37:20
**transponders** [1] - 38:3
**travel** [1] - 108:11
**tremendously** [1] - 80:12
**tried** [4] - 56:20, 62:4, 89:10, 92:9
**trouble** [1] - 8:14
**TRUE** [1] - 117:11
**true** [5] - 11:17, 23:24, 25:13, 38:12, 79:4
**truly** [2] - 7:21, 30:23
**try** [9] - 43:10, 66:21, 67:16, 67:23, 69:12, 73:17, 92:6, 93:9, 102:12
**trying** [6] - 31:18, 61:10, 73:17, 95:17, 98:9, 99:17
**turn** [29] - 10:22, 12:3, 21:18, 33:23, 35:25, 36:15, 36:23, 36:24, 37:14, 44:8, 44:12, 44:23, 45:23, 50:2, 54:13, 55:3, 56:5, 56:17, 57:22, 58:11, 58:23, 59:14, 60:14,

61:6, 73:23, 75:14, 83:22, 106:4
**turning** [7] - 19:12, 34:7, 37:5, 42:9, 57:15, 59:22, 60:8
**turns** [3] - 74:24, 83:8, 116:20
**Turton** [1] - 5:22
**TV** [2] - 11:3, 46:4
**two** [75] - 4:5, 6:24, 8:21, 8:22, 21:23, 22:10, 22:13, 22:14, 23:15, 27:25, 30:14, 30:17, 30:25, 32:15, 32:24, 33:3, 33:5, 33:6, 33:14, 33:19, 33:22, 34:6, 34:23, 35:24, 36:9, 37:1, 37:13, 39:24, 40:10, 41:11, 41:23, 42:5, 44:2, 44:10, 46:23, 48:3, 49:2, 49:5, 49:6, 50:9, 51:24, 52:2, 56:18, 56:21, 59:23, 60:16, 64:20, 65:8, 66:8, 68:12, 72:12, 72:23, 74:1, 88:17, 88:22, 89:24, 91:11, 92:10, 92:23, 96:16, 97:15, 98:1, 98:5, 98:21, 99:8, 101:10, 104:7, 106:5, 106:8, 108:17, 110:3, 111:12, 113:12
**two-month** [1] - 106:8
**two-months** [1] - 108:17
**two-year** [1] - 99:8
**type** [11] - 11:1, 13:17, 13:18, 21:14, 22:3, 51:23, 52:4, 57:4, 76:8, 85:7
**types** [1] - 57:7
**typically** [1] - 21:24

## U

**U.S** [1] - 1:23
**ultimate** [1] - 38:5
**ultimately** [2] - 23:3, 80:14
**unable** [1] - 92:10
**unavailable** [1] - 59:5
**unconventional** [6] - 35:23, 37:22, 37:23, 38:7, 38:19, 39:25
**under** [12] - 43:8, 65:5, 70:19, 70:22, 75:18, 83:15, 86:14, 97:18, 97:20, 101:1, 112:21
**underlying** [1] - 29:16
**understood** [8] - 70:25, 71:1, 93:23, 94:3, 110:7, 110:12, 110:16, 114:13
**unfortunately** [1] - 55:12
**unidirectional** [1] - 11:6
**Uniloc** [3] - 12:14, 13:10, 19:1
**unique** [7] - 42:13, 63:25,

71:15, 71:18, 72:6, 81:23, 83:9
**UNITED** [2] - 1:1, 117:16
**units** [1] - 36:12
**unless** [6] - 31:21, 40:20, 53:10, 65:10, 102:7, 113:1
**unpatentable** [1] - 15:16
**unquestioned** [2] - 77:20
**unquote** [1] - 48:2
**unsurprisingly** [1] - 69:15
**unwind** [1] - 84:15
**up** [27] - 8:15, 9:5, 9:9, 9:11, 12:10, 14:17, 14:21, 14:23, 16:5, 19:7, 27:8, 38:2, 40:25, 61:1, 63:23, 89:18, 89:19, 91:18, 94:14, 100:10, 100:16, 100:20, 103:21, 108:1, 111:9, 114:3, 114:8
**upheld** [1] - 90:18
**urge** [2] - 73:1, 79:5
**urging** [1] - 88:24

