Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
cassidy.young@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

**[Additional attorneys listed on signature page]**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Case No.: 2:23-cv-01043-JWH-KES |
|     Plaintiff, | |
| vs. | **ENTROPIC COMMUNICATIONS, LLC'S OPPOSITION TO DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.'S MOTION TO DISMISS FOR IMPROPER VENUE UNDER RULE 12(b)(3); DECLARATION OF CHRISTINA GOODRICH IN SUPPORT THEREOF** |
| DISH NETWORK CORPORATION; *et al.*, | |
|     Defendants. | |
| | Date:     October 6, 2023 |
| | Time:    9:00 a.m. |
| | Courtroom:  9D |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................1

II.  JUDICIAL STANDARD.............................................................................2

III. ARGUMENT ..............................................................................................4

    A.   This Court should not permit DISH to re-litigate the same issue of venue
       Judge Gilstrap already considered and rejected. ..........................................4

    B.   The physical locations of DISH California and DISH's authorized
       retailers are attributable to DISH............................................................6

       1.   DISH California is controlled by DISH and has no independent
          existence. ....................................................................................6

          a.   DISH controls DISH California........................................7

          b.   DISH California has no employees....................................9

          c.   DISH has entered into contracts on behalf of DISH California,
             including the leases for physical locations in this District. ...10

          d.   DISH and DISH California hold themselves out as the same
             entity....................................................................................10

       2.   DISH ratifies the physical locations of its authorized retailers, who
          act as DISH's agents...................................................................11

          a.   DISH's standard Retailer Agreement reserves complete
             control over retailers' sales and installation of DISH products.
             ...........................................................................................11

          b.   DISH's standard Business Rules set forth required procedures
             for the sale and installation of DISH products......................12

          c.   DISH Retailers must act for the sole and exclusive benefit of
             DISH. ..................................................................................13

    C.  Venue is proper in this District.................................................................15

       1.   Physical Place in the District.................................................................15

       2.   Regular and Established Place of Business......................................15

          a.   DISH California is staffed with DISH employees and has a
             regular and established business in this District. ..................16

          b.   DISH's Authorized Retailers are agents of DISH. ...............16

          c.   Place "of" the Defendant.......................................................18

i

1

IV.  CONCLUSION....................................................................................................20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andra Group, LP v. Victoria's Secret Stores, LLC*,
  6 F.4th 1283 (Fed. Cir. 2021) ......................................................................3, 18

*In re Appeal of DISH Network Cal. Serv. Corp.*,
  OTA Case No. 20025821 (Cal. Office of Tax App. Aug. 6, 2021) ...........2, 9, 11

*Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.*,
  72 Cal. App. 5th 1042 (2021) .............................................................................17

*Church of Scientology Int'l v. DeCrescenzo*,
  2018 WL 6016917 (C.D. Cal. May 3, 2018) .......................................................4

*In re Cray*,
  871 F.3d 1355 (Fed. Cir. 2017) .........................................................3, 15, 16, 18

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
  No. 2:22-CV-00125-JRG (E.D. Tex. May 3, 2023).........................................15

*Entropic Communications, LLC v. DISH Network Corp.*,
  No. 2:22-cv-75-JRG (E.D. Tex.) ................................................................*passim*

*Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*,
  2013 WL 5276132 (E.D. Cal. Sept. 17, 2013) .....................................................5

*Fresno Rock Taco, LLC v. Nat'l Sur. Ins. Corp.*,
  2015 WL 135720 (E.D. Cal. Jan. 9, 2015) ...........................................................5

*In re Google*,
  949 F.3d at 1345 ..........................................................................................15, 16

*Holguin v. DISH Network LLC*,
  229 Cal. App. 4th 1310 (2014) .......................................................................9, 11

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019) ..............................................................................17

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) ........................................................................2, 10

iii

*Ocugiene, Inc. v. ThermaMEDx, LLC*,
   2022 WL 18284980 (C.D. Cal. Dec. 8, 2022)......................................16

*Seal4Safti, Inc. v. Cal. Expanded Metal Prods. Co.*,
   2022 WL 2199831 (C.D. Cal. Apr. 26, 2022)........................................4

*Sightline Payments, LLC v. Everi Holdings Inc.*,
   No. 6:21-cv-1015, 2022 WL 2078215 (W.D. Tex. June 1, 2022)
   (appeal filed June 28, 2022) ............................................................3, 19

*Soler v. Cnty. of San Diego*,
   2019 WL 6612011 (S.D. Cal. Dec. 4, 2019) .........................................5

*Stortroen v. Beneficial Fin. Co.*,
   736 P.2d 391 (Colo. 1987)................................................................17

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   581 U.S. 258 (2017).............................................................................2

*United States v. Dish Network LLC*,
   256 F. Supp. 3d 810 (C.D. Ill. 2017)..................................................7

