# EXHIBIT I

NOTICE: This opinion is subject to formal revision before publication in the bound volumes of NLRB decisions. Readers are requested to notify the Executive Secretary, National Labor Relations Board, Washington, D.C. 20570, of any typographical or other formal errors so that corrections can be included in the bound volumes.

**Dish Network, LLC** *and* **Brett Denney.** Case 27–CA–158916

March 18, 2021

By Chairman McFerran and Members Kaplan and Ring

SUPPLEMENTAL DECISION, ORDER, AND NOTICE TO SHOW CAUSE

On April 13, 2017, the National Labor Relations Board issued a Decision and Order finding that the Respondent violated Section 8(a)(1) of the National Labor Relations Act (the Act) by maintaining a mandatory arbitration agreement (Agreement) that employees reasonably would believe bars or restricts them from accessing the Board and its processes and by requiring employees to maintain the confidentiality of all arbitration proceedings, including but not limited to hearings, discovery, settlements, and awards. *Dish Network, LLC*, 365 NLRB No. 47 (2017). Additionally, the Board found the Respondent violated Section 8(a)(1) of the Act by prohibiting an employee from discussing his discipline with other employees. Id.

The Respondent filed a petition for review with the United States Court of Appeals for the Fifth Circuit, and the Board filed a cross-application for enforcement. On July 9, 2018, the Respondent and the General Counsel filed a joint motion asking the court to sever and remand the Board access and confidentiality allegations in light of *Boeing Co.*, 365 NLRB No. 154 (2017). The parties also informed the court that they had reached a "resolution of the Board's finding that DISH unlawfully told an employee not to discuss discipline with others," and they requested withdrawal of the petition for review and cross-application for enforcement of the relevant part of the Board's order. On July 18, 2018, the court remanded the case to the Board in its entirety.[1]

The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.

Having considered the Board's previous decision and the record, we find, as discussed below, that the Agreement unlawfully restricts access to the Board. We further find that the Agreement's confidentiality requirement is unlawful in one respect. As explained below, and contrary to our dissenting colleague's contention, that requirement is lawful to the extent it mandates that arbitration proceedings, including hearings, discovery, and awards, be kept confidential. However, we reach the opposite conclusion regarding the requirement that settlements remain confidential. Additionally, we shall issue a Notice to Show Cause why the allegation concerning prohibiting an employee from discussing his discipline should not be remanded to the Regional Director for further appropriate action.

I. FACTS

The Respondent, a Colorado corporation with its headquarters in Englewood, Colorado, provides satellite television and other media services.

Since October 24, 2013, the Respondent has required all applicants for employment to sign the Agreement. The Agreement provides, in relevant part, as follows:

> This Mandatory Arbitration of Disputes—Waiver of Rights Agreement ("Agreement") acknowledged today between DISH Network L.L.C. and all of its affiliates (the term "affiliates" means companies controlling, controlled by or under common control with, DISH Network L.L.C.) (DISH Network L.L.C. and its affiliates are individually and collectively referred to herein as "DISH") and me ("Employee"). In consideration of the Employee's employment by DISH (and/or any of its affiliates) as good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Employee and DISH agree that any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration. The Employee agrees that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and is fully enforceable.

> . . . . Regardless of what the above-mentioned Rules state, all arbitration proceedings, including but not limited to hearings, discovery, settlements, and awards shall be confidential and shall be held in the city in which the Employee performs services for DISH as of the date of the demand for arbitration, or in the event the Employee is no longer employed by DISH, in the city in which the Employee last performed services for DISH. The arbitrator's decision shall be final and binding, and judgment upon the arbitrator's decision and/or award may be entered in any court of competent jurisdiction.

Since at least March 1, 2015, the Respondent has maintained the Agreement (or a similar version of the Agreement) at all its locations nationwide.

---

[1] The court explained that it was including the prohibition on discussing discipline in the remand for "judicial efficiency."

Charging Party Brett Denney was employed by the Respondent at its Littleton, Colorado Call Center from about November 1, 2013, through March 11, 2015. On about March 3, 2015, the Respondent, by General Manager Emily Evans, suspended Denney and told him not to discuss his suspension with his coworkers.

## II. DISCUSSION

The court has remanded three issues: (i) whether the Agreement unlawfully restricts access to the Board and its processes, (ii) whether the Agreement unlawfully requires confidentiality, and (iii) whether the Respondent unlawfully instructed an employee to not discuss his suspension. Below, we consider the first two issues on the merits and explain that the third issue warrants the issuance of a Notice to Show Cause.

### A. Restricting Access to the Board

In *Epic Systems Corp. v. Lewis*, 584 U.S. ___, 138 S. Ct. 1612 (2018), the Supreme Court emphasized that arbitration agreements are to be enforced as written pursuant to the Federal Arbitration Act (FAA). However, the Court has also held that this mandate "may be 'overridden by a contrary congressional command.'" *Prime Healthcare Paradise Valley, LLC*, 368 NLRB No. 10, slip op. at 5 (2019) (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). In *Prime Healthcare*, the Board explained that Section 10 of the Act establishes just such a contrary congressional command with respect to arbitration agreements that interfere with the right of employees to file charges with the Board. Specifically, we explained that under Section 10(b) of the Act, the Board has no power to issue complaint unless an unfair labor practice charge is filed, and Section 10(a) of the Act relevantly provides that the Board's power to prevent unfair labor practices "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." Thus, notwithstanding the Supreme Court's decision in *Epic Systems*, the FAA does not authorize the maintenance or enforcement of agreements that interfere with the right to file charges with the Board. Id.

An arbitration agreement that "explicitly prohibits the filing of claims with the Board or, more generally, with administrative agencies must be found unlawful." Id. Where an arbitration agreement does not contain such an express prohibition—i.e., where the arbitration agreement in question is facially neutral—the Board applies the standard set forth in *Boeing* and determines "whether that agreement, 'when reasonably interpreted, would potentially interfere with the exercise of NLRA rights,'" such as the right to file charges with the Board. Id. (quoting *Boeing*, 365 NLRB No. 154, slip op. at 3).[2] Such interference exists when an arbitration agreement, "taken as a whole, make[s] arbitration the *exclusive* forum for the resolution of all claims, including federal statutory claims under the National Labor Relations Act." Id., slip op. at 6 (emphasis in original). Further, "as a matter of law, there is not and cannot be any legitimate justification for provisions, in an arbitration agreement or otherwise, that restrict employees' access to the Board or its processes." Id.

Here, the Agreement requires that employees arbitrate "any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment, whenever and wherever brought." Such language makes arbitration the exclusive forum for resolving all employment-related disputes between the Respondent and any of its employees, including claims arising under the Act, thus restricting employees' access to the Board and rendering the Agreement unlawful. See, e.g., id.; *Century Fast Foods, Inc.*, 370 NLRB No. 4, slip op. at 3–4 (2020) (finding unlawful an agreement requiring "any claims" to be resolved by arbitration); *IIG Wireless, Inc. f/k/a Unlimited PCS, Inc.; & UPCS CA Resources, Inc.*, 369 NLRB No. 66, slip op. at 2 (2020) (finding unlawful an agreement requiring that "any dispute or controversy . . . arising from or in any way related to my employment with the Company, shall be submitted to and determined by binding arbitration"); *Beena Beauty Holding, Inc. d/b/a Planet Beauty*, 368 NLRB No. 91, slip op. at 2–3 (2019) (finding unlawful an agreement requiring employer and

---

[2] Under *Boeing*, the Board first determines whether a challenged rule or policy, reasonably interpreted, would potentially interfere with the exercise of rights under Sec. 7 of the Act. Id. If not, the rule or policy is lawful and placed in Category 1(a). If so, the Board determines whether an employer violates Sec. 8(a)(1) of the Act by maintaining the rule or policy by balancing "the nature and extent of the potential impact on NLRA rights" against "legitimate justifications associated with the rule," viewing the rule or policy from the employees' perspective. Id., slip op. at 3. As a result of this balancing, the Board places a challenged rule into one of three categories. Category 1(b) consists of rules that are lawful to maintain because, although the rule, reasonably interpreted, potentially interferes with the exercise of Sec. 7 rights, the interference is outweighed by legitimate employer interests. Category 3, in contrast, consists of rules that are unlawful to maintain because their potential to interfere with the exercise of Sec. 7 rights outweighs the legitimate interests they serve. Categories 1(a), 1(b) and 3 designate *types* of rules: once a rule is placed in one of these categories, rules of the same type are categorized accordingly without further case-by-case balancing (for Category 1(b) and 3 rules; balancing is never required for rules in Category 1(a)). Some rules, however, resist designation as either always lawful or always unlawful and instead require case-by-case analysis under *Boeing*'s balancing framework. These rules are placed in Category 2. See id., slip op. at 3–4; *LA Specialty Produce Co.*, 368 NLRB No. 93, slip op. at 2–3 (2019).

employees "to submit any claims that either has against the other to final and binding arbitration").

Accordingly, we find the Respondent violated Section 8(a)(1) by maintaining the Agreement on the basis that the Agreement restricts employees' right to file charges with the Board, and we place the language restricting the exercise of that right in *Boeing* Category 3.

## B. Confidentiality Provision

The General Counsel alleges that the Agreement unlawfully prohibits employees from discussing their terms and conditions of employment by requiring that "all arbitration proceedings, including but not limited to hearings, discovery, settlements, and awards shall be confidential." In *California Commerce Club, Inc.*, 369 NLRB No. 106, slip op. at 6 (2020), we held that "provisions in an arbitration agreement requiring that arbitration be conducted on a confidential basis, including provisions precluding the disclosure of evidence, award, and/or decision beyond the arbitration proceeding, do not violate the Act and must be enforced according to their terms pursuant to the FAA." Applying this holding here, we find the Agreement's confidentiality requirement does not violate the Act insofar as it pertains to arbitration proceedings, including hearings, discovery, and awards. Reasonably interpreted, the provision requiring that arbitral "proceedings" be confidential is not materially different from the provision, found lawful in *California Commerce Club*, requiring that arbitration be conducted on "a confidential basis." Id.; see also *Covenant Care California, LLC*, 369 NLRB No. 112, slip op. at 2 (2020) (agreement lawfully required that "[t]he proceedings before the arbitrator . . . shall be of a private nature and kept confidential"). Similarly, we find lawful the Agreement's requirement of confidentiality of "awards," as it accords with the finding in *California Commerce Club* that parties may lawfully agree that there shall be no disclosure of the "award/decision beyond the arbitration proceeding." 369 NLRB No. 106, slip op. at 6; see also *Covenant Care California, LLC*, 369 NLRB No. 112, slip op. at 2 (agreement lawfully required that any award or remedy shall be kept confidential). Likewise, the requirement that hearings and discovery remain confidential is not materially different from the prohibition, found lawful in *California Commerce Club*, against disclosing evidence beyond the arbitration proceedings. Plainly, the Agreement's reference to "discovery" concerns the procedure for obtaining evidence, and "hearings" refers to the proceedings where evidence is introduced into the record. Therefore, the Agreement's requirement that arbitration proceedings, and specifically hearings, discovery, and awards, be kept confidential sets forth rules under which

arbitration will be conducted, which must be enforced pursuant to the FAA. See, e.g., *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Accordingly, those terms do not violate the Act. See *California Commerce Club*, 369 NLRB No. 106, slip op. at 6–7.

However, the requirement that "settlements" be kept confidential implicates different considerations and warrants a different result. This provision is not shielded by the FAA. As the Supreme Court has held, "the FAA requires that courts rigorously enforce arbitration agreements according to their terms, including terms that specify . . . the rules under which . . . arbitration will be conducted." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (internal quotations and citations omitted). However, "confidentiality requirements beyond the scope of the arbitration proceeding and 'the rules under which the arbitration will be conducted' receive no protection from the FAA." *California Commerce Club*, 369 NLRB No. 106, slip op. at 1. Here, the requirement that "settlements" remain confidential lies beyond the scope of the arbitration proceeding and the rules under which arbitration will be conducted. Settlements are effectively an *alternative* to arbitration. That is, a settlement removes a dispute from arbitration or prevents it from going to arbitration in the first place. The FAA does not speak to settlements. Parties cannot seek to compel settlements or settlement discussions under the FAA, as they can arbitration.[3]

Having found that the portion of the confidentiality provision governing settlements is not shielded by the FAA, we next determine whether the maintenance of this provision violates the Act. We find that it does. By its terms, the Agreement covers "any claim, controversy and/or dispute . . . arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment." Obviously, some such disputes would not arise under the NLRA, such as claims of discrimination based on race, sex, age, or disability. But just as obviously, some would. Moreover, the *events* giving rise to *all* claims covered by the Agreement would concern wages, hours, or other terms or conditions of employment; employees' conversations with one another concerning those events do implicate the Act; and nothing in the Agreement's settlement-confidentiality provision limits its scope. See, e.g., *St. Margaret Mercy Healthcare Centers*, 350 NLRB 203, 205 (2007) ("It is axiomatic that discussing terms and conditions of employment with coworkers lies at the heart of protected Section 7 activity."), enfd. 519 F.3d 373 (7th Cir. 2008). Accordingly,

---

[3] See 9 U.S.C. §§ 4, 10.

by prohibiting employees from disclosing the terms of any settlement, the Agreement explicitly restricts Section 7 activity. Indeed, the Agreement operates as a prospective waiver of this important Section 7 right, and, as the Supreme Court held long ago, individual agreements between employer and employee prospectively waiving Section 7 rights violate the Act. See *National Licorice Co. v. NLRB*, 309 U.S. 350, 360 (1940).[4]

Moreover, the Agreement's confidentiality requirement covers all settlements, and particular settlements may contain terms that would render them unlawful under the Act.[5] But a Board charge alleging that a particular settlement violates the Act would require disclosure of the allegedly unlawful term or terms. Thus, employees would reasonably interpret the requirement that all settlements remain confidential to prohibit them from filing Board charges alleging that particular settlements violate the Act. Thus, the settlement-confidentiality requirement is also unlawful on the basis that it interferes with the right to file Board charges.[6] And as we held in *Prime Healthcare*, "there is not and cannot be any legitimate justification for provisions, in an arbitration agreement or otherwise, that restrict employees' access to the Board or its processes." 368 NLRB No. 10, slip op. at 5.

For these reasons, we find that the Respondent violated Section 8(a)(1) of the Act by maintaining a requirement in its Agreement that settlements be kept confidential.

