# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:23-cv-01043-JWH-KESx |
| Plaintiff, | **ORDER ON DISH DEFENDANTS' MOTION TO DISMISS UNDER 35 U.S.C. § 101 [ECF No. 50]** |
| v. | |
| DISH NETWORK CORPORATION; DISH NETWORK L.L.C.; DISH NETWORK SERVICE L.L.C.; and DISH NETWORK CALIFORNIA SERVICE CORPORATION, | |
| Defendants. | |

# I.  SUMMARY OF DECISION

The claims of U.S. Patent No. 10,257,566 (the "'566 Patent") are directed to the abstract idea of transmitting and receiving information for admission purposes and performing an admission procedure under so-called *Alice* Step One.  Under *Alice* Step Two, the '566 Patent claims do not include sufficient inventive features to transform the claims into something more than this abstract idea.  Accordingly, the Court finds the '566 Patent ineligible under 35 U.S.C. § 101.  The claims of U.S. Patent No. 8,228,910 (the "'910 Patent") are directed to the abstract idea of receiving, identifying, aggregating, and transmitting data.  Like the '566 Patent claims, the '910 Patent claims fail to include sufficient inventive features to transform the claims into something more than the abstract idea.  Accordingly, the claims of the '910 Patent are also ineligible under § 101.

# II.  BACKGROUND

In February 2023, Plaintiff Entropic Communications, LLC filed its Complaint, thereby commencing this patent case.[1]  Entropic asserts 12 patents against Defendants DISH Network Corporation, DISH Network L.L.C., DISH Network Services L.L.C., and DISH Network California Service Corporation (collectively, "DISH").[2]  Entropic alleges that the asserted patents teach solutions related to repurposing existing coaxial cables in buildings to support high-speed data networks.[3]  Entropic further alleges that these solutions lead to the formation of a new industry standard called Multimedia over Coax Alliance ("MoCA").[4]

Relevant to DISH's instant motion to dismiss,[5] Entropic contends that DISH's use of instrumentalities within a MoCA-compliant coaxial cable network infringes at least Claim 11 of the '566 Patent (entitled "Broadband Local Area Network") and at least Claim 3 of the '910 Patent (entitled "Aggregating Network Packets for Transmission to Destination Node").[6]  DISH moves to dismiss Counts VI (infringement of the '566 Patent) and X (infringement of the '910 Patent) of the Complaint on the ground that

---

[1]    *See generally* Compl. (the "Complaint") [ECF No. 1].

[2]    *Id.*

[3]    *See id.* at ¶¶ 1 & 2.

[4]    *See id.* at ¶¶ 3 & 4.

[5]    DISH's Mot. to Dismiss (the "Motion") [ECF No. 50].

[6]    Complaint ¶¶ 38, 255, & 393.

those Counts fail to state a claim for relief because the '566 and '910 Patents are directed to ineligible subject matter and are thus invalid under 35 U.S.C. § 101.[7]

## A.    The '566 Patent

The '566 Patent generally relates to a Broadband Coaxial Network ("BCN") that "enable[s] network wired devices to communicate over a typical home coaxial network."[8] As the '566 Patent explains, "[t]here is a growing need for different CPEs[9] to communicate between themselves in a network type of environment within the building. As an example, users in a home may want to share other types of digital data (such as video and/or computer information) between different devices in different rooms of a building."[10]   The '566 Patent purports to leverage existing coaxial cable setups for home networking purposes but acknowledges a problem:  existing cable networks are not configured to allow networking between CPEs.[11]

Specifically, splitter configurations in existing systems prevent direct networking between devices because signals traveling back from devices are not routed through a splitter; *i.e.*, only downlink signals pass through splitters.[12]   The '566 Patent points out that in modern systems, CPEs have the ability to send upstream signals through a splitter.[13]   However, existing splitter configurations leave CPEs with a high level of isolation from each other, which leads to communication difficulties.[14]

The '566 Patent purports to teach a BCN network that supports communication between CPEs.[15]   The network includes a Network Controller BCN modem.[16]   Other BCN modems communicate with this controller to be admitted to the network, to access

---

[7]     *See* Motion; Entropic's Opp'n to the Motion [ECF No. 57]; Entropic's Corrected Opp'n to the Motion (the "Opposition") [ECF No. 58-1]; DISH's Reply in Supp. of the Motion (the "Reply") [ECF No. 60]; Entropic's Supplemental Br. in Supp. of its Opposition ("Entropic's Supplemental Brief") [ECF No. 71]; DISH's Supplemental Br. in Supp. of the Motion ("DISH's Supplemental Brief") [ECF No. 75].

