# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,<br><br>Defendants. | Case No. 2:23-cv-01048-JWH-KESx;<br>Case No. 2:23-cv-01050-JWH-KESx<br><br>**TENTATIVE ORDER RE MOTION TO DISMISS UNDER RULES 12(b)(1) and 12(b)(6)** |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C.,<br><br>Defendants. | |

## I.  SUMMARY OF DECISION

The Court concludes that the covenant not to sue in the agreement between non-party MaxLinear, Inc. and Defendant Comcast Cable Communications Management, LLC runs with the patents.  Thus, Plaintiff Entropic Communications, LLC ("Entropic") took title to the patents that it asserts in this action subject to the covenant not to sue.  However, the covenant not to sue includes an exemption for willful infringement.  In view of that exemption, the Court retains subject matter jurisdiction over any claim for willful infringement.  At present, Entropic fails to plead willful infringement adequately for any asserted patent.  Accordingly, the Court **GRANTS** Comcast's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure **with leave to amend**.

## II.  BACKGROUND

MaxLinear entered into a Vendor Service Agreement ("VSA") with Comcast Cable Communications Management, LLC on August 1, 2020.[1]  The VSA included a covenant not to sue for patent infringement:

> During the Term, Vendor, on behalf of itself and all Affiliates, (each, a "Vendor Covenanting Party"), to the extent Comcast, Comcast's Affiliates, (each, a "Comcast Protected Party") have not willfully infringed a Vendor Covenanting Party's patent, copyright, or trademark, or knowingly misappropriated a Vendor Covenanting Party's trade secret, covenants not to sue Comcast Protected Party for patent, copyright, or trademark infringement, or for misappropriation of trade secrets, as the case may be, with respect to Comcast Protected Party's purchase, use, or deployment of any product or service. Nothing herein shall limit or restrict Vendor Covenanting Party's ability or right to assert any claim of infringement, to seek damages, or to enjoin Comcast's or Comcast's Affiliates' vendors for infringement of Vendor Covenanting Party's Intellectual Property; provided, however, that for a reasonable period of time, up to six (6) months, after Vendor Covenanting Party secures the first of either a final, non-

---

[1]    VSA [ECF No. 82-2].

appealable judgment or a final non-appealable injunction (including without limitation an administrative remedy, such as an exclusion order and/or cease and desist order) against a vendor of Comcast Protected Party, Vendor Covenanting Party shall, to the full extent of their authority, permit Comcast Protected Party the opportunity to transition their ongoing supply of the product(s) and/or service(s) that are subject to such judgment or injunction to non-infringing products and services.[2]

On or before the effective date of the agreement, either MaxLinear or its wholly owned subsidiary, MaxLinear Communications LLC owned U.S. Patent Nos. 7,295,518 (the "'518 Patent"); 7,594,249 (the "'249 Patent"); 7,889,759 (the "'759 Patent"); 8,085,802 (the "'802 Patent"); 9,838,213 (the "'213 Patent"); 10,432,422 (the "'422 Patent"); 8,631,450 (the "'450 Patent"); 8,621,539 (the "'539 Patent"); 8,320,566 (the "'0,566 Patent"); 10,257,566 (the "'7,566 Patent"); 8,228,910 (the "'910 Patent"); 8,363,681 (the "'681 Patent"); 8,223,775 (the "'775 Patent"); 8,284,690 (the "'690 Patent"); 8,792,008 (the "'008 Patent"); 9,210,362 (the "'362 Patent"); 9,825,826 (the "'826 Patent"); 10,135,682 (the "'682 Patent"); 11,381,866 (the "'866 Patent"); and 11,399,206 (the "'206 Patent")[3] (collectively, the "Asserted Patents").[4] MaxLinear assigned the Asserted Patents to Entropic Communications, LLC ("Entropic") on March 31, 2021.[5]

In February 2023, Entropic filed its Complaints, thereby commencing these actions.[6] Entropic asserts the Asserted Patents against Defendants Comcast Corporation; Comcast Cable Communications, LLC; and Comcast Cable Communications Management, LLC (collectively, "Comcast").[7] Comcast moves

---

[2]   VSA § 7.3.

[3]   Entropic asserted the '518, '249, '759, '802, '213, '422, '450, '539, '0566, '7566, '910, and '691 Patents in Case No. 23-cv-01048 (the "'1048 Case"). Entropic asserted the '775, '690, '008, '362, '826, '682, '866, and '206 Patents in Case No. 23-cv-01050 (the "'1050 Case").

[4]   *See* Assignment Documents [ECF Nos. 83-3 to 83-9].

[5]   *See* Assignment Documents [ECF Nos. 83-11 & 83-12].

[6]   *See generally* Compls. (the "Complaints") [ECF No. 1 in both the '1048 Case and the '1050 Case].

[7]   *Id.*; *see also* First Am. Compls. (the "First Amended Complaints") [ECF No. 67 in the '1048 Case and ECF No. 63 in the '1050 Case].

to dismiss all allegations of infringement in the Complaints on the grounds that this Court lacks subject matter jurisdiction under Rule 12(b)(1) in light of the covenant not to sue in the VSA.[8]  In the alternative, Comcast moves to dismiss Entropic's allegations of willful infringement under Rule 12(b)(6).[9]

### III.  LEGAL STANDARD

#### A.   Rule 12(b)(1)—Lack of Subject Matter Jurisdiction

As the party seeking to invoke the federal court's jurisdiction, the plaintiff has the burden of alleging specific facts sufficient to prove Article III standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  When the plaintiff lacks standing, the Federal Rules of Civil Procedure allow the defendant to move to dismiss based upon lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The plaintiff bears the burden of demonstrating standing "for each claim" and "for each form of relief" that it seeks.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (internal citations and quotations omitted).  The court should dismiss an action when the face of the complaint does not demonstrate a basis for standing.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); Fed. R. Civ. P. 8(a) & 12(b)(1).

"Under Rule 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  A *facial* attack accepts the plaintiff's allegations as true but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  The court resolves a facial attack "as it would a motion to dismiss under Rule 12(b)(6)": in accepting the plaintiff's allegations as true and drawing all reasonable inferences

---

[8]   Comcast's Mot. to Dismiss (the "Motion") [ECF No. 83]; Entropic's Opp'n to the Motion (the "Opposition") [ECF No. 94]; Comcast's Reply in Supp. of the Motion (the "Reply") [ECF No. 109].  Portions of the parties' briefs were filed under seal.  Within seven days of the issuance of this Order, the parties are **DIRECTED** to file a joint statement (1) advising the Court whether any matter stated in this Order is information that any of them contends should remain under seal; (2) a declaration from a percipient witness to support that contention; and (3) a proposed redacted version.  The Court will then decide whether to redact any portions of this Order in the version filed on the public docket, with a corresponding, non-redacted version filed under seal.

[9]   *See* Motion.

in its favor, the court determines "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.*

By contrast, a ***factual*** attack contests "the truth of the plaintiff's factual allegations," typically by introducing evidence outside the pleadings. *Id.* "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Id.* (internal citation omitted). The plaintiff bears the burden of proving—by a preponderance of the evidence—that it meets each of the requirements for subject-matter jurisdiction, with one caveat: if the existence of jurisdiction turns on "disputed factual issues," then the court itself may resolve those factual disputes. *Id.*

### B. Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). Although a complaint attacked through a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted). Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

## IV. ANALYSIS

### A. The Covenant Runs with the Patents

Generally, legal encumbrances involving the right to use patented technology "run with the patent." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008); *see also Innovus Prime, LLC v. Panasonic Corp.*, 2013 WL 3354390, at *8 (N.D. Cal. July 2, 2013) (finding future assignees bound by covenant not to sue). The Court notes that the VSA is not an exclusive license, that fact does not end the inquiry. The VSA includes an encumbrance authorizing Comcast to avoid liability for practicing MaxLinear's patents so long as Comcast does not ***willfully*** infringe the patents.[10] Additionally, the VSA includes a provision that appears to extend its protection to future assigns.[11] Because Entropic acquired the Asserted Patents, this provision would reasonably operate to extend the provisions relevant to the Asserted Patents to Entropic.

This finding comports with general principles of commercial law. Typically, as assignee cannot assign rights that it does not possess. *See Hendrie v. Sayles*, 98 U.S. 546, 550–51 (1878) ("[T]he maxim *Nemo dat qui non habet* applies to the assignee of the patentee."). Here, MaxLinear forfeited its right to pursue Comcast for patent infringement except in the event of willful infringement. Thus, in transferring the patents to Entropic, MaxLinear lacked the ability to transfer the right to pursue a claim of patent infringement, except in the event of willful infringement.

Finally, Entropic argues that the VSA includes only patents originally belonging to MaxLinear, but not its wholly owned subsidiary, MaxLinear, LLC.[12] The Court is not convinced. The covenant clearly includes MaxLinear, LLC as an affiliate. *See Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 75 (S.D.N.Y. 2012) (defining "affiliate" as "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling corporation"); *see also Doosan Infracore Co., Ltd v. Ingersoll-Rand Co. Ltd.*, 2011 WL 11821022, at *4 (N.Y. Sup. Ct. Mar. 15, 2011) ("A contract entered by a parent

---

[10]   *See* VSA § 7.3.
[11]   *Id.* at § 14.
[12]   Opposition 16:13-15.

corporation is binding on the subsidiaries when, as here, there is a provision in the contract that explicitly binds them.").

For the foregoing reasons, the Court concludes the covenant not to sue includes all of the Asserted Patents and that it runs with the Asserted Patents.

## B. The Court Retains Subject Matter Jurisdiction

"Whether a covenant not to sue divests the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). The covenant does not divest the court of jurisdiction for activities that it does not cover. *See id.* at 1298 (finding that the covenant did not divest the court of jurisdiction with respect to a controversy over future sales because the covenant did not cover future sales). In other words, to the extent that a party retains the right to sue in some instances, a covenant does not divest the court of jurisdiction over causes of action related to those reserved instances. *See King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282–83 (Fed. Cir. 2010).

Here, MaxLinear covenanted not to sue Comcast for patent infringement only to the extent that Comcast has not willfully infringed any MaxLinear patent.[13] Thus, MaxLinear retained its right to pursue an action for willful infringement.[14] As discussed above, Entropic took title to the Asserted Patents subject to the relevant provisions of the VSA. Thus, Entropic likewise retains the right to sue Comcast for willful patent infringement. Accordingly, the VSA does not divest the Court of subject matter jurisdiction for Entropic's willful infringement claims against Comcast.

---

[13] *See* VSA § 7.3.

[14] MaxLinear also retained a right to pursue infringement claims against other vendors that Comcast may use, the only caveat being that if MaxLinear were to be awarded a judgment, then Comcast would be allowed a six-months' grace period to transition products and services supplied by infringing vendors to non-infringing products and services. *Id.* However, this portion concerns vendors activity, not Comcast's activity. Thus, this section does not retain a right to sue Comcast for direct, non-willful patent infringement.

## C. The Termination Issue Does Not Affect This Order

MaxLinear attempted to terminate the VSA on May 18, 2023.[15] An action regarding whether the termination was effective is currently pending before the United States District Court for the Southern District of New York.[16] This Court defers to its sister court on that issue. Still, the outcome of that matter has little, if any, effect on the present motion.

If the termination were not effective, then the VSA would continue to govern and the termination issue would not alter any rulings herein. If the termination were effective, then the VSA would cease to apply beginning on May 18, 2023. Thus, with respect to the period from August 1, 2020, through May 18, 2023, the termination issue would not alter any rulings herein. In the event that the S.D.N.Y. Court finds the termination effective, Entropic may seek leave to file a supplemental pleading.

## D. The Scope of the Willful Infringement Exemption

### 1. Timing of Willful Infringement

Section 7.3 of the VSA states, "[d]uring the Term, [MaxLinear] . . . , to the extent Comcast . . . ha[s] not willfully infringed a [MaxLinear] patent, . . . covenants not to sue Comcast [] for patent . . . infringement . . . ." Comcast argues that the use of passive voice means that the willful infringement exemption applies only to willful infringement occurring before the effective date of the agreement.[17] The Court disagrees with that interpretation. Rather, the provision appears to condition the covenant not to sue on an absence of willful infringement during the term of the agreement. In other words, MaxLinear agreed not to sue Comcast during the term of the agreement so long as Comcast did not willfully infringe.

Any interpretation otherwise would exculpate Comcast from any and all willful infringement during the term of the agreement, in which case the willful infringement exemption would be meaningless. MaxLinear retains the right to pursue Comcast for willful infringement outside of the term of the agreement

---

[15] Opposition 17:13-14.
[16] *See Comcast Cable Communications Management, LLC et al. v. MaxLinear, Inc.*, Case No. 1:23-cv-04436-AKH (S.D.N.Y. May 26, 2023).
[17] Motion 25:15-20.

regardless. Further, to the extent that Comcast was already willfully infringing any MaxLinear patents at the time of the agreement, MaxLinear would almost certainly have been aware of such activity, as in all likelihood MaxLinear would have needed to provide notice of the patent and infringement to trigger Comcast's knowledge requirement, making the infringement willful.

### 2. Per Patent Issue

Comcast also argues that the exemption provision applies on a "per-patent" basis, given the language "to the extent" and "as the case may be."[18] Entropic argues that "to the extent" means only that the covenant not to sue applies only if Comcast does not willfully infringe and that "as the case may be" distinguishes among the types of intellectual property; *i.e.*, patents, trademarks, copyrights, and trade secrets.[19] The Court agrees with Entropic regarding the language "to the extent" and "as the case may be."

Still, that interpretation does not mean that the VSA intends that any act of willful infringement triggers the exemption with respect to all Asserted Patents. The agreement states that "to the extent Comcast . . . ha[s] not willfully infringed a [MaxLinear] patent . . . ." Thus, the covenant is best understood as applying on a per patent basis. That reading makes sense because willful infringement requires knowledge of the patent and knowledge of infringement. Under Entropic's interpretation, MaxLinear could invoke the exemption for all patents so long as Comcast had knowledge of merely one patent and its infringement of that patent. Under the Court's interpretation, MaxLinear would likely need to provide notice of each patent at issue before the exemption would apply, which would give Comcast an opportunity to cease its allegedly infringing activity. This approach seems more consistent with the parties' overall agreement.

### E. Entropic Fails to Plead Willful Infringement Adequately

To plead a claim for willful infringement, a plaintiff must allege that the accused infringer "actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017). First, "a party cannot be found to have 'willfully' infringed a patent of which the

---

[18] *Id.* at 26:15-26 & 27:16-21.

[19] Opposition 14:3-21.

party had no knowledge." *Gustafson, Inc. v. Intersystems Indus. Prod., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990). Second, "allegations of knowledge alone are not sufficient to state a claim for willful infringement." *Document Sec. Sys., Inc v. Nichia Corp.*, 2020 WL 3881623, at *3 (C.D. Cal. Mar. 4, 2020). Rather, to plead willful infringement adequately, a plaintiff must also allege facts showing an "egregious case[] of misconduct beyond typical infringement." *Id.* In short, a plaintiff must allege facts to support the conclusion that a defendant knew of the asserted patents *and* knew or should have known of its infringement of them.

### 1. Pre-Lawsuit Correspondence

When a patentee relies on a letter to support a willful infringement claim, "[t]he letter must communicate a charge of infringement of specific patents by a specific product or group of products." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (citing *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994)). Here, Entropic pleads willful infringement based upon a licensing offer it sent Entropic listing 250 patents and stating that some were essential to the MoCA standard.[20] To the extent that the letter lists any or all of the Asserted Patents, the letter may plausibly demonstrate knowledge of the patents. However, because the letter fails to identify any accused products in conjunction with any specific patent, the letter does not plausibly demonstrate knowledge of infringement.

### 2. Other Litigation

Litigation against other defendants provides a sufficient basis for willful infringement only in narrow circumstances. For instance, in *Core Optical Techs., LLC v. Juniper Networks Inc.*, 562 F. Supp. 3d 376, 381 (N.D. Cal. 2021), *leave to appeal denied*, 2022 WL 1011675 (Fed. Cir. Apr. 5, 2022), the plaintiff identified three prior lawsuits concerning the same patent in a tight-knit industry. *See id.* at 381. The plaintiff also alleged that the defendant maintained a close connection with a key industry player known to have disclosed the patent to others. *See id.* Taken together, the court concluded that those facts sufficiently suggested pre-lawsuit knowledge. Absent specific factual pleadings demonstrating both knowledge of the patents and knowledge of infringement, litigation against other

---

[20] First Amended Complaints ¶¶ 31 & 109; *see also* Licensing Letter [ECF No. 82-4].

defendants cannot provide the basis for a willful infringement claim. *See Longitude Licensing v. Apple Inc.*, 2015 WL 1143071, at *3 (N.D. Cal. Mar. 13, 2015).

 Here, Entropic pleads that it filed an action against Charter Communications, Inc. (the "Charter Action"), DISH Network Corporation *et al.* (the "DISH Action"), and DirecTV, LLC *et al.* (the "DirecTV Action") in the Eastern District of Texas, asserting the '775, '690, '008,[21] '362, '826, and '682 Patents.[22] Entropic also pleads that it filed an action against ViXS Systems, Inc. (the "ViXS Action") in the Southern District of California, asserting the '759 and '518 Patents.[23] Entropic then pleads, on information and belief, that Comcast analyzed those patents and its own products in light of those patents, based upon the Charter Action and the ViXS Action.[24] Entropic further pleads that Comcast discussed the DISH and DirecTV Actions with RPX Corporation.[25]

 While these pleadings may plausibly demonstrate knowledge of the above-identified patents, they do not plausibly demonstrate knowledge of infringement. The Charter, DISH, DirecTV, and ViXS Actions concern different defendants and different accused products and services. Unlike the actions discussed in *Core Optical*, these Actions each involved many asserted patents, both differing from and overlapping with the Asserted Patents at issue in the present Motion. Further, while Entropic alleges that Comcast communicated with RPX Corporation on at least one occasion, Entropic does not allege that Comcast maintained any close connection with a key industry player. Finally, while Entropic includes pleadings directed to general industry awareness of the MoCA standard, Entropic does not allege a tight-knit industry, as in *Core Optical*.

 Finally, Entropic argues in its opposition that the accused products and services in these actions were "substantially similar or identical" to the accused Comcast products at issue here.[26] Entropic does not actually plead, however, that the accused products and services are similar. Moreover, a conclusory allegation of

---

[21]  Of the Asserted Patents, the DISH and DirecTV Actions involve only the '008 Patent.

[22]  First Amended Complaints ¶¶ 69, 76, & 77.

[23]  *Id.* at ¶ 93.

[24]  *Id.* at ¶¶ 70, 71, & 94-98.

[25]  *Id.* at ¶¶ 78 & 79.

[26]  Opposition 20:17-21.

-11-

similarity would likely not satisfy the willful infringement pleading standard. Rather, Entropic would need to identify products and services accused in the other actions and detail their similarities with the accused products and services.

### 3. General Awareness/Investment Activity

Entropic includes allegations directed to general industry awareness and diligence related to investment activity.[27] Generally, knowledge of a patent portfolio, as opposed to a specific, issued patent, does not support a claim for willful infringement. *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985); *Finjan, Inc. v. Cisco Sys., Inc.*, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017). Still, even if Entropic could plausibly demonstrate that this activity led Comcast to identify specifically any one of the Asserted Patents, the activity still fails to demonstrate knowledge of infringement.

### 4. Prosecution Activity

Finally, Entropic pleads knowledge based upon patent prosecution activity, including the knowledge of Patrick Tierney—a named inventor on the '008 and '862 Patents who now works at Comcast.[28] Absent additional factual pleadings, prosecution activity cannot be the basis for a willful infringement claim. *See Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490, at *4 (N.D. Cal. Aug. 22, 2016). First, with respect to Tierney, the Court is not convinced that his personal knowledge from his prior employment can be imputed to Comcast as a whole. Second, even if it could, the pleadings related to Tierney establish only, at most, that Comcast was aware of the '008 and '862 Patents. They do not plausibly demonstrate knowledge of infringement.

Accordingly, for the forgoing reasons, Entropic fails plausibly to allege willful infringement. However, Entropic may amend its pleading.

### F. Jurisdictional Discovery

In light of the rulings herein, the Court concludes that jurisdictional discovery is unnecessary.

---

[27] *See* FAC ¶¶ 3, 4, 32–35, 65–68, 72–75, 80–92, 99–101, 108, & 139–145.

[28] *Id.* at ¶¶ 108 & 110.

## V.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Comcast's instant Motion to dismiss is **GRANTED with leave to amend**.

2. Entropic is **DIRECTED** to file an amended pleading, if at all, no later than August 25, 2023. If Entropic chooses to file an amended pleading, then it is also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to First Amended Complaint that provides the Court with a redline version that shows the amendments. If Entropic fails to file its amended pleading by August 25, 2023, then the Court will **DISMISS** Entropic's First Amended Complaint **with prejudice**.

3. If Entropic files an amended pleading by August 25, 2023, then Defendants are **DIRECTED** to file their respective responses thereto no later than September 15, 2023.

**IT IS SO ORDERED.**

Dated: August 4, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE