1   BITA RAHEBI (CA SBN 209351)
    brahebi@mofo.com
2   ALEX S. YAP (CA SBN 241400)
    ayap@mofo.com
3   ROSE S. LEE (CA SBN 294658)
    roselee@mofo.com
4   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
5   Los Angeles, California 90017-3543
    Telephone:  (213) 892-5200
6   Facsimile:   (213) 892-5454

7   [Additional counsel on signature page]

8   Attorneys for Counter-Defendants,
    MAXLINEAR, INC. and MAXLINEAR
9   COMMUNICATIONS LLC

10                UNITED STATES DISTRICT COURT

11       CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12   ENTROPIC COMMUNICATIONS,          Case No. 2:23-cv-1043-JWH-KES
     LLC,                              (Lead Case)
13
14              Plaintiff,             **REDACTED VERSION OF
                                       DOCUMENT PROPOSED TO BE
15        v.                           FILED UNDER SEAL**

16   DISH NETWORK CORPORATION,         **COUNTER-DEFENDANTS
     et al.,                           MAXLINEAR, INC. AND
17                                     MAXLINEAR COMMUNICATIONS
                Defendants.            LLC'S NOTICE OF MOTION AND
18                                     MOTION TO DISMISS
                                       COUNTERCLAIMS BY DISH
19                                     NETWORK CALIFORNIA
                                       SERVICE CORPORATION**
20
     DISH NETWORK CALIFORNIA          **JURY TRIAL DEMANDED**
21   SERVICE CORPORATION,
                                       [*Request for Judicial Notice
22              Counter-Claimant       concurrently filed herewith*]
23        v.                           Judge:  Hon. John W. Holcomb
24   ENTROPIC COMMUNICATIONS,          Action Filed:  Feb. 10, 2023
     LLC; MAXLINEAR, INC.; AND         Counterclaims Filed: Sept. 21, 2023
25   MAXLINEAR COMMUNICATIONS
     LLC,                              **Hearing:**
26              Counter-Defendants.    Date:     Feb. 2, 2024
                                       Time:     9:00 a.m.
27                                     Place:    Courtroom 9D, Santa Ana
                                       Judge:    Hon. John W. Holcomb
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 2, 2024, at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California, Counter-Defendants MaxLinear, Inc. and MaxLinear Communications LLC ("MaxLinear") move to dismiss all counterclaims brought against them by Dish Network California Service Corporation ("Dish").

MaxLinear bases this motion on this notice; the attached memorandum of points and authorities; all pleadings, files, and records in this action; the request for judicial notice filed concurrently herewith and the accompanying declaration of Rose Lee;  any reply memorandum; and other argument and evidence that the parties may present at the hearing on this motion.  Under Local Rule 7-3, counsel conferred in advance of this motion on November 15, 2023 and November 17, 2023.

Date: December 22, 2023          By:     */s/ Bita Rahebi*
                                          Bita Rahebi

                                          *Attorney for Counter-Defendants*
                                          MAXLINEAR COMMUNICATIONS LLC
                                          AND MAXLINEAR, INC.

MAXLINEAR'S MOTION TO DISMISS DISH'S COUNTERCLAIMS
CASE NO. 2:23-CV-1043-JWH-KES
sf-5668363

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................... 8

II.     BACKGROUND ..................................................................................... 10

  A.   Entropic, Inc. and MaxLinear ......................................................... 10

  B.   MoCA and the IPR Policy ............................................................... 10

  C.   Dish ................................................................................................. 11

III.    LEGAL STANDARD ............................................................................ 12

IV.     ARGUMENT ......................................................................................... 13

  A.   Count IV: Dish Fails to Plead Facts Supporting Its Claim That MaxLinear or Entropic Was Obligated to Offer a RAND License ............ 13

    1.   Dish's Failure to Disclose the Alleged Contract and Its Reliance on a Superseded Version Merit Dismissal ............................................. 14

    2.   Dish Fails to Plead the Existence of a Contract that Gives It Any Rights under the IPR Policy ............................................................. 16

    3.   Dish's Failure to Plead Performance Requires Dismissal ................... 19

  B.   Count III: Dish Cannot Request a Declaration Voiding the Patent Assignments Due to Its Pleading Failures and Lack of Standing .............. 20

  C.   Count V: Dish Fails to Plead a Claim for Fraud and Negligent Misrepresentation ............................................................................. 21

  D.   Dish Fails to Plead the Elements for Civil Conspiracy or the Underlying Torts ............................................................................... 24

V.      THE COURT SHOULD NOT GRANT LEAVE TO AMEND .................... 25

VI.     CONCLUSION ...................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albrecht v. Lund,*
   845 F.2d 193, *amended*, 856 F.2d 111 (9th Cir. 1988) ........................................ 26

*Allied Equipment Corp. v. Litton Saudi Arabia Ltd.,*
   7 Cal.4th 503 (1994) ........................................................................................ 25

*Area 55, Inc. v. Amazon.com, Inc.,*
   No. 11-cv-145, 2011 WL 13101727 (S.D. Cal. July 25, 2011) ......................... 20

*Arroyo v. DTPS C-12, LLC,*
   No. 21-cv-00023, 2022 WL 17224717 (C.D. Cal. Jan. 31, 2022) ..................... 15

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .............................................................. 12, 13, 23, 24

*Bella+Canvas, LLC v. TSC Apparel, LLC,*
   No. 20-cv-5947, 2020 WL 7048306 (C.D. Cal. Sept. 17, 2020) ....................... 14

*Bella+Canvas, LLC v. TSC Apparel, LLC,*
   No. 20-cv-5947 2021 WL 8134400 (C.D. Cal. Jan. 5, 2021) ........................... 16

*Blue Novis, Inc. v. U.S. All. Grp., Inc.,*
   No. 20-cv-01280, 2021 WL 346422 (C.D. Cal. Jan. 27, 2021) ......................... 20

*Bugarin v. All Nippon Airways Co.,*
   513 F. Supp. 3d 1172 (N.D. Cal. 2021) ............................................................ 19

*CDF Firefighters v. Maldonado,*
   158 Cal. App. 4th 1226 (2008) ......................................................................... 14

*Consol. World Invs., Inc. v. Lido Preferred Ltd.,*
   9 Cal. App. 4th 373 (1992) .............................................................................. 19

*Consumer Sols. REO, LLC v. Hillery,*
   658 F. Supp. 2d 1002 (N.D. Cal. 2009) ............................................................ 13

*Coto Settlement v. Eisenberg,*
   593 F.3d 1031 (9th Cir. 2010) ......................................................................... 17

4

*Cove Partners, LLC v. XL Specialty Ins. Co.*,
   No. 15-cv-7635, 2016 WL 461918 (C.D. Cal., Feb. 2, 2016) .......................... 20

*Dicion v. Mann Mortg., LLC*,
   718 Fed. Appx. 476 (9th Cir. 2017) ................................................................. 21

*Dotson v. Europharma, Inc.*,
   No. 20-cv-09651-AB-AGR, 2021 WL 4826611 (C.D. Cal. May 27,
   2021) ................................................................................................................. 23

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016) ............................................................................ 25

*EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*,
   787 F. App'x 469 (9th Cir. 2019) ..................................................................... 20

*Fishbaugh v. Arteom*,
   No. 20-cv-1135, 2021 WL 35998579 (C.D. Cal. July 8, 2021) ........................ 27

*Gabor v. County of Santa Clara Bd. of Supervisors*,
   No. 07-cv-04266-RMW, 2008 WL 902407 (N.D. Cal. Mar. 31,
   2008) ................................................................................................................. 22

*Herrera v. Wells Fargo Bank, N.A.*,
   No. 18-cv-332, 2020 WL 5802421 (C.D. Cal. Sept. 1, 2020) .......................... 19

*Hurd v. Boston Sci. Corp.*,
   No. 22-cv-00032-JWH-KK, 2023 WL 3564741 (C.D. Cal. Apr. 10,
   2023) (Holcomb, J.) .......................................................................................... 22

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .......................................................................... 17

*L.A. Lakers, Inc. v. Fed. Ins. Co.*,
   869 F.3d 795 (9th Cir. 2017) ............................................................................ 12

*Leadsinger, Inc. v. BMG Music Publ'g*,
   429 F. Supp.2d 1190 (C.D. Cal. 2005) ............................................................. 20

*Lockheed Martin Corp. v. Network Sols., Inc.*,
   194 F.3d 980 (9th Cir. 1999) ............................................................................ 26

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................... 12, 21

5

*Lynwood Invs. Cy Ltd. v. Konovalov*,
   No. 20-cv-3778, 2021 WL 1164838 (N.D. Cal. 2021) ...................................... 25

*MGA Ent., Inc. v. Dynacraft BSC, Inc.*,
   No. 17-cv-8222, 2018 WL 2448123 (C.D. Cal. 2018) ..................................... 25

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*,
   No. 06-cv-7541, 2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) ........................ 24

*Novak v. United States*,
   795 F.3d 1012 (9th Cir. 2015) ........................................................................ 26

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998), *superseded by statute on other
   grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676
   (9th Cir. 2006) ................................................................................................ 13

*Plaza Bank v. Green*,
   599 Fed. Appx. 801 (9th Cir. 2015) ............................................................... 25

*Rack Safety Prod., LLC v. Double Backstop, Inc.*,
   No. 21-cv-2110, 2023 WL 3432250 (C.D. Cal. Mar. 9, 2023) ........................ 15

*Renowitzky v. Wells Fargo Bank N.A.*,
   No. 15-cv-05042, 2016 WL 3276976 (N.D. Cal. June 15, 2016) ..................... 23

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) .......................................................................... 15

*Roman v. Vericrest Fin., Inc.*,
   No. 13-cv-1339, 2013 WL 12142960 (C.D. Cal. Dec. 3, 2013) ....................... 14

*Schreiber Distribut. Co. v. Serv—Well Furniture Co., Inc.*,
   806 F.2d 1393 (9th Cir. 1986) ........................................................................ 22

*Sherman v. Pepperidge Farm, Inc.*,
   No. 22-cv-1781, 2023 WL 5207458 (C.D. Cal. Apr. 28, 2023) ...................... 18

*Smith v. Allstate Ins. Co.*,
   160 F. Supp. 2d 1150 (S.D. Cal. 2001) ........................................................... 22

*Sprewell v. Golden State Warriors*,
   266 F.3d 979, *amended*, 275 F.3d 1187 (9th Cir. 2001) ................................ 12

6

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ................................................................. 13

*Tabletop Media, LLC v. Citizen Sys. of Am. Corp.*,
    No. 16-cv-7140, 2017 WL 10591885 (C.D. Cal. Mar. 3, 2017) ....................... 23

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ................................................................. 13

*Valley Nat'l Bank v. Mundo Trucking*,
    No. 21-cv-6079, 2021 WL 6882194 (C.D. Cal. Dec. 29, 2021) ................ 13, 18

*Vigdor v. Super Lucky Casino, Inc.*,
    No. 16-cv-5326, 2017 WL 2720218 (N.D. Cal. June 23, 2017) ....................... 19

*Warren v. Fox Fam. Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ............................................................... 21

*Wells Fargo Bank, N.A. v. Am. Nat'l Ins. Co.*,
    No. 09-cv-01840, 2009 U.S. Dist. LEXIS 134120 (C.D. Cal. Aug.
    12, 2009) ........................................................................................ 18, 21

**Other Authorities**

U.S. CONST. Art. III ........................................................................... 12, 21

Fed. R. Civ. P.
    9(b) .................................................................................. 9, 21, 22, 24
    12(b)(1) ................................................................................................ 12
    12(b)(6) ................................................................................................ 12

Fed. R. Evid. 201(b)(2) ............................................................................ 15

L.R.
    7-3 ........................................................................................................ 2

# I.    INTRODUCTION

This lawsuit involves the Dish Defendants' alleged infringement of patents originating from Entropic, Inc., a founding member of the Multimedia over Coax Alliance ("MoCA").  MaxLinear, Inc. acquired Entropic, Inc. in 2015 and assigned the patents-in-suit to plaintiff, Entropic Communications, LLC ("Entropic"), in 2021.  Entropic alleges that Dish infringes these patents by practicing the MoCA standards.

In response to Entropic's claims, one of the Dish entities, Dish Network California Service Corporation ("Dish"), asserted four counterclaims[1] against MaxLinear, Inc. and MaxLinear Communications LLC (collectively, "MaxLinear").  All four counterclaims depend on the same brittle allegation, *i.e.*, that Dish is entitled to a patent license on reasonable and nondiscriminatory ("RAND") terms under MoCA's Intellectual Rights Policy ("IPR Policy") because one of Dish's affiliates, "EchoStar (now DISH Technologies L.L.C.)," was a MoCA member.

As an initial matter, Dish failed to attach or incorporate the alleged agreements at issue.  It provided only a URL link to a *blog* that has an outdated IPR policy, which, on its face, is incomplete because it refers to yet other documents and agreements.  As such, Dish has failed to plead fully the contract's terms.

All of Dish's claims can—and must—be dismissed because its core allegation is implausible and for a host of other reasons:

**The pled MoCA IPR Policy does not, in fact, require the licensing of <u>affiliates, like Dish</u>.**  It only places "limited obligations" on an "Alliance Party"

---

[1] This Motion refers to the paragraphs of Dish's pleading (ECF No. 111) before ¶ 505 as the "Answer" and the paragraphs thereafter as the "Counterclaims." Although Dish's pleadings remain ambiguous as to which Counterclaims apply to MaxLinear, Dish has clarified that the Counterclaims asserted against MaxLinear are III (declaration that patent assignment is void), IV (breach of RAND commitment), V (fraud and negligent misrepresentation), and VI (civil conspiracy). (*See* Declaration of Rose S. Lee ("Lee Decl.") Ex. 1 at 9-10.)

and its affiliates to offer a license to its essential patent claims to another Alliance Party.  It does not obligate an Alliance Party to offer a RAND license to an *affiliate* of another Alliance Party. The Promoter Agreement which governed EchoStar's membership in MoCA █████████████████████████████████████████████████ █████████████████████████████[2]  Dish's pleadings do not identify any provision of the IPR Policy or any other related agreement to the contrary.

**Dish lacks standing.**  Because Dish is not entitled to a license under the IPR Policy, nor a beneficiary of the IPR Policy, and cannot enforce its terms, Dish lacks standing to assert a breach of contract or seek a declaration that MaxLinear's assignment of the patents to Entropic is void.

**A RAND License requires a "written request."**  Even if Dish had been an Alliance Party, which it never was, the IPR Policy obligates an Alliance Party to offer a RAND license to another Alliance Party only upon the written request for a license.  In its pleading, Dish fails to make such an averment.

**Dish does not identify the governing MoCA standard.**  Having withdrawn from MoCA, EchoStar is no longer an Alliance Party.  Regarding former Alliance Parties, the IPR Policy only requires that an Alliance Party offer a RAND license to those standards approved while the former party was a MoCA Alliance Party.  In its Counterclaims, Dish does not identify under which standard(s) it or EchoStar allegedly is entitled to a license, or plead that such standard(s) were approved while EchoStar was a MoCA Alliance Party.

**Dish's counts for fraud, misrepresentation, and civil conspiracy do not state a claim.**  Dish comes nowhere near meeting the heightened pleading standard for fraud and misrepresentation.  *See* Fed. R. Civ. P. 9(b).  Among other deficiencies, Dish does not specify who allegedly misrepresented what, who received the misrepresentation, and how Dish relied on it.  Dish's civil conspiracy

---

[2] MaxLinear concurrently has filed a Request for Judicial Notice of the Promoter Agreement.

count depends on Dish's breach of contract, fraud, and misrepresentation counts, so it warrants dismissal for the same reasons.

Given that amendment would be futile, MaxLinear asks that the Court dismiss Counts III–VI with prejudice and without leave to amend.

## II.      BACKGROUND

### A.      Entropic, Inc. and MaxLinear

Entropic, Inc. was a founding member of MoCA.  (Complaint (ECF No. 1), ¶¶ 23-27.)  Regarded as a technological innovator, Entropic, Inc. created a novel networking architecture to accomplish "what was considered unlikely or impossible": "mak[ing] a high-speed point-to-point digital communication network using existing coax installations."  (*Id.*, ¶ 26.)

MaxLinear, Inc. is a leading innovator of radiofrequency, analog, digital, and mixed-signal semiconductor solutions.  In 2015, MaxLinear, Inc. acquired Entropic, Inc. and its MoCA-related intellectual property, including the asserted patents.  (*Id.*, ¶ 21.)  In 2021, MaxLinear, Inc. transferred these and other patents to Entropic, the plaintiff in this action.  (*Id.*, ¶ 22.)

### B.      MoCA and the IPR Policy

MoCA is a standard-setting organization formed to "develop[] and promot[e] specifications for the transport of digital entertainment and information content over in-home coaxial environments, and to develop a certification process for products implementing the specifications to ensure interoperability between products and manufacturers."  (IPR Policy, § 1;[3] *see also* Counterclaims, ¶ 521.)

MoCA adopted an IPR Policy that imposes upon participants ("Alliance Parties")[4] and their affiliates a limited obligation to offer licenses to "Essential

---

[3] For the purposes of this Motion only, MaxLinear references Dish's URL hyperlink to a blog that has a MoCA IPR Policy, dated 2011.  (Counterclaims, ¶ 528, n. 12.)

[4] Under section 2 of the IPR Policy, an "Alliance Party" is a "Participant or a Voting Member."  "Participant" refers to a "non-voting class of participant as

Patent Claims." (IPR Policy, §§ 2, 5.1.1; Counterclaims, ¶ 531.) Essential Patent Claims are claims that (1) are necessarily infringed by complying with the technical specifications of an approved MoCA standard and (2) lack commercially reasonable non-infringing alternatives. (IPR Policy, § 2.)

The IPR Policy does not require an Alliance Party to seek out and offer a patent license to anyone practicing a MoCA standard. Rather, an Alliance Party need only offer a license "upon the written request" of another Alliance Party. (IPR Policy, § 5.1.1.) An Alliance Party's licensing obligation is limited to Essential Patent Claims and only to the extent "necessary to use, make, have made, offer for sale, sell and import" "Fully Compliant Products."[5] (*Id.*) Importantly, an Alliance Party and its "Affiliates" owe this limited licensing obligation only to another Alliance Party, ***not*** to its affiliates. (*Id.*, §§ 2, 5.1.1.)

If an Alliance Party terminates its participation in MoCA, the former Alliance Party may submit a written request for a license only under a MoCA standard approved before it terminated its membership. (IPR Policy, § 7.2.) The former Alliance Party may not invoke the IPR Policy to request a license to standards approved after its MoCA membership ended. (*Id.*)

## C.   Dish

Prior to initiating this action, Entropic allegedly offered Dish a license to the asserted patents on multiple occasions, but Dish refused. (Complaint, ¶ 16.) In February 2023, Entropic thus sued Dish for infringing the asserted patents by practicing the MoCA standards.

---

defined [] by Section 3.3 of the Alliance Bylaws." "Voting Member" refers to a "voting class of member as defined by Section 3.2 of the Alliance Bylaws." Dish does not provide the Alliance Bylaws in its Counterclaims. The Alliance Bylaws are available at https://mocalliance.org/Join/agreements/MoCA_Associate_Agreem ent_editedrs_210413.pdf.

[5] A "Fully Complaint Product" refers to the specific portions of a product that implement a MoCA standard. (IPR Policy, § 2.)

Dish disputes that the "[a]sserted [p]atents . . . are necessary to products that implement any MoCA standard." (Counterclaims, ¶ 509.) And if, in fact, any of its products "implement any part of any MoCA standard," Dish disputes that their "implementation[ ]. . . practice[s] the Asserted Patents." (*Id.*)

Dish does not contend that it is or ever was a MoCA Alliance Party. It argues only that its affiliate, "EchoStar (now DISH Technologies L.L.C.)," was once a MoCA member. (*Id.*, ¶ 522.) Dish also concedes that EchoStar is no longer an Alliance Party. (*Id.*, ¶ 535.)

## III.   LEGAL STANDARD

Under Rule 12(b)(1), a counter-defendant may challenge standing. As the party invoking the federal court's jurisdiction, a counterclaimant like Dish bears the burden of alleging specific facts sufficient to prove its Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal for failure to state a claim is proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although it must accept as true all factual allegations in a complaint, a court need not do so for "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice" to avoid dismissal. *Ashcroft*, 556 U.S. at 678.

In assessing a motion to dismiss, the court may consider documents that the complaint references or that are integral to its claims. *See Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1009 n.4 (N.D. Cal. 2009) (allowing judicial notice of documents referenced in counter-complaint); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). "Even if . . . not attached to a complaint, [a document] may be incorporated by reference . . . if the plaintiff refers extensively to the document or [it] forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

When considering referenced or incorporated documents, a court may consider the documents in their entirety and not merely the portions mentioned or quoted in the complaint. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). Dismissal is appropriate when a document that forms the basis of a claim negates that claim. *See Valley Nat'l Bank v. Mundo Trucking*, 2021 WL 6882194, at *3 (C.D. Cal. Dec. 29, 2021) ("[W]hen a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations.") (citation omitted).

## IV.   ARGUMENT

### A.   Count IV: Dish Fails to Plead Facts Supporting Its Claim That MaxLinear or Entropic Was Obligated to Offer a RAND License

MaxLinear addresses Dish's breach of contract claim (Count IV) first, as this claim forms the basis of all four counterclaims against MaxLinear. Dish asserts that MaxLinear breached a contractual obligation by failing to offer it a RAND license under the IPR Policy. (*See* Counterclaims, ¶¶ 554–56.)

"A cause of action for breach of contract requires proof of the following

13

elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Dish has failed to provide this Court with the purported contract and to plead the elements for a breach claim, warranting Count IV's dismissal.

### 1. Dish's Failure to Disclose the Alleged Contract and Its Reliance on a Superseded Version Merit Dismissal

"[F]air notice of [a] breach of contract claim" requires "identify[ing] the specific terms of the specific agreements that Defendant allegedly breached." *Bella+Canvas, LLC v. TSC Apparel, LLC*, 2020 WL 7048306, at *2 (C.D. Cal. Sept. 17, 2020). "If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint, or a copy of the written contract must be attached to the complaint or incorporated by reference." *Roman v. Vericrest Fin., Inc.*, 2013 WL 12142960, at *2 (C.D. Cal. Dec. 3, 2013).

Here, Dish has not satisfied the pleading requirements for a breach of contract claim. Despite claiming rights as a purported "affiliate" of EchoStar, Dish did not disclose the alleged contract in its Counterclaims. Neither has Dish set forth the terms of the contract that MaxLinear allegedly breached in the body of the Counterclaims, nor incorporated it, nor attached it as an exhibit.

Instead, Dish directs the Court to an alleged copy of the contract at issue in a third-party blog: https://www.essentialpatentblog.com/wp-content/uploads/sites/ 64/2013/05/MOCA-IPR-Policy-Approved-1_24_11.pdf. (*See* Counterclaims, ¶ 527 n.12.) That hyperlink points to what appears to be a 2011 version of the IPR Policy. But the hyperlinked policy does not identify the parties to the policy, provide a signature block, or even indicate that it was executed.

Moreover, the hyperlinked 2011 IPR Policy refers to yet other documents, which confirms it is incomplete. The "Definitions" section refers to "definitions ascribed to [terms] in the ***Alliance Bylaws*** or the ***Applicable Agreement***." (IPR

14

Policy, § 2 (emphasis added).)  Neither document is referenced in, or attached, to the pleading.  For example, it indicates that "'*Affiliates*' shall have the meaning set forth in the Alliance's Bylaws." (*Id.*)  Dish claims a license as an "affiliate" of EchoStar, but fails to include the definition of the term.

The IPR Policy also states that "'*Applicable Agreement'* means the agreement that governs the relationship between an Alliance Party and the Alliance at the time an issue arises, including, without limitation, Promoter Member Agreement (as defined in Section 3.1 of the Alliance Bylaws), other Voting Member Agreement (as defined in Section 3.2 of the Alliance Bylaws) or Participant Agreement (as defined in Section 3.3 of the Alliance Bylaws). . . ." (*Id.*) Yet Dish neglected to attach the Alliance Bylaws or any Applicable Agreement(s) to its Counterclaims.

Worse still, the hyperlinked IPR policy apparently was superseded in 2017. *See Entropic v. Cox Commc'ns, Inc.*, No. 23-cv-1047, ECF No. 94-1 (C.D. Cal. Oct. 6, 2023) (in this Court's parallel proceedings, another defendant cites a 2017 IPR Policy while itself omitting the referenced documents) (Request for Judicial Notice, Exhibit A).[6]  The 2017 document filed by Cox states, "This IPR Policy supersedes any and all prior documentation regarding the Intellectual Property of the Alliance." (*Id.*, ¶ 1.)  Even assuming the IPR Policy was a stand-alone document (and it was not), Dish cannot state a claim for alleged breach of the IPR Policy due to conduct after 2017 because the 2017 policy supersedes the 2011 version. *See Rack Safety Prod., LLC v. Double Backstop, Inc.*, 2023 WL 3432250,

---

[6] MaxLinear concurrently requests judicial notice as to the submission to the docket of a document described as the 2017 MoCA IPR Policy to the Court's docket. *See* Fed. R. Evid. 201(b)(2).  In the Ninth Circuit, "court filings and other matters of public record" are sources whose accuracy cannot reasonably be questioned for the purposes of Rule 201. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see also Arroyo v. DTPS C-12, LLC*, 2022 WL 17224717, at *1 (C.D. Cal. Jan. 31, 2022) (Holcomb, J.) (granting judicial notice of court cases and related public legal documents, as they "fall comfortably within the ambit of Rule 201").

at *5 (C.D. Cal. Mar. 9, 2023) ("[B]ecause the 2016 Agreement superseded the 2015 Agreement, the Court concludes that Rack Safety cannot state a claim for breach of the 2015 Agreement based on Defendants' conduct after 2016."). For this reason alone, the Court must dismiss Dish's counterclaim for breach of contract.

Dish's failure to attach a copy of the allegedly governing agreements, to identify the specific terms allegedly breached, or even to provide the full context to those terms requires dismissal of its Counterclaims against MaxLinear. *See Bella+Canvas, LLC*, 2021 WL 8134400 at *2 (dismissing breach claim where Plaintiff failed to attach a copy of the alleged contract, to quote from the contract, or adequately to plead the terms of the contract either *in haec verba* or according to legal effect).

### 2. Dish Fails to Plead the Existence of a Contract that Gives It Any Rights under the IPR Policy

Dish also has failed to plead facts giving rise to a reasonable inference that MaxLinear was obligated to offer it a license under the IPR Policy whatsoever. Dish does not claim to be a contracting party with MoCA or to have any other direct relationship with MoCA. Instead, it contends, "Dish California by virtue of its affiliation with EchoStar, a founding member of MoCA in 2004, Dish California is a beneficiary of the MoCA IPR Policy." (Counterclaims, ¶ 553.)

The MoCA IPR Policy does not confer any rights upon affiliates of MoCA members. Section 5.1.1 of the IPR Policy provides: "upon the written request of any other then-current <u>Alliance Party</u>, each Alliance Party shall offer to license to the ***requesting Alliance Party(ies)*** . . . such Alliance Party's and its Affiliates' Essential Patent Claims." (IPR Policy, §5.1.1 (emphasis added).) In short, although an Alliance Party and its affiliates must offer to license their Essential Patent Claims in response to a written request of an Alliance Party, the IPR Policy does not obligate an Alliance Party to provide a license offer to an affiliate of an Alliance Party.

16

1    Underscoring that affiliates lack the right to request a license is the fact that,

2    as a textual matter, the IPR Policy distinguishes Alliance Parties from Affiliates and

3    treats them differently throughout the document.  (*See generally id.*)  Dish cannot

4    try to smear the ink and conflate the two.  Additionally, Section 5.3 of the IPR

5    Policy explains that "no license, immunity or other right is granted under this IPR

6    Policy by any Alliance Party or its Affiliates to any other Alliance Parties or their

7    Affiliates or to the Alliance, either directly or by implication, estoppel or otherwise,

8    *other than the agreement to grant licenses expressly set forth herein.*"  (*Id.*, § 5.3

9    (emphasis added).)

10   ███████████████████████████████████, which is central to Dish's

11   purported rights.  Dish's breach of contract claim that it is entitled to a RAND

12   license offer is wholly derivative of EchoStar's rights as a MoCA member.

13   EchoStar's rights as a MoCA member, in turn, are governed by its membership

14   agreement with MoCA – the Promoter Agreement.

15   Curiously, Dish failed to provide the Court with the Promoter Agreement.

16   MaxLinear, however, obtained the Promoter Agreement from Dish and seeks

17   judicial notice of it.  (Request for Judicial Notice, Exhibit B ("Promoter

18   Agreement").)[7]  The Promoter Agreement ███████████████████████,

19   rendering it implausible.  It states:

20

21   _____

22   [7] The Court should take judicial notice of the Promoter Agreement signed by
     EchoStar Technologies Corporation, which was produced by Dish in this action.  In

23   the Ninth Circuit, Courts may incorporate by reference documents where (1) the
     complaint "necessarily relies" on the documents or contents thereof, (2) the

24   document's authenticity is uncontested, and (3) the document's relevance is
     uncontested.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)

25   (taking notice of an agreement that the facts suggested was "integral" to the
     complaint); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We

26   have extended the 'incorporation by reference' doctrine to situations in which the
     plaintiff's claim depends on the contents of a document, the defendant attaches the

27   document to its motion to dismiss, and the parties do not dispute the authenticity of
     the document, even though the plaintiff does not explicitly allege the contents of

28   that document in the complaint.").

17



Dish does not plead that it ever executed any applicable membership agreements. Thus, MaxLinear's alleged failure to offer Dish a RAND license pursuant to the IPR Policy could not breach that policy because MaxLinear was never obligated to make such an offer.

Similarly, Dish has no standing to sue MaxLinear for a breach of contract. *Wells Fargo Bank, N.A. v. Am. Nat'l Ins. Co.*, 2009 U.S. Dist. LEXIS 134120, *14 (C.D. Cal. Aug. 12, 2009) ("[g]enerally, a non-party to a contract has no right, duty, or obligation under [it].") Although Dish claims to be a "beneficiary of the MoCA IPR Policy" "by virtue of its affiliation with EchoStar, a founding member of MoCA in 2004" (Counterclaims, ¶ 553), as a matter of law, "the terms of the contract must demonstrate the express intent to confer [that] benefit" on Dish for it to claim the mantle of a third-party beneficiary. *Sherman v. Pepperidge Farm, Inc.*, 2023 WL 5207458, at *4 (C.D. Cal. Apr. 28, 2023) (Holcomb, J.) (citation omitted). Dish's "beneficiary" allegation cannot save its license entitlement argument in view of the Promoter Agreement and IPR Policy's express language to the contrary. *See Valley Nat'l Bank*, 2021 WL 6882194, at *3.

18

1 Accordingly, Dish is not entitled to bring the instant breach of contract claim

2 against MaxLinear or to claim any benefits of the IPR Policy.

3     **3.    Dish's Failure to Plead Performance Requires Dismissal**

4 Even if it had been a MoCA Alliance Party, Dish would be entitled to receive

5 a license under the IPR Policy only if it had requested one. But it does not plead

6 that it did so. (Counterclaims, ¶ 555 (recognizing that a RAND license offer occurs

7 only "upon receipt of such a request"); *see also id.*, ¶¶ 528, 531, 535.) That reality

8 harmonizes with the plain text of Section 5.1 of the IPR Policy, which requires a

9 license offer only "upon the written request of any other then-current <u>Alliance</u>

10 <u>Party</u>." (IPR Policy, §5.1; *see also* § 7.1.)[8]

11 "It is elementary a plaintiff suing for breach of contract must prove it has

12 performed all conditions on its part or that it was excused from performance."

13 *Consol. World Invs., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992).

14 Here, Dish does not plead that it ever requested a RAND license, much less made

15 such a request in writing. That failure to plead performance, an essential element of

16 its breach of contract claim, requires dismissal of Count IV. *See Herrera v. Wells*

17 *Fargo Bank, N.A.*, 2020 WL 5802421, at *7 (C.D. Cal. Sept. 1, 2020) (granting-in-

18 part motion to dismiss breach of contract claims based on plaintiff's failure to

19 request refund as contractually required); *Bugarin v. All Nippon Airways Co.*, 513

20 F. Supp. 3d 1172, 1192-93 (N.D. Cal. 2021) (same); *see also Vigdor v. Super Lucky*

21 *Casino, Inc.*, 2017 WL 2720218, at *3 (N.D. Cal. June 23, 2017) (granting-in-part

22

23 ─────────────────
[8] Although MaxLinear first raised this deficiency on November 15, Dish refused to
24 amend its pleading and stated that it would consider amendment after reviewing MaxLinear's motion. On the eve of this filing, after MaxLinear declined an
25 invitation to delay filing this motion, Dish claimed for the first time that a Dish entity (unclear which) had submitted a "written request for Entropic's RAND
26 licensing rates." Of course, this was not pled. To the contrary, in its pleading, Dish claimed lack of knowledge, and on that basis denied Entropic's allegations that
27 Dish's products and services conform to certain MoCA standards.
(*Compare* Complaint, ¶¶ 39-43 *with* Answer, ¶¶ 39-43.) The IPR Policy requires a
28 former Alliance Party to make a written request to license the patents because it has "Fully Compliant Products."

1   motion to dismiss breach claim for failure to plead contractual triggering event).

2       As explained above, each pleading failure independently requires the

3   dismissal of Dish's breach of contract claim.

4       **B.    Count III: Dish Cannot Request a Declaration Voiding the Patent Assignments Due to Its Pleading Failures and Lack of Standing**

5

6       Dish's request for a declaration voiding MaxLinear's patent assignments to

7   Entropic similarly fails.  Declaratory relief requires an actual controversary between

8   the parties "relat[ing] to a claim upon which relief can be granted." *Leadsinger,*

9   *Inc. v. BMG Music Publ'g*, 429 F. Supp.2d 1190, 1193 (C.D. Cal. 2005).  "[A]

10  federal court may decline to address a claim for declaratory relief where the

11  substantive claims would resolve the issues raised by the declaratory action." *See*

12  *Cove Partners, LLC v. XL Specialty Ins. Co.*, 2016 WL 461918, at *12 (C.D. Cal.,

13  Feb. 2, 2016) (citation omitted).

14      First, Dish's declaratory judgment counterclaim against MaxLinear

15  (Count III) fails because it is derivative of Dish's breach of contract claim

16  (Count IV).  Dish's pleading deficiencies as to Count IV therefore infect and

17  require the dismissal of Count III.  *See Area 55, Inc. v. Amazon.com, Inc.*, 2011 WL

18  13101727, at *3 (S.D. Cal. July 25, 2011) (dismissing declaratory judgment

19  counterclaim where "no valid breach of contract claim ha[d] been stated");

20  *EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*, 787 F. App'x 469, 471 (9th

21  Cir. 2019) (affirming dismissal of declaratory judgment claim where dismissal of

22  breach of contract claims meant there was no actual controversy); *Blue Novis, Inc.*

23  *v. U.S. All. Grp., Inc.*, 2021 WL 346422, at *6 (C.D. Cal. Jan. 27, 2021) (dismissing

24  declaratory judgment claim where Plaintiff was not an intended third-party

25  beneficiary to an agreement); *see also Cove*, 2016 WL 461918, at *12 (dismissing

26  declaratory relief action where "breach of contract, fraud, and fraudulent

27  inducement claims resolve[d] any existing controversy").

28      Second, the Court should dismiss Dish's declaratory relief counterclaim for a

20

sf-5668363

1   separate, independent reason: lack of standing.  To invoke the Court's jurisdiction

2   against MaxLinear, Dish bears the burden of alleging specific facts sufficient for

3   Article III standing.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

4   The trouble is, though, that Dish was never a MoCA member, and it is not entitled

5   to a RAND license offer under the IPR Policy for the reasons already noted.

6   "Generally, third parties do not have enforceable contract rights unless they are

7   intended third party beneficiaries."  *Dicion v. Mann Mortg., LLC*, 718 Fed. App'x

8   476, 478 (9th Cir. 2017) (citation omitted); *see also Wells Fargo Bank.*, 2009 U.S.

9   Dist. LEXIS 134120, at *14 (non-party generally has no right under a contract).

10  Put simply, Dish enjoys no vigilante right to enforce the contracts of other private

11  parties.

12      Moreover, Dish's allegation that "[e]very party using technology contained

13  within the MoCA standards is an intended beneficiary . . . of voluntary contractual

14  commitments to MoCA" (Counterclaims, ¶ 550) cannot be reconciled with

15  ██████████████ of the Promoter Agreement.  ████████████████████████

16  ████████████████████████████████████████████████  *See* IV.A.2,

17  *infra*.  Accordingly, the Court should dismiss Count III based on Dish's lack of

18  standing.  *Cf. Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1142-43 (9th

19  Cir. 2003) (dismissal appropriate where pleadings facially do not demonstrate a

20  basis for standing in copyright case).

21      **C.    Count V: Dish Fails to Plead a Claim for Fraud and Negligent**

22           **Misrepresentation**

23      The Court also should dismiss Dish's fraud and negligent misrepresentation

24  counterclaims for failure to satisfy Rule 9(b) and for their facial implausibility.

25      In Count V, Dish asserts "[o]n information and belief" that MaxLinear

26  "represented to the members of MoCA and their affiliates – including Dish

27  California – that [it] would license the Asserted Patents under RAND terms and

28  conditions and ensure that future owners of the Asserted Patents would be obligated

21

to offer licenses under RAND terms and conditions." (Counterclaims, ¶ 561.)  On its face, that conclusory statement is inadequate to plead fraud or negligent misrepresentation. *Gabor v. County of Santa Clara Bd. of Supervisors*, 2008 WL 902407, at *4 (N.D. Cal. Mar. 31, 2008) ("Allegations that are vague or conclusory are insufficient to satisfy the 'particularity' required by Rule 9(b).").

Under Rule 9(b), a counterclaimant must specify the circumstances constituting the alleged fraud with particularity.  Negligent misrepresentation claims are subject to this heightened pleading requirement. *See Hurd v. Boston Sci. Corp.*, 2023 WL 3564741, at *3 (C.D. Cal. Apr. 10, 2023) ("In the Ninth Circuit, claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.") (Holcomb, J.) (citation omitted).

Rule 9(b) necessitates Dish to identify ***specifically*** what was fraudulent or negligently misrepresented.  Satisfying that requirement meant, at the minimum, identifying (1) what specifically was misrepresented, (2) who made the representation, (3) why the representation is false, and (4) when the representation occurred. *See Schreiber Distribut. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Hurd*, 2023 WL 3564741, at *3 ("[A] complaint generally must also identify the person who made the false representations on behalf of the entity.") (citation omitted).  Dish's cursory fraud and negligent misrepresentation allegations provide none of that information.  For example, they do not specify the allegedly fraudulent statements, who made them and when, or to whom they were made.

Nor does Dish allege that MaxLinear (and not Entropic) made a representation that was false "when it was made." *See Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D. Cal. 2001) ("[T]he plaintiff must plead facts explaining why [a] statement was false when it was made.").  Dish alleges only that

Entropic failed to "offer Dish California a license to the Asserted Patents under RAND terms."  (Counterclaims, ¶ 562.)  But this alleged failure does not involve a "false" statement, as the IPR Policy did not obligate Entropic to license any Essential Patent Claims to Dish, a non-MoCA member.  Nor does this alleged failure involve MaxLinear.  In addition, acts or omissions that Entropic performed in the *present* cannot show that a *past* MaxLinear statement was false.  *See Dotson v. Europharma, Inc.*, 2021 WL 4826611, at *6 (C.D. Cal. May 27, 2021) (A plaintiff cannot "simply point[] to a defendant's statement, not[e] that the statement conflicts with the current state of affairs, and then conclud[e] that the statement in question was false when made.") (citation omitted).

Furthermore, "[a]s with all other elements of a claim based on fraud, a complaint must plead reliance and causation with particularity."  *Renowitzky v. Wells Fargo Bank N.A.*, 2016 WL 3276976, at *8 (N.D. Cal. June 15, 2016); *see Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  Again, Dish has not supplied any facts necessary to support an inference that it reasonably relied on any alleged MaxLinear misrepresentation.

Dish merely states that "its affiliation with a MoCA member and incorporation of certain MoCA technology in its products" show its reliance.  (Counterclaims, ¶ 563.)  But conclusory allegations of that sort are facially insufficient.  A claim of fraud "requires a plaintiff to allege specific facts not only showing [it] actually and justifiably relied on the defendant's misrepresentations, but also how the actions [it] took in reliance on the defendant's misrepresentations caused the alleged damages."  *Tabletop Media, LLC v. Citizen Sys. of Am. Corp.*, 2017 WL 10591885, at *5 (C.D. Cal. Mar. 3, 2017) (citation omitted).  Here, Dish does not say that it designed its products after the alleged misrepresentations or that, but for the alleged misrepresentations, it would have used a different design.

1    Importantly, Dish's Answer undercuts any claim of reliance.  Dish denies
2 Entropic's allegations that Dish's products and services conform to certain MoCA
3 standards based on its "lack[] [of] knowledge or information sufficient to form a
4 belief."  (*Compare* Complaint, ¶¶ 39-43 *with* Answer, ¶¶ 39-43.)  That denial is
5 fatal.  Dish cannot credibly assert, on one hand, that it relied on MaxLinear's
6 supposed misrepresentations in conforming its products to the MoCA standards,
7 and, on the other hand, that it does not even know whether its products comply with
8 those standards.

9    The Court should dismiss the fraud and negligent misrepresentations
10 counterclaim for the simple reason that Dish failed to state a plausible claim.  *See*
11 Fed. R. Civ. P. 9(b); *Ashcroft*, 556 U.S. at 678-679 ("[O]nly a complaint that states
12 a plausible claim for relief survives a motion to dismiss.").

### D.    Dish Fails to Plead the Elements for Civil Conspiracy or the Underlying Torts

15    In Count VI, Dish alleges a civil conspiracy claim against MaxLinear and
16 Entropic.  (Counterclaims, ¶¶ 568-71.)  This Counterclaim, too, hinges on its claims
17 for breach of contract (Count IV) and fraud and negligent misrepresentation
18 (Count V).  In particular, Dish alleges that MaxLinear and Entropic engaged in a
19 civil conspiracy to induce Entropic to breach the IPR Policy and to engage in fraud
20 or negligent misrepresentation.

21    As noted above, the Court should dismiss Counts IV and V for failure to state
22 a claim.  *See supra* §§ IV.A and IV.C.  That failure, in turn, warrants the dismissal
23 of Count VI.  *See Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL
24 2288329, at *4 (N.D. Cal. Aug. 9, 2007) ("If the plaintiff fails to adequately plead
25 the underlying claim, the corresponding conspiracy claim must also fail.").

26    The Court also should dismiss Count VI for the independent reason that Dish
27 has not adequately pleaded the elements for a civil conspiracy.  Those elements
28 include "(1) the formation and operation of a conspiracy, (2) wrongful conduct in

24

1  furtherance of the conspiracy, and (3) damages arising from the wrongful conduct."

2  *Id.*

3      "[A] civil conspiracy claim requires 'that each member of the conspiracy

4  acted in concert and came to a mutual understanding to accomplish a common and

5  unlawful plan.'" *Lynwood Invs. Cy Ltd. v. Konovalov*, 2021 WL 1164838, at *17

6  (N.D. Cal. 2021) (citation omitted).  "A civil conspiracy, however atrocious, [also]

7  does not give rise to a cause of action unless a civil wrong has been committed

8  resulting in damage." *Allied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7

9  Cal.4th 503, 511 (1994) (citation omitted).  In other words, the wrongful conduct

10  must cause damages.  *See id.*

11      Here, Dish does not allege that the alleged co-conspirators had an agreement

12  or understanding to engage in a common plan.  Nor does it identify a single

13  wrongful act that the alleged co-conspirators took to further the conspiracy.  Dish

14  did not identify a specific instance of wrongful conduct causing damages.

15      Instead, Dish generically alleges, "on information and belief," that the

16  alleged conspirators had knowledge of a planned tort and "concurred in the tortious

17  scheme. . . ."  (Counterclaims, ¶ 570.)  Dish also generically alleges that MaxLinear

18  and Entropic engaged in unspecified "acts designed to induce a breach or disruption

19  of the contractual relationship."  (*Id.*, ¶ 571.)  Such "allegations of conspiracy do

20  not sufficiently provide the details of the conspiracy" because they are "all made on

21  'information and belief' without providing any factual basis for those beliefs or are

22  merely conclusory."  *MGA Ent., Inc. v. Dynacraft BSC, Inc.*, 2018 WL 2448123, at

23  *7 (C.D. Cal. 2018).  In view of those pleading deficiencies, MaxLinear

24  respectfully asks the Court to dismiss Count VI.

25  **V.    THE COURT SHOULD NOT GRANT LEAVE TO AMEND**

26      "Although . . . leave to amend should be 'freely' given [under Rule 15], that

27  liberality does not apply when amendment would be futile."  *Ebner v. Fresh, Inc.*,

28  838 F.3d 958, 968 (9th Cir. 2016); *see also Plaza Bank v. Green*, 599 Fed. App'x

25

801, 802 (9th Cir. 2015) (affirming dismissal without leave to amend where "[t]here was no legal basis for the counterclaims and thus any factual amendment would have been futile"). A court may deny leave to amend if it determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Albrecht v. Lund*, 845 F.2d 193, 195, *amended*, 856 F.2d 111 (9th Cir. 1988) (citations omitted). The Court should deny leave to amend for three reasons.

First, amendment would be futile. All of Dish's Counterclaims against MaxLinear depend on Dish's alleged entitlement to a RAND license offer as an affiliate of EchoStar, formerly an Alliance Party. (Counterclaims, ¶ 535 ("Although affiliates for Dish California withdrew from MoCA, Dish California retains its benefits under the MoCA IPR Policy including the right to a RAND license under § 5.1.1 as an affiliate.").) Without that keystone allegation, the entire pleading crumbles.

As noted, Dish has no such right. (IPR Policy § 5.1.1 ("[U]pon the written request of any other then-current Alliance Party, each Alliance Party shall offer to license to the *requesting Alliance Party(ies)*") (emphasis added); RJN Ex. B.) Dish can say nothing and add nothing to its Counterclaims to change that fact. Any amendment would only prove futile, as well as an unnecessary waste of this Court's time and resources. "Futility alone can justify a court's refusal to grant leave to amend." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015); *see also Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend").

Second, the Court should deny leave to amend because Dish's Counterclaims raise issues redundant to those already before the Court through the Complaint and Dish's affirmative defenses. (*See, e.g.,* Answer, ¶¶ 482-496, 499 (asserting affirmative defenses of license, waiver, equitable estoppel, damages limitation

based on RAND obligation, and unenforceability).)  As this Court has explained, "several district courts within the Ninth Circuit have found that counterclaims for declaratory relief are improper if 'repetitious of issues already before the court via the complaint o[r] affirmative defenses.'"  *Fishbaugh v. Arteom*, 2021 WL 3598579, at *7-8 (C.D. Cal. July 8, 2021) (citation omitted).  Where a "claim is redundant to issues already before the Court, amendment would be futile, and the claim [should be] dismissed *without* leave to amend."  *Id.*  The Court should do so again here.

Third, Dish's dilatory litigation conduct provides yet another reason for denying leave to amend.  In mid-November, MaxLinear engaged in a series of discussions with Dish to explain these deficiencies in the hopes of avoiding motion practice.  Although believing amendment to be futile, MaxLinear nevertheless asked Dish if it wished to amend.  (Lee Decl., ¶ 4.)  Dish refused, stating that it would evaluate whether to amend ***after*** MaxLinear filed its motion to dismiss.  (*Id.*)  On December 15, 2023, MaxLinear urged Dish to voluntarily dismiss this action in light of the newly produced Promoter Agreement.  (*Id.*, ¶ 6.)  Again, Dish refused to do so.  Instead, it merely offered MaxLinear an extension, in the event the other Dish defendants file counterclaims in this Court.  (*Id.*)  MaxLinear declined to invite more delay, as it had fully drafted this instant motion.  (*Id.*, ¶ 7.)  After, on the eve of filing of this motion, Dish sent MaxLinear a letter insinuating that Dish could plead allegations to make its claims suddenly plausible.  (*Id.*)  It is all too little, too late.  Dish chose not to amend, and its pleadings' fatal deficiencies cannot be cured.

## VI.   CONCLUSION

Dish has failed to prove that a contract exists, that it has any rights under such a contract, or that an Alliance Party ever requested a license under the MoCA IPR Policy.  In tandem, Dish failed to satisfy the heightened pleading requirements for fraud and negligent misrepresentation.  Its declaratory judgment and civil

27

conspiracy counterclaims depend entirely on its other counterclaims and are deficient for the same reasons.  MaxLinear therefore urges the Court to dismiss Dish's Counterclaims against MaxLinear (Counts III-VI) with prejudice.

Dated:        December 22, 2023              MORRISON & FOERSTER LLP


By:  */s/ Bita Rahebi*
Bita Rahebi

BITA RAHEBI (CA SBN 209351)
brahebi@mofo.com
ALEX S. YAP (CA SBN 241400)
ayap@mofo.com
ROSE S. LEE (CA SBN 294658)
roselee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:    (213) 892-5200
Facsimile:    (213) 892-5454

RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Palo Alto, California 94304-1018
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

BRADLEY LUI (CA SBN 143088)
blui@mofo.com
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037-1679
Telephone:    (202) 887-1500
Facsimile:    (202) 887-0763


Attorneys for Counter-Defendants
MAXLINEAR, INC. and
MAXLINEAR
COMMUNICATIONS LLC

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief contains 6722 words, which complies with the word limit of L.R. 11-6.1.

Dated:        December 22, 2023          By: _/s/ Bita Rahebi_
                                              Bita Rahebi