1  BITA RAHEBI (CA SBN 209351)
   brahebi@mofo.com
2  ALEX S. YAP (CA SBN 241400)
   ayap@mofo.com
3  ROSE S. LEE (CA SBN 294658)
   roselee@mofo.com
4  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
5  Los Angeles, California 90017-3543
   Telephone:  (213) 892-5200
6  Facsimile:   (213) 892-5454

7  [Additional counsel on signature page]

8  Attorneys for Counter-Defendants,
   MAXLINEAR, INC. and MAXLINEAR
9  COMMUNICATIONS LLC

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12  ENTROPIC COMMUNICATIONS,          Case No. 2:23-cv-1043-JWH-KES
    LLC,                              (Lead Case)
13
                                      Case No. 2:23-cv-01047-JWH-KES
14          Plaintiff,                (Related Case)

15      v.                            **COUNTER-DEFENDANTS
                                      MAXLINEAR, INC. AND
16  COX COMMUNICATIONS, INC.,         MAXLINEAR COMMUNICATIONS
    COXCOM, LLC, AND COX              LLC'S NOTICE OF MOTION AND
17  COMMUNICATIONS                    MOTION TO DISMISS
    CALIFORNIA, LLC,                  COUNTERCLAIMS BY COX
18                                    COMMUNICATIONS, INC.,
            Defendants,               COXCOM, LLC, AND COX
19                                    COMMUNICATIONS
                                      CALIFORNIA, LLC**
20  COX COMMUNICATIONS, INC.,
    COXCOM, LLC, AND COX              **JURY TRIAL DEMANDED**
21  COMMUNICATIONS
    CALIFORNIA, LLC,                  Judge: Hon. John W. Holcomb
22                                    Action Filed: Feb. 10, 2023
            Counter-Claimants,        Counterclaims Filed: Oct. 6, 2023
23
        v.                            <u>**Hearing:**</u>
24                                    Date:    February 2, 2024
    ENTROPIC COMMUNICATIONS,          Time:    9:00 a.m.
25  LLC; MAXLINEAR, INC.; AND         Place:   Courtroom 9D, Santa Ana
    MAXLINEAR COMMUNICATIONS          Judge:   Hon. John W. Holcomb
26  LLC,

27          Counter-Defendants.

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 2, 2024 or as soon thereafter as counsel may be heard, in Courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California, Counter-Defendants MaxLinear, Inc. and MaxLinear Communications, LLC move to dismiss the Counterclaims by Cox Communications, Inc., CoxCom, LLC, and Cox Communications California, LLC.

This Motion is based on this Notice of Motion and Motion; on the attached Memorandum of Points and Authorities; on all pleadings, files, and records in this action; on any reply memorandum; and on such other argument or evidence that may be presented at the hearing on this Motion.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 1, 2023.

Date: December 22, 2023        By:    */s/ Bita Rahebi*
                                            Bita Rahebi

                                            *Attorney for Counter-Defendants*
                                            MAXLINEAR COMMUNICATIONS LLC
                                            AND MAXLINEAR, INC.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................. 8

II.    SUMMARY OF THE FACTS ............................................... 10

     A.     Entropic, Inc. and MaxLinear ............................................ 10

     B.     MoCA and the IPR Policy .................................................. 10

     C.     Entropic Sues Cox for Infringement ................................... 11

     D.     Cox Files Deficient and Unsupported Counterclaims Against MaxLinear ........................................................................ 12

III.   LEGAL STANDARD ........................................................... 13

     A.     Rule 12(b)(1) ...................................................................... 13

     B.     Rule 12(b)(6) ...................................................................... 14

IV.   ARGUMENT ....................................................................... 15

     A.     The Court Should Dismiss the Counterclaims for Lack of Subject Matter Jurisdiction under Rule 12(b)(1) ................ 15

         1.     Cox lacks standing under the IPR Policy because it never pleads that it ever requested a license of any asserted patent ....................................................................... 15

         2.     Cox lacks standing because it has not plausibly pleaded a concrete and particularized injury capable of redress ............. 16

         3.     Cox's counterclaims are also unripe ................................. 17

     B.     Cox Fails to Plead Which "MaxLinear" Allegedly Did What in Violation of Rule 8 ........................................................... 18

     C.     Cox Fails to Properly Plead a Breach of Contract Claim, Which Should be Dismissed Under Rule 12(b)(6) ........................... 19

         1.     Cox fails to allege the fundamentals of a breach of contract counterclaim. ........................................................ 19

             a.     Cox neglects to identify the operative contract in its pleadings .......................................................... 19

             b.     Cox fails to satisfy the requirement that contracts be pleaded *in haec verba* or according to legal effect ............................................................... 19

             c.     Cox fails to allege the requisite privity of contract ........ 20

             d.     Cox neglects to plead it is a third-party beneficiary ...... 20

         2.     Cox fails to allege its performance under any contract ........... 22

         3.     Cox fails to allege breach ............................................... 22

         4.     Cox fails to allege causation and related damages ................. 23

3

**TABLE OF CONTENTS**
(continued)

**Page**

5. Cox should be not granted leave to amend...............................23

D. Cox Fails to State a Claim as a Matter of Law for its
Counterclaim of Unjust Enrichment ....................................24

1. No cause of action for unjust enrichment exists in
California................................................................24

2. Cox fails to plead sufficient allegations to assert a
plausible claim for enrichment or unjustness .........................25

3. Cox lacks standing because it cannot explain how
MaxLinear's alleged enrichment injured Cox.........................25

4. Cox's unjust enrichment counterclaim is duplicative .............26

V. CONCLUSION ..........................................................27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*12909 Cordary, LLC v. Berri,*
  No. 22-cv-01748, 2023 WL 6785798 (C.D. Cal. Apr. 17, 2023) ..................... 20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................ 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................. 14, 15

*Campos v. Fed. Home Loan Servs. Corp.,*
  No. 13-cv-494, 2014 WL 5308348 (E.D. Cal. Oct. 16, 2014) .......................... 21

*CDF Firefighters v. Maldonado,*
  158 Cal. App. 4th 1226 (2008) ........................................................ 19

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
  598 F.3d 1115 (9th Cir. 2010) ........................................................ 14

*Clinton v. Acequia, Inc.,*
  94 F.3d 568 (9th Cir. 1996) .......................................................... 17

*Consol. World Investments, Inc. v. Lido Preferred Ltd.,*
  9 Cal. App. 4th 373 (1992) ........................................................... 22

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) .................................................................. 14

*Doe v. Mindgeek USA Inc.,*
  558 F. Supp. 3d 828 (C.D. Cal. 2021) ................................................. 24

*Fishbaugh v. Bulgadarian,*
  No. 20-cv-01135, 2021 WL 3598579 (C.D. Cal. July 8, 2021) ......................... 20

*Gauvin v. Trombatore,*
  682 F. Supp. 1067 (N.D. Cal. 1988) ................................................... 19

*Gen-Probe, Inc. v. Amoco Corp.,*
  926 F. Supp. 948 (S.D. Cal. 1996) .................................................... 19

5

*Hooked Media Grp., Inc. v. Apple Inc.*,
 55 Cal. App. 5th 323 (2020) .................................................................... 25

*Kenneth Eisen & Assocs., Ltd. v. CoxCom, Inc.*,
 No. 18-cv-02120, 2019 WL 669770 (D. Ariz. Feb. 19, 2019) ........................ 26

*Kobayashi v. McMullin*,
 No. 19-cv-06591, 2023 WL 3493991 (C.D. Cal. Mar. 2, 2023) ...................... 18

*L.A. Lakers, Inc. v. Fed. Ins. Co.*,
 869 F.3d 795 (9th Cir. 2017) .................................................................. 14

*Leite v. Crane Co.*,
 749 F.3d 1117 (9th Cir. 2014) ........................................................... 13, 14

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ...................................................................... 14, 15, 16

*Lyons v. Coxcom, Inc.*,
 718 F. Supp. 2d 1232 (S.D. Cal. 2009) ..................................................... 23

*McCormick v. US Bank, N.A.*,
 No. 12-cv-00433, 2012 WL 12869274 (S.D. Cal. Oct. 30, 2012) .................... 20

*Melchior v. New Line Prods., Inc.*,
 106 Cal. App. 4th 779 (2003) .................................................................. 24

*Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*,
 319 F. Supp. 2d 1094 (C.D. Cal. 2003) ...................................................... 21

*Novak v. United States*,
 795 F.3d 1012 (9th Cir. 2015) ........................................................... 23, 25

*Nunes v. Ashcroft*,
 375 F.3d 805 (9th Cir. 2004) ............................................................. 23, 24

*Portland Police Ass'n v. City of Portland*,
 658 F.2d 1272 (9th Cir. 1981) ................................................................. 17

*Richardson v. City & Cty. of Honolulu*,
 124 F.3d 1150 (9th Cir. 1997) ................................................................. 17

*Safari v. Whole Foods Mkt. Servs., Inc.*,
 No. 88-cv-01562, 2023 WL 5506014 (C.D. Cal. July 24, 2023) .................... 13

6

*Sherman v. Pepperidge Farm, Inc.*,
No. 22-cv-01781, 2023 WL 5207458 (C.D. Cal. Apr. 28, 2023) ..................... 21

*Simoni v. Am. Media, Inc.*,
No. 14-cv-573, 2014 WL 12597640 (C.D. Cal. July 22, 2014),
*aff'd*, 673 F. App'x 782 (9th Cir. 2017) ............................................................ 20

*Simple Design Ltd. v. Funsol Techs. Pvt Ltd*,
No. 22-cv-04352, 2023 WL 6469551 (C.D. Cal. Sept. 18, 2023) ................... 24

*Tillman v. Los Angeles Cty. Dist. Attorney's Office*,
No. 22-cv-05755, 2023 WL 2628684 (C.D. Cal. Jan. 18, 2023) ...................... 18

*In re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales
Practices, & Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) .............................................................. 24

*Transamerica Life Ins. Co. v. Ponso*,
No. 20-cv-03738, 2020 WL 6875181 (C.D. Cal. Nov. 18, 2020)..................... 21

*Twaite v. Allstate Ins. Co.*,
216 Cal. App. 3d 239 (1989) ............................................................................... 20

*US Ecology, Inc. v. California*,
129 Cal. App. 4th 887 (2005) .............................................................................. 23

*Warren v. Fox Family Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ...................................................................... 14, 16

**Other Authoritites**

U.S. Const. Art. III .......................................................................................... 10, 14, 16

Fed. R. Civ. P.
8 .............................................................................................................................. 9
8(a)(2) ................................................................................................................... 19
12(b)(1) ............................................................................................. 9, 13, 14, 15
12(b)(6) ............................................................................................. 9, 13, 14, 19
15 ........................................................................................................................... 23

L.R. 7-3 ........................................................................................................................... 2

7

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

MaxLinear, Inc. is a leading innovator of radiofrequency, analog, digital, and mixed-signal semiconductor solutions.  Its technological innovations allow people to connect using faster, smarter, and more efficient communications networks.  In 2021, MaxLinear, Inc. and MaxLinear Communications LLC (collectively, "MaxLinear") sold a portfolio of patents to Entropic Communications, LLC ("Entropic"), the plaintiff in this lawsuit.

In February 2023, Entropic commenced the underlying patent litigation against Cox Communications, Inc., CoxCom, LLC, and Cox Communications California, LLC (collectively, "Cox").  Pre-suit, Entropic asked Cox repeatedly to license the patented technology, but Cox rebuffed those requests.

On October 6, 2023, Cox filed an amended answer adding two Counterclaims against MaxLinear—one for breach of contract, and another for unjust enrichment.  *See* Cox's First Am. Answer and Defenses to Compl. and Countercls. (ECF No. 94[1]).[2]  Both Counterclaims make the same basic assertion: that MaxLinear tried to circumvent its obligation to license its patents on reasonable and non-discriminatory ("RAND") terms by transferring them to Entropic.

As a threshold matter, Cox's Counterclaims should be dismissed for lack of subject matter jurisdiction on three independent grounds.  First, Cox lacks standing to assert those Counterclaims because it never sought (or alleges that it sought) a patent license from Entropic or MaxLinear.  As Cox has not been denied a license on RAND terms or otherwise, Cox cannot assert a cause of action arising from violations of any alleged "encumbrances."

---

[1] All ECF citations reference the docket numbers for Case No. 23-cv-01047.

[2] This Motion refers to the paragraphs of Cox's pleading before ¶ 515 as the "Amended Answer" and the paragraphs thereafter as the "Counterclaims."  By citing to the pleadings in this action, including Entropic's Complaint and Cox's Amended Answer and Counterclaims, MaxLinear does not admit the truth of their allegations.  MaxLinear only accepts them as true for purposes of this Motion.

1    Second, Cox lacks standing because it has failed to identify an injury-in-fact

2  capable of redress.  Even if Cox were to prove that MaxLinear's patent assignment

3  to Entropic should be "voided" based on some technicality, Cox would still owe

4  damages to *someone* for its alleged infringement and failure to pay licensing fees.

5  And if it turns out that Cox does not, in fact, infringe any asserted patent, then the

6  entire action against MaxLinear would be moot and non-justiciable.

7    Third, Cox's Counterclaims are unripe.  In its Amended Answer, Cox denies

8  that the asserted patents are "essential."  Its Counterclaims for breach and unjust

9  enrichment against MaxLinear, by contrast, contend the opposite.  Because no

10 cause of action can accrue until the Court determines the patents' essentiality,

11 Cox's Counterclaims are speculative and contingent.  The lack of subject matter

12 jurisdiction over Cox's Counterclaims justifies their dismissal under Rule 12(b)(1).

13    Cox's Counterclaims also should be dismissed under Rules 8 and 12(b)(6)

14 for basic pleading failures.  Cox's first Counterclaim, for breach of contract, does

15 not identify the operative contract, much less recite its terms verbatim or explain

16 their legal effect.  Cox only attaches an "Intellectual Property Rights (IPR) Policy."

17 *See* Counterclaims, Ex. A. (ECF No. 94-1) (the "IPR Policy").  But that policy

18 refers to *other* documents that "govern[] the relationship" of other Multimedia over

19 Coax Alliance ("MoCA") members and participants—documents that Cox neither

20 attaches nor describes.  (*Id*., § 2.)  Cox also neglects to plead performance, breach,

21 contractual privity, causation, and damages.  Because Cox has failed to plead the

22 basic elements for a breach of contract claim, its first Counterclaim should be

23 dismissed.

24    Cox's Counterclaim for unjust enrichment fares no better.  It fails for four

25 independent reasons.  First, California law recognizes no independent cause of

26 action for unjust enrichment.  Second, although Cox alleges that MaxLinear was

27 enriched by its participation in MoCA, it pleads no facts suggesting that any

28

9

enrichment was unjust. Third, Cox fails to plead how MaxLinear's alleged unjust enrichment injured Cox. Absent an injury-in-fact, Cox again lacks Article III standing. Fourth, Cox's unjust enrichment counterclaim is duplicative of its breach counterclaim.

For all of those reasons, MaxLinear asks that the Court dismiss Cox's Counterclaims against MaxLinear without leave to amend.

## II. SUMMARY OF THE FACTS

### A. Entropic, Inc. and MaxLinear

Entropic, Inc. was a founding member of MoCA. (Complaint (ECF No. 1), ¶¶ 34-38.) A technological innovator, Entropic, Inc. created a novel networking architecture to accomplish "what was considered unlikely or impossible": "mak[ing] a high-speed point-to-point digital communication network using existing coax installations." (*Id*., ¶ 37.)

In 2015, MaxLinear, Inc. acquired Entropic Inc. and its MoCA-related intellectual property, including the asserted patents. (*Id*., ¶ 32.) In 2021, MaxLinear, Inc. transferred those and other patents to Entropic, the plaintiff in this action. (*Id*., ¶ 33.)

### B. MoCA and the IPR Policy

MoCA is a standard-setting organization formed to "develop[] and promot[e] specifications for the transport of digital entertainment and information content over in-home coaxial environments" and to "develop a certification process for products implementing the specifications to ensure interoperability between products and manufacturers." (IPR Policy, § 1; *see also* Counterclaims, ¶ 537)

MoCA adopted an IPR Policy, which imposes upon participants—known as Alliance Parties—and their affiliates a limited obligation to license "Essential Patent Claims." (IPR Policy, §§ 2, 5.1.1; Counterclaims, ¶ 531.) Essential Patent Claims are claims that (1) are necessarily infringed by complying with the technical

specifications of an approved MoCA standard and (2) lack commercially reasonable non-infringing alternatives.  (*See* IPR Policy, § 2.)

The IPR Policy does not obligate an Alliance Party to prophylactically offer a patent license to anyone practicing a MoCA standard.  Rather, an Alliance Party need only offer one "upon the written request" of another Alliance Party.  (IPR Policy, § 5.1.1.)  An Alliance Party's licensing obligation is limited to Essential Patent Claims and only to the extent "necessary to use, make, have made, offer for sale, sell and import" "Fully Compliant Products."  (*Id*. §§ 2, 5.1.1.)  An Alliance Party and its "Affiliates" owe this limited licensing obligation only to other Alliance Parties.  (*Id*.)

If an Alliance Party terminates its participation in MoCA, the former Alliance Party may request a license only under a MoCA standard approved before it terminated its membership.  (IPR Policy, § 7.2.)  A former Alliance Party may not invoke the IPR Policy to request a license to standards approved after its MoCA membership ended.  (*Id*.)

## C.    Entropic Sues Cox for Infringement

In 2021, MaxLinear transferred a portfolio of patents to Entropic.  (Counterclaims, ¶ 542.)  Before initiating this action, Entropic alleges it tried to "engage Cox and/or its agents in good faith licensing discussions regarding Entropic's patent portfolio," including the patents at issue here.  (Complaint, ¶ 27.)  Despite Entropic's multiple letters, Cox allegedly failed to respond.  (*Id*.)

In February 2023, Entropic filed this lawsuit based on Cox's alleged patent infringement.  According to Entropic, Cox has "take[n] advantage of MoCA without paying appropriate licensing fees for the technology."  (*Id.*, ¶ 4.)  Doing so has allowed Cox to allegedly save "billions of dollars in costs and avoiding the hassle of re-wiring" for its customers.  (*Id*.)

Entropic alleges that the patents in suit are essential to practicing certain MoCA standards. (*Id.*, ¶¶ 109, 143, 177, 211, 245, 279, 313, 347, 381, 415, 449, 483.) In its Amended Answer, Cox denied each of those allegations and its infringement. (Amended Answer, ¶¶ 109, 143, 177, 211, 245, 279, 313, 347, 381, 415, 449, 483; *see, generally*, denials in Counts I - XII.)

### D. Cox Files Deficient and Unsupported Counterclaims Against MaxLinear

After filing its answer, Cox amended it to add two Counterclaims against MaxLinear. Its Counterclaims aver that "MaxLinear has sought to avoid encumbrances on its patents in violation of their contractual obligations." (Counterclaims, ¶ 515.) Although Cox attaches a copy of MoCA's IPR Policy, dated October 31, 2017, it neither describes nor attaches the related agreements to which the IPR Policy refers. (*See, generally*, IPR Policy.)

Section 5.1.1 of the IPR Policy states as follows:

> Subject to the terms in this IPR Policy, following Board of Director approval of an Approved Draft Deliverable and upon written request of any other then-current Alliance Party, each Alliance Party agrees to offer and attempt to negotiate a license to the requesting Alliance Party(ies), under the terms of a separate written agreement, such Alliance Party's and its Affiliates' Essential Patent Claims to the extent necessary to use, offer for sale, sell and import Fully Compliant Products in conformance with or as described in such Approved Draft Deliverable.

Cox alleges that MaxLinear "sought to avoid encumbrances on its patents" under the IPR Policy by transferring MoCA patents to Entropic. (Counterclaims, ¶ 515.) Cox also alleges that, "to the extent the Asserted Patents contain patent claims essential to the MoCA standard, Cox is entitled to receive an appropriate license on FRAND terms from MaxLinear, and only MaxLinear." (*Id.*, ¶ 555.) According to Cox, MaxLinear's alleged contractual breaches have caused Cox to suffer injury to its "business or property." (Counterclaims, ¶ 554.)

Nowhere does Cox plead that it ever sought a FRAND license on any essential MoCA patent or was denied such license.  To the contrary, Cox admits that it failed to respond to all of Entropic's communications regarding good faith licensing discussions of its patent portfolio.  (*Compare* Complaint, ¶ 27 *with* Amended Answer, ¶ 27.)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Rule 12(b)(1) allows the dismissal of a counterclaim for lack of subject matter jurisdiction.  Under this rule, a counter-defendant may challenge a counterclaimant's "jurisdictional allegations in one of two ways"—via a facial attack or a factual attack.  *Safari v. Whole Foods Mkt. Servs., Inc.*, 2023 WL 5506014, at *3 (C.D. Cal. July 24, 2023) (Holcomb, J.) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).

A facial attack accepts the counter-defendant's allegations as true but asserts that they "are insufficient on their face to invoke federal jurisdiction."  *Leite*, 749 F.3d at 1121 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6).  Accepting the counterclaimant's allegations as true and drawing all reasonable inferences in its favor, the court determines "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Id.*

A factual attack, by contrast, contests "the truth of the plaintiff's factual allegations"—typically by introducing evidence outside the pleadings.  *Id.*  "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context."  *Id.* (internal citation omitted).  A counterclaimant such as Cox bears the burden of proving, by a preponderance of the evidence, that it meets the requirements for subject matter jurisdiction.  *See id.*

13

1    If the existence of jurisdiction turns on "disputed factual issues," the court may

2    resolve those factual disputes.  *Id*. at 1121-22.

3        A counter-defendant may challenge standing under Rule 12(b)(1).  As the

4    party invoking the federal court's jurisdiction, a counterclaimant like Cox bears the

5    burden of alleging specific facts sufficient to prove its Article III standing.  *See*

6    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Chandler v. State*

7    *Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("The party

8    asserting federal subject matter jurisdiction bears the burden of proving its

9    existence.").  A counterclaimant must do so for "each claim" and "each form of

10   relief" that it seeks.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)

11   (internal citations and quotations omitted).  If it does not, Rule 12(b)(1) allows for

12   the dismissal of the counterclaim for lack of subject matter jurisdiction.  *See*

13   *Chandler*, 598 F.3d at 1122 (9th Cir. 2010); *Warren v. Fox Family Worldwide, Inc.*,

14   328 F.3d 1136, 1139 (9th Cir. 2003) (dismissal is appropriate where face of

15   pleadings does not demonstrate basis for standing).

16       The related doctrine of ripeness enables a court to dispose of a matter that is

17   premature for review, *e.g.*, because the purported injury is too speculative and may

18   never occur.  Because "ripeness pertain[s] to federal courts' subject matter

19   jurisdiction," it may "properly [be] raised in a Rule 12(b)(1) motion to dismiss."

20   *Chandler*, 598 F.3d at 1122.

21       **B.    Rule 12(b)(6)**

22       A counterclaim should be dismissed under Rule 12(b)(6) where the

23   counterclaimants fail to assert a "cognizable legal theory" or the counterclaims

24   contain "[in]sufficient facts . . . to support a cognizable legal theory."  *L.A. Lakers,*

25   *Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).  To survive a motion to

26   dismiss, the counterclaim must allege "more than labels and conclusions" or a

27   "formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v.*

28

14

*Twombly*, 550 U.S. 544, 555 (2007).  The counterclaim must be pleaded with "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted), and that rises "above the speculative level," *Twombly*, 550 U.S. at 555.  A counterclaim has "facial plausibility" when the counterclaimant "pleads factual content that allows the court to draw the reasonable inference that the [counter-]defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Like a complaint, a counterclaim must contain "well-pleaded facts" from which the court can "infer more than the mere possibility of misconduct." *Id*. at 679.

## IV.   ARGUMENT

### A.   The Court Should Dismiss the Counterclaims for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

Cox's two Counterclaims are unripe and lack any plausible injury-in-fact that can be redressed by a favorable decision.  The Court should dismiss both.

The "irreducible constitutional minimum of standing" requires an injury-in-fact. *Lujan*, 504 U.S. at 560.  To establish an injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560.  Moreover, it must be "'likely'" and not "merely 'speculative'" that "the injury will be 'redressed by a favorable decision.'" *Id*. at 561.  "Since the[se] are not mere pleading requirements but rather an indispensable part of the plaintiff's case," a plaintiff must support its alleged injury-in-fact and redressability "in the same way as any other matter on which [it] bears the burden of proof." *Id*.

#### 1.   Cox lacks standing under the IPR Policy because it never pleads that it ever requested a license of any asserted patent

Fatal to its Counterclaims, Cox never pleads that it was unable to license any of the asserted patents or even tried to license the asserted patents from Entropic or

MaxLinear.  (*Compare* Complaint, ¶¶ 27 & 67 *with* Counterclaims, ¶ 555.)  Thus, Cox has suffered no invasion of a legally protected interest under *Lujan*.

Cox alleges that MaxLinear violated an obligation to issue licenses for essential patents on RAND terms to MoCA Alliance members.  But that obligation comes into play only "upon [the] written request of any other then-current Alliance Party."  (IPR Policy § 5.1.1.)  Here, no such written request occurred, and Cox's Counterclaims do not allege otherwise.  For that reason, Cox's entire counterclaim theory falls apart before it even gets out of the gate.

### 2.  Cox lacks standing because it has not plausibly pleaded a concrete and particularized injury capable of redress

The crux of Cox's Counterclaims is that, under the IPR Policy, it "understood and expected" that it could use MaxLinear's patents without fear of an infringement claim.  (Counterclaims, ¶ 563.)  Per Cox, MaxLinear's alleged failure to encumber its patent assignment to Entropic with an obligation to license the patent on RAND terms has harmed Cox.  But Cox does not specify the resulting injury with particularity.  Instead, it generally states that the "additional expense and uncertainty" have harmed its "business [and] property."  (*Id.*, ¶¶ 554, 563.)

Cox's allegations do not plausibly plead an injury-in-fact.  Cox offers zero facts or details to explain the nature of its alleged damages or which "business or property" is even at issue.  (*See id.*, ¶¶ 515-564.)  Nor does it provide any clue as to what expenses it may have incurred and for what purpose.  Having failed to articulate a "concrete" and "particularized" injury, the Court should dismiss Cox's Counterclaims for lack of Article III standing.  *Lujan*, 504 U.S. at 560; *see Warren*, 328 F.3d at 1139 (dismissing claims).

Cox's allegations of harm are not only vague, but they are also implausible.  Nowhere does Cox explain how a theoretical right to a RAND license translates into an unfettered right to use the patented technology ***without paying*** any of those

licensing fees.  Although Cox purports to have "understood and expected" that it would never face an infringement suit under the IPR Policy, nothing in that policy gives MoCA Alliance Party members or their affiliates a free pass to infringe.  To the contrary, Section 5.1.1 expressly permits a party to seek damages for another member's infringement.

Moreover, even if Cox succeeds in voiding the patents' transfer to Entropic, as it seeks to do in its pleading, Cox would *still* need to pay damages to MaxLinear.  All Cox will accomplish through its lawsuit will be to swap out one licensor (Entropic) for another (MaxLinear).  Success in court would not change the end result.  The fact that Cox might need to stop its alleged infringement does not give rise to an injury-in-fact, either.

By the same token, Cox has not pleaded an injury capable of redress.  Were Cox to prevail by voiding the patents' assignment, it would not suddenly own the patents or receive a free license.  Instead, Cox's remedy would be a RAND license—a remedy that it has not even requested.  (*See* Counterclaims at Prayer.)

### 3.    Cox's counterclaims are also unripe

Cox also runs into trouble with regards to ripeness.  The pivotal concern for ripeness is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Richardson v. City & Cty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997).  Where a dispute hangs on "future contingencies that may or may not occur," *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996), it is too "impermissibly speculative" to present a justiciable controversy.  *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1273 (9th Cir. 1981).

Here, to the extent that Cox can allege an injury at all, it stems from speculative future contingencies that may never come to pass—*e.g.*, whether Entropic would have denied Cox a license if it had requested one, what the RAND

17

terms are or should be, whether Cox infringes, and whether the jury will award any royalty on non-RAND terms.

At minimum, the Court needs to determine whether the asserted patents are essential to MoCA—which Entropic alleges, but Cox denies.  (*Compare* Complaint, ¶¶ 109, 143, 177, 211, 245, 279, 313, 347, 381, 415, 449, 483 *with* Amended Answer, ¶¶ 109, 143, 177, 211, 245, 279, 313, 347, 381, 415, 449, 483 (denying each allegation).)  If they are essential, then Cox must first seek and then pay for the appropriate RAND license.  (*See* IPR Policy, § 5.1.1 (applicable only to Essential Patent Claims).)  If they are not essential, then the IPR Policy does not apply, and Cox's Counterclaims necessarily fail.  Bottomline, the contingent nature of Cox's Counterclaims renders them speculative and unripe for adjudication, warranting their dismissal for lack of subject matter jurisdiction.

### B.   Cox Fails to Plead Which "MaxLinear" Allegedly Did What in Violation of Rule 8

In its Counterclaims, Cox defines "MaxLinear" as "MaxLinear, Inc. and MaxLinear Communications LLC."  (Counterclaims, ¶ 515.)  It then asserts its Counterclaims against the collective "MaxLinear."  (*See id*., ¶¶ 529-564.)  Cox does so even though it recognizes that MaxLinear, Inc. and MaxLinear Communications LLC are distinct entities.  (*Id*., ¶ 522.)

As currently drafted, Cox's Counterclaims render it impossible to decipher which entity allegedly did what.  As multiple courts in this Circuit have held, this defect deprives MaxLinear, Inc. and MaxLinear Communications LLC of adequate notice to defend themselves and justifies the Counterclaims' dismissal.  *See, e.g.*, *Kobayashi v. McMullin*, 2023 WL 3493991, at *12 (C.D. Cal. Mar. 2, 2023) (Sykes, J.) (dismissing pleading for "repeatedly clump[ing] the Defendants together, making it difficult for Defendants to understand their respective roles in the case"); *Tillman v. Los Angeles Cty. Dist. Attorney's Office*, 2023 WL 2628684,

at *3 (C.D. Cal. Jan. 18, 2023) (same); *Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996) ("confusion [over] which claims apply to which defendants . . . require that the complaint be dismissed"); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing complaint because plaintiff "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)").  The Court should dismiss Cox's Counterclaims for the same reason here.

### C. Cox Fails to Properly Plead a Breach of Contract Claim, Which Should be Dismissed Under Rule 12(b)(6)

"A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).  Cox's first Counterclaim fails to plead all required elements.

#### 1. Cox fails to allege the fundamentals of a breach of contract counterclaim

##### a. Cox neglects to identify the operative contract in its pleadings

Cox fails to plead the essential elements of a contract claim, beginning with the operative contract.  Throughout its Counterclaims, Cox refers generally to MaxLinear's alleged "contractual obligations" and "contractual commitments" to MoCA, without identifying which specific contract is at issue.  (*See, e.g.*, Counterclaims, ¶¶ 515, 543-44, 551-553, 556-58.)  Cox's failure to identify the specific agreement(s) that underlies its contract counterclaim violates Rule 8(a)(2) and warrants dismissal.

##### b. Cox fails to satisfy the requirement that contracts be pleaded *in haec verba* or according to legal effect

Cox failed to plead its terms *in haec verba*.  To show the existence of a contract, "a party may plead a written contract 'either by its terms—set out

verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect.'" *12909 Cordary, LLC v. Berri*, 2023 WL 6785798, at *3 (C.D. Cal. Apr. 17, 2023) (Holcomb, J.) (internal quotation and citation omitted); *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989), *modified* (Dec. 7, 1989) (breach claim must articulate contract terms "either *in haec verba* or according to legal effect").

Although Cox attaches the IPR Policy to its Counterclaims, it neglects to also attach the MoCA "Alliance Bylaws" and other "Applicable Agreements" referenced at Sections 2 and 5.1.2 of the policy. Absent the Alliance Bylaws and Applicable Agreements, the IPR Policy—and Cox's Counterclaim—are woefully incomplete. Further, Cox fails to attach its own member agreement from which it claims it has the right to sue MaxLinear. Both failures independently merit dismissal. *See Fishbaugh v. Bulgadarian*, 2021 WL 3598579, at *4 (C.D. Cal. July 8, 2021) (Holcomb, J.) (dismissing breach counterclaim where counterclaimant neither "attach[ed] the alleged contract nor fully plead[ed] its terms").

### c.      Cox fails to allege the requisite privity of contract

A party asserting a breach of contract must also plead privity of contract. "Privity of contract is a doctrine of contract law that states that only parties to a contract, hence those in privity to it, have rights or liabilities under the contract." *McCormick v. US Bank, N.A.*, 2012 WL 12869274, at *4 (S.D. Cal. Oct. 30, 2012). A "cause of action for breach of contract requires privity of contract between the plaintiff and the defendant." *Simoni v. Am. Media, Inc.*, 2014 WL 12597640, at *3 (C.D. Cal. July 22, 2014), *aff'd*, 673 F. App'x 782 (9th Cir. 2017). Cox's failure to allege privity also warrants dismissal of its Counterclaims.

### d.      Cox neglects to plead it is a third-party beneficiary

An exception to the rule of privity involves third-party beneficiaries, who may sue if they are intended contract beneficiaries. "Third parties claiming the

MAXLINEAR'S MOTION TO DISMISS COX'S COUNTERCLAIMS
CASE NO. 2:23-CV-1047-JWH-KES
sf-5673968

right to performance under an agreement made by others are classified as either intended or incidental beneficiaries of the contract." *Transamerica Life Ins. Co. v. Ponso*, 2020 WL 6875181, at *3 (C.D. Cal. Nov. 18, 2020) (quotation omitted). Only intended beneficiaries may enforce a contract. *See id.*

"[U]nder California law, a contract must be made expressly for the benefit of a third party for that party to enforce the contract as a third-party beneficiary." *Nat'l Rural Telecommunications Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1094, 1100 (C.D. Cal. 2003). "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person ***appears from the terms*** of the [c]ontract." *Ponso*, 2020 WL 6875181, at *4 (internal quotation and citation omitted; emphasis added). Even then, intent to benefit may not suffice. *See Sherman v. Pepperidge Farm, Inc.*, 2023 WL 5207458, at *4 (C.D. Cal. Apr. 28, 2023) (Holcomb, J.). "Rather, the terms of the contract must demonstrate the ***express*** intent to confer the benefit." *Id.* (internal quotation and citation omitted; emphasis added).

Like the plaintiff in *Sherman*, Cox "fails to allege that the terms of the contract at issue explicitly spell out an intent to benefit" the Cox entities. *Id.* Cox offers the conclusory allegation that "***Plaintiff*** [Entropic] knew Cox was a member of MoCA and knew that Cox was a beneficiary of the contractual commitments MaxLinear made to MoCA." (Counterclaims, ¶ 544.) But that allegation does not show how or why MoCA's IPR Policy was intended to benefit Cox. *See, e.g.*, *Campos v. Fed. Home Loan Servs. Corp.*, 2014 WL 5308348, at *7 (E.D. Cal. Oct. 16, 2014) ("[T]hat a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement. . . .") (internal quotation and citation omitted).

Importantly, Cox's pleadings do not specify which of the three Cox counterclaimant entities allegedly was a MoCA member. Affiliates would not be

21

entitled to rights under the IPR Policy.  It also neglects to mention the type of membership (*e.g.*, Promoter or Alliance), if any, that each Cox entity possessed.  The omission of such key information leaves the Court and MaxLinear unable to identify which Counterclaimant can credibly benefit from the MoCA IPR Policy.  Because Cox has not and cannot plead that it is an intended third-party beneficiary, Cox has not sufficiently pleaded its breach of contract counterclaim.

### 2.   Cox fails to allege its performance under any contract

"It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance." *Consol. World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992).  Here, the IPR Policy plainly requires that an Alliance Party make a "written request" to benefit from it.  (IPR Policy, § 5.1.1.)

Cox does not allege that it made any written request.  In fact, Cox identifies no obligations that it needed to perform, no obligations that it did perform, and no obligations that it was excused from performing.  (*See, generally*, Counterclaims.)  Cox therefore also has failed to plead allegations sufficient to satisfy the second element of a breach of contract counterclaim.

### 3.   Cox fails to allege breach

Under IPR Policy Section 5.1.2, "[a] transferee will similarly include appropriate provisions in the event of future transfers with the goal of binding each successor-in-interest."  Presumably invoking that section, Cox alleges that MaxLinear was obligated to ensure that subsequent transferees of Essential Patents followed the IPR Policy's licensing provisions.  Critically, however, Cox does ***not*** allege that MaxLinear failed to do that provision.  Cox alleges only that MaxLinear "attempt[ed]" to circumvent those encumbrances.  (Counterclaims, ¶ 552.)  But attempts to breach are not themselves breaches.

Cox has simply failed to allege breach at all.  Cox does not allege, *e.g.*, that: MaxLinear or Entropic were obligated, but refused, to provide a license to Cox on RAND terms; Entropic acquired MoCA Essential Patents from MaxLinear free and clear of RAND obligations; MaxLinear breached a warranty to maintain the power and authority to grant patent licenses; or any alleged breach was material.

### 4.    Cox fails to allege causation and related damages

"Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain."  *US Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 909 (2005) (internal quotation and citation omitted).  As discussed in Part IV.A.1, *supra*, Cox has not pleaded sufficient allegations to show any damages or injury-in-fact.  Nor has Cox pleaded how it caused Cox damages, should any be found in its pleading.  This failure, too, warrants dismissal.

### 5.    Cox should be not granted leave to amend

Cox's breach of contract counterclaim should be dismissed without leave to amend for lack of subject matter jurisdiction—end of story.  However, should the Court determine that it does possess subject matter jurisdiction over Cox's Counterclaims, then it should dismiss without leave to amend under Rule 15(a).

The Ninth Circuit instructs courts to consider five factors when considering whether to allow leave to amend under Rule 15: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of amendment; and (5) whether the plaintiff has previously amended his or her complaint.  *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

"Futility alone can justify a court's refusal to grant leave to amend."  *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015).  And here, futility forecloses any credible attempt to amend.  Cox is no *pro se* plaintiff.  It knows how to state a claim for breach of contract and how to identify a faulty one.  *See, e.g.*, *Lyons v.*

23

*Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1239 (S.D. Cal. 2009) (where Cox
successfully moved to dismiss an insufficiently pleaded breach of contract claim).
It admits it has known about MoCA for a decade.  (*See* Counterclaims, ¶ 531.)  Its
failure to plead an adequate breach of contract counterclaim from the get-go
suggests that it cannot, that it knows this fact, and that the sole aim of its
Counterclaims is leverage.  *See Nunes*, 375 F.3d at 808.

Cox has amended its pleadings once already and does not deserve another
bite at the apple.  Aside from being futile, further amendments would only increase
litigation costs, add delays, and unwisely consume additional judicial resources.
Dismissal without leave to amend is strongly warranted here.

### D.     Cox Fails to State a Claim as a Matter of Law for its Counterclaim of Unjust Enrichment

#### 1.     No cause of action for unjust enrichment exists in California

"The phrase 'Unjust Enrichment' does not describe a theory of recovery, but
an effect: the result of a failure to make restitution under circumstances where it is
equitable to do so."  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793
(2003) (internal citations and quotations omitted).  Accordingly, "there is no cause
of action in California for unjust enrichment."  *Id.*; *accord In re Toyota Motor
Corp. Unintended Acceleration, Mktg., Sales Practices, & Prods. Liab. Litig.*, 754
F. Supp. 2d 1145, 1194 (C.D. Cal. 2010) ("Courts consistently have held that unjust
enrichment is not a proper cause of action under California law.").

As other courts in this District have consistently held, this Court should
dismiss Cox's third Counterclaim, with prejudice, for the failure to state a claim as
a matter of law.  *See id*. (dismissing unjust enrichment claim with prejudice under
Rule 12(b)(6)); *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 844 (C.D. Cal.
2021) (Carney, J.) ("Like many other courts in this district, the Court believes that
unjust enrichment is not a separate cause of action in California"); *Simple Design
Ltd. v. Funsol Techs. Pvt Ltd*, No. 22-cv-04352, 2023 WL 6469551, at *6 (C.D.

Cal. Sept. 18, 2023) (dismissing unjust enrichment claim); *Hooked Media Grp., Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020) ("Summary adjudication . . . [is] proper because California does not recognize a cause of action for unjust enrichment").  Since no amount of amendment can cure this defect, granting leave to amend would be futile.  *See Novak*, 795 F.3d at 1020.  The Court should dismiss *with* prejudice.

### 2.  Cox fails to plead sufficient allegations to assert a plausible claim for enrichment or unjustness

The prior analysis should end the inquiry.  But even if a claim for unjust enrichment did exist in California, Cox's allegations still would be insufficient.

Although Cox alleges that MaxLinear's participation in MoCA enriched it, Cox's related allegations are entirely conclusory.  Cox offers no details as to how or why MaxLinear was more greatly "enriched" than any other MoCA member—which includes unidentified Cox affiliates, one of whom Cox admits was a "member of the Board of the MoCA Alliance."  (Amended Answer, ¶ 65.)  Because Cox has failed to plead facts demonstrating that MaxLinear was "enriched" and "unjustly" so, the Court should dismiss Cox's unjust enrichment counterclaim.

### 3.  Cox lacks standing because it cannot explain how MaxLinear's alleged enrichment injured Cox

Cox's failure to plead how MaxLinear's alleged enrichment injured Cox further warrants dismissal for lack of standing.  Although Cox alleges that it has incurred "expenses" as a result of MaxLinear's alleged unjust enrichment, it offers no details as to what those expenses are, why they occurred, how they materially harmed Cox, or how they allegedly "enriched" MaxLinear.  (Counterclaims, ¶ 563.) Their implicit "unjustness" also appears highly doubtful, as Cox both refused to engage in licensing discussions on the asserted patents and never offered to pay a RAND license.

25

Cox offers nothing to explain how MaxLinear's patent transfers to Entropic created "uncertainty for Cox and its business" or why that allegation demonstrates a plausible injury.  (*Id*., ¶ 563.)  Cox does not explain how that uncertainty harms it, either, particularly when the IPR Policy itself contemplates and allows such transfers.  (IPR Policy, § 5.1.2.)

Finally, Cox alleges that it "understood and expected that MaxLinear had committed to ensuring that Cox and other adopters of MoCA could invest in, deploy, use, and sell MoCA-compliant equipment free of any claim from some third party relating to MaxLinear's relevant patents that are essential to MoCA."  (*Id*., ¶ 563.)  Putting aside the fact that Cox's "understanding and expectation" contradicts the IPR Policy's express terms (*see, e.g.*, § 5.1.1), Cox can only blame itself for its own misunderstanding and false expectations.  Cox's inability to plead an injury-in-fact for its legally flawed unjust enrichment counterclaim warrants its dismissal.

### 4.     Cox's unjust enrichment counterclaim is duplicative

Cox's unjust enrichment counterclaim merely rehashes its breach of contract counterclaim: it alleges in substance that MaxLinear's transfer of patents somehow ran afoul of MoCA policies.  As Cox itself has successfully argued before another federal court, the Court should dismiss its unjust enrichment claim as entirely redundant.  *See Kenneth Eisen & Assocs., Ltd. v. CoxCom, Inc.*, No. 18-cv-02120, 2019 WL 669770, at *4 (D. Ariz. Feb. 19, 2019) (dismissing claim as redundant in Arizona, a jurisdiction that recognizes an unjust enrichment claim).

In *Kenneth Eisen*, the court explained that "an unjust enrichment claim that relies on a contract cannot stand" because it necessarily assumes that "no contractual remedy exists."  *Id.*  Similarly, that logic warrants dismissal of Cox's unjust enrichment claim here.  Either (1) a contract exists and the unjust enrichment

counterclaim is duplicative, or (2) no contract exists and any related unjust enrichment claim also must fall.

## V.      CONCLUSION

Cox's breach of contract counterclaim suffers from numerous incurable deficiencies, and its unjust enrichment counterclaim fares no better.  MaxLinear therefore asks that the Court dismiss the Counterclaims against it for lack of jurisdiction and, in the alternative, for Cox's failure to state a claim.

Dated: December 22, 2023                    MORRISON & FOERSTER LLP


By: */s/ Bita Rahebi*
     Bita Rahebi

BITA RAHEBI (CA SBN 209351)
brahebi@mofo.com
ALEX S. YAP (CA SBN 241400)
ayap@mofo.com
ROSE S. LEE (CA SBN 294658)
roselee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone:    (213) 892-5200
Facsimile:    (213) 892-5454

RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Palo Alto, California  94304-1018
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

*Attorneys for Counter-Defendants*

MAXLINEAR, INC. and
MAXLINEAR COMMUNICATONS LLC

27

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief contains 5952 words, which complies with the word limit of L.R. 11-6.1.

Dated:      December 22, 2023          By:   _/s/ Bita Rahebi_
                                              Bita Rahebi

MAXLINEAR'S MOTION TO DISMISS COX'S COUNTERCLAIMS
CASE NO. 2:23-CV-1047-JWH-KES
sf-5673968