Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
cassidy.young@klgates.com
K&L Gates LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

[*Additional counsel on signature page*]

**Attorneys for Plaintiff Entropic Communications, LLC**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION., *et al.*,<br><br>Defendants. | Case No. 2:23-cv-01043-JWH-KES (Lead Case)<br>Case No. 2:23-cv-1047-JWH-KES (Related Case)<br>Case No. 2:23-cv-1048-JWH-KES (Related Case)<br>Case No. 2:23-cv-5253-JWH-KES (Related Case)<br><br>**ENTROPIC COMMUNICATIONS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS PURSUANT TO RULE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; [PROPOSED] ORDER**<br><br>Date:        February 2, 2024<br>Time:       9:00 a.m.<br>Courtroom:  9D |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>Defendants. | |

---

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | |
| Plaintiff, | |
| v. | |
| COMCAST; *et al.*, | |
| Defendants. | |
| ENTROPIC COMMUNICATIONS, LLC, | |
| Plaintiff, | |
| v. | |
| DIRECTV, LLC; *et al.*, | |
| Defendants. | |

2
**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 2, 2024 at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California 92701, Entropic Communications, LLC ("Entropic") will, and hereby does, move the Court for an Order dismissing Cox Communications, Inc., CoxCom LLC, and Cox Communications California, LLC's (collectively, "Cox") Counterclaim against Entropic in its entirety and with prejudice.[1] This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that Cox's Counterclaim fails to state claim a upon which relief can be granted. Specifically, Cox alleges that Entropic tortiously interfered with the contractual obligations of third party MaxLinear, but Cox fails to plausibly allege that it has been harmed by MaxLinear's conduct and fails to allege any specific acts or conduct by Entropic to induce MaxLinear's alleged breach.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 that took place on December 1, 2023. The Parties thoroughly discussed the substance and potential resolution of the filed Motion.

The Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the complete Court files and records in this action, and all matters that may be properly considered by the Court at the hearing on this Motion.

Dated: December 22, 2023          **K&L GATES LLP**

                                   By: */s/ Cassidy T. Young*
                                       Christina Goodrich (SBN 261722)
                                       Connor J. Meggs (SBN 336159)
                                       Cassidy T. Young (SBN 342891)

---

[1] This is the only counterclaim brought by Cox against Entropic. The other two counterclaims are brought against MaxLinear Inc.

i
**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

K&L Gates, LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com
cassidy.young@klgates.com

James A. Shimota (*pro hac vice*)
Katherine Allor (*pro hac vice*)
70 W. Madison Street, Ste 3300
Chicago, Illinois 60602
Telephone: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
katy.allor@klgates.com

Nicholas F. Lenning (*pro hac vice*)
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
(206) 370-6006 (fax)
nicholas.lenning@klgates.com

Peter E. Soskin (SBN 280347)
4 Embarcadero Center, Ste 1200
San Francisco, CA 94111
Telephone: (415) 882-8220
peter.soskin@klgates.com

***Attorneys for Plaintiff, Entropic Communications, LLC***

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND ..................................................................................... 2

III. LEGAL STANDARD ................................................................................................. 3

IV. ARGUMENT .............................................................................................................. 4

    A. Cox is not a party to the IPR Policy and has not pled any other facts that could establish its ability to bring a tortious interference claim for breach of that policy. ........................................................................................................ 4

    B. Cox has not pled facts that could plausibly establish that Entropic intentionally induced MaxLinear to breach the IPR Policy. .............................. 5

    C. Cox has not pled facts plausibly suggesting that it suffered any harm from any alleged breach because either MaxLinear or Entropic had the right to sue Cox for infringement under the IPR Policy's terms. ......................................... 8

    D. There is no basis for voiding the assignment of the Asserted Patents to Entropic. ...................................................................................................... 10

V. CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................... 4, 5, 7

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ....................................................................................... 3, 7

*Dongguan Beibei Toys Indus. Co., Ltd. v. Underground Toys USA, LLC*,
 2019 WL 8631502 (C.D. Cal. Dec. 16, 2019) ................................................... 7

*Ileto v. Glock Inc.*,
 349 F.3d 1191 (9th Cir. 2003) .......................................................................... 2

*Klamath Water Users Protective Ass'n v. Patterson*,
 204 F.3d 1206 (9th Cir. 1999) .......................................................................... 5

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
 521 F.3d 1097 (9th Cir. 2008) .......................................................................... 3

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
 165 F.3d 891 (Fed. Cir. 1998) ........................................................................ 10

*Moore v. Apple Inc.*,
 309 F.R.D. 532 (N.D. Cal. 2015) ..................................................................... 6

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
 795 F.3d 1124 (9th Cir. 2015) ............................................................. 4, 5, 8, 9

*Nestle USA, Inc. v. Best Foods LLC*,
 562 F. Supp. 3d 626 (C.D. Cal. 2021) .............................................................. 6

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
 50 Cal. 3d 1118 (Cal. 1990) ........................................................................... 10

*Precise Innov's, LLC v. Aerospace Eng'g and Support, Inc.*,
 2022 WL 834632 (D. Idaho Mar. 21, 2022) ..................................................... 7

*Race Winning Brands, Inc. v. Gearhart*,
 2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) ................................................... 8

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
    521 F. Supp. 3d 929 (S.D. Cal. 2021) ..................................................... 5, 7

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ........................................................................ 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1, 2, 3

Fed. R. Civ. P. 8 ..................................................................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Cox's tortious interference counterclaim fails to plausibly allege almost any of the elements required to state a viable claim. First, a tortious interference claim requires plausible allegations that a defendant interfered with a valid contract between ***the party asserting the claim*** and a third party. But the contract at issue here is between a prior owner of the Patents-in-Suit, MaxLinear, and an industry association called the MoCA Alliance. Cox is not a party to this contract and has pled no facts suggesting it has standing to assert a tortious interference claim on behalf of such a party. Second, a tortious interference claim requires intent on the part of the interfering party to cause the breach. Cox's only alleged breach here is a failure to include certain language in a legal document assigning the Patents-in-Suit to Entropic. Yet Cox pleads no facts suggesting Entropic knew this language was required, much less that it somehow intentionally made MaxLinear omit it. Finally, a tortious interference claim requires harm flowing from the alleged breach. Here, the only "harm" Cox identifies is its need to defend itself in this case. But nothing in the contract at issue gave Cox any right or expectation to be free of infringement suits. At most, the agreement gave Cox the right to ask for, and then negotiate, a license on certain terms—a request it has never made.

In sum, an allegation that Entropic's filing of a lawsuit that it had the right to file somehow interfered with a contract between two third parties cannot give ***Cox*** a plausible tortious interference claim. In fact, Cox's Counterclaim appears to be nothing more than an improper effort to inject non-party MaxLinear—who would not otherwise be subject to this Court's jurisdiction[1]—into this litigation. Under Rule 12(b)(6), Cox's Counterclaim must be dismissed.

---

[1] Cox's claims against MaxLinear do not present a federal question case, and Cox's allegations confirm that there is not diversity between the parties. *See* DE 94 ("Countercl.") ¶¶ 516–18, 520, 522.

1
**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

## II. FACTUAL BACKGROUND[2]

Entropic filed a Complaint against Cox for infringement of 12 patents related to MoCA technology. *See* DE 1 ¶ 5.[3] MoCA technology enables in-home networking. *See id.* ¶¶ 34–48. The MoCA Alliance is an industry group that, among other things, produces interoperability standards for MoCA technology. *See id*. In response, Cox filed counterclaims against Entropic, as well as against MaxLinear. *See* Countercl.. This Motion challenges Count II of the counterclaims, the only count asserted against Entropic. *Id.* ¶¶ 556–59. Count II alleges that Entropic tortiously interfered with MaxLinear's obligations under the MoCA Alliance's IPR Policy.[4] *Id.*

The MoCA Alliance is an organization that produces standards for in-home networking technology. Countercl. ¶ 530. To encourage industry participants to adopt MoCA technology and the MoCA standard, MoCA issued the MoCA IPR Policy. DE 96 ("IPR Policy"). Under the IPR Policy, which can be signed by entities that hold intellectual property essential to the standard, members are to license the claims of patents that are essential to practicing the MoCA standard to other members under terms that are fair, reasonable, and non-discriminatory (called "FRAND"). IPR Policy § 5.1.1. Critically, however, the patentee is not obligated to affirmatively offer out licenses. Rather, it is the responsibility of the prospective licensee to request that license from the patentee. Specifically, the IPR Policy provides, "***upon the written request of any other then-current Alliance Party***, each Alliance Party agrees to offer . . . a license to the ***requesting*** Alliance Party(ies)" for Essential Patent Claims belonging to the Alliance Party receiving such request, and those belonging to such

---

[2] For purposes of this Motion only, and consistent with the standard described in Rule 12(b)(6) of the Federal Rules of Civil Procedure, Entropic has assumed the truth of all well-pleaded allegations in the counterclaims. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) ("We must take 'all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff'"). Entropic reserves the right to dispute all factual allegations and legal conclusions recited in the counterclaims.

[3] All references to docket entries refer to case number 23-cv-1047.

[4] The "IPR Policy" refers to the MoCA Intellectual Property Rights Policy.

2
**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

Alliance Party's Affiliates. *Id.* at § 5.1.1 (emphasis added). Such license must be on FRAND terms (*id.*), but there is no obligation on Alliance Members to offer a license until such a request is made. And, in the event the prospective licensee fails to request a license (or rejects the license that is offered), the IPR Policy expressly provides that a party may seek damages for infringement of an Essential Patent Claim. *See id.* § 5.1.1.

MaxLinear joined MoCA around August 2011 and was a signatory to the MoCA membership agreement. *See* Countercl. ¶¶ 532–33. MaxLinear assigned the Asserted Patents to Entropic on March 31, 2021. *Id.* ¶ 542. Cox alleges that these assignments constituted a breach of the IPR Policy on the part of MaxLinear. *See id.* ¶ 552. Cox also alleges that Entropic tortiously interfered with the IPR Policy in connection with this assignment, as discussed below. *See id.* ¶¶ 556–59.

## III.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Factual allegations must be enough to "raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* While a court generally must accept plaintiff's factual allegations as true, it need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

To state a claim for tortious interference with contract, the party asserting the claim must show: "(1) a valid contract between [the party asserting] and a third party;

ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS
317186429.7

(2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015) (applying California common law of tortious interference) (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008)). In pleading such a claim, the "standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678–679 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)*,* 550 U.S. at 555).

## IV. ARGUMENT

Cox's Counterclaim fails to plausibly allege almost any of the elements of a tortious interference claim. Cox is not a party to the IPR Policy; it has pled no evidence that Entropic intentionally caused the sole alleged breach of that policy; and the supposed "harm" it suffered is both unconnected to the alleged breach and expressly permitted under the policy.

### A. Cox is not a party to the IPR Policy and has not pled any other facts that could establish its ability to bring a tortious interference claim for breach of that policy.

As an initial matter, Cox's Counterclaim fails to allege the most basic element of a tortious interference claim: a contract that Cox is a party to. The first element of a tortious interference with contract claim is simply the existence of "a valid contract ***between plaintiff and a third party.***" *Name-Space*, 795 F.3d at 1124 (emphasis added). As set forth above, the relevant parties to the IPR Policy are MaxLinear and the MoCA Alliance. *See* Countercl. ¶¶ 532–33. To state the obvious, neither of these is Cox. Indeed, Cox has not even pled that it has ***any*** kind of contractual agreement with the MoCA Alliance. Cox's only attempt to link itself to the IPR Policy is to

4
**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

assert that "Cox was a beneficiary of the contractual commitments MaxLinear made to MoCA." Countercl. ¶ 544. But this cannot save Cox. First, Cox's "benefit" allegation is irrelevant: a tortious interference claim requires the entity asserting it to be a party to the contract, not simply to benefit from it. *See Name-Space*, 795 F.3d at 1124. Second, Cox's "benefit" allegation is "conclusory and therefore not entitled to be presumed true." *Iqbal*, 556 U.S. at 681. Third, even assuming a third party to a contract could receive a "benefit" sufficient to entitle them to sue for tortious interference, Cox has not pled facts that plausibly suggest that it held such a status. *See, e.g., Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999) (discussing requirements of intended beneficiary status). Indeed, Cox does not even attempt to explain how it benefitted from MaxLinear's contractual commitments, much less how MaxLinear and the MoCA Alliance would have both *intended* for Cox to specifically benefit under the IPR Policy. *Id.* (intended beneficiary must "fall within a class clearly intended by the parties to benefit from the contract"). Cox's Counterclaim thus fails to plausibly plead the existence of a contract to which Cox was a party or could otherwise complain of interference with.[5]

### B. Cox has not pled facts that could plausibly establish that Entropic intentionally induced MaxLinear to breach the IPR Policy.

Even if Cox were a party to the IPR Policy, its Counterclaim fails because it fails to "indicat[e], beyond conclusory allegations, facts making it plausible that [Entropic] intended to disrupt [Cox]'s relationship with third parties." *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 960 (S.D. Cal. 2021). "To adequately plead the intentional element of a tortious interference claim, a plaintiff must allege that the defendant desired to interfere with the plaintiff's contractual arrangement or that 'the defendant knew that the interference was certain

---

[5] Cox has also not pled that the Asserted Patents in this case are essential to MoCA, which is a threshold requirement for the IPR Policy to apply to them in the first instance. *See* Countercl. Ex A; *Id.* ¶ 555.

or substantially certain to occur as a result of its action.'" *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 633 (C.D. Cal. 2021) (quoting *Kor. Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).

Here, the only alleged breach of, or interference with, the IPR Policy that Cox identifies is a claim that MaxLinear was required to include certain language in the legal documents assigning the patents to Entropic, but did not. In particular, Cox alleges that the assignment agreement was required to include a statement that the "assignment is subject to existing licenses and obligations to license imposed." Countercl. ¶ 539. According to Cox, the MaxLinear-to-Entropic transfer did not include such a statement. *Id.* ¶ 547.

But Cox pleads no ***facts*** that suggest that Entropic had any idea that the assignment agreement was required to include this language—much less that it intentionally caused its omission. Instead, Cox again relies on conclusory allegations that are not sufficient as a matter of law. The entirety of Cox's allegations as they relate to Entropic's alleged intentional conduct are as follows:

> Entropic was aware of [the IPR Policy] and MaxLinear's obligation. Nevertheless, Entropic induced a breach of MaxLinear's contractual obligations by inducing MaxLinear to attempt to assign various patents for Entropic to enforce and for Entropic to seek damages, despite Entropic's awareness that such patents may reasonably contain essential patent claims. As a result of Entropic's actions, MaxLinear breached its contractual obligations.

Countercl. ¶ 558. Cox cites no ***factual*** allegations that Entropic ***actually*** interfered or intended to interfere with the IPR Policy. *See Moore v. Apple Inc.*, 309 F.R.D. 532, 546 (N.D. Cal. 2015) (citing *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998) ("Tortious interference with contract requires, among other things, proof of actual breach or actual interference.")). Instead, Cox makes vague assertions

6

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

that Entropic "induced a breach" by "inducing" MaxLinear's conduct. These "allegations are conclusory and therefore not entitled to be presumed true." *Iqbal*, 556 U.S. at 681. They thus do not suffice to plead a plausible claim.

Although not a California case, the opinion in *Precise Innovations* is on all fours here. *See Precise Innov's, LLC v. Aerospace Eng'g and Support, Inc.*, 2022 WL 834632 (D. Idaho Mar. 21, 2022).[6] The defendant in that case, AES, asserted a counterclaim for tortious interference, alleging that Precise Innovations had induced third party Hurricane Electronics to terminate an agreement that it had with AES. *See id.* at *1. Although AES alleged that Precise was aware of the Hurricane contract, "AES allege[d] no facts to explain how Precise allegedly persuaded Hurricane to terminate the contractual relationship, how this termination caused a breach of the contract, or how this conduct was wrongful." *Id.* at *3. The Court ruled that this did not suffice under the federal pleading standards of *Iqbal* and *Twombly* and dismissed the tortious interference claim. *Id*.

Cox similarly provides no details about how Entropic allegedly induced MaxLinear's conduct—for instance, it pleads no specific acts or communications on Entropic's part. Cox therefore fails to state a claim for interference. *See e.g. Soil Retention Prods.*, 521 F. Supp. 3d at 960 (plaintiff failed to state a claim for tortious interference where they alleged that "Defendant knew or should have known of the valid contracts" and "Defendant intended to disrupt the performance of these contracts or knew that disruption of performance under these contracts was certain or substantially certain"); *Dongguan Beibei Toys Indus. Co., Ltd. v. Underground Toys USA, LLC*, 2019 WL 8631502, at *2 (C.D. Cal. Dec. 16, 2019) (counterclaim-plaintiff failed to identify how counterclaim-defendant's actions disrupted the

---

[6] *Precise Innovations* applied Idaho law on tortious interference, which involves essentially the same elements as under California law. *See Precise Innov's.*, 2022 WL 834632 at *2 ("To state a claim for tortious interference with contract, a claim must allege: (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach.").

7
**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

contracts); *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at *12 (C.D. Cal. Apr. 21, 2023) (allegations in the complaint were too conclusory to plausibly allege defendant had an affirmative involvement in the alleged breach).

### C. Cox has not pled facts plausibly suggesting that it suffered any harm from any alleged breach because either MaxLinear or Entropic had the right to sue Cox for infringement under the IPR Policy's terms.

Finally, even if Cox had pled that Entropic intentionally induced a breach, its claim fails because it has pled no facts connecting that breach to any legally cognizable harm. To plead a tortious interference claim, a party must plausibly allege "defendant's intentional acts designed to induce breach or disruption of the contract; [] actual breach or disruption; and [] resulting damage." *Name.Space,* 795 F.3d at 1135. Here, aside from vague allegations that it "has been injured in their business or property, and has suffered and will continue to suffer damages" (Countercl. ¶ 559), the only harm that Cox even suggests it has suffered is having to defend against this lawsuit, which Entropic brought "to enforce [the Asserted Patents] and for Entropic to seek damages." Countercl. ¶ 558. These allegations cannot state a plausible claim for multiple reasons.

***First***, Cox does not plead that the IPR Policy grants it a right to be free of actions to enforce the patents or to seek damages. Indeed, the contrary is true. The IPR Policy specifically states that it "shall not prohibit the [signatory] Alliance Party from seeking or receiving damages in connection with [patent] infringement." Countercl. Ex. A, § 5.1.1. In other words, the IPR Policy specifically permitted MaxLinear to sue Cox for patent infringement and seek damages. *Id.* A claim that Entropic did what its predecessor-in-interest, MaxLinear, was contractually authorized to do cannot be a plausible allegation of "resulting damage" from any alleged breach of the IPR Policy.

8
**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

Indeed, the **only** conceivable right Cox had with respect to MaxLinear's patents under the IPR Policy was to ask for (and, after asking, receive) a license offer—a right it never even invoked. Thus, far from granting a license to Cox or anyone else, the IPR Policy merely required that, "upon written request of any other then-current Alliance Party, each Alliance Party agrees to offer and attempt to negotiate a license to" that party's patents that are essential to the MoCA standard. Countercl. Ex. A, § 5.1.1. Even assuming that Cox qualified as an "Alliance Party," Cox does not allege that it ever requested a license, that its request was denied or that it was offered a license on other than the required terms. *See* Countercl. ¶¶ 550–55; IPR Policy at § 5.1.1 (license only required to be given "upon the written request of any other then-current Alliance Party"). To the contrary, **Entropic** sought to initiate good-faith licensing discussions for the Asserted Patents, through multiple physical and electronic communications to Cox, which Cox ignored. *See* DE 1 ¶ 27; *see* Countercl. ¶ 27.

**Second**, even if the filing of this lawsuit was a cognizable harm to Cox, that harm is unconnected to the only supposed breach of the IPR Policy that Cox identified. A plausible tortious interference claim requires allegations not merely that the complaining party suffered some harm, but that it suffered harm "resulting" from the breach. *Name.Space,* 795 F.3d at 1135. As set forth above, the only breach Cox even alleged is that the agreement assigning the Asserted Patents to Entropic did not include a statement that the "assignment is subject to existing licenses and obligations to license imposed." Countercl. ¶¶ 539, 547. Even if that were true, having to defend this case cannot plausibly be harm "resulting" from that supposed breach. Cox does not allege that the supposedly-omitted provision would have barred Entropic from filing this suit. Nor could it—Cox does not and cannot allege that it had an "existing license" to the Asserted Patents, nor does it allege that it did anything to trigger an "obligation to license" the Asserted Patents to it. In short, in filing this suit and

seeking damages, Entropic is merely doing what MaxLinear had the right to do before the assignment, and what Entropic itself had the right to do afterward.

***Third***, Cox's argument that defending this case constitutes cognizable harm is precluded by the litigation privilege. *See, e.g.*, *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1130-31 (Cal. 1990) ("Under existing law, the only common law tort claim that treats the instigation or bringing of a lawsuit as an actionable injury is the action for malicious prosecution. . . . The bringing of a colorable claim is not actionable); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("[A] patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are.").

***Finally,*** there is no merit to Cox's assertion that it is entitled to receive an appropriate license from MaxLinear, and only MaxLinear. *See* Countercl. ¶ 555. Cox can point to no language in the IPR Policy that would confer such a right, nor does Cox allege any plausible reason why it would be harmed by having to negotiate with Entropic as opposed to MaxLinear. The policy plainly states that "the licensing obligations under this IPR Policy are intended to be binding (*e.g.*, as encumbrances) on all successors-in-interest regardless of whether such provisions are included." IPR Policy § 5.1.2. Thus, according to the plain language of the IPR Policy, Essential Patent Claims would continue to be subject to FRAND obligations, regardless of whether the patentee is MaxLinear, Entropic, or someone else entirely. Cox includes no allegations to the contrary.

### D.   There is no basis for voiding the assignment of the Asserted Patents to Entropic.

Although, in its Prayer for Relief, Cox does not explicitly request that the Court void the assignment of the Asserted Patents, (*See* Countercl. at 47–48), Cox does allege that the assignment violates the IPR Policy and is void. *See id.* ¶ 549. However,

Cox identifies no factual allegations, nor any language in the IPR Policy, that support this legal conclusion. Thus, to the extent that Cox actually seeks to void the assignment by virtue of its counterclaims, it has failed to actually seek that as a remedy and failed to articulate a legal or factual basis for doing so.

## V. CONCLUSION

For the foregoing reasons, Entropic respectfully requests that this Court dismiss Cox's tortious interference with contract claim against Entropic (Count II) with prejudice. Because the defects set forth above cannot be cured by any plausible amendment to the Counterclaim, such dismissal should be without leave to amend.

Dated: December 22, 2023

**K&L GATES LLP**

By: */s/ Cassidy T. Young*
Christina Goodrich (SBN 261722)
Connor J. Meggs (SBN 336159)
Cassidy T. Young (SBN 342891)
K&L Gates, LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com
cassidy.young@klgates.com

James A. Shimota (*pro hac vice*)
Katherine Allor (*pro hac vice*)
70 W. Madison Street, Ste 3300
Chicago, Illinois 60602
Telephone: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
katy.allor@klgates.com

Nicholas F. Lenning (*pro hac vice*)
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
(206) 370-6006 (fax)
nicholas.lenning@klgates.com

Peter E. Soskin (SBN 280347)
4 Embarcadero Center, Ste 1200
San Francisco, CA 94111

11
**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

| | |
|---|---|
| 1 | |
| 2 | Telephone: (415) 882-8220<br>peter.soskin@klgates.com |
| 3 | ***Attorneys for Plaintiff, Entropic Communications, LLC*** |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**

317186429.7

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Entropic Communications, LCC, certifies that this brief contains 3,570 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 22, 2023

**K&L GATES LLP**

By: */s/ Cassidy T. Young*
Christina Goodrich (SBN 261722)
Connor J. Meggs (SBN 336159)
Cassidy T. Young (SBN 342891)
K&L Gates, LLP
10100 Santa Monica Boulevard,
8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001
christina.goodrich@klgates.com
connor.meggs@klgates.com
cassidy.young@klgates.com

James A. Shimota (*pro hac vice*)
Katherine Allor (*pro hac vice*)
70 W. Madison Street, Ste 3300
Chicago, Illinois 60602
Telephone: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com
katy.allor@klgates.com

Nicholas F. Lenning (*pro hac vice*)
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
(206) 370-6006 (fax)
nicholas.lenning@klgates.com

Peter E. Soskin (SBN 280347)
4 Embarcadero Center, Ste 1200
San Francisco, CA 94111
Telephone: (415) 882-8220
peter.soskin@klgates.com

***Attorneys for Plaintiff, Entropic Communications, LLC***