# Exhibit C



Fish & Richardson P.C.
500 Arguello Street
Suite 400
Redwood City, CA 94063-1526
650 839 5070 main
650 839 5071 fax

**VIA ELECTRONIC MAIL**

BRahebi@mofo.com

December 21, 2023

**David M. Barkan**
Principal
barkan@fr.com
650 839 5065  direct

Bita Rahebi
Morrison & Foerster LLP
707 Wilshire Boulevard
Suite 6000
Los Angeles, CA 90017-3543

Re:   *Entropic Communications LLC v. Dish Network Corporation*, Case No. 2:23-cv-1043-JWH-KES
      Your Letter Dated December 15, 2023

Bita,

This letter responds to your letter, dated December 15, 2023, concerning Dish California's Counterclaims. Dish California will not voluntarily dismiss its Counterclaims because, as set forth below, Dish California has a good faith reasonable basis for asserting and maintaining its claims and because your complaints concerning the Counterclaims are premature.

Your letter makes two assertions concerning Dish California's Counterclaims.  First, you assert that Dish California has failed to "allege that it has ever requested a RAND license for the asserted patents or that it has been refused such a license."  (Letter at 1.)  Second, you assert that Dish California's Counterclaims cannot survive because, in your view, Dish California "obtained no rights under the MoCA IPR policy as an affiliate of Dish/EchoStar." While I understand that both assertions represent MaxLinear's view, Dish California will not dismiss its Counterclaims simply because MaxLinear has a different view regarding the merits of the claims.

As to the first of your assertions (concerning the request for a RAND license), we expect you are aware of pre-suit communications between DISH and Entropic/MaxLinear, including DISH's March 31, 2023, written request for Entropic's RAND licensing rates. This request was made on behalf of DISH and all of its subsidiaries, including Dish California.  While DISH does not believe that such a request is necessary in order for Entropic to comply with its obligations under the MoCA IPR policy (*see, e.g.,* MOCA IPR Policy at § 7.2), Dish California is nonetheless willing to amend its Counterclaims in order to specifically make reference to this written request.  We trust this will resolve your complaint regarding the alleged failure to request RAND rates.

As to the second of your assertions (concerning the ability of DISH's subsidiaries to enforce the MoCA IPR policy), we clearly have a different understanding of MoCA's IPR policy than that advanced by your client.  Nonetheless, your complaint here is premature as Entropic has also sued DISH Network Corporation.  Even assuming your narrow view of the MoCA IPR policy were correct (it is not—as explained below), DISH Network Corporation would undoubtedly have the right and

Case 2:23-cv-01043-JWH-KES   Document 252-4   Filed 01/03/24   Page 3 of 5   Page ID #:10433



**Bita Rahebi**
**December 21, 2023**
Page 2

ability to enforce the terms of the MoCA IPR policy. The reason DISH Network Corporation hasn't answered and filed its own counterclaims yet is because Entropic chose to sue DISH Network Corporation and other DISH entities ("DISH Colorado") in an improper venue. If Entropic were to bring this case against DISH Colorado in an appropriate venue, or if DISH Colorado's venue motion is denied, the Dish Colorado entities will assert the very same counterclaims and your complaints will be moot.

Given that your complaints appear to only relate to Dish California asserting these Counterclaims, and given that the venue issue remains pending, we think it best to wait to resolve any issues relating to the Counterclaims until the venue issue is resolved. To that end, we would propose extending the deadline for Entropic and MaxLinear to answer or otherwise respond to the counterclaim complaint until twenty-one days after DISH Colorado defendants answer and assert counterclaims in this case (assuming the venue motion is denied). Please let us know whether MaxLinear is amendable to an extension that would allow consideration of the Counterclaims in light of all of the DISH defendants whom Entropic has sued. (I note that we made a similar proposal to you via email before the transmission of this letter, and you all declined.)

If MaxLinear is not agreeable to an extension, as it appears it is not, we nonetheless have confidence that MaxLinear's motion to dismiss will be denied because Dish California has a colorable basis for bringing and maintaining its claims against MaxLinear.

First, you assert that Dish California has no rights under the MoCA IPR policy to enforce its contractual terms against MaxLinear. It is unclear why you believe this prohibits Dish California from bringing **all seven** of its Counterclaims, nor does your letter explain why. Indeed, your letter broadly asserts that "none of the claims and theories that Dish California asserts in its Counterclaims is warranted" without discussing each of the causes of action alleged by Dish California.

Most of Dish California's Counterclaims do not, as your letter assumes, rely on a theory that Dish California is a third-party beneficiary of the contract Entropic entered into as a member of MoCA. For example, Dish California's third count seeks a declaration that the assignment from MaxLinear to Entropic is void because it did not contain language required by the MoCA IPR policy for assignment of patents. Nothing about this claim requires a determination that Dish California is a third-party beneficiary of the agreement. Similarly, Dish California's fifth count alleges fraud and negligent representation based on statements made by Entropic Communications Inc. and MaxLinear to MoCA; and Dish California's Seventh Count seeks a declaration that Entropic's patents are unenforceable due to standards-setting misconduct—again claims that do not require a determination that Dish California is a third-party beneficiary as they do not seek to enforce the terms of a contract or seek damages for breach of a contract. Rather, these causes of action raise tortious and other



**Bita Rahebi**
**December 21, 2023**
Page 3

wrongful conduct undertaken by MaxLinear that has harmed Dish California – harm which Dish California can remedy through the assertion of these claims.

As to the other claims, contrary to your assertion, Dish California also has the right to enforce the terms of the MoCA IPR policy precisely because Dish California is a third-party beneficiary of Entropic/MaxLinear's contract with MoCA. As numerous courts have recognized, "[c]ompanies seeking to license under [FRAND] terms become third-party beneficiaries of the contract between the [SEP] holder and the [SSO]. They are thus enabled to enforce the terms of that contract." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 481 (5th Cir. 2021); *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1031 (9th Cir. 2015) ("an SEP holder cannot refuse a license to a manufacturer who commits to paying the RAND rate …"). The reasons underlying this right are plain: "[t]o combat the potential for anticompetitive behavior …" *HTC*, 12 F.4th at 481; *see also Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) (noting that the FRAND commitment ensures that an standard implementor "cannot . . . . maintain[] a patent monopoly" by refusing to "licens[e] others to use the invention or by granting licenses under special conditions designed to preserve that monopoly."). In other words, a promise to license on RAND terms by implementors of a standard must be enforceable by users of the standard—less the implementors of the standard have the potential to engage in unfair anti-competitive behavior. *See id.*; *see also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 506-07 (1988) (noting that, although private standard-setting is permitted under the antitrust laws because of the understanding that it will "offer[] procompetitive benefits," "the hope of [such] procompetitive benefits depends upon the existence of safeguards sufficient to prevent the standard-setting process from being biased by members with economic interests in restraining competition"); *HTC Corp. v. IPCom GmbH & Co., KG*, No. CV 08-1897 (RMC), 2010 WL 11719073, at *6 (D.D.C. Nov. 5, 2010) (finding that when a subsequent purchaser of RAND-committed patents and then "rejected FRAND," the patent owner "became an unconstrained and unlawful monopolist in violation of antitrust laws.").

Here, it appears your client is attempting to avoid scrutiny under the anti-trust laws by agreeing to a RAND commitment for its purported SEPs, but at the same time avoid any actual enforcement of that RAND commitment by arguing not all adopters of a standard are able to enforce that promise. MaxLinear cannot have it both ways. Either MaxLinear has engaged in unfair and anti-competitive behavior by inducing others to adopt the MoCA standards (accompanied by RAND promise)—only to pull the rug out from the users of the standard; or MaxLinear must abide by its promise to MoCA and to the users of the MoCA standard. We believe the latter is appropriate—i.e. that MaxLinear must abide by its RAND commitment—and more consistent with generally-acceptable principles concerning RAND commitments and the anti-trust laws. Indeed, the MoCA IPR Policy itself explicitly provides that it is "intended to comply with all applicable law, **including all federal and**



**Bita Rahebi**
**December 21, 2023**
Page 4

***state antitrust laws.***" (Emphasis added.) In order to comply with the anti-trust laws, the RAND promise ***must*** be enforceable by any company that chooses to implement the standard.

We are aware of the language from the EchoStar agreement highlighted in your letter. We have doubts that MoCA and its members can contract themselves out of promises required to protect consumers against anti-competitive behavior—as discussed above. At a minimum, these highlighted provisions are ambiguous in light of the provisions of the IPR Policy itself. For example, DISH/Echostar, as former Alliance Member, has the right to request and obtain a RAND license to MoCA SEPs. Pursuant to the IPR Policy, that license must be given "to the extent necessary to use, make, have made, offer for sale, sell and import Fully Compliant Products …" Certainly, under such terms, Dish California is and would be a licensee, and is thus an intended beneficiary of the RAND licensing provision.

In light of these and other arguments Dish California may bring in response to a motion to dismiss, Dish California unquestionably has a Rule 11 basis for pursuing and maintaining its claims. Dish California therefore will not voluntarily dismiss them. However, as discussed above, Dish California is willing amend its Counterclaims, including adding clarification in response to some of the issues raised in your letter. Please let me know when you are available to discuss the timing of Dish California's potential amendment and the subsequent date for MaxLinear to respond to the amended counterclaim complaint.


Very Best,

/s/ *David Barkan*

David Barkan