Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
cassidy.young@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

(additional counsel listed
on signature page)

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION, *et al.*,<br><br>Defendants. | Case No.: 2:23-cv-01043-JWH-KES (Lead Case)<br>Case No.: 2:23-cv-01047-JWH-KES (Related Case)<br>Case No.: 2:23-cv-01048-JWH-KES (Related Case)<br>Case No.: 2:23-cv-05253-JWH-KES (Related Case) |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>Defendants. | [Assigned to the Honorable John W. Holcomb]<br><br>**ENTROPIC COMMUNICATIONS, LLC'S OPPOSITION TO COMCAST DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**<br><br>Date: January 26, 2024<br>Time:  9:00 AM<br>Courtroom:  9D |

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

ENTROPIC COMMUNICATIONS, LLC,

Plaintiff,

v.

COMCAST CORPORATION, *et al.*,

Defendants.

ENTROPIC COMMUNICATIONS, LLC,

Plaintiff,

v.

DIRECTV, LLC, *et al.*,

Defendants.

1

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I.      **INTRODUCTION** .................................................................................3

II.    **JUDICIAL STANDARD** .................................................................5

      A.    **Rule 12(b)(6) of the Federal Rules of Civil Procedure** ...............5

      B.    **Rule 12(b)(1) of the Federal Rules of Civil Procedure** ...............5

III.   **ARGUMENT** ....................................................................................6

      A.    **The SAC sufficiently alleges that Comcast willfully infringed each of the Asserted Patents.**.............................................6

              1.    **The allegations regarding Comcast's post-suit conduct are sufficient to plead Comcast's willful infringement.**..........6

              2.    **The allegations related to Comcast's investment in Entropic Inc. and participation in MoCA are sufficient to plead Comcast's willful infringement.**.............................11

              3.    **The allegations regarding Comcast's other pre-suit conduct are sufficient to plead Comcast's willful infringement and permit discovery.**.................................14

      **B.**    █████████████████████████████████████████....18

IV.   **CONCLUSION** ...............................................................................19

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.*,
   755 F.2d 1559 (Fed. Cir. 1985) ...................................................................11, 18

*Apple Inc. v. Samsung Elecs. Co.*,
   258 F. Supp. 3d 1013 (N.D. Cal. 2017)................................................................8

*Arctic Cat Inc. v. Bombardier Rec. Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ............................................................9, 12, 16

*Collins & Aikman Prod. Co. v. Sermatech Eng'g Grp., Inc.*,
   746 N.Y.S.2d 698 (2002)........................................................................................7

*Core Optical Techs., LLC v. Juniper Networks Inc.*,
   562 F. Supp. 3d 376 (N.D. Cal. 2021)................................4, 15, 16, 17

*DermaFocus LLC v. Ulthera, Inc.*,
   201 F. Supp. 3d 465 (D. Del. 2016) .....................................................................8

*Finjan, Inc. v. Eset, LLC*,
   2017 WL 1063475 (S.D. Cal. March 21, 2017) ....................................................8

*Graco, Inc. v. Binks Mfg. Co.*,
   60 F.3d 785 (Fed. Cir. 1995) ........................................................................12, 17

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   579 U.S. 93 (2016)........................................................................................9, 10

*Harris v. Cnty. of Orange*,
   682 F.3d 1126 (9th Cir. 2012) .............................................................................5

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
   2017 WL 1129951 (E.D. Tex. Feb. 21, 2017)........................................................8

*Microsoft Corp. v. Motorola, Inc.*,
   864 F. Supp. 2d 1023 (W.D. Wash. 2012) ........................................................12

*Monolithic Power Sys., Inc. v. Silergy Corp.*,
   127 F. Supp. 3d 1071 (N.D. Cal. 2015)................................................................8

2

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

*MyMedicalRecords, Inc. v. Jardogs, LLC*,
 1 F. Supp. 3d 1020 (C.D. Cal. 2014)..................................................8, 9

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
 779 F.3d 1036 (9th Cir. 2015) ...........................................................19

*Pacing Techs., LLC v. Garmin Intern., Inc.*,
 2013 WL 444642 (S.D. Cal. Feb. 5, 2013)..........................................10

*Pixton v. B & B Plastics, Inc.*,
 291 F.3d 1324 (Fed. Cir. 2002) ....................................................11, 18

*Potter Voice Techs., LLC v. Apple Inc.*,
 24 F. Supp. 3d 882 (N.D. Cal. 2014)...................................................13

*Raytheon Co. v. Cray, Inc.*,
 2017 WL 1362700 (E.D. Tex. March 13, 2017) ....................................8

*Rowe v. Educ. Credit Mgmt. Corp.*,
 559 F.3d 1028 (9th Cir. 2009) .............................................................5

*Simplivity Corp. v. Springpath, Inc.*,
 2016 WL 5388951 (D. Mass. July 15, 2016) ........................................8

*Starr v. Baca*,
 652 F.3d 1202 (9th Cir. 2011) .............................................................5

*T–Rex Prop. AB v. Regal Entm't Grp.*,
 2017 WL 4229372 (E.D. Tex. Aug. 31, 2017)......................................8

*TeleSign Corp. v. Twilio, Inc.*,
 2015 WL 12765482 (C.D. Cal. Oct. 16, 2015) .....................................8

*Vaporstream, Inc. v. Snap Inc.*,
 2020 WL 136591 (C.D. Cal. Jan. 13, 2020) .........................................8

*ViX Swimwear, Inc. v. SBC Clothing, Inc.*,
 2015 WL 3905097 (S.D. Cal. June 25, 2015) ......................................19

*Warn Indus., Inc. v. Agency 6 Inc.*,
 660 F. Supp. 3d 924 (E.D. Cal. 2023) ............................................11, 12

*Warren v. Fox Fam. Worldwide, Inc.*,
 328 F.3d 1136 (9th Cir. 2003) .............................................................6

3

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

*YellowCake, Inc. v. DashGo, Inc.,*
  2022 WL 172934 (E.D. Cal. Jan. 19, 2022) ........................................................ 19

*Zimmer Surgical, Inc. v. Stryker Corp.,*
  2017 WL 3736750 (D. Del. Aug. 30, 2017) ........................................................ 8

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ............................................................. 5, 6, 18, 19

Fed. R. Civ. P. 12(b)(6) ............................................................. 4, 5, 6, 18

Fed. R. Civ. P. 15(d) ............................................................. 4, 18, 19

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The Second Amended Complaint ("SAC") and supplement add detailed factual allegations concerning Comcast's willful infringement of the MoCA patents. Specifically, the SAC alleges that Entropic Inc., the then-patent owner, sent an email to the MoCA Board—including Comcast—informing them that the '518 Patent is essential to the MoCA standard, a standard Comcast was intimately involved in developing and promoting, and has used long since that time, continuing through today, despite knowing that the '518 Patent is essential to practicing that standard. SAC ¶¶ 133–36. At a minimum, these allegations establish that Comcast was willfully blind and knew of a high risk that it was infringing the '518 Patent, as well as the '759 Patent (a continuation of the '518). *Id.* ¶¶ 137–38.

In addition to these new allegations, however, the SAC and its accompanying supplement provide three further reasons to deny Comcast's motion. First, Entropic has followed the Court's guidance in its Order (1043 DE 175) and added specific and voluminous factual allegations regarding the close relationship and collaboration between Charter and Comcast in the cable industry. *See* 1043 DE 207-1 ("SAC") ¶¶ 68–90. These allegations amply support (and render more than plausible) Entropic's ultimate factual allegations that Comcast was aware of the prior litigation against Charter regarding the Asserted Patents, analyzed the infringement claims in that litigation, and concluded that Comcast infringes the Asserted Patents in substantially the same or identical manner as that alleged in Charter. Indeed, Entropic even specifically alleges that Comcast sought indemnification for Entropic's claims and contacted the RPX industry group regarding Entropic's claims ***before Entropic even filed suit against Comcast***. *Id.* ¶ 93. Entropic's allegations, following the Court's guidance, are more than sufficient.

Comcast, however, remains steadfast in its desire to win this case before any discovery can uncover the truth. Comcast attacks Entropic's well-pleaded allegations

with a new legal argument—proposing that willful infringement can arise only where Charter *itself* informed Comcast of the infringement, rather than Comcast having become aware on its own. This withstands neither logic nor precedent. There is no limitation in the law as to *how* the requisite state of mind arose. To propound the argument at all, Comcast must argue that the holding of *Core Optical Techs., LLC v. Juniper Networks Inc.*, 562 F. Supp. 3d 376 (N.D. Cal. 2021) is somehow strictly limited with respect to how the willful infringer obtained its awareness. But as the Court itself recognized in its Order, a tight-knit industry increases the plausibility of allegations that players within that industry would be aware of lawsuits against their competitors. As discussed further below, that is exactly what Entropic alleges.

Second, Entropic's SAC and supplement include ample allegations of post-suit willful infringement based on Comcast's detailed knowledge of the Asserted Patents and its infringement through the Complaints, attached claim charts, and subsequent infringement contentions. *Id.* ¶¶ 158–81. While Comcast urges that this Court should ignore such conduct and hold that *all* post-suit willful infringement is barred, the majority (and more persuasive and judicially efficient) view is that willful infringement may reach all conduct, including post-suit conduct.



**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

1 [REDACTED]

2 [REDACTED]

3        In sum, Entropic's new allegations clear the plausibility hurdle for willful patent

4 infringement as to all Asserted Patents, and this case should now proceed to discovery.

5 [REDACTED]

6 [REDACTED] Entropic respectfully

7 therefore requests the Court deny Comcast's motion.

8 **II.    JUDICIAL STANDARD**

9        **A.    Rule 12(b)(6) of the Federal Rules of Civil Procedure**

10        Dismissal pursuant to Rule 12(b)(6) is based on a determination that the claim,

11 as pled, has no substantive merit. The barrier to dismissing a claim at this stage, with

12 no discovery, is correspondingly very high. At the pleading stage, a court must "accept

13 all factual allegations in the complaint as true and construe the pleadings in the light

14 most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d

15 1028, 1029–30 (9th Cir. 2009) (citation and quotation omitted). A complaint need only

16 "contain[] 'sufficient factual matter, accepted as true, to state a claim of relief that is

17 plausible on its face.'" *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012)

18 (quoting *Ashroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, "[i]f there are two alternative

19 explanations, one advanced by [a] defendant and the other advanced by [a] plaintiff,

20 both of which are plausible, [a] plaintiff's complaint survives a motion to dismiss under

21 Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

22        **B.    Rule 12(b)(1) of the Federal Rules of Civil Procedure**

23        Subject matter jurisdiction challenges arise under Rule 12(b)(1). Jurisdiction is a

24 question of whether the Court has the *authority* to hear a claim. In contrast to Rule

25 12(b)(6), the *merits* of a claim are irrelevant to the question of *authority*—the Court

26 either has authority, or lacks it, on the basis of the claim itself, not on its eventual

27 outcome. Because jurisdiction invokes the Court's authority to make any determination

28 at all, the standards are slightly relaxed compared to challenges under Rule 12(b)(6).

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

"A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). But the safeguards applicable to the Rule 12(b)(6) context apply also to Rule 12(b)(1) where the jurisdictional challenge inextricably implicates the merits of a claim: "[w]here jurisdiction is intertwined with the merits, [the Court] must 'assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record.'" *Warren*, 328 F.3d at 1139 (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

## III.  <u>ARGUMENT</u>

### A.  **The SAC sufficiently alleges that Comcast willfully infringed each of the Asserted Patents.**

#### 1.  **The allegations regarding Comcast's post-suit conduct are sufficient to plead Comcast's willful infringement.**

Comcast does not contest that Entropic's factual allegations of post-suit conduct sufficiently allege that Comcast had post-suit knowledge of the Asserted Patents and had specific, detailed knowledge that it was infringing (and continues to infringe) these patents. Nor could it—Entropic's Complaints provided detailed notice of the Asserted Patents and Comcast's infringement, including attached claim charts. SAC ¶¶ 161–70; *see generally* 1048 DE 1, 67. Even if that were insufficient, Entropic has provided substantial and detailed infringement contentions for each Asserted Patent that further provided notice of Comcast's infringement of the Asserted Patents. *Id*. ¶¶ 171–77. Rather than contest the sufficiency of these allegations, Comcast instead asserts that: (1) the VSA prohibited the original Complaint in this case, so it cannot serve to provide Comcast with notice of its willful infringement; and (2) the Court should adopt the minority position as to post-suit willful infringement and find that it is categorically insufficient. Opp. at 21:16–264. Both arguments lack merit.

First, whether the VSA was breached or contravened by Entropic's original Complaint does not erase that Complaint from history nor Comcast's corporate mind.

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

Comcast indisputably received the original Complaint and accompanying claim charts, and reviewed those materials. *See* 1048 DE 1, 19–21, 67. Comcast does not contest that if Entropic had sent the Complaints and infringement contentions to Comcast without filing a lawsuit that it would have been sufficient to allege willful infringement. Instead, Comcast argues that the fact that Entropic filed the lawsuit somehow nullifies Comcast's knowledge of its infringement and forever protects Comcast from willful infringement. As Comcast alludes in its brief, Comcast's argument may implicate a breach of contract,[1] but it does not eliminate Comcast's knowledge of both the Asserted Patents and Comcast's specific and knowing infringement thereof. And indeed, the contract itself does not contain the language Comcast now wishes to insert—delineating between pre-suit and post-suit willfulness—and Comcast cannot rewrite the VSA to invent such a distinction. *See Collins & Aikman Prod. Co. v. Sermatech Eng'g Grp., Inc.*, 746 N.Y.S.2d 698, 700 (2002) ("[C]ovenants not to sue, when considered purely defensively, are narrowly construed because they have the effect of exculpating a party from its own wrongdoing.").

Comcast indisputably has had detailed knowledge of the Asserted Patents and how it is infringing the Asserted Patents on an ongoing basis since at least the filing of the original Complaint and subsequent service of infringement contentions (each of which independently provided notice). SAC ¶¶ 158–75. Despite this, Comcast has continued to infringe the Asserted Patents. *Id.* ¶¶ 176–77. This is paradigmatic willful patent infringement, which is specifically carved out in the VSA even under Comcast's own interpretation. 1048 DE 82-2 ("VSA") § 7.3. Whether the Court had subject matter jurisdiction over the Original Complaint is entirely irrelevant to Comcast's knowledge and state of mind concerning its continued infringement of the Asserted Patents. This result also comports with the language of the VSA itself, which is agnostic as to the

---

[1] Comcast's assertion that the Original Complaint breached the covenant also is without merit—the Original Complaints alleged willful patent infringement of all asserted patents. *See* 1048 DE 1; 1050 DE 1.

7

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

method by which Comcast obtains its knowledge and begins its willful infringement. *Id.*

Second, Comcast's arguments that this Court should categorically reject post-suit willfulness are based on a ***minority*** view—both nationally and within this District—that is unpersuasive and contrary to policy. This Court should instead adopt the ***majority*** view that post-filing conduct may be the basis for willful infringement. *See Vaporstream, Inc. v. Snap Inc.*, 2020 WL 136591, at *20 (C.D. Cal. Jan. 13, 2020) ("[A] claim for willful infringement can be based on post-filing conduct alone."); *TeleSign Corp. v. Twilio, Inc.*, 2015 WL 12765482, at *10 (C.D. Cal. Oct. 16, 2015) (denying motion to dismiss willful infringement allegations based on post-filing notice alone); *MyMedicalRecords, Inc. v. Jardogs, LLC*, 1 F. Supp. 3d 1020, 1026 (C.D. Cal. 2014) ("A defendant should not be able to escape liability for postfiling infringement when the complaint manifestly places the defendant on notice that it allegedly infringes the patents-in-suit."); *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1027 (N.D. Cal. 2017) ("[P]ost-filing conduct alone can serve as the basis of a jury's willfulness finding and an award of enhanced damages."); *Monolithic Power Sys., Inc. v. Silergy Corp.*, 127 F. Supp. 3d 1071, 1076 (N.D. Cal. 2015) ("[A] plaintiff can state a claim for post-filing willful infringement so long as the plaintiff alleges, in an amended complaint and with sufficient particularity, that there is an objectively high risk the defendant is continuing to infringe and the defendant knows or should know of that objectively high risk."); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016) (upholding willfulness claim based on allegations of post-filing conduct); *Simplivity Corp. v. Springpath, Inc.*, 2016 WL 5388951, at *18 (D. Mass. July 15, 2016) (same).[2]

---

[2] *See also T–Rex Prop. AB v. Regal Entm't Grp.*, 2017 WL 4229372, at *8 (E.D. Tex. Aug. 31, 2017); *Zimmer Surgical, Inc. v. Stryker Corp.*, 2017 WL 3736750, at *2 (D. Del. Aug. 30, 2017); *Finjan, Inc. v. Eset, LLC*, 2017 WL 1063475, at *4 (S.D. Cal. March 21, 2017); *Raytheon Co. v. Cray, Inc.*, 2017 WL 1362700, at *5 (E.D. Tex. March 13, 2017); *Huawei Techs. Co. v. T-Mobile US, Inc.*, 2017 WL 1129951, at *4 (E.D. Tex. Feb. 21, 2017); *Simplivity Corp. v. Springpath, Inc.*, 2016 WL 5388951, at *18 (D. Mass. July 15, 2016); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016).

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

The position advanced by Comcast would permit defendants to escape liability for willful infringement for conduct that occurs after the plaintiff files its complaint—a result directly contrary to the Supreme Court's holding that "Section 284 allows district courts to punish the **full range** of culpable behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 106 (2016) (emphasis added); *see also MyMedicalRecords, Inc.*, 1 F. Supp. 3d at 1026 ("[I]f a plaintiff [] is able to establish the defendant's knowledge of the alleged infringement based on a prior, though superseded, complaint, the defendant should not be able to escape liability for conduct occurring after the plaintiff files its complaint.").

Comcast's arguments, and the cases quoted by Comcast in support, are rooted in a fundamental error conflating willful patent infringement and enhanced damages under Section 284. They are not the same thing. To plead willful patent infringement, a patentee need only prove knowledge of the patent and knowledge of infringement. *Arctic Cat Inc. v. Bombardier Rec. Prod. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017). Enhanced damages under Section 284, however, requires more and is "generally reserved for egregious cases of culpable behavior" that has "been variously described in [Federal Circuit] cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo*, 579 U.S. at 103–04. In sum, willful patent infringement is "a necessary but not necessarily sufficient predicate, for a finding of egregious misconduct and enhanced damages." *Sonos, Inc.*, 591 F. Supp. 3d at 643 (citing *SRI Int'l, Inc. v. Cisco Sys,. Inc.*, 930 F.3d 1295, 1310 (Fed. Cir. 2019)). "Since *Halo*, the Court of Appeals for the Federal Circuit has explained that egregiousness is for the district judge to decide *after* the verdict. *Id.* (citing and quoting *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)). At the pleading stage, this means that "once willfulness is adequately pled, the complaint need not go further and specify the further aggravating circumstances warranting enhanced damages." *Id.* at 644.

Understanding this distinction lays bare the irrelevance of Comcast's assertion that a patentee would "always [be able] to file an amended complaint to assert willfulness based on knowledge gleaned from the earlier complaint." Opp. at 24:9–10. A defendant with a good faith belief in its defenses has nothing to fear from willful infringement because it cannot be subject to enhanced damages under Section 284 under *Halo*. But a defendant who reviews a complaint, determines a high risk that it is infringing the asserted patent, and lacks any good faith defenses to infringement such that its conduct is egregious under *Halo, **and yet continues to infringe***, rightfully should be held accountable. Comcast's view is that—even if a judge determines after trial that a defendant's conduct was egregious—such a defendant nonetheless should escape consequences for its egregious conduct merely because its notice comes via a complaint. That result is contrary to policy and the plain language of Section 284.

Even were this Court to adopt the minority view, however, Comcast's argument ***still*** fails because of an exception for plaintiffs like Entropic. That exception applies where "a patentee that neither practices its invention nor directly competes with the alleged infringer may be excused from the injunction requirement." *Pacing Techs., LLC v. Garmin Intern., Inc.*, 2013 WL 444642, at *3 n.3 (S.D. Cal. Feb. 5, 2013). This is because the primary policy concerns animating the minority view—that a patentee should seek a preliminary injunction to bar ongoing infringement rather than pursue willful infringement—is absent for plaintiffs such as Entropic who are categorically barred from obtaining such injunctive relief. *Id*. Entropic thus fits squarely within this explicit exception to the minority rule Comcast seeks adherence to and its argument fails even if its unpersuasive position were adopted.

In sum, the Court should reject Comcast's arguments that seek to nullify Entropic's well-pled factual allegations that Comcast obtained knowledge of both the Asserted Patents and its specific infringement of those patents through the Complaints and infringement contentions in this case, and yet has continued to infringe, constituting willful patent infringement no later than when Comcast obtained such knowledge. This

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

Court should adopt the majority view regarding post-suit willful patent infringement, hold that this Court maintains subject matter jurisdiction over these claims, and deny Comcast's motion, permitting the case to proceed to discovery.

**2.      The allegations related to Comcast's investment in Entropic Inc. and participation in MoCA are sufficient to plead Comcast's willful infringement.**

Comcast argues that Entropic's allegations about Comcast's investment in Entropic Inc. and Comcast's involvement in MoCA are insufficient to establish that Comcast had knowledge of the filing of the Asserted Patents. Opp. at 34:17–35:6. As an initial matter, Comcast's suggestion that these allegations are not specific or narrow enough flies in the face of the well-settled standard for pleading willfulness. Courts have repeatedly recognized that at the early pleading stage, a party cannot possibly know the full extent of a party's willful infringement[3]—because that information often is within the sole possession of the infringer—so allegations of willfulness are to be read holistically and in the light most favorable to the plaintiff. *Warn Indus., Inc. v. Agency 6 Inc.*, 660 F. Supp. 3d 924, 935 (E.D. Cal. 2023) (finding plaintiff sufficiently pled willful infringement by alleging that defendant was aware of the pre-publication grant of asserted patent and received cease and desist letter from plaintiff); *see also Sonos, Inc.*, 591 F. Supp. 3d at 644–45 ("The full extent of egregious behavior is . . . unknown at the pleading stage. It would be unreasonable to expect patent plaintiffs to be in a position to plead the full extent of egregious misconduct.").

To demand that a party identify with immense specificity the particulars of when, where, and how the defendant became aware of its infringement without ***any discovery***—precisely what Comcast urges here—would convert the pleading stage into summary judgment. Worse, it would offer willful infringers ample opportunity to avoid discovery merely through successfully hiding enough of its conduct, which is precisely

---

[3] Yet another reason the VSA is properly considered a defense, not a bar to suit. *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 1563–64 (Fed. Cir. 1985); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1327 (Fed. Cir. 2002).

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

what Comcast is doing now in refusing to produce *any* documents on its own VSA defense or willfulness. *See* DE 174. This is not what the law requires. Instead, the law applies a lenient pleading standard for willful infringement that merely requires plausible allegations of the defendant's knowledge of the asserted patents and its infringement of those patents. *Arctic Cat Inc.*, 876 F.3d at 1371; *Warn Indus., Inc. v. Agency 6 Inc.*, 660 F. Supp. 3d 924, 935 (E.D. Cal. 2023) (finding plaintiff sufficiently pled willful infringement by alleging that defendant was aware of the pre-publication grant of asserted patent and received cease and desist letter from plaintiff). This is exactly what Entropic has done—in spades.

Similarly, Comcast incorrectly suggests that allegations that the Court previously found insufficient on their own must now be disregarded for all time. To the contrary, the Federal Circuit has "stated many times that a number of factors enter into a willfulness determination and, as such, the issue is properly resolved by evaluating the totality of the surrounding circumstances." *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995). Thus, the fact that certain allegations may have been insufficient on their own to establish willfulness does not mean that those allegations are now stricken from the complaint for all time. The totality of Entropic's allegations is more than sufficient to plead Comcast's willful infringement.

In any event, Entropic's allegations about Comcast's investment in Entropic Inc. and Comcast's involvement in MoCA are more than sufficient to establish Comcast's willful infringement of the Asserted Patents. Comcast argues that these allegations establish only that Comcast would have been aware of a "patent portfolio" or "patent applications," but not the Asserted Patents themselves. *Id.* To the contrary, the SAC alleges that Comcast was an "early and active member of MoCA" who "helped to develop the MoCA standard." SAC ¶ 126. Comcast thus would have *needed* to be aware of the patented technology that would be essential to the practice of the MoCA standard. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1027 (W.D. Wash. 2012) (explaining the need for members of standards setting organizations to identify

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

patents that are essential to the proposed standard). The SAC then identifies six specific patents that were filed during the time that MoCA was being developed by Comcast and others. SAC ¶ 128. The SAC specifies that these patents are essential to the practice of MoCA. *Id.* Based on Comcast's heavy involvement in the development of the MoCA standard, it is therefore more likely than not that Comcast was aware of these patents and tracked them through issuance.

Comcast then takes issue with Entropic's allegations regarding an email sent by Anton Monk to the MoCA Board of Directors that specifically identifies Entropic Inc.'s ownership of the '518 Patent and states that the '518 Patent is essential to the practice of MoCA. *Id.* ¶¶ 133–36. ██████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████ Opp. at 35:14–36:11. None of these arguments are persuasive.

First, Entropic does not need to allege which specific Comcast employee received the email in order to plausibly allege that Comcast was put on notice of its infringement. Indeed, "[i]t is well established that corporations act through their employees and an agent's knowledge will generally be imputed to the corporate principal so long as employees are acting within the scope of their employment." *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 886 (N.D. Cal. 2014); *see also i4i Ltd. P'ship*, 598 F.3d at 860 (finding substantial evidence supporting a finding of willful infringement where defendant company's employees received plaintiff's sales kit citing the asserted patent and went to plaintiff's software demonstrations). Here, the SAC alleges that Monk's email was sent to MoCA Board of Directors, and "Comcast was a member of the Board at the time and therefore *received this notice from Entropic*." SAC ¶¶ 134–35. This is sufficient to plausibly allege that the Comcast employees involved in MoCA and the development of the infringing technology were put on notice of the '518 Patent.

Second, Entropic's allegations are not insufficient simply because they do not specify a version of MoCA or identify specific products that practice the '518 Patent. Monk's email put MoCA Board members on notice that any technology practicing MoCA would infringe the '518 Patent. The SAC establishes that Comcast was involved in the development of the standard, and that Comcast was in the process of developing its own technology essential to the practice of the MoCA standard during this same time. *Id.* ¶¶ 125–38. Comcast subsequently practiced the MoCA standard (and continues to do so). *Id.* ¶¶ 125–31. Comcast therefore had knowledge of a high risk that its use of MoCA infringed the '518 Patent. *Id.* ¶¶ 133–36. Third, Comcast's argument that this allegation should be ignored simply because it was sent 15 years ago fails for this same reason—this email put Comcast on notice of its infringement at the time, and that knowledge persists. Moreover, the SAC alleges that Comcast "continued to monitor and analyze Entropic's MoCA-related patents and was aware of later-filed patents that are standard-essential to MoCA simply due to the importance of MoCA to Comcast's business and Comcast's later involvement as a board member of the MoCA." *Id.* ¶ 130.

At the very least, these allegations establish that Comcast was willfully blind to its infringement of the '518 Patent and the '759 Patent, which is a continuation of the '518 Patent. *See Corephotonics, Ltd.*, 2018 WL 4772340, at *9 (N.D. Cal. Oct. 1, 2018) (allegations created inference that defendant "was at least willfully blind to a high risk that it was infringing [plaintiff's] patents" where defendant purposefully neglected to investigate plaintiff's patents to avoid confirming that it was infringing the asserted patents). Thus, Entropic's allegations regarding Comcast's involvement in MoCA are sufficient to establish Comcast has willfully infringed the Asserted Patents.

### 3. The allegations regarding Comcast's other pre-suit conduct are sufficient to plead Comcast's willful infringement and permit discovery.

Entropic has sufficiently pled willful infringement through additional facts alleged in the SAC regarding Comcast's knowledge of the Charter litigation and close

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

relationship with Charter. *See Core Optical Techs., LLC v. Juniper Networks Inc.*, 562
F. Supp. 3d 376, 381 (N.D. Cal. 2021) (willful infringement may be established if the
alleged infringer learned of the patent in a previous lawsuit). In Entropic's SAC,
Entropic alleges that Comcast had knowledge of its infringement of the Asserted Patents
based on its awareness of the patent infringement suits filed by Entropic against Charter
in the Eastern District of Texas, Case No. 2:22-CV-00125-JRG and Case No. 2:23-CV-
00052-JRG.[4] SAC ¶¶ 68–69. These suits involved infringement by largely the same
technology at issue in this action—and Entropic has specifically alleged that Comcast
infringes the asserted patents in substantially the same manner as Charter—indeed, for
many of the asserted patents, in *identical* manner because Comcast and Charter use
common suppliers (and identical products) for cable modems and set-top boxes. SAC
¶¶ 72–74, 79–81. Entropic also alleges that Charter and Comcast closely collaborate to
develop new technology and programs to drive the industry forward through
organizations like MoCA and the Society of Cable Telecommunications Engineers—
and even are involved in joint business ventures. *Id.* ¶¶ 70, 76. Entropic further alleges
that Comcast and Charter have monthly meetings together and have specifically
collaborated on accused technologies. *Id.* ¶ 71. Finally, Entropic alleges that Charter
and Comcast have frequently teamed up to offer streaming devices and technologies to
customers, which evidences Comcast's knowledge that Charter offers technology that
functions almost identically to Comcast's technology. *Id.* ¶¶ 77–78. Thus, as in *Core
Optical*, Entropic identifies two prior lawsuits "concerning the same patent in a tight-
knit industry." 562 F. Supp. 3d at 381 (emphasis added); SAC ¶¶ 68–70.

Based on this relationship and close collaboration, Entropic alleges that Comcast
"analyzed its own products' functionality in light of the patents asserted against Charter,
and it confirmed that its own products were functionally identical to the Charter
products accused." *Id*. ¶ 84. Indeed, Entropic even alleges that Comcast sought

---

[4] In Case No. 2:22-CV-00125-JRG, Entropic asserted the '775, '690, '008, '362, '826,
and '682 Patents. In Case No. 23-CV-00052-JRG, Entropic asserted the '866, '206,
'775, and '438 Patents.

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

indemnification from its suppliers for each of the patents asserted against Charter, including the MoCA-related patents, ***before Entropic had filed suit against Comcast***. *Id*. ¶ 89. Comcast also contacted RPX Corporation, of which Comcast is a member, about Entropic's patent infringement claims in the Charter, Dish, and DirecTV lawsuits again ***before Entropic had filed suit against Comcast***. *Id*. ¶ 93. RPX's entire stated purpose is to "reduce patent risk in the most direct way possible: we remove patents— pre-litigation and out of active litigation—before they can become a costly problem for our clients" a method which RPX advertises has "proven that competitors can successfully collaborate to fight an expensive industry-wide problem." https://www.rpxcorp.com/platform/rpx-network/. These specifically-alleged facts alone conclusively allege willful patent infringement and that Comcast fully anticipated a lawsuit from Entropic after having reviewed and analyzed the allegations of patent infringement in the Charter litigation. But in sum, Entropic's SAC contains detailed factual allegations regarding the close collaboration of Comcast and Charter within the cable industry, Comcast's specific knowledge of how Charter's accused products operate, and that Comcast was aware of, and substantively analyzed, the infringement allegations in the Charter litigation and determined that it infringed the same Asserted Patents in the manner alleged in the SAC. SAC ¶¶ 68–90. These allegations plausibly allege that Comcast would have known of the lawsuit against Charter and would have taken steps to analyze the patent infringement claims therein.

Comcast attempts to sidestep these voluminous factual allegations by arguing that "Entropic does not and cannot allege that ***Charter*** ever told Comcast about the patent or alleged infringement." Opp. at 30:8–10 (emphasis added). That is irrelevant— instead, all that is required for willful patent infringement is knowledge of the asserted patents and knowledge of infringement, both of which Entropic has alleged. *Arctic Cat Inc.*, 876 F.3d at 1371. That the specific facts in *Core Optical* included the prior defendant informing another defendant of the patents does not transform that court's holding into a rule that the defendant in the prior lawsuit itself must have provided the

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

knowledge. Here, like in *Core Optical*, Entropic has provided ample factual allegations that Comcast plausibly reviewed and analyzed the Charter litigation claims, and determined that it infringed, due to the close collaboration between Comcast and Charter and their knowing use of common products and technology. SAC ¶¶ 68–90; *Core Optical*, 562 F. Supp. 3d at 381. Entropic's SAC alleges that Comcast knew of the Charter litigation and the asserted patents, knew its products and technology are substantially similar or identical to the accused products and technology of Charter, and Comcast knew that it infringed the Asserted Patents in the same manner as described in the Charter litigation. SAC ¶¶ 68–90. Despite this, and despite knowingly continuing to infringe, Comcast's view is that it cannot be liable for willful patent infringement unless Charter itself specifically called Comcast up to tell them about the lawsuit. That position is absurd and also has no basis in law.

Crucially, the law also recognizes that at the pleading stage, without **any** discovery, a plaintiff is not required to plead a smoking gun. *Sonos, Inc.*, 591 F. Supp. 3d at 644–45. The facts underlying willfulness allegations must be considered as a whole, within their total context. *Graco, Inc.*, 60 F.3d at 792. Here, Entropic has included considerable additional factual allegations that add to the plausibility of Comcast's willful patent infringement, including after the prior Entropic litigations were filed. *See, e.g.*, SAC ¶¶ 94–111, 139–51. Comcast and (the prior patent owner) MaxLinear are not strangers—they have a lengthy history. *Id.* ¶ 139. MaxLinear supplied Comcast large volumes of product—indeed, the software maintenance of such products is the subject of the very VSA in dispute. *See generally* VSA. Furthermore, Comcast hired the named inventor of the '008 and '826 Patents, Patrick Tierney, which included Comcast reviewing those patents during the hiring process of Mr. Tierney, SAC ¶ 94, as well as a close relationship as supplier/customer for at least 15 years, *id.* ¶ 139, and joint participation in industry groups such as MoCA, *id.* ¶ 140. Additionally, Mr. Tierney and other MaxLinear employees frequently met with Comcast and discussed the technologies of both MaxLinear and Entropic Communications Inc. that

practiced the Non-SEP Patents, and discussed MaxLinear's patent portfolio, *id.* ¶¶ 94–95. Comcast's own patents also cite MaxLinear's patents, including parents to the asserted '682 Patent. *Id.* ¶¶ 115–17. The totality of the allegations must be considered, not dissembled into individual pieces to be rejected one-by-one.

The Comcast-MaxLinear relationship and frequent intra-industry discussions of the capabilities of MaxLinear's products it offered or provided to Comcast, the allegations concerning the Charter litigation, the close Comcast/Charter relationship, and Comcast's knowledge of the Charter litigation and its substantially identical infringement—all of these allegations in concert are more than sufficient allegations that Comcast had knowledge of the Asserted Patents, had knowledge of its infringement (or a high risk thereof), and that Comcast nonetheless continued to infringe. SAC ¶¶ 178–81. For example, Comcast's long history with Entropic Inc. and MaxLinear, as suppliers and industry players, multiplies the plausibility that Comcast would have noticed and reviewed a lawsuit filed by a company named "Entropic," MaxLinear's successor-in-interest to the patents. *Id.* ¶¶ 94–111, 139–51. These allegations must be considered as a whole, and taken together amply clear pleading standards.

**B.** ███████████████████████████████████████
███████████████

Setting aside issues under Rule 12(b)(6), if the Court grants Entropic's motion to file its supplemental pleading under Rule 15(d), this Court indisputably has subject matter jurisdiction over the claims in the supplemental pleading and Comcast's motion under Rule 12(b)(1) should be denied. Comcast's arguments under Rule 12(b)(1) all stem from an alleged license defense contained in the VSA. As a threshold matter, binding authority mandates that Comcast's 12(b)(1) motion fail, which holds that a federal court has subject matter jurisdiction over a patent infringement claim and that jurisdiction cannot be defeated by a contractual license (or covenant not to sue) defense, regardless of the merits of the defense. *Air Products*, 755 F.2d at 1563–64; *Pixton*, 291 F.3d at 1327. ████████████████████████████████████

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**



*See YellowCake, Inc. v. DashGo, Inc.*, 2022 WL 172934, at *6 (E.D. Cal. Jan. 19, 2022) (taking as true allegations that a contract was validly terminated for purposes of a motion to dismiss); *ViX Swimwear, Inc. v. SBC Clothing, Inc.*, 2015 WL 3905097, at *7 (S.D. Cal. June 25, 2015) (taking as true allegation that contract was terminated pursuant to its terms). And Rule 15(d) specifically permits subject matter jurisdiction to be cured through post-complaint facts alleged in a supplemental pleading. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015) ("Rule 15(d) permits a supplemental pleading to correct a defective complaint" and while Rule 15(d) "is phrased in terms of correcting a deficient statement of 'claim' or a 'defense,' a lack of subject-matter jurisdiction should be treated like any other defect for purposes of defining the proper scope of supplemental pleading.") (quoting Wright & Miller, Fed. Prac. & Proc. 3d § 1505). This Court therefore has subject matter jurisdiction over the supplemental pleading, and should deny Comcast's motion under Rule 12(b)(1) for this reason alone.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Entropic requests the Court grant this motion. If the

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

Court finds that dismissal is appropriate, Entropic respectfully requests leave to amend to further refine its allegations of Comcast's willful infringement of the Asserted Patents.

Dated: January 5, 2024

Respectfully submitted,

By: */s/ Cassidy T. Young*
Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy Young (SBN 342891)
cassidy.young@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

James A. Shimota *(admitted pro hac vice)*
jim.shimota@klgates.com
K&L GATES LLP
Suite 3300
70 W. Madison Street
Chicago, IL 60602
Tel.: (312) 372-1121
Facsimile: (312) 827-8000

Peter E. Soskin (SBN 280347)
peter.soskin@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Entropic Communications, LLC, certifies that this brief contains 6,058 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 5, 2024

Respectfully submitted,

By: */s/ Cassidy T. Young*

Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy Young (SBN 342891)
cassidy.young@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

James A. Shimota *(admitted pro hac vice)*
jim.shimota@klgates.com
K&L GATES LLP
Suite 3300
70 W. Madison Street
Chicago, IL 60602
Tel.: (312) 372-1121
Facsimile: (312) 827-8000

Peter E. Soskin (SBN 280347)
peter.soskin@klgates.com
K&L GATES LLP
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

**ENTROPIC'S OPPOSITION TO COMCAST'S MOTION TO DISMISS**