KILPATRICK TOWNSEND & STOCKTON LLP
April E. Isaacson (SBN 180638)
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran (SBN 347617)
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell (*admitted pro hac vice*)
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba (*admitted pro hac vice*)
wkadaba@kilpatricktownsend.com
Michael J. Turton (*admitted pro hac vice*)
mturton@kilpatricktownsend.com
Courtney S. Dabbiere (*admitted pro hac vice*)
cdabbiere@kilpatricktownsend.com
Christopher S. Leah (*admitted pro hac vice*)
cleah@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.; CoxCom, LLC; and*
*Cox Communications California, LLC*

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:23-cv-1043-JWH-KES |
| Plaintiff, | RELATED CASE: |
| v. | Case No. 2:23-cv-1047-JWH-KES |
| COX COMMUNICATIONS, INC.; COXCOM, LLC; and COX COMMUNICATIONS CALIFORNIA, LLC, | **COX COMMUNICATIONS, INC., COXCOM, LLC, AND COX COMMUNICATIONS CALIFORNIA, LLC'S ANSWER AND DEFENSES TO COMPLAINT AND FIRST AMENDED COUNTERCLAIMS** |
| Defendants. | |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

COX COMMUNICATIONS, INC., COXCOM, LLC, AND COX COMMUNICATIONS CALIFORNIA, LLC,

               Counter-Claimants,

      v.

ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR COMMUNICATIONS LLC; AND MAXLINEAR, INC.

             Counter-Defendants.

Defendants Cox Communications, Inc., CoxCom, LLC, and Cox Communications California, LLC (collectively "Cox") answer Plaintiff Entropic Communications, LLC's ("Entropic" or "Plaintiff") Complaint for Patent Infringement ("Complaint") as follows:

1. Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1, and therefore denies them.

2. Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2, and therefore denies them.

3. Cox is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 3, and therefore denies them.

4. Cox is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and therefore denies them.

5. Cox admits that Plaintiff has filed a civil action against Cox purporting to assert claims for infringement of U.S. Patent No. 7,295,518 (the "'518 Patent"), 7,594,249 (the "'249 Patent"), 7,889,759 (the "'759 Patent"), 8,085,802 (the "'802 Patent"), 9,838,213 (the "'213 Patent"), 10,432,422 (the "'422 Patent"), 8,631,450 (the "'450 Patent"), 8,621,539 (the "'539 Patent"), 8,320,566 (the "'0,566 Patent"), 10,257,566 (the "'7,566 Patent"), 8,228,910 (the "'910 Patent"), 8,363,681 (the "'681 Patent") (collectively, "the Asserted Patents"). Cox denies that Plaintiff's claims have merit and denies that it has infringed any valid claim of any Asserted Patent. Cox denies the remainder of the allegations of Paragraph 5.

## **THE PARTIES**[1]

6. Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6, and therefore denies them.

---

[1] For ease of reference, the headings from Entropic's Complaint are used herein. Such use is for convenience, and does not indicate that Cox admits or agrees with any text of any heading re-used herein.

1    7.    Cox is without knowledge or information sufficient to form a belief as to

2    the truth of the allegations of Paragraph 7, and therefore denies them.

3    8.    Cox admits that Cox Communications, Inc. ("Cox Communications") is

4    a privately-owned subsidiary of Cox Enterprises Inc. and is a Delaware Corporation

5    with a principal place of business at 6205 Peachtree Dunwoody Road, Atlanta,

6    Georgia 30328.

7    9.    Cox admits that CoxCom, LLC ("CoxCom") is a subsidiary of Cox

8    Communications, Inc., and is incorporated in Delaware, with a principal place of

9    business at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328.

10    10.    Cox admits that Cox Communications has as its registered agent in

11    Delaware, Corporation Service Company 251 Little Falls Drive, Wilmington,

12    Delaware 19808.

13    11.    Cox admits that CoxCom is a subsidiary of Cox Communications, and

14    incorporated in Delaware, with a principal place of business at 6205 Peachtree

15    Dunwoody Road, Atlanta, Georgia 30328.

16    12.    Cox admits that CoxCom has as its registered agent in California,

17    Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company,

18    located at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, California 95833.

19    13.    Cox admits that Cox Communications California, LLC ("Cox

20    California") is a Delaware limited liability company, with a regular and established

21    place of business at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328.

22    14.    Cox admits that Cox California has as its registered agent in California,

23    Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company,

24    located at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, California 95833.

25    15.    Cox admits that Paragraph 15 purports to quote a document, which

26    speaks for itself and is the best evidence of its contents. Cox denies the remaining

27    allegations of Paragraph 15.

28

16.    Cox denies the allegations of Paragraph 16.

17.    Cox admits that the website of Cox Enterprises, Inc. speaks for itself and is the best evidence as to its contents. Cox denies the remaining allegations of Paragraph 17.

18.    Cox denies the allegations of Paragraph 18.

19.    "Manager/member" is undefined and so to the extent that Cox understands the allegations in Paragraph 19, Cox admits that CoxCom is a subsidiary of Cox Communications. Cox is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19, and therefore denies the remaining allegations.

20.    "Complete control" is undefined and so to the extent that Cox understands the allegations in Paragraph 20, Cox admits that CoxCom is a subsidiary of Cox Communications. Cox is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20, and therefore denies the remaining allegations.

21.    "Manager/member" is undefined and so to the extent that Cox understands the allegations in Paragraph 21, Cox admits that Cox California is a subsidiary of CoxCom. Cox is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21, and therefore denies the remaining allegations.

22.    Cox admits that Cox California provides cable services in at least California. Cox denies the remaining allegations in Paragraph 22.

23.    Cox admits that Paragraph 23 purports to quote a Residential Customer Service Agreement, which document speaks for itself and is the best evidence of its contents. Cox denies the remaining allegations in Paragraph 23.

24.     Cox admits that Cox Communications, CoxCom, and Cox California share a principal place of business at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328. Cox denies the remaining allegations in Paragraph 24.

25.     Cox denies the allegations of Paragraph 25.

26.     Cox admits for purposes of this action that this Court has personal jurisdiction over Cox, and venue is proper in this Judicial District.

## PRESUIT DISCUSSIONS

27.     Cox denies that the intended recipient received the communication that Plaintiff purports to have sent by physical means to Cox on August 9, 2022. Cox denies that the intended recipient received the communications that Plaintiff purports to have sent by physical means to Cox on December 23, 2022. Cox admits that a communication was sent by electronic means on January 2, 2023. Cox admits that it has not responded to the August 9, 2022, December 23, 2022, or January 2, 2023, communications. Cox denies the remainder of the allegations in Paragraph 27.

## ENTROPIC'S LEGACY AS AN INNOVATOR

28.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 28, and therefore denies them.

29.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 29, and therefore denies them.

30.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30, and therefore denies them.

31.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 31, and therefore denies them.

32.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32, and therefore denies them.

33.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33, and therefore denies them.

## MOCA® AND THE MOCA® STANDARDS

34.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34, and therefore denies them.

35.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 35, and therefore denies them.

36.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 36, and therefore denies them.

37.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37, and therefore denies them.

38.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38, and therefore denies them.

39.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 39, and therefore denies them.

40.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 40, and therefore denies them.

41.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41, and therefore denies them.

42.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42, and therefore denies them.

43.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43, and therefore denies them.

44.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44, and therefore denies them.

45.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 45, and therefore denies them.

46.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46, and therefore denies them.

Case 2:23-cv-01043-JWH-KES   Document 265-2   Filed 01/09/24   Page 8 of 63   Page ID
#:10762

47.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47, and therefore denies them.

48.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48, and therefore denies them.

## THE ACCUSED MOCA INSTRUMENTALITIES AND ACCUSED SERVICES

49.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 49, and therefore denies them.

50.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50, and therefore denies them.

51.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 51, and therefore denies them.

52.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 52, and therefore denies them.

53.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 53, and therefore denies them.

54.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 54, and therefore denies them.

55.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 55, and therefore denies them.

56.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 56, and therefore denies them.

57.     Cox admits that Paragraph 57 purports to cite from a document cited in Paragraph 59, which document speaks for itself and is the best evidence of its contents. Cox denies the remaining allegations of Paragraph 57.

58.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 58, and therefore denies them.

59.     Cox admits that the document cited at Paragraph 59 speaks for itself and is the best evidence of its contents. Cox denies the remaining allegations of Paragraph 59.

60.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 60, and therefore denies them.

61.     Cox admits that Paragraph 61 purports to quote a document, which speaks for itself and is the best evidence as to its contents. Cox denies the remaining allegations in Paragraph 61.

62.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 62, and therefore denies them.

63.     Cox admits it was aware of MoCA at least as early as its involvement with the MoCA alliance. Cox is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 63, and therefore denies them.

64.     Cox denies the allegations in Paragraph 64.

65.     Cox admits that one or more of its affiliates was a member of the Board of the MoCA Alliance. Cox denies the remaining allegations contained in Paragraph 65.

66.     Cox denies the allegations contained in Paragraph 66.

67.     Cox denies the allegations contained in Paragraph 67.

68.     Cox denies the allegations contained in Paragraph 68.

69.     Cox denies the allegations contained in Paragraph 69.

## JURISDICTION AND VENUE

70.     Cox admits that Plaintiff purports to state a claim for patent infringement under the patent laws of the United States, but denies that Plaintiff is entitled to any relief for such claim. Cox denies all remaining allegations contained in Paragraph 70.

71.     Cox admits that venue is proper in this Court for purposes of this action and admits that it has transacted business in this District for purposes of this action. Cox denies that it has committed any act of patent infringement allegedly described in the Complaint. Cox denies any remaining allegations contained in Paragraph 71.

72.     Cox denies that this Court has general personal jurisdiction over Cox. Cox admits that certain Cox entities provide cable television, internet, and phone services to businesses and residents in California. Cox denies all remaining allegations contained in Paragraph 72.

73.     Cox admits the presence of a Cox facility at 27121 Towne Centre Drive, Foothill Ranch, California 92610. Cox denies all remaining allegations contained in Paragraph 73.

74.     Cox admits for purposes of this action that this Court has personal jurisdiction over Cox. Cox denies the allegations contained in Paragraph 74. Cox denies all remaining allegations contained in Paragraph 74.

75.     Cox admits that it has provided certain telecommunications services in portions of the United States and that Cox operates and maintains a network, involving various Cox branded products and services, although Cox denies that any of its services infringe any Asserted Patents. Cox admits that subscribers to certain of Cox's services receive either receivers or set top boxes within this District. Cox denies all remaining allegations contained in Paragraph 75.

76.     Cox denies the allegations contained in Paragraph 76.

77.     Cox admits that it operates one or more facilities or locations in this District, and that Paragraph 77 appears to summarize information available from Cox's website, which speaks for itself and is the best evidence of its contents. Cox denies the remaining allegations contained in Paragraph 77.

78.     Cox admits that Paragraph 78 purports to reference storefronts listed in Cox's website, which speaks for itself and is the best evidence of its contents. Cox denies the allegations contained in Paragraph 78.

79.     Cox admits that certain Cox entities own and/or lease certain premises where Cox stores are located. Cox denies the remaining allegations of Paragraph 79.

80.     Cox admits that certain Cox entities employ persons at Cox stores located within this District. Cox denies the remaining allegations of Paragraph 80.

81.     Cox admits that it has engaged in business at physical places within this District. Cox denies all remaining allegations of Paragraph 81.

82.     Cox admits that certain Cox entities employ and/or contract with persons to install, service, repair, and/or replace equipment, as appropriate, in this District. Cox denies all remaining allegations of Paragraph 82.

83.     Cox admits that stores or service centers owned or operated by Cox contain equipment by which services provided by Cox can be delivered. Cox denies the remaining allegations of Paragraph 83.

84.     Cox admits that Paragraph 84 purports to summarize and/or quote portions of a Cox Communications website, which document speaks for itself and is the best evidence of its contents. Cox denies the remaining allegations of Paragraph 84.

85.     Cox admits that it has provided certain services and products in this District and in portions of the United States, although Cox denies that any of its services or products infringe any Asserted Patents. Cox denies the remaining allegations of Paragraph 85.

86.     Cox admits that it will not contest that venue is proper in this Court for purposes of this action. Cox denies all remaining allegations contained in Paragraph 86.

87.     Cox admits that it has continued to conduct business in this District for purposes of this action. Cox denies all remaining allegations contained in Paragraph 87.

## COUNT I

### (Infringement of the '518 Patent)

88.     Paragraphs 1–87 of Cox's Answer are incorporated by reference as if set forth herein.

89.     Cox admits that the face of the '518 Patent states that it issued on November 13, 2007, from an application filed December 18, 2002, and is related to an application filed August 29, 2002, and a provisional application filed August 30, 2001. Cox denies all remaining allegations in Paragraph 89.

90.     Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 90, and therefore denies them.

91.     Cox admits that the title of the '518 Patent is "Broadband Network for Coaxial Cable Using Multi-Carrier Modulation." Cox admits that the abstract of the '518 Patent states that "Probe messages are sent between devices to characterize the communication channel and determine optimum bit loading." Cox admits that the '518 Patent has 4 claims, of which claims 1 and 4 are independent. Cox admits that Exhibit A to the Complaint purports to be a true and accurate copy of the '518 Patent. Cox denies all remaining allegations in Paragraph 91.

92.     Cox denies the allegations contained in Paragraph 92.

93.     Cox denies that the '518 Patent is valid and enforceable. Cox admits that by its issuance, the '518 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 93.

94.     Cox denies the allegations contained in Paragraph 94.

95.     Cox denies the allegations contained in Paragraph 95.

96.     Cox denies the allegations contained in Paragraph 96.

1     97.     Cox denies the allegations contained in Paragraph 97.

2     98.     Cox denies the allegations contained in Paragraph 98.

3     99.     Cox denies the allegations contained in Paragraph 99.

4     100.     Cox is without knowledge or information sufficient to form a belief as to

5 the truth of the allegations of Paragraph 100, and therefore denies them.

6     101.     Cox denies the allegations contained in Paragraph 101.

7     102.     Cox denies the allegations contained in Paragraph 102.

8     103.     Cox denies the allegations contained in Paragraph 103.

9     104.     Cox denies the allegations contained in Paragraph 104.

10     105.     Cox denies the allegations contained in Paragraph 105.

11     106.     Cox denies the allegations contained in Paragraph 106.

12     107.     Cox admits that, if the '518 Patent issued as of November 13, 2007, then

13 the '518 Patent issued either while or before Cox was a member of MoCA.

14     108.     Cox denies the allegations contained in Paragraph 108.

15     109.     Cox denies the allegations contained in Paragraph 109.

16     110.     Cox denies the allegations contained in Paragraph 110.

17     111.     Cox denies the allegations contained in Paragraph 111.

18     112.     Cox denies the allegations contained in Paragraph 112.

19     113.     Cox denies the allegations contained in Paragraph 113.

20     114.     Cox denies the allegations contained in Paragraph 114.

21     115.     Cox denies the allegations contained in Paragraph 115.

22     116.     Cox denies the allegations contained in Paragraph 116.

23     117.     Cox denies the allegations contained in Paragraph 117.

24     118.     Cox denies the allegations contained in Paragraph 118.

25     119.     Cox denies the allegations contained in Paragraph 119.

26     120.     Cox denies the allegations contained in Paragraph 120.

27

28

121.  Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 121, and therefore denies them.

## COUNT II

### (Infringement of the '249 Patent)

122.  Paragraphs 1–121 of Cox's Answer are incorporated by reference as if set forth herein.

123.  Cox admits that the face of the '249 Patent states that it issued on September 22, 2009, from an application filed July 21, 2001, and is related to a provisional application filed May 4, 2001. Cox denies all remaining allegations in Paragraph 123.

124.  Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 124, and therefore denies them.

125.  Cox admits that column 3, lines 11-22 of the '249 Patent state that:

> The present invention uses a frequency selective network interface device placed at the building point of entry (POE) to reflect upstream signals transmitted by terminal devices back into the building distribution whereby the signals may be received by other terminal devices. By reflecting upstream signals back into the building as downstream signals, the network interface device provides a path for terminal devices to transmit to and receive from other terminal devices. This overcomes the problem of port-to-port isolation in the signal splitter/combiners. A bidirectional signal distribution net work is create from existing building wiring intended only for headend to terminal device communication.

Cox admits that the '249 Patent has 17 claims, of which claims 1, 5, and 10 are independent. Cox admits that Exhibit C to the Complaint purports to be a true and accurate copy of the '249 Patent. Cox denies all remaining allegations in Paragraph 125.

126.  Cox denies the allegations contained in Paragraph 126.

127.  Cox denies that the '249 Patent is valid and enforceable. Cox admits that by its issuance, the '249 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 127.

128.   Cox denies the allegations contained in Paragraph 128.

129.   Cox denies the allegations contained in Paragraph 129.

130.   Cox denies the allegations contained in Paragraph 130.

131.   Cox denies the allegations contained in Paragraph 131.

132.   Cox denies the allegations contained in Paragraph 132.

133.   Cox denies the allegations contained in Paragraph 133.

134.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 134, and therefore denies them.

135.   Cox denies the allegations contained in Paragraph 135.

136.   Cox denies the allegations contained in Paragraph 136.

137.   Cox denies the allegations contained in Paragraph 137.

138.   Cox denies the allegations contained in Paragraph 138.

139.   Cox denies the allegations contained in Paragraph 139.

140.   Cox denies the allegations contained in Paragraph 140.

141.   Cox admits that, if the '249 Patent issued as of September 22, 2009, then the '249 Patent issued either while or before Cox was a member of MoCA.

142.   Cox denies the allegations contained in Paragraph 142.

143.   Cox denies the allegations contained in Paragraph 143.

144.   Cox denies the allegations contained in Paragraph 144.

145.   Cox denies the allegations contained in Paragraph 145.

146.   Cox denies the allegations contained in Paragraph 146.

147.   Cox denies the allegations contained in Paragraph 147.

148.   Cox denies the allegations contained in Paragraph 148.

149.   Cox denies the allegations contained in Paragraph 149.

150.   Cox denies the allegations contained in Paragraph 150.

151.   Cox denies the allegations contained in Paragraph 151.

152.   Cox denies the allegations contained in Paragraph 152.

153.    Cox denies the allegations contained in Paragraph 153.

154.    Cox denies the allegations contained in Paragraph 154.

155.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 154, and therefore denies them.

## COUNT III

### (Infringement of the '759 Patent)

156.    Paragraphs 1–155 of Cox's Answer are incorporated by reference as if set forth herein.

157.    Cox admits that the face of the '759 Patent states that it issued on February 15, 2011, from an application filed July 12, 2004, and is related to an application filed August 29, 2002, and a provisional application filed August 30, 2001. Cox denies all remaining allegations in Paragraph 157.

158.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 158, and therefore denies them.

159.    Cox admits that the abstract of the '759 Patent states that "[a] broadband cable network ("BCN") for determining a common bit-loading modulation scheme for communicating between a plurality of nodes in the BCN is disclosed." Cox admits that claims 1-7, 14, and 20-22 of the '759 Patent are independent claims. Cox admits that Exhibit E to the Complaint purports to be a true and accurate copy of the '759 Patent. Cox denies all remaining allegations in Paragraph 159.

160.    Cox denies the allegations contained in Paragraph 160.

161.    Cox denies that the '759 Patent is valid and enforceable. Cox admits that by its issuance, the '759 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 161.

162.    Cox denies the allegations contained in Paragraph 162.

163.    Cox denies the allegations contained in Paragraph 163.

164.    Cox denies the allegations contained in Paragraph 164.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

165.   Cox denies the allegations contained in Paragraph 165.

166.   Cox denies the allegations contained in Paragraph 166.

167.   Cox denies the allegations contained in Paragraph 167.

168.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 168, and therefore denies them.

169.   Cox denies the allegations contained in Paragraph 169.

170.   Cox denies the allegations contained in Paragraph 170.

171.   Cox denies the allegations contained in Paragraph 171.

172.   Cox denies the allegations contained in Paragraph 172.

173.   Cox denies the allegations contained in Paragraph 173.

174.   Cox denies the allegations contained in Paragraph 174.

175.   Cox admits that, if the '759 Patent issued as of February 15, 2011, then the '759 Patent issued either while or before Cox was a member of MoCA.

176.   Cox denies the allegations contained in Paragraph 176.

177.   Cox denies the allegations contained in Paragraph 177.

178.   Cox denies the allegations contained in Paragraph 178.

179.   Cox denies the allegations contained in Paragraph 179.

180.   Cox denies the allegations contained in Paragraph 180.

181.   Cox denies the allegations contained in Paragraph 181.

182.   Cox denies the allegations contained in Paragraph 182.

183.   Cox denies the allegations contained in Paragraph 183.

184.   Cox denies the allegations contained in Paragraph 184.

185.   Cox denies the allegations contained in Paragraph 185.

186.   Cox denies the allegations contained in Paragraph 186.

187.   Cox denies the allegations contained in Paragraph 187.

188.   Cox denies the allegations contained in Paragraph 188.

189.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 189, and therefore denies them.

## COUNT IV

### (Infringement of the '802 Patent)

190.   Paragraphs 1–189 of Cox's Answer are incorporated by reference as if set forth herein.

191.   Cox admits that the face of the '802 Patent states that it issued on December 27, 2011, from an application filed December 2, 2005, and is related to a provisional application filed December 2, 2004. Cox denies all remaining allegations in Paragraph 191.

192.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 192, and therefore denies them.

193.   Cox admits that column 4, lines 7–24 of the '802 Patent states that:

> A Broadband Coaxial Network (BCN) network formed by a plurality of common coaxial network elements that may include passive splitters and coaxial network nodes where a signal is transmitted from a first BCN modem to one or more other BCN modems with the signal having multiple paths paused by reflected signals from the splitters and coaxial network elements. A Network Controller (NC) BCN modem is established by the activation of the first BCN modem or when there are multiple devices through a selection process. The other BCN modems in the network then communicate with the NC to be admitted to the network and when attempting to access the network and request transmission opportunities to any other node in the network. Each BCN modem communicates with the other BCN modems in the network and establishes the best modulation and other transmission parameters that is optimized and periodically adapted to the channel between each pair of BCN modems.

Cox admits that the '802 Patent has four claims, all of which are independent. Cox admits that Exhibit G to the Complaint purports to be a true and accurate copy of the '802 Patent. Cox denies all remaining allegations in Paragraph 193.

194.   Cox denies the allegations contained in Paragraph 194.

195.   Cox denies that the '802 Patent is valid and enforceable. Cox admits that by its issuance, the '802 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 195.

196.   Cox denies the allegations contained in Paragraph 196.

197.   Cox denies the allegations contained in Paragraph 197.

198.   Cox denies the allegations contained in Paragraph 198.

199.   Cox denies the allegations contained in Paragraph 199.

200.   Cox denies the allegations contained in Paragraph 200.

201.   Cox denies the allegations contained in Paragraph 201.

202.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 202, and therefore denies them.

203.   Cox denies the allegations contained in Paragraph 203.

204.   Cox denies the allegations contained in Paragraph 204.

205.   Cox denies the allegations contained in Paragraph 205.

206.   Cox denies the allegations contained in Paragraph 206.

207.   Cox denies the allegations contained in Paragraph 207.

208.   Cox denies the allegations contained in Paragraph 208.

209.   Cox admits that, if the '802 Patent issued as of December 27, 2011, then the '802 Patent issued either while or before Cox was a member of MoCA.

210.   Cox denies the allegations contained in Paragraph 210.

211.   Cox denies the allegations contained in Paragraph 211.

212.   Cox denies the allegations contained in Paragraph 212.

213.   Cox denies the allegations contained in Paragraph 213.

214.   Cox denies the allegations contained in Paragraph 214.

215.   Cox denies the allegations contained in Paragraph 215.

216.   Cox denies the allegations contained in Paragraph 216.

217.   Cox denies the allegations contained in Paragraph 217.

1    218.   Cox denies the allegations contained in Paragraph 218.

2    219.   Cox denies the allegations contained in Paragraph 219.

3    220.   Cox denies the allegations contained in Paragraph 220.

4    221.   Cox denies the allegations contained in Paragraph 221.

5    222.   Cox denies the allegations contained in Paragraph 222.

6    223.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 223, and therefore denies them.

## COUNT V

### (Infringement of the '450 Patent)

224.   Paragraphs 1–223 of Cox's Answer are incorporated by reference as if set forth herein.

225.   Cox admits that the face of the '450 Patent states that it issued on January 14, 2014, from an application filed September 19, 2005, and is related to a provisional application filed December 2, 2004. Cox denies all remaining allegations in Paragraph 225.

226.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 226, and therefore denies them.

227.   Cox admits that column 4, lines 12–28 of the '450 Patent states that:

> A Broadband Coaxial Network (BCN) network formed by a plurality of common coaxial network elements that may include passive splitters and coaxial network nodes where a signal is transmitted from a first BCN modem to one or more other BCN modems with the signal having multiple paths caused by reflected signals from the splitters and coaxial network elements. A Network Controller (NC) BCN modem is established by the activation of the first BCN modem or when there are multiple devices through a selection process. The other BCN modems in the network then communicate with the NC to be admitted to the network and when attempting to access the network and request transmission opportunities to any other node in the network. Each BCN modem communicates with the other BCN modems in the network and establishes the best modulation and other transmission parameters that is optimized and periodically adapted to the channel between each pair of BCN modems.

Cox admits that the '450 Patent has 38 claims, of which, claims 1, 8, 27, 29, and 34 are independent. Cox admits that Exhibit I to the Complaint purports to be a true and accurate copy of the '450 Patent. Cox denies all remaining allegations in Paragraph 227.

228.   Cox denies the allegations contained in Paragraph 228.

229.   Cox denies that the '450 Patent is valid and enforceable. Cox admits that by its issuance, the '450 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 229.

230.   Cox denies the allegations contained in Paragraph 230.

231.   Cox denies the allegations contained in Paragraph 231.

232.   Cox denies the allegations contained in Paragraph 232.

233.   Cox denies the allegations contained in Paragraph 233.

234.   Cox denies the allegations contained in Paragraph 234.

235.   Cox denies the allegations contained in Paragraph 235.

236.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 236, and therefore denies them.

237.   Cox denies the allegations contained in Paragraph 237.

238.   Cox denies the allegations contained in Paragraph 238.

239.   Cox denies the allegations contained in Paragraph 239.

240.   Cox denies the allegations contained in Paragraph 240.

241.   Cox denies the allegations contained in Paragraph 241.

242.   Cox denies the allegations contained in Paragraph 242.

243.   Cox admits that, if the '450 Patent issued as of January 14, 2014, then the '450 Patent issued either while or before Cox was a member of MoCA.

244.   Cox denies the allegations contained in Paragraph 244.

245.   Cox denies the allegations contained in Paragraph 245.

246.   Cox denies the allegations contained in Paragraph 246.

247. Cox denies the allegations contained in Paragraph 247.

248. Cox denies the allegations contained in Paragraph 248.

249. Cox denies the allegations contained in Paragraph 249.

250. Cox denies the allegations contained in Paragraph 250.

251. Cox denies the allegations contained in Paragraph 251.

252. Cox denies the allegations contained in Paragraph 252.

253. Cox denies the allegations contained in Paragraph 253.

254. Cox denies the allegations contained in Paragraph 254.

255. Cox denies the allegations contained in Paragraph 255.

256. Cox denies the allegations contained in Paragraph 256.

257. Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 257, and therefore denies them.

## COUNT VI

### (Infringement of the '7,566 Patent)

258. Paragraphs 1–257 of Cox's Answer are incorporated by reference as if set forth herein.

259. Cox admits that the face of the '7,566 Patent states that it issued on April 9, 2019, from an application filed February 7, 2017, and is related to an application filed September 19, 2005 and a provisional application filed December 2, 2004. Cox denies all remaining allegations in Paragraph 259.

260. Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 260, and therefore denies them.

261. Cox admits that column 4, lines 23–39 of the '7,566 Patent states that:

> A Broadband Coaxial Network (BCN) network formed by a plurality of common coaxial network elements that may include passive splitters and coaxial network nodes where a signal is transmitted from a first BCN modem to one or more other BCN modems with the signal having multiple paths caused by reflected signals from the splitters and coaxial network elements. A Network Controller (NC) BCN modem is established by the activation of the first BCN modem or when there are multiple devices through a selection process. The other

1
2
3
4

> BCN modems in the network then communicate with the NC to be admitted to the network and when attempting to access the network and request transmission opportunities to any other node in the network. Each BCN modem communicates with the other BCN modems in the network and establishes the best modulation and other transmission parameters that is optimized and periodically adapted to the channel between each pair of BCN modems.

5
6
7
8
Cox admits that the '7,566 Patent has 20 claims, of which, claims 1, 11, and 19 are independent. Cox admits that Exhibit K to the Complaint purports to be a true and accurate copy of the '7,566 Patent. Cox denies all remaining allegations in Paragraph 261.

9
262.   Cox denies the allegations contained in Paragraph 262.

10
11
12
263.   Cox denies that the '7,566 Patent is valid and enforceable. Cox admits that by its issuance, the '7,566 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 263.

13
264.   Cox denies the allegations contained in Paragraph 264.

14
265.   Cox denies the allegations contained in Paragraph 265.

15
266.   Cox denies the allegations contained in Paragraph 266.

16
267.   Cox denies the allegations contained in Paragraph 267.

17
268.   Cox denies the allegations contained in Paragraph 268.

18
269.   Cox denies the allegations contained in Paragraph 269.

19
20
270.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 270, and therefore denies them.

21
271.   Cox denies the allegations contained in Paragraph 271.

22
272.   Cox denies the allegations contained in Paragraph 272.

23
273.   Cox denies the allegations contained in Paragraph 273.

24
274.   Cox denies the allegations contained in Paragraph 274.

25
275.   Cox denies the allegations contained in Paragraph 275.

26
276.   Cox denies the allegations contained in Paragraph 276.

27
28

277.   Cox admits that, if the '7,566 Patent issued as of April 9, 2019, then the '7,566 Patent issued either while or before Cox was a member of MoCA.

278.   Cox denies the allegations contained in Paragraph 278.

279.   Cox denies the allegations contained in Paragraph 279.

280.   Cox denies the allegations contained in Paragraph 280.

281.   Cox denies the allegations contained in Paragraph 281.

282.   Cox denies the allegations contained in Paragraph 282.

283.   Cox denies the allegations contained in Paragraph 283.

284.   Cox denies the allegations contained in Paragraph 284.

285.   Cox denies the allegations contained in Paragraph 285.

286.   Cox denies the allegations contained in Paragraph 286.

287.   Cox denies the allegations contained in Paragraph 287.

288.   Cox denies the allegations contained in Paragraph 288.

289.   Cox denies the allegations contained in Paragraph 289.

290.   Cox denies the allegations contained in Paragraph 290.

291.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 257, and therefore denies them.

## COUNT VII

### (Infringement of the '539 Patent)

292.   Paragraphs 1–291 of Cox's Answer are incorporated by reference as if set forth herein.

293.   Cox admits that the face of the '539 Patent states that it issued on December 31, 2013, from an application filed September 29, 2005, and is related to a provisional application filed December 2, 2004. Cox denies all remaining allegations in Paragraph 293.

294.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 294, and therefore denies them.

295.   Cox admits that column 4, lines 37–48 of the '539 Patent states that:

A transmitter ("PHY Transmitter") for communicating between a plurality of nodes in a multi-media network communication system ("MNCS") utilizing a broadband cable network ("BCN") operating at the physical layer (Layer 1) within the ISO/OSI Network Model (or the Link layer of the TCP/IP Network Model) is disclosed. The PHY Transmitter provides the interface to the coaxial cable within the BCN, and performs all of the necessary RF, analog and digital processing required for transmitting MAC messages on the coaxial communications channel. The PHY Transmitter enables direct node to node communications over the coaxial channel within the BCN.

Cox admits that the '539 Patent has seven claims, of which, claim 1 is independent. Cox admits that Exhibit M to the Complaint purports to be a true and accurate copy of the '539 Patent. Cox denies all remaining allegations in Paragraph 295.

296.   Cox denies the allegations contained in Paragraph 296.

297.   Cox denies that the '539 Patent is valid and enforceable. Cox admits that by its issuance, the '539 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 297.

298.   Cox denies the allegations contained in Paragraph 298.

299.   Cox denies the allegations contained in Paragraph 299.

300.   Cox denies the allegations contained in Paragraph 300.

301.   Cox denies the allegations contained in Paragraph 301.

302.   Cox denies the allegations contained in Paragraph 302.

303.   Cox denies the allegations contained in Paragraph 303.

304.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 304, and therefore denies them.

305.   Cox denies the allegations contained in Paragraph 305.

306.   Cox denies the allegations contained in Paragraph 306.

307.   Cox denies the allegations contained in Paragraph 307.

308.   Cox denies the allegations contained in Paragraph 308.

309.   Cox denies the allegations contained in Paragraph 309.

1    310.   Cox denies the allegations contained in Paragraph 310.

2    311.   Cox admits that, if the '539 Patent issued as of December 31, 2013, then

3    the '539 Patent issued either while or before Cox was a member of MoCA.

4    312.   Cox denies the allegations contained in Paragraph 312.

5    313.   Cox denies the allegations contained in Paragraph 313.

6    314.   Cox denies the allegations contained in Paragraph 314.

7    315.   Cox denies the allegations contained in Paragraph 315.

8    316.   Cox denies the allegations contained in Paragraph 316.

9    317.   Cox denies the allegations contained in Paragraph 317.

10   318.   Cox denies the allegations contained in Paragraph 318.

11   319.   Cox denies the allegations contained in Paragraph 319.

12   320.   Cox denies the allegations contained in Paragraph 320.

13   321.   Cox denies the allegations contained in Paragraph 321.

14   322.   Cox denies the allegations contained in Paragraph 322.

15   323.   Cox denies the allegations contained in Paragraph 323.

16   324.   Cox denies the allegations contained in Paragraph 324.

17   325.   Cox is without knowledge or information sufficient to form a belief as to

18   the truth of the allegations of Paragraph 325, and therefore denies them.

19                              **COUNT VIII**

20                   **(Infringement of the '213 Patent)**

21   326.   Paragraphs 1–325 of Cox's Answer are incorporated by reference as if

22   set forth herein.

23   327.   Cox admits that the face of the '213 Patent states that it issued on

24   December 5, 2017, from an application filed February 6, 2008, and is related to a

25   provisional application filed February 6, 2007. Cox denies all remaining allegations

26   in Paragraph 327.

27

28

328.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 328, and therefore denies them.

329.    Cox admits that column 3, lines 46–53 of the '213 Patent states that:

> The embodiments relate in general to an apparatus, system, method, and architecture to support a low-level messaging framework in a network. Some embodiments facilitate Layer 2 messaging to enable low-cost and high-speed management of resources within the network in order to secure the capability to distribute multimedia data (such as video/audio, games, images, generic data, and interactive services) within existing in-home networks.

Cox admits that the '213 Patent has seven claims, of which, claims 1, 13, and 23 are independent. Cox admits that Exhibit O to the Complaint purports to be a true and accurate copy of the '213 Patent. Cox denies all remaining allegations in Paragraph 329.

330.    Cox denies the allegations contained in Paragraph 330.

331.    Cox denies that the '213 Patent is valid and enforceable. Cox admits that by its issuance, the '213 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 331.

332.    Cox denies the allegations contained in Paragraph 332.

333.    Cox denies the allegations contained in Paragraph 333.

334.    Cox denies the allegations contained in Paragraph 334.

335.    Cox denies the allegations contained in Paragraph 335.

336.    Cox denies the allegations contained in Paragraph 336.

337.    Cox denies the allegations contained in Paragraph 337.

338.    Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 338, and therefore denies them.

339.    Cox denies the allegations contained in Paragraph 339.

340.    Cox denies the allegations contained in Paragraph 340.

341.    Cox denies the allegations contained in Paragraph 341.

342.    Cox denies the allegations contained in Paragraph 342.

343.   Cox denies the allegations contained in Paragraph 343.

344.   Cox denies the allegations contained in Paragraph 344.

345.   Cox admits that, if the '213 Patent issued as of December 5, 2017, then the '213 Patent issued either while or before Cox was a member of MoCA.

346.   Cox denies the allegations contained in Paragraph 346.

347.   Cox denies the allegations contained in Paragraph 347.

348.   Cox denies the allegations contained in Paragraph 348.

349.   Cox denies the allegations contained in Paragraph 349.

350.   Cox denies the allegations contained in Paragraph 350.

351.   Cox denies the allegations contained in Paragraph 351.

352.   Cox denies the allegations contained in Paragraph 352.

353.   Cox denies the allegations contained in Paragraph 353.

354.   Cox denies the allegations contained in Paragraph 354.

355.   Cox denies the allegations contained in Paragraph 355.

356.   Cox denies the allegations contained in Paragraph 356.

357.   Cox denies the allegations contained in Paragraph 357.

358.   Cox denies the allegations contained in Paragraph 358.

359.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 359, and therefore denies them.

## COUNT IX

### (Infringement of the '422 Patent)

360.   Paragraphs 1–359 of Cox's Answer are incorporated by reference as if set forth herein.

361.   Cox admits that the face of the '422 Patent states that it issued on October 1, 2019, from an application filed December 5, 2017, and is related to a provisional application filed February 6, 2007. Cox denies all remaining allegations in Paragraph 361.

362.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 362, and therefore denies them.

363.   Cox admits that column 3, lines 53–60 of the '422 Patent states that:

> The embodiments relate in general to an apparatus, system, method, and architecture to support a low-level messaging framework in a network. Some embodiments facilitate Layer 2 messaging to enable low-cost and high-speed management of resources within the network in order to secure the capability to distribute multimedia data (such as video/audio, games, images, generic data, and interactive services) within existing in-home networks.

Cox admits that the '422 Patent has 20 claims, of which, claims 1, 5, and 12–17 are independent. Cox admits that Exhibit Q to the Complaint purports to be a true and accurate copy of the '422 Patent. Cox denies all remaining allegations in Paragraph 363.

364.   Cox denies the allegations contained in Paragraph 364.

365.   Cox denies that the '422 Patent is valid and enforceable. Cox admits that by its issuance, the '422 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 365.

366.   Cox denies the allegations contained in Paragraph 366.

367.   Cox denies the allegations contained in Paragraph 367.

368.   Cox denies the allegations contained in Paragraph 368.

369.   Cox denies the allegations contained in Paragraph 369.

370.   Cox denies the allegations contained in Paragraph 370.

371.   Cox denies the allegations contained in Paragraph 371.

372.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 372, and therefore denies them.

373.   Cox denies the allegations contained in Paragraph 373.

374.   Cox denies the allegations contained in Paragraph 374.

375.   Cox denies the allegations contained in Paragraph 375.

376.   Cox denies the allegations contained in Paragraph 376.

1      377.   Cox denies the allegations contained in Paragraph 377.

2      378.   Cox denies the allegations contained in Paragraph 378.

3      379.   Cox admits that, if the '422 Patent issued as of October 1, 2019, then the

4   '422 Patent issued either while or before Cox was a member of MoCA.

5      380.   Cox denies the allegations contained in Paragraph 380.

6      381.   Cox denies the allegations contained in Paragraph 381.

7      382.   Cox denies the allegations contained in Paragraph 382.

8      383.   Cox denies the allegations contained in Paragraph 383.

9      384.   Cox denies the allegations contained in Paragraph 384.

10      385.   Cox denies the allegations contained in Paragraph 385.

11      386.   Cox denies the allegations contained in Paragraph 386.

12      387.   Cox denies the allegations contained in Paragraph 387.

13      388.   Cox denies the allegations contained in Paragraph 388.

14      389.   Cox denies the allegations contained in Paragraph 389.

15      390.   Cox denies the allegations contained in Paragraph 390.

16      391.   Cox denies the allegations contained in Paragraph 391.

17      392.   Cox denies the allegations contained in Paragraph 392.

18      393.   Cox is without knowledge or information sufficient to form a belief as to

19   the truth of the allegations of Paragraph 393, and therefore denies them.

20                        **<u>COUNT X</u>**

21                  **(Infringement of the '910 Patent)**

22      394.   Paragraphs 1–393 of Cox's Answer are incorporated by reference as if

23   set forth herein.

24      395.   Cox admits that the face of the '910 Patent states that it issued on July

25   24, 2012, from an application filed May 9, 2008, and is related to a provisional

26   application filed May 9, 2007. Cox denies all remaining allegations in Paragraph 395.

27

28

396.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 396, and therefore denies them.

397.   Cox admits that column 1, line 66 – column 2, line 3 of the '910 Patent states that:

> One embodiment is a network in which a transmitting node aggregates packets that are directed to a common destination node. The transmitted packet overhead of the network can then be reduced by eliminating interframe gaps, preamble information, and extra headers.

Cox admits that the '910 Patent has 3 claims, all of which are independent. Cox admits that Exhibit S to the Complaint purports to be a true and accurate copy of the '910 Patent. Cox denies all remaining allegations in Paragraph 397.

398.   Cox denies the allegations contained in Paragraph 398.

399.   Cox denies that the '910 Patent is valid and enforceable. Cox admits that by its issuance, the '910 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 399.

400.   Cox denies the allegations contained in Paragraph 400.

401.   Cox denies the allegations contained in Paragraph 401.

402.   Cox denies the allegations contained in Paragraph 402.

403.   Cox denies the allegations contained in Paragraph 403.

404.   Cox denies the allegations contained in Paragraph 404.

405.   Cox denies the allegations contained in Paragraph 405.

406.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 406, and therefore denies them.

407.   Cox denies the allegations contained in Paragraph 407.

408.   Cox denies the allegations contained in Paragraph 408.

409.   Cox denies the allegations contained in Paragraph 409.

410.   Cox denies the allegations contained in Paragraph 410.

411.   Cox denies the allegations contained in Paragraph 411.

412.   Cox denies the allegations contained in Paragraph 412.

413.   Cox admits that, if the '910 Patent issued as of July 24, 2012, then the '910 Patent issued either while or before Cox was a member of MoCA.

414.   Cox denies the allegations contained in Paragraph 414.

415.   Cox denies the allegations contained in Paragraph 415.

416.   Cox denies the allegations contained in Paragraph 416.

417.   Cox denies the allegations contained in Paragraph 417.

418.   Cox denies the allegations contained in Paragraph 418.

419.   Cox denies the allegations contained in Paragraph 419.

420.   Cox denies the allegations contained in Paragraph 420.

421.   Cox denies the allegations contained in Paragraph 421.

422.   Cox denies the allegations contained in Paragraph 422.

423.   Cox denies the allegations contained in Paragraph 423.

424.   Cox denies the allegations contained in Paragraph 424.

425.   Cox denies the allegations contained in Paragraph 425.

426.   Cox denies the allegations contained in Paragraph 426.

427.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 427, and therefore denies them.

## COUNT XI

### (Infringement of the '0,566 Patent)

428.   Paragraphs 1–427 of Cox's Answer are incorporated by reference as if set forth herein.

429.   Cox admits that the face of the '0,566 Patent states that it issued on November 27, 2012, from an application filed October 15, 2009, and is related to a provisional application filed October 16, 2008. Cox denies all remaining allegations in Paragraph 429.

430.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 430, and therefore denies them.

431.   Cox admits that the abstract of the '0,566 Patent states that:

> Systems and methods are provided that allow multiple transmitting network devices to transmit under an orthogonal frequency divisional multiple access (OFDMA) mode to a receiving network device.

Cox admits that the '0,566 Patent has 18 claims, of which, claims 1, 7, 13, and 16 are independent. Cox admits that Exhibit U to the Complaint purports to be a true and accurate copy of the '0,566 Patent. Cox denies all remaining allegations in Paragraph 431.

432.   Cox denies the allegations contained in Paragraph 432.

433.   Cox denies that the '0,566 Patent is valid and enforceable. Cox admits that by its issuance, the '0,566 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 433.

434.   Cox denies the allegations contained in Paragraph 434.

435.   Cox denies the allegations contained in Paragraph 435.

436.   Cox denies the allegations contained in Paragraph 436.

437.   Cox denies the allegations contained in Paragraph 437.

438.   Cox denies the allegations contained in Paragraph 438.

439.   Cox denies the allegations contained in Paragraph 439.

440.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 440, and therefore denies them.

441.   Cox denies the allegations contained in Paragraph 441.

442.   Cox denies the allegations contained in Paragraph 442.

443.   Cox denies the allegations contained in Paragraph 443.

444.   Cox denies the allegations contained in Paragraph 444.

445.   Cox denies the allegations contained in Paragraph 445.

446.   Cox denies the allegations contained in Paragraph 446.

447.   Cox admits that, if the '0,566 Patent issued as of November 27, 2012, then the '0,566 Patent issued either while or before Cox was a member of MoCA.

448.   Cox denies the allegations contained in Paragraph 448.

449.   Cox denies the allegations contained in Paragraph 449.

450.   Cox denies the allegations contained in Paragraph 450.

451.   Cox denies the allegations contained in Paragraph 451.

452.   Cox denies the allegations contained in Paragraph 452.

453.   Cox denies the allegations contained in Paragraph 453.

454.   Cox denies the allegations contained in Paragraph 454.

455.   Cox denies the allegations contained in Paragraph 455.

456.   Cox denies the allegations contained in Paragraph 456.

457.   Cox denies the allegations contained in Paragraph 457.

458.   Cox denies the allegations contained in Paragraph 458.

459.   Cox denies the allegations contained in Paragraph 459.

460.   Cox denies the allegations contained in Paragraph 460.

461.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 461, and therefore denies them.

## COUNT XII

### (Infringement of the '681 Patent)

462.   Paragraphs 1–461 of Cox's Answer are incorporated by reference as if set forth herein.

463.   Cox admits that the face of the '681 Patent states that it issued on January 29, 2013, from an application filed October 15, 2009, and is related to a provisional application filed October 16, 2008. Cox denies all remaining allegations in Paragraph 463.

464.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 464, and therefore denies them.

465.   Cox admits that the abstract of the '681 Patent states that:

> Various embodiments of the disclosure provide ranging to improv local clock time synchronization.

COX DEFENDANTS' ANSWER AND DEFENSES TO COMPLAINT AND FIRST AMENDED
COUNTERCLAIMS
CASE NO. 2:23-CV-1043-JWH-KES

34

Cox admits that the '681 Patent has 40 claims, of which, claims 1, 11, 21, and 31 are independent. Cox admits that Exhibit W to the Complaint purports to be a true and accurate copy of the '681 Patent. Cox denies all remaining allegations in Paragraph 465.

466.   Cox denies the allegations contained in Paragraph 466.

467.   Cox denies that the '681 Patent is valid and enforceable. Cox admits that by its issuance, the '681 Patent is presumed valid under 35 U.S.C. § 282. Cox denies any remaining allegations in Paragraph 467.

468.   Cox denies the allegations contained in Paragraph 468.

469.   Cox denies the allegations contained in Paragraph 469.

470.   Cox denies the allegations contained in Paragraph 470.

471.   Cox denies the allegations contained in Paragraph 471.

472.   Cox denies the allegations contained in Paragraph 472.

473.   Cox denies the allegations contained in Paragraph 473.

474.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 474, and therefore denies them.

475.   Cox denies the allegations contained in Paragraph 475.

476.   Cox denies the allegations contained in Paragraph 476.

477.   Cox denies the allegations contained in Paragraph 477.

478.   Cox denies the allegations contained in Paragraph 478.

479.   Cox denies the allegations contained in Paragraph 479.

480.   Cox denies the allegations contained in Paragraph 480.

481.   Cox admits that, if the '681 Patent issued as of January 29, 2013, then the '681 Patent issued either while or before Cox was a member of MoCA.

482.   Cox denies the allegations contained in Paragraph 482.

483.   Cox denies the allegations contained in Paragraph 483.

484.   Cox denies the allegations contained in Paragraph 484.

485.   Cox denies the allegations contained in Paragraph 485.

486.   Cox denies the allegations contained in Paragraph 486.

487.   Cox denies the allegations contained in Paragraph 487.

488.   Cox denies the allegations contained in Paragraph 488.

489.   Cox denies the allegations contained in Paragraph 489.

490.   Cox denies the allegations contained in Paragraph 490.

491.   Cox denies the allegations contained in Paragraph 491.

492.   Cox denies the allegations contained in Paragraph 492.

493.   Cox denies the allegations contained in Paragraph 493.

494.   Cox denies the allegations contained in Paragraph 494.

495.   Cox is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 495, and therefore denies them.

## RESPONSE TO PLAINTIFF'S JURY DEMAND

496.   Cox admits that Entropic demands a trial by jury on all issues triable by right, and a response is not required.

## PRAYER FOR RELIEF

497.   Cox denies that Entropic is entitled to any relief, including, but not limited to, any relief sought in the Complaint. To the extent that Entropic's Prayer for Relief contains any factual allegations, Cox denies them.

## DEFENSES

498.   Cox incorporates herein by reference the admissions, allegations, and denials contained in its Answer above as if fully set forth herein. Without assuming any burden that it would not otherwise bear and without reducing Entropic's burden on any of the claims in the Complaint, Cox states the following defenses to the claims in the Complaint. Cox reserves the right to amend its affirmative defenses and to add additional affirmative defenses, including, but not limited to, any defenses revealed during discovery.

## First Defense

### (Failure to State a Claim)

499.   Plaintiff's Complaint fails to state a claim upon which relief can be granted and/or fails to plead factual allegations with sufficiency and particularity required to state a plausible claim.

## Second Defense

### (Non-Infringement)

500.   Cox does not infringe and has not infringed, directly or indirectly, any valid and enforceable claim of U.S. Patent Nos. 7,295,518; 7,594,249; 7,889,759; 8,085,802; 9,838,213; 10,432,422; 8,631,450; 8,621,539; 8,320,566; 10,257,566; 8,228,910; and 8,363,681 (collectively, the "Asserted Patents").

## Third Defense

### (Invalidity)

501.   The claims of the Asserted Patents are invalid for failure to comply with one or more of the requirements of 35 U.S.C. §§ 101, 102, 103, and 112.

## Fourth Defense

### (Prosecution Estoppel)

502.   Plaintiff's claims are barred, in whole or in part, under the doctrine of prosecution estoppel, by admissions, representations, statements, or actions taken during the prosecution of the patent applications that ultimately issued as the Asserted Patents, and/or by representations or actions taken during post-grant proceedings before the USPTO involving the Asserted Patents.

## Fifth Defense

### (Equitable Doctrines)

503.   Plaintiff's claims for relief are barred in whole or in part by the equitable doctrines of prosecution laches, unclean hands, estoppel, *in pari delicto*, waiver, acquiescence, and/or other equitable doctrines.

## Sixth Defense

### (Release, License, or Exhaustion)

504.   Plaintiff's claims for relief against Cox are barred in whole or in part by release, license, or exhaustion, express or implied, and/or restrictions on double recovery. Plaintiff's claims for relief against Cox are barred in whole or in part to the extent that Plaintiff and/or its predecessors in interest granted rights in the Asserted Patents to Cox, Cox's affiliates, and/or Cox's vendors and/or business partners.

## Seventh Defense

### (Limitations of Remedies)

505.   Plaintiff's claims for relief are barred in whole or in part by the provisions of 35 U.S.C. §§ 286 and/or 288.

## Eighth Defense

### (Necessary Parties)

506.   There are additional and necessary parties that must be joined in this action, including to the extent that Plaintiff lacks all right, title, and interest in the Asserted Patents.

## Ninth Defense

### (Not an Exceptional Case)

507.   Cox has engaged in good faith in all activities accused of infringement in Plaintiff's Complaint, thereby precluding Plaintiff, even if it prevails, from recovering attorney fees and/or costs under 35 U.S.C. § 285.

## Tenth Defense

### (No Enhanced Damages)

508.   Plaintiff is not entitled to enhanced damages under 35 U.S.C. § 284, at least because Plaintiff has failed to show, and cannot show, that any infringement has been willful and/or egregious because Cox has not engaged in any conduct that meets the applicable standard for willful infringement.

**Eleventh Defense**

**(Lack of Standing)**

509.   Plaintiff lacks standing to bring, or maintain, this lawsuit in connection with the Asserted Patents, including to the extent that Plaintiff did not, or does not, hold sufficient exclusionary rights under, or all substantial rights, title, and interest to, any of the Asserted Patents.

**Twelfth Defense**

**(Failure to Mark)**

510.   To the extent that Plaintiff, its alleged predecessors in interest to the Asserted Patents, and any and all licensees of the Asserted Patents failed to properly mark any of their relevant products as required by 35 U.S.C. § 287 or otherwise give proper notice that Cox's actions allegedly infringed the Asserted Patents, Cox is not liable to Plaintiff for the acts alleged to have been performed before receiving actual notice that it was allegedly infringing the Asserted Patents.

**Thirteenth Defense**

**(Failure to Comply with FRAND Terms)**

511.   Plaintiff is estopped or contractually barred from demanding relief that is inconsistent with its obligation to offer a license on terms that are fair, reasonable, and non-discriminatory, as to any Asserted Patents that are enforceable, valid, and standard essential.

**Fourteenth Defense**

**(Misuse)**

512.   Plaintiff has engaged in patent misuse that renders the Asserted Patents unenforceable. Specifically, it has engaged in activities with respect to the patents being asserted in this action in a manner that is anticompetitive and improperly broadens the scope of the right to enforce the Asserted Patents. Such actions include attempting to extend the scope of one or more of the Asserted Patents to permit

Plaintiff to attempt to obtain remedies that they would otherwise not be entitled to under the applicable policies of standards organizations, such as MoCA.

### Fifteenth Defense

### (Waiver)

513.   As to any Asserted Patents that are enforceable, valid, and standard essential, Plaintiff has waived any right to claim any recovery that is not FRAND-compliant under the policies of the applicable standards organization, such as MoCA.

### Sixteenth Defense

### (Additional Defenses)

514.   Cox reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that may not exist or in the future be available based on discovery or further factual investigation in this case.

### COUNTERCLAIMS

515.   This case involves assertion of one or more patents that may be owned by a party other than Plaintiff, including at least MaxLinear, Inc. and MaxLinear Communications LLC (collectively, "MaxLinear"). Independently, MaxLinear has sought to avoid encumbrances on its patents in violation of their contractual obligations and have, accordingly, breached those obligations. Plaintiff induced those breaches and is, accordingly, liable for its conduct.

516.   Plaintiff has admitted, or made assertions that reasonably suggest, that the Asserted Patents contain claims essential to Multimedia over Coax Alliance ("MoCA") standards. Cox has not accepted Plaintiff's contentions, but to the extent Plaintiff establishes same, then Cox is entitled under the relevant MoCA IPR policies to a license offer on reasonable and non-discriminatory terms and conditions from the appropriate and correct party.

517.    MaxLinear, however, breached its obligations under the MoCA IPR policies and Plaintiff induced such breaches. Cox accordingly seeks relief for those and related actions.

## Parties, Jurisdiction and Venue

518.    Cox Communications, Inc. ("Cox Communications") is a Delaware corporation with a principal place of business at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328.

519.    CoxCom, LLC ("CoxCom") is a Delaware limited liability company, with a principal place of business at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328.

520.    Cox Communications California, LLC ("Cox California") is a Delaware limited liability company, with a regular and established place of business at 6205 Peachtree Dunwoody Road, Atlanta, Georgia 30328.

521.    Counterclaim plaintiffs are Cox Communications, CoxCom, and Cox California (collectively, "Cox").

522.    MaxLinear, Inc. is a Delaware corporation, with a principal place of business at 5966 La Place Court Suite 100, Carlsbad, CA.

523.    On April 30, 2015, Entropic Communications, Inc. merged with and into Excalibur Subsidiary, LLC (a subsidiary of MaxLinear, Inc.), with the surviving entity being Excalibur Subsidiary, LLC. At the same time, Excalibur Subsidiary, LLC changed its name to Entropic Communications, LLC. On February 20, 2018, Entropic Communications, LLC then changed its name to MaxLinear Communications LLC.

524.    MaxLinear Communications LLC is an affiliate of MaxLinear, Inc., and is a Delaware limited liability company with a principal place of business at 5966 LA Place Ct Ste 100, Carlsbad, CA 92008. Collectively, MaxLinear, Inc. and MaxLinear Communications LLC are referred to as "MaxLinear."

525.   Entropic Communications, LLC ("Entropic" or "Plaintiff") is the Plaintiff in this action and is unaffiliated with MaxLinear. The Counterclaim defendants are Entropic, MaxLinear, Inc., and MaxLinear Communications LLC.

526.   The Court has supplemental jurisdiction over Cox's counterclaims pursuant to 28 U.S.C. § 1367 because, as set forth below, the claims are so related to the claim(s) over which the Court has original jurisdiction that the claims form part of the same case or controversy under Article III of the United States Constitution. Cox's declaratory judgment counterclaim arises under Title 35 of the United States Code and the Court has subject matter jurisdiction over that claim under 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

527.   Entropic filed its Complaint in this matter in this Court, thereby submitting itself to this Court's personal jurisdiction.

528.   This Court has general personal jurisdiction over MaxLinear because it conducts systematic and regular business within the State of California by, inter alia, providing digital, high-performance analog and mixed-signal integrated circuits and software solutions, as well as systems-on-chip solutions used for broadband, mobile and wireline infrastructure, data center, and industrial and multimarket applications.

529.   Upon information and belief, MaxLinear maintains a regular and established place of business within this district at 50 Parker, Irvine, CA 92618.

530.   Venue for these counterclaims is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2) because Entopic filed its claims against Cox in this federal judicial district.

### MaxLinear's Involvement in MoCA

531.   Entropic Communications Inc. ("Entropic Inc."), which Plaintiff claims is the predecessor-in-interest to Plaintiff as to the Patents-in-Suit, was a member of the Multimedia over Coax Alliance or "MoCA." Entropic Inc. executed a Promoter Member Agreement with MoCA in 2003.

532.   At the time during which Entropic Inc. was developing and promoting MoCA technologies, there were other, alternative technologies that the market could adopt, which would be materially detrimental to Entropic Inc.'s business. For example, as Entropic Inc. acknowledged in its December 31, 2014, Form 10-K SEC filing,

> With regard to Connectivity solutions, some service providers, ODMs and OEMs have adopted, and others may adopt, multimedia content delivery solutions that rely on technologies other than the MoCA standard or may choose to wait for the introduction of products and technologies that serve as a replacement or substitute for, or represent an improvement over, MoCA-based solutions. The alternative technology solutions which compete with MoCA-based solutions include Ethernet, HomePNA, HomePlug AV and Wi-Fi. It is critical to our success that additional service providers, including telecommunications carriers, digital broadcast satellite service providers and cable operators, adopt the MoCA standard for home networking and deploy MoCA solutions to their customers. If the market for MoCA-based solutions does not continue to develop or develops more slowly than we expect, or if we make errors in predicting adoption and deployment rates for these solutions, our revenues may be significantly adversely affected. Our operating results may also be adversely affected by any delays in consumer upgrade to HD services, delays in consumer adoption of OTT services, or if the market for OTT services develops more slowly than we expect.[2]

533.   To induce the adoption of MoCA technology by industry participants, including Cox, Entropic Inc. assured MoCA members that it would agree to licensing applicable patents. As Entropic Inc. acknowledged in its December 31, 2014, Form 10-K SEC filing, in connection with its "membership in MoCA, [it was] required to license any of our patent claims that are essential to implement the MoCA specification to other MoCA members under reasonable and non-discriminatory terms."[3] Further, to ensure adequate sources of supply to industry adopters, Entropic Inc. also committed to licensing its competitors' applicable patent rights. Entropic Inc. thus also represented in its formal SEC filing that "[b]ecause our core home

---

[2] https://www.sec.gov/Archives/edgar/data/1227930/000122793015000006/entr2014123110-k.htm
[3] Id.

COX DEFENDANTS' ANSWER AND DEFENSES TO COMPLAINT AND FIRST AMENDED COUNTERCLAIMS
CASE NO. 2:23-CV-1043-JWH-KES

43

networking technology is a primary component of the MoCA specification, we are required to license portions of this technology to other MoCA members, including other semiconductor manufacturers that may compete with us in the sale of MoCA-compliant chipsets."[4] As detailed below, these representations turned out to be false and misleading.

534.   MaxLinear, Inc. joined MoCA as an associate member as of August 17, 2011.[5] MaxLinear, Inc. acquired Entropic Communications Inc. in 2015, after which MaxLinear, Inc. became a member of the MoCA Board of Directors.[6] MaxLinear, Inc. remains a member of the MoCA Board of Directors.[7]

535.   MaxLinear, Inc. executed an Associate  Agreement with MoCA in July, 2011, which agreement bound MaxLinear, Inc. to the IPR Policy and the confidentiality terms set forth in the Promoter Member Agreements executed by Entropic, Inc. and Cox Communications, Inc.

536.   MaxLinear and Entropic Inc. have and/or continue to hold themselves out as pioneers of the MoCA standards. For example, when MaxLinear, Inc. acquired Entropic, Inc., its press release described Entropic, Inc. as having been "recognized for pioneering the MoCA® (Multimedia over Coax Alliance) home networking standard."[8]

537.   Likewise, in promoting its MoCA compliant products, MaxLinear holds itself out "[a]s one of the inventors of [the MoCA] standard."[9]

---

[4] Id.
[5] https://mocalliance.org/news/prM_110817_MaxLinear_Signs_Up_to_MoCA.php
[6] https://www.globenewswire.com/en/newsrelease/
2015/05/13/735634/7047/en/MaxLinear-Inc-Joins-MoCA-Board-of-Directors.html
[7] https://mocalliance.org/about/board.php
[8] https://www.maxlinear.com/company/press-releases/2015/maxlinear-to-acquire-entropic-reaffirms-its-fourth
[9] https://www.maxlinear.com/products/connectivity/wired/moca

1

## The MoCA IPR Policy

2    538.   In becoming members of MoCA and promoting the MoCA standard,

3 MaxLinear, Inc. and Entropic Inc. were, under the MoCA membership agreement,

4 each subject to and bound by the MoCA Intellectual Property Rights Policy ("IPR

5 Policy"), a form copy of which is attached as Exhibit A.[10]

6    539.   The MoCA Board, in accordance with its bylaws and in replacement of

7 any previous IPR Policies as allowed via all relevant MoCA agreements, adopted the

8 IPR Policy in 2017 and Exhibit A is accordingly the version of the IPR Policy

9 applicable to these counterclaims under the parties' Member and Associate

10 Agreements and MoCA bylaws. During all relevant time periods, Cox, as well as each

11 of MaxLinear, Inc. and Entropic Inc. were, in fact, each an Alliance Party as that term

12 is defined in the IPR Policy.

13    540.   Before the adoption of the IPR Policy in 2017, it was widely recognized

14 that standards setting organizations needed to have appropriate policies in place

15 concerning patents potentially applicable to adopted standards. As one study put it,

16 "to reduce the threat of patent hold-up after producers have made significant

17 investments in standardized technologies, many standards-setting organizations

18 (SSOs) require that participants holding patents essential to the SSOs' standards

19 (standard essential patents or SEPs) disclose and/or license such patents to producers

20 on terms that are either royalty-free or subject to 'fair, reasonable and non-

21 discriminatory' (FRAND) royalties."[11]

22

23 ───────────────

[10] Rather than attach the voluminous documents consisting of the two member agreements,
24 Cox elects to reproduce the pertinent provisions, but each of Cox and Entropic Inc.'s
Promoter Member Agreements were produced in discovery. See COX-MOCA_00008612-
25 58; Entropic-CoxMoCA_004677-93. Plaintiff produced only the signature page (Entropic-
CoxMoCA_00746) of MaxLinear's Associate Agreement, but, on information and belief,
26 the relevant form of Associate Agreement and any applicable bylaws are nonetheless
available via the MoCA website.
27 [11] Jorge L. Contreras, Assertion of Standard Essential Patents by Non-Practicing Entities,
at 50 (published in D. Daniel Sokol, Patent Assertion and Competition Policy (Cambridge
28 University Press, 2017)) ("Contreras").

541.   The IPR Policy states that it was "intended to maximize the likelihood of widespread adoption of" various "specifications for the transport of digital entertainment and information content over in-home coaxial environments." Exhibit A, at § 1. The IPR Policy obligated MaxLinear to provide non-exclusive licenses to patents containing essential patent claims on fair, reasonable, and nondiscriminatory terms. That obligation applied to both "then-current" Alliance Parties under Section 5.1.1 and was also broadened to allow former Alliance Parties to "request or require" any Alliance Party like MaxLinear to provide the required license. Exhibit A, at § 5.1.1, 7.1.

542.   By 2017 when the IPR Policy was promulgated, there had been more industry experience with patent assertion entities. Only a year earlier, the Federal Trade Commission had issued a landmark report and study concerning patent assertion entities ("PAEs").[12] It concluded that "Litigation PAEs" were entities that "frequently relied on revenue sharing agreements to acquire patents" and "overwhelmingly filed infringement lawsuits before securing licenses." (*Id*.) Indeed, these "Litigation PAEs accounted for 96 percent of all patent infringement lawsuits."[13] After a key case study, the Commission concluded that such entities behaved very differently from manufacturers – they "brought far more infringement lawsuits" than manufacturers and other licensing entities and sought "lump-sum payments with few restrictions, if any, whereas the reported manufacturer licenses frequently included field-of-use restrictions, cross-licenses, and complicated payment terms."[14]

543.   Anecdotal reports and industry experience demonstrated by 2016 that standard essential patents ("SEPs") were a particular target for non-practicing entities

---

[12] *See* https://www.ftc.gov/news-events/news/press-releases/2016/10/ftc-report-sheds-new-light-how-patent-assertion-entities-operate-recommends-patent-litigation
[13] *Id*.
[14] *Id*.

to acquire and assert.[15] One study, first reported in 2016 and published in 2017, analyzed SEP assertions and determined that "NPEs were responsible for 362 [relevant] events (73 percent) relating to the [7] standards studied."[16]

544.   The IPR Policy included other provisions to minimize the potential for patent hold-up or patent litigation by strangers to MoCA, such as non-practicing patent assertion entities. MoCA was originally formed with an assumption, and contractual commitment, that technical documents would be confidential among MoCA members, which would be the entities creating and holding any relevant intellectual property. The IPR Policy continued those requirements, including via provisions governing to whom the draft and actual standards would be promulgated, as well as clauses addressing ownership of relevant intellectual property and to prevent circumvention of the overall MoCA approach to IPR.

545.   Under Section 3 of the IPR Policy, technical working groups were to create "Draft Deliverables," which generally encompassed the technical specifications, tests or other work product that would be distributed to the MoCA Board and Alliance Parties for review and ultimate approval as a standard. Unless an Alliance Party objected in writing or otherwise withdrew, that parties' essential patent claims applicable to any ultimately approved Draft Deliverable became subject to the RAND obligation in Section 5.1. MaxLinear never withdrew from MoCA or otherwise provided the objection required, which thus meant that all of its patents with essential patent claims were encumbered by the obligations of the IPR Policy.

546.   Once the MoCA Board voted to approve Draft Deliverables, those materials were provided to Alliance Parties. But approved Draft Deliverables were not for distribution to third parties absent approval via Section 3.6, which generally required MoCA Board approval "to allow for disclosure to third parties that are not Alliance Parties or any of their Affiliates ('Unrelated Parties')." Such procedures for

---

[15] Contreras, at 50-52.
[16] *Id*., at 57.

allowing approved deliverables were necessary because of the MoCA bylaws and agreement underlying treatment of confidential information. Section 5 of the MoCA Membership Agreement that both Cox and Entropic Inc. were bound by, for example, designated as "Confidential Information" any materials "designated in writing as confidential or proprietary by the Alliance, Promoter Member, or any other Alliance Member (the 'Disclosing Party')" via confidentiality markings and "[a]ll Alliance Draft Deliverable(s), Approved Draft Deliverable or Deliverables (as such terms are defined in the IPR Policy.)" MaxLinear, Inc. agreed to the same or equivalent confidentiality terms via its Associate Agreement, as required in MoCA's bylaws. As a result, MoCA standards were both confidential under these provisions and were typically so marked. By way of example, the MoCA standards that Plaintiff produced in this action and which it relies upon in its Complaint to aver infringement bear a legend that says "MoCA Member Only Distribution," and include a notice on the first page that states: "This document and each element of this document are the Confidential Information of … MoCA and of the MoCA members that contributed to this document. Both MoCA and/or any such MoCA members may enforce such obligations of confidentiality directly." Under Section 5 of the IPR Policy, recipients were not to disclose such Confidential Information to third parties, unless the Board authorized such disclosure under the procedures set out in the IPR Policy. However, the MoCA Board has never authorized disclosure of approved draft deliverables, including MoCA standards, to third parties, including Plaintiff, who acquired patents from Alliance Parties. Only Alliance Parties were privy to the actual approved draft deliverables that included MoCA standards.

547.   Consistent with the limited disclosure of approved Draft Deliverables, the IPR Policy also included various clauses requiring Alliance Parties to hold the relevant necessary patents and other intellectual property and anti-circumvention clauses to enforce such requirements. First, the IPR Policy specified that "Intellectual

Property" referenced the intellectual property, including patents, "necessary to use, make," etc. the technologies to be implemented under the various draft and approved Deliverables. Exhibit A, Definitions. Section 4.1.1 required that such Intellectual Property be owned by either "the Alliance Party(ies) who developed the Intellectual Property or by the Alliance Party(ies) to whom the Intellectual Property was properly and legally assigned." In all cases, however, as to any necessary patents, the IPR Policy required that any such essential patents shall be owned by an "Alliance Party."

548. Second, under Section 4.1.2, the Alliance Parties promised that each would always maintain the right to grant the required licenses under the IPR Policy. MaxLinear represented, warranted, and covenanted that it had the power and authority to bind itself to the IPR policy, and the relevant obligations therein, including to grant patent licenses. MaxLinear also "further represents and warrants and agrees that it has not and will not intentionally transfer or otherwise encumber its patents or patent applications that reasonably may contain or result in Essential Patent Claims for the purpose of circumventing the obligation to grant licenses contained in this IPR Policy." Exhibit A, at § 4.1.2.

549. The IPR Policy specified that any transfer of patents with essential claims to unaffiliated third parties required alliance parties like MaxLinear to ensure that such transfers were made subject to the IPR Policy. That obligation required, at minimum, that "any agreement for transferring or assigning ... any patent or patent application that reasonably may contain or result in an Essential Patent Claim, includes a provision that such transfer or assignment is subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws" under the IPR Policy. Exhibit A, at § 5.1.2.

550. Thus, the IPR Policy required that MaxLinear, as an Alliance Party, either own the relevant patents or retain the right to grant any licenses for essential patents via multiple provisions that addressed access to the relevant confidential

standards, development and ownership of the relevant Intellectual Property, and ongoing obligations to ensure Alliance Parties retained relevant licensing rights.

## MaxLinear's Promotion of MoCA to Cox and Others

551. Entropic Inc. and MaxLinear made the foregoing commitments, representations, and warranties in order to induce cable operators, including Cox, to rely upon and adopt MoCA, rather than viable alternative technologies. Entropic Inc. and MaxLinear benefitted from their representations and commitments by, among other things, being able to make, offer for sale, and sell various equipment for use in the cable industry that are advertised as being and/or are MoCA compliant. MaxLinear, Inc. and Entropic Inc. obtained substantial revenues by representing themselves as founding members and pioneers of MoCA, promoting MoCA, formulating and executing the IPR Policy, as well as selling and promoting MoCA compliance of its products.

552. Cox joined MoCA long before Plaintiff filed this lawsuit and remained a member of MoCA until approximately July, 2022. For example, Cox Communications, Inc. executed a promoter member agreement in 2005. At all relevant times, Cox performed its obligations under the promoter member agreement and the IPR Policy, including by paying its relevant membership dues and performing its duties, including acting as a member of the MoCA Board, and Cox further supported adoption of MoCA over other technologies the industry could have used.

553. MaxLinear itself benefitted from Cox's participation and support in MoCA, including by having Cox help expand the market for MoCA and approve standards while acting as a Board member. The benefits MaxLinear received from Cox's participation in MoCA included Cox's feedback concerning standards and approval of standards, Cox's consideration and adoption of any MoCA equipment, MaxLinear's ability to work with vendors of Cox on interoperability and other issues

critical to MaxLinear's own products, and MaxLinear's ability to market and offer to sell MoCA equipment to Cox.

554. MoCA itself promoted the value of its unique membership agreement and IPR Policy. The confidential nature of the interactions of the MoCA members as well as details of the MoCA IPR policy, were valuable attributes of membership for which Cox paid substantial monies and which Cox supported with personnel and other resources. Cox relied upon the IPR Policy and provisions therein in supporting and participating in MoCA, voting on MoCA standards and supporting MoCA deployment. For instance, Plaintiff's Complaint, at ¶¶ 57, 59, and 61 has averred that Cox personnel have discussed its reliance on or use of MoCA in various press. Likewise, Cox relied on MaxLinear's representations and promises that it was bound by and would comply with the IPR Policy.

555. While Cox does not concede that any MoCA equipment it may have purchased or deployed infringes any valid patent Plaintiff asserts, Cox did expend substantial resources in deploying equipment that contains MoCA components. Indeed, before Cox's membership in MoCA ceased, MaxLinear never contacted Cox to indicate that Cox was somehow improperly practicing MaxLinear's patents that were covered by any MoCA standards or other aspects of the Approved Draft Deliverables. To the contrary, even as MaxLinear stayed silent as to any patent issues, it consistently worked with Cox and its vendors, including to ensure interoperability of various devices with MaxLinear's products and to promote wider adoption and use of MoCA.

**The Improper Efforts to Free the Patents of Encumbrances to Bring this Suit**

556. Unknown to Cox, however, in 2021, each of MaxLinear, Inc. and MaxLinear Communications LLC negotiated and entered into a ███████ ████████ with Plaintiff that ████████████████████ ████████████████████

557. 

558.

559.   Plaintiff asserts in its Complaint, at ¶ 7, that it "is the owner by assignment to all right, title, and interest to the Patents-in-Suit" and "is the successor-in-interest for the Patents-in-Suit."

560.   Exhibit B is a true and correct copy of the assignment agreement between MaxLinear Communications LLC and Plaintiff Entropic Communications, LLC executed on March 31, 2021 and filed with the U.S. Patent Office (hereafter "Plaintiff's Assignment"). Exhibit B purports to assign the Asserted Patents to Entropic and is the last assignment applicable to the Asserted Patents to have been filed in the U.S. Patent Office before the filing of Plaintiff's Complaint.

561.   Plaintiff is not and, since its formation, has not been, an affiliate of MaxLinear or an Alliance Party under the IPR Policy. Plaintiff nonetheless knew of MaxLinear's contractual commitments to MoCA and that MaxLinear was bound by the IPR Policy. Plaintiff's knowledge is based on at least the foregoing: MaxLinear publicly noted its membership in MoCA, the MoCA alliance maintained a website that set forth the IPR Policy applicable to MoCA membership and,                      . Furthermore, before filing this suit, Plaintiff reviewed the MoCA standards and the relevant IPR Policy, including in

connection with sending correspondence to Cox in 2022 claiming Plaintiff owned patents essential to MoCA. Finally, Plaintiff has identified Mr. Anton Monk, an inventor and former co-founder of Entropic Inc., as a witness within its control. Mr. Monk was aware of the IPR Policy and MaxLinear's commitments thereunder given Mr. Monk's officer roles at MaxLinear, participation as a MoCA Board member and contributor to working groups responsible for considering, revising and implementing the IPR Policy.

562.   Plaintiff and MaxLinear knew that Cox was a member of MoCA and knew that Cox was a beneficiary of the contractual commitments MaxLinear made to MoCA. MaxLinear's obligations were directly to Cox given that the IPR Policy sets forth promises MaxLinear makes to members and former members such as Cox, who was also an intended beneficiary of the IPR Policy.

563.   Based on the averments in Plaintiff's Complaint and if Plaintiff's averments are substantiated, one or more of the Asserted Patents reasonably may contain essential patent claims such that the applicable patent(s) are subject to the IPR Policy. By way of example, Plaintiff's Complaint contains averments concerning the relevance of MoCA to the Asserted Patents, attaches as exhibits the Asserted Patents that discuss the MoCA standards, expressly identifies certain claims as essential, and/or references as exhibits claim charts that compare one or more claims within the Asserted Patents to the MoCA standards. *See also* ECF No. 1, at ¶¶ 109, 143, 177, 211, 245, 279, 313, 347, 381, 415, 449, 483.

564.   Additionally, Plaintiff has claimed that it holds "a number of patents essential to compliance with foundational aspects of the Multimedia over Coax Alliance ("MoCA"), MAC/PHY Specifications ('MOCA Specifications')."[17] Plaintiff's correspondence further included a list of patents, which list includes the Asserted Patents.

---

[17] Complaint, CA No. 2:23-cv-01049-JWH-KES, at Ex. 17.

565.   Despite Plaintiff's current representations that the Asserted Patents are essential, neither the ███████████████████ nor Plaintiff's Assignment concerning the Asserted Patents includes "a provision that such transfer or assignment is subject to existing licenses and obligations to license imposed" under the IPR Policy. Exhibit B.

566.   Plaintiff's Assignment, in fact, purports to assign "all right, title, and interest" to the Asserted Patents and to make such assignment "free and clear of all liens, claims and encumbrances other than those" Plaintiff "expressly agreed in writing will continue to encumber the Patent Rights after execution and delivery of this Assignment of Patent Rights." Plaintiff's Assignment, however, contains no express, written agreement by Plaintiff as to the continued existence of any encumbrances. Likewise, the ██████████████████████████████████
████████████████████████████████████████████
████████████████.

567.   Plaintiff's Assignment and the ████████████████████
██████████████████ violate the IPR Policy and are void.

568.   ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████

569.   Plaintiff's Complaint asserts that the improperly assigned and Asserted Patents are essential to the confidential MoCA standards and attaches various charts purporting to compare claims elements to those same standards. ███████████████ ████████████████████████████████████████, Plaintiff obtained copies of the otherwise confidential MoCA standards and has relied on those clearly marked confidential material to which it should not have had access to prepare and send its correspondence in 2022 to Cox and to prepare and bring this suit. *See, e.g.,* ECF. No. 1-22 (Ex. V, at 16 (Page ID #:576)); ECF No. 1-24 (Ex. X, at 12 (PageID #:613)). On information and belief, MaxLinear provided confidential MoCA standards and other confidential MoCA information and materials to Plaintiff in breach of MaxLinear's obligations.

570.   Plaintiff induced MaxLinear's breaches of its relevant contractual obligations, and the IPR Policy provisions in order to acquire the Asserted Patents and to bring this suit. Plaintiff's inducing actions included: ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████

571.   Plaintiff additionally did not and, despite Cox's prior request in writing, has not, provided or procured any RAND-compliant offer to the relevant patents consistent with the IPR Policy.

572.   Cox invested substantial money and resources into becoming a member of MoCA, yet MaxLinear and Plaintiff's actions have resulted in Cox not receiving the benefits of its MoCA membership, including that any essential patents would remain under the ownership of an Alliance Party, and that Cox would be able to

require or request an offer of a RAND license and negotiation of same from MaxLinear.

573.   But for the breach and induced breach of the IPR Policy, Plaintiff could not have asserted ownership of the relevant patents, or any entitlement to damages or royalties given the relevant provisions. But for MaxLinear's contractual breaches, this case would not have been filed. Cox has been forced to defend, and incurred significant expense in defending, an action concerning patents that, if Plaintiff's averments are correct, are not owned or ownable by Plaintiff, and as to which Cox was entitled to either an offer and negotiation of a RAND license from MaxLinear or is entitled to request or require a RAND license from MaxLinear. Plaintiff's improper inducement has prevented and precluded Cox from obtaining such benefits of the IPR Policy.

## Count I: Breach of Contract by MaxLinear

574.   Cox realleges and incorporates by reference the foregoing allegations of its counterclaims.

575.   MaxLinear, and specifically, each of MaxLinear, Inc. and Entropic, Inc., breached their contract with MoCA and their obligations to all present and former members thereof.

576.   MaxLinear has breached its contractual obligations by engaging in at least the following actions: (a) breaching its contract by attempting to circumvent its obligation to provide non-exclusive licenses to any patents containing essential patent claims on FRAND terms; (b) breaching its agreement that it would own any necessary patents; (c) breaching its representation, warranty and covenant that MaxLinear would maintain the power and authority to grant patent licenses as required under the IPR Policy; (d) breaching its promise not to transfer patents so as to circumvent the obligation to grant licenses; (e) improperly assigning the Asserted Patents free of any encumbrances, including those created by the IPR Policy; (f) executing assignment

agreements that omit the provisions required by the IPR Policy; and (g) breaching its confidentiality obligations by sharing confidential MoCA information with Plaintiff.

577.   MaxLinear, as the purported founder and pioneer of the MoCA standards, had an obligation to ensure the integrity of the IPR Policy to all members. MaxLinear's efforts to avoid and undercut the contractual commitments of the very organization it claims to have founded concerning the very technology it claims to have pioneered is, in addition, a breach of the implied covenant of good faith and fair dealing.

578.   As a result of these breaches, Cox has been injured in their business or property, and has suffered and will continue to suffer damages.

579.   Cox seeks a finding that, in view of MaxLinear's breaches, any agreement purporting to assign the asserted patents is void. Further, to the extent the Asserted Patents contain patent claims essential to the MoCA standard, Cox is entitled to receive an appropriate license on FRAND terms from MaxLinear, and only MaxLinear. Accordingly, Cox asks for equitable relief from the Court, including specific performance and injunctive relief to ensure that MaxLinear complies with the IPR Policy.

### Count II: Declaratory Judgment that Assignments Are Void

580.   Cox realleges and incorporates by reference the foregoing allegations of its counterclaims.

581.   As detailed above, each of the MaxLinear entities were Alliance Parties at the time of the relevant agreements by which they transferred the Asserted Patents to Plaintiff. Such transfers were in violation and breach of the MoCA IPR Policy. MaxLinear's breaches occurred at least because one or more claims in the transferred patents "reasonably may contain … an Essential Patent Claim" or, in light of Plaintiff's averments, did contain an Essential Patent Claim and such transfers violated MaxLinear's (1) promise that it would exclusively own the relevant

intellectual property necessary to the MoCA standards; (2) representation, warranty and covenant that it would have the power and authority to bind itself to the obligations of the IPR Policy; (3) promise that it "has not and will not intentionally transfer" its patents "for the purpose of circumventing the obligation to grant licenses" per the IPR Policy; (4) promise that "any sale, assignment or other transfer" of relevant patents "shall be made subject to" the IPR Policy; and/or (5) promise to include in any relevant assignment a "provision that such transfer or assignment is subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws." *See* Exhibit B, § 4 and 5.

582.   Plaintiff has brought suit claiming to own, through its illegal, improper and void assignments, the Asserted Patents. As a result, there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment voiding the agreements assigning the Asserted Patents to Plaintiff.

### Count III: Tortious Interference with Contract Against Entropic

583.   Cox realleges and incorporates by reference the foregoing allegations of its counterclaims.

584.   As discussed above, MaxLinear contractually committed to provide to Cox, as a member of MoCA, the right to request or receive a license on RAND terms to any patent containing a patent claim essential to the MoCA standards, as well as MaxLinear's contractual promises to honor the IPR Policy.

585.   Entropic was aware of this contract and MaxLinear's obligation. Nevertheless, Entropic induced a breach of MaxLinear's contractual obligations by inducing MaxLinear to attempt to assign various patents that Plaintiff contends are essential for Entropic to enforce and for Entropic to seek damages, despite Entropic's awareness that such patents may reasonably contain essential patent claims. Entropic further induced MaxLinear to breach its confidentiality obligations to MoCA and

MoCA members and former members like Cox. As a result of Entropic's actions, MaxLinear breached its contractual obligations.

586.   As a result of these breaches, Cox has been injured in their business or property, and has suffered and will continue to suffer damages.

## Count IV: Alternative Claim of Quasi-Contract for Restitution / Unjust Enrichment Against MaxLinear

587.   Cox realleges and incorporates by reference the foregoing allegations of its counterclaims.

588.   As discussed above, MaxLinear received multiple benefits from participating in MoCA, including development and promotion of applicable standards and interaction with Cox, other cable operators and Cox's other suppliers. MaxLinear was able, among other benefits, to develop, deploy, market, make, and sell various MoCA-compliant equipment to the cable industry.

589.   MaxLinear also received the ability to learn of draft and actual MoCA specifications, the future progress of cable industry technology and the potential innovations important to the cable industry. These benefits further assisted MaxLinear in developing, securing and ultimately monetizing patents, including the Asserted Patents. MaxLinear further was able to entice industry participants to adopt MoCA over alternative technologies based on its false and misleading representations that MaxLinear would retain the rights to grant licenses to applicable patents containing claims essential to MoCA.

590.   The benefits MaxLinear received were obtained as a result of its false, misleading and/or mistaken representations and requests. MaxLinear made false representations, including misrepresenting to the public via its securities filings that any of its essential patents were encumbered by the MoCA IPR Policy. It additionally misled and misrepresented to MoCA and MoCA members that any of MaxLinear's essential contributions to MoCA as a standard would be available to license on RAND

terms from MaxLinear, who would additionally keep MoCA information confidential. The ████████████████████████████████, as well as MaxLinear's conduct in breaching its obligations and affirmatively seeking to divest key encumbrances, demonstrate the false and misleading nature of MaxLinear's prior statements and actions.

591. These actions by MaxLinear created, at minimum, a quasi-contract that MaxLinear has now breached by retaining the benefits conferred unjustly.

592. MaxLinear received these benefits at Cox's expense. Cox devoted substantial monetary and personnel resources to MoCA, including by working with MaxLinear and other vendors of MoCA equipment. Cox understood and expected that MaxLinear had committed to ensuring that Cox and other adopters of MoCA could invest in, deploy, use and sell MoCA-compliant equipment free of any claim from some third party relating to any of MaxLinear's relevant patents that are essential to MoCA. Cox acted in reliance on MaxLinear's false, misleading and mistaken representations concerning, and requests to participate in and support, MoCA. By instead transferring the Asserted Patents to Plaintiff, MaxLinear has deprived Cox of the benefits of its investments in MoCA, and created additional expense and uncertainty for Cox and its business, while retaining benefits that it unjustly earned through its false and misleading actions and statements.

593. Equity and good conscience accordingly demands that MaxLinear disgorge and provide restitution of any and all monies and profits from MaxLinear's unjust enrichment.

## **PRAYER FOR RELIEF**

Wherefore, Cox respectfully asks this Court for the following relief:

    A.    That the Complaint against Cox be dismissed in its entirety with prejudice;

    B.    That this Court find that all claims of the Asserted Patents that

1    Plaintiff has asserted or will properly assert against Cox are

2    invalid and patent ineligible pursuant to Title 35 of the United

3    States Code;

4    C.    That this Court find and declare that Cox has not infringed and

5          does not infringe, in any manner, any valid and enforceable

6          asserted claim of any Asserted Patent;

7    D.    That this Court find the asserted claims of the Asserted Patents

8          unenforceable against Cox;

9    E.    That Plaintiff take nothing by reason of its Complaint;

10   F.    That MaxLinear breached their contractual obligations and/or

11         was unjustly enriched such that this Court shall award Cox

12         appropriate damages and equitable relief;

13   G.    That Entropic induced and intentionally interfered with

14         contractual relations and award Cox appropriate damages and

15         equitable relief;

16   H.    That this Court declare as void any agreement attempting to

17         assign the Asserted Patents in violation of the IPR Policy;

18   I.    That this Court find that this is an exceptional case under 35

19         U.S.C. § 285 and award Cox its reasonable attorneys' fees,

20         expenses, and costs incurred in this action; and

21   J.    Any such other relief as the Court deems to be just and proper.

Dated:  January 9, 2024

KILPATRICK TOWNSEND & STOCKTON LLP

By:    /s/ April E. Isaacson

April E. Isaacson (SBN 180638)
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran (SBN 347617)
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell (*admitted pro hac vice*)
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba (*admitted pro hac vice*)
wkadaba@kilpatricktownsend.com
Michael J. Turton (*admitted pro hac vice*)
mturton@kilpatricktownsend.com
Courtney S. Dabbiere (*admitted pro hac vice*)
cdabbiere@kilpatricktownsend.com
Christopher S. Leah (*admitted pro hac vice*)
cleah@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.;*
*CoxCom, LLC; and Cox Communications*
*California, LLC*

1

## **DEMAND FOR JURY TRIAL**

2      Cox hereby demands a jury trial, pursuant to Fed. R. Civ. P. 38(b), as to all

3 issues that may be tried by a jury

4 Dated: January 9, 2024          KILPATRICK TOWNSEND & STOCKTON LLP

5

6                                By:   */s/ April E. Isaacson*

7                                April E. Isaacson (SBN 180638)
                                 aisaacson@kilpatricktownsend.com
8                                Two Embarcadero Center, Suite 1900
                                 San Francisco CA 94111
9                                (415) 273 8306

10                               Sarah Y. Kamran (SBN 347617)
                                 skamran@kilpatricktownsend.com
11                               1801 Century Park East, Suite 2300
                                 Los Angeles CA 90067
12                               (310) 777 3733

13                               Mitchell G. Stockwell (*admitted pro hac vice*)
                                 mstockwell@kilpatricktownsend.com
14                               Vaibhav P. Kadaba (*admitted pro hac vice*)
                                 wkadaba@kilpatricktownsend.com
15                               Michael J. Turton (*admitted pro hac vice*)
                                 mturton@kilpatricktownsend.com
16                               Courtney S. Dabbiere (*admitted pro hac vice*)
                                 cdabbiere@kilpatricktownsend.com
17                               Christopher S. Leah (*admitted pro hac vice*)
                                 cleah@kilpatricktownsend.com
18                               1100 Peachtree Street, NE, Suite 2800
                                 Atlanta GA 30309
19                               (404) 815 6500

20                               *Attorneys for Defendants*
                                 *Cox Communications, Inc.;*
21                               *CoxCom, LLC; and Cox Communications*
                                 *California, LLC*

22

23

24

25

26

27

28