1  DAVID M. KEYZER (SB# 248585)
   david@keyzerlaw.com
2  LAW OFFICE OF DAVID KEYZER, P.C.
   5170 Golden Foothill Parkway
3  El Dorado Hills, CA 95762
   Telephone: (916) 243-5259
4  Facsimile: (916) 404-0436

5

6

7

8                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
9                           SOUTHERN DIVISION

10                                      §
                                        §
11  ENTROPIC COMMUNICATIONS, LLC,        §   Case No. 2:23-cv-01043-JWH-KES
         Plaintiff,                      §   LEAD CASE
12                                       §
         v.                              §
13                                       §   Hon. John W. Holcomb
    COX COMMUNICATIONS, INC., et al.,    §   Special Master David M. Keyzer
14       Defendants.                     §
                                        §
15                                      §   **SPECIAL MASTER ORDER**
                                        §   **No. SM-10**
16                                      §
                                        §
17                                      §
                                        §
18                                      §
                                        §
19                                      §

20

1  Pursuant to the Court's July 5, 2023 Order Appointing David Keyzer, Esq. as
2  Special Master for Discovery Purposes (Dkt. 74), and further pursuant to the Court's
3  grant of consolidations (Dkt. 129, Oct. 13, 2023 Order) and the discovery dispute
4  resolution procedure agreed upon by the parties and adopted by the Special Master
5  (Dkt. 85-1, Aug. 4, 2023 Special Master Order No. SM-2), the Special Master held a
6  discovery hearing on January 12, 2024, regarding disputes raised by the Cox Defendants
7  in a letter brief submitted to the Special Master on December 14, 2023, and responded to
8  by Plaintiff in a letter brief submitted on January 8, 2024. (*See* Dkt. 220-1, Dec. 22, 2023
9  Special Master Order No. SM-9.)

10  Cox moves for relief as to Entropic's infringement contentions served on
11  September 29, 2023. Cox argues that Entropic's contentions: (a) should be stricken as to
12  "representative" charting such that Entropic should be found to have forfeited its ability
13  to accuse any products other than the one charted; (b) should be stricken as to attempting
14  to accuse "similar" products; and (c) should be ordered to be amended to correct
15  Entropic's failure to provide reasonable notice as to several claim limitations.

16  **I. REPRESENTATIVE CHARTING**

17  Cox argues that Entropic fails to show that the "representative" products have
18  substantially the same purportedly infringing qualities as the other products. *See CAO*
19  *Lighting, Inc. v. Feit Elec. Co.*, No. CV 20-4926-AB (SPx), 2021 WL 3376649 (C.D.
20  Cal. June 2, 2021).

1  Entropic's use of "representative" products gives Cox notice of alleged
2  infringement as to whatever features are accused, albeit with the burden of proof
3  remaining on Entropic to prove infringement as to each accused product (whether
4  through specific proof or through an agreement by the parties regarding
5  representativeness).  *See id.* at *3 ("A separate chart for each accused product is not
6  necessary as long as each accused product allegedly infringes in the same way.") (citation
7  omitted); *see JVC Kenwood Corp. v. Nero, Inc.*, No. 12-cv-03662-MRP-JC, 2012 WL
8  12884051, at *2 (Pfaelzer, J.) ("Product groups are sometimes acceptable.")
9  Cox's motion to strike Entropic's use of "representative" charting is therefore
10 denied, but, as discussed at the January 12, 2024 hearing, the issue of representative
11 products more generally will likely need to be revisited prior to trial because of Plaintiff's
12 standards-based infringement allegations and the large number of potentially accused
13 products.

## II.  ACCUSING "SIMILAR" PRODUCTS

15 Cox argues that information regarding its products is publicly available and that
16 Entropic's attempt to accuse unspecified "similar" devices is improper.
17 Entropic responds as to this issue in conjunction with responding to the Cox
18 Defendants arguments regarding representative charting (addressed above).  Also, at the
19 January 12, 2024 hearing, Entropic argued that this is a "standards-based" case, which
20 Entropic argues allows it to give the Cox Defendants adequate notice by categorically

1  accusing all products that comply with the MoCA standards identified by Entropic.

2  Entropic also submitted that the Cox Defendants have identified no relevant differences

3  between products that comply with the relevant MoCA standards.

4  To the extent Entropic's infringement contentions purport to accuse, categorically,

5  all other "similar" products, such contentions are amorphous and overbroad and thus fail

6  to give reasonable notice to the Cox Defendants regarding what is accused of

7  infringement. *See Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00360 WHA, 2018 WL

8  3219486, at *3 (N.D. Cal. July 2, 2018) (Alsup, J.) (rejecting use of "open-ended"

9  language in contentions and holding that the patentee would be "limited to the accused

10 products actually listed in its infringement contentions"); c*f. Eagle View Techs., Inc. v.

11 Nearmap US, Inc.*, No. 2:21-CV-283, 2023 WL 3551409 (D. Utah May 18, 2023). The

12 Cox Defendants' motion to strike contentions that refer categorically to other "similar"

13 products is therefore granted.

### III.  SPECIFIC LIMITATIONS

15  As the Special Master noted at the January 12, 2024 hearing, the parties have not

16 proposed (and the Court has not adopted) any patent local rules to govern in this case.

17 The Special Master therefore considers for persuasive value the principles underlying the

18 patent local rules of various courts, and the precedents that have applied such rules, as

19 they pertain to contentions. *See, e.g.,* N.D. Cal. Patent Local Rules 3-1 & 3-6 (rev.

20 Oct. 19, 2023); *JVC*, 2012 WL 12884051, at *2 ("The Court neither demands perfect

1  notice at the expense of efficiency, nor tolerates inadequate notice for the sake of
2  efficiency."); *Cathx Research Ltd. v. 2G Robotics, Inc. a/k/a Voyis Imaging, Inc.*, No.
3  5:21-CV-77-RWS, 2022 WL 3656441 (E.D. Tex. June. 16, 2022); *Essociate Inc. v.*
4  *Neverblue Media Inc.*, No. CV 12-08455-JVS-MLGx, 2013 WL 12131762 (C.D. Cal.
5  July 8, 2013); *cf. Munchkin, Inc. v. Luv N' Care, Ltd.*, No. 2:13-CV-07228-ODW-AGR,
6  2015 WL 774065, at *2 (C.D. Cal. Feb. 24, 2015) (Wright, J.).

**A.  '518 Patent**

As to the limitation of "the network device up converter translat[ing] the modulated data to an RF carrier frequency above the frequency used by the cable television service," Entropic provides sufficient notice of its infringement theory by contending that "the Cox whole-premises DVR network is configured to operate in a frequency spectrum above the frequency used by the cable television service as defined in the MoCA Standards."  (Pl.'s Disclosure of Asserted Claims and Infringement Contentions (Sept. 29, 2023) ("Pl.'s Contentions"), Ex. A, U.S. Patent No. 7,295,518 Exemplary Infringement Chart, at 16.)

For the "multi-carrier modulator" and "multi-carrier demodulator," Entropic contends:

> [T]he Cox whole-premises DVR network includes at least two Accused MoCA Instrumentalities (e.g. network devices). By virtue of their compliance with MoCA, the Accused MoCA Instrumentalities include applicable circuitry and/or software modules constituting a multi-carrier modulator for modulating data, an up converter for translating the modulated data to an RF carrier frequency, a down converter for translating an RF

|   |   |
|---|---|
| 1 | signal, and a multi-carrier demodulator for demodulating the translated RF signal to produce data.  On informed belief, the Accused MoCA Instrumentalities have applicable circuitry and/or software modules constituting a down converter for translating an RF signal and a multi-carrier demodulator for demodulating the translated RF signal to produce data. |

(*Id.* at 4–5.)  This contention is accompanied by several excerpts from Cox documents and MoCA standard documents.  (*See id.* at 5–9.)

Entropic does not, however, identify what purportedly constitutes the claimed "multi-carrier modulator" and "multi-carrier demodulator" in the accused instrumentalities or the MoCA standard.  Entropic should supplement its infringement contentions in this regard.

**B.  '249 Patent**

Entropic contends that the "filter" limitations are met by "at least one splitter having a filter" in the accused instrumentalities.  (Pl.'s Contentions, Ex. B, U.S. Patent No. 7,594,249 Exemplary Infringement Chart, at 4.)  This provides the Cox Defendants with adequate notice of what is accused.

**C.  '759 Patent**

Entropic asserts that the limitations of "includ[ing] bit-loading modulation scheme," "determining the transmission characteristics of the channel path," "transmitting a response signal," "measuring the signal-to-noise ('SNR') characteristics of the received probe signal," and "bit-error rate" are met by the accused instrumentalities not only "by virtue of their compliance with MoCA" (citing various portions of the

1  MoCA standards) but also, more specifically, "as part of link maintenance operations
2  (LMO)." (Pl.'s Contentions, Ex. C, U.S. Patent No. 7,889,759 Exemplary Infringement
3  Chart, at 9, 13, 18, 19, 20, 41 & 44.) These contentions provide the Cox Defendants with
4  reasonable notice of Entropic's infringement theories.

**D.  '802 Patent**

For the "MAC subsystem" and "Modem subsystem" limitations, Entropic contends that these limitations are met by the accused instrumentalities "by virtue of their compliance with MoCA." (Pl.'s Contentions, Ex. D, U.S. Patent No. 8,085,802 Exemplary Infringement Chart, at 5, 10 & 12.) Entropic cites various portions of MoCA standards (*see id.* at 5–14) but does not, however, identify what purportedly constitutes the claimed "MAC subsystem" and "Modem subsystem" in the accused instrumentalities or the MoCA standard. Entropic should supplement its infringement contentions in this regard.

**E.  '422 Patent**

The limitation at issue, which appears in Claim 5 of the '422 Patent, recites "at least one module comprising a processor and memory." Entropic contends only that "the accused MoCA Instrumentalities include applicable circuitry and/or software modules constituting a processor and a memory." (Pl.'s Contentions, Ex. F, U.S. Patent No. 10,432,422 Exemplary Infringement Chart, at 24.) This contention lacks any identification of any particular structure or feature in the accused instrumentalities or in

the MoCA standard.  The additional portions of the contentions cited by Entropic do not compel otherwise.  (*See id.* at 28–38.)  Entropic should supplement its infringement contentions in this regard.

**F.  '450 Patent**

Entropic contends that the limitation of "the transmitting node receiving a plurality of response signals comprising a plurality of bit-loading modulation schemes from the plurality of receiving nodes" in Claim 29 of the '450 Patent, "of the bit-loading modulation scheme for the corresponding channel path" in Claim 29, and "handshake data" in Claim 30 are met by the accused instrumentalities "by virtue of their compliance with MoCA."  (Pl.'s Contentions, Ex. G, U.S. Patent No. 8,631,450 Exemplary Infringement Chart, at 10, 20 & 26.)  Entropic also contends: "The Accused MoCA Instrumentalities also perform this step as part of a node admission process involving admission of a plurality of nodes. *See, e.g.,* MoCA 1.0, Section 3.6. *See also* MoCA 1.1, Section 3.6; MoCA 2.0, Section 8.3.4."  (*Id.* at 11, 23 & 27.)  This provides the Cox Defendants with adequate notice of what is accused.

As to the limitation that "broadcast signal is a communication message comprising video data, music data, or voice data" in Claim 31, Entropic's contentions contain no such detail and do not provide sufficient notice.  (*See id.* at 27–28.)  Entropic should supplement its infringement contentions in this regard.

### G. '539 Patent

The Cox Defendants argue that Entropic's contentions lack sufficient identification of what corresponds to the recited "modem" and "transmitter." As to the "modem" recited in the preamble of Claim 1 of the '539 Patent, Entropic contends that the accused instrumentalities include "gateway devices (including the Cox XG1v3, Cox XG2v2, and devices that operate in a similar manner)" and "client devices (including the Cox Arris DCX3200 and devices that operate in a similar manner)." (Pl.'s Contentions, Ex. H, U.S. Patent No. 8,621,539 Exemplary Infringement Chart, at 2.) At the January 12, 2024 hearing, Entropic argued that a "modem" is inherent in the devices at issue. Entropic likewise argued that a transmitter is inherent. Entropic should supplement its infringement contentions to explain these assertions of inherency.

### H. '681 Patent

As to the "first node" and "second node" recited in Claims 1, 2, 3, and 8 of the '681 Patent, Entropic cites portions of the MoCA standards that expressly discuss, for example, synchronization between nodes. (*See, e.g.,* Pl.'s Contentions, Ex. L, U.S. Patent No. 8,363,681 Exemplary Infringement Chart, at 4 & 6–7.) At the January 12, 2024 hearing, Entropic explained that the "first node" is a "network control" ("NC") node and that other nodes synchronize with the NC node. Entropic agreed to supplement its infringement contentions to explain its position on this.

The limitation of a "scheduled arrival clock time" in Claim 1 of the '681 Patent likewise requires additional explanation. Entropic's reliance on a "ScheduledStartTime" in portions of the MoCA standards (which the contentions cite as to a different limitation) is insufficient. (*See id.* at 5–7; *see, e.g., id.* at 12.) Entropic should supplement its infringement contentions in this regard.

## IV.  DISPOSITION

For the reasons set forth above, and as discussed on the record during the January 12, 2024 hearing, the Special Master hereby ORDERS that Entropic shall AMEND its infringement contentions as follows:

(1) Entropic shall amend its infringement contentions as required in Section III., above, including at least as to:

(a) "multi-carrier modulator" and "multi-carrier demodulator" in the '518 Patent;

(b) "MAC subsystem" and "Modem subsystem" in the '802 Patent;

(c) "processor" and "memory" in the '422 Patent;

(d) "broadcast signal is a communication message comprising video data, music data, or voice data" in the '450 Patent;

(e) "modem" and "transmitter" in the '539 Patent; and

(f) "first node," "second node," and "scheduled arrival clock time" in the '681 Patent;

(2) Entropic's amended contentions can use a "representative" product (or products) that is purportedly representative of a group of products so long as Entropic explains how it is defining the group, but Entropic shall not attempt to accused all purportedly "similar" products;

(3) Entropic shall serve amended infringement contentions pursuant to (1) and (2), above, **no later than February 13, 2024**.

Any relief not expressly granted above is hereby denied. No fees are awarded.

IT IS SO ORDERED.

Dated: January 23, 2024    By: _____
David M. Keyzer
Special Master