REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    Christopher S. Marchese (SBN 170239)
     marchese@fr.com
2    Tyler R. Train (SBN 318998)
     train@fr.com
3    FISH & RICHARDSON P.C.
     633 West Fifth Street, 26th Floor
4    Los Angeles, CA 90071
5    Tel: (213) 533-4240 / Fax: (858) 678-5099

6    Oliver Richards (SBN 310972)
7    orichards@fr.com
     John-Paul Fryckman (SBN 317591)
8    fryckman@fr.com
     Fish & Richardson P.C.
9    12860 El Camino Real, Suite 400
     San Diego, CA 92130
10   Tel: (858) 678-5070

11   *Additional Counsel Listed on Signature Page*

12   Attorneys for Defendants and Counter-Claimants

13

14                    IN THE UNITED STATES DISTRICT COURT

15          CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

16   ENTROPIC COMMUNICATIONS,              Case No. 2:23-cv-1043-JWH-KES
     LLC,
17                                         **DEFENDANTS DISH NETWORK
                                           CORPORATION; DISH NETWORK
18                  Plaintiff,             L.L.C; AND DISH NETWORK
                                           SERVICE L.L.C.'S ANSWER,
19          v.                             AFFIRMATIVE DEFENSES AND
                                           COUNTERCLAIMS TO
20   DISH NETWORK CORPORATION;             PLAINTIFF'S COMPLAINT**
     DISH NETWORK L.L.C.; DISH
21   NETWORK SERVICE L.L.C.; AND           **DEFENDANT DISH NETWORK
     DISH NETWORK CALIFORNIA               CALIFORNIA SERVICE CORP.'S
22   SERVICE CORPORATION,                  FIRST AMENDED ANSWER,
                                           AFFIRMATIVE DEFENSES AND
23                  Defendants.            COUNTERCLAIMS TO
                                           PLAINTIFF'S COMPLAINT**
24
25                                         **JURY TRIAL DEMANDED**

26
27                                         District Judge: Hon. John W. Holcomb
                                           Magistrate Judge: Hon. Karen E. Scott
28

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Complaint Filed: 2/10/2023

1
2
3
4
5
6
7
8

9
10
11
12

DISH NETWORK CORPORATION;
DISH NETWORK L.L.C.; DISH
NETWORK SERVICE L.L.C.; DISH
NETWORK CALIFORNIA SERVICE
CORPORATION; AND DISH
TECHNOLOGIES, L.L.C.

13

                    Counter-Claimants,

14

v.

15
16
17

ENTROPIC COMMUNICATIONS,
LLC; MAXLINEAR, INC.; AND
MAXLINEAR COMMUNICATIONS
LLC,

18

                    Counter-Defendants.

19
20
21
22
23
24
25
26
27
28

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

By and through its attorneys, Defendants DISH Network Corporation; DISH Network L.L.C.; and Dish Network Service L.L.C. (collectively "DISH Colorado") files their Answer, Affirmative and Additional Defenses, and Counterclaims to Plaintiff Entropic Communications, LLC's ("Plaintiff" and "Entropic") Complaint for Patent Infringement; Defendant Dish Network California Service Corp. ("Dish California") files its First Amended Answer, Affirmative and Additional Defenses, and First Amended Counterclaims to Plaintiff Entropic Communications, LLC's ("Plaintiff" and "Entropic") Complaint for Patent Infringement; and Counter-Claimant DISH Technologies L.L.C. ("DISH Technologies") files counterclaims against Plaintiff and Counterclaim-Defendants MaxLinear, Inc. and MaxLinear Communications LLC.[1]

## ANSWER

DISH Colorado and Dish California (collectively, "DISH" or "Defendants") respond to the allegations contained in the numbered paragraphs of Entropic's Complaint below.  DISH denies all allegations and characterizations in Entropic's Complaint unless expressly admitted in the following paragraphs.

1.      DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and therefore denies them.

2.      DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and therefore denies them.

3.      DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and therefore denies them.

---

[1] This combined filing represents the first answer, affirmative defenses, and counterclaims filed by DISH Network Corporation; DISH Network L.L.C.; and Dish Network Service L.L.C.; and the first amended answer, affirmative defenses, and counterclaims filed by Dish Network California Service Corporation.  For convenience, each of these defendants provides its answer, affirmative defenses, and counterclaims in this single filing.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

4.     DISH denies that it takes advantage of MoCA without paying appropriate licensing fees for the technology.  DISH lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in Paragraph 4 of the Complaint, and therefore denies them.

5.     The allegations of paragraph 5 contain legal conclusions to which no response is required.  If a response is required, DISH admits that Entropic purports to assert patent infringement claims against DISH involving U.S. Patent Nos. 7,295,518 (the "'518 Patent"), 7,594,249 (the "'249 Patent"); U.S. Patent Nos. 7,889,759 (the "'759 Patent"), 8,085,802 (the "'802 Patent"); U.S. Patent Nos. 9,838,213 (the "'213 Patent"), 10,432,422 (the "'422 Patent"); U.S. Patent Nos. 8,631,450 (the "'450 Patent"), 8,621,539 (the "'539 Patent"); U.S. Patent No. 8,320,566 (the "'0,566 Patent"); U.S. Patent No. 10,257,566 (the "'7,566 Patent"); U.S. Patent No. 8,228,910 (the "'910 Patent"); U.S. Patent No. 8,363,681 (the "'681 Patent") (collectively all of the patents are referred to herein as the "Patents-in-Suit" or "Asserted Patents"). DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding whether the patents incorporate various elements of technology set forth in the specifications of the Multimedia over Coax Alliance standards (which Entropic refers to as the "MoCA standards"), and therefore denies them.[2]  DISH denies all remaining allegations of paragraph 5.

## PARTIES

6.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6, and therefore denies them.

7.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7, and therefore denies them.

8.     DISH admits the allegations of paragraph 8.

9.     DISH admits the allegations of paragraph 9.

---

[2] Each version of the MoCA standards is referred to herein as "MoCA 1.0," "MoCA 1.1," and/or "MoCA 2.0."

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

10.     DISH admits the allegations of paragraph 10.

11.     DISH admits the allegations of paragraph 11.

12.     DISH admits the allegations of paragraph 12.

13.     DISH admits the allegations of paragraph 13.

14.     DISH admits the allegations of paragraph 14.

15.     Dish California admits that for Dish California, jurisdiction and venue is proper in this District.  DISH Colorado denies that, for DISH Colorado, jurisdiction and venue is proper in this District.

## PRESUIT DISCUSSIONS

16.     DISH admits that Entropic sent communications dated March 9, 2022; December 23, 2022; and January 2, 2023.  As to the remaining allegations and characterizations of paragraph 16, DISH denies them.

## ENTROPIC'S LEGACY AS AN INNOVATOR

17.     DISH denies that Entropic Communications, Inc. is the predecessor-in-interest to Entropic.  DISH lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17, and therefore denies them.

18.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18, and therefore denies them.

19.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 19, and therefore denies them.

20.     DISH denies that Entropic Inc. pioneered innovative networking technologies.  DISH lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20, and therefore denies them.

21.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21, and therefore denies them.

22.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22, and therefore denies them.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## MOCA® AND THE MOCA® STANDARDS

23.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23, and therefore denies them.

24.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24, and therefore denies them.

25.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25, and therefore denies them.

26.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26, and therefore denies them.

27.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27, and therefore denies them.

28.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28, and therefore denies them.

29.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29, and therefore denies them.

30.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30, and therefore denies them.

31.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, and therefore denies them.

32.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32, and therefore denies them.

33.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33, and therefore denies them.

34.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34, and therefore denies them.

35.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35, and therefore denies them.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

36.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36, and therefore denies them.

37.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37, and therefore denies them.

## THE ACCUSED MOCA INSTRUMENTALITIES AND ACCUSED SERVICES

38.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38, and therefore denies them.

39.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39, and therefore denies them.

40.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40, and therefore denies them.

41.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41, and therefore denies them.

42.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42, and therefore denies them.

43.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43, and therefore denies them.

44.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44, and therefore denies them.

45.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45, and therefore denies them.

46.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46, and therefore denies them.

47.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47, and therefore denies them.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

48.      DISH states that the cited video speaks for itself.  DISH lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48, and therefore denies them.

49.      DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49, and therefore denies them.

50.      DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50, and therefore denies them.

51.      DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51, and therefore denies them.

52.      Denied.

53.      DISH admits that one of its subsidiaries was on the Board of the MoCA Alliance from 2017 to 2019.  DISH lacks knowledge of information sufficient to form a belief as to the truth of the remaining allegations of paragraph 53, and therefore denies them.

54.      Denied.

55.      Denied.

56.      Denied.

57.      Denied.

## JURISDICTION AND VENUE

58.      DISH admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  DISH denies all remaining allegations contained in paragraph 58.

59.      Dish California admits that it will not contest that venue is proper in this court for purposes of this action, and admits it has transacted business in this District.  DISH Colorado denies that venue is proper in this District, and denies that it has transacted business in this District.  DISH denies that it has committed any act of patent infringement allegedly described in the Complaint and otherwise denies all remaining allegations contained in paragraph 59.

8

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

60.    DISH admits that *Entropic Comm's LLC v. DISH Network Corp.*, Case No. 2:22-cv-07959-JWH-(JEMx) was transferred to this Court from the Eastern District of Texas (*Entropic Comm's, LLC v. DISH Network Corp., DISH Network LLC, DISH Network Service LLC,* Case No. 2:22-cv-00076 JRG on October 24, 2022. DISH denies the remaining allegations in paragraph 60.

61.    Paragraph 61 characterizes an order issued by the Eastern District of Texas and contains legal conclusions to which no response is required.  If a response is required, DISH states that the order issued by the Eastern District of Texas speaks for itself.  DISH otherwise denies the allegations and characterizations of paragraph 61.

62.    DISH admits that it will not contest, for the purposes of this action, that DISH is subject to personal jurisdiction in this Court.  DISH denies all remaining allegations contained in paragraph 62.

63.    Denied.

64.    DISH admits that it maintains a website that allows consumers to interact with services it provides.  DISH otherwise denies the allegations and characterizations of paragraph 64.

65.    DISH admits that it provides television and other services to customers in the United States.  DISH otherwise denies the allegations and characterizations of paragraph 64.

66.    Dish California admits that it provides certain services to customers in this District.  As to the remaining allegations in paragraph 66, Dish California lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies them.  DISH Colorado denies the allegations of paragraph 66.

67.    Dish California admits it has facilities at 3226 W. 131st St., Hawthorne, California, 90250; 4223 Fairgrounds Street, Riverside, California 92501; and 2602 South Halladay Street, Santa Ana, California.  Dish California denies that any activities at these facilities are relevant to the issues in dispute in this case.  Dish

9

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

California denies it has a facility at 1500 Potrero Avenue, South El Monte, California, 91733.   Dish California and DISH Colorado otherwise deny the allegations and characterizations of paragraph 67.

68.      DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68, and therefore denies them.

69.      DISH admits that it maintains a website, and states that the website speaks for itself.   DISH otherwise denies the allegations and characterizations of paragraph 69.

70.      Denied.

71.      Dish California admits it conducts business in this District.   DISH Colorado denies that it conducts business in this District.   To the extent paragraph 71 contains additional allegations, DISH denies them.

## COUNT I

### ([Alleged] Infringement of the '518 Patent)

72.      DISH incorporates by reference its responses to paragraphs 1 through 71 of the Complaint as though fully restated herein.

73.      DISH admits that the cover of the '518 Patent reflects an issue date of November 13, 2007, an application date of December 18, 2002, an application filed August 29, 2002, and, *inter alia*, a provisional application filed August 30, 2001. DISH denies any remaining allegations of paragraph 73.

74.      To the extent paragraph 74 of the Complaint implicates legal conclusions, no response is required. To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 74 of the Complaint.

75.      Paragraph 75 characterizes the subject matter of the '518 Patent and contains legal conclusions to which no response is required.   If a response is required, DISH states that the '518 Patent speaks for itself.   DISH denies all allegations that

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

DISH implements the features of the '518 Patent.  DISH denies any remaining allegations and characterizations of paragraph 75.

76.     To the extent paragraph 76 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 76 of the Complaint.

77.     To the extent paragraph 77 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 77 of the Complaint.

78.     To the extent paragraph 78 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 78 of the Complaint.

79.     DISH denies the allegations of paragraph 79.

80.     To the extent paragraph 80 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 80 of the Complaint.

81.     To the extent paragraph 81 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 81 of the Complaint.

82.     To the extent paragraph 82 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 82 of the Complaint.

83.     DISH denies the allegations of paragraph 83.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

84.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84, and therefore denies them.

85.     To the extent paragraph 85 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 85 of the Complaint.

86.     To the extent paragraph 86 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 86 of the Complaint.

87.     To the extent paragraph 87 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 87 of the Complaint.

88.     DISH admits that "7295518" appears in Exhibit A to a March 9, 2022 communication from Entropic.  To the extent paragraph 88 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 88 of the Complaint.

89.     To the extent paragraph 89 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 89 of the Complaint.

90.     To the extent paragraph 90 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 90 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

91.      DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 91, and therefore denies them.

92.      To the extent paragraph 92 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 92 of the Complaint.

93.      DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93, and therefore denies them.

94.      To the extent paragraph 94 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 94 of the Complaint.

95.      To the extent paragraph 95 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 95 of the Complaint.

96.      To the extent paragraph 96 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 96 of the Complaint.

97.      To the extent paragraph 97 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 97 of the Complaint.

98.      To the extent paragraph 98 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 98 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

99.     To the extent paragraph 99 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 99 of the Complaint.

100.    To the extent paragraph 100 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 100 of the Complaint.

101.    To the extent paragraph 101 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 101 of the Complaint.

102.    To the extent paragraph 102 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 102 of the Complaint.

103.    To the extent paragraph 103 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 103 of the Complaint.

104.    To the extent paragraph 104 of the Complaint implicates legal conclusions, no response is required. To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 104 of the Complaint.

105.    Paragraph 105 of the Complaint characterizes Entropic's belief and thus no response is required.  To the extent paragraph 105 of the Complaint implicates legal conclusions, no response is required. To the extent that a response is required,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

DISH denies the allegations and characterizations contained in paragraph 105 of the Complaint.

## COUNT II

### ([Alleged] Infringement of the '249 Patent)

106.     DISH incorporates by reference its responses to paragraphs 1 through 105 of the Complaint as though fully restated herein.

107.     DISH admits that the cover of the '249 Patent reflects an issue date of September 22, 2009, an application date of July 21, 2001, and a provisional application date of May 4, 2001.  DISH denies any remaining allegations of paragraph 107.

108.     To the extent paragraph 108 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 108 of the Complaint.

109.     Paragraph 109 characterizes the subject matter of the '249 Patent and contains legal conclusions to which no response is required.  If a response is required, DISH states that the '249 Patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '249 Patent.  DISH denies any remaining allegations and characterizations of paragraph 109.

110.     To the extent paragraph 110 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 110 of the Complaint.

111.     To the extent paragraph 111 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 111 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

112.    To the extent paragraph 112 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 112 of the Complaint.

113.    DISH denies the allegations of paragraph 113.

114.    To the extent paragraph 114 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 114 of the Complaint.

115.    To the extent paragraph 115 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 115 of the Complaint.

116.    To the extent paragraph 116 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 116 of the Complaint.

117.    DISH denies the allegations of paragraph 117.

118.    DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 118, and therefore denies them.

119.    To the extent paragraph 119 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 119 of the Complaint.

120.    To the extent paragraph 120 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 120 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

121.     To the extent paragraph 121 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 121 of the Complaint.

122.     DISH admits that "7594249" appears in Exhibit A to a March 9, 2022 communication from Entropic.  To the extent paragraph 122 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 122 of the Complaint.

123.     To the extent paragraph 123 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 123 of the Complaint.

124.     To the extent paragraph 124 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 124 of the Complaint.

125.     DISH lacks knowledge or information sufficient to form a belief as to the truth of allegations in paragraph 125, and therefore denies them.

126.     To the extent paragraph 126 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 126 of the Complaint.

127.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127, and therefore denies them.

128.     To the extent paragraph 128 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

denies the allegations and characterizations contained in paragraph 128 of the Complaint.

129.    To the extent paragraph 129 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 129 of the Complaint.

130.    To the extent paragraph 130 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 130 of the Complaint.

131.    To the extent paragraph 131 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 131 of the Complaint.

132.    To the extent paragraph 132 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 132 of the Complaint.

133.    To the extent paragraph 133 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 133 of the Complaint.

134.    To the extent paragraph 134 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 134 of the Complaint.

135.    To the extent paragraph 135 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

18

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

denies the allegations and characterizations contained in paragraph 135 of the Complaint.

136.  To the extent paragraph 136 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 136 of the Complaint.

137.  To the extent paragraph 137 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 137 of the Complaint.

138.  To the extent paragraph 138 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 138 of the Complaint.

139.  Paragraph 139 characterizes Entropic's belief and thus no response is required.  To the extent paragraph 139 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 139 of the Complaint.

## COUNT III

### ([Alleged] Infringement of the '759 Patent)

140.  DISH incorporates by reference its responses to paragraphs 1 through 139 of the Complaint as though fully restated herein.

141.  DISH admits that the cover of the'759 Patent reflects an issue date of February 15, 2011, an application date of July 12, 2004, an application filed August 29, 2002, and, *inter alia* a provisional application filed August 30, 2001.  DISH denies any remaining allegations of paragraph 141.

142.  To the extent paragraph 142 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

19

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

denies the allegations and characterizations contained in paragraph 142 of the Complaint.

143.    Paragraph 143 characterizes the subject matter of the '759 Patent and contains legal conclusions to which no response is required.  If a response is required, DISH states that the '759 Patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '759 Patent.  DISH denies any remaining allegations and characterizations of paragraph 143.

144.    To the extent paragraph 144 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 144 of the Complaint.

145.    To the extent paragraph 145 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 145 of the Complaint.

146.    To the extent paragraph 146 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 146 of the Complaint.

147.    DISH denies the allegations of paragraph 147.

148.    To the extent paragraph 148 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 148 of the Complaint.

149.    To the extent paragraph 149 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 149 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

150.    To the extent paragraph 150 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 150 of the Complaint.

151.    DISH denies the allegations of paragraph 151.

152.    DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 152, and therefore denies them.

153.    To the extent paragraph 153 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 153 of the Complaint.

154.    To the extent paragraph 154 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 154 of the Complaint.

155.    To the extent paragraph 155 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 155 of the Complaint.

156.    DISH admits that "7889759" appears in Exhibit A to a March 9, 2022 communication from Entropic.  To the extent paragraph 156 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 156 of the Complaint.

157.    To the extent paragraph 157 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 157 of the Complaint.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

158.    To the extent paragraph 158 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 158 of the Complaint.

159.    DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 159, and therefore denies them.

160.    To the extent paragraph 160 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 160 of the Complaint.

161.    DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 161, and therefore denies them.

162.    To the extent paragraph 162 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 162 of the Complaint.

163.    To the extent paragraph 163 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 163 of the Complaint.

164.    To the extent paragraph 164 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 164 of the Complaint.

165.    To the extent paragraph 165 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 165 of the Complaint.

166.     To the extent paragraph 166 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 166 of the Complaint.

167.     To the extent paragraph 167 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 167 of the Complaint.

168.     To the extent paragraph 168 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 168 of the Complaint.

169.     To the extent paragraph 169 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 169 of the Complaint.

170.     To the extent paragraph 170 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 170 of the Complaint.

171.     To the extent paragraph 171 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 171 of the Complaint.

172.     To the extent paragraph 172 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 172 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

173.     Paragraph 173 characterizes Entropic's belief and thus no response is required.  To the extent paragraph 173 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 173 of the Complaint.

## COUNT IV

### ([Alleged] Infringement of the '802 Patent)

174.     DISH incorporates by reference its responses to paragraphs 1 through 173 of the Complaint as though fully restated herein.

175.     DISH admits the cover of the '802 Patent reflects an issue date of December 27, 2011, an application date of December 2, 2005, and a provisional application filed on December 2, 2004.  DISH denies any remaining allegations of paragraph 175.

176.     To the extent paragraph 176 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 176 of the Complaint.

177.     Paragraph 177 characterizes the subject matter of the '802 Patent and contains legal conclusions to which no response is required.  If a response is required, DISH states that the '802 Patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '802 Patent.  DISH denies any remaining allegations and characterizations of paragraph 177.

178.     To the extent paragraph 178 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 178 of the Complaint.

179.     To the extent paragraph 179 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

denies the allegations and characterizations contained in paragraph 179 of the Complaint.

180.　　To the extent paragraph 180 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 180 of the Complaint.

181.　　DISH denies the allegations of paragraph 181.

182.　　To the extent paragraph 182 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 182 of the Complaint.

183.　　To the extent paragraph 183 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 183 of the Complaint.

184.　　To the extent paragraph 184 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 184 of the Complaint.

185.　　DISH denies the allegations of paragraph 185.

186.　　To the extent paragraph 186 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 186 of the Complaint.

187.　　To the extent paragraph 187 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 187 of the Complaint.

188.     To the extent paragraph 188 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 188 of the Complaint.

189.     To the extent paragraph 189 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 189 of the Complaint.

190.     DISH admits that "8085802" appears in Exhibit A to a March 9, 2022 communication from Entropic.  To the extent paragraph 190 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 190 of the Complaint.

191.     To the extent paragraph 191 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 191 of the Complaint.

192.     To the extent paragraph 192 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 192 of the Complaint.

193.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 193, and therefore denies them.

194.     To the extent paragraph 194 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 194 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

195.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 195, and therefore denies them.

196.     To the extent paragraph 196 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 196 of the Complaint.

197.     To the extent paragraph 197 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 197 of the Complaint.

198.     To the extent paragraph 198 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 198 of the Complaint.

199.     To the extent paragraph 199 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 199 of the Complaint.

200.     To the extent paragraph 200 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 200 of the Complaint.

201.     To the extent paragraph 201 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 201 of the Complaint.

202.     To the extent paragraph 202 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

denies the allegations and characterizations contained in paragraph 202 of the Complaint.

203.     To the extent paragraph 203 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 203 of the Complaint.

204.     To the extent paragraph 204 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 204 of the Complaint.

205.     To the extent paragraph 205 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 205 of the Complaint.

206.     To the extent paragraph 206 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 206 of the Complaint.

207.     Paragraph 207 characterizes Entropic's belief and thus no response is required.  To the extent paragraph 207 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 207 of the Complaint.

## COUNT V

### ([Alleged] Infringement of the '450 Patent)

208.     DISH incorporates by reference its responses to paragraphs 1 through 207 of the Complaint as though fully restated herein.

209.     DISH admits that the cover of the '450 Patent reflects an issue date of January 14, 2014, an application date of September 19, 2005, and, *inter alia*, a

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

provisional application filed December 2, 2004.   DISH denies any remaining allegations of paragraph 209.

210.    To the extent paragraph 210 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 210 of the Complaint.

211.    Paragraph 211 characterizes the subject matter of the '450 patent and contains legal conclusions to which no response is required.  If a response is required, DISH states that the '450 Patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '450 Patent.   DISH denies any remaining allegations and characterizations of paragraph 211.

212.    To the extent paragraph 212 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 212 of the Complaint.

213.    To the extent paragraph 213 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 213 of the Complaint.

214.    To the extent paragraph 214 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 214 of the Complaint.

215.    DISH denies the allegations of paragraph 215.

216.    To the extent paragraph 216 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 216 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-01043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

217.     To the extent paragraph 217 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 217 of the Complaint.

218.     To the extent paragraph 218 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 218 of the Complaint.

219.     DISH denies the allegations of paragraph 219.

220.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 220, and therefore denies them.

221.     To the extent paragraph 221 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 221 of the Complaint.

222.     To the extent paragraph 222 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 222 of the Complaint.

223.     To the extent paragraph 223 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 223 of the Complaint.

224.     DISH admits that "8631450" appears in Exhibit A to a March 9, 2022 communication from Entropic.  To the extent paragraph 224 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 224 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

225.     To the extent paragraph 225 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 225 of the Complaint.

226.     To the extent paragraph 226 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 226 of the Complaint.

227.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 227, and therefore denies them.

228.     To the extent paragraph 228 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 228 of the Complaint.

229.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 229, and therefore denies them.

230.     To the extent paragraph 230 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 230 of the Complaint.

231.     To the extent paragraph 231 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 231 of the Complaint.

232.     To the extent paragraph 232 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 232 of the Complaint.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

233.     To the extent paragraph 233 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 233 of the Complaint.

234.     To the extent paragraph 234 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 234 of the Complaint.

235.     To the extent paragraph 235 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 235 of the Complaint.

236.     To the extent paragraph 236 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 236 of the Complaint.

237.     To the extent paragraph 237 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 237 of the Complaint.

238.     To the extent paragraph 238 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 238 of the Complaint.

239.     To the extent paragraph 239 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 239 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

240.    To the extent paragraph 240 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 240 of the Complaint.

241.    Paragraph 241 characterizes Entropic's belief and thus no response is required.  To the extent paragraph 241 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 241 of the Complaint.

## COUNT VI

### ([Alleged] Infringement of the '7,566 Patent)

242.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

243.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

244.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

245.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

246.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

247.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

248.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

249.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

250.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

251.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

252.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

253.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

254.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

255.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

256.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

257.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

258.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

259.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

260.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

261.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

262.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

263.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

264.    The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

265.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

266.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

267.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

268.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

269.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

270.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

271.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

272.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

273.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

274.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

275.     The Court dismissed Count VI without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

## <u>COUNT VII</u>

### ([Alleged] Infringement of the '539 Patent)

276.     DISH incorporates by reference its responses to paragraphs 1 through 275 of the Complaint as though fully restated herein.

277.     DISH admits that the cover of the '539 Patent reflects an issue date of December 31, 2013, an application date of September 29, 2005, and, *inter alia*, a

provisional application filed December 2, 2004.  DISH denies any remaining allegations of paragraph 277.

278.    To the extent paragraph 278 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 278 of the Complaint.

279.    Paragraph 279 characterizes the subject matter of the '539 Patent and contains legal conclusions to which no response is required.  If a response is required, DISH states that the '539 Patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '539 Patent.  DISH denies any remaining allegations and characterizations of Paragraph 279.

280.    To the extent paragraph 280 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 280 of the Complaint.

281.    To the extent paragraph 281 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 281 of the Complaint.

282.    To the extent paragraph 282 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 282 of the Complaint.

283.    DISH denies the allegations of paragraph 283.

284.    To the extent paragraph 284 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 284 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

285.     To the extent paragraph 285 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 285 of the Complaint.

286.     To the extent paragraph 286 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 286 of the Complaint.

287.     DISH denies the allegations of paragraph 287.

288.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 288, and therefore denies them.

289.     To the extent paragraph 289 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 289 of the Complaint.

290.     To the extent paragraph 290 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 290 of the Complaint.

291.     To the extent paragraph 291 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 291 of the Complaint.

292.     DISH admits that "8621539" appears in Exhibit A to a March 9, 2022 communication from Entropic.  To the extent paragraph 292 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 292 of the Complaint.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

293.     To the extent paragraph 293 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 293 of the Complaint.

294.     To the extent paragraph 294 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 294 of the Complaint.

295.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 295, and therefore denies them.

296.     To the extent paragraph 296 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 296 of the Complaint.

297.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 297, and therefore denies them.

298.     To the extent paragraph 298 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 298 of the Complaint.

299.     To the extent paragraph 299 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 299 of the Complaint.

300.     To the extent paragraph 300 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 300 of the Complaint.

301.     To the extent paragraph 301 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 301 of the Complaint.

302.     To the extent paragraph 302 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 302 of the Complaint.

303.     To the extent paragraph 303 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 303 of the Complaint.

304.     To the extent paragraph 304 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 304 of the Complaint.

305.     To the extent paragraph 305 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 305 of the Complaint.

306.     To the extent paragraph 306 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 306 of the Complaint.

307.     To the extent paragraph 307 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 307 of the Complaint.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

308.    To the extent paragraph 308 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 308 of the Complaint.

309.    Paragraph 309 characterizes Entropic's belief and thus no response is required.  To the extent paragraph 309 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 309 of the Complaint.

## COUNT VIII

### ([Alleged] Infringement of the '213 Patent)

310.    DISH incorporates by reference its responses to paragraphs 1 through 309 of the Complaint as though fully restated herein.

311.    DISH admits the cover of the '213 Patent reflects an issue date of December 5, 2017, an application date of February 6, 2008, and *inter alia*, a provisional application filed on February 6, 2007.  DISH denies any remaining allegations of paragraph 311.

312.    To the extent paragraph 312 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 312 of the Complaint.

313.    Paragraph 313 characterizes the subject matter of the '213 Patent and contains legal conclusions to which no response is required.  If a response is required, DISH states that the '213 Patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '213 Patent.  DISH denies any remaining allegations and characterizations of paragraph 313.

314.    To the extent paragraph 314 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

denies the allegations and characterizations contained in paragraph 314 of the Complaint.

315.    To the extent paragraph 315 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 315 of the Complaint.

316.    To the extent paragraph 316 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 316 of the Complaint.

317.    DISH denies the allegations of paragraph 317.

318.    To the extent paragraph 318 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 318 of the Complaint.

319.    To the extent paragraph 319 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 319 of the Complaint.

320.    To the extent paragraph 320 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 320 of the Complaint.

321.    DISH denies the allegations of paragraph 321.

322.    DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 322, and therefore denies them.

323.    To the extent paragraph 323 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

denies the allegations and characterizations contained in paragraph 323 of the Complaint.

324.   To the extent paragraph 324 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 324 of the Complaint.

325.   To the extent paragraph 325 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 325 of the Complaint.

326.   DISH admits that "9838213" appears in Exhibit A to a March 9, 2022 communication from Entropic.  To the extent paragraph 326 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 326 of the Complaint.

327.   To the extent paragraph 327 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 327 of the Complaint.

328.   To the extent paragraph 328 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 328 of the Complaint.

329.   DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 329, and therefore denies them.

330.   To the extent paragraph 330 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

denies the allegations and characterizations contained in paragraph 330 of the Complaint.

331.    DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 331, and therefore denies them.

332.    To the extent paragraph 332 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 332 of the Complaint.

333.    To the extent paragraph 333 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 333 of the Complaint.

334.    To the extent paragraph 334 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 334 of the Complaint.

335.    To the extent paragraph 335 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 335 of the Complaint.

336.    To the extent paragraph 336 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 336 of the Complaint.

337.    To the extent paragraph 337 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 337 of the Complaint.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

338.     To the extent paragraph 338 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 338 of the Complaint.

339.     To the extent paragraph 339 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 339 of the Complaint.

340.     To the extent paragraph 340 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 340 of the Complaint.

341.     To the extent paragraph 341 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 341 of the Complaint.

342.     To the extent paragraph 342 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 342 of the Complaint.

343.     Paragraph 343 characterizes Entropic's belief and thus no response is required.  To the extent paragraph 343 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 343 of the Complaint.

## COUNT IX

### ([Alleged] Infringement of the '422 Patent)

344.     DISH incorporates by reference its responses to paragraphs 1 through 343 of the Complaint as though fully restated herein.

44

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

345.     DISH admits the cover of the '422 Patent reflects an issue date of October 1, 2019, an application date of December 5, 2017, an application filed on February 6, 2008, and *inter alia*, a provisional application filed on February 6, 2007. DISH denies any remaining allegations of paragraph 345.

346.     To the extent paragraph 346 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 346 of the Complaint.

347.     Paragraph 347 characterizes the subject matter of the '422 Patent and contains legal conclusions to which no response is required.  If a response is required, DISH states that the '422 Patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '422 Patent.  DISH denies any remaining allegations and characterizations of paragraph 347.

348.     To the extent paragraph 348 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 348 of the Complaint.

349.     To the extent paragraph 349 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 349 of the Complaint.

350.     To the extent paragraph 350 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 350 of the Complaint.

351.     DISH denies the allegations of paragraph 351.

352.     To the extent paragraph 352 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

denies the allegations and characterizations contained in paragraph 352 of the Complaint.

353.    To the extent paragraph 353 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 353 of the Complaint.

354.    To the extent paragraph 354 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 354 of the Complaint.

355.    DISH denies the allegations of paragraph 355.

356.    DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 356, and therefore denies them.

357.    To the extent paragraph 357 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 357 of the Complaint.

358.    To the extent paragraph 358 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 358 of the Complaint.

359.    To the extent paragraph 359 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 359 of the Complaint.

360.    DISH admits that "10432422" appears in Exhibit A to a March 9, 2022 communication from Entropic.  To the extent paragraph 360 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

required, DISH denies the allegations and characterizations contained in paragraph 360 of the Complaint.

361.   To the extent paragraph 361 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 361 of the Complaint.

362.   To the extent paragraph 362 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 362 of the Complaint.

363.   DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 363, and therefore denies them.

364.   To the extent paragraph 364 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 364 of the Complaint.

365.   DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 365, and therefore denies them.

366.   To the extent paragraph 366 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 366 of the Complaint.

367.   To the extent paragraph 367 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 367 of the Complaint.

368.   To the extent paragraph 368 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

1   denies the allegations and characterizations contained in paragraph 368 of the
2   Complaint.

3        369.     To the extent paragraph 369 of the Complaint implicates legal
4   conclusions, no response is required.  To the extent that a response is required, DISH
5   denies the allegations and characterizations contained in paragraph 369 of the
6   Complaint.

7        370.     To the extent paragraph 370 of the Complaint implicates legal
8   conclusions, no response is required.  To the extent that a response is required, DISH
9   denies the allegations and characterizations contained in paragraph 370 of the
10  Complaint.

11       371.     To the extent paragraph 371 of the Complaint implicates legal
12  conclusions, no response is required.  To the extent that a response is required, DISH
13  denies the allegations and characterizations contained in paragraph 371 of the
14  Complaint.

15       372.     To the extent paragraph 372 of the Complaint implicates legal
16  conclusions, no response is required.  To the extent that a response is required, DISH
17  denies the allegations and characterizations contained in paragraph 372 of the
18  Complaint.

19       373.     To the extent paragraph 373 of the Complaint implicates legal
20  conclusions, no response is required.  To the extent that a response is required, DISH
21  denies the allegations and characterizations contained in paragraph 373 of the
22  Complaint.

23       374.     To the extent paragraph 374 of the Complaint implicates legal
24  conclusions, no response is required.  To the extent that a response is required, DISH
25  denies the allegations and characterizations contained in paragraph 374 of the
26  Complaint.

27       375.     To the extent paragraph 375 of the Complaint implicates legal
28  conclusions, no response is required.  To the extent that a response is required, DISH

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

denies the allegations and characterizations contained in paragraph 375 of the Complaint.

376.     To the extent paragraph 376 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 376 of the Complaint.

377.     Paragraph 377 characterizes Entropic's belief and thus no response is required.  To the extent paragraph 377 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 377 of the Complaint.

## COUNT X

### ([Alleged] Infringement of the '910 Patent)

378.     The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

379.     The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

380.     The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

381.     The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

382.     The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

383.     The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

384.     The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

385.     The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   386.   The Court dismissed Count X without leave to amend in its September 7,
2   2023 Order (Dkt. 103) and therefore, no response is required.

3   387.   The Court dismissed Count X without leave to amend in its September 7,
4   2023 Order (Dkt. 103) and therefore, no response is required.

5   388.   The Court dismissed Count X without leave to amend in its September 7,
6   2023 Order (Dkt. 103) and therefore, no response is required.

7   389.   The Court dismissed Count X without leave to amend in its September 7,
8   2023 Order (Dkt. 103) and therefore, no response is required.

9   390.   The Court dismissed Count X without leave to amend in its September 7,
10  2023 Order (Dkt. 103) and therefore, no response is required.

11  391.   The Court dismissed Count X without leave to amend in its September 7,
12  2023 Order (Dkt. 103) and therefore, no response is required.

13  392.   The Court dismissed Count X without leave to amend in its September 7,
14  2023 Order (Dkt. 103) and therefore, no response is required.

15  393.   The Court dismissed Count X without leave to amend in its September 7,
16  2023 Order (Dkt. 103) and therefore, no response is required.

17  394.   The Court dismissed Count X without leave to amend in its September 7,
18  2023 Order (Dkt. 103) and therefore, no response is required.

19  395.   The Court dismissed Count X without leave to amend in its September 7,
20  2023 Order (Dkt. 103) and therefore, no response is required.

21  396.   The Court dismissed Count X without leave to amend in its September 7,
22  2023 Order (Dkt. 103) and therefore, no response is required.

23  397.   The Court dismissed Count X without leave to amend in its September 7,
24  2023 Order (Dkt. 103) and therefore, no response is required.

25  398.   The Court dismissed Count X without leave to amend in its September 7,
26  2023 Order (Dkt. 103) and therefore, no response is required.

27  399.   The Court dismissed Count X without leave to amend in its September 7,
28  2023 Order (Dkt. 103) and therefore, no response is required.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

400.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

401.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

402.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

403.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

404.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

405.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

406.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

407.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

408.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

409.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

410.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

411.    The Court dismissed Count X without leave to amend in its September 7, 2023 Order (Dkt. 103) and therefore, no response is required.

## COUNT XI

### ([Alleged] Infringement of the '0,566 Patent)

412.    DISH incorporates by reference its responses to paragraphs 1 through 411 of the Complaint as though fully restated herein.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

413.     DISH admits that the cover of the '0,566 Patent reflects an issue date of November 27, 2012, an application date of October 15, 2009, and, *inter alia*, a provisional application filed October 16, 2008.   DISH denies any remaining allegations of paragraph 413.

414.     To the extent paragraph 414 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 414 of the Complaint.

415.     Paragraph 415 characterizes the subject matter of the '0,566 Patent and contains legal conclusions to which no response is required.  If a response is required, DISH states that the '0,566 Patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '0,566 Patent.   DISH denies any remaining allegations and characterizations of paragraph 415.

416.     To the extent paragraph 416 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 416 of the Complaint.

417.     To the extent paragraph 417 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 417 of the Complaint.

418.     To the extent paragraph 418 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 418 of the Complaint.

419.     DISH denies the allegations of paragraph 419.

420.     To the extent paragraph 420 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

denies the allegations and characterizations contained in paragraph 420 of the Complaint.

421.    To the extent paragraph 421 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 421 of the Complaint.

422.    To the extent paragraph 422 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 422 of the Complaint.

423.    DISH denies the allegations of paragraph 423.

424.    DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 424, and therefore denies them.

425.    To the extent paragraph 425 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 425 of the Complaint.

426.    To the extent paragraph 426 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 426 of the Complaint.

427.    To the extent paragraph 427 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 427 of the Complaint.

428.    DISH admits that "8320566" appears in Exhibit A to a March 9, 2022 communication from Entropic.  To the extent paragraph 428 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

required, DISH denies the allegations and characterizations contained in paragraph 428 of the Complaint.

429.     To the extent paragraph 429 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 429 of the Complaint.

430.     To the extent paragraph 430 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 430 of the Complaint.

431.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 431, and therefore denies them.

432.     To the extent paragraph 432 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 432 of the Complaint.

433.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 433, and therefore denies them.

434.     To the extent paragraph 434 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 434 of the Complaint.

435.     To the extent paragraph 435 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 435 of the Complaint.

436.     To the extent paragraph 436 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

denies the allegations and characterizations contained in paragraph 436 of the Complaint.

437.    To the extent paragraph 437 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 437 of the Complaint.

438.    To the extent paragraph 438 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 438 of the Complaint.

439.    To the extent paragraph 439 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 439 of the Complaint.

440.    To the extent paragraph 440 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 440 of the Complaint.

441.    To the extent paragraph 441 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 441 of the Complaint.

442.    To the extent paragraph 442 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 442 of the Complaint.

443.    To the extent paragraph 443 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

denies the allegations and characterizations contained in paragraph 443 of the Complaint.

444.     To the extent paragraph 444 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 444 of the Complaint.

445.     Paragraph 445 characterizes Entropic's belief and thus no response is required.  To the extent paragraph 445 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 445 of the Complaint.

## COUNT XII

### ([Alleged] Infringement of the '681 Patent)

446.     DISH incorporates by reference its responses to paragraphs 1 through 445 of the Complaint as though fully restated herein.

447.     DISH admits that the cover of the '681 Patent reflects an issue date of January 29, 2013, an application date of October 15, 2009, and a provisional application date of October 16, 2008.  DISH denies any remaining allegations of paragraph 447 of the Complaint.

448.     To the extent paragraph 448 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 448 of the Complaint.

449.     Paragraph 449 of the Complaint characterizes the subject matter of the '681 Patent and contains legal conclusions to which no response is required.  If a response is required, DISH states that the '681 Patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '681 Patent.  DISH denies any remaining allegations and characterizations of paragraph 449 of the Complaint.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

450.     To the extent paragraph 450 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 450 of the Complaint.

451.     To the extent paragraph 451 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 451 of the Complaint.

452.     To the extent paragraph 452 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 452 of the Complaint.

453.     DISH denies the allegations of paragraph 453 of the Complaint.

454.     To the extent paragraph 454 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 454 of the Complaint.

455.     To the extent paragraph 455 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 455 of the Complaint.

456.     To the extent paragraph 456 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 456 of the Complaint.

457.     DISH denies the allegations of paragraph 457 of the Complaint.

458.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 458, and therefore denies them.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

459.   To the extent paragraph 459 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 459 of the Complaint.

460.   To the extent paragraph 460 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 460 of the Complaint.

461.   To the extent paragraph 461 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 461 of the Complaint.

462.   DISH admits that "8363681" appears in Exhibit A to a March 9, 2022 communication—but not an August 9, 2022 communication—from Entropic.  To the extent paragraph 462 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 462 of the Complaint.

463.   To the extent paragraph 463 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 463 of the Complaint.

464.   To the extent paragraph 464 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 464 of the Complaint.

465.   DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 465 of the Complaint, and therefore denies them.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

466.     To the extent paragraph 466 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 466 of the Complaint.

467.     DISH lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 467, and therefore denies them.

468.     To the extent paragraph 468 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 468 of the Complaint.

469.     To the extent paragraph 469 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 469 of the Complaint.

470.     To the extent paragraph 470 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 470 of the Complaint.

471.     To the extent paragraph 471 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 471 of the Complaint.

472.     To the extent paragraph 472 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH denies the allegations and characterizations contained in paragraph 472 of the Complaint.

473.     To the extent paragraph 473 of the Complaint implicates legal conclusions, no response is required.  To the extent that a response is required, DISH

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  denies the allegations and characterizations contained in paragraph 473 of the

2  Complaint.

3    474.    To the extent paragraph 474 of the Complaint implicates legal

4  conclusions, no response is required.  To the extent that a response is required, DISH

5  denies the allegations and characterizations contained in paragraph 474 of the

6  Complaint.

7    475.    To the extent paragraph 475 of the Complaint implicates legal

8  conclusions, no response is required.  To the extent that a response is required, DISH

9  denies the allegations and characterizations contained in paragraph 475 of the

10  Complaint.

11    476.    To the extent paragraph 476 of the Complaint implicates legal

12  conclusions, no response is required.  To the extent that a response is required, DISH

13  denies the allegations and characterizations contained in paragraph 476 of the

14  Complaint.

15    477.    To the extent paragraph 477 of the Complaint implicates legal

16  conclusions, no response is required.  To the extent that a response is required, DISH

17  denies the allegations and characterizations contained in paragraph 477 of the

18  Complaint.

19    478.    To the extent paragraph 478 of the Complaint implicates legal

20  conclusions, no response is required.  To the extent that a response is required, DISH

21  denies the allegations and characterizations contained in paragraph 478 of the

22  Complaint.

23    479.    Paragraph 479 characterizes Entropic's belief and thus no response is

24  required.  To the extent paragraph 479 of the Complaint implicates legal conclusions,

25  no response is required.  To the extent that a response is required, DISH denies the

26  allegations and characterizations contained in paragraph 479 of the Complaint.

27  **JURY DEMAND**

28  DISH hereby requests a trial by jury on all issues so triable by right.

60

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## PRAYER FOR RELIEF

The section of the Complaint titled "Prayer for Relief" sets forth the statement of relief requested by Entropic to which no response is required. DISH denies that Entropic is entitled to any relief sought in its Prayer for Relief or otherwise.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

480. DISH incorporates by reference the foregoing paragraphs in their entirety and asserts the following affirmative and additional defenses. By asserting these affirmative and additional defenses, DISH does not admit that it bears the burden of proof on any issue and does not accept any burden it would not otherwise bear. DISH reserves all affirmative defenses permitted under the Federal Rules of Civil Procedure, the Patent Laws of the United States and/or at law or in equity that may now exist, or in the future be available, based on discovery and further investigation in this case, as well as the right to amend this Answer to include those defenses. Pursuant to Federal Rule of Civil Procedure 8(c), DISH, without waiver, limitation, or prejudice, hereby asserts the following affirmative and additional defenses.

## FIRST AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Limitation on Damages/Failure to Mark)

481. Entropic's request for "damages pursuant to 35 U.S.C. § 284 adequate to compensate Entropic for [DISH's] past . . . infringement" for the period before Entropic filed the Complaint or allegedly notified DISH of Entropic's allegations of infringement of the Asserted Patents before March 9, 2022, are barred by 35 U.S.C. § 286. The relief sought by Entropic based on DISH's alleged infringement of the Asserted Patents is further limited by 35 U.S.C. § 287 to the extent Entropic, any predecessors-in-interest, or its licensees failed to mark allegedly practicing products.

## SECOND AFFIRMATIVE OR ADDITIONAL DEFENSE

### (License and Waiver)

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

482.     Although DISH lacks knowledge or information sufficient to form a belief as to the truth of Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard, if true, Entropic's claims are barred, in whole or in part, by actual license, the doctrine of implied license, and/or waiver.  These licenses include, but are not limited to, express or implied licenses arising from Entropic Communications, Inc.'s and/or MaxLinear's participation in the Multimedia over Coax Alliance ("MoCA"), as well as the MoCA "Intellectual Property Rights (IPR) Policy" (hereinafter, the "MoCA IPR Policy").

483.     Although DISH lacks knowledge or information sufficient to form a belief as to the truth of Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard, if true, Entropic's claims are further barred, in whole or in part, based on its waiver of it claims.  DISH reasonably relied on Entropic's and its predecessors-in-interest, Entropic Communications, Inc.'s and MaxLinear's, conduct in various MoCA meetings indicating that Entropic Communications, Inc. or MaxLinear would not enforce patents that cover functionality and features that it had publicly disclosed in various MoCA proposals.

484.     DISH reasonably relied on its knowledge of Entropic Communications, Inc.'s and MaxLinear's MoCA proposals, and Entropic Communications, Inc.'s and MaxLinear's active and public endorsement of its MoCA proposals to reasonably infer that alleged rights that covered such similar technology, features, and functionality as those that were publicly disclosed in the MoCA proposals, would not be enforced against DISH.

485.     Although Entropic Communications, Inc. publicly disclosed the features and functionality of the MoCA proposals, Entropic, Entropic Communications, Inc. and MaxLinear did not seek to enforce patents covering the same features and functionality for nearly two decades.  Consequently, DISH is licensed and impliedly licensed to the Asserted Patents, and the allegations against DISH are waived.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## THIRD AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Equitable Estoppel)

486.     Although DISH lacks knowledge or information sufficient to form a belief as to the truth of Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard, if true, Entropic's claims are also barred in whole or in part by the doctrine of equitable estoppel at least because DISH reasonably relied on Entropic or its predecessors-in-interests' conduct as a Founder, Adopter, and Supplier of MoCA technology as well as Entropic's predecessors-in-interests' participation in MoCA.

487.     As a Founder of MoCA, Entropic Communications, Inc. helped develop the MoCA specifications that required Adopters of MoCA to comply with the specification.  Entropic, Entropic Communications, Inc., and MaxLinear did not seek a license from DISH for the use of any patents it considered essential to MoCA before filing this litigation.

488.     DISH's affiliates participated in MoCA with the understanding the Entropic Communications, Inc. and any future affiliates including Entropic would license any of its patents related to MoCA to other parties to manufacture components implementing MoCA.

489.     Based on this conduct, it was reasonable for DISH to believe that Entropic would not enforce the Asserted Patents against the MoCA specification that Entropic Communications, Inc. and MaxLinear helped develop and encouraged MoCA members to adopt in their roles as a Founder and member.

490.     DISH and its customers would be materially prejudiced if Entropic were allowed to proceed with its infringement claims for the Asserted Patents.

491.     Entropic is estopped from asserting one or more of the Asserted Patents because it has failed to comply with commitments made by Entropic and/or its predecessors-in-interest, to MoCA to license one or more of the Asserted Patents under fair, reasonable, and non-discriminatory ("RAND") terms if Entropic's

admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard is true.

492.    Additionally, Entropic is estopped from seeking damages in an amount that exceeds a royalty rate that is consistent with commitments to license such patents under RAND terms if Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard is true.

493.    Entropic is estopped from seeking damages in this case exceeding the rate at which one or more of the Asserted Patents have been licensed to any other companies due to commitments made by Entropic and/or its predecessors-in-interest to MoCA to license one or more of the Asserted Patents under RAND terms during the MoCA's consideration of the MoCA specifications at issue if Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard is true.

494.    Further, Entropic is estopped from enforcing the Asserted Patents and seeking damages in this case in light of the conduct described above including the lack of notice from Entropic and/or its predecessors-in-interest regarding any need license the Asserted Patents until the filing of the Complaint or the March, 2022 letter, DISH's detrimental reliance on that conduct, and the damages DISH has suffered through this litigation.

## FOURTH AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Limitation on Damages Based on RAND Obligations)

495.    Although DISH lacks knowledge or information sufficient to form a belief as to the truth of Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard, if true, Entropic and/or its predecessors-in-interest has undertaken, in accordance with the relevant rules and intellectual property rights policies of applicable Standard Setting Organizations ("SSOs"), to grant licenses to some entities under each of the Asserted Patents on RAND terms and conditions.  Entropic has not, however, offered DISH fair,

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

reasonable and nondiscriminatory royalty terms and rates that are proportionate to royalty terms and rates offered to other companies.  As a beneficiary of the rules and intellectual property rights policies of the relevant SSOs (i.e., MoCA), DISH has the right to be granted license(s) to the Asserted Patents on RAND terms and conditions if Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard is true.  Entropic has failed to offer such a license.  Entropic's failure to comply with its RAND obligations limits the damages, if any, available to Entropic in this action.

## FIFTH AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Entitlement to Enhanced Damages)

496.    Entropic is not entitled to enhanced damages under 35 U.S.C. § 284 or pursuant to the Court's inherent powers.

## SIXTH AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Entitlement to Attorneys' Fees)

497.    Entropic is not entitled to attorneys' fees under 35 U.S.C. § 285 or pursuant to the Court's inherent powers.

## SEVENTH AFFIRMATIVE OR ADDITIONAL DEFENSE

### (No Entitlement to a Finding of Exceptional Case)

498.    Entropic is not entitled to a finding that this case is exceptional under 35 U.S.C. § 285 or under the Court's inherent powers.

## EIGHTH AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Unenforceability)

499.    One or more of the Asserted Patents are unenforceable against DISH because of estoppel, laches, waiver, unclean hands, patent exhaustion, implied license, and/or other equitable doctrines.  Entropic and/or its predecessors-in-interest has engaged in standards-setting misconduct, including without limitation the breach of its commitments to license any essential patents on RAND terms rendering the

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Asserted Patents unenforceable if Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard is true.

## NINTH AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Patent Exhaustion)

500.     Entropic's claims are barred, in whole or in part, to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to DISH by any entity or entities having an express or implied license to the Asserted Patents, and/or Entropic's claims are barred, in whole or in part, under the doctrine of patent exhaustion.  In this regard, to the extent that any of Entropic's accusations of infringement are based, in whole or in part, on Entropic Communications Inc. or MaxLinear components, such claims are barred and exhausted.

## TENTH AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Noninfringement of the Asserted Patents)

501.     DISH has not infringed and does not infringe, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement) or under the doctrine of equivalents), any valid, enforceable claim of the Asserted Patents.

## ELEVENTH AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Invalidity of the Asserted Patents)

502.     Each asserted claim of the Asserted Patents is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto, and/or under other judicially created bases for invalidity and ineligibility, including, but not limited to, the non-statutory doctrine of double patenting, derivation and improper inventorship.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## TWELFTH AFFIRMATIVE OR ADDITIONAL DEFENSE

### (Lack of Knowledge)

503.     To the extent that Entropic asserts that DISH indirectly infringes, either by contributory infringement or inducement of infringement, DISH is not liable to Entropic for the acts alleged to have been performed before DISH knew that its actions would cause indirect infringement.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

504.   As discussed more fully below in the counterclaims asserted by DISH, the assignment of the Asserted Patents to Entropic is defective.  Entropic therefore lacks standing to assert infringement of the Asserted Patents.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Patent Misuse)

505.   As discussed more fully below in the counterclaims asserted by DISH, Entropic has engaged in patent misuse, rendering the asserted patents unenforceable.

## RESERVATION OF ALL AFFIRMATIVE AND ADDITIONAL DEFENSES

506.     DISH hereby gives notice that it intends to rely upon any other matter constituting an avoidance or affirmative defense as set forth in Rule 8(c) of the Federal Rules of Civil Procedure, and that it reserves the right to seek leave to amend this Answer to add to, amend, withdraw, or modify these defenses as its investigation continues and as discovery may require.

## JURY DEMAND

507.     DISH respectfully demands a trial by jury of all issues so triable in this matter.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## COUNTERCLAIMS

In accordance with Rules 15 and 20 of the Federal Rules of Civil Procedure, Defendants-Counterclaimants DISH Network Corporation; DISH Network L.L.C.; Dish Network Service L.L.C., and Dish Network California Service Corp. (collectively the "DISH Defendants"); together with Counterclaim-Plaintiff DISH Technologies L.L.C. ("DISH Technologies)[3] (together with the DISH Defendants, "DISH"), through their undersigned counsel, counterclaims and alleges against Plaintiff-Counter Defendant Entropic Communications, LLC ("Entropic"); and against Counter Defendants MaxLinear, Inc. and MaxLinear Communications LLC (collectively "MaxLinear") as follows:

## NATURE OF THE COUNTERCLAIMS

1.      DISH brings these counterclaims in response to Entropic's conduct in connection with filing and pursuing the present action and for Entropic and/or its predecessors-in-interest's breaches of their commitments to a standards-setting organization known as the Multimedia over Coax Alliance (or "MoCA"), its members, and those who choose to implement MoCA standards.  As to MaxLinear, DISH brings these counterclaims in response to MaxLinear's participation in ownership of the patents-in-suit, its failure to adhere to the requirements of MoCA with respect to its sale and transfer of the patents-in-suit to Entropic and with respect to MaxLinear's acts in concert with Entropic with respect to the patents-in-suit.

2.      Technical standards are essential to the modern world.  The adoption of standardized technology allows for interoperability between devices made by different manufacturers.  Generally speaking, product designers and manufacturers are willing to invest heavily in the development of equipment and software compliant

---

[3] By virtue of this pleading, the DISH Defendants request permissive joinder of DISH Technologies as a counterclaim-plaintiff under Fed. R. Civ. P. 20(a)(1) as all of the DISH entities' counterclaims arise out of the same transaction or occurrence (e.g., the MoCA IPR Policy) and include numerous questions of law and fact common to all DISH entities, as set forth below.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

with technical standards because of the promise that the equipment and software will operate with other devices and software compliant with the standard.  Standards may also reduce the investment needed to develop new technologies as the cost of developing technologies can be spread among various companies working together to create the standard.

3.     However, technical standards also create risks of "lock-in" and "patent hold-up."  "Lock-in" refers to a problem whereby, once a standard has been widely-accepted in an industry, it can be difficult for a company to choose not to use the standard.  "Patent Hold-Up" refers to a problem where a single patent owner can "hold-up" an entire industry based on claims that the patent-owner's patents are necessary to practice the standard.  Thus, while standards have great benefits, standards also present a significant risk that a single company can encourage adoption of its patented technology into a standard, lie around in wait for the standard to be widely-adopted, and then demand exorbitant damages—lest a company be at a severe competitive disadvantage from no longer being able to implement the standardized technology.

4.     To address these potential risks—and to avoid falling afoul of the anti-trust laws—standards organizations have adopted policies governing how the promulgators of a standard behave with respect to those who choose to implement the standard.  Generally, such policies require that patent owners who contribute to the creation of a standard, or who are members of the standards-setting organization, promise to grant licenses to patents to any implementor of the standard on fair, reasonable, and non-discriminatory ("RAND") terms.

5.     As courts have found, the RAND promise must be available to all-comers, regardless of whether the potential licensee is a member of the standards-setting organization.  Without the guarantee that RAND terms are available to all, a small number of companies may be able to coordinate to develop a standard, cross-

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

license each other, but then hold-up all others once a standard has become widely-adopted.

6.     As with most standards-setting organizations, MoCA has promulgated a policy directing how organizations that participate in its standards-setting are to behave with respect to licensing of intellectual property related to MoCA standards. Also, as with most standards-setting organizations, MoCA directs its members, and those members agree, to license intellectual property essential to the practice of MoCA standards on "reasonable and non-discriminatory" ("RAND") terms.  This is a contractual promise between each member and MoCA and between the members, for the benefit of those members and other organizations that choose to implement MoCA standards.

7.     Entropic Communications, Inc. ("Original Entropic")—the original assignee of the patents currently asserted by Entropic in this case—agreed as a member of MoCA to license patents essential to MoCA on RAND terms. MaxLinear—a member of MoCA's Board of Directors since 2015—affirmed that promise when it acquired Original Entropic.  However, when MaxLinear sold the patents originally owned by Original Entropic to the Entropic entity that is the plaintiff in this case, it failed to include language required by MoCA concerning RAND and misrepresented whether the patents were RAND encumbered.  Since acquiring the Original Entropic patents, the Entropic entity that is the plaintiff in this case has failed to honor Original Entropic's and MaxLinear's RAND promises, and has failed to offer DISH RAND terms despite DISH's repeated requests.

8.     Accordingly, DISH seeks relief arising from MaxLinear's and Entropic's tortious conduct relating to the transfer of the patents currently asserted against DISH and the filing of the present lawsuit.  DISH also seeks redress for MaxLinear's and Entropic's conduct in violation of the anti-trust laws.  DISH also seeks to hold Entropic to the promises made by the predecessors-in-interest to patents asserted in

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

this case, and for redresses for Entropic (and MaxLinear's) breaches of their contractual duties to MoCA, MoCA members, and MoCA implementors.

## PARTIES

9.     Defendant and Counterclaim-Plaintiff DISH Network Corporation is a Nevada corporation, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112

10.     Defendant and Counterclaim-Plaintiff DISH Network L.L.C. is a Colorado Limited Liability Company, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

11.     Defendant and Counterclaim-Plaintiff Dish Network Service, L.L.C. is a Colorado Limited Liability Company, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

12.     Defendant and Counterclaim-Plaintiff Dish California is a Colorado Corporation with its principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

13.     Counterclaim-Plaintiff DISH Technologies L.L.C. is a Colorado Corporation with its principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

14.     On information and belief, Plaintiff and Counterclaim-Defendant Entropic Communications LLC is a Delaware limited liability company with an office at 7150 Preston Road, Suite 300, Plano, Texas 75024.

15.     On information and belief, MaxLinear, Inc., a Counterclaim-Defendant, is a Delaware corporation, with a principal place of business at 5966 La Place Court Suite 100, Carlsbad, CA 92008.

16.     On information and belief, MaxLinear Communications LLC is an affiliate of MaxLinear, Inc., and is a Delaware limited liability company with a principal place of business at 5966 La Place Court Suite 100, Carlsbad, CA 92008.

71

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1    Collectively, MaxLinear, Inc. and MaxLinear Communications LLC are referred to
2    as "MaxLinear."

3    ## JURISDICTION AND VENUE

4        17.    DISH's declaratory judgment counterclaims arise under Title 35 of the
5    United States Code.  The Court has subject matter jurisdiction over them under 28
6    U.S.C. §§ 1331, 1338, 2201, and 2202 as they arise under an Act of Congress relating
7    to patents, patent infringement, and the Declaratory Judgment Act.  This Court has
8    jurisdiction over DISH's anti-trust claims pursuant to at least 15 U.S.C. § 1.   In
9    addition, the Court has subject matter jurisdiction under 28 U.S.C. § 1367, because
10   the state law counterclaims form part of the same case or controversy and arise from
11   a common nucleus of operative fact as the federal patent infringement claims being
12   asserted against DISH by Entropic.

13       18.    Entropic has consented to personal jurisdiction by commencing an action
14   alleging patent infringement in this District, as set forth in Entropic's Complaint.

15       19.    This Court has general personal jurisdiction over MaxLinear because
16   MaxLinear conducts systematic and regular business within the State of California
17   by, *inter alia*, providing integrated circuits and software products, as well as systems-
18   on-chip solutions used for multimarket applications.

19       20.    Upon information and belief, MaxLinear maintains a regular and
20   established place of business within this district at 50 Parker, Irvine, CA 92618.

21       21.    Venue over DISH's counterclaims is proper, to the extent that venue over
22   Entropic's claims is proper, under 28 U.S.C. §§ 1391(b) and 1400(b).

23
24
25
26
27
28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## FACTUAL BACKGROUND

**The Multimedia over Coax Alliance ("MoCA")**

22.    MoCA is an independent, non-profit standard-setting organization ("SSO") that produces accepted standards for in-home networking.[4]    More specifically, MoCA promulgates, publishes, and promotes standards that allow for IP networking using legacy coaxial cabling.

23.    MoCA was founded in 2004.   Founding members included Cisco Systems, Comcast, EchoStar Technologies Corporation (an affiliate of DISH), Entropic Communications, Matsushita Electric (Panasonic), Motorola, Radio Shack Corporation, and Toshiba.[5]   By 2008, additional digital entertainment providers such as Cox, Verizon, AT&T, DirecTV, and Time Warner Cable joined MoCA.[6]   In addition to digital entertainment providers, silicon makers such as Broadcom Corporation (by way of its acquisition of Octalica), Conexant Systems, Inc., BroadLight, Inc., Applied Micro Circuits Corporation, and Texas Instruments joined

---

[4]    MoCA    Frequently    Asked    Questions    (mocalliance.org),
https://mocalliance.org/about/faqs.php (last visited Sept. 21, 2023)

[5]   "8 Technology Leaders Form Multimedia Over Coax Alliance to Enable Entertainment Devices to Interconnect Throughout the Home Via Coax Cabling," *MoCA,*    January    5,    2004    (archive),    *available    at* https://web.archive.org/web/20150204230050/http://www.mocalliance.org/news/pr_040105_8_tech_leaders_form_moca.htm (last visited Sept. 21, 2023)

[6]   Cox    and    Verizon    Join    Multimedia    over    Coax    Alliance, https://web.archive.org/web/20150204230053/https:/mocalliance.org/news/pr_050809_cox_and_vorizon_joins_moca.htm (last visited Sept. 21, 2023); AT&T Laboratories   [sic]   Is   Newest   Member   of   MoCA™, https://mocalliance.org/news/pr_060606_ATandT_Joins_MoCA.php (last visited Sept.    21,    2023);    DirecTV    Joins    MoCA, https://mocalliance.org/news/pr_050508_directv_joins_moca.php (last visited Sept. 21,    2023);    Time    Warner    Cable    Joins    MoCA, https://mocalliance.org/news/pr_070108_time_warner_cable_joins_moca.php    (last visited Sept. 21, 2023)

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

MoCA including as contributors.[7]  ViXS Systems Inc. joined MoCA on September 10, 2009.[8]

24.      The first version of the MoCA standard (Version 1.0) was ratified and published in 2006.  Since that time, MoCA members have continued to develop newer versions of the MoCA Standard.  MoCA 1.1 was published in 2007, with an Extension published in 2010.  MoCA 2.0 was published in 2010.  MoCA 2.5 was published in 2016; and MoCA 3.0 was published in 2021.

**The MoCA Contract**

25.      According to MoCA, "MoCA® provides a forum and environment where Alliance members meet to develop multi-gigabit coaxial connectivity standards."[9]  However, in order to participate in MoCA, Alliance members must enter into contracts with MoCA that govern the member's behavior with respect to MoCA.

26.      On information and belief, and as set forth in the MoCA Corporate Bylaws,

---

[7]  Broadcom, Conexant and BroadLight Upgrade to MoCA's New, https://www.globenewswire.com/news-release/2007/06/26/361527/7047/en/Broadcom-Conexant-and-BroadLight-Upgrade-to-MoCA-s-New-Contributor-Class.html (last visited Sept. 21, 2023); Broadcom Jump Starts MOCA Strategy | Light Reading, https://www.lightreading.com/cable-video/broadcom-jump-starts-moca-strategy/d/d-id/641350 (last visited Sept. 21, 2023); MoCA Adds Additional Silicon Vendor, https://mocalliance.org/news/pr_060214_MoCA_Adds_Silicon_Vendor.php (last visited Sept. 21, 2023); MoCA Adds Another Silicon Vendor in AMCC, https://mocalliance.org/news/pr_060829_MoCA_Adds_AMCC.php (last visited Sept. 21, 2023); MoCA™ Expands Membership to Include Texas Instruments, https://mocalliance.org/news/pr_061106_MoCA_Adds_Texas_Instruments.php (last visited Sept. 21, 2023)
[8]  ViXS Systems Joins MoCA®, https://mocalliance.org/news/prM_090910_ViXS_Systems_Joins_MoCA.php (last visited Sept. 21, 2023)
[9]  "About MoCA(r), the Multimedia over Coax Alliance," available at https://mocalliance.org/about/index.php (last visited January 9, 2024.

74

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  ███████████████████████████████████████████████

2  █████████████[REDACTED].[10]  Exhibit 1, MoCA Bylaws at ¶¶ 3.1-3.3.

3      27.    As set forth in the MoCA Bylaws, ███████████████

4  ████████████████████████████████████  An exemplar un-executed

5  Promoter Member Agreement is attached as Exhibit 2 ("Promoter Member

6  Agreement").

7      28.    Pursuant to the terms of the Promoter Member Agreement, the Promoter

8  Member agrees to abide by the MoCA Intellectual Property Rights ("IPR") Policy

9  and "Antitrust Guidelines," both attachments to the Promoter Member Agreement.

10  Promoter Member Agreement, §§ 3.1, 6.  Thus, the Promotor Agreement, including

11  the IPR Policy and the Antitrust Guidelines, constitute an enforceable contract

12  between the Promoter Member, MoCA, and the other members of MoCA.

13      29.    A true and correct copy of the MoCA IPR Policy is attached as Exhibit

14  3.[11]

15      30.    Pursuant to its express terms, MoCA's IPR Policy "applies to all

16  Alliance Parties and their Affiliates (as defined below)[.]"  MoCA IPR Policy § 1.

17  The IPR defines "Alliance Party(ies)" as "a Participant or a Voting Member." MoCA

18  IPR Policy § 2.  One objective of MoCA's IPR Policy was to "maximize the

19  likelihood of widespread adoption of such specifications." MoCA IPR Policy § 1.

20      31.    As to the rights and obligations, the MoCA IPR Policy requires each

21  member to grant a license to "Essential Patent Claims" in Section 5.1.1: "[E]ach

22  Alliance Party shall offer to license to the requesting Alliance Party(ies) . . . such

23  Alliance Party's and its Affiliates' Essential Patent Claims to the extent necessary to

24  _____

25  [10] A copy of the MoCA Corporate Bylaws ("Bylaws") is attached as Exhibit 1.  DISH reserves the right to address other versions of the Corporate Bylaws should Entropic

26  and/or MaxLinear contend that a different version is applicable to the present dispute.

27  [11] The relevant version of the IPR Policy is attached as Exhibit 3.  To the extent Entropic and/or MaxLinear alleges that another revision of the IPR Policy should

28  apply, DISH reserves the right to address other versions of the IPR Policy.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

use, make, have made, offer for sale, sell and import Fully Compliant Products in conformance with or as described in such Approved Draft Deliverable." The MoCA IPR Policy requires the license be fair, reasonable, and nondiscriminatory: "Such licenses shall be non-exclusive, non-transferable, non-sublicensable, world wide, and on fair, reasonable and nondiscriminatory terms and conditions (collectively, 'RAND') which may include defensive suspension provisions." MoCA IPR Policy § 5.1.1.

32.    The MoCA IPR Policy also includes an anti-circumvention clause. Specifically, the policy states: "Each Alliance Party further represents and warrants and agrees that it has not and will not intentionally transfer or otherwise encumber its patents that reasonably may contain Essential Patent Claims for the purpose of circumventing the obligation to grant licenses contained in this IPR Policy." MoCA IPR Policy § 4.1.2. Should a transfer of "Essential Patent Claims" take place, the IPR Policy requires "any agreement for transferring or assigning Essential Patent Claims includes a provision that such transfer or assignment is subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws." MoCA IPR Policy § 5.1.2.

33.    On information and belief, including because it was a founding member of MoCA, Original Entropic executed a "Promoter Member Agreement" or agreement of similar scope. Pursuant to the terms of the Promoter Member Agreement,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

34.    On  information and belief, including because MaxLinear is listed as a "Promoter" and member of MoCA's Board of Directors on MoCA's website,[12] MaxLinear executed a "Promoter Member Agreement" or agreement of similar scope. *See* Ex. 4.  Pursuant to the terms of the Promoter Member Agreement,



35.    "Voting  Members"  and  "Participants"  (i.e.,  "Associates"  and "Contributors") must also execute agreements (*see* MoCA Bylaws §§ 3.2, 3.3). Exemplar copies of agreements executed by "Participants" are attached as Exhibit 5 ("Contributor Agreement") and Exhibit 6 ("Associate Agreement").  Each of these agreements also require that members comply with the terms of the IPR Policy.  *See* Contributor Agreement, § 4; Associate Agreement, § 4.  On information and belief, at least MaxLinear has also executed at least the Associate Agreement.  *See* Ex. 7.

**Events Leading to DISH's Counterclaims**

36.    DISH has been forced to bring these counterclaims to vindicate the promises embodied in the MoCA IPR Policy and to seek redress for the harms it has suffered for MaxLinear's and Entropic's actions in violation of the MoCA IPR Policy.

37.    In its complaint and infringement contentions, Entropic alleges that the DISH Defendants infringe certain claims ("the Asserted Claims") of U.S. Patent Nos. U.S. Patent Nos. 7,295,518; 7,594,249; 7,889,75; 8,085,802; 9,838,213; 10,432,422; 8,631,450;  8,621,539;  8,320,566;  10,257,566;  8,228,910;  8,363,681 (collectively,

---

[12] *See* "Our Members," *available at https://mocalliance.org/about/members.php*

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

"the Asserted Patents" or "Asserted Patents"). Entropic's allegations of infringement are based on DISH's alleged incorporation of MoCA standards into its products.

38.    Entropic has alleged that the Asserted Claims are necessarily infringed by compliance with at least one version of the MoCA Standards. As such, as Entropic has alleged infringement, the Asserted Claims are "Essential Patent Claims" as defined by the MoCA IPR Policy. *See* MoCA IPR Policy, Definitions.

39.    For the avoidance of doubt, DISH does not accept Entropic's contention that the Asserted Claims in this action are necessary to products that implement any MoCA standard. Also, to the extent DISH products implement any part of any MoCA standard, DISH does not concede that any implementations of those parts in its products practice the Asserted Claims. Nonetheless, DISH has relied upon Entropic and/or its predecessors-in-interests' membership in MoCA and, on information and belief, Entropic and/or its predecessors-in-interests' agreement to be bound by the MoCA IPR Policy, that all patent controversies may be avoided based on the offer of patent licenses on reasonable rates and non-discriminatory terms and conditions.

40.    As noted above, the patents in this case were originally assigned to Original Entropic. Because Original Entropic, on information and belief, executed the Promoter Member Agreement (or similar agreement), and to the extent the Asserted Claims are Essential Patent Claims as defined in the MoCA IPR Policy, Original Entropic and any subsequent owner or assignee of the Asserted Patents is obligated to license the Asserted Patents on RAND terms.

41.    Original Entropic acknowledged its obligation to comply with the MoCA IPR Policy. In its 2012 Annual Report filed with the U.S. Securities and Exchange Commission, it stated that, "[i]n connection with our membership in MoCA, we are required to license any of our patent claims that are essential to implement the MoCA specification to other MoCA members under reasonable and non-discriminatory terms."

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

42.     MaxLinear acquired Original Entropic (including the Asserted Patents) in 2015.

43.     Because MaxLinear, on information and belief, has at least executed a Promoter Member Agreement and an Associate Agreement (or similar agreements), and to the extent the Asserted Claims are Essential Patent Claims as defined in the MoCA IPR Policy, MaxLinear and any subsequent owner or assignee of the Asserted Patents is obligated to license the Asserted Patents on RAND terms.

44.     On information and belief, including at least because MaxLinear touted Entropic's MoCA patent portfolio in its 2015 and 2016 Annual Reports, MaxLinear was aware of Original Entropic's assertions that many of its patents were essential to the implementation of MoCA standards.   Moreover, on information and belief, including at least because of MaxLinear's prior involvement with MoCA, MaxLinear was aware of the MoCA IPR Policy and the obligation to license MoCA essential patents on RAND terms.

45.     However, MaxLinear reneged on the promises it made pursuant to the MoCA IPR Policy in 2021 when it transferred the Asserted Patents to Entropic.

46.     The MoCA IPR Policy provides that "[a]ny sale, assignment or other transfer by an Alliance Party or its Affiliates to an unaffiliated third party of an Essential Patent Claim shall be subject to the terms in this IPR Policy."  MoCA IPR Policy, § 5.1.2.  Moreover, the MoCA IPR Policy requires that "any agreement for transferring or assigning Essential Patent Claims includes a provision that such transfer or assignment is subject to . . . obligations to license imposed on the Alliance Party by this Agreement."  *Id.*

47.     The Patent Purchase Agreement that transferred the rights in the Asserted Patents from MaxLinear to Entropic ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  To the contrary, MaxLinear represented in the Patent Purchase Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1

2

3

4 *See*

5 Ex. 8.

6      48.    Since its acquisition of the Asserted Patents, Entropic has made no effort

7 to comply with the MoCA IPR Policy.

8      49.    On March 9, 2022, Entropic sent a letter to Mr. Tim Messner, General

9 Counsel for DISH Network LLC at that time, alleging that DISH's "satellite television

10 services infringe certain claims of these patent."   The charts alleging infringement

11 attached as an exhibit to that letter contain multiple references to MoCA.   The letter

12 makes no reference to the MoCA IPR Policy, nor does it make any offer to license

13 the Asserted Patents on RAND terms.

14      50.    On May 3, 2022, Messrs. Max Gratton and Ira Jamshidi discussed

15 licensing Entropic's patent portfolio—including the Asserted Patents—with

16 Entropic's CEO Mr. Boris Teksler.   On that call, Messrs. Gratton and Jamshidi

17 requested a licensing proposal from Entropic on behalf of DISH Network L.L.C. and

18 all DISH entities, which Entropic agreed to provide.   No license proposal was

19 forthcoming.

20      51.    On July 14, 2022, Entropic again agreed to provide terms for a license.

21 Again, though, no license proposal was forthcoming.

22      52.    On December 28, 2022, Mr. Teksler sent another letter to Mr. Messner.

23 In that letter, Mr. Teksler and Entropic committed "to licensing its patents that cover

24 MoCA technology on reasonable terms, without discrimination among similarly-

25 situated providers (often called 'RAND terms.')."   Still—no license proposal was

26 forthcoming.

27      53.    Instead of providing license terms, Entropic brought two suits against

28 DISH entities.   Entropic filed the present lawsuit on February 10, 2023.   As with its

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

previous letter, Entropic's allegations of infringement center on MoCA standards. However, Entropic's complaint contains no reference to the MoCA IPR Policy nor any obligation to license the Asserted Patents on RAND terms.

54.     On March 31, 2023, Mr. Gratton again asked Entropic to provide license terms.  In this written correspondence, Mr. Gratton "reiterate[d] [his] request for Entropic's RAND-compliant offer on the patents asserted as essential to the MOCA standard" and specifically requested Entropic's "RAND licensing rate sheet for the standard-essential patents."  Again, though, no licensing proposal was received.

55.     In a letter dated November 10, 2023, Mr. James Hanft, Vice President and Associate General Counsel for DISH Network L.L.C., again asked Entropic for a RAND-compliant offer.  In that letter, Mr. Hanft detailed this history of the negotiations, including Entropic continuing failure to provide any RAND rates or a RAND-compliant offer, and noted "Entropic has no excuse for failing to provide such terms." Ex. 9.

56.     To date, Entropic has refused to provide **any** licensing proposal, and the only monetary terms Entropic has identified is its claim for $1,000,000,000 (One Billion Dollars), which it claims are the damages it is seeking in the present lawsuit. (*See* D.I. 76 at 11).

57.     To date, Entropic has refused to confirm that it has any obligation to license the patents which it claims are essential to MoCA standards on RAND terms or that it will make a license offer compliant with its obligations during the pendency of this lawsuit.

**DISH Technologies Has Standing to Enforce the MoCA IPR Policy**

58.     At least DISH Technologies has standing to enforce the MoCA IPR Policy in the present suit because it is a former member of MoCA and because it has and will continue to be harmed by Entropic and MaxLinear's refusal to license on RAND terms and other wrongful conduct.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

59.     Dish Technologies was previously a Promoter Member of MoCA.  More specifically, Dish Technologies was previously named EchoStar Technologies, who executed a Promoter Member Agreement at least as of 2004.  EchoStar Technologies continued to be a member, including serving on the Board of Directors of MoCA, until 2019.

60.     The MoCA IPR Policy explicitly provides that former members may enforce its terms.

61.     For example, the MoCA IPR Policy provides that a "terminated Alliance Party shall be entitled to request or require any Alliance Party to license such Alliance Party's Essential Patent Claims under Section 5.1 (RAND Licenses), but only to the extent necessary to use, make, have made, offer for sale, sell and import Fully Compliant Products in conformance with or as described in Draft Deliverables or Approved Draft Deliverables approved by the Board of Directors prior to such expiration or termination[.]"  MoCA IPR Policy, §7.1.

62.     DISH Technologies sells the DISH "Hopper" and "Joey" – products implicated in Entropic's Complaint.  According to the explicit terms of the MoCA IPR policy, DISH Technologies thus shall be "entitled" to require Entropic and/or MaxLinear to license patents essential to MoCA Standards on RAND terms.  DISH Technologies therefore has standing to bring claims to enforce the terms of the IPR Policy.

63.     Moreover, DISH Technologies has been harmed by Entropic's and MaxLinear's wrongful behavior.  Entropic's failure to license on RAND terms, MaxLinear's failure to include RAND encumbrances in its assignment to Entropic, and the other wrongful acts undertaken by Entropic and MaxLinear, has harmed DISH Technologies' ability to sell its product, including by raising its costs through this lawsuit.  Moreover, DISH Technologies has also suffered diminution of reputation in the marketplace, including its reputation as an innovator.  These harms underline DISH Technologies' standing to enforce the terms of the MoCA IPR policy.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**The DISH Defendants Have Standing to Enforce the MoCA IPR Policy**

64.     The DISH Defendants each also have standing to enforce the MoCA IPR Policy because they are at least third-party beneficiaries of the promises embodied in the IPR Policy.

65.     As courts have found, "[c]ompanies seeking to license under [FRAND] terms become third-party beneficiaries of the contract between the [SEP] holder and the [Standards Setting Organization (SSO)].  They are thus enabled to enforce the terms of that contract." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 481 (5th Cir. 2021); *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1031 (9th Cir. 2015) (finding "an SEP holder cannot refuse a license to a manufacturer who commits to paying the RAND rate …").

66.     In order to comply with anti-trust laws, RAND licenses must be made available to both members **and** non-members of the SSO.  *See, e.g., Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) (noting that the FRAND commitment ensures that any standard implementor "cannot . . . maintain[] a patent monopoly" by refusing to "licens[e] others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.").  This is because RAND obligations exist to protect the parties that must adopt a standard in order to conduct their business—regardless of membership in the SSO.  If the RAND-promise were limited to only members of the SSO, then a small group of companies could work together to create a standard and then hold up others who wish to make interoperable devices or services with exorbitant patent rates.

67.     Entropic alleges that DISH has implemented MoCA standards.  DISH has also asked for RAND terms for the license.  Accordingly, DISH is and should be a third-party beneficiary of the MoCA IPR Policy.

68.     The MoCA IPR Policy is consistent.  For example, the MoCA IPR Policy explains that the policy "is intended to maximize the likelihood of widespread adoption" of MoCA specification.  MoCA IPR Policy, § 1.  Widespread adoption is

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  only possible when the RAND promise applies to any implementor of the MoCA

2  standards beyond the handful of member companies.

3      69.     In line with this stated goal, MoCA routinely promoted the use of MoCA

4  technology by non-members.  For example, MoCA published brochures urging in-

5  home television service providers and installers, such as the DISH Defendants, to

6  adopt MoCA technology.  *See, e.g.,* Ex. 10.  Such promotion did not indicate that a

7  company need be a member of MoCA in order to avoid exorbitant non-RAND patent

8  licensing demands.  *See id.*

9      70.     The MoCA IPR Policy also provides that the policy "is designed and

10  intended to comply with all applicable law, including federal and state anti-trust

11  laws."  MoCA IPR Policy, § 1.  In order to comply with anti-trust laws, a SSO's

12  RAND guarantee must apply to all-comers, not just members.

13      71.     The DISH Defendants are also intended beneficiaries of the MoCA IPR

14  Policy because of their relationship with former MoCA member companies.

15      72.     As discussed above, at least EchoStar Technologies Corporation

16  ("EchoStar")—now DISH Technologies, LLC—was previously a promoter member

17  of MoCA.  The DISH Defendants are either sister subsidiaries or parent corporations

18  of DISH Technologies, LLC.

19      73.     Moreover, while it had not executed a formal agreement, "DISH"

20  (collectively) became a de facto member of MoCA through a course of conduct.  In

21  its internal MoCA documents relating to meetings of the Board of Directors spanning

22  at least three years, for example, "DISH" (without specifying which DISH entity) is

23  listed as a member of MoCA's Board of Directors and DISH's MoCA representative

24  participated in meetings of the Board of Directors.  *See, e.g.,* Ex. 11 at 3 (May 9, 2017,

25  Agenda for Board of Director's Meeting, Listing "DISH" as a member of the Board);

26  Ex. 12 at 1 (minutes from May 9, 2017, meeting, listing "DISH" as a member of the

27  Board); Ex. 13 (record of attendance for Board Members, listing "DISH"); Ex. 14 at

28

3 (June 2017 Board meeting Agenda, listing "DISH"); Ex. 15 (similar); Ex. 16 at 3 (similar); Ex. 17 (similar); Ex. 18 at 3 (similar); Ex. 19 (similar); Ex. 20 (similar).

74.    Pursuant to the MoCA IPR Policy, owners of MoCA-essential patents must grant RAND licenses "to the extent necessary" for the licensee "to use, make, have made, offer for sale, sell and import" products compliant with MoCA standards. MoCA IPR Policy, § 5.1.1.  Plainly, as is contemplated by this provision, such a license must extend not only to whichever corporate entity is a member of MoCA, but also to related companies whose activities are "necessary" for the licensee to implement MoCA technologies.  Accordingly, as is contemplated by the IPR Policy itself, entities such as the DISH Defendants are intended beneficiaries of the RAND promise.

## COUNT I

### (As Against Counter-Defendant Entropic)
### DECLARATORY JUDGMENT THAT DISH
### IS ENTITLED TO LICENSE THE ASSERTED PATENTS FROM
### ENTROPIC ON RAND TERMS

75.    DISH incorporates and realleges the allegations set forth in Its Counterclaim Paragraphs 1-74, above, as if set forth fully herein.

76.    Subject to the terms and conditions of the MoCA IPR Policy, Entropic and/or its predecessors-in-interest, including MaxLinear, made contractual commitments and are obligated to offer to DISH, and its affiliates, licenses to its essential patents on RAND terms and conditions if Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard is true.  The MoCA IPR Policy states, "each Alliance Party shall offer to license to the requesting Alliance Party(ies), under the terms of a separate written agreement, such Alliance Party's and its Affiliates' Essential Patent Claims to the extent necessary to use, make, have made, offer for sale, sell and import Fully

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Compliant Products in conformance with or as described in such Approved Draft Deliverable.   Such licenses shall be non-exclusive, non-transferable, non-sub-licensable, world wide, and on fair, reasonable[,] and nondiscriminatory terms and conditions (collectively, 'RAND') which may include defensive suspension provisions."  MoCA IPR Policy § 5.1.1.

77.       On information and belief, Entropic and MaxLinear are bound by the terms of Section 5.1.1 at least through the assignment of the Asserted Patents from Original Entropic and MaxLinear under the MoCA IPR Policy, Section 5.1.2.  Section 5.1.2 states: "[a]ny sale, assignment or other transfer by an Alliance Party or its Affiliates to an unaffiliated third party of an Essential Patent Claim shall be subject to the terms in this IPR Policy. . . . [A]ny agreement for transferring or assigning Essential Patent Claims includes a provision that such transfer or assignment is subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws."  MoCA IPR Policy § 5.1.2.

78.       Original Entropic was, and MaxLinear is, an Alliance Party as that term is defined in Section 2 of the MoCA IPR Policy.  MoCA IPR Policy § 2 ("'Alliance Party(ies)' means a Participant or a Voting Member.").   Original Entropic and MaxLinear at least executed Promoter Member Agreements (or similar agreements), agreeing to the terms of the IPR Policy, constituting binding contracts.

79.       Original Entropic acknowledged its obligation to comply with the RAND obligation in the MoCA IPR Policy.  In its 2012 Annual Report it stated "[i]n connection with our membership in MoCA, we are required to license any of our patent claims that are essential to implement the MoCA specification to other MoCA members under reasonable and non-discriminatory terms."

80.       Entropic admits Entropic Communications Inc. is its predecessor-in-interest for the Asserted Patents.  Compl. ¶ 17.

81.       Although DISH Technologies withdrew from MoCA, DISH Technologies retains its benefits under the MoCA IPR Policy including the right to a

86

RAND license under § 5.1.1 as an affiliate.  Specifically, subject to certain conditions, the MoCA IPR Policy provides, a former Alliance Party shall be entitled to request or require any Alliance Party to license such Alliance Party's Essential Patent Claims under Section 5.1 (RAND Licenses)[.]"  MoCA IPR Policy § 7.2.  On information and belief, DISH Technologies' withdrawal from MoCA was not "termination by the Alliance without cause as provided in the Bylaws," and therefore, Technologies retains the benefit of Section 7.2 of the MoCA IPR Policy.  These rights are shared with the DISH Defendants as third-party beneficiaries of the MoCA IPR Policy.

82.    Moreover, Entropic has alleged the Asserted Patents are essential to (i.e., would necessarily be infringed by complying with) MoCA specifications.  *See* Complaint at ¶¶ 93, 127, 161, 195, 229, 263, 297, 331, 365, 399, 433, 467.  Entropic has also alleged DISH's products are "MoCA-compliant" devices.  *See* Complaint at ¶¶ 38-42.  Consequently, Section 5.1.1 of the MoCA IPR Policy requires Entropic to offer DISH licenses to the Asserted Patents on RAND terms and conditions if Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard is true.

83.    Despite repeated requests, including requests made in writing, Entropic has not offered DISH a license to the Asserted Patents on RAND terms and conditions.

84.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment from this Court confirming Entropic's obligation to license the Asserted Patents on RAND terms and conditions.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## COUNT II

### (As Against Counter-Defendant Entropic)
### DECLARATORY JUDGMENT TO DETERMINE RAND TERMS FOR LICENSES TO THE ASSERTED PATENTS

85.     DISH incorporates and realleges the allegations set forth in its Counterclaim Paragraphs 1-84 above, as if set forth fully herein.

86.     As set forth above, by virtue of Original Entropic's and MaxLinear's participation in MoCA and Original Entropic's and MaxLinear's execution of Promoter Member Agreements (or similar agreements), Entropic is bound by contractual commitments with MoCA and its members and affiliates including DISH, including the MoCA IPR Policy.

87.     As also set forth above, every party using any MoCA technology is an intended beneficiary of Original Entropic's and MaxLinear's voluntary contractual commitments to MoCA including the commitment to grant licenses on RAND terms to all that make, use, or sell products supporting the MoCA standards.   These voluntary contractual commitments remain binding on Entropic as the predecessor-in-interest to the patents-in-suit.

88.     As set forth above, Entropic has chosen to engage in litigation, rather than good faith negotiation to reach agreement on RAND terms and conditions for DISH to license the Asserted Patents if Entropic's admission that the Asserted Patents are standard essential patents for at least one version of the MoCA standard is true.

89.     Despite repeated requests, including requests made in writing, Entropic has failed to provide DISH with RAND terms and conditions for a license to the Asserted Patents.

90.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment to this Court setting RAND terms for any necessary licenses to the Asserted Patents.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## COUNT III

### (As Against Counter-Defendant Entropic)

### BREACH OF CONTRACT

91.     DISH incorporates and realleges the allegations set forth in Its Counterclaim Paragraphs 1-90 above, as if set forth fully herein.

92.     The MoCA IPR Policy constitutes a valid, enforceable, and binding contract governed by the laws of California.

93.     Original Entropic agreed to the terms of the MoCA IPR Policy by virtue of executing a Promoter Member agreement (or similar agreement).  Moreover, MaxLinear agreed to the terms of the MoCA IPR Policy at least by virtue of executing a Promoter Member Agreement and an Associate Agreement (or similar agreements).

94.     Because both Original Entropic and MaxLinear are predecessors-in-interest to the Asserted Patents, the promises made by Original Entropic and MaxLinear to comply with the terms of the MoCA IPR Policy remain binding on Entropic.

95.     As set forth above (paragraphs 58-63), DISH Technologies has standing to enforce the MoCA IPR Policy.

96.     As set forth above (paragraphs 64-74), the DISH Defendants are intended third-party beneficiaries of the MoCA IPR Policy and have standing to enforce its terms.

97.     To the extent the MoCA IPR Policy imposes any obligations on DISH, DISH has discharged them.  By way of example, DISH made a request, in writing, for a RAND-complaint license offer.

98.     Entropic has breached section 5.1.1 of the MoCA IPR Policy.  Section 5.1.1 provides that Entropic must "offer to license" its "Essential Patent Claims to the extent necessary to use, make, have made, offer for sale, sell, and import" products complaint with MoCA standards on a "non-exclusive, non-sub-licensable, world-wide" basis "on fair, reasonable and nondiscriminatory terms and conditions

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  (collectively, '*RAND*') . . ."  Entropic has breached section 5.1.1 at least because it
2  has failed to provide DISH with a RAND-compliant license offer.

3       99.    Entropic has also breached section 7.2 of the MoCA IPR Policy.  Section
4  7.2 provides that "terminated Alliance Part[ies] shall be entitled to request or require
5  any Alliance Party to license such Alliance Party's Essential Patent Claims under
6  Section 5.1 (RAND Licenses), but only to the extent necessary to use, make, have
7  made, offer for sale, sell and import" products complaint with MoCA standards
8  "approved by the Board of Directors prior to such expiration or termination."  To the
9  extent DISH products implement any part of any MoCA Standard, Entropic has
10 breached section 7.2 at least because it has failed to provide DISH with a RAND-
11 compliant license offer.

12      100.   DISH has been harmed by Entropic's breaches of the MoCA IPR Policy.
13 By way of example, DISH is forced to expend considerable sums of money and other
14 resources to defend itself in the present suit—resources that DISH would not have
15 had to expend had Entropic complied with the terms of the MoCA IPR Policy.  DISH
16 has also suffered diminution of reputation in the marketplace.  DISH is entitled to
17 recover these damages, as well as any additional relief that may be appropriate or
18 required to address Entropic's breaches.

19                              **COUNT IV**
20                  **(As Against Counter-Defendant MaxLinear)**
21                        **BREACH OF CONTRACT**

22      101.   DISH incorporates and realleges the allegations set forth in Its
23 Counterclaim Paragraphs 1-100 above, as if set forth fully herein.

24      102.   The MoCA IPR Policy constitutes a valid, enforceable, and binding
25 contract governed by the laws of California.

26      103.   Original Entropic agreed to the terms of the MoCA IPR Policy by virtue
27 of executing a Promoter Member Agreement (or similar agreement).  As Original
28 Entropic was a predecessor-in-interest to the Asserted Patents, the promises made by

90

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Original Entropic to comply with the terms of the MoCA IPR Policy became binding on MaxLinear when MaxLinear acquired the Asserted Patents in 2015.

104.    Moreover, MaxLinear itself agreed to the terms of the MoCA IPR Policy at least by virtue of executing a Promoter Member Agreement and an Associate Agreement (or similar agreements).

105.    As set forth above (paragraphs 58-63), DISH Technologies has standing to enforce the MoCA IPR policy as a former member of MoCA.

106.    As set forth above (paragraphs 64-74), the DISH Defendants are intended third-party beneficiaries of the MoCA IPR Policy and have standing to enforce its terms.

107.    To the extent the MoCA IPR Policy imposes any obligations on DISH, DISH has discharged them.  By way of example, DISH made a request, in writing, for a RAND-compliant license offer.

108.    MaxLinear has breached Section 5.1.2 of the MoCA IPR Policy.  Section 5.1.2 provides that "[a]ny sale, assignment or transfer by an Alliance Party . . . to an unaffiliated third party of an Essential Patent Claim shall be subject to the terms in this IPR Policy" and "any agreement for transferring or assigning Essential Patent Claims include a provision that such transfer or assignment is subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws."  MaxLinear breached Section 5.1.2 at least because it failed to transfer the Asserted Patents "subject to the terms" of the IPR Policy, nor did MaxLinear include any provision in the agreement transferring the Asserted Patents to Entropic that the transfer was subject to the obligations imposed by the MoCA IPR Policy.

109.    MaxLinear has also breached Section 4.1.2 of the MoCA IPR Policy.  In Section 4.1.2, MaxLinear "represent[ed], warrant[ed], and agree[d] that it has not and will not intentionally transfer or otherwise encumber its patents that reasonably may contain Essential Patent Claims for the purpose of circumventing the obligation to

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

grant licenses contained in this IPR Policy." MaxLinear breached Section 4.1.2 by transferring the Asserted Patents without requiring Entropic to agree to license the Asserted Patents on RAND terms and (as described more fully below) by attempting to intentionally circumvent the RAND promise.

110.     DISH has been harmed by MaxLinear's breach of the MoCA IPR Policy. By way of example, DISH is forced to expend considerable sums of money and other resources to defend itself in the present suit—resources that would not have had to expend had MaxLinear complied with the terms of the MoCA IPR Policy. DISH has also suffered diminution of reputation in the marketplace. DISH is entitled to recover these damages, as well as any additional relief that may be appropriate or required to address MaxLinear's breach.

## COUNT V

### (As Against Counter-Defendant MaxLinear)

### FRAUD AND NEGLIGENT MISREPRESENTATION

111.     DISH incorporates and realleges the allegations set forth in its Counterclaim Paragraphs 1-110 above, as if set forth fully herein.

112.     On information and belief and as set forth above, MaxLinear represented to the members of MoCA, their affiliates, and potential implementors of MoCA standards—including DISH—that it would license the Asserted Patents under RAND terms and conditions and ensure any future owners of the Asserted Patents would be obligated to offer licenses under RAND terms and conditions. On information and belief, such statements were made to induce companies such as DISH to adopt and incorporate MoCA standards into their businesses, thus locking the companies into MoCA technologies.

113.     On information and belief, MaxLinear's representations that it would license the Asserted Patents on RAND terms were false at the time MaxLinear made them. At minimum, on information and belief, these representations were false and

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1   made by MaxLinear without any reasonable grounds for the truth of the
2   representation.

3   114.   That MaxLinear knew that its representations were false, or at least
4   lacked reasonable grounds for believing them true, is evidenced by MaxLinear's
5   behavior after its acquisition of Original Entropic.

6   115.   Prior to MaxLinear's acquisition, Original Entropic had made specific
7   statements in its Annual Reports affirming its obligation to license the Asserted
8   Patents on RAND Terms.  In its 2012 Annual Report, for example, Original Entropic
9   stated "[i]n connection with our membership in MoCA, we are required to license any
10  of our patent claims that are essential to implement the MoCA specification to other
11  MoCA members under reasonable and non-discriminatory terms."

12  116.   On information and belief, MaxLinear knew of Original Entropic's
13  statements prior to acquiring Original Entropic.  Moreover, on information and belief,
14  including at least because of MaxLinear's own participation in MoCA, MaxLinear
15  was aware of the MoCA IPR Policy and its obligations.  However, in its own Annual
16  Report in 2015, MaxLinear touted its acquisition of Original Entropic and the MoCA
17  patents without disclosing encumbrances on those patents.

18  117.   That MaxLinear knew that its representations were false, or at least
19  lacked reasonable grounds for believing them true, is further evidenced by
20  MaxLinear's transfer of the Asserted Patents to Entropic.

21  118.   As discussed above, Section 5.1.2 of the MoCA IPR Policy requires that
22  "any agreement for transferring or assigning Essential Patent Claims include a
23  provision that such transfer or assignment is subject to existing licenses and
24  obligations to license imposed on the Alliance Party by this Agreement and the
25  Alliance Bylaws."  MaxLinear not only failed to include such a provision, but also
26  represented that the Asserted Patents were not encumbered by a RAND obligation.
27  More specifically, MaxLinear warranted that the only known encumbrances on the
28  Asserted Patents were two license agreements unrelated to the MoCA IPR Policy.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

119.    That MaxLinear knew that its representations were false, or at least lacked reasonable grounds for believing them true, is further evidenced by Entropic's failure to offer DISH a license to the Asserted Patents under RAND terms, despite repeated requests by DISH.

120.    DISH reasonably relied on the representations of MoCA participants, such as and including MaxLinear, that such participants in standard setting would honor their commitments under the MoCA IPR Policy when deciding what technologies to utilize in its business.

121.    DISH has been harmed by MaxLinear's fraudulent or negligently-false representations, at least because the significant cost of the instant litigation may have been avoided if Entropic offered DISH a license to the Asserted Patents under RAND terms and conditions.    DISH's reliance on MaxLinear's representations is a substantial factor in causing this harm because, absent a representation to license on RAND terms, DISH may have elected to use different technology.

122.    Due to MaxLinear's fraud and negligent misrepresentations, DISH has suffered damages in the form of costs and expenses associated with litigation and diminution of reputation in the marketplace.    DISH is entitled to recover these damages, as well as any additional relief that may be appropriate or required to address Entropic's and MaxLinear's tortious conduct.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## COUNT VI

### (As Against Counter-Defendants Entropic and MaxLinear)

### FRAUD ARISING FROM A CIVIL CONSPIRACY

123.    DISH incorporates and realleges the allegations set forth in its Counterclaim Paragraphs 1-122 above, as if set forth fully herein.

124.    On information and belief, both Entropic and MaxLinear conspired to commit fraud and negligent misrepresentation to avoid having to license the Asserted Patents on RAND terms in violation of the MoCA IPR Policy.  On information and belief, the purpose of this conspiracy was to launder the Asserted Patents, thus "washing" them of the RAND encumbrances set forth in the MoCA IPR Policy.

125.    As discussed above (paragraphs 111-122), MaxLinear made fraudulent and/or negligently false representations that it would license patents essential to the practice of MoCA standards on RAND terms.

126.    On information and belief, MaxLinear transferred ownership of the Asserted Patents to Entropic to further its fraudulent scheme.  On information and belief, the other aim of the transfer of ownership of the Asserted Patents was to breach the MoCA IPR Policy.

127.    On information and belief, the Conspirators had actual knowledge of the planned tort of inducing breach of contract, fraud, and/or negligent misrepresentation and concurred in the tortious scheme with knowledge of its unlawful purpose.  On information and belief, the Conspirators agreed and intended that breach of contract, fraud, and/or negligent misrepresentation be furthered and/or committed.

128.    The intent of the Conspirators can be inferred by the knowledge each had regarding the nature of the Asserted Patents (for example, MaxLinear's statements in its Annual Reports regarding the patent portfolio it acquired from Original Entropic and Entropic's allegations of infringement arising from the alleged use of MoCA standards); and from the knowledge each had (or should have had) regarding MoCA's IPR policies.  In other words, despite apparently believing that the Asserted Patents

95

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

were essential to the practice of MoCA standards, the Conspirators attempted to "wash" the patents of any RAND obligations by transferring them to Entropic without any indication of the RAND encumbrances.

129.   Additional intent of the Conspirators can be inferred by the financial relationship between them.  By way of example, despite transferring ownership of the Asserted Patents to Entropic, MaxLinear has a significant financial stake in the outcome of Entropic's litigation and licensing efforts.  Yet, rather than pursuing licensing itself, MaxLinear elected to transfer ownership of the Asserted Patents to another entity whose only purpose is to bring lawsuits with at least the purpose of financial gain.  This transfer allowed MaxLinear to avoid the expense of litigation, while burdening DISH with the costs of this lawsuit.

130.   DISH has been harmed by the conspiracy between MaxLinear and Entropic, at least because the significant cost of the instant litigation may have been avoided if Entropic offered DISH a license to the Asserted Patents under RAND terms and conditions.

131.   Due to the conspiracy between Entropic and MaxLinear, DISH has suffered damages in the form of costs and expenses associated with litigation and diminution of reputation in the marketplace.  DISH is entitled to recover these damages, as well as any additional relief that may be appropriate or required to address Entropic's and MaxLinear's tortious conduct.

## COUNT VII

### (As Against Counter-Defendant MaxLinear)

### QUASI-CONTRACT FOR RESTITUTION / UNJUST ENRICHMENT

132.   DISH incorporates and realleges the allegations set forth in its Counterclaim Paragraphs 1-131, above, as if set forth fully herein.

133.   On information and belief, MaxLinear has received significant benefits from its participation in MoCA.  On information and belief, these benefits include

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

(for example) substantial sales of its MoCA-compatible products as well as reputational benefits such as its claim to be a pioneer in the development of MoCA technology.[13]

134.   On information and belief, the benefits received by MaxLinear were at DISH's expense.

135.   For example, as acknowledged by Original Entropic, there existed many possible technologies that could have been adopted at the time MoCA was being developed and pursued.  As Original Entropic acknowledged in its December 31, 2014, Form 10-K SEC filing:

> With regard to Connectivity solutions, some service providers, ODMs and OEMs have adopted, and others may adopt, multimedia content delivery solutions that rely on technologies other than the MoCA standard or may choose to wait for the introduction of products and technologies that serve as a replacement or substitute for, or represent an improvement over, MoCA-based solutions. The alternative technology solutions which compete with MoCA-based solutions include Ethernet, HomePNA, HomePlug AV and Wi-Fi. It is critical to our success that additional service providers, including telecommunications carriers, digital broadcast satellite service providers and cable operators, adopt the MoCA standard for home networking and deploy MoCA solutions to their customers. If the market for MoCA-based solutions does not continue to develop or develops more slowly than we expect, or

---

[13] "MaxLinear to Acquire Entropic, Reaffirms its Fourth Quarter 2014 Guidance and Provides Outlook for the First Quarter 2015," *available at* https://www.maxlinear.com/news/press-releases/2015/maxlinear-to-acquire-entropic,-reaffirms-its-fourth (last visited January 10, 2023).

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1       if we make errors in predicting adoption and deployment rates

2       for these solutions, our revenues may be significantly adversely

3       affected. Our operating results may also be adversely affected

4       by any delays in consumer upgrade to HD services, delays in

5       consumer adoption of OTT services, or if the market for OTT

6       services develops more slowly than we expect.[14]

7       136.   To induce the wide adoption of MoCA standards, including by DISH,

8   MaxLinear and the other MoCA members asserted they would agree to license

9   essential patents on RAND terms.   In reliance on that assurance, DISH made

10  considerable expenditures that enriched MaxLinear to adopt MoCA technology into

11  its business.

12      137.   The benefits MaxLinear received were obtained as a result of its false,

13  misleading and/or mistaken representations and requests. As discussed above

14  (paragraphs 111-122) MaxLinear made false representations, including

15  misrepresenting to the public it would license essential patents on RAND terms.

16      138.   These actions created, at minimum, a quasi-contract that MaxLinear has

17  now breached by retaining the benefits conferred unjustly.   Equity and good

18  conscience accordingly demands that MaxLinear disgorge and provide restitution of

19  any and all monies and profits from MaxLInear's unjust enrichment.

20

21                    **COUNT VIII**

22     **(As Against Counter-Defendants MaxLinear and Entropic)**

23        **COMBINATION IN RESTRAINT OF TRADE**

24      139.   DISH incorporates and realleges the allegations set forth in its

25  Counterclaim Paragraphs 1-138, above, as if set forth fully herein.

26  ───────────────

[14]

27  https://www.sec.gov/Archives/edgar/data/1227930/000122793015000006/entr20141

28  23110-k.htm

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

140. Section 1 of the Sherman Act makes unlawful "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. As the Ninth Circuit has articulated, "[t]o state a claim under Section 1 of the Sherman Act," a plaintiff must plead facts that would prove "(1) a contract, combination or conspiracy amongst two or more persons or distinct business entities; (2) by which the persons intended to harm or restrain trade or commerce among the several states, or with foreign nations; and (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

141. There is a market in the United States for home networking. Home networking devices might consist of, for example, routers or other devices that allow users to connect laptops and phones to the Internet. MoCA standards provide one way that users might connect various devices to the Internet at home through the use of coaxial cables that may already exist in their home.

142. There is also a market in the United States for home television services. Home television services may comprise the delivery of television channels through a wired cable connection to a user's home, through the use of satellites and satellite dishes, or over the Internet.

143. Consumers will pay more for more reliable and faster home networking, and more reliable television service. For example, makers of home networking equipment routinely tout the speed that their devices will allow consumers to use; and home television providers tout the reliability and ease-of-setup for home television services.

144. As discussed above, MaxLinear executed a Patent Purchase Agreement with Entropic that transferred ownership of the Asserted Patents. As also discussed above (*see* paragraphs 124-131) MaxLinear and Entropic entered into this agreement in an attempt to "wash" the Asserted Patents of any obligation to license on RAND terms, despite each's obligation to do so pursuant to the MoCA IPR Policy.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

145.   As courts have explained, when a subsequent purchase of RAND-committed patents attempts to "reject[] FRAND," the patent owner becomes "an unconstrained an unlawful monopolist in violation of the antitrust laws." *HTC Corp. v. IPCom GmbH & Co., KG*, No. CV 08-1897 (RMC), 2010 WL 11719073, at *6 (D.D.C. Nov. 5, 2010).   Accordingly, because (on information and belief), a purpose of the Patent Purchase Agreement was to avoid a RAND obligation, the intent of Entropic and MaxLinear was to engage in monopolistic behavior and unreasonably harm competition in the market for home networking and home television services. More specifically, on information and belief, Entropic and MaxLinear attempted to "wash" the asserted patents of RAND-obligations in order to charge exorbitantly-high licensing fees (such as the $1 billion dollar demand made by Entropic)—thus driving up the cost of home networking and home television services for end users.

146.   Competition in the relevant markets has been injured as a result of Entropic's and MaxLinear's behavior.   By way of example, MaxLinear's and Entropic's behavior forces the providers of home television services to engage in expensive litigation (rather than negotiate a RAND license)—costs that must eventually be passed on to end-users.   Moreover, if Entropic gets its demand for $1 billion, those costs must also be additionally passed on to end-users of home television services, further driving up the costs.   These additional costs reduce or eliminate the potential price benefit to consumer that MoCA based networking provides as compared to competing technologies, such as recent generations of WiFi based products.   Meanwhile, MaxLinear is able to charge a higher rate for its own MoCA compatible products due to the artificial inflation of market prices.

147.   As a direct and proximate result of Entropic's and MaxLinear's unlawful restraint of trade, DISH has been harmed in an amount to be established at trial.   DISH has suffered damages in the form of costs and expenses associated with litigation and diminution of reputation in the marketplace.   DISH is entitled to recover these

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

damages, as well as any additional relief that may be appropriate or required to address Entropic's and MaxLinear's illegal conduct.

## COUNT IX

**(As Against Counter-Defendants MaxLinear and Entropic By Dish California)**
**VIOLATION OF THE CARTWRIGHT ACT**

148.   DISH incorporates and realleges the allegations set forth in its Counterclaim Paragraphs 1-147, above, as if set forth fully herein.

149.   The California Cartwright Act prohibits "trusts," which are defined as combinations of capital, skill, or acts by two or more persons to, inter alia, create or carry out restrictions in trade or commerce. *See* California Bus. & Prof. Code § 16720. This statute is the California counterpart to section 1 of the Sherman Antitrust Act, and California courts have looked to federal law when interpreting the provisions of this act. Thus, like section 1 of the Sherman Act, the Cartwright Act "prohibits combinations in unreasonable restraint of trade." *Marsh v. Anesthesia Servs. Med. Grp., Inc.*, 200 Cal. App. 4th 480, 493 (2011).

150.   As discussed above, there is a market in the United States for both home networking and for home television service.  These markets also exist in California.

151.   Dish California participates in the market for home television service in California.

152.   As discussed above, MaxLinear executed a Patent Purchase Agreement with Entropic that transferred ownership of the Asserted Patents.  As also discussed above (*see* paragraphs 123-131) MaxLinear and Entropic entered into this agreement in an attempt to "wash" the Asserted Patents of any obligation to license on RAND terms, despite each's obligation to do so pursuant to the MoCA IPR Policy.

153.   As courts have explained, when a subsequent purchase of RAND-committed patents attempts to "reject[] FRAND," the patent owner becomes "an unconstrained an unlawful monopolist in violation of the antitrust laws."  *HTC Corp.*

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

*v. IPCom GmbH & Co., KG*, No. CV 08-1897 (RMC), 2010 WL 11719073, at *6 (D.D.C. Nov. 5, 2010).  Accordingly, because (on information and belief), the purpose of the Patent Purchase Agreement was to avoid a RAND obligation, the intent of Entropic and MaxLinear was to engage in monopolistic behavior and unreasonably harm competition in the market for home networking and home television services.  More specifically, on information and belief, Entropic and MaxLinear attempted to "wash" the asserted patents of RAND-obligations in order to charge exorbitantly-high licensing fees (such as the $1 billion dollar demand made by Entropic)—thus driving up the cost of home networking and home television services for end users.

154.   Competition in the relevant markets has been injured as a result of Entropic's and MaxLinear's behavior.  By way of example, MaxLinear's and Entropic's behavior forces the providers of home television services to engage in expensive litigation (rather than negotiate a RAND license)—costs that must eventually be passed on to end-users.  Moreover, if Entropic gets its demand for $1 billion, those costs must also be additionally passed on to end-users of home television services, further driving up the costs.  These additional costs reduce or eliminate the potential price benefit to consumers that MoCA based networking provides as compared to competing technologies, such as recent generations of WiFi based products.  Meanwhile, MaxLinear is able to charge a higher rate for its own MoCA compatible products due to the artificial inflation of market prices.

155.   As a direct and proximate result of Entropic's and MaxLinear's unlawful restraint of trade, Dish California has been harmed in an amount to be established at trial.  Dish California has suffered damages in the form of costs and expenses associated with litigation and diminution of reputation in the marketplace.  Dish California is entitled to recover these damages, as well as any additional relief that may be appropriate or required to address Entropic's and MaxLinear's illegal conduct.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## COUNT X

**(As Against Counter-Defendants MaxLinear and Entropic)**

### PATENT MISUSE

156.   DISH incorporates and realleges the allegations set forth in its Counterclaim Paragraphs 1-155, above, as if set forth fully herein.

157.   The federal Patent Laws make it unlawful for the owner of a patent to attempt to extent the monopoly right granted by a patent beyond its appropriate bounds.  A finding of Patent Misuse renders a patent unenforceable.

158.   MaxLinear and Entropic have engaged in Patent Misuse by, inter alia, attempting to "wash" the Asserted Patents of RAND encumbrances.  As discussed previously, Entropic and MaxLinear devised a scheme to transfer the Asserted Patents from MaxLinear to Entropic without including any indication that the Asserted Patents were encumbered by the RAND obligations imposed by the MoCA IPR Policy.

159.   As a direct and proximate result of Entropic's and MaxLinear's misuse of the Asserted Patents, DISH has been harmed in an amount to be established at trial.  DISH has suffered damages in the form of costs and expenses associated with litigation and diminution of reputation in the marketplace.  DISH is entitled to recover these damages, as well as any additional relief that may be appropriate or required to address Entropic's and MaxLinear's illegal conduct.

## COUNT XI

**(As Against Counter-Defendants MaxLinear and Entropic)**

### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE

160.   DISH incorporates and realleges the allegations set forth in its Counterclaim Paragraphs 1-159 above, as if set forth fully herein.

161.   The California Business & Professions Code, section 17200 et seq. make it unlawful for any person to engage in unfair competition, which includes "any

unlawful, unfair or fraudulent business act or practice." "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. It is not necessary that the predicate law provide for private civil enforcement." *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc*., 178 F. Supp. 2d 1099, 1120 (C.D. Cal. 2001).

162.   As discussed above, Entropic and MaxLinear have engaged in actions made unlawful under at least Section of the Sherman Act, the Cartwright Act, and under the Patent Laws of the United States, by engaging in an assignment of the Asserted Patents in an attempt to "wash" them of RAND encumbrances.

163.   As a direct and proximate result of Entropic's and MaxLinear's unlawful behavior, DISH has been harmed in an amount to be established at trial.  DISH has suffered damages in the form of costs and expenses associated with litigation and diminution of reputation in the marketplace.   DISH is entitled to recover these damages, as well as any additional relief that may be appropriate or required to address Entropic's and MaxLinear's illegal conduct.

## **DEMAND FOR JURY TRIAL**

164.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, DISH demands a trial by jury on all issues so triable.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## PRAYER FOR RELIEF

WHEREFORE, DISH prays that:

A. Entropic take nothing by way of its Complaint and the same be dismissed with prejudice;

B. All damages, costs, expenses, attorneys' fees, or other relief sought by Entropic be denied;

C. Judgment be entered that each asserted claim of Entropic's Asserted Patents is invalid and/or unenforceable;

D. Judgment be entered that each of the asserted Entropic U.S. patents declared by it to be essential to the MoCA Standards is unenforceable;

E. Judgment be entered establishing that DISH is entitled to any necessary license to Entropic's Asserted Patents on RAND terms;

F. Judgment be entered establishing the terms of any necessary RAND license to the Entropic's Asserted Patents;

G. Judgment be entered voiding any assignment of Entropic's Asserted Patents to Entropic;

H. The Court grant injunctive relief and/or specific performance of the MoCA IPR Policy requiring that Entropic make available to DISH a license to the Asserted Patents on RAND terms;

I. Judgment be entered that Entropic has breached its RAND contractual commitment;

J. Judgment be entered that MaxLinear has breached the MoCA IPR Policy;

K. Judgement that Entropic and MaxLinear have engaged in unlawful monopolistic behavior in violation of federal and California anti-trust laws;

L. Judgment that Entropic and MaxLinear have engaged in conduct made unlawful by section 17200 of the California Business & Professional Code;

M. Judgment be entered that DISH has not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly,

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

any valid or enforceable claims of Entropic's Asserted Patents, willfully or otherwise;

N. Judgment be entered awarding DISH damages and pre-judgment and post-judgment interest for Entropic's breaches of its RAND obligations on Entropic's Asserted Patents;

O. Judgment be entered awarding DISH damages and pre-judgment and post-judgment interest for Entropic's and MaxLinear's breaches of its RAND obligations on Entropic's Asserted Patents;

P. Judgment be entered as the Court finds necessary to redress injury to DISH including, but not limited to, disgorgement of ill-gotten monies from Entropic and MaxLinear's for their breaches of RAND obligations;

Q. Judgment be entered for DISH for recovery for Entropic's fraud, negligent misrepresentation, as well as any additional relief that may be appropriate or required to address Entropic's tortious conduct;

R. Judgment be entered for DISH for recovery for MaxLinear's fraud, negligent misrepresentation, as well as any additional relief that may be appropriate or required to address MaxLinear's tortious conduct;

S. Judgment be entered for DISH for Entropic and MaxLinear's conspiracy to commit fraud, as well as any additional relief that may be appropriate to address the conspiracy;

T. Judgment be entered that the Asserted Patents are Unenforceable Against DISH;

U. Judgment be entered finding that this is an exceptional case under 35 U.S.C. § 285;

V. The Court grant DISH all reasonable attorneys' fees, experts' fees, and costs; and

W. The Court grant DISH such further relief as the Court deems proper and just.

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1 | Dated:  January 31, 2024

FISH & RICHARDSON P.C.

2

3 | By: */s/ Oliver J. Richards*

Oliver Richards (SBN 310972)
orichards@fr.com

4 | John-Paul Fryckman (SBN 317591)
fryckman@fr.com

5 | Fish & Richardson P.C.
12860 El Camino Real, Suite 400

6 | San Diego, CA 92130
Tel: (858) 678-5070

7

8 | Christopher S. Marchese (SBN 170239)
marchese@fr.com

9 | Tyler R. Train (SBN 318998)
train@fr.com

10 | 633 West Fifth Street, 26th Floor
Los Angeles, CA 90071

11 | Tel: (213) 533-4240

12

13 | Adam R. Shartzer (*pro hac vice*)
shartzer@fr.com

14 | Ruffin B. Cordell (*pro hac vice*)
cordell@fr.com

15 | Richard A. Sterba (*pro hac vice*)
sterba@fr.com

16 | Ralph A. Phillips (*pro hac vice*)
rphillips@fr.com

17 | shartzer@fr.com
Michael J. Ballanco (*pro hac vice*)

18 | ballanco@fr.com
Taylor C. Burgener (SBN 348769)

19 | burgener@fr.com
FISH & RICHARDSON P.C.

20 | 1000 Maine Ave., SW, Suite 1000
Washington, DC 20024

21 | Tel: (202) 783-5070

22

23 | David M. Barkan (SBN 160825)
barkan@fr.com

24 | FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400

25 | Redwood City, CA 94063
Tel: (650) 839-5070

26

27 | Ashley A. Bolt (*pro hac vice*)

28

DISH'S ANSWER, AFFIRMATIVE AND ADDITIONAL DEFENSES, AND
COUNTERCLAIMS TO COMPLAINT
Case No. 2:23-cv-1043-JWH-KES

bolt@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Aaron P. Pirouznia (*pro hac vice*)
pirouznia@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 292-4073
Fax: (214) 747-2091

Attorneys for DISH Network Corporation;
DISH Network L.L.C.; Dish Network
Service L.L.C., Dish Network California
Service Corp., and DISH Technologies
L.L.C..