1    BITA RAHEBI (CA SBN 209351)
     brahebi@mofo.com
2    ALEX S. YAP (CA SBN 241400)
     ayap@mofo.com
3    ROSE S. LEE (CA SBN 294658)
     roselee@mofo.com
4    MORRISON & FOERSTER LLP
     707 Wilshire Boulevard, Suite 6000
5    Los Angeles, California 90017-3543
     Telephone:   (213) 892-5200
6    Facsimile:   (213) 892-5454

7    [Additional counsel on signature page]
     Attorneys for Counter-Defendants,
8    MAXLINEAR, INC. and MAXLINEAR
     COMMUNICATIONS, LLC
9
                    UNITED STATES DISTRICT COURT
10
          CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION
11

12   ENTROPIC COMMUNICATIONS,           Case No. 2:23-cv-1043-JWH-KES (lead)
     LLC,                               Case No. 2:23-cv-01047-JWH-KES
13
                    Plaintiff,          **REDACTED VERSION OF
14                                       DOCUMENT PROPOSED TO BE
           v.                            FILED UNDER SEAL**
15
     COX COMMUNICATIONS, INC.;          **COUNTER-DEFENDANTS
16   COXCOM, LLC; AND COX               MAXLINEAR, INC. AND
     COMMUNICATIONS CALIFORNIA,         MAXLINEAR COMUNICATIONS,
17   LLC,                               LLC'S NOTICE OF MOTION AND
                                        MOTION TO DISMISS AMENDED
18                  Defendants,         COUNTERCLAIMS BY COX
                                        COMMUNICATIONS, INC.,
19                                      COXCOM, LLC, AND COX
                                        COMMUNICATIONS
20   ───────────────────────────────   CALIFORNIA LLC**
     COX COMMUNICATIONS, INC.;
21   COXCOM, LLC; AND COX               **JURY TRIAL DEMANDED**
     COMMUNICATIONS CALIFORNIA,
22   LLC,                               [Request for Judicial Notice
                                        concurrently filed herewith]
23                  Counter-Claimants,
                                        Action Filed:  Feb. 10, 2023
24         v.                           Counterclaims Filed: Oct. 6, 2023
25   ENTROPIC COMMUNICATIONS,           **Hearing:**
     LLC; MAXLINEAR, INC.; AND          Date:    March 29, 2024
26   MAXLINEAR COMMUNICATIONS           Time:    9:00 a.m.
     LLC,                               Place:   Courtroom 9D, Santa Ana
27                                      Judge:   Hon. John W. Holcomb
                    Counter-Defendants.
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 29, 2024, or as soon thereafter as counsel may be heard, in Courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California, Counter-Defendants MaxLinear, Inc. and MaxLinear Communications, LLC move to dismiss the counterclaims by Cox Communications, Inc. ("Cox Communications"), CoxCom, LLC ("CoxCom"), and Cox Communications California, LLC ("Cox California").

This Motion is based on this Notice of Motion and Motion; on the attached Memorandum of Points and Authorities; on all pleadings, files, and records in this action; on any reply memorandum; on the accompanying Request for Judicial Notice, and on such other argument or evidence that may be presented at the hearing on this Motion.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 16, 2024.


Date: February 6, 2024                    By:  _____*/s/ Bita Rahebi*_____
                                                      Bita Rahebi

                                               *Attorneys for Counter-Defendants*
                                               MAXLINEAR COMMUNICATIONS,
                                               LLC AND MAXLINEAR, INC.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 9

II.    SUMMARY OF THE FACTS ........................................................................ 11

       A.    MaxLinear .......................................................................................... 11

       B.    MoCA and the IPR Policy ................................................................. 11

       C.    Entropic Sues Cox for Infringement ................................................. 12

       D.    Cox Fails to Cure Its Deficient and Unsupported Counterclaims
             Against MaxLinear ............................................................................ 13

III.   LEGAL STANDARD ..................................................................................... 13

       A.    Rule 12(b)(1) ..................................................................................... 13

       B.    Rule 12(b)(6) ..................................................................................... 14

IV.    ARGUMENT .................................................................................................. 15

       A.    The Court Should Dismiss the Amended Counterclaims for
             Lack of Standing and Ripeness Under Rule 12(b)(1) ...................... 15

             1.    CoxCom and Cox California lack standing as affiliates .......... 15

             2.    Cox failed to show it made a proper and compliant
                   request for a license per the IPR Policy ................................. 16

             3.    Cox lacks standing because it does not identify a concrete
                   and particularized injury capable of redress .......................... 18

             4.    The counterclaims remain unripe ........................................... 19

       B.    Cox Fails to Properly Plead a Breach of Contract Claim, Which
             Should Be Dismissed Under Rule 12(b)(6) in the Alternative .......... 20

             1.    Cox fails to allege the fundamentals of breach of contract ...... 21

                   a.    Cox neglects to identify the operative contract in its
                         pleadings .................................................................... 21

                   b.    Cox impermissibly refers to prior pleadings ................ 21

                   c.    Cox fails to satisfy the requirement that contracts
                         be pleaded *in haec verba* or according to legal
                         effect ........................................................................... 22

                   d.    Cox cannot possibly allege the requisite privity of
                         contract or claim it is a third-party beneficiary ............ 22

             2.    Cox fails to allege its performance under any contract ........... 23

             3.    Cox fails to allege breach ........................................................ 24

             4.    Cox fails to allege causation and related damages .................. 26

       C.    Cox Fails to State a Claim for Declaratory Judgment ...................... 27

       D.    Cox Cannot State a Claim for Unjust Enrichment or Quasi-
             Contract ............................................................................................. 28

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS
(continued)

**Page**

1.   No cause of action for unjust enrichment exists in California ...................................................................................... 28

2.   Cox cannot simultaneously plead quasi-contract when it pleads a real contract ............................................................... 28

3.   Cox lacks sufficient allegations to plausibly assert a counterclaim for quasi-contract ................................................. 29

E.   Leave to Amend Would Be Futile ...................................................... 30

V.   CONCLUSION .......................................................................................... 31

4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*12909 Cordary, LLC v. Berri*,
  No. 22-cv-01748, 2023 WL 6785798 (C.D. Cal. Apr. 17, 2023) ..................... 22

*Area 55, Inc. v. Amazon.com, Inc.*,
  No. 11-cv-145, 2011 WL 13101727 (S.D. Cal. July 25, 2011) ........................ 27

*In re Arris Cable Modem Consumer Litig.*,
  No. 17-cv-1834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............................ 29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................. 14, 15, 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 14, 26

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
  94 Cal. App. 4th 151 (2001) ........................................................... 28

*CDF Firefighters v. Maldonado*,
  158 Cal. App. 4th 1226 (2008) ....................................................... 20

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ................................................ 13, 14, 20

*Circle Inn Dev. & Mgmt., Inc. v. Glob. Signal Acquisitions IV LLC*,
  No. 21-cv-2061, 2022 WL 18585986 (C.D. Cal. June 14, 2022) ..................... 24

*Clinton v. Acequia, Inc.*,
  94 F.3d 568 (9th Cir. 1996) ............................................................. 19

*Consol. World Invs., Inc., v. Lido Preferred Ltd.*,
  9 Cal. App. 4th 373 (1992) .............................................................. 23

*Cove Partners, LLC v. XL Specialty Ins. Co.*,
  No. 15-cv-7635, 2016 WL 461918 (C.D. Cal., Feb. 2, 2016) ......................... 27

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ..................................................................... 14

5

*Dicion v. Mann Mortg., LLC*,
  718 Fed. App'x 476 (9th Cir. 2017)................................................................28

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010)............................................................................29

*EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*,
  787 F. App'x 469 (9th Cir. 2019)....................................................................27

*Fishbaugh v. Bulgadarian*,
  No. 20-cv-1135, 2021 WL 3598579 (C.D. Cal. July 8, 2021)...........................22

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012).........................................................................28

*L.A. Lakers, Inc. v. Fed. Ins. Co.*,
  869 F.3d 795 (9th Cir. 2017)............................................................................14

*Leadsinger, Inc. v. BMG Music Publishing*,
  429 F. Supp. 2d 1190 (C.D. Cal. 2005)............................................................27

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................14, 15, 19

*Lyons v. Coxcom, Inc.*,
  718 F. Supp. 2d 1232 (S.D. Cal. 2009) ............................................................30

*McCormick v. US Bank, N.A.*,
  No. 12-cv-433, 2012 WL 12869274 (S.D. Cal. Oct. 30, 2012)........................22

*Mohandas v. Wells Fargo Bank, N.A.*,
  No. 21-cv-3349, 2023 WL 5506004 (C.D. Cal. July 13, 2023).........................28

*Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*,
  319 F. Supp. 2d 1094 (C.D. Cal. 2003)............................................................23

*Nunes v. Ashcroft*,
  375 F.3d 805 (9th Cir. 2004)............................................................................30

*Pargett v. Wal-Mart Stores, Inc.*,
  No. 19-cv-2157, 2020 WL 5028317 (C.D. Cal. Apr. 10, 2020) ........................29

*Portland Police Ass'n v. City of Portland*,
  658 F.2d 1272 (9th Cir. 1981)..........................................................................20

6

*Richardson v. City & Cty. of Honolulu*,
 124 F.3d 1150 (9th Cir. 1997) ................................................................. 19

*San Diego Unified Port Dist. v. Monsanto Co.*,
 309 F. Supp. 3d 854 (S.D. Cal. 2018) ...................................................... 19

*Sherman v. Pepperidge Farm, Inc.*,
 No. 22-cv-1781, 2023 WL 5207458 (C.D. Cal. Apr. 28, 2023) ............... 23

*Simoni v. Am. Media, Inc.*,
 No. 14-cv-573, 2014 WL 12597640 (C.D. Cal. July 22, 2014),
 *aff'd*, 673 F. App'x 782 (9th Cir. 2017) ................................................. 22

*Transamerica Life Ins. Co. v. Ponso*,
 No. 20-cv-3738, 2020 WL 6875181 (C.D. Cal. Nov. 18, 2020)................ 22

*Twaite v. Allstate Ins. Co.*,
 216 Cal. App. 3d 239 (1989), *modified* (Dec. 7, 1989).......................... 22

*United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*,
 145 F. Supp. 3d 932 (C.D. Cal. 2015)....................................................... 27

*US Ecology, Inc. v. California*,
 129 Cal. App. 4th 887 (2005) ................................................................... 26

*Vacek v. U.S. Postal Serv.*,
 447 F.3d 1248 (9th Cir. 2006) ................................................................. 13

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ................................................................. 29

*Warren v. Fox Family Worldwide, Inc.*,
 328 F.3d 1136 (9th Cir. 2003) ................................................................. 18

**Other Authorities**

Fed. R. Civ. P.
 8(a).............................................................................................................. 21
 9(b).............................................................................................................. 29
 12(b)(1)............................................................................................. 13, 15, 30
 12(b)(6)........................................................................................... 10, 14, 20
 12(h)(3)....................................................................................................... 20
 15 ................................................................................................................ 30

7

L.R. 15-2 ...................................................................................................................21

1 Witkin, *Summary 11th Contracts* § 1055 (2023) .................................................30

MaxLinear's Motion to Dismiss Cox's Amended Counterclaims
Case No. 2:23-CV-1047-JWH-KES
sf-5742558

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Cox Communications, CoxCom, and Cox California (collectively, "Cox") sidestepped MaxLinear, Inc. and MaxLinear Communications LLC's (collectively "MaxLinear") prior motion to dismiss by amending their counterclaims.  But the new pleading has the same defects as the original counterclaims.[1]  This confirms what MaxLinear told the Court in its initial motion: amendment is futile.

Cox alleges three claims this time: (1) breach of contract (Count I); (2) quasi-contract/unjust enrichment (Count IV); and (3) a new, but duplicative, declaratory judgment claim (Count II).  All three counterclaims repeat the same basic assertion: that MaxLinear tried to circumvent its obligation to license its patents on reasonable and non-discriminatory ("RAND") terms by transferring them to Entropic.  Cox believes it is entitled to a RAND license for certain patents essential to the practice of standards developed by the Multimedia over Coax Alliance ("MoCA"), pursuant to MoCA's Intellectual Property Rights ("IPR") Policy.  The IPR Policy identifies limited obligations to license and specifies the conditions under which such obligations arise.

As a threshold matter, Cox's Amended Counterclaims should be dismissed for lack of subject matter jurisdiction on four independent grounds.  First, CoxCom and Cox California were never members of MoCA.  They were only *affiliates* of Cox Communications, which was a member.  By the express terms of the IPR Policy and Cox Communications' own Promoter Agreement with MoCA, CoxCom and Cox California possess neither standing to request a license, nor standing to assert any other cause of action arising under the IPR Policy.  (*See* Request for

---

[1] This Motion refers to the paragraphs of Cox's pleading (ECF No. 276) before paragraph 515 as the "Answer" and any thereafter as the "Amended Counterclaims."  By citing to the pleadings in this action, MaxLinear only accepts them as true for purposes of this Motion.

1  Judicial Notice, Exhibit A ("Promoter Agreement"); IPR Policy (Case No. 23-cv-
2  01047, ECF No. 94-1).)

3       Second, all Cox Counterclaimants lack standing to assert counterclaims
4  against MaxLinear because they fail—again—to allege they ***properly*** requested a
5  RAND license from Entropic in the manner prescribed by the IPR Policy.

6       Third, Cox lacks standing because it failed to identify an injury-in-fact
7  capable of redress.  Cox says that MaxLinear should never have assigned its patents
8  to Entropic, and the transaction should be voided.  If true, Cox would not be in a
9  better place.  If it is infringing the patents, as Entropic claims, then it would simply
10  owe damages to a different entity.  Since reversing the transaction does not change
11  the "injury," Cox lacks Article III standing.

12      Fourth, Cox's Amended Counterclaims remain unripe.  In its Answer, Cox
13  denies that the asserted patents are "essential."  (Answer ¶¶ 109, 143, 177, 211,
14  245, 279, 313, 347, 381, 415, 449, 483 (denying each allegation).)  Its Amended
15  Counterclaims for breach of contract and unjust enrichment, by contrast, contend
16  the opposite.  The IPR Policy only applies to patents essential to practicing MoCA
17  standards.  Thus, because no cause of action can accrue until the Court determines
18  the patents' essentiality, Cox's counterclaims remain speculative and contingent.

19      In the alternative, Cox's Amended Counterclaims should be dismissed under
20  Rule 12(b)(6) for basic pleading failures.  Its breach of contract counterclaim ***again
21  fails to clearly identify*** the operative contract(s), ***again fails*** to recite their full
22  terms verbatim, ***again fails*** to plead performance, ***again fails*** to plausibly plead
23  privity, ***again fails*** to identify any document expressly showing it is a third-party
24  beneficiary, and ***again fails*** to plead damages, with its only injury appearing to be
25  that it would prefer to be sued by MaxLinear rather than Entropic.

26

27

28

Cox's rebranded counterclaim of "unjust enrichment/quasi-contract" fails, too.  The existence of a contract forecloses any quasi-contract counterclaim as a matter of law, and Cox's own allegations undercut the plausibility of this claim.

Lastly, Cox adds a counterclaim for declaratory judgment that the transfer of patents from MaxLinear to Entropic is "void."  First, no case or controversy of sufficient immediacy exists when a trier of fact must first determine whether the asserted patents are essential and, thus, whether the IPR Policy even applies.  Second, this counterclaim is entirely duplicative, entitling the Court to dismiss with prejudice.  And third, Cox pleads no facts (even if true) to permit the conclusion that the transfer is voidable, let alone void.

In light of the record that already exists, Cox should not be permitted another bite at the apple.  The Court should dismiss with prejudice Counts I, II, and IV of the Amended Counterclaims.

## II.  SUMMARY OF THE FACTS

### A.  MaxLinear

MaxLinear, Inc. is a leading innovator of radiofrequency, analog, digital, and mixed-signal semiconductor solutions.  Its technological innovations allow people to connect using faster, smarter, and more efficient communications networks.  In 2021, MaxLinear, Inc. and MaxLinear Communications LLC (collectively "MaxLinear") sold a portfolio of patents to plaintiff, Entropic Communications, LLC ("Entropic").  (*See* Case No. 23-cv-01047, ECF No. 1 ("Compl.") ¶ 32-33.)

### B.  MoCA and the IPR Policy

Entropic, Inc. was a founding member of MoCA.  (*See id.* ¶ 38.)  Cox Communications joined MoCA in 2005, six years before MaxLinear joined in 2011.  (Am. Countercls. ¶¶ 534, 552.)  MoCA itself is a non-profit corporation.  (*See* IPR Policy § 1.)  It serves as a standard-setting organization formed to "develop[] and promot[e] specifications for the transport of digital entertainment

11

and information content over in-home coaxial environments" and to "develop a certification process for products implementing the specifications to ensure interoperability between products and manufacturers." (*Id*.)

MoCA adopted an IPR Policy, which "outlines the policy of the Alliance regarding the incorporation and use of certain proprietary materials" in MoCA standards. (*Id*.)  The IPR Policy imposes upon MoCA's members—known as Alliance Parties—and their affiliates a limited obligation to license "Essential Patent Claims." (*Id*. §§ 2, 5.1.1.)  Essential Patent Claims are claims that (1) are necessarily infringed by complying with the technical specifications of an approved MoCA standard and (2) lack commercially reasonable non-infringing alternatives. (*See id*. § 2.)

An Alliance Party need only "offer and attempt to negotiate" a license "upon the written request" of another Alliance Party.  (*Id*. § 5.1.1.)  An Alliance Party's licensing obligation is limited to Essential Patent Claims.  Importantly, an Alliance Party and ***its*** "Affiliates" owe this limited licensing obligation only to other Alliance Parties, ***not*** to their affiliates.  (*Id*. §§ 2, 5.1.1.)

If an Alliance Party leaves MoCA, it may request a license only under those MoCA standards approved before it terminated its membership.  (*Id*. § 7.2.)  A former Alliance Party may not invoke the IPR Policy to request a license to standards approved ***after*** its MoCA membership ended.  (*Id*.)

### C.   Entropic Sues Cox for Infringement

Before initiating this action, Entropic alleges it tried to "engage Cox and/or its agents in good faith licensing discussions regarding Entropic's patent portfolio," including the patents at issue here, prior to filing its Complaint.  (Compl. ¶ 27.) Despite multiple letters, Cox admits it "has not responded" to the "January 2, 2023" letter and further denies receiving the August 9, 2022, and December 23, 2022, communications alleged in Entropic's Complaint.  (Answer ¶ 27.)  In February

2023, Entropic filed this lawsuit because Cox has "take[n] advantage of MoCA without paying appropriate licensing fees for the technology." (Compl. ¶ 4.)

### D.   Cox Fails to Cure Its Deficient and Unsupported Counterclaims Against MaxLinear

After filing its Answer in May 2023 (Case No. 23-cv-01047, ECF No. 48), Cox amended it to add two counterclaims against MaxLinear in October 2023. (*See* Case No. 23-cv-01047, ECF No. 94 (the "FAACC") ¶¶ 550-555, 560-564.) At that time, Cox attached a copy of MoCA's IPR Policy, but Cox neither described nor attached the related agreements to which the IPR Policy referred. Cox alleged that MaxLinear "sought to avoid encumbrances on its patents" under the IPR Policy by transferring MoCA patents to Entropic. (*Id*. ¶ 515.) Cox also alleged that, "to the extent the Asserted Patents contain patent claims essential to the MoCA standard, Cox is entitled to receive an appropriate license on FRAND terms from MaxLinear, and only MaxLinear." (*Id.* ¶ 555.)

On December 22, 2023, MaxLinear moved to dismiss. (ECF No. 235.) MaxLinear pointed out issues with Article III standing and a myriad of other pleading defects. Apparently recognizing that it had no good-faith basis to oppose the motion to dismiss, Cox elected to file Amended Counterclaims. Even with the benefit of extra time and another bite at the apple, Cox continues to lack standing, alleges incognizable claims, and fails to cure many of its fatal pleading failures.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Rule 12(b)(1) allows the dismissal of a counterclaim for lack of subject-matter jurisdiction, which includes standing. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "It is axiomatic that '[f]ederal courts are courts of limited jurisdiction.'" *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994)).  "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be 'ripe' for adjudication." *Chandler*, 598 F.3d at 1121. A court must dismiss an action where the party fails to show injury-in-fact, traceability, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Ripeness similarly enables a court to dispose of a matter that is premature for review, *e.g.*, because the purported injury is too speculative and may never occur.  "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler*, 598 F.3d at 1122.

As the party invoking the federal court's jurisdiction, Cox "bears the burden" of alleging specific facts sufficient to prove its Article III standing.  *Id.*; *see also Lujan*, 504 U.S. at 560-61.  Cox must do so for "each claim" and "each form or relief" that it seeks.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (internal citations and quotations omitted).

### B.      Rule 12(b)(6)

A counterclaim should be dismissed under Rule 12(b)(6) where the counterclaimants fail to assert a "cognizable legal theory" or the counterclaims contain "[in]sufficient facts . . . to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal citation and quotation omitted).  To survive a motion to dismiss, the counterclaim must allege "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must be pleaded with "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted), and that rises "above the speculative level," *Twombly*, 550 U.S. at 555.  A counterclaim must contain "well-pleaded facts" from

which the Court can "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## IV.   ARGUMENT

### A.   The Court Should Dismiss the Amended Counterclaims for Lack of Standing and Ripeness Under Rule 12(b)(1)

Cox's Amended Counterclaims are unripe and lack any plausible injury-in-fact that can be redressed by a favorable decision.  The "irreducible constitutional minimum of standing" requires an injury-in-fact. *Lujan*, 504 U.S. at 560.  "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citation omitted).  Moreover, it must be "'likely'" that "the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted).  "Since the[se] are not mere pleading requirements but rather an indispensable part of the plaintiff's case," a plaintiff must support its alleged injury-in-fact and redressability "in the same way as any other matter on which [it] bears the burden of proof." *Id.*

#### 1.   CoxCom and Cox California lack standing as affiliates

Whereas Cox Communications now pleads that it was once a member of MoCA, neither CoxCom nor Cox California (collectively, the "Cox Affiliates") ever were.  (*See* Am. Countercls. ¶ 552.)  That means they lack standing because the IPR Policy does not provide rights to "Affiliates" of Alliance Party members.  (*See* IPR Policy § 2 (defining "Affiliates" as distinct from "Alliance Party(ies)").)  Thus, the Cox Affiliates must be dismissed for lack of standing.

The IPR Policy only confers RAND rights on Alliance Parties, but not their Affiliates.  Section 5.1.1 provides: "upon the written request of any other then-current Alliance Party, each Alliance Party agrees to offer and attempt to negotiate a license to the requesting Alliance Party(ies) . . . such Alliance Party's and its

Affiliates' Essential Patent Claims."  By the plain text, Alliance Parties *alone* enjoy the right to request RAND licenses, not their Affiliates.  And the IPR Policy is clear that there are no licenses unless expressly provided.  (*See* IPR Policy § 5.3.)  Conversely, the IPR Policy imposes obligations on Affiliates: they must give licenses, but they cannot expect to receive them in return.  (*See id*. §§ 2, 5.1.)  Cox Communications' own Promoter Agreement with MoCA clearly articulates why the Cox Affiliates lack standing to assert any right under the IPR Policy:



(Promoter Agreement § 6 (emphasis added).)

As pled, for the Cox Affiliates, there can be no injury-in-fact, and no case or controversy, arising from MaxLinear's transfer of patents to Entropic, where no legal right to a RAND license—or expectation thereof—ever existed.  That fact removes any Article III standing for the Cox Affiliates arising under the IPR Policy.

### 2.   Cox failed to show it made a proper and compliant request for a license per the IPR Policy

In its prior motion, MaxLinear observed that Cox never pleaded that it was unable to license any of the asserted patents or that it even requested a license from Entropic or MaxLinear.  (ECF No. 235 at 15-16.)  Cox again makes no such allegation, save for one sentence: "Plaintiff additionally did not and, despite Cox's prior request in writing, has not, provided or procured any RAND-compliant offer to the relevant patents consistent with the IPR Policy."  (Am. Countercls. ¶ 571.)  That cryptic allegation does not satisfy Cox's pleading obligations.

16

Both the timing and the identities of the requestor and requestee are crucial for standing.  Returning to Section 5.1.1 of the IPR Policy, it states: "following Board of Director approval of an Approved Draft Deliverable and upon the written request of any other **then-current Alliance Party**, each Alliance Party agrees to offer and attempt to negotiate a license to the requesting Alliance Party(ies). . . ." (Emphasis added.)  If, however, an Alliance Party ceases to be a member, then they shall be entitled to request a RAND license under section 5.1.1:

> . . . **but only** to the extent necessary to use, make, have made, offer for sale, sell and import Fully Compliant Products **in conformance with** or as described in **Draft Deliverables or Approved Draft Deliverables** approved by the Board of Directors **prior to such expiration or termination**; and []the terminated Alliance Party **shall no longer be entitled to request or require any Alliance Party to license** such Alliance Party's Essential Patent Claims to the terminated Alliance Party as provided in Sections 5.1 (RAND Licenses) to any extent with regard to Fully Compliant Products in conformance with or as described in **Draft Deliverables or Approved Draft Deliverables approved** by the Board of Directors **after such expiration or termination**.

(IPR Policy § 7.1 (emphasis added).)  In view of the IPR Policy, Cox's allegation quickly unravels for three reasons.

First, it is unclear which Cox entity made the request.  And since the Cox Counterclaimants never say who made the request, they have collectively failed to demonstrate standing on the "face of the pleadings," thus warranting dismissal. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Second, Cox needed to plead which Draft or Approved Deliverables are at issue because, again, timing matters.  (*See* IPR Policy §§ 5.1.1, 7.1.)  It has failed to do so.  And nothing in the IPR Policy protects an Alliance Party member—current or former—from a lawsuit when it neglects to request a license before infringing essential patents.  Quite the contrary; the IPR policy expressly permits the filing of a lawsuit for damages.  (*Id*. § 5.1.1.)

17

1    Third, Cox never pleads that Entropic refused to negotiate a RAND license in

2    good faith or that Entropic flatly denied it a RAND license.  Cox and Entropic's

3    failure to negotiate a RAND license is no indicia of MaxLinear's alleged failings to

4    encumber its patents.

5    Because Cox did not remedy this key infirmity, *i.e.*, its failure to plead that it

6    properly requested a RAND license in the manner required by the IPR Policy, the

7    Court should dismiss for lack of standing, without leave to amend.

8    **3.    Cox lacks standing because it does not identify a concrete
9           and particularized injury capable of redress**

10    In its prior pleading, Cox alleged conclusory injury to its "business or

11    property" has "created additional expenses and uncertainty for Cox" without

12    providing any detail on what those injuries were, or how assigning patents to

13    Entropic caused those injuries.  (FAACC ¶¶ 554, 563.)  Cox failed to cure these

14    deficiencies in the Amended Counterclaims.

15    Cox again does not explain how MaxLinear's patent assignment to Entropic

16    caused it any injury or describe what the injury is in any detail.  (*See* Am.

17    Countercls. ¶ 578.)  Instead, Cox includes the same vague and conclusory

18    allegations that it "has been injured in [its] business or property, and has suffered

19    and will continue to suffer damages" and that the transfer of patents has "created

20    additional expense and uncertainty for Cox and its business."  (*Id*. ¶¶ 578,

21    592.)  But these allegations offer zero facts or details explaining the nature of Cox's

22    purported damages or which "business or property" is at issue.  Nor do they provide

23    any clue as to what expenses Cox may have incurred and for what purpose.

24    Cox speculates that, but for MaxLinear's purported (and unidentified)

25    breach, "this case would not have been filed."  (*Id*. ¶ 573.)  But the pendency of

26    Entropic's litigation against MaxLinear cannot supply the requisite harm for

27    standing.  "Litigation costs are insufficient to establish standing for purposes of

28

Article III." *San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 866 (S.D. Cal. 2018) (costs in defending litigation that "would not have been initiated" absent counter-defendant's action do not provide standing).

This makes particular sense here, where Cox will have to bear the costs of litigation and pay damages regardless of who the proper patent owner is.  If MaxLinear's patent transfer to Entropic is void, as Cox alleges, that would simply mean that MaxLinear is the patent owner.  Cox then would be liable to MaxLinear for any patent infringement, not Entropic—and the purported harm is the same.

Further, Cox lacks standing to enforce the IPR Policy's assignment language provision, as it has not suffered any redressable injury caused by MaxLinear.  The IPR Policy provides that RAND obligations attach to Essential Patent Claims, even if the assignment is silent on the obligations.  (IPR Policy § 5.1.2 ("[T]he licensing obligations under this IPR Policy are intended to be binding (e.g., as encumbrances) on all successors-in-interest regardless of whether such provisions are included.").)  Cox has therefore not suffered, nor can it allege, any cognizable injury caused by MaxLinear.

Because Cox has not articulated a "concrete" and "particularized" injury, the Court should dismiss its Amended Counterclaims for lack of Article III standing.  *Lujan*, 504 U.S. at 561.

### 4.     The counterclaims remain unripe

Cox again runs into trouble with regards to ripeness.  The pivotal concern for ripeness is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Richardson v. City & Cty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (internal quotation and citation omitted).  Where a dispute hangs on "future contingencies that may or may not occur," *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996), it is too

1   "impermissibly speculative" to present a justiciable controversy.  *Portland Police*

2   *Ass'n v. City of Portland*, 658 F.2d 1272, 1273-74 (9th Cir. 1981).

3          To the extent that Cox can allege an injury at all, it stems from speculative

4   future contingencies that may never come to pass, *e.g.*, what the RAND terms will

5   be, whether Cox infringes, and whether the jury will award any royalty on non-

6   RAND terms.  Even before that, the Court must first determine whether the asserted

7   patents are essential to MoCA—which Entropic alleges, but Cox denies.  (*Compare*

8   Compl. ¶¶ 109, 143, 177, 211, 245, 279, 313, 347, 381, 415, 449, 483 *with* Answer

9   ¶¶ 109, 143, 177, 211, 245, 279, 313, 347, 381, 415, 449, 483 (denying each

10  allegation).)  If deemed essential, then Cox must first seek and then pay for the

11  appropriate RAND license.  (*See* IPR Policy § 5.1.1 (applicable only to Essential

12  Patent Claims).)  If deemed otherwise, then the IPR Policy does not apply, and Cox

13  is left without any basis to sue MaxLinear.  Without a finding one way or another,

14  Cox's Amended Counterclaims remain entirely unripe for adjudication.

15         Having failed twice to articulate Article III standing and ripeness, the Court

16  must dismiss the Amended Counterclaims against MaxLinear.  *See Chandler*, 598

17  F.3d at 1123.  Without a legal wrong, Cox has no basis to invoke the Court's

18  jurisdiction.  Leave to amend here is also inappropriate, as subject matter

19  jurisdiction must be maintained throughout litigation.  *See* Fed. R. Civ. P. 12(h)(3).

20  The Court must dismiss Cox's lawsuit in full for lack of standing.

21         **B.    Cox Fails to Properly Plead a Breach of Contract Claim, Which**
22                 **Should Be Dismissed Under Rule 12(b)(6) in the Alternative**

23         A cause of action for breach of contract requires proof of the following

24  elements: (1) existence of the contract; (2) plaintiff's performance or excuse for

25  nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of

26  the breach.  *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

27  Cox's first counterclaim fails to plead all required elements.

28

1.    **Cox fails to allege the fundamentals of breach of contract**

     a.    **Cox neglects to identify the operative contract in its pleadings**

Cox fails to plead the essential elements of a contract claim, beginning with the identification of the operative contract (or contracts).  Throughout its pleading, Cox casually refers to MaxLinear's "contractual commitments" and "obligations" to MoCA.  (*See* Am. Countercls. ¶¶ 515, 544, 561-62, 570, 576-77, 584-85.)  While Cox clearly invokes its right to sue based on one Cox entity's membership in MoCA and the IPR Policy, it also alludes to MaxLinear's 2011 "Associate Agreement" and a "Membership Agreement" and MoCA's "bylaws."  (*Id.* ¶¶ 539, 546.)  Due to Cox's imprecision, it remains unclear to what extent Cox believes MaxLinear is in breach of contractual obligations beyond the IPR Policy.  To satisfy Rule 8, Cox needs to clearly identify and plead all of the contracts at issue. *See* Fed. R. Civ. P. 8(a).  This should come as no surprise to Cox; MaxLinear specifically raised this in its earlier dismissal motion.  Lack of adequate notice, again, warrants dismissal.

     b.    **Cox impermissibly refers to prior pleadings**

Cox introduces new pleading errors in its Amended Counterclaims.  "Every amended pleading . . . ***shall be complete*** including exhibits.  The amended pleading ***shall not*** refer to the prior, superseded pleading."  L.R. 15-2 (emphasis added).  Cox violates this basic pleading rule in two ways.  First, the Counterclaims refer back to exhibits from prior pleadings.  (*See* Am. Countercls. ¶¶ 538-39, 541, 547-49, 560, 565, 581 (referring to Exhibits A and B to the FAACC).)  Second, Cox invokes documents allegedly produced in discovery but not attached to the pleadings.  (*See id.* ¶ 538 n.10.)  Cox clearly knows how to file exhibits.  The Court should not permit Cox to circumvent the Local Rules.

**c.   Cox fails to satisfy the requirement that contracts be pleaded *in haec verba* or according to legal effect**

Cox again failed to attach the agreements for the Court.  MaxLinear reminded Cox of the law in November, and filed a detailed motion in December explaining the legal requirements.  (ECF No. 235.)

To show the existence of a contract, "a party may plead a written contract 'either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect.'" *12909 Cordary, LLC v. Berri*, 2023 WL 6785798, at *3 (C.D. Cal. Apr. 17, 2023) (Holcomb, J.); *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252, (1989), *modified* (Dec. 7, 1989) (explaining that a breach claim must articulate contract terms "either *in haec verba* or according to legal effect").

Cox once again chose not to attach the MoCA Bylaws and other "Applicable Agreements" referenced in Sections 2 and 5.1.2 of the IPR Policy.  Absent those documents, Cox's counterclaim is woefully incomplete and merits dismissal.  *See Fishbaugh v. Bulgadarian*, 2021 WL 3598579, at *4 (C.D. Cal. July 8, 2021) (Holcomb, J.) (dismissing breach counterclaim where counterclaimant neither "attach[ed] the alleged contract nor fully plead[ed] its terms").

**d.   Cox cannot possibly allege the requisite privity of contract or claim it is a third-party beneficiary**

At a minimum, at this stage, the Cox Affiliates can be dismissed based on the record before the court.  Only parties to a contract "have rights or liabilities under the contract." *McCormick v. US Bank, N.A.*, 2012 WL 12869274, at *4 (S.D. Cal. Oct. 30, 2012).  A "cause of action for breach of contract requires privity of contract between the plaintiff and the defendant." *Simoni v. Am. Media, Inc.*, 2014 WL 12597640, at *3 (C.D. Cal. July 22, 2014), *aff'd*, 673 F. App'x 782 (9th Cir. 2017).  One exception to this rule pertains to third-party beneficiaries.  *See Transamerica Life Ins. Co. v. Ponso*, 2020 WL 6875181, at *3 (C.D. Cal. Nov. 18,

22

2020).  Under California law, "a contract must be made expressly for the benefit of a third party for that party to enforce the contract as a third-party beneficiary." *Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1094, 1100 (C.D. Cal. 2003).  "The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit third person appears from the terms of the [c]ontract." *Ponso*, 2020 WL 6875181, at *4 (internal quotation and citation omitted).  The "terms of the contract must demonstrate the ***express intent*** to confer the benefit." *Sherman v. Pepperidge Farm, Inc.*, 2023 WL 5207458, at *4 (C.D. Cal. Apr. 28, 2023) (Holcomb, J.) (emphasis modified).  The Cox Affiliates were never members of MoCA and thus have no colorable breach of contract counterclaim in the first place.

### 2.     Cox fails to allege its performance under any contract

"It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance." *Consol. World Invs., Inc., v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992). As discussed at length in Part IV.A.1, *supra*, Cox failed to plead sufficient facts to show that it made a "written request" compliant with the IPR Policy.  (*See* IPR Policy § 5.1.1.)  Not only is Cox required to plead it made a written request, but it also must plead that it needs this license for "Fully Compliant Products" that conform with Approved Draft Deliverables.  (*Id.*)  As a former MoCA member, Cox is entitled only to a license under Draft Deliverables or Approved Draft Deliverables approved *prior* to Cox's termination.  (*See id.* § 7.1.  ("[T]he terminated Alliance Party shall no longer be entitled to request or require" RAND licenses "to *any* extent with regard to Fully Compliant Products in conformance with or as described in Draft Deliverables or Approved Draft Deliverables approved by the Board of Directors *after such expiration or termination*.") (emphasis added).)  Cox does not allege any of its products are "Fully Compliant Products" or

identify any "Approved Draft Deliverable" with which its products conform—let alone one that was approved prior to its termination from MoCA.  Thus, Cox also failed to plead factual allegations sufficient to satisfy the element of performance.

### 3.  Cox fails to allege breach

Cox attempts to plead the third element of breach by throwing everything in the kitchen sink.  None of it sticks.  To start, Cox says MaxLinear "attempt[ed] to circumvent its obligations" to offer RAND licenses, to maintain the "authority" to grant those licenses, and to "own any necessary patents" simply by selling its patents to Entropic.  (Am. Countercls. ¶ 576(a)-(d).)  That allegation makes no sense.  The IPR Policy expressly contemplates the ability of Alliance Party members, like MaxLinear, to transfer its patents to third parties.  (*See* IPR Policy § 5.1.2.)  And it provides wide latitude on the manner in which the transferring party complies with Section 5.1.2:

> **5.1.2 Transfer of Essential Patent Claims**. Any sale, assignment or other transfer by an Alliance Party or its Affiliates to an unaffiliated third party of an Essential Patent Claim, or any patent or patent application that reasonably may contain or result in an Essential Patent Claim, shall be subject to the terms in this IPR Policy. An Alliance Party may choose the manner in which it complies with this Section 5.1.2, provided that any agreement for transferring or assigning Essential Patent Claims, or any patent or patent application that reasonably may contain or result in an Essential Patent Claim, includes a provision that such transfer or assignment is subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws.

Thus, "if the defendant did what it was expressly given the right to do, there can be no breach." *Circle Inn Dev. & Mgmt., Inc. v. Glob. Signal Acquisitions IV LLC*, 2022 WL 18585986, at *4 (C.D. Cal. June 14, 2022) (Holcomb, J.) (dismissing implausible breach of contract claim without leave to amend) (internal quotation and citation omitted).  This allegation, too, is facially implausible.

1    Next, Cox says MaxLinear "improperly assigned" the patents "free of any

2  encumbrances, including those created by the IPR Policy" because "[n]othing in the

3  Patent Purchase Agreement complies with the IPR Policy anti-circumvention and

4  assignment provisions."  (Am. Countercls. ¶¶ 576(e), 558.)  Not so.

5    The Court should find the allegation implausible on its face as it is

6  contradicted by another one of Cox's allegations.  Curiously, in the very same

7  pleading, Cox states, "MaxLinear publicly noted its membership in MoCA, . . . and,

8  in the course of negotiating the lengthy and complex Patent Purchase Agreement,

9  ***Plaintiff learned of and was informed of the MoCA standards***."  (*Id.* ¶ 561

10  (emphasis added).)  The Court should not accept Cox's facially implausible legal

11  conclusion of breach.

12    And Cox knows full well this allegation is implausible.  It takes great pains

13  to characterize a "secret" Patent Purchase Agreement, but then does not attach it to

14  its Amended Counterclaims.  MaxLinear submits it for the Court's consideration.

15  (*See* Request for Judicial Notice, Exhibit B ("PPA").)  ████████████████

16  ██████████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████

21  ████████████████████████████████  (*Id.*, Ex. I.)

22    Additionally, Cox wrongly asserts that the IPR Policy requires MaxLinear to

23  "retain the right to grant any licenses for essential patents."  (Am. Countercls.

24  ¶¶ 550, 576.)  Were this the case, MaxLinear—or any MoCA member—could

25  never assign the full rights of Essential Patent Claims to a third party.  This is

26  facially absurd and unfounded and flies in the face of an express provision allowing

27  transfer.  (*See* IPR Policy § 5.1.2.)

28

1  Lastly, Cox accuses MaxLinear of delivering confidential information to

2  Entropic related to MoCA standards.  (*See* Am. Countercls. ¶¶ 569, 576(g).)  That

3  allegation, too, remains inadequately pleaded.  Cox does not allege that it possesses

4  the right—as a non-MoCA member—to enforce the confidentiality obligations on

5  behalf of MoCA.  Nor does it claim that it contributed to this specific document.

6  This failure to allege contribution is highlighted by Cox's omission of allegations

7  that Cox complied with Section 7.3 of the IPR Policy, which requires that within 20

8  business days after the termination of a membership, the former Alliance Party

9  identify in writing, "with reasonable specificity," any such confidential information.

10 ████████████████████████████████████████████████████████

11 ██████████████████████████████████████████████████

12 ████████████████████ (*See* Promoter Agreement § 5.5 ████████████

13 ███████████████████████████████████████████████████████

14 ███████████████████████████████████ Cox does not plead when

15 MoCA originally disclosed the confidential information ████████████████

16 ████████████████████████████████████

17  Cox fails to scrounge up a single factual allegation to support its conclusory

18  accusation that MaxLinear actually breached any particular confidentiality

19  obligation, rendering it far short of a claim under *Twombly* or *Iqbal*.

20  **4.  Cox fails to allege causation and related damages**

21  "Causation of damages in contract cases, as in tort cases, requires that the

22  damages be proximately caused by the defendant's breach, and that their causal

23  occurrence be at least reasonably certain."  *US Ecology, Inc. v. California*, 129 Cal.

24  App. 4th 887, 909 (2005) (internal quotation and citation omitted).  As discussed

25  above, Cox has failed to plead sufficient allegations to show injury or how

26  MaxLinear would have caused such injury.  Cox avers that it is entitled to a

27  license—but only from MaxLinear and not from Entropic.  This allegation does not

28

support Cox's damages claims because (1) the IPR Policy itself provides that assignments are valid, and (2) Cox has not pleaded any facts to show that Entropic seeks remedies other than those that MaxLinear could equally assert, had it kept its patents.  Accordingly, Cox fails to plead causation and damages for a second time. Its counterclaim should be dismissed without leave to amend.

### C.    Cox Fails to State a Claim for Declaratory Judgment

For declaratory relief, "the actual controversy between the parties must relate to a claim upon which relief can be granted."  *Leadsinger, Inc. v. BMG Music Publishing*, 429 F. Supp. 2d 1190, 1193 (C.D. Cal. 2005).  "[A] federal court may decline to address a claim for declaratory relief where the substantive claims would resolve the issues raised by the declaratory action." *See Cove Partners, LLC v. XL Specialty Ins. Co.*, 2016 WL 461918, at *12 (C.D. Cal., Feb. 2, 2016) (citation omitted).

Here, Cox's request for declaratory relief depends entirely on the same facts and issues as its breach of contract counterclaim.  Because that claim is deficient, and the declaratory judgment claim is nothing more than a duplication of the breach claim, the Court should dismiss Cox's declaratory relief request with prejudice.  *See Area 55, Inc. v. Amazon.com, Inc.*, 2011 WL 13101727, at *3 (S.D. Cal. July 25, 2011) (dismissing declaratory judgment counterclaim where "no valid breach of contract claim ha[d] been stated"); *EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*, 787 F. App'x 469, 471 (9th Cir. 2019) (affirming dismissal of declaratory judgment claim where dismissal of breach of contract claims meant there was no actual controversy); *United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015) (dismissing with prejudice declaratory relief claim as "merely duplicative recitations of [plaintiffs'] breach of contract claim").

Cox's declaratory relief request, at least as to the Cox Affiliates, also fails for

27

lack of standing.  As noted in Parts IV.A.1 and IV.B.1.d above, the Cox Affiliates
were never MoCA members and are not intended beneficiaries under the IPR Policy
or the Promoter Agreement.  *See Dicion v. Mann Mortg., LLC*, 718 Fed. App'x 476,
478 (9th Cir. 2017) ("[T]hird parties do not have enforceable contract rights unless
they are intended third party beneficiaries.") (internal quotation and citation
omitted).  Because Cox's declaratory relief counterclaim falsely assumes that it has
rights under the IPR Policy, it should be dismissed.

### D. Cox Cannot State a Claim for Unjust Enrichment or Quasi-Contract

#### 1. No cause of action for unjust enrichment exists in California

Cox amended its unjust enrichment counterclaim to add the phrase "quasi-contract" to its caption, but that cosmetic changes did nothing to salvage the claim.

#### 2. Cox cannot simultaneously plead quasi-contract when it pleads a real contract

"[A]s a matter of law, a quasi-contract action for unjust enrichment does not
lie where, as here, express binding agreements exist and define the parties' right."
*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151,
172 (2001).  Because Cox insists that a binding contract exists, the quasi-contract
claim cannot stand, even on the pleadings.  *See Mohandas v. Wells Fargo Bank,
N.A.*, 2023 WL 5506004, at *18 (C.D. Cal. July 13, 2023) (plaintiffs cannot plead
both breach of an enforceable contract and unjust enrichment without denying
existence of enforceable contract); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th
1342, 1389-90 (2012) (same).  This doctrine requires the Court to dismiss with
prejudice as a matter of law.

### 3.  Cox lacks sufficient allegations to plausibly assert a counterclaim for quasi-contract

Cox broadly asserts that MaxLinear benefited from Cox's participation in MoCA.  (*See* Am. Countercls. ¶¶ 588-90.)  Those allegations do not state a claim for quasi-contract for three reasons.

First, allegations that MaxLinear benefited from MoCA (*e.g.*, learning of draft MoCA specifications), or that MoCA benefited from Cox's "interaction" with it (*e.g.*, payment of dues), do not entitle Cox to seek relief from MaxLinear.  "'A person who, incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution.'"  *Aetna*, 94 Cal. App. 4th at 174 (internal citation omitted).  On its very face, Cox has not stated a claim.

Second, to state this counterclaim, Cox must allege MaxLinear "has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Pargett v. Wal-Mart Stores, Inc.*, 2020 WL 5028317, at *6 (C.D. Cal. Apr. 10, 2020).  Cox says MaxLinear made "false and misleading representations" that it would retain rights to grant licenses on certain patents.  (*See* Am. Countercls. ¶ 589.)  Because those allegations "sound in fraud," Cox must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see also In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *10 (N.D. Cal. Jan. 4, 2018) (dismissing quasi-contract claim for failure to satisfy Rule 9(b)).  Cox falls well short of Rule 9(b)'s heightened standard because it never precisely identifies **which** statements were false or misleading, **how** they could be false or misleading (especially when the IPR Policy permits patent sales), or **when** they occurred.  *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Third, Cox cannot sue for quasi-contract without alleging that it ***directly*** conferred a benefit to MaxLinear.  *See* 1 Witkin, *Summary 11th Contracts* § 1055 (2023) (collecting cases).  Here, however, Cox only alleges it conferred benefits to MoCA, *e.g.*, devoting "monetary and personnel resources ***to MoCA***" and making "investments ***in MoCA***."  (Am. Countercls. ¶ 592 (emphasis added).)  Since the benefits accrued to MoCA, Cox's quasi-contract counterclaim is untenable.

### E.   Leave to Amend Would Be Futile

The Court should dismiss Cox's Amended Counterclaims for lack of standing.  *See* Fed. R. Civ. P. 12(b)(1).

The Ninth Circuit instructs courts to consider five factors when considering whether to allow leave to amend under Rule 15: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) the futility of amendment, and (5) whether the plaintiff has previously amended his or her complaint.  *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).  "Futility alone can justify the denial of a motion for leave to amend."  *Id*.  Amendment was demonstrably futile and will be again.

Cox is no *pro se* plaintiff.  It knew how to state a claim for breach of contract and how to identify a faulty one.  *See, e.g.*, *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1239 (S.D. Cal. 2009) (where Cox successfully moved to dismiss an insufficiently pleaded breach of contract claim).  It was involved in MoCA across three decades.  Its original failure to plead breach of contract from the get-go suggested it could not.  Having already amended once, its renewed failure to plead that very same counterclaim, after multiple meet-and-confers, and a prior motion on the same point, ***confirms*** that it cannot.  *See Nunes*, 375 F.3d at 808.

Worse, this latest amendment reveals Cox's bad-faith motivations.  Cox refuses to attach to its complaint the very agreements it is referencing.  That reticence is revealing.  Cox knows that it will not survive the pleading stage if forced to plead the contracts.  Cox has amended its pleadings ***twice already*** and

30

1  does not deserve to saddle MaxLinear with even more briefing and discovery costs.

2  Dismissal without leave to amend is strongly warranted here.

3  **V.     CONCLUSION**

4          The Court should dismiss with prejudice the Amended Counterclaims.

5  MaxLinear has patiently outlined the deficiencies for months.  Cox has not been

6  able to address these fatal defects, despite multiple opportunities to do so.

7

8  Dated: February 6, 2023                    MORRISON & FOERSTER LLP

9

10                                            By: */s/ Bita Rahebi*
                                                  Bita Rahebi

11                                            BITA RAHEBI (CA SBN 209351)
                                              brahebi@mofo.com
12                                            ALEX S. YAP (CA SBN 241400)
                                              ayap@mofo.com
13                                            ROSE S. LEE (CA SBN 294658)
                                              roselee@mofo.com
14                                            MORRISON & FOERSTER LLP
                                              707 Wilshire Boulevard, Suite 6000
15                                            Los Angeles, California  90017-3543
                                              Telephone:    (213) 892-5200
16                                            Facsimile:    (213) 892-5454

17                                            RICHARD S.J. HUNG (CA SBN 197425)
18                                            rhung@mofo.com
                                              MORRISON & FOERSTER LLP
19                                            425 Market Street,
                                              San Francisco, California 94105-2482
20                                            Palo Alto, California  94304-1018
                                              Telephone:    (415) 268-7000
21                                            Facsimile:    (415) 268-7522

22                                            *Attorneys for Counter-Defendants*
                                              MAXLINEAR, INC. and
23                                            MAXLINEAR COMMUNIATONS LLC

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief contains 6997 words, which complies with the word limit of L.R. 11-6.1

Dated:        February 6, 2024                    By: _/s/ Bita Rahebi_
                                                                      Bita Rahebi