1   Christina N. Goodrich (SBN 261722)
    Christina.goodrich@klgates.com
2   Cassidy T. Young (SBN 342891)
    Cassidy.young@klgates.com
3   K&L Gates LLP
    10100 Santa Monica Boulevard
4   Eighth Floor
    Los Angeles, California 90067
5   Telephone: +1 310 552 5000
    Facsimile: +1 310 552 5001
6
7   [*Additional counsel on signature page*]

8   **Attorneys for Plaintiff Entropic Communications, LLC**

9               **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:23-cv-1043-JWH-KES (Lead Case) |
| Plaintiff, | Case No. 2:23-cv-1047-JWH-KES (Related Case) |
| v. | Case No. 2:23-cv-1048-JWH-KES (Related Case) |
| DISH NETWORK CORPORATION, *et al.*, | Case No. 2:23-cv-5253-JWH-KES (Related Case) |
| Defendants. | **ENTROPIC COMMUNICATIONS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF CASSIDY T. YOUNG IN SUPPORT THEREOF; [PROPOSED] ORDER** |
| ENTROPIC COMMUNICATIONS, LLC, | |
| Plaintiff, | |
| v. | Hearing Date:    March 29, 2024 |
| COX COMMUNICATIONS, INC., *et al.*, | Hearing Time:    9:00 a.m. |
| Defendants. | Courtroom:       9D (Santa Ana) |

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

1

2  ENTROPIC COMMUNICATIONS, LLC,

3                                     Plaintiff,

4          v.

5  COMCAST, *et al.*,

6                                     Defendants.

7

8

9  ENTROPIC COMMUNICATIONS, LLC,

10

11                                    Plaintiff,

12         v.

13  DIRECTV, LLC, *et al.*,

14                                    Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 29, 2024, or as soon thereafter as this matter may be heard, in Courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California 92701, Entropic Communications, LLC ("Entropic") will, and hereby does, move the Court for an Order dismissing Cox Communications, Inc., CoxCom LLC, and Cox Communications California, LLC's (collectively, "Cox") Amended Counterclaims against Entropic in their entirety and with prejudice. This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that Cox's Amended Counterclaims fail to state a claim upon which relief can be granted.

Specifically, Cox alleges that Entropic tortiously interfered with the contractual obligations of third party MaxLinear, but Cox's allegations do not plausibly show that MaxLinear's conduct actually breached the agreement, that Cox suffered a cognizable harm as a result of the alleged breach, or that Entropic performed intentional acts designed to induce MaxLinear's conduct. Cox further seeks a declaratory judgment that the patent assignments from MaxLinear to Entropic are void, but Cox alleges no plausible reason why the patent assignments violate MaxLinear's contractual obligations, nor any other legal basis for voiding the assignments.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 that took place on January 30, 2024. The Parties thoroughly discussed the substance and potential resolution of the filed Motion.

The Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the attached Declaration of Cassidy Young, the complete Court files and records in this action, and all matters that may be properly considered

1

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

by the Court at the hearing on this Motion.

Dated: February 6, 2024

**K&L GATES LLP**

By: */s/ Cassidy T. Young*
Christina Goodrich (SBN 261722)
Cassidy T. Young (SBN 342891)
K&L Gates, LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001
christina.goodrich@klgates.com
cassidy.young@klgates.com

James A. Shimota (*pro hac vice*)
70 W. Madison Street, Ste 3300
Chicago, Illinois 60602
Telephone: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com

Peter E. Soskin
4 Embarcadero Center, Ste 1200
San Francisco, CA 94111
Telephone: (415) 882-8220
peter.soskin@klgates.com

***Attorneys for Plaintiff, Entropic Communications, LLC***

2

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................... 2

II.     FACTUAL BACKGROUND ................................................................. 3

III.    LEGAL STANDARD .......................................................................... 5

IV.     ARGUMENT ........................................................................................ 5

    A.      Cox fails to state a claim that Entropic tortiously interfered with the MoCA IPR Policy. ................................................................... 5

        1.      Cox fails to state a claim for tortious interference based on MaxLinear's assignment of the Asserted Patents to Entropic ..... 6

        2.      Cox fails to state a claim for tortious interference based on alleged disclosure of confidential information. ......................... 14

    B.      Cox fails to allege a factual or legal basis for voiding the assignment of the Asserted Patents. .......................................................... 19

V.      CONCLUSION ................................................................................... 20

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................ 6

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................ 5

*Cheng v. AIM Sports, Inc.,*
2011 WL 13176754 (C.D. Cal. May 19, 2011)................................. 19

*Copeland v. Baskin Robbins USA,*
117 Cal.Rptr.2d 875 (2002)................................................... 9, 10

*Datatreasury Corp. v. Wells Fargo & Co.,*
522 F.3d 1368 (Fed. Cir. 2008) ............................................... 19

*Datatreasury Corp. v. Wells Fargo & Co.,*
552 F.3d 1368 (Fed. Cir. 2008) ............................................... 12

*Exergen Corp. v. Wal-Mart Stores, Inc.,*
575 F.3d 1312 (Fed. Cir. 2009) ............................................... 17

*First Nat. Bank v. Continental Illinois Nat. Bank,*
933 F.2d 466 (7th Cir. 1991).................................................. 13

*Ford Motor Credit Co. v. Hunsberger,*
163 Cal.App.4th 1526 (2008)................................................. 16

*Fortinet, Inc. v. Forescout Techs., Inc.,*
2021 WL 5565836 (N.D. Cal. Nov. 29, 2021)................................. 18

*Honey Bum, LLC v. Fashion Nova, Inc.,*
63 F.4th 813 (9th Cir. 2023).................................................. 18

*Ileto v. Glock Inc.,*
349 F.3d 1191 (9th Cir. 2003)................................................... 3

4

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

*Innovus Prime, LLC v. Panasonic Corp.*,

    2013 WL 3354390 (N.D. Cal. Jul. 2, 2013) ........................................... 13, 19, 20

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

    521 F.3d 1097 (9th Cir. 2008) ........................................................................ 5

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,

    165 F.3d 891 (Fed. Cir. 1998) .................................................................. 8, 16

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,

    795 F.3d 1124 (9th Cir. 2015) .................................................................. 5, 7

*Nestle USA, Inc. v. Best Foods LLC*,

    562 F. Supp. 3d 626 (C.D. Cal. 2021) ........................................................ 17

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,

    50 Cal.3d 1118 (1990) .................................................................................. 8

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,

    521 F. Supp. 3d 929 (S.D. Cal. 2021) ........................................................ 17

*United Mine Workers of Am. v. Gibbs*,

    383 U.S. 715 (1966) .................................................................................. 18

*United States v. Ritchie*,

    342 F.3d 903 (9th Cir. 2003) .................................................................... 15

*W. Mining Council v. Watt*,

    643 F.2d 618 (9th Cir. 1981) ...................................................................... 5

**Statutes**

28 U.S.C. § 1332 ........................................................................................ 18

28 U.S.C. § 1338(a) .................................................................................... 18

28 U.S.C. § 1367(a) .................................................................................... 18

Cal. Civ. Proc. Code § 1021 ...................................................................... 16

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 3, 5

Fed. R. Civ. P.  8 ...................................................................................... 6

Fed. R. Civ. P. 9(b) ................................................................................. 17

6

ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX
DEFENDANTS' AMENDED COUNTERCLAIMS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Cox's tortious interference claim fails on numerous grounds. First, Cox fails to plead that it has suffered a cognizable harm.[1] The only meaningful "harm" Cox identifies is its need to defend itself in this case, but nothing in the contract at issue gave Cox any right or expectation to be free of infringement suits—nor is defending a suit brought in good faith a legally cognizable harm. Second, Cox fails to plead an actual breach of the contract. Despite taking a shotgun approach and alleging *seven* distinct breaches by MaxLinear, Cox still does not plausibly allege any conduct by MaxLinear that actually violates its contractual obligations.

The contract at issue is a common creature of standards organizations. These agreements provide the right to receive a license (as opposed to being enjoined) in exchange for a FRAND (fair, reasonable, and non-discriminatory) fee. The MoCA IPR Policy does not provide a free license; it does not permit Cox to infringe without paying; and it does not provide Cox any freedom or immunity from lawsuits for such infringement. Cox does not plead otherwise because it cannot. The only contractual right plausibly pled is one Cox chose to never exercise—to *request* a FRAND license. Cox never wanted to pay for its use of the intellectual property at issue, and thus never asked for a license (despite Entropic affirmatively reaching out). The result is the present patent infringement suit. Cox fails to plead that anything in the IPR Policy or any other contract makes it immune from suit. Indeed, the IPR Policy facially contemplates that patent owners can indeed enforce their rights through litigation. Cox didn't want a license and cannot turn the IPR Policy inside-out to claim that it has been denied any rights.

---

[1] The following terms are used herein: Plaintiff Entropic Communications, LLC ("Entropic"); Cox Communications, Inc., CoxCom LLC, and Cox Communications California, LLC's (collectively, "Cox"); MaxLinear Communications LLC and MaxLinear, Inc. (collectively, "MaxLinear"); Multimedia over Coax Alliance ("MoCA"); twelve patents asserted by Entropic against Cox ("Asserted Patents").

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

Cox's new declaratory judgment counterclaim fares no better. Cox asks this Court for a declaratory judgment that the patent assignments of the Asserted Patents from MaxLinear to Entropic are void. But this claim fails as a matter of law because there is no legal basis that could entitle Cox to such relief. The only theories suggested by the Amended Counterclaims are contrary to established law.

Cox's Amended Counterclaims are—as before—nothing more than an improper (and strained) effort to inject non-party MaxLinear into this patent litigation—a party who otherwise would not be subject to this Court's jurisdiction.[2] But Cox's clear desire for MaxLinear to participate as a party in this litigation does not provide a legal basis for their claims. The Court should dismiss the counterclaims with prejudice.

## II.     FACTUAL BACKGROUND[3]

Entropic filed a Complaint against Cox for infringement of 12 patents related to MoCA technology. *See* 23-cv-1047, DE 1 ¶ 5. MoCA technology enables in-home networking. *See id.* ¶¶ 34–48. Cox filed an answer and later sought leave to amend its answer to assert counterclaims. *See* 23-cv-1047, DE 94. Entropic and MaxLinear moved to dismiss those counterclaims, after which Cox filed an amended set of counterclaims. *See* 23-cv-1043, DE 276 ("Amended Counterclaims"). This Motion challenges Counts II and III of the Amended Counterclaims, which are asserted against Entropic. Count II asks the Court for a declaratory judgment voiding the assignment of the Asserted Patents from MaxLinear to Entropic, and Count III

---

[2] Cox's claims against MaxLinear do not present a federal question, and Cox's allegations confirm there is not diversity between the parties. *See* 1043 DE 266-1 ¶¶ 518–20, 522, 524.

[3] For purposes of this Motion only, and consistent with the standard described in Rule 12(b)(6) of the Federal Rules of Civil Procedure, Entropic has assumed the truth of all well-pleaded allegations in Cox's counterclaims. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) ("We must take 'all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff'"). Entropic reserves the right to dispute all factual allegations and legal conclusions recited in the counterclaims.

3

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

alleges that Entropic tortiously interfered with MaxLinear's contractual obligations under the MoCA Alliance's IPR Policy. *See* 1043 DE 266-1 ¶¶ 580–86.

The MoCA Alliance is an organization that produces standards for in-home networking technology. *See* 1043 DE 266-1 ¶ 532. To encourage industry participants to adopt the MoCA standard, the MoCA Alliance issued the IPR Policy. *See* 23-cv-1047, DE 94-1 ("IPR Policy"). The policy requires members to license to each other the claims of patents that are essential to practicing the MoCA standard ("Essential Patent Claims"), under terms that are fair, reasonable, and non-discriminatory ("FRAND"). IPR Policy § 5.1.1.

Importantly, the IPR Policy is not a license and does not purport to be, nor does Cox plead such. The IPR Policy is a framework for handling the IP rights relevant to the standard. Any actual license must be negotiated as a separate instrument. *See id.* ("each Alliance Party agrees to offer and attempt to negotiate a license . . . under the terms of a separate written agreement"). Furthermore, the MoCA IPR Policy grants Alliance Parties the right to request a FRAND license. *See id.* ("upon the written request of any other then-current Alliance Party"). The rights-holder is then obligated to offer a license on FRAND terms. *Id.*

If no license is achieved, because the prospective licensee fails to request a license (or rejects the FRAND license offer), the IPR Policy expressly provides that a party may seek damages for infringement of an Essential Patent Claim. *See id.* ("Such waiver of injunctive relief shall not prohibit the waiving Alliance Party from seeking or receiving damages in connection with such infringement."). There is no plausible view of the IPR Policy as authorizing infringement or providing any party freedom from an infringement suit. The opposite is contemplated by the Policy.

MaxLinear joined MoCA around August 2011, signing a MoCA Associate Agreement. *See* 1043 DE 266-1 ¶¶ 534–35. MaxLinear assigned the Asserted Patents to Entropic on March 31, 2021. *Id.* ¶ 560. Cox alleges that these assignments

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

constituted a breach of the IPR Policy by MaxLinear and are therefore void. *See id.* ¶ 576, 580–82. Cox further alleges that MaxLinear breached confidentiality obligations by disclosing confidential MoCA documents to Entropic. *See id.* ¶ 546, 569–70, 581. Finally, Cox alleges that Entropic tortiously interfered with the IPR Policy by inducing MaxLinear's allegedly breaching conduct. *See id.* ¶¶ 583–86. Entropic disputes these allegations.

## III. <u>LEGAL STANDARD</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a complaint where "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Factual allegations must be enough to "raise a right to relief above a speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. While a court generally must accept plaintiff's factual allegations as true, it need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## IV. <u>ARGUMENT</u>

### A. Cox fails to state a claim that Entropic tortiously interfered with the MoCA IPR Policy.

To state a claim for tortious interference with contract, the party asserting the claim must show: "(1) a valid contract between [the party asserting the claim] and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage." *Name.Space, Inc. v. Internet Corp. for*

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

*Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015) (applying California common law on tortious interference) (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008)). At least two of these elements are absent from the amended counterclaim, as described below. This is fatal because while "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), 550 U.S. at 555).

In essence, Cox alleges that Entropic induced MaxLinear to commit various breaches of the IPR Policy. Although Cox alleges seven distinct ways that MaxLinear supposedly breached the policy, these fall into two basic categories: (i) allegations that the assignment of the Asserted Patents from MaxLinear to Entropic was improper; and (ii) allegations that MaxLinear disclosed confidential MoCA documents to Entropic. In both cases, Cox's tortious interference counterclaim fails to meet the pleading standard.

> ### 1. Cox fails to state a claim for tortious interference based on MaxLinear's assignment of the Asserted Patents to Entropic.

Cox alleges that Entropic induced MaxLinear to assign the Asserted Patents over to Entropic and that this transaction violated various terms of the IPR Policy. Specifically, Cox alleges that MaxLinear (a) attempted to circumvent an alleged obligation to license essential patent claims on FRAND terms; (b) ceased to own the Asserted Patents; (c) gave up its authority to grant licenses to the Asserted Patents; (d) transferred the Asserted Patents so as to circumvent its licensing obligations; (e) assigned the Asserted Patents purportedly free of encumbrances; and (f) executed assignment agreements that omit required language. *See* 1043 DE 266-1 ¶ 576. None of these are breaches of the IPR Policy, however, nor has Cox alleged a cognizable

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

injury flowing from this alleged conduct. As a result, Cox has not plausibly stated a claim for tortious interference because there is no underlying breach of contract.

### a. Cox fails to plead that it has suffered a cognizable injury as a result of the patent assignments.

Cox's counterclaim fails because it has pleaded no facts connecting the patent assignments to any legally cognizable harm. To plead a tortious interference claim, a party must plausibly allege "defendant's intentional acts designed to induce breach or disruption of the contract; [] actual breach or disruption; and [] resulting damage." *Name.Space*, 795 F.3d at 1135. Here, aside from vague and barebones allegations that it "has been injured in their business or property, and has suffered and will continue to suffer damages" (1043 DE 266-1 ¶ 586), the only specific harm that Cox pleads is having to defend against this lawsuit. *See* 1043 DE 266-1 ¶ 573 ("Cox has been forced to defend, and incurred significant expense in defending, an action concerning patents that, if Plaintiff's averments are correct, are not owned or ownable by Plaintiff, and as to which Cox was entitled to either an offer and negotiation of a RAND license from MaxLinear or is entitled to request or require a RAND license from MaxLinear."). These allegations cannot state a plausible claim for multiple reasons.

First, Cox does not plead that the IPR Policy grants it a right to be free of actions to enforce the patents or to seek damages. Indeed, the contrary is true. The IPR Policy specifically states that it "shall not prohibit the [signatory] Alliance Party from seeking or receiving damages in connection with [patent] infringement." IPR Policy § 5.1.1. In other words, the IPR Policy specifically permitted MaxLinear to sue Cox for patent infringement and seek damages. *Id*. A claim that Entropic did something its predecessor-in-interest, MaxLinear, was contractually authorized to do cannot be a plausible allegation of "resulting damage" from any alleged breach of the IPR Policy. *See Name.Space*, 795 F.3d at 1135. The alleged injury of defending the

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

infringement lawsuit is not causally connected to any alleged breach.

Second, the litigation privilege means that Entropic's decision to bring this lawsuit cannot be considered a cognizable harm to Cox. Under California law, "[t]he bringing of a colorable claim is not actionable." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1130–31 (1990). Moreover, "a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998).

Indeed, the only conceivable right Cox had with respect to MaxLinear's patents was the right to ask for (and after asking, receive) a FRAND license offer—a right it never invoked before the filing of this suit, even after receiving letters from Entropic offering a license on FRAND terms. *See* Young Decl. Exhibits D–E (pre-suit communications from Entropic to Cox). As previously discussed, the IPR Policy is not itself a license. A patent owner is required to offer and attempt to negotiate a license only "upon the written request of any other then-current Alliance Party." IPR Policy § 5.1.1. Cox alleges in only the barest of terms that "Plaintiff additionally did not and, despite Cox's prior request in writing, has not, provided or procured any RAND-compliant offer." 1043 DE 266-1 ¶ 571. However, Cox does not provide ***any*** details about this alleged writing. Cox does not provide a copy of its request, nor does it identify when or to whom the request was allegedly sent. On the contrary, Entropic has alleged that it initiated good-faith licensing discussions by sending multiple communications to Cox between August 2022 and January 2023. *See* 23-cv-1047, DE 1 ¶ 27. Cox admits it has not responded to any of these communications. *See* 1043 DE 266-1 ¶ 27. Therefore, Cox has not plausibly alleged that it was denied a FRAND license offer or that Entropic made no "attempt to negotiate" such a license—indeed uncontroverted facts show the opposite. *See* IPR Policy § 5.1.1; *see also* Young Decl. Exhibits D–E. Moreover, Cox cannot claim to have suffered a

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

cognizable harm while, by its own admission, it has not availed itself of Entropic's attempts at negotiation. *Copeland v. Baskin Robbins USA*, 117 Cal.Rptr.2d 875, 886 (2002) ("reliance damages are the only form of recovery available in an action on a contract to negotiate an agreement").

Finally, there is no merit to Cox's assertion that it is entitled to receive an appropriate license offer from MaxLinear, and ***only*** MaxLinear. *See* 1043 DE 266-1 ¶¶ 516, 573. As discussed in the next section, there is no language in the IPR Policy that would confer such a right, nor does Cox allege any plausible reason why it would be harmed by having to negotiate with Entropic as opposed to MaxLinear. The policy plainly states that "the licensing obligations under this IPR Policy are intended to be binding (*e.g.*, as encumbrances) on all successors-in-interest regardless of whether such provisions are included." IPR Policy § 5.1.2. Thus, according to the plain language of the IPR Policy, Essential Patent Claims would continue to be subject to FRAND obligations, regardless of whether the patentee is MaxLinear, Entropic, or someone else entirely. This is why Cox can allege no harm in having to take a FRAND license from Entropic instead of MaxLinear. The counterclaim thus fails to state any resulting harm.

### b.   The assignment of the Asserted Patents does not violate any terms of the IPR Policy.

Cox alleges that MaxLinear's transfer of the Asserted Patents to Entropic breached Section 4.1.1 of the IPR Policy, which Cox reads as a wholesale ban on assigning or transferring patents. *See* 1043 DE 266-1 ¶ 576 (alleging MaxLinear "breach[ed] its agreement that it would own any necessary patents"). This reading directly conflicts with, and renders superfluous, other sections of the IPR Policy and therefore is implausible on its face. For starters, the IPR Policy expressly allows for assignments and transfers to third parties. Section 5.1.2 is entitled "**Transfer of Essential Patent Claims**" and states that "[a]ny sale, assignment or other transfer by

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

an Alliance Party or its Affiliates to an unaffiliated third party of an Essential Patent Claim . . . shall be made subject to the terms in this IPR Policy." IPR Policy § 5.1.2. This section even contemplates follow-on transfers by those third parties "with the goal of binding each successor-in-interest." *Id*. What's more, Section 4.1.2, *immediately* following Section 4.1.1, states that an Alliance Party "represents and warrants and agrees that it has not and ***will not*** intentionally transfer or otherwise encumber its patents or patent applications . . . for the purpose of circumventing the obligation to grant licenses contained in this IPR Policy." *Id.* § 4.1.2 (emphasis added). All of this is entirely unnecessary if the Alliance Party is barred from any transfers in the first place.

Read in its proper context in the IPR Policy, it is evident that Section 4.1.1 exists merely to confirm that Alliance Parties (including MaxLinear) are not assigning their patent rights to the MoCA Alliance by virtue of becoming a member or signing the IPR Policy:

> All right, title and interest in and to Alliance Party Intellectual Property shall be owned exclusively by the Alliance Party(ies) who developed the Intellectual Property or by the Alliance Party(ies) to whom the Intellectual Property was properly and legally assigned.

IPR Policy § 4.1.1. Because the IPR Policy is unambiguous in allowing assignment of essential claims to third parties, Cox cannot plausibly allege that MaxLinear "breach[ed] its agreement that it would own any necessary patents." 1043 DE 266-1 ¶ 576.

For the same reasons, Cox also cannot plausibly allege that MaxLinear "breach[ed] its representation, warranty, and covenant that MaxLinear would maintain the power and authority to grant patent licenses as required under the IPR Policy." *Id*. This allegation is directly at odds with IPR Policy provisions allowing

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX
DEFENDANTS' AMENDED COUNTERCLAIMS**

1   assignment to third party successors-in-interest.[4] This is dispositive.

2        Cox attempts to defend the plausibility of its claim by reference to Section

3   4.1.2, but must invent an entirely contrary meaning to the plain language of the

4   Policy. Cox alleges that "under Section 4.1.2, the Alliance Parties promised that each

5   would always maintain the right to grant the required licenses under the IPR Policy."

6   *Id.* ¶ 548. This is a blatant misreading of Section 4.1.2, which states:

7        Alliance Party represents, warrants and covenants . . . that it has the

8        power and authority to bind itself and all of its Affiliates to the

9        obligations contained herein, including without limitation, the

10       obligation to grant patent licenses as set forth in this IPR Policy.

11  There is no promise here that an Alliance Party will ***always*** have such power and

12  authority—only that it ***did*** have such power and authority at the time the policy was

13  executed. Not only does Cox's reading ignore the plain language of the section, it

14  directly conflicts with Section 5.1.2 which allows transfers. Indeed, Cox's reading is

15  not even consistent within Section 4.1.2 itself, which states that an Alliance Party

16  will not "intentionally transfer or otherwise encumber its patents . . . ***for the purpose***

17  ***of circumventing the obligation to grant licenses*** contained in this IPR Policy." IPR

18  Policy § 4.1.2.

19       Nor can Cox plausibly allege that the assignment itself was a breach because,

20  according to Cox, it did not include specific language, or because, again according to

21  Cox, it purported to assign the patents free of encumbrances. *See* 1043 DE 266-1 ¶

22  576 (accusing MaxLinear of "(e) improperly assigning the Asserted Patents free of

23  any encumbrances, including those created by the IPR Policy; [and] (f) executing

24  ---

25  [4] Section 5.1.2 of the IPR Policy states that "any agreement for transferring or
    assigning Essential Patent Claims . . . includes a provision that such transfer or
26  assignment is subject to existing licenses and obligations imposed on the Alliance
    Party by this Agreement" and that "the licensing obligations under this IPR Policy
27  are intended to be binding (*e.g.*, as encumbrances) on all successors-in-interest." The
    reference to "successors-in-interest" confirms that the policy is agnostic as to *who* is
28  granting licenses to essential patent claims, as long as those licenses are on FRAND
    terms.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX
DEFENDANTS' AMENDED COUNTERCLAIMS**



assignment agreements that omit the provisions required by the IPR Policy"). As an initial matter, Cox's allegations are factually (and indisputably) wrong. Section 5.7 of the Patent Purchase Agreement ("PPA") between MaxLinear and Entropic ██████████████████████████████████████████████████████████ ██████████████. *See* Young Decl. Exhibit A ("PPA") § 5.7 (██████████ ████████████████████████████); *see also* PPA at Exhibit I (████████████████████████████████████████). The PPA further states that MaxLinear ████████████████████████████████████████████████████ ███████████████████████████████████████████ PPA § 5.7. ████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.*

As Cox is well aware—*because Entropic produced it to Cox in the companion case*, No. 23-cv-1049—a copy of the MoCA IPR Policy was provided to Entropic in compliance with the PPA. Cox's allegation that the transfer purported to wipe away the IPR Policy is demonstrably false. █████████████████████████ ██████████████████████████████████ *See* PPA § 5.7. The sections referenced by Cox do not purport to transfer the patent without encumbrances; rather they state that ██████████████████████████████████████████████ ████████████████.

But even if the PPA had purported to transfer the patents without encumbrances, as Cox claims, the counterclaim still fails because legal encumbrances, such as the licensing policy of MoCA, "run with the patent." *See Datatreasury Corp. v. Wells Fargo & Co.*, 552 F.3d 1368, 1372 (Fed. Cir. 2008). As explained by the District Court for the Northern District of California:

It is a longstanding principle that an assignee of a patent takes the patent subject to prior licenses. Patent owners cannot transfer an interest

12

greater than what they possess, so assignees take a patent subject to the legal encumbrances thereon. Thus, assignment results in the assignee stepping into the shoes with regard to the rights that the assignor held and not in an expansion of those rights. Assignment transfers assignor's contract rights, leaving them in full force and effect.

*Innovus Prime, LLC v. Panasonic Corp.*, 2013 WL 3354390, at *5 (N.D. Cal. Jul. 2, 2013) (quotes and citations omitted). Moreover, the IPR Policy itself confirms that "the licensing obligations under this IPR Policy are intended to be binding (*e.g.*, as encumbrances) on all successors-in-interest *regardless of whether such provisions are included*." IPR Policy § 5.1.2 (emphasis added). Therefore, Cox cannot plausibly allege that MaxLinear assigned the patents to Entropic in such a way as to negate the FRAND licensing obligations.

Lastly, Cox cannot plausibly allege that MaxLinear breached the IPR Policy by "attempting to circumvent" the policy's licensing obligations. *See* 1043 DE 266-1 ¶ 576 (accusing MaxLinear of "attempting to circumvent its obligation to provide non-exclusive licenses to any patents containing essential patent claims on FRAND terms" and "breaching its promise not to transfer patents so as to circumvent the obligation to grant licenses"). As explained above, MaxLinear could not have circumvented the IPR Policy's FRAND licensing obligations because these obligations automatically run with the patents and are binding on any successor-in-interest to the patents, and the policy is agnostic as to *who* is licensing essential patent claims as long as those licenses are on FRAND terms. *Innovus Prime*, 2013 WL 3354390 at *5. Even if it were possible for MaxLinear to breach by merely *attempting* to circumvent the licensing obligations, there would be no injury because any Essential Patent Claims remain subject to FRAND licensing requirements. *See generally First Nat. Bank v. Continental Illinois Nat. Bank*, 933 F.2d 466, 469 (7th Cir. 1991) (finding no injury where defendant attempted unsuccessfully to breach the

contract).

In any event, the Patent Purchase Agreement between MaxLinear and Entropic

█████████████████████████████████████████████████████████

███████████ *See* PPA § 5.7 ██████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████ ); *see also* PPA at Exhibit I (█████

████████████████████████████ ). Moreover, Entropic is not seeking an injunction in this suit, and Entropic's pre-suit communications to Cox made it clear that Entropic is seeking a license on FRAND terms. *See* Young Decl. Exhibit D ("Entropic is committed to licensing these, and all other patents essential to standards, in accordance with the applicable intellectual property rights policies of relevant standards bodies"); Exhibit E ("Entropic is committed to licensing its patents that cover MoCA technology on reasonable terms, without discrimination among the similarly-situated providers"). Therefore, Cox cannot plausibly allege that MaxLinear attempted to circumvent the FRAND licensing commitments.

For the reasons above, Cox fails to state a claim for tortious interference based on MaxLinear's assignment of the Asserted Patents to Entropic.

## 2. Cox fails to state a claim for tortious interference based on alleged disclosure of confidential information.

Cox further alleges that MaxLinear breached its confidentiality obligations under the IPR Policy and under Cox's and MaxLinear's respective MoCA membership agreements.[5] Specifically, Cox alleges that Entropic tortiously interfered with these confidentiality obligations by inducing MaxLinear to disclose confidential MoCA standards documents to Entropic, which Entropic then used to

---

[5] Cox alleges that it executed a MoCA "promoter member" agreement. *See* 1043 DE 266-1 ¶ 552. Cox further alleges that MaxLinear executed a MoCA "associate" agreement. *See id.* ¶¶ 535, 546. A complete copy of MaxLinear's associate agreement was not produced during discovery. *See id.* ¶ 538, n. 10. However, Cox alleges on information and belief that MaxLinear "agreed to the same or equivalent confidentiality terms" as Cox. *Id.* ¶ 546.

14

1   prepare its infringement contentions in this litigation. *See* 1043 DE 266-1 ¶¶ 546,

2   569–70. Once again, however, Cox does not plausibly allege that it has suffered a

3   cognizable harm as a result of the disclosure. Moreover, Cox does not plausibly

4   allege that Entropic performed intentional acts designed to induce this alleged breach.

### a.    Cox has not plausibly alleged that MaxLinear violated confidentiality obligations.

7   Cox alleges that sometime in 2021 or later, MaxLinear provided Entropic with

8   copies of the confidential MoCA specifications documents, *i.e.* the documents

9   showing the technical requirements of the MoCA standard. *See* 1043 DE 266-1 ¶

10  569. According to Cox, this was a violation of section 5 of the MoCA membership

11  agreements signed by Cox and MaxLinear. *See id.* ¶ 546. However, section 5 of Cox's

12  MoCA membership agreement[6] states in no uncertain terms that ███████████

13  ███████████████████████████████. *See* Young Decl.

14  Exhibit B § 5.5 ████████████████████████████████

15  ████████████████████████████████████████████

16  ████████████████████████  *see also* IPR Policy § 2 (defining

17  "Confidential Information" as having the meaning set forth in the Applicable

18  Agreement, *i.e.* Cox's promoter member agreement).

19  In this case, the specific documents that Cox alleges were improperly disclosed

20  are versions of the MoCA specification that Entropic cited in its infringement

21  contentions. *See* 1043 DE 266-1 ¶ 569. The latest of these is version 2.0, which states

22  that it issued no later than November 21, 2013. *See* Young Decl. Exhibit C at 3. Any

23  confidentiality obligations owed by MaxLinear to the information disclosed in the

---

[6] Cox did not append a copy of its MoCA promoter member agreement to the Amended Counterclaims. However, the Court may consider the document because it forms the basis of Cox's claim that MaxLinear breached the confidentiality obligations. *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.")

15

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

specifications expired well before 2021, when Cox alleges the disclosure to have occurred. Therefore, Cox has not plausibly alleged a breach of the confidentiality provisions.

### b.   Cox has not plausibly alleged that it suffered a cognizable injury.

Cox does not, and cannot, plausibly allege that it has been harmed by the alleged disclosure of the MoCA specifications. First, the alleged information is not Cox's—it belongs to MoCA and its members. *See* 1043 DE 266-1 ¶ 546. By its own admission, Cox is no longer a member of MoCA. *See* 1043 DE 266-1 ¶ 552 (alleging that Cox's MoCA membership ended in July 2022). Therefore, Cox cannot claim to have been harmed by the disclosure of MoCA confidential information generally. *See id.* ¶ 546 ("MoCA and/or any such MoCA members may enforce such obligations of confidentiality directly.").

Second, for the reasons discussed above, the fact that Entropic was able to bring this lawsuit against Cox is not a cognizable injury. This is expressly permitted by the IPR Policy at Section 5.1.1 and more generally by the litigation privilege. *See* IPR Policy § 5.1.1 (stating that the policy "shall not prohibit the Alliance Party from seeking or receiving damages in connection with [patent] infringement"); *see also Mikohn Gaming*, 165 F.3d at 897 ("a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are").[7] In any event, Entropic could just as well have filed this lawsuit *without* accessing the MoCA documents, *i.e.* by filing its

---

[7] Even if the litigation privilege did not bar Cox's claim, the claim should be dismissed because it is an improper effort by Cox to recover attorneys' fees for a tort where such fees are otherwise not recoverable. Under California law, attorneys' fees are recoverable "only when the party entitled to costs has a legal basis . . . grounded in an agreement, statute, or other law, upon which to claim recovery of attorney fees." *Ford Motor Credit Co. v. Hunsberger*, 163 Cal.App.4th 1526, 1530 (2008) (quoting *Santisas v. Goodin*, 17 Cal.4th 599, 606 (1998)); *see also* Cal. Civ. Proc. Code § 1021. Cox cites to no agreement or statute entitling it to recover attorneys' fees for Entropic's alleged tortious interference, and it has therefore failed to allege any cognizable harm.

16

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

complaint and then acquiring the MoCA specifications through discovery. *See generally Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009) ("Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control"). Cox would have to plead that it has somehow been harmed because Entropic obtained the specifications earlier than it otherwise would have, but this is not something Cox can plausibly allege. It is remarkable that Cox is pleading that it is injured because it could not conceal its infringement. It is also not a legally cognizable claim.

### c. Cox has not plausibly alleged intentional acts by Entropic designed to induce MaxLinear's alleged breach.

Cox's tortious interference claim is also deficient because it fails to "indicat[e], beyond conclusory allegations, facts making it plausible that [Entropic] intended to disrupt [Cox]'s relationship with third parties." *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 960 (S.D. Cal. 2021). "To adequately plead the intentional element of a tortious interference claim, a plaintiff must allege that the defendant desired to interfere with the plaintiff's contractual arrangement or that 'the defendant knew that the interference was certain or substantially certain to occur as a result of its action.'" *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 633 (C.D. Cal. 2021) (quoting *Kor. Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003)). In other words, Entropic must have done something intentionally to induce MaxLinear to disclose the MoCA documents, knowing that their disclosure would violate MaxLinear's contractual obligations. This is completely absent from Cox's counterclaim. There is no allegation that Entropic was aware of the confidential nature of the MoCA documents prior to their disclosure; no allegation that Entropic sought their disclosure; and no allegation that Entropic was aware of the terms of the membership agreements forming the basis of this claim.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

1
2
3

      **d.**     **In the alternative, this Court lacks supplemental jurisdiction over the claims related to the disclosure of confidential information.**

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

     Setting aside the sufficiency of Cox's allegations, this Court nonetheless lacks supplemental jurisdiction over the claim because it is not sufficiently related to the patent infringement claims and defenses in this action. *See* 1043 DE 266-1 ¶ 526 (alleging that the Court has supplemental jurisdiction over Cox's counterclaims). A federal district court that possesses original jurisdiction over federal claims may hear other state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[8] 28 U.S.C. § 1367(a). In order for a claim to "form part of the same case or controversy," the claims must "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Where original jurisdiction is conferred by a patent infringement claim under 28 U.S.C. § 1338(a), courts have held that supplemental jurisdiction exists over related state law claims only where those claims "depend[] on the resolution of a substantial question of federal patent law." *Fortinet, Inc. v. Forescout Techs., Inc.*, 2021 WL 5565836, at *18 (N.D. Cal. Nov. 29, 2021) (citing *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 477–78 (Fed. Cir. 1993)).

20
21
22
23
24

     Here, Cox alleges that Entropic tortiously interfered with the IPR Policy by inducing MaxLinear to disclose confidential MoCA documents. 1043 DE 266-1 *See* ¶ 585. Nothing about this claim depends on the resolution of a substantial question of patent law. To the contrary, the only connection between this claim and the underlying patent litigation is Cox's allegation that "Plaintiff obtained copies of the

25
26
27
28

---

[8] Tortious interference is unquestionably a claim that is controlled by state law. *See, e.g.*, *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 824 (9th Cir. 2023) (referring to tortious interference with contract as a "California business tort"). All of the parties in this action are incorporated in Delaware. *See* 1043 DE 266-1 ¶¶ 518–20, 522, 524; *see also* 23-cv-1047, DE 1 ¶ 6. Therefore, diversity jurisdiction is lacking. *See* 28 U.S.C. § 1332.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

otherwise confidential MoCA standards and has relied on those clearly marked confidential material . . . to prepare and bring this suit." *Id.* ¶ 569. But that has no bearing on the substantive patent claims and defenses at issue, *e.g.* infringement, patent validity, *etc*. Thus, exercising supplemental jurisdiction over Cox's counterclaim would be inappropriate here, and the claim should be dismissed for this independent reason. *See Cheng v. AIM Sports, Inc.*, 2011 WL 13176754, at *4–5 (C.D. Cal. May 19, 2011) (dismissing state law counterclaims for lack of jurisdiction where facts necessary to determine whether plaintiff committed tort had "little, if not nothing," to do with facts necessary to determine patent infringement).

> **B.  Cox fails to allege a factual or legal basis for voiding the assignment of the Asserted Patents.**

Cox asks the Court for a declaratory judgment that the assignments of the Asserted Patents from MaxLinear to Entropic are void. 1043 DE 266-1 ¶¶ 580–82. The only alleged basis for voiding the assignments is that they purportedly violate the IPR Policy. *See id.* ¶ 567. As detailed in previous sections of this Motion, Cox alleges that the assignments violate the IPR Policy because they omit language required by the IPR Policy, because they purport to be free of encumbrances, and generally because they would allow the patent owner to circumvent the policy's FRAND licensing obligations. *See id.* ¶ 576. To reiterate, none of these things is an actual breach of the IPR Policy. *Supra* § IV.A.1.a.

It is well-established that an assignment is not void simply because it fails to recite an existing encumbrance, nor does that omission somehow wipe away a prior encumbrance. "[A]n assignee takes a patent subject to the legal encumbrances thereon." *Datatreasury Corp. v. Wells Fargo & Co.*, 522 F.3d 1368, 1372 (Fed. Cir. 2008). "***This occurs whether or not an assignee had notice***." *Innovus Prime, LLC v. Panasonic Corp.*, 2013 WL 3354390, at *5 (N.D. Cal. Jul. 2, 2013) (emphasis added). As such, the assignee "takes title to the patent subject to [existing] licenses,

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

of which he must inform himself as best he can." *Id.* (emphasis added); *see also id.* ("Assignment transfers assignor's contract rights, 'leaving them in full force and effect.'") (quoting *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 60 (3d Cir. 2001)).

Nor can Cox point to any language in the IPR Policy that purports to void third party assignments. On the contrary, section 5.1.2 of the IPR Policy provides that "the licensing obligations under this IPR Policy are intended to be binding (*e.g.*, as encumbrances) on all successors-in-interest regardless of whether such provisions are included." IPR Policy § 5.1.2.

Lastly, Cox's allegations are factually deficient because the Patent Purchase Agreement between MaxLinear and Entropic ███████████████████████████████ ███████████████████████████████████████████. *See* PPA § 5.7 ████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████); *see also* PPA at Exhibit I (███████████████████████████████). Therefore, Cox has pleaded no factual or legal basis for voiding the patent assignments.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Entropic respectfully requests that this Court dismiss Cox's Amended Counterclaims that Entropic tortiously interfered with the MoCA IPR Policy (Count III) and that the patent assignments from MaxLinear to Entropic are void (Count II), with prejudice.

Dated: February 6, 2024

**K&L GATES LLP**

By: */s/ Cassidy T. Young*

Christina Goodrich (SBN 261722)
Cassidy T. Young (SBN 342891)
K&L Gates, LLP
10100 Santa Monica Boulevard,
8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001

20

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

christina.goodrich@klgates.com
cassidy.young@klgates.com

James A. Shimota (*pro hac vice*)
70 W. Madison Street, Ste 3300
Chicago, Illinois 60602
Telephone: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com

Peter E. Soskin
4 Embarcadero Center, Ste 1200
San Francisco, CA 94111
Telephone: (415) 882-8220
peter.soskin@klgates.com

***Attorneys for Plaintiff, Entropic
Communications, LLC***

21

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX
DEFENDANTS' AMENDED COUNTERCLAIMS**

1

## CERTIFICATE OF COMPLIANCE

2     The undersigned, counsel of record for Plaintiff Entropic Communications,

3   LCC, certifies that this brief contains 6,367 words, which complies with the word

4   limit of L.R. 11-6.1.

5

6   Dated: February 6, 2024          **K&L GATES LLP**

7                                    By: */s/ Cassidy T. Young*
                                     Christina Goodrich (SBN 261722)
8                                    Cassidy T. Young (SBN 342891)
                                     K&L Gates, LLP
9                                    10100 Santa Monica Boulevard,
                                     8th Floor
10                                   Los Angeles, CA 90067
                                     Telephone: (310) 552-5000
11                                   Fax: (310) 552-5001
                                     christina.goodrich@klgates.com
12                                   cassidy.young@klgates.com

13                                   James A. Shimota (*pro hac vice*)
                                     70 W. Madison Street, Ste 3300
14                                   Chicago, Illinois 60602
                                     Telephone: (312) 807-4299
15                                   Fax: (312) 827-8000
                                     jim.shimota@klgates.com
16
                                     Peter E. Soskin
17                                   4 Embarcadero Center, Ste 1200
                                     San Francisco, CA 94111
18                                   Telephone: (415) 882-8220
                                     peter.soskin@klgates.com
19
                                     ***Attorneys for Plaintiff, Entropic***
20                                   ***Communications, LLC***

21

22

23

24

25

26

27

28

22

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**