David Frist (admitted *pro hac vice*)
David.Frist@alston.com
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Yuri Mikulka (SBN 185926)
yuri.mikulka@alston.com
Rachel E. K. Lowe (SBN 246361)
rachel.lowe@alston.com
ALSTON & BIRD LLP
333 S. Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

Attorneys for DIRECTV, LLC and AT&T Services, Inc.

(Additional counsel information omitted)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, LLC; AT&T, INC.; AT&T SERVICES, INC.; AND AT&T COMMUNICATIONS, LLC<br><br>Defendants. | **Lead Case No. 2:23-cv-01043-JWH-KES**<br><br>Consolidated with Case Nos.:<br>2:23-CV-01047-JWH-KES<br>2:23-CV-01048-JWH-KES<br>2:23-CV-05253-JWH-KES<br><br>Assigned to Hon. John W. Holcomb<br><br>**DIRECTV'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF ON JOINDER** |

# **TABLE OF CONTENTS**

I. THE FAC DOES NOT ALTER THE ELIGIBILITY ANALYSIS FOR THE '213 PATENT ................................................................................................. 3

    A. *Alice* Step 1: Focus of '213 Patent Claims Is an Abstract Idea ................. 3

    B. *Alice* Step 2: '213 Patent Claims Lack an Inventive Concept ................... 8

II. THE FAC DOES NOT ALTER THE ELIGIBILITY ANALYSIS FOR THE '422 PATENT ............................................................................................... 10

    A. *Alice* Step 1: Focus of '422 Patent Claims Is an Abstract Idea ............... 10

    B. *Alice* Step 2: '422 Patent Claims Lack an Inventive Concept ................. 12

III. CONCLUSION ............................................................................................... 12

This Court asked the parties to address whether the allegations in the First Amended Complaint filed against DIRECTV and AT&T (collectively, "DIRECTV") (Dkt. 168, "FAC") warrants a different outcome as compared to the allegations in the complaint filed against Cox. Rather than address that question, Entropic attempts to introduce new allegedly inventive concepts and new arguments that could have been raised in the original briefing but were not. For example, Entropic's original opposition focused on the purported improvements of a "*Layer 2* peer entity administering and controlling quality of service ('QoS') for data flows, using a highly specific messaging protocol." Opp. at 1.[1] Entropic's Supplement, on the other hand, does not include a *single* reference to "Layer 2." This shift in approach is due to the persuasive arguments made by Cox that the claims of the '213 and '422 Patents do not require a layer 2 messaging protocol. Reply at 4, 7-9. DIRECTV addresses Entropic's new arguments below, but requests that the Court reject Entropic's attempt to add new arguments that could have been raised previously, which are untethered to new allegations in the FAC.[2]

With respect to the new allegations in the FAC, Entropic improperly attempts to read limitations into the claims and introduce conclusory statements regarding what was not conventional. Simply put, there are no allegations in the FAC that warrant re-litigation of the § 101 challenge separate from the positions set forth during the pendency of the Cox Motion. The '213 and '422 Patents are directed to an abstract idea, contain no transformative inventive concepts, and are thus invalid.

**I.      The FAC Does Not Alter the Eligibility Analysis for the '213 Patent**

The '213 claims are directed to simple functions, like sending and receiving data and allocating resources, that are regularly found abstract and patent ineligible.

**A.      *Alice* Step 1: Focus of '213 Patent Claims Is an Abstract Idea**

Entropic's arguments with respect to the '213 Patent are divorced from the claim

---

[1] The Cox Motion and Mem. (Dkt. 64-1) Entropic Opp. (Dkt. 66), and Cox Reply (Dkt. 69), Case No. 2:23-cv-01047 are referred to as the "Cox Motion", "Opp." and "Reply.

[2] To the extent relevant, DIRECTV joins in Cox's Supplemental Brief.

language and thus fail. *See Hawk Tech. Sys. LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) ("The analysis at step one must focus on the claim language.").

**Entropic's claim construction arguments regarding "Network Coordinator" or "NC node" are inconsistent and irrelevant.** Entropic's argument regarding step 1 focuses on the requirement in the preamble that a Network Coordinator, or "NC node," perform the claimed methods. As this Court is aware, in its Opposition to the Cox Motion, Entropic argued that an NC node should be construed as "a node that manages and coordinates QoS of service flows by layer 2 messages among peer nodes of the flows." Opp. at 18. In reply, Cox explained how Entropic's lexicography argument was improper and how, even under the proposed construction, the claims remain directed to an abstract idea. Reply at 7-9. Recognizing its flawed claim construction argument, Entropic now attempts to introduce a new construction for a Network Coordinator, arguing that "an NC node is understood in the art and in the context of the patents as a node that can change based on network conditions and is not pre-defined." Dkt. 309 ("Supp. Br.") at 6 (citing FAC, ¶ 142; '213 Pat., 1:55–62).[3]

Claim 1 and the specification do not limit the NC node to a dynamically assigned node. For example, while the specification does make one reference to the fact that an NC node in the Multimedia over Coax Alliance ("MoCA") standard can be dynamically assigned ('213 Patent, 1:55-62), the specification expressly states that the purported invention could apply to other types of networks, such as "wired networks on 'twisted-pair' wire, or wireless home networks." '213 Patent, 4:8-13. Entropic and the '213 Patent do not state that an NC node in each of those networks would be selected dynamically. Instead, the NC node is any node—assigned dynamically or statically— which can perform the claimed functions. As Entropic stated in its Opposition, "the NC is not a different or unique device—it is just one of the peer nodes, which participates in the network itself, that has been assigned the role of Coordinator." Opp. at 14.

---

[3] Entropic has not actually indicated that it is abandoning its prior construction. Because Entropic's Supplement does not address the original construction, this brief will focus on the new construction offered by Entropic.

Accordingly, Entropic's newly proposed construction is not supported by the intrinsic record. FAC Paragraph 142, cited by Entropic, does not state that an NC node is a term understood in the art as a node that can change based on network conditions. Instead, it merely states that it would be beneficial for devices to determine dynamically which device would serve as the NC node. The FAC does not change the analysis.

Even if the Court accepted Entropic's new construction, Entropic's arguments regarding the alleged importance of a "dynamic point-to-point architecture" are untethered from the claims. The claims are not directed to a method of determining which node should be the NC node, nor do they address a situation where the NC node changes. The alleged "dynamic" nature of an NC node is irrelevant to the question of patentability. Moreover, applying an abstract idea to an NC node does not render the claims any less abstract. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 222 (2014) ("[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment"). Entropic argues that the NC node is "key" because it allocates "time slots", but the claims do not require the NC node allocate "time slots." Supp. Br. at 7-8. The NC node may allocate any resource. The claims are directed to the abstract idea of allocating resources based on received data, not a specific method of allocating a particular resource.

**Entropic's arguments regarding the alleged novelty of the claimed functions in a "point-to-point" network fail.** Entropic alleges that the claimed NC node performs functions that were not performed in prior art point-to-point networks. Supp. Br. at 6. As described in Cox's briefs, the claims focus on sending and receiving data and allocating resources based on that data. The Federal Circuit and other Courts have repeatedly found such claims to be abstract. Cox Motion at 20.[4]

Entropic argues that the claimed functions are directed to a technological solution

---

[4] Entropic's attempts to equate the claims to those in one of the patents addressed in *OpenTV, Inc. v. Netflix Inc.*, 76 F. Supp. 3d 886, 890–92 (N.D. Cal. 2014) fail. Contrary to Entropic's argument, the *OpenTV* court's finding was that claim construction was necessary prior to a ruling on subject matter eligibility. 76 F. Supp. 3d at 891.

that solves a networking problem by "establishing a guaranteed QoS flow." Supp. Br. at 6-7. The claims, however, do not require establishing a guaranteed QoS flow, nor do they describe how to establish such a flow. Instead, claim 1 recites the abstract idea of (1) transmissions of messages including indications of whether resources are available to support a "guaranteed quality of service flow" and (2) "allocate[ing] resources for the guaranteed quality of service flow." *Id*.; *see Apple, Inc. v. Ameranth, Inc.,* 842 F.3d 1229, 1241 (Fed. Cir. 2016) (finding claims abstract where "[t]hey do not claim *a particular way of programming or designing the software* to create menus") (emphasis added). Entropic's citation to *Packet Intel.* fails as the claims in that case provided the required detail missing from the '213 claims. *Packet Intel. LLC v. NetScout Sys.* 965 F.3d 1299, 1309 (Fed. Cir. 2020) (including requirements for "identifying and refining a conversational flow" that solved an existing problem in the art).

Entropic attempts to bolster its argument regarding Step 1 by citing to the FAC, but its allegations are either conclusory or untethered to the claims. Supp Br. at 8-9. *First*, FAC ¶¶154-56 and 161-164 contain conclusory allegations that are insufficient to demonstrate the claims are directed to a technological solution. *See Trinity Info Media, LLC, v. Covalent, Inc.,* 72 F.4th 1355, 1366 (Fed. Cir. 2023). *Second*, Entropic's allegations in the FAC that the claimed invention arises uniquely in point-to-point networks (FAC ¶ 151) or broadband cable networks (FAC ¶ 152) are unsupported by the '213 Patent, which states that the purported invention could apply to other types of networks, such as "wired networks on 'twisted-pair' wire, or wireless home networks" ('213 Patent, 4:8-13). *Third,* the allegations in FAC ¶¶ 138-143 fail to alter the analysis, as the recitation of the history of Entropic's work on the MoCA standard, and the unique context of those networks, are completely untethered from the claims, which do not require a packet-based network, coaxial installations, or a MoCA architecture.

Moreover, regarding the technical solution identified by Entropic, the claims do not require the NC node "determine" if resources are available, nor do the claims specify how a source or egress node would make such a determination. Instead, the claims

merely require transmission of information indicating whether resource is available. '213 Patent, Cl. 1; *Maxell, Ltd. v. VIZIO, Inc.*, 2023 WL 3431898, at *7 (C.D. Cal. Apr. 19, 2023) ("It is well established that transmitting and receiving data is an abstract idea."). The only "determining" that the NC node performs is with respect to the maximum data rate that "would have resulted in a successful request" when an egress or source node indicates that the resources are not available, but claim 1 does not indicate how that "maximum data rate" is determined. '213 Patent, Cl. 1.

Entropic argues that the claims need not describe "how" an alleged invention "solves a technological problem," and that the claims do not need to "recite every detail of how an invention works." Supp. Br. at 8. Entropic's argument misses the point. Step 1 requires determining whether method claims are "directed to a function, instead of 'a particular way of performing that function.'" *DISH Order* at 15 (citing *Affinity Labs of Tex. v. DIRECTV, LLC,*, 838 F.3d 1253, 1258-59 (Fed. Cir. 2016)); *Recognicorp, LLC v. Nintendo Co.,* 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("The inquiry…is whether the claims are directed to 'a specific means or method' for improving technology or… to an abstract end-result."). Contrary to Entropic's argument, the test is not whether claims can be used to solve a technological problem. The test is whether the claims are directed to a specific method or an abstract end-result. *Id.* Here, as described above, there is no disclosure regarding how a node determines whether it has resources available, how an NC node allocates resources, or how it calculates a maximum data rate. The claims are directed to an abstract end-result – not a specific means or method.

Entropic argues that the '213 Patent includes the requisite means or method. Supp. Br. at 8. Entropic argues that "flows that are sensitive to degradation, such as video streams, can be guaranteed bandwidth as compared to flows 'for which there is no required or predictable bandwidth,' such as file transfers." *Id.* This argument is untethered to the claims, which do not distinguish between predictable and unpredictable flows. Entropic conflates the test for enablement with abstraction – the question is not whether the claims *could* be performed by a process in the specification,

but whether the *claims* include the required specificity. *Hawk Tech.*, 60 F.4th at 1357.

Finally, Entropic argues that Cox ignored that the claims allow a determination of whether a network can "support" a guaranteed QoS flow. Supp. Br. at 8-9. Entropic then argues that the "support" is determined by the NC node using "aggregated TPS", "Aggregated PPS", and "capacity" of the source and egress nodes. *Id.* Entropic's argument is divorced from the claims. The NC node *of the claims* does not use these metrics to determine whether to allocate resources. Instead, the claims merely require the NC node allocate resources if it receives information that both the egress and source nodes have available resources. Entropic's argument regarding "support" is irrelevant. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).

**The dependent claims do not alter the § 101 analysis.** In its original Opposition, Entropic did not oppose Cox's argument that claim 1 was representative for purposes of § 101. Opp. at 6. Entropic does so here but fails to explain the basis for its new argument. Regardless, claims 4 through 7 do not change the analysis. Claim 4 merely applies the abstract idea to the context of a coaxial network, and application of an abstract idea to a particular context is insufficient to render a claim non-abstract. *Alice*, 573 U.S. at 222. Claim 5 requires that "cost" be included in the response, but it does not specify that "cost" should be used in any determination. Accordingly, claim 5 is merely directed to the transmission of information. *Maxell*, 2023 WL 3431898, at *7. Claims 6 and 7 require that certain parameters ("peak data rate" and "cost") be used in determining if there are sufficient resources, but the claims fail to explain how to perform that determination or what would indicate insufficient resources. The focus of claims is still the abstract idea of sending and receiving data and allocating resources.

B.      *Alice* **Step 2: '213 Patent Claims Lack an Inventive Concept**

Entropic points to the same FAC allegations discussed with respect to Step 1 to support its arguments regarding inventive concept. For similar reasons to the arguments above, Entropic's allegations do not alter the state of play from the briefing of the Cox Motion. Even treating Entropic's allegations in the FAC as true – which they are not –

1  they fail to demonstrate that the '213 Patent claims contain an inventive concept.

2  *First*, Entropic alleges that the use of the NC node to allocate network resources for guaranteed QoS flows constitutes an inventive concept. This is incorrect. The NC node itself, as Entropic concedes, is a generic network component that is equivalent to any other peer in the network. Opp. at 14 ("the NC is not a different or unique device—it is just one of the peer nodes . . ."). The specification confirms that the NC node could be "implemented on a general-purpose processor." '213 Patent, 38:66-39:6. Using a generic component to perform the abstract steps of a claim is insufficient to transform it into an inventive concept. *Hawk Tech.*, 60 F.4th at 1359. Entropic's citations to FAC Paragraphs 159-163 are irrelevant as they are conclusory allegations on conventionality that are not entitled to any weight. *Trinity Info Media,* 72 F.4th 1355 at 1366.

Entropic's citations to *BASCOM* are unavailing. In *BASCOM*, the improvement was a non-conventional arrangement, placing the filter remote from the end-users, that was explicit in the claims. *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350, 1345 (Fed. Cir. 2016). In contrast, Entropic's alleged inventive concept of performing the claimed solution "without… a dedicated network controller" is absent from claim 1. Supp. Br. at 10. As discussed above, the NC node is not limited to a dynamically assigned node, and, even if it was, the claims do not relate to dynamic assignment, nor adjusting resource allocation in light of dynamic assignment. This alleged inventive concept is untethered from the claims. *Hawk Tech.*, 60 F.4th at 1357.

*Second*, Entropic's alleged inventive concept that the "determination of a maximum data rate that would have resulted in a successful request" when a request is "denied based on bandwidth-related reasons" is similarly insufficient to transform the claim. Entropic's argument is based exclusively on an exemplary embodiment disclosed in the specification, which requires the consideration of certain parameters. *See* Supp. Br. at 10. Entropic does not commit to claiming that the process in the specification is limiting. *Id.* The process identified by Entropic in the specification by which an NC node might permit the creation of a new QoS flow is not claimed and is thus irrelevant.

*Hawk Tech.*, 60 F.4th at 1357. Moreover, it is not referenced in the FAC, which merely alleges that "guaranteeing bandwidth for a particular data type was not a routine or well-known activity in conventional coaxial networks." FAC 164. Finally, even if the claim is limited to the specific implementation in the specification, as previously noted in the Cox Motion, determining a maximum data rate is not inventive. Cox Motion at 6.

Finally, Entropic's FAC changes nothing regarding Cox's preemption arguments. First, Entropic misstates Cox's preemption position, which was that the '213 patent risks monopolizing "the concept of requesting and receiving information from nodes in a network regarding bandwidth available for transmission and, depending on the response, either allocating resources needed for the transmission or transmitting information about the best available data rate." Cox Motion at 22. The performance of this technique by the generic NC node does not preclude preemption concerns.

## II. The FAC Does Not Alter the Eligibility Analysis for the '422 Patent

Entropic attempts to use the FAC to read limitations into the '422 claims that are not there, relies on conclusory assertions about the state of the art, and raises new, untimely abstract idea and alleged inventive concept arguments. DIRECTV should be permitted to join in Cox's Motion, and the '422 Patent should be found invalid.

### A. *Alice* Step 1: Focus of '422 Patent Claims Is an Abstract Idea

The claims of the '422 Patent are directed to the abstract idea of forming an aggregated data traffic list by requesting and receiving information from nodes within a network about scheduled data transmissions. Cox Motion at 11. At a high level, the claims are directed to sending, receiving, and aggregating data. As described in the Cox Motion, the Federal Circuit has repeatedly found similar claims invalid. *Id.*

Entropic's allegations in the FAC regarding point-to-point networks with a dynamically assigned NC do not alter this analysis. Supp. Br. at 12. First, nothing in claim 1 limits the claimed "communication network" to a point-to-point network. The claims merely require communication of information between an NC node and a requesting node, but Entropic admits that the NC node is "not a different or unique

device." Opp. at 14. Second, like with the '213 Patent discussed above, the claim itself does not limit the NC node to a dynamically assigned variable node, nor does the '422 Patent's specification, which is the same as the '213 specification, support such a construction. Even if the NC node must be dynamically assigned, the claims are not directed to that dynamic assignment. Thus, like the '213 Patent, the '422 Patent is not directed to a specific improvement to computer networking, but to an abstract idea.

Contrary to Entropic's argument, the '422 Patent's aggregation is not analogous to the claims in *SRI Int'l, Inc. v. Cisco Sys.*, 930 F.3d 1295, 1301 (Fed. Cir. 2019). The claims in *SRI Int'l* were not directed to merely aggregating data, but required using it to "detect[], by the network monitors, suspicious network activity." Here, the claims of the '422 Patent merely call for the data to be requested by one node, aggregated by the NC node, and the aggregated data be sent to the requesting node. There is no use of this data by the requesting node, nor is there a specific process provided to perform any of the claimed steps, like in *SRI Int'l*. The recitation of a generic NC node performing the aggregation does not establish how to achieve the improvements with reference to any specific components, operations, or combinations of components or operations.

Entropic's argument, citing *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019), that the '422 Patent need not recite how nodes use aggregated lists misses the mark. Contrary to Entropic's assertions, that case concerned dependent claims reciting a specific improvement to a process of detecting systematic errors rather than the "mere desired result of catching previously undetectable systematic errors." *Id.* at 1151. Here, Entropic argues that the alleged improvement is the aggregation of data, but Courts have routinely found that aggregation is an abstract idea. *See Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016); *Two-Way Media, Ltd. v. Comcast Cable Communs., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x 950, 954 (Fed. Cir. 2017). Applying an abstract idea (aggregating data) in a specific context (point-to-point networks), does not render it patent eligible. *ChargePoint,* 920 F.3d at 768.

### B. *Alice* Step 2: '422 Patent Claims Lack an Inventive Concept

Entropic argues that the inventive concept of the '422 Patent is "aggregating, via an NC, the PQoS flows used throughout a point-to-point network." Supp. Br. at 13-14. As a preliminary matter, Entropic did not raise this alleged inventive concept in the Cox briefing. Its argument is a newly submitted theory not permitted by the Court's order.

Regardless, Entropic cannot argue that aggregating PQoS flows is the inventive concept as aggregation is part of the abstract idea. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). It is well-established that "merely reciting an abstract idea performed on a set of generic computer components . . . would not contain an inventive concept." *Hawk Tech.*, 60 F.4th at 1359 (citations and internal quotation marks omitted). The specification confirms that NC node can be "implemented on a general-purpose processor." '422 Patent, 38:22-31. And, as discussed above, Entropic has conceded that the NC node itself is "not a different or unique device." Opp. at 14. Performing the aggregation using an NC node cannot supply the inventive concept.

Entropic argues that use of the NC node allows aggregation to occur without "requiring each node to broadcast requests to all other nodes." Supp. Br. at 14. Claim 1, however, is silent as to how messages transmitted from requesting nodes to the NC node are transmitted. The claims would cover a network where messages from the requesting node to the NC node were also received by other nodes in the network. Regardless, transmission of messages between nodes alone is insufficient to provide an inventive concept as transmission is part of the abstract idea. Entropic's argument that the ordered combination of steps is inventive also fails. There is nothing inventive about the order of (1) receiving a request for data prior to (2) collecting said data and then (3) responding to the request. '422 Patent, Cl. 1. FAC Paragraphs 177-179 do not dictate a different result as the paragraphs do not address the ordered combination of steps.

### III. CONCLUSION

For the foregoing reasons, DIRECTV respectfully requests that the Court permit it to join Cox's Motion to Dismiss and find that the '213 and '422 Patents are invalid.

Dated: February 16, 2024

Respectfully submitted,

*/s/ David S. Frist*
David S. Frist (*pro hac vice*)
david.frist@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777

Theodore Stevenson, III (*pro hac vice*)
ted.stevenson@alston.com
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: 214-922-3400
Facsimile: 214-922-3899

Yuri Mikulka (SBN 185926)
yuri.mikulka@alston.com
Rachel E. K. Lowe (SBN 246361)
rachel.lowe@alston.com
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

***Attorneys for DIRECTV and AT&T***

# CERTIFICATE OF COMPLAINCE

The undersigned, counsel of record for DIRECTV and AT&T, certifies that this brief contains 10 pages of substantive argument, which complies with the page limit set by court order dated January 17, 2024.

Dated: February 16, 2024

*/s/ David S. Frist*
David S. Frist (*pro hac vice*)
david.frist@alston.com
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: 404-881-7000
Facsimile: 404-881-7777

Theodore Stevenson, III (*pro hac vice*)
ted.stevenson@alston.com
**ALSTON & BIRD LLP**
Chase Tower
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: 214-922-3400
Facsimile: 214-922-3899

Yuri Mikulka (SBN 185926)
yuri.mikulka@alston.com
Rachel E. K. Lowe (SBN 246361)
rachel.lowe@alston.com
**ALSTON & BIRD LLP**
333 S. Hope Street, 16th Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100