1   BITA RAHEBI (CA SBN 209351)
    brahebi@mofo.com
2   ALEX S. YAP (CA SBN 241400)
    ayap@mofo.com
3   ROSE S. LEE (CA SBN 294658)
    roselee@mofo.com
4   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
5   Los Angeles, California 90017-3543
    Telephone:  (213) 892-5200
6   Facsimile:   (213) 892-5454

7   [Additional counsel on signature page]

8   Attorneys for Counter-Defendants,
    MAXLINEAR, INC. and MAXLINEAR
9   COMMUNICATIONS LLC

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| 12 ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:23-cv-1043-JWH-KES (Lead Case) |
| 13 | |
| 14           Plaintiff, | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| 15      v. | |
| 16 DISH NETWORK CORPORATION, et al., | **MAXLINEAR, INC. AND MAXLINEAR COMMUNICATIONS LLC'S NOTICE OF MOTION AND MOTION TO DISMISS (1) AMENDED COUNTERCLAIMS BY DISH NETWORK CALIFORNIA SERVICE CORPORATION; AND (2) COUNTERCLAIMS BY DISH NETWORK CORPORATION, DISH NETWORK L.L.C., DISH NETWORK SERVICE L.L.C., AND DISH TECHNOLOGIES, L.L.C.** |
| 17           Defendants. | |
| 18 | |
| 19 DISH NETWORK CORPORATION; DISH NETWORK L.L.C.; DISH NETWORK SERVICE L.L.C.; DISH NETWORK CALIFORNIA SERVICE CORPORATION; AND DISH TECHNOLOGIES, L.L.C., | |
| 20 | |
| 21 | |
| 22 | [*Request for Judicial Notice concurrently filed herewith*] |
| 23           Counter-Claimants, | Judge:  Hon. John W. Holcomb Action Filed:  Feb. 10, 2023 Am. Counterclaims and Counterclaims Filed:  Jan. 31, 2024 |
| 24      v. | |
| 25 ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR, INC.; AND MAXLINEAR COMMUNICATIONS LLC, | |
| 26 | **Hearing:** |
| 27           Counter-Defendants. | Date:     March 29, 2024 Time:     9:00 a.m. Place:    Courtroom 9D, Santa Ana |
| 28 | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 29, 2024, at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California, Counter-Defendants MaxLinear, Inc. and MaxLinear Communications LLC (collectively, "MaxLinear") move to dismiss: (1) the Amended Counterclaims brought by Dish Network California Service Corporation ; and (2) Counterclaims brought by Dish Network Corporation, Dish Network L.L.C., Dish Network Service L.L.C., and DISH Technologies, L.L.C. (all entities collectively, "Dish"). As to the patent misuse claim, MaxLinear moves in the alternative, to strike it.

MaxLinear bases this motion on this notice; the attached memorandum of points and authorities; all pleadings, files, and records in this action; the request for judicial notice filed concurrently herewith and the accompanying declaration of Rose S. Lee; any reply memorandum; and other argument and evidence that the parties may present at the hearing on this motion.  Under Local Rule 7-3, counsel conferred in advance of this motion on February 14, 2024.


Date: February 21, 2024          By:      _/s/ Bita Rahebi_
                                          Bita Rahebi

                                          *Attorney for Counter-Defendants*
                                          MAXLINEAR COMMUNICATIONS LLC
                                          AND MAXLINEAR, INC.

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................... 9

II.   SUMMARY OF THE FACTS ...................................................................... 11

     A.   Entropic Communications, Inc. and MaxLinear .............................. 11

     B.   MoCA and the IPR Policy ............................................................... 11

     C.   Entropic Sues Dish for Infringement ............................................... 12

     D.   Dish Sues MaxLinear ...................................................................... 12

III.   LEGAL STANDARD ................................................................................. 13

     A.   Rule 12(b)(1) .................................................................................. 13

     B.   Rule 12(b)(6) .................................................................................. 13

     C.   Rule 12(f) ....................................................................................... 14

IV.   ARGUMENT ............................................................................................. 14

     A.   The Court Should Dismiss the Pleading for Lack of Standing Under Rule 12(b)(1) ......................................................................... 14

         1.   Dish Affiliates are not intended beneficiaries, and Dish's allegations are insufficient as to Dish Technologies ................ 15

         2.   Dish does not plead it made a compliant request for a license ............................................................................................ 17

         3.   Dish does not identify a concrete and particular injury capable of redress ................................................................. 18

     B.   Count IV: Dish Fails to Plead a Breach of Contract Claim ............... 19

         1.   Dish Does Not Plead the Contract Terms ................................ 19

         2.   Dish failed to plead privity of contract or that the entities are intended beneficiaries ...................................................... 20

         3.   Dish did not adequately allege performance ........................... 21

         4.   Dish fails to allege any breach by MaxLinear ......................... 21

     C.   Count V: Dish Again Fails to Meet the Pleading Standard for Fraud or Negligent Misrepresentation .............................................. 22

     D.   Count VI: Dish Again Fails to Plead a Proper Conspiracy Claim ...... 24

     E.   Count VII: Dish Fails to Plead Quasi-Contract for Restitution / Unjust Enrichment .......................................................................... 25

     F.   Count VIII: Dish's Combination in Restraint of Trade Claim Is Facially Implausible and Fails to State a Claim .............................. 26

     G.   Count IX: Dish's Cartwright Act Claim Fails for the Same Reasons as Its Sherman Act Claim ................................................. 28

     H.   Count X: Patent Misuse Is Not an Independent Cause of Action ...... 28

     I.   Count XI: Dish Does Not Plead a UCL Claim ................................. 29

3

J.       Leave to Amend Would Be Futile ....................................................... 29

V.       CONCLUSION ............................................................................................ 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5   *Allied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
   7 Cal.4th 503 (1994) ................................................................................ 25

6

7   *Am. Ad Mgmt. v. GTE Corp.*,
   92 F.3d 781 (9th Cir. 1996) ...................................................................... 27

8

9   *Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ *passim*

10

11   *Atl. Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990) .................................................................................. 27

12   *B. Braun Med., Inc. v. Abbott Lab'ys*,
   124 F.3d 1419 (Fed. Cir. 1997) ................................................................ 28

13

14   *Cal. Med. Ass'n Inc. v. Aetna U.S. Healthcare of Cal. Inc.*,
   94 Cal. App. 4th 151 (2001) ..................................................................... 25

15

16   *Cal. Motor Transport Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972) .................................................................................. 28

17

18   *Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*,
   No. 09-cv-242, 2010 WL 11519328 (C.D. Cal. Dec. 1, 2010) ................ 28

19

20   *CDF Firefighters v. Maldonado*,
   158 Cal. App. 4th 1226 (2008) ................................................................. 19

21

22   *Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) .................................................................. 13

23

24   *Chavez v. Whirlpool Corp.*,
   93 Cal. App. 4th 363 (2001) ..................................................................... 29

25

26   *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
   236 F.3d 1148 (9th Cir. 2001) .................................................................. 28

27

28   *Consol. World Invs., Inc. v. Lido Preferred Ltd.*,
   9 Cal. App. 4th 373 (1992) ....................................................................... 21

*Copley v. Natera, Inc.*,
  No. 21-cv-8941, 2023 WL 3772023 (N.D. Cal. May 8, 2023) .......................... 26

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ............................................................................. 13

*Dotson v. Europharma, Inc.*,
  No. 20-cv-9651, 2021 WL 4826611 (C.D. Cal. May 27, 2021) ........................ 23

*Ebeid ex rel. United States v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ................................................................. 26

*Ericsson v. D-Link*,
  773 F.3d 1201 (Fed. Cir. 2014) .............................................................. 17

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*,
  510 U.S. 517 (1994) ............................................................................. 14

*Gabor v. Cnty. of Santa Clara Bd. of Supervisors*,
  No. 07-cv-4266, 2008 WL 902407 (N.D. Cal. Mar. 31, 2008) ......................... 23

*Handgards, Inc. v. Ethicon, Inc.*,
  601 F.2d 986 (9th Cir. 1979) ................................................................. 28

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ............................................................... 29

*HTC v. Ericsson*,
  12 F.4th 476 (5th Cir. 2021) ................................................................. 16

*HTC Corp. v. IPCom GmbH & Co.*,
  No. 08-1897, 2010 WL 11719073 (D.D.C. Nov. 5, 2020) ............................... 27

*Hurd v. Boston Sci. Corp.*,
  No. 22-cv-32, 2023 WL 3564741 (C.D. Cal. Apr. 10, 2023) ........................... 23

*Klein v. Chevron U.S.A., Inc.*,
  202 Cal. App. 4th 1342 (2012) ............................................................... 25

*L.A. Lakers, Inc. v. Fed. Ins. Co.*,
  869 F.3d 795 (9th Cir. 2017) ................................................................. 14

6

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................13, 14, 15, 19

*McCormick v. US Bank, N.A.*,
    No. 12-cv-433, 2012 WL 12869274 (S.D. Cal. Oct. 30, 2012) ........................20

*McVicar v. Goodman Glob., Inc.*,
    1 F. Supp. 3d 1044 (C.D. Cal. 2014).................................................................25

*Microsoft v. Motorola*,
    795 F.3d 1024 (9th Cir. 2015) .........................................................................17

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*,
    No. 06-cv-7541, 2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) ..................24, 25

*Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*,
    319 F. Supp. 2d 1094 (C.D. Cal. 2003).............................................................21

*Nunes v. Ashcroft*,
    375 F.3d 805 (9th Cir. 2004) ...........................................................................29

*Pargett v. Wal-Mart Stores, Inc.*,
    No. 19-cv-2157, 2020 WL 5028317 (C.D. Cal. Apr. 10, 2020) .......................26

*Rack Safety Prod., LLC v. Double Backstop, Inc.*,
    No. 21-cv-2110, 2023 WL 3432250 (C.D. Cal. Mar. 9, 2023) ........................20

*Rambus Inc. v. FTC*,
    522 F.3d 456 (D.C. Cir. 2008)..........................................................................28

*Roman v. Vericrest Fin., Inc.*,
    No. 13-cv-1399, 2013 WL 12142960 (C.D. Cal. Dec. 3, 2013) .......................20

*San Diego Unified Port Dist. v. Monsanto Co.*,
    309 F. Supp. 3d 854 (S.D. Cal. 2018) ..............................................................18

*Schreiber Distribut. Co. v. Serv-Well Furniture Co., Inc.*,
    806 F.2d 1393 (9th Cir. 1986)..........................................................................23

*Sherman v. Pepperidge Farm, Inc.*,
    No. 22-cv-1781, 2023 WL 5207458 (C.D. Cal. Apr. 28, 2023) .................15, 21

7

*Simoni v. Am. Media, Inc.*,
   No. 14-cv-573, 2014 WL 12597640 (C.D. Cal. July 22, 2014),
   *aff'd*, 673 F. App'x 782 (9th Cir. 2017) ............................................................. 20

*Smith v. Allstate Ins. Co.*,
   160 F. Supp. 2d 1150 (S.D. Cal. 2001) ............................................................. 23

*Somers v. Apple*,
   729 F.3d 953 (9th Cir 2019) ............................................................................. 27

*Sprewell v. Golden State Warriors*,
   266 F.3d 979, *amended*, 275 F.3d 1187 (9th Cir. 2001) .................................... 14

*Stewart v. Gogo, Inc.*,
   No. 12-cv-5164, 2013 WL 1501484 (N.D. Cal. Apr. 10, 2013) ......................... 28

*Stickrath v. Globalstar, Inc.*,
   No. 07-cv-1941, 2008 WL 2050990 (N.D. Cal. May 13, 2008) ......................... 29

*Stockton Exec. Limousine Charter Serv., Inc. v. Union Pac. R.R.*,
   No. 04-cv-1999, 2006 WL 769623 (E.D. Cal. Mar. 27, 2006) ........................... 16

*Tabletop Media, LLC v. Citizen Sys. of Am. Corp.*,
   No. 16-cv-7140, 2017 WL 10591885 (C.D. Cal. Mar. 3, 2017) ......................... 24

*Transamerica Life Ins. Co. v. Ponso*,
   No. 20-cv-3738, 2020 WL 6875181 (C.D. Cal. Nov. 18, 2020) ......................... 21

*Vizio, Inc. v. Funai Electric Co. Ltd.*,
   No. 09-cv-174, 2010 WL 7762624 (C.D. Cal. Feb. 3, 2010) ............................. 28

**Statutes and Other Authorities**

Fed. R. Civ. Proc.
   Rule 9(b) ....................................................................................... 10, 22, 26
   Rule 12(b)(1) ................................................................................. 9, 13, 14
   Rule 12(b)(6) ....................................................................................... 13
   Rule 12(f) ............................................................................................. 14

## I.     INTRODUCTION

For months, MaxLinear, Inc. and MaxLinear Communications LLC (collectively, "MaxLinear") explained to Dish Network California Service Corporation ("Dish California") that its Counterclaims suffered from fatal flaws, including lack of standing.

This time around, Dish California is joined by the three other Defendants, Dish Network Corporation, Dish Network L.L.C., and Dish Network Service L.L.C. (collectively, "Dish Affiliates"), as well as a new party, Dish Technologies L.L.C. (all entities collectively, "Dish").  But the addition of these parties and the attempt to mask the deficiencies through a combination pleading with vague references to "DISH" are of no help.[1]

Dish's eight counterclaims revolve around a core allegation—that MaxLinear acted with Entropic Communications, LLC ("Entropic") to "launder the Asserted Patents, thus 'washing' them of the RAND encumbrances set forth in the MoCA IPR Policy."  (Am. Countercls. ¶ 124.)  This conclusory allegation is implausible based on the record Dish itself submitted.

As a threshold matter, Dish still lacks standing to bring the counterclaims against MaxLinear.  This alone warrants dismissal under Rule 12(b)(1).

Dish's breach of contract claim (Count IV), in which it again omitted the contract, remains unviable.  The Dish Affiliates are not intended beneficiaries and the EchoStar Promoter Agreement—on which Dish apparently relies—is clear on this.  As for Dish Technologies, the purported former Alliance Party that Dish adds in an attempt to cure defects, Dish does not plead that EchoStar Technologies

---

[1] Rather than file two pleadings (Dish California's Amended Counterclaims and the Dish Affiliates' new Counterclaims), Dish merged its allegations into one, murky pleading.  (ECF No. 316.)  It also added a new party that was not contemplated by the Court's Order.  (*See* ECF No. 271.)

This Motion refers to the paragraphs of Dish's pleading (ECF No. 316) before paragraph 507 of the "Answer" and the paragraphs thereafter as the "Am. Countercls."

1  Corporation (the original signatory) ("EchoStar") and Dish Technologies ███

2  █████████████████████████████████████.  Dish also fails to

3  satisfy the performance requirement, as it does not claim that Dish Technologies

4  conveyed the required written request for a license.  And as to the supposed breach,

5  ***Dish itself alleges that Entropic committed to licensing its patents that cover***

6  ***MoCA technology on reasonable and non-discriminatory terms.*** ████████

7  ████████████████████████████████████████████████████

8  ████████████████  (*See* ECF No. 316-8 at 258.)

9      Dish's fraud and negligent misrepresentation (Count V) and conspiracy

10  (Count VI) claims fall far short of meeting Rule 9(b)'s heightened pleading

11  standard.  Dish fails to specify who made what false statements and when, and

12  whether and how Dish relied on them.  There can be no conspiracy between

13  MaxLinear and Entropic to "wash" patents of RAND obligations when Dish alleges

14  that Entropic committed to RAND licensing.

15      For quasi-contract/unjust enrichment (Count VII), Dish cannot as a matter of

16  law simultaneously allege that MaxLinear breached an enforceable contract and

17  raise a quasi-contract counterclaim denying an enforceable contract exists.  Dish

18  also fails to plead any unjust benefit whatsoever that MaxLinear directly received

19  as a MoCA member from Dish.

20      Dish's antitrust claims (Counts VIII and IX) fail, too.  Again, Dish cannot

21  plausibly allege that MaxLinear conspired with Entropic to "wash" the patents

22  when Dish alleges that Entropic committed to licensing on RAND terms.  Dish also

23  fails to allege any injury, let alone the requisite antitrust injury.

24      Patent misuse (Count X) is an affirmative defense, not an independent cause

25  of action.  Finally, for Dish's California Business & Professions Code, section

26  17200 ("UCL") claim (Count XI), Dish pleads no new allegations beyond those in

27  its antitrust and patent misuse claims.  Like those claims, this claim should be

28  dismissed.

10

1     In sum, Dish's Counterclaims should be seen as what they are:  a litigation

2 tactic to harass MaxLinear.  If any Dish entity truly is a former MoCA Alliance

3 member, it should request to negotiate license terms, actually participate in such

4 discussions ███████████████████████████████, and be done with these

5 wasteful collateral attacks.  The Court should dismiss with prejudice all of Dish's

6 claims against MaxLinear.

7 **II.     SUMMARY OF THE FACTS**

8         **A.     Entropic Communications, Inc. and MaxLinear**

9     MaxLinear, Inc. is a leading innovator of radiofrequency, analog, digital, and

10 mixed-signal semiconductor solutions.  Its technological innovations allow people

11 to connect using faster, smarter, and more efficient communications networks.  In

12 2015, MaxLinear acquired Entropic Communications, Inc.—a different entity than

13 plaintiff, Entropic Communications, LLC.  (ECF No. 1 ("Compl.") ¶ 21.)

14 MaxLinear sold a portfolio of patents to plaintiff, Entropic Communications, LLC,

15 in 2021.  (*See id.* ¶ 22.)

16         **B.     MoCA and the IPR Policy**

17     MoCA is a non-profit corporation.  (*See* IPR Policy[2] § 1.)  It is a standard-

18 setting organization formed to "develop[] and promot[e] specifications for the

19 transport of digital entertainment and information content over in-home coaxial

20 environments."  (*Id.*)  Entropic Communications, Inc. and EchoStar were founding

21 members of MoCA.  (*See* Am. Countercls. ¶ 23.)

22     Dish did not attach the EchoStar Promoter Agreement[3] from which it claims

23 rights.  That Promoter Agreement governs the relationship between MoCA and the

24 Alliance Party, which Dish now alleges is EchoStar's successor-in-interest, Dish

[2] When MaxLinear refers to MoCA's Intellectual Property Rights ("IPR") Policy, it refers to the current version as revised on October 31, 2017.  (Request for Judicial Notice ("RJN"), Ex. A ("IPR Policy").)  MaxLinear's arguments also apply to the 2011 Policy unless otherwise stated.

[3] MaxLinear seeks judicial notice of the EchoStar Promoter Agreement.  (RJN Ex. B ("Promoter Agreement").)

11

1   Technologies.  In it, the Alliance Party agrees ████████████████████████

2   ██████████████████████ (Promoter Agreement § 4.1.)

3         The IPR Policy imposes upon MoCA's members—known as Alliance

4   Parties—and their affiliates a limited obligation to license "Essential Patent

5   Claims."  (IPR Policy §§ 2, 5.1.1.)  Essential Patent Claims are claims that (1) are

6   necessarily infringed by complying with technical specifications of an approved

7   MoCA standard, and (2) lack commercially reasonable non-infringing alternatives.

8   (*Id.* § 2.)

9         An Alliance Party need only "offer and attempt to negotiate" a license to

10  Essential Patent Claims "upon the written request" of another Alliance Party.  (*Id.*

11  § 5.1.1.)  Importantly, an Alliance Party and *its* "Affiliates" owe this limited

12  licensing obligation only to other Alliance Parties, *not* their affiliates.  (*Id.* §§ 2,

13  5.1.1.) ████████████████████████████████████████

14  ████████████████████████████████████ (Promoter

15  Agreement §§ 3.2, 6.)

16        If an Alliance Party leaves MoCA, its entitlement to request an offer for a

17  license is restricted.  A former Alliance Party may only request a license for "Fully

18  Compliant Products" that conform with Draft Deliverables or Approved Draft

19  Deliverables approved *before* it terminated its membership.  (IPR Policy § 7.1.)

20      **C.**    **Entropic Sues Dish for Infringement**

21        Prior to filing its complaint, Entropic stated to Dish that, "***Entropic [is]***

22  ***committed 'to licensing its patents that cover MoCA technology on reasonable***

23  ***terms, without discrimination among similarly-situated providers (often called***

24  ***"RAND terms").'***"  (Am. Countercls. ¶ 52 (emphasis added); ECF No. 316-8 at

25  258.) ████████████████████████ (ECF No. 316-8 at

26  258.)  In February 2023, Entropic initiated suit.

27      **D.**    **Dish Sues MaxLinear**

28        Dish California filed its Counterclaims in September 2023, in which it

12

asserted four counterclaims against MaxLinear.  (ECF No. 111, Counts III–VI.)  On December 22, 2023, MaxLinear moved to dismiss.  (ECF No. 246.)  MaxLinear pointed out deficiencies with the pleading, including lack of standing and omitting Dish's MoCA Agreement.  (*Id.*)  After MaxLinear filed its motion, Dish California backtracked on its proposed briefing schedule and eventually filed the governing pleading on January 31.  (ECF No. 316.)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Rule 12(b)(1) allows the dismissal of a counterclaim for lack of subject-matter jurisdiction, which includes standing.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010).  "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be 'ripe' for adjudication." *Id.* at 1121.  A court must dismiss an action where the party fails to show injury-in-fact, traceability, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler*, 598 F.3d at 1122.

As the party invoking the federal court's jurisdiction, Dish "bears the burden" of alleging specific facts sufficient to prove its Article III standing.  *Id.*; *see also Lujan*, 504 U.S. at 560-61.  Dish must do so for "each claim" and "each form or relief" that it seeks.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (internal quotations and citations omitted).

### B.   Rule 12(b)(6)

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Dismissal is proper "where there is no cognizable legal theory or an

13

absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation and citation omitted).

A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although it must accept as true all factual allegations in a complaint, a court need not do so for "allegations that contradict matters properly subject to judicial notice or by exhibit" or "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to avoid dismissal. *Iqbal*, 556 U.S. at 678.

## C.    Rule 12(f)

Rule 12(f) permits a party to move the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a 12(f) motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation and citation omitted).

## IV.    ARGUMENT

### A.    The Court Should Dismiss the Pleading for Lack of Standing Under Rule 12(b)(1)

Dish's Amended Counterclaims lack any plausible injury-in-fact that can be redressed by favorable decision. The "irreducible constitutional minimum of standing" requires an injury-in-fact. *Lujan*, 504 U.S. at 560. A plaintiff has the burden of showing that it "suffered . . . an invasion of a legally protected interest

14

1  that is concrete and particularized . . . and 'actual or imminent, not "conjectural" or

2  "hypothetical."'" *Id.* (citation omitted).  Moreover, it must be "'likely'" that "the

3  injury will be 'redressed by a favorable decision.'" *Id.* at 561 (citation omitted).

                      **1.**    **Dish Affiliates are not intended beneficiaries, and Dish's allegations are insufficient as to Dish Technologies**

6      Dish's pleading suffers from incurable standing deficiencies.  The Dish

7  Affiliates do not have rights or beneficiary status to enforce the IPR Policy.  (*See*

8  Am. Countercls. ¶¶ 64-74.)  As a matter of law, "the terms of the contract must

9  demonstrate the ***express*** intent to confer [that] benefit" on the Dish Affiliates for

10  them to claim the mantle of a third-party beneficiary.  *Sherman v. Pepperidge*

11  *Farm, Inc.*, 2023 WL 5207458, at *4 (C.D. Cal. Apr. 28, 2023) (Holcomb, J.)

12  (emphasis modified; internal quotation and citation omitted).  The IPR Policy

13  explicitly demonstrates the opposite—there is an intent ***not*** to confer third-party

14  beneficiary status on affiliates or any non-members of MoCA.

15      The EchoStar Promoter Agreement expressly provides ████████

16  ████████████████████████████████████████████████████

17  ████████████████████████████████████

18     ████████████████████████████████████

19     ████████████████████████████████████

20     ████████████████████████████████

21     ████████████████████████████████

22     ████████████████████████████

23  ████████████████████████████████████████████

24  ████████████████████████████████████████████████

25  ██████████████████████████████████

26  ████████████████████████████  Dish admits that the Dish

27  Affiliates did not execute the documents required to become an independent MoCA

28

15

1  member.  (Am. Countercls. ¶ 73.)  ████████████████████████████████

2  ███████████████████████████████████████  (Promoter Agreement

3  § 4.6.)  This is fatal.

4       Dish attempts to salvage its claim by arguing that the Dish Affiliates

5  somehow obtained "*de facto*" member status because certain board minutes referred

6  to "DISH."  (Am. Countercls. ¶ 73.)  MoCA guarded against precisely such

7  arguments.  The IPR Policy § 5.3 states, "[N]o license, immunity or other right is

8  granted under this IPR Policy by any Alliance Party or its Affiliates to any other

9  Alliance Parties or their Affiliate . . . other than the agreements to grant licenses

10  expressly set forth herein."  *See Stockton Exec. Limousine Charter Serv., Inc. v.*

11  *Union Pac. R.R.*, 2006 WL 769623, at *6 (E.D. Cal. Mar. 27, 2006) ("California

12  law establishes that the parties' course of conduct . . . 'can only be applied when the

13  contract is ambiguous, and cannot be used when the contract is unambiguous.'")

14  (citation omitted).

15  ████████████████████████████████████████

16  ████████████████████████████████████████

17  ████████████[4]███████████████████████████████

18  ████████████████████████████████████████

19  ████████████████████████████

20       Faced with this explicit contractual language, Dish pivots and argues that

21  RAND licenses ***must*** be extended to non-members of a standard-setting

22  organization ("SSO").  (*See* Am. Countercls. ¶¶ 65-66.)  This is not the law nor

23  what EchoStar, a founding member of MoCA, explicitly agreed to.  (*See id.* ¶ 23.)

24  It is the language of the SSO's contract that controls.  In Dish's cited cases, the

25  SSO policies expressly granted broad rights to third parties.  *See HTC v. Ericsson*,

26

_____

27  [4] Precision is important here.  Just in December, Dish identified a different entity—
DISH Network Corporation—which it now concedes is a mere Affiliate.  (ECF No.

28  252-4 at 1-2; Am. Countercls. ¶ 72.)

12 F.4th 476, 481 (5th Cir. 2021) (Ericsson "agreed with ETSI to grant licenses to other companies" on RAND terms); *Ericsson v. D-Link*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) (SSO requiring members to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis"); *Microsoft v. Motorola*, 795 F.3d 1024, 1031-33 (9th Cir. 2015) (Motorola committed to ITU and IEEE to negotiate licenses worldwide on RAND terms).  But, as the court in *Microsoft* also acknowledged, not all SSOs require participants to offer RAND licenses to third parties.  795 F.3d at 1031.  That is exactly the case here where the IPR Policy and Promoter Agreement clearly limit who is entitled to rights under the policy and rejects any obligation to license affiliates.

### 2. Dish does not plead it made a compliant request for a license

Dish again fails to plead that it made a proper request for a license offer under the IPR Policy.  Only a MoCA Alliance Party (or former Alliance Party) can request a license offer, which must be in writing.  (*See* IPR Policy § 5.1.1.)  Dish only alleges that Dish Network L.L.C., which is not an Alliance Party, submitted written requests for a license offer.  (Am. Countercls. ¶¶ 54, 55; *see also* RJN Ex. C.)  Dish does not allege that Dish Technologies, the only Dish entity that it claims was a member of MoCA, ever made a written request under IPR Policy Section 5.1.1.

Moreover, the obligation to offer a RAND License under Section 5.1.1 to a former member only extends to standards that were approved by the MoCA Board while the former member was still a MoCA member.  (IPR Policy § 7.1.)  Consequently, Dish needed, but failed, to plead which MoCA standards are at issue.  (*See id.* §§ 5.1.1, 7.1; Am. Countercls. ¶ 54; RJN Ex. C.)  Nothing in the IPR Policy protects an Alliance Party member—current or former—from a lawsuit when it neglects to request a license before infringing essential patents.  Quite the contrary; the IPR policy expressly permits lawsuits for damages.  (IPR Policy § 5.1.1.)

17

Further, the IPR Policy only requires the parties to "offer and attempt to negotiate a license" for essential patent claims.  (*Id.*)  Dish never pleads that Entropic refused to negotiate a RAND license in good faith or that Entropic flatly denied it a RAND license. ████████████████████████████████

████████████████████████  (*See* ECF No. 316-8 at 258.)

Because Dish did not, and could not, remedy this defect, the Court should dismiss with prejudice for lack of standing.

### 3.     Dish does not identify a concrete and particular injury capable of redress

Dish claims that it has suffered actionable harm because it is required to shoulder costs in defense of the underlying litigation and suffered vague reputational harm in the marketplace.  (*See* Am. Countercls. ¶¶ 110, 122, 131, 147, 155, 159, 163.)  Yet Dish offers no facts about any concrete or particularized harm to its reputation.  Moreover, "[l]itigation costs are insufficient to establish standing for purposes of Article III."  *San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 866 (S.D. Cal. 2018) (costs in defending litigation that "would not have been initiated" absent counter-defendant's action do not provide standing).  And because Dish Technologies is not a party to the underlying suit, it could not have suffered any litigation costs or reputational harm.

Dish additionally lacks standing to enforce the IPR Policy's assignment language provision, as it has not suffered any redressable injury caused by MaxLinear.  The IPR Policy provides that RAND obligations attach to Essential Patent Claims, even if the assignment is silent on the obligations.  (IPR Policy § 5.1.2 ("[T]he licensing obligations under this IPR Policy are intended to be binding (e.g., as encumbrances) on all successors-in-interest regardless of whether such provisions are included.").)[5]  Dish's pleading also concludes that the

---

[5] This language is in the governing 2017 IPR Policy, which expressly supersedes earlier drafts.

obligations of the IPR Policy are binding on any successors-in-interest.  (*See* Am. Countercls. ¶¶ 33, 34, 103.)  This moots Dish's case against MaxLinear because RAND obligations attach to Essential Patent Claims no matter what.

Notably, Dish will not represent that its products fully comply with MoCA. RAND obligations only apply to requests for licenses for products that ***fully comply*** with a relevant MoCA standard.  (IPR Policy §§ 5.1.1 (license limited to Fully Compliant Products), 7.1; Am. Countercls. ¶ 61 (quoting IPR Policy § 7.1).)  For all but one of the patents, Dish claims to not know whether its products are compliant with MoCA standards asserted in the underlying litigation.  (Am. Answer ¶¶ 84, 118, 152, 220, 288, 322, 356, 424, 458.)  For one patent, Dish denies its products comply with MoCA standards.  (Am. Answer ¶ 186; *see also* Am. Countercls. ¶ 39 ("For the avoidance of doubt, DISH does not accept Entropic's contention that the Asserted Claims in this action are necessary to products that implement any MoCA standard.").)

Because Dish has not articulated a "concrete" and "particularized" injury, the Court should dismiss its claims for lack of standing.  *Lujan*, 504 U.S. at 560.

## B.    Count IV: Dish Fails to Plead a Breach of Contract Claim

A cause of action for breach of contract requires the following: "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

### 1.    Dish Does Not Plead the Contract Terms

Dish does not present the Court with the governing agreement from which Dish Technologies claims a right to sue:  the EchoStar Promoter Agreement.  And the only IPR Policy it submits is a 2011 version that was superseded in 2017.  (ECF No. 307-3; *see* IPR Policy § 1 ("This IPR Policy supersedes any and all prior documentation regarding the Intellectual Property of the Alliance"); Promoter Agreement § 6 (████████████████████████████████).)

As MaxLinear has repeatedly explained, the contract "terms must be set out
verbatim in the body of the complaint, or a copy of the written contract must be
attached to the complaint or incorporated by reference." *Roman v. Vericrest Fin.,
Inc.*, 2013 WL 12142960, at *2 (C.D. Cal. Dec. 3, 2013).

Another problem is that Dish seeks relief based on the outdated 2011 IPR
Policy.  Dish is unable to enforce any alleged breaches under this superseded
policy.  *See Rack Safety Prod., LLC v. Double Backstop, Inc.*, 2023 WL 3432250,
at *5 (C.D. Cal. Mar. 9, 2023) ("[B]ecause the 2016 Agreement superseded the
2015 Agreement, the Court concludes that Rack Safety cannot state a claim for
breach of the 2015 Agreement based on Defendants' conduct after 2016.").  And as
a practical matter, it would be pointless.  Even under the superseded 2011 IPR
Policy, Dish's counterclaims fail.[6]  No version of the IPR Policy can render any of
Dish's claims plausible where Entropic has already committed to licensing its
MoCA patents on RAND terms.

MaxLinear should not be forced to endure this perpetual game of whac-a-
mole, notwithstanding Dish's claimed reservation.  (*See* Am. Countercls. ¶¶ 26
n.10, 29 n.11.)

### 2. Dish failed to plead privity of contract or that the entities are intended beneficiaries

Only parties to a contract "have rights or liabilities under the contract."
*McCormick v. US Bank, N.A.*, 2012 WL 12869274, at *4 (S.D. Cal. Oct. 30, 2012).
A "cause of action for breach of contract requires privity of contract between the
plaintiff and the defendant." *Simoni v. Am. Media, Inc.*, 2014 WL 12597640, at *3
(C.D. Cal. July 22, 2014), *aff'd*, 673 F. App'x 782 (9th Cir. 2017).  One exception

---

[6] The two IPR Policies are similar, but do differ in a few respects.  The 2017 IPR
Policy expressly states that the licensing obligations are intended to be binding on
successors in interest, regardless of whether such a provision is included in the
transfer document.  (§ 5.1.2.)  It also makes clear that upon a proper written request,
the onus on the Alliance Party is only to attempt to negotiate a license with the
Requesting Alliance Party.  (*Id.* § 5.1.1.)

pertains to third-party beneficiaries.  *See Transamerica Life Ins. Co. v. Ponso*, 2020 WL 6875181, at *3 (C.D. Cal. Nov. 18, 2020).  "[A] contract must be made expressly for the benefit of a third party for that party to enforce the contract as a third-party beneficiary."  *Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1094, 1100 (C.D. Cal. 2003); *see also Sherman*, 2023 WL 5207458, at *4.

The Dish Affiliates were never members of MoCA, and the express terms of the Promoter Agreement and IPR Policy ***deny*** affiliates rights. ███████████

████████████████████████████████████████████████████████

██████████████████████████  (*See* Promoter Agreement § 9.13.)

### 3.    Dish did not adequately allege performance

"It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance."  *Consol. World Invs., Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992).

Dish, in one conclusory paragraph, states that, "[t]o the extent the MoCA IPR Policy imposes any obligations on DISH, DISH has discharged them."  (Am. Countercls. ¶ 107.)  Dish obfuscates who made the request ("DISH made a request, in writing for a RAND-compliant license offer")—and fails to allege it was a former Alliance member.  (*Id.*)  Only a MoCA Alliance Member—and no Dish Affiliate—has the right to request a license under the IPR Policy.

### 4.    Dish fails to allege any breach by MaxLinear

Dish asserts that MaxLinear breached two provisions of the IPR Policy: (1) Section 5.1.2 by allegedly failing to transfer the Asserted Patents "subject to the terms" of the IPR Policy; and (2) Section 4.1.2 by allegedly "attempting to intentionally circumvent the RAND promise" when it transferred the patents to Entropic.  (Am. Countercls. ¶¶ 108-09.)  Both claims are implausible.

First, MaxLinear transferred the patents to Entropic pursuant to its obligations.  Section 5.7 of the transfer agreement states, ██████████████████████

█████████████████████████████████████████

1

2

3

4   ██████████████████████████ (ECF No. 316-7 (Patent Purchase Agreement

5   ("PPA")) § 5.7 (emphasis added).) ██████████████████████

6   ██████ (*Id.* Ex. I.)  Second, any alleged breach is rendered implausible by

7   Entropic's written commitment to license on RAND terms.  (*See* Am. Countercls. ¶

8   52.)  Thus, there can be no circumvention, intentional or otherwise.

9   There is no breach.  ██████████████████████

10  ██████████████████████████ (*See* ECF No. 316-8 at

11  258.)  And certainly, nothing in any agreement required MaxLinear to ensure Dish

12  would ██████████████████████

13  ██████████████ (*Id.*)

14  **C.    Count V: Dish Again Fails to Meet the Pleading Standard for Fraud or Negligent Misrepresentation**

15

16  Dish not only fails to meet Rule 9(b)'s heightened pleading standard, but it

17  also does not meet the *Twombly/Iqbal* threshold of plausibility.  Dish bases its

18  claim on MaxLinear's representation "that it would license the Asserted Patents

19  under RAND terms and conditions and ensure any future owners of the Asserted

20  Patents would be obligated to offer licenses under RAND terms and conditions."

21  (Am. Countercls. ¶ 112.)  But this allegation is belied by Dish's own pleading.

22  First, Dish never alleges that *MaxLinear* refused to offer Dish a license to

23  essential patents on RAND terms.  Second, Entropic's express commitment to

24  license the Asserted Patents on RAND terms directly contradicts the vague and

25  conclusory allegations stating otherwise.  (*See id.* ¶ 52.) ██████████████

26  ██████████████████████████

27  (PPA § 5.7, Ex. I.)  And Entropic has never disputed that essential patents are

28  subject to MoCA's licensing policy.



22

1    Also, because Dish asserts no facts that any of MaxLinear's representations

2    were false at the time they were made, Dish's claim is facially implausible and

3    should be dismissed.  *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility

4    when the plaintiff pleads factual content that allows the court to draw the

5    reasonable inference that the defendant is liable for the misconduct alleged.").

6    Dish further fails to specify the circumstances constituting the alleged fraud

7    or negligent misrepresentation with particularity.  *See Hurd v. Boston Sci. Corp.*,

8    2023 WL 3564741, at *3 (C.D. Cal. Apr. 10, 2023) ("In the Ninth Circuit, claims

9    for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity

10   requirements.") (Holcomb, J.) (internal quotation and citation omitted).  Satisfying

11   that requirement means, at the minimum, identifying (1) what specifically was

12   misrepresented, (2) who made the representation, (3) why the representation is

13   false, and (4) when the representation occurred.  *See Schreiber Distribut. Co. v.

14   Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[T]he pleader

15   must state the time, place, and specific content of the false representations as well

16   as the identities of the parties to the misrepresentation.").

17   Dish vaguely alleges "[o]n information and belief" that MaxLinear made

18   false representations, but does not state when or by whom.  (*See* Am. Countercls.

19   ¶ 112.)  That conclusory statement is inadequate.  *Gabor v. Cnty. Of Santa Clara

20   Bd. Of Supervisors*, 2008 WL 902407, at *4 (N.D. Cal. Mar. 31, 2008)

21   ("Allegations that are vague or conclusory are insufficient to satisfy the

22   'particularity' required by Rule 9(b).").

23   Dish also fails to plead any facts to support the conclusory allegation that

24   MaxLinear's representations "were false at the time MaxLinear made them."  (Am.

25   Countercls. ¶ 113.)  *See Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1152 (S.D.

26   Cal. 2001) ("[T]he plaintiff must plead facts explaining why [a] statement was false

27   when it was made.").  Alleged acts or omissions that Entropic performed in the

28   ***present*** cannot show that a ***past*** MaxLinear statement was false.  *See Dotson v.*

23

1   *Europharma, Inc.*, 2021 WL 4826611, at \*6 (C.D. Cal. May 27, 2021) (A plaintiff

2   cannot "simply point[] to a defendant's statement, not[e] that the statement conflicts

3   with the current state of affairs, and then conclud[e] that the statement in question

4   was false when made.") (internal quotation and citation omitted).

5        Dish further fails to properly plead reliance and causation.  A plaintiff is

6   required "to allege specific facts not only showing [it] actually and justifiably relied

7   on the defendant's misrepresentations, but also how the actions [it] took in reliance

8   on the defendant's misrepresentations caused the alleged damages." *Tabletop*

9   *Media, LLC v. Citizen Sys. Of Am. Corp.*, 2017 WL 10591885, at \*5 (C.D. Cal.

10  Mar. 3, 2017) (internal quotation and citation omitted).  Dish vaguely claims that it

11  relied on representations that MoCA participants "would honor their commitments

12  under the MoCA IPR Policy when deciding what technologies to utilize in its

13  business," but fails to specify who made the statements and when.  (*See* Am.

14  Countercls. ¶ 120.)  And Dish does not plead it relied on these representations to

15  make any decisions or that it would have utilized other technologies but-for these

16  representations.  (*See id*. ¶ 121 ("[A]bsent a representation to license on RAND

17  terms, DISH ***may*** have elected to use different technology.") (emphasis added).)  In

18  fact, it either denies using the inventions or does not know if it has used the

19  inventions.  (*See* Am. Ans ¶¶ 84, 118, 152, 186, 220, 288, 322, 356, 424, 458.)

20       **D.     Count VI: Dish Again Fails to Plead a Proper Conspiracy Claim**

21       Dish attempts to restyle its conspiracy claim, but it again hinges on its claim

22  for fraud and negligent misrepresentation (Count V).  (*See* Am. Countercls. ¶ 124

23  (accusing Entropic and MaxLinear of "conspir[ing] to commit fraud and negligent

24  misrepresentation to avoid having to license the Asserted Patents on RAND terms

25  in violation of the MoCA IPR Policy.").)

26       As noted above, the Court should dismiss Count V for failure to state a claim.

27  *See* Part IV.C.  That failure, in turn, warrants dismissal of Count VI.  *See Mintel*

28  *Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329, at \*4 (N.D. Cal.

Aug. 9, 2007) ("If the plaintiff fails to adequately plead the underlying claim, the corresponding conspiracy claim must also fail.").

Further, Dish has not adequately pleaded the elements of a civil conspiracy. Those elements include "(1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Id.*; *see also Allied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511 (1994) ("A civil conspiracy, however atrocious, [also] does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage.") (internal quotation and citation omitted).

There is no conspiracy as the transfer agreement █████████████████████ ████████████████████████████████████ (PPA, Ex. I.)  And there is no wrongful conduct—or damage—where Entropic has complied with the RAND obligations, even going so far as to acknowledge its commitment to RAND licensing before receiving an IPR Policy-compliant request from Dish Technologies.  (Am. Countercls. ¶ 52; RJN Ex. D.)

**E.    Count VII: Dish Fails to Plead Quasi-Contract for Restitution / Unjust Enrichment**

Dish's quasi-contract claim should be dismissed.[7]  (*See* Am. Countercls. ¶¶ 133-137.)

First, "[a]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' right." *Cal. Med. Ass'n Inc. v. Aetna U.S. Healthcare of Cal. Inc.*, 94 Cal. App. 4th 151, 172 (2001).  Because Dish does not dispute the validity of the applicable MoCA agreement, it cannot raise a quasi-contract claim.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389-90 (2012) (although plaintiff may plead inconsistent claims, it may not plead a claim for quasi-contract without denying

---

[7] Unjust enrichment is not a cause of action.  *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1059 (C.D. Cal. 2014).

25

existence of enforceable contract).

Second, allegations that MaxLinear benefited from MoCA, or that MoCA and MaxLinear benefited from Dish's "considerable expenditures," do not entitle Dish to relief. MaxLinear was a MoCA member, so any benefit received was not unjust. "[T]he person receiving the [alleged] benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it." *Copley v. Natera, Inc.*, 2023 WL 3772023, at *5 (N.D. Cal. May 8, 2023) (internal quotation and citation omitted).

Third, to state this counterclaim, Dish must allege MaxLinear "has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Pargett v. Wal-Mart Stores, Inc.*, 2020 WL 5028317, at *6 (C.D. Cal. Apr. 10, 2020) (internal quotation and citation omitted). Dish says MaxLinear made misrepresentations, including "misrepresenting to the public it would license essential patents on RAND terms." (*See* Am. Countercls. ¶ 137.) Dish falls well short of Rule 9(b)'s heightened standard. Again, Dish never asserts which particular statements were false, how they were false (especially when Entropic committed to offering a license on RAND terms), or when they were made. *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Dish further claims that MaxLinear and the other MoCA members' representations induced Dish to adopt MoCA standards. (*See* Am. Countercls. ¶ 136.) But in this allegation, Dish suddenly forgets that one of its affiliates was a ***founding member*** of MoCA—long before MaxLinear was even a member.

### F.    Count VIII: Dish's Combination in Restraint of Trade Claim Is Facially Implausible and Fails to State a Claim

Dish's antitrust claim is based on the same allegation that MaxLinear entered into an unlawful agreement with Entropic to "wash" the Asserted Patents of any RAND obligation. (*Id.* ¶¶ 144-45.) That claim is facially implausible and does not satisfy the elements of a Sherman Act claim, because Dish simultaneously alleges

26

that Entropic's CEO committed to licensing the patents on RAND terms.
(*Compare id.* ¶ 145 ("a purpose of the Patent Purchase Agreement was to avoid a
RAND obligation") *with id*. ¶ 52, RJN Ex. D at 78 (Entropic CEO committed "to
licensing its patents that cover MoCA technology on reasonable terms, without
discrimination among similarly-situated providers (often called 'RAND terms')").)
The entire predicate for Dish's Sherman Act Section 1 claim is implausible and
requires dismissal under *Iqbal/Twombly.*

Dish's antitrust claims also fail because it does not allege that MaxLinear and
Entropic entered into an agreement that unreasonably restrained **competition** in any
relevant market or acted in concert to do so.  *See Am. Ad Mgmt. v. GTE Corp.*, 92
F.3d 781, 788 (9th Cir. 1996).  The alleged attempt to "wash" the Asserted Patents
could not have restrained competition because, among other things, it was a legal
impossibility.  The licensing obligations under the IPR Policy are binding on all
transferees.  (*See* IPR Policy § 5.1.2.)

Dish cites *HTC Corp. v. IPCom GmbH & Co.* in an attempt to save its
antitrust claim from this fatal flaw.  (*See* Am. Countercls. ¶ 145.)  But *HTC*
provides no such lifeline.  The language from *HTC* that Dish quotes is party
argument.  ***It was not the holding of the court***.  To the contrary, the court held that,
"deceit merely enabling a monopolist to charge higher prices that it otherwise could
have charged—would not in itself constitute monopolization."  2010 WL
11719073, at *6 (D.D.C. Nov. 5, 2020) (quoting, *Rambus Inc. v. FTC,* 522 F.3d
456, 459 (D.C. Cir. 2008)).

Dish also failed to plead that it suffered any antitrust injury, a necessary
element of an antitrust claim.  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S.
328, 334 (1990).  Antitrust injury flows from that which makes the conduct
unlawful and is of the type that antitrust laws were meant to prevent.  *Somers v.
Apple*, 729 F.3d 953, 963 (9th Cir 2019).  Here, Dish claims two types of injuries:
(1) litigation costs and (2) payment of patent damages.  Neither qualifies.

27

Under the *Noerr*-*Pennington* doctrine, prosecuting a lawsuit is immune from antitrust liability absent sham litigation. *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972).  And, patent enforcement litigation is presumptively in good faith and does not harm competition. *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979); *see also Vizio, Inc. v. Funai Electric Co. Ltd.*, 2010 WL 7762624, at *5 (C.D. Cal. Feb. 3, 2010).  The payment of appropriate patent damages imposed by this Court also cannot constitute antitrust injury. *See Rambus*, 522 F.3d at 459.  In any event, if the IPR Policy does apply, the Court will impose damages at a RAND rate, where appropriate.  Dish will not suffer antitrust injury.

### G.  Count IX: Dish's Cartwright Act Claim Fails for the Same Reasons as Its Sherman Act Claim

The Cartwright Act operates in functionally the same way to the Sherman Act. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) ("The analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act . . . was modeled after the Sherman Act."); *Stewart v. Gogo, Inc.*, 2013 WL 1501484, at *5 (N.D. Cal. Apr. 10, 2013) (dismissing Cartwright Act claim where Sherman Act claim inadequately plead).

This claim fails for the same reasons as the Combination in Restraint of Trade claim. *See Cal. Pharm. Mgmt., LLC v. Zenith Ins. Co.*, 2010 WL 11519328, at *7-8 (C.D. Cal. Dec. 1, 2010) (dismissing both Sherman and Cartwright Act claims with prejudice).

### H.  Count X: Patent Misuse Is Not an Independent Cause of Action

Patent misuse is not a claim.  "[T]he defense of patent misuse may not be converted to an affirmative claim for damages simply by restyling it as a declaratory judgment counterclaim." *B. Braun Med., Inc. v. Abbott Lab'ys*, 124 F.3d 1419, 1428 (Fed. Cir. 1997).

And when an accused infringer seeks an unenforceability determination, as Dish does, the counterclaim serves no purpose as it is duplicative of the affirmative defense.  (Am. Ans. ¶ 505.)  *See Stickrath v. Globalstar, Inc.*, 2008 WL 2050990, at *5 (N.D. Cal. May 13, 2008) (striking counterclaim where there was a "complete identity of factual and legal issues" between affirmative defense and counterclaim, and the latter served no "useful purpose").  The Court should therefore dismiss, or in the alternative, strike, the patent misuse claim.

## I.      Count XI: Dish Does Not Plead a UCL Claim

Dish pleads no new allegations in its UCL claim that are not present in its Sherman Act, Cartwright Act, or patent misuse counterclaims.  (*See* Am. Countercls. ¶ 162.)  It therefore should be dismissed with prejudice.  *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1123-24 (9th Cir. 2018) (affirming dismissal of § 17200 claim where the Court also dismissed antitrust claims for failure to plead a relevant market); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) (affirming dismissal of UCL claim when antitrust claim dismissed and "the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason").

## J.      Leave to Amend Would Be Futile

The Court should deny leave to amend.  Courts consider five factors in allowing leave: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) the futility of amendment, and (5) whether the plaintiff has previously amended his or her complaint.  *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).  "Futility alone can justify the denial of a motion for leave to amend."  *Id*.

These factors all weigh against amendment.  Dish California initiated counterclaims against MaxLinear when it had no standing; it then delayed motion practice in the hopes of keeping its lawsuit alive.  But even with the benefit of extra time to amend and the untimely addition of non-Defendant Dish Technologies, all of Dish's counterclaims still fail.  Indeed, the addition of Dish Technologies

29

confirms that Dish California should never have initiated suit against MaxLinear.

MaxLinear has been prejudiced.  Dish has known about the deficiencies for months.  It refused to amend until MaxLinear expended resources to file a motion to dismiss, and it still has not attached the applicable agreement.

Most importantly, further amendment is futile.  The core allegation at the heart of the counterclaims is that Dish somehow was deprived of RAND license rights, but Entropic committed to licensing on RAND terms by Dish's own allegations.  This admission is fatal to all of Dish's counterclaims.  And a spat regarding ███████████████████████████████████████ should not have led to this litigation.

## V.      CONCLUSION

Dish has not been able to address the fatal defects in its case and has instead introduced more implausible claims with yet more incurable defects.  The Court should dismiss the counterclaims with prejudice.

1    Dated:  February 21, 2024                  MORRISON & FOERSTER LLP

2

3                                              By: */s/ Bita Rahebi*
                                                   Bita Rahebi
4
                                                   BITA RAHEBI (CA SBN 209351)
5                                                  brahebi@mofo.com
                                                   ALEX S. YAP (CA SBN 241400)
6                                                  ayap@mofo.com
                                                   ROSE S. LEE (CA SBN 294658)
7                                                  roselee@mofo.com
                                                   MORRISON & FOERSTER LLP
8                                                  707 Wilshire Boulevard, Suite 6000
                                                   Los Angeles, California 90017-3543
9                                                  Telephone:    (213) 892-5200
                                                   Facsimile:    (213) 892-5454
10
                                                   RICHARD S.J. HUNG (CA SBN
11                                                 197425)
                                                   rhung@mofo.com
12                                                 MORRISON & FOERSTER LLP
                                                   425 Market Street,
13                                                 San Francisco, California 94105-
                                                   2482
14                                                 Palo Alto, California 94304-1018
                                                   Telephone:    (415) 268-7000
15                                                 Facsimile:    (415) 268-7522

16                                                 BRADLEY LUI (CA SBN 143088)
                                                   blui@mofo.com
17                                                 MORRISON & FOERSTER LLP
                                                   2100 L Street, NW, Suite 900
18                                                 Washington, DC 20037-1679
                                                   Telephone:    (202) 887-1500
19                                                 Facsimile:    (202) 887-0763

20                                                 Attorneys for Counter-Defendants
                                                   MAXLINEAR, INC. and
21                                                 MAXLINEAR
                                                   COMMUNICATIONS LLC
22

23

24

25

26

27

28
                                        31

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2    The undersigned, counsel of record for Counter-Defendants MAXLINEAR,

3 INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief

4 contains 6938 words, which complies with the word limit of L.R. 11-6.1.

5

6 Dated:  February 21, 2024     By:  _/s/ Bita Rahebi_
                 Bita Rahebi

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28