Christina N. Goodrich (SBN 261722)
Christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
Cassidy.young@klgates.com
K&L Gates LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

[*Additional counsel on signature page*]

**Attorneys for Plaintiff Entropic Communications, LLC**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION, *et al.*,<br><br>Defendants. | Case No. 2:23-cv-1043-JWH-KES (Lead Case)<br><br>Case No. 2:23-cv-1047-JWH-KES (Related Case)<br>Case No. 2:23-cv-1048-JWH-KES (Related Case)<br>Case No. 2:23-cv-5253-JWH-KES (Related Case)<br><br>**ENTROPIC COMMUNICATIONS, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS PURSUANT TO RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF CASSIDY YOUNG; REQUEST FOR JUDICIAL NOTICE; [PROPOSED] ORDER** |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>Defendants. | Hearing Date:      March 29, 2024<br>Hearing Time:      9:00 a.m.<br>Courtroom:          9D (Santa Ana)<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

ENTROPIC COMMUNICATIONS, LLC,

                    Plaintiff,

        v.

COMCAST, *et al.*,

                    Defendants.

---

ENTROPIC COMMUNICATIONS, LLC,

                    Plaintiff,

        v.

DIRECTV, LLC, *et al.*,

                    Defendants.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 29, 2024, or as soon thereafter as this matter may be heard, in Courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California 92701, Entropic Communications, LLC ("Entropic") will, and hereby does, move the Court for an Order dismissing Dish Network Corp., Dish Network LLC, Dish Network Service LLC, Dish Network California Service Corp., and Dish Technologies, LLC's (collectively, "DISH") Counterclaims against Entropic with prejudice. This Motion is made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the ground that DISH's Counterclaims fail to state a claim upon which relief can be granted.

Specifically, Entropic moves to dismiss Counts 3, 6, and 8–11 of DISH's Counterclaims, which allege that Entropic breached the MoCA Intellectual Property Rights Policy ("IPR Policy") (No. 3), engaged in fraud arising from civil conspiracy (No. 6), violated federal and California state antitrust laws (Nos. 8–9), engaged in patent misuse (No. 10), and violated the California Business & Professions Code (No. 11). However, DISH fails to support any of these claims with plausible factual allegations that make out the elements of these claims. For example, with respect to the breach of contract claim, DISH does not plausibly allege that any of the defendant DISH entities are party to the agreement and does not plausibly allege that the remaining DISH entity (Dish Technologies, LLC) has suffered a breach. With respect to the remaining claims, DISH does not plausibly allege the existence of a conspiracy between Entropic and MaxLinear; does not plausibly allege that Entropic engaged in any deceptive or fraudulent conduct; and does not plausibly allege any anticompetitive effects. As such, all of DISH's claims fail.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

This Motion is made following a conference of counsel pursuant to Local Rule 7-3 that took place on February 13, 2024. The Parties thoroughly discussed the substance and potential resolution of the filed Motion.

The Motion is based on this Notice, the Memorandum of Points and Authorities attached hereto, the attached Declaration of Cassidy Young ("Young Decl."), the Request for Judicial Notice, the complete Court files and records in this action, and all matters that may be properly considered by the Court at the hearing on this Motion.

Dated: February 21, 2024

**K&L GATES LLP**

By: */s/ Christina Goodrich*

Christina Goodrich (SBN 261722)
Cassidy T. Young (SBN 342891)
K&L Gates, LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001
christina.goodrich@klgates.com
cassidy.young@klgates.com

James A. Shimota (*pro hac vice*)
70 W. Madison Street, Ste 3300
Chicago, Illinois 60602
Telephone: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com

Peter E. Soskin (SBN 280347)
4 Embarcadero Center, Ste 1200
San Francisco, CA 94111
Telephone: (415) 882-8220
peter.soskin@klgates.com

***Attorneys for Plaintiff, Entropic Communications, LLC***

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................8

II.     FACTUAL BACKGROUND ............................................................9

   A.   The MoCA IPR Policy .............................................................10

   B.   Alleged MoCA Membership of the DISH Entities.................11

III.    JUDICIAL STANDARD ................................................................11

IV.    ARGUMENT .................................................................................12

   A.   The Court should dismiss the breach of contract claim (Count 3) under Rule 12(b)(6) because DISH's allegations fail to plausibly show a contract with the DISH Defendants and a breach as to DISH Technologies. ........12

      1.   Entropic has no contractual obligations to the DISH Defendants because the DISH Defendants are neither parties to, nor third-party beneficiaries of, MoCA's IPR Policy. .................................................12

      2.   DISH fails to allege breach with respect to DISH Technologies. .......13

      3.   DISH fails to allege how any alleged breach caused harm. ...............14

   B.   The Court should dismiss the civil conspiracy claim (Count 6) under Rule 12(b)(6) because DISH has not pleaded facts with sufficient particularity to establish a fraud-based conspiracy.........................................................16

      1.   DISH does not allege facts with sufficient particularity establishing that Entropic and MaxLinear formed and operated a fraudulent "patent laundering" conspiracy. ..........................................................16

      2.   DISH does not allege with sufficient particularity facts showing it was damaged by any acts in furtherance of the implausible "patent laundering" conspiracy. ........................................................19

   C.   The Court should dismiss the Sherman Act, Section 1 claim (Count 8) under Rule 12(b)(6) because it is implausible and contrary the documents incorporated in DISH's pleading. .............................................................20

      1.   The plain language of the PPA shows that DISH's allegations of intent to harm or restrain trade or commerce are implausible. .....................21

      2.   The PPA has not injured—and cannot injure—competition. ..............21

      3.   DISH fails to plead anticompetitive effects.........................................23

   D.   The Court should dismiss Count 9 for Violation of the Cartwright Act for the same reason that DISH does not plausibly allege an antitrust violation. ...............................................................................................24

E.     The Court should dismiss Count 10 for Patent Misuse because it is not a claim and because DISH does not plausibly allege that Entropic misused its patent rights. .........................................................................................25

F.     The Court should dismiss Count 11 for Violation of the California Business and Professions Code because DISH does not plausibly allege any unlawful, unfair, or fraudulent business practice by Entropic. ..........26

G.     The Court should dismiss Counts 6 and 8–11 under the *Noerr-Pennington* Doctrine. ..............................................................................................26

V.        CONCLUSION .........................................................................................28

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*AliveCor, Inc. v. Apple Inc.*,
   2023 WL 9181478 (N.D. Cal. June 30, 2023) ........................................................ 25

*Apple, Inc. v. Motorola Mobility, Inc.*,
   886 F. Supp. 2d 1061 (W.D. Wis. 2012) ............................................................ 28

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................. 12

*B. Braun Med., Inc. v. Abbot Lab'ys*,
   124 F.3d 1419 (Fed. Cir. 1997) ............................................................................ 26

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 21

*Cisco Sys., Inc. v. STMicroelectronics, Inc.*,
   77 F. Supp. 3d 887 (N.D. Cal. 2014) .................................................................... 18

*Conder v. Home Savings of America*,
   680 F. Supp. 2d 1168 (C.D. Cal. 2010) ................................................................ 27

*Datatreasury Corp. v. Wells Fargo & Co.*,
   552 F.3d 1368 (Fed. Cir. 2008) ...................................................................... 18, 23

*Dean v. Kaiser Found. Health Plan, Inc.*,
   562 F. Supp. 3d 928 (C.D. Cal. 2022) .................................................................. 13

*Enercon GmbH v. Erdman*,
   13 Fed. Appx. 651 (9th Cir. 2001) ....................................................................... 26

*First Nat. Bank v. Continental Illinois Nat. Bank*,
   933 F.2d 466 (7th Cir. 1991) ................................................................................ 20

*FTC v. Apex Capital Grp., LLC*,
   2022 WL 1060486 (C.D. Cal. Mar. 10, 2022) ..................................................... 20

*Glob. Hawk Ins. Co. (RRG) v. Wesco Ins. Co.*,
   424 F. Supp. 3d 848 (C.D. Cal. 2019) .................................................................. 16

*HTC Corp. v. IPCom GmbH & Co., KG*,
   2010 WL 11719073 (D.D.C. Nov. 5, 2010) .................................................... 23, 24

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   527 F. Supp. 2d 1084 (N.D. Cal. 2007) ................................................................ 25

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

*Ileto v. Glock Inc.*,
　349 F.3d 1191 (9th Cir. 2003)................................................................ 10

*Intel Corp. v. Fortress Inv. Grp. LLC*,
　2022 WL 16756365 (9th Cir. 2022)....................................................... 24

*Intel Corp. v. Fortress Inv. Grp. LLC*,
　511 F. Supp. 3d 1006 (N.D. Cal. 2021) ................................................. 24

*Jones v. Hollywood Unlocked, Inc.*,
　2022 WL 18674459 (C.D. Cal. Nov. 22, 2022)...................................... 17

*Kendall v. Visa U.S.A., Inc.*,
　518 F.3d 1042 (9th Cir. 2008)......................................................... 21, 22

*L.A. Lakers, Inc. v. Fed. Ins. Co.*,
　869 F.3d 795 (9th Cir. 2017).................................................................. 12

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
　165 F.3d 891 (Fed. Cir. 1998)................................................................ 21

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*,
　2007 WL 2288329 (N.D. Cal. Aug. 9, 2007)......................................... 17

*Name.Space, Inc. v. Internet Corp. of Assigned Names and Numbers*,
　795 F.3d 1124 (9th Cir. 2015)................................................................ 25

*Nero Ag v. MPEG LA, L.L.C.*,
　2010 WL 4366448 (C.D. Cal. Sept. 14, 2010)................................. 21, 22

*Ohio v. Am. Express Co.*,
　138 S. Ct. 2274 (2018)........................................................................... 24

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*,
　50 Cal. 3d 1118 (Cal. 1990).................................................................. 20

*Parrino v. FHP, Inc.*,
　146 F.3d 699 (9th Cir. 1998).................................................................. 11

*Princo Corp. v. Int'l Trade Comm'n*,
　616 F.3d 1318 (Fed. Cir. 2010).............................................................. 26

*Raines v. Switch Mfg.*,
　1997 WL 578547 (N.D. Cal. July 28, 2017)........................................... 26

*Rambus v. FTC*,
　522 F.3d 456 (D.C. Cir. 2008) ............................................................... 23

*San Diego Unified Port Dist. v. Monsanto Co.*,
　309 F. Supp. 3d 854 (S.D. Cal. Jan. 30, 2018)...................................... 20

6

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

*Schauer v. Mandarin Gems of Cal., Inc.*,
    125 Cal. App. 4th 949 (2005) ................................................................. 14

*Schreiber Distribut. Co. v. Serv-Well Furniture Co., Inc.*,
    806 F.2d 1393 (9th Cir. 1986) ............................................................... 18

*Seville Classics, Inc. v. Neatfreak Grp., Inc.*,
    2017 WL 3473932 (C.D. Cal. Feb. 14, 2017) ....................................... 26

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*,
    2016 WL 7049263 (C.D. Cal. Aug. 9, 2016) .................................... 28, 29

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ........................................................... 27, 29

*Vizio, Inc. v. Funai Elec. Co. Ltd.*,
    2010 WL 7762624 (C.D. Cal. Feb. 3, 2010) ................................... 22, 23

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006) ................................................................. 17

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................... 27

*William O. Gilley Enter., Inc. v. Atl. Richfield Co.*,
    588 F.3d 659 (9th Cir. 2009) ................................................................. 25

7

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The patent claims asserted in this case are essential to a technology standard called MoCA.[1] DISH extensively uses MoCA technology. Having no viable defense to infringement, DISH attempts to throw smoke by filing a series of counterclaims (DE 316, "Counterclaims" or "Countercl.") against Entropic and MaxLinear, Entropic's predecessor-in-interest to the Asserted Patents. These counterclaims boil down to a single accusation: the Asserted Patents are subject to a RAND obligation, and Entropic has not complied with that obligation. But DISH's own pleading proves this allegation false: Entropic agreed to that obligation when it acquired the Asserted Patents, and has communicated its intent to license its MoCA portfolio to DISH on RAND terms. *E.g.*, Countercl. ¶ 52. DISH fails to plead the elements of its claims in Counts 3, 6, and 8–11, and these Counts should be dismissed.

As to Count 3 (breach of contract), DISH fails to plead that it is party to a contract, that the contract was breached, or that it was harmed by the breach. DISH alleges that Entropic breached the "MoCA IPR Policy" by failing to offer a RAND license to DISH. But the MoCA IPR Policy only requires a RAND offer in response to a ***written request*** from a ***MoCA Member***. DISH fails to plead that any DISH entity both qualified as a member and submitted a written request to Entropic. And even if it had plead such a breach, it fails to plead any facts to show that the alleged breach caused the litigation expenses and reputational harm that DISH pleads as damages. Thus, DISH fails to plead breach of contract.

---

[1] The following terms are used herein: Dish Network Corp., Dish Network LLC, Dish Network Service LLC, and Dish Network California Service Corp. ("DISH Defendants"); Dish Technologies, LLC (collectively with DISH Defendants, "DISH"); Multimedia over Coax Alliance ("MoCA"); MoCA Intellectual Property Rights Policy ("IPR Policy"); reasonable and non-discriminatory ("RAND"); Patent Purchase Agreement ("PPA"); twelve patents asserted by Entropic against DISH ("Asserted Patents").

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

DISH also concocts antitrust and tort claims out of its deficient breach of contract claim, and none are sufficiently plead. For Count 6 (civil conspiracy arising from fraud) and Count 8 (an antitrust violation under the Sherman Act, Section 1), DISH failed to plausibly plead the basic elements of these claims, including that it has suffered a cognizable harm. Counts 9 (the Cartwright Act) and Count 11 (the California Business and Professions Code) are California-state-law derivative claims to the antitrust and conspiracy claims. Count 10 (patent misuse) is not a claim but rather an affirmative defense only. And even if adequately plead, Counts 6 and 8–11 all fail under the *Noerr-Pennington* doctrine because they seek to hold Entropic liable for exercising its right to enforce its patent rights in court.

For at least these reasons, Entropic respectfully moves the Court to dismiss Counterclaim Counts 3, 6, and 8 through 11 against Entropic under Rule 12(b)(6).

## II.   FACTUAL BACKGROUND[2]

Entropic filed a complaint against Dish Network Corp., Dish Network LLC, Dish Network Service LLC, and Dish Network California Service Corp. for infringement of 12 patents essential to the MoCA standard, a foundational technology that enables in-home networking among many other benefits. *See* DE 1 ¶¶ 4–5. Those patents were transferred to Entropic from MaxLinear through a Patent Purchase Agreement executed in 2021. DE 316-7 ("PPA"). The PPA ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████ *Id.* § 5.7; *id.* at Ex. I. MaxLinear also provided a copy of the MoCA IPR Policy to Entropic as part of the transfer, a fact of which DISH is well aware

---

[2] For purposes of this Motion only, and consistent with the standard described in Rule 12(b)(6) of the Federal Rules of Civil Procedure, Entropic has assumed the truth of all well-pleaded allegations in DISH's Counterclaims. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) ("We must take 'all well-pleaded allegations of material fact as true and construe them in the light most favorable to the plaintiff'"). Entropic reserves the right to dispute all factual allegations and legal conclusions recited in the counterclaims.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

because Entropic has produced a copy of the MoCA IPR Policy *to DISH **twice***: at Entropic-DISH-MoCA_003733 (in this case) and at ENTROPIC_DISH_0016169 (in Case No. 2:22-cv-07959).

## A.     The MoCA IPR Policy[3]

The MoCA IPR Policy "is the complete and exclusive statement of the policy of [MoCA] for Intellectual Property." RJN, Ex. A § 1; *see also* DE 307-3 § 1 (same in 2011 version). As alleged by DISH, the MoCA IPR Policy is "governed by the law of California." Countercl. ¶ 92. In relevant part, the MoCA IPR Policy states that "upon the written request of any other then-current Alliance Party, each Alliance Party agrees to offer and attempt to negotiate a license to the requesting Alliance Party(ies)" and that "[s]uch licenses shall be . . . on fair, reasonable and nondiscriminatory terms and conditions (collectively, '***RAND***')." RJN, Ex. A § 5.1.1; *see also* DE 307-3 § 5.1.1 (language of 2011 version). An "Alliance Party" is defined as a "Participant or a Voting Member," each of whom are required to enter into an agreement with MoCA to obtain their status by signing a "Participant Agreement" or "Voting Member Agreement," respectively. RJN, Ex. A § 2; *see also* DE 307-3 § 2 (same).

Notably, the IPR Policy restricts the rights under Section 5.1 based on membership status in MoCA. A former Alliance Party may request a license under Section 5.1 but only as to "the extent necessary to use, make, have made, offer for sale, sell, and import Fully Compliant Products" that conform to the standard as approved by the Board of Directors prior to termination. *See* RJN, Ex. A § 7.1; *see also* DE 307-3 § 7.2 (same). The former Alliance Party "shall no longer be entitled to request or require any Alliance Party to license . . . the terminated Alliance Party"

---

[3] DISH relies on a 2011 version of the IPR Policy (DE 307-3), but another version published in 2017 "supersedes any and all prior documentation." *See* RJN, Ex. A, § 1. A court can consider documents incorporated by reference. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998). DISH's arguments fail under either version of the contract. As such, this Motion generally cites to both versions throughout.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

as to standards approved after termination. *Id*. In addition, the IPR Policy states that its terms "shall not be construed or deemed as a license . . . or an immunity from suit under any Intellectual Property." RJN, Ex. A § 6; *see also* DE 307-3 § 6 (same).

## B.     Alleged MoCA Membership of the DISH Entities

DISH filed its counterclaims against Entropic and MaxLinear based on the IPR Policy. *See* DE 316 ("Counterclaims" or "Countercl."). The counterclaimants are the DISH Defendants along with a new entity, DISH Technologies. As to the DISH Defendants, none is alleged to be a "Participant" or "Voting Member" of MoCA at any point in time. Instead, the DISH Defendants concede that none had "executed a formal agreement" with MoCA. *See* Countercl. ¶ 73.

The only counterclaimant who is alleged to have been a member of MoCA is the newly named DISH Technologies. As alleged, DISH Technologies was "previously named EchoStar Technologies," who joined MoCA in 2004 and remained a MoCA member until 2019. Countercl. ¶ 59. The Counterclaims allege that the DISH Defendants are currently "sister subsidiaries or parent corporations of DISH Technologies, LLC." *Id.* ¶ 72. However, the Counterclaims do not allege that this relationship existed at the time Entropic filed its complaint for patent infringement or at any time during which Echostar Technologies was alleged to be a Voting Member of MoCA.

## III.   <u>JUDICIAL STANDARD</u>

Under Rule 12(b)(6), the party asserting the challenged claims must point to "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal for failure to state a claim is proper "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

1   **IV.**   **ARGUMENT**

2   **A.**   **The Court should dismiss the breach of contract claim (Count 3)**

3   **under Rule 12(b)(6) because DISH's allegations fail to plausibly**

4   **show a contract with the DISH Defendants and a breach as to**

5   **DISH Technologies.**

6   "To state a claim for breach of contract, a plaintiff must plead '(1) the existence

7   of the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

8   defendant's breach, and (4) the resulting damages to the plaintiff.'" *Dean v. Kaiser*

9   *Found. Health Plan, Inc.*, 562 F. Supp. 3d 928, 935 (C.D. Cal. 2022) (quoting *Oasis*

10   *W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). Here, DISH fails to plead

11   the existence of a contract, breach, and resulting damages.

12   **1.**   **Entropic has no contractual obligations to the DISH**

13   **Defendants because the DISH Defendants are neither parties**

14   **to, nor third-party beneficiaries of, MoCA's IPR Policy.**

15   The DISH Defendants concede that they never entered into an agreement with

16   MoCA. Countercl. ¶ 73. By the express terms of the IPR Policy, the DISH Defendants

17   are neither Participants nor Voting Members who qualify as "Alliance Parties." *See*

18   RJN, Ex. A § 2; *see also* DE 307-3 § 2. They are therefore not parties to the RAND-

19   licensing provisions of IPR Policy. The DISH Defendants make several attempts to

20   plead around this fatal problem to no avail.

21   First, the DISH Defendants assert they "became [] de facto member[s] of

22   MoCA through [their] course of conduct"—namely, by participating in MoCA Board

23   meetings. Countercl. ¶ 73. This alleged "course of conduct" is irrelevant. The IPR

24   Policy expressly defines who is an "Alliance Party"—that is, "a Participant or a

25   Voting Member." RJN, Ex. A § 2; *see also* DE 307-3 § 2. The DISH Defendants

26   have not alleged that they qualify as an Alliance Party as defined in the IPR Policy.

27   Their "course of conduct" allegations do not and cannot change this.

28

12

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

The DISH Defendants also allege that "RAND licenses must be made available to both members *and* non-members" of MoCA in order to comply with antitrust laws. Countercl. ¶ 66. But this is contrary to the express terms of the MoCA IPR Policy, which grants only "Alliance Parties" the right to make a written request for such a license under § 5.1.1. Whether antitrust laws require an Alliance Member to license patents on RAND terms to non-members is a separate question from whether the IPR Policy requires members to offer it to non-members it *as a matter of contract*. By its terms, the MoCA IPR Policy does not grant non-members a contractual right to demand RAND licenses. Thus, the failure to offer a RAND license to the non-member DISH Defendants cannot be a breach of the IPR Policy.

Lastly, the DISH Defendants assert they are "intended third-party beneficiaries of the MoCA IPR Policy." Countercl. ¶ 96. But they plead no facts that could support this bare legal assertion. Under California law, which is alleged to govern the IPR Policy, "a person seeking to enforce a contract as a third party beneficiary must plead a contract which was made expressly for his or her benefit and one in which it clearly appears that he or she was a beneficiary." *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (2005) (quotations and citations omitted). The DISH Defendants point to nothing in the IPR Policy that shows it was made "expressly" for their benefit. To the contrary, the IPR Policy grants "Alliance Parties" alone—not even their Affiliates—the right to make a written request for a RAND license. *See* RJN, Ex. A § 5.1.1; *see also* DE 307-3 § 5.1.1.

## 2.   **DISH fails to allege breach with respect to DISH Technologies.**

Unlike the other DISH Counterclaimants, DISH Technologies is alleged to be an Alliance Party under the IPR Policy (through 2019). *See* Countercl. ¶¶ 58–59. Nevertheless, DISH fails to allege any breach of the IPR Policy with respect to DISH Technologies and thus it fails to state a claim even as to this entity.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

In the counterclaims, DISH vaguely alleges that "DISH has also asked for RAND terms for the license." Countercl. ¶ 67. This generic allegation merely suggests that one of the DISH entities requested RAND terms in some form at some time. But Section 5.1.1 of the IPR Policy requires "a *written request* of any other then-current *Alliance Party*." RJN, Ex. A § 5.1.1 (emphasis added); *see also* DE 307-3 § 5.1.1 (same). A non-written request from an entity other than an Alliance Party does not satisfy the terms of Section 5.1.1. Because DISH fails to allege any written request sent from DISH Technologies, it has failed to allege a breach of the terms of the IPR Policy.

Further still, DISH does not allege that *any* DISH entity made a written request for a RAND license before Entropic filed suit. The only pre-suit request that DISH identifies is a *verbal* request on May 2, 2022, which they purport to have made "on behalf of DISH Network L.L.C. and all DISH entities." Countercl. ¶ 50. Even taken as true, however, this telephone call is not a "written request" under the IPR Policy. The only alleged written pre-suit correspondence came from *Entropic* on March 9, 2022; July 14, 2022; and December 22, 2022. *Id.* ¶¶ 49, 51, and 52. Thus, DISH alleges no written request for a RAND license from DISH Technologies and thus fails to allege a breach of Sections 5.1.1 and 7.2 of the IPR Policy.

### 3.    DISH fails to allege how any alleged breach caused harm.

DISH also fails to plead how any breach caused the harm it alleges. DISH pleads that Entropic's alleged breach caused DISH "to expend considerable sums of money and other resources to defend itself in the present suit—resources that DISH would not have had to expend had Entropic complied with the terms of the MoCA IPR Policy." Countercl. ¶ 100. But DISH does not and cannot plead that the alleged breach—failure to offer a RAND license in response to a written request—caused this alleged harm.

First, the IPR Policy expressly permits Alliance Parties to bring infringement actions. Section 6 of the Policy states that it "shall not be construed or deemed as a

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

license . . . or an immunity from suit under any Intellectual Property." RJN, Ex. A § 6; *see also* DE 307-3 § 6 (same). Thus, even if Entropic had sent a RAND offer in response to a written request from DISH Technologies, Entropic would still have had the right to bring suit. Thus, DISH's alleged litigation expenses do not flow "directly and necessarily" from Entropic's alleged failure to comply with the written request provision of Section 5.1.1, nor are the expenses "proximately caused" by any alleged breach. *See Glob. Hawk Ins. Co. (RRG) v. Wesco Ins. Co.*, 424 F. Supp. 3d 848, 854 (C.D. Cal. 2019).

Second, any alleged breach occurred only *after* Entropic filed suit. No DISH entity requested a RAND-complaint offer from Entropic until March 31, 2023. Countercl. ¶ 54. By then, Entropic had already filed suit and nothing in the IPR Policy required it to terminate its case just because a DISH entity finally got around to making a written request. And as to DISH Technologies specifically, Entropic did not sue that entity and thus that entity has no "litigation expenses" to attribute to any alleged breach from Entropic filing suit rather than negotiating a RAND license. For this reason, too, DISH's "litigation expenses" are not attributable to Entropic's alleged breach.

Third, DISH never pleads that it would have *accepted* a RAND offer had Entropic made it before suit. The authority cited in DISH's counterclaim refers to "companies seeking to license under FRAND terms" and those "who commit[] to paying the RAND rate." Countercl. ¶ 65. But DISH has not alleged that it is, in fact, committed to paying the RAND rate. Absent such a pleading, DISH cannot allege that but-for Entropic's alleged failure to offer a RAND license, the parties would necessarily have agreed to a license in lieu of litigation.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

**B.** **The Court should dismiss the civil conspiracy claim (Count 6) under Rule 12(b)(6) because DISH has not pleaded facts with sufficient particularity to establish a fraud-based conspiracy.**

The elements of an action for civil conspiracy are: "(1) 'the formation and operation of the conspiracy' and (2) 'damage resulting to plaintiff from an act or acts done in furtherance of the common design.'" *Jones v. Hollywood Unlocked, Inc.*, 2022 WL 18674459, at \*15 (C.D. Cal. Nov. 22, 2022) (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994)); *accord Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006). Where, as here, the underlying conduct is fraud, Rule 9(b) requires pleading with particularity. *Wasco Prods., Inc.*, 435 F.3d at 990–91; *Jones*, 2022 WL 18674459, at \*16 (C.D. Cal. Nov. 22, 2022) (citations omitted). That underlying conduct is critical because conspiracy is not a standalone claim. *See Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329, at \*4 (N.D. Cal. Aug. 9, 2007). DISH fails to adequately plead a conspiracy, or the underlying claim of fraud that was the supposed aim of the conspiracy, and also fails to plausibly plead harm flowing from acts taken in furtherance of such a conspiracy.

**1.** **DISH does not allege facts with sufficient particularity establishing that Entropic and MaxLinear formed and operated a fraudulent "patent laundering" conspiracy.**

To plead the formation and operation of a conspiracy, "a plaintiff must establish the existence of an agreement to participate in the wrongful act." *Id.* at \*15 (citing *Wasco Prods., Inc.*, 435 F.3d at 991–92). Moreover, the existence of a "common plan or design" is not sufficient. To be actionable, a conspiracy "*must* be accompanied 'by the commission of an actual tort.'" *Jones*, 2022 WL 18674459, at \*15 (C.D. Cal. Nov. 22, 2022) (citing *Applied Equip. Corp.*, 869 P.2d at 457) (emphasis original). And the underlying claim here—fraud—must be plead with

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

particularity. *See Schreiber Distribut. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

DISH does not come close to pleading a conspiracy or fraud. DISH offers only generic allegations that lump Entropic and MaxLinear together. Countercl. ¶¶ 124–131. DISH alleges only that "the Conspirators agreed and intended that breach of contract, fraud, and/or negligent misrepresentation be furthered and/or committed." *Id*. ¶ 127. Absent are any allegations as to *when* or *how* Entropic (a company formed days before the PPA was signed) and MaxLinear supposedly formed the conspiracy to defraud the MoCA Alliance. DISH's generic allegations are legally insufficient. *See Cisco Sys., Inc. v. STMicroelectronics, Inc.,* 77 F. Supp. 3d 887, 894 (N.D. Cal. 2014) (rejecting conclusory statements that conspirators "entered into an agreement and planned to provide [plaintiff] with inaccurate information").

The few allegations that DISH does make are based on a "patent laundering" theory that fails as a matter of law. According to DISH, the supposed aim of the "fraudulent scheme" was "to launder the Asserted Patents, thus 'washing' them of the RAND encumbrances set forth in the MoCA IPR Policy." Countercl. ¶ 124. That is impossible. Legal encumbrances like the RAND obligation "run with the patent" no matter what language is used in the transfer. *See Datatreasury Corp. v. Wells Fargo & Co.*, 552 F.3d 1368, 1372 (Fed. Cir. 2008). "This occurs whether or not an assignee had notice." *Innovus Prime, LLC*, 2013 WL 3354390, at *5 (N.D. Cal. Jul. 2, 2013). The MoCA IPR Policy confirms this: "the licensing obligations under this IPR Policy are intended to be binding (*e.g.*, as encumbrances) on all successors-in-interest regardless of whether [any specific contract] provisions [to that effect] are included." RJN, Ex. A, § 5.1.2. DISH does not and cannot plausibly plead that two sophisticated parties conspired to achieve a legally impossible result.

DISH's "patent laundering" theory is also contradicted by DISH's own allegations and exhibits. The lynchpin of DISH's theory is that the PPA was an attempt to "wash" the patents of the RAND obligations because it, according to

17

DISH, has no "indication of the RAND encumbrances." Countercl. ¶ 128. This is false. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[4] Specifically, Section 5.7 states that MaxLinear has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ PPA § 5.7. It also specifies that MaxLinear ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[5] and expressly states that Seller made ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Exhibit I to the PPA lists "MoCA." *Id.* Ex. I. DISH's allegation that the PPA contains no "indication of the RAND encumbrances" is contrary to the documents incorporated in its pleading and cannot support a conspiracy claim.

DISH also attached to the Counterclaims a letter admitting that Entropic's CEO repeatedly confirmed the RAND obligation in writing: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ DE 316-8 at 3.[6] Indeed, DISH itself wrote—and attached to the pleading—that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

---

[4] DISH attached the PPA as Exhibit 8. It is therefore incorporated by reference.

[5] DISH knows this documentation, including the MoCA IPR Policy, **was in fact** provided to Entropic because Entropic has produced the MoCA IPR Policy to DISH twice. Entropic-DISH-MoCA_003733 (this case); ENTROPIC_DISH_0016169 (in Case No. 22-cv-7959).

[6] DISH relies on and refers to the parties' communications, but only attaches a portion of them. Entropic attaches a more fulsome record regarding Entropic's intent to license on RAND terms. *See* Young Decl., Ex. A.

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

There are no plausible allegations that MaxLinear and Entropic formed and furthered a conspiracy. For this reason alone, the Court should dismiss Count 6.

### 2. DISH does not allege with sufficient particularity facts showing it was damaged by any acts in furtherance of the implausible "patent laundering" conspiracy.

DISH has not alleged any legally cognizable harm resulting from the alleged "patent laundering" conspiracy. DISH cannot allege harm from a supposed removal of the RAND obligation because no matter what Entropic or MaxLinear did, that obligation lives on. *See generally First Nat. Bank v. Continental Illinois Nat. Bank*, 933 F.2d 466, 469 (7th Cir. 1991) (finding no injury where defendant attempted unsuccessfully to breach a contract). So instead, DISH alleges that it has been harmed because Entropic has not made DISH an ***offer*** to license the patents. Countercl. ¶ 130. But DISH never alleges that the lack of an offer is an act Entropic took in furtherance of the alleged conspiracy to "wash" the patents of encumbrances. As DISH's allegations concede, Entropic repeatedly referred to the RAND encumbrance and thus took no act to "wash" the encumbrance away. Countercl. ¶ 52.

This element also fails because the only alleged harm, aside from a boilerplate statement regarding "diminution of reputation in the marketplace," is DISH's costs and expenses in defending this lawsuit. Countercl. ¶¶ 131, 147, 155, 159, 163. Neither of these can pass as a cognizable harm. Generic, boilerplate allegations of reputational harm, without more, are insufficient. *See, e.g.*, *FTC v. Apex Capital Grp., LLC*, 2022 WL 1060486, at *3 (C.D. Cal. Mar. 10, 2022) ("No standing without specific link tying the otherwise nebulous loss [of] reputation to an event showing actual or imminent harm") (citing *In re BofI Holding, Inc., Shareholder Litig.*, 2018 WL 2731954, at *11 (S.D. Cal. June 7, 2018)). Similarly, "[l]itigation costs are insufficient to establish standing for purposes of Article III." *San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 866 (S.D. Cal. Jan. 30, 2018). Under California law, "[t]he bringing of a colorable claim is not actionable." *Pacific Gas &*

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

*Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1130–31 (Cal. 1990). And in the patent context, "a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998). In other words, even if DISH prevailed in its claims, it could not defy the American Rule and recover its "costs and expenses" in defending this litigation—and such costs therefore cannot be used to establish that DISH has been harmed.

### C.      The Court should dismiss the Sherman Act, Section 1 claim (Count 8) under Rule 12(b)(6) because it is implausible and contrary to the documents incorporated in DISH's pleading.

To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, DISH must plead "evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553–58 (2007)). Pleading antitrust claims ***requires increased specificity***. *Id.* at 558. "Indeed, a plaintiff must allege enough facts to make misconduct more plausible than an 'obvious alternative explanation.'" *Nero Ag v. MPEG LA, L.L.C.*, 2010 WL 4366448, at *5 (C.D. Cal. Sept. 14, 2010) (quoting *Twombly*, 550 U.S. at 567).

DISH fails to plead an intent to harm or restrain trade (element 2) or any actual injury to competition (element 3). As detailed above, the PPA and Entropic's conduct (as DISH itself pleads) contradict DISH's allegations that Entropic or MaxLinear "attempt[ed] to 'wash' the Asserted Patents of any obligation to license on RAND terms" or that Entropic has "reject[ed] FRAND." *See* Section IV.B.1, *supra*. And even if the PPA were not so explicit, it could not "wash" away the RAND obligation

20

as a matter of law.

**1.  The plain language of the PPA shows that DISH's allegations of intent to harm or restrain trade or commerce are implausible.**

To plead an antitrust violation under Section 1 of the Sherman Act, DISH must plausibly allege that Entropic and MaxLinear intended "to harm or restrain trade or commerce among the several states." *Kendall*, 518 F.3d at 1047. DISH points to the PPA and alleges that "MaxLinear and Entropic entered into this agreement in an attempt to 'wash' the Asserted Patents of any obligation to license on RAND terms, despite each's obligation to do so pursuant to the MoCA IPR Policy." Countercl. ¶ 144. As addressed at Section IV.B.1, *supra*, this allegation is contradicted by the PPA's own language as well as Entropic's repeated confirmations that the Asserted Patents are subject to RAND obligations. Countercl. ¶ 52. It also is implausible that MaxLinear and Entropic intended to harm or restrain trade by achieving the impossible—removing an encumbrance from patents. Because the Court "will not accept as true pleading allegations that are contradicted by . . . exhibits attached to or incorporated into the pleading," *Vizio, Inc. v. Funai Elec. Co. Ltd.*, 2010 WL 7762624, at *3 (C.D. Cal. Feb. 3, 2010), DISH pleads **no facts** showing that Entropic intended to harm or restrain trade or commerce by entering into the PPA. Here, the obvious "alternative explanation" is much more plausible: the Asserted Patents were transferred with full knowledge of RAND obligations due to the MoCA IPR Policy, the obligations listed in the PPA itself, and Entropic's repeated references to the RAND obligation as pled by DISH itself. *See Nero Ag*, 2010 WL 4366448, at *5. Because DISH has failed to plausibly allege any intent to harm or restrain trade, this claim must be dismissed under Rule 12(b)(6).

**2.  The PPA has not injured—and cannot injure—competition.**

Even if the PPA had purported to transfer the patents without encumbrances, contrary to its plain language, the counterclaim still fails. As addressed above at

21

Section IV.B.1, *supra*, legal encumbrances "run with the patent." *See, e.g.*, *Datatreasury Corp. v. Wells Fargo & Co.*, 552 F.3d 1368, 1372 (Fed. Cir. 2008). The IPR Policy confirms this. RJN, Ex. A, § 5.1.2. In other words, even if everything DISH alleged were true, the RAND obligations on the Asserted Patents remain, and DISH never alleges to the contrary. Thus, the PPA cannot injure competition.

DISH's alleges that the PPA injures competition because is demanding "exorbitantly-high licensing fees." Countercl. ¶ 145. Note the lack of causation. The PPA cannot cause such fees because it does not require them nor any particular fees be charged. DISH cannot and does not plead otherwise. But moreover, the PPA—the basis of DISH's antitrust claim—actually demonstrates the futility of that claim on its face. The PPA expressly requires the RAND obligation to run with the patents. *See* Section IV.B.1, *supra*. RAND—*Reasonable* and Non-Discriminatory—license fees cannot be "exorbitantly-high" by definition. Reasonable cannot be unreasonable. Thus, DISH does not plausibly allege the PPA injures competition.

But even if DISH had alleged the PPA caused the purported injury to competition, the claim still would fail. "[E]ven in the context of FRAND licensing agreements, 'an otherwise lawful monopolist's end-run around price constraints, even when deceptive or fraudulent, does not alone present a harm to competition.'" *Vizio, Inc. v. Funai Elec. Co. Ltd.*, 2010 WL 7762624, at *5 (C.D. Cal. Feb. 3, 2010) (quoting *Rambus v. FTC*, 522 F.3d 456, 466 (D.C. Cir. 2008)). DISH's counterclaim cites *HTC Corp. v. IPCom GmbH & Co., KG*, 2010 WL 11719073, at *7 (D.D.C. Nov. 5, 2010) as purported support for its claim. Countercl. ¶ 145. But *IPCom* stands for the exact opposite proposition because it dismissed a nearly identical antitrust claim to the one DISH seeks to bring. The *IPCom* Court concluded that even if assignor there had "only given lip service to its [RAND] obligation," even if the assignee "may have agree[d] [Redacted] with no intention of doing so," and "[e]ven if either or both of these actions constitutes deceptive conduct, the Court discerns no effect on the competitive structure of the market" because "all of [counterclaimant's]

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S
COUNTERCLAIMS**

1    competitors who practice the technology of the patents now owned by

2    [plaintiff/assignee] are facing the same demands from the same licensor, [plaintiff]."

3    *Id.* at *7. DISH's antitrust claim should be dismissed for the same reasons.

### 3.    DISH fails to plead anticompetitive effects.

5    Even assuming if it were possible for the PPA to cause the alleged injury, the

6    claim *still* would fail because the alleged anticompetitive effects—that is, how

7    specifically the market has been harmed—are woefully inadequate. "In any antitrust

8    claim, a critical issue is whether the defendant's conduct has or will have

9    anticompetitive effects in a given product market." *Intel Corp. v. Fortress Inv. Grp.*

10   *LLC*, 511 F. Supp. 3d 1006, 1014 (N.D. Cal. 2021). Anticompetitive effects must be

11   shown through direct evidence, which is "proof of actual detrimental effects, such as

12   reduced output, increased prices, or decreased quality in the relevant market." *Ohio*

13   *v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). Here, DISH alleges that Entropic's

14   conduct has resulted in two detrimental effects: (1) "exorbitantly-high licensing fees"

15   and (2) "expensive litigation." Countercl. ¶¶ 145–46. Neither allegation meets the

16   pleading standards of showing an ***actual, concrete*** anticompetitive effect on the

17   market.

18   DISH's first purported detrimental effect is licensing fees demanded as part of

19   litigation. *See* Countercl. ¶ 145 (referencing the $1 billion dollar litigation demand

20   made by Entropic). However, "what [Entropic] has demanded in litigation—even if

21   extremely high—with respect to [the Asserted Patents] is of limited probative value.

22   A litigation demand may have some nexus to reasonable royalties if rationally based,

23   but it is still only a demand; **there is no indication that anyone has paid that**

24   **demand or anything close to it.**" *Intel Corp.*, 511 F. Supp. 3d at 1028 (dismissing

25   Sherman Act § 1 claims for failure "to adequately allege that there was

26   supracompetitive pricing"). DISH does not "allege any instance in which it has in

27   fact paid higher royalties" or that Entropic's portfolio "prevented it from making any

28   product or practicing any technology." *Intel Corp. v. Fortress Inv. Grp. LLC*, 2022

23

WL 16756365, at *2 (9th Cir. 2022) (affirming dismissal of Section 1 Sherman Act claims against an alleged patent aggregation scheme). Further, DISH does not allege that this licensing demand was even to DISH (it was not). Because there is no allegation that anyone has paid this demand, or that, even if paid, it was (1) for the Asserted Patents; and (2) unwarranted, there simply cannot be a properly pled anticompetitive effect.

DISH's identification of litigation expenses fails for similar reasons. "[U]nder the *Hynix* doctrine, a plaintiff seeking to establish the right to antitrust damages from petitioning activity [] must plausibly allege: (1) the existence of an independent anticompetitive injury and (2) a causal connection between the petitioning conduct and the pre-existing anticompetitive injury." *AliveCor, Inc. v. Apple Inc.*, 2023 WL 9181478, at *4 (N.D. Cal. June 30, 2023) (citing *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1097 (N.D. Cal. 2007)). As set forth above, DISH cannot plausibly allege the existence of an independent anticompetitive injury. In other words, anticompetitive effects based on litigation are derivative; they cannot stand alone. Because DISH has failed to plausibly allege any independent anticompetitive injury, as addressed immediately above, this allegedly anticompetitive effect also fails.

### D. The Court should dismiss Count 9 for Violation of the Cartwright Act for the same reason that DISH does not plausibly allege an antitrust violation.

The Cartwright Act is "California's equivalent to the Sherman Act," *William O. Gilley Enter., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 661 (9th Cir. 2009), and "the analysis under the Cartwright Act is identical to that under the Sherman Act." *Name.Space, Inc. v. Internet Corp. of Assigned Names and Numbers*, 795 F.3d 1124, 1131 n.5 (9th Cir. 2015). DISH has provided no additional allegations specific to the Cartwright Act. *Compare* Countercl. ¶¶ 141–47 *with id.* ¶¶ 150–55. Accordingly, DISH's claims under the Cartwright Act should be dismissed for the same reasons as

1  set forth above with respect to the Sherman Act.

2    **E.**  **The Court should dismiss Count 10 for Patent Misuse because it is**
3      **not a claim and because DISH does not plausibly allege that**
4      **Entropic misused its patent rights.**

5    As an initial matter, patent misuse is an affirmative defense, not a claim.
6  *Enercon GmbH v. Erdman*, 13 Fed. Appx. 651, 652 (9th Cir. 2001) (citations
7  omitted) ("[P]atent misuse is an affirmative defense to a suit for patent infringement,
8  not an independent cause of action."); *see also B. Braun Med., Inc. v. Abbot Lab'ys*,
9  124 F.3d 1419, 1427 (Fed. Cir. 1997) (stating patent misuse is "an affirmative
10  defense" that "does not . . . result in an award of damages to the accused infringer").
11  DISH's claim fails for that reason alone.

12    Patent misuse also requires a showing that "the patentee has impermissibly
13  broadened the physical or temporal scope of the patent grant and has done so in a
14  manner that has anticompetitive effects." *Princo Corp. v. Int'l Trade Comm'n*, 616
15  F.3d 1318, 1328 (Fed. Cir. 2010). The doctrine of patent misuse serves to ensure a
16  patentee does not obtain a market benefit beyond the statutory rights granted by the
17  Patent Act. *Id.* Patent misuse is about "'patent leverage,' *i.e.* the use of the patent
18  power to impose overbroad conditions on the use of the patent in suit that are 'not
19  within the reach of the monopoly granted by the government.'" *Id.* at 1331 (citation
20  omitted). A patent misuse claim requires "allegations of conduct that had the effect
21  of impermissibly extending the limited protection from competition by the . . .
22  patent." *Seville Classics, Inc. v. Neatfreak Grp., Inc.*, 2017 WL 3473932, at *4 (C.D.
23  Cal. Feb. 14, 2017) (citation omitted) (holding conclusory recitations of patent
24  misuse elements failed to adequately allege patent misuse); *see also Raines v. Switch
25  Mfg.*, 1997 WL 578547, at *5 (N.D. Cal. July 28, 2017) (same).

26    DISH does not allege any conduct that had the effect of impermissibly
27  extending the scope of the Asserted Patents. Patent misuse requires broadening the
28  scope beyond **what the Patent Act grants**. The Patent Act grants a temporal

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

monopoly over the technology claimed in the Asserted Patents. DISH pleads no allegations that Entropic has exceeded the monopoly rights *granted by the government*. Instead, it pleads only that Entropic demands more in licensing for those rights than DISH believes proper due to RAND obligations. Countercl. ¶ 158. This "claim" fails on its merits and should be dismissed.

**F.    The Court should dismiss Count 11 for Violation of the California Business and Professions Code because DISH does not plausibly allege any unlawful, unfair, or fraudulent business practice by Entropic.**

California's Unfair Competition Law ("UCL") "defines unfair competition as any unlawful, unfair or fraudulent business practice." *Conder v. Home Savings of America*, 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010) (quoting *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999)). As explained above, DISH's Challenged Counterclaims should be dismissed as insufficiently plead. DISH's UCL claim should also be dismissed because there are no allegations of unlawful, unfair, or fraudulent business practices beyond a deficient breach of contract claim. *Conder*, 680 F. Supp. 2d at 1176 ("[A] breach of contract claim cannot form the basis for a UCL claim without additional unlawful, unfair, or fraudulent conduct.").

**G.    The Court should dismiss Counts 6 and 8–11 under the *Noerr-Pennington* Doctrine.**

In addition to the reasons stated above, Counts 6 and 8–11 of DISH's Counterclaim must also be dismissed under the *Noerr-Pennington* doctrine. "The *Noerr–Pennington* doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). This doctrine protects the filing of lawsuits and bars antitrust and common-law tort claims based on alleged harm from litigation. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*,

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

546 F.3d 991, 1007 (9th Cir. 2008). Because DISH's claims in Counts 6 and 8–11 are predicated on alleged harm from Entropic filing suit—a protected right—they should be dismissed.

Courts have routinely dismissed claims for common law torts, antitrust violations, and violations of state statutes that were based on the filing of patent infringement suits by holders of standards-essential patents. For instance, this court found a patent holder of standards-essential patents was immune from liability for litigation expenses because the *Noerr-Pennington* doctrine protected the holder's right to file patent litigation. *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, 2016 WL 7049263, at *2-4 (C.D. Cal. Aug. 9, 2016). Similarly, the court in *In re Innovatio IP Ventures*, *LLC Pat. Litig.* applied the *Noerr-Pennigton* doctrine to dismiss claims for "RICO, unfair competition, civil conspiracy" brought against the holder of standards-essential patents. 921 F. Supp. 2d 903, 922 (N.D. Ill. 2013). The *Innovatio* court held that a RAND commitment did not prevent a patent holder from filing or threatening litigation to enforce its rights, and thus the *Noerr-Pennington* doctrine applied to protect a patent holder from liability for enforcing or threatening to enforce its rights in court. *Id.* at 915–916. Further, in *Apple, Inc. v. Motorola Mobility, Inc.*, the court rejected antitrust claims where the injury alleged was "the attorneys fees and costs that [were] incurred responding to the patent litigation initiated by Motorola," the holder of standards-essential patents. 886 F. Supp. 2d 1061, 1076 (W.D. Wis. 2012); *id.* at 1077 (dismissing claims under Cal. Bus. & Prof. Code § 17200 for the same reason).

For Counts 6 and 8–11, DISH's allegations of harm are based on Entropic exercising its right to enforce its patent rights in court. DISH complains of "the costs and expenses associated with litigation" and the "diminution of reputation in the marketplace," both of which are harms tied to Entropic filing suit. Countercl. ¶ 131; *see also id.* at ¶¶ 130, 147, 155, 159, 163. But Entropic's filing of suit is a protected right and thus cannot give rise to liability under state statutes (Counts 9 and 11),

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

antitrust law (Counts 8 and 10), or common law torts (Count 6). *See Theme Promotions*, 991 F.3d at 1007. DISH does not and cannot allege that Entropic's allegations are a sham, and thus no exception to the *Noerr-Pennington* doctrine applies. *See TCL Comm'cns*, 2016 WL 7049263, at \*4.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Entropic respectfully requests that the Court dismiss Counts 3, 6, and 8–11 of DISH's Counterclaims against Entropic with prejudice.

Dated: February 21, 2024                    **K&L GATES LLP**

By: */s/ Christina Goodrich*
Christina Goodrich (SBN 261722)
Cassidy T. Young (SBN 342891)
K&L Gates, LLP
10100 Santa Monica Boulevard,
8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001
christina.goodrich@klgates.com
cassidy.young@klgates.com

James A. Shimota (*pro hac vice*)
70 W. Madison Street, Ste 3300
Chicago, Illinois 60602
Telephone: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com

Peter E. Soskin (SBN 280347)
4 Embarcadero Center, Ste 1200
San Francisco, CA 94111
Telephone: (415) 882-8220
peter.soskin@klgates.com

***Attorneys for Plaintiff, Entropic Communications, LLC***

**ENTROPIC'S NOTICE OF MOTION AND MOTION TO DISMISS DISH'S COUNTERCLAIMS**

1

**CERTIFICATE OF COMPLIANCE**

2

The undersigned, counsel of record for Plaintiff Entropic Communications,

3

LCC, certifies that this brief contains 6,921 words, which complies with the word

4

limit of L.R. 11-6.1.

5

6

Dated: February 21, 2024                     **K&L GATES LLP**

7                                              By: */s/ Christina Goodrich*
                                               Christina Goodrich (SBN 261722)
8                                              Cassidy T. Young (SBN 342891)
                                               K&L Gates, LLP
9                                              10100 Santa Monica Boulevard,
                                               8th Floor
10                                             Los Angeles, CA 90067
                                               Telephone: (310) 552-5000
11                                             Fax: (310) 552-5001
                                               christina.goodrich@klgates.com
12                                             cassidy.young@klgates.com

13                                             James A. Shimota (*pro hac vice*)
                                               70 W. Madison Street, Ste 3300
14                                             Chicago, Illinois 60602
                                               Telephone: (312) 807-4299
15                                             Fax: (312) 827-8000
                                               jim.shimota@klgates.com
16
                                               Peter E. Soskin (SBN 280347)
17                                             4 Embarcadero Center, Ste 1200
                                               San Francisco, CA 94111
18                                             Telephone: (415) 882-8220
                                               peter.soskin@klgates.com
19
                                               ***Attorneys for Plaintiff, Entropic
20                                             Communications, LLC***

21

22

23

24

25

26

27

28

29