KILPATRICK TOWNSEND & STOCKTON LLP
April E. Isaacson (SBN 180638)
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran (SBN 347617)
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell (*pro hac vice*)
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba (*pro hac vice*)
wkadaba@kilpatricktownsend.com
Michael J. Turton (*pro hac vice*)
mturton@kilpatricktownsend.com
Courtney S. Dabbiere (*pro hac vice*)
cdabbiere@kilpatricktownsend.com
Christopher S. Leah (*pro hac vice*)
cleah@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.; CoxCom, LLC; and*
*Cox Communications California, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>COX COMMUNICATIONS, INC.; COXCOM, LLC; and COX COMMUNICATIONS CALIFORNIA, LLC,<br><br>        Defendants. | LEAD CASE:<br>Case No. 2:23-cv-1043-JWH-KES<br><br>RELATED CASE:<br>Case No. 2:23-cv-1047-JWH-KES<br><br>**COX DEFENDANTS' RESPONSE TO ENTROPIC'S MOTION TO DISMISS COUNTERCLAIMS** |

### REDACTED DOCUMENT SOUGHT TO BE SEALED

COX COMMUNICATIONS, INC., COXCOM, LLC, AND COX COMMUNICATIONS CALIFORNIA, LLC,

          Counter-Claimants,

     v.

ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR COMMUNICATIONS LLC; AND MAXLINEAR, INC.

          Counter-Defendants

1

# TABLE OF CONTENTS

2

I.      INTRODUCTION ................................................................8

3

II.     SUMMARY OF THE FACTS ..............................................9

4       A.      MoCA and the IPR Policy's Application to Cox in Light
                of Plaintiff's Complaint..............................................9

5

6       B.      Plaintiff Improperly Purchases and Asserts Patents that are
                Encumbered by the DOCSIS License .........................12

7

        C.      The Counterclaims Address Plaintiff's Tortious
8               Interference and Void Assignment and the Significant
                Harm it is Causing ...................................................14

9

III.    LEGAL STANDARD ......................................................14

10

IV.     ARGUMENT....................................................................15

11

12      A.      Cox Sufficiently Pled a Claim for Tortious Interference
                with the IPR Policy ..................................................15

13              1.      Cox's Pleading Identifies Plaintiff's Knowledge of
                        the Contract and Intentional Actions to Induce
14                      MaxLinear to Breach .......................................16

15              2.      Cox Alleges Actual Breach or Disruption .................18

16                      a)      Cox Alleges Facts Demonstrating
                                MaxLinear's Breach by Improper Patent
17                              Assignments.........................................19

18                      b)      Cox Alleges Facts Showing MaxLinear
19                              Breached its Confidentiality Obligations .........22

20              3.      Cox's Pleading Alleges Cognizable Harm .................23

21                      a)      Cox Pled Cognizable Harm Resulting from
22                              the Improper Patent Assignments...................23

                        b)      Cox Pled Cognizable Harm Due to Disclosure
23                              of Confidential Information.........................27

24              4.      The Court Has Supplemental Jurisdiction Over
25                      Cox's Claim for Tortious Interference Based on
                        MaxLinear's Breach of its Confidentiality
26                      Obligations ...................................................28

27      B.      Cox Properly Seeks Declaratory Judgment Voiding the
28              Assignments ............................................................30

V.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT
      COX LEAVE TO AMEND................................................................31

VI.   CONCLUSION ............................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................15

*Bazarganfard v. Club 360 LLC,*
  No. 2:21-cv-02272-CBM-PLA(x), 2023 WL 2354810
  (C.D. Cal. Jan. 26, 2023) ........................................................29

*Bear Down Brands v. Bora Servs., S.R.L.,*
  No. SACV 22-01998-CJC, 2023 WL 5167355
  (C.D. Cal. May 25, 2023) ........................................................17

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...........................................................14, 15

*Brandt v. Superior Court,*
  693 P.2d 796 (Cal. 1985) ........................................................25

*Cheng v. AIM Sports, Inc.,*
   No. CV 10-3814 PSG (PLAx), 2011 WL 13176754
  (C.D. Cal. May 19, 2011) ...................................................29, 30

*Copenbarger v. Morris Cerullo World Evangelism, Inc.,*
  239 Cal. Rptr. 3d 838 (2018) ..................................................25

*Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mtg. Corp.,*
  525 F.3d 822 (9th Cir. 2008) ..................................................15

*Fortinet, Inc. v. Forescout Techs., Inc.,*
  No. 20-cv-03343-EMC, 2021 WL 5565836
  (N.D. Cal. Nov. 29, 2021) .......................................................29

*Gilligan v. Jamco Dev. Corp.,*
  108 F.3d 246 (9th Cir.1997), and 12(b)(6).............................14

*Guerra v. Sutton,*
  783 F.2d 1371 (9th Cir. 1986) ................................................31

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
No. 6:18-CV-00243-JRG, 2018 WL 6617795
(E.D. Tex. Dec. 17, 2018) ................................................................... 24

*Kor. Supply Co. v. Lockheed Martin Corp.*,
131 Cal. Rptr. 2d 29 (2003) ............................................................... 17

*Lee v. Hum. Biostar, Inc.*,
No. CV-12-05668 MWF, 2013 WL 12130258
(C.D. Cal. Jan. 28, 2013) ................................................................... 25

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ............................................................ 15

*Moore v. Apple, Inc.*,
73 F. Supp. 3d 1191 (N.D. Cal. 2014) .............................................. 17

*Nestle USA, Inc., v. Best Foods LLC*,
562 F. Supp. 3d 626 (C.D. Cal. 2021) ................................ 18, 19, 22, 23

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
791 P.2d 587 (Cal. 1990) ............................................................. 19, 25

*Sandow Fred Segal, LLC v. Cormackhill, LP*,
No. CV 16-6653-VAP, 2017 WL 5714542
(C.D. Cal. Apr. 17, 2017) ................................................................... 18

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ............................................................ 18

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
726 F.3d 1306 ..................................................................................... 26

*Thompson v. Davis*,
295 F.3d 890 (9th Cir. 2002) .............................................................. 14

*Ticketmaster L.L.C. v. Prestige Ent., Inc.*,
306 F. Supp. 3d 1164 (C.D. Cal. 2018) .............................................. 20

*In re Tracht Gut, LLC*,
836 F.3d 1146 (9th Cir. 2016) ............................................................ 15

*Tripharma, LLC v. First Fruits Bus. Ministry LLC*,
No. 8:21-cv-01806-JVS, 2023 WL 2695476
(C.D. Cal. Feb. 15, 2023) .............................................................. 17, 18

*United States v. City of Redwood City*,
    640 F.2d 963 (9th Cir. 1981) ............................................................... 14

*Viskase Corp. v. Am. Nat. Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001) ......................................................... 31

*Visto Corp. v. Sproqit Techs., Inc.*,
    360 F. Supp. 2d 1064 (N.D. Cal. 2005) ............................................ 25

*Williams v. Apple, Inc.*,
    449 F. Supp. 3d 892 (2020) ............................................................... 26

**Statutes**

28 U.S.C. § 1367 .................................................................................... 28

**Other Authorities**

Fed. R. Civ. P. 8 .......................................................................... 14, 15, 24

Fed. R. Civ. P. 12 .................................................................. 16, 17, 18, 24

# I.     INTRODUCTION

Cox's counterclaims arise out of the fact that the original owners of the asserted patents—the MaxLinear entities—were signatories to, founders of and/or participants in MoCA. As a result, the MaxLinear entities were contractually bound by the MoCA IPR policy. Cox, as a former member of MoCA, was a beneficiary of those contractual obligations. The MoCA IPR Policy imposed obligations on MaxLinear to ensure it had the ability to grant licenses on "RAND" terms to any patents with claims essential to the MoCA standards.

MaxLinear knew that, to the extent it sought to monetize the asserted patents against Cox, it was bound by the RAND requirements under the MoCA IPR Policy. So, MaxLinear transferred numerous patents, including the asserted patents, to Plaintiff via assignments seeking to avoid the RAND encumbrances in exchange for payment and an interest in any profits Plaintiff may receive from assertion of the patents. Through this transfer, MaxLinear breached the MoCA IPR Policy by denying Cox and others the benefit of the fully paid-up license as well as assignment obligations, resulting in voidance of the assignment. Further, Plaintiff induced MaxLinear's breach to acquire the patents unencumbered so they could both reap an illegal profit. MaxLinear's breach caused and is causing significant harm to Cox.

Plaintiff asserts certain patents it acquired from MaxLinear against Cox based on allegations that the asserted patents are essential to MoCA standards. Cox thus asserted claims for breach of contract and unjust enrichment against MaxLinear (Counts I and IV), a claim for tortious interference with contract against Plaintiff (Count III), and a declaratory judgment claim against both parties that the assignment of the asserted patents was void (Count II). Plaintiff has moved to dismiss Counts II and III for failure to state a claim, repeatedly challenging the truth of Cox's allegations rather than their sufficiency. But the counterclaims do set forth facts identifying a valid contract and alleging Plaintiff's knowledge of the contract and MaxLinear's obligations thereunder. The counterclaims further plead facts alleging MaxLinear's

transfer of the asserted patents to Plaintiff breached these obligations, causing harm to Cox and voiding the assignment. The counterclaims also make numerous factual allegations of Plaintiff's intentional actions, which are more than sufficient to state a claim for tortious interference.

Forced to face the consequences of its actions, Plaintiff seeks to muddle the issues by deliberately misreading the Counterclaims and raising purported factual disputes that are inappropriate under the 12(b)(6) standard. Cox's pleading speaks for itself—Cox more than adequately pleads Counts II and III. Accordingly, this Court should deny Plaintiff's Motion.

## II.    SUMMARY OF THE FACTS

### A.    MoCA and the IPR Policy's Application to Cox in Light of Plaintiff's Complaint

To protect entities implementing or using essential MoCA technology, the Intellectual Property Rights Policy ("IPR Policy") contained specific and detailed requirements applicable to any patents containing or potentially containing claims essential to the MoCA standards. Generally, the IPR Policy obligated MaxLinear to provide licenses to any patents containing patent claims essential to such standards on fair, reasonable, and nondiscriminatory terms. (DE 266-1, ¶¶ 538-39, 544-50). It also required MaxLinear to represent, warrant, and covenant that it had the power and authority to bind itself to the IPR policy, including by granting the relevant patent licenses. (*Id.*, ¶ 548; DE 94-1, § 4.1.2). And it required yet another representation, warranty, and agreement that MaxLinear "has not and will not intentionally transfer or otherwise encumber its" potential essential patents "for the purpose of circumventing the obligation to grant licenses contained in this IPR Policy." (*Id.*)

As a founder and member of MoCA—currently and during Cox's membership—MaxLinear was aware that Cox, as a former participant and member of MoCA, would have been induced to rely upon the IPR commitments, representations, and warranties made by Entropic and MaxLinear in connection with MoCA. (DE 266-

1, at ¶¶ 531-550). Indeed, Plaintiff acknowledges that MoCA issued the IPR Policy— the "Intellectual Property Rights (IPR) Policy" attached as Exhibit A to the counterclaims (DE 96)—"[t]o encourage industry participants to adopt MoCA technology and the MoCA standard." (DE 329-1 at 11).

Plaintiff points to Section 5.1.1 of the IPR Policy and claims that "it is the responsibility of the prospective licensee to request that license from the patentee" and "there is no obligation on Alliance Members to offer a license until such a request is made." (*Id.*). That is not actually true. What Section 5.1.1 recognizes is that such requests may come from "any other ***then-current*** Alliance Party," which is defined as "a Participant or Voting Member" of MoCA. (DE 96 (IPR Policy), § 2 (definitions), § 5.1.1 (emphasis added)). Aware that participants and voting members of MoCA would fluctuate, the MoCA organizers specifically provided mechanisms for former members to obtain the benefits of the IPR Policy. In particular, Section 7 governs the survival of the IPR Policy, specifying that once a participant's membership terminates or expires, that "terminated Alliance Party shall be entitled to request or require any Alliance Party to license" essential patents on FRAND terms. (*Id.*, § 7.1).

In short, while "then-current" participants and members of MoCA may make a "written request" for a FRAND-compliant license offer and negotiations, the IPR Policy recognizes and specifies that former participants, like Cox, can simply "request or require" such a license. That is, in fact, what Cox has done. First, before Cox filed its counterclaims, Cox's original answer pled a license defense given "that Plaintiff and/or its predecessors in interest granted rights in the Asserted Patents to Cox" ), as well as a FRAND defense for Plaintiff's failure "to offer a license on terms that are fair, reasonable, and non-discriminatory, as to any Asserted Patents that are enforceable, valid, and standard essential," such as via the IPR Policy. (DE 48, ¶¶ 504, 511). Each of these defenses requested or required enforcement of Cox's rights under the MoCA IPR Policy, and they did so in writing, even though not required under Section 7.1. Second, as noted in the proposed amended and supplemental

counterclaims, Cox also and, in any event, has specifically requested in writing Entropic's proposed licensing terms that would be consistent with the IPR Policy. (DE 266-1, ¶ 571).

Plaintiff's brief glosses over other important aspects of Cox's averments, including how the IPR Policy sought to protect entities adopting such technology by including specific and detailed requirements applicable to any patents containing or potentially containing claims essential to the MoCA standards. (DE 266-1, ¶¶ 547-549). The IPR Policy not only obligated MaxLinear to provide licenses to any patents containing patent claims essential to such standards on RAND terms (*id.*, ¶ 548), but also to represent, warrant, and covenant that it had the power and authority to bind itself to the IPR Policy, including by granting the relevant patent licenses (*id.*, ¶ 549; DE 94-1, § 4.1.2). And, it required yet another representation, warranty, and agreement that MaxLinear "has not and will not intentionally transfer or otherwise encumber its" potential essential patents "for the purpose of circumventing the obligation to grant licenses contained in this IPR Policy." (*Id.*).

The IPR policy also sought to protect implementers should potentially essential patents be transferred to unaffiliated third parties. Specifically, the IPR Policy set out very detailed and specific terms to ensure that future IPR holders (and other MoCA members) were aware of the relevant obligations continually imposed upon MaxLinear given its representation, warranty, and covenant that it would have the power to grant relevant licenses. For example, the IPR Policy specified in § 5.1.2 that "[a]ny sale, assignment or other transfer by an Alliance Party [like MaxLinear] . . . to an unaffiliated third party of . . . any patent or patent application that reasonably may contain or result in an Essential Patent Claim, shall be made subject to the terms in this IPR Policy." (*Id.*, ¶ 549; DE 94-1, § 5.1.2). The IPR Policy further specified, at minimum, that "any agreement for transferring or assigning ... any patent or patent application that reasonably may contain or result in an Essential Patent Claim,

1   includes a provision that such transfer or assignment is subject to existing licenses

2   and obligations to license imposed" under the IPR Policy. (*Id.*, ¶ 549).

3       **B.**    **Plaintiff Improperly Purchases and Asserts Patents that are**

4       **Encumbered by the DOCSIS License**

5       Plaintiff was formed in 2021. (DE 1, ¶ 33). That same year, ▮▮▮▮▮

6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*; DE 266-1,

9   ¶¶ 556-57). Entropic makes no products, engages in no research, and offers no

10  services. Instead, Entropic was formed solely to monetize MaxLinear's patents

11  through licensing and assertion.

12      When Plaintiff acquired these patents, however, they were already encumbered

13  with numerous obligations MaxLinear incurred, including under the MoCA IPR

14  Policy. (DE 266-1, ¶¶ 551-55). As set forth in Cox's counterclaims, Plaintiff's

15  Complaint contains averments concerning the relevance of MoCA to the asserted

16  patents, attaches as exhibits the asserted patents that discuss the MoCA standards,

17  expressly identifies certain claims as essential, and/or references as exhibits claim

18  charts that compare one or more claims within the asserted patents to the MoCA

19  standards. (*Id.*, ¶¶ 563-64). If the averments in Plaintiff's complaint are true, one or

20  more of its asserted patents reasonably may contain patent claims essential to MoCA.

21  Thus, the IPR Policy is naturally relevant, as it continues to bind MaxLinear, who

22  should have ensured any assignment complied with the IPR Policy which encumbered

23  the patents. But while Plaintiff knew about MoCA and its policies, it deliberately

24  sought and obtained the patents free of encumbrances from MaxLinear and is now

25  improperly asserting these patents after refusing to provide RAND-compliant offers.

26  (DE 266-1, ¶¶ 556-73). And Plaintiff did so by inducing MaxLinear to breach the IPR

27  Policy obligations by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   ████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████

3   ███████████████████████████████████████████. (DE 266-

4   1, ¶¶ 570-71).

5          On March 31, 2021, MaxLinear Communications LLC executed an assignment

6   agreement ("Assignment") that was filed with the U.S. Patent Office and purports to

7   assign the Asserted Patents to Entropic. (*Id.*, ¶ 560; *see also* DE 94-2 (Ex. B)). Notably

8   absent from the ████████████████t and Assignment is any provision

9   assuming the obligations MaxLinear incurred under the IPR Policy, or any of the

10  continued existence of encumbrances. (DE 266-1, ¶ 566). In fact, the Assignment

11  purports to assign "all right, title, and interest" to the relevant asserted patents and to

12  make such assignment "free and clear of all liens, claims and encumbrances other

13  than those" Plaintiff "expressly agreed in writing will continue to encumber the Patent

14  Rights after execution and delivery of this Assignment of Patent Rights." (*Id.*, ¶ 566).

15  Yet there is no accompanying express, written agreement by Plaintiff as to the

16  continued existence of any encumbrance. (*Id.*). Likewise, the ████████████

17  ████████████████████████████████████████████████████

18  █████████████ in direct violation of the IPR Policy. (*Id.*).

19         The assignment by which Plaintiff purportedly acquired title to the asserted

20  patents violates the MoCA IPR Policy and is void. (*Id.*, ¶ 567). Additionally,

21  MaxLinear assigning the patents to Plaintiff to assist Plaintiff's effort to enforce

22  patents essential to MoCA constitutes a breach of MaxLinear's representation,

23  covenant, and warranty that it was binding itself to the obligation in the IPR Policy to

24  license the patents on RAND terms. (*Id.*, ¶¶ 576-79). Plaintiff was fully aware of

25  MaxLinear's contractual commitments to MoCA and the relevant IPR Policy

26  thereunder. (*Id.*, ¶ 585). Nonetheless, Plaintiff induced MaxLinear's breaches and

27  interfered with the contract to improperly assert ownership of the relevant patents and

28  entitlement to damages or royalties. (*Id.*).

1
2

**C.    The Counterclaims Address Plaintiff's Tortious Interference and Void Assignment and the Significant Harm it is Causing**

3
4
5
6
7
8

Cox has sustained substantial, direct injuries resulting from Plaintiff's improper assertion of these patents. (DE 266-1, ¶¶ 572-73). Accordingly, Cox asserts counterclaims against Plaintiff and MaxLinear. Count II asserts a claim for declaratory judgment that the patent assignments executed by Plaintiff and MaxLinear are void based on their violation of the obligations for assignments set forth in the IPR Policy. (DE 266-1, ¶¶ 580-82).

9
10
11
12
13
14
15

Count III asserts a claim for tortious interference with contract based on Plaintiff's awareness of the MoCA IPR Policy and MaxLinear's obligations thereunder, Plaintiff's inducement of breaches of MaxLinear's contractual obligations by inducing MaxLinear to attempt to assign various patents for Plaintiff to enforce and for Plaintiff to seek damages, despite Plaintiff's awareness that such patents may reasonably contain essential patent claims, and MaxLinear's breach of its contractual obligations resulting from Plaintiff's actions. (DE 266-1, ¶¶ 583-86).

16    **III.    LEGAL STANDARD**

17
18
19
20
21
22
23

Motions to dismiss for failure to state a claim are disfavored, *see Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

24
25
26
27
28

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the plaintiff's claim showing that the pleader is entitled to relief,'" which requires that the complaint "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (third alteration in original) (citation omitted). To survive a motion to dismiss,

a complaint need merely plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Id.* at 556, 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding claim must be facially plausible to survive motion to dismiss).

In deciding a motion to dismiss, this Court must credit all factual (but not legal) assertions made in the complaint, draw all reasonable factual inferences in favor of Cox, and use those factual assertions and inferences to determine whether Cox is plausibly entitled to relief. Fed. R. Civ. P. 8(a), 12(b)(6); *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150-51 (9th Cir. 2016); *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011). Dismissal is proper only where there is a "lack of a cognizable legal theory or ... [an] absence of sufficient facts alleged under a cognizable legal theory." *Tracht Gut,* 836 F.3d at 1151.

Here, under the correctly applied standards, Cox's counterclaims comply with the Federal Rules and provide the requisite notice of Cox's claims.

## IV.  ARGUMENT

### A.  Cox Sufficiently Pled a Claim for Tortious Interference with the IPR Policy

Contrary to Plaintiff's assertions (DE 329-1 at 12-24), Cox's counterclaim fully identifies a valid contract, Plaintiff's knowledge of the contract, and Plaintiff's acts that induced breach or disruption of the contract and caused damage and injury to Cox. (DE 266-1, ¶¶ 545-50, 556-73). Thus, Cox has alleged facts for every element of a tortious interference claim. *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mtg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008) ("Under California law, a claim for intentional interference with contract requires: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage.").

1    Plaintiff acknowledges Cox's counterclaim properly pleads a valid contract and

2    Plaintiff's knowledge of the contract. Plaintiff's attacks on the sufficiency of Cox's

3    counterclaim with respect to MaxLinear's breaches and resulting damage are based

4    on Plaintiff's mischaracterizations of Cox's claim and, in fact, ignore the actual

5    pleading. But that is not how Rule 12 works. As demonstrated below, Plaintiff's

6    challenges to the sufficiency of Cox's averments fail.

7    **1.    Cox's Pleading Identifies Plaintiff's Knowledge of the**

8    **Contract and Intentional Actions to Induce MaxLinear to**

9    **Breach**

10    Cox's counterclaim sufficiently pleads the elements of a tortious interference

11    claim, including Plaintiff's knowledge of the contract (DE 266-1, ¶¶ 302-07) and

12    Plaintiff's intentional acts designed to induce MaxLinear's breach or disruption of the

13    contract (*id.*, ¶¶ 308-14). Plaintiff does not dispute Cox's averments sufficiently plead

14    Plaintiff was aware of the IPR Policy and Plaintiff's intentional acts designed to

15    induce MaxLinear's acts assigning the asserted patents in violation of the IPR Policy.

16    In fact, Plaintiff only challenges whether Cox has plausibly alleged intentional acts

17    by Plaintiff designed to induce MaxLinear's breach of its confidentiality obligations

18    under the IPR Policy, asserting Cox has not pled Plaintiff was aware of the

19    confidential nature of the MoCA documents, sought their disclosure, and was aware

20    of the terms of the membership agreements. (DE 329-1 at 24). Plaintiff's challenges

21    ignore Cox's averments and the law.

22    Factually, Cox's counterclaims do include averments that Plaintiff was aware

23    of the confidentiality of the MoCA documents (which are stamped "MoCA

24    Confidential"), sought their disclosure, and was aware of the terms of the IPR Policy

25    at least based on this information being publicly available and ██████████████

26    ████████████████████████████████████. (DE 266-1, ¶¶ 561, 568-69).

27    Thus, Plaintiff's challenge falls flat.

28    Even so, the purported deficiencies Plaintiff identifies do not change the

sufficiency of Cox's claim under the law. To be intentional, a defendant's primary motive does not need to be disruption. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1203 (N.D. Cal. 2014). To satisfy the intent element for an intentional interference claim, a plaintiff must allege either that the defendant desired to interfere with the plaintiff's contractual agreements or, alternatively, that "the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Kor. Supply Co. v. Lockheed Martin Corp.*, 131 Cal. Rptr. 2d 29, 45 (2003). As the California Supreme Court held in *Korea Supply*, specific intent "is not a required element of the tort of interference." *Id.* at 46. "[I]t is sufficient to allege that the defendant knew that interference with the plaintiff's contract with a third party was certain or substantially certain to occur as a result of its actions." *Bear Down Brands v. Bora Servs., S.R.L.*, No. SACV 22-01998-CJC (DFMx), 2023 WL 5167355, at *2 (C.D. Cal. May 25, 2023). Moreover, "[u]nlike tortious interference with a prospective business advantage, which requires an independently wrongful act, the interference with an existing contract is 'a wrong in and of itself.'" *Tripharma, LLC v. First Fruits Bus. Ministry LLC*, No. 8:21-cv-01806-JVS (JDEx), 2023 WL 2695476, at *8 (C.D. Cal. Feb. 15, 2023).

Consistent with this standard, Cox has affirmatively alleged facts establishing Plaintiff's intentional acts of inducement, which is sufficient for purposes of Rule 12. For example, the counterclaim alleges facts showing Plaintiff knew of the MoCA standards, MoCA's IPR Policy, and MoCA membership based on publicly available information and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*E.g.*, DE 266-1, ¶¶ 561, 568-69). Cox's counterclaim further alleges facts showing Plaintiff engaged in intentional conduct, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    ████████████████████████████████████████████

2    ████████████████████████████████████████████

3    ████████████████████████████████████████████

4    ██████████████ all in breach the IPR Policy. (DE 266-1, ¶¶ 561, 568-69, 570).

5        It further alleges that Plaintiff engaged in its tortious conduct despite knowing

6 that harm to Cox was certain or substantially certain to occur as a result of Plaintiff

7 obtaining MoCA standards that form the basis of Plaintiff's infringement claims. (*Id.*,

8 ¶¶ 568-70). This meets the intentional inducement pleading requirements for tortious

9 interference. *See, e.g., Tripharma*, 2012 WL 12887079, at *16 (finding tortious

10 interference claim likely to succeed based in part on evidence of intentional actions

11 including "Defendant FFBM, with personal involvement, acquired the 892 Patent and

12 has purported to take all rights to commercially exploit it, free and clear of

13 TriPharma's rights").

14        Cox's allegations, taken as true, adequately plead that Plaintiff knew

15 interference was substantially certain to occur as a result of its improper requirement

16 that MaxLinear disclose confidential MoCA documents upon executing the ███████

17 █████████████. *See Nestle USA, Inc.*, *v. Best Foods LLC*, 562 F. Supp. 3d 626,

18 633 (C.D. Cal. 2021); *Sandow Fred Segal, LLC v. Cormackhill, LP*, No. CV 16-6653-

19 VAP (CFEx), 2017 WL 5714542, at *3, *7 (C.D. Cal. Apr. 17, 2017) (citing *Starr v.*

20 *Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

21              **2.**    **Cox Alleges Actual Breach or Disruption**

22        Cox's counterclaim sufficiently pleads actual breach or disruption of the IPR

23 Policy by MaxLinear improperly assigning the asserted patents without the required

24 RAND encumbrance and disclosing confidential MoCA information to Plaintiff in

25 violation of the IPR Policy. (DE 266-1, ¶¶ 556-72). As explained below, Plaintiff's

26 arguments do nothing to change the facts alleged in Cox's counterclaim establishing

27 MaxLinear's breaches, which are sufficient for purposes of Rule 12. *See, e.g.*,

28 *Tripharma*, 2023 WL 2695476, at *9 ("To adequately plead 'actual breach or

disruption,' a party may allege that the interference made performance of its contract 'more expensive or burdensome'—an actual breach is not required.") (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990)); *Nestle USA, Inc.*, 562 F. Supp. 3d at 633 ("Mere 'disruption of the contractual relationship' is all Plaintiffs must show to demonstrate the disruption element.") (citation omitted).

### a) **Cox Alleges Facts Demonstrating MaxLinear's Breach by Improper Patent Assignments**

Cox alleges facts sufficient to plausibly show MaxLinear breached its obligations under the IPR Policy when it transferred the asserted patents to Plaintiff without encumbrances. (DE 266-1, ¶¶ 547-50, 576). The counterclaims detail how the MoCA IPR Policy evolved to address patent hold-up, including hold-up by strangers to the standards setting process. (*Id.*, ¶¶ 540-43). Because of well-known concerns with non-practicing entities acquiring and asserting standard essential patents, the IPR Policy detailed multiple "provisions to minimize the potential for patent hold-up or patent litigation by strangers to MoCA." (*Id.*, ¶ 544). Those provisions included requirements that the standards themselves would remain confidential to MoCA members. (*Id.*, ¶¶ 544-46). The IPR Policy specified that the relevant patents necessary for the standards would be owned by the proper Alliance Party. (*Id.*, ¶ 547). While an Alliance Party could transfer such patents, they warranted and covenanted that such transfer would never be "for the purpose of circumventing the obligation to grant licenses contained in this IPR Policy." (*Id.*, ¶ 548). Any transfer required the relevant agreement to acknowledge the transferred patent was "subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws" under the IPR Policy. (*Id.*, ¶ 549). Thus, ***either*** MaxLinear must continue to own the relevant patents ***or*** it must "retain the right to grant any licenses for essential patents via multiple provisions" in the IPR Policy. (*Id.*, ¶ 550).

Plaintiff just disagrees and facially attacks the pleadings, ignoring the above averment. It then tries to distinguish Section 4.1.2, but in that section MaxLinear

"represents, warrants and covenants … that it has the power and authority to bind itself … to the obligations contained herein, including … the obligation to grant patent licenses." (DE 94-1, § 4.1.2). This is a present and future promise to retain the rights would maintain the right to grant licenses under the IPR Policy. *See Ticketmaster L.L.C. v. Prestige Ent., Inc*., 306 F. Supp. 3d 1164, 1172-73 (C.D. Cal. 2018) (under California law a covenant is a promise to do or refrain from doing a specific act). The continuing obligation to maintain the ability to grant such licenses is also apparent from the sentence in Section 4.1.2 that MaxLinear "agrees that it has not and will not" transfer relevant patents "for the purpose of circumventing the obligation to grant licenses contained in this IPR Policy." This "will not" clause shows a continuing promise that MaxLinear will ensure no transfer impairs its "obligation to grant licenses."

Plaintiff next claims that Section 5.1.2 of the IPR Policy allows MaxLinear to transfer its patents and thus there can be no breach. (*See* DE 329-1, at 16-18). But this does not address the above point – MaxLinear must retain the right grant relevant licenses. It is also merely attorney argument as to the meaning of various provisions in the IPR Policy, which is not only legally improper on a motion to dismiss that assumes the truth of Cox's pleadings, but also incorrect. (DE 329-1 at 16-17). Section 5.1.2 plainly says that any sale or transfer of patents with an Essential Patent Claim (A) "shall be subject to the terms in this IPR Policy" and (B) must "include[] a provision that such transfer … is subject to existing licenses and obligations to license…." In other words, all the provisions Cox relies on apply and Cox properly pled MaxLinear breached when it transferred in a way that violated its obligations.

Plaintiff then makes a series of representations that are false and irrelevant. It says Cox's averments are "demonstrably false" ████████████████████

**EXHIBIT I STANDARDS BODIES**

MoCA
DOCSIS

1   

2   

3  ██████████████████████████████████████████ is not compliance with the

4  detailed provisions of the IPR Policy, and cannot overcome Cox's averments that the

5  required language is absent in the PPA and various assignments filed with the Patent

6  Office.

7       Recognizing the Patent Purchase Agreement cannot save it, Plaintiff next

8  asserts that the associated obligations would run with the patents automatically or via

9  "successor in interest" language in § 5.1.2. (DE 239-1 at 18-23). But this again ignores

10  the point—MaxLinear must retain its "obligation to license" as the Alliance Party.

11  Moreover, Plaintiff's argument ignores Cox's averments showing that MaxLinear's

12  assignments ***affirmatively*** sought to strip out any encumbrance, including

13  encumbrances caused by the IPR Policy, so that Plaintiff was unconstrained by the

14  RAND license obligations to which MaxLinear was constrained. (DE 266-1, ¶¶ 540-

15  50, 556-73). It also ignores and contradicts language that both Plaintiff and

16  MaxLinear consistently point to in the IPR Policy (in §5.1.1 and 7.1) that the RAND

17  obligation is on the "Alliance Party," yet Entropic "is not and, since its formation, has

18  not been … an Alliance Party under the IPR Policy." (DE 266-1, ¶ 561). Assignment

19  of patents, however done, cannot convert the assignee into an "Alliance Party."

20  Indeed, it is for precisely this reason that MoCA required each "Alliance Party" to

21  maintain the right to grant licenses. Nor does § 5.1.2's requirement that transferees

22  ensure future successors-in-interest understand these terms change the result, as Cox's

23  averments demonstrate MaxLinear made no such assurance.

24       Plaintiff also asserts Cox's allegations of breach are implausible because

25  MaxLinear represented in the ████████████████████████████████████

26  ████████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████████

1 ████████████████████████ But the ████████████████████

2 is entirely consistent with, and demonstrates the problems with, MaxLinear's

3 breaching conduct – Plaintiff's "blame-game" suggests MaxLinear failed to inform

4 Entropic of the full scope of obligations imposed by the IPR Policy, which goes far

5 beyond requiring some "general" RAND commitment. Moreover, MaxLinear neither

6 retained rights to satisfy the continuing obligations imposed by the IPR Policy nor

7 met the specific obligations of the IPR Policy's transfer provisions.

8   Cox has sufficiently pled that the various assignments did not comply with the

9 IPR Policy and even sought to strip out the relevant obligations, and MaxLinear

10 breached the IPR Policy. (DE 266-1, ¶¶ 540-50, 556-573). These allegations

11 adequately plead breach or disruption. *See, e.g.*, *Nestle USA*, 562 F. Supp. 3d at 633.

12   **b)   Cox Alleges Facts Showing MaxLinear Breached its**

13   **Confidentiality Obligations**

14   Plaintiff argues the averments showing how MaxLinear breached its

15 confidentiality obligations are insufficient because Cox does not plead timing details

16 and Plaintiff says the materials were "issued" long ago. (DE 329-1 at 22-23). Plaintiff

17 points to no legal authority, and there is none, for the proposition that Cox must plead

18 the age of the materials. Indeed, "[m]ere 'disruption of the contractual relationship' is

19 all Plaintiffs must show to demonstrate the disruption element." *Nestle USA, Inc.,* 562

20 F. Supp. 3d at 633 (citation omitted). Cox has done that here. At best, Plaintiff is

21 simply raising a defense that may require discovery – but as stated, it has no merit

22 since all Plaintiff says is the materials "issued" more than 5 years ago, and cites not

23 to MaxLinear's obligation of confidentiality, but to Cox's – which depends on the

24 date by which Cox received the information. (DE 329-1 at 22-23).

25   Moreover, Paragraph 544 pleads that the MoCA standards themselves were

26 confidential to the MoCA members, while paragraph 546 pleads that "Confidential

27 Information" included materials so "designated in writing as confidential" by MoCA

28 and "[a]ll Alliance Draft Deliverable(s), Approved Draft Deliverable or

Deliverables," i.e., the standards themselves. (DE 266-1, ¶¶ 544, 546). Cox then quoted from those same standards, including the notice that "[t]his document and each element of this document are the Confidential Information of … MoCA and" its members and both "may enforce such obligations of confidentiality directly." (*Id*., ¶ 546). Cox also pled it was a MoCA member until July 2022 and the breach occurred during that time because "immediately after entering into the Services Agreement in 2021, Plaintiff obtained copies of the otherwise confidential MoCA standards." (*Id*., ¶ 569). In short, the MoCA standards are confidential, and Cox can enforce MaxLinear's breach of confidentiality. These allegations, taken as true, adequately plead actual breach or disruption. *See, e.g.*, *Nestle USA*, 562 F. Supp. 3d at 633.

### 3. Cox's Pleading Alleges Cognizable Harm

#### a) Cox Pled Cognizable Harm Resulting from the Improper Patent Assignments

Contrary to Plaintiff's assertions, Cox has pled numerous forms of direct, legally cognizable injuries caused by Plaintiff's and MaxLinear's unlawful actions, including harm to the benefit of the bargain Cox struck with MoCA and causing Cox to incur the expense of defending this case that could not have been brought but for the breaches. (DE 266-1, ¶¶ 538-50, 571-73, 577-79, 584-86). As set forth in its counterclaims, Cox suffered direct harm from the promises that MaxLinear breached. For entirely well-justified reasons, the IPR Policy promised that Cox would only have to deal with MaxLinear in terms of obtaining any applicable license for essential patents. (DE 266-1, ¶¶ 538-50). It included multiple enforcement mechanisms to ensure that any subsequent owner of a MaxLinear essential patent would be aware of and bound by these provisions. (*Id*., ¶¶ 548-50). Cox avers that the violation of MaxLinear's promises resulted in a void assignment to Plaintiff – which invalid assignment ultimately led to Plaintiff improperly asserting its patents and ultimately filing this very suit, depriving Cox of the benefits of MaxLinear's promises. (*Id*., ¶¶ 556-73). The harms that flow from MaxLinear's breaches are precisely the ones that

courts have recognized as cognizable injuries. *See, e.g.*, *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-CV-00243-JRG, 2018 WL 6617795, at \*4–5 (E.D. Tex. Dec. 17, 2018) (finding deprivation of contractual right to FRAND license supported existence of injury in fact).

Plaintiff's challenges to Cox's averments either facially attack the truth of the pleadings, wholly-ignoring the requirement that the pleadings must be accepted as true, or, again, simply ignore the relevant averments.

First, Plaintiff asserts that Cox cannot show but-for injury because the IPR Policy did not grant Cox the right to be free of actions to enforce the patents or seek damages, only the right to ask for (and after asking, receive) a FRAND license offer, so being sued by Entropic for something MaxLinear "was contractually authorized to do cannot be a plausible allegation of 'resulting damage' from any alleged breach of the IPR Policy." (DE 329-1 at 14-15). Plaintiff's argument, however, ignores the actual averments in Cox's pleading.

Plaintiff admits that Cox averred that Entropic had neither provided nor procured a RAND offer "despite Cox's prior request in writing." (DE 329-1 at 15 (citing (DE 266-1, ¶ 571)). Plaintiff nonetheless incorrectly suggests that the details of the timing and identities of Cox's written request are both defective and crucial to the sufficiency of Cox's pleading under Rule 12. Neither Fed. R. Civ. P. 12 nor Fed. R. Civ. P. 8 requires such details. Even so, Plaintiff is factually wrong. Cox made written requests, including in its amended answer that originally raised its defense (DE 48, ¶¶ 511, 513), the original counterclaims (DE 95), and in Cox Communications' written correspondence referenced in the counterclaims (DE 266-1, ¶ 571). Plaintiff's assertions are thus entirely meritless.

Indeed, Plaintiff's reliance on Section 5.1.1 is misplaced. As Plaintiff notes, Section 5.1.1 requires a RAND offer "upon the written request of any ***other then-current Alliance Party***." (DE 329-1, at 15 (citing DE 94-1 (IPR Policy), 5.1.1 (emphasis added))). But the counterclaims explain that Cox joined MoCA in 2005

and left in July 2022. (DE 266-1, ¶ 552). Thus, when Cox presented these claims, Cox was not a "then-current Alliance Party," having ceased its participation in MoCA. Section 7.1 is thus the operative provision; it does not specify a "written" request, but instead says former members like Cox may "request or require" an appropriate RAND license. (DE 266-1, ¶541; DE 94-1, § 7.1.1). Cox met those provisions simply by asserting its defenses and claims. (*See, e.g.,* DE 48; DE 95; DE 266-1).

Plaintiff posits that Cox's alleged harm is not cognizable because of the litigation privilege. (DE 329-1 at 15). But Plaintiff's argument mischaracterizes the facts and law. First, the IPR Policy does not authorize Plaintiff's action because Cox's counterclaim asserts tortious interference with contract against Plaintiff and that a resulting harm is having to defend against this lawsuit. The litigation privilege Plaintiff identifies applies when the alleged interference is bringing of the lawsuit. *E.g.*, *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1131, 791 P.2d 587, 594 (1990); *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1071 (N.D. Cal. 2005). That is not the case here. As set forth above, Cox's counterclaim alleges that Plaintiff interfered with the IPR Policy by inducing MaxLinear's breach of that agreement. Thus, the litigation privilege does not preclude Cox's claim or render its harm unviable.

Indeed, the costs of responding to Plaintiff's assertions count as Cox's damages for MaxLinear's breach of contract. Courts have long recognized such expenses are contractual damages under these circumstances. *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 844-847 (2018), for example, addressed whether attorneys' fees incurred in defending an action brought in breach of a settlement agreement constituted damages for purposes of the breach of contract claim. *Copenbarger* expressly held that under *Brandt v. Superior Court*, 693 P.2d 796 (Cal. 1985), "the principle that attorney fees qua damages are recoverable as damages, and not as costs of suit, applies equally to breach of contract." 239 Cal. Rptr. 3d at 845; *see also Lee v. Hum. Biostar, Inc.*, No. CV-12-05668 MWF (MRWx), 2013 WL

12130258, at *2 (C.D. Cal. Jan. 28, 2013) (finding breach of contract counterclaim pled sufficient merit where it averred damages that were "costs incurred defending [the] action, which would not exist but for" a suit filed in breach of the contracts). The Federal Circuit has recognized the same point. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306. 1341-43 (Fed. Cir. 2013) (attorneys' fees available as damages for the pursuit of a patent suit in breach of warranty).

Finally, Plaintiff argues that Cox can allege no harm in having to take a RAND license from Entropic instead of MaxLinear because essential patent claims would continue to be subject to RAND obligations regardless of ownership. (DE 329-1 at 16). This is incorrect both factually and legally. Cox's averments detailed the importance of the counterparty in these situations. (DE 266-1, ¶¶ 540-44). And Cox showed that it consistently performed its obligations – paying "substantial monies" toward MoCA, voting on, and supporting adoption of MoCA standards, and deploying MoCA via deployment of its "personnel and other resources." (*Id*., ¶¶ 552-55). In return, the IPR Policy promised that, for parties like Cox that implement MoCA-compliant equipment, as to any licensing of patents essential to MoCA, Cox would be negotiating with MaxLinear, the "Alliance Party" who created those rights, founded, and participated in MoCA, not some third party, non-practicing entity with every incentive to avoid truly RAND terms. (*Id*., ¶¶ 538-50). MaxLinear's breach, however, deprives Cox of the benefit of its bargain. This is a real, cognizable harm Cox alleges in its counterclaims. *See Williams v. Apple, Inc*., 449 F. Supp. 3d 892, 903 (2020) (finding injury for "benefit of the bargain" losses where "Plaintiffs paid consideration for Apple to store Plaintiff's data").

Moreover, while Plaintiff asserts that MaxLinear **could have** brought this action if it were still the patent owner, it ignores that MaxLinear **did** own the patents and **did not** bring suit. And inferences on this motion are drawn in Cox's favor and the inference here is that but-for Plaintiff's interference, no suit would be brought or the identify of MaxLinear as counterparty would result in far different outcomes on

RAND rates. Thus, the alleged breaches do make a difference—MaxLinear cannot circumvent the provisions of the IPR Policy by using a third party.

### b) Cox Pled Cognizable Harm Due to Disclosure of Confidential Information

Cox's counterclaim avers cognizable harm to Cox resulting from MaxLinear's disclosure of confidential MoCA information to Plaintiff in breach of its obligations. The counterclaims detail how the MoCA IPR Policy evolved to address patent hold-up, including hold-up by strangers to the standards setting process. (DE 266-1, ¶¶ 540-543). Because of well-known concerns with non-practicing entities acquiring and asserting standard essential patents, the IPR Policy detailed multiple "provisions to minimize the potential for patent hold-up or patent litigation by strangers to MoCA." (*Id*., ¶ 544). Those provisions included requirements that the standards themselves would remain confidential to MoCA members. (*Id*., ¶¶ 544-46). Yet, induced by millions in payments, MaxLinear breached these confidentiality obligations and provided Plaintiff the confidential MoCA standards that form the basis of Plaintiff's infringement claims. (*Id*., ¶¶ 568-70). As a result, Cox has not received the intended benefits of its MoCA membership, including that any essential patents would remain under the ownership of an Alliance Party, and that Cox would be able to require or request an offer of a RAND license and negotiation of same from MaxLinear. (*Id.*, ¶ 572). Quite the opposite as Cox has been sued now, by a third party, for what Entropic's disclosure in this case claims would be damages of $200 million and has incurred—and will continue to incur—significant costs defending this improper action.

Plaintiff presents two arguments in challenge of Cox's pleading, neither of which has merit. First, Plaintiff contends the confidential MoCA information belongs to MoCA and its members, so Cox cannot plausibly claim harm by its disclosure. (DE 329-1 at 23). But Paragraph 544 pleads that the MoCA standards themselves were confidential to MoCA and its members, while paragraph 546 pleads that "Confidential

Information" included materials so "designated in writing as confidential" by MoCA and "[a]ll Alliance Draft Deliverable(s), Approved Draft Deliverable or Deliverables," i.e., the standards themselves. (DE 266-1, ¶¶ 544, 546). Cox then quoted from those same standards, including the notice that "[t]his document and each element of this document are the Confidential Information of … MoCA and" its members and both "may enforce such obligations of confidentiality directly." (*Id*., ¶ 546). And, Cox averred that in 2021—while Cox was a member— ██████████ ████████████████████████████████████████, Plaintiff" improperly obtained confidential MoCA materials. (*Id*., ¶ 569). In short, Cox can enforce MaxLinear's 2021 breach of confidentiality and recover for the resulting harm. (*Id.*, ¶¶ 561, 562, 569-70, 572-73).

Second, Plaintiff again improperly raises the litigation privilege in an attempt to avoid the consequences of its actions; however, as set forth above, the litigation privilege does not render Cox's properly alleged, cognizable harms inappropriate. Likewise, Plaintiff's claim that the IPR Policy at Section 5.1.1 authorizes suit by saying it does "not prohibit the Alliance Party from seeking or receiving damages" is immaterial because Plaintiff is *not* an Alliance Party. (DE 329-1 at 23). Finally, Plaintiff's speculation that it did not have to induce breach, as it did, because it *could* have filed suit without the MoCA standards is just a hypothetical argument it (possibly) can ask a jury to accept, but does not bar Cox's counterclaims.

### 4. The Court Has Supplemental Jurisdiction Over Cox's Claim for Tortious Interference Based on MaxLinear's Breach of its Confidentiality Obligations

The Court has supplemental jurisdiction over Cox's tortious interference claim based on MaxLinear's breach of its confidentiality obligations because these claims arise from the same set of facts as the federal claims. *See* 28 U.S.C. § 1367; (DE 266-1, at ¶ 526). "Section 1367 . . . provides that supplemental jurisdiction extends to all state claims that are part of the same case or controversy as the federal claim."

*Bazarganfard v. Club 360 LLC*, No. 2:21-cv-02272-CBM-PLA(x), 2023 WL 2354810, at *14 (C.D. Cal. Jan. 26, 2023).

Notably, Plaintiff does not contest supplemental jurisdiction exists for Cox's claim of tortious interference based on Plaintiff's inducement of MaxLinear's breaches relating to improper assignment of the asserted patents. (DE 329-1 at 25-26). Instead, Plaintiff asserts only that the Court lacks supplemental jurisdiction of Cox's tortious interference claim to the extent it relates to MaxLinear's breach by disclosing confidential information. (*Id.*).

Plaintiff's strained effort to find some basis for dismissal falls flat. As an initial matter, Plaintiff's argument ignores that Cox's allegations that MaxLinear breached the confidentiality obligations are part of the same breach of contract claim and same tortious interference claim; they are simply further allegations identifying MaxLinear's breaches. Thus, given Plaintiff acknowledges the Court has supplemental jurisdiction over Cox's claim for some acts resulting in the alleged breach, it does not—and cannot—show the absence of supplemental jurisdiction for other acts.

Even so, under the case law Plaintiff cites, it is clear this Court has supplemental jurisdiction. (DE 329-1 at 25-26). Cox's tortious interference claim involves acts that implicate Plaintiff's right to assert infringement, "which raises questions of patent validity and infringement." *Fortinet, Inc. v. Forescout Techs., Inc.*, No. 20-cv-03343-EMC, 2021 WL 5565836, at *19 (N.D. Cal. Nov. 29, 2021). Thus, because Plaintiff's right to relief involves resolution of a substantial question of patent law, the patent and tortious interference claims "arise in the same 'nucleus of operative fact.'" *Id.* Moreover, Cox's tortious interference claim avers facts relating to ownership and enforcement of the asserted patents, and necessarily overlap with the facts relating to the patent infringement claims. This is far from the circumstances in *Cheng v. AIM Sports, Inc.*, where the Court determined it did not have supplemental

jurisdiction because "there is no *common* nucleus of operative fact." No. CV 10-3814 PSG (PLAx), 2011 WL 13176754, at *5 (C.D. Cal. May 19, 2011).

Supplemental jurisdiction over Cox's tortious interference claim is proper.

## B. Cox Properly Seeks Declaratory Judgment Voiding the Assignments

Contrary to Plaintiff's assertion, Cox has alleged a set of facts support a declaratory judgment that the patent assignments to Plaintiff are void.

Plaintiff argues that Cox's allegations are deficient because it claims (1) an assignment is not void simply because it does not recite an existing encumbrance as encumbrances run with the patents; (2) Cox cannot point to express language voiding third party assignments; and (3) ████████████████████████████████ ███████████████████████████████████████████████████████████ (DE 329-1 at 26-27). Plaintiff's arguments are factually and legally incorrect and miss the point. The crux of Cox's counterclaim seeking declaratory judgment is that Plaintiff and MaxLinear affirmatively sought to strip out any encumbrance on the patents through their assignment and doing so was a violation of the IPR Policy, the remedy for which is the assignment is void. (DE 266-1, ¶¶ 567, 579, 581-82).

Plaintiff never addresses Cox's point that MaxLinear had to retain the right to grant RAND licenses under the IPR Policy. The relevant agreements all transfer all rights and interests in the patents, without reserving that right as MaxLinear was required to do. This alone is a fatal flaw in Plaintiff's arguments. But, independently, Cox's averments show that Plaintiff and MaxLinear's assignments *affirmatively* sought to strip out any encumbrance, including any RAND encumbrances caused by the IPR Policy, so that Plaintiff was unconstrained by the licensing limitations to which MaxLinear was constrained. (DE 266-1, ¶¶ 558, 565-67, 581).

Plaintiff now seeks to escape the consequences of its actions by claiming that the breaches did not matter for a host of reasons. But it is irrelevant to the adequacy of the pleadings whether the obligations under the IPR Policy run with the patents,

whether the IPR Policy has an express provision voiding third party assignments, or that MaxLinear represented in the Patent Purchase Agreement that it made a "***general*** commitment to license on Reasonable and Non-Discriminatory (RAND) terms" to any Standards Bodies. Cox has sufficiently pled that MaxLinear and Plaintiff seek to evade RAND commitments by assigning patents free of any obligations under the ***specific commitments*** of the IPR Policy in violation of multiple provisions, and such assignment is thus void.

Moreover, declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir. 1986). Here, the issues need clarification. Entropic asserts infringement claims based on patents obtained through assignments that are void in view of the MoCA IPR Policy, raising issues of who owns the patents. Plaintiff does not dispute that declaratory judgment in Cox's favor on this issue would clarify and settle issues in this case—including Plaintiff's ability to make infringement claims. *See Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001) ("It is well established that all entities having substantial rights in the patent must join or be joined in infringement litigation," which rule "prevent[s] the possibility of multiple suits"). Cox's counterclaim is thus appropriate.

## V.  IN THE ALTERNATIVE, THE COURT SHOULD GRANT COX LEAVE TO AMEND

Plaintiff's arguments misstate the law and ignore the many factual allegations in Cox's counterclaims, which put Plaintiff on notice of the claims against it. But if the Court is inclined to dismiss one or more claims, Cox requests that it be given leave to amend the counterclaims to address any deficiencies. There is a strong public policy in favor of permitting amendment, and the Ninth Circuit has made clear "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme

liberality.'" *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). Without specifically finding undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, prejudice to the opposing party, or futility of amendment, it is an abuse of discretion to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 538 (9th Cir. 1989).

The party opposing amendment bears the burden of showing prejudice, which Plaintiff has not even attempted to do. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). The factors weigh in favor of granting leave to amend. Cox did not delay and has not acted in bad faith or with dilatory motive. Cox has only amended its counterclaims once, and it did so in good faith. Moreover, the Court has not ruled that any deficiencies exist in Cox's counterclaims to date.

## VI.   CONCLUSION

For all of these reasons, Cox requests that the Court deny Plaintiff's Motion to Dismiss in its entirety.

| | |
|---|---|
| Dated: March 1, 2024 | KILPATRICK TOWNSEND & STOCKTON LLP |
| | By:  */s/ April E. Isaacson* |
| | April E. Isaacson (SBN 180638)<br>aisaacson@kilpatricktownsend.com<br>Two Embarcadero Center, Suite 1900<br>San Francisco CA 94111<br>(415) 273 8306 |
| | Sarah Y. Kamran (SBN 347617)<br>skamran@kilpatricktownsend.com<br>1801 Century Park East, Suite 2300<br>Los Angeles CA 90067<br>(310) 777 3733 |
| | Mitchell G. Stockwell (*admitted pro hac vice*)<br>mstockwell@kilpatricktownsend.com<br>Vaibhav P. Kadaba (*admitted pro hac vice*)<br>wkadaba@kilpatricktownsend.com<br>Michael J. Turton (*admitted pro hac vice*)<br>mturton@kilpatricktownsend.com<br>Courtney S. Dabbiere (*admitted pro hac vice*)<br>cdabbiere@kilpatricktownsend.com<br>Christopher S. Leah (*admitted pro hac vice*)<br>cleah@kilpatricktownsend.com<br>1100 Peachtree Street, NE, Suite 2800<br>Atlanta GA 30309<br>(404) 815 6500 |
| | *Attorneys for Defendants*<br>*Cox Communications, Inc.;*<br>*CoxCom, LLC; and Cox Communications*<br>*California, LLC* |