KILPATRICK TOWNSEND & STOCKTON LLP
April E. Isaacson (SBN 180638)
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran (SBN 347617)
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell (*pro hac vice*)
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba (*pro hac vice*)
wkadaba@kilpatricktownsend.com
Michael J. Turton (*pro hac vice*)
mturton@kilpatricktownsend.com
Courtney S. Dabbiere (*pro hac vice*)
cdabbiere@kilpatricktownsend.com
Christopher S. Leah (*pro hac vice*)
cleah@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.; CoxCom, LLC; and*
*Cox Communications California, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> COX COMMUNICATIONS, INC.; COXCOM, LLC; and COX COMMUNICATIONS CALIFORNIA, LLC, <br><br> Defendants. | LEAD CASE: <br> Case No. 2:23-cv-1043-JWH-KES <br><br> RELATED CASE: <br> Case No. 2:23-cv-1047-JWH-KES <br><br> **COX DEFENDANTS' RESPONSE TO MAXLINEAR'S MOTION TO DISMISS COUNTERCLAIMS** |

## REDACTED DOCUMENT SOUGHT TO BE SEALED

COX COMMUNICATIONS, INC., COXCOM, LLC, AND COX COMMUNICATIONS CALIFORNIA, LLC,

Counter-Claimants,

v.

ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR COMMUNICATIONS LLC; AND MAXLINEAR, INC.

Counter-Defendants

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................9

II.  LEGAL STANDARD .............................................................................10

III. ARGUMENT .........................................................................................12

A.   Cox Has Standing to Assert Claims that Are Ripe ...............................12

1.   CoxCom and Cox California Have Standing .............................12

2.   Cox's compliance with the IPR Policy is established and, in any event, presents no standing or ripeness issue ..............................................................................................14

3.   Cox's Averments Establish Redressable, Concrete and Particularized Injuries ...........................................................16

4.   Cox's Counterclaims are Ripe ...................................................20

B.   Cox Properly Pled a Breach of Contract Claim ..................................22

1.   MaxLinear's Efforts to Avoid the Fundamentals of Its Breach Should be Rejected ....................................................22

2.   The Pleadings Addressed Cox's Performance...........................24

3.   The Pleadings Appropriately Identified the Breaches ...............25

C.   Cox's Declaratory Judgment States a Cognizable Claim ....................27

D.   Cox's Unjust Enrichment Claim is Both Proper Under California Law and Appropriately Pled ..............................................29

1.   California Recognizes Unjust Enrichment and Federal Rules Allow Alternative Pleading ................................29

2.   Cox Pled Sufficient Allegations for Unjust Enrichment ................................................................................30

IV.  IN THE ALTERNATIVE, THE COURT SHOULD GRANT COX LEAVE TO AMEND............................................................................32

V.   CONCLUSION ......................................................................................33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*12909 Cordary, LLC v. Berri,*
    2023 WL 6785798 (C.D. Cal. Apr. 17, 2023) ....................................23

*Am. Honda Motor Co., Inc. v. LKQ Corp.,*
    2022 WL 4596559 (C.D. Cal. Aug. 11, 2022) ...................................33

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................11

*Bechtel v. Chase,*
    156 Cal. 707 (1909) ..........................................................................30

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..........................................................................11

*Bella+Canvas, LLC v. TSC Apparel, LLC,*
    2021 WL 8134400 (C.D. Cal. Jan. 5, 2021) (Holcomb, J.)..............23

*Bowles v. Reade,*
    198 F.3d 752 (9th Cir. 1999) ...........................................................32

*Brandt v. Superior Court,*
    693 P.2d 796 (Cal. 1985)..................................................................20

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,*
    114 Cal. Rptr. 2d 109 (Cal. 2001) ...................................................29

*Cal. Pro-Life Council, Inc. v. Getman,*
    328 F.3d 1088 (9th Cir. 2003) .........................................................20

*Cas. Ins. Co. v. J.R. Mktg., L.L.C.,*
    61 Cal. 4th 988 (2015) .....................................................................29

*Chesebrough-Pond's, Inc. v. Faberge, Inc.,*
    666 F.2d 393 (9th Cir. 1982) ...........................................................28

*Copenbarger v. Morris Cerullo World Evangelism, Inc.,*
    239 Cal. Rptr. 3d 838 (2018)......................................................19, 20

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) ................................................................. 33

*Doe v. United States*,
   58 F.3d 494 (9th Cir. 1995) ................................................................. 11

*DTS, Inc. v. Nero AG*,
   2015 WL 12829611 (C.D. Cal. Oct. 21, 2015) ................................... 24

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938) ......................................................................... 29, 30

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) ............................................................. 29

*In re Exxon Valdez*,
   484 F.3d 1098 (9th Cir. 2007) ............................................................. 29

*In re Facebook Priv. Litig.*,
   192 F. Supp. 3d 1053 (N.D. Cal. 2016) ................................... 17, 18, 19

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ............................................................... 18

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................ 33

*Gilligan v. Jamco Dev. Corp.*,
   108 F.3d 246 (9th Cir. 1997), and 12(b)(6) ........................................ 10

*Guerra v. Sutton*,
   783 F.2d 1371 (9th Cir. 1986) ............................................................. 28

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
   2018 WL 6617795 (E.D. Tex. Dec. 17, 2018) ................................... 17

*Intelligent Mgmt. Sols., Inc. v. Crown Glendale Assocs, LLC*,
   No. SACV 12-2119 JVS (RNBx), 2013 WL 12130317
   (C.D. Cal. Feb. 20, 2013) .................................................................... 30

*Klein v. Chevron U.S.A., Inc.*,
   137 Cal. Rptr. 3d 293 (Cal. 2012) ...................................................... 30

*Lee v. Hum. Biostar, Inc.*,
   2013 WL 12130258 (C.D. Cal. Jan. 28, 2013) ................................... 20

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
  245 F.3d 1048 (9th Cir. 2001) .................................................................31

*Longest v. Green Tree Servicing LLC*,
  74 F. Supp. 3d 1289 (C.D. Cal. 2015) ....................................................30

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .................................................................11

*Metro. Transp. Com'n v. Motorola, Inc.*,
  342 Fed.App'x. 269 (9th Cir. 2009) ........................................................21

*Microsoft Corp. v. Motorola, Inc.*,
  795 F.3d 1024 (9th Cir. 2015) .................................................................13

*Mohandas v. Wells Fargo Bank, N.A.*,
  2023 WL 5506004 (C.D. Cal. July 13, 2023) .........................................30

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ...................................................................33

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
  2019 WL 1409854 (S.D. Cal. March 27, 2019) ......................................33

*Realtek Semiconductor Corp. v. LSI Corp.*,
  2012 WL 4845628 (N.D. Cal. Oct. 10, 2012) ..................................13, 22

*Safari v. Whole Foods Market. Services., Inc.*,
  No. 8:22-cv-01562-JWH-KES, 2023 WL 5506014
  (C.D. Cal. July 24, 2023) ....................................................12, 20, 29, 30

*Safer Chems., Healthy Families v. EPA*,
  943 F.3d 397 (9th Cir. 2019) ...................................................................20

*San Diego Unified Port Dist. v. Monsanto Co.*,
  309 F. Supp. 3d 854 (S.D. Cal. 2018) .....................................................19

*Sandow Fred Segal, LLC v. Cormackhill, LP*,
  2017 WL 5714542 (C.D. Cal. Apr. 6, 2017).............................................15

*Schuman v. Microchip Tech. Inc.*,
  372 F. Supp. 3d 1054 (N.D. Cal. 2019).....................................................24

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................................12

*Stark v. Patreon, Inc.*,
 635 F. Supp. 3d 841 (N.D. Cal. 2022)...........................................................29, 30

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998)..........................................................................................19

*Steen v. Am. Nat'l Ins. Co.*,
 609 F. Supp. 3d 1066 (C.D. Cal. 2022)............................................................27

*Sweden v. Melius*,
 No. CV 14-04492 RSWL (Ex), 2015 WL 7573622
 (C.D. Cal. Nov. 25, 2015).................................................................................23

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
 726 F.3d 1306 (Fed. Cir. 2013) .......................................................................20

*TCL Commc'ns Tech. Holdings Ltd v. Telefonaktenbologet LM
 Ericsson*,
 No. SACV 14–00341 JVS (ANx), 2014 WL 12588293
 (C.D. Cal. Sept. 30, 2014) ...............................................................................22

*Thompson v. Davis*,
 295 F.3d 890 (9th Cir. 2002) ...........................................................................11

*Ticketmaster L.L.C. v. Prestige Ent., Inc.*,
 306 F. Supp. 3d 1164 (C.D. Cal. 2018).............................................................25

*In re Tracht Gut, LLC*,
 836 F.3d 1146 (9th Cir. 2016) .........................................................................11

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021)..........................................................................................12

*United States v. City of Redwood City*,
 640 F.2d 963 (9th Cir. 1981) ...........................................................................10

*United States v. Lungwitz*,
 616 F.3d 993 (9th Cir. 2010) ...........................................................................31

*United States v. Ritchie*,
 342 F.3d 903 (9th Cir. 2003) ...........................................................................24

*Viskase Corp. v. Am. Nat. Can Co.*,
 261 F.3d 1316 (Fed. Cir. 2001) .......................................................................28

*Williams v. Apple, Inc.*,
  449 F. Supp. 3d 892 (N.D. Cal. 2020) ................................................................. 18

**Statutes**

28 U.S.C. § 2201 ................................................................................................ 28

35 U.S.C. § 285 ................................................................................................. 19

**Other Authorities**

Fed. R. Civ. P. 8 ......................................................................................... *passim*

Fed. R. Civ. P. 9 ......................................................................................... 30, 31

Fed. R. Civ. P. 12 ................................................................................. 10, 11, 22

Fed. R. Civ. P. 15 ................................................................................... 32, 33

# I.      INTRODUCTION

These counterclaims arise out of the fact that the original owners of the asserted patents—MaxLinear Communications LLC and MaxLinear, Inc. ("MaxLinear")—were signatories to, founders of, and/or participants in MoCA. As a result, the MoCA IPR Policy contractually bound MaxLinear, requiring each entity to ensure that they had the ability to offer and negotiate licenses on "RAND" terms to any patents with claims that may be essential to the MoCA standards. Cox, as a former member of MoCA, was a beneficiary of those contractual obligations. Plaintiff's Complaint asserts that Cox infringes the patents it acquired from MaxLinear because those patents are essential to MoCA standards. MaxLinear has, accordingly, breached its obligations under the MoCA IPR Policy, including by transferring the asserted patents to Plaintiff in ways that violate the IPR Policy. Cox thus asserted against MaxLinear claims for breach of contract, unjust enrichment, and declaratory judgment as to the propriety of the assignments, as well as a tortious interference claim against Entropic.[1]

MaxLinear received enormous benefits from promoting MoCA standards over alternative technologies. It was able to develop, deploy, and market MoCA-compliant equipment. It learned about draft specifications and participated in meetings to discuss and understand future development of cable industry technology. It successfully enticed industry participants to adopt MoCA, including by making false and misleading representations concerning its commitment to retaining rights to grant RAND licenses, and otherwise ensuring such obligations would always be strictly recognized by and imposed upon future assignees. These actions led to Cox's claims.

MaxLinear's objections are without merit. While MaxLinear has not—and cannot—make any objection to Cox Communications, Inc.'s claims, it asserts that CoxCom and Cox California were never MoCA members and lack standing. That is incorrect; as implementers and affiliates of Cox Communications, those entities were

---

[1] Entropic separately moved to dismiss this Count. Cox incorporates by reference the general summary of its counterclaims set forth in its response to that motion. *See* Cox Defendants' Response to Entropic's Motion to Dismiss Cox's Counterclaims, CA No. 2:23-cv-1043-JWH-KES, at § II.

beneficiaries of the IPR Policy and any RAND license thereunder. MaxLinear next asserts that Cox never "properly" sought a RAND license from Entropic. That is both incorrect and irrelevant given the IPR Policy, which squarely applies here.

MaxLinear makes further novel, and meritless, standing and ripeness arguments. It claims there's no standing because "reversing the transaction does not change the 'injury.'" (DE 335 at 10). Yet Cox's pleadings establish that the IPR Policy plainly required developers of the standard to maintain the power to grant licenses precisely to avoid a situation such as this case presents. Entropic, as a stranger to MoCA, simply cannot step into MaxLinear's shoes under the requirements of the IPR Policy. Indeed, the IPR Policy absolutely forbid the assignments used to transfer the patents to Entropic. The injury flowing from MaxLinear's breach that allowed Entropic, a patent monetization entity that seeks to maximize its damages claims by avoiding its RAND obligations, to pursue this suit is apparent. Nor is "ripeness" any bar to Cox's breach claims, as is apparent from the multitude of courts that have entertained similar claims.

MaxLinear's "alternative" Rule 12(b)(6) arguments fair no better. They simply ignore Cox's actual averments, which detail how MaxLinear's transfer of the patents to Plaintiff breached the IPR Policy, and MaxLinear's efforts to dismiss those claims on pleading grounds necessarily fail. Cox appropriately pled the relevant contractual terms, its performance, breach, and injury. And, contrary to MaxLinear's assertion, California does, in fact, recognize actions for unjust enrichment and Cox's claim for same is more than sufficient. So too is Cox's declaratory judgment claim. The counterclaims flow directly from promises to MoCA that MaxLinear breached, are more than sufficiently pled, and need to be resolved now.

## II.   LEGAL STANDARD

Motions to dismiss for failure to state a claim are disfavored, *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. *United States v. City of Redwood City,* 640 F.2d 963,

966 (9th Cir. 1981). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Indeed, if the Court finds that a pleading fails to state a claim, the Court should grant leave to amend unless the pleading cannot be cured by the allegation of other facts. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

Federal Rule 8(a)(2) "requires only a plausible 'short and plain' statement of the plaintiff's claim showing that the pleader is entitled to relief," which requires that the complaint "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need merely plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and does not require a "probability" of liability. *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In deciding a motion to dismiss, this Court must credit all factual (but not legal) assertions made in the complaint, draw all reasonable factual inferences in favor of Cox, and use those factual assertions and inferences to determine whether Cox is plausibly entitled to relief. Fed. R. Civ. P. 8(a), 12(b)(6); *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150-51 (9th Cir. 2016); *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Dismissal is proper only where there is a "lack of a cognizable legal theory or ... [an] absence of sufficient facts alleged under a cognizable legal theory." *Tracht Gut,* 836 F.3d at 1151.

Here, under the correctly applied standards, Cox's counterclaims comply with the Federal Rules and provide the requisite notice of Cox's claims.

## III.   ARGUMENT

### A.   Cox Has Standing to Assert Claims that Are Ripe

MaxLinear makes meritless standing and ripeness objections to Cox's counterclaims. As this Court explained in *Safari v. Whole Foods Market. Services., Inc.*, "injuries that have a close relationship to harms traditionally recognized 'as providing a basis for a lawsuit in American courts' may be considered 'concrete for purposes of Article III [ ].'" 2023 WL 5506014, at *5 (C.D. Cal. July 24, 2023) (alteration in original) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)), reconsideration denied, 2023 WL 8269774 (C.D. Cal. Oct. 10, 2023)). *TransUnion*, in fact, instructs that judges should look to "history and tradition" as a "guide to the types of cases that Article III empowers federal courts to consider." 594 U.S. at 424 (citation omitted). Such an inquiry considers "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*.

Breach of contract actions are, of course, quintessential common-law analogues and precisely the type of actions that confirm standing. *See, e.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 344 (2016) (Thomas, J., concurring) ("Historically, common-law courts possessed broad power to adjudicate suits involving the alleged violation of private rights, even when plaintiffs alleged only the violation of those rights and nothing more.… 'Private rights' have traditionally included … contract rights." (citation omitted)). Although never actually challenged by MaxLinear, Cox's claims for unjust enrichment and declaratory relief likewise present the kind of claims that identify concrete injuries capable of redress. MaxLinear's arguments are meritless and should be dismissed.

#### 1.   CoxCom and Cox California Have Standing

MaxLinear urges that CoxCom and Cox California, the "Cox Affiliates" of Cox Communications, "lack standing because the IPR Policy does not provide rights to 'Affiliates' of Alliance Party members." (DE 335 at 15-16). MaxLinear reasons that the Cox Affiliates have no injury because they have no "legal right to a RAND

1  license – or expectation thereof." (*Id*. at 16).

2       Tellingly, MaxLinear effectively concedes—as it must—that Cox

3  Communications, as the former "Alliance Party," has the right and privilege to

4  demand a RAND license. Critically, neither the IPR Policy nor the Promoter

5  Agreement prevent Cox Communications from demanding, as it has through its

6  counterclaims, a RAND license on behalf of the Cox Affiliates. To the contrary, the

7  IPR Policy states its objective "to maximize the likelihood of widespread adoption of

8  [the MoCA] specifications," which necessarily encompasses having Alliance Parties

9  receive licenses on behalf, and for the benefit, of their affiliates. (DE 266-1, ¶ 541

10  (citing IPR Policy, at 1)). Moreover, the very definition of the "RAND" obligation

11  requires license on "fair, reasonable and non-discriminatory terms and conditions."

12  (*Id*.; IPR Policy, § 5.1.1). The IPR Policy further declares that it "is designed and

13  intended to comply with all applicable law, including all federal and state antitrust

14  laws." As the Ninth Circuit has declared, a RAND agreement's main "purpose … is

15  to promote adoption of a standard by decreasing the risk of hold-up," without which

16  implementers would be subject to a "flood of litigation" that would "discourage"

17  standard adherence. *Microsoft Corp. v. Motorola, Inc*., 795 F.3d 1024, 1052 (9th Cir.

18  2015); *see also Realtek Semiconductor Corp. v. LSI Corp*., 2012 WL 4845628, at *1

19  (N.D. Cal. Oct. 10, 2012).

20       These provisions of the IPR Policy, the counterclaims, and the underlying

21  meaning of a "non-discriminatory" license support the expectation, injury, and

22  standing of the Cox Affiliates. The counterclaims show the Cox Affiliates were

23  MoCA users (DE 266-1, ¶¶ 551-54), which means they were entitled to receive a

24  RAND license, even if via the mechanism of Cox Communications invoking its rights

25  and privileges as an Alliance Party. Because of MaxLinear's breaches, the Cox

26  Affiliates suffered the injury of being subjected to Entropic's demands and claims,

27  and the remedy they seek is to "receive an appropriate license on FRAND terms from

28  MaxLinear, and only MaxLinear." (DE 266-1, ¶ 579).

Finally, MaxLinear's entire standing argument as to the Cox Affiliates is irrelevant to Counts II and IV, and MaxLinear made no arguments to the contrary. Count II relies on MaxLinear's breaches of its MoCA agreement to seek a declaration that the assignments to Entropic were void. Count IV focuses on MaxLinear's false and misleading representations that secured it multiple benefits whose retention would be unjust. Nothing about these claims hinge on the Cox Affiliates' status as "Alliance Members." Likewise, the fact that the Cox Affiliates are defending a claim from Entropic under patents transferred via a void assignment, while MaxLinear retains benefits conferred unjustly, shows injury and ripeness.

### 2. Cox's compliance with the IPR Policy is established and, in any event, presents no standing or ripeness issue

Standing and ripeness fundamentally seek to ascertain whether the type of claim and injuries pled are sufficient and redressable for Article III purposes. These questions have nothing to do with the factual points MaxLinear raises, which are incorrect. To begin, MaxLinear admits that Cox averred that Entropic had neither provided nor procured a RAND offer "despite Cox's prior request in writing." (DE 335 at 16 (citing (DE 266-1, ¶ 571))). That averment alone disposes of MaxLinear's complaints.

MaxLinear nonetheless incorrectly claims that the details of the timing and identities of Cox's written request are both defective and crucial to the standing and ripeness challenges it mounts. Neither Fed. R. Civ. P. 8 nor Article III requires such details. Even so, MaxLinear is factually wrong. Its claim that the Cox entity making the RAND request must be identified given its challenge to the Cox Affiliates' standing is defective for the reasons discussed *supra*. Additionally, Cox made written requests, including in their amended answer that originally raised its defense (DE 48 ¶¶ 511, 513), the original counterclaims (DE 95), and in Cox Communications' written correspondence referenced in the Amended Counterclaims at paragraph 571, provided to MaxLinear before its motion and referenced in Entropic's motion to

1  dismiss. (DE 329-4).[2] Thus, MaxLinear's assertions are entirely meritless.

2       Indeed, MaxLinear's very assertion that Cox must make a "written" request for

3  a RAND license is wrong. As MaxLinear admits, Section 5.1.1 requires a RAND offer

4  "upon the written request of any *other then-current Alliance Party*." (DE 335 at 17

5  (citing IPR Policy, 5.1.1 (emphasis added))). But paragraph 522 of the Amended

6  Counterclaims explains that Cox joined MoCA in 2005 and left in July 2022. Thus,

7  when Cox presented these claims, Cox was not a "then-current Alliance Party,"

8  having ceased its participation in MoCA. Section 7.1 is thus the operative provision;

9  it does not specify a "written" request, but instead says Cox may "request or require"

10  an appropriate RAND license. (DE 266-1, ¶ 541; IPR Policy, § 7.1.1). Cox met those

11  provisions simply by asserting its defenses and claims. *See, e.g.*, (DE 48; DE 95; DE

12  266-1).

13       Second, MaxLinear purports that Cox had to, but did not, plead the timing of

14  the draft or approved deliverables. Both propositions are incorrect. The counterclaims

15  plausibly establish that Cox is entitled to a RAND license because the IPR Policy

16  applies to the relevant patents in view of Plaintiff's averments. (*See* DE 266-1, ¶¶

17  545-46, 554-55, 563-64). Neither standing, nor any other doctrine MaxLinear recites,

18  requires Cox's averments trace the history of each draft deliverable as it was

19  converted to a relevant standard. To the contrary, Cox's averments satisfy Fed. R.

20  Civ. P. 8, are taken as true, and show the relevant patents plausibly are encumbered

21  by the IPR Policy.

22       In any event, the counterclaims answer MaxLinear's timing complaints.

23  Paragraph 563 expressly references "Plaintiff's Complaint" and avers that based on

24  same "one or more of the Asserted Patents reasonably may contain essential patent

25  claims … subject to the IPR Policy." This alone suffices as a matter of law. More

26  ---

27  [2] As MaxLinear admits in its request for judicial notice (DE No. 323 at 3-4), documents referenced in the pleadings must be considered part of same for a motion to dismiss. *Sandow Fred Segal, LLC v. Cormackhill, LP*, 2017 WL 5714542, at *3

28  (C.D. Cal. Apr. 6, 2017). Accordingly, the written correspondence referenced in the counterclaims and provided to MaxLinear in discovery is part of the pleadings and likewise demonstrates MaxLinear's arguments are without merit.

specifically, Plaintiff's Complaint avers MoCA ratified the MoCA 1.0, 1.1 and 2.0 standards in 2006, 2007 and 2010 respectively (DE 1, ¶ 28), then avers that Cox uses MoCA 1.0, 1.1 and 2.0, and accuses Cox of infringing the relevant patents because it practices those standards. (DE 266-1, ¶ 563 (citing DE 1, ¶¶ 109, 143, 177, 211, 245, 279, 313, 347, 381, 415, 449, 483)). Given Cox's averment that it left MoCA in 2022, these averments show that the relevant standards meet the IPR Policy provisions MaxLinear cites. Additionally, the counterclaims directly quote the relevant confidential standards that MaxLinear gave Entropic in breach of its MoCA obligations. (DE 266-1, ¶ 546). MaxLinear, of course, already has these documents, the reference to them in the counterclaims makes them part of the pleadings (*supra*, n.1), and the documents independently show the relevant standards were adopted before Cox left MoCA. (DE 329-4 at 3).

Finally, MaxLinear incorrectly argues that Cox did not aver that Entropic failed to negotiate in good faith and claims that such failure "is no indicia of MaxLinear's alleged failings to encumber its patents." (DE 335 at 18). First, Cox flatly alleged that Plaintiff never "provided or procured any RAND-compliant offer." (DE 266-1, ¶ 571). That is necessarily bad faith, particularly given the additional averments showing efforts to strip the patents of any RAND encumbrance. (*Id*., ¶¶ 556-573). Second, MaxLinear just ignores Cox's entire pleading, which explains how the MoCA IPR Policy required **MaxLinear** to maintain the right to grant licenses and mandated that MaxLinear could only transfer by providing notice of such requirements in the transfer agreement (*id*., ¶¶ 540-550), yet those provisions were breached. (*Id*., ¶¶ 556-567). At this stage, those averments are taken as true and establish **MaxLinear's** breach.

### 3. Cox's Averments Establish Redressable, Concrete and Particularized Injuries

Next, MaxLinear claims that Cox has failed to show a concrete and particularized injury capable of redress. This is both factually and legally incorrect.

Factually, Cox suffered direct harm from the promises that MaxLinear breached. For entirely well-justified reasons, the IPR Policy promised that Cox would only have to deal with MaxLinear in terms of obtaining any applicable license for essential patents. (DE 266-1, ¶¶ 538-50). It included multiple enforcement mechanisms to ensure that any subsequent owner of a MaxLinear essential patent would be aware of, and bound by these provisions. (*Id.*, ¶¶ 548-50). Cox avers that the violation of MaxLinear's promises resulted in a void assignment to Entropic—which invalid assignment ultimately led to Entropic improperly asserting its patents and ultimately filing this very suit, depriving Cox of the benefits of MaxLinear's promises. (*Id.*, ¶¶ 556-73). The harms that flow from MaxLinear's breaches are precisely the ones that courts have recognized to represent the concrete and particularized injury required. *See, e.g.*, *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 2018 WL 6617795, at *4-5 (E.D. Tex. Dec. 17, 2018) (finding deprivation of contractual right to FRAND license supported existence of injury in fact).

Nowhere does MaxLinear address these harms. That is a fatal flaw. Contract actions over breaches that involve only nominal damages present injuries that confer standing. For example, *In re Facebook Priv. Litig.*, 192 F. Supp. 3d 1053, 1061 (N.D. Cal. 2016), examined the split authority as to whether actual damages were even an element of contract claims in California. Ultimately, the court held that injury in fact was shown because plaintiffs could recover at least nominal damages, and had alleged "concrete" injuries in the form of specifically breached contract terms applicable to plaintiff. *Id.* at 1062. The counterclaims here identify the same sorts of concrete, specific, and breached contractual terms.

Moreover, Cox's averments show that it consistently performed its obligations—paying "substantial monies" toward MoCA, voting on and supporting adoption of MoCA standards and deploying MoCA via deployment of its "personnel and other resources." (DE 266-1, ¶¶ 552-55). In return, the IPR Policy promised that, for parties like Cox that implement MoCA-compliant equipment, as to any licensing

of patents essential to MoCA, Cox would be negotiating with MaxLinear, the "Alliance Party" who created those rights, founded, and participated in MoCA, not some third party. (DE 266-1, ¶¶ 538-50). MaxLinear's breach, however, deprives Cox of the benefit of that bargain. This is precisely the type of harm that confers standing. *See Williams v. Apple, Inc*., 449 F. Supp. 3d 892, 903 (N.D. Cal. 2020) (finding standing for "benefit of the bargain" losses where "Plaintiffs paid consideration for Apple to store Plaintiff's data"); *Facebook*, 192 F. Supp. 3d at 1058-59.

Independently, the counterclaims establish that MaxLinear was unjustly enriched by its actions – which again is such a routine common law harm that establishes standing that MaxLinear does not even argue otherwise. For example, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020), addressed claims that Facebook's tracking and collection practices resulted in various common law and statutory violations. Facebook challenged plaintiffs' standing, arguing that "unjust enrichment is not sufficient to confer standing." *Id*. The Ninth Circuit held otherwise, explaining that "state law can create interests that support standing in federal courts," and, specifically, that "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Id*. (citation omitted). Facebook's unjust enrichment and standing were sufficiently shown by averments that plaintiffs' browsing histories had financial value, and Facebook's sale of such information despite contrary representations. *Id*. at 600-01.

Here, Cox similarly averred that MaxLinear made representations and guarantees concerning its ability to provide necessary licenses, which induced Cox and others to deploy MoCA rather than alternate technologies, thereby earning MaxLinear substantial revenues. (DE 266-1, ¶¶ 530-33, 551-55). Indeed, these misleading representations allowed MaxLinear to participate in standards development, and deploy and market MoCA-compliant equipment. (*Id*., ¶¶ 588-90). These actions further allowed MaxLinear to entice Cox and others to adopt and deploy

MoCA-compliant equipment with the expectation that no third party would make claims under any of MaxLinear's essential patents. (*Id.*, ¶¶ 591-93). MaxLinear's unjust enrichment from its misrepresentations accordingly provides standing, just as in *Facebook*.

MaxLinear's obviously concerted effort to ignore Cox's actual pleadings alone suffices to dismiss its standing arguments. MaxLinear's only other actual argument —that Cox's expenses of addressing Entropic's improper suit cannot support standing —is also incorrect. MaxLinear says *San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 866 (S.D. Cal. 2018), shows that litigation costs for defending a plaintiff's claim do not establish standing for a counterclaim against that plaintiff. However, *San Diego Unified Port District* cited to *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998), for the proposition MaxLinear advances, and *Steel Co.* made plain that "a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit" because, in that case, the expenses plaintiff sought were only reimbursable under the relevant environmental statute that was being litigated. *Id*.

These rules are inapplicable. Standing here is not grounded on some recovery by Cox from Entropic under, for example, 35 U.S.C. § 285, or even on Cox's recovery of expenses defending some claim advanced by MaxLinear. Cox instead asserts a breach of contract counterclaim not against Entropic, the plaintiff in this case, but against MaxLinear, the third party whose breach of contract caused Entropic to assert patents, demand royalties, and bring suit.

The costs of responding to Entropic's assertions count as Cox's damages for MaxLinear's breach of contract. Courts have long recognized such expenses are contractual damages under these circumstances. *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 844-847 (2018), for example, addressed whether attorneys' fees incurred in defending an action brought in breach of a settlement agreement constituted damages for purposes of the breach of contract

claim. *Copenbarger* expressly held that under *Brandt v. Superior Court*, 693 P.2d 796 (Cal. 1985), "the principle that attorney fees qua damages are recoverable as damages, and not as costs of suit, applies equally to breach of contract." 239 Cal. Rptr. 3d at 845; *see also Lee v. Hum. Biostar, Inc*., 2013 WL 12130258, at *2 (C.D. Cal. Jan. 28, 2013) (finding breach of contract counterclaim pled sufficient merit where it averred damages that were "costs incurred defending [the] action, which would not exist but for" a suit filed in breach of the contracts). The Federal Circuit has recognized the same point. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1341-43 (Fed. Cir. 2013) (finding attorneys' fees available as damages for the pursuit of a patent suit in breach of warranty).

Cox's counterclaims are, both generally and in their particulars, precisely the type of claims and "injuries that have a close relationship to harms traditionally recognized 'as providing a basis for a lawsuit in American courts' may be considered 'concrete for purposes of Article III [ ].'" *Safari*, 2023 WL 5506014, at *5 (alteration in original). MaxLinear's Motion should thus be denied.

### 4.      Cox's Counterclaims are Ripe

MaxLinear's ripeness argument once again ignores the actual pleadings and claims, and is legally flawed. As a preliminary matter, "[t]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003) (citation omitted). MaxLinear raises only this aspect of ripeness. *See* DE 335 at 20 (arguing "Article III standing and ripeness")). Yet, as established above, the counterclaims present issues that "are definite and concrete, not hypothetical or abstract." *Id*. Moreover, at its core, the ripeness doctrine "is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect … agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Safer Chems., Healthy*

1   *Families v. EPA*, 943 F.3d 397, 411 (9th Cir. 2019) (alteration in original) (citation
2   omitted). There is accordingly no ripeness issue.

3          MaxLinear grounds its ripeness arguments on asserting there are future
4   contingencies and ignoring the actual pleadings. Both propositions are wrong.

5          The counterclaims show, for example, that MaxLinear was required to hold in
6   confidence the MoCA standards (DE 266-1, at ¶¶ 544-47), precisely because MoCA
7   participants needed to ensure they could grant relevant licenses (*id.*, ¶¶ 547-50). Yet,
8   induced by millions in payments, MaxLinear breached these confidentiality
9   obligations and provided Entropic the MoCA standards that form the basis of
10  Plaintiff's infringement claims. (*Id.*, ¶¶ 568-70). There is nothing contingent or
11  speculative about these claims. *See Metro. Transp. Com'n v. Motorola, Inc.*, 342
12  Fed.App'x. 269, 271 (9th Cir. 2009) (breach claim ripe where plaintiff "alleged a
13  present breach of a contractual obligation and … present damage as a result of the
14  alleged failure to provide a Letter of Credit").

15         Nor is there anything contingent in connection with MaxLinear's breach of the
16  MoCA requirements concerning essential patents. The counterclaims establish that
17  MaxLinear knew, and publicly represented, that "our core home networking
18  technology is a primary component of the MoCA specification," which meant "we
19  are required to license portions of this technology to other MoCA members," precisely
20  because of the IPR Policy. (*Id.*, ¶ 533). Likewise, Entropic sent correspondence
21  representing that its MaxLinear-originated patents were essential to MoCA. (*Id.*, ¶
22  564). It then filed a complaint asserting the patents were essential to the confidential
23  MoCA standards MaxLinear provided. (*Id.*, ¶¶ 563, 569). Given these averments, the
24  breach of the IPR Policy occurred upon transfer of the patents to Entropic. (*Id.*, ¶¶
25  565-67).

26         MaxLinear says the dispute over whether the patents are, in fact, essential
27  makes the claims too speculative and contingent to be ripe. (DE 335 at 20).
28  MaxLinear's understanding of ripeness contradicts, and would overwrite, Fed. R. Civ.

P. 8(d)(2), which expressly allows for "2 or more statements of a claim or defense alternatively or hypothetically" and states "the pleading is sufficient if any one of them is sufficient." Courts have specifically applied this rule to FRAND breach claims, including in denying ripeness challenges. *See TCL Commc'ns Tech. Holdings Ltd v. Telefonaktenbologet LM Ericsson*, 2014 WL 12588293, at *4 (C.D. Cal. Sept. 30, 2014) (denying motion to dismiss because TCL could both argue that "patents are not standard essential while reserving the right to pay the FRAND rate should the Court ultimately determine otherwise"); *Realtek Semiconductor Corp*, 2012 WL 4845628, at *5-6 (rejecting ripeness challenge to FRAND breach of contract claims because "Realtek can simultaneously pursue a determination of the RAND royalty rate while denying infringement or asserting invalidity, even though those issues may ultimately obviate the need for a license"). Cox can likewise simultaneously deny infringement while pursuing a breach of contract claim should the patents be deemed essential.

Finally, MaxLinear nowhere claims that the ripeness doctrine somehow precludes the declaratory judgment count. Nor can it. Cox has now been sued, for what Entropic's disclosure in this case claims would be hundreds of millions in damages. The counterclaims plausibly establish an immediate and concrete dispute over who actually owns the asserted patents and the very nature of MaxLinear's continued interest in the patents should they prove essential, demands addressing Cox's claims now.

### B.      Cox Properly Pled a Breach of Contract Claim

MaxLinear's attack on the sufficiency of Cox's counterclaims proceeds from the premise that it can recharacterize Cox's claims and ignore the actual pleading. That's not how Rule 12 operates and, as shown below, MaxLinear's challenges fail.

### 1.      MaxLinear's Efforts to Avoid the Fundamentals of Its Breach Should be Rejected

The pleadings address the operative contract and privity. In its first motion and

brief, MaxLinear admitted that Cox attached the IPR Policy, even as it briefly complained that Cox also should have referenced other MoCA agreements. On its second go-round, MaxLinear admits "Cox clearly invokes its right to sue based on one Cox entity's membership in MoCA and the IPR Policy," but complains about the references to MaxLinear's agreements. (DE 335 at 21). MaxLinear admittedly has all the notice it needs – Cox is suing over MaxLinear's breach of the IPR Policy, which is binding on MaxLinear under its prior agreements.

The counterclaims reference to the relevant provisions of the IPR Policy alone suffices, as confirmed by the very authority MaxLinear cites. For example, *12909 Cordary, LLC v. Berri*, 2023 WL 6785798, at *3 (C.D. Cal. Apr. 17, 2023), first noted that a party may either plead a contract's terms or attach same, and then went on to explain that, in the first scenario, a party "need not lay out detailed terms of the alleged agreement. Instead, Cross-Complainants need only plead a 'short and plain statement of the claim,' Fed. R. Civ. P. 8(a)(2), that 'give[s] [Cordary] fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* (alterations in original) (citation omitted).  The only defect the Court went on to identify in the pleading was the failure to "sufficiently plead the contractual terms of the ostensible agreement by Cordary to assume" the relevant contract. *Id*. The key is to aver the ***material*** terms – such as "the relevant substantive terms of the Agreement." *Id*. (citation omitted); *see also Sweden v. Melius*, 2015 WL 7573622, at *4 (C.D. Cal. Nov. 25, 2015) (holding that, while complaint should "identify the provision of the contract breached," a plaintiff "need not lay out the terms of the alleged agreement in its Complaint").

The counterclaims here quote and plead the material terms of the IPR Policy, which is all that is required as MaxLinear admits in its request for judicial notice. (DE 323 at 3 (citing *Bella+Canvas, LLC v. TSC Apparel, LLC*, 2021 WL 8134400, at *2 (C.D. Cal. Jan. 5, 2021) (Holcomb, J.) for the "holding that the Plaintiff must attach a copy of the alleged contract, ***quote from the contract, or adequately plead*** the terms.") (emphasis added). MaxLinear nonetheless complains that the IPR Policy is

not reattached, per the Local Rules. Counsel for Cox apologizes for that clerical oversight, but it is immaterial where the counterclaims recite the relevant provisions as the cases require. MaxLinear nowhere suggests that a relevant contractual term was omitted.[3] Likewise, as to MaxLinear's complaint that Cox did not "attach the MoCA ByLaws and other 'Applicable Agreements'" referenced" in the IPR Policy (DE 335 at 22), the full terms of documents are immaterial to the counterclaims for the same reasons discussed above. Cox nonetheless identified those materials in its Amended Counterclaims, at 538, note 10, and elected to reproduce any of the pertinent provisions. MaxLinear has now asked the Court to take judicial notice of these very same materials, consisting of Cox's Promoter Member Agreement (which includes as an exhibit the MoCA ByLaws). *See* DE 323; Ex. A (Promoter Agreement at 8-20; ByLaws at 21-54)). Cox does not oppose that request and MaxLinear's complaints are, at the least, moot. On the merits, the counterclaims aver all the facts required to address MaxLinear's fundamental breach of contract.

## 2.    The Pleadings Addressed Cox's Performance

The counterclaims specifically address Cox's performance of its obligations under its MoCA agreement. (DE 266-1, ¶ 525). MaxLinear does not argue otherwise, and these averments suffice as a matter of law to plead a breach claim.

Nor is that outcome changed by MaxLinear repeating its claim that Cox did not present a written request and did not address the timing of the relevant draft deliverables. As established above, those claims are incorrect and irrelevant. First, Cox did make written requests, even though as a former member it need not do so. As detailed above, it has performed all it needs to in order to obtain the benefit of the IPR Policy. Second, MaxLinear repeats its claim that the pleadings do not address the

---

[3] To the extent needed, the Court should incorporate these documents filed with Cox's original counterclaim—MoCA IPR Policy (DE 94-1), Patent Assignment filed with U.S. Patent Office (DE 94-2)—consistent with multiple cases. *E.g., United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Schuman v. Microchip Tech. Inc.*, 372 F. Supp. 3d 1054, 1057 n.2 (N.D. Cal. 2019); *DTS, Inc. v. Nero AG*, 2015 WL 12829611, at *2 (C.D. Cal. Oct. 21, 2015). Likewise, the Court can and should simply take judicial of the IPR Policy as filed with the original counterclaims based on the authority described in DE 323.

timing of draft deliverables, which is incorrect for the same reasons discussed *supra*. In short, Cox appropriately pled its performance, and its breach claim is proper.

### 3.      The Pleadings Appropriately Identified the Breaches

MaxLinear's challenges to Cox's breach averments are either a facial attack on the pleadings, wholly-ignoring the requirement that the pleadings must be accepted as true, or, again, simply ignore the relevant averments.

The counterclaims detail how the MoCA IPR Policy evolved to address patent hold-up, including hold-up by strangers to the standards setting process. (DE 266-1, ¶¶ 540-543). Because of well-known concerns with non-practicing entities acquiring and asserting standard essential patents, the IPR Policy detailed multiple "provisions to minimize the potential for patent hold-up or patent litigation by strangers to MoCA." (*Id*., ¶ 544). Those provisions included requirements that the standards themselves would remain confidential to MoCA members. (*Id*., ¶¶ 544-46). The IPR Policy specified that the relevant patents necessary for the standards would be owned by the proper Alliance Party. (*Id*., ¶ 547). While an Alliance Party could transfer such patents, they warranted and covenanted that such transfer would never be "for the purpose of circumventing the obligation to grant licenses contained in this IPR Policy." (*Id*., ¶ 548). Any transfer required the relevant agreement to acknowledge the transferred patent was "subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws" under the IPR Policy. (*Id.*, ¶ 549). Thus, ***either*** MaxLinear must continue to own the relevant patents ***or*** it must "retain the right to grant any licenses for essential patents via multiple provisions" in the IPR Policy. (*Id*., ¶ 550).

Under these clauses, MaxLinear plainly warranted and covenanted that it would maintain the right to grant licenses under the IPR Policy. Such promises were plainly looking to the future and meant that, while MaxLinear could transfer patents, it had to maintain its right to grant essential patent licenses. *See Ticketmaster L.L.C. v. Prestige Ent., Inc*., 306 F. Supp. 3d 1164, 1172-73 (C.D. Cal. 2018) (under California

law covenant is promise to do or refrain from doing specific act). MaxLinear now
pretends these averments, and its contractual obligations, do not exist. It facially
attacks the pleadings, claiming that Section 5.1.2 of the IPR Policy allows it to transfer
its patents and thus there can be no breach. (*See* DE 335 at 24-25). MaxLinear's facial
attack is legally improper on a motion to dismiss that assumes the truth of Cox's
pleadings, not MaxLinear's attorney arguments. It is also simply incorrect. Section
5.1.2 plainly says that any sale or transfer of patents with an Essential Patent Claim
(A) "shall be subject to the terms in this IPR Policy" and (B) must "include[] a
provision that such transfer … is subject to existing licenses and obligations to
license…." In other words, all the provisions Cox relies on apply and Cox properly
pled MaxLinear breached when it transferred in a way that violated its obligations.

MaxLinear next attempts to set up a false conflict between the averments that
MaxLinear improperly attempted to assign any essential MoCA patents free of any
encumbrances, and the averment that ███████████████████████████████
███████████████████████████████████████. (DE 335 at 25). But
informing Entropic of the existence of the ***standards*** has nothing to do with ensuring
compliance with the IPR Policy. Likewise, MaxLinear says Cox's allegations of
breach are implausible because ████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████. (DE 335 at
25). But that is entirely consistent with, and demonstrates the problems with,
MaxLinear's breaching conduct – it did not inform Entropic of the full scope of
obligations imposed by the IPR Policy, which goes far beyond requiring some
"general" RAND commitment. Likewise, MaxLinear neither retained rights to satisfy
the continuing obligations imposed by the IPR Policy nor met the specific obligations
of the IPR Policy's transfer provisions.

Finally, MaxLinear says the averments showing how it breached its
confidentiality obligations are insufficient because Cox does not identify any of Cox's

confidential information in the MoCA standards, that Cox cannot enforce such obligation, and that Cox does not plead timing details. But the latter need not be pled, and MaxLinear just ignored, again, the actual averments. Paragraph 544 pleads that the MoCA standards themselves were confidential to the MoCA members, while paragraph 546 pleads that "Confidential Information" included materials so "designated in writing as confidential" by MoCA and "[a]ll Alliance Draft Deliverable(s), Approved Draft Deliverable or Deliverables," i.e., the standards themselves. (DE 266-1, ¶¶ 544, 546). Cox then quoted from those same standards, including the notice that "[t]his document and each element of this document are the Confidential Information of … MoCA and" its members and both "may enforce such obligations of confidentiality directly." (*Id.*, ¶ 546). In short, the MoCA standards are confidential to the MoCA Alliance itself, and Cox can enforce MaxLinear's breach of confidentiality.

## C.   Cox's Declaratory Judgment States a Cognizable Claim

The counterclaims' averments support a grant of declaratory judgment on the grounds that the patent assignments to Entropic are void. To begin, MaxLinear argues that Cox's declaratory judgment claim should be dismissed because it is duplicative of Cox's breach of contract claim, and that claim is deficient. As discussed above, however, Cox's breach of contract claim has been sufficiently pled.

In any event, it is incorrect to state that Cox's claim for declaratory judgment is "nothing more than a duplication of the breach claim." (DE 335 at 27). Breach of contract and declaratory judgment are different claims seeking two different types of remedies, and as such are not duplicative. *See Steen v. Am. Nat'l Ins. Co.*, 609 F. Supp. 3d 1066, 1073 (C.D. Cal. 2022) (rejecting argument that breach of contract and declaratory judgment claims were duplicative because it "ignores the alleged future uncertainty that declaratory judgment would remedy that would not be remedied by damages for breach of contract"). Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in

issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (citation omitted).

Here, the issues are particularly unsettled and in need of clarification. Entropic asserts infringement claims based on patents obtained through assignments that are void in view of the IPR Policy. MaxLinear never disputes that declaratory judgment in Cox's favor on this issue would clarify and settle issues—including Entropic's ability to make infringement claims. Thus, Cox's counterclaim is appropriate.

MaxLinear also argues that Cox—and in particular the Cox Affiliates—are not intended third party beneficiaries under the IPR Policy or Promoter Agreement and thus do not have standing for the declaratory judgment claim. This is also incorrect. As discussed above, Cox has sufficiently pled that the Cox Affiliates, are intended beneficiaries of the IPR Policy and may, including through their affiliate Cox Communications, reap the benefits of any RAND commitment.

But independently, the Cox Affiliates were sued by Entropic and are entitled to challenge its standing to assert the patents in view of the violation of the clear provisions in the IPR Policy. And, in any event, Cox Communications is a signatory to the Promoter Agreement and plainly may make that claim, especially where it too has been accused by Entropic of infringing patents conveyed by void assignments. Thus, there is "a case of actual controversy" involving Entropic, MaxLinear, and Cox, including the Cox Affiliates, and case law recognizes that "[i]t is well established that all entities having substantial rights in the patent must join or be joined in infringement litigation….The purpose of this rule is to prevent the possibility of multiple suits against the same defendant." *Viskase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

Cox's declaratory judgment action removes that uncertainty and Cox has standing to bring a declaratory judgment claim. 28 U.S.C. § 2201; *see also Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 397 (9th Cir. 1982) (finding

1   requirements for bringing declaratory judgment claim are met if there is at least "real

2   and reasonable apprehension" that infringement action will be filed).

3   **D.   Cox's Unjust Enrichment Claim is Both Proper Under California**

4   **       Law and Appropriately Pled**

5   MaxLinear argues that Cox cannot state a claim for quasi-contract or unjust

6   enrichment for several reasons, all of which are faulty.

7   **1.   California Recognizes Unjust Enrichment and Federal Rules**

8   **       Allow Alternative Pleading**

9   MaxLinear's position that there is no unjust enrichment claim in California is

10  incorrect. *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 857 (N.D. Cal. 2022), held that

11  "[t]he California Supreme Court's decision in *Hartford [Cas. Ins. Co. v. J.R. Mktg.,*

12  *L.L.C.*, 61 Cal. 4th 988, 1000 (2015)] indicates that the Ninth Circuit was incorrect to

13  conclude that no cause of action of unjust enrichment exists under California law." It

14  thus concluded "that such a claim exists." *Id*. But as *Stark* also recognized, "[i]n any

15  event…a court may construe a purportedly non-existent claim for unjust enrichment

16  as a valid 'quasi-contract claim seeking restitution.'" *Id*. (citations omitted); *see also*

17  *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("[T]his

18  Circuit has construed the common law to allow an unjust enrichment cause of action

19  through quasi-contract" (citation omitted)); *Safari*, 2023 WL 5506014, at *3 (holding

20  that plaintiff "may plead unjust enrichment as a 'quasi-contract claim seeking

21  restitution'"). Under *Hartford* and *Stark's* analysis of same, Cox's unjust enrichment

22  claim is proper. But, at minimum, Cox has pled an acceptable "quasi-contract" claim.

23  MaxLinear's assertion that Cox cannot plead in the alternative a quasi-contract

24  while it pleads breach of contract ignores the fact that federal law controls procedural

25  issues. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938); *In re Exxon Valdez*,

26  484 F.3d 1098, 1100 (9th Cir. 2007). Each of MaxLinear's cited cases apply

27  California **state** law in determining whether a party can plead both quasi-contract and

28  breach of contract claims. *See Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal.,*

*Inc.*, 114 Cal. Rptr. 2d 109, 125 (Cal. 2001); *Mohandas v. Wells Fargo Bank, N.A.*, 2023 WL 5506004, at *18 (C.D. Cal. July 13, 2023); *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 331-32 (Cal. 2012).[4]

But Fed. R. Civ. P. 8(d)(3) the clearly states that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." As this issue deals with "the procedural rule of alternative pleading," federal law must apply, and federal law permits alternative pleadings. *Intelligent Mgmt. Sols., Inc. v. Crown Glendale Assocs, LLC*, 2013 WL 12130317, at *2 n.2 (C.D. Cal. Feb. 20, 2013). Indeed, this District holds that "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits a plaintiff to plead claims in the alternative, and courts…have permitted unjust enrichment and breach of contract claims to proceed simultaneously." *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015). Likewise, *Safari* held that pleading an unjust enrichment claim "is permitted even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement." 2023 WL 5506014, at *13 (citation omitted). Thus, Cox is permitted to state alternative claims at this stage.

## 2.    Cox Pled Sufficient Allegations for Unjust Enrichment

MaxLinear also argues that Cox has failed to meet Rule 9(b)'s pleading standards with respect to the quasi-contract claim. This argument is irrelevant in view of *Hartford* and *Stark*, *supra*, and even if a "quasi-contract" claim must be stated, it is also incorrect. MaxLinear claims that Cox has not precisely identified which and how statements were false or misleading, or when they occurred. But Cox's pleading satisfies Rule 9(b), which merely requires that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

---

[4] The holdings in these cases are also based on *Bechtel v. Chase*, where the court found that a plaintiff could not **recover** for both breach of contract and an implied contract under California state law. 156 Cal. 707, 711 (1909). *Betchtel* was before the *Erie* doctrine and, in any case. was in state court, so it did not deal with whether a party can plead claims for both breach of contract and quasi-contract under applicable federal procedural law.

MaxLinear's own caselaw, *Ebeid ex rel. United States v. Lungwitz*, explains that to meet Rule 9(b), a complaint need merely make "with particularity allegations that provide a reasonable basis to infer" a false or misleading statement, or "provide enough detail 'to give [Defendant] notice of the particular misconduct which is alleged to constitute the fraud charged so that [she] can defend against the charge and not just deny that [she has] done anything wrong.'" 616 F.3d 993, 998-99 (9th Cir. 2010) (second and third alterations in original) (quoting *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001)). Thus, Rule 9(b) only requires that Cox's pleadings provide enough detail to put MaxLinear on notice of the misconduct Cox claims is fraudulent, rather than requiring the precise statements that MaxLinear seeks. The counterclaims meet this standard. (DE 266-1, ¶¶ 532-33, 589-92).

Even if Rule 9(b) did require Cox to precisely identify which statements were false or misleading, how they could be false or misleading, or when they occurred, Cox's allegations meet those requirements. The counterclaims state that "MaxLinear made false representations, including misrepresenting to the public via its securities filings that any of its essential patents were encumbered by the MoCA IPR Policy" and provide details such as the exact date and language used in the security filings. (DE 266-1, ¶¶ 533, 590). Thus, Cox did identify false and misleading statements and when they were made (the content and date of the filings).

The false and misleading nature of those statements is further demonstrated by ████████████████████████████████████████████ ████████████████████████████████████████████ (*Id.*, ¶ 590). In fact, despite MaxLinear's public representations, ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ (*Id.*, ¶¶ 556, 566). This is just one of the many examples of Cox's

counterclaims clearly identifying specific statements made by MaxLinear that were false or misleading, how the statements were false or misleading, and when the statements were made.

Contrary to MaxLinear's assertions, the counterclaims describe the benefits conferred and unjustly retained by MaxLinear. The counterclaims explain how MoCA support helped MaxLinear defeat alternative technology so Cox and others would adopt MoCA (*id.*, ¶¶ 532-33), and how Cox joined and supported MoCA (*id.*, ¶¶ 552). As Paragraph 553 further details, "MaxLinear itself benefitted from Cox's participation and support in MoCA, including by having Cox help expand the market for MoCA and approve standards while acting as a Board member. The benefits MaxLinear received from Cox's participation in MoCA included Cox's feedback concerning standards and approval of standards, Cox's consideration and adoption of any MoCA equipment, MaxLinear's ability to work with vendors of Cox on interoperability and other issues critical to MaxLinear's own products, and MaxLinear's ability to market and offer to sell MoCA equipment to Cox." These pleadings suffice and MaxLinear's complaints are meritless.

For at least these reasons, Cox has sufficiently pled a claim for quasi-contract or unjust enrichment.

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT COX LEAVE TO AMEND

MaxLinear's arguments misstate the law and ignore the many factual allegations in Cox's counterclaims. But if the Court is inclined to dismiss any claims Cox requests that it be given leave to amend the counterclaims to address any deficiencies. There is a strong public policy in favor of permitting amendment, and the Ninth Circuit has made clear that "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). Without specifically finding undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendments, prejudice to the

opposing party, or futility of amendment, it is an abuse of discretion to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 538 (9th Cir. 1989).

Disregarding these standards, MaxLinear makes a specific request for dismissal without leave only as to the breach of contract claim. (DE 335 at 30-31). But the relevant factors do not justify even this limited request. Cox did not delay and has not acted in bad faith or with dilatory motive. Courts in this district have found no undue delay even where, unlike here, a party seeks to amend their pleading just months before the close of discovery. *See Am. Honda Motor Co., Inc. v. LKQ Corp*., 2022 WL 4596559, at *3 (C.D. Cal. Aug. 11, 2022). Contrary to MaxLinear's assertion, Cox has only amended its counterclaims once, and it did so in good faith. Moreover, the Court has not ruled that any deficiencies exist in Cox's counterclaims to date. This factor weighs in favor of granting amendment and/or supplementation.

MaxLinear bears the burden of showing any specific prejudice or futility. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Its general allegations of prejudice are insufficient because "bald assertions of prejudice cannot overcome the strong policy reflected in Rule 15(a) to facilitate a proper disposition on the merits." *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 1409854, at *3 (S.D. Cal. March 27, 2019). "[A]mendment is futile when no set of facts can be proved under the [proposed] amendment to the pleadings that would constitute a valid and sufficient claim or defense." *See Am. Honda Motor*, 2022 WL 4596559, at *3 (citation omitted). That is not the case here, where *all* of the issues identified in MaxLinear's motion amount, at most, to assertions that it cannot understand Cox's claims without additional words to further address elements of the claims.

## V.   CONCLUSION

For all of these reasons, Cox requests that the Court deny MaxLinear's Motion.

Dated: March 1, 2024

KILPATRICK TOWNSEND & STOCKTON LLP

By:   */s/ April E. Isaacson*

April E. Isaacson
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba
wkadaba@kilpatricktownsend.com
Michael J. Turton
mturton@kilpatricktownsend.com
Courtney S. Dabbiere
cdabbiere@kilpatricktownsend.com
Christopher S. Leah
cleah@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.;*
*CoxCom, LLC; and Cox Communications*
*California, LLC*