REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  Christopher S. Marchese (SBN 170239)
   marchese@fr.com
2  Tyler R. Train (SBN 318998)
   train@fr.com
3  FISH & RICHARDSON P.C.
   633 West Fifth Street, 26th Floor
4  Los Angeles, CA 90071
   Tel: (213) 533-4240 / Fax: (858) 678-5099
5

6  Oliver Richards (SBN 310972)
   orichards@fr.com
7  John-Paul Fryckman (SBN 317591)
   fryckman@fr.com
8  Fish & Richardson P.C.
   12860 El Camino Real, Suite 400
9  San Diego, CA 92130
   Tel: (858) 678-5070
10

11 *Additional Counsel Listed on Signature Page*

12
   Attorneys for Defendant
13 DISH Network Corporation, et al.

14          IN THE UNITED STATES DISTRICT COURT

15       CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

16

17 ENTROPIC COMMUNICATIONS,          Case No. 2:23-cv-1043-JWH-KES
   LLC,
                                     **COUNTER-CLAIMANTS DISH**
18                                   **NETWORK CORPORATION, ET**
             Plaintiff,              **AL.'S OPPOSITION TO COUNTER-**
19                                   **DEFENDANTS MAXLINEAR, INC.**
        v.                           **AND MAXLINEAR**
20                                   **COMMUNICATIONS, LLC'S**
   DISH NETWORK CORPORATION;         **MOTION TO DISMISS AMENDED**
21 DISH NETWORK L.L.C.; DISH         **COUNTERCLAIMS**
   NETWORK SERVICE, L.L.C.; AND
22 DISH NETWORK CALIFORNIA
   SERVICE CORPORATION,              Hearing Date:  March 29, 2024
23                                   Hearing Time:  9:00 a.m.
             Defendants.             Courtroom:     9D
24                                   Judge:         Hon. John W. Holcomb

25

26

27

28

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

| | |
|---|---|
| 1 | DISH NETWORK CORPORATION; DISH NETWORK L.L.C.; DISH NETWORK SERVICE L.L.C.; DISH NETWORK CALIFORNIA SERVICE CORPORATION; AND DISH TECHNOLOGIES L.L.C., |

DISH NETWORK CORPORATION;
DISH NETWORK L.L.C.; DISH
NETWORK SERVICE L.L.C.; DISH
NETWORK CALIFORNIA SERVICE
CORPORATION; AND DISH
TECHNOLOGIES L.L.C.,

                Counter-Claimants,

v.

ENTROPIC COMMUNICATIONS,
LLC; MAXLINEAR, INC.; AND
MAXLINEAR COMMUNICATIONS
LLC,

                Counter-Defendants.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page**

INTRODUCTORY STATEMENT ..................................................................8

BACKGROUND ..........................................................................................8

    I.     Technical Standards—Generally and MoCA .............................9

    II.    Events Leading to DISH's Counterclaims ...........................10

    III.   Overview of DISH's Counterclaims ..................................11

LEGAL STANDARD ................................................................................13

ARGUMENT .............................................................................................13

    I.     Standing: Each DISH Entity Has Standing .........................13

          A.    Each of the DISH Counterclaim Plaintiffs Has Standing to Enforce the IPR Policy As Parties or Third-Party Beneficiaries................................................13

              1.    DISH Technologies L.L.C. Has Standing. ..........14

              2.    The Other DISH Entities Have Standing. ...........14

          B.    DISH Has Properly Alleged It Made a Compliant License Request. ....................................................18

          C.    DISH Has Properly Alleged Harm. ............................19

    II.    Breach of Contract: DISH Has Properly Alleged MaxLinear Breached the IPR Agreement.................................21

          A.    DISH has Properly Pled All Elements to Show Breach. ....................................................................21

          B.    DISH Has Properly Pled the Contract Terms. ............22

          C.    DISH Has Properly Alleged Breach. ..........................23

    III.   Fraud: DISH Has Properly Alleged Fraud, Conspiracy, and Quasi-Contract Against MaxLinear ..............................25

          A.    DISH Has Properly Pled All Elements of Fraud in Compliance with Rule 9(b)...................................25

          B.    DISH Has Adequately Alleged Conspiracy ...............27

          C.    DISH Has Adequately Pled Unjust Enrichment / Quasi-Contract ........................................................28

    IV.   Antitrust: DISH Has Adequately Pled Violations of Federal and State Antitrust Laws ........................................29

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

        V.      DISH Will Withdraw Its Patent Misuse Counterclaim.........................32

CONCLUSION.........................................................................................................32

DISH'S OPPOSITION TO MAXLINEAR MTD AMENDED COUNTERCLAIMS
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
  2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ..................................................9, 10

*Apple, Inc. v. Motorola Mobility, Inc.*,
  2011 WL 7324582 (W.D. Wis. June 7, 2011).....................................................16

*Arriola v. Flagstar Bank*,
  2016 WL 1449537 (C.D. Cal. Apr. 11, 2016) .....................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................23

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. May 11, 2000).........................................29, 31

*CDF Firefighters v. Maldonado*,
  158 Cal. App. 4th 1226 (2008) ..........................................................................21

*City Sols., Inc. v. Clear Channel Commc'ns*,
  365 F.3d 835 (9th Cir. 2004) .............................................................................25

*Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*,
  111 F.3d 1427 (9th Cir. 1996) ...........................................................................32

*Cutler v. Rancher Energy Corp.*,
  2014 WL 1153054 (C.D. Cal. Mar. 11, 2014) ....................................................26

*Deakins Holding PTE Ltd. v. NewNet Inv. Grp. LLC*,
  2015 WL 468972 (C.D. Cal. Feb. 4, 2015) .........................................................18

*ESG Cap. Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ...........................................................................29

*Evolved Wireless, LLC v. Apple, Inc.*,
  2019 WL 831112 (D. Del. Feb. 21, 2019)...........................................................20

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

*In re Facebook Priv. Litig.*,
　192 F. Supp. 3d 1053 (N.D. Cal. 2016)...............................................................20

*Fecht v. Price Co.*,
　70 F.3d 1078 (9th Cir. 1995) ...............................................................................27

*Glob. Hunter Sec., LLC v. MannKind Corp.*,
　2013 WL 2120865 (C.D. Cal. May 14, 2013).....................................................17

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
　61 Cal. 4th 988, 1000 (2015) ..............................................................................28

*Havenrock Cap., LLC v. Brennan*,
　2018 WL 11354527 (C.D. Cal. Dec. 3, 2018).....................................................13

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
　12 F.4th 476 (5th Cir. 2021) ...............................................................................16

*In re Innovatio IP Ventures, LLC Patent Litig.*,
　2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) .........................................................16

*Kaiser Engineers, Inc. v. Grinnell Fire Prot. Sys. Co.*,
　173 Cal. App. 3d 1050 (Cal. Ct. App. 1985).................................................15, 16

*Kashmiri v. Regents of Univ. of Cal.*,
　156 Cal. App. 4th 809 (2007) ..............................................................................17

*Kendall v. Visa U.S.A., Inc.*,
　518 F.3d 1042 (9th Cir. 2008) .............................................................................30

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,
　2021 WL 151978 (N.D. Cal. Jan. 18, 2021)........................................................27

*Longest v. Green Tree Servicing LLC*,
　74 F. Supp. 3d 1289 (C.D. Cal. Feb. 9, 2015).....................................................29

*Microsoft Corp. v. Motorola, Inc.*,
　696 F.3d 872 (9th Cir. 2012) ...............................................................10, 16, 17

*Microsoft Corp. v. Motorola, Inc.*,
　795 F.3d 1024 (9th Cir. 2015) .............................................................10, 17, 20

*Microsoft Corp. v. Motorola, Inc.*,
　854 F. Supp. 2d 993 (W.D. Wash. Feb. 27, 2012) ..............................................16

DISH'S OPPOSITION TO MAXLINEAR MTD AMENDED COUNTERCLAIMS
Case No. 2:23-cv-1043-JWH-KES

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

*Mintel Learning Tech. v. Beijing Kaidi*,
   2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) .......................................................28

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
   779 F.3d 1036 (9th Cir. 2015) ..........................................................................15

*Safari v. Whole Foods*,
   2023 WL 5506014 (C.D. Cal. July 24, 2023) ....................................................29

*Sherman v. Pepperidge Farm, Inc.*,
   2023 WL 5207458 (C.D. Cal. Apr. 28, 2023) ....................................................16

*Stark v. Patreon, Inc.*,
   635 F. Supp. 3d 841 (N.D. Cal. Oct. 13, 2022) ...............................................28

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ..........................................................................23

*Toyo Tire & Rubber Co. v. Atturo Tire Corp.*,
   2017 WL 1178224 (N.D. Ill. Mar. 30, 2017) ...................................................32

**Other Authorities**

Fed. R. Civ. P. 9(b) ...............................................................................25, 27

Fed. R. Civ. P. 12(b)(6) ...............................................................................13

Restatement (Second) of Contracts § 302 (1981) ...........................................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## INTRODUCTORY STATEMENT

DISH Network Corporation, DISH Network L.L.C., Dish Network Service L.L.C., Dish Network California Service Corporation, and DISH Technologies L.L.C. (collectively, "Counter-Claimants" and "DISH") oppose Counter-Defendants MaxLinear, Inc. and MaxLinear Communications LLC's (collectively, "MaxLinear") Motion to Dismiss (D.I. 356-1) (the "motion") DISH's Counterclaims (D.I. 316).

MaxLinear's motion improperly urges the Court to reject factual allegations at the motion to dismiss stage simply because MaxLinear labels these allegations as implausible. MaxLinear offers nothing more than attorney argument to support its implausibility theory – a theory that is rarely sufficient to grant a motion to dismiss and fails here. Worse, MaxLinear asserts that DISH did not allege certain elements of a cause of action when the opposite is true: DISH's counterclaims expressly allege facts in support of those very elements. Because the facts pled in the counterclaims are assumed true, the only question for the Court is whether those facts support each element of a given cause of action. The proper vehicle for MaxLinear to challenge DISH's allegations is through discovery and trial. Because disputed issues of fact exist, DISH's claims should be allowed to proceed.

## BACKGROUND

This case generally relates to the alleged patent infringement by implementation of technical standards. Entropic alleges infringement of patents it purchased from MaxLinear, which Entropic claims are essential to implement a communications standard known as "MoCA." (*See generally* D.I. 1.) Though DISH denies infringement and validity, DISH contends that any damages for the alleged infringement is limited according to the RAND contractual terms agreed-to by Entropic's predecessors in interest to the asserted patents. (*See generally* D.I. 316, Counterclaims, ¶¶ 25-35.) DISH's counterclaims seek a judicial determination that these contractual terms apply to the asserted patents, and seek further relief for breach of those contractual commitments, tortious conduct, and violations of federal and state

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

antitrust laws.  (*See generally id.* ¶¶ 75-163.)

Below, we begin with a general discussion of technical standards, then turn to the events that underlie DISH's counterclaims against MaxLinear and Entropic.

## I.   Technical Standards—Generally and MoCA

Technical standards, such as WiFi, Bluetooth, and 5G are essential to the modern world.  Product designers are willing to develop equipment and software compliant with technical standards because of the promise that the equipment and software will operate with other devices and software compliant with the standard.  (D.I. 316 ¶ 2.)[1]  For example, the WiFi standard ensures that one manufacturer's laptop can still connect and talk to a WiFi router made by a different manufacturer.  Standards also reduce investment needed to develop new technologies because costs are spread among the companies working to create the standard.  (*Id.*)  These are commonly recognized competitive benefits of technical standards.  *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 4948567, at *1 (N.D. Cal. Oct. 18, 2011).

Technical standards, however, can present significant antitrust risks.  These risks are amplified when patents (i.e., government-granted monopolies) are involved.  Two common risks include "lock-in" and "patent hold-up."  (D.I. 316, ¶ 3.); *see also Apple*, 2011 WL 4948567, at *2.  "Lock-in" refers to a problem whereby, once a standard has been widely accepted in an industry (like WiFi), it is difficult for a company to avoid the standard.  (*Id.*)  "Patent Hold-Up" refers to a problem where a single patent owner can "hold-up" an entire industry based on claims that the patent owner's patents are necessary to practice the standard.  (*Id.*)  Thus, the standardization process can be abused by a single company that encourages adoption of its patented technology into a standard, lies in wait for the standard to be widely adopted, and then demands exorbitant damages.  (*Id.*)  Such is the case here, where the asserted patents were purportedly adopted into the MoCA standard years ago, and, despite years

---

[1]  All paragraph number cites to Docket No. 316 refer to DISH's Amended Counterclaims beginning at page 68 of that filing.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   having passed without any notice of alleged infringement, the new patent owner
2   (Entropic) now demands $1,000,000,000 from DISH.  (*See* D.I. 76 at 11).

3          To address hold-up risks—and to avoid running afoul of antitrust scrutiny—
4   standards-setting organizations ("SSOs") have adopted rules for how the
5   promulgators of a standard behave toward implementers of the standard.  (D.I. 316 ¶
6   4.)  Generally, those rules require members of the SSOs to grant licenses for standard
7   essential patents to any implementor of the standard on fair, reasonable, and non-
8   discriminatory ("RAND") terms.  (*Id.*)  As courts have found, the RAND promise
9   must be available to all-comers, regardless of whether the potential licensee is a
10  member of the standards-setting organization. (*Id.* ¶ 5); *see also, e.g., Microsoft Corp.*
11  *v. Motorola, Inc.*, 696 F.3d 872, 885 (9th Cir. 2012) (stating that RAND obligation
12  requires firm to license to "all comers")*; see also Microsoft Corp. v. Motorola, Inc.*,
13  795 F.3d 1024, 1031 (9th Cir. 2015) ("[A]n SEP holder cannot refuse a license to a
14  manufacturer who commits to paying the RAND rate.").  Without RAND license term
15  guarantees for all, a small number of companies can coordinate to develop a standard,
16  cross-license each other, but then hold up all others once a standard is widely adopted.

17         The communication standards here were developed by the Multimedia over
18  Coax Alliance, or "MoCA." (D.I. 316 ¶ 22.)  As with most SSOs, MoCA has rules
19  for how its members must behave when licensing intellectual property related to
20  MoCA standards.  (*Id.* ¶ 6.)  Also, as with most SSOs, MoCA requires its members,
21  and those members agree, to license intellectual property essential to the practice of
22  MoCA standards on RAND terms.  (*Id.*)  This is a contractual promise between each
23  member and MoCA, and between the members, for the benefit of those members,
24  other organizations, and the public that choose to implement MoCA standards.  (*Id.*;
25  *see also id.*, ¶¶ 25-35 (discussing the contracts more specifically).)

26  **II.   Events Leading to DISH's Counterclaims**

27         Entropic Communications, Inc. ("Old Entropic")—the original assignee of the
28  Asserted Patents in this case—agreed as a member of MoCA to license patents

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1  essential to MoCA on RAND terms. (D.I. 316, ¶¶ 40-41.) MaxLinear—a member of

2  MoCA's Board of Directors since 2015—affirmed that promise when it acquired Old

3  Entropic. (*Id.*, ¶ 43.) However, MaxLinear's transfer of the asserted patents to

4  Plaintiff Entropic (among other things) revealed that affirmance to be false.

5  In addition to the RAND requirement itself, the MoCA IPR Policy has

6  provisions to prevent circumventions of the RAND promise, including by requiring

7  "any agreement for transferring or assigning Essential Patent Claims includes a

8  provision that such transfer or assignment is subject to . . . obligations to license

9  imposed on the Alliance Party by this Agreement." (*Id.,* ¶ 46.) But when MaxLinear

10  sold the Asserted Patents to Plaintiff Entropic, ***MaxLinear failed to include language***

11  ***in the assignment agreement required by MoCA***. (D.I. 316 ¶ 7.) Despite the IPR

12  Policy's rules and MaxLinear's RAND commitments, MaxLinear made a contrary

13  representation in the Patent Purchase Agreement: ████████████████████████████

14  ████████████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████████████

16  ███████████████████████ (D.I. 306-8 § 3.1 (emphasis added); *id.*, Ex. G.)

17  Since acquiring the Old Entropic patents, Plaintiff Entropic has exacerbated

18  this omission by failing to honor Old Entropic's and MaxLinear's RAND promises.

19  For example, despite repeated written requests, Entropic failed to provide *any*

20  licensing offer to DISH—much less one that complies with RAND obligations. (D.I.

21  316 ¶ 49-55.) Indeed, the only monetary demand Entropic has identified is $1 billion.

22  (*See* D.I. 76 at 11.) Despite recent claims that it will comply with the policy, Entropic

23  still has not indicated it will make a RAND-compliant license offer. Instead, Entropic

24  has continued to litigate, causing DISH to incur significant expenses that likely could

25  have been avoided, had Entropic simply complied with MoCA's IPR Policy.

26  **III.   Overview of DISH's Counterclaims**

27  In its counterclaim complaint, DISH asserts 11 claims—three against Entropic,

28  three against MaxLinear, and five against both Entropic and MaxLinear. These

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  claims fall into three categories: (1) contract; (2) fraud; and (3) antitrust.

2      For the contract claims, DISH first asks this Court to find that Plaintiff Entropic

3  is required to license the asserted patents on RAND terms (Count I, D.I. 316, ¶¶ 75-

4  84) and to determine what those RAND terms would be (Count II, *id.*, ¶¶ 85-90).

5  DISH also alleges breach of the IPR Policy contract by Entropic (Count III) for failing

6  to comply with the RAND promise attached to the asserted patents (*id.*, ¶¶ 91-100);

7  and breach by MaxLinear (Count IV) for attempting to circumvent the RAND

8  promise it made and for failing to include language required by the IPR Policy when

9  it transferred ownership of the patents to Entropic (*id.*, ¶¶ 101-110).

10     As to the fraud claims, DISH alleges that MaxLinear fraudulently committed

11 to compliance with the MoCA IPR Policy when, in reality, it had no intention of doing

12 so—promises on which DISH relied when deciding what technology to implement in

13 its products.  (Count V, D.I. 316, ¶¶ 111-122.)  DISH also alleges that MaxLinear

14 conspired with Entropic to further that fraud by attempting to "wash" the asserted

15 patents of any RAND commitment through the transfer to Entropic.  (Count VI, *id.*,

16 ¶¶ 123-131.)  Further, DISH alleges that MaxLinear was unjustly enriched by the

17 widespread adoption of MoCA technology (which was achieved by its wrongful and

18 fraudulent statements concerning the IPR Policy) and should be disgorged of those

19 unjust gains.  (Count VII, *id.*, ¶¶ 132-138.)

20     Lastly, as to the antitrust claims, DISH alleges that, by attempting to wash the

21 patents of their RAND obligations after widespread adoption of MoCA technologies,

22 Entropic and MaxLinear became unrestrained monopolists.  (*See* D.I. 316, ¶¶ 139-

23 147.)  DISH identifies at least two markets (the markets for in-home networking and

24 TV services), and alleges that those markets have been and will continue to be harmed

25 by Entropic's and MaxLinear's attempts to demand monopoly rents for DISH's (and

26 others') alleged use of patents that Entropic claims are essential to implement MoCA

27 standards.  As DISH has alleged, these actions violated Federal Antitrust law (Count

28 VIII), California Antitrust law (Count IX), the Patent Laws (Count X), and a

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

California law governing business conduct (Count XI).

## LEGAL STANDARD

A claim "should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Arriola v. Flagstar Bank*, 2016 WL 1449537, at *2 (C.D. Cal. Apr. 11, 2016) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). DISH's well-pled factual allegations must be taken as true and all reasonable inferences must be drawn in DISH's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Havenrock Cap., LLC v. Brennan*, 2018 WL 11354527, at *3 (C.D. Cal. Dec. 3, 2018).

## ARGUMENT

MaxLinear moves to dismiss all claims against it. MaxLinear improperly asks this Court to ignore factual allegations made in DISH's complaint, or else simply not believe them. Taking DISH's well-pled allegations as true, DISH has properly stated a claim for each of the counts challenged by MaxLinear.

**I.** **Standing**: Each DISH Entity Has Standing

    **A.** **Each of the DISH Counterclaim Plaintiffs Has Standing to Enforce the IPR Policy As Parties or Third-Party Beneficiaries.**

First, MaxLinear argues (at 14-17) that each of the DISH counterclaim plaintiffs lack standing to bring counterclaims[2] because, according to MaxLinear, these DISH plaintiffs "do not have rights or beneficiary status to enforce the IPR Policy." (E.g., Mot. at 14.) MaxLinear similarly argues (at 20-21) that "Dish failed to plead privity of contract or that the entities are intended beneficiaries." (E.g., Mot. at 20.) MaxLinear is wrong on both counts.

---

[2] MaxLinear's brief is not clear as to whether this standing argument applies only to the breach-of-contract claims, or all claims. To the extent MaxLinear believes that the DISH counterclaim defendants do not have standing to bring fraud or antitrust claims because they are purportedly not in privity of contract, MaxLinear's brief is silent as to why. DISH nonetheless addresses MaxLinear's arguments as they are made.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### 1. DISH Technologies L.L.C. Has Standing.

As alleged in DISH's counterclaim complaint, DISH Technologies L.L.C. ("DISH Technologies") has standing because it is a party to the contract alleged to be breached. (D.I. 316, ¶¶ 58-63.) As the counterclaim complaint explains, MaxLinear's MoCA member contract is "an enforceable contract between the member [MaxLinear], MoCA, *and the other members of MoCA*." (*Id.*, ¶ 28.) DISH Technologies was a member of MoCA, and thus a party to that contract. (*Id.*, ¶ 58.) Indeed, emphasizing that DISH Technologies has standing, the IPR Policy specifically provides rights to "terminated Alliance Party[s]." (*See id.*, ¶¶ 60-61.)

MaxLinear's only response is to claim (at 16) that Dish Technologies breached its own agreement with MoCA for purported requirements when a change of control occurs. MaxLinear's argument is based on a false premise. There was no change of control; to the contrary, EchoStar Technologies became DISH Technologies via a name change—as alleged in the counterclaims: "[DISH Technologies] was *previously named* EchoStar Technologies." (*Id.*, ¶ 59 (emphasis added).) MaxLinear offers nothing contrary, but even if it could, the argument would not lead to dismissal because it would simply illustrate a factual dispute.

In addition, whether DISH Technologies breached its agreement with MoCA (i.e., the "EchoStar Promoter Agreement") is of no moment as to whether it has standing. Even assuming what MaxLinear alleges is true, MaxLinear's recourse would be to bring its own breach claim. It has not done so, but instead asks this Court to invoke the drastic remedy of dismissing DISH's claims.

### 2. The Other DISH Entities Have Standing.

As to the other DISH entities, DISH's counterclaim complaint alleges that they have standing to enforce the IPR Policy as third-party beneficiaries of the policy. (*See* D.I. at 316, ¶¶ 64-74.) As alleged in the counterclaims, both through the language of the IPR Policy and through MoCA's actions, the IPR Policy makes any party wishing to implement a MoCA standard a third-party beneficiary. (*See id.*, ¶¶ 68-70.) The

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

counterclaim complaint also alleges that all DISH entities—including the other counterclaim plaintiffs—"became de facto member[s] of MoCA through a course of conduct" because, during the many years in which the DISH entities participated in MoCA, they were treated as members.  (*See id.*, ¶¶ 73.)

MaxLinear does not dispute that third-party beneficiaries can enforce contracts, or that contracts can be modified by a course of conduct.  Instead, MaxLinear argues (at 15) that this Court should disregard all of these well-pled allegations based on its interpretation of a contract it alleges EchoStar Technologies (now DISH Technologies) agreed to with MoCA nearly twenty years ago.  More specifically, MaxLinear argues that because ████ EchoStar Technologies agreed that ████████████ the DISH counterclaimants cannot be third-party beneficiaries of the IPR Policy in 2024.  MaxLinear is mistaken.

For one, MaxLinear's argument is improperly predicated on a request that this Court decide factual questions on a motion to dismiss.  As courts have explained, "[b]ecause they involve factual questions of intent, third party beneficiary claims are often not appropriate for resolution via motion to dismiss."  *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1065 (9th Cir. 2015).  Here, MaxLinear asks this Court to take judicial notice of another document outside the pleadings, without any testimony as to what that document is or what it means (or even if it was in force at the relevant time), to find it is impossible to have third-party beneficiaries of the MoCA IPR Policy.  DISH should at least have the opportunity to further develop the facts to prove the allegations in its complaint (which must be taken as true at this stage) that these other entities are intended third-party beneficiaries.

MaxLinear is wrong to suggest (at 15) that third-party beneficiaries can only be created by "express" language in a contract.  To the contrary, a third-party beneficiary "need not be named or identified individually to be an express beneficiary."  *Kaiser Engineers, Inc. v. Grinnell Fire Prot. Sys. Co.*, 173 Cal. App. 3d 1050, 1055 (Cal. Ct. App. 1985).  Instead, "[a] third party may enforce a contract

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

if it can be shown that he or she is a member of the class for whose express benefit the contract was made." *Id.* Where, as here, the "*circumstances* indicate that the promisee" (here, each MoCA implementor) "intends to give the beneficiary the benefit of the promised performance" (i.e., the right to license essential patents on RAND terms), that beneficiary is entitled to enforce the terms of the contract against the contracting party (here MaxLinear). *See, e.g.,* Restatement (Second) of Contracts § 302 (1981) (emphasis added). Thus, as courts have found, "[c]ompanies seeking to license under [FRAND] terms become third-party beneficiaries of the contract between the [SEP] holder and the [Standards Setting Organization (SSO)]. They are thus enabled to enforce the terms of that contract." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 481 (5th Cir. 2021); *see also, e.g., Microsoft*, 696 F.3d at 884 (finding that an implementor of a standard is an intended third-party beneficiary); *In re Innovatio IP Ventures, LLC Patent Litig.*, 2013 WL 5593609, at *4 (N.D. Ill. Oct. 3, 2013) (same); *Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 999 (W.D. Wash. Feb. 27, 2012) (same); *Apple, Inc. v. Motorola Mobility, Inc.*, 2011 WL 7324582, at *10 (W.D. Wis. June 7, 2011) (same).[3]

For another thing, the contract to which MaxLinear points is at least ambiguous as to whether implementors of MoCA standards are third-party beneficiaries. The portion of the agreement reproduced by MaxLinear merely states that Affiliates of MoCA members ███████████████████████████████████████ ████████████████████████████████████████████████ (D.I. 359-1, § 3.2.) This general statement refers only broadly to the ████████████ granted to MoCA members, which could include (for example) the right to participate in MoCA meetings and vote on which technologies become part of the MoCA Standard. (*See, e.g. id.* § 4.3.) It does not rule out implementors of MoCA standards

---

[3] Nothing cited by MaxLinear is to the contrary. The one case cited by MaxLinear for this proposition (*Sherman v. Pepperidge Farm, Inc.*, 2023 WL 5207458, at *4 (C.D. Cal. Apr. 28, 2023)) involved a consignment contract, which (unlike here) contained no provisions suggesting an intent to confer a benefit on the third-party.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

as intended third-party beneficiaries of the IPR Policy.  On the other hand, DISH's counterclaims point to provisions specific to the IPR Policy—such as the statement in the policy itself that its goal is "to maximize the likelihood of ***widespread adoption***" of MoCA standards, i.e., adoption beyond just the members of MoCA.  (*See* D.I. 316, ¶ 68 (emphasis added).)  Moreover, DISH's counterclaim complaint points to another statement in the IPR Policy that it should be interpreted to be consistent with antitrust law, which (as discussed above) requires that the RAND be made available to "all comers."  (*See* D.I. 316, ¶ 70); *Microsoft*, 696 F.3d at 885.[4]

These specific statements with respect to the IPR Policy should trump the more general one identified by MaxLinear. *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809, 834 (2007) ("Under well-established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision.").  At minimum, the specific statements in the MoCA IPR Policy at least render the more general provision ambiguous, in which case MoCA's actions promoting widespread implementation of MoCA can be useful in its interpretation.  (*See* D.I. 316, ¶ 69.) Certainly, though, given these disputes, dismissal is inappropriate.

Finally, MaxLinear argues (at 16) that this Court simply shouldn't believe DISH's course-of-conduct allegations.  But course of conduct is a classic fact issue that cannot be resolved at this stage.  Having asked this Court to interpret a contract outside the pleadings in the first place (the EchoStar Promoter Agreement), MaxLinear compounds its error by demanding the Court resolve factual allegations rather than assume their truth, as is required in a motion to dismiss.  As discussed above, even if this Court takes notice of this additional contract, its terms are ambiguous as to who can enforce the promises made in the IPR Policy.  This, again, is not grounds for dismissal. *See Glob. Hunter Sec., LLC v. MannKind Corp.*, 2013

---

[4] MaxLinear suggests (at 17) that the Ninth Circuit somehow reneged on this statement in a later appeal from the same case, *Microsoft v. Motorola*, 795 F.3d 1024, 1031-33 (9th Cir. 2015).  No such statement appears in the opinion cited.

DISH'S OPPOSITION TO MAXLINEAR MTD AMENDED COUNTERCLAIMS
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

WL 2120865, at *6 (C.D. Cal. May 14, 2013) ("While the parties' purpose and course of conduct are important to construing the meaning of the contract, they cannot be considered at the motion to dismiss stage."); *Deakins Holding PTE Ltd. v. NewNet Inv. Grp. LLC*, 2015 WL 468972, at *5 (C.D. Cal. Feb. 4, 2015) (similar).

### B.   DISH Has Properly Alleged It Made a Compliant License Request.

MaxLinear next argues (at 17-18) that DISH's breach of contract claim should be dismissed because, in MaxLinear's view, DISH failed to make "a proper request for a license offer under the IPR Policy."  Later, MaxLinear similarly argues (at 21) that DISH failed to adequately plead performance for the same reasons.  Again, MaxLinear improperly bases its motion on the attorney argument that the facts are contrary to the allegations of the counterclaims.

DISH has properly alleged that it *did* make a request, in writing, for a RAND license.  As DISH's counterclaim complaint states, DISH representatives "requested a licensing proposal from Entropic on behalf of DISH Network L.L.C. ***and all DISH entities***" on May 3, 2022.  (D.I. 316, ¶ 50.)  Of course, DISH Technologies is one of those DISH entities.  The DISH representatives then followed up, in writing, with the same request, again on behalf of all DISH entities.  (*Id.*, ¶¶ 54-55.)

MaxLinear's claim that "Dish only alleges that Dish Network L.L.C., which is not an Alliance Party, submitted written requests for a license offer" bears no resemblance to the facts pled.  Instead, MaxLinear appears to be asking this Court to draw factual inferences from the letterhead on the written request—again asking this Court to decide facts on a motion to dismiss before those facts can be developed.[5]

MaxLinear also does not explain how a request in writing for RAND terms has anything to do with DISH's allegations of breach.  Nor does MaxLinear explain how

---

[5] MaxLinear's motion should also be rejected because it is simply incorrect that the MoCA IPR Policy requires that former members request a RAND license in writing. The portion of the IPR Policy identified by MaxLinear applies to requests made by *current* MoCA Members.  (See, D.I. 307-3 ("IPR Policy") § 5.1.1.)  The IPR Policy contains no similar requirement for requests made by former members—the context pled in the counterclaims.  (*See id.* § 7.2 ("the terminated Alliance Party shall be entitled to request or require any Alliance Party to license …").)

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

DISH's purported failure to request a license should lead to dismissal.  As before, if MaxLinear believes that DISH failed to comply with terms of the IPR Policy, it can allege its own breach claim or assert DISH's failure to perform as an affirmative defense excusing its own failure to perform.  Again, it has done neither.

MaxLinear's remaining arguments along these lines are pure red herrings.  For example, MaxLinear argues (at 17) that DISH "need[s], but failed, to plead which MoCA standards are at issue."  Yet MaxLinear does not explain why this matters.  Nor does MaxLinear explain why there is any legitimate confusion on this, given that Entropic's allegations of infringement are based on compliance with MoCA standards in existence during DISH's membership in MoCA.  MaxLinear also argues (at 17) that "[n]othing in the IPR Policy protects an Alliance Party member . . . from a lawsuit."  DISH has never contended otherwise—only that MaxLinear was required to include specific provisions upon transfer of patents and that Entropic was required to "offer to license" on RAND terms.  (*See* IPR Policy, §§ 5.1.1, 5.1.2.)

Lastly, MaxLinear argues (at 18) that the IPR Policy only required Entropic to negotiate in good faith and that the "log-jam" in negotiations is DISH's purported failure to agree to an NDA.  Again, MaxLinear does not explain how any of this relates to DISH's allegation of breach, let alone how those facts can be resolved in a motion to dismiss.  In any event, both the IPR Policy and the facts are to the contrary.  (*See* IPR Policy, § 5.1.1 (member is required to "offer to license"); D.I. 316-8 at 258 (DISH emailed Entropic its standard NDA and received no response).)  And Entropic's unreasonable demand for $1 billion in damages, in combination with its refusal to provide DISH with any terms, evidences that Entropic has failed to live up to the RAND promise.  (*See, e.g.,* D.I. 76 at 11.)

## C. DISH Has Properly Alleged Harm.

Next, MaxLinear argues (at 18-19) that DISH has failed to allege it was harmed by MaxLinear's breach.  This argument is, of course, belied by the explicit allegations in DISH's counterclaim complaint that it has been harmed, including being forced to

DISH'S OPPOSITION TO MAXLINEAR MTD AMENDED COUNTERCLAIMS
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

expend attorneys' fees in defending this suit.  (*See, e.g.,* D.I. 316, ¶ 110.)

MaxLinear asserts (at 18) that DISH cannot seek its attorneys' fees as damages. Not so.  The Ninth Circuit has held that the American Rule did not prohibit a party from seeking its attorneys' fees as damages for a breach of an IPR Policy promulgated by a standards-setting organization.  *See, e.g., Microsoft*, 795 F.3d at 1050.  Indeed, treating attorneys' fees as damages in the context of RAND commitment "makes particular sense in light of the purpose of the RAND commitment, which is to encourage widespread adoption of the standard."  *Id.* at 1051 (internal quotation marks omitted).  "That purpose would be substantially defeated if adopting the standard" would expose implementors to "absorb the cost of defending themselves" in lawsuits that could otherwise be avoided had the RAND-related promises been followed.  *Id.*; *accord Evolved Wireless, LLC v. Apple, Inc.*, No. CV 15-542-JFB-SRF, 2019 WL 831112, at *6 (D. Del. Feb. 21, 2019) (allowing attorneys' fees as damages resulting from a breach of an IPR Policy).  This Court should do the same.[6]

To be sure, what DISH seeks as damages are not the fees it has expended in prosecuting its counterclaim suit against MaxLinear.  Rather, the fees DISH seeks are those expended in defending itself against patent claims brought by Entropic—fees that it would likely not have had to spend had MaxLinear not attempted to circumvent the RAND promise and had Entropic actually followed it.   Though DISH's counterclaim-suit is packaged together with Entropic's infringement suit, these are not (as MaxLinear appears to allege) the same claims.

MaxLinear also incorrectly asserts (at 18) that these damages are not fairly traceable to its breach.  They are.  Had MaxLinear not breached the IPR Policy by attempting to circumvent it, DISH would not have to expend significant fees defending itself in a lawsuit that could have been avoided with a RAND-compliant license.  That MaxLinear now asserts that the RAND commitment does in fact attach

---

[6] Even if it doesn't, DISH would still be entitled to nominal damages, rendering dismissal inappropriate. *See In re Facebook Priv. Litig.*, 192 F. Supp. 3d 1053, 1061 (N.D. Cal. 2016).

DISH'S OPPOSITION TO MAXLINEAR MTD AMENDED COUNTERCLAIMS
Case No. 2:23-cv-1043-JWH-KES

to the patents is both over-simplistic and immaterial. As DISH has alleged, MaxLinear attempted to circumvent the RAND promise by transferring the patents in an attempt to create an "innocent purchaser." That this scheme has proved to be unsuccessful does not mean that DISH has not been harmed by its attempt.

## II.  **Breach of Contract**: DISH Has Properly Alleged MaxLinear Breached the IPR Agreement

### A.      DISH has Properly Pled All Elements to Show Breach.

DISH's counterclaim complaint levies one breach of contract count against MaxLinear—Count IV. In this count, DISH alleges that MaxLinear violated MoCA's IPR Policy by circumventing RAND encumbrances and by failing to include language required by the policy in its patent assignment to Entropic. (*See* D.I. 316, ¶¶ 101-109.) As recompense for this breach, DISH seeks (among other things) damages to make it whole, namely the attorneys' fees expended defending itself in this suit—which could have been avoided had MaxLinear adhered to its contract with MoCA; and other damages appropriate to cure DISH's other harms, such as those from DISH's diminution of reputation in the marketplace. (*See id.*, ¶ 110.)

The elements of a breach of contract claim are: (1) the existence of the contract; (2) the plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

DISH has pled that: **(1)** the MoCA IPR Policy constitutes part of an enforceable contract (D.I. 316 ¶¶ 25-35) to which DISH Technologies is a party (*id.*, ¶¶ 58-63) and for which the other DISH counterclaim plaintiffs are third-party beneficiaries (*id.*, ¶¶ 64-74); **(2)** "[t]o the extent the MoCA IPR Policy imposes any obligations on DISH, DISH has discharged them" by, for example, making "a request, in writing, for a RAND-compliant license offer" (*id.*, ¶ 107); **(3)** MaxLinear has breached at least Section 5.1.2 of the MoCA IPR Policy "because it failed to transfer the Asserted Patents 'subject to the terms' of the IPR policy"; and MaxLinear has breached at least

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Section 4.1.2 "by transferring the Asserted Patents without requiring Entropic to agree to license [them] on RAND terms and . . . by attempting to intentionally circumvent the RAND Promise" (*id.*, ¶¶ 108-109); and **(4)** DISH has been harmed by MaxLinear's breach in at least the amount it is spending to defend itself in this case (*id.*, ¶ 110).  Thus, DISH's counterclaim complaint properly states a claim for breach of contract.

Despite this proper pleading, MaxLinear raises various arguments as to why DISH's breach-of-contract claim should be dismissed.  None has merit.  Many of these arguments are duplicative of the arguments it makes as to standing—such as that the DISH counterclaim plaintiffs do not have standing to bring the contract claim, and that DISH allegedly failed to perform on its obligations.  The Court should reject these arguments for the same reasons already laid out above.  Below, we address the unique arguments MaxLinear raises as to the breach-of-contract claim.

## B.     DISH Has Properly Pled the Contract Terms.

As to these unique arguments, MaxLinear first argues (at 19-20) that that DISH failed to properly plead the terms of the contract alleged to have been breached.  This is incorrect.  Not only did DISH attach copies of the relevant agreements as exhibits to its complaint (*see, e.g.,* Ex. 2 (Promoter Agreement); Ex. 3 (IPR Policy); Ex. 4 (MaxLinear's Promoter Agreement)), DISH's counterclaim complaint specifically identifies, and reproduces, the sections of the contract it alleges were breached.  (*See, e.g.,* D.I. 316, ¶¶ 108-109.)  This is exactly what MaxLinear claims is required.  (*See* Mot. at 20.)

MaxLinear raises two additional issues that are both meritless and pointless.  First, MaxLinear claims that DISH was required to attach a copy of the *EchoStar* Promoter agreement to its complaint.  This, however, is ***not*** the agreement alleged to have been breached—the focus of the claim is MaxLinear's agreement with MoCA.  The EchoStar Promoter Agreement shows that EchoStar Technologies (now DISH Technologies) was formerly a member of MoCA and thus has standing to enforce the

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

IPR Policy, but DISH's counterclaim already makes this allegation. (D.I. 316, ¶¶ 58-63.) There is no requirement that DISH attach an exhibit to support every allegation in the counterclaims, nor does MaxLinear cite any case requiring as much. In any event, MaxLinear already has a copy of this agreement, and has asked this Court to take judicial notice of it, so MaxLinear's argument is form without substance.

Second, MaxLinear claims that DISH's breach-of-contract claim should be dismissed because DISH attached the 2011 version of the MoCA IPR Policy, where MaxLinear claims that the 2017 version should be the operative version. Again, MaxLinear fails to provide any authority that, on a motion to dismiss, this Court should resolve such a dispute and then dismiss the claim as a result. And again, MaxLinear's argument is form without substance as the relevant sections of the IPR Policy are the same between the 2011 and the 2017 versions,[7] and the 2017 version has already been filed. (*See* D.I. 360-1.)

### C.    DISH Has Properly Alleged Breach.

Finally, MaxLinear argues (at 21-22) that DISH failed to properly allege breach by MaxLinear. This argument is again incorrect. DISH's counterclaim complaint specifically points to the sections alleged to have been breached and explains how MaxLinear breached them. (D.I. 316, ¶¶ 108-109.)

MaxLinear's only response is to argue it didn't breach. This is a defense, not a reason to dismiss. All that is required at the pleading stage is plausibility—which DISH's counterclaim complaint more than does. "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the alleged wrongdoing]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011) ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing

---

[7] Illustrating the immateriality of the differences between these two versions of the IPR Policy, MaxLinear's own motion acknowledges that its "<u>arguments also apply to the 2011 Policy unless otherwise stated.</u>" (D.I. 356-1 at 11 n.2.)

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  that plaintiff's explanation is implausible.").

2      In any event, though MaxLinear may try to convince a jury of its version of the

3  facts, the story it presents is unconvincing. As alleged in DISH's counterclaim

4  complaint, MaxLinear specifically represented ████████████████████████████████

5  ████████████████████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13     The provision MaxLinear points to as supposed evidence of its non-breach has

14 nothing to do with encumbrances. Rather, that provision ██████████████████████

15 ████████████████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████████████████████████████

17 ██████████   ████████   ██████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████████████████

22 ██████████████████████████████████████████████████████████████████     Indeed,

23 given that MaxLinear elsewhere in the agreement specifically asserted the patents

24 were ██████████████████████████████, there is no reasonable way to read the

25 agreement as specifically requiring that the purchaser (Entropic) maintain the RAND

26 promises previously agreed or even informing Entropic of such commitments.

27     The only other argument MaxLinear makes is to assert, again, that DISH

28 purportedly refused to agree to the NDA sent by MaxLinear. MaxLinear fails to

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

explain how this has anything to do with the allegations levied against it, nor is this assertion supported by the facts.  *See* Section I.B, *supra*.

## III.   <u>Fraud</u>: DISH Has Properly Alleged Fraud, Conspiracy, and Quasi-Contract Against MaxLinear

DISH's counterclaim complaint also levies three fraud-related claims against MaxLinear.   First, DISH alleges MaxLinear committed fraud by making false statements that it would comply with the IPR Policy, inducing others (including DISH) to adopt MoCA technology, and then later attempting to "wash" the patents of that RAND promise.  (*See generally* D.I. 316, ¶¶ 111-122 (Count V).)  DISH also alleges that MaxLinear entered into a conspiracy with Entropic to further this fraudulent scheme.  (*See id.*, ¶¶ 123-131 (Count VI).)   Third, DISH alleges that MaxLinear was unjustly enriched through this wrongdoing and seeks disgorgement of MaxLinear's ill-gotten gains.  (*See id.* at ¶¶ 132-138 (Count VII).)  MaxLinear asks this Court to dismiss all three claims, but again fails to provide justification.

### A.   DISH Has Properly Pled All Elements of Fraud in Compliance with Rule 9(b).

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 839 (9th Cir. 2004).

DISH's counterclaims plead each of these elements: **(a)** "On information and belief, MaxLinear's representations that it would license the Asserted Patents on RAND terms were false at the time MaxLinear made them." (D.I. 316, ¶ 113); **(b)** "That MaxLinear knew that its representations were false, or at least lacked reasonable grounds for believing them true, is evidenced by MaxLinear's behavior after its acquisition of Original Entropic." (*Id.*, ¶¶ 114, 117); **(c)** "On information and belief and as set forth above, MaxLinear represented to the members of MoCA, their

DISH'S OPPOSITION TO MAXLINEAR MTD AMENDED COUNTERCLAIMS
Case No. 2:23-cv-1043-JWH-KES

affiliates, and potential implementors of MoCA standards—including DISH—that it would license the Asserted Patents under RAND terms and conditions and ensure any future owners of the Asserted Patents would be obligated to offer licenses under RAND terms and conditions.  On information and belief, such statements were made to induce companies such as DISH to adopt and incorporate MoCA standards into their businesses…." (*Id.* ¶ 112); **(d)** "DISH reasonably relied on the representations of MoCA participants, such as and including MaxLinear, … when deciding what technologies to utilize in its business."  (*Id.* ¶ 120); and **(e)** "DISH has been harmed by MaxLinear's fraudulent or negligently-false representations, at least because the significant cost of the instant litigation …"  (*Id.*, ¶ 121).

These same allegations also satisfy all elements for a claim of negligent misrepresentation, which are "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  *Cutler v. Rancher Energy Corp.*, 2014 WL 1153054, at *7 (C.D. Cal. Mar. 11, 2014).

MaxLinear presents a cavalcade of conclusory arguments as to why these allegations purportedly aren't sufficient, none of which should find purchase.

First, MaxLinear presents revisionist history, claiming (at 22) that neither it nor Entropic has ever "disputed that essential patents are subject to MoCA's licensing policy."  MaxLinear cites nothing in support of this statement—again presenting only attorney argument on a matter of factual dispute that cannot be resolved in a motion to dismiss.  As is set forth in the counterclaim complaint, there has been considerable back-and-forth concerning whether the patents are subject to RAND and regarding Entropic's failure to provide any RAND offer (or any offer at all).  (*See, e.g,* D.I. 316, ¶¶ 36-57.)   Moreover, neither Entropic nor MaxLinear has made any binding statement that the asserted patents are RAND-encumbered, as Entropic could do by simply agreeing to the relief requested in Count I of DISH's counterclaims.

Regardless, even if MaxLinear and Entropic have now abandoned the fraud alleged in DISH's counterclaim complaint (a fact that remains to be seen), DISH has still suffered damages as a result of the conduct to date.

Next, MaxLinear argues (at 23-24) that "Dish asserts no facts that MaxLinear's representation were false at the time they were made"; that "Dish fails to plead any facts to support" DISH's allegation that MaxLinear's allegations were false at the time MaxLinear made them"; and that "Dish fails to properly plead reliance and causation." These arguments are belied by simply reading the counterclaim complaint, which specifically alleges each of the things that MaxLinear incorrectly asserts are missing.

Finally, MaxLinear argues that DISH's factual allegations do not comply with Rule 9(b). However, "[a] plaintiff may also satisfy Rule 9(b) with allegations of circumstantial evidence if the circumstantial evidence alleged explains how and why the statement was misleading when made." *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995). Of course, DISH cannot employ a mind-reader and a time-machine to determine exactly what was in MaxLinear's head when MaxLinear agreed to abide by the IPR Policy. What DISH can do (and has done) is point to MaxLinear's actions and other statements (such as its transfer of patents to Entropic and statements made to the SEC (*see* (D.I. 316, ¶¶ 115-117)), as evidence of MaxLinear's intent. This is far from just pointing to the "current state of affairs" as MaxLinear alleges. Contrary to MaxLinear's other Rule 9(b) argument (at 23), DISH's complaint is not required to identify an *individual person* who made the false statement—alleging that the statements were made by MaxLinear is sufficient. *See, e.g., Lona's Lil Eats, LLC v. DoorDash, Inc.*, 2021 WL 151978, at *5 (N.D. Cal. Jan. 18, 2021) ("DoorDash points to no legal authority suggesting that an individual employee must be named in the complaint" in order to comply with Rule 9(b)).

**B.    DISH Has Adequately Alleged Conspiracy**

DISH has also adequately pled conspiracy. The elements of conspiracy are:

"(1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Mintel Learning Tech. v. Beijing Kaidi*, 2007 WL 2288329, at \*4 (N.D. Cal. Aug. 9, 2007).

DISH's complaint sets forth well-pled factual allegations for each of these elements: **(1)** "On information and belief, both Entropic and MaxLinear conspired to commit fraud and negligent misrepresentation to avoid having to license the Asserted Patents on RAND terms in violation of the MoCA IPR Policy.  On information and belief, the purpose of this conspiracy was to launder the Asserted Patents, thus 'washing' them of the RAND encumbrances set forth in the MoCA IPR Policy." (D.I. 316, ¶ 124.); **(2)** "As discussed above (paragraphs 111-122), MaxLinear made fraudulent and/or negligently false representations that it would license patents essential to the practice of MoCA standards on RAND terms." (*Id.*, ¶ 125; *see also id.*, ¶¶ 126-129.); and **(3)** "DISH has been harmed by the conspiracy between MaxLinear and Entropic, at least because the significant cost of the instant litigation may have been avoided if Entropic offered DISH a license to the Asserted Patents under RAND terms and conditions." (*Id.*, ¶ 130; *see also id.,* ¶ 131.)

Apart from conclusorily arguing (at 25) that DISH has not adequately pled all elements, MaxLinear only argues that neither it nor Entropic committed fraud.  These are arguments MaxLinear and Entropic are free to make to a jury—not reasons for dismissal of the claim.  And, as discussed before, the claim that Entropic has complied with the IPR Policy and that the assignment agreement referenced the RAND obligations finds no support in the evidence.

### C.    DISH Has Adequately Pled Unjust Enrichment / Quasi-Contract

As to unjust enrichment, MaxLinear's only argument is that California law does not recognize such a claim.  The authorities are to the contrary.  *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 857 (N.D. Cal. Oct. 13, 2022) ("The California Supreme Court's decision in *Hartford [Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1000 (2015)] indicates that the Ninth Circuit was incorrect to conclude that no cause of action of

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

unjust enrichment exists under California law."); *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Safari v. Whole Foods*, 2023 WL 5506014, at *3 (C.D. Cal. July 24, 2023).

As to quasi-contract, MaxLinear first argues that such a claim cannot lie where there is an express binding agreement. MaxLinear ignores, though, that elsewhere in its brief, it argues that the DISH counterclaimants aren't parties to the MoCA IPR Policy and don't have the right to enforce it. MaxLinear cannot have it both ways, and DISH is entirely within its rights to plead breach of contract and quasi-contract in the alternative. *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. Feb. 9, 2015) ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits a plaintiff to plead claims in the alternative, and courts…have permitted unjust enrichment and breach of contract claims to proceed simultaneously.").

MaxLinear next argues that, because it was a MoCA member, any benefit it received was not unjust. To become a member of MoCA, though, MaxLinear was required to commit to the IPR Policy, including the RAND requirement. Thus, as properly pled by DISH, the benefits MaxLinear received from MoCA were unjustly received because MaxLinear made fraudulent statements to become a MoCA member and receive those benefits. (*See* D.I. 316, ¶¶ 136-137.)

Lastly, MaxLinear re-hashes the same arguments it makes concerning the fraud claims leveled against it. As discussed previously, DISH has properly pled, with the requisite particularity, that MaxLinear made fraudulent statements.

## IV.  <u>Antitrust</u>: DISH Has Adequately Pled Violations of Federal and State Antitrust Laws

DISH's counterclaims also allege violations of Federal and state antitrust laws. These counts generally stem from the same nucleus of fact—that MaxLinear and Entropic entered an unlawful combination in restraint of trade by attempting to "wash" the asserted patents of RAND promises by transferring them (without mention of RAND encumbrances) to a purported innocent purchaser. (*See generally* D.I. 316,

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

¶¶ 139.)  As DISH has alleged, this combination violated Section 1 of the Sherman Act (Count VIII); the California Cartwright Act (Count IX); and the California Business and Professions Code (Count XI).

Though MaxLinear asks this Court to dismiss each of these claims, it makes no independent argument concerning the California law claims (Counts IX and XI) and simply references its arguments on the federal claims.  DISH therefore responds to MaxLinear's arguments concerning both federal claims below and those arguments apply equally to the California law claims.

"To state a claim under Section 1 of the Sherman Act," a plaintiff must plead facts that would prove "(1) a contract, combination or conspiracy amongst two or more persons or distinct business entities; (2) by which the persons intended to harm or restrain trade or commerce among the several states, or with foreign nations; and (3) which actually injures competition."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

DISH's counterclaim complaint properly alleges each of these elements:

**(1)** "As discussed above, MaxLinear executed a Patent Purchase Agreement with Entropic that transferred ownership of the Asserted Patents.  As also discussed above (*see* D.I. 316, ¶¶ 124-131) MaxLinear and Entropic entered into this agreement in an attempt to 'wash' the Asserted Patents of any obligation to license on RAND terms, despite each's obligation to do so pursuant to the MoCA IPR Policy."  (D.I. 316, ¶ 144.)  "Entropic and MaxLinear attempted to 'wash' the asserted patents of RAND-obligations in order to charge exorbitantly-high licensing fees (such as the $1 billion dollar demand made by Entropic)—thus driving up the cost of home networking and home television services for end users."  (*Id.*, ¶ 145.)

**(2)** "There is a market in the United States for home networking …" (*Id.*, ¶ 141.)  "There is also a market in the United States for home television services …" (*Id.* ¶ 142.)  "[B]ecause (on information and belief), a purpose of the Patent Purchase Agreement was to avoid a RAND obligation, the intent of Entropic and MaxLinear

DISH'S OPPOSITION TO MAXLINEAR MTD AMENDED COUNTERCLAIMS
Case No. 2:23-cv-1043-JWH-KES

was to engage in monopolistic behavior and unreasonably harm competition in the market for home networking and home television services …" (*Id.* ¶ 145.)

**(3)** "Competition in the relevant markets has been injured as a result of Entropic's and MaxLinear's behavior. By way of example, MaxLinear's and Entropic's behavior forces the providers of home television services to engage in expensive litigation (rather than negotiate a RAND license)—costs that must eventually be passed on to end-users. Moreover, if Entropic gets its demand for $1 billion, those costs must also be additionally passed on to end-users of home television services, further driving up the costs. …" (*Id.* ¶ 146.)

Most of MaxLinear's arguments in favor of dismissal are re-hashes of arguments raised elsewhere, and already addressed above. For example, as it does repeatedly in its brief, MaxLinear's primary argument is that this Court simply shouldn't believe DISH's allegations—calling them implausible. That MaxLinear views the facts differently, though, is no reason to dismiss. In any event, as has been discussed above, the evidence is clear that assignment agreement failed to adhere to the requirements of the MoCA IPR Policy. MaxLinear also conclusorily argues, without explanation, that the harm DISH has alleged is not an "antitrust" harm—despite that (as excerpted above) DISH has alleged and explained how competition in the relevant markets will be harmed.

As a last-ditch effort, MaxLinear argues that DISH's counterclaims are barred by the *Noerr-Pennington* doctrine. The problem for MaxLinear, though, is that DISH's antitrust counterclaims do not arise from the prosecution of a lawsuit. Rather, as is explicit in the counterclaims, the antitrust violation arises from the *assignment* of the asserted patents—in other words, from an unlawful *contract*. As courts have universally found, the *Noerr-Pennington* doctrine does not protect non-petitioning activity, such as the private agreement between MaxLinear and Entropic here. *See, e.g., In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 635 (E.D. Mich. May 11, 2000) (finding that *Noerr-Pennington* did not immunize party for entering into a

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

private agreement).  This is true even where follow up to the contract may involve some sort of petitioning to the government.  *See, e.g., Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1446 (9th Cir. 1996) (finding *Noerr-Pennington* doctrine inapplicable to antitrust claim where liability was predicated on an agreement rather than follow up activity relating to submitting an application to the government). "This principle follows in part from basic notions of causation: namely, when the government acts based on petitioning, any purportedly unlawful result is most proximately caused by government action, not by the private petitioning." *Toyo Tire & Rubber Co. v. Atturo Tire Corp.*, 2017 WL 1178224, at *3 (N.D. Ill. Mar. 30, 2017).  "Conversely, where private parties take unlawful action merely hoping the government will later ratify it, government action is not an intervening cause, and *Noerr-Pennington* immunity does not arise." *Id*.  Thus, the "doctrine applies when [anti-competitive] action is the consequence of legislation or other governmental action, not when it is the means for obtaining such action." *Id.* at *6 (quotation marks omitted).

## V.   DISH Will Withdraw Its Patent Misuse Counterclaim

MaxLinear argues for dismissal of DISH's patent misuse counterclaim, arguing that patent misuse is not an affirmative claim and that it is duplicative of DISH's affirmative patent misuse affirmative defense.  Though DISH disagrees that patent misuse cannot be raised as a counterclaim, DISH is sensitive to the duplication between DISH's affirmative defenses and the counterclaim.  Accordingly, to prevent duplicative efforts, DISH withdraws patent misuse as a counterclaim but maintains it as an affirmative defense.  For the avoidance of doubt, DISH continues to maintain that patent misuse is one of the predicate acts for its claim for violation of the California and Business Professions Code. (*See, e.g.,* D.I. 316, ¶ 161.)

## CONCLUSION

For the reasons stated above, DISH respectfully requests that this Court deny MaxLinear's motion to dismiss.

1

2   Dated:  March 5, 2024           FISH & RICHARDSON P.C.

3

4                       By: */s/ Oliver Richards*
                          Christopher S. Marchese (SBN 170239)

5                          marchese@fr.com
                          Tyler R. Train (SBN 318998)

6                          train@fr.com
                          633 West Fifth Street, 26th Floor

7                          Los Angeles, CA 90071
                          Tel: (213) 533-4240

8

9                          Adam R. Shartzer *(pro hac vice)*
                          Ruffin B. Cordell *(pro hac vice)*

10                        cordell@fr.com
                          Richard A. Sterba *(pro hac vice)*

11                        sterba@fr.com
                          Ralph A. Phillips *(pro hac vice)*

12                        rphillips@fr.com
                          shartzer@fr.com

13                        Michael J. Ballanco *(pro hac vice)*
                        ballanco@fr.com

14                        Taylor C. Burgener (SBN 348769)
                        burgener@fr.com

15                        FISH & RICHARDSON P.C.
                        1000 Maine Ave., SW, Suite 1000

16                        Washington, DC 20024

17                        Tel: (202) 783-5070

18

19                        David M. Barkan (SBN 160825)
                        barkan@fr.com

20                        FISH & RICHARDSON P.C.
                        500 Arguello Street, Suite 400

21                        Redwood City, CA 94063

22                        Tel: (650) 839-5070

23                        Ashley A. Bolt *(pro hac vice)*
                        bolt@fr.com

24                        FISH & RICHARDSON P.C.
                        1180 Peachtree Street NE, 21st Floor

25                        Atlanta, GA 30309

26                        Tel: (404) 892-5005

27                        Aaron P. Pirouznia *(pro hac vice)*
                        pirouznia@fr.com

28                        FISH & RICHARDSON P.C.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 292-4073
Fax: (214) 747-2091

Oliver Richards (SBN 310972)
orichards@fr.com
John-Paul Fryckman (SBN 317591)
fryckman@fr.com
Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070

Attorneys for Defendants and Counter-
Claimants DISH Network Corporation, et
al.