| | |
|---|---|
| 1 | BITA RAHEBI (CA SBN 209351) |
|  | brahebi@mofo.com |
| 2 | ALEX S. YAP (CA SBN 241400) |
|  | ayap@mofo.com |
| 3 | ROSE S. LEE (CA SBN 294658) |
|  | roselee@mofo.com |
| 4 | MORRISON & FOERSTER LLP |
|  | 707 Wilshire Boulevard, Suite 6000 |
| 5 | Los Angeles, California 90017-3543 |
|  | Telephone: (213) 892-5200 |
| 6 | Facsimile: (213) 892-5454 |
| 7 | [Additional counsel on signature page] |
| 8 | Attorneys for Counter-Defendants |
|  | MAXLINEAR, INC. and MAXLINEAR |
| 9 | COMMUNICATIONS, LLC |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:23-cv-01043-JWH-KES (Lead Case) |
| Plaintiff, | Case No. 2:23-cv-01047-JWH-KES (Related Case) |
| v. | |
| COX COMMUNICATIONS, INC.; COXCOM, LLC; AND COX COMMUNICATIONS CALIFORNIA, LLC, | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| Defendants, | |
| COX COMMUNICATIONS, INC.; COXCOM, LLC; AND, COX COMMUNICATIONS CALIFORNIA, LLC, | **COUNTER-DEFENDANTS MAXLINEAR, INC. AND MAXLINEAR COMMUNICATIONS LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COUNTERCLAIMS BY COX COMMUNICATIONS, INC., COXCOM, LLC, AND COX COMMUNICATIONS CALIFORNIA, LLC** |
| Counter-Claimants, | |
| v. | |
| ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR, INC.; AND MAXLINEAR COMMUNICATIONS LLC, | Judge: Hon. John W. Holcomb |
| Counter-Defendants. | **Hearing:** |
|  | Date: March 29, 2024 |
|  | Time: 9:00 a.m. |
|  | Place: Courtroom 9D, Santa Ana |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................... 6

II. ARGUMENT .............................................................................................. 7

    A. Cox's Counterclaims Should Be Dismissed Under Rule 12(b)(1) ....... 7

        1. All of Cox's counterclaims are unripe............................................ 7

        2. Cox suffered no Article III injury-in-fact. ..................................... 9

            a. MaxLinear properly transferred its patents, so Cox suffered no injury traceable to MaxLinear ....................... 9

            b. Cox's belated attempt to plead injury grasps at straws. ................................................................................. 10

        3. Affiliates like CoxCom and Cox California have no standing under MoCA's IPR Policy anyways. ......................... 11

    B. Even If Ripe, Each Counterclaim Could (and Should) Be Dismissed With Prejudice ................................................................. 12

        1. The IPR Policy and PPA foreclose on any theory of breach. ......................................................................................... 12

        2. Declaratory judgment can be dismissed as duplicative. ............ 14

        3. Quasi-contract must be dismissed as a matter of law. ............... 15

    C. In the Alternative, Cox's Counterclaims Remain Riddled with Pleading Deficiencies, for which No Leave to Amend Is Merited. ............................................................................................. 16

        1. Cox concedes fatal deficiencies in its breach of contract counterclaim as it relates to causation. ..................................... 16

        2. Cox fails to state a claim for quasi-contract based on its inadequate allegations. ............................................................... 17

III. CONCLUSION ........................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*12909 Cordary, LLC v. Berri*,
  No. 22-cv-01748, 2023 WL 6785798 (C.D. Cal. Apr. 17, 2023) ...................... 14

*Abuelhawa v. Santa Clara Univ.*,
  529 F. Supp. 3d 1059 (N.D. Cal. 2021) ............................................................. 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 13, 17

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
  94 Cal. App. 4th 151 (2001) ............................................................................. 17

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ............................................................................ 7

*Circle Inn Dev. & Mgmt., Inc. v. Glob. Signal Acquisitions IV LLC*,
  No. 21-cv-02061, 2022 WL 18585986 (C.D. Cal. June 14, 2022) ................... 13

*City of Oakland v. Oakland Raiders*,
  83 Cal. App. 5th 458 (2022) ............................................................................. 17

*Copenbarger v. Morris Cerullo World Evangelism, Inc.*,
  29 Cap. App. 5th 1 (2018) .................................................................................. 9

*Doe v. Mindgeek USA Inc.*,
  558 F. Supp. 3d 828 (C.D. Cal. 2021) .............................................................. 16

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ............................................................................................ 15

*Franchise Tax Bd. v. Hyatt*,
  587 U.S. 230 (2019) .......................................................................................... 11

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
  967 F.3d 1380 (Fed. Cir. 2020) .......................................................................... 7

*Hartford Cas. Ins. Co. v. J.R. Mktg, L.L.C.*,
  61 Cal. 4th 988 (2015) ................................................................................ 15, 16

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
  41 Cal. App. 4th 1410 (1996) ................................................................. 15

*Huynh v. Quora, Inc.*,
  No. 18-cv-07597, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) .................. 15

*Lee v. Human Biostar, Inc.*,
  No. 12-cv-05668, 2013 WL 12130258 (C.D. Cal. Jan. 28, 2013) ...................... 9

*Lee v. Oregon*,
  107 F.3d 1382 (9th Cir. 1997) ..................................................................... 7

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................. 9

*Meadows v. Lee*,
  175 Cal. App. 3d 475 (1985) ...................................................................... 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  319 F. Supp. 2d 1094 (C.D. Cal. 2003) ...................................................... 11

*Nunes v. Ashcroft*,
  375 F.3d 805 (9th Cir. 2004) ..................................................................... 16

*Opperman v. Path, Inc.*,
  84 F. Supp. 3d 962 (N.D. Cal. 2015) .......................................................... 11

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ........................................................ 11

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
  50 Cal. 3d 1118 (1990) .............................................................................. 9

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima
  Reservation v. California*,
  813 F.3d 1155 (9th Cir. 2015) ................................................................... 13

*San Diego Unified Port Dist. v. Monsanto Co.*,
  309 F. Supp. 3d 854 (S.D. Cal. 2018) .......................................................... 8

*Sols. for Utilities, Inc. v. Cal. Pub. Utilities Comm'n*,
  No. 11-cv-04975, 2023 WL 2504752 (C.D. Cal. Mar. 13, 2023) .................... 16

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................................. 13

*Stark v. Patreon, Inc.*,
  635 F. Supp. 3d 841 (N.D. Cal. 2022) ..................................................................... 15

*Svenson v. Google Inc.*,
  No. 13-cv-04080, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ........................ 11

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
  726 F.3d 1306 ............................................................................................................. 9

*Trump v. New York*,
  141 S. Ct. 530 (2020) ................................................................................................. 8

*United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*,
  145 F. Supp. 3d 932 (C.D. Cal. 2015) .................................................................... 15

*US Ecology, Inc. v. California*,
  129 Cal. App. 4th 887 (2005) .................................................................................. 16

*Valley Nat'l Bank v. Mundo Trucking*,
  No. 21-cv-06079, 2021 WL 6882194 (C.D. Cal. Dec. 29, 2021) ........................ 13

**Statutes and Other Authorities**

Cal. Civ. Code § 1638 .................................................................................................... 13

Fed. R. Civ. P.
  7(a) ............................................................................................................................... 16
  8 ............................................................................................................................. 8, 15
  12(b)(1) .................................................................................................................. 7, 10
  12(b)(6) ................................................................................................... 6, 12, 13, 17

L.R. 15-2 .......................................................................................................................... 14

1 Witkin, *Summary 11th Contracts* § 1055 (2023) ................................................... 17

## I. INTRODUCTION

Cox's Opposition reads like a ship passing in the night. While rhetorically accusing MaxLinear of ignoring its Counterclaims, Cox itself fails to grasp the significance of three dispositive issues that independently merit dismissal.

First, the Opposition confirms that Cox's counterclaims are unripe. Cox disputes that the asserted patents are standard essential. But the counterclaims arise out of the IPR Policy, and the IPR Policy *only* applies to essential patent claims, rendering all of Cox's counterclaims premature for adjudication.

Second, Cox lacks Article III standing. Cox blames MaxLinear for being sued by Entropic, resting its entire pleading on the assumption that MaxLinear failed to transfer the patents subject to a MoCA RAND commitment. But Cox gives lip service to the Patent Purchase Agreement, for which it does not oppose judicial notice. (ECF No. 322-2 ("PPA").) That oversight is fatal because ██████ ████████████████████████████████████████████████ ████████████████████████████████. Being sued for infringement is not a cognizable injury, especially when the IPR Policy offers no sanctuary to infringers. Those undisputed facts leave Cox without Article III injury.

Third, Cox tiptoes around the plain text of the IPR Policy and its own Promoter Agreement. Both documents unequivocally show that (1) CoxCom and Cox California (the "Cox Affiliates") lack standing to request RAND licenses under MoCA's rules, and (2) neither Affiliate counts as a third-party beneficiary to the IPR Policy. MoCA's rules afford license rights to its members *only*, not affiliates. Conceding they were never members, the Cox Affiliates have no legal right to assert any cause of action related to MaxLinear's patent sale to Entropic, whether sounding in contract, declaratory relief, or quasi-contract.

Alternatively, the Counterclaims can be dismissed with prejudice for incurable legal flaws, persistent pleading deficiencies, or both, under Rule 12(b)(6).

## II. ARGUMENT

### A. Cox's Counterclaims Should Be Dismissed Under Rule 12(b)(1)

Cox bears the burden of pleading facts demonstrating Article III standing and ripeness. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Cox failed to do so, compelling dismissal. *See* Fed. R. Civ. P. 12(b)(1).

#### 1. All of Cox's counterclaims are unripe

Cox's Counterclaims are unripe because there is a preliminary factual dispute over whether any of the asserted patents are standard essential. Entropic says they are essential; Cox says they are not. (*See* Mot. (ECF No. 319-1) at 20:7-10.) Because the RAND obligation only applies to "Essential Patent Claims" (IPR Policy §§ 2, 5.1.1), the finder of fact must resolve this dispute between Cox and Entropic before Cox's Counterclaims could ripen. *Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, 967 F.3d 1380, 1383 (Fed. Cir. 2020) ("standard-essentiality is a question for the factfinder"). If the patent claims are not essential, then RAND obligations do not apply. And if they do not apply, then any alleged failure to transfer patents with said obligations is entirely moot.

The Opposition fails to grasp the ripeness inquiry or its significance. First, Cox characterizes its claims obliquely as concerning "injuries" with a "close relationship" to "traditionally recognized" harms and "common-law analogues." (Opp. (ECF No. 384-1) at 12.) Cox misses the point. All manners of disputes can give rise to a case or controversy, but the underlying claims must still be ripe. *See Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997) ("While standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* that litigation may occur."). Cox belatedly clarified, in its Opposition, that its breach of contract counterclaim is rooted ***only*** in the IPR Policy. (*See* Opp. at 23.) Likewise, its declaratory relief and quasi-contract counterclaims are tethered to the IPR Policy and no other basis. (*See, e.g.*, Am.

7

Countercls. (ECF No. 276) ¶¶ 581 (asking for a declaratory judgment voiding the patent sale under the IPR Policy and upon no other basis), 590 (alleging quasi-contract based on alleged circumventions of MoCA obligations, *i.e.*, the IPR Policy).) In short, Cox's Counterclaims are premature precisely because they assert ***no theory of relief*** independent of the IPR Policy.[1]

Second, Cox invokes Federal Rule of Civil Procedure 8(d)(3), suggesting the ability to plead inconsistent claims allows it to plead unripe claims. (Opp. at 30.) Not so. Parties may plead inconsistent claims in the alternative, yes, but those claims must still be ***ripe***. Nothing about Rule 8 permits a party to plead premature claims. All claims must be ripe and satisfy Article III standing, regardless of if they are inconsistent with one another. Ripeness is a constitutional doctrine, *see Trump v. New York*, 141 S. Ct. 530, 535 (2020) (dismissing declaratory judgment claim as unripe), so it overrides procedural rules in any event.

Third, Cox says the Motion did not explicitly call out Counts II and IV as unripe. (Opp. at 14.) Except, it did. It said the counterclaims—***plural***—are unripe because Cox expressly premised them on the IPR Policy, including declaratory relief and quasi-contract counterclaims. (*See, e.g.*, Mot. at 15, 19-20.)

Fourth, Cox says its breach of contract counterclaim is ripe as it relates to an alleged disclosure of ***MoCA's*** confidential information. (Opp. at 21.) That argument makes little sense when Cox pleads no damages traceable to that alleged disclosure, except for the so-called "injury" of being sued for infringement. (*Id.* at 19.) Litigation costs, however, are not cognizable injuries for standing. *See San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 866 (S.D. Cal. 2018).[2] Should Cox lose, being forced to pay damages would not give rise to a

---

[1] Cox's failure to clarify which specific contracts were at issue until its Opposition further confirms why the counterclaims can be dismissed, in the alternative, under Rule 8 for inadequate notice. (*See* Mot. at 21 (citing Fed. R. Civ. P. 8).)
[2] Cox attacks *San Diego* by distinguishing one case that *San Diego* cites, while avoiding mention of the other Ninth Circuit cases *San Diego* cites to establish the

cognizable injury-in-fact, either, as plaintiffs have a right to sue on "colorable claim[s]." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1131 (1990). Thus, all of Cox's claims are unripe.

### 2. Cox suffered no Article III injury-in-fact

Even if Cox could change its Answer about standard essential patents, Cox still needs a concrete and particularized injury fairly traceable to the conduct of MaxLinear. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

#### a. MaxLinear properly transferred its patents, so Cox suffered no injury traceable to MaxLinear

Cox says MaxLinear "sought to avoid encumbrances" in its sale of patents under MoCA obligations. (Countercls. ¶ 515.) That theory crumbles in view of the PPA, which shows MaxLinear did ***exactly*** what it was supposed to do. The PPA, for which Cox does not oppose judicial notice, shows ████████████ ████████████████████████████████ Entropic agrees, representing that it received "a copy of the MoCA IPR Policy" in "compliance with the PPA." (ECF No. 329-1 at 12.) ██████████████████████████████ ███████████████████████████ ████████ *Meadows v. Lee*, 175 Cal. App. 3d 475, 483-84 (1985) (rejecting third party's attempt to interfere with sale between two parties). Cox offers no rebuttal to the fact that, under IPR Policy § 5.1.2, RAND obligations would have attached to Essential Patent Claims ***even if*** the PPA had been silent in that regard. (Mot. at 19, 24.)

Cox responds that MaxLinear needed to "inform Entropic of the full scope of obligations imposed by the IPR Policy, which goes far beyond requiring some 'general' RAND commitment." (Opp. at 26.) Without pinning down exactly what

---

same point. (*See* Opp at 19.) Meanwhile, Cox's cites to *Copenbarger*, *Human Biostar*, and *Taurus* (*id.* at 19-20) are distinguishable because those cases involved settlement agreements where attorneys' fees were explicitly at issue as damages.

that "full scope" entails or why the PPA failed to accomplish that task, the only other alleged deficiency Cox pleads concerns anti-circumvention. (Countercls. ¶ 547.) Cox jumps on language that says each Alliance Party "agrees that it . . . will not intentionally transfer . . . its patents . . . that reasonably may contain or result in Essential Patent Claims *for the purpose of circumventing* the obligation to grant licenses contained in this IPR Policy." (Opp. at 25 (emphasis added).) Cox misinterprets that provision to mean that no MoCA member could ever sell or transfer its patents, without "retain[ing] the right to grant any licenses for essential patents." (Countercls. ¶ 550.) But, as the Motion explained, that reading is facially absurd. (Mot. at 25.) The IPR Policy expressly permits transfers of patents (§ 5.1.2) and gives MoCA members like MaxLinear wide latitude in how to do so (Mot. at 24)—a point Cox did not dispute. Neither may Cox eviscerate the plain text of the IPR Policy nor invent obligations out of thin air. Since MaxLinear complied with § 5.1.2, no injury can be traced to MaxLinear. Thus, Cox's entire pleading, as it relates to MaxLinear, must be dismissed for lack of standing.

### b. Cox's belated attempt to plead injury grasps at straws

MaxLinear pointed out how Cox was remarkably vacuous about the precise "damages" to its "business or property" it believes it suffered. (*See* Mot. at 18.) Inappropriately, Cox now uses its Opposition to clarify for the first time that by "damages" to business or property, it really means "attorneys' fees." (Opp at 19-20.) First, that allegation is missing from Cox's pleading, justifying dismissal under Rules 12(b)(6) *and* 12(b)(1). Second, litigation costs are inadequate to confer standing. The IPR Policy itself offers no shield for infringers to hide behind. (*See* IPR Policy § 5.1.1 (permitting lawsuits for damages).) Third, and most fatal, swapping out licensors does not redress that so-called injury. If Cox succeeds in voiding the patent sale, its victory will be pyrrhic, and the Court's opinion will be advisory, because Cox would still have to pay licensing fees, costs, and damages—

10

just to MaxLinear in lieu of Entropic. Cox failed to dispute this point, rendering it waived. *See Franchise Tax Bd. v. Hyatt*, 587 U.S. 230, 235 n.1 (2019) (failure to raise argument in opposition constitutes waiver).

So, Cox retreats to a theory of "nominal damages," saying it was entitled to interface ***only*** with MaxLinear and no one else. (Opp. at 17:16.) [3] Had that been the benefit of the bargain, Cox might have a point. But it was not. The IPR Policy expressly permits the transfer of essential patents "to an unaffiliated third party" like Entropic. (IPR Policy § 5.1.2.) The obligation to "attempt to negotiate" a RAND license upon written request runs with the patents (*id.* § 5.1.1)—an encumbrance, which Cox now concedes, was transferred to Entropic in the PPA. Cox knows this to be true. After all, it never requested a license from MaxLinear.

### 3. Affiliates have no standing under MoCA's IPR Policy

Cox concedes it lacks privity and that CoxCom and Cox California were never members of MoCA. (Opp. at 13.) By the plain text of the IPR Policy, Cox's Promoter Agreement, and well-established California law, CoxCom and Cox California possess neither standing to request a license nor standing to assert any cause of action arising under the IPR Policy since they are not third-party beneficiaries. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1094, 1100 (C.D. Cal. 2003). Standing is a doctrine meant to preclude strangers and vigilantes from filing lawsuits on matters where they have no legally recognized interest. *See Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1036 (N.D. Cal. 2014) (a "claim must be based on the plaintiff's own legal rights and interests rather than the legal rights or interests of third parties"). Since the IPR Policy

---

[3] Even with nominal damages, "a plaintiff still must show the ***fact*** of injury in order to have Article III standing." *Svenson v. Google Inc.*, 2016 WL 8943301, at *10 (N.D. Cal. Dec. 21, 2016); *see also Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 990-91 (N.D. Cal. 2015) (nominal damages availability "does not relieve the plaintiff of proving injury.").

11

confers the Cox Affiliates no legal interest in a RAND license to Essential Patents, their counterclaims must be dismissed.

Lacking a meritorious riposte, Cox sows confusion, arguing that (1) affiliates can claim RAND licenses because the "purpose" of the IPR Policy was to promote adoption of MoCA standards; and (2) simply using MoCA products entitles them to a RAND license. (Opp. at 13.) Each response is flawed because the text of the IPR Policy and Promoter Agreement expressly treats members and affiliates differently. Affiliates do not get to request RAND licenses. (IPR Policy § 5.1.1; Promoter Agreement § 6.) Even if the IPR Policy intended to maximize adoption, it does so on its own terms, which expressly withholds that right from affiliates. (IPR Policy §§ 1, 2, 5.1.1.). Cox may not invite this Court to rewrite the IPR Policy.

Next, Cox says Cox Communications can demand a RAND license "on behalf of" its affiliates (Opp. at 13), but the IPR Policy does not allow that either (*see* IPR Policy § 5.1.1). ███████████████████████████████████████████████████████████████████████████████████. (Promoter Agreement § 6.) The Motion went to great length explaining that *who* requests a RAND license matters for standing, a question Cox avoids even in its Opposition. (*See* Mot. at 15-17.)

Cox also seems to think it is excused from making a written request. (*See* Opp. at 24.) That view misreads IPR Policy § 7.1, which says former members are entitled to licenses "under Section 5.1," meaning, by request. Last, Cox now asserts its pleading doubles as a written request. (*See* Opp. at 14.) But nothing in the IPR Policy permits a MoCA member, current or former, to infringe on another member's patents, wait until sued, and then deign its answer a "written request" under Section 5.1. Cox failed to make a proper request and all but outright concedes it lacks standing.

**B. Even If Ripe, Each Counterclaim Could (and Should) Be Dismissed with Prejudice Under Rule 12(b)(6)**

**1. The IPR Policy and PPA foreclose on any theory of breach**

12

Cox's primary theory of breach alleges that MaxLinear's sale of patents to Entropic somehow circumvented the IPR Policy or otherwise failed to properly transfer a MoCA RAND commitment. Not only does the PPA show MaxLinear properly transferred its patents (for which judicial notice is proper), but the IPR Policy also permits transfer of patents. (IPR Policy § 5.1.2.) One cannot breach that which a contract expressly allows—a point which Cox does not dispute. *See Circle Inn Dev. & Mgmt., Inc. v. Glob. Signal Acquisitions IV LLC*, 2022 WL 18585986, at *4 (C.D. Cal. June 14, 2022) (Holcomb, J.).

Cox has no answer. Instead, it confuses the law, saying the Motion must "assume[] the truth of Cox's pleadings, not MaxLinear's attorney arguments." (Opp. at 26.) But Cox's misreading of the IPR Policy constitute legal conclusions, ones that receive no deference under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, Ninth Circuit law instructs this Court to favor the plain text of the IPR Policy over Cox's allegations. When the "written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *Valley Nat'l Bank v. Mundo Trucking*, 2021 WL 6882194, at *3 (C.D. Cal. Dec. 29, 2021) (cleaned up); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The IPR Policy clearly permits the transfer of patents, so any reading of the text that gives no effect to that provision is wrong. *See Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1171 (9th Cir. 2015).

Cox invents a revisionist purpose for the IPR Policy to get out of this jam, saying its purpose was to prevent Alliance Parties from circumventing their IPR obligations to grant license. (Opp. at 25.) Not so. First, the text controls over any imputed purpose. *See* Cal. Civ. Code § 1638. And the IPR policy's text permits transfers of patents. Second, both parties agree the patents remain subject to a MoCA RAND commitment, making the point moot. And third, Cox misstates the

13

1  real purpose of the anti-circumvention language, which is to prohibit members,
2  when *applying* for a patent, from assigning it in the first instance to a non-Member,
3  so as to avoid the obligation. That concern is inapplicable, as the patents were
4  properly transferred and remain subject to a MoCA RAND commitment.
5      Further, now that Cox purports to have clarified that the only contract in
6  question is the IPR Policy, Cox must live with the fact that it confers no residual
7  standing to a former member, like Cox Communications, or non-members like the
8  Cox Affiliates, to act as MoCA's own private attorney general and enforce alleged
9  disclosures of MoCA's confidential information. Without a textual hook or any
10 cognizable damage, the breach of contract counterclaim must be dismissed in full.
11 Cox cannot try to wriggle out from those consequences by invoking other unpled
12 provisions or agreements. Otherwise, it would continue to run afoul of both the
13 Local Rules that require that pleadings be "complete," L.R. 15-2, and the law that
14 requires contracts be pleaded *in haec verba*.[4] Thus, Cox's counterclaim should be
15 dismissed for failure to state a claim under either theory of breach.

16              **2.      Declaratory judgment can be dismissed as duplicative**
17      Cox's declaratory judgment counterclaim is completely duplicative of its
18 deficient breach of contract claim. While declaratory relief can be used to seek
19 different remedies, Cox does not do so here. Cox rehashes the same allegations
20 regarding the avoidance of encumbrances, and it seeks relief identical to that which
21 it already asks in its breach of contract counterclaim. (*Compare* Countercls. ¶ 579
22 (asking for a finding that "any agreement purporting to assign the asserted patents is
23 void" *with id.* ¶ 582 (seeking "declaratory judgment voiding the agreements
24 assigning the Asserted Patents to Plaintiff").) Since declaratory judgment would
25
26 ---
   [4] Contrary to Cox's selective reading (Opp. at 23), this Court in *12909 Cordary,
27 LLC v. Berri* found that "Cross-Complainants fail[ed] to plead the full contractual
   terms" and dismissed the claim accordingly. 2023 WL 6785798, at *3-4 (C.D. Cal.
28 Apr. 17, 2023) (Holcomb, J.). This Court should do so again.

serve no purpose not already included in the breach of contract counterclaim, it must be dismissed with prejudice. *See United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015) (dismissing with prejudice declaratory relief claim which was "entirely based on and adequately represented within their breach of contract claim").

### 3.    Quasi-contract must be dismissed as a matter of law

Under California's substantive law, a party cannot assert a quasi-contract claim while simultaneously asserting a valid and enforceable contract. In response, Cox believes that this is a procedural issue, so Rule 8(d) should allow Cox to assert both claims. (Opp. at 30.) Not so. This rule concerning quasi-contract claims is rooted in California's common law, not any provision of its Code of Civil Procedure. *See Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1419 (1996). Faced with this exact fact pattern, the court in *Huynh v. Quora, Inc.* dismissed the quasi-contract claim without leave to amend: "While Federal Rule of Civil Procedure 8 allows pleading in the alternative, the liberal pleading policy has its limits." 2019 WL 11502875, at *12 (N.D. Cal. Dec. 19, 2019) (internal quotations omitted). Here, "there is no dispute about the existence or validity of the express contract," and Cox does not allege that the IPR Policy "is void" or otherwise "rescinded," so Cox "cannot plead alternative theories that necessarily fail where an express contract defines the rights of the parties." *Id.* (cleaned up). *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) offers Cox no escape from this bind. Dismissal with prejudice is merited.

The Court should be wary, too, not to allow Cox to pivot back to "unjust enrichment." *Hartford Casualty Insurance Co. v. J.R. Marketing, L.L.C.*, 61 Cal. 4th 988 (2015), a case Cox cites (Opp. at 29), did not resuscitate the non-existent cause of action. As Judge Koh explained in a lengthy exposition (one the court overlooked in *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841 (N.D. Cal. 2022)),

15

California appellate courts post-*Hartford* have reconfirmed unjust enrichment is not a cause of action, with approval from California's Supreme Court. *See Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070-72 (N.D. Cal. 2021). Federal courts in this District remain alert to this fact. *See, e.g.*, *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 844 (C.D. Cal. 2021) (Carney, J.).

### C. In the Alternative, Cox's Counterclaims Remain Riddled with Pleading Deficiencies, for Which No Leave to Amend Is Merited

Cox's Counterclaims are unripe, lack Article III standing, and remain defective as a matter of law. Persistent pleading deficiencies also confirm the futility of amendment, *see Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004), which the Motion noted applied to the counterclaims, **plural**. (*See* Mot. at 30.) Cox amended its pleading twice, once in October and again in January. *See* Fed. R. Civ. P. 7(a) (defining a pleading). Cox embraces its bad faith, refusing to attach documents even now and then defiantly claiming it can continue amending until the "close of discovery" if it so pleases. (Opp. at 33.) Abusing the amendment process to keep alive stale claims otherwise lacking standing, just to keep MaxLinear in the lawsuit, constitutes the prejudice. *See Sols. for Utilities, Inc. v. Cal. Pub. Utilities Comm'n*, 2023 WL 2504752, at *5 (C.D. Cal. Mar. 13, 2023) (Holcomb, J.).

#### 1. Cox concedes still uncured deficiencies in its breach of contract counterclaim, indicating amendment is futile

Like its last pleading, Cox concedes it failed to plead causation, a necessary element to a breach of contract claim. *See US Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 909 (2005). This unremedied defect weighs heavily on Cox's theory of breach arising from an alleged disclosure of confidential MoCA standards. Cox neglects to say why or how disclosure of *MoCA*'s information caused it injury, especially when Cox admits it identified none of its own confidential information in those standards. Cox overlooks the fact that Entropic could have sued Cox with or without that information, severing any causal link. (Mot. at 27.)

Cox also failed to allege a single fact to support its conclusory accusation that MaxLinear, and not another culprit, disclosed confidential information. That deficiency alone is sufficient to dismiss under Rule 12(b)(6), since an allegation must be plausible, not merely conceivable. *See Iqbal*, 556 U.S. at 678 (2009).

### 2. Cox fails to state a claim for quasi-contract based on its inadequate allegations

Despite pounding the table about unjust enrichment, Cox concedes it only conferred benefits directly to MoCA, not MaxLinear. For a quasi-contract claim to pass Rule 12(b)(6), it must allege the benefit was ***directly*** transferred to MaxLinear. *See* 1 Witkin, *Summary 11th Contracts* § 1055 (2023) (collecting cases). Cox bemoans the ways MaxLinear benefited from MoCA, but the law requires Cox to plead "'a better legal or equitable right' to the benefit" before recovering it. *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 479 (2022). MaxLinear paid its dues to MoCA, too, so it is allowed to benefit from MoCA. *See Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 174 (2001).

Worse, Cox flunks Rule 9(b). When called on to specify the false statement needed to make any enrichment unjust, Cox identified a single sentence from a 2014 ***Entropic, Inc.*** Form 10-K, saying MoCA required them to "license any of our patent claims that are essential to implement the MoCA specification to other MoCA members." (Countercls. ¶ 533.) That statement was accurate then and remains accurate now. It also rings hollow—and inadequately pleaded—for Cox to say that MaxLinear misled Cox into using MoCA products (*id*. ¶¶ 530, 551-55), when Cox admits it joined MoCA ***six years before*** MaxLinear did (*id*. ¶¶ 534, 552). Amending deficiencies like these will be an exercise in futility.

### III. CONCLUSION

The Court should dismiss all of Cox's counterclaims for lack of standing. In the alternative, it should dismiss them with prejudice for the reasons above.

17

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: March 15, 2024 | MORRISON & FOERSTER LLP |
| 3 | | |
| 4 | | By: /s/ Bita Rahebi |
| | | Bita Rahebi |
| 5 | | |
| 6 | | BITA RAHEBI (CA SBN 209351) |
| | | brahebi@mofo.com |
| 7 | | ALEX S. YAP (CA SBN 241400) |
| | | ayap@mofo.com |
| 8 | | ROSE S. LEE (CA SBN 294658) |
| 9 | | roselee@mofo.com |
| | | MORRISON & FOERSTER LLP |
| 10 | | 707 Wilshire Boulevard, Suite 6000 |
| 11 | | Los Angeles, California 90017-3543 |
| | | Telephone: (213) 892-5200 |
| 12 | | Facsimile: (213) 892-5454 |
| 13 | | |
| 14 | | RICHARD S.J. HUNG (CA SBN 197425) |
| 15 | | rhung@mofo.com |
| 16 | | MORRISON & FOERSTER LLP |
| | | 425 Market Street, |
| 17 | | San Francisco, California 94105-2482 |
| 18 | | Palo Alto, California 94304-1018 |
| | | Telephone: (415) 268-7000 |
| 19 | | Facsimile: (415) 268-7522 |
| 20 | | |
| | | *Attorneys for Counter-Defendants* |
| 21 | | MAXLINEAR, INC. and |
| 22 | | MAXLINEAR COMMUNIATONS LLC |

18

REPLY ISO MAXLINEAR'S MOTION TO DISMISS COX'S COUNTERCLAIMS
CASE NO. 2:23-CV-1043-JWH-KES

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief contains 4092 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 15, 2024         By: */s/ Bita Rahebi*
                                   Bita Rahebi