1  BITA RAHEBI (CA SBN 209351)
   brahebi@mofo.com
2  ALEX S. YAP (CA SBN 241400)
   ayap@mofo.com
3  ROSE S. LEE (CA SBN 294658)
   roselee@mofo.com
4  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard, Suite 6000
5  Los Angeles, California 90017-3543
   Telephone:  (213) 892-5200
6  Facsimile:  (213) 892-5454

7  [Additional counsel on signature page]

8  Attorneys for Counter-Defendants,
   MAXLINEAR, INC. and MAXLINEAR
9  COMMUNICATIONS LLC

10             UNITED STATES DISTRICT COURT

11     CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12  ENTROPIC COMMUNICATIONS,          Case No. 2:23-cv-1043-JWH-KES
13  LLC,                              (Lead Case)

14            Plaintiff,              **REDACTED VERSION OF**
                                      **DOCUMENT PROPOSED TO BE**
15      v.                            **FILED UNDER SEAL**

16  DISH NETWORK CORPORATION,         **MAXLINEAR, INC. AND**
    et al.,                           **MAXLINEAR COMMUNICATIONS**
17                                    **LLC'S REPLY IN SUPPORT OF**
            Defendants.               **MOTION TO DISMISS**
18                                    **(1) AMENDED COUNTERCLAIMS**
    ─────────────────────────        **BY DISH NETWORK CALIFORNIA**
19                                    **SERVICE CORPORATION; AND**
    DISH NETWORK CORPORATION;         **(2) COUNTERCLAIMS BY DISH**
20  DISH NETWORK L.L.C.; DISH         **NETWORK CORPORATION, DISH**
    NETWORK SERVICE L.L.C.; DISH      **NETWORK L.L.C., DISH**
21  NETWORK CALIFORNIA                **NETWORK SERVICE L.L.C., AND**
    SERVICE CORPORATION; AND          **DISH TECHNOLOGIES, L.L.C.**
22  DISH TECHNOLOGIES, L.L.C.,

23            Counter-Claimants,      Judge:  Hon. John W. Holcomb
                                      Action Filed:  Feb. 10, 2023
24      v.                            Am. Counterclaims and Counterclaims
                                      Filed:  Jan. 31, 2024
25  ENTROPIC COMMUNICATIONS,
    LLC; MAXLINEAR, INC.; AND         **Hearing:**
26  MAXLINEAR COMMUNICATIONS          Date:      March 29, 2024
    LLC,                              Time:      9:00 a.m.
27            Counter-Defendants.     Place:     Courtroom 9D, Santa Ana

28
    ─────────────────────────
    MAXLINEAR'S REPLY ISO MOTION TO DISMISS
    CASE NO. 2:23-CV-1043-JWH-KES

    sf-5816312

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION .................................................................................. 6

II. DISH'S OPPOSITION VIOLATES THE LOCAL RULES ......................... 6

III. ARGUMENT ....................................................................................... 7

   A. Dish's Opposition Confirms That No Dish Counterclaimants Have Standing to Bring the Counterclaims ........................................ 7

     1. MoCA licensing rights do not extend to "all comers" .............. 7

     2. The Promoter Agreement and IPR Policy foreclose the Dish Affiliates' Claims ................................................. 8

     3. Dish does not plead any redressable Article III injury ............. 10

   B. Count IV: Dish Fails to Plead a Breach of Contract Claim ............... 11

     1. Dish does not plead performance .............................................. 11

     2. Dish fails to allege any breach by MaxLinear .......................... 12

     3. Dish cannot plead breach of a superseded contract .................. 12

   C. Count V: Dish Again Fails to Meet the Pleading Standard for Fraud or Negligent Misrepresentation ................................................ 13

   D. Count VI: Dish Again Fails to Plead a Proper Conspiracy Claim ...... 15

   E. Count VII: Dish Fails to Plead Quasi-Contract for Restitution / Unjust Enrichment ............................................................................. 15

   F. Counts VIII, IX, and XI: Dish's Antitrust and UCL Claims Do Not Plausibly State a Claim for Relief .............................................. 16

   G. Dish Does Not Challenge the Futility of Amendment ....................... 17

IV. CONCLUSION ................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
　529 F. Supp. 3d 1059 (N.D. Cal. 2021) ................................................................ 15

*Apple, Inc. v. Motorola Mobility, Inc.*,
　No. 11-cv-00178, 2011 WL 7324582 (W.D. Wis. June 7, 2011) ...................... 8

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ............................................................................................. 7

*Atl. Richfield Co. v. USA Petroleum Co.*,
　495 U.S. 328 (1990) ........................................................................................... 17

*B. Braun Med., Inc. v. Abbott Lab'y*s,
　124 F.3d 1419 (Fed. Cir. 1997) ......................................................................... 16

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ........................................................................................ 6, 7

*Deakins Holding PTE Ltd. v. NewNet Inv. Grp. LLC*,
　No. 14-cv-02036, 2015 WL 468972 (C.D. Cal. Feb. 4, 2015) .......................... 9

*Delphix Corp. v. Actifo, Inc.*,
　No. 13-cv-04613, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ..................... 13

*Diamond v. United States*,
　No. 14-cv-01922, 2015 WL 11215851 (C.D. Cal. May 15, 2015) ..................... 7

*Evolved Wireless, LLC v. Apple, Inc.*
　No. 15-cv-00542, 2019 WL 831112 (D. Del. Feb. 21, 2019) ........................... 11

*Fahmy v. Hogge*,
　No. 08-cv-1152, 2008 WL 4614322 (C.D. Cal. Oct. 14, 2008) .......................... 6

*Fecht v. Price Co.*,
　70 F.3d 1078 (9th Cir. 1995) ............................................................................. 14

*Gamble v. GMAC Mortg. Corp.*,
　No. 08-cv-05532, 2009 WL 400359 (N.D. Cal. Feb. 18, 2009) ....................... 12

3

*Glob. Hunter Sec., LLC v. MannKind Corp.*,
   No. 12-cv-10638, 2013 WL 2120865 (C.D. Cal. May 14, 2013) ...................... 9

*Hangards, Inc. v. Ethicon, Inc.*,
   601 F.2d 986 (9th Cir. 1979) ............................................................................. 17

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
   61 Cal. 4th 988 (2015) ....................................................................................... 15

*HTC Corp. v. Ericsson*,
   12 F.4th 476 (5th Cir. 2021) ................................................................................ 8

*Hurd v. Bos. Sci. Corp.*,
   No. 22-cv-00032, 2023 WL 3564741 (C.D. Cal. Apr. 10, 2023) ...................... 14

*Huynh v. Quora, Inc.*,
   No. 18-cv-07597, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) .................... 15

*In re Innovatio IP Ventures, LLC Patent Litig.*,
   No. 11-cv-09308, 2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) ............................ 8

*Kashmiri v. Regent of Univ. of Cal.*,
   156 Cal. App. 4th 809 (2007) .............................................................................. 9

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ........................................................................... 16

*Microsoft Corp. v. Motorola, Inc.*,
   696 F.3d 872 (9th Cir. 2012) ............................................................................... 8

*Microsoft Corp. v. Motorola, Inc.*,
   795 F.3d 1024 (9th Cir. 2015) ........................................................................ 8, 11

*Microsoft Corp. v. Motorola, Inc.*,
   854 F. Supp. 2d 993 (W.D. Wash. 2012) ............................................................ 8

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962 (N.D. Cal. 2015) ................................................................. 11

*Rack Safety Prod., LLC v. Double Backstop, Inc.*,
   No. 21-cv-02110, 2023 WL 3432250 (C.D. Cal. Mar. 9, 2023) ........................ 12

*Rambus Inc. v. FTC*,
   522 F.3d 456 (D.C. Cir. 2008) ........................................................................... 17

4

*Samsung Elecs. Co. v. Panasonic Corp.*,
    No. 10-cv-03098, 2011 WL 9529403 (N.D. Cal. Aug. 25, 2011) .................... 16

*Schrieber Distribut. Co. v. Serv-Well Furniture Co., Inc.*,
    806 F.2d 1393 (9th Cir. 1986) ................................................................. 13

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) ................................................................... 9

*Smith v. Allstate Ins. Co.*,
    160 F. Supp. 2d 1150 (S.D. Cal. 2001) .................................................... 14

*Svenson v. Google Inc.*,
    No. 13-cv-04080, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) .................... 11

*The H.N. & Frances C. Berger Found. v. Perez*,
    218 Cal. App. 4th 37 (2013) ..................................................................... 9

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................... 13

**Statutes and Other Authorities**

Cal. Civ. Code § 1638 ................................................................................ 9

Local Civil Rules
    11-6.1 ..................................................................................................... 6
    11-6.2 ..................................................................................................... 6

5

## I.   INTRODUCTION

Dish's claims are premised on the implausible allegation that MaxLinear "washed" the MoCA RAND obligations from the asserted patents.  No party disputes that the patents are subject to MoCA IPR obligations.  Under MoCA's IPR Policy, all RAND obligations survive any transfer of essential patents.  And, ***as Dish's claims acknowledge, Entropic committed to license its patents on MoCA RAND terms***.  Dish argues that implausibility is rarely a basis for dismissal but cites to a standard overruled by *Twombly* in 2007.

None of the Dish entities have standing.  The relevant agreements deny third-party beneficiary rights to the Dish Affiliates.  Dish Technologies has no standing because it has no injury-in-fact.

As to Dish's claims of fraud, conspiracy, and quasi-contract, Dish admits Rule 9(b) applies but does not plead the time, place, and specific content of the alleged misrepresentations.  Instead, it relies on fact-free conclusory allegations.  Dish's antitrust and UCL claims likewise lack any factual allegations plausibly establishing an agreement to "wash" the patents and further fail to plead basic elements, including competitive harm and antitrust injury.

The Court should dismiss this second attempt to plead claims with prejudice.

## II.   DISH'S OPPOSITION VIOLATES THE LOCAL RULES

Dish's Opposition (ECF No. 402 ("Opp.")) contains 8,621 words, is over 20% longer than permitted by Local Civil Rule 11-6.1, and did not include a Local Civil Rule 11-6.2 certificate of compliance.  *See also* ECF No. 13 ¶ 10(b).  MaxLinear's Motion (ECF No. 371 ("Mot.")), in contrast, complied with the court's limits, even when faced with one pleading between all Dish entities, including a new party.  While the Court has discretion to strike the Opposition brief entirely, MaxLinear suggests that an appropriate remedy is to disregard the Opposition after the 7,000th word, which occurs on page 28, line 5.  *See, e.g.*, *Fahmy v. Hogge*, 2008 WL 4614322, at *2 (C.D. Cal. Oct. 14, 2008).

6

### III.  ARGUMENT

Dish has not pled facts sufficient to state a plausible claim, and its ultimate legal conclusions are contradicted by the facts in its pleadings.  Dish boldly claims that "implausibility" is a "theory that is rarely sufficient to grant a motion to dismiss." (Opp. at 8.)  Dish argues instead that dismissal is appropriate only when it is beyond doubt that it can prove "no set of facts" in support of its claims.  (Opp. at 13.)  The Supreme Court expressly rejected this standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007); *see also Diamond v. United States*, 2015 WL 11215851, at *9 n.5 (C.D. Cal. May 15, 2015) (*Twombly* "explicitly overruled" the "no set of facts" standard) (internal citations omitted).  Plausibility has been the standard for over fifteen years.  *Twombly*, 550 U.S. at 547; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Under *Twombly*, Dish's claims should be dismissed.

#### A.  Dish's Opposition Confirms That No Dish Counterclaimants Have Standing to Bring the Counterclaims

##### 1.  MoCA licensing rights do not extend to "all comers"

MoCA is a Standards Setting Organization ("SSO") whose members enter contracts governing their relationship with the organization.  (ECF No. 316 ("Am. Countercls.") ¶¶ 22, 25.)  The MoCA contracts provide that Affiliates do not have licensing rights.  (*See* ECF No. 375 ("Promoter Agreement") § 6; ECF No 360-1 ("IPR Policy") § 5.1.1.) [1]  Dish argues that MoCA members nevertheless must license on RAND terms to "all comers."  (*Id.* ¶¶ 65-66; Opp. at 10, 14-15.)

Dish rests its argument on cherry-picked snippets from cases where—unlike this case—the relevant SSO voluntarily included non-members within the scope of its licensing obligations.  The Ninth Circuit's *Microsoft* decisions show only that that some SSOs limit RAND licensing rights to members and some do not.

---

[1] Dish does not dispute the authenticity of any of documents in the request for judicial notice (ECF No. 360 ("RJN")) and has not filed an opposition to the RJN. Dish's assertion that its failure to attach the Promoter Agreement is irrelevant— because MaxLinear requested judicial notice of it—further reduces any potential for authenticity or accuracy concerns.  (*See* Opp. at 23.)

1  *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 876 (9th Cir. 2012) ("many" SSOs

2  open licensing to "all comers"); *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024,

3  1031 (9th Cir. 2015) (discussing the agreement terms of "many" SSOs).

4        So too with Dish's other authority.  *See HTC Corp. v. Ericsson*, 12 F.4th 476,

5  481 (5th Cir. 2021) (Ericsson "agreed with ETSI to grant licenses to other

6  companies" on RAND terms); *In re Innovatio IP Ventures, LLC Patent Litig.*, 2013

7  WL 5593609, at *4 (N.D. Ill. Oct. 3, 2013) (the party agreed to grant licenses to an

8  "unrestricted number of applicants on a worldwide, non-discriminatory basis");

9  *Apple, Inc. v. Motorola Mobility, Inc.*, 2011 WL 7324582, at *10 (W.D. Wis.

10  June 7, 2011) ("The policies ***often*** require or encourage [RAND terms for anyone

11  who requests a license]") (emphasis added); *Microsoft Corp. v. Motorola, Inc.*, 854

12  F. Supp. 2d 993, 995 (W.D. Wash. 2012) (same).

13        Case law recognizing that "many" SSOs adopt a contract term or "often" do

14  so is a far cry from finding that SSOs cannot limit RAND licensing to members.

15  (*See* Mot. at 15; *infra* § III.A.2.)  To the contrary, those cases necessarily recognize

16  MoCA's right to limit its licensing obligations to members as it did in this case.

          **2.**     **The Promoter Agreement and IPR Policy foreclose the Dish Affiliates' Claims**

19        Dish argues that it has created "factual questions" on standing, but it points to

20  no ***facts***.  Section 6 of the Promoter Agreement is unambiguous:



26  (Promoter Agreement § 6 (emphasis added); Mot. at 15; *see also* IPR Policy.)  Dish

27  affirmatively pled that none of the Dish Affiliates ever executed a membership

28  agreement.  (*See* Am. Countercls. ¶ 73.)  Accordingly, the Dish Affiliates have no

8

rights or privileges under the IPR Policy.

Dish relies on the Promoter Agreement to establish standing of Dish Technologies (Am. Countercls. ¶ 59) but claims that MaxLinear cannot rely on it for its motion to dismiss.  This provides no escape.  Dish incorporated into its counterclaims an "exemplar" Promoter Agreement that has equivalent language.  (Am. Countercls. ¶ 27; ECF No. 316-2 § 6.)

Lacking any textual basis, Dish pivots to extrinsic evidence.  But extrinsic evidence cannot contradict an unambiguous contract provision.  *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012).[2]  And, Dish's extrinsic evidence does not support a different result.  First, the law does not require RAND licensing for all comers.  (*See* Sec. III.A.1, *supra*.)  Second, Section 6 is specific about ███████████████████████████████ and therefore controls.[3]  *See Kashmiri v. Regent of Univ. of Cal.*, 156 Cal. App. 4th 809, 831 (2007) (cited by Dish, Opp. at 17); *see also* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.").  Third, Section 6 ████████████████ ████████████████████████.

Dish relies on board documents that refer to DISH to argue that course of conduct varies the unambiguous terms of Section 6.  (*See* Opp. at 17-18.)  Course of conduct is only relevant "in construing an ambiguous contract." *The H.N. & Frances C. Berger Found. v. Perez*, 218 Cal. App. 4th 37, 45 (2013).  Moreover, any course of conduct must relate to the "contracting 'parties' practical construction of a contract, as shown by their actions. . . ." *Id.* at 45 (citations omitted).  Here, the

---

[2] Dish's cases do not require a contrary finding.  *See Glob. Hunter Sec., LLC v. MannKind Corp.*, 2013 WL 2120865, at *6 (C.D. Cal. May 14, 2013) (applying NY law and declining to dismiss based on a proffered definition of an ambiguous term from "investopedia.com"); *Deakins Holding PTE Ltd. v. NewNet Inv. Grp. LLC*, 2015 WL 468972, at *5 (C.D. Cal. Feb. 4, 2015) (applying NY law on a motion for summary judgment and observing a court's primary objective is to give effect to the contract language chosen by the parties).

[3] The Bylaws ████████████████████████████████. (*See* ECF No. 372 at 41; ECF No. 316-1 § 3.5-3.6.)  There is no allegation of ████████.

9

1   only question is whether MoCA granted non-member Affiliates any rights under

2   the IPR Policy.  None of Dish's course of conduct allegations speak to that issue,

3   and the bylaws are clear that membership must comply with the Promoter

4   Agreement.  (Am. Countercls. ¶ 73; *see* ECF No. 372 at 42-43 (██████████

5   ████████████████████████████████████████████████████████████████████████

6   ██████████████); 316-1 § 3.9 (same).)

**3.      Dish does not plead any redressable Article III injury**

8   Dish's claims also should be dismissed because they do not connect

9   MaxLinear's alleged misconduct with the alleged injury to any Dish entity.  Each of

10  Dish's claims hinges on the theory that MaxLinear acted to "wash" the asserted

11  patents of RAND obligations because it did not include some (unspecified)

12  language in its transfer of those patents to Entropic.

13  ████████████████████████████████████████████████████████████

14  ████████████████████████████████████  (ECF No. 316-7 § 5.7.)  But even accepting Dish's

15  allegation, no such omission of language could have caused Dish's alleged injury.

16  First, MoCA's IPR Policy provides that its limited licensing obligations bind

17  successors regardless of whether they are stated in an assignment.  (IPR Policy

18  § 5.1.2.)  Second, Entropic confirmed its commitment to licensing on RAND terms

19  well before filing any claims against the Dish Affiliates.  (Am. Countercls. ¶ 52;

20  RJN Ex. D (ECF No. 375).)  Third, each of Entropic, Dish, and MaxLinear agrees

21  the MoCA RAND commitment was unaffected by MaxLinear's transfer.  (Mot. at

22  18; Am. Countercls. ¶ 4; ECF No. 363-1 at 8, 17-18 (Entropic reaffirming its

23  MoCA RAND commitment).)  Accordingly, there is no causation.

24  Dish Technologies also could not have suffered any injuries from

25  MaxLinear's alleged conduct because it is not a defendant.  It injected itself solely

to assert counterclaims, unlike the parties in Dish's cited authority.[4]  *See Microsoft*, 795 F.3d at 1050 (attorney fees against party who brought action in violation of good faith and fair dealing); *Evolved Wireless, LLC v. Apple, Inc*. 2019 WL 831112, at *6 (D. Del. Feb. 21, 2019) (similar).  Nor does the Opposition establish that Dish Technologies ███████████████████████████████—merely the conclusory assertion that Dish Technologies was once called EchoStar Technologies.  (*Compare* Mot. at 4 *with* Opp. at 14.)  Given the convoluted web of Dish entities, this is not enough to plausibly establish standing.

## B.    Count IV: Dish Fails to Plead a Breach of Contract Claim

### 1.    Dish does not plead performance

Dish falsely asserts that it alleged a "request, in writing" (Opp. at 18 (citing Am. Countercls. ¶ 50)).  To the contrary, paragraph 50 alleges that certain individuals had a "discussion," "[o]n [a] call," in which they requested a licensing proposal.  Dish is further incorrect that former MoCA members do not need to make a written request.  (*See* Opp. at 18 n. 5.)  Section 7.1 (or Section 7.2 of the superseded version of the IPR Policy) provides that any entitlement to a license offer is still "under Section 5.1."  The procedure for requesting a license is the same for current and former members.

The first allegation of any potential ***written*** request is March 31, 2023, after Entropic had filed suit.  (*See* Am. Countercls. ¶ 54.)  And both counterclaim Exhibit 9 and Exhibit C to MaxLinear's RJN demonstrate facially that Dish Network L.L.C.—and not Dish Technologies—engaged in the written requests for a RAND license after the suit was filed.  (ECF Nos. 316-8, 373.)  "Where an exhibit to a pleading is inconsistent with the pleading, the exhibit controls."

---

[4] Nor is Dish Technologies entitled to seek nominal damages to establish standing. (*See* Opp. at 20 n.6.)  Its authority addressed only breach of contract, and courts have since held that "a plaintiff still must show the ***fact*** of injury in order to have Article III standing."  *Svenson v. Google Inc.*, 2016 WL 8943301, at *10 (N.D. Cal. Dec. 21, 2016) (emphasis in original); *see also Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 990–91 (N.D. Cal. 2015) (nominal damages availability "does not relieve the plaintiff of proving injury.") (internal citation omitted).

1  *Gamble v. GMAC Mortg. Corp.*, 2009 WL 400359, at *3 (N.D. Cal. Feb. 18, 2009).

2  Dish uses the artifice of combining the counterclaims of five separate entities into

3  one pleading and then collectively referring to them as "DISH" to try to hide this

4  fact.  No Dish entity performed and there was no breach.

5  **2.      Dish fails to allege any breach by MaxLinear**

6  Again, Dish attempts to distract and create a factual dispute where there is

7  none.  (*See* Opp. at 23.)  Dish explicitly pled:  "Entropic committed 'to licensing its

8  patents that cover MoCA technology on reasonable terms, without discrimination

9  among similarly-situated providers (often called "RAND terms").'"  (Am.

10  Countercls. ¶ 52.)  This coupled with ████████████████████████████

11  show that Entropic was attempting to negotiate a license in compliance with § 5.1.1

12  of the IPR Policy.  (*See* Mot. at 22.)  The Patent Purchase Agreement between

13  MaxLinear and Entropic ██████████████████████.  (ECF

14  No. 316-7 §5.7 and Ex. I; *see also* Mot. at 21-22; ECF No. 363-1 at 17-18.)  The

15  IPR Policy §5.1.2 states that "the licensing obligations under this IPR Policy are

16  intended to be binding (e.g., as encumbrances) on all successors-in-interest

17  regardless of whether such provisions are included."  (IPR Policy § 5.1.2.)  Dish

18  pleads no facts to the contrary.

19  **3.      Dish cannot plead breach of a superseded contract**

20  Dish does not dispute that the 2011 MoCA IPR policy was superseded.

21  (Mot. at 19-20.)  Instead, Dish contends that MaxLinear does not have caselaw.

22  (Opp. at 23.)  But this ignores *Rack Safety Prod., LLC v. Double Backstop, Inc.*,

23  cited at page 20 of the Motion, where the court dismissed breach claims with

24  prejudice because they were based on a contract that was superseded at the time of

25  the alleged conduct.  *See* 2023 WL 3432250, at *5 (C.D. Cal. Mar. 9, 2023).

26  Finally, Dish is wrong that "the relevant sections of the IPR Policy are the

27  same between the 2011 and the 2017 versions."  (Opp. at 23.)  Some relevant

28  sections are equivalent, but Section 5.1.1—the key provision regarding the

12

1  requirement to offer RAND licenses—and Section 5.1.2—a provision MaxLinear

2  allegedly breached—both differ.  (*See* Mot. at 20 n. 6 (explaining differences).)

3  **C.    Count V: Dish Again Fails to Meet the Pleading Standard for**
   **Fraud or Negligent Misrepresentation**

4

5      Dish acknowledges that Counts V-VII for fraud, conspiracy, and

6  quasi-contract are "fraud-related" and agrees its fraud allegations are subject to the

7  heightened pleading requirement of Rule 9(b).  (Opp. at 25.)

8      Dish's Opposition points to no factual allegations setting forth the requisite

9  who, what, when, and where of the supposed fraud.  *See Schrieber Distribut. Co. v.*

10 *Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Dish can do no

11 better than promising that the Court should "simply read[] the counterclaim

12 complaint."  (Opp. at 25-26.)  But the counterclaims are merely a collection of

13 vague and conclusory allegations, paired with assertions on "information and

14 belief."  *See Delphix Corp. v. Actifo, Inc.*, 2014 WL 4628490, at *2 (N.D. Cal.

15 Mar. 19, 2014) (information and belief pleading "creates a further inference that

16 plaintiff likely lacks knowledge of underlying facts to support the assertion, and is

17 instead engaging in speculation to an undue degree").  Far from explaining the

18 Rule 9(b) basis for its fraud claims, the Opposition confirms that Dish is relying

19 only on its conclusory allegations that MaxLinear breached its commitment to

20 MoCA.  Dish does not identify any duty or conduct independent of the MoCA

21 commitment, so any fraud claim is barred by the economic loss rule.  *See UMG*

22 *Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1104 (C.D. Cal.

23 2015) (California courts find "tort claims barred in cases in which one party

24 breached a purported contract that it allegedly never intended to perform").

25     Dish claims that it pled a "back-and-forth concerning whether the patents are

26 subject to RAND."  (Opp. at 26 (citing Am. Countercls. at ¶¶ 36-57).)  This is not

27 correct.  Dish does not plead that Entropic ever disputed its MoCA RAND

28 commitment.  (Am. Countercls. at ¶ 52.)  Dish also claims MaxLinear's alleged

13

failure to identity patents subject to SSO commitments in its 2015 Annual Report (*id.* ¶ 116) was fraudulent.  Dish does not claim, however, that MaxLinear had any obligation to include such a discussion in that report.

Dish's Opposition also concedes that it ***does not know*** whether MaxLinear lacked a basis for believing that it would comply with MoCA's policies at the time of its commitment or intended to deceive Dish.  (Opp. at 27.)  Dish claims its allegation that MaxLinear later acted inconsistently with its commitment is enough. (*Id.*)  As explained in the Motion, this does not suffice.  (*See* Mot. at 23-24.)

Assuming that a defendant fraudulently intended to not abide by a contract simply because it later breached "would allow 'every breach of contract [to] support a claim of fraud so long as the plaintiff adds to his complaint a general allegation that the defendant never intended to keep her promise.'"  *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1154 (S.D. Cal. 2001) (quoting *Richardson v. Reliance Nat'l Indem. Co.*, 2000 WL 284211, at *5 (N.D. Cal. Mar. 9, 2000)). Dish has not adequately pled knowledge of falsity or intent to induce reliance, and its authority does not establish otherwise.  *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995) (circumstantial evidence permissible if it "explains how and why the statement was misleading when made," such as "contemporaneous statements indicating that the defendant knew all along that the earlier statement was false").

Moreover, with respect to the "who" requirement, "when the defendant is an entity, a complaint generally must also identify the person who made the false representations on behalf of the entity."  *Hurd v. Bos. Sci. Corp.*, 2023 WL 3564741, at *3 (C.D. Cal. Apr. 10, 2023) (Holcomb, J.) (quotation and citation omitted).  Dish's reliance on an opinion that reached its conclusion due to the movant's lack of cited authority is misplaced.  (Opp. at 27.)

Finally, Dish claims its conclusory assertion that it reasonably relied upon representations of MoCA participants "when deciding what technology to utilize" is sufficient.  (Opp. at 26.)  Leaving aside its lack of factual content, this conclusory

14

allegation is irreconcilable with Dish's assertions in its answer that it "lacks knowledge or information sufficient" to know whether it utilizes the portions of the MoCA standards covered by the asserted patents and, in one case, its denial of utilizing a portion of the MoCA standard  (Am. Ans. ¶¶ 84, 118, 152, 186, 220, 288, 322, 356, 424, 458).  If Dish does not know whether it practices the standard or denies its practice, it cannot plausibly assert it relied on any MaxLinear statement to adopt the standards.  (*See, e.g.,* Mot. at 24; Am. Countercls. ¶ 39.)

### D.    Count VI: Dish Again Fails to Plead a Proper Conspiracy Claim

Dish does not dispute that if the underlying fraud claim is dismissed, then its conspiracy claim must be dismissed as well.  (Mot. at 24-25.)  The conspiracy claim also fails because the counterclaims are bereft of any factual allegation showing that MaxLinear and Entropic formed a conspiracy, acted in furtherance of the conspiracy, or damaged Dish.  (*Id.* at 25.)  Entropic states clearly in its own motion to dismiss that it understood that the transfer of patents was subject to the MoCA RAND obligations.  (ECF No. 363-1 at 17-18.)

### E.    Count VII: Dish Fails to Plead Quasi-Contract for Restitution / Unjust Enrichment

Dish maintains that unjust enrichment is a valid claim in California, but the authority on which Dish relies did not resuscitate unjust enrichment as a cause of action.  *See Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070–72 (N.D. Cal. 2021) (California courts have since confirmed unjust enrichment is not a cause of action after *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988 (2015)).

Under California's substantive law, a party cannot assert a quasi-contract claim while simultaneously asserting a valid and enforceable contract.  (Mot. at 25-26.)  Dish asserts that this is procedural issue, and Rule 8(d) should allow Dish to assert both claims.  (Opp. at 29.)  Not so.  Faced with this exact fact pattern, the court in *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *12 (N.D. Cal. Dec. 19, 2019) dismissed the quasi-contract claim without leave to amend.  Here, "there is

no dispute about the existence or validity of the express contract," and Dish does not allege that the IPR Policy "is void" or otherwise "rescinded," so it "cannot plead alternative theories that necessarily fail where an express contract defines the rights of the parties." *Id.* The Dish Affiliates' lack of standing to enforce the IPR Policy does not bear on its validity. Dismissal with prejudice is merited.

Dish acknowledges that its quasi-contract claim is "fraud-related" (Opp. at 25) but fails to satisfy Rule 9(b)'s pleading requirements with respect to its fraud and negligent misrepresentations claim. The quasi-contract claim is dependent on the allegations of its fraud claim and fails for the same reasons.

### F.   Counts VIII, IX, and XI: Dish's Antitrust and UCL Claims Do Not Plausibly State a Claim for Relief

Dish does not dispute that its antitrust and UCL claims rise or fall together. (*See* Mot. at 28-29; Opp. at 29-30.)[5] These claims should be dismissed because Dish does not plead any facts to support its conclusory allegations that Entropic and MaxLinear agreed to "wash" the asserted patents. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047-48 (9th Cir. 2008). What little relevant factual allegations do appear in the counterclaims establish the contrary: having obtained the patents through the transfer agreement, Entropic reaffirmed its commitment to license on RAND terms. (Am. Countercls. ¶ 52.) But even if there was an agreement to "wash" the patents, it could not have unreasonably restrained competition because the alleged goal was a legal impossibility. Given that it was a legal impossibility, the alleged conspiracy is implausible. Dish's Opposition does not address this.

Dish tries to save its antitrust claims by arguing that Counterclaim ¶ 145

---

[5] Dish concedes that it cannot plead a counterclaim for patent misuse but purports to assert it as a basis for § 17200 liability. (Opp. at 32.) As the Motion establishes and Dish does not dispute, patent misuse is merely an "equitable defense." *B. Braun Med., Inc. v. Abbott Lab'y*s, 124 F.3d 1419, 1427 (Fed. Cir. 1997). It gives rise to no claim for liability, *id.*, and not an "unlawful" act for purposes of § 17200. *See Samsung Elecs. Co. v. Panasonic Corp.*, 2011 WL 9529403, at *6 (N.D. Cal. Aug. 25, 2011) (dismissing § 17200 claim where plaintiff failed to raise claim under independent law). Dish cites no authority otherwise and the Court should reject its attempt to bring a misuse claim through the back door.

1   sufficiently alleges harm to competition.  (Opp. at 30.)  There, Dish alleges "that

2   Entropic and MaxLinear attempted to 'wash' the asserted patents of

3   RAND-obligations in order to charge exorbitantly-high licensing fees . . . thus

4   driving up the cost of home networking and home television services for end

5   users."  (Am. Countercls. ¶ 145.)  Even if MaxLinear deceived MoCA and its

6   members (which it did not) and end users in the alleged home networking and home

7   television services markets paid higher prices, this alone is not harm to competition.

8   *Rambus Inc. v. FTC*, 522 F.3d 456, 466-67 (D.C. Cir. 2008).

9        Dish also apparently misunderstands the antitrust injury element of an

10   antitrust claim.  It contends that its allegation of harm to the "relevant markets" is

11   sufficient.  (Opp. at 31.)  The antitrust injury question is whether the harm Dish

12   alleges ***Dish*** suffered is antitrust injury; it is not some generalized injury to the

13   marketplace.  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).

14   Dish claims only patent damages and litigation costs, which are not antitrust

15   injuries.  *See Rambus,* 522 F.3d at 466-67 (patent damages); *Hangards, Inc. v.*

16   *Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979) (patent litigation costs).

17        Finally, the *Noerr-Pennington* doctrine does apply.  Dish does not contend

18   that it is a victim of a sham patent infringement suit, and the Court will apply a

19   RAND rate to damages, where appropriate.  Thus, Dish's only complaint is that it is

20   incurring litigation costs, which are not antitrust injury under *Noerr-Pennington*.

21        **G.    Dish Does Not Challenge the Futility of Amendment**

22        This is the second attempt by the Dish family of companies to state claims.

23   Despite months of time, adding a new entity with no notice, and greatly exceeding

24   the word limit, the Opposition fails to adequately address the failings in Dish's

25   pleadings and does not dispute that amendment would be futile.  (*See* Mot. at 30.)

26   Dismissal should be with prejudice.

27   **IV.   CONCLUSION**

28        The Court should dismiss the counterclaims with prejudice.

1

2    Dated: March 15, 2024                        MORRISON & FOERSTER LLP

3

4                                                 By: */s/ Bita Rahebi*
                                                      Bita Rahebi

5                                                     BITA RAHEBI (CA SBN 209351)
6                                                     brahebi@mofo.com
                                                      ALEX S. YAP (CA SBN 241400)
7                                                     ayap@mofo.com
                                                      ROSE S. LEE (CA SBN 294658)
8                                                     roselee@mofo.com
                                                      MORRISON & FOERSTER LLP
9                                                     707 Wilshire Boulevard, Suite 6000
                                                      Los Angeles, California 90017-3543
10                                                    Telephone:    (213) 892-5200
                                                      Facsimile:    (213) 892-5454

11                                                    RICHARD S.J. HUNG (CA SBN
12                                                    197425)
                                                      rhung@mofo.com
13                                                    MORRISON & FOERSTER LLP
                                                      425 Market Street,
14                                                    San Francisco, California 94105-
                                                      2482
15                                                    Palo Alto, California 94304-1018
                                                      Telephone:    (415) 268-7000
16                                                    Facsimile:    (415) 268-7522

17                                                    BRADLEY LUI (CA SBN 143088)
                                                      blui@mofo.com
18                                                    MORRISON & FOERSTER LLP
                                                      2100 L Street, NW, Suite 900
19                                                    Washington, DC 20037-1679
                                                      Telephone:    (202) 887-1500
20                                                    Facsimile:    (202) 887-0763

21                                                    Attorneys for Counter-Defendants
22                                                    MAXLINEAR, INC. and
                                                      MAXLINEAR
23                                                    COMMUNICATIONS LLC

24

25

26

27

28

                                          18

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief contains 4223 words, which complies with the word limit of L.R. 11-6.1.

Dated:  March 15, 2024                     By:  */s/ Bita Rahebi*
                                                         Bita Rahebi

MAXLINEAR'S REPLY ISO MOTION TO DISMISS
CASE NO. 2:23-CV-1043-JWH-KES
sf-5816312