Christina N. Goodrich (SBN 261722)
Christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
Cassidy.young@klgates.com
K&L Gates LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

[*Additional counsel on signature page*]

**Attorneys for Plaintiff Entropic Communications, LLC**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:23-cv-1043-JWH-KES (Lead Case) |
| Plaintiff, | Case No. 2:23-cv-1047-JWH-KES (Related Case) |
| v. | Case No. 2:23-cv-1048-JWH-KES (Related Case) |
| DISH NETWORK CORPORATION, *et al.*, | Case No. 2:23-cv-5253-JWH-KES (Related Case) |
| Defendants. | [Assigned to the Honorable John W. Holcomb] |

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | **ENTROPIC COMMUNICATIONS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS PURSUANT TO RULE 12(b)(6)** |
| Plaintiff, | |
| v. | **REFERRED TO SPECIAL MASTER** |
| COX COMMUNICATIONS, INC., *et al.*, | **Previously-set hearing, now vacated** |
| | Hearing Date:     March 29, 2024 |
| Defendants. | Hearing Time:    9:00 a.m. |
| | Courtroom:        9D |

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

ENTROPIC COMMUNICATIONS, LLC,

                        Plaintiff,

       v.

COMCAST, *et al.*,

                        Defendants.

---

ENTROPIC COMMUNICATIONS, LLC,

                        Plaintiff,

       v.

DIRECTV, LLC, *et al.*,

                        Defendants.

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................4

II.   ARGUMENT ........................................................................................................5

      A.   Cox has not plausibly alleged a breach of the IPR Policy because MaxLinear was not bound to retain a licensing right. ...........................5

      B.   Cox has not plausibly alleged a breach or harm from any breach related to RAND licensing obligations. ...............................................10

      C.   Cox has not plausibly alleged that it is entitled to relief based on the alleged disclosure of confidential MoCA documents. ........................12

           1.   Cox has not plausibly alleged that MaxLinear violated confidentiality obligations. ........................................................12

           2.   Cox has not plausibly alleged any specific acts by Entropic designed to induce MaxLinear to breach its confidentiality obligations. .................................................................................13

      D.   The confidentiality claims do not "depend[] on the resolution of a substantial question of federal patent law." .........................................15

III.  CONCLUSION ..................................................................................................16

1

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfred E. Mann Foun. For Sci. v. Cochlear Corp.*,
  604 F. 3d 1354 (Fed. Cir. 2010) ........................................................... 7

*Datatreasury Corp. v. Wells Fargo & Co.*,
  552 F.3d 1368 (Fed. Cir. 2008) ............................................................ 6

*Demalco Ltd. v. Feltner*,
  588 F. Supp. 1277 (S.D.N.Y. 1984) .................................................... 11

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) .......................................................... 11

*First Nat. Bank v. Continental Illinois Nat. Bank*,
  933 F.2d 466 (7th Cir. 1991) ........................................................ 11, 12

*Fortinet, Inc. v. Forescout Techs., Inc.*,
  No. 20-cv-03343-EMC, 2021 WL 5565836 (N.D. Cal. Nov. 29,
  2021) .................................................................................................... 15

*Haskell v. Santander Bank, N.A.*,
  No. 17-cv-11288, 2018 WL 1750459 (D. Mass. Apr. 10, 2018) ........ 11

*Hilton v. McNitt*,
  49 Cal. 2d 79 (Cal. 1957) ...................................................................... 7

*Kor. Supply Co. v. Lockheed Martin Corp.*,
  131 Cal. Rptr. 2d 29 (2003) ................................................................ 14

*MacDonald & Kruse, Inc. v. San Jose Steel Co.*,
  29 Cal. App. 3d 413 (Cal. Ct. App. 1972) ............................................ 7

*Mehul's Inv. Corp. v. ABC Advisors, Inc.*,
  130 F. Supp. 2d 700 (D. Md. 2001) ...................................................... 7

*Moore v. Apple, Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) ................................................ 14

2

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX
DEFENDANTS' AMENDED COUNTERCLAIMS**

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) ............................................................. 11

*QuickLogic Corp. v. Konda Techs., Inc.*,
   618 F. Supp. 3d 873 (N.D. Cal. 2022) .................................................. 13

*Salesbrain, Inc. v. AngelVision Technologies*,
   No. 12-cv-5026, 2013 WL 1191236 (N.D. Cal. Mar. 21, 2013) ............... 10, 13

*Sicom Systems, Ltd. v. Agilent Technologies, Inc.*,
   427 F.3d 971 (Fed. Cir. 2005) ............................................................... 7

**Statutes**

Federal Rule of Civil Procedure 12 .......................................................... 15

3

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

I.      **INTRODUCTION**

Cox's Counterclaims rely on facially erroneous readings of the MoCA IPR Policy and of the MoCA confidentiality protections. Because Cox's Counterclaims are contrary to the plain terms of the IPR Policy and confidentiality requirements, they fail as a matter of law and must be dismissed.

Fatally, Cox wrongly asserts that the IPR Policy obligated MaxLinear to retain, for all time, the right to grant licenses to any essential patent claims. In truth, the IPR Policy expressly *permits* parties to assign their patent rights to successors-in-interest. To ensure that RAND licenses will continue to be offered after assignment, the obligation to license on RAND terms travels with the patent and binds the new owner: "the licensing obligations under this IPR Policy are intended to be binding (e.g., as encumbrances) on all successors-in-interest." IPR Policy § 5.1.2. And it confirms this is so regardless of the specific language used to assign essential patents. *Id*. The IPR Policy does not require the original patent owner to retain the right to license because the assurance that RAND licenses will continue to be available is that the licensing obligations bind the *successors-in-interest*. There is no provision requiring the Alliance Party who originally owned the patents retain a right to license. Further still, Section 5.1.2 states that "[a]n Alliance Party may choose the manner in which it complies with this Section 5.1.2." MaxLinear chose to comply by assigning all rights, interests, and obligations to Entropic. The obligation to offer licenses under the terms of the IPR Policy was among the assigned obligations. Cox's position that the IPR Policy required MaxLinear to retain a right to license the patents is unsupportable given the plain language of the IPR Policy permitting assignments, and thus cannot plausibly support a claim for breach of contract (Count II). Furthermore, without a breach of contract, the tortious interference claim also automatically fails (Count III).

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

Likewise, Cox does not plausibly allege that the MoCA standards documents in question were subject to confidentiality obligations, nor that Entropic committed intentional acts designed to induce MaxLinear to violate any such obligations. The documents state on their face that they issued in 2013. The applicable confidentiality protections expired ████████. Therefore, no confidentiality obligations were in effect when Entropic received the documents from MaxLinear in 2021. As a matter of law there can be no violation of a non-existent obligation. And even if Cox's pleadings were somehow sufficient (which they are not), the Court should decline to exercise jurisdiction over them because the confidentiality claims do not depend on any question of federal patent law.

Therefore, Cox is unable to make a plausible showing that it is entitled to relief, and the Court should dismiss the Counterclaims against Entropic.

## II.   ARGUMENT

Cox seeks a declaration that the transfer of patents to Entropic was void (Count II) and asserts a claim of tortious interference with contract (Count III). These counterclaims hinge on two erroneous theories: (1) that MaxLinear breached the IPR Policy by transferring the Asserted Patents to Entropic without retaining for itself the right to grant licenses; and (2) that MaxLinear breached confidentiality obligations by disclosing MoCA standards documents to Entropic. Because neither theory is properly pled, Counts II and III of Cox's Counterclaims fail as a matter of law.

**A.   Cox has not plausibly alleged a breach of the IPR Policy because MaxLinear was not bound to retain a licensing right.**

Cox cannot plausibly allege a breach of the IPR Policy because the unambiguous terms of the Policy show that MaxLinear was not required to retain the right to grant licenses to essential patents. Cox concedes that the IPR Policy expressly permits assignment of essential patent claims. *See* Opp. Br. at 19; *see also*

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

IPR Policy § 5.1.2. Cox does not dispute that the IPR Policy's licensing obligations "run with the patent[s]" under *Datatreasury*. *See Datatreasury Corp. v. Wells Fargo & Co.*, 552 F.3d 1368, 1372 (Fed. Cir. 2008); *see also* Opp. Br. at 19–22. Instead, Cox takes the absurd position that MaxLinear was allowed to assign the Asserted Patents, but still had to "retain the right to grant any licenses for essential patents." Opp. Br. at 19. This theory fails on several counts.

First, Cox's interpretation directly contradicts the plain terms of the IPR Policy, specifically the provision that expressly governs "Transfer of Essential Patent Claims." *See* IPR Policy § 5.1.2. That Policy explicitly states, in full:

> **5.1.2 Transfer of Essential Patent Claims**. Any sale, ***assignment*** or other transfer by an Alliance Party or its Affiliates to an unaffiliated third party of an Essential Patent Claim, or any patent or patent application that reasonably may contain or result in an Essential Patent Claim, shall be made subject to the terms in this IPR Policy. ***An Alliance Party may choose the manner in which it complies with this Section 5.1.2***, provided that any agreement for transferring or assigning Essential Patent Claims, or any patent or patent application that reasonably may contain or result in an Essential Patent Claim, ***includes a provision that such transfer or assignment is subject to existing licenses and obligations to license*** imposed on the Alliance Party by this Agreement and the Alliance Bylaws, and that the transferee will similarly include appropriate provisions in the event of future transfers with the goal of ***binding each successor-in-interest***. Moreover, the ***licensing obligations under this IPR Policy are intended to be binding*** (e.g., as encumbrances) ***on all successors-in-interest*** regardless of whether such provisions are included.

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX
DEFENDANTS' AMENDED COUNTERCLAIMS**

*Id.* (emphases added). Section 5.1.2 thus contemplates that (1) an Alliance Party can choose how to comply with Section 5.1.2; and (2) the licensing obligations in Section 5.1.2 are binding on "successors-in-interest" upon transfer, not the Alliance Party itself. The explicit reference to "successors-in-interest" confirms that the IPR Policy contemplates successors stepping into the shoes of an Alliance Party and assuming the obligations therein. *See, e.g., Mehul's Inv. Corp. v. ABC Advisors, Inc.*, 130 F. Supp. 2d 700, 706 (D. Md. 2001). Further, Section 5.1.2 is specifically directed to transfers of patent rights and obligations. This is the section that governs transfers, not the other sections cited by Cox which relate to warranties and the like. *See MacDonald & Kruse, Inc. v. San Jose Steel Co.*, 29 Cal. App. 3d 413, 421 (Cal. Ct. App. 1972) ("where a general and a particular provision of a written instrument are inconsistent, the particular controls the general"). The plain language of Section 5.1.2 squarely rejects Cox's interpretation that an Alliance Party is forever bound to the licensing obligations and cannot assign them. Cox's counterclaims fail for this reason alone.

Second, Cox's interpretation contradicts basic principles of patent law. Section 5.1.2 expressly contemplates an "assignment" of IP property rights. "Assignment" in the patent context refers to the transfer of "all substantial rights" in the patent. *See Alfred E. Mann Foun. For Sci. v. Cochlear Corp.*, 604 F. 3d 1354, 1359 (Fed. Cir. 2010). Part of those substantial rights include the right to exclude or license others. *See, e.g., Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005). The parties to the IPR Policy are presumed to understand the legal import of terms like "assignment" as used in their agreement. *See generally Hilton v. McNitt*, 49 Cal. 2d 79, 82 (Cal. 1957) (parties and their attorneys presumed to know the law applicable to such agreements). Thus, the IPR Policy contemplates an "assignment" of patents that would permit Alliance Members to assign "all substantial rights," including the right to grant licenses.

7

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

If the IPR Policy were intended to force Alliance Parties to retain the right to grant licenses and bar them from ever transferring that right, then the IPR Policy would have far different language. For one, it would never have referred to "assignments." Further, it would have had language explaining the scope of that perpetual licensing right, such as whether that right is non-exclusive, or whether the Alliance Party needs to obtain consent from the new patent owner before exercising that right, or whether the Alliance Party is required to give the new patent owner notice and an opportunity to object. No such provisions are present, and for good reason: the IPR Policy does not, and was never intended to, force Alliance Parties to retain a licensing right for all time. Instead, Section 5.1.2 permits an ***assignment*** that conveys all rights and obligations in the patents covered by the IPR Policy. Because the licensing obligations travel with the patents to the successor, the IPR Policy has no need to force the original owner to license the patents as well.

Third, Cox's reading of Section 4 is untenable and improperly creates conflict with other provisions of the IPR Policy. Cox turns to Section 4.1.2 to fabricate a "perpetual licensing right." But that section says nothing about a licensing right existing in perpetuity. Rather, it is a standard warranty provision by which signatories warranted that they had the power and authority to carry out the IPR Policy:

> Each Alliance Party represents, warrants and covenants to the Alliance and to other Alliance Parties that it has the power and authority to bind itself and all of its Affiliates to the obligations contained herein, including without limitation, the obligation to grant patent licenses as set forth in this IPR Policy.

IPR Policy § 4.1.2. This section simply confirms that signatories had the power to bind both themselves and their Affiliates under the IPR Policy when they signed it. Nowhere does it create an obligation to ***retain*** licensing rights to patents for all

8

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

time. To the contrary, Section 5.1.2 is clear that rights in essential patents—
including licensing obligations—can be assigned or transferred to third parties.

Section 4.1.1 further confirms that the provisions of Section 4 cannot be read
to conflict with Section 5.1.2, as Cox seeks to do. Section 4.1.1 states that "[a]ll
right, title and interest in and to Alliance Party Intellectual Property shall be owned
exclusively by the Alliance Party(ies) who developed the Intellectual Property…"
IPR Policy § 4.1.1. Under Cox's reading of Section 4—*i.e.*, that this section recites
an obligation which extends in perpetuity—there could never be a transfer of
intellectual property to a third party because IP could only be owned by an Alliance
Party. This is very clearly wrong, as Section 5.1.2 confirms that transfers to "third
parties" are permissible and expressly contemplated. Cox's reading of Section 4
creates conflict with Section 5.1.2, and thus is legally erroneous and must be
rejected.

The unreasonableness of Cox's position is underscored by its self-
contradictory arguments. In its pleading, Cox alleged that Section 4.1.1 "required
that any such essential patents shall be owned by an 'Alliance Party'" for all time.
DE 276 ("Countercl.") ¶ 547; *see also* ¶ 581 (alleging that MaxLinear "promise[d]
that it would exclusively own the relevant intellectual property necessary to the
MoCA standards"). Perhaps realizing that these assertions are flatly contrary to the
assignment provision of Section 5.1.2, Cox changed its tune in its opposition brief.
There, Cox tries to pivot to an interpretation of the IPR Policy that no longer
required MaxLinear to own the patents in perpetuity, but still required it to make a
choice: "continue to own the relevant patents" *or else* retain the right to grant
licenses. Opp. at 19. This "choice" is nowhere in the IPR Policy and is inconsistent
with Cox's own position that Section 4 recites "present and future" promises that
apply for all time. *Id.* at 20. Cox has drifted so far from the plain text of the IPR
Policy that Cox itself cannot keep its contorted views consistent.

9

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX
DEFENDANTS' AMENDED COUNTERCLAIMS**

Here, the terms of the IPR Policy are unambiguous and should be given their plain meaning. *See Salesbrain, Inc. v. AngelVision Technologies*, No. 12-cv-5026, 2013 WL 1191236, at *12 (N.D. Cal. Mar. 21, 2013) ("Where the terms of the contract are unambiguous, a court must enforce the contract according to its plain meaning"). Under those plain terms, MaxLinear had the right and the choice to assign its licensing obligations to a third party (Entropic), and those obligations would flow with the assignment. Cox's Counterclaims rely on a legally erroneous reading of the IPR Policy and should be dismissed with prejudice.

**B.    Cox has not plausibly alleged a breach or harm from any breach related to RAND licensing obligations.**

Cox's Counterclaims should also be dismissed because they fail to allege a breach, or any harm from an alleged breach, of the licensing obligations in the IPR Policy. In its Counterclaims, Cox alleges that Entropic induced MaxLinear to breach the requirement to offer a RAND license. Countercl. ¶ 584. According to Cox, *current* members must submit a "written request" under Section 5.1, whereas *former* members may request a license in any form they want, including verbally. *See* Opp. Br. at 10. Cox again misreads the IPR Policy. The Policy specifies that former members may request a license "under Section 5.1," IPR Policy § 7.1, and Section 5.1 specifies that requests must be in writing. *See id.* § 5.1.1. Section 7.1 in no way grants more rights to *former* members than to *current* members. To the contrary, the rights of former members under Section 7.1 are cabined by Section 5.1, and then those rights are further limited by precluding former members from requesting licenses on standards adopted after the member left the MoCA Alliance. *Id.* § 7.1. Cox's misreading of Sections 5.1 and 7.1 further demonstrate that its allegations of breach are contrary to the plain terms of the IPR Policy and should be dismissed.

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

Second, Cox argues that it does not matter whether the parties successfully breached the policy. What matters, according to Cox, is that Entropic and MaxLinear "affirmatively sought" to unencumber the patents. *See* Opp. Br. at 21. But an ***attempted*** breach of contract is not a breach of contract. *See generally First Nat. Bank v. Continental Illinois Nat. Bank*, 933 F.2d 466, 469 (7th Cir. 1991) (finding no injury where defendant attempted unsuccessfully to breach the contract); *see also Haskell v. Santander Bank, N.A.*, No. 17-cv-11288, 2018 WL 1750459, at *1 (D. Mass. Apr. 10, 2018) ("there has been no breach of any alleged promise not to foreclose on the property, and there is no cause of action for an attempted breach of an agreement"); *Demalco Ltd. v. Feltner*, 588 F. Supp. 1277, 1280 (S.D.N.Y. 1984) ("plaintiff alleges not a breach of contract but an attempted breach"). Without a breach, there can be no claim for tortious interference. *See Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015). And, in any event, the IPR Policy is explicit that licensing obligations are binding on successors-in-interest "regardless of whether [specific provisions about the encumbrances] are included." IPR Policy § 5.1.2. Therefore, Cox has failed to plead breach of contract.

Lastly, Cox's counterclaim pleads that "Cox is entitled to receive" a RAND offer "from MaxLinear, and only MaxLinear." (Countercl. ¶ 579.) But it pleads no harm from receiving a RAND offer from Entropic instead. Cox argues in its brief that "the identi[t]y of MaxLinear as counterparty would result in far different outcomes on RAND rates." Opp Br. 26–27. Cox never pleads such a harm, let alone explains what harm comes from those purportedly "different outcomes." Further, Cox's assertion is legally wrong: a RAND offer must be non-discriminatory, and thus "the commercial relationship between the licensor and licensee is irrelevant." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230–31 (Fed. Cir. 2014). Cox's

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

1  speculation that it could get a more favorable RAND offer from MaxLinear as

2  opposed to Entropic is contrary to law and cannot state a cognizable harm.

3  **C.    Cox has not plausibly alleged that it is entitled to relief based on**

4  **the alleged disclosure of confidential MoCA documents.**

5  Cox has not plead a viable tortious interference claim based on the alleged

6  breach of disclosure of confidential documents. What Cox pleads suffers from two

7  critical deficiencies. *First*, Cox does not plausibly allege there was an actual breach

8  of any confidentiality obligations because the pleadings facially show that any such

9  confidentiality obligations had already expired. Without a breach there is no

10  tortious interference. *Second*, Cox's pleadings are devoid of any specific allegations

11  as to how Entropic induced MaxLinear to breach its confidentiality obligations.

12  Either one of these deficiencies is fatal to Cox's tortious interference claim based

13  on the alleged disclosure of confidential documents.

14  **1.    Cox has not plausibly alleged that MaxLinear violated**

15  **confidentiality obligations.**

16  Cox alleges that MaxLinear violated confidentiality obligations, specifically

17  the confidentiality obligations set forth in Section 5 of Cox's MoCA membership

18  agreement.[1] *See* DE 276 ("Countercl.") ¶¶ 535, 546. █████████████████

19  ██████████████████████████████████████████████████████████

20  ███████████████████████████████ *See* DE 336 ("Motion") at 15. The

21  "confidential" MoCA standards documents that were allegedly shared with

22  Entropic all purport to have issued no later than November 2013, meaning that any

23  Cox confidential information published therein would have necessarily been

24  "disclosed" by Cox before that date. By the time Entropic came onto the scene in

25

26  [1] Specifically Cox alleges that MaxLinear signed a similar membership agreement,

27  which bound MaxLinear to the same confidentiality terms as set forth in Cox's membership agreement. *See* Countercl. ¶ 535; *see also* ¶ 546 (alleging that MaxLinear "agreed to the same or equivalent confidentiality terms" as

28  described in Section 5 of Cox's membership agreement.).

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

2021, any duty to keep that information confidential was well past its expiration date. *See* 2:23-cv-1047, DE 1 ¶ 33 (Entropic formed in 2021).

Cox dismisses this fundamental failure to state a claim as mere "timing details." *See* Opp. Br. at 22. Not so. The term of a contract obligation, and expiration thereof, is a core issue, not a detail. Courts dismiss claims of breach where the confidentiality requirements have expired on their own terms. *See Salesbrain, Inc. v. AngelVision Tech.*, No. 12-cv-05026, 2013 WL 1191236, at *12–14 (N.D. Cal. Mar. 21, 2013) (dismissing claim for breach of NDA based on Court's finding that the NDA obligations expired before the allegedly breaching conduct); *see also QuickLogic Corp. v. Konda Techs., Inc.*, 618 F. Supp. 3d 873, 886 n. 7 (N.D. Cal. 2022) (NDA could not form the basis of any breach of contract or confidentiality claim that occurred after the contract expired). Here, Cox does not and cannot allege that the confidentiality provisions at issue were still in effect when the alleged conduct took place. That is fatal because a party cannot breach a contract provision that has expired, and uncontroverted facts—within the pleading itself—show that is the case. Because Cox fails to show that it is plausibly entitled to relief based on the disclosure of the MoCA standards, its claim necessarily fails.

## 2. Cox has not plausibly alleged any specific acts by Entropic designed to induce MaxLinear to breach its confidentiality obligations.

Beyond the expiration of the relevant contract provision, Cox's claim also fails because there are no allegations of any specific acts by Entropic to induce MaxLinear's alleged conduct. Cox argues that its Counterclaims sufficiently "aver" Entropic was aware of the confidentiality of the MoCA documents and affirmatively sought their disclosure from MaxLinear. *See* Opp. Br. at 16 (citing DE 266-1 ¶¶ 561, 568–69). However, the paragraphs Cox cites do not contain any such allegations.

13

Paragraph 561 vaguely alleges that "in the course of negotiating the lengthy and complex Patent Purchase Agreement, Plaintiff learned of and was informed of the MoCA standards." Countercl. ¶ 561. Paragraph 568 alleges that ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ Finally, Paragraph 569 alleges that "███████ ████████████████████████████████████████████████, Plaintiff obtained copies of the otherwise confidential MoCA standards and has relied on those clearly marked confidential material to which it should not have had access to prepare and send its correspondence in 2022 to Cox and to prepare and bring this suit." *Id.* ¶ 569. Nowhere are there allegations that "Entropic was aware of the confidentiality of the MoCA documents" or that Entropic "affirmatively sought their disclosure from MaxLinear" despite first having such knowledge. Absent such allegations, Cox cannot plead a claim for inducement related to the alleged breach of confidentiality.

The only other fact Cox argues in support of its Counterclaim is that the documents in question are stamped "MoCA Confidential." *See* Opp. Br. at 16. But all this shows is that, at most, Entropic would have become aware of the confidential marking of the documents ***only upon receiving the documents***. It does not lend any credence to Entropic being aware of the confidential nature of the documents prior to their disclosure, let alone that Entropic induced MaxLinear to violate confidentiality obligations.

Cox cites case law that broadly stands for the point that interference does not have to be the defendant's primary motive. *See Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1203 (N.D. Cal. 2014). While that is true, it misses the point. Cox must still plausibly allege that Entropic "knew that the interference was certain or substantially certain to occur as a result of its action." *Kor. Supply Co. v. Lockheed*

14

*Martin Corp.*, 131 Cal. Rptr. 2d 29, 45 (2003). The three paragraphs of the Counterclaims cited above do not come close to meeting this standard. All they show is that Entropic received the documents in question and that the documents were stamped "confidential." Therefore, Cox has not sufficiently pleaded tortious interference based on the alleged breach of confidentiality obligations.

### D.   The confidentiality claims do not "depend[] on the resolution of a substantial question of federal patent law."

Finally, to the extent the Court finds that Cox has sufficiently pleaded tortious interference based only on the alleged disclosure of confidential information, the claims must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). This claim is not a federal question, and the Court lacks supplemental jurisdiction because the claim does not "depend[] on the resolution of a substantial question of federal patent law." *Fortinet, Inc. v. Forescout Techs., Inc.*, No. 20-cv-03343-EMC, 2021 WL 5565836, at *18 (N.D. Cal. Nov. 29, 2021) (citing *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 477–78 (Fed. Cir. 1993)).

Whether MaxLinear improperly disclosed confidential MoCA documents does not depend on patent law at all, much less on "resolution of a substantial question of federal patent law." *See Fortinet*, 2021 WL 5565836 at *18. The only connection Cox points to between the confidentiality claims and the underlying patent infringement suit is a (false) assertion that Entropic would not have been able to bring this suit but for its access to the MoCA documents. *See* Countercl. ¶ 569. But what claims might arise from some document is not connected with the propriety of obtaining the document.

Realizing the danger, Cox also argues that the confidentiality claim arises from the same case or controversy as the other tortious interference claims. *See* Opp. Br. at 29. Cox misapplies the law. The confidentiality claim must be

15

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

connected to the federal claim directly, not indirectly. It is not sufficient to be connected only to one of the other state claims. There is no "chain rule" of supplemental jurisdiction. Cox's other tortious interference claims at least relate to the assignment of patents and thus plausibly implicate issues unique to patent law. But the same cannot be said for the confidentiality claims, which must be dismissed for this jurisdictional reason as well.

### III. CONCLUSION

For the foregoing reasons, Entropic respectfully requests that this Court dismiss Cox's Amended Counterclaims that Entropic tortiously interfered with the MoCA IPR Policy (Count III) and that the patent assignments from MaxLinear to Entropic are void (Count II), with prejudice.

Dated: March 15, 2024

K&L GATES LLP

By: */s/ Rachel Berman*
    Christina Goodrich (SBN 261722)
    Cassidy T. Young (SBN 342891)
    K&L Gates, LLP
    10100 Santa Monica Boulevard, 8th Floor
    Los Angeles, CA 90067
    Telephone: (310) 552-5000
    Fax: (310) 552-5001
    christina.goodrich@klgates.com
    cassidy.young@klgates.com
    rachel.berman@klgates.com

    James A. Shimota (*pro hac vice*)
    70 W. Madison Street, Ste 3300
    Chicago, Illinois 60602
    Telephone: (312) 807-4299
    Fax: (312) 827-8000
    jim.shimota@klgates.com

    Peter E. Soskin
    4 Embarcadero Center, Ste 1200
    San Francisco, CA 94111
    Telephone: (415) 882-8220
    peter.soskin@klgates.com

    ***Attorneys for Plaintiff, Entropic Communications, LLC***

16

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS**

1

## CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Plaintiff Entropic Communications,

3   LCC, certifies that this brief contains 3,982 words, which complies with the word

4   limit of L.R. 11-6.1.

5

6   Dated: March 15, 2024          **K&L GATES LLP**

7                                  By: */s/ Rachel Berman*
                                   Christina Goodrich (SBN 261722)
8                                  Cassidy T. Young (SBN 342891)
                                   K&L Gates, LLP
9                                  10100 Santa Monica Boulevard,
                                   8th Floor
10                                 Los Angeles, CA 90067
                                   Telephone: (310) 552-5000
11                                 Fax: (310) 552-5001
                                   christina.goodrich@klgates.com
12                                 cassidy.young@klgates.com
                                   rachel.berman@klgates.com

13                                 James A. Shimota (*pro hac vice*)
                                   70 W. Madison Street, Ste 3300
14                                 Chicago, Illinois 60602
                                   Telephone: (312) 807-4299
15                                 Fax: (312) 827-8000
                                   jim.shimota@klgates.com
16
                                   Peter E. Soskin
17                                 4 Embarcadero Center, Ste 1200
                                   San Francisco, CA 94111
18                                 Telephone: (415) 882-8220
                                   peter.soskin@klgates.com
19
                                   ***Attorneys for Plaintiff, Entropic***
20                                 ***Communications, LLC***

21

22

23

24

25

26

27

28
                                        17
                    **ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX**
                    **DEFENDANTS' AMENDED COUNTERCLAIMS**

## CERTIFICATE OF SERVICE

**Case No. 2:23-cv-01047-JWH-KES**

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: K&L GATES LLP, 10100 Santa Monica Boulevard Eighth Floor, Los Angeles, CA 90067.

On March 15, 2024, I served the document(s) described as:

- **DECLARATION OF RACHEL BERMAN IN SUPPORT OF PLAINTIFF ENTROPIC'S APPLICATION TO FILE DOCUMENTS UNDER SEAL REGARDING REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' COUNTERCLAIMS**
- **ENTROPIC COMMUNICATIONS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COX DEFENDANTS' AMENDED COUNTERCLAIMS PURSUANT TO RULE 12(b)(6)**

on the interested parties in this action by delivering a true copy thereof as follows:

| | |
|---|---|
| **Kilpatrick Townsend and Stockton LLP** <br> Mitchell G. Stockwell <br> mstockwell@kilpatricktownsend.com <br> Christopher S. Leah <br> cleah@kilpatricktownsend.com <br> Courtney S. Dabbiere <br> cdabbiere@kilpatricktownsend.com <br> Michael J. Turton <br> mturton@kilpatricktownsend.com <br> Vaibhav P. Kadaba <br> wkadaba@kilpatricktownsend.com <br> Andrew N. Saul <br> asaul@kilpatricktownsend.com <br> 1100 Peachtree Street, Suite 2800 <br> Altanta, GA 30309-4530 <br> Telephone: 404-815-6214 <br> Fax: 404-541-3403 <br><br> April E. Isaacson <br> aisaacson@kilpatricktownsend.com <br> 2 Embarcadero Center, Suite 1900 | *Attorneys for Defendants* <br> Cox Communications, Inc.; <br> CoxCom, LLC; and Cox <br> Communications California, <br> LLC |

1

| | |
|---|---|
| San Francisco, CA 94111<br>Telephone: 415-273-8306<br>Fax: 415-354-3519<br><br>Rishi Gupta<br>rgupta@kilpatricktownsend.com<br>Sarah Y. Kamran<br>skamran@kilpatricktownsend.com<br>1801 Century Park East Suite 2300<br>Los Angeles, CA 90067<br>Telephone: 310-310-7015<br>Fax: 310-861-0327 | |
| **Morrison and Foerster LLP**<br>Alex S. Yap<br>Ayap@mofo.com<br>Bita Rahebi<br>Brahebi@mofo.com<br>Rose S. Lee<br>Roselee@mofo.com<br>707 Wilshire Boulevard, Suite 6000<br>Los Angeles, CA 90017<br>Telephone: 213-892-5200<br>Fax: 213-892-5454<br><br>Bradley S. Lui<br>Blui@mofo.com<br>2100 L Street Nw, Suite 900<br>Washington, DC 20037<br>Telephone: 202-887-8766<br><br>Richard S. J. Hung<br>Rhung@mofo.com<br>425 Market Street<br>San Francisco, CA 94105<br>Telephone: 415-268-7000<br>Fax: 415-268-7522 | *Attorneys for Counter-Defendants*<br>MaxLinear, Inc. and MaxLinear Communications LLC |

☑ **BY ELECTRONIC SERVICE**:  by transmitting a true copy of the foregoing document(s) to the e-mail addresses set forth as stated on the attached mailing list.

2

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 15, 2024, at Los Angeles, California.

*/s/ Rachel Berman*
Rachel Berman

**CERTIFICATE OF SERVICE**