Christina N. Goodrich (SBN 261722)
Christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
Cassidy.young@klgates.com
K&L Gates LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

[*Additional counsel on signature page*]

**Attorneys for Plaintiff Entropic Communications, LLC**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>DISH NETWORK CORPORATION, *et al.*,<br><br>  Defendants. | Case No. 2:23-cv-1043-JWH-KES (Lead Case)<br><br>Case No. 2:23-cv-1047-JWH-KES (Related Case)<br>Case No. 2:23-cv-1048-JWH-KES (Related Case)<br>Case No. 2:23-cv-5253-JWH-KES (Related Case)<br><br>[Assigned to the Honorable John W. Holcomb]<br><br>**ENTROPIC COMMUNICATIONS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS PURSUANT TO RULE 12(b)(6); DECLARATION OF CASSIDY T. YOUNG IN SUPPORT THEREOF**<br><br>Hearing Date: March 29, 2024<br>Hearing Time: 9:00 a.m.<br>Courtroom: 9D |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>  Defendants. | |

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

318103891.4

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | |
| Plaintiff, | |
| v. | |
| COMCAST, *et al.*, | |
| Defendants. | |
| ENTROPIC COMMUNICATIONS, LLC, | |
| Plaintiff, | |
| v. | |
| DIRECTV, LLC, *et al.*, | |
| Defendants. | |

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

318103891.4

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 6

II. ARGUMENT ............................................................................................ 7

    A. DISH's breach of contract claim is not a plausible legal claim because DISH has failed to plead a contract or breach. ....................................... 7

        1. The DISH Defendants have no rights under the IPR Policy. ....... 7

        2. DISH has failed to allege breach as to DISH Technologies. ..... 11

    B. DISH's conspiracy and antitrust claims must be dismissed as facially implausible, deficient, and contrary to law. ......................................... 12

III. CONCLUSION ...................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple, Inc. v. Motorola Mobility, Inc.*,
　2011 WL 7324582 (W.D. Wis. June 7, 2011) ............................................................. 9

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*,
　971 F.2d 272 (9th Cir. 1992) ................................................................................... 14

*Datatreasury Corp. v. Wells Fargo & Co.*,
　552 F.3d 1368 (Fed. Cir. 2008) ............................................................................... 13

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
　12 F.4th 476 (5th Cir. 2021) ..................................................................................... 8

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
　2006 WL 1883353 (N.D. Cal. July 7, 2006) ..................................................... 15–16

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
　527 F. Supp. 2d 1084 (N.D. Cal. 2007) .................................................................. 16

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
　921 F. Supp. 2d 903 (N.D. Ill. 2013) ...................................................................... 16

*In re Innovatio IP Ventures Patent Litig.*,
　2013 WL 5593609 (N.D. Ill. Oct. 3, 2013) ............................................................... 9

*Mehrtash v. Mehrtash*,
　93 Cal. App. 4th 75, 112 Cal. Rptr. 2d 802 (2001) ................................................. 14

*Microsoft Corp. v. Motorola, Inc.*,
　696 F.3d 872 (9th Cir. 2012) ..................................................................................... 8

*Microsoft Corp. v. Motorola, Inc.*,
　854 F. Supp. 2d 993 (W.D. Wash. 2012) .................................................................. 9

*Pac. Recovery Sols. v. Cigna Behav. Health, Inc.*,
　2021 WL 1176677 (N.D. Cal. Mar. 29, 2021) ........................................................ 14

*Tom Trading, Inc. v. Michael Caruso & Co., Inc.*,
　198 F.3d 255 (9th Cir. 1999) (unpublished) ........................................................... 10

**Statutes**

Cal. Com. Code § 1303(a) ........................................................................................ 10

Cal. Civ. Code § 47(b) .............................................................................................. 15

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

## I. INTRODUCTION

Entropic is, and always has been, committed to licensing its patents that are essential to the MoCA standard on terms that are fair, reasonable, and non-discriminatory (RAND). Entropic made this commitment to DISH before it filed suit, D.E. 316-8 at 3, and it repeated this commitment in its Motion, D.E. Mot. at 8. The only issue is what the RAND terms would be, and whether DISH will take a RAND license. But DISH seeks to avoid this question—how much it should pay—by falsely claiming Entropic will not provide a RAND license, and from that springboard DISH launches into far-fetched tales of contractual misconduct, conspiracy, and fraud. These allegations are not plausible, legally cognizable claims and should be dismissed.

DISH alleges breach of a contract to which it is not a party. It alleges a conspiracy without alleging how it was formed or any acts that Entropic supposedly took to further it. It alleges fraud and an antitrust violation based on a theory—a "whitewashing" of Entropic's RAND obligation—that is both legally impossible and contrary to the plain terms of the relevant agreements on which DISH relies. DISH's counterclaims against Entropic (Counts 3, 6, and 8–11) are not properly pled and must be dismissed. The issue is not a RAND license—Entropic is committed to providing one. The issue is that legally flawed counterclaims do not belong in this litigation.

While DISH tosses out implausible accusations about Entropic's RAND obligations and the alleged efforts Entropic would go to avoid them, there is one allegation that DISH assiduously avoids: that DISH is committed to *accepting* a RAND license to Entropic's patent portfolio for MoCA-essential patents on RAND terms. Indeed, DISH even caveats its prayer for relief as seeking a RAND license only to the extent it is "necessary." Countercl. ¶ 90. DISH's lack of commitment to take a RAND license underscores the lack of any actual harm arising from

Entropic's suit. That litigation would always have occurred, precisely because DISH intends for all the patent infringement litigation to play out before it decides what is "necessary," and thus before it decides to take a RAND license. DISH is not interested in a RAND license, but rather in the Court's advisory opinion as to what a RAND license would be, as a backup plan should things not develop in DISH's favor in the patent litigations. Thus, litigations between the parties would have ensued regardless of what DISH alleges Entropic did (or did not) do before the case was filed. DISH's counterclaims fail for this reason, too.

## II.   ARGUMENT

### A.   DISH's breach of contract claim is not a plausible legal claim because DISH has failed to plead a contract or breach.

DISH's breach of contract fails because the DISH Defendants (i.e., the DISH entities exclusive of DISH Technologies) are not parties to the MoCA IPR Policy. And the one entity who is alleged to be a former member, DISH Technologies, fails to plead a breach.

#### 1.   The DISH Defendants have no rights under the IPR Policy.

The DISH Defendants do not dispute that they are not parties to the MoCA IPR Policy. And both of their theories as to how they could nonetheless have a right to enforce it are inadequate as a matter of law and, thus, subject to dismissal.

*First*, the DISH Defendants' claim that "the IPR policy makes any party wishing to implement a MoCA standard a third-party beneficiary" is both false and irrelevant. Opp. at 16. Far from suggesting that third parties were intended to benefit from its RAND licensing terms, the MoCA IPR Policy repeatedly states the opposite. Its RAND obligation is expressly described as a "***Limited*** Obligation to License Essential Patent Claims" and conveys the benefit of a license offer on RAND terms, upon request, only to a "then-current Alliance Party." DE 364-1 ("IPR Policy") § 5.1.1 (emphasis added).) The agreement does not extend this

benefit to Affiliates of an Alliance Party, even though their own intellectual property is expressly encumbered under the Agreement. *Id.* § 2 (requiring license to include patents of a member's Affiliates. The Agreement further conditions an Alliance Party's right to demand a FRAND license on that Party's own behavior—if they do not "in fact and practice" offer RAND licenses after a request, they may not demand them from others. *Id.* § 5.1.3. And Section 5.3—entitled "No Other Licenses"—specifically states that even Alliance Parties have no license rights "*other than the agreements to grant licenses expressly set forth herein.*" *Id*.

These provisions tell a consistent story. Far from providing the benefit of demanding a RAND license to anyone merely "wishing to implement a MoCA standard," Opp. at 16, the IPR Policy repeatedly placed limits on its scope. This makes clear that the right to request a RAND license is a benefit of being an Alliance Party that has complied with its own licensing obligations. This is also the only reading that makes sense. Under DISH's rewriting of the contract, there would be no incentive to be an Alliance Party and every incentive to free-ride.

DISH's suggestion that there is a general rule that all "[c]ompanies seeking to license [standards-essential patents] under [FRAND] terms become third-party beneficiaries" to the particular IPR Policies of the applicable Standard Setting Organization (SSO) is inapposite. Opp. at 17. The question is not what *other* IPR Policies of other SSO's require. The question is what the *MoCA* IPR Policy requires. MoCA's IPR Policy applies solely to Alliance Parties, in contrast to those of other SSO's, which extend broadly to anyone who desires a license:

- ETSI: No restriction on requesting party. *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 481 (5th Cir. 2021);
- ITU: no restriction on requesting party and patents "must be accessible to everybody without undue constraints." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 876 (9th Cir. 2012); and

8
**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

- IEEE: RAND license commitment is made to "an unrestricted number of applicants." *In re Innovatio IP Ventures Patent Litig.*, 2013 WL 5593609, at *3–4 (N.D. Ill. Oct. 3, 2013); *Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 999 (W.D. Wash. 2012); *Apple, Inc. v. Motorola Mobility, Inc.*, 2011 WL 7324582, at *10 (W.D. Wis. June 7, 2011).

The decisions in these cases allowed third parties to claim the benefit of a RAND licensing obligation because the language of the relevant agreements expressly gave such a benefit. They did not—as DISH suggests—pronounce a general rule that overcomes the plain language of the actual contract in play, the *MoCA* IPR Policy.

Ignoring the actual provisions, DISH points to the "Background" section of the IPR Policy, which mentions an intent to "maximize the likelihood of widespread adoption of [MoCA] specifications," and "comply with all applicable law, including all federal and state antitrust laws." Opp. at 16. DISH argues that "widespread adoption" means the IPR Policy was intended to grant rights to anyone wishing to practice the standard, despite the "limited" nature of the rights granted to Alliance Parties. *Id*. Not so. The Agreement provides that MoCA Specifications and Deliverables—the technical documents necessary to "adopt" the standard"—may (absent a specific vote otherwise) only be disclosed to Alliance Parties and Affiliates.[1] IPR Policy at 2. The agreement thus makes clear that its drafters chose to demand a price for anyone who wants to participate in MoCA's "widespread adoption"—they must become an Alliance Member.

In any case, even if the DISH Defendants were third-party beneficiaries, their claim would fail. Third-party beneficiaries can sue only to enforce obligations that

---

[1] A separate confidentiality provision provides that these protections based on confidentiality designations are limited to five years.

exist under the relevant contract. In other words, even if a third-party beneficiary can enforce a contract, it gets to enforce the contract as-written—not write a new one. *See Tom Trading, Inc. v. Michael Caruso & Co., Inc.*, 198 F.3d 255, 255 (9th Cir. 1999) (unpublished) ("A third-party beneficiary has the right to enforce the contract's provisions only as written.") (citations omitted). Here, the only licensing obligation created by the IPR Policy is "to, upon written request of any other then-current Alliance Party . . . offer and attempt to negotiate a license **to the requesting Alliance Party**" on certain terms. § 5.1.1. The DISH Defendants have not pled that Entropic breached this agreement as to DISH Technologies because they have not alleged that DISH Technologies provided the requisite written notice, as set forth *infra* at Section II.A.2. As to the non-DISH Technologies entities, even if they somehow could enforce the IPR Policy as non-parties, they **still** are not entitled to receive a RAND license offer because they were never an "Alliance Party." Countercl. ¶ 82. There therefore is no breach as to these entities—Entropic has never had an obligation to make them a license offer, under any reading of the IPR Policy.

*Finally*, DISH's claim to be a "de facto member" of the IPR Agreement also fails. Opp. at 16. DISH makes no attempt to explain why a "de facto member" or a party "treated as [a] member[]" would have any rights under the IPR Policy, nor does DISH identify any provision granting such rights. *Id*. DISH does not contest that the DISH Defendants other than DISH Technologies were *not* in fact members of MoCA, meaning they never undertook the obligations required to receive the benefits of an Alliance Party. DISH's allegations about a course of performance are irrelevant because performance is only relevant if there is already an "agreement of the parties" as to the transaction. Cal. Com. Code § 1303(a) (emphasis added). The DISH Defendants were not a party to the IPR Policy, and thus no alleged course of performance can *create* an agreement where none existed.

## 2. DISH has failed to allege breach as to DISH Technologies.

DISH attempts to create grounds to enforce the IPR Policy by adding a new party, DISH Technologies, that Entropic did not sue for infringement. But the only allegations DISH makes are two communications that fail to show breach.

**First Communication:** DISH points to an alleged *oral* request from employees of a different DISH entity that was made for "a licensing proposal . . . on behalf of DISH Network L.L.C. and all DISH entities." Opp. at 18. This alleged request is insufficient for two reasons. *First*, it was oral, and the IPR Policy expressly requires such a request in writing. IPR Policy § 5.1. While DISH points to Section 7.1, that provision permits former Alliance Members only to make requests "under Section 5.1," which in turn requires such requests must be "written." *Id.* §§ 5.1, 7.1. DISH argues that a written request is not required for a *former* member, only for current members. Opp. at 19. This argument is not only contrary to the plain terms of the Policy, it is irrational. It makes no sense to read the IPR Policy as granting **more favorable** rights to a *former* member of the Alliance than current ones in good standing, especially when Section 7.1 restricts the scope of license that a former member can request. § 7.1

*Second*, the alleged oral request was not made by an Alliance Party—but employees of a different entity. Section 5.1.1 expressly limits who can request a license to "Alliance Parties," *not* including their affiliates. An Alliance Party's Affiliates are excluded from the right to demand the license. As the IPR Policy makes explicit, membership has its privileges. The plain language of the IPR Policy renders the alleged oral request irrelevant and unable to support DISH's claim.

**Second Communication:** In Opposition, DISH vaguely asserts it "followed up, in writing, with the same request, again on behalf of all DISH entities." Opp. at 18 (citing Countercl. ¶¶ 54–55). But Paragraphs 54 and 55 do not allege or discuss any license request on behalf of other entities. Regardless, the IPR Policy requires

11
**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

any request for a license come from an Alliance Member. DISH admits no request came from DISH Technologies, the Alliance Party. Nor does it allege that DISH Technologies was even a "DISH entity" at the relevant time. For these reasons, the breach of contract counterclaim must also be dismissed as to DISH Technologies for failure to plead any breach.

Even if the communications alleged in Paragraphs 54 and 55 were assumed to be from DISH Technologies—which DISH has not alleged—those communications would still fail to state a claim. Those communications occurred *after* Entropic filed suit against the DISH Defendants. DISH's alleged harm is from the filing of the "present suit," Opp. at 18, which the IPR Policy expressly permitted Entropic to file, IPR Policy § 6 (IPR Policy does not provide "immunity from suit"). Even if Entropic had responded to DISH's alleged post-suit request with a RAND offer (in DISH's view), the suit could and would have continued. And, because DISH never alleges that it would have taken a RAND license to Entropic's MoCA-essential patents had one been offered, it cannot claim harm from an alleged failure to offer such a license.

### B. DISH's conspiracy and antitrust claims must be dismissed as facially implausible, deficient, and contrary to law.

DISH's counterclaims of conspiracy and antitrust all turn on a facially implausible theory: that Entropic and MaxLinear schemed to "wash" the patents of the RAND commitment. Opp. at 13. This theory is contrary to the plain terms of the IPR Policy, the plain terms of the Patent Purchase Agreement, and the law of patent assignment. It is thus implausible on its face and requires dismissal of the claims that rely on it. Further, DISH fails to plead the elements of a conspiracy, and its tort and antitrust claims should also be dismissed under the *Noerr-Pennington* doctrine.

*First*, DISH cannot plead a plausible claim of conspiracy or antitrust violation because those claims contradict the plain language of the agreements that

12
**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

DISH relies on. The operative version of the IPR Policy explicitly states that "the licensing obligations under this IPR Policy are intended to be binding (e.g., as encumbrances) on all successors-in-interest regardless of whether such provisions are included." § 5.1.2. DISH never addresses this language in its Opposition, and it is fatal to its claims. DISH's "washing" theory is contrary to the express terms of the IPR Policy and thus implausible as a matter of law.

So, too, does the Patent Purchase Agreement render DISH's allegations implausible. Section 5.7 of that Agreement expressly acknowledges MaxLinear's "general commitment to license on Reasonable and Nondiscriminatory (RAND) terms" to the MoCA and DOCSIS standards bodies (referenced in Exhibit I). PPA § 5.7. DISH complains that this section does not use the magic word "encumbrance." Opp. at 23. DISH elevates form over substance, contrary to the plain terms of both the PPA and the IPR Policy. Section 5.1.2 of the IPR Policy does not require any magic words to convey MaxLinear's RAND commitment and instead allowed it to "choose the manner" of its compliance. MaxLinear chose to convey its obligation as a "commitment," and it expressly informed Entropic of that commitment. That suffices to render DISH's theory facially implausible.

And, were the express terms of the IPR Policy and PPA not enough, the law is unequivocal that a RAND commitment runs with the patents. A RAND obligation is the type of encumbrance that must "run with the patent" no matter what language is used in the transfer. *See Datatreasury Corp. v. Wells Fargo & Co.*, 552 F.3d 1368, 1372 (Fed. Cir. 2008). For this reason, too, DISH's allegations that MaxLinear and Entropic conspired to do what the law says is impossible are facially implausible. DISH claims that the law "is not settled" because a "bona-fide purchaser" might not be subject to such encumbrances. Opp. at 24. DISH's argument is wrong and self-contradictory. It is wrong because DISH cites no case where a RAND obligation was *not* binding on a purchaser—and itself asserts that it

13
**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

*was* here. And it is self-contradictory: DISH cannot argue that Entropic was both a "bona-fide purchaser" who bought patents without knowledge of the RAND encumbrance and a co-conspirator who plotted to circumvent it. In sum, because the RAND obligation ***did*** run with the patents, as even alleged by DISH, there can be no claims here. Under California law, "there is no civil action for conspiracy to commit a recognized tort unless the wrongful act itself is committed and damage results therefrom." *Mehrtash v. Mehrtash*, 93 Cal. App. 4th 75, 82, 112 Cal. Rptr. 2d 802, 807 (2001) (quotations and citations omitted). Here, DISH's alleged wrongful act is a fraudulent scheme to disregard the plain the terms of the IPR Policy. There can be no fraud claim as a matter of law based on "an alleged promise to interpret the [PPA and IPR Policy] in a way that contradicts the plain language of [those agreements]," *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 281 (9th Cir. 1992). As to the antitrust claims, they similarly fail because an antitrust claim cannot stand where the alleged violation cannot be committed as a matter of law, *see, e.g.*, *Pac. Recovery Sols. v. Cigna Behav. Health, Inc.*, 2021 WL 1176677, at *13 (N.D. Cal. Mar. 29, 2021) (dismissing antitrust claim based on price fixing allegations where claim failed "because as a matter of law, insurance benefits for [relevant parties] are not products that can be price-fixed").

  *Second*, DISH's failure to plead a "washing" theory also demonstrates a lack of antitrust injury. DISH's alleged injury comes from the alleged "attempt to 'wash' the Asserted Patents of any obligation to license on RAND terms." Opp. at 28; *see also id.* ("the antitrust violation and harm arises from the attempt to remove a RAND promise from essential patents"). But only a ***successful*** "washing" that eliminated the RAND obligation could conceivably injure competition. Because all Parties agree that Entropic did ***not*** "wash" the patents of "any obligation to license on RAND terms," there is no harm. Even eliminating the obligation would not be an injury unless DISH actually paid too much for a license. But DISH has paid

14
**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

nothing—not RAND, more than RAND, or otherwise. There is complete absence of plausible injury.

*Third*, DISH fails to allege when and how Entropic could have formed a conspiracy with MaxLinear. Opp. at 22. DISH also fails to offer even a single factual allegation of conduct *by Entropic* supposedly in furtherance of this conspiracy. Instead, as addressed in the Motion, the only factual allegations regarding specific conduct relate to other parties, many years before Entropic existed. Countercl. ¶¶ 112–123, 125, 131) (alleging knowledge and representations of MaxLinear and Entropic Communications, Inc.). The most DISH can offer is the generic speculation that a company can "engage in fraud only days into its existence." Opp. at 22. Even if taken as true, DISH has not alleged that Entropic in fact engaged in such fraud in the days after its formation in order to support "the formation and operation of a conspiracy" or Entropic's "wrongful conduct in furtherance of the conspiracy." DISH failed to meet Rule 9's requirements of particularity, and its conspiracy claims should be dismissed for this reason, too.

*Finally*, DISH's antitrust and tort claims fail under the *Noerr-Pennington* doctrine. DISH asserts that its antitrust counterclaims arise from the "assignment of the asserted patents," not "the prosecution of a lawsuit," and thus are exempt from *Noerr-Pennington*. Opp. at 32. But DISH's pleading says otherwise. The harms that DISH pled for Counts 6 and 8–11 are (1) attorneys' fees for this litigation, and (2) reputational harm from this litigation. Countercl. ¶¶ 130–131, 147, 155, 163. These harms stem from Entropic filing suit, regardless of what DISH contends about the RAND obligation. As DISH's own caselaw holds, a patentee's "prosecution of its infringement claims constitutes[s] protected petitioning activities under the *Noerr–Pennington* doctrine and, as to state claims, are absolutely privileged under California Civil Code section 47(b)." *Hynix Semiconductor Inc. v.*

15
**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

*Rambus, Inc.*, 2006 WL 1883353, at *3 (N.D. Cal. July 7, 2006), cited at Opp. 32–33.

      DISH tries to circumvent *Noerr-Pennington* by characterizing some of its allegations as relating to "standards body misconduct." Opp. at 31. Not so. That misconduct refers to the standards-setting process, such as when a patentee conceals "information about its patent applications" when the standards are adopted. *See Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084, 1098 (N.D. Cal. 2007). But this is not a case where a patentee is alleged to have withheld its patent applications during the process of ratifying a standard. Instead, DISH pleads that the misconduct is Entropic "circumventing the IPR Policy" and claims injury from Entropic suing to enforce the patents it acquired, in violation of that commitment. Opp. at 31. Courts have previously faced this same allegation—i.e., a patent purchaser who "asserted infringement against [Defendants] before offering them a RAND license [and] offered licenses on terms less favorable than RAND terms"—and held that *Noerr-Pennington* barred tort and antitrust liability. *In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 915, 922 (N.D. Ill. 2013). Counts 6 and 8–11 must be dismissed for the same reason. Here, it is even worse because DISH seemingly implies in its Opposition that Entropic would not have filed suit without its apparent belief that the "washing" scheme had been successful. But DISH made no such allegation. There are no allegations that Entropic would not have filed suit **but for** the alleged antitrust violation of the "washing" scheme. And, moreover, Entropic's arguments as to the IPR Policy not applying to the DISH Defendants, and any "circumvention" not actually occurring, are equally fatal, *see supra* at []. Counts 6 and 8–11 therefore must be dismissed.

16
**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**

## III. CONCLUSION

For the foregoing reasons, Entropic respectfully requests that the Court dismiss Counts 3, 6, and 8–11 of DISH's Counterclaims against Entropic with prejudice.

Dated: March 15, 2024

**K&L GATES LLP**

By: */s/ Rachel Berman*
Christina Goodrich (SBN 261722)
Cassidy T. Young (SBN 342891)
Rachel Berman (SBN 352237)
K&L Gates, LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001
christina.goodrich@klgates.com
cassidy.young@klgates.com
rachel.berman@klgates.com

James A. Shimota (*pro hac vice*)
70 W. Madison Street, Ste 3300
Chicago, Illinois 60602
Telephone: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com

Peter E. Soskin (SBN 280347)
4 Embarcadero Center, Ste 1200
San Francisco, CA 94111
Telephone: (415) 882-8220
peter.soskin@klgates.com

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Entropic Communications, LCC, certifies that this brief contains 3,655 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 15, 2024

**K&L GATES LLP**

By: */s/ Rachel Berman*
Christina Goodrich (SBN 261722)
Cassidy T. Young (SBN 342891)
Rachel Berman (SBN 352237)
K&L Gates, LLP
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 552-5000
Fax: (310) 552-5001
christina.goodrich@klgates.com
cassidy.young@klgates.com
rachel.berman@klgates.com

James A. Shimota (*pro hac vice)*
70 W. Madison Street, Ste 3300
Chicago, Illinois 60602
Telephone: (312) 807-4299
Fax: (312) 827-8000
jim.shimota@klgates.com

Peter E. Soskin (SBN 280347)
4 Embarcadero Center, Ste 1200
San Francisco, CA 94111
Telephone: (415) 882-8220
peter.soskin@klgates.com

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

**ENTROPIC'S REPLY IN SUPPORT OF MOTION TO DISMISS DISH'S COUNTERCLAIMS**