Christopher S. Marchese (SBN 170239)
marchese@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
FISH & RICHARDSON P.C.
633 West Fifth Street, 26th Floor
Los Angeles, CA 90071
Tel: (213) 533-4240 / Fax: (858) 678-5099

Adam R. Shartzer *(admitted pro hac vice)*
shartzer@fr.com
Ruffin B. Cordell *(admitted pro hac vice)*
cordell@fr.com
Richard A. Sterba *(admitted pro hac vice)*
sterba@fr.com
Ralph A. Phillips *(admitted pro hac vice))*
rphillips@fr.com
Michael J. Ballanco *(admitted pro hac vice)*
ballanco@fr.com
Taylor C. Burgener (SBN 348769)
burgener@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave., SW, Suite 1000
Washington, DC 20024
Tel: (202) 783-5070 / Fax: (202) 783-2331

*Additional Counsel Listed on Signature Page*

Attorneys for Defendants
DISH Network Corporation, et al.

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION; DISH NETWORK L.L.C.; DISH NETWORK SERVICE, L.L.C.; AND DISH NETWORK CALIFORNIA SERVICE CORPORATION,<br><br>Defendants. | Case No. 2:23-cv-1043-JWH-KES<br><br>**REPLY IN SUPPORT OF DEFENDANT DISH NETWORK CORPORATION, ET AL.'S MOTION FOR EXTENSION OF CLAIM CONSTRUCTION SCHEDULE**<br><br>Hearing Date: April 5, 2024<br>Hearing Time: 9:00 a.m.<br>Courtroom: 9 D<br>Judge: Hon. John W. Holcomb |

|    |                                                                                                                                                                              |
|----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 1  | DISH NETWORK CORPORATION; DISH NETWORK L.L.C.; DISH NETWORK SERVICE L.L.C.; DISH NETWORK CALIFORNIA SERVICE CORPORATION; AND DISH TECHNOLOGIES L.L.C.,                        |
| 2  |                                                                                                                                                                              |
| 3  |                                                                                                                                                                              |
| 4  |                                                                                                                                                                              |
| 5  | Counter-Claimants,                                                                                                                                                           |
| 6  | v.                                                                                                                                                                           |
| 7  | ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR, INC.; AND MAXLINEAR COMMUNICATIONS LLC,                                                                                             |
| 8  |                                                                                                                                                                              |
| 9  |                                                                                                                                                                              |
| 10 | Counter-Defendants.                                                                                                                                                          |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................6

II. ARGUMENT .......................................................................................................7

    A. Entropic's Argument that Rule 6(b) Does Not Apply Is Incorrect and Irrelevant. ................................................................7

    B. DISH's Diligence Provides Good Cause for Extension. .........8

        1. DISH Diligently and Timely Prepared All Seven of Its IPR Petitions. ....................................................................8

        2. DISH Diligently Pursued and Filed This Motion. .........9

    C. The IPRs Will Simplify Issues in This Case. ...........................11

    D. A Limited Continuance of the Claim Construction Schedule Will Not Prejudice Entropic. ..................................12

III. CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahanchian v. Xenon Pictures, Inc.*,
    624 F.3d 1253 (9th Cir. 2010) ...................................................................... 11

*Cruz v. City of Anaheim*,
    No. 10-03997-MMM(JEMx), 2011 WL 13214312 (C.D. Cal. Dec. 19, 2011) ......................................................................................................... 7

*Entropic Communications, LLC v. Charter Communications, Inc.*,
    No. 2:23-cv-00050-JRG (E.D. Tex. 2023) ....................................................... 8

*Godinez v. L. Offs. Of Clark Garen*,
    No. 16-00828-CJC(DFMx), 2016 WL 4527512 (C.D. Cal. Aug. 30, 2016) ............................................................................................................. 7

*Limestone v. Micron Tech.*,
    No. 15-0278-DOC(RNBx), 2016 WL 3598109 (C.D. Cal. Jan. 12, 2016) ........................................................................................................... 11

*One-E-Way, Inc. v. Apple Inc.*,
    No. 06339-JAK(GJS), 2021 WL 4932518 (C.D. Cal. Mar. 16, 2021) ............... 8

*Realtime Data, LLC v. Hewlett Packard Enter. Co.*,
    No. 6:16-CV-00086 RWS(JDL), 2017 WL 3712916 (E.D. Tex. Feb. 3, 2017) ..................................................................................................... 13

*RideShare Displays, Inc. v. Lyft, Inc.*,
    No. 20-1629-RGA(JLH), 2021 WL 7286931 (D. Del. Dec. 17, 2021) ..................................................................................................... 11, 13

*Saavedra v. Everi Payments, Inc.*,
    No. 21-6999-PA(PDx), 2022 WL 3575321 (C.D. Cal. Feb. 24, 2022) ............................................................................................................. 7

*Wonderland Nursery Goods Co. v. Baby Trend, Inc.*,
    No. 14-01153-VAP, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015) ............. 8, 9

**Statutes**

35 U.S.C. § 315(b) ................................................................................................. 8

35 U.S.C. § 315(e) ............................................................................................... 13

**Other Authorities**

Fed. R. Civ. P. 6(b) ................................................................................................ 7

Fed. R. Civ. P. 16(b) .............................................................................................. 7

## I. INTRODUCTION

Entropic and MaxLinear both filed oppositions to DISH's motion for an extension of the claim construction schedule ("Motion"). Neither opposition has merit. The Motion should be granted.

Entropic's main argument is that DISH was not diligent in filing the IPRs or this Motion. Not so. This is a large case by any standards: after starting with 12 patents, it now involves 10. As to the 10 remaining patents, Entropic did not disclose the full scope of its asserted claims until the *end of September 2023*. Within *five* months after that disclosure, DISH had prepared and filed *seven* IPR petitions, all before the statutory deadline. Indeed, DISH filed several of those petitions weeks before the deadline and filed the remainder on a rolling basis thereafter. The inquiry into DISH's IPR diligence should end there.

DISH was also diligent in filing this Motion. Despite DISH's repeated requests for an initial meet and confer with Entropic, Entropic did not agree to meet and confer until the following week. During the first meet and confer, Entropic complained that DISH wanted to stay the entire case, and so DISH decided to seek only an extension of the claim construction schedule. DISH conveyed this information to Entropic and MaxLinear on subsequent meet-and-confers, and then filed the Motion as early as possible under the Local Rules. Thus, DISH was diligent in filing this Motion.

Entropic also argues it would be inefficient and prejudicial to extend claim construction, but DISH's Motion will actually simplify the case, potentially moot issues for claim construction, and preserve resources for all parties (and the Court). As to prejudice, Entropic's arguments are either irrelevant to the extension DISH requests and/or mooted for the reasons discussed below. MaxLinear's only basis for opposition is that it would be prejudiced unless DISH's counterclaims were also stayed during the extension. But DISH resolves that argument here: it agrees to stay its counterclaims if the Court grants this Motion, as described in more detail below. There is simply no good reason to move forward with the current claim construction

schedule given the significant overlap with DISH's IPR petition schedules. Accordingly, DISH requests that the Court extend the claim construction schedule until after the PTAB issues institution decisions on the IPR petitions.

## II. ARGUMENT

### A. Entropic's Argument that Rule 6(b) Does Not Apply Is Incorrect and Irrelevant.

Before making its diligence arguments, Entropic takes issue with DISH's legal theory. It argues that Rule 6(b) does not apply here, but that's incorrect.

DISH brought its Motion "pursuant to Rules 6(b) and 16(b) of the Federal Rules of Civil Procedure for good cause and not for purpose of delay." (D.I. 401-1 at 11:7-8.) Yet Entropic posits that "this District does not apply Rule 6(b) to requests to modify a scheduling order . . . ." (D.I. 408 at 10:22-23; *see also id.* at 10:20 ("Rule 6(b) is inapplicable").) Contrary to Entropic's belief, many courts in this District have applied Rule 6(b) to grant extensions of time. *See, e.g.*, *Saavedra v. Everi Payments, Inc.*, No. 21-6999-PA(PDx), 2022 WL 3575321, at *2 (C.D. Cal. Feb. 24, 2022) (granting motion for extension pursuant to Rule 6(b)); *Godinez v. L. Offs. Of Clark Garen*, No. 16-00828-CJC(DFMx), 2016 WL 4527512, at *1 (C.D. Cal. Aug. 30, 2016) (same). In fact, Entropic's own cited case acknowledges that "some courts have applied Rule 6(b)'s requirements to requests for modification of a scheduling order . . . ." *Cruz v. City of Anaheim*, No. 10-03997-MMM(JEMx), 2011 WL 13214312, at *2 (C.D. Cal. Dec. 19, 2011).

In any event, both parties agree that a good cause standard applies (whether under Rule 6(b) or 16(b)), so Entropic's argument is academic and does not affect the merits. "Courts generally will find good cause and grant the extension unless the moving party has been negligent, lacked diligence, acted in bad faith, or abused prior extensions." *Godinez*, 2016 WL 4527512, at *1 (internal quotations omitted). None of these exceptions are present here to prevent DISH's requested extension.

### B. DISH's Diligence Provides Good Cause for Extension.

Entropic argues that DISH lacked diligence based on the timing of its IPR petitions and this Motion. As set forth in the Motion and further discussed below, DISH was diligent through all of its filings.

#### 1. DISH Diligently and Timely Prepared All Seven of Its IPR Petitions.

Even when considering the more scrutinized request of a stay pending *inter partes* review, the court in *One-E-Way, Inc. v. Apple Inc.*, No. 06339-JAK(GJS), 2021 WL 4932518, at *3 (C.D. Cal. Mar. 16, 2021) found no evidence of delay where a "Defendant's IPR petitions were timely filed prior to the 12-month deadline under 35 U.S.C. § 315(b)." Additionally, in *Wonderland Nursery Goods Co. v. Baby Trend, Inc.*, No. 14-01153-VAP, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015), the court found no delay in filing IPR petitions where the defendants "did not know which claims were being asserted against them until Plaintiff served its preliminary infringement contentions . . . ." When Entropic initially filed its complaint in February 2023, it asserted 12 patents against DISH—far more than could ever be raised at trial. Then, despite repeated requests from DISH, Entropic declined to provide the full scope of its asserted claims until serving its infringement contentions in September 2023—over seven months later.[1] In total, Entropic asserted sixty-four (64) claims against DISH—again far more than could be raised at trial.

Attempting to deflect from its delayed identification of asserted claims, Entropic faults DISH for choosing to file seven IPR petitions. (D.I. 408 at 12:17

---

[1] Entropic had also sued Charter Communications in the Eastern District of Texas on these same 12 MoCA patents. *Entropic Communications, LLC v. Charter Communications, Inc.*, No. 2:23-cv-00050-JRG (E.D. Tex. 2023). That case was not transferred to this Court and was tracking ahead of this case. (The Charter case settled in December 2023.) Despite the fact that the Charter case was ahead of this schedule and involved the same 12 patents asserted against the same MoCA standard—which indicates that Entropic knew the full scope of asserted claims well before September 2023—Entropic nevertheless would not agree to identify its asserted claims before its infringement contentions were due.

("The number of petitions was DISH's own choice").)  Entropic then dismisses DISH's filing of seven IPR petitions under a condensed timeline, suggesting that DISH "chose to wait" until the deadline and "should have filed its petitions long ago[.]"  (*Id.* at 12:21-25.)  To be exact, just nineteen (19) weeks (across both Thanksgiving and Christmas) stood between Entropic's disclosure of asserted claims on September 29, 2023 and DISH's filing of its seventh and final IPR petition on February 9, 2024.  On average, Entropic's late disclosure left DISH with less than three weeks per petition.  DISH's petitions ranged from 84-114 pages and were each accompanied by expert declarations that ranged from an additional 83-188 pages.  Considering the substantial work required to prepare and file each petition and expert declaration, and the large number of asserted claims at issue, DISH's accomplishment in filing all seven petitions under this time constraint was certainly diligent.

While preparing its petitions, DISH did not choose to wait—it simply did not have that luxury.  Entropic's decision to withhold its asserted claims for seven months created a compressed schedule to finalize and file the petitions.  And as stated above, DISH moved as quickly as possible on each one, filing its petitions on a rolling basis beginning with three that were filed in January and ending with the last two on February 9.  In fact, DISH was able to file all seven petitions at least a week before the statutory deadline (which was February 16, 2024 based on the complaint's service a year prior).  Entropic presents no evidence or even explanation as to how it expects DISH to have filed its petitions any earlier—much less "long ago." (D.I. 408 at 12:21-25.)  Given the circumstances detailed above, it cannot be denied that DISH's IPR efforts were, at the very minimum, diligent.

### 2. DISH Diligently Pursued and Filed This Motion.

As Entropic itself acknowledges (D.I. 408 at 8:17-18), DISH initially reached out to Entropic on February 15, 2024 to request a meet and confer about DISH's contemplated motion to stay the case—less than a week after its last IPR petition filing.  Train Decl. ¶ 2.  DISH explained that it planned to file its motion the following

1  week, and thus requested Entropic's availability by that Friday (given that Local Rule
2  7-3 requires the meet and confer to occur at least seven days prior to filing a motion).
3  *Id.* ¶ 3. After a follow-up email and voicemail from DISH, Entropic finally responded
4  that its team (consisting of many attorneys and two law firms) was unavailable to
5  meet and confer until the following week. *Id.* Further, Entropic suggested that it
6  could not "fully meet and confer" unless DISH obtained the positions of the
7  defendants in all other consolidated cases on the motion and on IPR estoppel. *Id.* ¶ 4.

8  On the parties' first meet and confer the following week, Entropic insisted that
9  a motion to stay the entire case before institution was not appropriate. *Id.* It also
10 persisted in asking that DISH obtain and convey all defendants' positions on the
11 motion and IPR estoppel. *Id.* DISH explained that it could not speak on behalf of
12 those parties but had already reached out on Entropic's behalf to inquire about their
13 positions. *Id.* DISH further explained that Entropic was free to speak directly with
14 the other defendants. *Id.* Entropic did not do so, instead requiring DISH to be the go-
15 between and coordinate with all parties.

16 In response to Entropic's concerns about a stay, DISH narrowed the relief it is
17 seeking to a limited extension of only the claim construction schedule. Although the
18 parties had already met and conferred once, DISH's counsel reached out again to
19 discuss its narrowed motion and update Entropic on the other defendants' positions
20 that DISH had gathered. *Id.* ¶ 7. It took three follow-up emails from DISH to get a
21 response from Entropic. *Id.* ¶¶ 7-9. DISH explained that, due to impending claim
22 construction deadlines, it could not continue delaying the motion while awaiting
23 Entropic's availability. *Id.* ¶ 9. When Entropic finally agreed to join a call, it
24 indicated it would still oppose even DISH's narrowed motion. *Id.* The accompanying
25 declaration of Tyler R. Train further details DISH's efforts in pursuing its Motion
26 since filing its last IPR petition on February 9, 2024, describing how DISH diligently
27 sought to meet and confer with both Entropic and MaxLinear. Despite this lengthy
28 meet and confer process, DISH's diligence still allowed it to file its Motion with

enough time to be heard by the time the claim construction schedule gets underway. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) ("requests for extensions of time made before the applicable deadline has passed should 'normally . . . be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party.'"). Based on these efforts, it is clear that DISH diligently pursued and filed its Motion as soon as reasonably possible.

DISH's diligent efforts in filing the IPR petitions and this Motion shows good cause for granting the requested extension.

### C. The IPRs Will Simplify Issues in This Case.

Although Entropic argues that diligence should be the primary focus (which DISH clearly satisfies), Entropic makes two additional arguments in its opposition—the first of which relates to simplification of the case. (*See* D.I. 408 at 13-14.) Entropic is wrong to suggest that any simplification is speculative. Even in the unlikely event that all seven of DISH's IPR petitions are denied, Entropic's preliminary responses and the PTAB's institution decisions will still create new prosecution history that will inform the claim construction process. *See Limestone v. Micron Tech.*, No. 15-0278-DOC(RNBx), 2016 WL 3598109, at *3 (C.D. Cal. Jan. 12, 2016) ("Waiting for the outcome of the [PTAB proceeding] could eliminate the need for trial if the claims are cancelled, or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims.") (internal quotations omitted). Moving forward with the current claim construction schedule will only invite supplemental *Markman* briefing and hearings to update the parties' arguments with new information from the IPRs. Moreover, the risk of additional briefing increases significantly if the PTAB decides to institute DISH's petitions, with the potential of mooting claim terms, claims, and even entire patents. A brief continuance will provide the parties and Court with a full record to consider from the beginning of claim construction. *See RideShare Displays, Inc. v. Lyft, Inc.*, No. 20-1629-RGA(JLH), 2021 WL 7286931, at *3 (D. Del. Dec. 17, 2021)

(denying a motion to stay pre-institution but deciding to "postpone the currently scheduled *Markman* hearing to go after the institution decisions" based on "the potential for the parties and the Court to realize efficiencies"). A continuance is the efficient way to proceed, as it will preserve resources for all parties, including Entropic, and the Court. With no other dates having been set, this continuance will not interfere with the case as a whole and only bring more clarity to the claim construction process. The simplification and clarity that the IPRs will provide during claim construction (and after) provides additional good cause for granting DISH's Motion.

### D. A Limited Continuance of the Claim Construction Schedule Will Not Prejudice Entropic.

Entropic next turns to prejudice, complaining of four types of purported harm it will endure from DISH's brief requested continuance—which as of the time DISH's Motion is set to be heard, will only be around four months. As discussed below, none of Entropic's concerns will result in any actual harm.

<u>First</u>, Entropic complains that DISH's Motion would de-consolidate this action. But DISH's request was for "an extension of the claim construction schedule (as set forth in D.I. 97)"—DISH did not carve out dates that only applied to itself. (*See* D.I. 401-1 at 6:2-5; *see also* D.I. 401-11 at 3.) DISH also confirmed in its Motion that no defendant across the consolidated cases opposed DISH's Motion. (D.I. 401-1 at 7:16-19.) For the avoidance of doubt, DISH's request is that the entire claim construction schedule (as to all parties) be continued pending the institution decisions on its IPR petitions. DISH has confirmed with counsel for all consolidated defendants that it may represent on their behalf that none of the consolidated defendants opposes this request. Train Decl. ¶ 6. This moots any concerns of de-consolidation or inefficiency.

<u>Second</u>, Entropic argues that it will be prejudiced because no other defendant has agreed to be estopped based on DISH's IPR petitions. In enacting a statutory estoppel based on an IPR proceeding, Congress expressly limited the effects of the

estoppel to "the petitioner . . . or real party in interest or privy of the petitioner." 35 U.S.C. § 315(e). Entropic's proposal would drastically expand this statute and require all defendants to be estopped merely by virtue of being sued under the same patents. This would be an unfair burden on the other defendants who should be permitted the right to defend their cases as they see fit. While Entropic may wish for such broad estoppel to apply as a tactical advantage, it is unclear how this creates a source of prejudice based on a limited pause in the claim construction schedule.

The case Entropic cites in support of its position, *Realtime Data, LLC v. Hewlett Packard Enter. Co.*, No. 6:16-CV-00086 RWS(JDL), 2017 WL 3712916 (E.D. Tex. Feb. 3, 2017), does not help Entropic. *Realtime Data* decided a full motion to stay where multiple moving defendants were not IPR petitioners. In fact, the court in that case *granted* the motion to stay as to the petitioner-defendants based in part on the same statutory estoppel provisions that would apply to DISH in this case. 2017 WL 3712916, at *7. Here, the result of a more limited claim-construction-only continuance will save resources and ensure that Entropic does not take inconsistent positions with the PTAB and this Court—an equitable and far from prejudicial outcome. *See RideShare Displays*, 2021 WL 7286931, at *3 ("[I]t doesn't prejudice Plaintiff not to have a [claim construction] ruling from this Court before the IPR proceedings, especially since the PTAB and the Court now apply the same standards for claim construction.") (second alteration in original).

Third, Entropic complains that it would be unfair for DISH to continue with its counterclaims during an extension of the claim construction schedule. MaxLinear's one-page opposition focuses on the same issue.[2] But procedurally, the counterclaims are still in the pleading stage and trail significantly behind Entropic's patent claims.

---

[2] Given the limited and overlapping nature of MaxLinear's opposition, DISH responds to both Entropic's and MaxLinear's oppositions in this reply. As a counter-defendant only in this case, MaxLinear will not be affected by modifications to the claim construction schedule. DISH's counterclaims do not rise and fall with the claim construction process in the underlying action.

If anything, DISH's initial proposal—extending the claim construction schedule while allowing the counterclaims to proceed—would have helped the counterclaims catch up for parallel discovery, summary judgment, and trial scheduling. Nonetheless, to moot any concerns of fairness raised by Entropic and MaxLinear, DISH has offered both parties to stay DISH's counterclaims, associated discovery, and all motion practice (including Entropic's and MaxLinear's motions to dismiss DISH's counterclaims) if and for as long as the Court continues the current claim construction schedule. Train Decl. ¶ 10. Neither Entropic nor MaxLinear accepted DISH's offer. *Id*. Nevertheless, DISH is willing to maintain its offer should the Court find it to be an equitable solution to stay DISH's counterclaims pending a continuance of the claim construction schedule. This moots MaxLinear's opposition (and Entropic's concern) and will reduce burden on the parties and the Court while we await the PTAB's institution decisions.

<u>Fourth</u>, Entropic attaches an SEC 10-K filing from non-party EchoStar Corporation to argue that the DISH Defendants' financial situation may cause prejudice to Entropic. Whether or not the Court grants DISH's limited continuance will not have any real effect on Entropic's ability to collect on any judgment it may receive in this case. Even if the case continues on its current schedule, trial is not scheduled and unlikely to occur within the next 18 months, and post-trial motions will push the judgment even further into the future. In addition, the outcome of any appeal from a judgment against DISH would be another 18-24 months after the judgment is entered. Entropic's concern about DISH's solvency is not only highly speculative, but will not be materially affected by a brief pause in the claim construction schedule. And to the extent Entropic has actual concerns about DISH's finances, DISH's requested extension would only help preserve resources otherwise spent on potentially duplicative claim construction briefing.

For these reasons, none of Entropic's purported sources of prejudice rise to the level of preventing a brief extension of the claim construction schedule.

### III. CONCLUSION

DISH has shown good cause to extend the current claim construction schedule until after the institution decisions on DISH's IPR petitions. Throughout its pursuit of the IPR petitions and this Motion, DISH acted diligently and complied with all statutory deadlines and local rules—filing everything at the earliest possible instance. Regardless of the PTAB's decisions, the issues for claim construction will be aided, simplified, and clarified by waiting for upcoming developments and briefing in the IPRs. This short delay will not cause Entropic any actual prejudice and, to the contrary, will preserve resources for all parties, including Entropic, and for the Court. Accordingly, the Court should grant DISH's motion for an extension of the claim construction schedule.

Dated: March 22, 2024                FISH & RICHARDSON P.C.

By: */s/ Tyler R. Train*
    Christopher S. Marchese (SBN 170239)
    marchese@fr.com
    Tyler R. Train (SBN 318998)
    train@fr.com
    633 West Fifth Street, 26th Floor
    Los Angeles, CA 90071
    Tel: (213) 533-4240

    Adam R. Shartzer *(pro hac vice)*
    Ruffin B. Cordell *(pro hac vice)*
    cordell@fr.com
    Richard A. Sterba *(pro hac vice)*
    sterba@fr.com
    Ralph A. Phillips *(pro hac vice)*
    rphillips@fr.com
    shartzer@fr.com
    Michael J. Ballanco *(pro hac vice)*
    ballanco@fr.com
    Taylor C. Burgener (SBN 348769)
    burgener@fr.com
    FISH & RICHARDSON P.C.
    1000 Maine Ave., SW, Suite 1000

Washington, DC 20024
Tel: (202) 783-5070

David M. Barkan (SBN 160825)
barkan@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Ashley A. Bolt *(pro hac vice)*
bolt@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Aaron P. Pirouznia (*pro hac vice*)
pirouznia@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel: (214) 292-4073
Fax: (214) 747-2091

Oliver Richards (SBN 310972)
orichards@fr.com
John-Paul Fryckman (SBN 317591)
fryckman@fr.com
Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070

Attorneys for Defendants
DISH Network Corporation, et al.