# Exhibit A

# Hearing Demonstratives

*Entropic Communications, LLC v. Dish Network Corp. et al.*

Case No.  2:23-cv-1043-JWH-KES

April 11, 2024

**Non-Confidential Version**



# Standing Issues



# Contract Claims

DISH Counterclaim Complaint
D.I. 316

24  98.  Entropic has breached section 5.1.1 of the MoCA IPR Policy.  Section

25  5.1.1 provides that Entropic must "offer to license" its "Essential Patent Claims to the

26  extent necessary to use, make, have made, offer for sale, sell, and import" products

27  complaint with MoCA standards on a "non-exclusive, non-sub-licensable, world

28  wide" basis "on fair, reasonable and nondiscriminatory terms and conditions

1  (collectively, '*RAND*') . . ."  Entropic has breached section 5.1.1 at least because it

2  has failed to provide DISH with a RAND-compliant license offer.

3  99.  Entropic has also breached section 7.2 of the MoCA IPR Policy.  Section

4  7.2 provides that "terminated Alliance Part[ies] shall be entitled to request or require

5  any Alliance Party to license such Alliance Party's Essential Patent Claims under

6  Section 5.1 (RAND Licenses), but only to the extent necessary to use, make, have

7  made, offer for sale, sell and import" products complaint with MoCA standards

8  "approved by the Board of Directors prior to such expiration or termination."  To the

9  extent DISH products implement any part of any MoCA Standard, Entropic has

10  breached section 7.2 at least because it has failed to provide DISH with a RAND-

11  compliant license offer.



# Contract Claims

**DISH Counterclaim Complaint**
**D.I. 316**

14  108. ==MaxLinear has breached Section 5.1.2 of the MoCA IPR Policy.== Section

15  5.1.2 provides that "[a]ny sale, assignment or transfer by an Alliance Party . . . to an

16  unaffiliated third party of an Essential Patent Claim shall be subject to the terms in

17  this IPR Policy" and "any agreement for transferring or assigning Essential Patent

18  Claims include a provision that such transfer or assignment is subject to existing

19  licenses and obligations to license imposed on the Alliance Party by this Agreement

20  and the Alliance Bylaws." MaxLinear breached Section 5.1.2 at least because it failed

21  to transfer the Asserted Patents "subject to the terms" of the IPR Policy, nor did

22  MaxLinear include any provision in the agreement transferring the Asserted Patents

23  to Entropic that the transfer was subject to the obligations imposed by the MoCA IPR

24  Policy.

25  109. ==MaxLinear has also breached Section 4.1.2 of the MoCA IPR Policy.== In

26  Section 4.1.2, MaxLinear "represent[ed], warrant[ed], and agree[d] that it has not and

27  will not intentionally transfer or otherwise encumber its patents that reasonably may

28  contain Essential Patent Claims for the purpose of circumventing the obligation to

1  grant licenses contained in this IPR Policy." MaxLinear breached Section 4.1.2 by

2  transferring the Asserted Patents without requiring Entropic to agree to license the

3  Asserted Patents on RAND terms and (as described more fully below) by attempting

4  to intentionally circumvent the RAND promise.



# DISH Amended Counterclaims

3       69.    In line with this stated goal, MoCA routinely promoted the use of MoCA

4   technology by non-members.  For example, MoCA published brochures urging in-

5   home television service providers and installers, such as the DISH Defendants, to

6   adopt MoCA technology.  *See, e.g.,* Ex. 10.  Such promotion did not indicate that a

7   company need be a member of MoCA in order to avoid exorbitant non-RAND patent

8   licensing demands.  *See id.*

DISH Counterclaim Complaint

*D.I. 316 at 84-85*



# DISH Amended Counterclaims

DISH Counterclaim Complaint

*D.I. 316 at 78*

41.     Original Entropic acknowledged its obligation to comply with the MoCA IPR Policy.  In its 2012 Annual Report filed with the U.S. Securities and Exchange Commission, it stated that, "[i]n connection with our membership in MoCA, we are required to license any of our patent claims that are essential to implement the MoCA specification to other MoCA members under reasonable and non-discriminatory terms."



# Extrinsic Evidence Must Be Considered



Scripps Rsch. Inst. v. Teva Pharms. Int'l GmbH, 2022 WL 20033436, at *4 (S.D. Cal. Nov. 17, 2022)

"Plaintiff's breach of contract claim survives because the **extrinsic evidence alleged by the Plaintiff**, whether admissible or not, must be considered on the merits by the Court. **Where a contract is ambiguous and extrinsic evidence is introduced**, the Ninth Circuit has found '**[t]he case must proceed beyond the pleadings** so that the court may consider the evidence.' *A. Kemp Fisheries, Inc.*, 852 F.2d at 496 n.2. As such, Defendant's motion to dismiss Plaintiff's breach of contract claim is DENIED."



# Entropic Complaint



Entropic Complaint
D.I. 1

84.    The Accused MoCA Instrumentalities are compliant with the provisions of MoCA 1.0, 1.1., and/or 2.0, as described in the '518 Patent claim chart, Exhibit B.

93.    The claims of the '518 Patent are essential to practicing at least MoCA standards versions 1.0, 1.1, and/or 2.0.

*D.I. 1 at 16 & 17*

# Attorneys' Fees as Damages: RAND



"**The attorneys' fees and costs** incurred in defending the injunctive actions were, in essence, such mitigation, and so are **recoverable expenses of reasonable mitigating actions**."

***

"The RAND context is analogous to these various circumstances in which attorneys' fees expended in earlier litigation are collectible as damages for a proven legal injury. As the district court reasoned, **treating fees in separate lawsuits as damages where the RAND commitment is breached 'makes particular sense in light of the purpose of the RAND commitment**, which is to encourage widespread adoption of the standard.' That purpose would be substantially defeated if adopting the standard "would expose [potential implementors] to bad faith injunctive relief claims and they were **forced to absorb the cost of defending themselves**."

Microsoft v. Motorola,
795 F.3d 1024, 1050–51
(9th Cir. 2015)

(Citations omitted; emphasis added.)



# Contract Claims: Nominal Damages



In re Facebook Priv. Litig., 192 F. Supp. 3d 1053, 1061-62 (N.D. Cal. 2016)

"The court concludes that *Aguilera* and *Ruiz*, which are not binding on this court on questions of California law, **do not defeat a plaintiff's ability to recover nominal damages for breach of contract** even in the absence of actual damages. Plaintiffs, therefore, have alleged 'a legal wrong that is fully distinct from the actual damages.' *Sweet*, 169 Cal.App.2d at 632, 337 P.2d 499."



# DISH Amended Counterclaims

62. DISH Technologies sells the DISH "Hopper" and "Joey" – products implicated in Entropic's Complaint. According to the explicit terms of the MoCA IPR policy, DISH Technologies thus shall be "entitled" to require Entropic and/or MaxLinear to license patents essential to MoCA Standards on RAND terms. DISH Technologies therefore has standing to bring claims to enforce the terms of the IPR Policy.

DISH Counterclaim Complaint

*D.I. 316 at 82*



# DISH Amended Counterclaims

DISH Counterclaim Complaint
D.I. 316

21   63.   Moreover, DISH Technologies has been harmed by Entropic's and

22   MaxLinear's wrongful behavior.   Entropic's failure to license on RAND terms,

23   MaxLinear's failure to include RAND encumbrances in its assignment to Entropic,

24   and the other wrongful acts undertaken by Entropic and MaxLinear, has harmed DISH

25   Technologies' ability to sell its product, including by raising its costs through this

26   lawsuit.   Moreover, DISH Technologies has also suffered diminution of reputation in

27   the marketplace, including its reputation as an innovator.   These harms underline

28   DISH Technologies' standing to enforce the terms of the MoCA IPR policy.

*D.I. 316 at 82*



# Challenges to the Sufficiency of DISH's Pleadings



# Three Broad Categories of Claims

- Contract-Related Claims (Counts I-IV)

- Fraud-Related Claims (Counts V-VII)

- Antitrust-Related Claims (Counts VIII-XI)



# Contract Claims



DISH Counterclaim Complaint
D.I. 316

21  97.    To the extent the MoCA IPR Policy imposes any obligations on DISH,
22  DISH has discharged them.  By way of example, DISH made a request, in writing,
23  for a RAND-complaint license offer.



# Contract Claims

**DISH Counterclaim Complaint
D.I. 316**

24    98.    Entropic has breached section 5.1.1 of the MoCA IPR Policy.   Section

25   5.1.1 provides that Entropic must "offer to license" its "Essential Patent Claims to the

26   extent necessary to use, make, have made, offer for sale, sell, and import" products

27   complaint   with   MoCA   standards   on   a   "non-exclusive,   non-sub-licensable,   world

28   wide"   basis   "on   fair,   reasonable   and   nondiscriminatory   terms   and   conditions

1   (collectively, *'RAND'*) . . ."   Entropic has breached section 5.1.1 at least because it

2   has failed to provide DISH with a RAND-compliant license offer.

3    99.    Entropic has also breached section 7.2 of the MoCA IPR Policy.   Section

4   7.2 provides that "terminated Alliance Part[ies] shall be entitled to request or require

5   any Alliance Party to license such Alliance Party's Essential Patent Claims under

6   Section 5.1 (RAND Licenses), but only to the extent necessary to use, make, have

7   made, offer for sale, sell and import" products complaint with MoCA standards

8   "approved by the Board of Directors prior to such expiration or termination."   To the

9   extent DISH products implement any part of any MoCA Standard, Entropic has

10   breached section 7.2 at least because it has failed to provide DISH with a RAND-

11   compliant license offer.



# Contract Claims

**DISH Counterclaim Complaint
D.I. 316**

14    108. MaxLinear has breached Section 5.1.2 of the MoCA IPR Policy. Section

15    5.1.2 provides that "[a]ny sale, assignment or transfer by an Alliance Party . . . to an

16    unaffiliated third party of an Essential Patent Claim shall be subject to the terms in

17    this IPR Policy" and "any agreement for transferring or assigning Essential Patent

18    Claims include a provision that such transfer or assignment is subject to existing

19    licenses and obligations to license imposed on the Alliance Party by this Agreement

20    and the Alliance Bylaws." MaxLinear breached Section 5.1.2 at least because it failed

21    to transfer the Asserted Patents "subject to the terms" of the IPR Policy, nor did

22    MaxLinear include any provision in the agreement transferring the Asserted Patents

23    to Entropic that the transfer was subject to the obligations imposed by the MoCA IPR

24    Policy.

25    109. MaxLinear has also breached Section 4.1.2 of the MoCA IPR Policy. In

26    Section 4.1.2, MaxLinear "represent[ed], warrant[ed], and agree[d] that it has not and

27    will not intentionally transfer or otherwise encumber its patents that reasonably may

28    contain Essential Patent Claims for the purpose of circumventing the obligation to

1    grant licenses contained in this IPR Policy." MaxLinear breached Section 4.1.2 by

2    transferring the Asserted Patents without requiring Entropic to agree to license the

3    Asserted Patents on RAND terms and (as described more fully below) by attempting

4    to intentionally circumvent the RAND promise.



# Contract Claims

DISH Counterclaim Complaint
D.I. 316

110.     DISH has been harmed by MaxLinear's breach of the MoCA IPR Policy. By way of example, DISH is forced to expend considerable sums of money and other resources to defend itself in the present suit—resources that would not have had to expend had MaxLinear complied with the terms of the MoCA IPR Policy.  DISH has also suffered diminution of reputation in the marketplace.  DISH is entitled to recover these damages, as well as any additional relief that may be appropriate or required to address MaxLinear's breach.



# Contract Claims



Microsoft v. Motorola,
795 F.3d at 1049-1050.

"Motorola's arguments, however, elide a critical factor in determining the propriety of attorneys' fees in the damages award in this case. The fees at issue here were incurred not in the current breach of contract action but in defending against the injunctive action found to have breached the RAND agreement. **The fees sought are thus distinct from the same-suit fees generally banned by the American rule**. As losses independent of the current litigation and triggered by the contract-breaching conduct, they are best characterized as recoverable consequential contract damages—the kind of damages ordinarily recoverable in breach of contract suits."

"**Moreover, courts routinely award attorneys' fees as damages in a number of analogous circumstances, when attorneys' fees are a fair measure of the harm impermissibly caused by the defendant**."



# Anti-Trust Claims



Allied Tube v. Indian Head, Inc.,
486 U.S. 492, 500 (1988)

"Agreement on a product standard is, after all, implicitly an agreement not to manufacture, distribute, or purchase certain types of products. Accordingly, private standard-setting associations have traditionally been objects of antitrust scrutiny."

"[T]he hope of procompetitive benefits depends upon the existence of safeguards sufficient to prevent the standard-setting process from being biased by members with economic interests in restraining competition."



# Anti-Trust Claims

Recognizes that *Allied Tube* "implies that, <u>without safeguards</u> against bias, the very existence of standards is inherently anti-competitive."

"Both the Third Circuit, in *Broadcom*, and the Supreme Court, in *Allied Tube*, have stated that standards, without the proper safeguards, are inherently anticompetitive. It follows that when an entity side-steps these safeguards in an effort to return the standard to its natural anti-competitive state, anti-competitive effects are inevitable."

<u>RIM Ltd. v. Motorola, Inc.,</u>
644 F. Supp. 2d 788, 795
(N.D. Tex. 2008)



# Anti-Trust Claims



"The development of standards thereby creates an opportunity for companies to engage in anti-competitive behavior. Most notably, once a standard becomes widely adopted, SEP holders obtain substantial leverage over new product developers, who have little choice but to incorporate SEP technologies into their products. Using that standard-development leverage, the SEP holders are in a position to demand more for a license than the patented technology, had it not been adopted by the SSO, would be worth."

Microsoft v. Motorola,
795 F.3d 1024, 1030–31
(9th Cir. 2015)



# Anti-Trust Claims



"We hold that (1) in a consensus-oriented private standard-setting environment, (2) a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms, (3) coupled with an SDO's reliance on that promise when including the technology in a standard, and (4) the patent holder's subsequent breach of that promise, is actionable anticompetitive conduct."

Broadcom Corp. v. Qualcomm Inc.,
501 F.3d 297, 314 (3d Cir. 2007)



# Anti-Trust Claims



Funai Elec. Co. v. LSI Corp.,
2017 WL 1133513, at *5
(N.D. Cal. Mar. 27, 2017)

"The crux of the claim is Funai's assertion that Defendants lied to the IEEE and ITU in order to induce those SSOs to incorporate Defendants' technologies into the 802.11 standard for wireless Internet connectivity and the H.264 standard for video compression. . . . Those allegations, separate and apart from Funai's allegations regarding the ITC Action and District Court Action, are sufficient to give rise to a Section 2 claim."



# Anti-Trust Claims

DISH Counterclaim Complaint
D.I. 316

24    144.   As discussed above, MaxLinear executed a Patent Purchase Agreement

25    with Entropic that transferred ownership of the Asserted Patents.  As also discussed

26    above (*see* paragraphs 124-131) MaxLinear and Entropic entered into this agreement

27    in an attempt to "wash" the Asserted Patents of any obligation to license on RAND

28    terms, despite each's obligation to do so pursuant to the MoCA IPR Policy.



# Anti-Trust Claims

DISH Counterclaim Complaint
D.I. 316

13  146.  Competition in the relevant markets has been injured as a result of
14  Entropic's and MaxLinear's behavior.  By way of example, MaxLinear's and
15  Entropic's behavior forces the providers of home television services to engage in
16  expensive litigation (rather than negotiate a RAND license)—costs that must
17  eventually be passed on to end-users.  Moreover, if Entropic gets its demand for $1
18  billion, those costs must also be additionally passed on to end-users of home television
19  services, further driving up the costs.  These additional costs reduce or eliminate the
20  potential price benefit to consumer that MoCA based networking provides as
21  compared to competing technologies, such as recent generations of WiFi based
22  products.  Meanwhile, MaxLinear is able to charge a higher rate for its own MoCA
23  compatible products due to the artificial inflation of market prices.

