KILPATRICK TOWNSEND & STOCKTON LLP
April E. Isaacson (SBN 180638)
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran (SBN 347617)
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell (*pro hac vice*)
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba (*pro hac vice*)
wkadaba@kilpatricktownsend.com
Michael J. Turton (*pro hac vice*)
mturton@kilpatricktownsend.com
Courtney S. Dabbiere (*pro hac vice*)
cdabbiere@kilpatricktownsend.com
Christopher S. Leah (*pro hac vice*)
cleah@kilpatricktownsend.com
Andrew Saul (*pro hac vice*)
asaul@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.; CoxCom, LLC; and*
*Cox Communications California, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> COX COMMUNICATIONS, INC.; COXCOM, LLC; and COX COMMUNICATIONS CALIFORNIA, LLC, <br><br> Defendants. | LEAD CASE: <br> Case No. 2:23-cv-1043-JWH-KES <br><br> RELATED CASE: <br> Case No. 2:23-cv-1047-JWH-KES <br><br> **COX DEFENDANTS' OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON MOTIONS REFERRED BY THE COURT ON FEBRUARY 9, 2024** |

**REDACTED DOCUMENT SOUGHT TO BE SEALED**

| | |
|---|---|
| 1 | COX COMMUNICATIONS, INC., COXCOM, LLC, AND COX COMMUNICATIONS CALIFORNIA, LLC, |
| 2 | |
| 3 | Counter-Claimants, |
| 4 | v. |
| 5 | ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR COMMUNICATIONS LLC; AND MAXLINEAR, INC. |
| 6 | |
| 7 | Counter-Defendants |

## I. INTRODUCTION

Cox respectfully objects to certain portions of the Special Master's report and recommendation on motions referred by the Court on February 9, 2024, Dkt. 446 ("R&R"). The R&R addressed counterclaims Cox asserted in the -1043 case that arise out of the fact that the original owners of the asserted patents—MaxLinear Communications LLC and MaxLinear, Inc. ("MaxLinear")—were signatories to, founders of, and/or participants in the MoCA Alliance that created standards for multimedia over coax technology. The MoCA IPR Policy contractually bound MaxLinear to ensure the ability to offer and negotiate licenses on "RAND" terms to any patents with claims that may be essential to the MoCA standards. Plaintiff nonetheless induced MaxLinear's breach of the IPR policy, resulting in Cox's claims.

The R&R dismissed Cox's quasi contract claim as inconsistent with its contract claim, but appropriately refused to dismiss Cox's other claims. Cox objects in two respects. First, in addressing the breach of contract and tortious interference claims, the R&R noted that aspects of Cox's contract and breach theories were potentially implausible. If these aspects are not dicta to which no objection need be made, Cox objects. Second, as a matter of law, Cox correctly pled unjust enrichment as a viable alternative pleading under the controlling Federal procedure. Accordingly, the Court should appropriately modify the R&R and deny the motions to dismiss.

## II. LEGAL STANDARD

A complaint need merely plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing contract claims, so long as the complaint offers "a reasonable interpretation of the contract," dismissal is improper. *Sisley v. Sprint Commc'ns Co., L.P.*, 284 F. App'x 463, 466 (9th Cir. 2008). Before adopting a report and recommendation, "[t]he court must decide de novo all objections to findings of fact" and it "must decide de novo all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(3)-(4).

## III. OBJECTIONS CONCERNING COX'S COUNTERCLAIMS IN -1043

### A. If not Dicta, the R&R Either Ignored or Incorrectly Addressed Several of Cox's Breach of Contract Theories.

A Special Master's "dicta does not require analysis or reversal by reviewing courts." *Sports Rehab Consulting, LLC*, 2023 WL 2824300, at *8 (D. Colo. Mar. 13, 2023). Indeed, a report and recommendation that makes statements that are not the basis of a decision simply do not need to be addressed by the Court. For example, *Thakur v. Cofiroute USA, LLC*, overruled objections to statements in a report that were not essential to the actual holding. 2021 WL 304389, at *6 (C.D. Cal. Jan. 29, 2021), *aff'd sub nom. Thakur v. Cofiroute USA*, 2022 WL 1115874 (9th Cir. Apr. 14, 2022). It found that "the Special Master's dicta is just that. It does not form the basis for dismissal, nor would sustaining Thakur's Objection" bear on the recommendation or ruling on the motion to dismiss.

The central issue addressed was whether Cox plausibly averred a breach of contract claim against MaxLinear and a tortious interference claim through inducement of such breach against Entropic. The R&R concludes those claims are plausible. The discussion concerning Cox's alternative breach theories discussed below appear to be dicta that need not be reviewed and will have no impact on further proceedings. Solely to the extent the Court concludes otherwise, however, Cox requests adoption of the R&R with modifications that acknowledge the plausibility of Cox's other breach of contract averments. Those points are addressed below.

### 1. The R&R Did not Address Cox's Plausible Averment that the Patent Assignment Violated the Transfer Clause.

Cox averred that the Patent Assignment is an agreement or assignment falling within the scope of § 5.1.2 that entirely lacks any transfer provision. (DE 266-1, ¶¶ 559-60, 565-66; DE 96-1.) Specifically, § 5.1.2 applies to "*any* agreement for transferring or assigning" essential patents, yet the Patent Assignment lacks any "provision that such transfer or assignment is subject to existing licenses and

1  obligations to license imposed on the Alliance Party by this Agreement and the
2  Alliance Bylaws, and that the transferee will similarly include appropriate provisions"
3  for future transfers. (DE 96, § 5.1.2.)  The R&R did not address this breach allegation.
4  Rather, the R&R observes that "[g]enerally, legal encumbrances involving the right
5  to use patented technology 'run with the patent.'"  (DE 446, at 20) (citing *Entropic*
6  *Commc'ns, LLC v. Comcast Corp.*, --- F. Supp. 3d ----, 2023 WL 9189317, at *3 (C.D.
7  Cal. Nov. 20, 2023) (Holcomb, J.) (quoting *Datatreasury Corp. v. Wells Fargo & Co.*,
8  522 F.3d 1368, 1372 (Fed. Cir. 2008)).

9       Yet the R&R does not tie this point to the breach allegations Cox avers
10 concerning the Patent Assignment.  Nor could it.  *Datatreasury* itself makes clear that
11 the general "run with the patent" principle cannot override the contractual requirement
12 to include the transfer provision.  In *Datatreasury*, Wells Fargo pointed to a licensing
13 agreement with the prior patent owner to argue that an arbitration provision therein
14 applied.  522 F.3d at 1370-71.  *Id*.  After reciting the general principle and noting
15 cases applying same, *Datatreasury* explained that "the legal encumbrances deemed
16 to 'run with the patent' in these cases involved the right to use the patented product,
17 not a duty to arbitrate," and "[t]he cases do not support a conclusion that procedural
18 terms of a licensing agreement unrelated to the actual use of the patent (e.g. an
19 arbitration clause) are binding on a subsequent owner of the patent." *Id*. at 1372-73.

20      The same is true here.  The transfer provision is akin to a "procedural term"
21 that does not "run with the patent" by law.  It remains a "clear and explicit" obligation
22 imposed upon MaxLinear that was breached.  Cal. Civ. Code § 1638.  Even assuming
23 the R&R was correct in saying the law imposed a general obligation to negotiate a
24 RAND license on Entropic, that does not—and cannot—show the Patent Assignment
25 complied with the transfer provision.  To the contrary, accepting such a proposition
26 would rewrite § 5.1.2 to eliminate the transfer provision.  This is improper as contract
27 interpretation takes "[t]he whole of a contract … together, so as to give effect to every
28 part, if reasonably practicable."  Cal. Civ. Code § 1641.

1    Moreover, it is a "standard rule of contract interpretation" that "specific terms
2 control over general ones." *United States ex rel. Welch v. My Left Foot Children's*
3 *Therapy, LLC*, 871 F.3d 791, 797 (9th Cir. 2017) (citation omitted). The transfer
4 provision is far more specific than any general legal rule concerning what, exactly,
5 may "run with the patent." The transfer provision requires more than just
6 acknowledgement of a general RAND obligation—it specifies that any relevant
7 agreement must have a provision "that such transfer or assignment is subject to
8 existing licenses and ***obligations to license imposed on the Alliance Party***"—that is
9 MaxLinear—by the IPR Policy, as well as requiring similar provisions for any future
10 transfers. (DE 96, § 5.1.2.)
11   The transfer by law point simply has no bearing on whether Cox ***also*** has a
12 breach claim for MaxLinear's failure to perform the required transfer clause. Notably,
13 Entropic's and MaxLinear's main point in urging that Entropic had a general RAND
14 obligation as a matter of law was to advance the proposition whether Entropic or
15 MaxLinear had the license did not matter because either could offer RAND terms or
16 sue. (*See, e.g.,* DE 446, at 16.) In essence, this was an argument that any breach of
17 the transfer provision was immaterial. But it is settled law that whether a breach is
18 material is a question of fact. *E.g.*, *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F.
19 Supp. 2d 1120, 1139 (C.D. Cal. 2009). Cox's averments detailed the importance of
20 such a provision, explaining how MoCA was intended to be a closed system where
21 only present or former MoCA members would receive confidential information about
22 standards and be entitled to seek and receive a RAND license from the other members.
23 (DE 266-1, ¶¶ 532-33, 552-53.) Indeed, as Cox pled, but for these breaches this case
24 would not and could not have been brought. (DE 266-1, ¶ 573.)
25   Finally, the "run with the patent" doctrine is based on the notion that "a patentee
26 cannot transfer a right greater than it possesses." *Datatreasury*, 522 F.3d at 1372.
27 The R&R's "run with the patents" observation is contradicted by the IPR Policy and
28 the R&R's holding as plausible Cox's averment that the IPR Policy required an

1  Alliance Party to own the relevant standard essential patents. (DE 446, at 20-22.)
2  That averment was based not only on § 4.1, but also on §§ 5.1.1 and 7.1, which made
3  plain that the RAND obligation requires *only* (present or former) Alliance Parties to
4  offer RAND licenses to *only* other Alliance Parties. (*See* DE 96, § 5.1.1 & 7.1). That
5  was consistent with Cox's other averments concerning MoCA and how it operated.
6  (DE 266-1, ¶¶ 540-48.) Critically, the R&R did not address how a RAND obligation
7  by and between Alliance Parties could "run with the patent" to Entropic, a ***non***-
8  Alliance Party, as Cox specifically pled. (*Id.*, ¶ 561). This created a situation where
9  Entropic could not perform—MaxLinear had no power to make Entropic an Alliance
10  Party so as to step into MaxLinear's shoes. Accordingly, to the extent the R&R even
11  passed on this issue, Cox requests the Court overrule any applicable findings or
12  conclusions and appropriately modify the R&R.

### 2. Cox Plausibly Averred that Executing the PPA Also Violated the Transfer Clause.

Cox's counterclaims directly pled that "[n]othing in the Patent Purchase Agreement complies with the IPR Policy anti-circumvention and assignment provisions. To the contrary, each of the MaxLinear entities represented that the assigned patents were free of any encumbrances imposed by the IPR Policy." (DE 266-1, ¶ 558.) This remains true, the R&R's discussion of the PPA did not find or demonstrate otherwise, and any contrary statements should be rejected.





1. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
2. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
3. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
4. ▬▬▬▬▬▬▬▬▬▬▬▬▬
5. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
6. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (DE 446, at 20.) Yet the IPR Policy does not require mere "notice" of RAND obligations; it requires a specific provision to be placed in the relevant transfer or assignment agreement. No such provision is included, and Cox's breach claim for failure to comply with the transfer provision is both appropriate and sufficiently pled. Accordingly, Cox's averments that MaxLinear breached § 5.1.2 of the IPR Policy by entering into the PPA at Entropic's inducement plausibly show breach of contract and tortious interference causing the breach. Thus, if the R&R's discussion of this point is not dicta, Cox requests the Court modify the R&R in this respect.

### 3. Cox Plausibly Averred that MaxLinear Had an Obligation to Retain the Right to License

Cox also averred that MaxLinear had to maintain the right to grant licenses under the IPR Policy and Cox pointed to several provisions for the source of MaxLinear's obligation to maintain rights to grant patent licenses. (DE 266-1, ¶¶ 541-44, 548-50). For example, Cox pointed to the IPR Policy's §4.1.2, whose first sentence stated that "Each Alliance Party *represents, warrants and covenants* to the Alliance and to other Alliance Parties that *it has the power and authority* to bind itself and all of its Affiliates to the obligations contained herein, *including* without limitation, *the obligation to grant patent licenses.*" (DE 266-1, ¶ 548.)

"Under California law, '[a] covenant is a promise to do or refrain from doing a specific act.'" *Ticketmaster L.L.C. v. Prestige Ent., Inc.*, 306 F. Supp. 3d 1164, 1172 (C.D. Cal. 2018) (citation omitted). Cox thus averred that § 4.1.2's covenant and warranty imposed a continuing obligation on MaxLinear to have the power and

authority to satisfy the obligation to grant Alliance Parties relevant licenses.

Because the whole contract must be taken together and "each clause help[s] to interpret the other" (Cal. Civ. Code § 1641), Cox also explained how other provisions supported its interpretation. Section 5.1 specified that the entire RAND obligation was between Alliance Parties, which explains why there is a continuing obligation for such parties to maintain rights to license. (*See* DE 266-1, ¶¶ 541-45, 549.) Section 4.1 required Alliance Parties to own relevant patents, while Section 4.1.2's second sentence states that "[e]ach Alliance Party further represents and warrants and agrees that it … ***will not*** intentionally transfer or otherwise encumber its [relevant patents] for the purpose of circumventing ***the obligation to grant licenses*** contained in this IPR Policy." (DE 266-1, ¶¶ 547-48.) As with the covenant in the preceding sentence, the promise that one "will not" make such transfers is prospective. Likewise, the circumvention clause also ensures there is no future circumvention of "the obligation to grant licenses" that exists between Alliance Parties. This is not only for an existing license, it also addresses the ongoing obligation on MaxLinear, an Alliance Party, to grant RAND licenses in the future to other present or former Alliance Parties.

The R&R focused on the second sentence of 4.1.2, observing that "Cox does not demonstrate how this requirement that an Alliance Party will not 'circumvent[] the obligation to grant licenses contained in this IPR Policy' purportedly required MaxLinear itself to retain a right to grant licenses." (DE 446, at 18.) This conclusion was erroneous for two reasons. First, that focus skipped over the representation, warranty and covenant in the first sentence. Second, Cox directly averred breach of this non-circumvention provision in that MaxLinear had intentionally transferred its patents to circumvent the obligation. (*See, e.g.,* DE 266-1, ¶¶ 565-67, 581.)

Next, the R&R stated that the transfer provision in § 5.1.2 contradicted Cox's interpretation, reasoning that "Section 5.1.2 requires putting the obligation on the assignee, which runs counter to requiring any retaining of the obligation by the assignor." (DE 446, at 19.) This is simply incorrect. The transfer provision requires

"that such transfer or assignment is subject to existing licenses **and obligations to license imposed <u>on the Alliance Party</u>** by this Agreement and the Alliance Bylaws." (DE 96, § 5.1.2.)  Rather than putting the obligation to license on the transferee, the "subject to" clause confirms that this ongoing obligation remains with the Alliance Party who transfers.  Accordingly, Cox's averments that MaxLinear must maintain the right to license Alliance Parties to essential patents are appropriate.

### B. Cox Sufficiently Pled Unjust Enrichment/Quasi-Contract (Count IV) as an Alternative Pleading Under Fed. R. Civ. P. 8.

Count IV of Cox's counterclaims is entitled "Alternative Claim of Quasi-Contract for Restitution / Unjust Enrichment Against MaxLinear."  Via this count, Cox appropriately pled an alternative, but nonetheless acceptable "quasi-contract" claim under Fed. R. Civ. P. 8. (*See* DE 266-1, ¶¶ 532-33, 589-92.)   The R&R nonetheless incorrectly recommended dismissal of Cox's alternative claim.

"A federal court sitting in diversity applies the federal rules of pleading." *Intelligent Mgmt. Sols., Inc. v. Crown Glendale Assocs, LLC*, 2013 WL 12130317, at *2 n.2 (C.D. Cal. Feb. 20, 2013) (citation omitted).  Here, Fed. R. Civ. P. 8(d) "expressly permits a plaintiff to plead claims in the alternative and courts … have permitted unjust enrichment and breach of contract claims to proceed simultaneously." *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015); *see also Safari v. Whole Foods Market Services., Inc.*, 2023 WL 5506014, at *5 (C.D. Cal. July 24, 2023) (Holcomb, J.) (noting that an unjust enrichment claim "is permitted even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement").

In *Longest*, the plaintiff alleged both breach of contract and quasi-contract claims where defendants charged for insurance required under mortgage agreements, but "a portion of such 'cost' is returned, transferred, kicked-back or otherwise paid to [defendants]." 74 F. Supp. 3d at 1294 (alteration in original).  While the Court agreed as a general proposition that "under both California and Florida law, a party may not

1. pursue a quasi-contract claim for unjust enrichment or restitution when an express contract governs the same subject matter," the Court declined "to dismiss the unjust enrichment claims on these grounds" because the plaintiffs' opposition expressly invokes the alternative pleading permitted by Rule 8(d)" and the pleading must be construed in plaintiff's favor. *Id*. This holding has been consistently followed within this District. *See, e.g., Lair v. Bank of Am., N.A.*, 2024 WL 943945, at *4 (C.D. Cal. Jan. 26, 2024); *European Travel Agency Corp. v. Allstate Ins. Co.*, 600 F.Supp.3d 1099, 1105 (C.D. Cal. 2022); *Ashton v. J.M. Smucker Co.*, 2020 WL 8575140, at *13 (C.D. Cal. Dec. 16. 2020); *Texmont Design Ltd. v. Halston Operating Co., LLC*, 2019 WL 13080590 (C.D. Cal. Nov. 13, 2019).

Without addressing the precedent within this District, the R&R cited solely to *Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019). There, **both** parties admitted and accepted the relevant contract applied and defined the rights of the parties and thus the court held Plaintiffs could not plead the alternative theory of unjust enrichment. *Id*., at *12. By contrast, MaxLinear very much disputes the reach and applicability of the MoCA IPR Policy. *Compare Intelligent Mgmt.,* 2013 WL 12130317, at *2.

Finally, Cox submits that the R&R erred because the pleading issue here is plainly procedural. (DE 384-1, at 29-30 & n. 4.) It is settled that "when a Federal Rule of Civil Procedure is on point, it, not the state law, governs, so long as it does not run afoul of the Rules Enabling Act" or the Constitution. *McCalla v. Royal MacCabees Life Ins. Co*., 369 F.3d 1128, 1135 (9th Cir. 2004). That is certainly the case here where Cox's alternative pleading only comes into play in the event that its action at law for breach of contract is inapplicable. Accordingly, the Court should not adopt the R&R's recommendation that Cox's claim for unjust enrichment be dismissed and therefore deny MaxLinear's motion.

## IV. CONCLUSION

Cox requests that the Court modify the R&R and deny the motions to dismiss.

Dated: May 13, 2024

KILPATRICK TOWNSEND & STOCKTON LLP

By:  /s/ April E. Isaacson

April E. Isaacson
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba
wkadaba@kilpatricktownsend.com
Michael J. Turton
mturton@kilpatricktownsend.com
Courtney S. Dabbiere
cdabbiere@kilpatricktownsend.com
Christopher S. Leah
cleah@kilpatricktownsend.com
Andrew Saul (*pro hac vice*)
asaul@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.;CoxCom, LLC; and*
*Cox Communications California, LLC*