Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
cassidy.young@klgates.com
Rachel Berman (SBN 352237)
rachel.berman@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

(*Additional counsel listed in signature block*)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION, *et al.*,<br><br>Defendants. | Case No. 2:23-cv-01043-JWH-KES (Lead Case)<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>**ENTROPIC COMMUNICATIONS, LLC'S OBJECTIONS TO THE SPECIAL MASTER REPORT AND RECOMMENDATIONS ON MOTIONS REFERRED BY THE COURT ON FEBRUARY 9, 2024, AND MARCH 26, 2024 (DKT. 446)** |

## OBJECTION TO SPECIAL MASTER REPORT AND RECOMMENDATIONS

Pursuant to this Court's Order Appointing David Keyzer as Special Master and Federal Rule of Civil Procedure 53, Entropic respectfully objects-in-part to the Special Master's Report and Recommendation as to Entropic's Motion to Dismiss DISH's Counterclaims, entered on April 22, 2024. (Dkt. 446.) The R&R correctly recommended dismissal with prejudice as to three of DISH's Counterclaims, namely Counts VIII, IX, and XI. However, the R&R did not recommend dismissal of a fourth counterclaim (Count VI) that suffered from the same legal infirmities. Entropic respectfully objects to correct this inconsistency.

For the reasons set forth in this objection, this Court should modify the R&R to dismiss Count VI of DISH's Counterclaims with prejudice.

ENTROPIC'S OBJECTIONS TO SPECIAL MASTER
REPORT AND RECOMMENDATIONS

1

# **TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES.....................................................................4

3  MEMORANDUM OF POINTS AND AUTHORITIES..........................5

4  I.     INTRODUCTION....................................................................5

5  II.    FACTUAL AND PROCEDURAL BACKGROUND...................6

6         a.   The RAND Obligation of the MoCA IPR Policy...............6

7         b.   Entropic Purchases Patents Subject to the RAND Obligation of

8              the MoCA IPR Policy and Acknowledged that Obligation

9              Before Suit .......................................................................7

10        c.   DISH Tries to Plead a Conspiracy to "Wash" the RAND

11             Obligation..........................................................................8

12        d.   The R&R Determines the RAND Obligation was Conveyed by

13             Operation of Law and Contract, Rejecting the "Wash" Theory..........8

14 III.   LEGAL STANDARDS...........................................................10

15 IV.    ARGUMENT .........................................................................10

16        a.   Count VI Should be Dismissed with Prejudice Because the

17             RAND Obligation Was Properly Conveyed to Entropic.................10

18        b.   Count VI Should Be Dismissed with Prejudice Because It Is

19             Barred by the *Noerr-Pennington* Doctrine .........................12

20        c.   Alternatively, Count VI Should Be Dismissed Because DISH

21             Failed to Plead a Claim for Conspiracy to Defraud............................13

22 V.     CONCLUSION ......................................................................14

23

24

25

26

27

28

ENTROPIC'S OBJECTIONS TO SPECIAL MASTER
REPORT AND RECOMMENDATIONS

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Cases**

3    *HTC Corp. v. IPCom GmbH & Co.*,

4      2010 WL 11719073 (D.D.C. Nov. 5, 2010) ........................................11

5    *In re Innovatio IP Ventures, LLC Pat. Litig.*,

6      921 F. Supp. 2d 903 (N.D. Ill. 2013) ....................................13

7    *Jones v. Hollywood Unlocked, Inc.*,

8      2022 WL 18674459 (C.D. Cal. Nov. 22, 2022)....................................14

9    *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*,

10      2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) ....................................14

11    *Pinn, Inc. v. Apple Inc.*,

12      2021 WL 4777134 (C.D. Cal. July 14, 2021)....................................10

13    *Sprewell v. Golden State Warriors*,

14      266 F.3d 979 (9th Cir. 2001)....................................10

15    *Theme Promotions, Inc. v. News Am. Mktg. FSI*,

16      546 F.3d 991 (9th Cir. 2008)....................................12

17    *Valley Nat'l Bank v. Mundo Trucking*,

18      2021 WL 6882194 (C.D. Cal. Dec. 29, 2021) ....................................10, 12

19    **Rules & Regulations**

20    Fed. R. Civ. P. 53(f)....................................10

21    Fed. R. Civ. P. 9(b) ....................................6, 8, 13, 14

22

23

24

25

26

27

28

4

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

Plaintiff Entropic Communications, LLC ("Entropic") respectfully objects-in-

4

part to the Special Master's Report and Recommendation ("R&R"). The R&R

5

correctly recognized that several of DISH's[1] counterclaims were legally deficient and

6

recommended dismissal with prejudice (Counts VIII, IX, and XI). However, the

7

R&R—in an apparent oversight—failed to apply the same logic to a fourth

8

counterclaim (Count VI) even though that claim suffers from the same infirmities.

9

DISH asserted four related, conspiracy-based counterclaims against Entropic

10

and MaxLinear, Inc. and MaxLinear Communications LLC (collectively,

11

"MaxLinear"), the prior owner of the patents-in-suit. Those four counterclaims are

12

conspiracy to defraud (Count VI), a conspiracy in restraint of trade under the

13

Sherman Act (Count VIII) and the Cartwright Act (Count IX), and unfair competition

14

under California law based on the same alleged conspiracy (Count XI). Central to all

15

four counterclaims was the allegation that Entropic and MaxLinear conspired to

16

"wash" away certain contractual obligations MaxLinear had to license the patents-

17

in-suit on terms that are reasonable and non-discriminatory ("RAND"). (DISH

18

Countercls. ¶¶ 124, 145, 152, 162 (Dkt. 316).) Common as well was DISH's

19

allegation that it suffered harm in the form of litigation expenses from having to

20

defend itself in the present suit. (*Id.* ¶¶ 130–31, 147, 155, 163.)

21

The R&R rightly rejected DISH's allegations as legally deficient. The R&R

22

rejected the "washing" theory because MaxLinear had in fact conveyed to Entropic,

23

by operation of law and contract, the obligation to license essential patent claims on

24

RAND terms. (Dkt. 446 at 19–20, 83.) The R&R also correctly applied the *Noerr-*

25

*Pennington* doctrine, which protects parties from liability for petitioning the

26

---

27

[1] "DISH" refers to DISH Network L.L.C., DISH Network Corporation; DISH
Network Service L.L.C., Dish Network California Service Corp., and DISH

28

Technologies L.L.C., as defined in DISH's pleading. (Dkt. 316 at 68.)

government for redress of grievances by filing lawsuits, to bar DISH's claims of injury from having to defend this suit. (*Id.* at 83–84.) Based on these determinations, the R&R correctly recommended dismissal of three of the four conspiracy-based counterclaims with prejudice (Counts VIII, IX, and XI). (*Id.* at 85.)

Unfortunately, this analysis was not performed for the fourth of the conspiracy-related claims, Count VI. The only finding in the R&R related to Count VI is a one-sentence statement that Count VI was pled with sufficient particularity under Fed. R. Civ. P. 9(b). (*Id.* at 78–79.) However, Count VI relies on the same deficient "washing" theory and the same deficient injury that the R&R determined warranted dismissal with prejudice for Counts VIII, IX, and XI. (Dkt. 316 ¶¶ 124, 130.) Thus, Count VI suffers from the same fatal defects, and no amount of detail could save it. (*See* Dkt. 446 at 86.) Because the R&R's own reasoning confirms that Count VI is not legally viable, Count VI should be dismissed with prejudice.

In the alternative, Entropic objects insofar as the R&R did not dismiss Count VI for failure to plead with particularity under Rule 9(b). The R&R mistakenly based its finding on the wrong part of DISH's pleading. In the section regarding ***Count VI***, the R&R quoted only ***Count V*** of DISH's counterclaim. This was a mistake because Count V alleges conduct of other companies, not Entropic, and thus does not and cannot state a claim as to Entropic.

Count VI should be dismissed with prejudice because, as the R&R correctly found, MaxLinear properly conveyed the RAND obligation to Entropic and the *Noerr-Pennington* doctrine bars DISH's antitrust and tort claims. Additionally, Count VI should be dismissed because DISH failed to plead it with particularity.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### a.   The RAND Obligation of the MoCA IPR Policy

The counterclaims at issue here arise out of contractual obligations the prior owners of the patents-in-suit incurred as part of their participation in the Multimedia over Coax Alliance ("MoCA"). MoCA is a standards-setting organization that

6

promulgates standards for networking over coaxial cabling. (Dkt. 316 ¶ 22.) As part of its standards-setting work, MoCA established an "Intellectual Property Rights" Policy ("MoCA IPR Policy") that bound certain of its members ("Alliance Parties") to various obligations regarding patent rights relevant to technical standards promulgated by MoCA. (*Id.* ¶ 28.) Each of Entropic's predecessors-in-interest to the patents-in-suit—Entropic Communications, Inc. and MaxLinear—are or were members of MoCA. (*Id.* ¶¶ 23, 43.)

Section 5.1.1 of the MoCA IPR Policy provides, in relevant part, that "upon the written request of any other then-current Alliance Party, each Alliance Party agrees to offer and attempt to negotiate a license to the requesting Alliance Party(ies), under the terms of a separate written agreement, such Alliance Party's and its Affiliates' Essential Patent Claims." (Entropic RJN, Ex. A, § 5.1.1 (Dkt. 364-1).) It further provides that "[s]uch licenses shall be non-exclusive, worldwide, and on fair, reasonable and nondiscriminatory terms and conditions (collectively, 'RAND')." (*Id.*) Section 5.1.2, in turn, provides that "the licensing obligations under this IPR Policy are intended to be binding (e.g., as encumbrances) on all successors-in-interest regardless of whether such provisions are included." (*Id.*)

### b.     Entropic Purchases Patents Subject to the RAND Obligation of the MoCA IPR Policy and Acknowledged that Obligation Before Suit

On March 31, 2021, Entropic and MaxLinear executed a Patent Purchase Agreement ("PPA") to sell MaxLinear's patents to Entropic. (DISH Countercls., Ex. 8 (Dkt. 316-7).) In ███████ of the PPA, MaxLinear notified Entropic it had made

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████████

On December 28, 2022, Entropic sent a letter to Tim Messner, then-General Counsel for DISH Network LLC. (Dkt. 316 ¶ 52; *see also id.* ¶ 49.) As DISH

7

concedes, Entropic committed in this letter "to licensing its patents that cover MoCA technology on reasonable terms, without discrimination among similarly-situated providers (often called 'RAND terms.')." (*Id.*, Ex. 9 (Dkt. 316-8).) Entropic then filed the present lawsuit on February 10, 2023. (Dkt. 1.)

     c.     **DISH Tries to Plead a Conspiracy to "Wash" the RAND Obligation**

On February 5, 2024, DISH filed its Answer and Counterclaims. (Dkt. 316.) Among DISH's counterclaims were four "conspiracy" or "combination" claims asserted against Entropic and MaxLinear: Count VI (conspiracy to defraud); Count VIII (Sherman Act combination in restraint of trade); Count IX (Cartwright Act combination); and Count XI (unlawful agreement under California Unfair Competition Law). These four claims rested on the common allegation that Entropic and MaxLinear had conspired to convey the patents-in-suit to Entropic in such a way as to supposedly "wash" away the obligation to license MoCA-essential patent claims on RAND terms. (Dkt. 316 ¶¶ 124, 145, 152, 162.) These four claims also plead the same injury, namely the expense of having to defend against Entropic's patent infringement suit. (*Id.* ¶¶ 130–31, 147, 155, 163.)

Entropic moved to dismiss these claims on several grounds. (Dkt. 374.) Entropic first argued that these claims failed because the "washing" theory was contrary to the plain terms of the PPA and the law of patent assignment, making it untenable as a matter of law. (*Id.* at 19–20.) Entropic further argued that these claims should be dismissed under the *Noerr-Pennington* doctrine because the sole alleged harm was from facing this suit, which is protected activity under the First Amendment. (*Id.* at 28–30.) And Entropic argued that Count VI was not pled with the particularity required by Rule 9(b) because it sounded in fraud but failed to allege the formation of a conspiracy or an act in furtherance of it. (*Id.* at 18–19.) Entropic's motion was referred to the Special Master on March 26, 2024. (Dkt. 431.)

     d.     **The R&R Determines the RAND Obligation was Conveyed by Operation of Law and Contract, Rejecting the "Wash" Theory**

8

1    The Special Master held a hearing on Entropic's motion on April 11 (Dkt. 446
2    at 3) and issued its Report and Recommendation on April 22 (*Id.*). The R&R
3    concluded that MaxLinear did convey its RAND obligation to Entropic by operation
4    of law and contract. Specifically, the R&R found that:

5    • "███████████ PPA demonstrates that the PPA indeed acknowledged
6      that the patents being assigned were subject to RAND obligations with
7      regard to MoCA." (*Id.* at 20.);

8    • "[N]ot only did MaxLinear put Entropic on notice of the MoCA RAND
9      obligations (and assign patents as being subject to such obligations), those
10     obligations 'r[a]n with the patent[s],' by operation of law, from MaxLinear
11     to Entropic." (*Id.* (internal alterations in original).);

12   • "[E]ntropic acknowledges that any RAND obligations necessarily ran with
13     the patents (including by operation of law) when MaxLinear assigned the
14     patents to Entropic." (*Id.* at 83.)

15   Thus, the R&R determined that DISH "does not state any plausible claim for
16   anticompetitive conduct based on any purported attempt to avoid the RAND
17   obligations." (*Id.*) On this basis, the R&R recommended granting Entropic's motion
18   to dismiss Counts VIII, IX, and XI with prejudice. (*Id.* at 85.)

19   The R&R also determined that Counts VIII, IX, and XI were barred under the
20   *Noerr-Pennington* doctrine. (*Id.* at 84.) The R&R determined that DISH could not
21   base its antitrust claims on Entropic filing suit unless DISH were to allege that
22   Entropic's patent infringement case was a sham, which DISH did not do. (*Id.* at 83.)
23   Accordingly, the R&R correctly concluded that "*Noerr-Pennington* thus bars DISH's
24   antitrust counterclaims even if DISH alleges that the royalties demanded by Entropic
25   are exorbitant." (*Id.* at 84.)

26   Although the R&R agreed with Entropic that the RAND obligation was
27   properly conveyed and that the *Noerr-Pennington* doctrine barred Counts VIII, IX,
28   and XI, it did not consider either issue in its analysis of Count VI. In fact, the R&R

did not address DISH's allegations in Count VI at all. Instead, the R&R quoted only Paragraphs 114–119 of DISH's Counterclaim from **Count V** and concluded with a single sentence that these allegations are "sufficient" at the pleading stage for **Count VI**. (*Id.* at 78.) Entropic now objects to the R&R's recommendation as to Count VI and seeks dismissal of Count VI with prejudice.

## III.   LEGAL STANDARDS

Objections to a Special Master's findings of fact and conclusions of law are reviewed de novo. Fed. R. Civ. P. 53(f)(3)–(4); (*see also* Order Appointing Special Master (Dkt. 74)). "The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the special master." *Pinn, Inc. v. Apple Inc.*, 2021 WL 4777134, at *2 (C.D. Cal. July 14, 2021) (quotations and citations omitted).

On a motion to dismiss, a claim may be dismissed with prejudice where it is contrary to law or contradicts the plain language of the agreement on which it is based. *See Valley Nat'l Bank v. Mundo Trucking*, 2021 WL 6882194, at *2 (C.D. Cal. Dec. 29, 2021); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

## IV.   ARGUMENT

### a.   Count VI Should be Dismissed with Prejudice Because the RAND Obligation Was Properly Conveyed to Entropic

The R&R correctly determined that "not only did MaxLinear put Entropic on notice of the MoCA RAND obligations (and assign patents as being subject to such obligations), those obligations 'r[a]n with the patent[s],' by operation of law, from MaxLinear to Entropic." (Dkt. 446 at 20 (alteration in original, citation omitted).) Accordingly, it correctly recommended dismissal with prejudice of Counts VIII, IX, and XI because they rested on the legally erroneous premise that MaxLinear had not conveyed those obligations. (*Id.* at 83–85.) The R&R erred, however, in overlooking that Count VI rested on this same erroneous premise. This oversight should be

10

corrected and Count VI should be dismissed with prejudice for the same reasons as Counts VIII, IX, and XI.

Count VI, like Counts VIII, IX, and XI, is predicated on the allegation that Entropic and MaxLinear conspired to "wash" away the RAND obligation associated with MoCA-essential patent claims. (*Compare* Dkt. 316 ¶ 124 ("[T]he purpose of this conspiracy was to launder the Asserted Patents, thus 'washing' them of the RAND encumbrances set forth in the MoCA IPR Policy.") *with id.* ¶ 144 ("MaxLinear and Entropic entered into this agreement in an attempt to 'wash' the Asserted Patents of any obligation to license on RAND terms."); *id.* ¶ 152 (same); *id.* ¶ 162 (asserting "unlawful" activity of "engaging in an assignment of the Asserted Patents in an attempt to 'wash' them of RAND encumbrances.")). Indeed, Count VIII explicitly incorporates the "conspiracy" allegations from Count VI as the basis for its alleged antitrust claim. (*Id.* ¶ 144.) DISH confirmed this overlap in its briefing, stating that Count VI "alleges a conspiracy between Entropic and MaxLinear to launder the asserted patents of the RAND promise attached to them," (DISH Opp'n at 20 (Dkt. 403)), and that the antitrust allegations "stem" from the same alleged scheme "to remove RAND encumbrances from the asserted patents," (*id.* at 33). Thus, Count VI is based on the same "washing" scheme as the other conspiracy-based counterclaims.

The R&R correctly determined that this "washing" theory failed as a matter of law. As the R&R noted, the PPA expressly identified MaxLinear's RAND obligation to MoCA as part of the assignments of the patents-in-suit. (Dkt. 316-7 ███████.) Because Entropic obtained the patents with notice of this obligation, MaxLinear properly conveyed the RAND obligation when it assigned those patents. (Dkt. 446 at 20, 83); *see also HTC Corp. v. IPCom GmbH & Co.*, 2010 WL 11719073, at *5 (D.D.C. Nov. 5, 2010) ("IPCom purchased the patent portfolio with full knowledge of Bosch's commitment to ETSI and full knowledge that the commitment was (and is) an encumbrance on the standards-essential patents."). And because DISH's theory

11

contradicted the PPA on which it was based, the R&R determined that Counts VIII, IX, and XI should be dismissed with prejudice as "unviable because of legal obstacles, not because of any lack of detail in the allegations." (Dkt. 446 at 86.)

Although this analysis was equally applicable to Count VI, the R&R did not apply it there. In its discussion of Count VI, the R&R quoted the parties' arguments on whether the RAND obligation had been conveyed—but did not address them. (*Id.* at 77.) Instead, the R&R block-quoted allegations from **Count V** and then concluded that **Count VI** was sufficiently pled. (*Id.* at 78.) This conclusion contradicts the rest of the analysis in the R&R and is thus an error.

As the R&R found, DISH's alleged "wash" conspiracy fails because it contradicts the PPA, not because of a "lack of detail." (*Id.* at 83, 86.) Count VI is based on the same deficient "washing" theory, and no level of detail can cure this fatal defect. *See Valley Nat'l Bank*, 2021 WL 6882194, at *2; *see also Sprewell*, 266 F.3d at 988. The R&R correctly determined that MaxLinear conveyed its RAND obligation to Entropic, but then failed to apply that determination to Count VI. This inconsistency should be fixed by dismissing Count VI with prejudice.

### b.   Count VI Should Be Dismissed with Prejudice Because It Is Barred by the *Noerr-Pennington* Doctrine

The R&R also determined that the *Noerr-Pennington* doctrine barred DISH's antitrust and state law unfair competition claims. Unfortunately, the R&R again did not analyze *Noerr-Pennington* with respect to Count VI, nor explain why it would not apply. Because Count VI is a state law tort claim that alleges the same harm (litigation expenses) as the other conspiracy-based counterclaims, it too is barred by the *Noerr-Pennington* doctrine.

*Noerr-Pennington* applies to state law tort claims, like Count VI, just as it applies to antitrust claims. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). The authority cited in the R&R recognized this, applying the doctrine to state law tort claims, including civil conspiracy. (Dkt. 446 at 84, citing

12

*In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 922 (N.D. Ill. 2013) (dismissing "RICO, unfair competition, civil conspiracy, intentional interference with prospective economic advantage, and unclean hands claims.")). Further, the Special Master correctly applied *Noerr-Pennington* to dismiss DISH's state law unfair competition claim because it was based on the same allegations as the antitrust claims, i.e., "Entropic and MaxLinear attempt[ed] to wash the patents of their RAND obligations." (Dkt. 446 at 85.) Count VI is likewise based on this same allegation, and thus should be dismissed with prejudice for the same reasons.

Further, DISH never argued that Count VI was distinguishable under *Noerr-Pennington* from the other conspiracy-based counterclaims. Rather, DISH argued only that *Noerr-Pennington* did not apply to **any** of its counterclaims because the alleged misconduct was the "the scheme to remove RAND encumbrances from the asserted patents," rather than the filing of the lawsuit. (Dkt. 403 at 33.) The R&R correctly rejected this "scheme" theory as legally deficient and thus rejected the only argument DISH had raised against applying *Noerr-Pennington* to Count VI.

In sum, the R&R correctly determined that *Noerr-Pennington* barred DISH's antitrust and state law unfair competition claims, but then neglected to apply that same doctrine to the state law conspiracy claim of Count VI in accordance with Ninth Circuit law and the authority cited by the R&R itself. This oversight should be corrected, and Count VI should be dismissed with prejudice for this reason, too.

### c. Alternatively, Count VI Should Be Dismissed Because DISH Failed to Plead a Claim for Conspiracy to Defraud

Count VI should be dismissed with prejudice because it contradicts the PPA on which it is based and because it is barred by the *Noerr-Pennington* doctrine. In the alternative, Count VI should be dismissed because it fails to plead facts with sufficient particularity required for fraud claims under Rule 9(b).

A claim for a conspiracy requires allegations of "(1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and

13

(3) damages arising from the wrongful conduct." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007). Where a claim asserts fraud as the underlying conduct, as here, Rule 9(b) applies and particularity is required at the pleading stage. *Jones v. Hollywood Unlocked, Inc.*, 2022 WL 18674459, at *15 (C.D. Cal. Nov. 22, 2022). Although the R&R stated that Count VI was adequately pled, it failed to analyze the correct allegations and thus reached the wrong conclusion.

In its discussion of Count VI, the R&R recounts DISH's allegations from **Count V** and then concludes in one sentence that these allegations are sufficient under Rule 9(b) as to **Count VI**. (Dkt. 446 at 78.) However, the allegations in Count V relate to events occurring years before Entropic purchased the patents-in-suit in 2021, and before it even existed as an entity. (*See* Dkt. 316 ¶ 115 (statements of different entity Entropic Communications, Inc. from 2012); *id.* ¶ 116 (statements of MaxLinear from 2015).) These allegations do not plausibly allege the formation of a conspiracy as to Entropic, and the R&R does not state how they could have done so.

DISH's actual allegations as to Count VI are similarly inadequate. These allegations largely repeat the deficient "washing" theory, (*id.* ¶ 124), or attempt to plead harm from protected activity (the filing of a patent infringement suit), (*id.* ¶ 130). And while DISH alleges that Entropic had not made an offer to license Entropic's patents, (*id.*), DISH never pleads that this alleged failure was an act in furtherance of any conspiracy. Nor could it do so, as MaxLinear conveyed to Entropic the RAND obligation under § 5.1.2 of the MoCA IPR Policy, as the R&R recognized. (Dkt. 446 at 20.) DISH does not plead—let alone in detail—how the PPA's explicit recognition of the RAND obligation could plausibly show a conspiracy to vitiate that obligation. DISH fails to plead any conspiracy to defraud with particularity, and its claim should be dismissed.

## V.    CONCLUSION

The Court should modify the R&R and dismiss Count VI with prejudice.

Dated: May 13, 2024

Respectfully submitted,

By:  _/s/ Douglas Jordan Winnard_
Michael T. Pieja (SBN 250351)
mpieja@goldmanismail.com
Alan E. Littmann (*pro hac vice*)
alittmann@goldmanismail.com
Douglas Jordan Winnard (SBN 275420)
dwinnard@goldmanismail.com
Shaun Zhang (*pro hac vice*)
szhang@goldmanismail.com.com
Jennifer M. Hartjes (*pro hac vice*)
jhartjes@goldmanismail.com
Kurt A. Holtzman (*pro hac vice*)
kholtzman@goldmanismail.com
Xaviere N. Giroud (*pro hac vice*)
xgiroud@goldmanismail.com
**GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP**
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191

Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
cassidy.young@klgates.com
Rachel Berman (SBN 352237)
rachel.berman@klgates.com
**K&L GATES LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

James A. Shimota (*pro hac vice*)
jim.shimota@klgates.com
Jason A. Engel (*pro hac vice*)
jason.engel@klgates.com

15

ENTROPIC'S OBJECTIONS TO SPECIAL MASTER
REPORT AND RECOMMENDATIONS

**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel.: (312) 372-1121
Facsimile: (312) 827-8000

Peter E. Soskin (SBN 280347)
peter.soskin@klgates.com
**K&L GATES LLP**
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
Telephone: (415) 882-8200
Facsimile: (415) 882-8220

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

16

ENTROPIC'S OBJECTIONS TO SPECIAL MASTER
REPORT AND RECOMMENDATIONS