BITA RAHEBI (CA SBN 209351)
brahebi@mofo.com
ALEX S. YAP (CA SBN 241400)
ayap@mofo.com
ROSE S. LEE (CA SBN 294658)
roselee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone:   (213) 892-5200
Facsimile:   (213) 892-5454

[Additional counsel on signature page]
Attorneys for Counter-Defendants,
MAXLINEAR, INC. and MAXLINEAR
COMMUNICATIONS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COX COMMUNICATIONS, INC.; COXCOM, LLC; AND COX COMMUNICATIONS CALIFORNIA, LLC,<br><br>Defendants, | Case No. 2:23-cv-1043-JWH-KES (lead)<br>Case No. 2:23-cv-1047-JWH-KES<br><br>Judge:   Hon. John W. Holcomb<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO FILED UNDER SEAL**<br><br>**COUNTER-DEFENDANTS MAXLINEAR, INC. AND MAXLINEAR COMUNICATIONS, LLC'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON MOTIONS REFERRED BY COURT ON FEBRUARY 9, 2024, AND MARCH 26, 2024** |
| COX COMMUNICATIONS, INC.; COXCOM, LLC; AND COX COMMUNICATIONS CALIFORNIA, LLC,<br><br>Counter-Claimants,<br><br>v.<br><br>ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR, INC.; AND MAXLINEAR COMMUNICATIONS LLC,<br><br>Counter-Defendants. | Action Filed:  Feb. 10, 2023<br>Am. Counterclaims Filed:  Jan. 9, 2024 |

# OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON MOTIONS REFERRED BY THE COURT ON FEBRUARY 9, 2024 AND MARCH 26, 2024

Pursuant to this Court's Order Appointing David Keyzer as Special Master and Federal Rule of Civil Procedure 53, MaxLinear, Inc. and MaxLinear Communications LLC (collectively, "MaxLinear") respectfully object-in-part to Special Master Report and Recommendation on Motions Referred by the Court on February 9, 2024, and March 26, 2024, entered on April 22, 2024 (ECF No. 446 (the "R&R")).  The R&R recommends that the Court grant-in-part and deny-in-part MaxLinear's Motion to Dismiss Amended Counterclaims by Cox Communications, Inc., CoxCom, LLC, and Cox Communications California LLC (collectively, "Cox").

For the reasons set forth in this objection, this Court should partly reject the R&R's recommendation with respect to Cox's counterclaims for breach of contract (Count I) and declaratory judgment (Count II) and dismiss all counterclaims by Cox against MaxLinear with prejudice.

MaxLinear's objection is based on this objection, the memorandum of points and authorities below, the Motion to Dismiss and exhibits, its Request for Judicial Notice and the exhibits thereto, the pleadings and papers on file, and any materials and argument presented to the Court at the time of the hearing.

Date: May 13, 2024       By:       */s/ Bita Rahebi*
                                         Bita Rahebi

                                 *Attorneys for Counter-Defendants*
                                 MAXLINEAR COMMUNICATIONS,
                                 LLC AND MAXLINEAR, INC.

# TABLE OF CONTENTS

                                                            **Page**

I. INTRODUCTION .................................................................................................. 5
II. BACKGROUND .................................................................................................... 6
    A. MoCA and the IPR Policy ........................................................................ 6
    B. Entropic's Lawsuit and Cox's Counterclaims ........................................... 7
III. ARGUMENT .......................................................................................................... 8
    A. The Cox Affiliates Lack Standing ............................................................ 8
    B. Cox's Breach of Contract Counterclaim ................................................... 9
        1. Cox's Interpretation of the IPR Policy's Transfer Provision Is Implausible ............................................................. 9
        2. No Cox Entity Has Standing to Enforce a Disclosure of MoCA's Confidential Information ................................................ 11
    C. Cox's Counterclaim for Declaratory Judgment ...................................... 12
        1. Cox Simply Rehashes Allegations from Its Breach of Contract Counterclaim ............................................................... 12
        2. Cox's Declaratory Judgment Counterclaim Seeks the Same Remedy as Its Breach of Contract Counterclaim ........... 14
IV. CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barrous v. BP P.L.C.*,
  2010 WL 4024774 (N.D. Cal. Oct. 13, 2010) ...................................................... 10

*Circle Inn Dev. & Mgmt., Inc. v. Glob. Signal Acquisitions IV LLC*,
  2022 WL 18585986 (C.D. Cal. June 14, 2022) ................................................... 10

*Cove Partners, LLC v. XL Specialty Ins. Co.*,
  2016 WL 461918 (C.D. Cal., Feb. 2, 2016) ......................................................... 12

*Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*,
  319 F. Supp. 2d 1094 (C.D. Cal. 2003) ................................................................. 8

*United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*,
  145 F. Supp. 3d 932 (C.D. Cal. 2015) .......................................................... 12, 14

**Statutes**

Cal. Civ. Code § 1638 .................................................................................................. 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The underlying dispute in this case is a simple patent infringement action between Entropic Communications, LLC ("Entropic") and several Cox entities. MaxLinear is not a party to those claims. MaxLinear sold the underlying Asserted Patents to Entropic in 2021, long before this action was filed. When MaxLinear transferred the Asserted Patents, it informed Entropic in the Patent Purchase Agreement ("PPA") that the patents were subject to a commitment to the Multimedia over Coax Alliance ("MoCA") to license on reasonable and non-discriminatory ("RAND") terms. Entropic agrees that the Asserted Patents are subject to MoCA RAND obligations. Cox's counterclaims allege that the Asserted Patents are subject to MoCA RAND obligations.

Despite all this, Cox seeks to drag MaxLinear into this litigation, asserting a host of counterclaims premised on the theory that MaxLinear attempted to circumvent MoCA's RAND obligations, did not transfer its patents subject to MoCA's RAND obligations or to another MoCA member, and breached MoCA's confidentiality obligations. These counterclaims have no merit and are irreconcilable with the express language of the relevant agreements. The Court should reject Cox's attempt to complicate this litigation and dismiss its counterclaims against MaxLinear with prejudice.

Dismissal with prejudice in full is the correct outcome. In view of the Special Master's correct assessments of the law and the facts, it is the logically inescapable outcome. The Special Master found: (1) when MaxLinear transferred the Asserted Patents to Entropic, it assigned those patents subject to MoCA RAND obligations; (2) through the PPA, MaxLinear expressly put Entropic on notice that those patents were subject to the MoCA RAND obligations; and (3) the MoCA RAND obligations ran from MaxLinear to Entropic as a matter of law. (R&R at 20.) MaxLinear did everything that the law and its MoCA duties required of it.

Cox's remaining misinterpretations of the relevant provisions of the IPR Policy, and its intentional avoidance of its own Promoter Agreement, appear to have led the Special Master to draw incorrect conclusions from his original, fundamentally correct, view of MaxLinear's transfer obligations, and ability to transfer its patents to Entropic. Based on these mistakes, it would be error to adopt it the R&R in its entirety.

Correcting these mistakes, however, would affirm the vast majority of the R&R and correctly leave undisturbed the Special Master's key findings. The Court should correct those mistakes and dismiss MaxLinear from the case.

## II.   BACKGROUND

### A.   MoCA and the IPR Policy

MoCA is a non-profit corporation that serves as a standard-setting organization for wired Internet home networking technologies. It formed to "develop[] and promot[e] specifications for the transport of digital entertainment and information content over in-home coaxial environments" and to "develop a certification process for products implementing the specifications to ensure interoperability between products and manufacturers." (IPR Policy § 1 (Case No. 23-cv-01047, ECF No. 94-1).)

Companies wanting to gain access to these specifications are required to enter into membership agreements with MoCA, which include Promoter Agreements. (*See* IPR Policy § 2 ("'Applicable Agreement' means the agreement that governs the relationship between an Alliance Party and the Alliance at the time an issue arises, including without limitation Promoter Member Agreement.").) Included in these membership agreements is a provision that ██████████ ████████████████████ of MoCA's IPR Policy, which "outlines the policy of the Alliance regarding the incorporation and use of certain proprietary materials" in MoCA standards. (IPR Policy § 1; s*ee also* ECF No. 337 ("Promoter Agreement") § 3.1.) The IPR Policy imposes upon MoCA's members—known as Alliance

Parties—and their affiliates a limited obligation to license "Essential Patent Claims" on RAND terms. (IPR Policy §§ 2, 5.1.1.)

### B. Entropic's Lawsuit and Cox's Counterclaims

Three years ago, MaxLinear sold some of its patent portfolio to Entropic, including patents related to MoCA technologies. In February 2023, Entropic filed the underlying lawsuit based on Cox's alleged infringement of those patents. According to Entropic, Cox took "advantage of MoCA without paying appropriate licensing fees for the technology." (Case No. 23-cv-01047, ECF No. 1 ¶ 4.)

Cox filed counterclaims against MaxLinear in October 2023 and amended counterclaims in January 2024. Cox alleges that MaxLinear "sought to avoid encumbrances on its patents" under the IPR Policy by transferring MoCA patents to Entropic and that MaxLinear breached its confidentiality obligations to MoCA because Entropic used confidential MoCA standards to bring suit. (ECF No. 276 ("Countercls." or "Counterclaims") ¶¶ 515, 576.) Cox also alleges that, "to the extent the Asserted Patents contain patent claims essential to the MoCA standard, Cox is entitled to receive an appropriate license on FRAND terms from MaxLinear, and only MaxLinear." (*Id.* ¶ 579.)

On February 6, 2024, MaxLinear moved to dismiss all counterclaims asserted against it by Cox. (ECF No. 335 ("Mot." or "Motion").) The Motion sought dismissal based on numerous grounds. Among others, (1) Cox lacked Article III standing, (2) its non-MoCA member affiliates were not third-party beneficiaries to the IPR Policy, and (3) its counterclaims were facially implausible based on its own allegations and the provisions of the IPR Policy and Cox Promoter Agreement.

The Special Master issued the R&R, which recommended that the Court grant MaxLinear's motion to dismiss Cox's counterclaims for unjust enrichment/quasi contract (Count IV) and further recommended that the Court deny MaxLinear's motion as to Cox's counterclaims for breach of contract (Count I) and declaratory judgment (Count II). (*See generally* R&R.)

## III. ARGUMENT

### A. The Cox Affiliates Lack Standing

MaxLinear demonstrated that CoxCom and Cox California (collectively, the "Cox Affiliates") are neither Alliance Parties nor intended beneficiaries of the MoCA IPR Policy in view of the Promoter Agreement, and therefore lack standing to bring their counterclaims against MaxLinear. (*See* Mot. at 15-17.) In rejecting this argument, the R&R applied an incorrect legal standard and disregarded the express language of the relevant agreements.

The R&R applies New York law regarding third party beneficiaries (R&R at 41), but California law—███—is clear that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638; (*see* Promoter Agreement § 9.6 (███)); *see also Nat'l Rural Telecomms. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1094, 1100 (C.D. Cal. 2003) ("[A] contract must be made *expressly* for the benefit of a third party for that party to enforce the contract as a third-party beneficiary.") (emphasis added) (quoted at Mot. at 23). Here, the IPR Policy is not a standalone contract, but it is rather ███. (*See* Promoter Agreement § 3.1 (███).) And the plain, unambiguous text of the Promoter Agreement ███ (*Id.* § 6 (emphasis added); *see also* Mot. at 15-16; Reply (ECF No. 426) at 12.)

The R&R does not discuss ▓▓▓▓ of the Promoter Agreement, which is dispositive as to the Cox Affiliates.  Instead, the Special Master determines that Section 1 of the IPR Policy—which vaguely states that the IPR Policy "is intended to maximize the likelihood of widespread adoption of [MoCA] specifications"—is sufficient under the law to afford beneficiary status.  (*See* R&R at 41.) ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and this language governs under California law.  The Court should hold that the Cox Affiliates are not intended third-party beneficiaries.

### B. Cox's Breach of Contract Counterclaim

#### 1. Cox's Interpretation of the IPR Policy's Transfer Provision Is Implausible

Cox contends that MaxLinear breached the IPR Policy by allegedly attempting to transfer the Asserted Patents free of MoCA's RAND obligations, failing to retain the ability to grant licenses, and transferring the Asserted Patents to Entropic, a non-Alliance Party.  (*See* Countercls. ¶ 576.)  The R&R correctly rejects most of these theories by determining that the MoCA RAND obligations were properly transferred to Entropic along with the Asserted Patents, but it is also led by Cox to an implausible interpretation of the IPR Policy regarding to whom MaxLinear could transfer its patents.  (*See* R&R at 20-22.)

The R&R correctly rejected the first two theories out of hand.  It determined that the MoCA RAND obligations were properly transferred to Entropic along with the Asserted Patents.  Specifically, the Special Master rejected much of Cox's breach of contract counterclaim, because "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ of the PPA demonstrates that the PPA indeed acknowledged that the patents being assigned were subject to RAND obligations with regard to MoCA."  (R&R at 20:7-9 (discussing Entropic's motion to dismiss Cox's counterclaims).)  He was also correct in determining that Cox's interpretation of Section 4.1.2 as requiring MaxLinear to retain the right to license is inconsistent with Section 5.1.2

contemplating the assignment of patents. (*Id.* at 19:5-10.)

However, the R&R erred on the third theory of breach by accepting, at face value, Cox's implausible interpretation of the IPR policy, which Cox asserts in an attempt to muddy the waters over to *whom* MaxLinear could transfer its patents. (*See* R&R at 20-22.) Cox alleges that, even though MaxLinear properly transferred its patents subject to the obligations in the IPR Policy, MaxLinear could never actually transfer its patents to Entropic in the first place. It claims that Section 4.1.1 of the IPR Policy requires Essential Patent Claims to always be owned by an Alliance Party. (*See* R&R at 52; *see also* IPR Policy § 4.1.1.) Cox's interpretation not only lacks common sense, but the text of the IPR Policy directly contradicts it. The Court can and should reject this theory. *See Barrous v. BP P.L.C.*, 2010 WL 4024774, at *4 (N.D. Cal. Oct. 13, 2010) ("A court may resolve contractual claims on a motion to dismiss if the terms of the contract are unambiguous.").

Section 5.1.2 of the IPR Policy contemplates the "sale, assignment or other transfer by an Alliance Party or its Affiliates to an *unaffiliated third party*," including non-Alliance Parties like Entropic. (IPR Policy § 5.1.2 (emphasis added).) Cox cannot assert a counterclaim for breach of contract based on something the contract expressly permits. *See Circle Inn Dev. & Mgmt., Inc. v. Glob. Signal Acquisitions IV LLC*, 2022 WL 18585986, at *4 (C.D. Cal. June 14, 2022) (Holcomb, J.) Cox's interpretation of Section 4.1.1 would otherwise render the text of Section 5.1.2 meaningless.

Unable to rebut this point in its briefs, Cox raised—for the first time at the April 11 Special Master hearing—a novel interpretation of Section 5.1.2. Cox suggested that "unaffiliated third party" *really* means other MoCA members, rather than actual unaffiliated third parties like Entropic. (*See* R&R at 21-22.)

The trouble is, that specious interpretation chafes with the language chosen in other provisions of the IPR Policy. For starters, the definition of "Essential Patent Claims" refers to "unaffiliated third parties" as including non-Alliance Parties. (*See*

IPR Policy § 2.)  Later, Section 5.3 states, "[t]he Alliance Parties agree that no license, immunity or other right is granted under this IPR Policy by ***any Alliance Party or its Affiliates to any other Alliance Parties or their Affiliates*** or to the Alliance…."  (IPR Policy § 5.3 (emphasis added).)  When the MoCA IPR policy refers to MoCA members who are ***also*** unaffiliated with the assignor, it uses the common-sense language like "other Alliance Parties," not "unaffiliated third parties."  If MoCA desired to limit transfer of patents only to the handful of other MoCA members—an unusually draconian encumbrance—it would have used this language to do so.

Cox also contended that Section 5.1.2 "requires assignors to contractually impose obligations that will apply regardless of a party's MoCA membership status at any particular time."  (R&R at 21:9-13.)  But this reading nullifies Section 5.1.2.  Sections 5.1.1 and 7.1 already obligate MoCA members, whether currently a member or not, to offer MoCA RAND licenses.  (*See* IPR Policy §§ 5.1.1 ("each Alliance Party agrees to offer and attempt to negotiate a license to the requesting Alliance Party(ies)"), 7.1 ("the terminated Alliance Party and its Affiliates shall, after such termination, continue to offer and to license to any other Alliance Parties the terminated Alliance Party's (and its Affiliates') Essential Patent Claims as provided in Sections 5.1").)

The only plausible interpretation of "unaffiliated third parties" is therefore "non-MoCA members."  Cox's interpretation of Section 4.1.1 that MoCA members must always own essential patents cannot plausibly be reconciled with Section 5.1.2's allowance of transfers to non-MoCA members.

**2.   No Cox Entity Has Standing to Enforce a Disclosure of MoCA's Confidential Information**

Cox's breach counterclaim includes allegations of improper disclosure of MoCA's confidential information.  Cox claims that because Entropic alleged Cox infringes MoCA standards, which are MoCA's confidential information, Entropic

must have received the standards from MaxLinear. (Countercls. ¶ 569.) The R&R discusses the factual sufficiency of Cox's allegations, but it does not address Cox's standing to sue on behalf of MoCA for the alleged disclosure. (See R&R at 52.)

█████████████████████████████████████████████████████████████

█████████████████████████████. (See Promoter Agreement § 4.6 (████

███████████████████████████████████████████████████████████████

██████████████████████████████████████).) Cox alleges a breach of confidentiality obligations, but ████████████████████████████████

██████████████████████████.

However, Cox terminated its Promoter Agreement before it, or Entropic, filed suit. (See Countercls. ¶ 552 (Cox "remained a member of MoCA until approximately July, 2022").) █████████████████████████████

████████████████████████. (See Promoter Agreement § 7.4 (█

████████████████████████████████████████).) Cox therefore has no standing to sue for breach of the Promoter Agreement confidentiality restrictions.

### C.   Cox's Counterclaim for Declaratory Judgment

Cox's counterclaim for declaratory judgment is entirely redundant with its breach of contract counterclaim. It makes the same allegations and seeks the same remedies. As a duplicative counterclaim, it merits dismissal under settled law.

#### 1.   Cox Simply Rehashes Allegations from Its Breach of Contract Counterclaim

Where the allegations of declaratory judgment claim "are merely duplicative recitations of [its] breach of contract claim," the "declaratory judgment claim is entirely based on and adequately represented within [its] breach of contract claim." *United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015). Accordingly, "a federal court may decline to address a claim for declaratory relief where the substantive claims would resolve the issues

raised by the declaratory action." *Cove Partners, LLC v. XL Specialty Ins. Co.*, 2016 WL 461918, at *12 (C.D. Cal., Feb. 2, 2016) (citation omitted).

That is the case here, as Cox's declaratory judgment allegations merely repeat and recharacterize its allegations for breach of contract:

| Breach of Contract | Declaratory Judgment |
|---|---|
| (b) breaching its agreement that it would own any necessary patents | (1) promise that it would exclusively own the relevant intellectual property necessary to the MoCA standards |
| (c) breaching its representation, warranty and covenant that MaxLinear would maintain the power and authority to grant patent licenses as required under the IPR Policy | (2) representation, warranty and covenant that it would have the power and authority to bind itself to the obligations of the IPR Policy |
| (d) breaching its promise not to transfer patents so as to circumvent the obligation to grant licenses | (3) promise that it "has not and will not intentionally transfer" its patents "for the purpose of circumventing the obligation to grant licenses" per the IPR Policy |
| (e) improperly assigning the Asserted Patents free of any encumbrances, including those created by the IPR Policy | (4) promise that "any sale, assignment or other transfer" of relevant patents "shall be made subject to" the IPR Policy; |
| (f) executing assignment agreements that omit the provisions required by the IPR Policy | (5) promise to include in any relevant assignment a "provision that such transfer or assignment is subject to existing licenses and obligations to license imposed on the Alliance Party |

| | |
|---|---|
| | by this Agreement and the Alliance Bylaws." |

(*Compare* Countercls. ¶ 576 *with* ¶ 581.)

### 2. Cox's Declaratory Judgment Counterclaim Seeks the Same Remedy as Its Breach of Contract Counterclaim

In addition to recycling allegations, the relief sought by Cox's declaratory judgment counterclaim is already subsumed by the relief sought by its breach of contract counterclaim.

Hoping to avoid dismissal, Cox turned to the square-rectangle argument that its counterclaims seek "two different types of remedies"—"damages, specific performance, and injunctive relief" on one end and "a declaration that the assignment from MaxLinear to Entropic is void" on the other. (R&R at 53:18-19, 54:12-16.) Although Cox's breach counterclaim seeks forms of relief beyond just voiding the PPA, voiding the PPA is available for, and requested in, Cox's breach counterclaim. Thus, it is subsumed. Cox in-part "seeks a finding that, in view of MaxLinear's breaches, any agreement purporting to assign the asserted patents is void." (Counterclaims ¶ 579 (breach of contract counterclaim).) Conversely, Cox also seeks a declaration "voiding the agreements assigning the Asserted Patents to Plaintiff." (*Id.* ¶ 582 (declaratory judgment).) The relief obtainable by Cox's declaratory judgment counterclaim is entirely redundant.

The R&R missed an opportunity to dismiss what is fundamentally an extraneous cause of action. Dismissal with prejudice is appropriate under settled case law. *See United Safeguard Distribs. Ass'n, Inc.*, 145 F. Supp. 3d at 961 (dismissing with prejudice declaratory relief claim which was "entirely based on and adequately represented within their breach of contract claim").

### IV.  CONCLUSION

For the foregoing reasons, MaxLinear respectfully requests that the Court modify the R&R and dismiss all counterclaims against MaxLinear with prejudice.

| | | |
|---|---|---|
| 1 | Dated: May 13, 2024 | MORRISON & FOERSTER LLP |

By: */s/ Bita Rahebi*
Bita Rahebi

BITA RAHEBI (CA SBN 209351)
brahebi@mofo.com
ALEX S. YAP (CA SBN 241400)
ayap@mofo.com
ROSE S. LEE (CA SBN 294658)
roselee@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Telephone: (213) 892-5200
Facsimile: (213) 892-5454

RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Palo Alto, California 94304-1018
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

JOHN R. LANHAM (CA SBN 289382)
jlanham@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130-2040
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

*Attorneys for Counter-Defendants*
MAXLINEAR, INC. and
MAXLINEAR COMMUNIATONS LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief contains 3003 words, which complies with the word limit of L.R. 11-6.1

Dated: May 13, 2024                    By: /s/ Bita Rahebi
                                              Bita Rahebi