KILPATRICK TOWNSEND & STOCKTON LLP
April E. Isaacson (SBN 180638)
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran (SBN 347617)
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell (*pro hac vice*)
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba (*pro hac vice*)
wkadaba@kilpatricktownsend.com
Michael J. Turton (*pro hac vice*)
mturton@kilpatricktownsend.com
Courtney S. Dabbiere (*pro hac vice*)
cdabbiere@kilpatricktownsend.com
Christopher S. Leah (*pro hac vice*)
cleah@kilpatricktownsend.com
Andrew Saul (*pro hac vice*)
asaul@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.; CoxCom, LLC; and*
*Cox Communications California, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> COX COMMUNICATIONS, INC.; COXCOM, LLC; and COX COMMUNICATIONS CALIFORNIA, LLC, <br><br> Defendants. | LEAD CASE: <br> Case No. 2:23-cv-1043-JWH-KES <br><br> RELATED CASE: <br> Case No. 2:23-cv-1047-JWH-KES <br><br> **COX DEFENDANTS' RESPONSE TO MAXLINEAR'S OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON MOTIONS REFERRED BY THE COURT ON FEBRUARY 9, 2024** |

**REDACTED DOCUMENT SOUGHT TO BE SEALED**

1   COX COMMUNICATIONS, INC.,
2   COXCOM, LLC, AND COX
    COMMUNICATIONS CALIFORNIA,
    LLC,
3                Counter-Claimants,

4          v.

5   ENTROPIC COMMUNICATIONS, LLC;
    MAXLINEAR COMMUNICATIONS
6   LLC; AND MAXLINEAR, INC.

7            Counter-Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MaxLinear's Objections (DE 469-1) ("Obj.") to the Report and Recommendation (DE 446) ("R&R") reiterate the same flawed arguments Special Master Keyzer correctly rejected. The Court should reject MaxLinear's objections.

## I.    RESPONSE TO OBJECTIONS

### A.    The Cox Affiliates Have Standing

CoxCom and Cox California (the "Cox Affiliates")—affiliates of prior MoCA Alliance Party Cox Communications, Inc.—have standing at least because Cox has plausibly pled they are intended beneficiaries of the IPR Policy. (DE 446 at 40-41.) The counterclaims explain the IPR Policy's stated objective is "to maximize the likelihood of widespread adoption of [the MoCA] specifications," which necessarily encompasses having Alliance Parties receive RAND licenses on behalf, and for the benefit, of their affiliates. (DE 266-1, ¶ 541 (citing DE 96 at § 1).) The Ninth Circuit has declared a RAND agreement's main "purpose…is to promote adoption of a standard by decreasing the risk of hold-up," without subjecting implementers to a "flood of litigation" that would "discourage" standard adoption. *Microsoft Corp. v. Motorola, Inc*., 795 F.3d 1024, 1052 (9th Cir. 2015).

Thus, though not Alliance Parties, the counterclaims show the Cox Affiliates, as MoCA users and affiliates of Cox Communications (DE 261-1, ¶¶ 551-54), expected to and were entitled to receive a RAND license under the IPR Policy, even if via Cox Communications invoking its rights and privileges as an Alliance Party. And because of MaxLinear's breaches, the Cox Affiliates suffered the injury of being subjected to Entropic's demands and claims, and the remedy they seek is to "receive an appropriate license on FRAND terms from MaxLinear, and only MaxLinear." (*Id.*, ¶ 579.) Cox's averments, combined with the provisions of the IPR Policy and the underlying meaning of a "non-discriminatory" license, suffice at this stage to plausibly allege the Cox Affiliates are third party beneficiaries and have suffered injury providing a basis for the breach claim against MaxLinear. *See Safari v. Whole Foods Mkt. Servs., Inc.*, 2023 WL 5506014, at *5 (C.D. Cal. July 24, 2023).

1    MaxLinear's objection to the R&R's consistent finding falls flat. First,
2    MaxLinear criticizes the R&R's citation of New York law on third party beneficiaries.
3    (Obj. at 8). But the standards are the same under either California or New York law.
4    *Compare* DE 446 at 41 (citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap.*
5    *Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012)) *with Steines v. Crown Media United*
6    *States, LLC*, 2018 WL 6330600, at *7 (C.D. Cal. Dec. 4, 2018). Thus, the R&R's
7    citation of a Second Circuit case is of no import because, as set forth above, Cox's
8    averments plausibly allege the IPR Policy intended to benefit the Cox Affiliates, as
9    required under California law. (DE 446 at 41.) Moreover, unlike the case MaxLinear
10   cites, Cox's averments demonstrate the Cox affiliates have an interest in the IPR
11   Policy, which is the subject of Cox's breach claim. *See Nat'l Rural Telecomms. Co-*
12   *op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1094, 1100 (C.D. Cal. 2003); Obj. at 8.

13           Second, MaxLinear incorrectly asserts Section 6 of the Promoter Agreement is
14   dispositive and denies the Cox Affiliates any rights under the IPR Policy. (Obj. at 8-
15   9.) The R&R appropriately disregarded this argument in light of the IPR Policy
16   provisions. The R&R cites *Bayerische* for the point that determining intent for a
17   clause stating third parties had no rights "except as otherwise specifically provided
18   herein" required examination of the whole contract. 692 F.3d at 52-58. The Ninth
19   Circuit follows the same rule—"the 'primary rule of interpret[ing]' contracts under
20   California law: to give effect to the parties' mutual intent gathered from the ***entire***
21   document." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1046 (9th
22   Cir. 2020) (citation omitted).

23           MaxLinear's myopic focus on Section 6 of the Promoter Agreement improperly
24   disregards the IPR Policy provisions Cox identifies. Moreover, its assertion that
25   Section 6 denies the Cox Affiliates any rights under the IPR Policy is wrong. Neither
26   the IPR Policy nor the Promoter Agreement prevents Cox Communications from
27   demanding, as it has through its counterclaims, a RAND license on behalf of the Cox
28   Affiliates. To the contrary, as the R&R notes, the IPR Policy, including at § 5.1.1 and

§ 1, provides that an Alliance Party can request a RAND license, and Cox's counterclaims sufficiently aver the Cox Affiliates were intended beneficiaries of the IPR Policy and could, including through their affiliation with Cox Communications, reap the benefits of the RAND licensing obligations. (DE 446 at 40-41; DE 266-1, ¶ 541.) Thus, the R&R correctly found the Cox Affiliates have standing.

### B.    The R&R Correctly Recommended Denying MaxLinear's Motion to Dismiss Cox's Breach of Contract Counterclaim

Cox's counterclaims point to multiple breaches by MaxLinear of the obligations in the IPR Policy, including transferring the asserted patents to Entropic without encumbrances (DE 266-1, ¶¶ 538-50, 556-73, 576) and disclosing confidential MoCA materials to Entropic (*id.*, ¶¶ 559-60, 565-66). Contrary to MaxLinear's assertion, the R&R concludes Cox plausibly averred a breach of contract claim against MaxLinear and a tortious interference claim through inducement of such breach against Entropic and, for the reasons in Cox's Objections (DE 488), Cox's other breach of contract averments are plausible. (*Id.* at 2-9.) In any event, MaxLinear objects to two specific findings in the R&R: that Cox plausibly alleges that (1) the IPR Policy limits patent ownership to Alliance Parties (Obj. at 20-22); and (2) MaxLinear provided confidential MoCA information and materials to Entropic in breach of MaxLinear's obligations (*id.* at 22-25, 52; Obj. at 9-12.) As set forth below, the R&R's analyses and conclusions are correct, and MaxLinear's objections to the contrary were correctly considered and rejected.

### 1.    Cox's Interpretation of the IPR Policy is Plausible

The R&R correctly concluded Cox plausibly alleges MaxLinear breached § 4.1.1 in assigning patents to Entropic, who is not an Alliance Party. So long as the complaint offers "a reasonable interpretation of the contract," dismissal of a contract claim is improper. *Sisley v. Sprint Commc'ns Co., L.P.*, 284 F. App'x 463, 466 (9th Cir. 2008); *see also Ass'n of L.A. City Attorneys v. City of Los Angeles*, 2012 WL 12887541, at *6 (C.D. Cal. Nov. 20, 2012). Under this rule, the R&R's finding should

1   be adopted and MaxLinear's motion to dismiss should be denied. (DE 446 at 13, 22.)

2          MaxLinear nonetheless urges the Court to reject Cox's theory as implausible.

3   But rather than addressing the clear language in § 4.1.1, MaxLinear instead says that

4   language should be ignored based on its interpretation of "unaffiliated third parties"

5   appearing in a transfer provision, § 5.1.2. According to MaxLinear, the transfer

6   provision conflicts with § 4.1.1 because it allows assignment to "unaffiliated third

7   parties," which MaxLinear says must refer to more than third parties who are or

8   become a MoCA member yet are unaffiliated with the assigning Alliance Party. (Obj.

9   at 10.) This convoluted attack on § 4.1.1 does nothing to show that Cox's averments

10  are implausible. In any event, MaxLinear is incorrect and, as detailed below, the

11  provisions of the IPR Policy confirm Cox's interpretation is plausible.

12         First, § 4.1.1 expressly requires Alliance Parties to own relevant intellectual

13  property: "All right, title and interest in and to Alliance Party Intellectual Property

14  shall be owned exclusively by the Alliance Party(ies) who developed the Intellectual

15  Property or by the Alliance Party(ies) to whom the Intellectual Property was properly

16  and legally assigned." (DE 96, § 4.1.1.) This is consistent with the IPR Policy's stated

17  purpose: "to maximize…widespread adoption" of specifications for "which

18  intellectual property rights will attach" that "may be owned by either the [MoCA]

19  Alliance or one or more Alliance Parties," like MaxLinear. (*Id.*, at § 1.) It then

20  mandates such intellectual property "shall" be owned by either "the Alliance

21  Party(ies) who developed the Intellectual Property or by the Alliance Party(ies) to

22  whom the Intellectual Property was properly and legally assigned." (DE 266-1, ¶ 547

23  (citing DE 96 at Definitions, § 4.1.1)); *see, e.g.*, *United States v. Kahn*, 5 F.4th 167,

24  174 (2d Cir. 2021) ("The word 'shall,' in a statute, indicates a command; what follows

25  the word 'shall' is 'mandatory, not precatory.'" (citing *Mach Mining, LLC v.

26  E.E.O.C.*, 575 U.S. 480, 486 (2015)); *Gilda Indus., Inc. v. United States*, 622 F.3d

27  1358, 1364 (Fed. Cir. 2010) (citing cases).

28         Second, contrary to MaxLinear's assertion, § 5.1.2 ("Transfer of Essential

Patent Claims") does not override the "mandatory, not precatory" command of § 4.1.1 requiring Alliance Party's to own relevant intellectual property. Section 5.1.2 governs transfer of any patent rights that "reasonably may contain or result in" an "Essential Patent Claim." The first sentence specifies that "[a]ny sale, assignment or other transfer" of such property "to an ***unaffiliated third party***…shall be subject to the terms in this IPR Policy." (DE 96, § 5.1.2 (emphasis added); DE 266-1, ¶¶ 549-50, 556-61.) This does not override § 4.1.1. Nor does it say that Essential Patent Claims can be assigned to anyone. Rather, when read in the context of the IPR Policy, including § 4.1.1, "unaffiliated third party" means a third party that is an Alliance Party or joins MoCA to become an Alliance Party, but is unaffiliated with the assignor. The R&R correctly concluded this is a harmonious, and plausible, reading of the two clauses that neither impermissibly erases the requirements of § 4.1.1, nor renders § 5.1.2 meaningless, as MaxLinear incorrectly suggests (Obj. at 10).

Third, the definition of Essential Patent Claims in § 2 likewise does not override the clear language of § 4.1.1. According to MaxLinear, the definition of Essential Patent Claims refers to "unaffiliated third parties" as including non-Alliance Parties, thereby making Cox's harmonious reading of § 4.1.1 and § 5.1.2 implausible. (Obj. at 10-11.) MaxLinear's interpretation is, once again, incorrect. Critically, Essential Patent Claims "means those claim(s) in issued patents…, or that issue from patent applications, anywhere in the world for which an Alliance Party or any of its Affiliates has the right, at any time during the term of the IPR Policy, to grant licenses…" (DE 96, § 3.) This is consistent with Cox's interpretation of § 4.1.1 as requiring an Alliance Party own the relevant intellectual property and maintain the right to license essential intellectual property.

MaxLinear asserts, however, that because the definition goes on to ***exclude*** any patent claim whose license requires consent from or payment "to unaffiliated third parties (except for unaffiliated third parties that share licensing revenue with the relevant Alliance Party" or Affiliates thereof, this shows Cox's interpretation of

"unaffiliated third party" in implausible. (Obj. at 10-11.) Not so. But even under MaxLinear's view, this part of the definition is **excluding** from the IPR Policy essential patent claims owned by third party, non-MoCA members. This is likewise consistent with Cox's interpretation of § 4.1.1 as it limits the scope of the IPR Policy to essential patent claims owned by Alliance Parties. Additionally, and more critically, this part of the definition has no bearing on whether Alliance Parties must own the relevant intellectual property.

MaxLinear also says the reference in § 5.3 ("No Other Licenses") to "other Alliance Parties" shows an instance where "the MoCA IPR Policy refers to MoCA members who are **also** unaffiliated with the assignor," and MoCA would have used that language over "unaffiliated third party." (Obj. at 11.) A far more direct application of such logic, however, is that if MoCA did not want to require ownership to reside in current or future MoCA members, it would have altogether omitted § 4.1.1, which mandates that "Intellectual Property shall be owned exclusively by the Alliance Part(ies) who developed" it or to whom it "was properly and legally assigned." But it did not. And § 5.3 is consistent with § 4.1.1. Section 5.3 protects only Alliance Parties by limiting any implied licenses. (DE 96, § 5.3.) The prohibition in § 5.3 does not extend to non-MoCA members, which is consistent with § 4.1.1's requirement that relevant intellectual property is only ever going to be owned by Alliance Parties.

Indeed, MoCA's inclusion of this ownership requirement makes sense given (1) MoCA's entire purpose was to spread adoption of the relevant standards by, among other things, expanding its membership base and (2) the standards were confidential, so the very act of accessing standards to assess essentiality required MoCA membership. Requiring MoCA members to own essential patents, ensured assignees would join MoCA and shoulder the benefits and burdens of the IPR Policy.

MaxLinear never grapples with these points; instead, MaxLinear reprises Entropic's rejected argument that § 5.1.2 ("Transfer of Essential Patent Claims")

would be unnecessary under Cox's interpretation because MoCA already includes provisions obligating MoCA members to offer MoCA RAND licenses. (*Compare* Obj. at 11 *with* DE 446 at 21.) Section 5.1.2 states "***any*** agreement for transferring or assigning" such actual or potential essential patents must "include[] ***a provision*** that such transfer or assignment is subject to existing licenses ***and obligations to license imposed on the Alliance Party*** by this Agreement and the Alliance Bylaws…." (DE 96, § 5.1.2.) The R&R properly rejected this argument because, as Cox explained, this requirement in § 5.1.2 accounts for the fact that, over time, parties join MoCA and parties leave MoCA, and thus requires assignors to contractually impose obligations that will apply regardless of whether a party's MoCA membership status at a particular time. (DE 446 at 21.)

Finally, and critically, MaxLinear's argument that § 5.1.2 contemplates the "sale, assignment or other transfer by an Alliance Party or its Affiliates" to non-Alliance Parties like Entropic (Obj. at 10) contradicts the very sentence it relies on in § 5.1.2, which states "[a]ny sale … ***shall be made subject to the terms*** in this IPR Policy." (DE 96, § 5.1.2 (emphasis added).) MaxLinear never explains how the, at best, entirely indirect and non-specific reference to "unaffiliated third party" overrides this command that a sale "shall" be subject to other terms including § 4.1.1 mandating that Alliance Parties "shall" own the relevant IP. *See, e.g., Kahn*, 5 F.4th at 174. Nor can it. It is a "standard rule of contract interpretation" that "specific terms control over general ones." *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 797 (9th Cir. 2017) (citation omitted). Thus, the specific terms of § 4.1.1, control over any general term in § 5.1.2. The R&R correctly rejected MaxLinear's arguments attempting to show Cox's interpretation is implausible.

## 2. Cox Sufficiently Pleads MaxLinear Breached Confidentiality Obligations

The R&R determined Cox sufficiently alleges MaxLinear violated its obligations to MoCA by improperly disclosing confidential documents to Entropic.

1  (DE 446 at 22-25, 52.) MaxLinear does not dispute this finding. (Obj. at 11-12.)
2  Instead, MaxLinear simply objects to the R&R on the basis that it does not address
3  Cox's standing to sue on behalf of MoCA for the alleged disclosure. (Obj. at 12.)

4  However, as Cox explained in briefing and at the hearing after MaxLinear first
5  raised this argument, MaxLinear's standing challenge simply ignores Cox's
6  averments. (DE 384-1 at 26-27.) Cox's counterclaim avers that the confidential
7  documents themselves and the Promoter Agreement granted Cox the right to enforce
8  the confidentiality obligations. (DE 276, ¶ 546.) The confidential MoCA standards
9  stated "This document and each element of this document are the Confidential
10 Information of … MoCA and of the MoCA members that contributed to this
11 document. Both MoCA and/or any such MoCA members may enforce such
12 obligations of confidentiality directly." (*Id*.) Further, at the time of the breach, Cox
13 was an Alliance Party. (*Id.*, ¶ 569.) These averments alone demonstrate standing.

14 MaxLinear entirely disregards these averments in favor of an irrelevant claim
15 that Cox's standing terminated when Cox withdrew from MoCA in 2022 before this
16 suit was filed. (Obj. at 12.) MaxLinear's assertion is also incorrect. ████████
17 ████████████████████████████████████████
18 ████████████████████████████████████████
19 ████████████████████████  (DE 337 at 15.) The R&R thus correctly
20 determined Cox has standing.

21 **C.    The R&R Correctly Rejected MaxLinear's Challenge to Cox's**
22 **Declaratory Judgment Claim**

23 The R&R properly rejected MaxLinear's incorrect objection to Cox's
24 declaratory judgment claim as duplicative. (*Compare* DE 469-1 at 12-14 *with* DE 446
25 at 53-54.) The R&R correctly determined the declaratory judgment claim "is not
26 merely duplicative" because "whereas Cox's counterclaim for breach of contract
27 primarily seeks damages, specific performance, and injunctive relief as to MaxLinear,
28 Cox's counterclaim for declaratory judgment is directed to both MaxLinear and

1   Entropic and seeks a declaration that the assignment from MaxLinear to Entropic is
2   void." (DE 446 at 54.)

3   MaxLinear incorrectly urges that Cox's separate claim for declaratory
4   judgment should be dismissed because Cox's allegations for breach of contract
5   overlap with its allegations for declaratory judgment and the claims seek the same
6   remedy. Even if there is overlap in the allegations, this does not warrant dismissal as
7   the claims are distinct and present different remedies: the purpose of Cox's
8   declaratory judgment claim is to remedy future wrongs and uncertainties while the
9   breach of contract claim aims to remedy past wrongs. (DE 384-1 at 27-28); s*ee Steen
10  v. Am. Nat'l Ins. Co.*, 609 F. Supp. 3d 1066, 1073 (C.D. Cal. 2022) (rejecting
11  argument that breach of contract and declaratory judgment claims were duplicative
12  because it "ignores the alleged future uncertainty that declaratory judgment would
13  remedy that would not be remedied by damages for breach of contract").)

14  The cases MaxLinear cites are inapposite. In *Cove Partners, LLC v. XL*
15  *Specialty Insurance Co.*, the court dismissed Cove's breach of contract claim, noting
16  that dismissal "resolve[d] any existing controversy raised by Cove's declaratory relief
17  cause of action," and did not separately determine if Cove adequately pled a
18  declaratory judgment claim. 2016 WL 461918, at *11-12 (C.D. Cal. Feb. 2, 2016). In
19  *United Safeguard Distributors Ass'n, Inc. v. Safeguard Business Systems, Inc.*, the
20  plaintiffs sought declaratory judgment as to specific disputes regarding the parties'
21  rights and duties under an agreement. 145 F. Supp. 3d 932, 960 (C.D. Cal. 2015). The
22  court dismissed the declaratory judgment claim as duplicative because the "breach of
23  contract claim resolved all questions regarding contract interpretation," and
24  "Plaintiffs have not alleged any facts showing that Plaintiffs require the immediacy
25  of a judicial declaration." *Id.* at 961 (citation omitted). Further, the court noted
26  "Plaintiffs appear to seek judicial declaration not as a preventative measure, but as a
27  remedial measure to address previously alleged breach of contract claims." *Id.*

28  Unlike in *Cove* and *Safeguard*, Cox's claim seeks a judicial declaration now to

COX DEFENDANTS' RESPONSE TO MAXLINEAR'S OBJECTIONS TO R&R          9
CASE NO. 2:23-CV-1043-JWH-KES

1    settle which party owns the patents and is subject to the MoCA IPR Policy licensing

2    obligations. This requested clarity is not available under Cox's breach of contract

3    claim. As such, Cox's declaratory judgment claim is appropriate and not duplicative.

4    *See Steen*, 609 F. Supp. 3d at 1073; *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir.

5    1986) (holding declaratory relief is appropriate "(1) when the judgment will serve a

6    useful purpose in clarifying and settling the legal relations in issue, and (2) when it

7    will terminate and afford relief from the uncertainty, insecurity, and controversy

8    giving rise to the proceeding") (citation omitted).

9         Moreover, the record unequivocally shows a declaratory judgment is necessary

10   at this time. First, Entropic has sued Cox for infringement of MoCA patents, and seeks

11   $200 million in damages which, ███████████████████████████████████

12   ██████████████. The counterclaim avers that any assignment of essential patents to

13   Entropic is void under the IPR Policy (DE 266-1, ¶¶ 567, 579, 581-82), which would

14   mean MaxLinear should own the asserted patents, and Entropic cannot assert

15   infringement claims. (DE 384-1 at 28; DE 380-1 at 31.) There is no dispute that

16   declaratory judgment on this issue will clarify and settle issues, including Entropic's

17   ability to make its infringement claims.

18        Second, the record belies MaxLinear's assertion it was "drag[ged]" into this

19   case and shows why a declaratory judgment is needed. As detailed in the

20   counterclaims and Cox's objection (DE 460-1), MaxLinear secretly targeted Cox for

21   litigation by ██████████████████████████████████████████████

22   ████. It has additionally claimed that "Cox will have to bear the costs of litigation

23   and pay damages regardless of who the proper patent owner is." (DE 335 at 19; *see*

24   *also* DE 329-1 at 7-8 (Entropic alleging same).) Stated simply, each of these entities

25   has now said Cox must pay license fees or damages concerning the patents and Cox

26   is entitled to a judgment as to which entity is the proper claimant.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: May 24, 2024

KILPATRICK TOWNSEND & STOCKTON LLP

By:    */s/  April E. Isaacson*

KILPATRICK TOWNSEND & STOCKTON LLP

April E. Isaacson (SBN 180638)
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran (SBN 347617)
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell (*pro hac vice*)
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba (*pro hac vice*)
wkadaba@kilpatricktownsend.com
Michael J. Turton (*pro hac vice*)
mturton@kilpatricktownsend.com
Courtney S. Dabbiere (*pro hac vice*)
cdabbiere@kilpatricktownsend.com
Christopher S. Leah (*pro hac vice*)
cleah@kilpatricktownsend.com
Andrew N. Saul (*pro hac vice*)
asaul@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.; CoxCom, LLC; and*
*Cox Communications California, LLC*