REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1
2
3
4
5

Christopher S. Marchese (SBN 170239)
marchese@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

6

*Additional Counsel on Signature Page*

7
8

Attorneys for Defendants and Counter-Claimants
DISH Network Corporation, et al.

9

IN THE UNITED STATES DISTRICT COURT

10

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

11
12

ENTROPIC COMMUNICATIONS, LLC,

Case No. 2:23-cv-1043-JWH-KES

13

Plaintiff,

14

v.

15
16

DISH NETWORK CORPORATION, et al.,

17

Defendants.

18

19
20
21
22

DISH NETWORK CORPORATION; DISH NETWORK L.L.C.; DISH NETWORK SERVICE L.L.C.; DISH NETWORK CALIFORNIA SERVICE CORPORATION; AND DISH TECHNOLOGIES L.L.C.,

23

Counter-Claimants,

24

v.

25
26
27

ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR, INC.; AND MAXLINEAR COMMUNICATIONS LLC,

28

Counter-Defendants.

**DEFENDANTS AND COUNTER-CLAIMANTS DISH NETWORK CORPORATION, ET AL.'S RESPONSE TO ENTROPIC COMMUNICATIONS, LLC'S OBJECTIONS TO THE SPECIAL MASTER REPORT AND RECOMMENDATIONS ON MOTIONS REFERRED BY THE COURT ON FEBRUARY 9, 2024, AND MARCH 26, 2024**

District Judge: Hon. John W. Holcomb
Magistrate Judge: Hon. Karen E. Scott
Discovery Special Master: David Keyzer

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................5

II.   BACKGROUND ....................................................................................5

III.  ARGUMENT..........................................................................................7

    A.    DISH's Counterclaim Complaint Adequately States a
          Claim for Civil Conspiracy ........................................................8

    B.    Entropic Is Wrong That DISH's Conspiracy Claim Rises
          and Falls With Its Antitrust Claims............................................9

    C.    Entropic's *Noerr-Pennington* Arguments Are Meritless......................11

IV.   CONCLUSION ...................................................................................14

DISH'S RESP. TO ENTROPIC OBJS. TO SM REPORT & RECOMMENDATION
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cardizem CD Antitrust Litig.*,
  105 F. Supp. 2d 618 (E.D. Mich. 2000) .................................................. 11

*Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*,
  111 F.3d 1427 (9th Cir. 1996) ............................................................... 11

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
  2006 WL 1883353 (N.D. Cal. July 7, 2006) ........................................... 12

*Innovatio IP Ventures, LLC Pat. Lit.*,
  921 F. Supp. 2d 903 (N.D. Ill. 2013) ..................................................... 13

*Kearney v. Foley & Lardner, LLP*,
  590 F.3d 638 (9th Cir. 2009) ................................................................. 11

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ................................................................. 9

*Liberty Lake Invs. v. Magnuson*,
  12 F.3d 155 (9th Cir. 1993) ................................................................... 13

*Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
  225 F. Supp. 3d 1034 (N.D. Cal. 2016) ................................................... 8

*McDonald v Smith*,
  472 US 479 (1985) ................................................................................. 13

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*,
  2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) ......................................... 8, 9

*Primetime 24 Joint Venture v. Nat'l Broadcasting Co., Inc.*,
  219 F.3d 92 (2d Cir. 2000) ................................................................... 11

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993) ............................................................................... 11

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
  546 F.3d 991 (9th Cir. 2008) ................................................................. 13

DISH'S RESP. TO ENTROPIC OBJS. TO SM REPORT & RECOMMENDATION
Case No. 2:23-cv-1043-JWH-KES

*Toyo Tire & Rubber Co. v. Atturo Tire Corp.*,
  No. 14 C 0206, 2017 WL 1178224 (N.D. Ill. Mar. 30, 2017)............................12

*United States v. Sanchez-Murillo*,
  608 F.2d 1314 (9th Cir. 1979) ...............................................................................8

*Whelan v. Abell*,
  48 F.3d 1247 (D.C. Cir. 1995)...............................................................................13

**Statutes**

Cartwright Act ..............................................................................................................9

Sherman Act...................................................................................................................9

**Other Authorities**

Fed. R. Civ. P. 9(b) ...............................................................................................9, 10

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## I.    INTRODUCTION

Counter-claimants DISH Network Corporation, DISH Network L.L.C., Dish Network Service L.L.C., Dish Network California Service Corporation, and DISH Technologies L.L.C. (collectively, "DISH") respond to Plaintiff and Counter-Defendant Entropic Communications LLC's ("Entropic") Objection (D.I. 473-1, the "Objection") to the Special Master's Report and Recommendation (D.I. 446, the "R&R").  Entropic objects only to DISH's Count VI: fraud arising from a civil conspiracy, asserted against Entropic and MaxLinear.  Because the R&R correctly concluded that DISH plausibly alleges a civil conspiracy, Entropic's objection should be overruled and the R&R adopted as to this claim.

## II.    BACKGROUND

This case generally relates to the alleged patent infringement by implementation of technical standards.  Plaintiff Entropic Communications, LLC ("Entropic" or "Plaintiff Entropic") alleges infringement of patents it purchased from MaxLinear, which Entropic claims are essential to technical standards developed by the Multimedia over Coax Alliance, or "MoCA."  (*See generally* D.I. 1.)

DISH's counterclaims relate to breaches and attempts to circumvent promises made by the MoCA members related to the development of those standards.  As with most standards-setting organizations, MoCA has rules for how its members must behave when licensing intellectual property related to MoCA standards, including rules stated in MoCA's Intellectual Property Rights Policy (the "IPR Policy").  (D.I. 316, ¶ 6.)  Also, as with most standards-setting organizations, MoCA requires its members, and those members agree, to license intellectual property essential to the practice of MoCA standards on reasonable and nondiscriminatory ("RAND") terms.  (*Id.*)  This is a contractual promise between each member and MoCA, and between the members, for the benefit of those members, other organizations, and the public that choose to implement MoCA standards.  (*Id.*; *see also id.*, ¶¶ 25-35 (discussing the contracts more specifically).)  Together with the RAND requirement, the MoCA

DISH'S RESP. TO ENTROPIC OBJS. TO SM REPORT & RECOMMENDATION
Case No. 2:23-cv-1043-JWH-KES

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  IPR Policy has provisions to prevent circumventions of the RAND promise, including

2  by requiring that "any agreement for transferring or assigning Essential Patent Claims

3  includes a provision that such transfer or assignment is subject to . . . obligations to

4  license imposed on the Alliance Party by this Agreement."  (*Id.*, ¶ 46 (citing MoCA

5  IPR Policy, § 5.1.2); *see also id.*, ¶ 32 (citing MoCA IPR Policy, § 4.1.2).)  When

6  MaxLinear sold the Asserted Patents to Plaintiff Entropic, MaxLinear failed to

7  include language in the Patent Purchase Agreement ("PPA") required by MoCA.  (*Id.*,

8  ¶ 7.)

9        As DISH has alleged, this omission was intentional.  As stated above, Entropic

10  only challenges the R&R's finding as to the conspiracy claim.  In that claim, DISH

11  alleges that MaxLinear made fraudulent representations to MoCA members and

12  implementors that it would license its MoCA-essential patents on RAND terms.  (*See*

13  Counts V and VI, D.I. 316, ¶¶ 112-15 & 123-31.)  MaxLinear then transferred

14  allegedly MoCA-essential patents to Entropic under the PPA.  (*Id.* ¶ 118.)  Yet in so

15  doing, the two parties conspired to circumvent the IPR Policy by drafting the PPA

16  without any indication of the RAND encumbrance and thus attempting to "wash" the

17  patents of the RAND obligations.  (*Id.* ¶¶ 123-31.)  In fact, despite the IPR Policy's

18  rules and MaxLinear's RAND commitments, MaxLinear made a contrary

19  representation in the PPA:

20

21

22        (D.I. 306-8 § 3.1 (emphasis added); *id.*, Ex. G.)

23        This fraudulent scheme was intended to breach MoCA's IPR Policy.  (*See* D.I.

24  316, ¶¶ 123-31.)  DISH alleges that the "intent of the Conspirators can be inferred by

25  the knowledge each had" about the patents and "regarding MoCA's IPR policies" (*id.*,

26  ¶ 128); and "by the financial relationship between them," as well as other

27  circumstantial evidence (*id.*, ¶ 129).  As DISH also alleges, the attempt to wash the

28  patents of the RAND promise has at least created uncertainty surrounding whether

the patents are RAND-encumbered, despite Entropic's recent illusory commitments to license on RAND terms.  (*See id.* ¶¶ 112-20 & 123-29.)  As a remedy, DISH seeks damages appropriate to cure DISH's harms, including the attorneys' fees expended to defend itself in this case.  (*See id.* ¶¶ 130-31.)  These and other harms could have been avoided had the attempted conspiracy not occurred.

## III.   ARGUMENT

In the R&R, the Special Master correctly finds that DISH's allegations in Count VI, summarized above, adequately plead a civil conspiracy between Entropic and MaxLinear by attempting to wash allegedly MoCA-essential patents of their RAND encumbrances.  As such, the Special Master's R&R recommends against dismissal of Count VI.  (*See* D.I. 446 at 88-90).

Entropic makes three objections against the Special Master's finding as to Count VI.  First, Entropic argues that the Special Master simply overlooked DISH's conspiracy claim because the R&R recommends dismissal of DISH's antitrust claims. But as discussed below, DISH's conspiracy claim does not rise and fall with its antitrust claims.  Second, Entropic argues that the *Noerr-Pennington* doctrine should bar DISH's conspiracy claim, but this is based on Entropic's misunderstanding of the law.  In its third objection, Entropic addresses for the first time the sufficiency of DISH's conspiracy allegations.  Even then, Entropic only challenges the sufficiency of DISH's allegations "[i]n the alternative" to its other objections (D.I. at 473-1 at 13)—implicitly conceding that Entropic's first two objections do not contest that DISH adequately pled a conspiracy against Entropic.

In the sections below, DISH starts with Entropic's third (alternative) objection to demonstrate that DISH has sufficiently pled the elements of its conspiracy claim. DISH then addresses the first and second objections, which do not challenge the specific allegations.  For the reasons discussed below, each of Entropic's objections should be overruled and the Special Master's determinations adopted.

### A.    DISH's Counterclaim Complaint Adequately States a Claim for Civil Conspiracy

The elements of conspiracy are: "(1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007).

DISH's complaint sets forth well-pled factual allegations for each of these elements: **(1)** "On information and belief, both Entropic and MaxLinear conspired to commit fraud and negligent misrepresentation to avoid having to license the Asserted Patents on RAND terms" (D.I. 316, ¶ 124); **(2)** "As discussed above (paragraphs 111-22), MaxLinear made fraudulent and/or negligently false representations that it would license patents essential to the practice of MoCA standards on RAND terms" (*id.*, ¶ 125; *see also id.*, ¶¶ 126-29); and **(3)** "DISH has been harmed by the conspiracy between MaxLinear and Entropic, at least because the significant cost of the instant litigation may have been avoided if Entropic offered DISH a license to the Asserted Patents under RAND terms and conditions" (*id.*, ¶ 130; *see also id.*, ¶ 131).

DISH's complaint also adequately alleges circumstantial evidence sufficient to show intent. *Marble Bridge Funding Grp., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 225 F. Supp. 3d 1034, 1040 (N.D. Cal. 2016) (recognizing in a fraud case, that "[k]nowledge … is a question of fact and like any other fact, it may be proved by circumstantial evidence" (internal quotation marks omitted)); *see also United States v. Sanchez-Murillo*, 608 F.2d 1314, 1318 (9th Cir. 1979) (similar).  For example, DISH alleges the "intent of the Conspirators can be inferred by the knowledge each had regarding the nature of the Asserted Patents" and "MoCA's IPR policies" (D.I. 316, ¶ 128), and "by the financial relationship between them" (*id.,* ¶ 129).

Thus, DISH has sufficiently stated a claim for conspiracy against Entropic.  The Special Master agrees in the R&R, finding that "DISH's allegations are sufficient to

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1  meet the plausibility and Rule 9(b) standards that are applicable at the pleading stage."

2  (D.I. 446 at 78:19-20.)

3      **B.    Entropic Is Wrong That DISH's Conspiracy Claim Rises and Falls**
4           **with Its Antitrust Claims**

5      Entropic objects (at 10) based on the premise that DISH's counterclaim for

6  conspiracy must fail because the Special Master recommended dismissal of three

7  counterclaims for antitrust-related violations: Sherman Act (Count VIII), Cartwright

8  Act (Count IX), and California unfair competition law (Count XI).  Entropic chalks

9  this up to merely an "oversight [that] should be corrected" (D.I. 473-1 at 10:28-11:1),

10  but it is Entropic that misses the point.  These antitrust claims are different causes of

11  action with different elements from conspiracy.  Importantly, an antitrust claim

12  requires ***competitive harm*** to the market.  *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d

13  1042, 1047 (9th Cir. 2008).  A conspiracy claim does not; it merely requires ***personal***

14  ***harm*** to the claimant.  *See Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, 2007

15  WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007).

16      Here, DISH properly pled personal harm from the conspiracy—in accordance

17  with the law—and the Special Master found these allegations sufficient for DISH's

18  conspiracy claim.  Conversely, the Special Master based his finding against DISH's

19  antitrust claims on the ground that DISH did not allege sufficient competitive harm:

20  "Entropic acknowledges that any RAND obligations necessarily ran with the patents

21  (including by operation of law) when MaxLinear assigned the patents to Entropic"

22  (D.I. 446 at 83:4-6), and thus "DISH does not state any plausible claim for

23  ***anticompetitive*** conduct . . ." (*id.* at 83:6-7 (emphasis added)).  Further clarifying this

24  point, the Special Master explained, "even if MaxLinear had *attempted* to remove the

25  encumbrances, it did not." (*Id.* at 84:8 (emphasis in original).)  Thus, even assuming

26  the RAND obligations ran as a matter of law, this does not absolve Entropic or

27  MaxLinear of their failed attempt, in constructing the PPA, to wash the patents of all

28  encumbrances.  In fact, the PPA expressly states ███████████████████

9

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████ (D.I. 316-7 § 3.1 (emphasis

3 added); *see also id.*, Ex. G.)  This distinction between attempt and result gives rise, in

4 part, to how the Special Master arrived at different recommendations for DISH's

5 antitrust and conspiracy claims.  DISH's conspiracy claim focuses on Entropic and

6 MaxLinear's *attempt* to wash the transferred patents of encumbrances—before

7 Entropic acknowledged that the patents are subject to RAND obligations.

8        Entropic also cherry-picks a single sentence from a section of the R&R

9 discussing ***Cox's tortious interference counterclaim against MaxLinear***, not DISH's

10 claims against Entropic.  (*See* D.I. 473-1 at 10:21-24 (citing D.I. 446 at 20).)  Entropic

11 argues that this sentence trumps the section in the R&R analyzing DISH's conspiracy

12 claim.  However, the section of the R&R that addresses the specific conspiracy alleged

13 by DISH against Entropic and MaxLinear correctly finds that "DISH's allegations are

14 sufficient to meet the plausibly requirement and Rule 9(b) standards that are

15 applicable at the pleading stage."  (D.I. 446 at 78.)

16        Entropic argues (at 10) that a provision of the PPA undermines DISH's

17 conspiracy claim, but that provision does not relate to encumbrances.  Rather, it ██

18 ████████████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████████

25 Indeed, given that the PPA elsewhere specifically asserted the patents were ██████

26 █████████████████████, the PPA cannot be read as specifically requiring that the

27 purchaser (Entropic) maintain the RAND promises or even informing Entropic of

28 such commitments.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

### C.     Entropic's *Noerr-Pennington* Arguments Are Meritless

Entropic objects (at 12-13) that DISH's conspiracy claim is barred by the *Noerr-Pennington* doctrine and (again) alleges inconsistency between the Special Master's findings between DISH's antitrust counterclaims and DISH's conspiracy claim.  This objection, too, should be rejected.

As DISH explained before the Special Master, the *Noerr-Pennington* doctrine does not immunize parties from liability arising from purely private, commercial activity.  Rather, *Noerr-Pennington* only gives immunity against claims premised on activity protected under the First Amendment to the Constitution, for example, "in the context of concerted petitions for anti-competitive legislation."  *See, e.g., Primetime 24 Joint Venture v. Nat'l Broadcasting Co., Inc.*, 219 F.3d 92, 99 (2d Cir. 2000).  As the Supreme Court has explained, the doctrine provides that "[t]hose who petition government for redress are generally immune from antitrust liability."  *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("*PRE*"); *see also Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643–44 (9th Cir. 2009) (explaining that "[t]he *Noerr–Pennington* doctrine derives from the Petition Clause of the First Amendment and provides that those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct" (quotation marks omitted)).

The *Noerr-Pennington* doctrine does not apply, however, when a claim is based on non-petitioning activity, such as entering into a private contract.  *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 635 (E.D. Mich. 2000) (finding *Noerr-Pennington* did not immunize party for entering into a private agreement).  This is true even if follow up to the contract may involve some sort of petitioning to the government.  *See, e.g., Columbia Steel Casting Co. v. Portland Gen. Elec. Co.*, 111 F.3d 1427, 1446 (9th Cir. 1996) (finding *Noerr-Pennington* doctrine inapplicable to antitrust claim where liability was based on an agreement rather than follow up activity to the contract relating to submitting an application to the government).  "This

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

1   principle follows in part from basic notions of causation: namely, when the
2   government acts based on petitioning, any purportedly unlawful result is most
3   proximately caused by government action, not by the private petitioning." *Toyo Tire*
4   *& Rubber Co. v. Atturo Tire Corp.*, No. 14 C 0206, 2017 WL 1178224, at *3 (N.D.
5   Ill. Mar. 30, 2017).  "Conversely, where private parties take unlawful action merely
6   hoping the government will later ratify it, government action is not an intervening
7   cause, and *Noerr-Pennington* immunity does not arise." *Id.*  Thus, the "doctrine
8   applies when [anti-competitive] action is the consequence of legislation or other
9   governmental action, not when it is the means for obtaining such action." *Id.* at *6
10  (quotation marks omitted); *see also Hynix Semiconductor Inc. v. Rambus, Inc.*, 2006
11  WL 1883353, at *2 (N.D. Cal. July 7, 2006) (holding that *Noerr–Pennington* immunity
12  immunity applies only to protected litigation-related activities, but would not
13  immunize defendant from antitrust claims premised on broader unlawful course of
14  anticompetitive conduct).

15         Here, DISH's conspiracy claim plainly falls into the category of private
16  contractual activity.  As alleged in Count V (only asserted against MaxLinear),
17  MaxLinear committed fraud by making false statements that it would comply with
18  the IPR Policy (*see generally* D.I. 316, ¶¶ 111-22 (Count V)); and in Count VI, DISH
19  alleges that Entropic entered into a conspiracy with MaxLinear to further the
20  fraudulent scheme by constructing the PPA in a way that attempted to remove the
21  RAND promise through a transfer to a purportedly innocent purchaser (Entropic).
22  Nothing about this scheme involves any petitioning to the government—only a
23  private agreement between two commercial entities.

24         Entropic's primary error here is the same it made above—it conflates antitrust
25  and conspiracy.  These claims are not the same.  While DISH maintains that its
26  antitrust counterclaims are also not barred by *Noerr-Pennington* because they, too,
27  are premised on private commercial activity, the doctrine applies differently in
28  antitrust than in fraud and conspiracy.  Fraud—as alleged by DISH in Counts V and

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

VI—is not protected First Amendment activity. *See, e.g., McDonald v Smith*, 472 US 479,484 (1985) (finding no First Amendment protection for false and fraudulent statements). Thus, as courts have found, parties cannot be immunized from fraud liability under the *Noerr-Pennington* doctrine. *See, e.g., Whelan v. Abell*, 48 F.3d 1247, 1259-60 (D.C. Cir. 1995) (disallowing a *Noerr-Pennington* defense in an action for common law torts when the defendants made material misrepresentations to state securities regulators); *Liberty Lake Invs. v. Magnuson*, 12 F.3d 155, 159 (9th Cir. 1993) ("a party's knowing fraud upon, or its intentional misrepresentations to the court deprive the litigation of its legitimacy" so as to defeat immunity without meeting the sham exception's two prong test). Thus, considering the private commercial activity alleged to be fraudulent (as distinguished from protected First-Amendment activity), the Special Master correctly recommended against dismissal of DISH's conspiracy claims—despite his later statements concerning DISH's antitrust claims.

The cases cited by Entropic are not to the contrary. Entropic primarily relies on *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008). (*See* D.I. 473-1 at 12-13.) In *Theme Promotions,* though, the acts underlying the plaintiff's complaint were letters threatening litigation—a First Amendment-protected activity. Unlike here—where DISH's counterclaims are premised on a private contract between commercial entities—the 9th Circuit found that "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr–Pennington* doctrine." *Id.* at 1007. Similarly, in *Innovatio IP Ventures, LLC Pat. Lit.*, 921 F. Supp. 2d 903, 922 (N.D. Ill. 2013) (relied on by Entropic at 13), the Court also found a party immune from liability from sending pre-suit demand letters—i.e., again, communications incident to the filing of a lawsuit. However, again, the ***private, commercial, fraudulent contract*** underlying DISH's allegations is fundamentally different—it was simply a contract between two parties. Just because litigation later materialized does not make the commercial activity protected First Amendment petitioning.

1    Accordingly, this Court should adopt the Special Master's recommendation
2 that DISH's conspiracy claim not be dismissed.

3 **IV.    CONCLUSION**
4    Entropic's objections to the R&R should be overruled.

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

Dated:  May 24, 2024                FISH & RICHARDSON P.C.

By: */s/ Christopher S. Marchese*
Christopher S. Marchese (SBN 170239)
marchese@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240

Adam R. Shartzer *(pro hac vice)*
Ruffin B. Cordell *(pro hac vice)*
cordell@fr.com
Richard A. Sterba *(pro hac vice)*
sterba@fr.com
Ralph A. Phillips *(pro hac vice)*
rphillips@fr.com
shartzer@fr.com
Michael J. Ballanco *(pro hac vice)*
ballanco@fr.com
Taylor C. Burgener (SBN 348769)
burgener@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave., SW, Suite 1000
Washington, DC 20024
Tel: (202) 783-5070

David M. Barkan (SBN 160825)
barkan@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Ashley A. Bolt *(pro hac vice)*
bolt@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Aaron P. Pirouznia *(pro hac vice)*
pirouznia@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tel: (214) 292-4073
Fax: (214) 747-2091

Oliver Richards (SBN 310972)
orichards@fr.com
John-Paul Fryckman (SBN 317591)
fryckman@fr.com
Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070

Attorneys for Defendants and Counter-
Claimants DISH Network Corporation, et
al.