**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Christopher S. Marchese (SBN 170239)
marchese@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240 / Fax: (858) 678-5099

*Additional Counsel on Signature Page*

Attorneys for Counter-Claimants
DISH Network Corporation, et al.

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION, et al.,<br><br>Defendants.<br><br>DISH NETWORK CORPORATION; DISH NETWORK L.L.C.; DISH NETWORK SERVICE L.L.C.; DISH NETWORK CALIFORNIA SERVICE CORPORATION; AND DISH TECHNOLOGIES L.L.C.,<br><br>Counter-Claimants,<br><br>v.<br><br>ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR, INC.; AND MAXLINEAR COMMUNICATIONS LLC,<br><br>Counter-Defendants. | Case No. 2:23-cv-1043-JWH-KES<br><br>**COUNTER-CLAIMANTS DISH NETWORK CORPORATION, ET AL.'S RESPONSE TO COUNTER-DEFENDANTS MAXLINEAR, INC. AND MAXLINEAR COMMUNICATIONS LLC'S OBJECTION TO SPECIAL MASTER'S REPORT AND RECOMMENDATION ON MOTIONS REFERRED BY COURT ON FEBRUARY 9, 2024 AND MARCH 26, 2024**<br><br>District Judge: Hon. John W. Holcomb<br>Magistrate Judge: Hon. Karen E. Scott<br>Discovery Special Master: David Keyzer |

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................4

II. BACKGROUND ..................................................................................................4

III. ARGUMENT ........................................................................................................5

    A. The Court Should Adopt the Special Master's Recommendation Not to Dismiss DISH's Breach of Contract Counterclaim ..................................................................5

        1. DISH's Counterclaim Complaint Adequately States a Claim for Breach of Contract .........................................................6

        2. The Special Master Properly Found That DISH Has Standing ................................................................................................8

    B. The Court Should Adopt the Special Master's Recommendation Against Dismissing DISH's Fraud and Conspiracy Counterclaims ........................................................................11

        1. DISH's Counterclaim Complaint Adequately States a Claim for Fraud/Misrepresentation ........................................11

        2. DISH Adequately States a Claim for Conspiracy ......................13

IV. CONCLUSION ..................................................................................................13

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................6

*CDF Firefighters v. Maldonado*,
 158 Cal. App. 4th 1226 (2008) ..................................................................................6

*City Sols., Inc. v. Clear Channel Commc'ns*,
 365 F.3d 835 (9th Cir. 2004) ...................................................................................11

*Cutler v. Rancher Energy Corp.*,
 2014 WL 1153054 (C.D. Cal. Mar. 11, 2014) ........................................................12

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
 12 F.4th 476 (5th Cir. 2021) ....................................................................................10

*Kaiser Engineers, Inc. v. Grinnell Fire Prot. Sys. Co.*,
 173 Cal. App. 3d 1050 (Cal. Ct. App. 1985) ..........................................................10

*Microsoft Corp. v. Motorola, Inc.*,
 696 F.3d 872 (9th Cir. 2012) ...................................................................................11

*Mintel Learning Tech. v. Beijing Kaidi*,
 2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) ..........................................................13

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................................12

Restatement (Second) of Contracts § 302 (1981) .......................................................10

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

## I.   INTRODUCTION

Counter-claimants DISH Network Corporation, DISH Network L.L.C., Dish Network Service L.L.C., Dish Network California Service Corporation, and DISH Technologies L.L.C. (collectively, "DISH") respond to Counter-Defendants MaxLinear, Inc. and MaxLinear Communications LLC's (collectively, "MaxLinear") Objection (D.I. 465-1, the "Objection") to the Special Master's Report and Recommendation (D.I. 446, the "R&R"). The R&R correctly concluded that DISH's claims for breach of contract (Count IV), fraud and negligent misrepresentation (Count V), and conspiracy (Count VI) assert plausible claims against MaxLinear.

## II.   BACKGROUND

This case generally relates to the alleged patent infringement by implementation of technical standards. Plaintiff Entropic Communications, LLC ("Entropic" or "Plaintiff Entropic") alleges infringement of patents it purchased from MaxLinear, which Entropic claims are essential to technical standards developed by the Multimedia over Coax Alliance, or "MoCA." (*See generally* D.I. 1.)

DISH's counterclaims against MaxLinear relate to breaches and attempts to circumvent promises made by the MoCA members related to the development of those standards. As with most standards-setting organizations, MoCA has rules for how its members must behave when licensing intellectual property related to MoCA standards, including rules stated in MoCA's Intellectual Property Rights Policy (the "IPR Policy"). (D.I. 316, ¶ 6.) Also, MoCA requires its members, and those members agree, to license intellectual property essential to the practice of MoCA standards on reasonable and nondiscriminatory ("RAND") terms. (*Id.*) This is a contractual promise between each member and MoCA, and between the members, for the benefit of those members, other organizations, and the public that choose to implement MoCA standards. (*Id.*; *see also id.*, ¶¶ 25-35 (discussing the contracts more specifically).) Together with the RAND requirement, the MoCA IPR Policy has provisions to prevent circumventions of the RAND promise, including by requiring

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

that "any agreement for transferring or assigning Essential Patent Claims includes a provision that such transfer or assignment is subject to . . . obligations to license imposed on the Alliance Party by this Agreement." (*Id.*, ¶ 46 (citing MoCA IPR Policy, § 5.1.2); *see also id.*, ¶ 32 (citing MoCA IPR Policy, § 4.1.2).) When MaxLinear sold the Asserted Patents to Plaintiff Entropic, MaxLinear failed to include language in the Patent Purchase Agreement ("PPA") required by MoCA. (*Id.*, ¶ 7.)

Entropic Communications, Inc. ("Original Entropic")—the original assignee of the Asserted Patents in this case—agreed as a member of MoCA to license patents essential to MoCA on RAND terms. (D.I. 316, ¶¶ 40-41.) MaxLinear—a member of MoCA's Board of Directors since 2015—affirmed that promise when it acquired Original Entropic. (*Id.*, ¶ 43.) However, MaxLinear's transfer of the asserted patents to Plaintiff Entropic (among other things) revealed that affirmance to be illusory. Namely, despite the IPR Policy's rules and MaxLinear's RAND commitments, MaxLinear made a contrary representation in the PPA with Plaintiff Entropic: ███████████████████████████████████████████████████████████████████████████████████████████████████ (D.I. 306-8 § 3.1 (emphasis added); *id.*, Ex. G.) This wrongful conduct gives rise to DISH's counterclaims that are presently at issue.

### III.   ARGUMENT

#### A.   The Court Should Adopt the Special Master's Recommendation Not to Dismiss DISH's Breach of Contract Counterclaim

DISH's counterclaim complaint levies one breach of contract count against MaxLinear—Count IV. In this count, DISH alleges that MaxLinear violated MoCA's IPR Policy by circumventing RAND encumbrances and by failing to include language required by the IPR Policy in its PPA with Entropic. (*See* D.I. 316, ¶¶ 101-109.) As a remedy, DISH seeks damages appropriate to cure DISH's harms, including the

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

attorneys' fees expended defending itself in this suit (which could have been avoided had MaxLinear adhered to its contract with MoCA). (*See id.*, ¶ 110.)

The Special Master's R&R recommends against dismissing Count IV. (D.I. 446 at 88:11-13.) MaxLinear objects (at 8-11) on two grounds: that MaxLinear did not breach and that DISH lacks standing. For the reasons discussed below, the Special Master's R&R is correct, and neither objection has merit. Thus, the Court should adopt the Special Master's finding in favor of DISH.

       **1.**     **DISH's Counterclaim Complaint Adequately States a Claim for Breach of Contract**

The elements of a breach of contract claim are: (1) the existence of the contract; (2) the plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). DISH has adequately pled all elements for breach of contract, which it sets forth in its opposition to MaxLinear's motion to dismiss. (*See* D.I. 388-1 at 21:20-22:6 (citing counterclaim paragraphs by element: (1) D.I. 316 ¶¶ 25-35, 58-63, 64-74; (2) *id.*, ¶ 107; (3) *id.*, ¶¶ 108-109; and (4) *id.*, ¶ 110).) Thus, DISH's counterclaim complaint properly states a claim for breach of contract, and the R&R correctly concluded as much.

MaxLinear argues (at 8-10) that it did not breach. But this is a factual defense that MaxLinear can raise later in the case, not a reason to dismiss at the pleadings stage. All that is required at the pleading stage is plausibility, which DISH's counterclaim complaint more than accomplishes. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As alleged in DISH's counterclaim complaint, MaxLinear specifically represented ████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ MaxLinear breached its obligation under the IPR Policy to include, in "any agreement for

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

transferring or assigning Essential Patent Claims[,] a provision that such transfer or assignment is subject to . . . obligations to license imposed on the Alliance Party by this Agreement." (*Id.*, ¶ 46 (citing MoCA IPR Policy, § 5.1.2).) The Special Master agrees, citing to DISH's allegations that "MaxLinear breached by 'attempting to circumvent the RAND promise it made and for failing to include language required by the IPR Policy when it transferred ownership of the patents to Entropic.'" (D.I. 446 at 87:12-14.)

In its objections, MaxLinear relies largely on a single sentence from a section of the R&R discussing ***Cox's tortious interference counterclaim***, not DISH's claims. (*See* D.I. 465-1 at 9:16-22 (citing R&R at 20).) MaxLinear argues that this sentence trumps the section in the R&R analyzing DISH's breach claim against MaxLinear. However, the section of the R&R that addresses the specific breach alleged by DISH against MaxLinear correctly finds that DISH has plausibly pled breach of contract. (D.I. 446 at 87-88.)

MaxLinear argues (at 10) that a provision of the PPA shows it did not breach, but that provision does not relate to encumbrances. Rather, it ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Indeed, given that the PPA elsewhere specifically asserted the patents were ████████████████████████, the PPA cannot be read as specifically requiring that the purchaser (Entropic) maintain the RAND promises or even informing Entropic of such commitments.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

As further support, MaxLinear cites (at 9-10) the Special Master's finding (again with respect to Cox's claims) that the RAND obligations ran with the patents "by operation of law," despite MaxLinear trying to remove the encumbrances. From this finding, MaxLinear concludes that a "necessary predicate" of DISH's counterclaim is "impossible." (D.I. 465-1 at 10:3-4.) Not so. First, the Special Master acknowledges DISH's argument that "it is not a legal impossibility [for MaxLinear] to have removed those encumbrances" based on the bona fide purchaser rule. (D.I. 446 at 81:7-13 (citing *Klang v. Pflueger*, 2014 WL 4922401, at *5 (C.D. Cal. July 10, 2014).) Moreover, even to the extent the RAND obligations ran as a matter of law, this does not absolve MaxLinear of its failed attempt to wash the patents of all encumbrances. As discussed above, MoCA's IPR Policy prescribes specific requirements for transferring patent rights. MaxLinear could have included in the PPA the required provision that its license is subject to RAND obligations, yet it failed to do so, which is a breach. On top of that, MaxLinear went even further by affirmatively stating—not once, but *twice*—that ████████████████████████████ ████████████████ (See D.I. 316-7 at §§ 3.1, 5.3.1.) Further, the Special Master acknowledges that Entropic has only recently affirmed its RAND obligations in its current motion to dismiss briefing (D.I. 446 at 83:10-10), and that, despite these affirmations and DISH's requests, Entropic still has failed to provide a RAND license offer (*id.* at 76:6-8). These *ex post facto* affirmations by Entropic—made for the first time years after execution of the PPA and still not lived up to—do not retroactively excuse MaxLinear's breach. MaxLinear's objections should be rejected.

### 2.  The Special Master Properly Found That DISH Has Standing

MaxLinear does not object, nor can it, to the Special Master's finding that DISH Technologies L.L.C. (one of the DISH counterclaim plaintiffs) ***does*** have standing as a party to MoCA's IPR Policy. (See D.I. 446 at 87:15-17.) MaxLinear's standing objection (at 10-11) is as to the remaining DISH counterclaim plaintiffs—i.e., the defendants in the underlying action, DISH Network Corporation, DISH

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

1. Network L.L.C., Dish Network Service L.L.C., and Dish Network California Service Corporation (collectively, the "DISH Defendants"). As to the DISH Defendants, DISH's counterclaim complaint alleges that they have standing to enforce the IPR Policy as third-party beneficiaries of the policy. (*See* D.I. at 316, ¶¶ 64-74.) As alleged in the counterclaims, both through the language of the IPR Policy and through MoCA's actions, the IPR Policy makes any party wishing to implement a MoCA standard a third-party beneficiary. (*See id.*, ¶¶ 68-70.) The counterclaim complaint also alleges that all DISH entities—including the DISH Defendants—"became de facto member[s] of MoCA through a course of conduct" because, during the many years in which the DISH entities participated in MoCA, they were treated as members. (*See id.*, ¶¶ 73.) The Special Master acknowledges these well-pled allegations in finding that DISH plausibly alleges standing as to all DISH parties. (*See* D.I. 446 at 87:17-88:2; *see also id.* at 76:5-6.)

MaxLinear begins (at 10) by attacking a cite in the R&R to a Second Circuit opinion, which appears in the section discussing Cox's claims. (*See* D.I. 446 at 41:2-3 (citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 53).) MaxLinear jumps to the conclusion that this cite means the R&R is "appl[ying] New York law," when California law should apply. Not so. The R&R simply cites this opinion for a general proposition of contract law, which does not rise to the level of *applying* New York law (as courts often cite to out-of-circuit decisions in their opinions). Further, the Special Master's quote from this Second Circuit opinion stands for the **same proposition** as the California law that MaxLinear says should apply. (*Compare* D.I. 446 at 41:2-3 (R&R citing *Bayerische*, 692 F.3d at 53 *with* D.I. 465-1 (MaxLinear brief citing *Sherman v. Pepperidge Farm, Inc.*, 2023 WL 5207458, at *4 (C.D. Cal. Apr. 28, 2023)).) Notably, New York law is generally *stricter* as to third-party beneficiaries than California law, which would only help Maxlinear. As such, MaxLinear's argument is a red herring.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

MaxLinear is also wrong to suggest (at 10-11) that third-party beneficiaries can only be created by "express" language in a contract. To the contrary, under California law, a third-party beneficiary (here, the DISH Defendants) "need not be named or identified individually to be an express beneficiary." *Kaiser Engineers, Inc. v. Grinnell Fire Prot. Sys. Co.*, 173 Cal. App. 3d 1050, 1055 (Cal. Ct. App. 1985). Instead, "[a] third party may enforce a contract if it can be shown that he or she is a member of the class for whose express benefit the contract was made." *Id.* Where, as here, the "*circumstances* indicate that the promisee" (here, each MoCA implementor) "intends to give the beneficiary the benefit of the promised performance" (i.e., the right to license essential patents on RAND terms), that beneficiary is entitled to enforce the terms of the contract against the contracting party (here, MaxLinear). *See, e.g.,* Restatement (Second) of Contracts § 302 (1981) (emphasis added). Thus, as courts have found, "[c]ompanies seeking to license under [RAND] terms become third-party beneficiaries of the contract between the standard-essential patent holder and the standard setting organization." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 481 (5th Cir. 2021).

MaxLinear then argues (at 11) that Section 6 of the MoCA Promoter Agreement is "dispositive" as to the DISH Defendants. But this section is at least ambiguous as to whether implementors of MoCA standards are third-party beneficiaries. The portion of the agreement reproduced by MaxLinear merely states that Affiliates of MoCA members ████████████████████████████ ████████████████████████████████████████████ (D.I. 465-1 at 11:10-13.) This general statement refers only broadly to the ████ ████ granted to MoCA members, which could include (for example) the right to participate in MoCA meetings and vote on which technologies become part of the MoCA Standard. (*See, e.g.*, D.I. 359-1, § 4.2.) It does not rule out that implementors of MoCA standards, such as the DISH Defendants, are intended third-party beneficiaries of the IPR Policy. On the other hand, DISH's counterclaims point to

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

provisions *specific to the IPR Policy*—such as the statement in the policy itself that its goal is "to maximize the likelihood of ***widespread adoption***" of MoCA standards, i.e., adoption beyond just the members of MoCA. (*See* D.I. 316, ¶ 68 (emphasis added) (citing MoCA IPR Policy, § 1).) Moreover, DISH's counterclaim complaint points to another statement in the IPR Policy that it should be interpreted to be consistent with antitrust law, which requires that the RAND be made available to "all comers." (*See* D.I. 316, ¶ 70); *Microsoft*, 696 F.3d at 885. In short, the R&R is correct that DISH plausibly alleged that the DISH Defendants are third-party beneficiaries.

### B. The Court Should Adopt the Special Master's Recommendation Against Dismissing DISH's Fraud and Conspiracy Counterclaims

In its counterclaim for fraud and negligent misrepresentation, DISH alleges that MaxLinear made false statements that it would comply with MoCA's IPR Policy, inducing others (including DISH) to consider adopting MoCA, and then later attempting to "wash" the patents of that RAND promise. (D.I. 316, ¶¶ 111-122 (Count V).) DISH also alleges that MaxLinear and Entropic fraudulently conspired in an attempt to avoid licensing on RAND terms (Count VI). (D.I. 446 at 77.)

The R&R finds against dismissal of Counts V and VI. (D.I. 446 at 90:4-5, 91:4-5.) MaxLinear objects (at 12-14) relying largely on the same arguments against DISH's breach claim. For the reasons above and those discussed below, MaxLinear's objections lack merit, and the Court should adopt the Special Master's findings.

#### 1. DISH's Counterclaim Complaint Adequately States a Claim for Fraud/Misrepresentation

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 839 (9th Cir. 2004). DISH's counterclaims plead each of these elements. (*See* D.I. 388-1 at 25:21-26:10 (citing counterclaim paragraphs by

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

element: (a) D.I. 316, ¶ 113; (b) *id.*, ¶¶ 114, 117; (c) *id.* ¶ 112; (d) *id.* ¶ 120; and (e) *id.*, ¶ 121).)[1]  The Special Master agrees that "DISH's allegations are sufficient to meet the plausibility and Rule 9(b) standards …." (D.I. 446 at 89:16-90:3.)

MaxLinear (at 12) bases its objection on the same cherry-picked sentence from the R&R regarding the PPA between MaxLinear and Entropic, discussed above. But MaxLinear cannot use this one sentence—in a section dedicated to another party and a separate counterclaim in a 97-page R&R—to undermine the Special Master's entire discussion and analysis, nearly 70 pages later, of DISH's fraud counterclaims. Moreover, DISH's fraud allegations focus on representations made prior to the PPA, when MaxLinear was joining as a member of MoCA. Relying on these allegations, the Special Master properly found that DISH had adequately stated a claim for fraud.

MaxLinear argues (at 13) that, because DISH has not admitted to Entropic's infringement allegations, this defeats the reliance element in DISH's fraud claim against MaxLinear. (D.I. 465-1 at 13:6-16.) To the contrary, DISH properly pleads reliance in that it "relied on the representations of MoCA participants, such as and including MaxLinear . . . when deciding what technologies to utilize in its business." (D.I. 316, ¶ 120.) Whether DISH's specific technologies infringe the specific patent claims asserted in the underlying action involves factual and legal issues that will depend on further developments in the case, such as claim construction and fact and expert discovery. That does not mean, however, that DISH did not reasonably rely on MaxLinear's commitments generally when it decided to implement coaxial communication technologies into its products—as opposed to, e.g., wireless, twisted

---

[1] These same allegations also satisfy all elements for a claim of negligent misrepresentation, which are "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Cutler v. Rancher Energy Corp.*, 2014 WL 1153054, at *7 (C.D. Cal. Mar. 11, 2014).

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

pair, or fiber communication technologies. DISH's decision to implement coaxial technologies is the reason it now has to defend itself against Entropic's lawsuit, which has caused financial and reputational harm to DISH regardless of the outcome.

### 2. DISH Adequately States a Claim for Conspiracy

DISH has also adequately pled conspiracy against MaxLinear (together with Entropic). The elements of conspiracy are: "(1) the formation and operation of a conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Mintel Learning Tech. v. Beijing Kaidi*, 2007 WL 2288329, at *4 (N.D. Cal. Aug. 9, 2007). DISH's complaint sets forth well-pled factual allegations for each of these elements: (*See* D.I. 388-1 at 21:20-22:6 (citing counterclaim paragraphs by element: (1) D.I. 316, ¶ 124; (2) *id.*, ¶¶ 125-129); and (3) *id.*, ¶¶ 130, 131).) Relying on these allegations, the R&R correctly denied MaxLinear's motion to dismiss DISH's conspiracy counterclaim.

MaxLinear's objection (at 13-14) to the Special Master's finding relies once again on the same sentence from some 70 pages earlier in the R&R. MaxLinear argues that DISH's conspiracy allegations are "facially implausible" because the RAND obligations transferred with the patents from MaxLinear to Entropic. (D.I. 465-1 at 14.) Even assuming that the RAND obligations did transfer by operation of law, this does not excuse the conspiracy between MaxLinear and Entropic in which they *attempted* to wash the patents of all encumbrances. As discussed above, Entropic has only recently affirmed its RAND obligations in response to DISH's counterclaims. Moreover, these obligations did not prevent Entropic from filing suit against DISH or denying DISH a RAND license offer (despite its newfound commitment to do so). Without MaxLinear's conspiracy, this all could have been avoided and DISH would not be in the position of harm that it now faces.

### IV. CONCLUSION

MaxLinear's objections to the R&R should be overruled.

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Dated: May 24, 2024

FISH & RICHARDSON P.C.

By: */s/ Christopher S. Marchese*
Christopher S. Marchese (SBN 170239)
marchese@fr.com
Tyler R. Train (SBN 318998)
train@fr.com
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Tel: (213) 533-4240

Adam R. Shartzer *(pro hac vice)*
Ruffin B. Cordell *(pro hac vice)*
cordell@fr.com
Richard A. Sterba *(pro hac vice)*
sterba@fr.com
Ralph A. Phillips *(pro hac vice)*
rphillips@fr.com
shartzer@fr.com
Michael J. Ballanco *(pro hac vice)*
ballanco@fr.com
Taylor C. Burgener (SBN 348769)
burgener@fr.com
FISH & RICHARDSON P.C.
1000 Maine Ave., SW, Suite 1000
Washington, DC 20024
Tel: (202) 783-5070

David M. Barkan (SBN 160825)
barkan@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070

Ashley A. Bolt *(pro hac vice)*
bolt@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Aaron P. Pirouznia *(pro hac vice)*
pirouznia@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Dallas, TX 75201
Tel: (214) 292-4073
Fax: (214) 747-2091

Oliver Richards (SBN 310972)
orichards@fr.com
John-Paul Fryckman (SBN 317591)
fryckman@fr.com
Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Tel: (858) 678-5070

Attorneys for Counter-Claimants
DISH Network Corporation, et al.