Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)
cassidy.young@klgates.com
Rachel Berman (SBN 352237)
rachel.berman@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Plaintiff*
*Entropic Communications, LLC*

(*Additional counsel listed in signature block*)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION, *et al.*,<br><br>Defendants. | Case No. 2:23-cv-01043-JWH-KES (Lead Case)<br><br>**ENTROPIC COMMUNICATIONS, LLC'S RESPONSE TO DEFENDANT COX'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATIONS ON MOTIONS REFERRED BY THE COURT ON FEBRUARY 9, 2024, AND MARCH 26, 2024 (DKT. 446)** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 4

I. ARGUMENT ................................................................................................ 5

    a. The R&R Correctly Rejected the Breach Claims That Cox Pled ........ 5

    b. The R&R's Rejection of Cox's Breach Claims Was Not Dicta .......... 7

    c. The R&R Should Be Modified to Dismiss Cox's New Claim for Breach of the IPR Policy as Implausible ........................................ 8

    d. The R&R Should Be Modified to Dismiss Cox's New Claim for Breach of the IPR Policy Because Cox Did Not Plead It ............ 11

II. CONCLUSION .......................................................................................... 12

ENTROPIC'S RESPONSE TO COX'S OBJECTIONS TO THE
SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

# TABLE OF AUTHORITIES

**Cases**

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
   713 F.3d 175 (4th Cir. 2013) ................................................................................. 11

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005) ................................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES

In its Objections to the Special Master's Report and Recommendation (Dkt. 446 ("R&R")), Cox argues that the R&R's rejection of Cox's various breach of contract claims was either erroneous or dicta. (Dkt. 488 ("Cox's Objections").) Cox is wrong. The R&R rejected the breach claims that Cox actually pled, and did so correctly based on the law and the language of the relevant agreements. The R&R's analysis was also necessary to the dismissal of other claims that relied on that same analysis. Thus, Cox's Objections should be overruled.

Cox's Objections, however, reveal a fundamental problem with Cox's pleading. (Dkt. 276.) In both its pleading and its briefing, Cox alleged a breach of an alleged contractual requirement that "*either* MaxLinear must continue to own the relevant patents [the patents-in-suit] *or* it must 'retain the right to grant any licenses for essential patents via multiple provisions in the [MoCA] IPR Policy.'" (Dkt. 380-1 at 19, citing Dkt. 266-1[1] ¶ 550.) The R&R correctly rejected both arguments. (Dkt. 446 at 15, 17–20.)

At the hearing, however, Cox changed its tune and argued a different breach. In its pleading, Cox alleged that MaxLinear breached a promise to "exclusively own" the patents, (Dkt. 276 ¶ 581), or else to "retain the right to grant any licenses for essential patents," (*id.* ¶ 550). But at the hearing, Cox presented a different promise as the basis for breach of contract: MaxLinear would not transfer its patents to anyone but an Alliance Party. The R&R found this new "members only" claim sufficiently plausible. (Dkt. 446 at 21.) Tellingly, however, the R&R did not cite Cox's pleading for this claim. And for good reason—it is not the claim Cox pled.

Thus, there is a conflict between the breach claims Cox pled and the new claim Cox presented at the hearing. This conflict should be resolved by modifying the R&R

---

[1] Cox's pleading was filed under seal at Dkt. 276. Entropic's references herein to Cox's pleading are to the operative, sealed pleading at Dkt. 276.

to dismiss Cox's pleading for two independent reasons. First, Cox's new claim is implausible as a matter of law, as argued in MaxLinear's Objections. (Dkt. 490 at 9–11.) Second, Cox did not plead what it now presents as its breach claim. And because Cox's claim for breach of the IPR Policy fail, its claims for declaratory judgment and tortious interference based on that breach should also be dismissed.

## I. ARGUMENT

Cox's Objections contradict the plain language of the IPR Policy and the Patent Purchase Agreement ("PPA"), as the R&R determined. The R&R properly considered the language of these operative agreements and the law of assignment, and Cox's objections to the R&R should be rejected.

However, the R&R did err in its analysis of the new claim that Cox raised at the hearing. This new claim contradicted numerous provisions in the IPR Policy and should likewise have been rejected as implausible. Alternatively, the R&R should be modified to a dismissal because it rejected the claims that Cox actually pled.

### a. The R&R Correctly Rejected the Breach Claims That Cox Pled

Cox objects to two aspects of the R&R. Cox first argues that the R&R did not address Cox's allegation that MaxLinear breached the IPR Policy by failing to include certain language when transferring patents to Entropic. (Dkt. 488 at 2–7.) Cox then argues that the R&R erred by rejecting its allegation that MaxLinear was required to retain the right to grant licenses even after transferring its patents. (*Id.* at 7–9.) Both objections should be overruled.

First, the R&R addressed and properly rejected Cox's breach claim based on the "transfer" language of the PPA. The R&R determined that "MaxLinear put Entropic on notice of the MoCA RAND obligations (and assign[ed] patents as being subject to such obligations)." (Dkt. 446 at 20.) As Entropic explained in its Objections, this was the correct conclusion based on the language of the PPA that explicitly gave notice of the MoCA RAND obligations. By law, the PPA conveyed the patents to Entropic subject to those obligations. (*See* Entropic's Objections to

5

R&R at 11 (Dkt. 491), citing *HTC Corp. v. IPCom GmbH & Co.*, 2010 WL 11719073, at *5 (D.D.C. Nov. 5, 2010).) Although the IPR Policy required transfer documents to include language conveying the obligation, it did not require magic words to do so. Thus, the PPA's notice of the RAND obligation *is* a "provision [stating] that such transfer or assignment is subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws." (Entropic RJN at Ex. A, 2017 IPR Policy § 5.1.2 (Dkt. 364-1).) MaxLinear complied with Section 5.1.2 of the IPR Policy by giving explicit notice of the RAND licensing obligation, which is sufficient as a matter of law.

  Cox argues that the R&R's "run with the patent" analysis "eliminate[s] the transfer provision" of Section 5.1.2 of the IPR Policy by rendering it superfluous. (Dkt. 488 at 3–4.) Cox has it backwards because Section 5.1.2 explicitly recognizes that obligations would run with a patent transfer regardless of what language is used in the transfer: "the licensing obligations under this IPR Policy are intended to be binding . . . regardless of whether such provisions are included." (Dkt. 364-1 § 5.1.2.) The R&R's determination that the obligation was conveyed by operation of law is fully in accord with the IPR Policy's statement that the obligation will run with the patents no matter what particular language is included in the transfer agreement. Cox's objection on this issue should be overruled.

  Second, the R&R correctly rejected Cox's claim that MaxLinear breached the IPR Policy by failing to retain the right to grant licenses. As the R&R determined, Section 5.1.2 of that policy permits the "assignment" of a patent "subject to existing licenses and obligations to license imposed on the Alliance Party by this Agreement and the Alliance Bylaws." (Dkt. 446 at 19, citing IPR Policy § 5.1.2.) An assignment is the transfer of all substantial rights in a patent, including the right to grant licenses. *See, e.g., Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 979 (Fed. Cir. 2005). Because Section 5.1.2 permits "assignment[s]," it permits the transfer of the right to grant licenses. And because the transfer is "subject to" prior obligations, those prior

ENTROPIC'S RESPONSE TO COX'S OBJECTIONS TO THE
SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

obligations run with the transfer. Cox's interpretation vitiates the word "assignment," and was correctly rejected as implausible in the R&R.

Cox argues that the R&R overlooked its argument based on the "warranty" clause of Section 4.1.2 of the IPR policy. To the contrary, the R&R determined that Cox's reading "lacks support" in Section 4.1.2, as reproduced in full in the R&R. (Dkt. 446 at 18.) And the R&R was right to reject Cox's reading of Section 4.1.2 as contrary to Section 5.1.2, which expressly permitted assignments. (*Id.* at 19.) Cox also argues that its allegations regarding MaxLinear's intent to "circumvent" its obligations compel a different result. (Dkt. 488 at 8.) But Cox's allegations of intent are not well-pled because they are contrary to the language of the PPA and the law of assignment. As the R&R rightly noted: "even if MaxLinear had ***attempted*** to remove the encumbrances, it did not." (Dkt. 446 at 83.) Cox's objections on this issue should be overruled as well.

### b. The R&R's Rejection of Cox's Breach Claims Was Not Dicta

Cox argues in the alternative that the R&R's analysis of Cox's pleading is dicta. (Dkt. 488 at 1.) This is incorrect because the R&R rejects the claims that Cox actually pled. Cox alleged that MaxLinear breached the IPR Policy as follows:

(a) breaching its contract by attempting to circumvent its obligation to provide non-exclusive licenses to any patents containing essential patent claims on FRAND terms;

(b) breaching its agreement that it would own any necessary patents;

(c) breaching its representation, warranty and covenant that MaxLinear would maintain the power and authority to grant patent licenses as required under the IPR Policy;

(d) breaching its promise not to transfer patents so as to circumvent the obligation to grant licenses;

(e) improperly assigning the Asserted Patents free of any encumbrances, including those created by the IPR Policy;

   (f) executing assignment agreements that omit the provisions required by the IPR Policy.

(Dkt. 276 ¶ 576; *see also id.* ¶ 581 (alleging breach of "promise that [MaxLinear] would exclusively own the relevant intellectual property").[2]) The R&R rejected **all** of these allegations. As to (a), (c), (d), (e), and (f), the R&R determined that MaxLinear properly conveyed its obligation to license on RAND terms, which it had the right to do. (Dkt. 446 at 19, 20; *see also supra* at § I.a.) And as to (b), the R&R determined that MaxLinear had the right to transfer its patents. (*Id.*) Nowhere did Cox plead that the act of assigning patents to **a non-MoCA member** was the breach. Rather, Cox pled that MaxLinear breached a promise to "exclusively own" essential patents, (Dkt. 276 ¶ 581), or else to retain the right to grant licenses, (*id.* ¶ 550). These breach claims were rejected. Thus, the R&R rejected the breach claims that Cox actually pled, and this rejection is not dicta.

  Further, the R&R's analysis of the RAND obligation is not dicta because it is necessary to the disposition of at least Counts VIII, IX, and XI of DISH's counterclaim. As the R&R found, "any RAND obligations necessarily ran with the patents (including by operation of law) when MaxLinear assigned the patents to Entropic." (Dkt. 446 at 83.) It relied on this finding to conclude that "DISH does not state any plausible claim for anticompetitive conduct based on any purported attempt to avoid the RAND obligations." (*Id.*) Thus, the R&R's determination that MaxLinear properly conveyed its RAND obligation is necessary to the disposition of DISH's claims and is not dicta for this reason, too.

  **c.** **The R&R Should Be Modified to Dismiss Cox's New Claim for Breach of the IPR Policy as Implausible**

  The R&R should not be modified in response to Cox's objections, which are

---

[2] Cox also pled breach of confidentiality based on the Promoter Agreement(s). (Dkt. 276 ¶¶ 546, 576.) This confidentiality claim is a distinct issue and was treated as such by Cox and the R&R. (*E.g.*, Dkt. 446 at 22–25.)

8

without merit. However, the R&R should be modified to dismiss the breach claim that Cox raised for the first time at the hearing. As stated in MaxLinear's Objections, Cox's new breach claim contradicts or renders superfluous multiple provisions of the IPR Policy. (Dkt. 490 at 7–9.) This new claim should be rejected and Cox's pleading dismissed.

First, Cox's new claim interprets the phrase "unaffiliated third party" contrary to both its plain language and the terms of the IPR Policy. Under Cox's reading, as recited in the R&R, "unaffiliated third party" means neither "unaffiliated" nor "third party," but instead implausibly refers only to a MoCA member that is not an affiliate." (Dkt. 446 at 21–22.) The plain language of a "third party," by contrast, is an entity not affiliated with the contract in question. Here, because the contract that refers to a "third party" is the MoCA Alliance's own IPR Policy, a third party is an entity that is not affiliated with the Alliance. The IPR Policy reinforces this plain meaning in its definition of "Essential Patent Claims." The IPR Policy states that "Essential Patent Claims" includes certain claims for which "an Alliance Party or any of its Affiliates has the right . . . to grant licenses," but excludes claims "that, if licensed, would require consent from, and/or a payment of royalties by the licensor to[,] unaffiliated third parties." (Dkt. 364-1 § 2.) Thus, the IPR Policy uses the term "unaffiliated third parties" to **distinguish** such parties from "an Alliance Party or its Affiliates." (*Id.* § 5.1.2.) But Cox treats the terms as synonyms, contrary to how they are used in the IPR Policy.

Second, Cox's new claim renders part of Section 5.1.2 superfluous. That provision provides that any transfer to an "unaffiliated third party . . . shall be made subject to the terms in this IPR Policy." (*Id.*) Under Cox's novel reading of the IPR Policy, only other Alliance Parties or their affiliates can be an "unaffiliated third party." But the IPR Policy already "applies to all Alliance Parties and their Affiliates." (*Id.* § 1.) If a transfer could occur only to Alliance Parties or their Affiliates, as Cox argues, there would be no reason to specify that a transfer must be

"subject to" the IPR Policy. Rather, this part of Section 5.1.2 only has meaning if "unaffiliated third parties" refers to parties other than Alliance Parties and their Affiliates. This is the only plausible reading of Section 5.1.2 and the IPR Policy overall.

Third, Cox's new claim contradicts Section 7.1. That provision explains that when an Alliance Party leaves the Alliance, "the terminated Alliance Party and its Affiliates shall, after such termination, continue to offer and to license to any other Alliance Parties the terminated Alliance Party's (and its Affiliates') Essential Patent Claims as provided as provided in Sections 5.1." (*Id.* § 7.1.) This provision thus contemplates that a party may no longer be an Alliance Party but may still own Essential Patent Claims, contrary to Cox's contorted reading of Section 4.1. Notably, Section 7.1 does not require a terminated Alliance Party to transfer their Essential Patent Claims to an Alliance Party. This further undermines Cox's insistence that only an Alliance Party may own patents including such claims.

Fourth, Cox's new claim contradicts Cox's other arguments about the IPR Policy. Cox urges, for instance, that the IPR Policy required MaxLinear to "maintain rights to grant patent licenses." (Dkt. 488 at 7.) This argument is not only incorrect, as explained above, but undermines Cox's argument that the IPR Policy limits transfers to other Alliance Parties. Under Cox's view of the IPR Policy, transfers of MoCA-essential IP must be only to Alliance Parties because that is necessary to ensure compliance with the RAND obligation, but also it does not matter who receives the IP because that obligation always "remains with the Alliance Party who transfers." (*Id.* at 8–9.) In Cox's eyes, restricting who can receive MoCA-essential IP is simultaneously critical and irrelevant. This is an implausible reading that defies both the plain language of the IPR Policy and common sense.

At bottom, Cox fails to articulate a coherent interpretation of the IPR Policy to support a claim for breach. For this reason, the R&R should be modified to dismiss Cox's claim for breach of the IPR Policy as implausible.

### d. The R&R Should Be Modified to Dismiss Cox's New Claim for Breach of the IPR Policy Because Cox Did Not Plead It

As argued in Sections I.a and I.b above, the R&R rightly rejected the breach claims that Cox pled. The only claim that the R&R found plausible related to the patent assignment was the claim that Cox newly raised at the hearing. As argued in Section I.c above, this new claim was also implausible and the R&R should be modified to dismiss it. Alternatively, this new claim should be dismissed because Cox did not plead it.

The R&R relied on Cox's arguments at the hearing, not Cox's actual allegations, in analyzing Cox's claim for breach of contract. This was a misstep prompted by Cox's belated shift in position. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Cox did not allege in its pleading that MaxLinear's patent assignment to Entropic was a breach of the IPR Policy because of Entropic's status as a non-member of MoCA. Rather, Cox pled that the IPR Policy required MaxLinear to either own the patents itself, (Dkt. 276 ¶¶ 576, 581), or else retain the right to grant licenses, (*id.*). (*See also* Dkt. 380-1 at 19.) The R&R itself recognized as much: "Cox argues that it adequately alleges an underlying breach of the IPR Policy by MaxLinear because ***either*** MaxLinear must continue to own the relevant patents ***or*** it must retain the right to grant any licenses for essential patents via multiple provisions in the IPR Policy." (Dkt. 446 at 15 (quotations omitted).)

The R&R erred, however, in recommending that Cox's existing pleading not be dismissed. The R&R based this recommendation not on the claims that Cox actually pled (which it found implausible), but the new claim that Cox raised at the hearing. (Dkt. 446 at 17–21.) At present, Cox's pleading alleges breach of contract claims that have been rejected as deficient, while alleging no claim of breach arising from the act of assignment to a non-Alliance Party. (*See* Dkt. 276 ¶¶ 576, 581.) As a

result, the only "claim" that the R&R believed plausible was one Cox did not plead. If any part of the R&R were dicta, it would be the R&R's assessment of this new claim that Cox raised in oral advocacy, not in its pleading.

Because the analysis of the R&R rejects the claims that Cox actually pled, the R&R should be modified to dismiss Cox's pleading.

## II.   CONCLUSION

Cox's objections should be overruled. The Court should modify the R&R to dismiss Cox's claim for breach of contract as either implausible or not pled, as well as the claims for declaratory judgment and tortious interference based on those alleged breaches.

Dated: May 24, 2024

Respectfully submitted,

By:  /s/ Douglas Jordan Winnard
Michael T. Pieja (SBN 250351)
mpieja@goldmanismail.com
Alan E. Littmann (*pro hac vice*)
alittmann@goldmanismail.com
Douglas Jordan Winnard (SBN 275420)
dwinnard@goldmanismail.com
Jennifer M. Hartjes (*pro hac vice*)
jhartjes@goldmanismail.com
Kurt A. Holtzman (*pro hac vice*)
kholtzman@goldmanismail.com
Xaviere N. Giroud (*pro hac vice*)
xgiroud@goldmanismail.com
**GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP**
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191

Christina Goodrich (SBN 261722)
christina.goodrich@klgates.com
Cassidy T. Young (SBN 342891)

| | |
|---|---|
| 1 | cassidy.young@klgates.com |
| 2 | Rachel Berman (SBN 352237) |
|   | rachel.berman@klgates.com |
| 3 | **K&L GATES LLP** |
| 4 | 10100 Santa Monica Boulevard |
|   | Eighth Floor |
| 5 | Los Angeles, CA 90067 |
| 6 | Telephone: +1 310 552 5000 |
|   | Facsimile: +1 310 552 5001 |
| 7 | |
|   | James A. Shimota (*pro hac vice*) |
| 8 | jim.shimota@klgates.com |
| 9 | Jason A. Engel (*pro hac vice*) |
|   | jason.engel@klgates.com |
| 10 | **K&L GATES LLP** |
| 11 | 70 W. Madison Street, Suite 3300 |
|   | Chicago, IL 60602 |
| 12 | Tel.: (312) 372-1121 |
| 13 | Facsimile: (312) 827-8000 |
| 14 | |
|   | Peter E. Soskin (SBN 280347) |
| 15 | peter.soskin@klgates.com |
|   | **K&L GATES LLP** |
| 16 | Four Embarcadero Center, Suite 1200 |
| 17 | San Francisco, CA 94111 |
|   | Telephone: (415) 882-8200 |
| 18 | Facsimile: (415) 882-8220 |
| 19 | |
|   | *Attorneys for Plaintiff* |
| 20 | *Entropic Communications, LLC* |

13

ENTROPIC'S RESPONSE TO COX'S OBJECTIONS TO THE
SPECIAL MASTER'S REPORT AND RECOMMENDATIONS