## V

**validating** [1] - 56:13
**various** [4] - 28:4, 37:21, 57:20, 79:12
**vendor** [10] - 80:6, 90:13, 90:14, 90:20, 90:23, 97:4, 99:14, 100:2, 101:5
**vendors** [1] - 92:1
**Ventures** [5] - 40:4, 40:11, 40:23, 43:4
**verbiage** [1] - 68:16
**verify** [1] - 58:2
**versions** [1] - 44:6
**versus** [9] - 4:4, 4:6, 4:9, 4:12, 4:15, 22:19, 23:11, 40:5, 40:17
**view** [4] - 84:11, 86:12, 98:19, 103:21
**Virtual** [2] - 45:25, 46:3
**virtual** [1] - 46:4
**VoiceOver** [1] - 13:23
**VOIP** [2] - 13:23, 13:25
**Vs** [1] - 1:7
**VSA** [27] - 73:17, 75:14, 77:13, 79:8, 79:13, 79:15, 80:1, 80:2, 80:4, 80:5, 80:6, 80:18, 84:3, 86:7, 86:8, 86:14, 88:10, 90:24, 94:10, 95:8, 95:11, 95:19, 96:11, 96:18, 97:25, 98:5, 101:4

## W

**wagging** [1] - 107:17
**wait** [2] - 74:19, 81:4

**wall** [1] - 84:10
**wants** [6] - 5:6, 75:8, 95:17, 95:19, 105:22, 106:2
**warning** [1] - 83:4
**WASHINGTON** [1] - 2:20
**WEDNESDAY** [2] - 1:19, 4:1
**week** [3] - 104:2, 106:8, 109:10
**weeks** [5] - 104:7, 105:17, 105:18, 108:17, 110:19
**welcome** [1] - 6:22
**well-known** [2] - 23:23, 63:17
**WEST** [3] - 1:24, 2:7, 2:16
**whatsoever** [4] - 24:9, 57:18, 63:11, 63:22
**whereby** [1] - 115:19
**wherein** [1] - 16:20
**whistles** [1] - 31:2
**whole** [6] - 11:11, 23:19, 43:15, 65:2, 70:5, 101:4
**willful** [12] - 81:24, 82:1, 82:6, 82:10, 82:23, 83:2, 83:16, 84:2, 84:6, 84:10, 91:10, 101:3
**willfully** [2] - 80:3, 88:3
**willfulness** [21] - 72:3, 81:11, 81:14, 83:7, 83:9, 84:11, 87:23, 87:24, 88:15, 88:19, 88:20, 91:3, 91:14, 92:7, 92:10, 93:3, 93:15, 100:22, 102:18, 105:16, 111:3
**win** [2] - 85:24, 99:14
**winning** [1] - 98:20
**wins** [6] - 86:1, 86:10, 86:11, 98:13, 99:6, 99:9
**Winston** [3] - 5:25, 6:12, 6:13
**WINSTON** [1] - 2:22
**WITH** [1] - 117:15
**won** [1] - 21:6
**wonderful** [1] - 27:21
**word** [3] - 34:1, 37:8, 60:21
**words** [4] - 13:6, 85:7, 111:12, 111:18
**workable** [1] - 115:4
**worst** [1] - 85:17
**worth** [1] - 27:23
**worthwhile** [1] - 89:15
**wrap** [2] - 100:10, 116:2
**written** [1] - 53:20

## Y

**year** [7] - 97:22, 97:23, 99:8, 106:3, 108:14, 108:15
**years** [6] - 88:23, 92:13, 97:15, 98:1, 98:6, 98:21
**yes-or-no** [1] - 107:7
**yesterday** [1] - 87:5

**yield** [1] - 33:21
**yielded** [1] - 22:22
**yields** [1] - 108:13
**York** [23] - 86:2, 86:4, 86:18, 88:6, 92:9, 94:12, 95:2, 95:3, 95:14, 95:20, 96:23, 96:24, 97:1, 97:3, 97:17, 97:18, 98:3, 98:13, 98:20, 98:23, 99:7, 100:24, 101:1
**YORK** [1] - 2:23
**Young** [1] - 4:23

## Z

**zero** [3] - 8:10, 42:4