*In re Volkswagen Grp. Of Am.*,
   28 F.4th 1203 (Fed. Cir. 2022) ........................................................17

*Zurich Am. Ins. Co. v. Lim & Nascimento Eng'g Corp., Inc.*,
   2013 WL 12070536 (C.D. Cal. Mar. 11, 2013) ..................................4

**Statutes**

28 U.S.C. § 1291..................................................................................5

28 U.S.C. § 1400(b) ............................................................................2

28 U.S.C. § 1400(b)(2) ........................................................................3

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(3)...............................2, 5

*Supra* § III.B.1.a–d ............................................................................19

*Supra* § III.B.1.c................................................................................19

*Supra* § III.B.1.d ...............................................................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

██████████████████[1] Those are the words of a DISH-authorized retailer in California. They are also reality. There is one single enterprise operating nationwide, including in this District, to provide customers the services giving rise to infringement. There is no dispute that there are physical DISH locations in the District, staffed by numerous employees; discovery even revealed that DISH itself negotiated and signed the lease agreements for those locations on behalf of its subsidiary, DISH California. On top of these facts, DISH has numerous authorized retailers acting as its agents in the District, each with DISH-branded physical locations. DISH argues only that artificial corporate lines drawn across a unified enterprise defeat venue over the parent entities—the ones that control the enterprise, make the profits, and thus are the ones that desperately want to sidestep liability. The law has faced this argument many times, and has developed two legal tests to look beyond the corporate shell game.

Under both tests—(1) ratification, and (2) lack of corporate separateness—venue over the DISH parents (DISH Network Corporation, DISH Network L.L.C., and DISH Network Service L.L.C.), a group DISH's papers call "DISH Colorado," is fully proper in this District. Those two tests address whether physical locations in the District are legally attributed to the DISH parents. The answer has already been determined. In the related case *Entropic Communications, LLC v. DISH Network Corp.*, No. 2:22-cv-75-JRG (E.D. Tex.) ("*Dish I*"), Judge Gilstrap in the Eastern District of Texas transferred to this District over DISH's objections. He held that venue was proper here over the *same* DISH parent entities. Collateral estoppel suggests this should simply be the end of the matter. That is the simplest resolution and also promotes judicial efficiency, comity, and restraint.

If the Court chooses to re-open the merits, however, the answer will not have changed. Venue discovery in the present case has only confirmed what the publicly

---

[1] ████████████████████████████████████

available information reveals. As detailed *infra* at Section III.B.1: (1) DISH California has no independent existence; (2) although its representative can't say for sure, he thinks it exists solely to satisfy California-specific regulations; (3) there is no evidence it has any employees; (4) it has no corporate officers at all; (5) its management personnel are those of the DISH parents; and (6) the leases for the physical business locations in the District were executed by DISH parent employees on its behalf.

In summary, DISH California is a shell; it is not an independently functioning business. Indeed, DISH represented to the State of California that it doesn't even bother with actual agreements between DISH California and other DISH entities—DISH's accountants simply allocate costs and expenses between the different DISH entities. *In re Appeal of DISH Network Cal. Serv. Corp.*, OTA Case No. 20025821, at 2 n.4 (Cal. Office of Tax App. Aug. 6, 2021) ("*DISH Appeal*"). Accordingly, it is unavoidable that the DISH parents both ratify and lack separateness with respect to the DISH California shell, meeting each accepted legal test for proper venue. Moreover, discovery has also confirmed that the network of "independent" installers DISH controls in this District themselves have physical locations that are properly attributable to the DISH parents. Whether the Court chooses collateral estoppel or a re-analysis of the merits, venue is proper here, and the present motion should be denied.

## II.   <u>JUDICIAL STANDARD</u>

In ruling on a motion to dismiss for improper venue brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, courts may consider facts outside the pleadings but are "obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). When a Rule 12(b)(3) motion is made in a patent infringement case, the venue inquiry is governed exclusively by 28 U.S.C. § 1400(b). *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 269 (2017).

Venue is proper in any district where the defendant has committed acts of infringement and has a regular and established place of business. *See* 28 U.S.C. § 1400(b)(2). Specifically, a "regular and established place of business" must be (1) "a physical place in the district;" (2) "regular and established;" and (3) "the place of the defendant." *In re Cray*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The Federal Circuit has set forth a number of considerations relevant to determining if a regular and established place of business is "of the defendant." *Id.* at 1363–64. Those considerations include whether the defendant owns or leases the place, exercises other attributes of possession or control over the place, conditions employment on an employee's continued residence in the district, stores materials at a place in the district so that they can be distributed or sold from that place, advertises a place for its business, or represents that it has a place of business in the district. *Id*. A court may also consider the nature and activity of the alleged place of business of the defendant in the district in comparison with that of other places of business of the defendant in other venues. *Id.* at 1364. These enumerated considerations are not exhaustive but rather illustrative of the types of information relevant for determining whether a physical place is "of the defendant." *See id*. at 1363–64.

In the case of affiliated entities—such as a subsidiary or an agent—the place of business of one company can be imputed to another when the two have not maintained corporate separateness or when the defendant has ratified the location as its own. *See Andra Group, LP v. Victoria's Secret Stores, LLC*, 6 F.4th 1283, 1289 (Fed. Cir. 2021). The standard for establishing that two entities lack corporate separateness is "relaxed" when the theory is not used to impose liability, but merely to establish jurisdiction or venue. *See Sightline Payments, LLC v. Everi Holdings Inc.*, No. 6:21-cv-1015, 2022 WL 2078215, at *4 (W.D. Tex. June 1, 2022) (appeal filed June 28, 2022) (quoting *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 681 (S.D.N.Y. 2016)).

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

III.   **ARGUMENT**

    A.   **This Court should not permit DISH to re-litigate the same issue of venue Judge Gilstrap already considered and rejected.**

In an earlier-filed action between DISH and Entropic, the Eastern District of Texas court issued a seventeen-page decision transferring the action to this District, rejecting DISH's argument that venue was improper here. *DISH I*, DE 109. DISH is therefore collaterally estopped from arguing that venue is improper here.

Collateral estoppel "bars relitigation of issues adjudicated in an earlier proceeding if three requirements are met: '(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.'" *See Seal4Safti, Inc. v. Cal. Expanded Metal Prods. Co.*, 2022 WL 2199831, at *5 (C.D. Cal. Apr. 26, 2022) (quoting *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1021 (9th Cir. 2012)).

DISH does not dispute the first and third elements of collateral estoppel, but asserts, without analysis, that Judge Gilstrap's Order in *DISH I* "is not controlling because there is no final judgment." *See* Mot. at 8. Not so. The standard for a "final judgment" in the case of collateral estoppel is less stringent than that for *res judicata*. *See Zurich Am. Ins. Co. v. Lim & Nascimento Eng'g Corp., Inc.*, 2013 WL 12070536, at *13 (C.D. Cal. Mar. 11, 2013). A "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Id.* (citation omitted). Courts consider four factors, none of which is dispositive, to weigh whether a prior adjudication is "sufficiently firm" to be a final judgment for purposes of collateral estoppel: (1) whether the decision was not avowedly tentative; (2) whether the parties were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4) whether the decision was subject to an appeal. *Church of Scientology Int'l v. DeCrescenzo*, 2018 WL 6016917, at *6 (C.D. Cal. May

4

3, 2018); *Fresno Rock Taco, LLC v. Nat'l Sur. Ins. Corp.*, 2015 WL 135720, at \*16 (E.D. Cal. Jan. 9, 2015). For three of these factors, there should be no reasonable dispute—the Eastern District of Texas decision was not tentative (and indeed, established the law of that case), both parties were fully heard across DISH's motion, Entropic's cross-motion, and oral argument, and the resulting opinion was detailed and well-reasoned.[2] *DISH I*, DE 25, 52, 53, 75, 109. That alone is sufficient to accord Judge Gilstrap's opinion conclusive effect on this issue.

Turning to the final factor, while no direct appeal was available to DISH under section 1291, that does not disturb the totality of the factors in favor of preclusion. *See Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, 2013 WL 5276132, at \*12 (E.D. Cal. Sept. 17, 2013) ("Whether an interlocutory district court order may be given preclusive effect does not hinge on its appealability pursuant to 28 U.S.C. § 1291.") (citing *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983)); *see, e.g., Soler v. Cnty. of San Diego*, 2019 WL 6612011 (S.D. Cal. Dec. 4, 2019) (applying collateral estoppel to a decision from a still-pending district court case before final judgment). The question the fourth factor implicates is whether a judgment is sufficiently well-baked that there is nothing left to fight, only an appeal. DISH answers the question itself, arguing that "[DISH] had already answered and could not file a Rule 12(b)(3) motion," DE 49-1 at 5, n.1. Once Judge Gilstrap decided that the case was to be transferred to this District because venue was proper, there apparently was nothing left but an appeal—because DISH did not in fact pursue any other avenue. DISH's acceptance of the finality of the Eastern District of Texas decision places this fourth factor on the side of finality and is consistent with how courts around the country apply collateral estoppel to similar interlocutory orders.

---

[2] Entropic requests the Court take judicial notice of the Order and related filings.

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

**B.** **The physical locations of DISH California and DISH's authorized retailers are attributable to DISH.**

There is no dispute that this Court has venue over DISH California, and numerous other DISH entities. ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ DISH never contests that the physical locations in the District are regular and established, meaning staffed with DISH employees (or, in the case of the authorized retailers, DISH's agents) carrying out DISH's business. And of course DISH also has millions of customers in California. Goodrich Decl., Ex. A ("About DISH Page"). The only dispute before the Court is whether the physical locations in the District are attributable to the DISH parent entities, DISH Network Corporation, DISH Network L.L.C., and DISH Network Service L.L.C. Ample evidence establishes that they are.

**1.** **DISH California is controlled by DISH and has no independent existence.**

DISH California is controlled by DISH and has no independent existence. DISH is organized as a single nationwide enterprise, not a collection of independently functional businesses. DISH is a multi-billion dollar company employing more than 14,000 employees to provide satellite services to approximately 17 million customers from "rural" to "urban" America. Goodrich Decl., Ex. A; *see also* Goodrich Decl., Ex. FF (DISH SEC 10-K stating "As of December 31, 2022, we had 9.750 million Pay-TV subscribers in the United States, including 7.416 million DISH TV subscribers"). DISH represents that it "provides service across the nation, including your area." Goodrich Decl., Ex. A. Unsurprisingly, DISH conducts a lot of business in the most populous state, California. DISH's business in California, and in this District, is conducted in a variety of ways, including directly (and through third parties) calling and soliciting

California customers,[3] implementing and servicing cable,[4] installing running numerous warehouses and business offices,[5] and providing cable and other services to customers. DE 49-1 ("Mot.") at 8:1–11.

DISH California is not an independent entity at all, which is why its acts and locations are attributable to the parents. The DISH parents created DISH California (actually a Colorado entity like almost all DISH entities), as a wholly-owned subsidiary to facilitate the enterprise's business in California.  DE 49-6 ("Minnick Decl.") ¶¶ 2 & 3. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

### a.  DISH controls DISH California.

It is clear that DISH controls DISH California, because they are all wrapped into the same enterprise with the DISH parents at the head. DISH California has the same principal office, registered agent, and registered agent mailing address as the other DISH entities. *See* Goodrich Decl., Exs. B, E–G. ████████████████████████████

███████████████████████████████████████████████████████████████████

---

[3] *See United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 817–18 (C.D. Ill. 2017); *see also* Goodrich Decl., Ex. T.

[4] Dish uses its website to promote job openings for cable installation technicians and other roles in California, including in El Segundo and Redondo Beach. *See* Goodrich Decl., Ex. P (careers.dish.com, showing search results for jobs near Los Angeles, CA); *see also* Goodrich Decl., Ex. S (showing Cable Installation Technician job openings in Pacolma, Reseda, Pamnorama City, North Hills, North Hollywood, Van Nuys, Granada Hills, Sun Valley, and Winnetka).

[5] The Court in *DISH I* noted there are multiple buildings within this District bearing the "Dish" name. *See DISH I*, DE 109 at 7; *see also, e.g.,* Goodrich Decl., Ex. V (Dish Network location in Costa Mesa, CA). In fact, Dish recently entered into an Amended Final Judgement and Permanent Injunction on Consent with the State of California to resolve claims of illegal dumping at its California facilities, which Dish admitted it owns, leases, or operates. *See* Goodrich Decl., Ex. U at 2 ("DISH owns and/or operates COVERED FACILITIES throughout California"); *see also id.* at "Exhibit A" (showing facilities in Hawthorne, Riverside, Santa Ana, and South El Monte).

7



1 ████████████████████████████████████████████████████████████

2 ██ ████████████████████████████████████ The entities also share two of

3 the same directors—Charles Ergen and James DeFranco. *See* Goodrich Decl., Ex. W.

4 ████████████████████████████████████████████ █ ██████████████

5 ████████████████████████████████████████████████████████████

6 ██████████████████████████████████████████████████████

7 ████████ ; Goodrich Decl., Ex. W (dish.gcs-web.com/corporate-governance/board-of-

8 directors). DISH California's board of directors appears to be entirely composed of

9 DISH's owners or officers (its corporate representative didn't even know the board's

10 composition for sure) and it is then no surprise that DISH California's Articles of

11 Incorporation and Bylaws give those directors complete and total control of DISH

12 California and possess all corporate powers. Goodrich Decl., Ex. B; *id.*, Ex. GG. Indeed,

13 ████████████████████████████████████████████████████████████

14 ██████████████████████████████ How can an enterprise be a provider of satellite

15 TV services to California customers, and be independent of the parents, but not know

16 whether it has a bank account—and be dependent on a representative of the parent DISH

17 entities to testify about it?

18 ████████████████████████████████████████████████████████

19 ████████████ Instead, DISH's corporate officers run their departments across the entire

20 national enterprise without regard to DISH California's existence. For example, DISH's

21 Senior Vice President that leads the field operations department represents that he does

22 so for the entire DISH enterprise. Goodrich Decl., Ex. EE ("As Senior Vice President

23 of Customer Experience Operations (CXO), Patrick Joe 'PJ' oversees the customer

24 experience field operations for all of DISH's brands."). Supporting this conclusion,

25 DISH has told the State of California that it does not even bother with actual agreements

26 between DISH and DISH California for the installation services that DISH California

27

28 [6] ████████████████████████████████████████████████████

provides—instead "intercompany journal entries [are] made to recognize the costs incurred by [DISH California] as revenue to [DISH California] and as expenses to Dish." *DISH Appeal* at 2 n.4.

Consistent with DISH's control, when it came time to answer questions in this case, DISH appointed one of its own employees, simultaneously granting him the power to bind DISH California, among other DISH entities, in a single document. *See generally* Minnick Decl. Further, ███████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ Indeed, ██████████████████ ████████████████████████████████—his declaration stated that he is employed by DISH Network L.L.C. (*see* Minnick Decl. ¶ 2) ██████████████████████████ ████████████████████████████████████████████████████████ The informality is revealing.

### b. DISH California has no employees.

Despite DISH's representations, the evidence produced in the case reveals that DISH California has no employees at all. ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████ This appears to be a consistent, long-standing truth of the DISH enterprise. *See Holguin v. DISH Network LLC*, 229 Cal. App. 4th 1310, 1315 (2014) ("[At trial] Individuals associated with DISH described their employer alternately as DISH or DISH California, though they stated that they received their paychecks from Echostar."). Examples abound of DISH employees in this District holding themselves out to the public as being employed by "DISH Network," not DISH California. *See, e.g.*, Goodrich Decl., Exs. Q–R.

The employment agreement documents produced also indicate that the real employer is DISH Network L.L.C. (one of the parents), not DISH California. ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ DISH also requires employment applicants to sign an arbitration agreement that binds "DISH Network L.L.C. *and all of its affiliates.*" (*Id.* Ex. I, NLRB Board Decision, at 1.) Consistent with a nationwide employer, job postings for positions in California (including in this District) are on DISH Network L.L.C's website, and there is no mention of DISH California. Goodrich Decl., Ex. P. In sum, there is no evidence in the record that DISH California actually pays and employs anyone.[7]

### c. DISH has entered into contracts on behalf of DISH California, including the leases for physical locations in this District.

███████████████████████████████████████████████████

███████████████████████ Consistent with a lack of officers or employees, however,

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

### d. DISH and DISH California hold themselves out as the same entity.

DISH services are marketed and distributed to California customers within this District under the same DISH logo that is used nationwide. ██████████████████

---

[7] To the extent there is any factual ambiguity regarding DISH California's employees, or lack thereof, it should be resolved in Entropic's favor as the non-movant. *Murphy,* 362 F.3d at 1137.

ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS

1   ██████████████████████████████████████████; *see also id.,*

2 Ex. X (TTAB DISH logo). Indeed, California customers can purchase DISH service,

3 and schedule installation, through DISH's website with no mention of DISH California.

4 Goodrich Decl., Ex. V. Although it could be that DISH California ostensibly installs

5 the equipment, all money is sent to DISH. *DISH Appeal* at 2 n.4. For these same reasons,

6 California courts have previously noted the "substantial interrelationships" between

7 DISH, DISH California, and the other DISH entities. *See Holguin v. DISH Network*

8 *LLC*, 229 Cal. App. 4th 1310, 1315 (2014).

9       DISH's conduct as one and the same entity is sufficiently pervasive (and

10 persuasive) that that third parties are unaware of any distinction between DISH and

11 DISH California. ████████████████████████████████████████

12 ██████████████████████ Those are not uninformed individuals.

13 Those are the very authorized retailers, located in California, who are contractually

14 linked to DISH for installations and customer care.

15     **2.**   **DISH ratifies the physical locations of its authorized retailers,**

16         **who act as DISH's agents.**

17       DISH exercises considerable control over its authorized retailers throughout their

18 business relationship. Those retailers also are empowered directly to act on DISH's

19 behalf—customers walk into those stores and walk back out with a contract for DISH's

20 services without ever having interacted with DISH itself.

21         **a. DISH's standard Retailer Agreement reserves complete**

22           **control over retailers' sales and installation of DISH**

23           **products.**

24       DISH contracts with third-party retailers in the District who operate physical

25 storefronts on behalf of DISH. ██████████████████████████

26 ──────────────────

27 [8] ████████████████████████████████████████

28 ████████████████████████████████████████



**b. DISH's standard Business Rules set forth required procedures for the sale and installation of DISH products.**

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9                  In other words, DISH controls

10 every aspect of an Authorized Retailer's provision of DISH products and services to

11 DISH customers.

12             **c.  DISH Retailers must act for the sole and exclusive benefit of**

13                  **DISH.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**



14

### C.      Venue is proper in this District.

The only dispute regarding venue is **who**. Venue is proper over some DISH entities. That is not disputed. DISH simply hopes the Court will exclude the ones customers actually pay, and maintain the case only over the DISH California entity that does not know if it even has a bank account. It is very transparent why. However, the law looks through the corporate fictions. Here, venue is proper over the DISH parent entities, DISH as DISH calls them, for two reasons. First, DISH's physical locations and employees in the District are properly attributed to the DISH parents under both accepted legal tests—ratification and lack of corporate separateness. Second, DISH's Authorized Retailers have their own physical places of business and employees in the District, which in turn are properly attributable to the controlling DISH entities.

### 1.      Physical Place in the District

The initial *Cray* factor requires the place only to be a "physical, geographic location in the district from which the business of the defendant is carried out." *In re Cray*, 871 F.3d at 1360. Neither party disputes that there are several physical places of business in this District—the only issue is whether these locations can be attributed to the Defendants. For instance, DISH has at least three Local Receive Facilities within this District—located in Ontario, Palm Springs, and Santa Maria. *See* Goodrich Decl., Ex. AA. Those locations bear the DISH names and provide DISH-branded products and services. *See* Memorandum Order, *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-CV-00125-JRG, at 6 (E.D. Tex. May 3, 2023). Similarly, Dish's Authorized Retailers have physical locations in this District. Stefani Dep. 14:10-18.

### 2.      Regular and Established Place of Business

A "'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google*, 949 F.3d at 1345. DISH does not contest this factor in its motion. There is no question that DISH is conducting business in California from physical locations in the District. In *DISH I*, the Court found

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

this element was satisfied because "DISH holds the locations in CDCA out as its own." *DISH I,* DE 109 at 9. This was established in part by the DISH logo appearing on vans and other property stored at the locations in question. *Id.* at 10. Here, evidence obtained through venue discovery establishes that both DISH's employees at those locations and DISH's authorized retailers satisfy this prong.

### a. DISH California is staffed with DISH employees and has a regular and established business in this District.

In its motion, DISH does not contest this factor—possibly because it knows DISH California may not actually employ anyone; those employees instead appear to be employees of the defendants. *See supra* § III.B.1.b. But regardless, even if the employees at the physical locations in the District are employed by DISH California, their activities still are attributable to DISH itself—as established above, *see supra* § III.B.1.a–d, they are carrying out DISH's business for DISH's customers and hold themselves out to the public as DISH employees. Indeed, they enter customer's homes on DISH's behalf to install DISH's equipment in order to provide DISH's services and act on DISH's behalf—███████████████████████████████████ ███████████████████████████—and as such readily qualify as DISH's employees or agents, even if formally employed by DISH California.

### b. DISH's Authorized Retailers are agents of DISH.

Separately and additionally, the employees of DISH's Authorized Retailers also readily satisfy the second *Cray* factor. *See In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020) ("We conclude that a 'regular and established place of business' requires the regular, physical presence of an employee *or other agent of the defendant* conducting the defendant's business at the alleged 'place of business.'"); *see also Ocugiene, Inc. v. ThermaMEDx, LLC*, 2022 WL 18284980, at *2 (C.D. Cal. Dec. 8, 2022) ("It is true that an agent's activities can be considered in determining a principal's regular and established place of business for purposes of the *Cray* test."). There is no dispute that

DISH's business is carried out from these locations. The employees there, however, also readily satisfy the test for agency.

The "essential elements of agency are (1) the principal's right to direct or control the agent's actions; (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf; and (3) the consent by the agent to act." *In re Volkswagen Grp. Of Am.*, 28 F.4th 1203, 1208–09 (Fed. Cir. 2022).[10] Here, ample evidence establishes that DISH's authorized retailers are DISH's agents in California. Specifically, as addressed above, DISH controls its authorized retailers across nearly every aspect of their interactions with DISH's customers. *See supra* § III.B.2.a–c. There also should be no dispute that DISH has consented to the authorized retailers acting on its behalf, and that the authorized retailers have consented to so act: as discussed above, the very purpose of the business relationship is for the authorized retailers to solicit and contract with DISH customers on DISH's behalf, without DISH ever being part of the conversation. *See supra* § III.B.2.a–c. That is the very essence of agency.

On similar facts, the Fourth Circuit recently described the evidence supporting an agency relationship between DISH and its authorized retailers as "considerable." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019). Specifically, in affirming a jury verdict finding such agency, the Fourth Circuit pointed to the contracts "affording DISH broad authority over [the authorized retailers] business," that the retailer "was authorized to use DISH's name and logo in carrying out its operation," and that a Voluntary Compliance Agreement with 46 state attorneys general stated DISH had authority over its authorized retailers for TCPA compliance. On this evidence, the Fourth Circuit held "it was entirely reasonable for the jury to conclude [] that [the authorized retailer] was acting as DISH's agent." *Id*. at 660.[11]

---

[10] The test for agency in both California and Colorado is nearly identical to the test set forth in *Meyer*. *Compare Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.*, 72 Cal. App. 5th 1042, 1061–62 (2021) (citation omitted) *with Stortroen v. Beneficial Fin. Co.*, 736 P.2d 391, 395 (Colo. 1987).

[11] To the extent DISH points to provisions of its authorized retailer contracts that disclaim an agency relationship—as DISH also tried to do in *Krakauer*—"[i]t is a

17

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

### c. Place "of" the Defendant

Under the third *Cray* factor, "'the regular and established place of business' must be 'the place of the defendant.'" *In re Cray*, 871 F.3d at 1363. A court may consider "whether the defendant owns or leases the place"; "exercises other attributes of possession or control over the place"; "[m]arketing or advertisements . . . but only to the extent they indicate that the defendant itself holds out a place for its business"; "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory"; or whether the defendant "places its name on a sign associated with or on the building itself." *Id.* at 1363–64. In the case of an affiliated entity, the place of business of one company can be imputed to another when the defendant has ratified the location as its own or whether the two corporations have not maintained corporate separateness. *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021).

**Ratification.** Judge Gilstrap, in *DISH I*, found that DISH had adopted and ratified the locations of DISH California. The Court noted that customers could use the main Dish website to find Dish service packages and Authorized Retailers available within the district; prospective employees could find Dish job listings for positions in the district; and the site prominently advertised Dish's "nationwide availability." *See Dish I*, 73, 75; DE 109 at 10. The Court also emphasized the prominent displays of DISH's logos on the physical locations, holding out those facilities publicly as DISH's own. In sum, Judge Gilstrap concluded based on these facts that "DISH is purposefully holding itself out as providing products and services in California" and had ratified the physical locations as its own. *Id*.

Evidence produced here further supports this ruling, showing that DISH California is nothing more than a regional department within DISH's national enterprise—one for which DISH shuffles numbers on spreadsheets for tax purposes and

---

familiar rule of agency . . . that parties cannot avoid the legal obligations of agency by simply contracting out of them." *Id*. at 660–61.

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

puts certain leases in its name. The DISH California locations in this District are plastered with DISH's logo, populated by DISH employees, and the business of DISH is unquestionably performed out of those locations. *Supra* § III.B.1.a–d. DISH therefore holds those facilities out to the world as its own and carries out its national business from these locations to service its California customers. DISH also treats DISH California's customers as its own. *Supra* § III.B.1.d. Indeed, DISH employees signed leases for these locations, simply choosing to put down DISH California as the legal entity entering the contract. *Supra* § III.B.1.c.

**Lack of Corporate Separateness.** The standard for establishing that two entities lack corporate separateness is "relaxed" when the theory is not used to impose liability, but merely to establish jurisdiction or venue. *See Sightline Payments, LLC v. Everi Holdings Inc.*, No. 6:21-cv-1015, 2022 WL 2078215 at *4 (W.D. Tex. June 1, 2022) (appeal filed June 28, 2022) (quoting *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 681 (S.D.N.Y. 2016)). Here, that standard is satisfied.

There is no evidence in the record that DISH California observes any corporate formalities at all. Indeed, DISH's corporate representative did not even know who was currently on the board or whether it had any corporate officers. Nor did that representative know whether DISH California even possesses a bank account. There's no evidence of any independent functioning at all. For example, as noted above: (1) DISH and DISH California share numerous corporate functions, including legal, sales, human resources, and real estate; (2) DISH California performs installation services for DISH in California, purportedly as a "construction contractor" for tax purposes; (3) DISH California warehouses DISH's equipment; (4) DISH California does not pay for DISH's equipment that DISH California uses to service its customers; (5) DISH California's original Board of Directors consisted of three individuals holding positions with other DISH entities; (6) officers from other DISH entities continue to sign lease agreements for DISH California; (7) DISH's own employees do not distinguish between the various DISH entities; and (8) DISH California's highest

19

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

ranking official holds himself out on LinkedIn as the "Region Manager at Dish Network." *See supra* § III.B. ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ That is ***not*** indicative of an independent, self-contained corporate entity.

While the Defendants claim DISH California and the DISH entities are distinct, such distinctions simply do not exist in practice. Again, the DISH entities and DISH California share the same principal office, registered agent, registered agent mailing address, and two of the same directors. Goodrich Decl., Exs. E–G, GG. DISH services are marketed and distributed to California customers within this District under the same DISH logo that is used nationwide, and DISH jobs within California are posted on the main website for DISH Network L.L.C. *Id.*, Exs. N, P.[12] ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ DISH California's existence is artificial—in practice, it does not exist at all. In such circumstances, there is a lack of corporate separateness and the physical locations of the subsidiary are properly attributed to the parent corporations.

## IV.   <u>CONCLUSION</u>

DISH asks this Court to hold that a nationwide corporate enterprise can compartmentalize its liability by setting up wholly-owned subsidiaries with no employees and no independent operations. Such a holding could have far-reaching implications and upend patent venue (and perhaps liability as well), leaving venue choice in the hands of defendants through the choice of corporate structure. It could

---

[12] *See also DISH I*, DE 109 at 8 ("In fact, it appears the name 'DISH' is loosely defined.").

ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS

even allow a single enterprise of DISH's size, spanning 48 states, to force fragmentation of patent infringement litigation into a multitude of suits around the country simply by setting up legal entities with no real life of their own. This Court should reject that invitation.

The law sensibly rejects DISH's position through the existing legal tests of ratification and a lack of corporate separateness. This case law recognizes that corporate shells are not meant to be used as artifices to rig the rules of venue. Here, venue discovery has confirmed—beyond what publicly available evidence already shows— the very fact pattern that this law exists to address. DISH provides infringing products and services in this District from regular and established places of business. All relevant acts are legally attributable to the DISH parent entities. Entropic respectfully requests the Court find venue proper, as the Eastern District of Texas previously did involving the same parties in the related case, and deny DISH's motion to dismiss.

Dated: September 5, 2023            Respectfully Submitted,

                                    By: */s/ Christina N. Goodrich*
                                    Christina N. Goodrich (SBN 261722)
                                    Connor J. Meggs (SBN 336159)
                                    Cassidy Young (SBN 342891)
                                    **K&L GATES LLP**
                                    10100 Santa Monica Blvd., 8th Fl.
                                    Los Angeles, CA 90067
                                    Tel.: (310) 552-5547
                                    Fax: (310) 552-5001
                                    christina.goodrich@klgates.com
                                    connor.meggs@klgates.com
                                    cassidy.young@klgates.com

                                    Peter Soskin (SBN 280347)
                                    **K&L GATES LLP**
                                    4 Embarcadero Center, Suite 1200
                                    San Francisco, CA 94111
                                    Tel.: (415) 882-8200
                                    Fax: (415) 882-8220

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

peter.soskin@klgates.com

James Shimota (admitted *pro hac vice*)
George Summerfield (admitted *pro hac vice*)
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com

Darlene F. Ghavimi (admitted *pro hac vice*)
**K&L GATES LLP**
2801 Via Fortuna, Suite #650
Austin, TX 78746
Tel.: (512) 482-6919
Fax: (512) 482-6859
darlene.ghavimi@klgates.com
*Attorneys for Plaintiff*
*Entropic Communications, LLC*

22
**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

1

## CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Plaintiff Entropic Communications,

3 LCC, certifies that this brief contains 6,937 words, which complies with the word

4 limit of L.R. 11-6.1.

5

6  Dated: September 5, 2023                    Respectfully Submitted,

7                                             By: */s/ Christina N. Goodrich*

8                                             Christina N. Goodrich (SBN 261722)
                                              Connor J. Meggs (SBN 336159)
9                                             Cassidy Young (SBN 342891)
                                              **K&L GATES LLP**
10                                            10100 Santa Monica Blvd., 8th Fl.
                                              Los Angeles, CA 90067
11                                            Tel.: (310) 552-5547
                                              Fax: (310) 552-5001
12                                            christina.goodrich@klgates.com
13                                            connor.meggs@klgates.com
                                              cassidy.young@klgates.com
14

15

16                                            Peter Soskin (SBN 280347)
                                              **K&L GATES LLP**
17                                            4 Embarcadero Center, Suite 1200
                                              San Francisco, CA 94111
18                                            Tel.: (415) 882-8200
19                                            Fax: (415) 882-8220
                                              peter.soskin@klgates.com
20

21                                            James Shimota (admitted *pro hac vice*)
22                                            George Summerfield (admitted *pro hac vice*)
                                              **K&L GATES LLP**
23                                            70 W. Madison Street, Suite 3300
                                              Chicago, IL 60602
24                                            Tel.: (312) 372-1121
25                                            Fax: (312) 827-8000
                                              jim.shimota@klgates.com
26

27                                            Darlene F. Ghavimi (admitted *pro hac vice*)
28                                            **K&L GATES LLP**

23

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2801 Via Fortuna, Suite #650
Austin, TX 78746
Tel.: (512) 482-6919
Fax: (512) 482-6859
darlene.ghavimi@klgates.com
*Attorneys for Plaintiff*
*Entropic Communications, LLC*

**ENTROPIC'S OPPOSITION TO DISH'S MOTION TO DISMISS**