In finding this requirement unlawful, we emphasize that our holding does not prevent employers and employees

from lawfully agreeing to confidential settlements. Indeed, we recognize that confidentiality may facilitate the resolution of workplace conflicts and thus further the Board's policy of "encouraging the peaceful, nonlitigious resolution of disputes." *Independent Stave Co.*, 287 NLRB 740, 741 (1987); see also *Wallace Corp. v. NLRB*, 323 U.S. 248, 253–254 (1944) ("[T]he Board has from the very beginning encouraged compromises and settlements.").[7] Nothing in our decision today stands in the way of negotiated confidentiality provisions of this nature, and the Board will find such provisions lawful in appropriate circumstances.[8] However, the Act does not permit employers to condition employment on a prospective waiver of statutory rights, nor may any agreement lawfully interfere with the right to file Board charges. Because the provision requiring that settlements be kept confidential is not shielded by the FAA and contravenes these principles, we find that it violates Section 8(a)(1) of the Act.

### C. Response to Dissent

Our colleague, dissenting in relevant part, disagrees with our finding that the Agreement's confidentiality requirement for arbitration proceedings, including hearings, discovery, and awards (hereafter the "confidential arbitration proceedings" provision), is lawful. Resurrecting arguments rejected by the Supreme Court in *Epic Systems*, the dissent contends that this provision violates the Act because it interferes with employees' right to discuss their terms and conditions of employment and is not shielded by the FAA. Our colleague also contends that this

---

[4] Again, as we explained at length in *California Commerce Club*, supra, employers may lawfully require employees to agree to resolve employment-related disputes through confidential arbitration because such agreements are shielded by the FAA. That shield is inapplicable to the requirement that settlements remain confidential for the reasons explained above. With that shield removed, lawfulness is determined by applying the Act.

In *California Commerce Club*, the Board assumed, without deciding, that the confidentiality provision at issue there, which addressed the procedures by which the arbitration would be conducted, would have violated the Act under a *Boeing* balancing analysis absent the FAA shield. That analysis is inapplicable here because the settlement-confidentiality provision necessarily restricts discussion of terms and conditions of employment. That was not the case in *California Commerce Club*, as the Board there explained. See 369 NLRB No. 106, slip op. at 6.

[5] See, e.g., *Ishikawa Gasket America, Inc.*, 337 NLRB 175, 175–176 (2001) (finding unlawful an agreement that required an employee, for 1 year, not to "engage in any conduct which is contrary to the Company's interests in remaining union-free"), enfd. 354 F.3d 534 (6th Cir. 2004).

[6] The Agreement at issue here does not contain a savings clause, i.e., a clause providing that employees "retain the right to file charges with the Board, even if the agreement otherwise includes claims arising under the Act within its scope." *Everglades College, Inc. d/b/a Keiser University*, 368 NLRB No. 123, slip op. at 3 fn. 3 (2019).

[7] Confidentiality provisions often facilitate the settlement of claims that involve disputed facts or accusations that raise privacy or reputational issues for the parties or other affected individuals or entities, and

they may protect the party defending against a claim from being unfairly branded a wrongdoer simply because the party settled the claim. See generally Alison Lothes, *Quality, Not Quantity: An Analysis of Confidential Settlements and Litigants' Economic Incentives*, 154 U. Pa. L. Rev. 433, 441 (2005). Another justification for settlement confidentiality is to prevent additional claims being asserted by other similarly situated persons if they learn of the settlement's terms and find them advantageous. Id. However, similarly situated employees would discover that they *are* similarly situated through discussions that often lie at the heart of protected Sec. 7 activity. Analytically, the fact that a provision restricts Sec. 7 activity cannot serve as a *legitimate* justification for its maintenance.

[8] See, e.g., *S. Freedman & Sons, Inc.*, 364 NLRB No. 82, slip op. at 2 (2016), enfd. 713 Fed. Appx. 152 (4th Cir. 2017). In that case, the Board found lawful a provision in a settlement agreement between the employer and a union-represented employee resolving a grievance over the employee's discharge, in which the employee was reinstated and the parties agreed to keep the terms of the settlement confidential. In finding the confidentiality provision lawful, the Board emphasized that it was narrowly tailored to the facts that gave rise to the settlement, the employee received a benefit (reinstatement) in return for his limited waiver of Sec. 7 rights, and the settlement did not bind the union, which was free to share its terms with employees. The confidentiality provision here, in contrast, applies prospectively to any future settlement between the employer and employees regardless of its terms, and employees receive no benefit in return for the waiver of Sec. 7 rights.

provision unlawfully interferes with the ability of employees to file charges with the Board. For the following reasons, we reject these contentions.

As the dissent correctly recognizes, the determinative issue here is whether the confidential arbitration proceedings provision is shielded by the FAA. By its terms, that provision only applies to "arbitration *proceedings*," requiring that they be confidential. It thus specifies one of the rules under which arbitration proceedings will be conducted, and the Supreme Court has repeatedly made clear that "the FAA requires that courts rigorously enforce arbitration agreements according to their terms, including terms that specify . . . the rules under which . . . arbitration will be conducted." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. at 233 (internal quotations and citations omitted). The requirement that courts "rigorously enforce" such provisions means that the Board may not invalidate them either, unless the FAA has been displaced by a "contrary congressional command." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). In such a case, however, Congress's "intention must be clear and manifest." *Epic Systems*, 138 S. Ct. at 1624 (internal quotation marks omitted). And the Court made plain that a party seeking to demonstrate such a clear and manifest intention faces a very steep climb. See id. at 1627.[9]

As we explained in *California Commerce Club,* supra, nothing in Section 7 of the Act rises to the level of a contrary congressional command that would displace the FAA. To the contrary, that notion was squarely rejected by the Supreme Court in *Epic Systems*. As the Court there explained, Section 7 of the NLRA "does not express

approval or disapproval of arbitration. It does not mention class or collective action procedures. It does not even hint at a wish to displace the Arbitration Act—let alone accomplish that much clearly and manifestly, as our precedents demand." 138 S. Ct. at 1624. The dissent's contention that "invalidating arbitration-confidentiality provisions, because of their demonstrable impact on Section 7 rights, is the proper accommodation between the NLRA and the FAA" cannot be reconciled with this precedent.[10]

The dissent's argument that arbitration confidentiality provisions may be invalidated under the FAA saving clause fares no better. That clause provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Relying on this clause, our dissenting colleague posits "that notwithstanding the FAA, confidentiality provisions that prospectively waive employee rights to engage in protected Section 7 communications are . . . unlawful under the NLRA when they appear in arbitration agreements, just as in any other contract," and are unenforceable. This is precisely the same argument advanced by the Board majority in *Murphy Oil* to invalidate agreements between employers and employees that mandate individual arbitration. See *Murphy Oil USA, Inc.*, 361 NLRB 774, 779 (2014), enf. denied in relevant part 808 F.3d 1013 (5th Cir. 2015) ("[N]ot only does the text of the FAA fail to establish that an arbitration agreement inconsistent with the NLRA is nevertheless enforceable, but the savings clause in Section 2 of the FAA affirmatively provides that such a conflict with federal law is grounds for invalidating the agreement.").[11] That analysis was rejected by the vast majority of lower courts that

---

[9]   We found such a contrary congressional command in *Prime Healthcare*, supra, in Sec. 10 of the Act. As we explained there, under Sec. 10(b) of the Act, Congress empowered the Board to issue a complaint *only* "[w]henever it is charged that any person has engaged in or is engaging in any . . . unfair labor practice," and in Sec. 10(a), it further provided that the Board's power to prevent unfair labor practices "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." Based on this clear and manifest contrary congressional command, we held in *Prime Healthcare* that an arbitration agreement that explicitly prohibits the filing of charges with the Board or makes arbitration the *exclusive* forum for resolving claims arising under the NLRA must be found unlawful. There is a fundamental difference between an arbitration-exclusivity provision and an arbitration-confidentiality provision that specifies rules under which the arbitration will be conducted and says nothing about access to the Board. Moreover, nothing in either Sec. 10 or Sec. 7 of the Act provides such a clear congressional command with regard to confidentiality in arbitration agreements or arbitration proceedings.

[10]   We agree with our dissenting colleague that the Board should strive to harmonize the FAA and the Act to the extent it is possible to do so. Our decision today does just that: we give effect to the FAA's requirement that arbitration proceedings be conducted as the parties agree they should with respect to confidentiality, we find that confidentiality requirements related to settlements are outside the FAA's scope, and we

reiterate the Act's protections against job-related reprisals. See *California Commerce Club*, supra, slip op. at 6 (employer entitled to maintain a mandatory arbitration confidentiality provision but not to discharge or discipline an employee for a Sec. 7–protected disclosure of information even if the disclosure violated that provision). Nothing in our decision here or in *California Commerce Club* takes away the "bread and butter" NLRA rights of "[u]nion organizing and collective bargaining in the workplace," *Epic Systems,* 138 S. Ct. at 1627, including employees' Sec. 7 right to effectively communicate with one another regarding workplace matters of mutual concern. The dissent, in contrast, contends that the FAA and the Act can be harmonized only by invalidating the confidentiality provision in the Agreement and in countless other arbitration agreements. We respectfully disagree that this outcome is what the Court had in mind when it instructed that courts, and the Board, are not free to pick and choose between congressional enactments but must instead strive "'to give effect to both.'" *Epic Systems*, supra at 1624 (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)).

[11]   The dissent parallels the *Murphy Oil* majority in other ways as well. Compare dissent, infra at slip op. 17 ("[I]ndividual contract terms prospectively waiving employees' rights to engage in activity protected by Section 7 violate the NLRA and are unenforceable.") with *Murphy Oil*, supra at 782 ("[A]ny individual employment contract that purports to extinguish rights guaranteed by Section 7 of the National Labor Relations Act is unlawful."); dissent, infra at slip op. 20 ("[T]he Supreme Court

DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

considered it, and the Supreme Court laid it to rest in *Epic Systems*. We think the Board should learn from this experience. Instead, the dissent doubles down.

In support of her position, our dissenting colleague relies on court decisions in which certain arbitral confidentiality provisions were invalidated under the FAA saving clause as unconscionable under state contract law.[12] Such decisions say nothing about whether confidentiality provisions may also be invalidated under Section 2 of the FAA based on a federal statute, including the NLRA. There is a real question whether a federal statute *can* invalidate an arbitration agreement under the FAA's saving clause. See *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 991–992, 997 (9th Cir. 2016) (Ikuta, J., dissenting) ("[T]he Supreme Court does not apply the savings clause to federal statutes; rather, it considers whether Congress has exercised its

authority to override the FAA's mandate to enforce arbitration agreements according to their terms.").[13] After pointedly citing Judge Ikuta's *Morris v. Ernst & Young* dissent, the Supreme Court found it unnecessary to reach this question in *Epic Systems* because regardless of how it is answered, Section 2 of the FAA cannot "save" an argument that targets fundamental attributes of arbitration, such as its traditionally individualized nature. 138 S. Ct. at 1622–1623. In light of the Court's explicit refusal to apply the saving clause to the Act in *Epic Systems* and the absence of any other precedent for doing so, we do not believe that we are free to do so here. In any event, as explained below and in *California Commerce Club*, confidentiality *is* a fundamental attribute of arbitration, and we therefore respectfully disagree with any contrary implication in the cases on which the dissent relies.

---

[12] See *Larsen v. Citibank FSB*, 871 F.3d 1295 (11th Cir. 2017) (confidentiality provision in agreement between bank and account holder requiring that arbitrator's award be kept confidential unconscionable under Washington law); *Narayan v. Ritz-Carlton Development Co.*, 400 P.3d 544 (Haw. 2017) (recognizing that "confidentiality provisions are not per se substantively unconscionable" but finding unconscionable provision prohibiting disclosure of "the facts of the underlying dispute or the contents or results of any negotiation, mediation, or arbitration hereunder without prior written consent of all parties" because it was combined with a narrow discovery provision), cert. denied 138 S. Ct. 982 (2018); *Schnuerle v. Insight Communications Co.*, 376 S.W.3d 561 (Ky. 2012) (confidentiality provision in customer and internet service provider agreement prohibiting disclosure of "the existence, content or results of any arbitration or award, except as may be required by law, to confirm and enforce an award, or to the party's attorneys and/or accountants" unconscionable under Kentucky law); *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007) (provision in employment arbitration agreement requiring that arbitration be confidential and prohibiting disclosure "to any third party or person not directly involved in the mediation or arbitration the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration, except as may be necessary to enter judgment upon the Arbitrator's award as required by applicable law" unconscionable under California law); *Zuver v. Airtouch Communications, Inc.*, 103 P.3d 753 (Wash. 2004) (provision requiring that "[a]ll arbitration proceedings, including settlements and awards, under the Agreement will be confidential" unconscionable under Washington law).

[13] The dissent disputes this point, citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), and *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982). These cases are inapposite. *Kaiser Steel* did not involve either arbitration or an agreement to arbitrate, and the Court's decision does not so much as mention the FAA. In *Prima Paint*, the issue was "whether the federal court or an arbitrator [was] to resolve a claim of 'fraud in the inducement,' under a contract governed by the [FAA]." 388 U.S. at 396–397. "Fraud in the inducement" is a state contract-law defense. Thus, like the many state-law unconscionability cases the dissent relies on and we dispose of in fn. 12 above, *Prima Paint* sheds no light on whether a federal statute can invalidate an arbitration agreement under the FAA's saving clause.

cases relied upon by the majority have nothing to say to the specific issue of the enforceability of confidentiality restrictions in this case or any other.") with *Murphy Oil*, supra at 788 ("Our dissenting colleague points to no Supreme Court decision that directly answers the question posed in *D. R. Horton* [regarding the applicability of the FAA to individual arbitration agreements]."); and dissent, infra at slip op. 21 ("Simply put, the Norris-LaGuardia Act protects employee speech related to employment arbitration, and it precludes federal courts from silencing employees on employer demand.") with *Murphy Oil*, supra at 789 ("If the arbitration agreement violates the policy of the Norris-LaGuardia Act (as we have demonstrated), then it is unenforceable, and employees have no legal duty to comply with it. To the extent that the FAA would suggest otherwise, it would conflict with the Norris-LaGuardia Act—and so cannot survive under Section 15 of that statute."). But the Supreme Court rejected *Murphy Oil* in *Epic Systems*. For our part, we apply the Supreme Court's holding in *Epic Systems* and the analysis the Court there endorsed.

Each of these decisions directly or indirectly relied on *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003), where the Ninth Circuit held that an arbitration-confidentiality provision was unconscionable under California law. (*Larsen* relied on *Zuver*, which in turn relied on *Ting*.) But the Ninth Circuit subsequently reversed course in *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1255–1266 (9th Cir. 2017), where the court rejected the contention that a provision relevantly requiring that "[a]ll aspects of the arbitration, including without limitation, the record of the proceeding, are confidential and shall not be open to the public" was unconscionable. This holding severely erodes the precedent on which the dissent relies.

The dissent cites only one case in which a court invalidated a confidentiality provision under another federal statute, but the case is readily distinguishable. In *Seibert v. Precision Contracting Solutions, LP*, the court found that a confidentiality provision in a form contract was void and unenforceable under Sec. 45(b) of the Federal Trade Commission Act (FTCA), which prohibits form contracts that limit consumer reviews related to the provision of goods and services and declares void any agreement containing such a provision. Civil Action No. 18–818, 2019 WL 935637 at *7–8 (D.D.C. 2019). The provision in question was exceptionally broad, making both the dispute itself and the results of any arbitration proceeding "confidential with no public comment permitted in any form by either party relating to the dispute." The court determined that there is no conflict between the FAA and Sec. 45(b) of the FTCA and further held that the argument was unconscionable and thus unenforceable based on the clear conflict between its provisions and the FTCA. While the court chose to ground its analysis in unconscionability, the outcome is wholly consistent with our analysis, since the FTCA plainly establishes a "contrary congressional command" within the meaning of the Supreme Court's FAA jurisprudence. In contrast, and as noted above and in *California Commerce Club*, the Act does not even mention, much less explicitly prohibit, confidentiality provisions in employment arbitration agreements.

In arguing otherwise, the dissent spills much ink distinguishing between arbitration privacy (excluding nonparticipants from the proceeding) and arbitration confidentiality (limiting the parties' ability to disclose "information about the proceedings"), citing in support the American Arbitration Association's Statement of Ethical Principles. Read in full, however, that statement makes clear that "the AAA takes no position on whether parties should or should not agree to keep the proceeding and award confidential between themselves. The parties always have a right to disclose details of the proceeding, *unless they have a separate confidentiality agreement*. . . . [I]ndividual arbitrations are confidential if the parties so determine . . . ."[14] Here, of course, the parties *do* have a confidentiality agreement. Contrary to the AAA's Statement of Ethical Principles, the dissent gives that fact no real weight.

In any event, the dissent errs in her view that the fundamental attributes of arbitration are limited to those specific provisions that the Supreme Court has previously upheld, such as provisions specifying "the choice of law or applicable rules of procedure, the nature of the claims that can be asserted, how the parties will present evidence, or how the arbitrator will conduct the proceeding." This is not the standard the Supreme Court applies. To the contrary, in the *Court's* view, the fundamental attributes of arbitration are its "efficient, streamlined procedures . . . . reducing the cost and increasing the speed of dispute resolution." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344–345 (2011). Another fundamental attribute of arbitration is its "informal nature." *Epic Systems*, 138 S. Ct. at 1623; see also *Concepcion*, supra at 345 ("[T]he informality of arbitral proceedings is itself desirable."). Prohibiting arbitration confidentiality provisions would interfere with these fundamental attributes of arbitration because, absent confidentiality, discovery disputes are more likely, and parties will demand "all of the procedural accoutrements

that accompany a judicial proceeding." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175–176 (5th Cir. 2004) (explaining that, because it would interfere with the "simplicity, informality, and expedition of arbitration," an "attack on the confidentiality provision is, in part, an attack on the character of arbitration itself") (internal quotation marks omitted); see also *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008) (confidentiality is a "paradigmatic aspect of arbitration").[15]

We also reject the dissent's contention that arbitration-confidentiality requirements unlawfully restrict Board access. This argument resembles a similar argument we found without merit in *Apogee Retail LLC d/b/a Unique Thrift Store*, 368 NLRB No. 144, slip op. at 11 (2019). In *Apogee*, we held that investigative-confidentiality rules are generally lawful under *Boeing*, rejecting, among other things, the dissent's assertion that our decision would make it virtually impossible for employees to seek the help of a Board agent about an allegation of misconduct. Id. Stating that nothing in our decision allowed an employer to infringe upon an employee's right to file a charge with the Board, we explained that the rules at issue did not expressly refer to, much less prohibit, employee discussions with the Board about conduct the employer was investigating, and we rejected the notion that a reasonable employee would read them to restrict such discussions, reiterating that an objectively reasonable employee "'interprets work rules as they apply to the everydayness of his job.'" Id., slip op. at 11 & fn. 21 (quoting *LA Specialty*, 368 NLRB No. 93, slip op. at 2 (internal quotation marks and citations omitted)).

Here, and like the investigative-confidentiality rules at issue in *Apogee*, the Agreement's confidentiality provision does not expressly refer to, much less prohibit, employee discussions with a Board agent about anything.[16] Moreover, while an employer may lawfully maintain an

---

[14] AAA STATEMENT OF ETHICAL PRINCIPLES, https://adr.org/StatementofEthicalPrinciples (last visited Jan. 26, 2021) (emphasis added). In full, the relevant section of the statement reads as follows:

- An arbitration proceeding is a private process. In addition, AAA staff and AAA neutrals have an ethical obligation to keep information confidential. However, the AAA takes no position on whether parties should or should not agree to keep the proceeding and award confidential between themselves. The parties always have a right to disclose details of the proceeding, unless they have a separate confidentiality agreement. Where public agencies are involved in disputes, these public agencies routinely make the award public.

- While individual arbitrations are confidential if the parties so determine, the AAA's rules and procedures are available to the public on its Web site and in hard copy.

[15] In arguing that confidentiality provisions cannot be fundamental attributes of arbitration, our colleague contends that employees would have to violate the plain terms of many confidentiality provisions in order

to access the enforcement mechanisms expressly provided by the FAA. This assertion ignores the obvious, which is that an objectively reasonable employee simply would not interpret a confidentiality provision to restrict the right to seek the judicial relief provided by the FAA itself, such as requests to stay judicial action, compel arbitration, or vacate an arbitral award, or requests to confirm, modify or correct an award. Moreover, even assuming a particular provision's terms could reasonably be read to prohibit a party from exercising such rights under the FAA, any such inconsistency with the FAA would not establish a violation of the National Labor Relations Act.

The dissent also contends that the Norris-LaGuardia Act (NLGA) prohibits courts from enforcing confidentiality provisions through injunctions. However, the question of how or when a confidentiality provision can be enforced in court is also not relevant to whether the provision violates the Act. See generally *Epic Systems*, 138 S. Ct. at 1627 (holding that the NLGA, like the Act, "does not conflict with Congress's statutory directions favoring arbitration").

[16] As we explained in *Apogee*, while it may be preferable for an employer to clearly include an exception for Board charges, the absence of

8                    DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

arbitration-confidentiality provision, it may not discharge or otherwise discipline an employee for a Section 7–protected disclosure of information even if the disclosure violated the provision. *California Commerce Club*, 369 NLRB No. 106, slip op. at 6 (citing *Cordúa Restaurants, Inc.*, 368 NLRB No. 43, slip op. at 3 (2019), enfd.___ F.3d ___, 2021 WL 82264 (5th Cir. 2021)). Instead, the employer would be limited to seeking enforcement of the arbitration-confidentiality provision, id.—and since employees have a statutorily protected right to access the Board and its processes, seeking such enforcement would be a futile endeavor. We therefore disagree with the dissent's assertion that the Agreement's confidentiality provision, as it applies to hearings, discovery, and awards, would restrict employees' right to file charges with the Board.[17]

Our colleague claims that by refusing to find the confidential arbitration proceedings provision unlawful, we seek to "promot[e] employers' authority to compel arbitration of workplace disputes." In fact, we merely adhere to Supreme Court precedent, including *Epic Systems*, in which the Court reminds us that it is not ours to decide whether the arbitration of workplace disputes is a good thing or bad thing, worthy of promoting or not. 138 S. Ct. at 1621–1622 ("You might wonder if the balance Congress struck in 1925 between arbitration and litigation should be revisited in light of more contemporary developments. You might even ask if the [FAA] was good policy when enacted. But all the same you might find it difficult to see how to avoid the [FAA]'s application."). Whether we like the policy or not, and whether our colleague believes our decision will promote the authority of employers to "compel" arbitration, the Supreme Court in *Epic Systems* makes clear that arbitration agreements are just that: *agreements*. It is a point the Court insists upon from the very beginning of its decision. See 138 S. Ct. at 1619 ("Should employees and employers *be allowed to agree* that any disputes between them will be resolved through one-on-one arbitration? Or should employees always be permitted to bring their claims in class or collective actions, *no matter what they agreed with their employers*?") (emphasis added).

Finally, the dissent expresses the concern that our decisions today and in *California Commerce Club* will prevent employees from telling coworkers, government agencies, and the public about unlawful employer conduct. Putting aside again the potential policy debate about enforcing

arbitration agreements as Congress intended, which is not ours to engage in, there should be no ambiguity on this point: we share our colleague's desire that unlawful behavior should be ferreted out and not hidden, and nothing in our decision today or in *California Commerce Club* should be read to suggest the contrary. But while we agree with our colleague about that important point, our sole task here is to determine whether the Agreement's confidential arbitration proceedings provision violates the Act, and in making that determination, we are constrained by the FAA and Supreme Court precedent applying it. Excluding the settlement-confidentiality requirement, that precedent compels us to uphold the Agreement's confidential arbitration proceedings provision. Accordingly, we dismiss the complaint in relevant part.

### D. Instruction Not to Discuss Suspension

The complaint alleges that the Respondent told the Charging Party not to discuss his suspension with his coworkers. In its prior decision, the Board found that this statement violated Section 8(a)(1).

As noted above, the parties informed the court that they had reached a resolution of this allegation, and they asked the court to permit them withdraw the petition for review and cross-application for enforcement in relevant part. The court, however, chose to remand this issue to the Board along with the other two issues. Under the circumstances, we find it appropriate to sever and retain this complaint allegation and to issue a notice to show cause why the allegation should not be remanded to the Regional Director for further appropriate action.

### ORDER

The National Labor Relations Board orders that the Respondent, Dish Network, LLC, Englewood, Colorado, its officers, agents, successors, and assigns, shall

1. Cease and desist from

(a)  Maintaining a mandatory arbitration agreement that employees reasonably would believe bars or restricts them from exercising the right to file charges with the National Labor Relations Board.

(b)  Maintaining a mandatory arbitration agreement that requires settlements of employment-related disputes to remain confidential.

(c)  In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

---

such an exception does not render the confidentiality provision unlawful. Id., slip op. at 11 fn. 21.

[17]  We have found that the Agreement's confidentiality provision is lawful insofar as it applies to hearings, discovery, and awards. By contrast and as explained above, however, the settlement-confidentiality

requirement violates Sec. 8(a)(1) in part because it prohibits disclosure of all settlements, which would interfere with employees' right to file Board charges alleging that the terms of particular settlements violate the Act.

DISH NETWORK, LLC

9

2.  Take the following affirmative action necessary to effectuate the policies of the Act.

(a)  Rescind its mandatory arbitration agreement in all its forms, or revise it in all its forms to make clear to employees that it does not bar or restrict employees from exercising their right to file charges with the National Labor Relations Board and does not require settlements of employment-related disputes to remain confidential.

(b)  Notify all applicants and current and former employees who were required to sign or otherwise became bound to the unlawful mandatory arbitration agreement in any form that it has been rescinded or revised and, if revised, provide them a copy of the revised agreement.

(c)  Post at all its facilities where the unlawful arbitration agreement is or has been in effect copies of the attached notice marked "Appendix."[18]  Copies of the notice, on forms provided by the Regional Director for Region 27, after being signed by the Respondent's authorized representative, shall be posted by the Respondent and maintained for 60 consecutive days in conspicuous places, including all places where notices to employees are customarily posted.  In addition to physical posting of paper notices, notices shall be distributed electronically, such as by email, posting on an intranet or an internet site, and/or other electronic means, if the Respondent customarily communicates with its employees by such means.  The Respondent shall take reasonable steps to ensure that the notices are not altered, defaced, or covered by any other material.  If the Respondent has gone out of business or closed any facility involved in these proceedings, the Respondent shall duplicate and mail, at its own expense, a copy of the notice to all current employees and former employees employed by the Respondent at that facility at any time since October 24, 2013.

(d)  Within 21 days after service by the Region, file with the Regional Director for Region 27 a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the Respondent has taken to comply.

IT IS FURTHER ORDERED that the allegation involving the Respondent's statement to an employee not to discuss his suspension is severed from this case and retained for future disposition.

Further, NOTICE IS GIVEN that cause be shown, in writing, filed with the Board in Washington, D.C., on or before April 1, 2021 (with affidavit of service on the parties to this proceeding), why the complaint allegation involving the Respondent's statement to an employee to not discuss his suspension should not be remanded to the Regional Director for Region 27 for further appropriate action.  Any briefs or statements in support of the response shall be filed on the same date.

Dated, Washington, D.C.  March 18, 2021

_____
Marvin E. Kaplan,                   Member

_____
John F. Ring,                          Member

(SEAL)          NATIONAL LABOR RELATIONS BOARD

CHAIRMAN MCFERRAN, concurring in part and dissenting in part.

In the name of promoting employers' authority to compel arbitration of workplace disputes, the Board today disregards two core worker rights protected by Section 7 of the National Labor Relations Act.  First is employees' right to bring unfair labor practices to the attention of the National Labor Relations Board.  Second is the right of employees to talk among themselves and to others about their jobs—and to seek help in improving them.  Despite recognizing the impact of its decision, the majority largely upholds a broad confidentiality provision in a mandatory arbitration agreement, insisting that the Federal Arbitration Act,[1] as interpreted by the Supreme Court in *Epic Systems*,[2] requires today's result.

It does not.  Employer-imposed confidentiality requirements that prevent workers from talking to each other, to nonemployees, and to the Board about their employment conditions are not "fundamental attributes of arbitration," in the words of the *Epic Systems* Court.  But they are anathema to labor law—whether they are imposed in a workplace rule, in an individual contract for employment,

---

[18]  If facilities where the unlawful arbitration agreement is or has been in effect are open and staffed by a substantial complement of employees, the notice must be posted at those facilities within 14 days after service by the Region.  If any facilities where the unlawful arbitration agreement is or has been in effect are closed due to the Coronavirus Disease 2019 (COVID-19) pandemic, the notice must be posted within 14 days after those facilities reopen and a substantial complement of employees have returned to work, and the notice may not be posted until a substantial complement of employees have returned to work.  Any delay in the

physical posting of paper notices also applies to the electronic distribution of the notice if the Respondent customarily communicates with its employees by electronic means.  If this Order is enforced by a judgment of a United States court of appeals, the words in the notice reading "Posted by Order of the National Labor Relations Board" shall read "Posted Pursuant to a Judgment of the United States Court of Appeals Enforcing an Order of the National Labor Relations Board."

[1]  9 U.S.C. §§ 1–16.

[2]  *Epic Systems Corp. v. Lewis*, 584 U.S. ___, 138 S. Ct. 1612 (2018).

or in an arbitration agreement. Harmonizing the National Labor Relations Act and the Federal Arbitration Act should be easy in this case.

Instead, the majority unnecessarily sacrifices the statute that Congress has charged us with administering and the workers that we should protect. Rather than striking down broad arbitration-confidentiality provisions—in line with its acknowledgment today that "individual agreements between employer and employee prospectively waiving Section 7 rights violate the" National Labor Relations Act[3]—the majority now apparently contemplates that federal courts will *enforce* broad confidentiality provisions and actually enjoin workers from engaging in protected concerted activity. Both the NLRA and the Norris-LaGuardia Act, which remains federal law after 88 years, clearly prohibit that result.[4]

Today's decision is part of an alarming trend reflected in the Board's recent decisions and elsewhere. More and more, employees are being forced to suffer in silence at work, barred from telling co-workers, government agencies, and the public about abusive, unfair, and unlawful employer conduct. A string of recent Board decisions have made it easier for employers to maintain and enforce confidentiality rules against employees, even when the rules deter activity protected by Section 7 of the Act.[5] These decisions effectively command workers, as the song goes, to: "*talk* less, *smile* more."[6] Such a message has as little place in the give and take of labor relations as in any other aspect of American public life.

The majority's conclusion here also creates tensions in the law that are difficult to reconcile, both with prior Board decisions and even internally within its own decision today. In *Prime Healthcare Paradise Valley, LLC*, 368 NLRB No. 10 (2019), which relied on Section 10(a) of the National Labor Relations Act,[7] we unanimously reaffirmed that mandatory arbitration provisions restricting access to the Board are unlawful. The majority applies the *Prime Healthcare* principle to invalidate one provision in the arbitration agreement challenged in this case,[8] and I concur in this holding. But the majority fails to grasp that the confidentiality provision it upholds *also* unlawfully restricts Board access.[9] Similarly, while the majority correctly holds that the confidentiality provision is unlawful insofar as it covers settlements of work-related disputes (I concur in that holding), my colleagues err in not recognizing that the *entire* confidentiality provision should be struck down. Rather, the majority follows *California Commerce Club, Inc.*, 369 NLRB No. 106 (2020), a recent decision that gave employers broad license to impose arbitration confidentiality on workers. As I will explain, *California Commerce Club* was wrongly decided because it misinterpreted the FAA to conflict with and displace the clear commands of the NLRA.[10]

I.

As a unanimous Board recently explained in *Prime Healthcare*, above, Section 10(b) of the Act conditions the Board's authority to remedy unfair labor practices in the public interest upon individuals' filing of unfair labor

---

[3] The majority correctly cites an 80-year-old Supreme Court decision, *National Licorice Co. v. NLRB*, 309 U.S. 350 (1940).

[4] 29 U.S.C. §§101–115. The Norris-LaGuardia Act deprives federal courts of jurisdiction to issue injunctive relief "in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from . . . *[g]iving publicity to the existence of, or the facts involved in, any labor dispute,* whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence." 29 U.S.C. §104 (emphasis added). See *Marine Cooks & Stewards, AFL v. Panama Steamship Co.*, 362 U.S. 365, 372 (1960) ("Congress passed the Norris-LaGuardia Act to curtail and regulate the jurisdiction of the courts, not, as it passed the Taft-Hartley Act, to regulate the conduct of people engaged in labor disputes"); *New Negro Alliance v. Sanitary Grocery Co.*, 303 U.S. 552, 562–563 (1938) ("It was intended that . . . those having a direct or indirect interest in . . . terms and conditions of employment should be at liberty to advertise and disseminate facts and information").

[5] See, e.g., *Baylor University Medical Center*, 369 NLRB No. 43 (2020) (overruling precedent to condone employer's offer of separation agreements with broad confidentiality and non-assistance terms); *Bemis Co.*, 370 NLRB No. 7 (2020) (approving rule requiring employee communications to "safeguard the reputation and interests" of the employer); *Motor City Pawn Brokers, Inc.*, 369 NLRB No. 132 (2020) (approving rule prohibiting employee communications which might, inter alia, unintentionally embarrass the employer); *Apogee Retail LLC d/b/a Unique Thrift Store*, 368 NLRB No. 144 (2019) (approving broad restrictions on

discussion of employer internal investigations). For a discussion of the rise of workplace confidentiality requirements generally, see Jane Flanagan & Terri Gerstein, *"Sign on the Dotted Line": How Coercive Employment Contracts Are Bringing Back the Lochner Era and What We Can Do About It*, 54 U.S.F. L. REV. 441, 452–455 (2020).

[6] MIRANDA, L., *Aaron Burr, Sir, on* HAMILTON: AN AMERICAN MUSICAL (Atlantic Records, 2015).

[7] Sec. 10(a) of the Act authorizes the Board to prevent unfair labor practices and provides that its power to do so "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." 29 U.S.C. § 160(a).

[8] The invalidated provision requires that employees arbitrate "any claim, controversy and/or dispute between them, arising out of and/or in any way related to Employee's application for employment, employment and/or termination of employment, whenever and wherever brought."

[9] The confidentiality provision recites that "all arbitration proceedings, including but not limited to hearings, discovery, settlements, and awards shall be confidential."

[10] Of course, the Board's interpretation of the FAA, unlike its interpretation of the NLRA, is not entitled to judicial deference. See, e.g., *Epic Systems*, above, 138 S. Ct. at 1629–1630. As discussed below, judicial interpretations of the FAA contradict the majority's construction of that statute in *California Commerce Club*. I was not a member of the Board when *California Commerce Club* was decided; otherwise, I would have dissented. (My prior Board term ended on December 16, 2019, and my current term began on August 10, 2020.)

practice charges.[11]  Accordingly, the Supreme Court has long recognized Congress's intent that employees be "completely free to file charges with the Board, to participate in Board investigations, and to testify at Board hearings."[12]  Thus, Section 10(a) commands that the Board's power to prevent unfair labor practices "shall not be affected by any other means of adjustment or prevention that *has been* or *may be* established by *agreement, law*, or otherwise."[13]  Because arbitration-exclusivity provisions that interfere with employees' free access to the Board hamstring the Board's performance of its statutory duties, *Prime Healthcare* reaffirmed longstanding, court-approved Board precedent holding that such provisions are unlawful.[14]  And we explained that the Supreme Court's decision in *Epic Systems Corp.* did not disturb this precedent because Section 10(a) is a clear congressional command precluding enforcement of private agreements that restrict employees' ability to invoke the Board's processes.[15]  The majority inexplicably fails to recognize that the same principles must govern when an *arbitration-confidentiality* provision, rather than an arbitration-exclusivity provision, interferes with employee access to the Board.

The confidentiality provision challenged here clearly does interfere with Board access.  The arbitration agreement requires mandatory arbitration of "any claim, controversy and/or dispute between [employees and the Respondent], arising out of and/or in any way related to Employee's application for employment, employment, and/or termination of employment, whenever and wherever brought."  It further provides that "all arbitration proceedings, including but not limited to hearings, discovery, settlements, and awards shall be confidential."  This very

broad confidentiality restriction—which has no explicit or even implicit exceptions—would interfere with an employee's Section 7 right of access to the Board if she learned through an arbitration proceeding that her employer had engaged in conduct that might constitute an unfair labor practice and sought to act on that knowledge. The provision plainly restricts her ability to consult with an attorney or with a Board agent, to file a Board charge, or to provide information in response to a Board investigation, based on information learned in arbitration.

It is easy to see how this broad prohibition against disclosing information about an arbitration proceeding might be triggered to interfere with Board access.  An employer could violate Section 8(a)(1) of the Act by coercively questioning potential employee witnesses in preparation for litigation.[16]  Coercive interrogation during arbitral discovery or hearing testimony could likewise violate the Act.  Moreover, an employee might learn during arbitration proceedings of other unfair labor practices, either related to or unrelated to the matter at issue in the proceeding.[17]  Indeed, the employer might commit an unfair labor practice *during* the proceeding, such as by directing the party-employee not to discuss with others these factual issues underlying the arbitration.[18]  In all of these circumstances—and these are just a few of the most obvious examples—employees would clearly violate the challenged confidentiality provision by sharing arbitration-acquired information with the Board.

My colleagues claim that the provision at issue here does not restrict access to the Board because, they contend, there is "a fundamental difference" between provisions requiring arbitration confidentiality and the arbitration-exclusivity provisions found unlawful today and in

---

[11] 368 NLRB No. 10, slip op. at 5.

[12] Id. (citing *NLRB v. Scrivener*, 405 U.S. 117, 121–122 (1972)).

[13] 29 U.S.C. § 160(a) (emphasis added).

[14] See, e.g., *U-Haul Co. of California*, 347 NLRB 375, 377 (2006), enfd. 255 Fed. Appx. 527 (D.C. Cir. 2007); *Murphy Oil USA, Inc.*, 361 NLRB 774, 791 fn. 98, 794 (2014), enfd. in relevant part 808 F.3d 1013, 1019, 1021 (5th Cir. 2015), revd. on other grounds 138 S. Ct. 1612 (2018).

[15] See, e.g., *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013, 1019 (5th Cir. 2015) ("'Wherever private contracts conflict with [the Board's] functions, they . . . must yield or the [NLRA] would be reduced to a futility.'") (quoting *J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944)), enfg. in relevant part 361 NLRB 774 (2014).

[16] *Johnnie's Poultry Co.*, 146 NLRB 770, 774–775 (1964), enf. denied 344 F.2d 617 (8th Cir. 1965); see also *Beverly Health & Rehabilitation Services, Inc. v. NLRB*, 297 F.3d 468, 477–478 (6th Cir. 2002) (noting that courts that have not adopted Board's specific framework for evaluating questioning in preparation for litigation "have not disagreed with the basic premise that cooperation in such investigations must always be voluntary").

[17] It is far from unusual for litigation of one unfair labor practice charge to bring to light separate, previously uncharged, unlawful conduct.  See, e.g., *Rhode Island PBS Foundation*, 368 NLRB No. 29, slip

op. at 10–11 (2019) (employer's defense of Sec. 8(a)(5) allegation established separate violations of Sec. 8(a)(1)).

[18] Under today's decision and *California Commerce Club*, an employer cannot lawfully prohibit an employee from discussing, with other employees, work-related issues and information that the employee "possesses independent of the arbitral proceeding." 369 NLRB No. 106, slip op. at 4.  Of course, employees likely will have difficulty understanding what they can and cannot discuss under an arbitration-confidentiality provision, a compelling reason to find broad provisions unlawful.  As the Board has recently reiterated in a related context, "rank-and-file employees do not generally carry law books" and neither they nor their employers can be expected always to correctly ascertain and communicate the precise limits of a broadly-worded confidentiality requirement.  See *Hoot Winc, LLC*, 369 NLRB No. 69, slip op. at 3 (2020).  An employer who implicitly or explicitly threatened to enforce an arbitration-confidentiality provision to restrict *protected* discussion of information—information known independently of the arbitration proceeding—would certainly violate the Act.  Cf. *UniQue Personnel Consultants, Inc.*, 364 NLRB No. 112, slip op. at 1, fn. 4 (2016) (employer's threat of legal prosecution for discussion of terms and conditions of employment violated the Act).  But if such a threat were made during the arbitration proceeding itself, an objectively reasonable employee would understand the confidentiality provisions to prevent her from revealing it to the Board.

12                       DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

*Prime Healthcare*, above.  But they fail to explain con-
vincingly where this purported difference lies.  Instead,
they argue (1) that their position today is consistent with
their position in *Apogee Retail*, above; (2) that the confi-
dentiality provision at issue does not *expressly* prohibit
protected employee disclosures to a Board agent; and (3)
that an employer could not, in any case lawfully *enforce*
the confidentiality provision to prevent employees from
going to the  Board.  These arguments are unpersuasive.

First, consistency with *Apogee* is no virtue, because that
decision was itself fundamentally flawed, as I explained
in my dissent there.[19]  Second, it is irrelevant that the pro-
vision does not expressly prohibit disclosures to counsel
or to a Board agent, because a rule generally prohibiting
disclosure to *anyone* clearly encompasses such specific
disclosures.  The majority, rightly, has had no trouble ap-
plying this principle to arbitration-exclusivity provisions,
which also have not expressly prohibited, or even referred
to, recourse to Board processes.  Rather, in that context,
the majority correctly reasons that a provision requiring
arbitration of *all* covered claims prohibits recourse to the
Board for resolution of *specific* claims.  But by the same
reasoning, a provision restricting all *disclosure* of arbitra-
tion-related information, without exceptions, necessarily
restricts specific disclosure of such information to counsel
or to a Board agent in order to seek the Board's help.  Fi-
nally, while the majority correctly recognizes that *enforce-
ment* of the confidentiality provision against protected
conduct would violate the Act, this in no way undermines
the conclusion that the mere maintenance of the provision
also unlawfully restrains access to the Board even if it is
never invoked; indeed, the more effective the provision's
unlawful prior restraint, the fewer occasions would ever
arise for its unlawful enforcement.  Thus, the Board and
the courts have long recognized that "[b]ecause of the
likely chilling effect of [a rule prohibiting employee state-
ments about working conditions], the Board may conclude
that [such a rule is] an unfair labor practice even absent
evidence of enforcement."  *NLRB v. Vanguard Tours,
Inc.*, 981 F.2d 62, 66–67 (2d Cir. 1992) (citing *Republic

*Aviation Corp. v. NLRB*, 324 U.S. 793, 803 fn. 10 (1945)),
enfg. in relevant part 300 NLRB 250 (1990).[20]

In sum, there can be no real question that the confiden-
tiality provision here interferes with the right of  employ-
ees to seek the Board's help, a result plainly contrary to
Board law and to Congress's intent, as reflected in Section
10(a) of the Act, to vigorously protect access to the Board.
This is enough to invalidate the confidentiality provision
in its entirety.

II.

The provision also has a second fatal flaw.  In addition
to interfering with employees' access to the Board, the
challenged confidentiality provision also interferes with
employees' core Section 7 right to discuss terms and con-
ditions of employment with their co-workers.  The major-
ity recognizes as much in concluding that the provision
is unlawful insofar as it requires confidentiality of arbitra-
tion "settlements."  In fact, the remaining terms of the con-
fidentiality provision *also* squarely violate the Act.  Con-
trary to the majority, the remaining confidentiality re-
quirements that it upholds—extending to "all arbitration
proceedings, including but not limited to hearings, discov-
ery, . . . and awards"—are *not* shielded by the Federal Ar-
bitration Act from being found unlawful under the NLRA,
as they otherwise would be.  The Board decision followed
by the majority, *California Commerce Club*, is simply in-
correct in permitting employers to impose such confiden-
tiality requirements.[21]

A.

As the Board acknowledged in *California Commerce
Club*, a provision requiring that arbitration proceedings be
kept confidential undeniably restrains employees from ex-
ercising their  Section 7 right to communicate with
coworkers about job-related information they learn in the
course of the proceeding, whether through discovery, a
hearing, or otherwise.[22]  And, as the *California Commerce
Club* Board recognized, "[i]t is axiomatic that discussing
terms and conditions of employment with coworkers *lies
at the heart of protected Section 7 activity*."[23]  There
should be no dispute, then, about the consequences of

---

[19]  *Apogee Retail*, above, 368 NLRB No. 144, slip op. at 17–18 (dis-
sent).  As in *Apogee*, my colleagues fail to recognize the obvious poten-
tial that reasonable employees will understand employer-imposed confi-
dentiality requirements to prohibit them from bringing charges to the
Board.  Like *Apogee Retail*, today's decision cannot be reconciled with
*Prime Healthcare*.

[20]  See also *NLRB v. Long Island Assn. for AIDS Care, Inc.*, 696 Fed.
Appx. 556, 557 (2d Cir. 2017), enfg. 364 NLRB No. 28 (2016); *Double
Eagle Hotel & Casino v. NLRB*, 414 F.3d 1249, 1258–1259 (10th Cir.
2005), enfg. 341 NLRB 112 (2004), cert. denied 546 U.S. 1170 (2006);
*NLRB v. Main Street Terrace Care Center*, 218 F.3d 531, 539 (6th Cir.
2000), enfg. 327 NLRB 522 (1999); *Medeco Security Locks, Inc. v.

*NLRB*, 142 F.3d 733, 745–746 (4th Cir. 1998), enfg. 322 NLRB 664
(1996); *Lafayette Park Hotel*, 326 NLRB 824, 825 (1998), enfd. 203 F.3d
52 (D.C. Cir. 1999).

[21]  As explained below, the majority's repeated claims that the Su-
preme Court has already decided this issue in *Epic Systems*, above, miss
the mark: confidentiality requirements are not the same thing as class or
collective action waivers.

[22]  369 NLRB No. 106, slip op. at 4.

[23]  Id. slip op. at 1 (emphasis added) (quoting *St. Margaret Mercy
Healthcare Centers*, 350 NLRB 203, 205 (2007), enfd. 519 F.3d 373 (7th
Cir. 2008)).

upholding the mandatory-arbitration confidentiality provisions in this case: employers will be free to prohibit conduct lying "at the heart of" the National Labor Relations Act's protections.[24]  Indeed, the majority apparently envisions that, despite the Norris-LaGuardia Act, federal courts will enforce arbitration-confidentiality provisions even in those circumstances.

The harmful impact of an arbitration-confidentiality provision on the ability of workers to communicate with each other—and then to take action together—is clear. Employment-related disputes subject to arbitration necessarily involve terms and conditions of employment.  To take one example, employment arbitration frequently addresses discipline or discharge claimed to unlawfully discriminate against legally protected characteristics or conduct.[25]  In such cases, evidence of how the employer has treated similarly situated employees—if such evidence exists—plays a crucial role, and typically would be produced at an arbitration hearing.[26]  Under well-established law, an employee who learned that her employer had systematically treated similarly-situated employees differently, based on a protected characteristic, would be protected by the Act if she then discussed that information with coworkers for the purpose of supporting potential discrimination claims, even where an employer could lawfully compel individual arbitration of all such claims.[27]

Similarly, employment arbitration frequently addresses issues involving wages and compensation.[28]  An employee who won a higher wage rate through arbitration would be required to keep the award confidential, preventing her from discussing her own wage rate with other employees, a clear violation of the Act.[29]  More generally, an employee who learned during an arbitration proceeding that an employer had systematically underpaid employees would be engaging in protected conduct by taking collective action with other employees to address the problem.[30]  Even where a mandatory arbitration agreement precludes class or collective *legal* action under *Epic Systems*, Section 7 still protects employees' right to address group concerns about terms and conditions of employment by concerted protest, strike, or collective bargaining.[31]

Indeed, the prevalence of employer-imposed class action waivers means that employees' attempts to improve workplace conditions by concerted protest or by pursuing collective bargaining—conduct that has been uniformly recognized as protected from the Act's earliest days[32]—may be one of the few avenues left for collective action. And restraining employees' ability to talk with each other clearly infringes upon those rights in violation of the National Labor Relations Act.  The Norris-LaGuardia Act, in turn, complements the NLRA's protection in this respect by providing that federal courts shall have no jurisdiction

---

[24] This was emphatically not the case in *Epic Systems*, supra, under the Supreme Court's interpretation of the NLRA, because the Court did not regard employees' efforts to pursue class or collective litigation or arbitration as implicating a core Sec. 7 right.  138 S. Ct. at 1624–1629. Again, this basic difference between the issues in *Epic Systems* and in this case explains why the majority errs in claiming that *Epic Systems* is controlling.

[25] See, e.g., *Thomas v. Cintas Corp.*, 2020 WL 6127875 (Nev. Dist. 2020) (Herf, Arb.) (awarding damages for racially discriminatory discharge); *Cantu v. Brock Group, Inc.*, 2016 WL 7488040 (Tex. Dist. 2016) (Willcuts, Arb.) (finding unlawful discharge in retaliation for filing workers compensation claim); *McCauley v. Highland Nursing & Rehabilitation Center, LLC*, 2008 WL 8139340 (W.D. Mo. 2008) (Phillips, Arb.) (finding unlawful sexual harassment, hostile work environment, and retaliatory discharge).

[26] In *Thomas*, above, for example, the employer claimed that it had lawfully discharged an employee for violating a company policy, not because of her race.  The arbitrator discounted this defense based in part on evidence produced at the hearing that non-African American employees who had violated the same policy had not been discharged.

[27] See, e.g., *Cordúa Restaurants, Inc.*, above, 368 NLRB No. 43, slip op. at 4 (citing longstanding Board and court precedent protecting employees' discussion of terms and conditions of employment in support of concerted pursuit of legal claims), affd. 985 F.3d 415 (5th Cir. 2021).

[28] See, e.g., *Ralph v. Hosseini*, 2020 WL 6451959 (S.D. Cal. 2020) (Berger, Arb.) (finding pizza restaurant's formula for calculating business expenses unlawfully systematically undercompensated delivery driver for use of personal vehicle); *Ramirez v. Lutheran Church of the Good Sheppard*, 2011 WL 1465393 (Cal. Super. 2011) (Marcus, Arb.) (finding ministerial exception did not excuse parochial school from paying overtime to teacher with primarily secular duties).

[29] See, e.g., *Lowe's Home Centers, LLC*, 368 NLRB No. 133, slip op. at 1 fn. 1 (2019) (rules proscribing employees' discussion or disclosure of their own salaries are categorically unlawful).

[30] See, e.g., *NLRB v. Main Street Terrace Care Center*, 218 F.3d 531, 537 (6th Cir. 2000) ("A rule prohibiting employees from communicating with one another regarding wages, a key objective of organizational activity, undoubtably tends to interfere with the employees' right to engage in protected concerted activity"), enfg. 327 NLRB 522 (1999); *Wilson Trophy Co. v. NLRB*, 989 F.2d 1502, 1510 (8th Cir. 1993) ("an unqualified rule barring wage discussions among employees without limitations as to time or place is presumptively invalid under the Act"), enfg. 307 NLRB 509 (1992).

[31] See *Epic Systems*, above, 138 S. Ct. at 1625 (concerted activities protected by the Act include "things employees 'just do' for themselves in the course of exercising their right to free association in the workplace").  The NLRA protects such conduct from direct employer interference.

[32] See, e.g., *NLRB v. Washington Aluminum Co.*, 370 U.S. 9 (1962) (concerted walkout to protest working conditions protected); *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565–566 (1978) (Sec. 7 "mutual aid or protection" encompasses employees' attempts "to improve terms and conditions of employment or otherwise improve their lot as employees through channels outside the immediate employee-employer relationship," including by appeals to administrative, judicial, and legislative bodies); *NLRB v. City Disposal Systems Inc.*, 465 U.S. 822, 831–832 (1984) (the process giving rise to a collective-bargaining agreement—"beginning with the organization of a union, continuing into the negotiation of a collective-bargaining agreement, and extending through the enforcement of the agreement—is a single, collective activity").

14          DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

to issue restraining orders or injunctions prohibiting any person from, inter alia, "[g]iving publicity to the existence of, or the facts involved in, any labor dispute"—whether or not they are the subject of an arbitration proceeding or learned through the proceeding.[33]  As the Supreme Court has observed, when Congress passed the Norris-LaGuardia Act, "[i]t was intended that . . . those having a direct or indirect interest in . . . terms and conditions of employment should be at liberty to advertise and disseminate facts and information."[34]

### B.

While acknowledging (if understating) the obvious impact of arbitration-confidentiality provisions on Section 7 rights, the *California Commerce Club* Board held, in effect, that the Federal Arbitration Act trumped the National Labor Relations Act.  That holding was mistaken.  The Supreme Court's decision in *Epic Systems*, as well as other judicial authority, actually supports the opposite conclusion: that invalidating arbitration-confidentiality provisions, because of their demonstrable impact on Section 7 rights, is the proper accommodation between the NLRA and the FAA.[35]  That accommodation preserves a core right protected by the NLRA without diminishing any "fundamental attribute" of arbitration.  Where a mandatory arbitration agreement imposes confidentiality requirements on employees that would prevent them from communicating with coworkers and others about terms and conditions of employment, those provisions should be held invalid, though in all other respects an arbitration agreement will survive, and arbitration may proceed.

### 1.

A careful reading of the Supreme Court's decision in *Epic Systems* makes clear that the NLRA is not somehow always required to yield to the FAA and that employers are not free to broadly constrain core labor-law rights simply by including restrictions in mandatory arbitration agreements.  Rather, the *Epic Systems* Court explained, "[w]hen confronted with two Acts of Congress allegedly touching on the same topic, [courts] must . . . strive to give effect to both," and "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the

other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow."[36]  In analyzing the claim in *Epic Systems* that the NLRA prohibited mandatory class and collective action waivers in arbitration agreements, the Court found that "by attacking (only) the individualized nature of the arbitration proceedings, the employees' argument seeks to interfere with one of arbitration's fundamental attributes."[37]  On the other hand, the Court found little evidence that Congress had intended Section 7 to address class or collective procedures.  Id. at 1624–1630.  Here, the shoe is on the other foot.

As the *Epic Systems* Court put it, "[u]nion organizing and collective bargaining in the workplace are the bread and butter of the NLRA."  Id. at 1627.  And the Supreme Court has long held that employees' Section 7 right "to self-organize and bargain collectively . . . necessarily encompasses the right effectively to communicate with one another."[38]  Invalidating broad arbitration-confidentiality requirements that contravene Section 7 guarantees would not interfere with any fundamental attribute of arbitration.  The majority is simply wrong in concluding that the NLRA and the FAA cannot be harmonized.[39]

### 2.

Party confidentiality, unlike the bilateralism at issue in *Epic Systems*, is not a "fundamental attribute" of arbitration.  As discussed below, arbitration has historically been *private* (proceedings are neither open to the public nor a matter of public record), but not *confidential*, in the sense that parties are constrained in their own discussion or disclosure of information about the proceedings and award.  Nothing in the Federal Arbitration Act (1) imposes a confidentiality obligation on parties to an arbitration agreement; (2) implies that any aspect of an arbitration proceeding—much less information learned in course of such a proceeding—is inherently confidential; or (3) requires a federal court to enforce a broad confidentiality provision, especially where doing so conflicts directly with another federal statute.  Because broad confidentiality restrictions on employees' speech about their workplace violate the NLRA whether imposed by contract or rule, invalidating such restrictions when they appear in employer-imposed

---

[33]  29 U.S.C. § 104(e).

[34]  *New Negro Alliance*, supra, 303 U.S. at 562–563.

[35]  The majority contends that no such accommodation is possible consistent with *Epic Systems* and that the FAA must therefore displace the NLRA.  But, as noted above and explained further below, the majority's contention is simply mistaken because, simply put, an arbitration-confidentiality requirement is not the same thing as a class or collective action waiver.

[36]  138 S. Ct. at 1624 (internal quotations and citations omitted).

[37]  Id. at 1622.

[38]  *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 491–492 & fn. 9 (1978) (citing *Central Hardware Co. v. NLRB*, 407 U.S. 539, 542–543 (1972) ("organization rights are not viable in a vacuum . . . .  [e]arly in the history of the administration of the Act the Board recognized the importance of freedom of communication to the free exercise of organization rights.").

[39]  The majority claims to have harmonized the FAA and the Act "to the extent it is possible to do so," but the conclusion that the FAA requires the enforcement of contract terms that clearly violate the Act amounts to the conclusion that the two statutes *cannot* be harmonized and that the FAA must, in relevant part, displace the NLRA.

arbitration agreements is entirely consistent with judicial interpretations of the FAA's provision that arbitration agreements may be held unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract."[40]

Scholars of arbitration have drawn a distinction between arbitration *privacy* and arbitration *confidentiality*.[41] Thus, arbitration proceedings in the United States have historically been *private*, in the sense that non-participants, including government officials and the press, are excluded from the proceedings.[42] They have also been private in the sense that arbitration awards generally are not published and do not produce precedential "public law."[43] However, absent a separate agreement between the parties or order by an arbitrator, arbitration proceedings have not historically been *confidential*; rather, parties have generally been free to disclose information about such proceedings, including non-public information revealed in the proceeding and details of any arbitral award.[44] This historical distinction is reflected in the Statement of Ethical Principles of the American Arbitration Association (AAA), which provides that, while arbitration proceedings are "private," the default rule on confidentiality is that "*parties always have a right to disclose details of the proceeding.*"[45] Thus, severing overly-broad confidentiality requirements from arbitration agreements would neither prevent arbitration nor substantially change the nature of the proceeding.[46]

Parties' historical freedom to disclose information about arbitration proceedings is consistent with the FAA, which nowhere imposes or even contemplates party confidentiality. To the contrary several sections of the FAA expressly provide for public filings that would violate the plain language of many broad confidentiality agreements, including the one in this case. Thus, "arbitral proceedings" covered by the confidentiality restriction in this case would clearly encompass the formal demand for arbitration that initiates such proceedings. But a party seeking to stay judicial action or to compel arbitration under Section 3 or 4 of the FAA must necessarily disclose the existence and content of such a demand. 9 U.S.C. §§ 3, 4. Similarly, a party seeking to vacate an arbitral award under Section 10 of the FAA—on grounds of corruption in its procurement, partiality or misconduct of the arbitrators, or that the arbitrators exceeded their powers—must necessarily disclose at least the award itself and also likely details of proceedings, including the hearing, that would be covered by the confidentiality requirement. 9 U.S.C. § 10. Finally, Section 13 of the FAA requires a party seeking to confirm, modify, or correct an award to file with the court, among other things, a copy of the award itself. 9 U.S.C. § 13. In each of these cases, absent a separate protective order by the court, filings with the court that facially violate broad confidentiality agreements become a matter of public record.[47] Given that accessing enforcement mechanisms expressly provided by the FAA itself would require violating

---

[40]  9 U.S.C. § 2.  The Court in *Epic Systems* expressly declined to reach the question of whether illegality under the NLRA could preclude enforcement of arbitration-agreement provisions *other* than class and collective action waivers, because the Court found that Sec. 2 of the FAA did not encompass challenges to arbitration's fundamentally bilateral character.  138 S. Ct. at 1622.

[41]  See, e.g., Christopher R. Drahozal, *Confidentiality in Consumer and Employment Arbitration*, 7 Y.B. ON ARB. & MEDIATION 28 (2015) (arguing that critics who claim arbitration permits parties to conceal wrongdoing systematically overstate extent to which arbitration is inherently confidential); Amy J. Schmitz, *Untangling the Privacy Paradox in Arbitration*, 54 U. KAN. L. REV. 1211 (2006) (discussing benefits and drawbacks of privacy and confidentiality in arbitration and proposing both increased protection of some kinds of information and increased transparency of some arbitration proceedings).

[42]  Schmitz, supra fn. 41, at 1214–1215.

[43]  Id. at 1216.

[44]  Id. at 1218; Drahozal, supra fn. 41 at 36, 37–41 ("Because an arbitration clause does not include an implied obligation of confidentiality under U.S. law, any confidentiality obligation must come from either administrator rules or the parties' agreement").

[45]  The provision reads in full:

   Confidentiality
   • An arbitration proceeding is a private process. In addition, AAA staff and AAA neutrals have an ethical obligation to keep information confidential. However, the AAA takes no position on whether parties should or should not agree to keep the proceeding and award confidential between themselves. The parties always have a right to disclose details of the proceeding, unless they have a separate confidentiality agreement. Where public agencies are involved in disputes, these public agencies routinely make the award public.
   • While individual arbitrations are confidential if the parties so determine, the AAA's rules and procedures are available to the public on its Web site and in hard copy.

AAA STATEMENT OF ETHICAL PRINCIPLES, https://adr.org/StatementofEthicalPrinciples (last visited Nov. 12, 2020) (emphasis added). It is fair to say, consistent with the obligation of AAA staff and neutrals to keep information confidential, that if confidentiality is a "fundamental attribute" of arbitration, it is so only in the limited sense that *arbitrators* are normally bound by ethical obligations not to disclose information about the proceedings.  This obligation, however—like the ordinary attorney-client confidentiality obligation—is asymmetrical: like the client, the parties to an arbitration are ordinarily free to discuss their own affairs.

[46]  Cf., e.g., *Larsen v. Citibank FSB*, 871 F.3d 1295, 1320, 1321 (11th Cir. 2017) (compelling arbitration without severed unlawful confidentiality clause).

[47]  One scholar reports: "Under the FAA, most courts have refused to allow filing of the award under seal, even when the parties have entered into a separate confidentiality agreement covering the arbitration.  At a minimum, then, when a party seeks to have a court confirm or enforce an arbitration award, the award on which it relies likely will be made public." Drahozal, supra, fn. 41 at 32–33 & fns. 13–15.  See also Laurie Kratke Doré, *Public Courts Versus Private Justice: It's Time to Let Some Sun Shine in on Alternative Dispute Resolution*, 81 CHI.-KENT L. REV. 463, 508–509 & fn. 246 (2006) ("confidentiality agreements in arbitration will not warrant sealing the entire judicial record of a proceeding to vacate or confirm an arbitral award and, absent compelling

16                                           DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

the plain terms of many broad confidentiality agreements, it makes no sense to claim that the FAA actually mandates enforcing such terms as written.[48]

In any case, to whatever extent parties may be bound to keep information about arbitration proceedings confidential, that obligation arises from their contract.[49] But even where an arbitration agreement includes a term mandating confidentiality, there are clear legal limits to enforceability. Thus, Section 2 of the FAA requires enforcement of arbitration agreements as written "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has instructed that "the [saving] clause establishes a sort of 'equal-

treatment' rule for arbitration contracts," but "offers no refuge for . . . defenses that target arbitration either by name or by more subtle methods, such as by interfering with fundamental attributes of arbitration."[50] The Court has also instructed that "the 'saving clause' in [Section] 2 indicates [that] the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, *but not more so.*"[51] Applying these doctrines, courts have concluded that the FAA does *not* invariably shield confidentiality requirements in arbitration agreements and have regularly held such requirements unenforceable under generally applicable legal principles.[52] If

---

[48] The majority protests that "an objectively reasonable employee simply would not interpret a confidentiality provision" that prohibited *all* arbitration-related disclosures, without exception, to prohibit *specific* disclosures permitted by the FAA. See supra, slip op. at 7 fn. 15. This assertion is as unpersuasive as the majority's similar claim that employees would also naturally divine that blanket prohibitions on all arbitration-related disclosures tacitly exclude NLRA-protected disclosures to counsel or Board agents. In any case, the majority's argument misses the broader point. A confidentiality provision that is facially inconsistent with the FAA cannot reflect a fundamental attribute of arbitration as contemplated by Congress in enacting the FAA. The majority's further observation that inconsistency with the FAA (or the Norris-LaGuardia Act) does not establish a violation of the NLRA is similarly beside the point.

[49] See generally Drahozal, supra, fn. 41; Schmitz, supra, fn. 41. See also AAA STATEMENT OF ETHICAL PRINCIPLES, supra, fn. 45 ("the AAA takes no position on whether parties should or should not agree to keep the proceeding and award confidential between themselves"). My colleagues make much of the AAA's recognition that parties sometimes contract to keep aspects of their arbitration procedures confidential. But this does not change the background rule, as recognized by the AAA, that parties themselves are normally free to discuss their own affairs. Cf. *Epic Systems*, above, 138 S. Ct. at 1623 (finding that availability of class-wide arbitration procedures did not change traditional individual character of arbitration).

[50] *Epic Systems*, above, 138 S. Ct. at 1622 (internal quotations, modifications, and citations omitted).

[51] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 fn. 12 (1967) (emphasis added).

[52] Because the FAA creates a body of federal substantive law of arbitrability that is enforceable in both state and federal courts, and because "grounds . . . for the revocation of any contract" under FAA Sec. 2 frequently arise from state law, controlling judicial interpretations of the scope of the FAA saving clause appear in both federal and state court decisions. *Perry v. Thomas*, 482 U.S. 483, 489 (1987); see also, e.g., *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167–171 (5th Cir. 2004) (invalidating arbitration agreement under Louisiana state court decisions). The majority protests that judicial decisions invalidating confidentiality provisions in arbitration agreements on state law grounds do not establish the availability of an illegality defense under a federal statute, a question the Court declined to reach in *Epic Systems*. While true, this is beside the point that these decisions illustrate: the *Epic* Court did not reach the question of FAA Sec. 2's applicability to a federal illegality defense because the Court found that no Sec. 2 defense was available for *any* challenge to individual-arbitration

requirements. 138 S. Ct. at 1622. Indeed, the *Epic* Court relied upon *AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011), which held that Sec. 2 did not permit invalidating an individual arbitration requirement based on state law. Here, by contrast, numerous judicial decisions—both before and after *Concepcion*—clearly establish that FAA Sec. 2 *does* permit invalidation of confidentiality requirements under generally applicable state law principles. And, as I explain below, *other* Supreme Court precedent clearly establishes (and my colleagues do not dispute) that federal law generally precludes federal-judicial enforcement of contracts in violation of the NLRA.

A small sampling of the many judicial decisions invalidating confidentiality requirements in arbitration agreements includes decisions of the Ninth and Eleventh Circuits, as well as state supreme courts in Hawaii, Kentucky, and Washington: *Larsen v. Citibank FSB*, 871 F.3d 1295, 1308, 1318–1320 (11th Cir. 2017) (invalidating and severing provision requiring parties to "keep confidential any decision of an arbitrator"); *Narayan v. Ritz-Carlton Development Co.*, 400 P.3d 544, 555–556 (Haw. 2017) (invalidating clause providing "[n]either a party, witness, or the arbitrator may disclose the facts of the underlying dispute or the contents or results of any negotiation, mediation, or arbitration hereunder without prior written consent of all parties"), cert. denied 138 S. Ct. 982 (2018); *Schnuerle v. Insight Communications Co.*, 376 S.W.3d 561, 577–579 (Ky. 2012) (invalidating and severing provision prohibiting disclosure of "the existence, content or results of any arbitration or award"); *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1071, 1078–1079 (9th Cir. 2007) (invalidating provision prohibiting, inter alia, disclosure of "the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration"), overruling on other grounds recognized by *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 933–934 (9th Cir. 2013); *Zuver v. Airtouch Communications, Inc.*, 103 P.3d 753, 764–765, 769 (Wash. 2004) (invalidating and severing provision that "[a]ll arbitration proceedings, including settlements and awards, under the Agreement will be confidential"). See generally Kimberly J. Winbush, Annotation, *Validity of Clause of Arbitration Agreement Requiring Confidentiality of Arbitration Proceedings*, 26 A.L.R. 7th Art. 7 (2017) (collecting cases).

While other courts have, unsurprisingly, upheld individual confidentiality agreements against unconscionability challenges, those decisions cannot logically establish that *all* such provisions must be upheld, against whatever challenge. Cf. *Davis v. O'Melveny & Myers*, above, 485 F.3d at 1079 ("The concern is not with confidentiality itself but, rather, with the scope of the language [at issue]. . . . '[A]lthough courts have accepted confidentiality provisions in many agreements, it does not necessarily follow that *this* confidentiality provision is conscionable.'") (quoting *Zuver*, above, 103 P.3d at 765). For the same reason, contrary to my colleagues, the Ninth Circuit's 2017 conclusion that a 2014 California intermediate state court decision rendered a particular arbitration confidentiality provision lawful does nothing to undermine the many earlier and later judicial decisions establishing that FAA Sec. 2 generally permits

confidentiality were a fundamental attribute of arbitration, these judicial decisions could not stand.

For all of these reasons, then, confidentiality restrictions are not fundamental attributes of arbitration, and challenges under the NLRA to such restrictions are not somehow barred by the FAA as disguised attacks on arbitration.[53]

As a general matter, confidentiality agreements that restrict employees' Section 7 right to discuss terms and conditions of employment are unenforceable as a matter of federal law. The Board and federal courts, including the Supreme Court, have long held that individual contract terms prospectively waiving employees' rights to engage in activity protected by Section 7 violate the NLRA and are unenforceable.[54] And, the Board, with court approval, has routinely held that confidentiality requirements like those at issue here violate the Act when they are imposed in contexts *not* involving arbitration.[55] It follows that,

---

unconscionability defenses to such provisions. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1266–1267 (9th Cir. 2017).

[53] The Supreme Court's analysis in *Epic Systems* rested fundamentally on its conclusion that *bilateralism* is a fundamental attribute of arbitration. 138 S. Ct. at 1622. The Court said nothing about confidentiality, and so *Epic Systems* does not govern the issue addressed in this case.

[54] The Supreme Court's view on this issue has been consistent and unequivocal. See, e.g., *National Licorice Co. v. NLRB*, 309 U.S. 350, 359–361 (1940) (affirming Board's authority to prevent enforcement of individual employment contracts waiving Sec. 7 rights); *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 237 fn. 14 (1963) (Court "would not . . . honor a private settlement which purported to deny to employees the rights guaranteed them by the Act"); *J.I. Case Co. v. NLRB*, 321 U.S. 332, 337 (1944) ("Individual contracts no matter what the circumstances that justify their execution or what their terms, may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining . . . . [w]herever private contracts conflict with [the Board's] functions, they obviously must yield or the Act would be reduced to a futility").

My colleagues criticize my reliance on this well-established principle on the grounds that the Board previously affirmed the same proposition in *Murphy Oil*, above, 361 NLRB at 782. See supra, slip op. at 5-6, fn. 11. But nothing in the Supreme Court's reversal of *Murphy Oil* in *Epic Systems* called this principle into doubt. Moreover, my colleagues' criticism is puzzling in light of their own invocation of the same principle in their discussion of the settlement confidentiality issue in this case. See supra, slip op. at 4 ("[A]s the Supreme Court held long ago, individual agreements between employer and employee prospectively waiving Section 7 rights violate the Act").

The decisions of the federal courts of appeals—including the Second, Third, Sixth, Seventh, Ninth, and Tenth Circuits—are in accord, stretching back to 1939. See, e.g., *E.L. Wiegand Div. v. NLRB*, 650 F.2d 463, 467 (3d Cir. 1981) ("By well established principle, private contracts may not be used to legitimate unfair labor practices nor to divest the Board of jurisdiction over such practices"), enf'g as modified 246 NLRB 1143 (1979), cert. denied 455 U.S. 939 (1982); *Morio v. North American Soccer League*, 632 F.2d 217, 218 (2d Cir. 1980) ("the Board in unfair labor practices proceedings has frequently voided contracts negotiated by the employer with individual employees"); *Electrical Workers Local 613 (Erie Technological Products)*, 328 F.2d 723, 727 (3d Cir. 1964) ("the rights of . . . employees under the [NLRA] are not subject to private adjustment. . . . [s]uch an adjustment, if made, cannot bar the Board's exercise of its statutory authority") (citation omitted), decision after remand by 373 U.S. 221 (1963); *Modine Mfg. Co. v. Machinists Local Union No. 1382*, 216 F.2d 326, 329 (6th Cir. 1954) ("although the employer had bound himself by contract previously to bargain with" union, union could not prevail in suit under Sec. 301 of the [Labor Management Relations Act] where intervening Board election imposed upon employer duty under Sec. 8(a)(5) of the Act to bargain exclusively with a different union); *Cardenas v. Wilson & Co.*, 180 F.2d 828, 828–829 (10th Cir. 1950) (employee could not prevail on breach of contract claim based on contract between employer and employee representative committee that had been

"legally terminated by the National Labor Relations Board"); *NLRB v. Thompson Products*, 141 F.2d 794, 799–800 (9th Cir. 1944) (affirming Board's order invalidating contract with company-supported union), aff'g. 46 NLRB 514 (1942); *NLRB v. Stone*, 125 F.2d 752, 756 (7th Cir. 1942) (enforcing Board's order invalidating individual employment contracts seeking "to prevent strikes and labor troubles," under which "employee bound himself to negotiate any differences with the employer and to submit such differences to arbitration. . . . [b]y this provision the employee not only waived his right to collective bargaining but his right to strike or otherwise protest on the failure to obtain redress through arbitration"), enf'g as modified 33 NLRB 1014 (1941), cert. denied 317 U.S. 649 (1942); *NLRB v. Indiana & Michigan Electric Co.*, 124 F.2d 50, 55 (6th Cir. 1941) (where "contracts were inherently unfair and their performance a continuing violation of the Act[,] . . . contracts were void ab initio"), remanding on other grounds 20 NLRB 989 (1940); *NLRB v. American Mfg. Co.*, 106 F.2d 61, 66–67 (2d Cir. 1939) (individual employment contracts restricting employee rights to strike or demand a closed shop or a signed collective-bargaining agreement and providing for unqualified employer right to "hire or discharge any employee . . . regardless of his or their affiliation or non-affiliation with any union," were unenforceable as contrary to the NLRA), enf'g. 5 NLRB 443, 454–455, 470 (1938), order modified and aff'd. per curiam 309 U.S. 629 (1940).

[55] The point can be illustrated with decisions from the First, Second, Fourth, Fifth, Sixth, Eighth, Tenth, and District of Columbia Circuits. See, e.g., *Banner Health System v. NLRB*, 851 F.3d 35, 41 (D.C. Cir. 2017) (affirming Board's unanimous conclusion that employer's confidentiality agreement prohibiting discussion of "[p]rivate employee information (such as salaries, disciplinary action, etc.)," unlawfully "struck at the heartland of Section 7 activity without adequate justification" and noting "'confidential information' cannot itself 'be defined so broadly as to include working conditions.'") (quoting *Double Eagle Hotel & Casino v. NLRB*, 414 F.3d 1249, 1260 (10th Cir. 2005), enf'g. as modified 341 NLRB 112, 113 (2004) (finding unlawful confidentiality policy covering "disciplinary information, grievance/complaint information, performance evaluations, salary information, salary grade, types of pay increases, [and] termination data for employees who have left the company"), cert. denied 546 U.S. 1170 (2006)), enf'g. in relevant part 362 NLRB 1108 (2015); *Long Island Assn. for AIDS Care, Inc.*, 364 NLRB No. 28, slip op. at 1, 4 (2016) (finding unlawful rule prohibiting disclosure of, inter alia, "salaries, contents of employment contracts, . . . [and] staff address and phone numbers"), enfd. 696 Fed. Appx. 556 (2d Cir. 2017); *Flex Frac Logistics, LLC v. NLRB*, 746 F.3d 205, 208 (5th Cir. 2014) ("A 'workplace rule that forb[ids] the discussion of confidential wage information between employees . . . patently violate[s] section 8(a)(1).'") (quoting *NLRB v. Brookshire Grocery Co.*, 919 F.2d 359, 363 (5th Cir. 1990)), enfg. 358 NLRB 1131 (2012); *NLRB v. Northeastern Land Services, Ltd.*, 645 F.3d 475, 478, 481–483 (1st Cir. 2011) (finding unlawful confidentiality provision in contract for employment prohibiting disclosure to third parties of "terms of this employment, including compensation"), enfg. 355 NLRB 1154 (2010); *Jewish Home for the Elderly of Fairfield County*, 343 NLRB 1069, 1077 (2004) (finding unlawful confidentiality rule covering "wages, merit increases, evaluations,

18                              DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

notwithstanding the FAA, confidentiality provisions that prospectively waive employee rights to engage in protected Section 7 communications are *also* unlawful under the NLRA when they appear in arbitration agreements, just as in any other contract.[56]

The majority is mistaken when it contends that the Supreme Court's "explicit refusal" to apply Section 2 of the FAA to a federal illegality defense in *Epic Systems*, along with its "pointed" citation of a circuit judge's dissenting opinion, means that illegality of an arbitration provision under the NLRA can never come within Section 2 of the FAA. See supra, slip op. at 6. The Court expressly declined to reach the issue, and the Board should not read into the Court's opinion a holding that it chose not to make.[57] Notably, the Court has held both that Section 2 of the FAA makes arbitration agreements "as enforceable as other contracts, *but not more so*,"[58] and that, despite the absence of a "statutory code of federal contract law," the Court's decisions "leave *no doubt that illegal promises will not be enforced* in cases controlled by the federal law." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 76 (1982) (emphasis added).[59] Contrary to my colleagues' view, this authority (along with the many consonant Board and court decisions already discussed) should lead the Board to conclude that an arbitration-agreement provision that violates the NLRA is just as unlawful as the same provision in any other type of contract would be.

3.

In light of these well-established legal principles, it is clear that *California Commerce Club* was wrongly

decided and that the majority errs in applying that decision today. Examining the Board's decision with care reveals its errors.

The confidentiality provision there specified that: "[t]he arbitration shall be conducted on a confidential basis and there shall be no disclosure of evidence or award/decision beyond the arbitration proceeding."[60] The Board's first error was to read a limit into this restriction by asserting that employees  necessarily would understand the provision did *not* restrict employees' protected disclosure and discussion of "the existence of the arbitration, their claims against the employer, the legal issues involved, or the events, facts, and circumstances that gave rise to the arbitration proceeding."[61] In fact, employees are far more likely to think that a requirement that arbitration "be conducted on a confidential basis" means that employees may not talk about the arbitration, period.[62]

In any case, the *California Commerce Club* Board recognized that even read narrowly, the confidentiality provision would restrict employee communication that "lies at the heart of protected Section 7 activity."[63] This, of course, is correct. The Board assumed, without deciding, that employer interests in saving resources, preventing reputational injury, and facilitating the cooperative exchange of discovery did not outweigh the impact of the confidentiality provision on the exercise of Section 7 rights, and that the provision would accordingly violate the Act under *Boeing*, 365 NLRB No. 154 (2017), if maintained as an employer-promulgated work rule. That conclusion, too, is sound.[64]  But the Board's ultimate

paychecks, and other information"), enfd. 174 Fed. Appx. 631 (2d Cir. 2006); *NLRB v. Main Street Terrace Care Center*, 218 F.3d 531, 539 (6th Cir. 2000) ("rule prohibiting employee wage discussions violates § 8(a)(1) despite the fact that the rule was unwritten and routinely unenforced"), enfg. 327 NLRB 522 (1999); *Medeco Security Locks, Inc. v. NLRB*, 142 F.3d 733, 744–748 (4th Cir. 1998) (finding unlawful confidentiality restrictions on employee discussion of performance tests and drug test), enfg. in relevant part 322 NLRB 664 (1996); *NLRB v. Vanguard Tours, Inc.*, 981 F.2d 62, 66–67 (2d Cir. 1992) (finding unlawful rule prohibiting discussing wages, hours, and working conditions while on company property or on duty), enfg. in relevant part 300 NLRB 250 (1990); *Wilson Trophy Co. v. NLRB*, 989 F.2d 1502, 1511 (8th Cir. 1993) (finding unlawful prohibition of wage discussion and opening paychecks in warehouse), enfg. 307 NLRB 509 (1992); *Jeannette Corp. v. NLRB*, 532 F.2d 916, 919–920 (3d Cir. 1976) (finding unlawful unwritten rule prohibiting employee discussion of wages), enfg. 217 NLRB 653 (1975).

[56] The majority criticizes this conclusion as "precisely the same argument advanced by the Board" in *Murphy Oil*, above, 361 NLRB at 779, and "laid . . . to rest" in *Epic Systems*. See supra, slip op. at 5-6. This is incorrect because *Murphy Oil* and *Epic Systems* involved individual arbitration requirements, which, as I have explained, are not the same thing as the confidentiality requirements at issue here.

[57] The Court itself has found unfortunate occasion to remind the Board that issues the Court has not decided remain "obviously," undecided. See *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 581 (1988).

[58] *Prima Paint*, above, 388 U.S. at 404 fn. 12 (emphasis added).

[59] In *Kaiser Steel*, the Court held that a federal court entertaining a breach-of-contract claim under Sec. 301 of the Labor Management Relations Act must adjudicate the employer's defenses that the contractual term at issue violated federal antitrust laws and Sec. 8(e) of the NLRA. The Court reasoned that "[w]ere the rule otherwise, parties could be compelled to comply with contract clauses, the lawfulness of which would be insulated from review by any court." Id.  My colleagues protest that I give insufficient weight to the Court's uncontroversial observation in *Epic Systems* that arbitration agreements are fundamentally contractual—i.e., that they are "agreements"—and that Congress has struck a policy balance with respect to their enforcement that the Board cannot change. But the Court has also made clear—in *Prima Paint*, *Kaiser Steel*, and elsewhere—that the balance struck by Congress in the FAA does not give arbitration agreements a *privileged* status among all contracts, and there is "no doubt" that federal courts will not enforce agreements illegal under federal law.

[60] 369 NLRB No. 106, slip op. at 1.

[61] Id. slip op. at 4.

[62] Cf. *Ingram Book Co.*, 315 NLRB 515, 516 fn. 2 (1994) ("Rank-and-file employees do not generally carry lawbooks to work or apply legal analysis to company rules as do lawyers, and cannot be expected to have the expertise to examine company rules from a legal standpoint").

[63] 369 NLRB No. 106, slip op. at 3–4 (citation omitted).

[64] Although I adhere to my dissenting view in *Boeing*, it is clear that, even under *Boeing*, broad restrictions on core protected conduct should

conclusion—that the Federal Arbitration Act prevented finding a violation of the National Labor Relations Act—was flatly wrong, for all the reasons already described here.

The *California Commerce Club* Board first invoked Supreme Court precedent[65]—none of it involving confidentiality provisions, much less the interplay of the FAA and the NLRA—to conclude that "[t]he FAA . . . requires that the confidentiality provision must be enforced according to its terms absent a contrary congressional command."[66] As shown, however, the FAA requires no such thing, and the cases cited by the Board are not to the contrary. Thus, the Board relied upon the Court's statement in *Volt*, supra, repeated in *American Express*, supra, that parties are generally free to specify by contract "the rules under which . . . arbitration will be conducted."[67] But *Volt* involved the enforceability of an arbitration agreement's *choice-of-law provision*, where that provision imposed limitations on arbitrability not imposed by the FAA.[68] *American Express* and *AT&T Mobility*, in turn, upheld contractual provisions requiring bilateral arbitration and waiving class procedures. By contrast, the confidentiality restrictions here have nothing to do with the choice of law or applicable

rules of procedure, the nature of the claims that can be asserted, how the parties will present evidence, or how the arbitrator will conduct the proceeding. Rather, these restrictions purport to dictate employee conduct *outside of and entirely independent of* the arbitration proceeding, including restraining employee speech long after arbitration proceedings shall have been concluded.[69] Thus, the Supreme Court cases relied upon by the majority have nothing to say to the specific issue of the enforceability of confidentiality restrictions in this case or any other.[70]

More broadly, contrary to the majority, the Supreme Court has never so much as suggested that strict party confidentiality is a fundamental attribute of arbitration. In *AT&T Mobility*, supra, the Court mentioned parties' ability to specify "that proceedings be kept confidential to protect *trade secrets*," in the course of listing desirable features of arbitration that could be impacted by a rule requiring the availability of class-wide arbitration.[71] The *California Commerce Club* Board further relied upon two circuit court decisions rejecting challenges—not made under the National Labor Relations Act—to specific confidentiality provisions, but those decisions likewise have little relevance here.[72] By contrast, as noted above, other courts

---

be found categorically unlawful, i.e., no proffered employer justification can outweigh such restrictions' impact on Sec. 7 rights. See *Boeing*, above, slip op. at 4 (positing that "a rule that prohibits employees from discussing wages or benefits with one another" would be categorically unlawful).

[65] *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468 (1989).

[66] 369 NLRB No. 106, slip op. at 5.

[67] 489 U.S. at 479.

[68] Id.

[69] The majority is mistaken, then, in contending that confidentiality provisions are limited in scope to specifying the rules under which arbitration will be conducted, within the meaning of *American Express*, above.

[70] The majority criticizes my discussion of the actual holdings of the Supreme Court in cases it relies upon, declaring that "in the *Court's* view," the fundamental attributes of arbitration include its speed, relative low cost, and informality. See supra, slip op. at 7. The fact remains that the Supreme Court has never specifically ruled on the availability of Sec. 2 challenges to confidentiality provisions under the FAA. It has, however, declined to review at least one of the many lower court decisions expressly *permitting* such challenges. See supra, fn. 52. By contrast, the majority's claim that the FAA invariably insulates confidentiality provisions from *any* Sec. 2 challenge does not reflect any view ever expressed by the Supreme Court. It rests instead on isolated language in two decisions by the Fifth and Second Circuits. As I explain below, these circuit court decisions do not truly support the majority's conclusion, and they directly conflict with many other judicial constructions of the FAA.

The majority also criticizes my observation that the Supreme Court has not decided the issue before us, pointing out that the Board in *Murphy Oil*, above, 361 NLRB at 788, similarly observed that the Supreme Court had not, at that time, addressed the *different* issue presented there. See supra, slip op. at 5-6 fn. 11. My colleagues' criticism reflects the

mistaken view that *Epic Systems* somehow decided that no arbitration provisions—except exclusivity provisions directly interfering with employee access to the Board—can ever be held to violate the National Labor Relations Act. Such a broad reading of *Epic Systems* is unfounded, for reasons already explained.

[71] 563 U.S. at 344–345 (emphasis added). A Board order invalidating broad restrictions on employees' ability to discuss terms and conditions of employment would in no way impact this feature of arbitration: the Board recognizes and preserves employers' right to protect trade secrets and similar proprietary information, See, e.g., *Macy's, Inc.*, 365 NLRB No. 116, slip op. at 4 (2017) ("the Board has repeatedly held that employees may be lawfully disciplined or discharged for using for organizational purposes information improperly obtained from their employer's private or confidential records") (citing cases).

[72] 369 NLRB No. 106, slip op. at 5, citing *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004) and *Guyden v. Aetna*, 544 F.3d 376 (2d Cir. 2008).

The consumer plaintiffs in *Iberia* argued that an arbitration confidentiality requirement unconscionably deprived them of the ability to establish precedent and gave an unfair informational advantage to repeat-player companies, who had first-hand knowledge of how prior arbitrations against them had faired. 379 F.3d at 175. The court rejected this specific attack as, "in part, an attack on the character of arbitration itself," because:

> [i]f every arbitration were required to produce a publicly available, "precedential" decision on par with a judicial decision, one would expect that parties contemplating arbitration would demand discovery similar to that permitted under Rule 26, adherence to formal rules of evidence, more extensive appellate review, and so forth—in short, all of the procedural accoutrements that accompany a judicial proceeding. But part of the appeal of arbitration is that one "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."

Id. at 175–176 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). In context then, it is clear that the

20                                    DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

have squarely held that the FAA does not preclude invalidation of confidentiality provisions in arbitration agreements.[73]

The *California Commerce Club* Board also relied upon the Supreme Court's distinction in *Epic Systems* between "things employees just do for themselves in the course of exercising their right to free association in the workplace" and "the highly regulated, courtroom-bound 'activities' of class and joint litigation."[74]   The Board concluded that discussing work-related issues "they either know about firsthand or have heard about from their colleagues," was something employees "just do" (and accordingly, could *not* be prohibited consistent with the Act), but that disclosing an arbitration award or discussing work-related "information obtained solely through participating as a party in an arbitral proceeding" were not "things that employees 'just do'"—and *could* lawfully be prohibited.  This distinction is completely artificial.  If employees involved in an arbitration proceeding believe that their coworkers could help them to improve working conditions (or vice versa), then they obviously will share information obtained through arbitration with them—assuming that they are not prohibited by their employer (or a federal court) from doing so.  *How* information about terms and conditions is acquired is irrelevant to whether it is useful for protected concerted activity under the National Labor

Relations Act.  As already explained, arbitration of work-related disputes is highly likely to reveal work-related information, and discussion of work-related information for the purpose of collective bargaining or other mutual aid or protection, lies at the heart of what employees "just do" for themselves under the Act's protection.  That such information may have been learned during the course of an arbitration proceeding makes no difference.

Finally, in a last-paragraph about-face, the *California Commerce Club* Board actually conceded that an employer would violate the Act by imposing discipline against an employee to directly enforce an arbitration-confidentiality provision against protected employee discussions.[75]   Yet the Board appeared to contemplate that an employer could utilize judicial or arbitral procedures to achieve the same illegal result.[76]   Both the NLRA and the Norris-LaGuardia Act foreclose that possibility.  The Norris-LaGuardia Act protects essentially the same employee conduct protected by the NLRA, by stripping the federal courts of jurisdiction to enjoin that conduct.  Thus, under Norris-LaGuardia, a federal court is explicitly prevented from enjoining employees from "[g]iving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence."[77]   This statutory language on its face precludes a court from ordering

---

"confidentiality" that the court described as part of the "character of arbitration itself," was *not* strict party confidentiality, but rather arbitral *privacy*, in the sense described above: that arbitration awards are not generally made public and do not create public, precedential law.  Nothing about a Board order invalidating a broad restriction on employee speech in these cases would interfere with arbitral "confidentiality" in this sense or tend to change the character of any ensuing arbitration in the ways that concerned the *Iberia* court.

Nor does *Guyden v. Aetna* provide true support for the position of the *California Commerce Club* Board.  There, the Second Circuit rejected an argument that a confidentiality requirement "conflict[ed] with one of the purposes of the SOX [Sarbanes-Oxley Act] whistleblower provision—to communicate to other employees that their rights will be protected if they report wrongdoing."  544 F.3d at 384.  The court echoed the Fifth Circuit's observation in *Iberia*, above, that an "attack on the confidentiality provision is, in part, an attack on the character of arbitration itself," reiterated broad Supreme Court language warning against generalized attacks on arbitration, and concluded that "[b]ecause confidentiality is a paradigmatic aspect of arbitration, our determination that SOX whistleblower claims are arbitrable precludes Guyden's challenge to the privacy of the resulting arbitration."  Id. at 385.  But the Sarbanes-Oxley Act is not the National Labor Relations Act.  The Second Circuit itself has recognized that under the NLRA, employers may not impose workplace-confidentiality restrictions on employees.  See, e.g., *NLRB v. Long Island Assn. for AIDS Care, Inc.*, supra, 870 F.3d at 88–89 (employer violated Sec. 8(a)(1) by firing employee for refusing to sign unlawful confidentiality agreement).  And, as far back as 1939, the Second Circuit recognized that individual employment contracts that violate the NLRA are unenforceable.  See *NLRB v. American Mfg. Co.*, supra, 106 F.2d at 66–67.

[73]   See cases cited supra at fn. 52.  Notably, the Supreme Court of Kentucky specifically rejected arguments based on *AT&T Mobility* and *Iberia* when it invalidated the arbitration-confidentiality provision at issue in *Schnuerle*, above, 376 S.W. 3d at 577–579, while the Supreme Court of Hawaii specifically reaffirmed its conclusion that the confidentiality provision at issue in *Narayan*, above, was unlawful in Hawaii after remand from the United States Supreme Court for reconsideration under *DIRECTTV, Inc. v. Imburgia*, 577 U.S. 47 (2015), a decision following *AT&T Mobility*.  400 P.3d 544, 547.  The United States Supreme Court subsequently denied certiorari in *Narayan*.  138 S. Ct. 982 (2018).  See also *Larsen v. Citibank*, above (11th Circuit decision invalidating confidentiality provision after *AT&T Mobility*); *Seibert v. Precision Contracting Solutions, LP*, Civil Action No. 18–818, 2019 WL 935637 at *7–8 (D.D.C. 2019) (finding confidentiality clause in arbitration agreement void as unlawful under another federal statute: "there is no conflict between [15 U.S.C.] § 45b and the FAA since the broad confidentiality condition in the contract under review is neither 'fundamental' to arbitration [*AT&T Mobility LLC v.*] *Concepcion*, 563 U.S. [333] at 339 [(2011)], nor consistent with the public nature of federal court dockets . . . should an award need confirmation.").  As noted above, and contrary to my colleagues' claim, this authority clearly establishes the availability of a defense against arbitration-confidentiality provisions under FAA Sec. 2.  It is in no way undermined by the Ninth Circuit's 2017 conclusion that some of its earlier decisions applying California state law had been superseded by an intervening state court decision.  See supra, fn. 52.

[74]   369 NLRB No. 106, slip op. at 6 (quoting *Epic Systems*, above, 138 S. Ct. at 1625).

[75]   Id.

[76]   Id.

[77]   29 U.S.C. § 104.

an employee not to discuss information related to a workplace controversy, even if it was subject to arbitration and even if the information was acquired through the arbitration proceeding.  Simply put, the Norris-LaGuardia Act protects employee speech related to employment arbitration, and it precludes federal courts from silencing employees on employer demand.[78]  Of course, independent of the Norris-LaGuardia Act, the Supreme Court has held that a party violates the NLRA by seeking to achieve through the courts an end that is itself unlawful under the Act.[79]  Accordingly, where the Act would prevent an employer from disciplining an employee for protected discussion of terms and conditions of employment, it also prevents the employer from seeking to suppress that speech through a judicial or arbitral forum.

In sum, the *California Commerce Club* Board got the accommodation framework described in *Epic Systems* precisely backwards when it concluded that the NLRA and the FAA cannot be reconciled and that the FAA must displace the NLRA with respect to confidentiality provisions in mandatory arbitration agreements.  To the contrary, holding such terms unlawful where they conflict with the core protections of the NLRA—in mandatory arbitration agreements, just as in any other contract—properly accommodates the FAA and the NLRA with no harm to either statute.

III.

Today's decision reinforces a disturbing trend in the modern American workplace.  "Boilerplate, coercive employment contracts are now widely used for many (if not the majority of) private sector, non-unionized employees in the United States, including lower-wage hourly workers."[80]  Besides mandating arbitration of most work-related disputes, many of these contracts also impose confidentiality restrictions that keep workers from seeking

support from their coworkers, third parties, and the government in their attempts to redress wrongs and improve working conditions.[81]  Given the prevalence of mandatory individual arbitration, protecting employees' ability to talk with each other, as a prelude to protected concerted activity, is vitally important to achieving the goals of the National Labor Relations Act.

Dissenting in *Epic Systems*, the late Justice Ruth Bader Ginsburg warned that that decision threatened to resurrect "take-it-or-leave-it labor contracts harking back to the type called 'yellow-dog,'" the enforcement of which has been long proscribed by the Norris-LaGuardia Act.[82]  The Court majority rejected her concern as, "like most apocalyptic warnings, . . . prov[ing] a false alarm," and insisted that the *Epic Systems* "decision merely decline[d] to read into the NLRA a novel right to class action procedures."[83]  But the Board's profound misreading of *Epic Systems* today and in *California Commerce Club* has proved Justice Ginsburg right. Instead of again contributing to the trend of silencing employees—as it has recently done in a string of decisions[84]—the Board should do its duty and *stand against* this trend, preserving bedrock protections for American workers that have been part of the law for nearly 90 years.  Because today's decision fails to do so, I dissent.

Dated, Washington, D.C.  March 18, 2021

_____

Lauren McFerran,                         Chairman

NATIONAL LABOR RELATIONS BOARD

APPENDIX

NOTICE TO EMPLOYEES

---

[78]  Today's majority criticizes this observation on the grounds that the Board found in *Murphy Oil*, supra, 361 NLRB at 789, that individual arbitration agreements violated the policies of the Norris-LaGuardia Act. See supra, slip op. at 5-6 fn. 11.  But, while it is true that the Supreme Court subsequently rejected that aspect of the Board's *Murphy Oil* decision in *Epic Systems*, 138 S. Ct. at 1627, nothing about the Court's discussion of the issue there addresses the distinct point that the plain language of the Norris-LaGuardia Act prohibits judicial interference with employee discussion of the existence of, or facts involved in, controversies concerning their terms or conditions of employment.  29 U.S.C. §§ 104(e), 113(c).  Here, again, citing *Epic Systems* will not do the work that the majority requires.

[79]  See *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 737 fn. 5 (1983) (the Board may enjoin suits that have an objective that is illegal under federal law).  The Board has prevented such efforts, including those that implicate arbitration, which is otherwise favored in Board doctrine.  See, e.g., *Road Sprinkler Fitters Local Union 669 (Firetrol Protection Systems)*, 365 NLRB No. 83, slip op. at 1 (2017) (ordering union to cease and desist from seeking to enforce or apply an unlawful

contract term "through grievance, arbitration, or litigation"); *Teamsters Local 776 (Rite Aid)*, 305 NLRB 832, 835–836 (1991) (union violated the Act by maintaining lawsuit under Sec. 301 of the LMRA seeking to enforce arbitral award that was incompatible with the Board's unit-clarification decision), enfd. 973 F.2d 230 (3d Cir. 1992), cert. denied 507 U.S. 959 (1993); *Textile Workers Local 1029 (International Paper Box Machine Co.)*, 187 NLRB 636, 636–637 (1970) (ordering union to cease and desist from seeking judicial enforcement of illegal fines), affd. 409 U.S. 213 (1972); *Machinists Booster Lodge No. 405 (Boeing Co.)*, 185 NLRB 380, 382–383 (1970) (same), enfd. in relevant part 459 F.2d 1143 (D.C. Cir. 1972), affd. 412 U.S. 84 (1973).

[80]  Flanagan & Gerstein, supra fn. 5, 54 U.S.F. L. REV. at 443.

[81]  See generally, Alexander J.S. Colvin, *The Metastasization of Mandatory Arbitration*, 94 CHI.-KENT L. REV. 3 (2019); Cynthia Estlund, *The Black Hole of Mandatory Arbitration*, 96 N.C. L. REV. 679 (2018); Flanagan & Gerstein, supra fn. 5.

[82]  138 S. Ct. at 1635, 1648–1649 (Ginsburg, J., dissenting).

[83]  138 S. Ct. at 1630.

[84]  See fn. 5, supra.

22          DECISIONS OF THE NATIONAL LABOR RELATIONS BOARD

POSTED BY ORDER OF THE
NATIONAL LABOR RELATIONS BOARD
An Agency of the United States Government

The National Labor Relations Board has found that we violated Federal labor law and has ordered us to post and obey this notice.

### FEDERAL LAW GIVES YOU THE RIGHT TO

    Form, join, or assist a union

    Choose representatives to bargain with us on your behalf

    Act together with other employees for your benefit and protection

    Choose not to engage in any of these protected activities.

WE WILL NOT maintain a mandatory arbitration agreement that our employees reasonably would believe bars or restricts them from exercising their right to file charges with the National Labor Relations Board.

WE WILL NOT maintain a mandatory arbitration agreement that requires settlements of employment-related disputes to remain confidential.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights listed above.

WE WILL rescind the mandatory arbitration agreement in all its forms, or revise it in all its forms to make clear that it does not restrict you from exercising your right to file charges with the National Labor Relations Board and does not require settlements of employment-related disputes to remain confidential.

WE WILL notify all applicants and current and former employees who were required to sign or otherwise became bound to the mandatory arbitration agreement in any of its forms that the mandatory arbitration agreement has been rescinded or revised and, if revised, we will provide them a copy of the revised agreement.

DISH NETWORK, LLC

The Board's decision can be found at www.nlrb.gov/case/27-CA-158916 or by using the QR code below. Alternatively, you can obtain a copy of the decision from the Executive Secretary, National Labor Relations Board, 1015 Half Street, S.E., Washington, D.C. 20570, or by calling (202) 273–1940.