[8]     '566 Patent [ECF No. 1-11] Abstract.

[9]     CPE stands for "customer premises equipment."  *See* Motion 6:23-25; *see also* Opposition 3 n.1.

[10]    '566 Patent 3:15-20.

[11]    *Id.* at 3:21-24 & 3:30-33.

[12]    *Id.* at 3:39-45.

[13]    *Id.* at 3:58-60.

[14]    *Id.* at 3:65-4:7.

[15]    *See id.* at 4:23-29.

[16]    *Id.* at 4:29-31.

the network, and to request transmission opportunities to any node in the network.[17]  The BCN modems in the network communicate to determine the best communication pathways.[18]  Figure 3, below, shows an example of a BCN network:



FIG. 3

Claim 11 discloses a communication circuit of the above-described BCN network as follows:

11.  A communication circuit comprising:

a controller that is operable to, at least:

transmit first information on a Coaxial Cable Network (CCN), the first information comprising information indicating when admission messages may be transmitted on the CNN;

receive an admission message from a new node;

if the received admission message is correctly received and the new node is authorized to join the CNN, then perform an admission procedure with the new node by, at least in part, operating to:

---

[17]   *Id*. at 4:32-35.

[18]   *Id*. at 4:35-39.

> probe a communication link of the CNN connecting the communication circuit to the new node; and
>
> adapt transmission parameters for the communication link based, at least in part, on the probe.[19]

## B.    The '910 Patent

The '910 Patent generally relates to packet aggregation.[20]  Specifically, it teaches that a system may identify at least two packet data units ("PDUs") bound for the same destination node or having the same aggregation identifier.[21]  The system can then form an aggregate packet from the two or more PDUs with the same identifier.[22]  Aggregate packets may improve networks because duplicative overhead information associated with packets may reduce available bandwidth for user data.[23]  Figure 4, below, shows an example of an aggregated frame in which two PDUs share a preamble:



**Fig. 4**

Claim 3 discloses the above-described system as follows:

> 3.  A system for transmitting data over a network comprising:
>
> a transceiver adapted to receive a plurality of packet data units; and

---

[19]    *Id.*, Claim 11.

[20]    '910 Patent [ECF No. 1-19] Abstract.

[21]    *Id.* at 1:42-45.

[22]    *Id.* at 1:44-47.

[23]    *Id.* at 1:32-38.

a packet aggregation module for identifying at least two of the plurality of packet data units that have a same destination node and for forming an aggregate packet from the at least two of the plurality of packet data units;

wherein the transceiver is adapted to transmit the aggregate packet to at least one destination node; and

wherein the packet aggregation module identifies the same destination node by identifying a same aggregation identifier.[24]

## III.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  Although a complaint attacked through a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions.  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."  *Twombly*, 550 U.S. at 555 (citations and footnote omitted).  Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct."  *Id*. at 679.

Section 101 of Title 35 defines patent eligible subject matter with reference to four independent categories of eligible inventions:  processes, machines, manufactures, and compositions of matter.  *See Bilski v. Kappos*, 561 U.S. 593, 601 (2010); 35 U.S.C. § 101.

---

[24]     *Id*., Claim 3.

The Supreme Court recognizes three exceptions to the application of § 101: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980). Claims directed to those exceptions are not eligible due to pre-emption concerns. *See Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014); *see also Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948).

*Alice* is the most recent statement by the Supreme Court on the application of these principles. That decision expanded the two-step approach for resolving § 101 issues adopted in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012). In the first step, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 77). If this standard is satisfied, then in the second step the court must ask, "[w]hat else is there in the claims before us?" *Id.* This analysis requires a consideration of "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (citing *Mayo*, 566 U.S. at 78–79). In performing this second step of the analysis, a court must "search for an 'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217-18 (citing *Mayo*, 566 U.S. at 72–73).

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016).

## IV.  ANALYSIS

### A.  The '566 Patent

DISH contends that the claims of the '566 Patent are directed to the abstract idea of "authentication and admission of authorized devices into a network."[25] DISH further maintains that the claims refer only to generic computer components and that they do not teach any inventive concepts.[26] Entropic responds that DISH oversimplifies the claims.[27]

---

[25]   Motion 14:2-4.

[26]   *Id.* at 16:18-22.

[27]   Opposition 10:4-6.

## 1.      Representativeness

As a threshold matter, the Court finds Claim 11 representative and performs the § 101 analysis on Claim 11.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("The district court, however, correctly determined that addressing each claim of the asserted patents was unnecessary" where a particular claim was "representative" because "all the claims are substantially similar and linked to the same abstract idea.").  Here, the claims of the '566 Patent all relate to a communication circuit in a coaxial cable network ("CCN").[28]  The communication circuit includes generic components such as a transceiver and a controller.[29]  These generic components do not affect the § 101 analysis.  *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (where such components lack "any meaningful limitations," they are "merely a conduit for the abstract idea").

The communication circuit of the '566 Patent is configured to perform several operations including:  (1) transmitting admission indication information; (2) receiving an admission message; and (3) performing an admission procedure.[30]  The circuit performs an admission procedure only if a node is authorized to join the CNN.[31]  The admission procedure may include "prob[ing] a communication link" and "adapt[ing] transmission parameters" based upon the probe.[32]  The dependent claims provide additional detail regarding the operation of the communication circuit.[33]

In view of the common focus of the claims, applying the *Alice* framework to Claim 11 of the '566 Patent provides a representative analysis applicable to all asserted claims.[34]  Entropic does not raise any meaningful distinctions to the contrary.  *See Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.").

---

[28]      *See* '566 Patent, Claims 1-20.

[29]      *See id.*, Claims 1, 11, & 19.

[30]      See id.

[31]      See id.

[32]      *See id.*, Claims 1 & 11.

[33]      *See id.*, Claims 2-10, 12-18, & 20.

[34]      Entropic asserts at least Claim 11 against DISH.  *See* Complaint ¶ 255.

### 2.     Claim Construction

In its supplemental brief, Entropic proposes the following constructions:[35]

| "perform an admission procedure" | "establish[] a logical communication link between the controller node and the new node over existing CCN physical connections" |
|---|---|
| "probe a communication link" | "evaluate[] characteristics of the signal pathway form controller node to the newly admitted node, using one or more probes" |
| "adapt transmission parameters" | "select[] transmission parameters for the signal pathway from controller node to the newly admitted node, based in part on the evaluation of the prior probing step" |

The Court adopts Entropic's proposed constructions for the purpose of resolving the § 101 patent eligibility issues.  *See Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1343 (Fed. Cir. 2019).

### 3.     *Alice* Step One

#### a.     What Does Claim 11 Teach?

"The first stage of the *Alice* inquiry looks at the focus of the claims [and] their character as a whole."  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (quotations omitted).  The Court must determine whether Claim 11 is "directed to an improvement" in the relevant technical field or "directed to an abstract idea."  *In re TLI Commc'ns*, 823 F.3d at 612 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)).  Claimed processes that can be "performed in the human mind, or by a human using a pen and paper" are directed to abstract ideas.  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

At a high level, Claim 11 is directed to transmitting and receiving information for the purpose of admitting a node to a CCN.  The Court agrees with DISH that patents that are directed to transmitting and receiving information generally fail *Alice* Step One.  *See Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016) (finding claims directed to "the conveyance and manipulation of information" invalid);

---

[35]     Entropic's Supplemental Brief 7:17-8:7.

*see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019).  The "transmit" and "receive" limitations of Claim 11 are no different, and the coaxial cable network context does not change the analysis.  *See Affinity Labs*, 838 F.3d at 1258-59.

Claim 11 also teaches "perform[ing] an admission procedure."[36]  Courts have concluded that similar limitations involving admission or authentication are abstract.  *See Prism Technologies LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1017 (Fed. Cir. 2017) (finding that a claim was directed to the abstract idea of "providing restricted access to resources" where the claim disclosed "if authorized, permitting access to the requested resource"); *see also Strikeforce Technologies, Inc. v. SecureAuth Corp.*, 2017 WL 8808122, *at 6 (C.D. Cal. Dec. 1, 2017).  Entropic argues that these decisions are inapposite because the claims at issue did not include a limitation analogous to the "adaptive transmission parameters" element of Claim 11.[37]  This element does not alter the character of Claim 11; rather, whether this element includes an inventive feature is the subject of *Alice* Step Two, discussed below.[38]  *See Alice*, 573 U.S. at 217-18.

### b.   What Problem Does Claim 11 Purport to Solve and *How* Does It Purport to Solve the Problem?

Entropic argues that Claim 11 is not abstract because it is directed to "an improved method of node admission to a coaxial cable network using adaptive transmission parameters based upon the results of a communication link probe to optimize communications on such a network."[39]  In support of its position, Entropic cites a case in which the District of Delaware found claims "directed to ***particular hardware components*** that ***have particular features*** and are ***arranged in a particular manner***" to be patent eligible.  *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 485 (D. Del. 2022) (emphasis added).  Entropic argues that here, like in *IOENGINE*, the '566 Patent's use of "adaptive transmission parameters" represents a technological improvement.[40]

Unlike in *IOENGINE*, the '566 Patent's language "adaptive transmission parameters" does not clearly impart specific components, specific operations, or a specific arrangement of components or operations.  *See id.* at 483-84.  The *IOENGINE*

---

[36]   '910 Patent, Claim 11.

[37]   Opposition 11:10-13 & 12:25-13:2.

[38]   In support of its position, Entropic cites two decisions in which the Federal Circuit found the claims patent eligible under *Alice* Step Two.  *See Cosmokey Sols. GmbH & Co. KG v. Duo Security LLC*, 15 F.4th 1091, 1097 (Fed. Cir. 2021); *Cellspin*, 927 F.3d 1306, 1316 (Fed. Cir. 2019).

[39]   Opposition 11:10-13.

[40]   *Id.* at 13:14-20.

court acknowledged that § 101 "prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" *Id.* at 484 (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016)); *see also Maxell, Ltd. v. Fandango Media, LLC*, 2018 WL 5085141, at *6 (C.D. Cal. Mar. 21, 2018) (finding claims disclosing "***specific requirements***" for performing the claimed function non-abstract) (emphasis added); *compare Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (finding claims abstract where "[t]hey do not claim ***a particular way of programming or designing the software*** to create menus") (emphasis added).

Additionally, the *IOENGINE* court noted that the claims recited "tangible components." *IOENGINE*, 607 F. Supp. 3d at 484. The scope of "adaptive transmission parameters" is not so limited. The Court acknowledges that claims directed to improvements not defined by reference to physical components may still be patent eligible under § 101. *See Enfish*, 822 F.3d at 1339. Still, as discussed above, the "adaptive transmission parameters" language in Claim 11 does not impart sufficient detail—in terms of either physical components or software structures—to alter the character of the claims. Claim 11 does not explain "what the claimed parameters are or how they should be [adapted]." *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) (internal quotations omitted).

For the foregoing reasons, Claim 11 is directed to the abstract idea of transmitting and receiving information for admission purposes and performing an admission procedure.

### 4.   *Alice* Step Two

The *Alice* Step Two inquiry considers whether the claim includes "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention." *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 1113 (2022). "Where a claim is directed to an abstract idea, the claim must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (internal citations omitted). In evaluating *Alice* Step Two, the Court considers whether the claim limitations, either individually or as an ordered combination, teach implementing the abstract idea using something more than well understood, routine, or conventional techniques. *See Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022).

DISH argues that the claims refer only to generic computer components (*e.g.*, communication circuit, transceiver, controller, and new node) and that they do not

include any inventive concepts.[41]  DISH contends that the "probe a communication link" and "adapt transmission parameters" elements cannot supply inventive concepts because these elements are analogous to elements found invalid in *NetSoc, LLC v. Match Group, LLC*, 838 F. App'x 544, 549 (Fed. Cir. 2020).[42]  Entropic seeks to avoid an invalidity finding by arguing that there is an issue of fact regarding whether "probe a communication link" and "adapt transmission parameters" recite unconventional elements.[43]

Entropic's proposed constructions do not include any inventive concepts.  Again, the constructions for "probe a communication link" and "adapt transmission parameters" disclose only generic components.  The construction for "perform an admission procedure" includes the features "a logical communication link" and "CCN physical connections."  The CCN physical connections are existing; thus, alone, they cannot supply an inventive concept.  Entropic does not plead or argue that the logical communication link alone is in any way unconventional.

Moreover, even with the benefit of Entropic's proposed construction, Claim 11 does not explain how to establish the logical communication link over the existing CCN physical connection.  While the *idea* of using the existing CCN physical connection may be novel, "[w]ithout an explanation of the mechanism for how the result is accomplished, this purported feature of the invention cannot supply an inventive concept."  *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331–32 (Fed. Cir. 2017) (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F. 3d 1343, 1348 (Fed. Cir. 2015) (internal quotations omitted)); *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (the patent ineligible concept "cannot supply the inventive concept").

For the foregoing reasons, the Court finds that the '566 Patent is directed to ineligible subject matter under 35 U.S.C. § 101.

## B.    The '910 Patent

DISH contends that the '910 Patent claims are directed to the abstract idea of receiving, aggregating, and transmitting data.[44]  DISH further attacks the validity of the claims as directed to an idea that the Federal Circuit has already found invalid and as

---

[41]    Motion 17:4-17.

[42]    *Id.* at 18:4-22.

[43]    Opposition 13:22-27.

[44]    Motion 19:19-20.

claiming results without explaining how to achieve those results.[45]  Entropic responds
that DISH oversimplifies the claims of the '910 Patent.[46]

### 1.    Representativeness

The Court finds Claim 3 of the '910 Patent representative, and it performs the
§ 101 analysis on that claim.  *See Content Extraction*, 776 F.3d at 1348.  Here, the claims of
the '910 Patent all relate to packet aggregation.[47]  All three claims of the '910 Patent share
common elements, including:  (1) receiving PDUs; (2) identifying PDUs sharing a
destination node or aggregation identifier; (3) forming an aggregate packet for the PDUs;
(4) transmitting the aggregate packet to a destination node; and (5) identifying a
destination node via an aggregation identifier.[48]  Claims 1 and 2 include additional
limitations directed to receiving an aggregate packet and performing checksum
procedures, to confirm transmission accuracy.[49]  In view of the common focus of the
claims, applying the *Alice* framework to Claim 3 provides a representative analysis
applicable to all asserted claims.[50]  Entropic does not raise any meaningful distinctions to
the contrary.[51]  *See Berkheimer*, 881 F.3d at 1365.

### 2.    Claim Construction

Entropic proposes the following constructions:[52]

---

[45]    *Id.* at 19:23-20:3.

[46]    Opposition 16:19-24.

[47]    *See* '910 Patent, Claims 1-3.

[48]    *See id.*, Claims 1 & 11, 6:5-9.

[49]    *Id.*, Claims 1 & 2.  The presence of the checksum limitations in Claims 1 and 2 does not
change the analysis.  *See Intell. Ventures I LLC v. Erie Indem. Co.*, 711 F. App'x 1012, 1017 n.2
(Fed. Cir. 2017) ("For the dependent claims' identification of files based on checksums, we have
stated that '[t]he dependent claims' narrowing [of long familiar practices] to particular types of
. . . relationships . . . does not change the [*Alice* step one] analysis.'" (quoting *buySAFE, Inc. v.
Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (brackets and ellipses in *Intell. Ventures I*).

[50]    Entropic asserts at least Claim 3 against DISH.  *See* Complaint ¶ 393.

[51]    Entropic included a chart reciting the limitations of Claims 1, 2, and 3 in its Opposition
and then concluded that the claims are not representative.  Opposition 21:24-24:12.  Entropic did
not offer any specific arguments on the issue.

[52]    Entropic's Supplemental Brief 13:7-21.

| "a packet aggregation module" | "a module that forms aggregate packets from individual packet data units based upon those individual packet data units having the [same] final destination, indicated by having the same aggregation identifier" |
|---|---|
| "forming an aggregate packet" | "combining a plurality of packet data units having the same aggregation identifier identifying the same final destination node, wherein the aggregated packet comprises a single header, and an aggregating payload that is formed from the plurality of packet data units" |

Once again, the Court adopts Entropic's proposed constructions for the purpose of resolving the § 101 patent eligibility issues. *See Nat. Alternatives Int'l*, 918 F.3d at 1343.

### 3.   *Alice* Step One

#### a.   What Does Claim 3 Teach?

As discussed above, *Alice* Step One considers the character of the claims as a whole. *See* Part IV.A.3.a, *supra*. Here, Claim 3 of the '910 Patent is directed to packet aggregation at a high level, and it specifically teaches receiving, identifying, aggregating, and transmitting data.[53] The Federal Circuit has previously determined that claims directed to "converting," "routing," "controlling," "monitoring," and "accumulating records" are invalid. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). DISH argues that the "accumulating" function at issue in *Two-Way Media* is analogous to the "aggregating" function at issue here.[54] Entropic's proposed construction does not supply any different definition for "aggregating." Accordingly, the Court concludes that the character of Claim 3 is directed to the abstract idea of "receiving, identifying, aggregating, and transmitting data."

---

[53]   '910 Patent, Claim 3.

[54]   Motion 20:15-18.

### b.   What Problem Does Claim 3 Purport to Solve and *How* Does It Purport to Solve the Problem?

Entropic argues that Claim 3 solves a specific problem in the networking field.[55] Again, however, Entropic does not tie the language of Claim 3 to the purported networking improvement. *See Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("A statement that a feature improves the functioning and operations of the computer is, by itself, conclusory.") (internal quotations omitted).

The authorities that Entropic cites concern claims directed to improvements in computer technology, but they also explicitly find that the claims at issue, viewed in light of the specification, explain how to achieve the improvement. *See Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2561 (2023) (finding that a claim directed to "***specific, hardware-based RFID serial number data structure*** designed to enable technological improvements" was non-abstract) (emphasis added); *Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) (finding claims purporting to solve computer network challenge to be valid where "***[t]he claims detail how [the solution] is achieved in several steps***") (emphasis added); *Mentone Sols. LLC v. Digi Int'l Inc.*, 2021 WL 5291802, at *5 (Fed. Cir. Nov. 15, 2021) (finding that a claim purporting to solve computer network challenge was valid where "the specification informs our understanding of the claimed invention, the technological solution, and ***how the elements of the claim work together to provide that solution***") (emphasis added).

In those three cases, the patents at issue explained how to achieve the solution to the problem with reference to several operations or specific components. Here, Claim 3 of the '910 Patent teaches the results that the claimed system is configured to achieve but fails to explain, with reference to specific components or operations, how the system achieves those results. For instance, it discloses that the packet aggregation module is for identifying at least two PDUs sharing a destination and forming an aggregate packet, but it does not explain how the module performs the identification or forms the packet.[56] Claims directed to a function, instead of "a particular way of performing that function," are abstract. *Affinity Labs*, 838 F.3d at 1258–59; *see also RecogniCorp., LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("The inquiry often is whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result.") (citing *McRO*, 837 F.3d at 1314).

---

[55]   *See* Opposition 19:18-27.

[56]   '910 Patent, Claim 3.

Entropic's proposed constructions do not offer any additional detail regarding how the aggregation module performs an identification or forms a packet. The proposed constructions merely reiterate the requirement from the claim that the packet headers indicate a shared destination. As discussed above, absent an explanation of how the module performs the identification or forms the packet, the claims are not patent eligible. *See Affinity Labs*, 838 F.3d at 1258–59. The constructions do not supply the missing "how." In sum, Claim 3 is abstract under *Alice* Step One.

### 4.    *Alice* Step Two

As explained above, *see* Part IV.A.4, *supra*, the *Alice* Step Two inquiry considers whether the claim includes "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible invention." *Yu*, 1 F.4th at 1045. The Court must consider whether the claim limitations, either individually or as an ordered combination, teach implementing the abstract idea using something more than well-understood, routine, or conventional techniques. *See Coop. Ent., Inc.*, 50 F.4th at 130.

DISH argues that the claims refer only to generic computer components (*e.g.*, transceiver, module, nodes) and that they do not include any inventive concepts.[57] DISH contends the claimed transceiver is a conventional transceiver used for conventional purposes and that the claimed module is both generic and conventional.[58] Entropic seeks to avoid an invalidity finding by arguing that there is a dispute of fact regarding whether "packet aggregation module" and "aggregate packet" recite unconventional elements.[59]

Entropic's proposed constructions for the '910 Patent do not include any inventive concepts. Again, the constructions merely reiterate other claim limitations. As discussed above, these claim limitations are directed to generic components. Moreover, even with the benefit of Entropic's proposed constructions, the claims do not explain how the module performs the identification or forms the packet. "Without an explanation of the mechanism for how the result is accomplished, this purported feature of the invention cannot supply an inventive concept." *Intell. Ventures I*, 850 F.3d at 1331–32 (citing *Internet Patents Corp.*, 790 F.3d at 1348 (internal quotations omitted)); *see also BSG Tech LLC*, 899 F.3d at 1290 (the ineligible concept "cannot supply the inventive concept").

For the foregoing reasons, the Court likewise finds that the '910 Patent is directed to ineligible subject matter under 35 U.S.C. § 101.

---

[57]    Motion 22:9-27.

[58]    *Id.*

[59]    Opposition 19:9-12.

**C.      Leave to Amend**

Entropic does not present any basis on which the Complaint could be amended to address the issues raised in the Motion and discussed in this Order.  Accordingly, the Motion is **GRANTED without leave to amend**.

## V.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      DISH's instant Motion to dismiss is **GRANTED**.

2.      Counts VI (infringement of the '566 Patent) and X (infringement of the '910 Patent) of the Complaint are **DISMISSED without leave to amend**.

**IT IS SO ORDERED.**

Dated:    September 6, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE